# EXHIBIT O

EXECUTION VERSION

# CREDIT AGREEMENT

**THIS CREDIT AGREEMENT** (this *Agreement*), dated as of January 29, 2018 (the *Effective Date*) is made between IMPERIO, S.A., a joint stock company organized under the laws of Nicaragua, as borrower (the *Borrower*), and TRADE FINANCE TRUST, a statutory trust organized under the laws of Delaware, as lender (the *Lender*). The Borrower and Lender are each referred to individually as a *Party*, and collectively as the *Parties*, to this Agreement.

The Parties agree as follows:

## ARTICLE I – DEFINITIONS

**Definitions**

1.1   All capitalized terms defined in the recitals shall have the meaning herein set forth therein. Additionally, the following terms, as used herein, have the following meanings:

*Business Day* shall mean any day of the year on which banks are not required or authorized by law to close in New York City.

*Default* shall mean any Event of Default or any event that would constitute an Event of Default but for the requirement that notice be given or time elapse or both.

*Event of Default* shall have the meaning set forth in Section 5.1.

*Law* shall mean any law, statute, rule, regulation, ordinance, decree, order, requirement, or judgment of any governmental authority or subdivision thereof having jurisdiction over the Borrower.

*Loan* shall have the meaning set forth in Section 2.1.

*Material Adverse Effect* means a material adverse effect on (a) the business, condition (financial or otherwise), operations, performance, properties or prospects of the Borrower, (b) the rights and remedies of the Lender under this Agreement or (c) the ability of the Borrower to perform its obligations under this Agreement.

*Promissory Note* shall have the meaning set forth in Section 2.6.

*Santa Emilia* shall have the meaning set forth in Section 2.8.

*Termination Date* shall mean July 27, 2018.

## ARTICLE II – AMOUNTS AND TERMS OF THE LOAN

**Commitment to Lend**

2.1.   The Lender agrees, on the terms and conditions set forth in this Agreement, to make a single advance to the Borrower on any Business Day during the period from the Effective Date until the Termination Date in a total aggregate amount not to exceed six hundred fifty thousand United States dollars (US$650,000) as of the date hereof (the *Loan*). The Borrower may not reborrow any of the amount of the loan.



**Making the Loan**

2.2.   The Loan shall be made within 3 (three) Business Days following written notice requesting the same made by the Borrower. The Loan will be sent to the Borrower's bank account at Banco de la Producción, SA (BANPRO), SWIFT Code: BAPRNIMA, Account Number: 10010111198441, Account Name: Santa Emilia Estate, SA.

**Interest**

2.3.(a)   The Borrower shall pay the then outstanding principal amount of the Loan and all interest which accrued pursuant to the Loan on the Termination Date. Interest will accrue at an annual rate of 9% (nine percent) on the principal amount of the Loan, compounded monthly.

(b)   Upon the occurrence and during the continuance of an Event of Default (as set forth in Section 5.1), the Borrower shall immediately pay all then outstanding interest and principal on the Loan in full. Furthermore, upon the occurrence and during the continuance of an Event of Default, the interest rate will increase to the lesser of (i) 34% (thirty four percent) per annum and (ii) the maximum amount then permitted by applicable law. In the event that interest upon an Event of Default is less than 34% (thirty four percent), any interest amounts which would otherwise be charged pursuant to clause (i) of this Section 2.3(b) which were unable to be charged as a result of the operation of clause (ii) of this Section 2.3(b) will be, to the maximum extent permitted by law, converted to additional principal of the Loan and subject to repayment and interest payments.

**Optional Prepayments**

2.4.   The Borrower may prepay outstanding principal on the Loan, in whole or in part, upon 10 days' prior written notice to the Lender, without premium of any kind; **provided, however,** that each partial prepayment shall be in an aggregate principal amount of US$20,000 (twenty thousand United States dollars) or an integral multiple of US$5,000 (five thousand United States dollars) in excess thereof.

**Payments and Computations**

2.5.(a)   The Borrower shall make its payment hereunder on the Termination Date (as well as any optional prepayment, if applicable) not later than 11:00 A.M. (New York City time) on the day when due in United States dollars immediately available. Payment to the Lender in accordance with the foregoing shall constitute a complete satisfaction and discharge with respect to such payment as between the Borrower and the Lender. If any payment of principal of, or interest on, the Loan or any expenses shall be due on a day which is not a Business Day, payment thereof shall be made on the next succeeding Business Day. If the date for any payment of principal is extended by operation of law or otherwise, interest thereon shall be payable for such extended time at a rate of 9% annually, compounded on a monthly basis unless there has been an Event of Default, in which case the interest thereon shall be payable for such extended time at the rate specified in Section 2.3(b) of this Agreement.

(b)   The Borrower also agrees to pay any present or future stamp or documentary taxes, or any other excise or property taxes, charges or similar levies which arise from any payment made hereunder or from the execution, delivery or registration of, or otherwise with respect to, this Agreement or any other document provided for therein or herein.

(c)   Interest and fees shall be computed on the basis of a year of 360 days for the actual number of days in such year.

2

(d)     All repayments of the Loan and any interest shall be made without any right of deduction or offset by the Borrower.

**Promissory Note**

2.6.    The Parties hereby acknowledge and agree that, in order to induce the Lender to provide the Loan, Borrower hereby agrees, concurrent with the execution of this Agreement, to execute for the benefit of the Lender a promissory note (*pagaré*) attached as Schedule A hereto (such note, the ***Promissory Note***).  For the avoidance of doubt, the face value of the Promissory Note includes both the amount of the Loan, as well as US$420,000 (four hundred twenty thousand United States dollars) which were previously loaned to Victor Manuel Robelo Rodriguez on behalf of the Company and which represent additional indebtedness of the Company.

**Ranking**

2.7.    The indebtedness evidenced by the Loan and the Borrower's obligations under this Agreement shall be senior in right of payment of principal and interest to all other obligations or other liabilities of the Borrower whether currently existing as of the date hereof or existing at a future date, other than the Borrower's loan with Banco de la Producción, SA, which shall be senior in right of payment of principal and interest to this Agreement and the Promissory Note.

**Ability to Lend**

2.8.    The Parties hereto agree that the Borrower may lend a portion of the Loan to Santa Emilia Estate, S.A. (***Santa Emilia***), provided that such corporation executes a loan agreement in form and substance similar to this Agreement and pursuant to which any loan made by Borrower to Santa Emilia shall be senior in right of payment of principal and interest to all other obligations or other liabilities of Santa Emilia whether currently existing as of the date hereof or existing at a future date, other than Santa Emilia's loan with LAAD Americas, N.V., which shall be senior in right of payment of principal and interest to such loan agreement with Santa Emilia. The Parties further agree that notwithstanding any of the foregoing, the Borrower shall remain solely liable to the Lender for repayment of all principal and interest on the Loan, and any default by Santa Emilia shall not in any way prejudice the Lender's rights or remedies under this Agreement.

**Ability to Repay**

2.9.    The Parties agree that, notwithstanding any of the foregoing, repayments under this Agreement and/or the Note will be made from the proceeds of the 2017-2018 crop from the farms owned by the Borrower and/or Santa Emilia and, to the extent that such proceeds are insufficient to extinguish this Agreement and/or the Note, the Borrower shall agree to an extension of the Termination Date to permit the Borrower to repay the amounts owed under this Agreement and/or the Note with the proceeds of the 2018-2019 crop from the farms owned by the Borrower and/or Santa Emilia, but in any event no later than April 30, 2019.



## ARTICLE III – REPRESENTATIONS AND WARRANTIES

**Representations and Warranties of the Borrower**

3.1.    The Borrower represents and warrants as follows:



(a) The Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of Nicaragua.

(b) The execution, delivery and performance by the Borrower of this Agreement and the Promissory Note, and the consummation of the transactions contemplated hereby are within the Borrower's company powers, have been authorized by a majority of the shareholders, and do not contravene the Borrower's certificate of incorporation or bylaws.

(c) No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by the Borrower of this Agreement.

(d) This Agreement and the Promissory Note have been duly executed and delivered by the Borrower. This Agreement and the Promissory Note are the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their respective terms.

## ARTICLE IV – COVENANTS

**Affirmative Covenants of the Borrower**

4.1. So long as the Loan shall remain unpaid, the Borrower will:

(a) Comply in all material respects will all applicable Laws.

(b) Pay and discharge, if and when cash is available therefor and when directed, in writing by the Lender, (i) all taxes, assessments, and governmental charges or levies imposed upon it or upon its property by applicable Law and (ii) all lawful claims that, if unpaid, might by Law become a lien upon its property; **provided, however**, that the Borrower shall not be required to pay or discharge any such tax, assessment, charge or claim that is being contested in good faith and by proper proceedings and as to which appropriate reserves are being maintained, unless and until any lien resulting therefrom attaches to its property and becomes enforceable against its other creditors.

(c) Use reasonable business efforts to preserve and maintain its company existence, rights and franchises.

(d) Keep proper books of record and account going forward, in which full and correct entries shall be made of all financial transactions and the assets and business of the Borrower in accordance with generally accepted accounting principles in effect from time to time.

(e) At any reasonable time and from time to time, permit the Lender or any agents or representatives thereof, to examine and make copies of and abstracts from the records and books of account of, and visit the properties of, the Borrower, and to discuss the affairs, finances and accounts of the Borrower with any of the Lender's officers or directors and with its certified public accountants

## ARTICLE V – EVENTS OF DEFAULT

**Events of Default**

5.1. If any of the following events (each an *Event of Default*) shall occur and be continuing:



(a) The Borrower shall fail to pay any principal of the Loan when the same becomes due and payable or the Borrower shall fail to pay any interest on the Loan or make any other payment under this Agreement within three Business Days after the same becomes due and payable; or

(b) Any representation or warranty made by the Borrower herein shall prove to have been incorrect in any material respect when made; or

(c) The Borrower shall fail to perform or observe any covenant contained in Section 4.1 and such failure shall remain unremedied for ten (10) days after written notice thereof shall have been given to the Borrower by the Lender; or

(d) Any proceeding shall be instituted by or against the Borrower seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief or compensation of it or its debts under any Law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for it or for any substantial part of its property and, in the case of any such proceeding instituted against it (but not instituted by it), either such proceeding shall remain undismissed or unstayed for a period of 30 days, or any of the actions sought in such proceeding (including, without limitation, the entry of an order for relief against, or the appointment of a receiver, trustee, custodian or similar official for, it or for any substantial part of its property) shall occur; or the Borrower shall take any company action to authorize any of the actions set forth above in this subsection (d); or

(e) Any event shall have occurred that could be reasonably expected to have a Material Adverse Effect, and if such event is capable of cure by Borrower, no cure shall have been effected within 10 (ten) Business Days; or

(f) any Event of Default shall have occurred under the Promissory Note or the escrow agreement dated as of the date hereof, of which the Borrower and Santa Emilia are parties; or

(g) any loan or indebtedness of Borrower (other than the Loan) shall not be repaid when the same becomes due and payable, and such failure to repay shall remain uncured for a period of 20 (twenty) Business Days or more;

then the Lender, by notice to the Borrower, may declare the Loan, all interest thereon and all other amounts payable under this Agreement to be forthwith due and payable, whereupon the Loan, all interest thereon and all other amounts payable under this Agreement shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower. This shall constitute the sole and exclusive remedy of the Lender in such situation.

**ARTICLE VI – MISCELLANEOUS**

**Notices**

6.1. All notices, requests, demands and other communications to any Party hereunder shall be in writing and shall be mailed and delivered, if to the Borrower, at its address at Grupo Imperio, BANPRO 1 Cuadra al Este, 20 Varas al Sur, Matagalpa, Nicaragua; or if to the Lender, at its address at 1011 Centre Road, Suite 200, Wilmington, Delaware 19805, with a copy to International Investment Group, 1500 Broadway, 26th Floor, New York, New York 10036, ATTN: Martin Silver. Each such notice, request,

demand or other communication shall be effective when delivered at the address specified in this Section 6.1.

**No Waiver; Remedies**

6.2. No failure or delay by the Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by Law.

**Amendments and Waivers**

6.3. Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by the Borrower and the Lender.

**Successors and Assigns**

6.4. The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns, except that the Borrower may not assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the Lender. Any assignment or attempted assignment made in violation of the requirements set forth in this Section 6.4 shall be deemed void *ab initio* and of no legal force or effect.

**Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**

6.5.(a) This Agreement shall be construed in accordance with, and this Agreement and all matters arising out of or relating in any way whatsoever (whether in contract, tort or otherwise) to this Agreement shall be governed by, the law of the State of New York.

(b) The Parties hereto hereby irrevocably submit to the exclusive jurisdiction of any New York State or Federal court sitting in the Borough of Manhattan in The City of New York in any action or proceeding arising out of or relating to this Agreement, and the parties hereto hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such New York State or Federal court. The Parties hereto hereby irrevocably waive, to the fullest extent that they may legally do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. The Parties hereto agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c) **EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING.** Each Party hereby (i) certifies that no representative, agent or attorney of the other has represented, expressly or otherwise, that the other would not, in the event of a proceeding, seek to enforce the foregoing waiver and (ii) acknowledges that it has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 6.5(c).

**Counterparts**

6.6. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Delivery of an executed counterpart of a signature page to this Agreement electronically in PDF format shall be effective as delivery of a manually executed counterpart of this Agreement.

**Headings**

6.7. The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provisions hereof.

**Severability**

6.8. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

**No Third Party Beneficiaries**

6.9. This Agreement is solely for the benefit of the Parties, and each Party hereby agrees that nothing in this Agreement shall entitle any individual or entity other than the Parties to any claim, cause of action or right of any kind.

**No Strict Construction**

6.10. The language used in this Agreement will be deemed the language chosen by the Parties to express their mutual intent, and no rules of strict construction will be applied against either Party.

**Entire Agreement**

6.11. This Agreement, together with the Promissory Note, embodies the entire agreement and understanding of the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings between the Parties.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**IMPERIO, S.A.**, as Borrower

By: _____
Name:
Title:

**TRADE FINANCE TRUST**, as Lender
BY: IIG TRADE FINANCE LLC, its Administrator

By: _____
Name: DAVID HU
Title: MANAGING PARTNER

## EXHIBIT A – FORM OF PROMISSORY NOTE

[to be inserted]

