# EXHIBIT R

# CONTRATO MARCO DE PRÉSTAMO

Entre **IIG CAPITAL LLC AS AGENT**, representada por el Sr. Thomas LaVecchia, en su carácter de Senior Director, domiciliado en 1500 Broadway, 17th floor, New York, New York, 10036 USA, parte a la que en adelante se la denominará como el **"ACREEDOR";** por otra parte la Compañía **IVORFIELD TRADING CORP.** representada en este acto por el señor Edgardo E. Dáz, en su calidad de Presidente, con domicilio en Calle 53 Este, Urb. Marbella, Torre Swiss Bank, 2do. piso, Panamá, República de Panamá, parte a la que en adelante se la denominará como la **"DEUDORA"**. LAS PARTES convienen en celebrar el presente contrato marco de préstamo, que en adelante se lo denominará simplemente como el "**Contrato Marco de Préstamo**", donde se fijan las pautas que deberán observarse para la implementación de una Línea de Crédito para la financiación de compra de inventario y exportaciones que el ACREEDOR otorgará a la DEUDORA, y que estará sujeta a las siguientes cláusulas:

**CLAUSULA PRIMERA: DEFINICIONES.-** Los siguientes términos tienen los significados que se indican a continuación, dondequiera que figuren en el presente Contrato Marco de Préstamo:

**"Adeudado"** significa el saldo insoluto de la Línea de Crédito adeudado por la DEUDORA al ACREEDOR.

**"Autoridad de Gobierno"** significa cualquier funcionario u organismo de un Estado que esté investido con potestades públicas.

**"BBC- o Borrowing Base Certificate"** es el documento mediante el cual se solicitan los fondos y donde se detallan el Colateral, monto Adeudado y saldo disponible a solicitar.

**"Bienes"** significan en general activos fijos, bienes muebles e imuebles.

**"Carta de Notificación"** es la comunicación mediante la cual se notifica al Cliente Cedido sobre la cesión de las Facturas y éste a su vez se compromete a pagar el valor de las Facturas cedidas en la cuenta designada por el Acreedor. Este documento deberá estar debidamente suscrito por la Deudora, el Cliente Cedido y el Acreedor.

**"Clientes Cedidos"** son las personas naturales o jurídicas a quienes la DEUDORA vende productos y que han sido aprobados por el ACREEDOR.

**"Colateral"** significa el Contrato de Fideicomiso Mercantil en Garantía que constituye la DEUDORA a favor del ACREEDOR para transferir el Inventario que alcance a cubrir el 100% del valor de las obligaciones y las FACTURAS que comprenden la totalidad de Inventario que haya sido vendido por la DEUDORA a los Clientes Cedidos, con la constancia de haberse cedido sus derechos de cobro a favor del ACREEDOR.

**"Comisión de Administración y Operación"** significa la contraprestación mensual que recibirá el ACREEDOR por la administración y operación de la Línea de Crédito concedida, que será calculada y pagada mensualmente el primer Día Hábil de cada mes sobre el valor de cada desembolso del PRESTAMO REVOLVENTE. Dicha comisión será equivalente al 0.2% mensual.

**"Comisión de Penalidad"** significa la contraprestación que recibirá el ACREEDOR por concepto de penalidad en el caso de que la DEUDORA sobrepase el monto total de la Línea de Crédito. El monto de dicha penalidad será definida por el ACREEDOR a su sola discreción.

**"Comisión de Precancelación"** significa la contraprestación que recibirá el ACREEDOR en el evento que la DEUDORA quiera cancelar la Línea de Crédito y por ende terminar el presente **Contrato Marco de Préstamo** antes del plazo de un año, contado a partir de la suscripción del mismo. Esta comisión corresponde al monto que resulte mayor entre los intereses de los 3 meses siguientes y el 3% del monto total de la Línea de Crédito concedida.

**"Comisión de Renovación"** significa la contraprestación que recibirá el ACREEDOR por extender la Fecha de Vencimiento por un periodo adicional de doce (12) meses que será pagada por la DEUDORA en la fecha efectiva del primer desembolso de la Línea de Crédito renovada. Dicha

comisión será equivalente al cero punto cinco por ciento (0.5%) sobre el monto total de la Línea de Crédito, esto es, US$ 4'000.000,00 y no será reembolsable una vez que se haya aprobado la renovación.

**"Compañía Verificadora"** es la compañía encargada del manejo del inventario y de su control físico.

**"Contrato de Fideicomiso en Garantía"** significa el contrato a que se refiere el numero 2.5 de la cláusula Segunda y que tiene como finalidad garantizar el cumplimiento de las obligaciones que derivan de los Documentos del Préstamo, a cargo de la DEUDORA.

**"Contrato Marco de Préstamo"** significa el presente documento y sus anexos, suscrito por las Partes, así como sus posteriores modificaciones.

**"Cuenta Recolectora"** Es una cuenta abierta en una entidad financiera del exterior, de titularidad del ACREEDOR, en la cual se depositarán los recursos derivados de la cesión de las FACTURAS de los Clientes Cedidos. Todos los gastos y comisiones, incluyendo, pero no limitado a gastos de transferencia que genere la administración de esta cuenta, serán asumidos por la DEUDORA.

**"Día Hábil"** significa cualquier día distinto a: (i) un sábado; (ii) un domingo; o (iii) cualquier otro día en el cual todas las entidades del sistema financiero del Ecuador y/o Panamá y/o Estados Unidos y/o Londres, no atiendan al público por disposición de la Autoridad de Gobierno competente.

**"Deudora"** se refiere a la compañía IVORFIELD TRADING CORP.

**"Documentos de Préstamo"** son el Contrato Marco de Préstamo, el Promissory Note, los contratos de Fideicomisos Mercantiles y Encargos Fiduciarios, Validity Guarantee, Account Control Agreement y el Contrato de Verificación de Inventario.

**"Dólares"** y el signo **"US$"** significan la moneda de curso legal en los Estados Unidos de América.

**"Efecto Sustancialmente Adverso"** es la situación que se genera por causa de algun Evento de Incumplimiento que le impide a la compañía DEUDORA cumplir total o parcialmente las obligaciones establecidas en el presente contrato.

**"Endeudamiento"** significa el total de pasivos, incluyendo las operaciones de leasing y factoring, además de cualquier tipo de contingencia financiera.

**"Evento/s de Incumplimiento"** son las situaciones establecidas en la cláusula octava del presente contrato.

**"Estado"** se refiere indistintamente a Ecuador y/o Panamá y/o Estados Unidos y/o Londres.

**"Factura/s"** u **"Órdenes de compra"** son los documentos emitidos por la DEUDORA por la venta de Inventario, que representan los derechos de cobro a los CLIENTES CEDIDOS, que serán cedidas a favor del ACREEDOR.

**"Fecha de Desembolso"** significa la fecha en que se cumplan las Condiciones Precedentes al Desembolso que se encuentran fijadas en las cláusulas tercera y cuarta del presente **Contrato Marco de Préstamo** u otra fecha fijada de común acuerdo por las Partes.

**"Fecha de pago de intereses"** se refiere al primer Día Hábil del mes siguiente al que fueron generados los intereses.

**"Fecha de Suscripción"** significa la fecha en la que el presente **Contrato Marco de Préstamo** haya sido debidamente suscrito por las Partes y, en el supuesto que las Partes suscriban este **Contrato Marco de Préstamo** por separado y por lo tanto en fechas distintas, la Fecha de Suscripción será la última de dichas fechas.

**"Fecha de Vencimiento"** significa la fecha hasta la cual se encuentra vigente el presente contrato.

"**Impuesto**" significa cualquier tributo, contribución, cargo, tasa, servicio, gravamen, retención u otra deducción, comisiones, derechos y pagos de cualquier naturaleza, exigidos por cualquier organismo o Autoridad de Gobierno, en vigor a la Fecha de Suscripción o que entren en vigor posteriormente.

"**Intereses compensatorios**" es la tasa correspondiente al 18%.

"**Inventario/s**" se refiere al camarón congelado, entero y cola en producto terminado que no tenga un plazo mayor de 120 días contados a partir de la fecha de embarque.

"**Ley/es aplicable/s**" es la legislación del Estado de Nueva York, Estados Unidos de América.

"**LIBOR**" o "**3-month LIBOR**" significa la tasa interbancaria ofrecida por la British Bankers Association ("BBA") para depósitos en DÓLARES a tres (3) meses que aparezca en la página correspondiente de Bloomberg Financial Markets Service (BBAM) hasta dos días antes del ultimo día del mes y que será actualizada mensualmente.

"**Línea de Crédito**" significa el préstamo otorgado por el ACREEDOR a la DEUDORA bajo el presente **Contrato Marco de Préstamo**.

"**Monto Total**" significa el valor máximo por el cual se ha concedido la Línea de Crédito; en este caso US$4´000.000.

"**Partes**" se refiere a las personas contratantes, esto es, el ACREEDOR y la DEUDORA.

"**Periodo de Interés**" significa cada período de un (1) mes que comience en una Fecha de Pago de Intereses y finalice el día inmediatamente anterior a la subsiguiente Fecha de Pago de Intereses.

"**Persona**" significa cualquier persona física o jurídica de carácter público o privado.

"**Promissory Note**" o "**Nota Promisoria**" o "**Pagaré**" tiene el significado que se le asigna en el número 2.4 de la cláusula Segunda de este **Contrato Marco de Préstamo**.

"**Tasa de Interés**" significa la tasa LIBOR mas un margen de 5% o la tasa mínima del 11,0% anual.

**CLAUSULA SEGUNDA: OBJETO.-**

2.1   El ACREEDOR ha aprobado una Línea de Crédito hasta por la suma de US$4´000.000 (Cuatro Millones de Dólares de los Estados Unidos de América), cuya base para los desembolsos no podrá ser superior, a criterio del ACREEDOR:

(i)   Al 95% del valor neto de las **FACTURAS** por cobrar a un plazo máximo de 30 días desde su emisión, que sean debidamente aprobadas por el ACREEDOR.
(ii)  Al 95% del valor de los Inventarios de camarón congelado, entero y cola, en producto terminado, que no tenga un plazo mayor de 120 días contados a partir de la fecha de embarque.

La DEUDORA, en función de las disponibilidades del ACREEDOR, utilizará la Línea de Crédito para la financiación de operaciones de compra de Inventario y de ventas internacionales que realice la DEUDORA, conforme a las condiciones y el procedimiento que se establece en este "**Contrato Marco de Préstamo**".

Para la entrega de los fondos de la Línea de Crédito, las PARTES acuerdan seguir el procedimiento indicado en la Cláusula SEGUNDA del presente **Contrato Marco de Préstamo**.

2.2   La DEUDORA pagará al ACREEDOR por el crédito concedido el interés anual que corresponde a la tasa LIBOR tres meses, que será recalculada cada mes, más un margen del 5%, la Comisión por Administración y Operación y la Comisión de Renovación si fuere



aplicable. La **Tasa de Interés** mínima es del 11,0% anual. Dicho interés anual y comisiones mensuales serán calculados sobre el promedio mensual desembolsado de la Línea de Crédito concedida y serán pagaderos mensualmente, el primer Día Hábil del mes siguiente al que fueron generados. El ACREEDOR está autorizado a cargar a la cuenta de la DEUDORA, en el primer Día Hábil de cada mes, la suma de los intereses y comisiones acumulados generados durante el mes anterior. La Tasa de Interés acordada entre la DEUDORA y la ACREEDORA, será calculada sobre la base de 360 días y multiplicado por el número de días del mes correspondiente. En ningún caso, la DEUDORA podrá sobrepasar el límite de endeudamiento de más de cuatro millones de dólares, incluyendo los intereses y comisiones; y en el evento de que lo haga deberá pagar al ACREEDOR la Comisión de Penalidad. En caso de que la DEUDORA desee precancelar el crédito, deberán pagar al ACREEDOR la Comisión de Pre Cancelación. En este caso, la respectiva operación no se considerará pre cancelada hasta que la DEUDORA pague al ACREEDOR la comisión correspondiente; y por ende, la DEUDORA será responsable por los intereses y comisiones que se generen y devenguen hasta el pago de esta comisión.

2.3   Sin perjuicio de la responsabilidad deudora, y a efectos de procurar el pago de las sumas otorgadas en la Línea de Crédito por el ACREEDOR, la DEUDORA, cederá y transferirá a favor del ACREEDOR, todos los derechos que le corresponde respecto del cobro de todas las FACTURAS, que se originen de las exportaciones del producto entregado en garantía, efectuadas por los Clientes Cedidos. La cesión del cobro de las Órdenes de Compra antes referida, incluye la cesión del cobro de las FACTURAS emitidas por la DEUDORA que lleguen a ser cedidas en virtud de este **Contrato Marco de Préstamo**, las mismas que se adjuntarán al BBC y que se incorporarán a este **Contrato Marco de Préstamo** durante su vigencia. En la nota de cesión que se incorpora en la FACTURAS se debe indicar que los derechos de la FACTURA se ceden a favor del ACREEDOR y que éstos deben ser pagados mediante depósitos en la Cuenta Recolectora. Dichos anexos contarán con la firma de la DEUDORA y con la del ACREEDOR. Cuando en el presente **Contrato Marco de Préstamo** y en los documentos emanados en virtud del mismo se haga referencia el término "FACTURAS" deberá entenderse que dicho termino se refiere indistintamente tanto a las FACTURAS como a las Ordenes de Compra cedidas. Si alguna de las FACTURAS se resulta ininteligible, la DEUDORA deberá reemplazar dicha FACTURA inmediatamente por una nueva que apruebe el ACREEDOR o deberá proceder a pagar el saldo de la Línea de Crédito.

La cesión de FACTURAS antes citada se efectúa con responsabilidad por parte de la DEUDORA, y de conformidad con los términos y declaraciones establecidas en las Cláusulas Segunda y Cuarta del presente **Contrato Marco de Préstamo**, debiendo los Clientes Cedidos abonar tales FACTURAS directamente al ACREEDOR según se especifica en las mencionadas Cláusulas. La referida cesión comprende todos los derechos y acciones que posee la DEUDORA que le corresponden respecto de las FACTURAS, colocando al ACREEDOR en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones que eventualmente existieran con respecto a los créditos derivados de dichas FACTURAS. La cesión de FACTURAS no implica dación en pago de los préstamos adeudados por la DEUDORA a EL ACREEDOR; al contrario, al existir una cesión con responsabilidad de la DEUDORA ésta queda obligada solidariamente con los Clientes Cedidos, y no se extinguirá su responsabilidad deudora hasta que no pague todas las obligaciones adeudadas a EL ACREEDOR.

2.4   Para efectos del desembolso de la Línea de Crédito, en este mismo acto, la compañía IVORFIELD TRADING CORP. suscribirá una Nota Promisoria (Promissory Notes en inglés, pagaré) a favor del ACREEDOR por la suma de US$ 4'000.000,00 (Cuatro Millones de Dólares de los Estados Unidos de América) que constituye un anexo al presente contrato. Sin perjuicio de lo anterior, la DEUDORA solo estará obligada hasta por los montos efectivamente otorgados por el ACREEDOR, según se especifica en el número 4.2 de la Cláusula Cuarta de este **Contrato Marco de Préstamo**, más los intereses, comisiones,



gastos legales, y demás rubros a los que se ha obligado pagar en virtud del presente **Contrato Marco de Préstamo**.

**2.5** Todas las deudas que mantenga la DEUDORA con el ACREEDOR se encuentran garantizadas por el Contrato de Fideicomiso Mercantil en Garantía denominado **FIDECOMISO MERCANTIL PROEXPO-IIG CAPITAL** cuya finalidad es la de servir como instrumento para caucionar el **100%** de dichas obligaciones; para lo cual, se han transferido a dicho patrimonio autónomo camarón congelado, entero y cola, en producto terminado, que se mantendrán como propiedad de dicho fideicomiso, hasta que deba ser embarcado para ser exportado y vendido a los compradores de ultramar; ello sin perjuicio de los derechos que le corresponden al ACREEDOR como beneficiario del referido Contrato de Fideicomiso en Garantía.

Una vez que se haya efectuado la venta a los compradores de ultramar y se genere la FACTURA del producto vendido, se procederán a ceder dichas FACTURAS a favor de EL ACREEDOR, con el fin de cumplir con lo dispuesto en el numeral 2.3 de esta misma cláusula.

**CLAUSULA TERCERA: CONDICIONES PRECEDENTES AL DESEMBOLSO.-**

Previo al desembolso de la Línea de Crédito, cuyo procedimiento se encuentra establecido en la cláusula Cuarta del presente **Contrato Marco de Préstamo**, y como requisito sine qua non para efectuar el mismo, la DEUDORA deberá probar al ACREEDOR, de forma documental, que ha cumplido con las siguientes condiciones copulativas:

**3.1** La constitución del Contrato de Fideicomiso en Garantía a favor del ACREEDOR;
**3.2** La suscripción del Contrato de Verificación de Inventario con la Compañía Verificadora seleccionada por el ACREEDOR;
**3.3** La recepción por parte de la Fiduciaria del Fideicomiso Mercantil de Garantía de las pólizas de seguro con sus respectivos endosos en favor del Fideicomiso;
**3.4** La suscripción del Promissory Note o Pagaré;
**3.5** La suscripción del Account Control Agreement;
**3.6** La entrega del Validity Guarantee;
**3.7** La Aprobación de la renovación de la línea de crédito por parte de la Junta Directiva de la DEUDORA;
**3.8** La entrega de la copia de los estatutos actuales de la DEUDORA;
**3.9** El Registro UCC en los EEUU sobre el Colateral;
**3.10** Que se hayan obtenido resultados, en forma satisfactoria para el ACREEDOR, del proceso de *due diligence* legal de la Compañía DEUDORA;
**3.11** Que no se haya producido un hecho, acontecimiento, circunstancia o cambio en los ya existentes que implique un cambio adverso en la condición financiera y/o económica, operaciones, negocios, propiedades o prospectos de la DEUDORA;
**3.12** Actualización de la solicitud de financiamiento o BBC en formato del ACREEDOR;
**3.13** La constancia de notificación a los Clientes Cedidos;
**3.14** El pago de las Comisiones correspondientes; y,
**3.15** La entrega al ACREEDOR por parte de la DEUDORA, de cualquier otro documento que éste considere necesario solicitar a la DEUDORA.

El ACREEDOR se encargará de verificar el cumplimiento de todas las condiciones antes detalladas, a su entera satisfacción, luego de lo cual, la DEUDORA podrá iniciar el procedimiento de solicitud del desembolso de la Línea de Crédito.

**CLAUSULA CUARTA: PROCEDIMIENTO.-**

Al momento de la entrega a la DEUDORA de los fondos comprendidos en la línea de crédito, se seguirá el siguiente procedimiento:

**4.1** Las PARTES han convenido de mutuo acuerdo la **Tasa de Interés** y comisiones que el ACREEDOR percibirá por cada entrega de fondos que la DEUDORA le solicite; así como la Comisión de Renovación del **Contrato Marco de Préstamo** equivalente al 0.5% sobre el total del monto de la línea de crédito aprobada, que deberán pagar la DEUDORA al ACREEDOR al momento de la celebración del presente **Contrato Marco de Préstamo** y en cada renovación. De igual manera, las partes convienen que la DEUDORA mantendrá una garantía mínima del 100% del valor otorgado en préstamo o sobre sus saldos, según el caso. Esta garantía mínima está compuesta por las Facturas que se generan de las ventas que se realizan en ultramar y que han sido cedidas a favor del ACREEDOR "con responsabilidad", por parte de la DEUDORA; y por el Inventario de propiedad del Fideicomiso Mercantil de Garantía, tal cual ya se ha explicado en este mismo instrumento.

**4.2** La DEUDORA deberá remitir por cualquier medio escrito al ACREEDOR, un Certificado de Desembolso redactado según lo establecido en el Anexo I del presente **Contrato Marco de Préstamo**, el cual deberá estar firmado en forma autentica por la DEUDORA (instrumento al que en adelante se denominará como "Certificado de Desembolso", que es la solicitud de desembolso efectuada por la DEUDORA, bajo la forma y contenido aceptado por el ACREEDOR). A cada Certificado de Desembolso deberá acompañarse los documentos que justifiquen la constitución de la garantía conforme a lo establecido en el presente convenio, debidamente certificada por la Compañía Verificadora encargada del manejo de las mercaderías que las componen.

**4.3** Dentro de las setenta y dos horas (72 horas) siguientes a la recepción por parte del ACREEDOR y siempre que exista disponibilidad del ACREEDOR, de conformidad con lo dispuesto en los puntos 4.1 y 4.2 de la presente Cláusula, el ACREEDOR procederá a transferir los fondos requeridos a la cuenta bancaria de la DEUDORA, cuyos datos se indican a continuación:

**Banco Intermediario:** WACHOVIA BANK
**Dirección:** 11 Penn Plaza, 4th. Floor-New York, NY 10001- USA
**Swift:** PNBPUS3NNYC
**Aba:** 026005092
**Banco Beneficiario:** Banco Bolivariano
**Cuenta corriente:** 2000192372000
**Swift:** BBOLECEG100
**Para crédito final a:** PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A. Cta. # 0005211762

**4.4** Dentro del término máximo de siete (7) días hábiles subsiguientes a la acreditación de los fondos requeridos, en la cuenta de la DEUDORA, esta última deberá remitir obligatoriamente al ACREEDOR una nota confirmando la recepción de tales fondos prestados por EL ACREEDOR a la DEUDORA.

**CLÁUSULA QUINTA: OBLIGACIONES DE HACER POR PARTE DE LA DEUDORA.-**
Salvo autorización previa y por escrito del ACREEDOR, la DEUDORA cumplirá con las siguientes obligaciones mientras no se haya pagado la totalidad del PRESTAMO REVOLVENTE:

**a)** Cumplir sustancialmente con todas las leyes, ordenanzas, reglas, regulaciones y requerimientos de toda Autoridad de Gobierno (incluyendo pero no limitándose, a las licencias, certificados, permisos y otras autorizaciones gubernamentales necesarias para ser propietarios de sus bienes o para la conducción de sus respectivos negocios, leyes del medio ambiente y leyes relacionadas a la seguridad social y a las obligaciones de fondos de pensiones), a menos que: (i) su aplicación o necesario cumplimiento esté siendo impugnado por la DEUDORA; o, (ii) se trate de un incumplimiento que no afecte o respecto del cual no pudiera esperarse que afecte adversa y sustancialmente la capacidad para hacer frente a sus obligaciones de pago establecidas en el presente **Contrato Marco de Préstamo**, siempre que ello sea comunicado por escrito y aceptado por el ACREEDOR;

**b)** Cumplir con el pago de todo tributo conforme a la legislación de la República del Ecuador y de Panamá y los vinculados a la formalización, registro o legalización notarial del presente **Contrato Marco de Préstamo**, los demás Documentos de Préstamo y de cualquier otro documento relacionado con éste, y los establecidos en la actualidad o que se establezcan en el futuro sobre la realización de cualquiera de los pagos a efectuarse bajo el presente **Contrato Marco de Préstamo**, excepto por aquellas obligaciones tributarias que: (a) son o serán impugnadas siguiendo los procedimientos pertinentes dentro de los términos establecidos por las leyes aplicables de Ecuador; y/o, (b) respecto de los cuales no afecten o pudiera esperarse que afecten adversa y sustancialmente la capacidad para hacer frente a sus obligaciones de pago establecidas en el presente **Contrato Marco de Préstamo**, siempre que ello sea comunicado por escrito y aceptado por El ACREEDOR;

**c)** Obtener y mantener en plena vigencia y efecto todas las aprobaciones de la Autoridad de Gobierno que puedan ser necesarias para el otorgamiento y cumplimiento del **Contrato Marco de Préstamo** o para la validez y exigibilidad de los Documentos de Préstamo, y tomar todas las acciones razonablemente necesarias o convenientes ante las Autoridades de Gobierno respectivas para hacer todos los pagos que deba efectuarse conforme a los Documentos del Préstamo, excepto por aquellas licencias, autorizaciones, conformidades, aprobaciones o registros: (a) que actualmente no son necesarias y se espera obtener en el curso regular del negocio para el momento en que sean necesarias; y/o, (b) respecto de las cuales su falta no afecte o pueda esperarse que afecte adversa y sustancialmente su posibilidad de cumplir con sus obligaciones de pago según lo previsto en los Documentos de Préstamo, siempre que ello sea comunicado por escrito y aceptado por El ACREEDOR;

**d)** Comunicar inmediatamente al ACREEDOR sobre cualquier evento que afecte adversamente y de manera sustancial la situación económica o financiera de la DEUDORA;

**e)** Informar inmediatamente al ACREEDOR sobre la ocurrencia de uno o más Eventos de Incumplimiento;

**f)** Dentro de los treinta (30) primeros días de cada trimestre, los Gerentes Generales y/o Financieros de la DEUDORA deberá proporcionar un reporte en el cual se incluya un breve resumen de (i) los resultados operativos y financieros correspondientes al trimestre precedente, que muestren el desenvolvimiento de la DEUDORA; y, (ii) la relación de los procedimientos (judiciales, arbitrales, administrativos o de cualquier otra índole) iniciados en el trimestre precedente, sean o no contenciosos, en los que la DEUDORA sea parte y haya sido notificada, cuyo monto afecte de forma relevante la continuidad de la operación de la DEUDORA o la viabilidad de sus negocios;

**g)** Mantener en buen estado los activos de la DEUDORA que hayan sido transferidos al Fideicomiso Mercantil en Garantía, excepto por el desgaste común debido a su utilización;

**h)** Utilizar los fondos desembolsados en virtud del **Contrato Marco de Préstamo**, exclusivamente para el cumplimiento de los objetivos para los cuales fueron solicitados;

**i)** Pagar, en forma oportuna al ACREEDOR: (a) todos los costos adicionales que sean producto de cambios en la normativa que rige o afecta las operaciones de financiamiento del ACREEDOR para el otorgamiento de sus préstamos, u originados por el incumplimiento en el pago del principal por parte de la DEUDORA en las fechas establecidas en el Contrato; (b) los honorarios y gastos incurridos para dar cumplimiento a los derechos del ACREEDOR, conforme al presente **Contrato Marco de Préstamo** y al Pagaré, incluidos los honorarios y gastos legales; (c) los honorarios y gastos incurridos como resultado del incumplimiento de las Obligaciones de No Hacer establecidas en la cláusula sexta del presente **Contrato Marco de Préstamo**; (d) todos los cargos exigibles por concepto de, o en relación con, la formalización, el registro o la entrega de los Documentos de Préstamo; (e) la Comisión de Administración y Operación; (f) la Comisión de Renovación; y, g) Comisión de Precancelación. El ACREEDOR deberá detallar los costos legales, derechos, comisiones y otros cargos cuyo pago o reembolso solicite;

**j)** Entregar al ACREEDOR los estados financieros trimestrales no auditados de la DEUDORA (Balance General, Estado de Ganancias y Pérdidas y Estado de Flujos en Efectivo) dentro de los treinta (30) días calendario siguientes al cierre de cada trimestre;

**k)** Entregar al ACREEDOR los estados financieros auditados de la DEUDORA, dentro de los ciento veinte (120) días calendario siguientes al cierre de cada Ejercicio Fiscal;

**l)** Llevar libros y registros de contabilidad de acuerdo a ley y a los principios de contabilidad generalmente aceptados;

**m)** Mantener o causar que se mantengan póliza(s) de seguro(s) por compañías de seguros aceptables para El ACREEDOR, cubriendo todos los activos de la DEUDORA hayan sido transferidos al Fideicomiso Mercantil en Garantía. En todo caso, (i) estas pólizas deberán ser endosadas a favor del respectivo Fideicomiso.

**n)** Permitir que El ACREEDOR, o quien éste designe, realice evaluaciones anuales del grado de cobertura de las pólizas de seguro a que se refiere el literal anterior y, en caso de ser necesario, exija el incremento de dicha cobertura en el supuesto que ésta fuera deficiente;

**o)** Dar acceso a los representantes debidamente acreditados del ACREEDOR a las instalaciones de la DEUDORA con el fin de que se efectúen las verificaciones e inspecciones que El ACREEDOR estime necesarias, siempre que se solicite con tres (3) Días Hábiles de anticipación y se hagan en horarios normales de trabajo;

**p)** La DEUDORA deberá nombrar y mantener vigente la contratación como auditor externo a alguna de las tres (3) empresas que propondrá El ACREEDOR;

**q)** La DEUDORA deberá instruir a los auditores externos designados conforme al literal anterior para que, en cualquier momento durante la vigencia del **Contrato Marco de Préstamo**, el ACREEDOR los pueda contactar directamente, debiendo el auditor entregar la información que el ACREEDOR le indique. Si el trabajo del auditor genera un costo adicional a su honorario de auditoria, dicho será de cargo de la DEUDORA;

**r)** Notificar al ACREEDOR por escrito sobre cualquier Junta de Accionistas o Sesión de Directorio que afecte sustancial y adversamente el la Línea de Crédito, el **Contrato Marco de Préstamo** y los demás Documentos de Préstamo y suministrar una breve descripción de la agenda a tratar en la respectiva Junta o Sesión;

**s)** Indemnizar y eximir al ACREEDOR, sus ejecutivos, directivos, agentes y empleados de cualquier reclamo, daño, responsabilidad, costo o gasto (incluyendo, sin limitación alguna, los honorarios y demás gastos legales y por concepto de otros servicios profesionales) en que haya incurrido el ACREEDOR o que se hayan imputado al mismo en relación o como resultado de cualquier reclamo, investigación, litigio o procedimiento legal que se entable en relación con el presente **Contrato Marco de Préstamo** o con cualquier Documento de Préstamo, sus respectivas negociaciones, la preparación de la documentación pertinente, o la ejecución por parte del ACREEDOR de cualquier derecho o recurso que le hubiese sido conferido al amparo de tales documentos, sea o no El ACREEDOR una de las partes implicadas en el citado reclamo, investigación, litigio o procedimiento legal, salvo que dicho reclamo o costo sea producto de la negligencia grave o dolo del ACREEDOR, o de su representante autorizado.

**CLÁUSULA SEXTA: OBLIGACIONES DE NO HACER POR PARTE DE LA DEUDORA.-**

Salvo autorización previa y por escrito del ACREEDOR, y mientras no se haya pagado la totalidad del PRÉSTAMO REVOLVENTE, la DEUDORA se abstendrá de:

**a)** Pagar o declarar dividendos si se encuentra en incumplimiento con alguno de los términos y condiciones estipulados en el presente **Contrato Marco de Préstamo**, o si un Evento de Incumplimiento ocurre o continúa como resultado de tal declaración o pago de dividendos;

**b)** Reembolsar cualquier partida patrimonial a sus accionistas en forma diferente al reparto de dividendos si se encuentra en incumplimiento con alguno de los términos y condiciones estipulados en el presente **Contrato Marco de Préstamo** y en los Documentos de Préstamo, o si un Evento de Incumplimiento ocurre, es posible de ocurrir o continúa como resultado de tal reembolso;

**c)** Realizar algún cambio significativo en el giro principal y la naturaleza del negocio de la DEUDORA;

**d)** Enajenar o arrendar más del 20% de los activos fijos de la DEUDORA;

**e)** Reducir el capital social de la DEUDORA, salvo por las reducciones necesarias u obligatorias según la ley aplicable;

**f)** Realizar préstamos, garantizar y constituirse como fiador y/o avalista respecto de deuda de terceros, incluyendo a sus accionistas, directores y empleados, excepto por los préstamos otorgados y/o las garantías constituidas dentro del curso normal de sus negocios;

**g)** Celebrar contratos, acuerdos, negocios o transacciones con terceros, que no sean en condiciones de mercado en lo referente a precios, formas de pago, documentación, intereses sobre el monto de las obligaciones pagaderas a plazo, los plazos de entrega de mercaderías, productos o servicios, tasas de descuento, u otras semejantes;

**h)** Celebrar acuerdos en virtud de los cuales los ingresos o utilidades de la DEUDORA se compartan con terceros (excepto por sus empleados), o en virtud de los cuales los asuntos de la DEUDORA sean gestionados por terceros;

**i)** Otorgar préstamos a los accionistas, directores y empleados de la DEUDORA, fuera del curso habitual de sus negocios;

**j)** Pagar a los directores y empleados de la DEUDORA, dietas y remuneraciones u otras prestaciones que no sean conformes con las disposiciones legales vigentes, y que no sean conformes a las prácticas y montos aceptados en el mercado local para cargos y funciones similares.

**k)** Respecto de la DEUDORA, fusionarse, escindirse y, en general reorganizarse, o adquirir empresas o subsidiarias, cualquiera sea su actividad, sin el previo consentimiento del ACREEDOR.

**CLAUSULA SÉPTIMA: RESPONSABILIDAD SOBRE EL CREDITO CEDIDO - FORMA DE CANCELACIÓN.-**

**7.1.**   La DEUDORA es responsable frente al ACREEDOR, tanto respecto del crédito cedido, como de las FACTURAS:

   **a)** Su existencia y legitimidad;
   **b)** Que son y serán de libre disponibilidad y que no se encuentran ni se encontrarán afectados, por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza, a la fecha del presente **Contrato Marco de Préstamo** y durante toda su vigencia, y al momento en que se remitan los correspondientes Certificados de Desembolso;
   **c)** Que se encuentra y encontrará en su propiedad;
   **d)** Que no se encuentra ni encontrará inhibido para disponer de sus Bienes:
   **e)** Que no adeuda, ni adeudará durante la vigencia de este **Contrato Marco de Préstamo**, a los Clientes Cedidos suma alguna que pueda dar lugar a compensaciones de cualquier especie;
   **f)** Que no ha percibido suma alguna derivada de las FACTURAS, de los Créditos cedidos, ni que los mismos han sido cedidos total o parcialmente a persona física o Jurídica alguna con anterioridad y que no serán cedidos en el futuro a favor de una persona que no sea el ACREEDOR;



    g) La autenticidad de las firmas de quienes efectuaron las cesiones de las FACTURAS, en el caso de existir dichas firmas; así como también de todo instrumento proveniente del/ de los Deudor/es Cedido/s donde se acredite la recepción de las FACTURAS y/o del Inventario comprendido en ellas y la capacidad de los mismos para la realización de tales actos jurídicos;

    h) Que el crédito cedido y las FACTURAS no contienen ni contendrán defectos formales que pudieren motivar su rechazo.

    i) Que las FACTURAS, debidamente aprobadas por el ACREEDOR, no tendrán un plazo promedio de pago superior a treinta (30) días, contados a partir de la fecha de su emisión.

**7.2.** La financiación que mediante este **Contrato Marco de Préstamo** se instrumenta, será considerada devuelta o pagada en forma total o parcial, cuando el ACREEDOR reciba del Cliente Cedido el Pago de las FACTURAS; según instrucciones que previamente la DEUDORA haya impartido a los Clientes Cedidos. Dicho pago se deberá efectuar mediante depósito y/o acreditación bancaria en la cuenta del ACREEDOR, cuyos datos serán indicados por escrito por el ACREEDOR, mediante carta debidamente firmada por el representante del ACREEDOR.

A tal efecto, en adición a las notificaciones previstas en la Cláusula Décimo Quinta del presente **Contrato Marco de Préstamo**, la DEUDORA se obliga a incluir en todas y cada una de las FACTURAS que sean remitidas al Cliente Cedido, una leyenda que indique expresamente que tal FACTURA deberá ser pagada al ACREEDOR mediante transferencia de los fondos correspondientes a la cuenta bancaria del ACREEDOR (Cuenta Recolectora) que se incluirá en el texto de la leyenda.

**7.3.** La cesión del Crédito y de las FACTURAS se efectúa con responsabilidad por parte de la DEUDORA hacia el ACREEDOR. En consecuencia, si el importe de las FACTURAS no se encontrare abonado a la fecha de los respectivos vencimientos, como si dicho cumplimiento no se efectuare por rehusarse el Cliente Cedido por cualquier causa que fuere, o no se observare para el pago lo establecido en el punto 5.2. precedente, ello generará la obligación de la DEUDORA de abonar al ACREEDOR el importe total o el saldo adeudado correspondiente a dichos créditos, vencidos e impagos, dentro de las 48 horas de ser requerido por este último, abonando a su vez, los Intereses Compensatorios que se devenguen desde el vencimiento de cada FACTURA Impaga a la tasa que se hubiera aplicado. La mora de la DEUDORA se producirá de pleno derecho por el solo vencimiento del plazo fijado, a partir del cual deberá abonar los Intereses Compensatorios antes mencionados, hasta la efectiva y total cancelación del monto adeudado. La tasa de interés aplicable en caso de mora o incumplimiento es del 18%. Con el pago que efectúen la DEUDORA con motivo del requerimiento mencionado en el presente punto 5.3., ésta quedará subrogadas en los derechos del ACREEDOR frente al CLIENTE CEDIDO, debiendo el ACREEDOR entregar a la DEUDORA, la FACTURA y toda otra documentación que tenga en su poder y podrá realizar cualquier gestión que resulte necesaria para el cobro de la misma. Todo ello sin perjuicio de las acciones que podrá ejercer el ACREEDOR respecto del Cliente Cedido en virtud de su incumplimiento.

La suma de desembolsos adeudados y no cancelados, así como otros pagos o cargos que la DEUDORA deba pagar al ACREEDOR, estarán sujetos al cómputo de intereses y comisiones.

**CLÁUSULA OCTAVA: EVENTOS DE INCUMPLIMIENTO.-** Si uno o más de los hechos que se mencionan a continuación ocurre y continúa, el ACREEDOR tendrá derecho a tomar las acciones correspondientes establecidas en la Cláusula siguiente:

**(a)** Si un tercero pidiere la quiebra de la DEUDORA y no fuera rechazada dicha solicitud por el tribunal correspondiente;

**(b)** Si la DEUDORA incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos;





**(c)** si se trabare alguna medida cautelar sobre los Bienes de la DEUDORA;

**(d)** si se comprobare la falta de veracidad, parcial o total, por parte de la DEUDORA, en las aplicaciones de la Línea de Crédito objeto del presente **Contrato Marco de Préstamo**;

**(e)** si se incumpliere con las condiciones y obligaciones asumidas por parte de la DEUDORA en el Fideicomiso Mercantil denominado "FIDEICOMISO MERCANTIL PROEXPO-IIG CAPITAL";

**(f)** si se produjere cualquier alteración que a criterio del ACREEDOR, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para la Línea de Crédito objeto del presente **Contrato Marco de Préstamo**;

**(g)** Falta de pago oportuno de capital y/o intereses y/o comisiones y/o gastos de la Línea de Crédito en cualquiera de las fechas establecidas para ello;

**(h)** El reconocimiento por escrito por parte de la DEUDORA de la imposibilidad de pago de deudas, o la cesión general o abandono de Bienes en beneficio de ACREEDORes; o que:

    **(1)** la DEUDORA ingrese a un proceso concursal por solicitud propia;

    **(2)** una autoridad gubernamental u otro organismo que tenga jurisdicción sobre la DEUDORA o sus activos:

        **(2.1)** comience un procedimiento concursal ordinario o preventivo con respecto a la DEUDORA o sus activos; o,

        **(2.2)** tome alguna acción bajo cualquier legislación en materia concursal, de reestructuración patrimonial, disolución, liquidación, quiebras, insolvencia, saneamiento patrimonial, suspensión de pagos u otra similar que regule la operación de la DEUDORA que pueda imposibilitar a la DEUDORA para cumplir las obligaciones que ésta asumen de conformidad con los Documentos del Préstamo cuando se hagan exigibles, según corresponda;

    **(3)** un procedimiento concursal ordinario involuntario sea iniciado con respecto a la DEUDORA o sus activos por una persona distinta a una autoridad gubernamental u organismo que tenga jurisdicción sobre la DEUDORA o sus activos y dicho procedimiento concursal ordinario no sea dejado sin efecto dentro de los tres (3) días calendario de su inicio o presentación; y/o

    **(4)** la DEUDORA se encuentre en quiebra, concursada, en disolución, liquidación, o en insolvencia bajo los términos de cualquier legislación en materia de quiebras, concursos o insolvencia que le sea aplicable; y/o

    **(5)** la convocatoria a una junta general de accionistas de la DEUDORA para tratar su respectiva disolución y/o liquidación;

**(i)** Que, si ante la ocurrencia de cualquier hecho, evento o circunstancia el **Contrato Marco de Préstamo** o los otros Documentos de Préstamo se conviertan (o exista la amenaza fundada a criterio del ACREEDOR) en inexigibles o dejaren de tener vigencia y/o validez, parcial o total, y/o efecto, ocasionando que El ACREEDOR deje de tener los derechos, poderes o privilegios otorgados a su favor en virtud de dichos documentos, a solo criterio del ACREEDOR, exceptuándose cualquier hecho, evento o circunstancia imputable al ACREEDOR;

**(j)** Que ocurra cualquier acto gubernamental o político o que alguna persona actúe bajo autorización del gobierno con el fin de tomar acciones que condenen, expropien, embarguen, nacionalicen, o asuman custodia o control de, todo o parte de los activos de la DEUDORA o sus operaciones, o tomen alguna medida que desplace al directorio y/o gerencia de la DEUDORA o limite su autoridad en la realización de sus negocios o generen un Efecto Sustancialmente Adverso;



**(k)** La obligación de pago originada por:

**(1)** un mandato arbitral, judicial o acuerdo extrajudicial, emanado de un procedimiento terminado no sujeto a recurso impugnatorio alguno, o

**(2)** una resolución administrativa o acto administrativo consentido, que genere la obligación de pago por parte de la DEUDORA por un monto que IIG considere materialmente adverso;

**(l)** Que ocurran cambios sustanciales adversos en las leyes y/o eventos políticos adversos que generen un Efecto Sustancialmente Adverso;

**(m)** Que la DEUDORA transfiera, permute, ceda en dominio fiduciario, enajene (mediante una negociación o una serie de negociaciones) o disponga de otra forma de sus activos, sin la autorización previa del ACREEDOR;

**(n)** Que la DEUDORA otorgue o constituya Garantías;

**(ñ)** Que ocurran eventos que cambien las condiciones del mercado financiero nacional y/o internacional de manera tal que genere un Efecto Sustancialmente Adverso, a criterio del ACREEDOR;

**(o)** Que ocurran eventos extraordinarios tales como caso fortuito, guerra, vandalismo, terrorismo, huelga, *boycott*, insurrección, incendio, desastre natural que generen un Efecto Sustancialmente Adverso;

**(p)** Que la DEUDORA pierda alguna de sus licencias, certificados, permisos, concesiones, derechos o autorizaciones, o que ocurra algún evento que genere esta pérdida y que genere un Efecto Sustancialmente Adverso, siempre que la DEUDORA no obtenga nuevamente dicha licencia, certificado, permiso, concesión, derecho o autorización dentro de los diez (10) días calendario siguientes a su pérdida;

**(q)** Que se inicien uno o más procesos judiciales, arbitrales, administrativos o extrajudiciales (distintos de aquellos declarados por la DEUDORA al momento de realizar el *due diligence* de ésta) que razonablemente le pueda generar a la DEUDORA una contingencia que pueda generar un Efecto Sustancialmente Adverso, a criterio del ACREEDOR;

**(r)** Que las obligaciones de este **Contrato Marco de Préstamo** y del Pagaré dejen de tener preferencia y prioridad de pago respecto con cualquier otra obligación de la DEUDORA (excluyendo aquellas cuyos reclamos sean preferidos por cualquier norma legal de aplicación general sobre procesos concursales, reestructuración patrimonial, quiebra, insolvencia, saneamiento patrimonial, liquidación o similares);

**(s)** Que se emita un fallo o resolución de carácter no monetario en contra de la DEUDORA emanada de un procedimiento terminado no sujeto a recurso impugnatorio alguno, que genere un Efecto Sustancialmente Adverso; y/o,

**(t)** Que, se haya verificado la ocurrencia de un evento calificado como evento de incumplimiento en los Documentos del Préstamo distintos a este **Contrato Marco de Préstamo**.

**CLÁUSULA NOVENA: ACCIONES DERIVADAS DE EVENTOS DE INCUMPLIMIENTO.-** Sin perjuicio de las demás acciones y derechos que pueda ejercer el ACREEDOR conforme a los Documentos del Préstamo, ante la ocurrencia de un Evento de Incumplimiento, El ACREEDOR podrá, a su sola discreción, ejercer, simultánea o sucesivamente, una o más de las siguientes acciones:

**(a)** Declarar la deuda derivada de las FACTURAS cedidas, como de plazo vencido y solicitar el pago de todo lo adeudado; así como declarar de plazo vencido todos los montos que la DEUDORA deba pagar en virtud de este Contrato Marco de Préstamo o en virtud al Pagaré, mediante aviso escrito,

que de otra forma sean exigibles con posterioridad a la fecha de dicho aviso, como inmediatamente exigibles y pagaderos, para lo cual las Partes en este acto convienen en que, a partir de ese momento, tales montos serán exigibles y pagaderos, sin que medie diligencia, exhortos, avisos, presentación para el pago, requerimiento judicial o extrajudicial, protesto o cualesquiera otra formalidad, a todas las cuales la DEUDORA renuncia en forma expresa. Para los efectos previstos en esta cláusula, la DEUDORA acepta que el efecto de la declaratoria de plazo vencido antes indicada, será el de permitir al ACREEDOR declarar de plazo vencido la totalidad de las obligaciones pendientes de pago y proceder al cobro inmediato de las sumas adeudadas, las cuales se considerarán, sin necesidad de notificación, protesto o requerimiento judicial de ninguna especie como líquidas, exigibles y pagaderas de inmediato;

**(b)** Ejecutar el Contrato de Fideicomiso Mercantil en Garantía con la finalidad de realizar el cobro de la totalidad de las obligaciones pendientes de pago, sin perjuicio de requerir el pago de la totalidad de las obligaciones pendientes de pago y ejercer otros remedios que le otorgan las LEYES APLICABLES. Para efectos de lo indicado anteriormente, la liquidación del monto de las obligaciones pendientes de pago será realizada por El ACREEDOR y comunicada a la DEUDORA para su pago; obligándose la DEUDORA a abonar el monto de la liquidación que le hubiere sido entregada por El ACREEDOR; y/o

**(c)** Iniciar las acciones legales para cautelar sus intereses, incluyendo la posibilidad de solicitar medidas cautelares sobre los Bienes y derechos de la DEUDORA.

En caso de ejecución del crédito concedido con cargo a la Línea de Crédito, el ACREEDOR podrá ejecutar el colateral entregado en garantía por parte de la DEUDORA y si éste no alcanzare para pagar la totalidad del crédito concedido, más los intereses generados, incluyendo el moratorio, más las comisiones generadas y demás gastos judiciales y extrajudiciales que se requieran cubrir, la ACREEDORA podrá, lo cual es autorizado expresamente por la DEUDORA en este acto, cobrarse de los restantes activos que posea la DEUDORA.

**CLAUSULA DÉCIMA: MONEDA DE PAGO.-**

En los casos en que la DEUDORA y/o el Cliente Cedido, deban pagar al ACREEDOR o a quien este indique, el importe total o el saldo adeudado correspondiente a las FACTURAS conforme lo establece la Cláusula Séptima; la DEUDORA declara por el presente instrumento, que dichos montos deberán ser necesariamente pagados en Dólares de los Estados Unidos de Norteamérica y no en otra moneda. En consecuencia, la DEUDORA expresamente reconoce y acepta que constituye condición esencial de este **Contrato Marco de Préstamo**, de que se realice el financiamiento, de la cesión del crédito cedido y de las FACTURAS; que el capital, los intereses compensatorios y moratorios, costos, costas y demás sumas de dinero, tendrán que ser abonadas al ACREEDOR en dólares estadounidenses.

**CLAUSULA DÉCIMO PRIMERA: OBLIGACIONES ADICIONALES DE LA DEUDORA.-**

La DEUDORA se compromete a satisfacer, en la medida de sus posibilidades, toda la información razonable que el ACREEDOR pudiera requerirle relacionada con los créditos cedidos emanados de las FACTURAS; y asimismo se obligan a cumplir con todas aquellas obligaciones que pudieran corresponderles para que los créditos derivados de las FACTURAS cedidas sean abonados al ACREEDOR, obligándose a realizar todas las gestiones que resulten necesarias a efecto de que el ACREEDOR obtenga el reconocimiento pleno de los créditos derivados de las FACTURAS cedidas, asumiendo la DEUDORA todos los razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el ACREEDOR para obtener el cobro del crédito cedido derivado de las FACTURAS o la devolución de las sumas financiadas.

También se comprometen, ante la existencia de incumplimiento o falsedad a lo establecido en la Cláusula Séptima, ante el requerimiento que le efectúe el ACREEDOR, a abonar dentro de las 48 horas de ser notificado, la suma que corresponda a la porción o totalidad del monto financiado por

este último, que no haya sido abonada por el Cliente Cedido, con más los pertinentes intereses compensatorios pactados, conforme la Cláusula Séptima.

Adicionalmente, la DEUDORA deberá entregar al ACREEDOR informes financieros trimestrales de la empresa, en un plazo máximo de 30 días contados a partir del cierre de cada trimestre y estados financieros anuales auditados.

**CLAUSULA DÉCIMO SEGUNDA: COMISIONES, GASTOS, IMPUESTOS Y TRIBUTOS.-**

Toda comisión, impuesto, tributo y/o gastos que las operaciones detalladas en este **Contrato Marco de Préstamo** o que el mismo, pudiere generar, son aceptadas por la DEUDORA quien se obliga a pagarlas al ACREEDOR.

**CLAUSULA DÉCIMO TERCERA: AUTORIZACION DE CESION.-**

La DEUDORA autoriza expresamente al ACREEDOR para que pueda proceder a la cesión del presente Contrato Marco de Préstamo y los correspondientes Certificados de Desembolso, y de los derechos y obligaciones contemplados en el mismo, a los Fondos manejados o administrados directamente por EL ACREEDOR; debiéndose dejar constancia en dichas cesiones, que los beneficiarios de la cesión de derechos que se haga de este **Contrato Marco de Préstamo**, no podrán, a su vez, cederlo a terceros que no sean Fondos manejados o administrados por EL ACREEDOR directamente. En el evento de que EL ACREEDOR deseare ceder los derechos derivados de este **Contrato Marco de Préstamo** a entidades nacionales o extranjeras que no fuesen subsidiarias, afiliadas o relacionadas con el mismo, EL ACREEDOR deberá contar con la autorización expresa por parte de la DEUDORA.

**CLAUSULA DÉCIMO CUARTA: DECLARACIÓN DE CUMPLIMIENTO DE POLÍTICAS DE MEDIO AMBIENTE, SEGURIDAD, SALUD Y LABORALES.-**

La DEUDORA hasta la presente fecha ha ejercido y en el futuro ejercerá todas las acciones necesarias para mantener y cumplir todas las políticas, leyes, regulaciones, convenios y tratados internacionales sobre protección del medio ambiente, salud, seguridad y materia laboral que rigen en el Ecuador.

La DEUDORA declara además, que hasta la presente fecha, no tiene conocimiento de que se haya iniciado en su contra alguna acción o reclamo por daños ambientales que impliquen interposiciones de multas, penalidades, costos de limpieza, reembolso de gastos al gobierno, pagos por daños causados, orden de prisión dictada en contra de los representantes legales de la DEUDORA, reducción del valor de garantías de daño o responsabilidad ambiental, etc. y cuyos efectos le impida cumplir con todas las obligaciones asumidas en este **Contrato Marco de Préstamo**. De igual forma la DEUDORA se compromete a realizar todas las acciones y adoptar todas las medidas necesarias para prevenir que esto ocurra en el futuro.

La DEUDORA declara que los fondos provenientes de la línea de crédito aprobada a su favor por el ACRREDOR no serán utilizados para financiar la producción, comercialización, procesamiento o utilización de Bienes prohibidos o realizar actividades ilícitas o prohibidas por el ACREEDOR en el Anexo A del documento que contiene las Políticas y Procedimientos de Protección Ambiental (Environmental Due Diligence Policy and Procedures) que ha sido previamente entregado a la DEUDORA y aceptado su contenido.

**CLAUSULA DÉCIMO QUINTA: NOTIFICACIONES.-**

**15.1** La DEUDORA se obliga a notificar en forma fehaciente a los Clientes Cedidos que deberán depositar el pago de las FACTURAS de compra, cuya cesión se perfeccionará en el momento en que se efectúe la operación de financiamiento materia de este **Contrato Marco de Préstamo**, depósito que se realizará en la cuenta del ACREEDOR; para tal



efecto, el ACREEDOR notificará a los Clientes Cedidos por medio de una Carta de Notificación (Anexo II) en papel membretado del DEUDOR y suscrita por éste, y a su vez, los Clientes Cedidos deberán remitir al ACREEDOR dicha comunicación con su firma de aceptación.

**15.2**   En caso de extinguirse totalmente las obligaciones contraídas por la DEUDORA, el ACREEDOR, de quedar pendientes derechos u obligaciones correspondientes a las FACTURAS cedidas, se compromete a notificar tal circunstancia a los Clientes Cedidos.

Una vez extinguidas las obligaciones de la DEUDORA con el ACREEDOR, el ACREEDOR, se obliga a depositar en la cuenta de la DEUDORA cualquier suma que hubiere recibido de los Clientes Cedidos con posterioridad a la referida extinción de obligaciones de la DEUDORA.

**CLAUSULA DÉCIMO SEXTA: RENDICIÓN DE CUENTAS.-**

El ACREEDOR en forma semanal deberá rendir cuentas a la DEUDORA de las sumas recibidas de los Clientes Cedidos y su debida imputación al pago de las FACTURAS y demás derechos u obligaciones de la DEUDORA.

**CLAUSULA DÉCIMO SÉPTIMA: VIGENCIA.-**

El presente Contrato Marco de Préstamo así como los términos emergentes de los Certificados de Desembolso derivados de los mismos, tendrá un plazo de vigencia de un año, contado a partir de la fecha de suscripción que haga el ACREEDOR, al término del cual se renovará automáticamente, sin perjuicio de que las Partes deban confirmar por escrito su aceptación a la renovación. En todo caso si al término del plazo antes fijado, la DEUDORA mantuviere pendientes obligaciones con el ACREEDOR, el presente **Contrato Marco de Préstamo** se mantendrá vigente hasta que se cumpla en su totalidad los derechos u obligaciones de las PARTES respecto de las FACTURAS cedidas.

Adicionalmente a ello, cualquiera de las PARTES podrá rescindir el mismo en cualquier momento sin expresar causa, notificando en forma fehaciente a la otra parte con 30 (treinta) días de anticipación. En este supuesto, la DEUDORA deberá pagar al ACREEDOR la Comisión de Pre Cancelación, y de quedar pendiente alguna operación de mutuo y/o cesión, el Contrato Marco de Préstamo mantendrá su vigencia, conforme se establece en el primer párrafo de la presente Cláusula Décimo Séptima con posterioridad al cumplimiento del plazo de preaviso, hasta que se produzca la conclusión de la aludida operación y con efecto únicamente para la misma.

**CLAUSULA DÉCIMO OCTAVA: NOTIFICACIONES A LAS PARTES.-**

Las comunicaciones dirigidas a todas las PARTES comparecientes, relacionadas con cualquier evento suscitado durante la vigencia del presente CONTRATO se realizarán por cualquier medio auténtico escrito, y serán dirigidas a las siguientes direcciones:

IIG CAPITAL LLC
Contactos: NEW YORK: Carlos R Cano y/o Thomas LaVecchia.
           GUAYAQUIL: Dr. Roberto González Torre, Dirección: Avenida Francisco de Orellana, edificio Centro Empresarial Las Cámaras, piso 6, oficina 604, Teléfono: 2681020.

IVORFIELD TRADING CORP.
Contacto: Edgardo E. Díaz
Dirección: Calle 53 Este, Urb. Marbella, Torre Swiss Bank, 2do. piso, Panamá, República de Panamá.
Teléfono: 507 2692620 – 2643111





**CLAUSULA DÉCIMO NOVENA: JURISDICCION Y LEY APLICABLE.-**

Este Contrato Marco de Préstamo ha sido redactado conforme a la legislación del Estado de Nueva York, Estados Unidos de América, siendo aplicable al mismo y a las PARTES firmantes la legislación vigente en dicho Estado.

Para todos los efectos Judiciales, las PARTES se someten a la Jurisdicción de los Tribunales de la Ciudad de Nueva York, Estados Unidos de América, renunciando expresamente a cualquier otro fuero o Jurisdicción que pudiera corresponder. No obstante lo expuesto EL ACREEDOR tendrá derecho para demandar a la DEUDORA en el domicilio judicial que escoja.

**CLAUSULA VIGÉSIMA: DOMICILIOS ESPECIALES.-**
Para cualesquiera notificaciones derivadas del presente, las PARTES constituyen los domicilios especiales contractuales en los indicados en el encabezamiento del presente Contrato Marco de Préstamo, donde tendrán eficacia todas las que se realicen, sean extrajudiciales o Judiciales.

**CLAUSULA VIGÉSIMO PRIMERA: FIRMAS Y RECEPCION DE INSTRUMENTOS.-**
Se firman 3 (tres) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 2 juegos en poder del ACREEDOR y un 1 Juego en poder de la DEUDORA.

**CLAUSULA VIGÉSIMO SEGUNDA: CONFIDENCIALIDAD.-**

Las partes convienen de manera expresa mantener la confidencialidad relacionada con el objeto del presente **Contrato Marco de Préstamo**. Además ambas partes se comprometen a no divulgar cualquier "know how" o secretos comerciales o industriales que uno respecto del otro llegare a conocer. De igual forma las partes mantendrán confidencialidad respecto de los datos e información relativa a los "Clientes Cedidos", siendo extensiva esta obligación a los eventuales sucesores en el derecho del ACREEDOR.

**CLAUSULA VIGÉSIMO TERCERA: LUGAR Y FECHA DE SUSCRIPCIÓN DEL PRESENTE CONTRATO MARCO DE PRÉSTAMO.-**

Para constancia de lo acordado, la compañía **IVORFIELD TRADING CORP.** por intermedio de su Presidente suscribe el presente **Contrato Marco de Préstamo** en la ciudad de Panamá, República de Panamá a los __17__ días del mes de __JULIO__ del 2009; declarando que aceptan que el presente instrumento quede perfeccionado con la suscripción que del mismo hará en la ciudad de New York, Estados Unidos de América, el Señor Thomas LaVecchia, representante de IIG CAPITAL LLC AS AGENT.

**ACEPTACIÓN:** En señal de conformidad con todo lo pactado en este instrumento, la compañía **IIG CAPITAL LLC AS AGENT**, por intermedio de su Apoderado el señor Thomas LaVecchia, suscribe este **Contrato Marco de Préstamo** en la ciudad de New York, Estados Unidos de Norteamérica, a los __24__ días del mes de __julio__ del 2009.

|  ACREEDOR | DEUDORA |
|---|---|
| Sr. Thomas LaVecchia | Sr. Edgardo E. Díaz |
| Pasaporte Americano # 096075277 | Ced. No. 7-84-1234 |
| IIG CAPITAL LLC | p. IVORFIELD TRADING CORP. |

Yo, LICDO. DIOMEDES EDGARDO CERRUD, Notario Público Quinto del Circuito de Panamá, con Cédula No. 8-171-301

## CERTIFICO:

Que la(s) firma(s) anterior(es) de: _____

**EDGARDO E. DÍAZ**

ha(n) sido reconocida(s) como suya(s) por los firmantes, por consiguiente dicha(s) Firma(s) es (son) auténtica(s).

Panamá, **20 JUL 2009**

_____          _____
TESTIGO                         TESTIGO

Lcdo. Diomedes Edgardo Cerrud
Notario Público Quinto

## CUARTO ADENDUM A LA FIANZA SOLIDARIA

### CLÁUSULA PRIMERA: OTORGANTES.-

Comparecen a la celebración del presente instrumento, las siguientes partes:

1.1 La compañía **IIG CAPITAL LLC AS AGENT**, representada por el Sr. Thomas LaVecchia, en su carácter de Senior Director, domiciliado en 1500 Broadway, 17th floor, New York, New York, 10036 USA, parte a la que en adelante se la denominará como el **"ACREEDOR"**; por otra parte,

1.2 La Compañía **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.**, antes denominada YAESDSE S.A., representada en este acto por el señor Jaime Faggioni Alzen, en su calidad de Gerente General y representante legal, con domicilio en solar 1 de la manzana 128, km. 23,5 de la carretera Guayaquil-Salinas; a quien se la denominará como la **"FIADORA SOLIDARIA"**.

### CLÁUSULA SEGUNDA: ANTECEDENTES.-

Con fecha 20 de julio del 2009, la compañía PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A. otorgó una fianza solidaria a favor de la compañía IIG CAPITAL LLC para garantizar las obligaciones contraídas por la compañía panameña IVORFIELD TRADING CORP. mediante un Contrato Marco de Préstamo por la suma de USD 4'000.000,oo más intereses, gastos y comisiones.

Posteriormente, el Acreedor aceptó incrementar la Línea de Crédito concedida hasta US$ 6'000.000, por lo cual las partes suscribieron un adendum a la presente fianza con fecha 22 de abril del 2010 por parte del DEUDOR y 28 de abril del 2010 por parte del Acreedor.

Posteriormente, el Acreedor aceptó incrementar la Línea de Crédito concedida hasta US$ 8'000.000, por lo cual las partes suscribieron un adendum a la presente fianza con fecha 15 de Julio del 2010 por parte del DEUDOR y 11 de agosto del 2010 por parte del Acreedor.

Posteriormente, el Acreedor aceptó incrementar la Línea de Crédito concedida hasta US$ 9'000.000, por lo cual las partes suscribieron un adendum a la presente fianza con fecha 15 de Noviembre del 2010 por parte del DEUDOR y 15 de Diciembre del 2010 por parte del ACREEDOR.

En virtud de que la compañía IIG CAPITAL LLC y la compañía IVORFIELD TRADING CORP. suscribirán un nuevo Adendum Modificatorio al Contrato Marco de Préstamo ampliado la suma de la Línea de Crédito concedida hasta US$ 10'000.000; las partes acuerdan suscribir el presente Cuarto Adendum para realizar las reformas siguientes:

### CLÁUSULA TERCERA: REFORMA.-

Las partes expresamente y de mutuo acuerdo deciden reformar el numeral 2.1 de la cláusula segunda de la Fianza Solidaria suscrita el 20 de Julio del 2009, quedando su texto de la siguiente forma:

"2.1 La compañía IVORFIELD TRADING CORP. (en adelante denominada la "DEUDORA") contraerá obligaciones a favor de la compañía IIG CAPITAL LLC en virtud de la suscripción de

un Contrato Marco de Préstamo para la implementación de una Línea de Crédito Revolvente, representado además documental, cartular y ejecutivamente en una Nota Promisoria (Promissory Note en inglés, pagaré). El importe de dicha Línea de Crédito a contratarse por IVORFIELD TRADING CORP. será de USD 10'000.000,oo más intereses, gastos y comisiones."

**CLÁUSULA CUARTA: DECLARACIONES.-**
Es voluntad de las partes dejar constancia que todas las demás estipulaciones que constan en la Fianza Solidaria suscrita el 20 de Julio del 2009, mantienen plena vigencia y validez, y aclaran que lo único que se reforma mediante el presente cuarto adendum modificatorio es la cláusula antes mencionada.

**CLÁUSULA QUINTA: ACEPTACIÓN.-** Para constancia de lo acordado, la compañía **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.** por intermedio de su Gerente General suscribe el presente Cuarto Adendum a la Fianza Solidaria en la ciudad de Guayaquil, República del Ecuador a los 15 días del mes de Enero del 2011; declarando que acepta que el presente instrumento quede perfeccionado con la suscripción que del mismo hará en la ciudad de New York, Estados Unidos de América, el Señor Thomas LaVecchia, representante de IIG CAPITAL LLC AS AGENT.

**ACEPTACIÓN:** En señal de conformidad con todo lo pactado en este instrumento, la compañía **IIG CAPITAL LLC AS AGENT**, por intermedio de su Apoderado el señor Thomas LaVecchia, suscribe este Cuarto Adendum a la Fianza Solidaria en la ciudad de New York, Estados Unidos de Norteamérica, a los ___04___ días del mes de ___Marzo___ del 2011.

**ACREEDOR**
Sr. Thomas LaVecchia
Pasaporte Americano # 096075277
IIG CAPITAL LLC

**FIADORA SOLIDARIA**
Sr. Jaime Faggioni Alzen
c.c. 0900106972
p. PROEXPO, PROCESADORA Y
EXPORTADORA DE MARISCOS S.A.