# EXHIBIT U





Factura: 001-101-000041540

20180901014D00384

### DILIGENCIA DE RECONOCIMIENTO DE FIRMAS N° 20180901014D00384

Ante mí, NOTARIO(A) SUPLENTE TORIBIO SAUL SANCHEZ MORAN de la NOTARÍA DÉCIMA CUARTA EN RAZÓN DE LA ACCIÓN DE PERSONAL 00856-DP09-2018-MA, comparece(n) JAIME ENRIQUE FAGGIONI ALZEN portador(a) de CÉDULA 0900106972 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil CASADO(A), domiciliado(a) en SAMBORONDÓN, REPRESENTANDO A LA COMPAÑÍA PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A. en calidad de GERENTE GENERAL; CECILIA DEL CARMEN SIERRA MORAN portador(a) de CÉDULA 0915381644 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil SOLTERO(A), domiciliado(a) en GUAYAQUIL, REPRESENTANDO A EL FIDEICOMISO TRADE FINANCE TRUST en calidad de APODERADO(A); DAVID XAVIER BAQUERIZO VITERI portador(a) de CÉDULA 0907992812 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil CASADO(A), domiciliado(a) en GUAYAQUIL, REPRESENTANDO A LA COMPAÑÍA RELAFIR SOCIEDAD ANÓNIMA en calidad de APODERADO(A) GENERAL; quien(es) declara(n) que la(s) firma(s) constante(s) en el documento que antecede CONTRATO MARCO DE PRÉSTAMO, es(son) suya(s), la(s) misma(s) que usa(n) en todos sus actos públicos y privados, siendo en consecuencia auténtica(s), para constancia firma(n) conmigo en unidad de acto, de todo lo cual doy fe. La presente diligencia se realiza en ejercicio de la atribución que me confiere el numeral noveno del artículo dieciocho de la Ley Notarial. El presente reconocimiento no se refiere al contenido del documento que antecede, sobre cuyo texto ésta Notaría no asume responsabilidad alguna. – Se archiva un original. GUAYAQUIL, a 31 DE ENERO DEL 2018, (17:36).

JAIME ENRIQUE FAGGIONI ALZEN
CÉDULA: 0900106972

CECILIA DEL CARMEN SIERRA MORAN
CÉDULA: 0915381644

DAVID XAVIER BAQUERIZO VITERI
CÉDULA: 0907992812

NOTARIO(A) SUPLENTE TORIBIO SAUL SANCHEZ MORAN
NOTARÍA DÉCIMA CUARTA DEL CANTÓN GUAYAQUIL
AP: 00856-DP09-2018-MA



## CONTRATO MARCO DE PRÉSTAMO

El presente contrato se celebra entre las siguientes partes: El Fideicomiso **TRADE FINANCE TRUST,** entidad no financiera incorporada bajo las leyes del Estado de Delaware, de los Estados Unidos de América, domiciliada en 1011 Centre Road, Suite 200 Wilmington, Delaware 19805, debidamente representada por la Abogada Cecilia Sierra Morán, en calidad de Apoderada Especial, parte que para los efectos del presente contrato se denominará simplemente como **"EL ACREEDOR"**; por otra parte, la compañía **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.** de nacionalidad Ecuatoriana y con domicilio principal en el kilómetro 23 ½ de la vía a la Costa, manzana 128, solar 1, del cantón Guayaquil, Provincia del Guayas, República del Ecuador, debidamente representada por su Gerente General y Representante Legal, señor Jaime Enrique Faggioni Alzen, parte que para los efectos del presente contrato se denominará simplemente como **"LA DEUDORA"**; y por otra parte, la compañía **RELAFIR SOCIEDAD ANONIMA**, de nacionalidad Uruguaya y con domicilio en la calle Juncal número 1378 oficina 1406, ciudad de Montevideo, República Oriental del Uruguay, debidamente representada por su Apoderado General, señor David Xavier Baquerizo Viteri, a quien se la denominará como **"LA FIADORA SOLIDARIA".** Las partes antes mencionadas convienen en celebrar el presente contrato marco de préstamo, que en adelante se lo denominará como el "**Contrato Marco de Préstamo**", en el cual se establecen los términos y condiciones que deberán observarse para la implementación de una Línea de Crédito revolvente para la

## MASTER LOAN AGREEMENT

This agreement is entered into by and between the following parties: The Trust, **TRADE FINANCE TRUST,** a non-financial institution established under the laws of the State of Delaware, the United States of America, with official domicile in 1011 Centre Road, Suite 200 Wilmington, Delaware 19805, duly represented by the Lawyer Cecilia Sierra Moran in his capacity as Attorney-in-Fact, party who, for the purposes hereof, shall be simply referred to as **"THE CREDITOR";** and the other party, **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.**, an Ecuadorian company with official domicile in kilómetro 23 ½ de la vía a la Costa, manzana 128, solar 1, Guayaquil district, Guayas Province, Republic of Ecuador duly represented by its General Manager and Legal Representative, Mr. Jaime Enrique Faggioni Alzen, party who, for the purposes hereof, shall be simply referred to as **"THE DEBTOR";** and the other party, the company **RELAFIR SOCIEDAD ANONIMA**, of Uruguayan nationality and domiciled in Juncal Street number 1378 office 1406, city of Montevideo, Republic Oriental of Uruguay duly represented by its General Attorney, Mr. David Xavier Baquerizo Viteri, will hereinto be referred to as **"JOINT AND SEVERAL GUARANTOR".** The aforementioned parties agree to enter into this master loan agreement, hereinafter referred to as the "**Master Loan Agreement**", which establishes the terms and conditions that must be observed for the implementation of a Revolving Line of Credit for financing investment to purchase raw materials, produce goods (semi-finished and finished products) and export, to be granted by the CREDITOR to **THE DEBTOR** (in force for current loan operations and any granted in the future) and shall be subject to the following clauses

financiación de inversión en la compra de materia prima, producción de bienes (producto semi procesado y producto terminado) así como de las exportaciones, que el ACREEDOR otorgará a **LA DEUDORA** (rigiendo para las operaciones de crédito vigentes y para las que se otorguen en el futuro), y que estará sujeta a las siguientes cláusulas:

**CLAUSULA PRIMERA: DEFINICIONES.-** Los siguientes términos tienen los significados que se indican a continuación, dondequiera que figuren en el presente Contrato Marco de Préstamo:

**"Adeudado"** significa el saldo insoluto de la Línea de Crédito adeudada por la DEUDORA al ACREEDOR.

**"Autoridad de Gobierno"** significa cualquier funcionario u organismo de un Estado que esté investido con potestades públicas.

**"BBC o Borrowing Base Certificate"** significa el documento mediante el cual se solicitan los fondos y donde se detallan la garantía, monto adeudado y el saldo disponible a solicitar.

**"Bienes"** significan en general activos fijos, materia prima, producto semi procesado, producto terminado, así como los derechos que accedan a los referidos bienes.

**"Clientes Cedidos"** son las personas naturales o jurídicas a quienes LA DEUDORA vende sus productos y que han sido aprobados por el ACREEDOR.

**"Colateral"** significa el contrato de Fideicomiso Mercantil en Garantía que constituye la DEUDORA para garantizar las obligaciones de LA DEUDORA a favor del Acreedor con el propósito de transferir el inventario y/o los derechos que recaen sobre dicho inventario, de propiedad de LA DEUDORA o de un tercero para garantizar las obligaciones de LA DEUDORA a favor del Acreedor, y el contrato de Encargo Fiduciario que constituye la DEUDORA a favor del

**CLAUSE ONE: DEFINITIONS** – The terms below shall have the following meanings wherever they appear in this Master Loan Agreement:

**"Balance due"** means the unsettled balance of the Line of Credit owed by the DEBTOR to the CREDITOR.

**"Government Authority"** means any state official or organization vested with public powers.

**"BBC or Borrowing Base Certificate"** means the document by which funds are requested and which contains the guarantee details, balance due and balance available for request.

**"Assets"** means in general fixed assets, raw materials, semi-finished products, finished products, as well as any rights of access to said fixed assets.

**"Assigned Clients"** are natural or legal persons to whom THE DEBTOR sells its products that have been approved by the CREDITOR.

**"Collateral"** means the Commercial Guarantee Trust that the DEBTOR sets up in order to guarantee its obligations to the CREDITOR for the purpose of transferring the inventory and/or any rights associated with said inventory, belonging to the DEBTOR or to any third party, in guarantee of the DEBTOR's obligations to the CREDITOR, and the Fiduciary Assignment that the DEBTOR designates in favor of the CREDITOR for the handling of any documents to be delivered pursuant to exports made. In the case of inventory and/or associated rights, such property held in the Commercial Guarantee Trust shall cover 100% of the value of the DEBTOR's credit obligations.

Acreedor para la administración de los documentos que sean entregados en virtud de las exportaciones realizadas. En el caso del inventario y/o los derechos que recaen sobre el mismo, de propiedad del Fideicomiso Mercantil de Garantía, deberán cubrir el 100% del valor de las obligaciones de crédito contraídas por LA DEUDORA.

**"Compañía Verificadora"** significa la compañía especializada designada por el Acreedor y contratada por el Fideicomiso Mercantil en Garantía y el constituyente del referido fideicomiso, para la prestación de los servicios de inspección y verificación del inventario de camarón congelado, entero y cola en producto terminado de propiedad del fideicomiso.

**"Contrato de Fideicomiso en Garantía"** significa el contrato a que se refiere el número 2.5 de la cláusula Segunda y que tiene como finalidad garantizar el cumplimiento de las obligaciones que derivan de los Documentos del Préstamo, a cargo de la DEUDORA.

**"Contrato Marco de Préstamo"** significa el presente documento y sus anexos, suscrito por las Partes, así como sus posteriores modificaciones.

**"Cuenta Recolectora"** Es una cuenta abierta en una entidad financiera del exterior, de titularidad del ACREEDOR, en la cual se depositarán los recursos provenientes del pago de las FACTURAS de los Clientes Cedidos, cuya cesión ha sido realizada a favor del ACREEDOR. Todos los gastos y comisiones, incluyendo, pero no limitado a gastos de transferencia que genere la administración de esta cuenta, serán asumidos por la DEUDORA.

**"Día Hábil"** significa cualquier día distinto a: (i) un sábado; (ii) un domingo; o (iii) cualquier otro día en el cual todas las entidades del sistema financiero del Ecuador y/o de Estados Unidos y/o Londres, no atiendan al público por disposición de la Autoridad de Gobierno

**"Verification Company"** means the specialized company designated by the CREDITOR and hired by the Commercial Guarantee Trust and the creator of said trust to provide inspection and verification services of finished product, frozen whole shrimp and tails in inventory belonging to the Trust Guarantee.

**"Trust Guarantee Agreement"** means the agreement referred to in Clause Two, Section 2.5, the purpose of which is to guarantee compliance by the DEBTOR with the obligations associated with the Loan Documents.

**"Master Loan Agreement"** means this document and its annexes, signed by both Parties, as well as any subsequent modifications hereto.

**"Collection Account"** is an account opened in a financial institution abroad, in the name of the CREDITOR for depositing funds from the payment of INVOICES issued by Assigned Clients, who have been assigned to the CREDITOR. All expenses and commissions, including but not limited to wire fees related to this account's administration, shall be paid by the DEBTOR.

**"Business Day"** means any day other than: (i) Saturday; (ii) Sunday; or (iii) any other day on which all banking entities in the Ecuadorian and/or US and/or London financial systems closed to the public by order of the proper Government Authority.

"**Debtor**" refers to the company PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.

**"Loan Documents"** are the Master Loan Agreement, the Promissory Note, supplementary letters of commitment to the framework loan agreement, the Trust Guarantee and Fiduciary Assignment



competente.

**"Deudora"** se refiere a la compañía PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A..

**"Documentos de Préstamo"** son el Contrato Marco de Préstamo, el Promissory Note, cartas de compromiso complementarias al contrato marco de préstamo, los contratos de Fideicomisos Mercantiles y Encargos Fiduciarios, Validity Guarantee y Account Control Agreement.

**"Dólares"** y el signo **"US$"** significan la moneda de curso legal en los Estados Unidos de América.

**"Endeudamiento"** significa el total de pasivos, incluyendo las operaciones de leasing y factoring, además de cualquier tipo de contingencia financiera.

**"Estado"** se refiere indistintamente a Ecuador y/o Estados Unidos y/o Londres.

**"Factura/s"** u **"Órden/es de compra"** o **"Contrato/s de compraventa"** son los documentos emitidos por la DEUDORA por la venta del Inventario, que representan los derechos de cobro a los CLIENTES CEDIDOS, los mismos que serán cedidos a favor del Acreedor.

**"Fecha de Desembolso"** significa la fecha en que se cumplan las Condiciones Precedentes al Desembolso que se encuentran fijadas en las cláusulas tercera y cuarta del presente **Contrato Marco de Préstamo** u otra fecha fijada de común acuerdo por las Partes.

**"Fecha de pago de intereses y capital ordinario"** se refiere al primer Día Hábil del mes siguiente al que fueron generados los intereses.

**"Fecha de Suscripción"** significa la fecha en la que el presente **Contrato Marco de Préstamo** haya sido debidamente suscrito por las Partes y, en el supuesto que las Partes suscriban este **Contrato Marco de Préstamo** por separado y por lo tanto en fechas distintas, la Fecha de Suscripción será la última de dichas fechas.

Agreements, Validity Guarantee and Account Control Agreement.

**"Dollars"** and the **"US$"** sign mean the legal currency of the United States of America.

**"Debt"** means the total liabilities, including leasing and factoring operations, in addition to any type of financial contingency.

**"State"** refers either to Ecuador and/or the United States and/or London [sic].

**"Invoice(s)** or **"Purchase Order(s)"** or **"Purchase and Sale Agreement(s)"** are documents issued by the DEBTOR for the sale of inventory which represent the rights to collect payment thereof from ASSIGNED CLIENTS, which shall be ceded to the CREDITOR.

**"Disbursement Date"** means the date on which the Conditions Precedent to Disbursement are met, or another date mutually agreed upon by both Parties. Said Conditions are set forth in Clauses Three and Four of this **Master Loan Agreement**.

**"Payment date of principal and interest"** refers to the first Business Day of the month following the one in which interest was generated.

**"Signing Date"** means the date on which this **Master Loan Agreement** is duly signed by the Parties or, if the Parties should sign it separately and therefore on separate dates, the Signing Date shall be the latter of said dates.

**"Joint and Several Guarantor"** refers to the company RELAFIR SOCIEDAD ANONIMA, of Uruguayan nationality, domiciled in Montevideo.

**"Guarantee"** has the meaning ascribed to it in Section 2.5 of the Second clause of this Master Loan Agreement.

**"Tax"** means any duty, contribution, charge, fee, service, levy, withholding or other

**"Fiadora Solidaria"** se refiere a la compañía RELAFIR SOCIEDAD ANONIMA, de nacionalidad Uruguaya con domicilio en Montevideo.

**"Fianza"** tiene el significado que se le asigna en el número 2.5 de la cláusula Segunda de este Contrato Marco de Préstamo.

**"Impuesto"** significa cualquier tributo, contribución, cargo, tasa, servicio, gravamen, retención u otra deducción, comisiones, derechos y pagos de cualquier naturaleza, exigidos por cualquier organismo o Autoridad de Gobierno, en vigor a la Fecha de Suscripción o que entren en vigor posteriormente.

**"Inventario/s"** se refiere al camarón congelado, entero y cola en producto terminado que no tenga un plazo mayor de 120 días contados a partir de la fecha de proceso.

**"Ley/es aplicable/s"** es la legislación del Estado de Nueva York, Estados Unidos de América.

**"LIBOR"** significa, para cualquier período de intereses en relación con cualquier préstamo, la tasa anual de 3 meses por un período de tiempo comparable a dicho Período de Intereses, como se muestra en la página denominada como Reuters 01 (o cualquier otra página que pueda reemplazar esta página) a las 11:00 am, hora de Londres, en la correspondiente Fecha de Determinación de Tasa de Interés.

**"Línea de Crédito Revolvente"** significa el préstamo otorgado por el ACREEDOR a la DEUDORA de conformidad con las cláusulas y condiciones del presente **Contrato Marco de Préstamo**, bajo la modalidad de Préstamo Revolvente.

Los pagos de capital e intereses que LA

deduction, commissions, rights and payments of any kind required by any Government Authority or organization in force on the Signing Date or that enter into force thereafter.

**"Inventory(ies)"** refers to finished product, frozen whole shrimp and tails with expiration date of no more than 120 days as of their process date.

**"Applicable law(s)"** refers to the laws of the State of New York, United States of America.

**"LIBOR"** means, for any period of interest in relation to any loan, the annual rate of three months for a period of time comparable to said Period of Interest, as shown on the Reuters Screen LIBOR 01 page (or any other page that could replace it) at 11:00 am London time on the corresponding Date of Determination of Interest Rate.

**"Revolving Line of Credit"** means a loan granted by the CREDITOR to the DEBTOR in accordance with the clauses and conditions of this **Master Loan Agreement** under the modality of Revolving Loan, The principal and interest payments made by the DEBTOR to TRADE FINANCE TRUST fall within the precepts for exemption from the Tax on Currency Outflows for payments made abroad, provided for in the articles of the Tax Reform Law for Tax Equity in Ecuador and its Regulations.

**"Parties"** refers to the persons involved in this agreement, meaning the CREDITOR, the DEBTOR, and the JOINT AND SEVERAL GUARANTOR.

**"Interest Period"** means each one (1) month period beginning on a Principal and Interest Payment Date and ending on the day immediately preceding the next Principal and Interest Payment Date.

**"Person"** means any natural person or legal

DEUDORA realice a TRADE FINANCE TRUST, se ajustan a los presupuestos de exoneración del Impuesto a la Salida de Divisas para los pagos realizados al exterior, previstos en los artículos de la Ley Reformatoria para la Equidad Tributaria en el Ecuador y en su Reglamento de aplicación.

**"Partes"** se refiere a las personas contratantes, esto es, el ACREEDOR, la DEUDORA y LA FIADORA SOLIDARIA.

**"Período de Interés"** significa cada período de un (1) mes que comience en una Fecha de Pago de Capital e Intereses y finalice el día inmediatamente anterior a la subsiguiente Fecha de Pago de Capital e Intereses.

**"Persona"** significa cualquier persona natural o jurídica de carácter público o privado.

**"Promissory Note"** o **"Nota Promisoria"** o **"Pagaré"** tiene el significado que se le asigna en el número 2.4 de la cláusula Segunda de este Contrato Marco de Préstamo.

**"Tasa de Interés"** significa, para cualquier préstamo en cualquier momento, la tasa LIBOR más un margen del 6.00% anual, la misma que en ningún caso podrá ser superior a la tasa de interés activa referencial establecida por el Banco Central del Ecuador, vigente a la fecha del registro del crédito.

## CLAUSULA SEGUNDA: OBJETO.-

**2.1** El ACREEDOR, institución no financiera incorporada bajo las leyes del Estado de Delaware, Estados Unidos de América, ha aprobado una Línea de Crédito Revolvente hasta por la suma de US$5'000.000,00 (cinco millones 00/100 Dólares de los Estados Unidos de América), cuya base para los desembolsos no podrá ser superior, a criterio del ACREEDOR:

    (i) Al 95% del valor neto de las **FACTURAS** por cobrar a un plazo

entity, either public or private.

**"Promissory Note"** is defined in Clause Two, Section 2.4 of this Master Loan Agreement.

**"Interest Rate"** means, for any loan at any time, the LIBOR rate plus an 6.00% annual margin, which may not exceed the benchmark interest rate set by the Central Bank of Ecuador in force on the date of loan registration.

## CLAUSE TWO: PURPOSE

2.1. The CREDITOR, a non-financial institution established under the laws of the State of Delaware, the United States of America, has approved a Revolving Line of Credit for the amount of up to US$5,000,000.00 (five million 00/100 US dollars), the disbursement basis of which, according to the CREDITOR's criteria, may not exceed:

    (iii) 95% of the net value of **INVOICES** receivable within a maximum period of 30 days as of the respective shipping date, from assigned clients who have been duly approved by the CREDITOR; and,

    (iv) 95% of the purchase value of Inventories of finished product, frozen whole shrimp and tails and/or the rights associated with said inventory with an expiration date of no more than 120 days as of the process date.

The DEBTOR, depending on the availability and prior coordination with the CREDITOR, shall use the flow of funds from the Line of Credit for investment in the production of finished product, frozen whole shrimp and tails with an

máximo de 30 días contado desde la fecha del embarque respectivo, cuyos clientes cedidos hayan sido debidamente aprobados por el ACREEDOR; y,

(ii) Al 95% del valor de compra de los Inventarios de camarón congelado entero y cola, producto terminado del mismo, y/o de los derechos que recaen sobre dicho inventario, que no tengan un plazo mayor de 120 días contado a partir de la fecha de proceso.

La DEUDORA, en función de las disponibilidades del ACREEDOR y previa coordinación con este último, utilizará el flujo de recursos provenientes de la Línea de Crédito para la inversión productiva de camarón congelado, entero y cola en producto terminado que no tenga un plazo mayor de 120 días contados a partir de la fecha de proceso, y de ventas internacionales que realice la Deudora, promoviendo el desarrollo de las exportaciones de productos nacionales, generando fuentes de trabajo en la economía nacional, todo lo cual cumple con el objetivo de financiar las inversiones previstas en el Código Orgánico de la Producción, Comercio e Inversiones del Ecuador, conforme a las condiciones y el procedimiento que se establece en este "**Contrato Marco de Préstamo**".

Para la entrega de los fondos de la Línea de Crédito Revolvente, las PARTES acuerdan seguir el procedimiento indicado en la Cláusula SEGUNDA del presente **Contrato Marco**

expiration date of no more than 120 days as of the process date, and any international sales the DEBTOR may make, promoting the development of exports of national products and thereby generating sources of jobs for the national economy. This all fulfills the objective of financing investments set forth in the Ecuadorian Organic Code of Production, Trade and Investment, in accordance with the conditions and procedures established in this **Master Loan Agreement.**

For the disbursement of funds from the Revolving Line of Credit, the PARTIES agree to follow the procedure set forth in CLAUSE TWO of this **Master Loan Agreement.**

2.2. The DEBTOR shall pay the CREDITOR annual interest on the loan granted at the LIBOR rate, recalculated monthly, plus an annual margin of 6.00%. Said annual interest may in no case be greater than the benchmark interest rate set by the Central Bank of Ecuador in force on the date the loan is registered.

Said annual interest shall be calculated based on the monthly average balance disbursed from the Line of Credit and shall be payable monthly on the first day of the month following the one on which the interest was generated. On the first Business Day of each month, the CREDITOR is authorized to charge the DEBTOR the total accrued interest generated the previous month, calculated on the basis of the monthly average balance of the Line of Credit. The Interest Rate agreed between the DEBTOR and the CREDITOR, shall be

**de Préstamo.**

**2.2** La DEUDORA pagará al ACREEDOR por el crédito concedido el interés anual que corresponde a la tasa LIBOR, que será recalculada cada mes, más un margen del 6.00% anual, interés anual que en ningún caso podrá ser superior a la tasa de interés activa referencial establecida por el Banco Central del Ecuador, vigente a la fecha del registro del crédito.

Dicho interés anual será calculado sobre el saldo promedio mensual desembolsado de la Línea de Crédito concedida y serán pagaderos mensualmente el primer día del mes siguiente al que fueron generados. El ACREEDOR está autorizado a cargar a la cuenta de la DEUDORA, en el primer Día Hábil de cada mes, la suma de los intereses acumulados generados durante el mes anterior calculados sobre el saldo promedio mensual de la Línea de Crédito concedida. La Tasa de Interés acordada entre la DEUDORA y la ACREEDORA, será calculada sobre la base de 360 días y multiplicada por el número de días del mes correspondiente. En ningún caso, la DEUDORA podrá sobrepasar el límite de endeudamiento de más de US$5'000.000,00 (cinco millones 00/100 dólares de los Estados Unidos de América), más los intereses correspondientes. En caso de que la DEUDORA desee cancelar la línea de crédito, la DEUDORA deberá pagar la totalidad de las sumas otorgadas en la Línea de Crédito por el ACREEDOR. Las partes acuerdan de manera expresa y voluntaria que las comisiones

calculated on the basis of a 360-day year and multiplied by the number of days of the corresponding month. In no case may the DEBTOR exceed the debt limit of more than US$5,000,000.00 (five million 00/100 US dollars), plus the corresponding interest. If the DEBTOR should wish to cancel the line of credit, the DEBTOR must pay off all amounts granted in the Line of Credit by the CREDITOR. The parties expressly and voluntarily agree that any commissions related to the revolving line of credit herein may be agreed upon and updated from time to time in a supplementary document to this agreement.

2.3. Notwithstanding the Debtor's joint and several liability, and for the purpose of procuring payment of the sums granted through the Line of Credit by the CREDITOR, the DEBTOR shall assign and transfer to the CREDITOR all rights associated with payment of all INVOICES arising from the sale and export by the ASSIGNED CLIENTS of the product delivered as guarantee. The initial list of assigned clients is as follows:

✓ A AND Q GENERAL TRADING/BEIJING BRIDGE
✓ ADRIMEX / DELABLI
✓ AGRIFISH SRL
✓ ANCORA 7
✓ ANDURONDA IMPORT GMBH
✓ AXEL FOOD S.R.L.
✓ BEBETO S.A.
✓ BJH INTERNATIONAL LIMITED
✓ COMAVICOLA / AGROFOODS LIMITED/AXEL FOOD S.R.L.
✓ COMPESCA S.A.
✓ COPPO 1896 SPA
✓ CRUSTA C SAS

relacionadas a la línea de crédito revolvente materia del presente contrato, podrán pactarse y actualizarse de tiempo en tiempo en un documento complementario al presente contrato.

**2.3** Sin perjuicio de la responsabilidad deudora y su solidaridad, y a efectos de procurar el pago de las sumas otorgadas en la Línea de Crédito por el ACREEDOR, la DEUDORA cederá y transferirá a favor del ACREEDOR, todos los derechos que le corresponden respecto del cobro de todas las FACTURAS, que se originen de la venta y exportaciones del producto entregado en garantía, efectuadas a los Clientes Cedidos. El listado inicial de los clientes cedidos se compone de la siguiente manera:

- ✓ A AND Q GENERAL TRADING/BEIJING BRIDGE
- ✓ ADRIMEX / DELABLI
- ✓ AGRIFISH SRL
- ✓ ANCORA 7
- ✓ ANDURONDA IMPORT GMBH
- ✓ AXEL FOOD S.R.L.
- ✓ BEBETO S.A.
- ✓ BJH INTERNATIONAL LIMITED
- ✓ COMAVICOLA / AGROFOODS LIMITED/AXEL FOOD S.R.L.
- ✓ COMPESCA S.A.
- ✓ COPPO 1896 SPA
- ✓ CRUSTA C SAS
- ✓ DELABLI, pertenece a ADRIMEX
- ✓ ECOMSA/ICELANDIC IBERICA S.A./ELAB CONGELADOS MALAGA
- ✓ EUROTRADE FISH
- ✓ FIORITAL S.R.L.
- ✓ GELAZUR S.A.
- ✓ GUIGEL SAS
- ✓ HANWA AMERICAN Corp.

- ✓ DELABLI, pertenece a ADRIMEX
- ✓ ECOMSA/ICELANDIC IBERICA S.A./ELAB CONGELADOS MALAGA
- ✓ EUROTRADE FISH
- ✓ FIORITAL S.R.L.
- ✓ GELAZUR S.A.
- ✓ GUIGEL SAS
- ✓ HANWA AMERICAN Corp.
- ✓ HANWA CO. LTD.
- ✓ HUY TUANT JOINT STOCK CO./BEIJING BRIDGE
- ✓ INTERRA FOOD MARKETING LLC
- ✓ KRUSTAFISH
- ✓ MARISCOS DICA
- ✓ MARR S.P.A.
- ✓ METAREX SPA
- ✓ MING SHENG (Ming Sheng Seafood Co., Ltd -The Headquarter )
- ✓ OCEA" CRUS SA/GARIDA
- ✓ PESCATRADE
- ✓ QUANG BINH IMPORT & EXPORT
- ✓ RYUSHO BUSSAN CO. LTD
- ✓ SEASTAR S.F. INC.
- ✓ SENECRUS
- ✓ SI2A
- ✓ SHINSEGAE FOOD CO. LTD.
- ✓ SM SEAFOOD GMBH
- ✓ TRUNG THANH COMPANY/BILONGCHANDA
- ✓ YM SEAFOOD



The assignment of payment of the Purchase Orders, purchase and sales contracts and/or aforementioned invoices, includes payment of any INVOICES issued by the DEBTOR assigned under this **Master Loan Agreement**, which shall be described in the annexes attached hereto while this Agreement is in effect. The note of assignment attached to INVOICES must indicate that the rights associated with the INVOICE are assigned to the CREDITOR and must be paid via deposits to the Collection

✓ HANWA CO. LTD.
✓ HUY TUANT JOINT STOCK CO./BEIJING BRIDGE
✓ INTERRA FOOD MARKETING LLC
✓ KRUSTAFISH
✓ MARISCOS DICA
✓ MARR S.P.A.
✓ METAREX SPA
✓ MING SHENG (Ming Sheng Seafood Co., Ltd -The Headquarter )
✓ OCEA" CRUS SA/GARIDA
✓ PESCATRADE
✓ QUANG BINH IMPORT & EXPORT
✓ RYUSHO BUSSAN CO. LTD
✓ SEASTAR S.F. INC.
✓ SENECRUS
✓ SI2A
✓ SHINSEGAE FOOD CO. LTD.
✓ SM SEAFOOD GMBH
✓ TRUNG THANH COMPANY/BILONGCHANDA
✓ YM SEAFOOD

La cesión del cobro de las Órdenes de Compra, contratos de compraventa y/o facturas antes referidas, incluye la cesión del cobro de LAS FACTURAS emitidas por la DEUDORA que lleguen a ser cedidas en virtud de este **Contrato Marco de Préstamo**, las mismas que se describirán en anexos que se incorporarán a este **Contrato Marco de Préstamo** durante su vigencia. En la nota de cesión que se incorpora en la FACTURAS se debe indicar que los derechos de la FACTURA se ceden a favor del ACREEDOR y que éstos deben ser pagados mediante depósitos en la Cuenta Recolectora. Dichos anexos contarán con la firma de la DEUDORA. Cuando en el presente **Contrato Marco de Préstamo** y en los

Account. Said attachments shall be signed by the DEBTOR. Whenever the term "INVOICES" is mentioned in this **Master Loan Agreement** and any associated documents issued, said term shall be understood to refer indistinctly to both INVOICES as well as PURCHASE AND SALE AGREEMENTS and/or PURCHASE ORDERS ceded in assignment. If any INVOICE should prove to be illegible, the DEBTOR shall replace said INVOICE with a new one approved by the CREDITOR, or otherwise proceed to pay the balance of the Line of Credit.

The DEBTOR is responsible for the aforementioned assignment of INVOICES, and it thus assumes express responsibility for the existence of the loan at the time of assignment, in accordance with the terms and statements established in Clauses Two and Four of this **Master Loan Agreement**, whereby the Assigned Clients shall pay such INVOICES directly to the CREDITOR, as specified in the aforementioned Clauses. Said assignment encompasses all rights and actions associated with the INVOICES held by the DEBTOR, placing the CREDITOR in its same place and degree of privilege, with the full extent and scope thereof, subrogating in addition any rights or actions that may eventually exist with regard to loans derived from said INVOICES. The assignment of INVOICES does not imply that they are given in payment of the loans owed by the DEBTOR to the CREDITOR; on the contrary, an assignment under the DEBTOR's responsibility makes the latter jointly liable with the Assigned Clients, and its

documentos emanados en virtud del mismo se haga referencia el término "FACTURAS" deberá entenderse que dicho término se refiere indistintamente tanto a las FACTURAS como a los CONTRATOS DE COMPRAVENTA y/o las ORDENES DE COMPRA cedidas. Si alguna de las FACTURAS resulta ininteligible, la DEUDORA deberá reemplazar dicha FACTURA por una nueva que apruebe el ACREEDOR o deberán proceder a pagar el saldo de la Línea de Crédito.

La cesión de FACTURAS antes citada se efectúa con responsabilidad por parte de la DEUDORA, la misma que se hace expresamente responsable de la existencia del crédito al tiempo de la cesión, de conformidad con los términos y declaraciones establecidas en las Cláusulas Segunda y Cuarta del presente **Contrato Marco de Préstamo**, debiendo los Clientes Cedidos pagar tales FACTURAS directamente al ACREEDOR según se especifica en las mencionadas Cláusulas. La referida cesión comprende todos los derechos y acciones que posee la DEUDORA y que le corresponden respecto de las FACTURAS, colocando al ACREEDOR en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones que eventualmente existieran con respecto a los créditos derivados de dichas FACTURAS. La cesión de FACTURAS no implica dación en pago de los préstamos adeudados por la DEUDORA al ACREEDOR; al contrario,

debt liability shall not be cancelled until all obligations owed to the CREDITOR are paid.

2.4.   For the purpose of disbursement of the Line of Credit, PROEXPO PROCESADORA Y EXPORTADORA DE MARISCOS S.A. shall, in this same act, in its capacity as DEBTOR, sign a Promissory Note to the CREDITOR for the amount of US$5,000,000.00 (five million 00/100 US dollars). Notwithstanding the aforementioned, the DEBTOR and JOINT AND SEVERAL GUARANTOR shall only be liable for the amounts effectively granted by the CREDITOR, as specified in Section 4.2 of Clause Four hereof, plus the interest, commissions, legal expenses and other categories agreed upon under this **Master Loan Agreement** and its amendments.

2.5.   JOINT AND SEVERAL GUARANTEE: The company RELAFIR SOCIEDAD ANONIMA will be notified at Junca street number 1378 office 1406 in the city of Montevideo, Republic Oriental of Uruguay; who IRREVOCABLY AND UNCONDITIONALLY ESTABLISHES ITSELF AS UNRESTRICTED JOINT GUARANTOR SEVERAL GUARANTOR and PRIMARY PAYER of all debts and obligations assumed by the DEBTOR in this Master Loan Agreement and in all Disbursement Certificates, Promissory Notes, and other documents signed by the DEBTOR and the JOINT AND SEVERAL GUARANTOR under this Master Loan Agreement, in the same terms, amounts, modalities, and in kind owed by the DEBTOR and the JOINT AND SEVERAL GUARANTOR declare that they expressly renounce:

   ✓ The benefits of division and excussion and all other related and applicable commercial and



al existir una cesión con responsabilidad de la DEUDORA ésta queda obligada solidariamente con los Clientes Cedidos, y no se extinguirá su responsabilidad deudora hasta que no pague todas las obligaciones adeudadas al ACREEDOR.

**2.4** Para efectos del desembolso de la Línea de Crédito, en este mismo acto, la compañía PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A. en calidad de DEUDORA, suscribirá una Nota Promisoria (Promissory Note en inglés, pagaré) a favor del ACREEDOR, por la suma de US$5'000.000,00 (cinco millones 00/100 Dólares de los Estados Unidos de América). Sin perjuicio de lo anterior, la DEUDORA y LA FIADORA SOLIDARIA, solo estarán obligadas hasta por los montos efectivamente otorgados por el ACREEDOR, según se especifica en el número 4.2 de la Cláusula Cuarta de este **Contrato Marco de Préstamo**, más los intereses, comisiones, gastos legales, y demás rubros a los que se han obligado a pagar en virtud del presente **Contrato Marco de Préstamo** y sus reformas.

**2.5** FIANZA SOLIDARIA: A la compañía RELAFIR SOCIEDAD ANONIMA se la notificará en la calle Juncal número 1378 oficina 1406 de la ciudad de Montevideo, República Oriental del Uruguay, quien SE CONSTITUYE IRREVOCABLEMENTE E INDIVISIBLEMENTE EN FIADORA SOLIDARIA, LLANA y PRINCIPAL PAGADORA, de todas las deudas y obligaciones asumidas por la DEUDORA en el presente Contrato Marco de Préstamo y en todos los Certificados de Desembolso, las Notas Promisorias (Promissory Note en inglés,

noncommercial standards;

✓ The right demand an injunction against the DEBTOR and, in general, to interpose any defenses other than payment. The joint and several liability, assumed by the JOINT AND SEVERAL GUARANTOR, also covers the statutory or contractual readjustment and accessories such as monetary restatement, compensatory and default interest owed by the DEBTOR. This joint and several guarantee will remain in effect until full settlement by the DEBTOR of all debts held with the CREDITOR.

The following will be considered as failure to comply with the provisions of this joint and several guarantee provided for in Section 2.5 of the Second Clause of this Master Loan Agreement:

a) If any representation, guarantee or commitment made by the JOINT AND SEVERAL GUARANTOR in this Master Loan Agreement, or any certificate, application, document or commitment provided in this instrument, proves false.

b) In the event that the JOINT AND SEVERAL GUARANTOR begins negotiations with any creditor for the purpose of a comprehensive settlement of payments or to change the debt schedule, or if they are declared insolvent by the courts, or declare bankruptcy or file for reorganization bankruptcy, and these are not lifted within 5 days of having been enacted.

pagaré) y demás documentos suscritos por la DEUDORA y la FIADORA SOLIDARIA derivados del presente Contrato Marco de Préstamo, en los mismos plazos, cantidades, modalidades y especies debidas por la DEUDORA y la FIADORA SOLIDARIA declaran que renuncian expresamente a:

✓ Los beneficios de división y excusión y demás normas comerciales y civiles concordantes aplicables,

✓ A exigir el requerimiento judicial de la DEUDORA y en general a oponer toda excepción que no sea la de pago. La responsabilidad solidaria asumida por la FIADORA SOLIDARIA se extiende asimismo, al reajuste legal o convencional y accesorios tales como la actualización monetaria, intereses compensatorios y moratorios, debidos por la DEUDORA. Esta fianza solidaria permanecerá vigente hasta la total cancelación por parte de la DEUDORA de todas las deudas que mantenga con el ACREEDOR.

Se considerará incumplimiento de las disposiciones de la fianza solidaria prevista en el presente punto 2.5 de la Cláusula Segunda de este Contrato Marco de Préstamo, los siguientes supuestos:

a) Si cualquier declaración, garantía o compromiso contraído por la FIADORA SOLIDARIA por medio del

c) In the event that any of the previous subparagraphs take place, the CREDITOR may, by means of prior notification to the JOINT AND SEVERAL GUARANTOR, declare the obligations of the DEBTOR past due and demand payment of all past due amounts owed by the DEBTOR, in addition to all expenses incurred by the CREDITOR.

In addition, the JOINT AND SEVERAL GUARANTOR makes the following statements, which shall be maintained in force during the celebration, execution and validity of this Master Loan Agreement:

I.    This guarantee constitutes a valid and binding obligation by the JOINT AND SEVERAL GUARANTOR, enforceable in accordance with their respective terms.

II.   There is no statute, standard, regulation or binding contractual obligation by the JOINT AND SEVERAL GUARANTOR that could be violated by the execution, delivery or implementation of this Master Loan Agreement.

III.  For purposes of this Master Loan Agreement, the JOINT AND SEVERAL GUARANTOR establishes its special domicile in the place specified in the heading of this Section 2.5 and accepts as valid the notifications that may be sent



presente Contrato Marco de Préstamo, o cualquier certificado, solicitud, documento o compromiso proporcionado en este instrumento, resultare falso.

b) En el evento de que la FIADORA SOLIDARIA comience negociaciones con cualquier acreedor con miras a un arreglo general de pagos o cambiar el cronograma de endeudamiento, o si fueren declarados insolventes por la vía judicial, o le sea decretada la quiebra o se presente en concurso preventivo de acreedores, y los mismos no sean levantados dentro de los 5 días de haber sido decretados.

c) En caso que ocurriera cualquiera de los supuestos descritos en los literales anteriores, el ACREEDOR podrá, mediante notificación previa a la FIADORA SOLIDARIA, declarar las obligaciones de la DEUDORA de plazo vencido y exigir el pago de todos los montos debidos por la DEUDORA por encontrarse vencidos, más todos los gastos en que hubiera incurrido el ACREEDOR.

Asimismo, la FIADORA SOLIDARIA realiza las siguientes declaraciones, las mismas que deberán mantenerse vigentes durante la celebración, ejecución y validez del presente Contrato Marco de Préstamo:

I.   Esta garantía constituye una obligación válida y vinculante para la FIADORA SOLIDARIA,

by certified mail, e-mail or other authentic means.

All debts held by the DEBTOR with the CREDITOR are guaranteed by the Commercial Guarantee Trust "FIDEICOMISO MERCANTIL PROEXPO II – TRADE FINANCE TRUST" and the Fiduciary Assignment "ENCARGO FIDUCIARIO PROEXPO II – TRADE FINANCE TRUST", the purpose of which is to serve as an instrument to protect 100% of the value of the obligations inherent in the loan contracted by the DEBTOR, in the case of inventory and/or any rights associated therewith, of the property belonging to Commercial Guarantee Trust, as well as any documents related to exports. The CREDITOR shall transfer, initially, to said trust administration, inventory consisting of finished product, frozen whole shrimp and tails with an expiration date of no more than 120 days as of its process date and/or any rights associated with said inventory, which shall remain in the hands of the trust until shipped for export and sale to offshore purchasers; all of this notwithstanding the rights held by the CREDITOR as beneficiary of said Trust Guarantee.

Once the sale to offshore purchasers has been made and the INVOICE issued for the product sold, said INVOICES shall proceed to be assigned to the CREDITOR for the purpose of compliance with the provisions set forth in Section 2.3 of this clause.

**CLAUSE THREE: CONDITIONS PRIOR TO DISBURSEMENT**

Prior to disbursement of the Line of Credit, the procedure for which is set forth in Clause Four of this **Master Loan Agreement**, and a *sine qua*

ejecutable de acuerdo con sus respectivos términos.

II. No existe estatuto, regla, regulación u obligación contractual vinculante para la FIADORA SOLIDARIA que pudiera ser violada por la celebración, entrega o ejecución de este Contrato Marco de Préstamo.

III. Para los efectos del presente Contrato Marco de Préstamo, la FIADORA SOLIDARIA constituye domicilio especial en el lugar indicado en el encabezamiento del presente punto 2.5 y aceptan como válidas las notificaciones que se practiquen por correo certificado, correo electrónico u otro medio auténtico.

Todas las deudas que mantenga la DEUDORA con el ACREEDOR se encuentran garantizadas por el contrato de fideicomiso Mercantil en garantía denominado "FIDEICOMISO MERCANTIL PROEXPO II – TRADE FINANCE TRUST" y el contrato de Encargo Fiduciario denominado "ENCARGO FIDUCIARIO PROEXPO II – TRADE FINANCE TRUST", cuya finalidad es la de servir como instrumento para caucionar el 100% del valor de las obligaciones de crédito contraídas por LA DEUDORA, en el caso del inventario y/o los derechos que recaen sobre el mismo, de propiedad del Fideicomiso Mercantil de Garantía, así como de los documentos que sean entregados en virtud de las exportaciones realizadas. LA DEUDORA transferirá, inicialmente, a dicho patrimonio autónomo, inventario consistente en camarón congelado, entero y cola en

*non* requirement for such disbursement to go into effect, the DEBTOR and the JOINT AND SEVERAL GUARANTOR must prove by documenting to the CREDITOR that it has met the following binding conditions:

**3.1** The establishment of the Commercial Guarantee Trust agreement and the agreement for the Fiduciary Assignment to the Creditor;

**3.2** The signing of the Inventory Verification Contract with the Verification Company selected by the Creditor;

**3.3** The Fiduciary of the Commercial Guarantee Trust has received the insurance policies with their respective endorsements in favor of the Trust;

**3.4** The signing of the Promissory Note;

**3.5** The signing of the Account Control Agreement;

**3.6** The delivery of the Validity Guarantee;

**3.7** The approval of the line of credit transaction by the Board of Shareholders of the DEBTOR and the JOINT AND SEVERAL GUARANTOR;

**3.8** The delivery of a copy of the DEBTOR's and the JOINT AND SEVERAL GUARANTOR's Corporate Charter;

**3.9** The registration of the Collateral under the UCC in the US;

**3.10** That results have been obtained to the CREDITOR's and the JOINT AND SEVERAL GUARANTOR's satisfaction regarding legal due diligence of the DEBTOR;

**3.11** That has not produced a fact, event, circumstance or existing change that could prove adverse to the DEBTOR's current financial and/or economic position, operations, business, properties or prospects;

**3.12** Update of the request for financing in the CREDITOR's format; and



producto terminado que no tenga un plazo mayor de 120 días contados a partir de la fecha de proceso y/o los derechos que recaen sobre dicho inventario, que se mantendrán como propiedad del fideicomiso, hasta que deba ser embarcado para ser exportado y vendido a los compradores de ultramar; ello sin perjuicio de los derechos que correspondan al ACREEDOR como beneficiario del referido contrato de fideicomiso en garantía.

Una vez que se haya efectuado la venta a los compradores de ultramar y se genere la FACTURA del producto vendido, se procederán a ceder dichas FACTURAS a favor del ACREEDOR, con el fin de cumplir con los dispuesto en el numeral 2.3 de esta misma clausula.

**CLAUSULA TERCERA: CONDICIONES PRECEDENTES AL DESEMBOLSO.-**

Previo al desembolso de la Línea de Crédito, cuyo procedimiento se encuentra establecido en la cláusula Cuarta del presente **Contrato Marco de Préstamo**, y como requisito sine qua non para efectuar el mismo, la DEUDORA y la FIADORA SOLIDARIA, deberán probar al Acreedor, de forma documental, que ha cumplido con las siguientes condiciones copulativas:

**3.1** La constitución del contrato de Fideicomiso Mercantil en Garantía y del contrato de encargo fiduciario a favor del Acreedor;

**3.2** La suscripción del Contrato de Verificación de Inventario con la Compañía Verificadora seleccionada por el Acreedor;

**3.13** The delivery to the CREDITOR by the DEBTOR of any other document it deems necessary to solicit of the DEBTOR and the JOINT AND SEVERAL GUARANTOR.

The Creditor shall be in charge of verifying that all the above conditions are met to its full satisfaction, after which the DEBTOR may initiate the procedure for requesting disbursement of the Line of Credit.

**CLAUSE FOUR: PROCEDURE**

At the time of delivery to the DEBTOR of the funds from the line of credit, the following procedure shall be followed:

**4.1** The PARTIES have mutually agreed to the **Interest Rate** and commissions the CREDITOR will receive for each disbursement of funds requested by the DEBTOR. Likewise, the parties agree that the DEBTOR shall maintain a minimum guarantee of 100% of the loan value or of its balances, as the case may be. This minimum guarantee is comprised of the Invoices generated from offshore sales and that have been assigned to the Creditor, "with liability" on the part of the DEBTOR, the administration of which shall be handled by fiduciary assignment; and of the Inventory and/or any associated rights held by the Commercial Guarantee Trust, as set forth in this instrument.

**4.2** The DEBTOR shall send by any means to the CREDITOR a Certificate of Disbursement written as per the instructions in Annex B hereof, which must carry the DEBTOR's and the JOINT AND

**3.3** La recepción por parte de la Fiduciaria del Fideicomiso Mercantil de Garantía de las pólizas de seguro con sus respectivos endosos en favor del Fideicomiso;

**3.4** La suscripción del Promissory Note o Pagaré;

**3.5** La suscripción del Account Control Agreement;

**3.6** La entrega del Validity Guarantee;

**3.7** La Aprobación de la contratación de la línea de crédito por parte de la Junta de Accionistas de la DEUDORA y de la FIADORA SOLIDARIA;

**3.8** La entrega de la copia del Estatuto Social de la DEUDORA y de la FIADORA SOLIDARIA;

**3.9** El Registro UCC en los EEUU sobre el Colateral;

**3.10** Que se hayan obtenido resultados, en forma satisfactoria para el ACREEDOR y para la FIADORA SOLIDARIA, del proceso de *due diligence* legal de la DEUDORA;

**3.11** Que no se haya producido un hecho, acontecimiento, circunstancia o cambio en los ya existentes que implique un cambio adverso en la condición financiera y/o económica, operaciones, negocios, propiedades o prospectos de la DEUDORA;

**3.12** Actualización de la solicitud de financiamiento en formato del ACREEDOR; y,

**3.13** La entrega al Acreedor por parte de la DEUDORA, de cualquier otro documento que éste considere necesario solicitar a la DEUDORA y a la FIADORA SOLIDARIA.

El Acreedor se encargará de verificar el cumplimiento de todas las condiciones antes detalladas, a su entera satisfacción, luego de lo cual, la DEUDORA podrá iniciar el procedimiento de solicitud del desembolso de la Línea de Crédito.

**CLAUSULA CUARTA: PROCEDIMIENTO.-**

Al momento de la entrega a la DEUDORA de

SEVERAL GUARANTOR's original signature (such instrument shall be hereafter referred to as the "Disbursement Certificate", which is the request for disbursement made by the DEBTOR, according to the form and content accepted by the CREDITOR). Each Disbursement Certificate shall be accompanied by the documents justifying the establishment of the guarantee in accordance with the provisions of this agreement, duly substantiated with the inventory reports delivered by the verification company in charge of handling the merchandise contained therein.

**4.3** Within seventy-two (72) hours of the CREDITOR having received [request for disbursement stated above], and as long as the CREDITOR has the available funds, in accordance with the provisions of Sections 4.1 and 4.2 above, the CREDITOR shall proceed to transfer the required funds to any of the following accounts belonging to the company that has requested the disbursement, upon prior written instructions to the CREDITOR to do so:



BANCO INTERMEDIARIO: WELLS FARGO BANK
DIRECCION: 1 E PENN PLAZA, 4TH FLOOR-NEW YORK, NY 10001-USA
SWIFT:PNBPUS3NNYC
ABA #: 026005092

BANCO BENEFICIARIO: BANCO BOLIVARIANO
CUENTA CORRIENTE: 2000192372000
SWIFT: BBOLECEG100
PARA CREDITO FINAL A: PROEXPO, PROCESADORA Y EXPORTDORA DE MARISCOS S.A.

los fondos comprendidos en la línea de crédito, se seguirá el siguiente procedimiento:

**4.1** Las PARTES han convenido de mutuo acuerdo la **Tasa de Interés** y comisiones que el ACREEDOR percibirá por cada entrega de fondos que la DEUDORA le solicite. De igual manera, las partes convienen que la DEUDORA mantendrá una garantía mínima del 100% del valor otorgado en préstamo o sobre sus saldos, según el caso. Esta garantía mínima está compuesta por las Facturas que se generan de las ventas que se realizan en ultramar y que han sido cedidas a favor del acreedor "con responsabilidad", por parte de la DEUDORA cuya administración se realizará a través de un encargo fiduciario; y por el Inventario y/o los derechos que recaen sobre el mismo, de propiedad del Fideicomiso Mercantil de Garantía, tal cual ya se ha explicado en este mismo instrumento.

**4.2** LA DEUDORA deberá remitir por cualquier medio escrito al ACREEDOR, un Certificado de Desembolso redactado según lo establecido en el Anexo B del presente **Contrato Marco de Préstamo**, el cual deberá estar firmado en forma autentica por LA DEUDORA y LA FIADORA SOLIDARIA (instrumento al que en adelante se denominará como "Certificado de Desembolso", que es la solicitud de desembolso efectuada por la DEUDORA, bajo la forma y contenido aceptado por el ACREEDOR). A cada Certificado de Desembolso deberá acompañarse los documentos que justifiquen la constitución de la garantía conforme a lo establecido en el presente convenio, debidamente sustentados en función de los reportes de inventario entregados por la verificadora encargada

CTA CTE.#: 0005211762

**4.4** Within a maximum term of seven (7) business days subsequent to accreditation of the requested funds in the DEBTOR's account, the latter shall send a note to the CREDITOR confirming receipt of said funds from the CREDITOR.

**CLAUSE FIVE: DEBTOR'S AND JOINT AND SEVERAL GUARANTOR'S OBLIGATIONS**

Except in the case of prior written authorization from the CREDITOR, the DEBTOR and the JOINT AND SEVERAL GUARANTOR shall meet the following obligations as long as the REVOLVING LOAN has not been paid in full:

**a)** Materially comply with all laws, ordinances, rules, regulations and requirements of any Government Authority (including, but not limited to, licenses, certificates, permits and other necessary government authorizations for holding ownership of its assets or for conducting its respective businesses, environmental laws and laws related to social security and the obligations inherent in pension funds), unless: (i) the application or necessary compliance therewith is being contested by the DEBTOR; or, (ii) there is a non-compliance that does not, or which could not be expected to, adversely and materially affect its capacity to meet the payment obligations established in this **Master Loan Agreement**, as long as this is communicated in writing and accepted by the CREDITOR;

**b)** Comply with the payment of all taxes in

del manejo de las mercaderías que la componen.

**4.3** Dentro de las setenta y dos (72) horas siguientes a la recepción por parte del ACREEDOR y siempre que exista disponibilidad del ACREEDOR, de conformidad con lo dispuesto en los puntos 4.1 y 4.2 de la presente Cláusula, el ACREEDOR procederá a transferir los fondos requeridos a cualquiera de las siguientes cuentas bancarias de la compañía que haya solicitado el desembolso, y que previamente instruya por escrito mediante comunicación dirigida al ACREEDOR, cuyos datos se indican a continuación:

> BANCO INTERMEDIARIO: WELLS FARGO BANK
> DIRECCION: 11 PENN PLAZA, 4TH FLOOR- NEW YORK, NY 10001-USA
> SWIFT:PNBPUS3NNYC
> ABA #: 026005092
>
> BANCO BENEFICIARIO: BANCO BOLIVARIANO
> CUENTA CORRIENTE: 2000192372000
> SWIFT: BBOLECEG100
> PARA CREDITO FINAL A: PROEXPO, PROCESADORA Y EXPORTDORA DE MARISCOS S.A.
> CTA CTE.#: 0005211762

**4.4** Dentro del término máximo de siete (7) días hábiles subsiguientes a la acreditación de los fondos requeridos, en la cuenta de LA DEUDORA, esta última deberá remitir obligatoriamente al ACREEDOR una nota confirmando la recepción de tales fondos

accordance with the laws of the Republic of Ecuador and those associated with the formalization, registration or legalization by notary public of this **Master Loan Agreement**, the other Loan Documents and any other related document, as well as taxes currently established or that may be established in the future related to the rendering of payment hereunder, except for those tax obligations that: (a) are currently or will be contested according to the pertinent procedures in the terms established by the applicable laws of Ecuador; and/or (b) which do not, nor could be expected to, adversely and materially affect its capacity to meet the payment obligations set forth in this **Master Loan Agreement**, as long as this is communicated in writing and accepted by the CREDITOR;

**c)** Obtain and keep fully valid and in effect any approvals from Government Authorities that may be necessary for the granting and fulfillment of the **Master Loan Agreement** or for the validity and enforceability of the Loan Documents, and take all reasonably necessary or advisable actions before the respective Government Authorities in order to make all payments due in accordance with the Loan Documents, except for any licenses, authorizations, consents, approvals or registrations: (a) that are currently not necessary and can be expected to be obtained within the regular course of business by the time they are necessary; and/or (b) the absence of which does not, nor can be expected to, adversely and materially affect its capacity to meet payment obligations according to the provisions of the Loan Documents, as long as this is communicated in writing and accepted by the CREDITOR;



prestados por EL ACREEDOR.

**CLÁUSULA QUINTA: OBLIGACIONES DE HACER POR PARTE DE LA DEUDORA Y LA FIADORA SOLIDARIA,-**

Salvo autorización previa y por escrito del Acreedor, la DEUDORA y la FIADORA SOLIDARIA cumplirán con las siguientes obligaciones mientras no se haya pagado la totalidad del PRESTAMO REVOLVENTE:

**a)** Cumplir sustancialmente con todas las leyes, ordenanzas, reglas, regulaciones y requerimientos de toda Autoridad de Gobierno (incluyendo pero no limitándose, a las licencias, certificados, permisos y otras autorizaciones gubernamentales necesarias para ser propietarios de sus bienes o para la conducción de sus respectivos negocios, leyes del medio ambiente y leyes relacionadas a la seguridad social y a las obligaciones de fondos de pensiones), a menos que: (i) su aplicación o necesario cumplimiento esté siendo impugnado por la DEUDORA; o, (ii) se trate de un incumplimiento que no afecte o respecto del cual no pudiera esperarse que afecte adversa y sustancialmente la capacidad para hacer frente a sus obligaciones de pago establecidas en el presente **Contrato Marco de Préstamo**, siempre que ello sea comunicado por escrito y aceptado por el Acreedor;

**b)** Cumplir con el pago de todo tributo conforme a la legislación de la República del Ecuador y los vinculados a la formalización, registro o legalización notarial del presente **Contrato Marco de Préstamo**, los demás Documentos de Préstamo y de cualquier otro

**d)** Immediately inform the CREDITOR of any event that could adversely and materially affect the DEBTOR's and the JOINT AND SEVERAL GUARANTOR's economic or financial situation;

**e)** Immediately inform the CREDITOR of one or more of the Events of Default;

**f)** Within the first thirty (30) days of each quarter, the DEBTOR's General Managers and/or Financial Managers shall provide a report including a brief summary of any proceedings (judicial, arbitration, administrative or of any other kind) initiated in the preceding quarter, contentious or not, in which the DEBTOR is a party and has been summoned, the amount of which may have a significant and evident impact on the continuation of the DEBTOR's operation or the viability of its businesses;

**g)** Keep the DEBTOR's and/or the JOINT AND SEVERAL GUARANTOR's assets that have been transferred to the Commercial Guarantee Trust in good condition, aside from any normal wear and tear due to use;

**h)** Use the funds disbursed under this **Master Loan Agreement** exclusively to fulfill the objectives for which they were requested;

**i)** Pay the CREDITOR in a timely manner: (a) all additional costs arising from changes in regulations that apply to or affect the financing operations of the CREDITOR with regard to the

documento relacionado con éste, y los establecidos en la actualidad o que se establezcan en el futuro sobre la realización de cualquiera de los pagos a efectuarse bajo el presente **Contrato Marco de Préstamo**, excepto por aquellas obligaciones tributarias que: (a) son o serán impugnadas siguiendo los procedimientos pertinentes dentro de los términos establecidos por las leyes aplicables de Ecuador; y/o, (b) respecto de los cuales no afecten o pudiera esperarse que afecten adversa y sustancialmente la capacidad para hacer frente a sus obligaciones de pago establecidas en el presente **Contrato Marco de Préstamo**, siempre que ello sea comunicado por escrito y aceptado por el ACREEDOR;

**c)** Obtener y mantener en plena vigencia y efecto todas las aprobaciones de la Autoridad de Gobierno que puedan ser necesarias para el otorgamiento y cumplimiento del **Contrato Marco de Préstamo** o para la validez y exigibilidad de los Documentos de Préstamo, y tomar todas las acciones razonablemente necesarias o convenientes ante las Autoridades de Gobierno respectivas para hacer todos los pagos que deba efectuarse conforme a los Documentos del Préstamo, excepto por aquellas licencias, autorizaciones, conformidades, aprobaciones o registros: (a) que actualmente no son necesarias y se espera obtener en el curso regular del negocio para el momento en que sean necesarias; y/o, (b) respecto de las cuales su falta no afecte o pueda esperarse que afecte adversa y sustancialmente su posibilidad de cumplir con sus obligaciones de pago según lo previsto en los Documentos de Préstamo, siempre que ello sea

granting of its loans, or any that arise from DEBTOR's and JOINT AND SEVERAL GUARANTOR's default on payment of principal on the dates established in the Agreement; (b) the fees and expenses incurred in order to fulfill the CREDITOR's rights in accordance with this **Master Loan Agreement** and the Promissory Note, including legal fees and expenses; (c) the fees and expenses incurred as a result of failure to comply with DEBTOR's Negative Covenants established in Clause Six hereof; (d) all required fees for, or in relation to, the formalization, registration or delivery of the Loan Documents; and (e) Renewal Commissions No. 1 and 2. The CREDITOR shall list the legal costs, duties, commissions and other fees for which it is requesting payment or reimbursement, and is heretofore expressly authorized to deduct said amounts in its favor;

**j)** Deliver to the CREDITOR the DEBTOR's unaudited quarterly financial statements (General Balance Sheet, Statement of Earnings and Losses and Statement of Cash Flow) within thirty (30) calendar days of the close of each quarter;

**k)** Deliver to the CREDITOR the DEBTOR's audited financial statements within one hundred fifty (150) calendar days of the close of each Fiscal Year;



**l)** Keep books and accounting records in accordance with the law and generally accepted accounting principles;

**m)** Maintain or cause to maintain insurance

comunicado por escrito y aceptado por el ACREEDOR;

**d)** Comunicar inmediatamente al ACREEDOR sobre cualquier evento que afecte adversamente y de manera sustancial la situación económica o financiera de la DEUDORA y de la FIADORA SOLIDARIA;

**e)** Informar inmediatamente al ACREEDOR sobre la ocurrencia de uno o más Eventos de Incumplimiento;

**f)** Dentro de los treinta (30) primeros días de cada trimestre, los Gerentes Generales y/o Financieros de la DEUDORA deberán proporcionar un reporte en el cual se incluya un breve resumen de la relación de los procedimientos (judiciales, arbitrales, administrativos o de cualquier otra índole) iniciados en el trimestre precedente, sean o no contenciosos, en los que la DEUDORA sea parte y haya sido notificada, cuyo monto afecte de forma relevante y notoria la continuidad de la operación de la DEUDORA o la viabilidad de sus negocios;

**g)** Mantener en buen estado los activos de la DEUDORA y/o de la FIADORA SOLIDARIA que hayan sido transferidos al Fideicomiso Mercantil en Garantía, excepto por el desgaste común debido a su utilización;

**h)** Utilizar los fondos desembolsados en virtud del **Contrato Marco de Préstamo**, exclusivamente para el cumplimiento de los objetivos para los cuales fueron solicitados;

**i)** Pagar, en forma oportuna al ACREEDOR: (a) todos los costos adicionales que sean producto de cambios en la normativa que

policy(ies) with Ecuadorian insurance companies acceptable to the CREDITOR, covering all the DEBTOR's assets or third-party assets that have been transferred to the Trust Guarantee. In any case, these policies shall be endorsed in the name of the respective Trust Guarantee and delivered to said Trust.

**n)** Allow the CREDITOR, or respective Trust mentioned above, to carry out annual assessments of the degree of coverage by the insurance policies referred to in the previous section and, if necessary, require said amount of coverage to be increased in the event that it is insufficient ;

**o)** Provide the CREDITOR's duly approved representatives with access to the DEBTOR's facilities for the purpose of carrying out the verifications and inspections the CREDITOR deems necessary, as long as they are requested three (3) Business Days in advance and are done during normal working hours;

**p)** The DEBTOR shall designate and keep an external auditor under contract. The CREDITOR may object to said appointment for duly justifiable reasons, in which case a new external auditor shall be appointed subject to prior approval by the CREDITOR;

**q)** The DEBTOR shall instruct designated external auditors in accordance with the foregoing section so that, during the period of validity of this **Master Loan Agreement**, the CREDITOR may contact them directly, whereby the auditor shall provide any information pertaining to the

rige o afecta las operaciones de financiamiento del ACREEDOR para el otorgamiento de sus préstamos, u originados por el incumplimiento en el pago del principal por parte de la DEUDORA y de la FIADORA SOLIDARIA, en las fechas establecidas en el Contrato; (b) los honorarios y gastos incurridos para dar cumplimiento a los derechos del ACREEDOR, conforme al presente **Contrato Marco de Préstamo** y al Pagaré, incluidos los honorarios y gastos legales; (c) los honorarios y gastos incurridos como resultado del incumplimiento de las Obligaciones de No Hacer establecidas en la cláusula sexta del presente **Contrato Marco de Préstamo**; (d) todos los cargos exigibles por concepto de, o en relación con, la formalización, el registro o la entrega de los Documentos de Préstamo; y, (e) la Comisión de Renovación No. 1 y 2. El ACREEDOR deberá detallar los costos legales, derechos, comisiones y otros cargos cuyo pago o reembolso solicite, el cual queda desde ya expresamente autorizado para que debite los mencionados valores a su favor;

**j)** Entregar al ACREEDOR los estados financieros trimestrales no auditados de la DEUDORA (Balance General, Estado de Ganancias y Pérdidas y Estado de Flujos en Efectivo) dentro de los treinta (30) días calendario siguientes al cierre de cada trimestre;

**k)** Entregar al ACREEDOR los estados financieros auditados de la DEUDORA, dentro de los ciento cincuenta (150) días calendario siguientes al cierre de cada Ejercicio Fiscal;

**l)** Llevar libros y registros de contabilidad de acuerdo a ley y a los principios de contabilidad generalmente aceptados;

Financial Statements required by the CREDITOR, as long as the information requested has [not] been provided by the DEBTOR within a term of no more than fifteen (15) days in writing on the auditor's letterhead, with its signature and authorized seal. If the DEBTOR does not respond to the request in said period, the CREDITOR shall contact the external auditor directly. If the auditor's work incurs additional costs beyond his or her regular auditor's fees, said amount shall be covered by the DEBTOR;

**r)** Notify the CREDITOR in writing of any resolution made by the Board of Shareholders that could materially and adversely affect the Line of Credit, the **Master Loan Agreement** and remaining Loan Documents, and provide a brief description of the agenda to be addressed in the respective Board meeting; in addition, notify the CREDITOR of any change in the DEBTOR's and the JOINT AND SEVERAL GUARANTOR's shareholder structure or that of the companies that figure as shareholders thereof, or when such changes involve the formation of Corporate Groups;

**s)** Reimburse and exempt the CREDITOR, its executives, directors, agents and employees from any claim, damages, liability, cost or expense (including, without any limitation whatsoever, legal fees and other legal expenses and those arising from other professional services) incurred by the CREDITOR, or which has been attributed to it in relation to or as a result of any claim, investigation, litigation or legal proceeding brought with regard to this **Master Loan Agreement** or any Loan Document, its respective negotiations, preparation of the pertinent documentation, or



**m)** Mantener o causar que se mantengan póliza(s) de seguro(s) por compañías de seguros ecuatorianas aceptables para el ACREEDOR, cubriendo todos los activos de la DEUDORA o de terceros que hayan sido transferidos al Fideicomiso Mercantil en Garantía. En todo caso, estas pólizas deberán ser endosadas a favor del respectivo Fideicomiso y entregadas a dicho Fideicomiso.

**n)** Permitir que el ACREEDOR, o el respectivo Fideicomiso mencionado en el literal anterior, realice evaluaciones anuales del grado de cobertura de las pólizas de seguro a que se refiere el literal anterior y, en caso de ser necesario, exija el incremento de dicha cobertura en el supuesto que ésta fuera deficiente en estricta relación al monto;

**o)** Dar acceso a los representantes debidamente acreditados del ACREEDOR a las instalaciones de las DEUDORA con el fin de que se efectúen las verificaciones e inspecciones que el ACREEDOR estime necesarias, siempre que se solicite con tres (3) Días Hábiles de anticipación y se hagan en horarios normales de trabajo;

**p)** La DEUDORA deberá nombrar y mantener vigente la contratación de un auditor externo, el cual podrá ser objetado por el ACREEDOR por causas debidamente justificadas, en cuyo caso se procederá a designar a un nuevo auditor externo que deberá ser previamente aprobado por el ACREEDOR;

**q)** La DEUDORA deberán instruir a los auditores externos designados conforme al

the execution on the part of the CREDITOR of any right or recourse that may have been conferred upon it under the protection of such documents, regardless of whether the CREDITOR is one of the implicated parties in said claim, investigation, litigation or legal proceeding, unless said claim or cost is the result of grave negligence or willful misconduct by the CREDITOR or its authorized representative.

**CLAUSE SIX: NEGATIVE COVENANTS OF THE DEBTOR AND THE JOINT AND SEVERAL GUARANTOR**

Except with prior authorization in writing from the CREDITOR, and until all of the REVOLVING LOAN has been paid, the DEBTOR and the JOINT AND SEVERAL GUARANTOR shall refrain from:

**a)** Paying or distributing dividends if it has defaulted on any of the terms and conditions stipulated in this **Master Loan Agreement**, or if an Event of Default occurs or continues as a result of the distribution or payment of dividends;

**b)** Reimbursing shareholders for any equity increase by any means other than dividends if not in compliance with any of the terms and conditions stipulated in this **Master Loan Agreement** and in the Loan Documents, or if an Event of Default occurs, may transpire or continues as a result of said reimbursement;

**c)** Making a significant change to the nature and main line of business of the DEBTOR;

literal anterior para que, durante la vigencia del **Contrato Marco de Préstamo**, el ACREEDOR los pueda contactar directamente, debiendo el auditor entregar la información referente a los Estados Financieros Auditados, que el ACREEDOR le indique, siempre que la información requerida no le hubiera sido proporcionada por la DEUDORA en un plazo no mayor de quince (15) días, en papel membretado del auditor con firma y sello de responsabilidad. En caso de que la DEUDORA no responda al requerimiento en dicho plazo, el ACREEDOR contactará directamente al auditor externo. Si el trabajo del auditor genera un costo adicional a su honorario de auditoria, dicho será de cargo de la DEUDORA;

**r)** Notificar al ACREEDOR por escrito sobre cualquier resolución tomada por la Junta de Accionistas que afecte sustancial y adversamente la Línea de Crédito, el **Contrato Marco de Préstamo** y los demás Documentos de Préstamo y suministrar una breve descripción de la agenda a tratar en la respectiva Junta; así como también se obliga a notificar al ACREEDOR sobre cualquier cambio en la estructura accionaria de LA DEUDORA y/o de la FIADORA SOLIDARIA, o de las compañías que consten como accionistas de aquellas, o cuando estos cambios conlleven la conformación de Grupos Empresariales;

**s)** Indemnizar y eximir al ACREEDOR, sus ejecutivos, directivos, agentes y empleados de cualquier reclamo, daño, responsabilidad, costo o gasto (incluyendo, sin limitación alguna, los honorarios y demás gastos legales y por concepto de otros servicios profesionales) en que haya incurrido el

**d)** Selling or leasing more than 20% of the DEBTOR's fixed assets without consent from the CREDITOR, and in the case of refusal, it must have proper support.

**e)** Reducing the DEBTOR's capital stock, except for necessary or mandatory reductions under applicable law;

**f)** Issuing loans, providing guarantees and acting as co-signer or guarantor with respect to third-party debt, including its shareholders, directors and employees, except for loans or guarantees granted within the normal course of business;

**g)** Entering into contracts, agreements, business deals or transactions with third parties not in line with market conditions in terms of prices, forms of payment, documentation, interest on the amount of payable fixed-term obligations, delivery terms of goods, products or services, discount rates, or the likes thereof;

**h)** Signing agreements under which the income or profits of the DEBTOR are shared with third parties (except for its employees), or by virtue of which the affairs of the DEBTOR are managed by third parties;

**i)** Granting loans to the DEBTOR's shareholders, directors and employees, outside the usual course of business;

**j)** Paying the DEBTOR's directors and employees



ACREEDOR o que se hayan imputado al mismo en relación o como resultado de cualquier reclamo, investigación, litigio o procedimiento legal que se entable en relación con el presente **Contrato Marco de Préstamo** o con cualquier Documento de Préstamo, sus respectivas negociaciones, la preparación de la documentación pertinente, o la ejecución por parte del ACREEDOR de cualquier derecho o recurso que le hubiese sido conferido al amparo de tales documentos, sea o no el ACREEDOR una de las partes implicadas en el citado reclamo, investigación, litigio o procedimiento legal, salvo que dicho reclamo o costo sea producto de la negligencia grave o dolo del ACREEDOR, o de su representante autorizado.

## CLÁUSULA SEXTA: OBLIGACIONES DE NO HACER POR PARTE DE LA DEUDORA Y DE LA FIADORA SOLIDARIA.-

Salvo autorización previa y por escrito del ACREEDOR, y mientras no se haya pagado la totalidad del PRÉSTAMO REVOLVENTE, la DEUDORA y la FIADORA SOLIDARIA se abstendrán de:

**a)** Pagar o distribuir dividendos si se encuentra en incumplimiento con alguno de los términos y condiciones estipulados en el presente **Contrato Marco de Préstamo**, o si un Evento de Incumplimiento ocurre o continúa como resultado de tal distribución o pago de dividendos;

**b)** Rembolsar cualquier partida patrimonial a sus accionistas en forma diferente al reparto de dividendos si se encuentra en incumplimiento con alguno de los términos y condiciones estipulados en el presente

meal allowance and wages or other benefits not in line with the legal provisions in force, and which do not conform to practices and amounts accepted in the local market for similar duties and functions.

**k)** Merging, splitting and, in general, undertaking a reorganization of the DEBTOR, or acquiring companies or subsidiaries, regardless of their activity, without prior consent from the CREDITOR, and in case of refusal, it must have the proper support.

## CLAUSE SEVEN: RESPONSIBILITY REGARDING LOAN GRANTED – METHOD OF PAYMENT

7.1.    The DEBTOR is accountable to the CREDITOR, with respect to the loan granted, as well as the INVOICES in terms of:

- Their existence and legitimacy;
- That they are and will be readily available and are not nor will they be affected by embargoes or prohibitions of transfer, or other encumbrances of any other nature, on the date of this **Master Loan Agreement** and throughout its term and when the corresponding Disbursement Certificates are issued;
- That they are and will be in its possession;
- That the DEBTOR is not nor will it be inhibited to dispose of its ASSETS;
- That it does not nor will it owe ASSIGNED CLIENTS any amount during the term of this **Master Loan Agreement** that could lead to compensation of any kind;
- That no sum derived from INVOICES for the loans granted has been received, nor have said INVOICES been assigned in full or partially to any individual or legal entity beforehand, nor will they be

**Contrato Marco de Préstamo** y en los Documentos de Préstamo, o si un Evento de Incumplimiento ocurre, es posible de ocurrir o continúa como resultado de tal reembolso;

**c)** Realizar algún cambio significativo en el giro principal y la naturaleza del negocio de la DEUDORA;

**d)** Enajenar o arrendar más del 20% de los activos fijos de la DEUDORA; sin consentimiento del ACREEDOR, y en caso de negativa deberá contar con el debido soporte.

**e)** Reducir el capital social de la DEUDORA, salvo por las reducciones necesarias u obligatorias según la ley aplicable;

**f)** Realizar préstamos, garantizar y constituirse como fiador y/o avalista respecto de deuda de terceros, incluyendo a sus accionistas, directores y empleados, excepto por los préstamos otorgados y/o las garantías constituidas dentro del curso normal de sus negocios;

**g)** Celebrar contratos, acuerdos, negocios o transacciones con terceros, que no sean en condiciones de mercado en lo referente a precios, formas de pago, documentación, intereses sobre el monto de las obligaciones pagaderas a plazo, los plazos de entrega de mercaderías, productos o servicios, tasas de descuento, u otras semejantes;

**h)** Celebrar acuerdos en virtud de los cuales los ingresos o utilidades de la DEUDORA se compartan con terceros (excepto por sus empleados), o en virtud de los cuales los asuntos de la DEUDORA sean gestionados por

assigned in the future to any person other than the CREDITOR;

- The authenticity of the signatures of those who assigned the INVOICES, if said signatures exist, as well as any instrument pertaining to the Assigned DEBTOR(s) verifying receipt of the INVOICES and/or inventory included in them and the ability of said DEBTOR(s) to carry out such legal acts;

- The loan granted and the INVOICES do not contain nor will they contain formal defects which might give rise to their rejection.

- That the average payment term for INVOICES shall not exceed thirty (30) days from the date of their issuance.

7.2.    Financing granted under this **Master Loan Agreement** shall be considered in order to receive ordinary payments, when the CREDITOR receives the Payment of the INVOICES from the Assigned Client according to the DEBTOR's prior instructions to the Assigned Clients, or in special cases, when the CREDITOR receives the payment directly from the DEBTOR. Said payment shall be made by bank deposit or accreditation in the CREDITOR's account, the information for which the CREDITOR shall indicate in writing in a letter duly signed by the CREDITOR's representative.

To that effect, in addition to the notifications provided for in Clause Fifteen of this **Master Loan Agreement**, the DEBTOR shall include in each and every one of the INVOICES sent to the Assigned Client a legend expressly stating that said invoice shall be paid to the CREDITOR by means of a transfer of the corresponding funds to the CREDITOR's bank account   Foreign



terceros;

**i)** Otorgar préstamos a los accionistas, directores y empleados de la DEUDORA, fuera del curso habitual de sus negocios;

**j)** Pagar a los directores y empleados de la DEUDORA, dietas y remuneraciones u otras prestaciones que no sean conformes con las disposiciones legales vigentes, y que no sean conformes a las prácticas y montos aceptados en el mercado local para cargos y funciones similares.

**k)** Respecto de la DEUDORA, fusionarse, escindirse y, en general reorganizarse, o adquirir empresas o subsidiarias, cualquiera sea su actividad, sin el previo consentimiento del ACREEDOR y en caso de negativa, deberá contar con el debido soporte.

## CLAUSULA SEPTIMA: RESPONSABILIDAD SOBRE EL CREDITO CEDIDO - FORMA DE CANCELACIÓN.-

**7.1.**   La DEUDORA es responsable frente al ACREEDOR, tanto respecto del crédito cedido, como de las FACTURAS en cuanto a:

- Su existencia y legitimidad;
- Que son y serán de libre disponibilidad y que no se encuentran ni se encontrarán afectados, por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza, a la fecha del presente **Contrato Marco de Préstamo** y durante toda su vigencia, y al momento en que se remitan los correspondientes Certificados de Desembolso;
- Que se encuentra y encontrará en su propiedad;
- Que no se encuentra ni encontrará

Currency Account), which information shall be included in the legend.

**7.3.**   The DEBTOR shall be liable to the CREDITOR for the assignment of the loan and INVOICES. As a result, if the invoices amounts are not paid on their respective due dates, or if said payment is not made because the Assigned Client refuses for any reason, or if the payment is not made as established in the preceding Section 5.2, the DEBTOR will be obliged to pay to the CREDITOR the full amount or the balance due corresponding to unpaid and overdue loans, within 48 hours of notification from the CREDITOR, in addition to the compensatory interest accrued from the expiration date of each unpaid INVOICE at the rate applied by the CREDITOR. The DEBTOR will be legally in default if it fails to meet the deadline for the payments alone, whereby [the DEBTOR] must pay the Compensatory Interest established by the CREDITOR, until the full balance due is cancelled and paid in full. The applicable annual Interest Rate in the event of default or breach is 18%. With the DEBTOR's payment in response to the requirement set forth in this Section 7.3, the DEBTOR will be subrogated to the rights of the CREDITOR with regard to the ASSIGNED CLIENT, whereby the CREDITOR must deliver the INVOICE and all other documentation in its possession to the DEBTOR and may take any measures it deems necessary to collect [payment]. All this notwithstanding the actions that the CREDITOR may take with respect to the Assigned Client pursuant to its non-compliance.

The sum of disbursements owed and not cancelled, as well as other payments or charges that the BORROWER owes the CREDITOR, shall be subject to the

inhibido para disponer de sus Bienes:

- Que no adeuda, ni adeudará durante la vigencia de este **Contrato Marco de Préstamo**, a los Clientes Cedidos suma alguna que pueda dar lugar a compensaciones de cualquier especie;
- Que no ha percibido suma alguna derivada de las FACTURAS, de los Créditos cedidos, ni que los mismos han sido cedidos total o parcialmente a persona natural o Jurídica alguna con anterioridad y que no serán cedidos en el futuro a favor de una persona que no sea el ACREEDOR;
- La autenticidad de las firmas de quienes efectuaron las cesiones de las FACTURAS, en el caso de existir dichas firmas; así como también de todo instrumento proveniente del/ de los Deudor/es Cedido/s donde se acredite la recepción de las FACTURAS y/o del Inventario comprendido en ellas y la capacidad de los mismos para la realización de tales actos jurídicos;
- Que el crédito cedido y las FACTURAS no contienen ni contendrán defectos formales que pudieren motivar su rechazo.
- Que las FACTURAS no tendrán un plazo promedio de pago superior a treinta (30) días, contados a partir de la fecha de su emisión.

7.2.  La financiación que mediante este **Contrato Marco de Préstamo** se instrumenta, será considerada para recibir abonos ordinarios, cuando el ACREEDOR reciba del Cliente Cedido el Pago de las FACTURAS; según instrucciones que previamente la DEUDORA hayan impartido a los Clientes Cedidos o, en caso extraordinario, cuando el ACREEDOR reciba el pago de manera directa por parte de LA DEUDORA. Dicho pago se deberá efectuar mediante depósito y/o acreditación bancaria en la

calculation of interest and commissions.

**CLAUSE EIGHT: EVENTS OF DEFAULT**  If one or more of the events mentioned below takes place and continues, the Creditor is entitled to take the corresponding actions set forth in the following Clause:

a) If a third party requests the bankruptcy of any DEBTOR party and/or the insolvency of the JOINT AND SEVERAL GUARANTOR and the request is not rejected by the courts; (b) if any DEBTOR party and/or the JOINT AND SEVERAL GUARANTOR defaults on payment, even without undertaking the aforementioned procedures; (c) if any injunction is placed on the assets of any DEBTOR party and/or the JOINT AND SEVERAL GUARANTOR; (d) if there is a lack of veracity, whole or partial, by any DEBTOR party and/or the JOINT AND SEVERAL GUARANTOR, in the applications for the Line of Credit subject to this **Master Loan Agreement**; (e) if the conditions and obligations assumed by the DEBTOR and/or the JOINT AND SEVERAL GUARANTOR are not met in the Commercial Guarantee Trust "FIDEICOMISO MERCANTIL PROEXPO II – TRADE FINANCE TRUST" and/or the fiduciary assignment agreement signed to that effect; (f) if any alteration is produced that, in the opinion of the CREDITOR, results in a fundamental change in the basic conditions taken into account for the Line of Credit under this **Master Loan Agreement**; (g) lack of timely payment of principal and/or interest and/or commissions and/or expenses of the line of credit at any of the established dates for that purpose; (h) the acknowledgement in writing from the DEBTOR of its inability to pay its debts, or the general assignment or abandonment of ASSETS to its creditors; or: (1) the DEBTOR files for



cuenta del ACREEDOR, cuyos datos serán indicados por escrito por el ACREEDOR, mediante carta debidamente firmada por el representante del ACREEDOR.

A tal efecto, en adición a las notificaciones previstas en la Cláusula Décimo Quinta del presente **Contrato Marco de Préstamo**, la DEUDORA se obliga a incluir en todas y cada una de las FACTURAS que sean remitidas al Cliente Cedido, una leyenda que indique expresamente que tal FACTURA deberá ser pagada al ACREEDOR mediante transferencia de los fondos correspondientes a la cuenta bancaria del ACREEDOR (Cuenta Recolectora) que se incluirá en el texto de la leyenda.

**7.3.** La cesión del Crédito y de las FACTURAS se efectúa con responsabilidad por parte de la DEUDORA hacia el ACREEDOR. En consecuencia, si el importe de las FACTURAS no se encontrare abonado a la fecha de los respectivos vencimientos, como si dicho cumplimiento no se efectuare por rehusarse el Cliente Cedido por cualquier causa que fuere, o no se observare para el pago lo establecido en el punto 5.2. precedente, ello generará la obligación de la DEUDORA de abonar al ACREEDOR el importe total o el saldo adeudado correspondiente a dichos créditos, vencidos e impagos, dentro de las 48 horas de ser requerido por este último, abonando a su vez, los intereses compensatorios que se devenguen desde el vencimiento de cada FACTURA Impaga a la tasa que se hubiera aplicado por parte del

bankruptcy; (2) a government authority or other entity with jurisdiction over the DEBTOR or its assets (2.1) initiates preventative or regular bankruptcy proceedings for the DEBTOR or its assets; or (2.2) any action is taken under any legislation regarding bankruptcy proceedings, equity restructuring, dissolution, liquidation, bankruptcy, insolvency, financial restructuring, suspension of payments or other similar actions governing the operation of the DEBTOR that may preclude the DEBTOR from complying with the obligations assumed in accordance with the Loan Documents when they become payable, as applicable; (3) a regular involuntary bankruptcy proceeding is initiated with respect to any DEBTOR party or its assets by a person other than a government authority or agency with jurisdiction over any DEBTOR party or its assets and the ordinary bankruptcy proceeding is not nullified within ten (10) calendar days of its filing or start; or (4) the DEBTOR files for bankruptcy, reorganization, dissolution, liquidation, or insolvency under the terms of any law relating to bankruptcy, insolvency, or legal proceedings as applicable; or (5) the call for a DEBTOR general shareholder's meeting to address its respective dissolution or liquidation; (i) if upon the occurrence of any event or circumstance, the **Master Loan Agreement** or the other Loan Documents become unenforceable (or there is a threat thereof, in the opinion of the CREDITOR) or no longer in force and/or valid, partially or fully, and/or to have any effect, resulting in the CREDITOR losing the rights, powers or privileges that it was granted under those documents, in the CREDITOR's opinion, except any fact, event or circumstance attributable to the CREDITOR; (j) any government or political act occurs or any person acting under government authorization

ACREEDOR. La mora de la DEUDORA se producirá de pleno derecho por el solo vencimiento del plazo fijado para el pago, a partir del cual deberá abonar los Intereses Compensatorios establecidos por el ACREEDOR, hasta la efectiva y total cancelación del monto adeudado. La Tasa de Interés anual aplicable en caso de mora o incumplimiento es del 18%. Con el pago que efectúe la DEUDORA con motivo del requerimiento mencionado en el presente punto 7.3., ésta quedará subrogada en los derechos del ACREEDOR frente al CLIENTE CEDIDO, debiendo el ACREEDOR entregar a la DEUDORA, la FACTURA y toda otra documentación que tenga en su poder y podrá realizar cualquier gestión que resulte necesaria para el cobro de la misma. Todo ello sin perjuicio de las acciones que podrá ejercer el ACREEDOR respecto del Cliente Cedido en virtud de su incumplimiento.

La suma de desembolsos adeudados y no cancelados, así como otros pagos o cargos que la DEUDORA y la DEUDORA SOLIDARIA, deba pagar al ACREEDOR, estarán sujetos al cómputo de intereses y comisiones.

**CLÁUSULA OCTAVA: EVENTOS DE INCUMPLIMIENTO.-** Si uno o más de los hechos que se mencionan a continuación ocurre y continúa, el Acreedor tendrá derecho a tomar las acciones correspondientes establecidas en la Cláusula siguiente:

(a) Si un tercero pidiere la quiebra de cualquiera de la DEUDORA y/o la insolvencia de la FIADORA SOLIDARIA y no fuera rechazada dicha solicitud por el tribunal correspondiente; (b) Si cualquiera de la

takes action to condemn, expropriate, confiscate, nationalize or seize custody or control of all or part of the assets of any DEBTOR party or operations, or take any action to remove the board of directors and/or management of any DEBTOR party or limit its authority to conduct its business or generate a Material Adverse Effect; (k) the obligation to pay arising from (1) an arbitration, judicial or extra-judicial settlement, emanating from a completed procedure not subject to appeal, or (2) an administrative decision or consensual administrative action that generates an obligation for the DEBTOR to pay in an amount that THE CREDITOR considers materially adverse; (l) material adverse changes in laws and/or adverse political events that generate a Material Adverse Effect; (m) any DEBTOR party transfers, exchanges, yields in trust, divests (through negotiation or a series of negotiations) or otherwise disposes of its assets in terms that exceed the percentage set out in paragraph d) of the sixth clause, without prior authorization from the CREDITOR, and in the case of refusal, proper support must be conferred; (n) any DEBTOR party grants or constitutes guarantees; (ñ) events occur that change the conditions of the domestic and/or international financial market in such a way that generates a Material Adverse Effect, in the CREDITOR's opinion; (o) extraordinary events, such as acts of God; war, vandalism, terrorism, strikes, boycotts, insurrections, fires, natural disasters, occur leading to a Substantial Adverse Effect; (p) any DEBTOR party loses any of its licenses, certificates, permits, concessions, rights or authorizations, or an event occurs that generates this loss and generates a Material Adverse Effect, provided that the DEBTOR does not recover said license, certificate, permit, concession, right or permission within fifteen (15)



DEUDORA y/o FIADORA SOLIDARIA incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos; (c) si se trabare alguna medida cautelar sobre los Bienes de cualquiera de la DEUDORA y/o FIADORA SOLIDARIA; (d) si se comprobare la falta de veracidad, parcial o total, por parte de cualquiera de la DEUDORA y/o FIADORA SOLIDARIA, en las aplicaciones de la Línea de Crédito objeto del presente **Contrato Marco de Préstamo**; (e) si se incumpliere con las condiciones y obligaciones asumidas por parte de la DEUDORA y/o FIADORA SOLIDARIA en el "FIDEICOMISO MERCANTIL PROEXPO II – TRADE FINANCE TRUST" y/o en el contrato de encargo fiduciario suscrito para el efecto; (f) si se produjere cualquier alteración que a criterio del ACREEDOR, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para la Línea de Crédito objeto del presente **Contrato Marco de Préstamo**; (g) Falta de pago oportuno de capital y/o intereses y/o comisiones y/o gastos de la Línea de Crédito en cualquiera de las fechas establecidas para ello; (h) El reconocimiento por escrito por parte de la DEUDORA de la imposibilidad de pago de deudas, o la cesión general o abandono de Bienes en beneficio de acreedores; o que: (1) la DEUDORA ingrese a un proceso concursal por solicitud propia; (2) una autoridad gubernamental u otro organismo que tenga jurisdicción sobre la DEUDORA o sus activos (2.1) comience un procedimiento concursal ordinario o preventivo con respecto a la DEUDORA o sus activos; o, (2.2) tome alguna acción bajo cualquier legislación en materia concursal, de reestructuración patrimonial, disolución, liquidación, quiebras, insolvencia, saneamiento patrimonial, suspensión de

calendar days of its loss; (q) one or more judicial, arbitration, administrative or out-of-court proceedings are initiated (other than those declared by the DEBTOR at the time due diligence was performed)that can reasonably generate a contingency for the DEBTOR that can generate a Material Adverse Effect, in the CREDITOR's opinion; (r) the obligations of this **Master Loan Agreement** and the Promissory Note no longer have preference and priority of payment over any other DEBTOR obligation (excluding those preferred by any general rule of law on bankruptcy proceedings, asset restructuring, insolvency, asset reorganization, liquidation or other similar claims); (s) a ruling or non-monetary resolution is issued against the DEBTOR and/or the JOINT AND SEVERAL GUARANTOR emanating from a final procedure not subject to any appeal that generates a Material Adverse Effect; and/or (t) the occurrence of an event of default as described in the Loan Documents other than this **Master Loan Agreement** has been verified.

**CLAUSE NINE: ACTIONS ARISING FROM EVENTS OF DEFAULT** Notwithstanding other actions and rights the CREDITOR may exercise in accordance with the Loan Documents, if an Event of Default occurs, the CREDITOR may, at its sole discretion, simultaneously or successively exercise one or more of the following actions:

(a) Declare the debt derived from the assigned INVOICE as in arrears and request payment of any balance due; furthermore, upon written notice, it may declare all amounts the DEBTOR and/or the JOINT AND SEVERAL GUARANTOR should pay by virtue of this Master Loan Agreement or pursuant to the Promissory Note, as well as any other signed Master Loan

pagos u otra similar que regule la operación de la DEUDORA que pueda imposibilitar a la DEUDORA para cumplir las obligaciones que ésta asumen de conformidad con los Documentos del Préstamo cuando se hagan exigibles, según corresponda; (3) un procedimiento concursal ordinario involuntario sea iniciado con respecto a cualquiera de la DEUDORA o sus activos por una persona distinta a una autoridad gubernamental u organismo que tenga jurisdicción sobre cualquiera de la DEUDORA o sus activos y dicho procedimiento concursal ordinario no sea dejado sin efecto dentro de los diez (10) días calendario de su inicio o presentación; y/o (4) la DEUDORA se encuentre en quiebra, concursada, en disolución, liquidación, o en insolvencia bajo los términos de cualquier legislación en materia de quiebras, concursos o insolvencia que le sea aplicable; y/o (5) la convocatoria a una junta general de accionistas de la DEUDORA para tratar su respectiva disolución y/o liquidación; (i) Que, si ante la ocurrencia de cualquier hecho, evento o circunstancia el **Contrato Marco de Préstamo** o los otros Documentos de Préstamo se conviertan (o exista la amenaza fundada a criterio del ACREEDOR)en inexigibles o dejaren de tener vigencia y/o validez, parcial o total, y/o efecto, ocasionando que EL ACREEDOR deje de tener los derechos, poderes o privilegios otorgados a su favor en virtud de dichos documentos, a solo criterio del ACREEDOR, exceptuándose cualquier hecho, evento o circunstancia imputable al ACREEDOR; (j) Que ocurra cualquier acto gubernamental o político o que alguna persona actúe bajo autorización del gobierno con el fin de tomar acciones que condenen, expropien, embarguen, nacionalicen, o asuman

Agreement or any that may be signed between the CREDITOR, the DEBTOR, and the JOINT AND SEVERAL GUARANTOR, which would otherwise be payable after the date of said notice, as in arrears and immediately due and payable, whereupon the Parties agree that, from that moment on, such amounts will be due and payable, without due diligence, letters, notices, presentation for payment, judicial or extrajudicial requirements, protest or any other formality, all of which the DEBTOR and/or the JOINT AND SEVERAL GUARANTOR expressly waives. For the purposes specified in this clause, the DEBTOR agrees that the effect of the aforementioned declaration of arrears will be to allow the CREDITOR to declare in arrears all of the outstanding obligations and proceed to the immediate collection of amounts due, which shall be considered, without notification, protest or injunction of any kind, as liquid, due and payable immediately;

(b) Implement the Commercial Guarantee Trust in order to carry out the collection of all of outstanding obligations, without prejudice to requiring payment of all outstanding obligations and exercising other resources conferred under Applicable Laws. For the purposes indicated above, the liquidation of outstanding obligations shall be made by the CREDITOR and communicated to the DEBTOR and the JOINT AND SEVERAL GUARANTOR for payment, forcing the DEBTOR and the JOINT AND SEVERAL GUARANTOR to pay the amount of the settlement delivered by CREDITOR; and/or

(c) Initiate legal actions to protect its interests, including the possibility of requesting precautionary measures on the DEBTOR's and the JOINT AND SEVERAL GUARANTOR's Assets and rights.

custodia o control de, todo o parte de los activos de cualquiera de la DEUDORA o sus operaciones, o tomen alguna medida que desplace al directorio y/o gerencia de cualquiera de la DEUDORA o limite su autoridad en la realización de sus negocios o generen un Efecto Sustancialmente Adverso; (k) La obligación de pago originada por (1) un mandato arbitral, judicial o acuerdo extrajudicial, emanado de un procedimiento terminado no sujeto a recurso impugnatorio alguno, o (2) una resolución administrativa o acto administrativo consentido, que genere la obligación de pago por parte de la DEUDORA por un monto que el ACREEDOR considere materialmente adverso; (l) Que ocurran cambios sustanciales adversos en las leyes y/o eventos políticos adversos que generen un Efecto Sustancialmente Adverso; (m) Que cualquiera de la DEUDORA transfiera, permute, ceda en dominio fiduciario, enajene (mediante una negociación o una serie de negociaciones) o disponga de otra forma de sus activos en términos que superen el porcentaje establecido en el literal d) de la cláusula sexta, sin la autorización previa del ACREEDOR, y en caso de negativa deberá contar con el debido soporte. (n) Que cualquiera de la DEUDORA otorgue o constituya Garantías; (ñ) Que ocurran eventos que cambien las condiciones del mercado financiero nacional y/o internacional de manera tal que genere un Efecto Sustancialmente Adverso, a criterio del ACREEDOR; (o) Que ocurran eventos extraordinarios tales como caso fortuito, guerra, vandalismo, terrorismo, huelga, boycott, insurrección, incendio, desastre natural que generen un Efecto Sustancialmente Adverso; (p) Que cualquiera

In the event of the enforcement of the loan granted against the Line of Credit, the CREDITOR may execute the collateral placed in guarantee by the DEBTOR and if this does not cover the loan granted, plus any additional interest, including the delinquent interest, plus commissions and other judicial and extra-judicial expenses generated which must be covered, the CREDITOR may collect payment in the form of the remaining assets held by the DEBTOR and the JOINT AND SEVERAL GUARANTOR, a course of action expressly authorized by the DEBTOR and the JOINT AND SEVERAL GUARANTOR in this agreement.

## CLAUSE TEN: CURRENCY OF PAYMENT

In the event that the DEBTOR and the JOINT AND SEVERAL GUARANTOR must pay the CREDITOR, or whomever the CREDITOR indicates, the total amount or the balance due on the INVOICES as established in the Clause Seven, the DEBTOR and the JOINT AND SEVERAL GUARANTOR hereby declares that these amounts must be paid in United States dollars and not in any other currency. Accordingly, the DEBTOR and the JOINT AND SEVERAL GUARANTOR expressly acknowledges and agrees that it is an essential condition of this **Master Loan Agreement** that the financing of the assignment of the loan granted and the INVOICES, principal, compensatory and delinquent interest, costs, fees and other sums of money must be paid to the CREDITOR in US dollars.

## CLAUSE ELEVEN: ADDITIONAL OBLIGATIONS OF THE DEBTOR

de la DEUDORA pierda alguna de sus licencias, certificados, permisos, concesiones, derechos o autorizaciones, o que ocurra algún evento que genere esta pérdida y que genere un Efecto Sustancialmente Adverso, siempre que la DEUDORA no obtenga nuevamente dicha licencia, certificado, permiso, concesión, derecho o autorización dentro de los quince (15) días calendario siguientes a su pérdida; (q) Que se inicien uno o más procesos judiciales, arbitrales, administrativos o extrajudiciales (distintos de aquellos declarados por la DEUDORA al momento de realizar el *due diligence* de ésta) que razonablemente le pueda generar a la DEUDORA una contingencia que pueda generar un Efecto Sustancialmente Adverso, a criterio del ACREEDOR; (r) Que las obligaciones de este **Contrato Marco de Préstamo** y del Pagaré dejen de tener preferencia y prioridad de pago respecto con cualquier otra obligación de la DEUDORA (excluyendo aquellas cuyos reclamos sean preferidos por cualquier norma legal de aplicación general sobre procesos concursales, reestructuración patrimonial, quiebra, insolvencia, saneamiento patrimonial, liquidación o similares); (s) Que se emita un fallo o resolución de carácter no monetario en contra de la DEUDORA y/o FIADORA SOLIDARIA emanada de un procedimiento terminado no sujeto a recurso impugnatorio alguno, que genere un Efecto Sustancialmente Adverso; y/o, (t) Que, se haya verificado la ocurrencia de un evento calificado como evento de incumplimiento en los Documentos del Préstamo distintos a este **Contrato Marco de Préstamo**.

**CLÁUSULA NOVENA: ACCIONES DERIVADAS DE EVENTOS DE INCUMPLIMIENTO.-** Sin

The DEBTOR agrees to provide, to the extent of its possibilities, all reasonable requests for information that the CREDITOR may require related to the loans granted arising from the INVOICES; and it also agrees to fulfill all obligations that may correspond to them so that the loans arising from assigned INVOICES are paid to the CREDITOR, thus taking all necessary steps such that the CREDITOR shall receive full acknowledgement of the loan debt arising from the assigned INVOICES, whereby the DEBTOR shall assume all reasonable costs related to fees or legal costs that the CREDITOR would eventually incur in order to collect payment of the assigned loan derived from the INVOICES or the refund of the amounts financed.

In the event of breach of contract or misrepresentation of the stipulations in Clause Seven, [the DEBTOR] also agrees to pay the CREDITOR within 48 hours of notification from the CREDITOR, any sum corresponding to the portion or the entire amount financed by the latter that has not been paid by the Assigned Client, plus the relevant agreed compensatory interest, in accordance with Clause Seven.

In addition, the DEBTOR shall deliver to the CREDITOR copies of the company's quarterly financial reports within a maximum of 45 days from the close of each quarter, as well as audited annual financial statements.

**CLAUSE TWELVE: COMMISSIONS, EXPENSES, TAXES AND DUTIES**

All commissions, taxes, duties and/or expenses that the operations outlined in this **Master Loan**



perjuicio de las demás acciones y derechos que pueda ejercer el ACREEDOR conforme a los Documentos del Préstamo, ante la ocurrencia de un Evento de Incumplimiento, el ACREEDOR podrá, a su sola discreción, ejercer, simultánea o sucesivamente, una o más de las siguientes acciones:

(a) Declarar la deuda derivada de la FACTURA cedida, como de plazo vencido y solicitar el pago de todo lo adeudado; así como declarar de plazo vencido todos los montos que la DEUDORA y/o FIADORA SOLIDARIA deba pagar en virtud de este Contrato Marco de Préstamo o en virtud al Pagaré, así como de cualquier otro Contrato Marco de Préstamo suscrito o que se suscribiere entre EL ACREEDOR, LA DEUDORA, y LA FIADORA SOLIDARIA mediante aviso escrito, que de otra forma sean exigibles con posterioridad a la fecha de dicho aviso, como inmediatamente exigibles y pagaderos, para lo cual las Partes en este acto convienen en que, a partir de ese momento, tales montos serán exigibles y pagaderos, sin que medie diligencia, exhortos, avisos, presentación para el pago, requerimiento judicial o extrajudicial, protesto o cualesquiera otra formalidad, a todas las cuales la DEUDORA y la FIADORA SOLIDARIA, renuncia en forma expresa. Para los efectos previstos en esta cláusula, la DEUDORA, acepta que el efecto de la declaratoria de plazo vencido antes indicada, será el de permitir al ACREEDOR declarar de plazo vencido la totalidad de las obligaciones pendientes de pago y proceder al cobro inmediato de las sumas adeudadas, las cuales se considerarán, sin necesidad de notificación, protesto o requerimiento judicial de ninguna especie como líquidas, exigibles y

**Agreement** or that it may generate shall be borne in full by the DEBTOR, which authorizes the CREDITOR to proceed with the respective debit of such amounts in its own favor, in the event that the CREDITOR must pay them or if they are generated in its favor.

**CLAUSE THIRTEEN: AUTHORIZATION OF ASSIGNMENT**

The DEBTOR and the JOINT AND SEVERAL GUARANTOR expressly authorizes the CREDITOR to proceed with the assignment of this Master Loan Agreement and the corresponding Disbursement Certificates, and the rights and obligations referred to therein, to Funds managed or administered directly by the CREDITOR; there should be a record of said assignments such that the beneficiaries of the assignment of rights under this Master Loan Agreement may not, in turn, assign it to third parties that are not Funds directly managed or administered by the CREDITOR. If the CREDITOR wishes to assign the rights arising from this Master Loan Agreement to national or foreign entities that are not subsidiaries, affiliates or entities related to [the CREDITOR], the DEBTOR and the JOINT AND SEVERAL GUARANTOR states that it accepts the assignment of this agreement in favor of third parties of the CREDITOR's choosing, and it also waives the right to be notified of this assignment as stated in the Civil Procedure Code, in accordance with article eleven of the current Civil Code, whereby the CREDITOR need only send notification informing the DEBTOR and the JOINT AND SEVERAL GUARANTOR of the transfer of rights, which shall be sent to each DEBTOR and JOINT AND SEVERAL GUARANTOR party within a maximum of 72 hours from the date

pagaderas de inmediato;

(b) Ejecutar el Contrato de Fideicomiso Mercantil con la finalidad de realizar el cobro de la totalidad de las obligaciones pendientes de pago, sin perjuicio de requerir el pago de la totalidad de las obligaciones pendientes de pago y ejercer otros recursos que le otorgan las LEYES APLICABLES. Para efectos de lo indicado anteriormente, la liquidación del monto de las obligaciones pendientes de pago será realizada por el ACREEDOR y comunicada a la DEUDORA y la FIADORA SOLIDARIA, para su pago; obligándose la DEUDORA y la FIADORA SOLIDARIA a abonar el monto de la liquidación que le hubiere sido entregada por el ACREEDOR; y/o

(c) Iniciar las acciones legales para cautelar sus intereses, incluyendo la posibilidad de solicitar medidas cautelares sobre los Bienes y derechos de la DEUDORA y la FIADORA SOLIDARIA.

En caso de ejecución del crédito concedido con cargo a la Línea de Crédito, el ACREEDOR podrá ejecutar el colateral entregado en garantía por parte de la DEUDORA y si éste no alcanzare para pagar la totalidad del crédito concedido, más los intereses generados, incluyendo el moratorio, más las comisiones generadas y demás gastos judiciales y extrajudiciales que se requieran cubrir, el ACREEDOR podrá, lo cual es autorizado expresamente por la DEUDORA y la FIADORA SOLIDARIA, en este acto, cobrarse de los restantes activos que posea la DEUDORA y LA FIADORA SOLIDARIA.

**CLAUSULA DÉCIMA: MONEDA DE PAGO.-**

that the aforementioned assignment of rights has been concluded. In all cases of assignment of rights arising from this Master Loan Agreement, both the assignor and assignee shall fully respect the terms and conditions of this agreement.

## CLAUSE FOURTEEN: STATEMENT OF COMPLIANCE WITH ENVIRONMENTAL, SAFETY, HEALTH AND LABOR POLICIES

The DEBTOR has, to date, exercised and will continue to exercise all necessary actions to maintain and comply with all the policies, laws, regulations, agreements and international treaties related to the protection of the environment, health, safety and labor matters in effect in Ecuador.

The DEBTOR also states that up to the present date, it has no knowledge of any action or claim initiated against it for environmental damages involving the application of fines, penalties, clean-up costs, reimbursement of expenses to the government, payment for damages, order of imprisonment handed down against the legal representatives of the company, reduction in the value of damage guarantees or environmental liability, etc., the effects of which prevent it from complying with all the obligations undertaken in this **Master Loan Agreement.** The DEBTOR likewise undertakes to perform all actions and take all appropriate measures to prevent this from happening in the future.

The DEBTOR states that the funds from the line of credit approved in its favor by the CREDITOR



En los casos en que la DEUDORA y la FIADORA SOLIDARIA, deba pagar al ACREEDOR o a quien este indique, el importe total o el saldo adeudado correspondiente a las FACTURAS conforme lo establece la Cláusula Séptima; la DEUDORA y la FIADORA SOLIDARIA, declaran por el presente instrumento, que dichos montos deberán ser necesariamente pagados en Dólares de los Estados Unidos de Norteamérica y no en otra moneda. En consecuencia, la DEUDORA y la FIADORA SOLIDARIA, expresamente reconocen y aceptan que constituyen condición esencial de este **Contrato Marco de Préstamo**, de que se realice el financiamiento, de la cesión del crédito cedido y de las FACTURAS; que el capital, los intereses compensatorios y moratorios, costos, costas y demás sumas de dinero, tendrán que ser abonadas al ACREEDOR en dólares estadounidenses.

## CLAUSULA DÉCIMO PRIMERA: OBLIGACIONES ADICIONALES DE LA DEUDORA.-

La DEUDORA se comprometen a satisfacer, en la medida de sus posibilidades, toda la información razonable que el ACREEDOR pudiera requerirle relacionada con los créditos cedidos emanados de las FACTURAS; y asimismo se obliga a cumplir con todas aquellas obligaciones que pudieran corresponderles para que los créditos derivados de las FACTURAS cedidas sean abonados al ACREEDOR, obligándose a realizar todas las gestiones que resulten necesarias a efecto de que el ACREEDOR obtenga el reconocimiento pleno de los créditos derivados de las FACTURAS cedidas, asumiendo la DEUDORA todos los razonables

will not be used to finance the production, marketing, processing or use of prohibited or illegal goods or those prohibited by the CREDITOR in Annex A of the document containing the Environmental Due Diligence Policy and Procedures, which was delivered to the DEBTOR and its content accepted.

## CLAUSE FIFTEEN: NOTIFICATIONS

**15.3** The DEBTOR agrees to notify the Assigned Clients by certified letter that they must deposit the payment of the INVOICES, whose assignment shall be finalized at the time the financing operation takes place under the terms of this **Master Loan Agreement**, in the CREDITOR's account. For this purpose, the DEBTOR must notify Assigned Clients by certified letter containing the text attached to this agreement as Annex C, signed by its legal representative, whose signature must be duly certified (authenticated).

**15.4** In the event that the obligations assumed by the DEBTOR and the JOINT AND SEVERAL GUARANTOR are paid in full, the CREDITOR agrees to notify the Assigned Clients of this fact if there are outstanding rights or liabilities corresponding to the assigned INVOICES.

Once the DEBTOR's and the JOINT AND SEVERAL GUARANTOR's obligations to the CREDITOR are discharged, the CREDITOR is obliged to deposit in the DEBTOR's account any sum received from the Assigned Clients subsequently to the aforementioned discharge of the DEBTOR's obligations.

## CLAUSE SIXTEEN: ACCOUNTABILITY

gastos por honorarios o costos judiciales en que deba incurrir eventualmente el ACREEDOR para obtener el cobro del crédito cedido derivado de las FACTURAS o la devolución de las sumas financiadas.

También se compromete, ante la existencia de incumplimiento o falsedad a lo establecido en la Cláusula Séptima, ante el requerimiento que le efectúe el ACREEDOR, a abonar dentro de las 48 horas de ser notificado, la suma que corresponda a la porción o totalidad del monto financiado por este último, que no haya sido abonada por el Cliente Cedido, con más los pertinentes intereses compensatorios pactados, conforme la Cláusula Séptima.

Adicionalmente, la DEUDORA deberá entregar al ACREEDOR informes financieros trimestrales de la empresa, en un plazo máximo de 45 días contados a partir del cierre de cada trimestre y estados financieros anuales auditados.

## CLAUSULA DÉCIMO SEGUNDA: COMISIONES, GASTOS, IMPUESTOS Y TRIBUTOS.-

Toda comisión, impuesto, tributo y/o gastos que las operaciones detalladas en este **Contrato Marco de Préstamo** o que el mismo, pudiere generar, serán asumidos de manera íntegra por la DEUDORA, la misma que autoriza al ACREEDOR para que proceda con el débito respectivo de dichos valores a favor del mismo, en caso de que dicho ACREEDOR deba pagarlos o sean valores generados a su favor.

## CLAUSULA DÉCIMO TERCERA: AUTORIZACION DE CESION.-

The CREDITOR shall inform the DEBTOR on a weekly basis of the sums received from the Assigned Clients and their proper payment of the INVOICES and other rights or obligations of the DEBTOR.

## CLAUSE SEVENTEEN: TERM

This Master Loan Agreement, as well as the terms of Disbursement Certificates derived from it, shall have a term of 450 (four hundred and fifty) days starting from the date the CREDITOR signs this agreement; upon the conclusion of this term, it will renew automatically, notwithstanding that the parties must confirm in writing their acceptance of the renewal. In any case, if at the end of the previously defined term the DEBTOR and the JOINT AND SEVERAL GUARANTOR still have pending obligations to the CREDITOR, this **Master Loan Agreement** shall remain in effect until all of the rights or obligations of the PARTIES are fulfilled with respect to the assigned INVOICES.

Neither PARTY may terminate this agreement in advance as long any DEBTOR party still has any outstanding loan obligations with the CREDITOR; as such, this **Master Loan Agreement** will remain in force until the rights or obligations of the PARTIES are fulfilled in their entirety with respect to the assigned INVOICES, and especially with respect to the DEBTOR's payment of the outstanding loans. Once the loan obligations are cancelled, either party may terminate this agreement upon 30 days' prior notice to the other party.

## CLAUSE EIGHTEEN: NOTIFICATIONS TO THE



La DEUDORA y la FIADORA SOLIDARIA, autorizan expresamente al ACREEDOR para que pueda proceder a la cesión del presente Contrato Marco de Préstamo y los correspondientes Certificados de Desembolso, y de los derechos y obligaciones contemplados en el mismo, a los Fondos manejados o administrados directamente por EL ACREEDOR; debiéndose dejar constancia en dichas cesiones, que los beneficiarios de la cesión de derechos que se haga de este Contrato Marco de Préstamo, no podrán, a su vez, cederlo a terceros que no sean Fondos manejados o administrados por EL ACREEDOR directamente. En el evento de que EL ACREEDOR deseare ceder los derechos derivados de este Contrato Marco de Préstamo a entidades nacionales o extranjeras que no fuesen subsidiarias, afiliadas o relacionadas con el mismo, LA DEUDORA y LA FIADORA SOLIDARIA, declaran que aceptan la cesión de este contrato a favor de terceras personas que elija EL ACREEDOR, y, además renuncian a ser notificadas de esta cesión en la forma que dispone el Código de Procedimiento Civil, de conformidad con lo dispuesto en el artículo once del Código Civil vigente, debiendo únicamente recibir del ACREEDOR una comunicación informativa sobre dicha cesión de derechos, la misma que será enviada a LA DEUDORA y a la FIADORA SOLIDARIA, en un plazo máximo de 72 horas a contarse desde la fecha en que se hubiere realizado la referida cesión de derechos. En todos los casos de cesión de los derechos derivados de este Contrato Marco de Préstamo, tanto el cedente como el cesionario respetarán íntegramente los términos y condiciones del presente contrato.

**PARTIES**

All communications to the appearing PARTIES related to any events arising during the term of this AGREEMENT shall be carried out in writing by any authentic means, and sent to the following addresses:

TRADE FINANCE TRUST
Contacts:
NEW YORK:              Carlos R Cano y/o Thomas LaVecchia.
Address:               1500 BROADWAY AVENUE 17TH FLOOR
                       NEW YORK, N.Y. 10036
Telephone:             +1 212-806-5100
Fax:                   +1 212-806-5199
GUAYAQUIL:             Cecilia Sierra Morán.
Address:               Avenida Constitución # 100 y Avenida Juan Tanca Marengo,
                       Edificio Executive Center, piso 7, oficina 702.
Telephone:             59342158050.


PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.
Contact: Jaime Enrique Faggioni Alzen
Address: kilómetro 23 ½ de la vía a la Costa, manzana 128, solar 1, del cantón Guayaquil, Provincia del Guayas, República del Ecuador
Telephone: 593 999483569


RELAFIR SOCIEDAD ANONIMA
Contact: David Xavier Baquerizo Viteri
Address: kilómetro 23 ½ de la vía a la Costa, manzana 128, solar 1, del cantón Guayaquil, Provincia del Guayas, República del Ecuador
Telephone: 593 999426601

**CLAUSULA DÉCIMO CUARTA: DECLARACIÓN DE CUMPLIMIENTO DE POLÍTICAS DE MEDIO AMBIENTE, SEGURIDAD, SALUD Y LABORALES.-**

La DEUDORA hasta la presente fecha ha ejercido y en el futuro ejercerá todas las acciones necesarias para mantener y cumplir todas las políticas, leyes, regulaciones, convenios y tratados internacionales sobre protección del medio ambiente, salud, seguridad y materia laboral que rigen en el Ecuador.

La DEUDORA declara además, que hasta la presente fecha, no tiene conocimiento de que se haya iniciado en su contra alguna acción o reclamo por daños ambientales que impliquen interposiciones de multas, penalidades, costos de limpieza, reembolso de gastos al gobierno, pagos por daños causados, orden de prisión dictada en contra de los representantes legales de la compañía, reducción del valor de garantías de daño o responsabilidad ambiental, etc. y cuyos efectos les impidan cumplir con todas las obligaciones asumidas en este **Contrato Marco de Préstamo**. De igual forma la DEUDORA se compromete a realizar todas las acciones y adoptar todas las medidas necesarias para prevenir que esto ocurra en el futuro.

La DEUDORA declara que los fondos provenientes de la línea de crédito aprobada a su favor por el ACRREDOR no serán utilizados para financiar la producción, comercialización, procesamiento o utilización de Bienes prohibidos o realizar actividades ilícitas o prohibidas por el ACREEDOR en el Anexo A del documento que contiene las

**CLAUSE NINETEEN: JURISDICTION AND APPLICABLE LAW**

This Master Loan Agreement has been drawn up in accordance with the laws of the State of New York, United States of America, whereby the legislation in force in that state are applicable to this Agreement and the signatory PARTIES.

For all legal purposes, the PARTIES submit to the Jurisdiction of the Courts of the City of New York, United States of America, expressly waiving any other venue or jurisdiction that may be applicable.
Notwithstanding the above, the CREDITOR shall have the right to sue the DEBTOR and the JOINT AND SEVERAL GUARANTOR in DEBTOR's legal domicile, Guayaquil district, Guayas Province, Ecuador.

**CLAUSE TWENTY: SPECIAL DOMICILES**
For any notifications regarding this agreement, the PARTIES establish the contractual special domicile indicated in the heading of this Master Loan Agreement, where all judicial or extrajudicial notifications shall have effect.

**CLAUSE TWENTY-ONE: SIGNATURES AND RECEIPT OF INSTRUMENTS-**
Four (4) copies of equal content and effect are signed, with two (2) copies held by the CREDITOR, one (1) copy held by the DEBTOR, and one (1) copy held by the JOINT AND SEVERAL GUARANTOR.



Políticas y Procedimientos de Protección Ambiental (Environmental Due Diligence Policy and Procedures) que ha sido previamente entregado a la DEUDORA y aceptado su contenido.

## CLAUSULA DÉCIMO QUINTA: NOTIFICACIONES.-

**15.1** La DEUDORA se obliga a notificar en forma fehaciente a los Clientes Cedidos que deberán depositar el pago de las FACTURAS de compra, cuya cesión se perfeccionará en el momento en que se efectúe la operación de financiamiento materia de este **Contrato Marco de Préstamo**, depósito que se realizará en la cuenta del ACREEDOR; para tal efecto, la DEUDORA deberá remitir a los Clientes Cedidos por medio fehaciente y con la firma de su representante legal debidamente certificado (autenticada), una notificación con el texto adjunto al presente contrato como Anexo C.

**15.2** En caso de extinguirse totalmente las obligaciones contraídas por la DEUDORA y la FIADORA SOLIDARIA, el ACREEDOR, de quedar pendientes derechos u obligaciones correspondientes a las FACTURAS cedidas, se compromete a notificar tal circunstancia a los Clientes Cedidos.

Una vez extinguidas las obligaciones de la DEUDORA y de la FIADORA SOLIDARIA, con el ACREEDOR, el ACREEDOR, se obliga a depositar en la cuenta de la DEUDORA cualquier suma que hubiere recibido de los Clientes Cedidos con posterioridad a la referida extinción de obligaciones de la DEUDORA.

## CLAUSE TWENTY-TWO: CONFIDENTIALITY

The parties expressly agree to maintain confidentiality related to the subject matter of this **Master Loan Agreement**. In addition, both parties agree not to disclose any know-how or trade secrets revealed to one another. Similarly, the parties will keep all data and information relating to the "Assigned Clients" confidential, an obligation that extends to any successor to the CREDITOR's right.

## CLAUSE TWENTY-THREE: PLACE AND DATE OF SIGNING OF THE MASTER LOAN AGREEMENT

In witness whereof, the company **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.** through its General Manager and Legal Representative signs this agreement on the 22nd day of the month of January of the year 2018; and the company **RELAFIR SOCIEDAD ANONIMA**, through its General Attorney, Mr. David Xavier Baquerizo Viteri signs this agreement on the 22nd day of the month of January of the year 2018, stating that they accept that the signing of this instrument in Guayaquil-Ecuador by the lawyer Cecilia Sierra Moran, Attorney-in-Fact for **TRADE FINANCE TRUST**, formalizes this agreement.

**ACCEPTANCE:** As a sign of its approval of the terms agreed in this instrument, the trust **TRADE FINANCE TRUST** through its Attorney-in-Fact, the lawyer Cecilia Sierra Moran, signs this **Master Loan Agreement** in Guayaquil, the 22nd day of the month of January of the year 2018.

(*siguen las hojas de firmas*)

**CLAUSULA DÉCIMO SEXTA: RENDICIÓN DE CUENTAS.-**

El ACREEDOR en forma semanal deberá rendir cuentas a la DEUDORA de las sumas recibidas de los Clientes Cedidos y su debida imputación al pago de las FACTURAS y demás derechos u obligaciones de la DEUDORA.

**CLAUSULA DÉCIMO SÉPTIMA: VIGENCIA.-**

El presente Contrato Marco de Préstamo así como los términos emergentes de los Certificados de Desembolso derivados de los mismos, tendrán un plazo de vigencia de 450 (cuatrocientos cincuenta) días contado a partir de la fecha de suscripción que haga el Acreedor del presente contrato, al término del cual se renovará automáticamente, sin perjuicio de que las Partes deban confirmar por escrito su aceptación a la renovación. En todo caso si al término del plazo antes fijado, la DEUDORA y la FIADORA SOLIDARIA mantuvieren pendientes obligaciones con el Acreedor, el presente **Contrato Marco de Préstamo** se mantendrá vigente hasta que se cumpla en su totalidad los derechos u obligaciones de las PARTES respecto de las FACTURAS cedidas.

Ninguna de las PARTES podrá terminar de manera anticipada el presente contrato, mientras una cualesquiera de la DEUDORA mantuvieren pendientes obligaciones de crédito a favor del Acreedor, para lo cual, el presente **Contrato Marco de Préstamo** se mantendrá vigente hasta que se cumpla en su totalidad los derechos u obligaciones de





las PARTES respecto de las FACTURAS cedidas, y en especial, respecto del pago de los créditos vigentes por parte de LA DEUDORA. Una vez que las obligaciones de crédito estuvieren canceladas cualquiera de las partes podrá terminar el presente contrato con la notificación previa de 30 días a la otra parte.

**CLAUSULA DÉCIMO OCTAVA: NOTIFICACIONES A LAS PARTES.-**

Las comunicaciones dirigidas a todas las PARTES comparecientes, relacionadas con cualquier evento suscitado durante la vigencia del presente CONTRATO se realizarán por cualquier medio auténtico escrito, y serán dirigidas a las siguientes direcciones:

TRADE FINANCE TRUST

Contactos:
NEW YORK:          Carlos R Cano y/o Thomas LaVecchia.
Dirección:          1500 BROADWAY AVENUE 17TH FLOOR
                   NEW YORK, N.Y. 10036
Teléfono:          +1 212-806-5100
Fax:               +1 212-806-5199
GUAYAQUIL:          Cecilia Sierra Morán.
Dirección:          Avenida Constitución # 100 y Avenida Juan Tanca Marengo,
                   Edificio Executive Center, piso 7, oficina 702.
Teléfono:          59342158050.


PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.
Contacto: Jaime Enrique Faggioni Alzen



<u>Dirección</u>: kilómetro 23 ½ de la vía a la Costa, manzana 128, solar 1, del cantón Guayaquil, Provincia del Guayas, República del Ecuador
<u>Teléfono:</u> 593 999483569

RELAFIR SOCIEDAD ANONIMA.
Contacto: David Xavier Baquerizo Viteri
Dirección: kilómetro 23 ½ de la vía a la Costa, manzana 128, solar 1, del cantón Guayaquil, Provincia del Guayas, República del Ecuador
Teléfono: 593 999426601

## CLAUSULA DÉCIMO NOVENA: JURISDICCION Y LEY APLICABLE.-

Este Contrato Marco de Préstamo ha sido redactado conforme a la legislación del Estado de Nueva York, Estados Unidos de América, siendo aplicable al mismo y a las PARTES firmantes la legislación vigente en dicho Estado.

Para todos los efectos Judiciales, las PARTES se someten a la Jurisdicción de los Tribunales de la Ciudad de Nueva York, Estados Unidos de América, renunciando expresamente a cualquier otro fuero o Jurisdicción que pudiera corresponder.
No obstante lo expuesto EL ACREEDOR tendrá derecho para demandar a la DEUDORA y a la FIADORA SOLIDARIA, en el domicilio judicial DE LA DEUDORA, cantón Guayaquil, Provincia del Guayas, República del Ecuador.

## CLAUSULA VIGÉSIMA: DOMICILIOS ESPECIALES.-
Para cualesquiera notificaciones derivadas del presente, las PARTES constituyen los





domicilios especiales contractuales en los indicados en el encabezamiento del presente Contrato Marco de Préstamo, donde tendrán eficacia todas las que se realicen, sean extrajudiciales o Judiciales.

**CLAUSULA VIGÉSIMO PRIMERA: FIRMAS Y RECEPCION DE INSTRUMENTOS.-**
Se firman 4 (cuatro) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 2 juegos en poder del ACREEDOR, 1 Juego en poder de la DEUDORA, y 1 juego en poder de la FIADORA SOLIDARIA.

**CLAUSULA VIGÉSIMO SEGUNDA: CONFIDENCIALIDAD.-**

Las partes convienen de manera expresa mantener la confidencialidad relacionada con el objeto del presente **Contrato Marco de Préstamo.** Además ambas partes se comprometen a no divulgar cualquier "knowhow" o secretos comerciales o industriales que uno respecto del otro llegare a conocer. De igual forma las partes mantendrán confidencialidad respecto de los datos e información relativa a los "Clientes Cedidos", siendo extensiva esta obligación a los eventuales sucesores en el derecho del ACREEDOR.

**CLAUSULA VIGÉSIMO TERCERA: LUGAR Y FECHA DE SUSCRIPCIÓN DEL PRESENTE CONTRATO MARCO DE PRÉSTAMO.-**

Para constancia de lo acordado, la compañía **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.** por intermedio de su Gerente General y Representante Legal, señor Jaime Enrique Faggioni Alzen, suscribe el presente contrato a los 22 días del mes de Enero del año 2018; la compañía RELAFIR SOCIEDAD ANONIMA,

por intermedio de su Apoderado General, señor David Xavier Baquerizo Viteri, suscribe el presente contrato a los 22 días del mes de Enero del año 2018, declarando que aceptan que el presente instrumento quede perfeccionado con la suscripción que del mismo hará en el cantón Guayaquil-Ecuador, la Abogada Cecilia Sierra Morán, Apoderada Especial de **TRADE FINANCE TRUST**.

**ACEPTACIÓN:** En señal de conformidad con todo lo pactado en este instrumento, la compañía **TRADE FINANCE TRUST**, por intermedio de su Apoderada Especial, la Abogada Cecilia Sierra Morán, suscribe este **Contrato Marco de Préstamo** en Guayaquil-Ecuador, a los 22 días del mes de Enero del año 2018.

(*siguen las hojas de firmas*)





**ACREEDOR**
**p. TRADE FINANCE TRUST**

**AB. CECILIA SIERRA MORÁN**
**APODERADA  ESPECIAL**
**Pasaporte # 0915381644**

**LA DEUDORA**
**p. PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.**

**JAIME ENRIQUE FAGGIONI ALZEN**
**GERENTE GENERAL**
**Pasaporte # 0900106972**

**LA FIADORA SOLIDARIA**
**p. RELAFIR SOCIEDAD ANONIMA**

**DAVID XAVIER BAQUERIZO VITERI**
**APODERADO GENERAL**
**Pasaporte # 090799281-2**

Guayaquil, 1 de julio de 2014

**Señor**
**Jaime Enrique Faggioni Alzen**
Ciudad.-

De mis consideraciones:

Cúmpleme poner a su conocimiento que la Junta General Extraordinaria Universal de Accionistas de la compañía **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.**, en sesión celebrada el día 13 de mayo de 2014, tuvo el acierto de elegirle a usted como **GERENTE GENERAL** de la compañía, por el periodo de cinco años, con todas las facultades y atribuciones que le confiere la ley y el Estatuto Social.

Usted ejercerá la representación legal, judicial y extrajudicial de la empresa de forma individual.

La compañía PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A., se constituyó con la denominación de YAESDSE S.A., mediante escritura pública que autorizó el Notario Trigésimo de Guayaquil el 18 de septiembre de 2008, inscrita en el Registro Mercantil de este mismo cantón el 16 de octubre del mismo año. Posteriormente la compañía cambió su denominación y reformó integralmente su Estatuto por escritura pública que autorizó la Notaria Vigésima Sexta de Guayaquil el 4 de febrero de 2009, inscrita en el Registro Mercantil de Guayaquil el 15 de mayo del mismo año.

Atentamente,

Norman Wray Franco
Presidente Ad Hoc de la Junta

**ACEPTO** el cargo de Gerente General de la compañía PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A. según consta en el texto que antecede.

Guayaquil, 1 de julio de 2014

Jaime Enrique Faggioni Alzen
Nacionalidad: Ecuatoriano
C.C. 090010697-2



# Registro Mercantil de Guayaquil



**NUMERO DE REPERTORIO:31.322**
**FECHA DE REPERTORIO:03/jul/2014**
**HORA DE REPERTORIO:14:20**

En cumplimiento con lo dispuesto en la ley, la Registradora Mercantil del Cantón Guayaquil ha inscrito lo siguiente:

**1.-** Con fecha tres de Julio del dos mil catorce  queda inscrito el presente Nombramiento de **Gerente General**, de la Compañia **PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.**, a favor de **JAIME ENRIQUE FAGGIONI ALZEN**, de fojas **26.778** a **26.780**, Registro de Nombramientos número **8.653**.

*ORDEN: 31322*

**Ab. Nuria Butiñá M.**
**REGISTRADORA MERCANTIL**
**DEL CANTON GUAYAQUIL**

*Guayaquil, 07 de julio de 2014*

REVISADO POR:

La responsabilidad sobre la veracidad y autenticidad de los datos registrados, es de exclusiva responsabilidad de la o el declarante cuando esta o este provee toda la información, al tenor de lo establecido en el Art. 4 de la Ley del Sistema Nacional de Registro de Datos Públicos.

Nº De 10053



# REGISTRO ÚNICO DE CONTRIBUYENTES
## SOCIEDADES



...le hace bien al país!

**NÚMERO RUC:** 0992597895001

**RAZÓN SOCIAL:** PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.

**NOMBRE COMERCIAL:** PROEXPO S.A.

**REPRESENTANTE LEGAL:** FAGGIONI ALZEN JAIME ENRIQUE

**CONTADOR:** BARARATA MIELES KARINA WENDY

**CLASE CONTRIBUYENTE:** ESPECIAL     **OBLIGADO LLEVAR CONTABILIDAD:** SI

**CALIFICACIÓN ARTESANAL:** S/N     **NÚMERO:** S/N

**FEC. NACIMIENTO:**

**FEC. INSCRIPCIÓN:** 14/01/2009

**FEC. SUSPENSIÓN DEFINITIVA:**

**FEC. INICIO ACTIVIDADES:** 16/10/2008

**FEC. ACTUALIZACIÓN:** 25/04/2017

**FEC. REINICIO ACTIVIDADES:**

**ACTIVIDAD ECONÓMICA PRINCIPAL**

ACTIVIDADES DE PROCESAMIENTO, CONGELACIÓN, EMPAQUETAMIENTO DE CAMARONES PARA LA VENTA

**DOMICILIO TRIBUTARIO**

Provincia: GUAYAS Canton: GUAYAQUIL Parroquia: TARQUI Numero: SOLAR 1 Manzana: 128 Carretero: GUAYAQUIL - SALINAS Kilometro: 23.5 Referencia ubicacion: A DOS KILOMETROS DEL PEAJE Telefono Trabajo: 042738810 Telefono Trabajo: 042738811 Telefono Trabajo: 042738818 Email: scochea@proexpo.com.ec

**DOMICILIO ESPECIAL**

SN

**OBLIGACIONES TRIBUTARIAS**

* ANEXO ACCIONISTAS, PARTÍCIPES, SOCIOS, MIEMBROS DEL DIRECTORIO Y ADMINISTRADORES
* ANEXO DE DIVIDENDOS, UTILIDADES O BENEFICIOS - ADI
* ANEXO RELACION DEPENDENCIA
* ANEXO TRANSACCIONAL SIMPLIFICADO
* DECLARACIÓN DE IMPUESTO A LA RENTA_SOCIEDADES
* DECLARACIÓN DE RETENCIONES EN LA FUENTE
* DECLARACIÓN MENSUAL DE IVA



**# DE ESTABLECIMIENTOS REGISTRADOS**

| # DE ESTABLECIMIENTOS REGISTRADOS | 1 | ABIERTOS |
| --- | --- | --- |
| JURISDICCIÓN | \ ZONA 8\ GUAYAS | CERRADOS |



Código: RIMRUC2017000596663

Fecha: 26/04/2017 09:33:26 AM







# REGISTRO ÚNICO DE CONTRIBUYENTES
## SOCIEDADES



...le hace bien al país!

**NÚMERO RUC:** 0992597895001

**RAZÓN SOCIAL:** PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.

---

**ESTABLECIMIENTOS REGISTRADOS**

---

| No. ESTABLECIMIENTO: | 001 | Estado: | ABIERTO - MATRIZ | FEC. INICIO ACT.: | 18/10/2008 |
|---|---|---|---|---|---|
| **NOMBRE COMERCIAL:** | PROEXPO | **FEC. CIERRE:** | | **FEC. REINICIO:** | |

**ACTIVIDAD ECONÓMICA:**
ACTIVIDADES DE PROCESAMIENTO, CONGELACIÓN, EMPAQUETAMIENTO DE CAMARONES PARA LA VENTA

**DIRECCIÓN ESTABLECIMIENTO:**
Provincia: GUAYAS Canton: GUAYAQUIL Parroquia: TARQUI Numero: SOLAR 1 Referencia: A DOS KILOMETROS DEL PUENTE Manzana: 128 Distrito: GUAYAQUIL - SALINAS Kilometro: 23.5 Telefono Trabajo: 042738810 Telefono Trabajo: 042738811 Telefono Trabajo: 042738816 Email: rciobis@proexpo.com.ec



Código: RIMRUC2017000596663

Fecha:  26/04/2017 09:33:26 AM













# REPÚBLICA DEL ECUADOR
Dirección General de Registro Civil, Identificación y Cedulación



Dirección General de Registro Civil,
**Identificación y Cedulación**

# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD





**Número único de identificación:** 0900106972

**Nombres del ciudadano:** FAGGIONI ALZEN JAIME ENRIQUE

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/GUAYAS/GUAYAQUIL/CARBO/CONCEPCION/

**Fecha de nacimiento:** 2 DE AGOSTO DE 1942

**Nacionalidad:** ECUATORIANA

**Sexo:** HOMBRE

**Instrucción:** SECUNDARIA

**Profesión:** EMPLEADO

**Estado Civil:** CASADO

**Cónyuge:** SOLANO MOSCOSO MURIEL ALICIA

**Fecha de Matrimonio:** 14 DE MARZO DE 1962

**Nombres del padre:** FAGGIONI PEDRO

**Nombres de la madre:** ALZEN ELSY

**Fecha de expedición:** 5 DE SEPTIEMBRE DE 2014

Información certificada a la fecha: 31 DE ENERO DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL

N° de certificado: 188-090-09219



188-090-09219





Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**



La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**



# REPÚBLICA DEL ECUADOR
Dirección General de Registro Civil, Identificación y Cedulación



Dirección General de Registro Civil,
**Identificación y Cedulación**

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**          0900106972

**Nombre:**          FAGGIONI ALZEN JAIME ENRIQUE

## 1. Información referencial de discapacidad:

**Mensaje:**          LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

Información certificada a la fecha: 31 DE ENERO DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 189-090-09228

189-090-09228

PAPEL NOTARIAL DE ACTUACION



**Fa Nº 649439**



ESC. LUCIANA BOYADJI KEUCHKERIAN - 13499/2

**N°28. MANDATO ESPECIAL. POR RELAFIR SOCIEDAD ANONIMA A FAVOR DE DAVID XAVIER BAQUERIZO VITERI.** En la ciudad de Montevideo, capital de la República Oriental del Uruguay, el día treinta de diciembre de dos mil catorce, ante mí, autorizante, comparece: El señor **JUAN FRANCISCO MUTIO CERDEIRAS,** oriental, mayor de edad, titular de la Cédula de Identidad número 1.489.033-4, con domicilio en Roque Graseras número 806 apartamento 101 de ésta ciudad, quien actúa en su calidad de Presidente y representante de la Sociedad **"RELAFIR SOCIEDAD ANONIMA",** debidamente constituida y existente de conformidad con las leyes vigentes en la República Oriental del Uruguay, con domicilio en Montevideo y sede en la calle Juncal número 1378 oficina 1301 e inscrita en la D.G.I. con el R.U.T. número 216936080018. Y para que lo consigne en este Protocolo dice que: **PRIMERO:** Apoderamiento. **"RELAFIR SOCIEDAD ANONIMA** "confiere un poder especial" a favor de **DAVID XAVIER BAQUERIZO VITERI,** en adelante "el Apoderado", ecuatoriano, mayor de edad, titular del pasaporte ecuatoriano número 0907992812, para que individualmente, a nombre y en representación de la Poderdante: 1.- Actúe en calidad de Apoderado de la Poderdante en la República del Ecuador, para los fines y efectos previstos en el último inciso del Artículo 6 de la Ley de Compañías vigente en la República del Ecuador; quien, en sujeción de la norma citada, por ningún motivo será personalmente responsable de las obligaciones de la Sociedad. 2.- Emita, certifique y presente ante la Superintendencia de Compañías, Valores y Seguros del Ecuador y/o ante cualquier Sociedad o Compañía ecuatoriana en la que la Poderdante sea accionista o socia, la debida información y

documentación referente a la Poderdante, requerida por la Ley de Compañías de dicho país para las sociedades extranjeras que sean accionistas o socias de compañías de nacionalidad ecuatoriana; así como toda aquella información que por Resolución Administrativa sea aplicable. Las certificaciones que se facultan al Apoderado Especial por este acto se sustentarán en información y documentación que a su vez, de manera previa, proporcione la Sociedad al Apoderado. 3.- Actuar en calidad de Apoderado de la Sociedad representando a ésta como accionista o socia en las Juntas Generales -de la clase que fuere- de toda compañía mercantil de nacionalidad ecuatoriana en la que la sociedad haya adquirido o llegare a adquirir acciones o participaciones; pudiendo actuar con voz y voto y con expresa facultad para deliberar y resolver en nombre de la Sociedad. 4.- Adquirir y/o ceder acciones o participaciones en compañías legalmente constituidas en el Ecuador, así como suscribir todos los documentos relacionados con tales transferencias como notificaciones, formularios, cartas. Queda facultado el Apoderado para notificar al representante legal de las compañías ecuatorianas en la que la Poderdante sea accionista o socia, sobre el otorgamiento del presente poder. Y YO AUTORIZANTE HAGO CONSTAR QUE: A) Conozco al compareciente. B) RELAFIR S.A. es persona jurídica hábil y vigente: La misma fue constituida por Acta de fecha 1 de marzo de 2012. Sus Estatutos fueron aprobados por la Auditoría Interna de la Nación el 19 de marzo de 2012, inscriptos en el Registro de Personas Jurídicas, Sección Comercio con el número 8205 el 5 de junio de 2012, publicados legalmente. Por Acta de fecha 20 de agosto de 2012, se reformo el Estatuto respecto de las acciones, que pasaron de portador a nominativas.

PAPEL NOTARIAL DE ACTUACIÓN




# Fa Nº 649440

ESC. LUCIANA BOYADJI KEUCHKERIAN - 13499/2

La reforma referida se inscribió en el Registro correspondiente con el número 13181 el 23 de agosto de 2012, publicándose legalmente en el Diario Oficial el día 27 de agosto de 2012 y El Heraldo Capitalino el 27 de agosto de 2012. De los mismos surge que a la Sociedad la representará un Directorio y este su Presidente o Vicepresidente indistintamente o dos Directores cualesquiera. El compareciente fue designado Presidente, según Acta de Asamblea General Extraordinaria de Accionistas de fecha 28 de enero del 2013, con facultades bastantes para este tipo de actos, encontrándose vigente el mencionado cargo. La designación referida fue inscripta en el Registro de Personas Jurídicas sección Comercio con el número 3259 el 5 de febrero de 2013, de acuerdo a lo previsto por la Ley 17.904. C) Esta escritura es leída por mí y el compareciente así la otorga y firma. D) Sigue inmediatamente al número 27 de Mandato Especial, extendida el veintinueve de diciembre del folio 66 al folio 67. Firmado: JUAN FRANCISCO MUTIO. Hay un signo notarial. LUCIANA BOYADJI. Escribana Publica.----------------------------

ES PRIMERA Y UNICA COPIA que he compulsado de la escritura matriz que autoricé en dos fojas de papel notarial de actuación de la Serie Ez números 871368 y 871369. EN FE DE ELLO, y para el mandatario, expido la presente que sello, signo y firmo en el lugar y fecha de su otorgamiento en dos hojas de papel notarial de actuación de la Serie Fa números 649437 y 649438.

Luciana Boyadji Keuchkerian
Escribana Pública

*TESTIMONIO POR EXHIBICION:* Las copias xerográficas que anteceden, extendidas en dos (2) fojas de Papel Notarial de Actuación, Serie Fa número 649439 y 649440, concuerdan bien y fielmente con los originales del mismo tenor, que tuve a la vista, y a los cuales me remito. *EN FE DE ELLO:* a solicitud de parte interesada y a efectos de su presentación ante oficinas públicas y privadas y ante quien corresponda, expido el presente que sello, signo y firmo, en Montevideo, el día treinta de diciembre del año dos mil catorce.



Luciana Boyadi Keuchkerian
Escribana Pública

REPUBLICA ORIENTAL DEL URUGUAY
SUPREMA CORTE DE JUSTICIA

LEGALIZACIONES

**CERTIFICO QUE: LUCIANA BOYADJI KEUCHKERIAN** es Escribana Pública y la firma y signo que anteceden existentes en el Papel Notarial de Serie Fa Número 649440 guardan similitud con los que obran en el Registro de Firmas a cargo de la Suprema Corte de Justicia, estando en el ejercicio de su profesión a la fecha de la intervención notarial precedente.**EN FE DE ELLO**, a los efectos de su presentación ante el Ministerio de Relaciones Exteriores de la República Oriental del Uruguay, y asimismo,si correspondiere para su tramitación ante las Autoridades Consulares acreditadas en el país, que así lo aceptaren, expido el presente que signo, firmo y sello en la ciudad de Montevideo, el trece de enero de dos mil quince.-

ANA MARÍA VICENTINO
Escribana
INSPECCIÓN GENERAL
REGISTROS NOTARIALES



# APOSTILLE

(Convention de La Haye du 5 octobre 1961)


MINISTERIO DE RELACIONES EXTERIORES

| | | |
|---|---|---|
| **1.** Pais<br>Country / Pays: | **República Oriental del Uruguay** | |
| El presente documento público<br>This public document / Le présent acte public | | |
| **2.** ha sido firmado por<br>has been signed by<br>a été signé par | ANA MARÍA VICENTINO | |
| **3.** quien actúa en calidad de<br>acting in the capacity of<br>agissant en qualité de | ASESOR II ESCRIBANO | |
| **4.** y está revestido del sello / timbre de<br>bears the seal / stamp of<br>est revêtu du sceau / timbre de | SCJ | |
| Certificado<br>Certified / Attesté | | |
| **5.** en<br>at / à | Montevideo | **6.** el día<br>the / le    15 de Enero de 2015 |
| **7.** por<br>by / par | Centro de Atención Ciudadana<br>Ministerio de Relaciones Exteriores | |
| **8.** bajo el número<br>N°<br>sous n° | 00015003145019H | |
| **9.** Sello / timbre:<br>Seal / stamp:<br>Sceau / timbre: |  | **10.** Firma:<br>Signatura:<br>Signature:    Mónica Barry<br>M.RR.EE. |

**Documento Apostillado:** CERTIFICACIÓN NOTARIAL

Esta Apostilla certifica únicamente la autenticidad de la firma, la calidad en que el signatario del documento
haya actuado y, en su caso, la identidad del sello o timbre del que el documento público esté revestido.
Esta Apostilla no certifica el contenido del documento para el cual se expidió.
Esta Apostilla se puede verificar en la dirección siguiente: http://www.mrree.gub.uy.

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public
document, and, where appropriate, the identity of the seal or stamp which the public document bears.
This Apostille does not certify the content of the document for which it was issued.
To verify the issuance of this Apostille, see  http://www.mrree.gub.uy.

Cette Apostille atteste uniquement la véracité de la signature, la qualité en laquelle le signataire de l'acte a agi et, le
cas échéant, l'identité du sceau ou timbre dont cet acte public est revêtu.
Cette Apostille ne certifie pas le contenu de l'acte pour lequel elle a été émise.
Cette Apostille peut être vérifiée à l'adresse suivante: http://www.mrree.gub.uy.













## REPÚBLICA DEL ECUADOR
Dirección General de Registro Civil, Identificación y Cedulación



Dirección General de Registro Civil,
**Identificación y Cedulación**

# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD





**Número único de identificación:** 0907992812

**Nombres del ciudadano:** BAQUERIZO VITERI DAVID XAVIER

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ESTADOS UNIDOS DE AMÉRICA/ESTADOS UNIDOS DE AMÉRICA

**Fecha de nacimiento:** 28 DE SEPTIEMBRE DE 1961

**Nacionalidad:** ECUATORIANA

**Sexo:** HOMBRE

**Instrucción:** BACHILLERATO

**Profesión:** ASESOR

**Estado Civil:** CASADO

**Cónyuge:** MEDINA PUNTRIANO URSULA SOFIA

**Fecha de Matrimonio:** 19 DE JUNIO DE 1993

**Nombres del padre:** BAQUERIZO ENRIQUE

**Nombres de la madre:** VITERI LETTY

**Fecha de expedición:** 8 DE MARZO DE 2017

Información certificada a la fecha: 31 DE ENERO DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 186-090-08961

186-090-08961



Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**

La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**



**REPÚBLICA DEL ECUADOR**
Dirección General de Registro Civil, Identificación y Cedulación



# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**              0907992812

**Nombre:**         BAQUERIZO VITERI DAVID XAVIER

---

## 1. Información referencial de discapacidad:

**Mensaje:**        LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

---

Información certificada a la fecha: 31 DE ENERO DE 2018

Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 180-090-08959

180-090-08959





# *Apostille*

(Convention de La Haye du 5 Octobre 1961)

1. Country:      United States of America

   This public document

2. has been signed by **Milton Adair Tingling**

3. acting in the capacity of **County Clerk**

4. bears the seal/stamp of the **county of New York**

   Certified

5. at New York City, New York        6.  the 19th day of January 2018

7. by Special Deputy Secretary of State, State of New York

8. No. NYC-942171

9. Seal/Stamp                    10.  Signature





————————————————————
Whitney A. Clark
Special Deputy Secretary of State





No. **403575**

Form 1

State of New York
County of New York } ss:

I, Milton Adair Tingling, Clerk of the County of New York, and Clerk of the Supreme Court in and for said county, the same being a court of record having a seal, **DO HEREBY CERTIFY THAT**

**JANETTE PRUDHOMME**

whose name is subscribed to the annexed original instrument has been commissioned and qualified as a NOTARY PUBLIC.......................................................................................................................... and has filed his/her original signature in this office and that he/she was at the time of taking such proof or acknowledgment or oath duly authorized by the laws of the State of New York to take the same; that he/she is well acquainted with the handwriting of such public officer or has compared the signature on the certificate of proof or acknowledgment or oath with the original signature filed in his/her office by such public officer and he/she believes that the signature on the original instrument is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and my official seal this
19th day of January, 2018

_Milton Adair Tingling_
County Clerk, New York County



**Acknowledgment**

State of New York      )

                                ) ss.:

County of New York  )


On this 4th day of January in the year 2018, before me, the undersigned notary public, personally appeared Carlos Cano, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
NOTARY PUBLIC

JANETTE PRUDHOMME
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01PR6204697
COMM. EXP. 4-20-2021





## PODER ESPECIAL

Conste por el presente que **TRADE FINANCE TRUST, representado por su Administrador IIG TRADE FINANCE LLC, el mismo que a su vez se encuentra representado por el señor Carlos Cano (en adelante "TRADE FINANCE TRUST")**, entidad no financiera incorporada bajo las leyes del Estado de Delaware, de los Estados Unidos de América, domiciliada en 1011 Centre Road, Suite 200, Wilmington, Delaware 19805, constituye y designa a Cecilia Sierra Morán, como su apoderada legal, en su nombre y en su representación, con poder amplio y autoridad suficiente para ejecutar únicamente lo siguiente:

1.  Para suscribir el CONTRATO MARCO DE PRESTAMO, en calidad de ACREEDOR, con la compañía PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A., con domicilio en el kilómetro 23 ½ de la vía a la Costa, manzana 128, solar 1, del cantón Guayaquil, Provincia del Guayas, República del Ecuador, en calidad de "LA DEUDORA", mediante el cual TRADE FINANCE TRUST ha aprobado una Línea de Crédito revolvente hasta por el monto de USD5'000.000,00 a favor de PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A.;

2.  Para ejecutar y realizar todos los actos y contratos derivados de la calidad de Acreedor que tendrá TRADE FINANCE TRUST respecto de la compañía PROEXPO, PROCESADORA Y EXPORTADORA DE MARISCOS S.A., dentro de la Línea de Crédito revolvente contratada por las partes, hasta por el monto de USD5'000.000,00, de manera completa y suficiente en concordancia con los propósitos de TRADE FINANCE TRUST, gozando de igual validez como si cada acto ejecutado hubiese estado específicamente detallado, expresado, y especialmente autorizado en este documento, y por la presente confirma y ratifica que Cecilia Sierra Morán deberá realizarlos o precautelar que se realicen en virtud de los poderes y autorizaciones aquí contenidas.

Sin perjuicio de lo anterior, TRADE FINANCE TRUST será quien determine, a su sola discreción, las decisiones de cualquier transacción en el Ecuador.

Para evitar dudas, este poder se limita de manera exclusiva a la transacción descrita en párrafos anteriores, por medio de la presente TRADE FINANCE TRUST ratifica y confirma como suyos, todos los actos y contratos que Cecilia Sierra Morán suscriba o autorice en virtud de este instrumento.

PARA CONSTANCIA DE LO CUAL, TRADE FINANCE TRUST suscribe este PODER, a los 4 días del mes de Enero de 2018.





TRADE FINANCE TRUST, entidad no financiera incorporada bajo las leyes del Estado de Delaware.

Por: IIG TRADE FINANCE LLC, como Administrador

Nombre: Carlos Cano

Cargo: Director ejecutivo







REPÚBLICA DEL ECUADOR
DIRECCIÓN GENERAL DE REGISTRO CIVIL,
IDENTIFICACIÓN Y CEDULACIÓN

CÉDULA DE **CIUDADANÍA**      No **091538164-4**

APELLIDOS Y NOMBRES
SIERRA MORAN
CECILIA DEL CARMEN
LUGAR DE NACIMIENTO
GUAYAS
GUAYAQUIL
BOLIVAR /SAGRARIO/
FECHA DE NACIMIENTO 1974-09-23
NACIONALIDAD ECUATORIANA
SEXO F
ESTADO CIVIL SOLTERO

FIRMA DEL CIUDADANO



INSTRUCCIÓN         PROFESIÓN
SUPERIOR            ABOGADO
APELLIDOS Y NOMBRES DEL PADRE
SIERRA L EDMUNDO ROBERTO
APELLIDOS Y NOMBRES DE LA MADRE
MORAN CORREA CECILIA DE JESUS
LUGAR Y FECHA DE EXPEDICIÓN
GUAYAQUIL
2019-12-01
FECHA DE EXPIRACIÓN
2022-12-01
CORP. REG. CIVIL DE GUAYAQUIL

FIRMA DEL DIRECTOR       FIRMA DEL GOBIERNO
GENERAL                  SECCIONAL

IDECUO915381644<<<<<<<<<<<<<<<
740923F221201ECU<<<<<<<<<<<<<<
SIERRA<MORAN<<CECILIA<DEL<CARM

CERTIFICADO DE VOTACIÓN
ELECCIONES GENERALES 2017
2 DE ABRIL 2017

029      029 - 242
         NÚMERO

SIERRA MORAN CECILIA DEL CARMEN
APELLIDOS Y NOMBRES

GUAYAS
PROVINCIA
GUAYAQUIL
CANTÓN         CIRCUNSCRIPCIÓN
AYACUCHO       ZONA.
PARROQUIA



**REPÚBLICA DEL ECUADOR**
Dirección General de Registro Civil, Identificación y Cedulación



Dirección General de Registro Civil,
**Identificación y Cedulación**

# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD



**Número único de identificación:** 0915381644

**Nombres del ciudadano:** SIERRA MORAN CECILIA DEL CARMEN

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/GUAYAS/GUAYAQUIL/BOLIVAR /SAGRARIO/

**Fecha de nacimiento:** 23 DE SEPTIEMBRE DE 1974

**Nacionalidad:** ECUATORIANA

**Sexo:** MUJER

**Instrucción:** SUPERIOR

**Profesión:** ABOGADO

**Estado Civil:** SOLTERO

**Cónyuge:** No Registra

**Fecha de Matrimonio:** No Registra

**Nombres del padre:** EDMUNDO ROBERTO SIERRA L

**Nombres de la madre:** CECILIA DE JESÚS MORAN CORREA

**Fecha de expedición:** 1 DE DICIEMBRE DE 2010

Información certificada a la fecha: 31 DE ENERO DE 2018

Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 184-090-08938

184-090-08938



Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**

La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**

 **REPÚBLICA DEL ECUADOR**
Dirección General de Registro Civil, Identificación y Cedulación

 Dirección General de Registro Civil,
**Identificación y Cedulación**

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**            0915381644

**Nombre:**      SIERRA MORAN CECILIA DEL CARMEN

---

## 1. Información referencial de discapacidad:

**Mensaje:**      LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

---

Información certificada a la fecha: 31 DE ENERO DE 2018

Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 188-090-08941



188-090-08941

