# EXHIBIT AA

## CONTRATO MARCO DE PRÉSTAMO

El presente contrato se celebra entre las siguientes partes: La compañía **IIG TOF B.V.**, una sociedad incorporada bajo las leyes de Amsterdan, Países Bajos, domiciliada en Telestone 8 –Teleport, Naritaweg 165, P.O.Box 7241, 1007 JE, Amsterdam, The Netherlands, debidamente representada por la Abogada Cecilia Sierra Morán, en calidad de Apoderada Especial, parte a la que en adelante se la denominará como el **"ACREEDOR";** por otra parte, la compañía **REPRESENTACIONES SALDANA S.A.,** con domicilio en Trump Ocean Club Office Tower 215 de la ciudad de Panamá, República de Panamá, debidamente representada por su Apoderado General, señor Rodrigo del Jesús Agudo Valle, quien comparece debidamente autorizado por la Junta de Accionistas de la compañía, celebrada el 20 de Mayo del 2014, a quien se denominará individualmente como "**LA DEUDORA";** por otra parte, la compañía **INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL"**, con domicilio en el kilómetro ocho y medio de la vía Manta – Montecristi, cantón Montecristi, provincia de Manabí – Ecuador, representada en este acto por su Gerente y Representante Legal, señor Rodrigo del Jesús Agudo Valle, quien comparece debidamente autorizado por la Junta de Accionistas de la compañía, celebrada el 13 de Mayo del 2014, a quien se denominará individualmente como "**LA FIADORA SOLIDARIA"**. De igual manera, comparece el señor **ANGEL MOISES AGUDO VALLE** por sus propios y personales derechos, con domicilio en Ciudadela Manta 2000, cantón Manta, República del Ecuador, y el señor **RODRIGO DEL JESUS AGUDO VALLE**, por sus propios y personales derechos, con domicilio en Condominio Peñón del Mar vía Barbasquillo, cantón Manta, República del Ecuador, parte a la que en adelante se denominará simplemente como **"LOS FIADORES SOLIDARIOS".**

Las partes antes mencionadas convienen en celebrar el presente contrato marco de préstamo, que en adelante se lo denominará como el "**Contrato Marco de Préstamo**", en el cual se establecen los términos y condiciones que deberán observar para la implementación de una Línea de Crédito para el financiamiento de compra de inventario y operaciones de exportación que EL ACREEDOR otorgará a **LA DEUDORA** (rigiendo para las operaciones de crédito vigentes y para las que se otorguen en el futuro), y que estará sujeta a las siguientes cláusulas:

**CLAUSULA PRIMERA: DEFINICIONES.-** Los siguientes términos tienen los significados que se indican a continuación, dondequiera que figuren en el presente Contrato Marco de Préstamo:

**"Adeudado"** significa el saldo insoluto de la Línea de Crédito adeudada por la DEUDORA al ACREEDOR.

**"Autoridad de Gobierno"** significa cualquier funcionario u organismo de un Estado que esté investido con potestades públicas.

**"Bienes"** significan en general activos fijos, bienes muebles e inmuebles, así como los derechos que accedan a los referidos bienes muebles e inmuebles.

**"Clientes Cedidos"** son las personas naturales o jurídicas a quienes LA DEUDORA vende sus productos y que han sido aprobados por el ACREEDOR.

 **"Colateral"** significa el contrato de Fideicomiso Mercantil en Garantía que constituye LA FIADORA SOLIDARIA para garantizar obligaciones de crédito de la DEUDORA a favor del Acreedor mediante el cual transfiere el Inventario y/o los derechos que recaen sobre dicho inventario, así como el contrato de Encargo Fiduciario que constituye LA

FIADORA SOLIDARIA para garantizar obligaciones de crédito de la DEUDORA a favor del Acreedor para la administración de los documentos que sean entregados en virtud de las exportaciones realizadas, que alcancen a cubrir el 125% de las obligaciones de crédito contraídas por LA DEUDORA, en el caso de los bienes y/o derechos que están siendo financiados en un 80% conforme el numeral 2.1 de la cláusula segunda que comprenden la totalidad de Inventario que haya sido vendido por LA DEUDORA a los clientes cedidos, con la constancia de haberse cedido sus derechos de cobro a favor del ACREEDOR.

**"Comisión de Administración y Operación"** significa la contraprestación mensual no reembolsable que recibirá el ACREEDOR por la administración y operación de la Línea de Crédito concedida, que será calculada y pagada mensualmente el primer Día Hábil de cada mes sobre el  valor del saldo adeudado del PRESTAMO REVOLVENTE. Dicha comisión será equivalente al 0.25% mensual.

**"Comisión de mantenimiento"** significa la contraprestación mensual no reembolsable que recibirá el ACREEDOR por el mantenimiento de la Línea de Crédito concedida, que será calculada y pagada mensualmente el primer Día Hábil de cada mes sobre el valor del saldo adeudado del PRESTAMO REVOLVENTE. Dicha comisión será equivalente al 0.02% anual.

 **"Comisión de Precancelación"** significa la contraprestación no reembolsable que recibirá el ACREEDOR en el evento que la DEUDORA quieran cancelar la Línea de Crédito y por ende terminar el presente **Contrato Marco de Préstamo** antes del plazo de un año, contado a partir de la fecha de suscripción del mismo. Esta comisión corresponde al 3% del monto total de la línea de crédito, esto es, US$5'000.000,00, sin perjuicio de que las operaciones de crédito pendientes de pago a esa fecha por parte de LA DEUDORA fueren inferiores al monto total de la línea de crédito.

**"Compañía Verificadora"** significa la compañía especializada designada por el Acreedor y contratada por el Fideicomiso Mercantil en Garantía y la DEUDORA para la prestación de los servicios de inspección y verificación del inventario de propiedad del fideicomiso.

**"Contrato de Fideicomiso en Garantía"** significa el contrato a que se refiere el número 2.5 de la cláusula Segunda y que tiene como finalidad garantizar el cumplimiento de las obligaciones que derivan de los Documentos del Préstamo, a cargo de la DEUDORA, de la FIADORA SOLIDARIA y de LOS FIADORES SOLIDARIOS.

**"Contrato Marco de Préstamo"** significa el presente documento y sus anexos, suscrito por las Partes, así como sus posteriores modificaciones.

**"Cuenta Recolectora"** Es una cuenta abierta en una entidad financiera del exterior, de titularidad del ACREEDOR, en la cual se depositarán los recursos provenientes del pago de las FACTURAS de los Clientes Cedidos, cuya cesión ha sido realizada a favor del ACREEDOR. Todos los gastos y comisiones, incluyendo, pero no limitado a gastos de transferencia que genere la administración de esta cuenta, serán asumidos por la DEUDORA.

**"Día Hábil"** significa cualquier día distinto a: (i) un sábado; (ii) un domingo; o (iii) cualquier otro día en el cual todas las entidades del sistema financiero del Ecuador y/o de Estados Unidos y/o Londres, no atiendan al público por disposición de la Autoridad de Gobierno competente.

**"Deudora"** se refiere a la compañía REPRESENTACIONES SALDANA S.A..  **"Fiadora Solidaria"** se refiere a la compañía INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL"**.**

**"Fiadores Solidarios"** se refiere a los señores ANGEL MOISES AGUDO VALLE y RODRIGO

DEL JESUS AGUDO VALLE**.**

**"Deudores"** se refiere a la parte deudora que la conforman las compañías REPRESENTACIONES SALDANA S.A, INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL" y los señores ANGEL MOISES AGUDO VALLE y RODRIGO DEL JESUS AGUDO VALLE**.**

**"Documentos de Préstamo"** son el Contrato Marco de Préstamo, pagaré, los contratos de Fideicomisos Mercantiles y Encargos Fiduciarios, la garantía de validez y el acuerdo de control de la cuenta.

**"Dólares"** y el signo **"US$"** significan la moneda de curso legal en los Estados Unidos de América.

**"Endeudamiento"** significa el total de pasivos, incluyendo las operaciones de leasing y factoring, además de cualquier tipo de contingencia financiera.

**"Estado"** se refiere indistintamente a Ecuador y/o Estados Unidos y/o Reino Unido.

**"Factura/s"** o **"Proformas de compra"** son los documentos emitidos por la DEUDORA por la venta de Inventario, que representan los derechos de cobro a los CLIENTES CEDIDOS, que serán cedidas a favor del Acreedor.

**"Fecha de Desembolso"** significa la fecha en que se cumplan las Condiciones Precedentes al Desembolso que se encuentran fijadas en las cláusulas tercera y cuarta del presente **Contrato Marco de Préstamo** u otra fecha fijada de común acuerdo por las Partes.

**"Fecha de pago de intereses"** se refiere al primer Día Hábil del mes siguiente al que fueron generados los intereses.

**"Fecha de Suscripción"** significa la fecha en la que el presente **Contrato Marco de Préstamo** haya sido debidamente suscrito por las Partes y, en el supuesto de que las Partes suscriban este **Contrato Marco de Préstamo** por separado y por lo tanto en fechas distintas, la Fecha de Suscripción será la última de dichas fechas.

 **"Fianza"** tiene el significado que se le asigna en el número 2.5 de la cláusula Segunda de este **Contrato Marco de Préstamo**.

**"Impuesto"** significa cualquier tributo, contribución, cargo, tasa, servicio, gravamen, retención u otra deducción, comisiones, derechos y pagos de cualquier naturaleza, exigidos por cualquier organismo o Autoridad de Gobierno, en vigor a la Fecha de Suscripción o que entren en vigor posteriormente.

**"Intereses compensatorios"** son los intereses de mora que resulten de aplicar la tasa del 5% anual calculados desde la fecha de vencimiento de las obligaciones hasta la fecha del pago de las obligaciones vencidas.

**"Inventario/s"** se refiere al pescado natural (atún) y producto terminado del mismo, en sus diferentes presentaciones, lomos de atún, envasado, conservación de pescado mediante cocción en salsas, desecación, ahumado, saladura o enlatado, empacado en funda pouch como conserva así como conserva de sardina en salsas o al natural.

**"Ley/es aplicable/s"** es la legislación del Estado de Nueva York, Estados Unidos de América.

**"LIBOR"** significa, para cualquier período de intereses en relación con cualquier préstamo, la tasa anual (calculada hacia arriba al octavo de punto porcentual más cercano), determinado sobre la base de las tasas ofrecidas para depósitos en dólares de los Estados Unidos de América, por un período de tiempo comparable a dicho Período de Intereses, como se muestra en la página denominada como Reuters 01 (o

cualquier otra página que pueda reemplazar esta página) a las 11:00 am, hora de Londres, en la correspondiente Fecha de Determinación de Tasa de Interés.

**"Línea de Crédito"** significa el préstamo otorgado por el ACREEDOR a la DEUDORA bajo el presente **Contrato Marco de Préstamo**.

**"Partes"** se refiere a las personas contratantes, esto es, el ACREEDOR, la DEUDORA y la FIADORA SOLIDARIA.

**"Periodo de Interés"** significa cada período de un (1) mes que comience en una Fecha de Pago de Intereses y finalice el día inmediatamente anterior a la subsiguiente Fecha de Pago de Intereses.

**"Persona"** significa cualquier persona natural o jurídica de carácter público o privado.

**"Promissory Note"** o **"Nota Promisoria"** o **"Pagaré"** tiene el significado que se le asigna en el número 2.4 de la cláusula Segunda de este **Contrato Marco de Préstamo**.

**"Tasa de Interés"** significa, para cualquier préstamo en cualquier momento, la tasa LIBOR más un margen de 5% o la tasa mínima del 9 % anual.


## CLAUSULA SEGUNDA: OBJETO.-

2.1    El ACREEDOR ha aprobado una Línea de Crédito hasta por la suma de US$5'000.000,00 (Cinco millones 00/100 Dólares de los Estados Unidos de América), cuya base para los desembolsos no podrá ser superior, a criterio del ACREEDOR:

(i)    Al 80% de las **FACTURAS** por cobrar a un plazo máximo de 90 días contado desde la fecha del embarque respectivo, cuyos clientes cedidos hayan sido debidamente aprobados por el ACREEDOR.

(ii)   Al 80% del valor de compra de los Inventarios de pescado natural y producto terminado del mismo, y/o de los derechos que recaen sobre dicho inventario, que no tengan un plazo mayor de 120 días contados a partir de la fecha de embarque.


La DEUDORA, en función de las disponibilidades del ACREEDOR y previa coordinación con este último, utilizará la Línea de Crédito para el financiamiento de compra de inventario y operaciones de las ventas internacionales que realice la Deudora, conforme a las condiciones y el procedimiento que se establece en este "**Contrato Marco de Préstamo**".

Para la entrega de los fondos de la Línea de Crédito, las PARTES acuerdan seguir el procedimiento indicado en la Cláusula SEGUNDA del presente **Contrato Marco de Préstamo**.


2.2    La DEUDORA pagará al ACREEDOR por el crédito concedido el interés anual que corresponde a la tasa LIBOR, que será recalculada cada mes, más un margen del 5% y la comisión por Administración y Operación. La **Tasa de Interés** mínima es del 9% anual. Dicho interés anual y comisiones mensuales serán calculados sobre el promedio mensual desembolsado de la Línea de Crédito concedida y serán pagaderos mensualmente, el primer día del mes siguiente al que fueron generados. El ACREEDOR está autorizado a cargar a la cuenta de

la DEUDORA, en el primer Día Hábil de cada mes, la suma de los intereses y comisiones acumulados generados durante el mes anterior. La Tasa de Interés acordada entre la DEUDORA y la ACREEDORA, será calculada sobre la base de 360 días y multiplicado por el número de días del mes correspondiente. En ningún caso, la DEUDORA podrá sobrepasar el límite de endeudamiento de más de cinco millones 00/100 dólares, más los intereses y comisiones; y en el evento de que lo haga deberá pagar al ACREEDOR la Comisión de Penalidad. En caso de que la DEUDORA desee cancelar la línea de crédito, deberá pagar al ACREEDOR la Comisión de Pre Cancelación. En este caso, la DEUDORA deberán pagar la totalidad de las sumas otorgadas en la Línea de Crédito por el ACREEDOR, y dichas operaciones no se considerarán pre canceladas hasta que la DEUDORA paguen al ACREEDOR la comisión correspondiente; y por ende, la DEUDORA serán responsable por los intereses y comisiones que se generen y devenguen hasta el pago de esta comisión.

2.3    Sin perjuicio de la responsabilidad deudora y su solidaridad, y a efectos de procurar el pago de las sumas otorgadas en la Línea de Crédito por el ACREEDOR, la DEUDORA cederá y transferirá a favor del ACREEDOR, todos los derechos que le corresponden respecto del cobro de todas las FACTURAS, que se originen de la venta y exportaciones del producto entregado en garantía, efectuadas a los Clientes Cedidos. La cesión del cobro de las Órdenes de Compra y/ facturas antes referidas, incluye la cesión del cobro de las FACTURAS emitidas por la DEUDORA que lleguen a ser cedidas en virtud de este **Contrato Marco de Préstamo**, las mismas que se describirán en anexos que se incorporarán a este **Contrato Marco de Préstamo** durante su vigencia. En la nota de cesión que se incorpora en la FACTURAS se debe indicar que los derechos de la FACTURA se ceden a favor del ACREEDOR y que éstos deben ser pagados mediante depósitos en la Cuenta Recolectora. Dichos anexos contarán con la firma de la DEUDORA. Cuando en el presente **Contrato Marco de Préstamo** y en los documentos emanados en virtud del mismo se haga referencia el término "FACTURAS" deberá entenderse que dicho término se refiere indistintamente tanto a las FACTURAS como a las Órdenes de Compra cedidas. Si alguna de las FACTURAS resulta ininteligible, la DEUDORA deberá reemplazar dicha FACTURA por una nueva que apruebe el ACREEDOR o deberán proceder a pagar el saldo de la Línea de Crédito.

La cesión de FACTURAS antes citada se efectúa con responsabilidad por parte de la DEUDORA, la misma que se hace expresamente responsable de la existencia del crédito al tiempo de la cesión, de conformidad con los términos y declaraciones establecidas en las Cláusulas Segunda y Cuarta del presente **Contrato Marco de Préstamo**, debiendo los Clientes Cedidos pagar tales FACTURAS directamente al ACREEDOR según se especifica en las mencionadas Cláusulas. La referida cesión comprende todos los derechos y acciones que posee la DEUDORA y que le corresponden respecto de las FACTURAS, colocando al ACREEDOR en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones que eventualmente existieran con respecto a los créditos derivados de dichas FACTURAS. La cesión de FACTURAS no implica dación en pago de los préstamos adeudados por la DEUDORA a EL ACREEDOR; al contrario, al existir una cesión con responsabilidad de la DEUDORA ésta queda obligada solidariamente con los Clientes Cedidos, y no se extinguirá su responsabilidad deudora hasta que no pague todas las obligaciones adeudadas a EL ACREEDOR.

**2.4**  Para efectos del desembolso de la Línea de Crédito, en este mismo acto, las compañías REPRESENTACIONES SALDANA S.A.  e INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL", así como los señores ANGEL MOISES AGUDO VALLE y RODRIGO DEL JESUS AGUDO VALLE, en calidad de DEUDORA, FIADORA SOLIDARIA y FIADORES SOLIDARIOS respectivamente suscribirán una Nota Promisoria (Promissory Note en inglés, pagaré) a favor del ACREEDOR, por la suma de US$5'000.000,00 (Cinco millones 00/100 Dólares de los Estados Unidos de América). Sin perjuicio de lo anterior, la DEUDORA, la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS, solo estarán obligados hasta por los montos efectivamente otorgados por el ACREEDOR, según se especifica en el número 4.2 de la Cláusula Cuarta de este **Contrato Marco de Préstamo**, más los intereses, comisiones, gastos legales, y demás rubros a los que se han obligado a pagar en virtud del presente **Contrato Marco de Préstamo**.

**2.5**  FIANZA SOLIDARIA: A la compañía INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL" se la notificará en el kilómetro ocho y medio de la vía Manta – Montecristi, cantón Montecristi, provincia de Manabí – Ecuador, y a los señores ANGEL MOISES AGUDO VALLE y RODRIGO DEL JESUS AGUDO VALLE, se los notificará en  Urbanización Manta 2.000, cantón Manta, provincia de Manabí – Ecuador y en Condominio Peñón del Mar vía Barbasquillo, cantón Manta, República del Ecuador, respectivamente; quienes SE CONSTITUYEN IRREVOCABLEMENTE E INDIVISIBLEMENTE EN FIADORES SOLIDARIOS, LLANOS y PRINCIPALES PAGADORES, de todas las deudas y obligaciones asumidas por la DEUDORA en el presente **Contrato Marco de Préstamo** y en todos los Certificados de Desembolso, las Notas Promisorias (Promissory Note en inglés, pagaré) y demás documentos suscritos por la DEUDORA derivados del presente **Contrato Marco de Préstamo**, en los mismos plazos, cantidades, modalidades y especies debidas por la DEUDORA. LA FIADORA SOLIDARIA y LOS FIADORES SOLIDARIOS declaran que renuncian expresamente a:

(1)  Los beneficios de división y excusión y demás normas comerciales y civiles concordantes aplicables,

A exigir el requerimiento judicial de la DEUDORA y en general a oponer toda excepción que no sea la de pago. La responsabilidad solidaria asumida por la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS se extiende asimismo, al reajuste legal o convencional y accesorios tales como la actualización monetaria, intereses compensatorios y moratorios, debidos por la DEUDORA. Esta fianza solidaria permanecerá vigente hasta la total cancelación por parte de la DEUDORA de todas las deudas que mantengan con el ACREEDOR y que se encuentran garantizadas por el Contrato de Fideicomiso en Garantía denominado **"FIDEICOMISO DE GARANTÍA IDEAL - IIG TOF B.V."**, cuya finalidad es la de servir como instrumento para caucionar el **125%** de acuerdo a la definición de Colateral de la cláusula primera, de las obligaciones que la DEUDORA han contraído para con EL ACREEDOR; para lo cual, LA FIADORA SOLIDARIA ha transferido a dicho patrimonio autónomo materia prima de pescado natural (atún) y/o los derechos derivados de dicho producto, producto en proceso y producto terminado del mismo, en sus diferentes presentaciones, lomos de atún, envasado, conservación de pescado mediante cocción en salsas, desecación, ahumado, saladura o enlatado, empacado en funda pouch como conserva así como conserva de sardina en salsas o al natural, que se mantendrán como propiedad de dicho fideicomiso, hasta que deba ser embarcado para ser exportado y vendido a los

compradores de ultramar; ello sin perjuicio de los derechos que le corresponden al ACREEDOR como beneficiario del referido Fideicomiso. En cuanto al Inventario en proceso, la FIADORA SOLIDARIA solo podrá solicitar al Fideicomiso Mercantil en Garantía, la restitución semanal de un máximo de 360 toneladas de pescado, para lo cual la FIADORA SOLIDARIA se obliga a transferir en propiedad a favor del Fideicomiso Mercantil en Garantía, por cada restitución de inventario en proceso que dicho fideicomiso realice a favor de la FIADORA SOLIDARIA, el mismo producto de inventario solicitado debidamente procesado y en un valor equivalente en dólares al producto de inventario restituido por el fideicomiso, dentro de un plazo máximo de 72 horas contado desde que salió el producto de las bodegas controladas por el Fideicomiso Mercantil en Garantía, a través de la compañía verificadora contratada para el efecto.

Una vez que se haya efectuado la venta a los compradores de ultramar y se genere la FACTURA del producto vendido, se procederán a ceder dichas FACTURAS por parte de LA DEUDORA a favor del ACREEDOR, las mismas que serán administradas a través de un encargo fiduciario contratado por LA DEUDORA y LA FIADORA SOLIDARIA a favor del ACREEDOR, con el fin de cumplir con lo dispuesto en el numeral 2.3 de esta misma cláusula.

Se considerará incumplimiento de las disposiciones de la fianza solidaria prevista en el presente punto 2.5 de la Cláusula Segunda de este **Contrato Marco de Préstamo**, los siguientes supuestos:

**a.** Si cualquier declaración, garantía o compromiso contraído por la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS por medio del presente **Contrato Marco de Préstamo**, o cualquier certificado, solicitud, documento o compromiso proporcionado en este instrumento, resultare falso.

**b.** En el evento de que la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS comiencen negociaciones con cualquier acreedor con miras a un arreglo general de pagos o cambiar el cronograma de endeudamiento, o si fueren declarados insolventes por la vía judicial, o les sea decretada la quiebra o se presente en concurso preventivo de acreedores, y los mismos no sean levantados dentro de los 5 días de haber sido decretados.

**c.** En caso que ocurriera cualquiera de los supuestos descritos en los literales anteriores, el ACREEDOR podrá, mediante notificación previa a la FIADORA SOLIDARIA y a los FIADORES SOLIDARIOS, declarar las obligaciones de la DEUDORA de plazo vencido y exigir el pago de todos los montos debidos por la DEUDORA por encontrarse vencidos, más todos los gastos en que hubiera incurrido el ACREEDOR.

Asimismo, la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS realizan las siguientes declaraciones, las mismas que deberán mantenerse vigentes durante la celebración, ejecución y validez del presente **Contrato Marco de Préstamo**:

    **i.**   Esta garantía constituye una obligación válida y vinculante para la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS, ejecutable de acuerdo con sus respectivos términos.

    **ii.**  No existe estatuto, regla, regulación u obligación contractual vinculante para la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS que pudiera ser violada por la celebración, entrega o ejecución de este **Contrato Marco de Préstamo**.

Para los efectos del presente **Contrato Marco de Préstamo**, la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS constituyen domicilio especial en el lugar indicado en el encabezamiento del presente punto 2.5 y aceptan como válidas las notificaciones que se practiquen por correo certificado, correo electrónico u otro medio auténtico.

## CLAUSULA TERCERA: CONDICIONES PRECEDENTES AL DESEMBOLSO.-

Previo al desembolso de la Línea de Crédito, cuyo procedimiento se encuentra establecido en la cláusula Cuarta del presente **Contrato Marco de Préstamo**, y como requisito sine qua non para efectuar el mismo, la DEUDORA y LA FIADORA SOLIDARIA deberán probar al Acreedor, de forma documental, que han cumplido con las siguientes condiciones copulativas:

**3.1** La constitución del contrato de Fideicomiso Mercantil en Garantía y del contrato de encargo fiduciario a favor del Acreedor;

**3.2** La suscripción del Contrato de Verificación de Inventario con la Compañía Verificadora seleccionada por el Acreedor;

**3.3** La recepción por parte de la Fiduciaria del Fideicomiso Mercantil de Garantía de las pólizas de seguro con sus respectivos endosos en favor del Fideicomiso;

**3.4** La suscripción del Promissory Note o Pagaré;

**3.5** La suscripción del Account Control Agreement;

**3.6** La entrega del Validity Guarantee;

**3.7** La Aprobación de la línea de crédito por parte de la Junta de Accionistas de la DEUDORA;

**3.8** La entrega de la copia del Estatuto Social de la DEUDORA;

**3.9** El Registro UCC en los EEUU sobre el Colateral;

**3.10** Que se hayan obtenido resultados, en forma satisfactoria para el ACREEDOR, del proceso de *due diligence* legal de la Compañía;

**3.11** Que no se haya producido un hecho, acontecimiento, circunstancia o cambio en los ya existentes que implique un cambio adverso en la condición financiera y/o económica, operaciones, negocios, propiedades o prospectos de la DEUDORA;

**3.12** Actualización de la solicitud de financiamiento en formato del ACREEDOR; y,

**3.13** La entrega al Acreedor por parte de la DEUDORA, de cualquier otro documento que éste considere necesario solicitar a la DEUDORA.

El Acreedor se encargará de verificar el cumplimiento de todas las condiciones antes detalladas, a su entera satisfacción, luego de lo cual, la DEUDORA podrán iniciar el procedimiento de solicitud del desembolso de la Línea de Crédito.

**CLAUSULA CUARTA: PROCEDIMIENTO.-**

Al momento de la entrega a la DEUDORA de los fondos comprendidos en la línea de crédito, se seguirá el siguiente procedimiento:

4.1    Las PARTES han convenido de mutuo acuerdo la **Tasa de Interés** y comisiones que el ACREEDOR percibirá por cada entrega de fondos que la DEUDORA le solicite. De igual manera, las partes convienen que la DEUDORA mantendrán una garantía mínima del 125% del valor otorgado en préstamo o sobre sus saldos, según el caso. Esta garantía mínima está compuesta por las Facturas que se generan de las ventas que se realizan en ultramar y que han sido cedidas a favor del acreedor "con responsabilidad", por parte de la DEUDORA cuya administración se realizará a través de un encargo fiduciario; y por el Inventario y/o los derechos que recaen sobre el mismo, de propiedad del Fideicomiso Mercantil de Garantía, tal cual ya se ha explicado en este mismo instrumento.

4.2    LA DEUDORA deberá remitir por cualquier medio escrito al ACREEDOR, un Certificado de Desembolso redactado según lo establecido en el Anexo 1 del presente **Contrato Marco de Préstamo**, el cual deberá estar firmado en forma autentica por LA DEUDORA, la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS (instrumento al que en adelante se denominará como "Certificado de Desembolso", que es la solicitud de desembolso efectuada por la DEUDORA, bajo la forma y contenido aceptado por el ACREEDOR). A cada Certificado de Desembolso deberá acompañarse los documentos que justifiquen la constitución de la garantía conforme a lo establecido en el presente convenio, debidamente sustentados en función de los reportes de inventario entregados por la verificadora encargada del manejo de las mercaderías que la componen.

4.3    Dentro de las cuarenta y ocho (48) horas siguientes a la recepción por parte del ACREEDOR y siempre que exista disponibilidad del ACREEDOR, de conformidad con lo dispuesto en los puntos 4.1 y 4.2 de la presente Cláusula, el ACREEDOR procederá a transferir los fondos requeridos a cualquiera de las siguientes cuentas bancarias de la compañía que haya solicitado el desembolso, y que previamente instruya por escrito mediante comunicación dirigida al ACREEDOR, cuyos datos se indican a continuación:

Banco Intermediario / Intermedary Bank
Bank of America, N.A.
Dirección/ Address: New York, NY USA
Swift: BOFAUS3M
Alba: 026009593
Banco Beneficiario/ Beneficiary Bank
Multibank Inc.
Cuenta N°/ Account N° 1901443007
Swift: MCTBPAPAXXX
Pagadero A/ Further Credit to
Nombre de la cuenta: REPRESENTACIONES SALDANA, S.A.
Número  de la cuenta: 10012159736

**4.4**   Dentro del término máximo de siete (7) días hábiles subsiguientes a la acreditación de los fondos requeridos, en la cuenta de LA DEUDORA, esta última deberá remitir obligatoriamente al ACREEDOR una nota confirmando la recepción de tales fondos prestados por EL ACREEDOR.


**CLÁUSULA QUINTA: OBLIGACIONES DE HACER POR PARTE DE LA DEUDORA Y LA FIADORA SOLIDARIA.-**

Salvo autorización previa y por escrito del Acreedor, la DEUDORA y LA FIADORA SOLIDARIA cumplirán con las siguientes obligaciones mientras no se haya pagado la totalidad del PRESTAMO REVOLVENTE:


**a)** Cumplir sustancialmente con todas las leyes, ordenanzas, reglas, regulaciones y requerimientos de toda Autoridad de Gobierno (incluyendo pero no limitándose, a las licencias, certificados, permisos y otras autorizaciones gubernamentales necesarias para ser propietarios de sus bienes o para la conducción de sus respectivos negocios, leyes del medio ambiente y leyes relacionadas a la seguridad social y a las obligaciones de fondos de pensiones), a menos que: (i) su aplicación o necesario cumplimiento esté siendo impugnado por la DEUDORA; o, (ii) se trate de un incumplimiento que no afecte o respecto del cual no pudiera esperarse que afecte adversa y sustancialmente la capacidad para hacer frente a sus obligaciones de pago establecidas en el presente **Contrato Marco de Préstamo**, siempre que ello sea comunicado por escrito y aceptado por el Acreedor;


**b)** Cumplir con el pago de todo tributo conforme a la legislación de la República del Ecuador y los vinculados a la formalización, registro o legalización notarial del presente **Contrato Marco de Préstamo**, los demás Documentos de Préstamo y de cualquier otro documento relacionado con éste, y los establecidos en la actualidad o que se establezcan en el futuro sobre la realización de cualquiera de los pagos a efectuarse bajo el presente **Contrato Marco de Préstamo**, excepto por aquellas obligaciones tributarias que: (a) son o serán impugnadas siguiendo los procedimientos pertinentes dentro de los términos establecidos por las leyes aplicables de Ecuador; y/o, (b) respecto de los cuales no afecten o pudiera esperarse que afecten adversa y sustancialmente la capacidad para hacer frente a sus obligaciones de pago establecidas en el presente **Contrato Marco de Préstamo**, siempre que ello sea comunicado por escrito y aceptado por el ACREEDOR;


**c)** Obtener y mantener en plena vigencia y efecto todas las aprobaciones de la Autoridad de Gobierno que puedan ser necesarias para el otorgamiento y cumplimiento del **Contrato Marco de Préstamo** o para la validez y exigibilidad de los Documentos de Préstamo, y tomar todas las acciones razonablemente necesarias o convenientes ante las Autoridades de Gobierno respectivas para hacer todos los pagos que deba efectuarse conforme a los Documentos del Préstamo, excepto por aquellas licencias, autorizaciones, conformidades, aprobaciones o registros: (a) que actualmente no son necesarias y se espera obtener en el curso regular del negocio para el momento en que sean necesarias; y/o, (b) respecto de las cuales su falta no afecte o pueda esperarse que afecte adversa y sustancialmente su posibilidad de cumplir con sus obligaciones de pago según lo previsto en los Documentos de Préstamo, siempre que ello sea comunicado por escrito y aceptado por el ACREEDOR;

**d)** Comunicar inmediatamente al ACREEDOR sobre cualquier evento que afecte adversamente y de manera sustancial la situación económica o financiera de la DEUDORA y/o de la FIADORA SOLIDARIA;

**e)** Informar inmediatamente al ACREEDOR sobre la ocurrencia de uno o más Eventos de Incumplimiento;

**f)** Dentro de los treinta (30) primeros días de cada trimestre, los Gerentes Generales y/o Financieros de la DEUDORA y de la FIADORA SOLIDARIA deberán proporcionar un reporte en el cual se incluya un breve resumen de la relación de los procedimientos (judiciales, arbitrales, administrativos o de cualquier otra índole) iniciados en el trimestre precedente, sean o no contenciosos, en los que la DEUDORA sean parte y hayan sido notificadas, cuyo monto afecte de forma relevante y notoria la continuidad de la operación de la DEUDORA y de la FIADORA SOLIDARIA o la viabilidad de sus negocios;

**g)** Mantener en buen estado los activos de la FIADORA SOLIDARIA que hayan sido transferidos al Fideicomiso Mercantil en Garantía, excepto por el desgaste común debido a su utilización;

**h)** Utilizar los fondos desembolsados en virtud del **Contrato Marco de Préstamo**, exclusivamente para el cumplimiento de los objetivos para los cuales fueron solicitados;

**i)** Pagar, en forma oportuna al ACREEDOR: (a) todos los costos adicionales que sean producto de cambios en la normativa que rige o afecta las operaciones de financiamiento del ACREEDOR para el otorgamiento de sus préstamos, u originados por el incumplimiento en el pago del principal por parte de la DEUDORA en las fechas establecidas en el Contrato; (b) los honorarios y gastos incurridos para dar cumplimiento a los derechos del ACREEDOR, conforme al presente **Contrato Marco de Préstamo** y al Pagaré, incluidos los honorarios y gastos legales; (c) los honorarios y gastos incurridos como resultado del incumplimiento de las Obligaciones de No Hacer establecidas en la cláusula sexta del presente **Contrato Marco de Préstamo**; (d) todos los cargos exigibles por concepto de, o en relación con, la formalización, el registro o la entrega de los Documentos de Préstamo; (e) la Comisión de Administración y Operación; y, (f) la Comisión de Precancelación. El ACREEDOR deberá detallar los costos legales, derechos, comisiones y otros cargos cuyo pago o reembolso solicite, el cual queda desde ya expresamente autorizado para que debite los mencionados valores a su favor;

**j)** Entregar al ACREEDOR los estados financieros trimestrales no auditados de la DEUDORA (Balance General, Estado de Ganancias y Pérdidas y Estado de Flujos en Efectivo) dentro de los treinta (30) días calendario siguientes al cierre de cada trimestre;

**k)** Entregar al ACREEDOR los estados financieros auditados de la DEUDORA, dentro de los ciento veinte (120) días calendario siguientes al cierre de cada Ejercicio Fiscal;

**l)** Llevar libros y registros de contabilidad de acuerdo a ley y a los principios de contabilidad generalmente aceptados;

**m)** Mantener o causar que se mantengan póliza(s) de seguro(s) por compañías de seguros ecuatorianas aceptables para el ACREEDOR, cubriendo todos los activos de la FIADORA SOLIDARIA que hayan sido transferidos al Fideicomiso Mercantil en Garantía. En todo caso, (i) estas pólizas deberán ser endosadas a favor del respectivo Fideicomiso.

**n)** Permitir que el ACREEDOR, o el respectivo Fideicomiso mencionado en el literal anterior, realice evaluaciones anuales del grado de cobertura de las pólizas de seguro a que se refiere el literal anterior y, en caso de ser necesario, exija el incremento de dicha cobertura en el supuesto que ésta fuera deficiente en estricta relación al monto;

**o)** Dar acceso a los representantes debidamente acreditados del ACREEDOR a las instalaciones de la DEUDORA con el fin de que se efectúen las verificaciones e inspecciones que el ACREEDOR estime necesarias, siempre que se solicite con tres (3) Días Hábiles de anticipación y se hagan en horarios normales de trabajo;

**p)** La DEUDORA deberán nombrar y mantener vigente la contratación de un auditor externo, el cual podrá ser objetado por el ACREEDOR por causas debidamente justificadas, en cuyo caso se procederá a designar a un nuevo auditor externo que deberá ser previamente aprobado por el ACREEDOR;

**q)** La DEUDORA deberán instruir a los auditores externos designados conforme al literal anterior para que, durante la vigencia del **Contrato Marco de Préstamo**, el ACREEDOR los pueda contactar directamente, debiendo el auditor entregar la información referente a los Estados Financieros Auditados, que el ACREEDOR le indique, siempre que la información requerida no le hubiera sido proporcionada por la DEUDORA en un plazo no mayor de quince (15) días, en papel membretado del auditor con firma y sello de responsabilidad. En caso de que la DEUDORA no responda al requerimiento en dicho plazo, el ACREEDOR contactará directamente al auditor externo. Si el trabajo del auditor genera un costo adicional a su honorario de auditoria, dicho será de cargo de la DEUDORA;

**r)** Notificar al ACREEDOR por escrito sobre cualquier resolución tomada por la Junta de Accionistas o en Sesión de Directorio que afecte sustancial y adversamente la Línea de Crédito, el **Contrato Marco de Préstamo** y los demás Documentos de Préstamo y suministrar una breve descripción de la agenda a tratar en la respectiva Junta o Sesión; así como también se obligan a notificar al ACREEDOR sobre cualquier cambio en la estructura accionaria de LA DEUDORA y/o de la FIADORA SOLIDARIA, o de las compañías que consten como accionistas de aquellas, o cuando estos cambios conlleven la conformación de Grupos Empresariales;

**s)** Indemnizar y eximir al ACREEDOR, sus ejecutivos, directivos, agentes y empleados de cualquier reclamo, daño, responsabilidad, costo o gasto (incluyendo, sin limitación alguna, los honorarios y demás gastos legales y por concepto de otros servicios profesionales) en que haya incurrido el ACREEDOR o que se hayan imputado al mismo en relación o como resultado de cualquier reclamo, investigación, litigio o procedimiento legal que se entable en relación con el presente **Contrato Marco de Préstamo** o con cualquier Documento de Préstamo, sus respectivas negociaciones, la preparación de la documentación pertinente, o la ejecución por parte del ACREEDOR de cualquier derecho o recurso que le hubiese sido conferido al amparo de tales documentos, sea o no el ACREEDOR una de las partes implicadas en el citado reclamo, investigación, litigio o procedimiento legal, salvo que dicho reclamo o costo sea producto de la negligencia grave o dolo del ACREEDOR, o de su representante autorizado.

**CLÁUSULA SEXTA: OBLIGACIONES DE NO HACER POR PARTE DE LA DEUDORA y LA FIADORA SOLIDARIA.-**

Salvo autorización previa y por escrito del ACREEDOR, y mientras no se haya pagado la totalidad del PRÉSTAMO REVOLVENTE, la DEUDORA y LA FIADORA SOLIDARIA se abstendrán de:

**a)** Pagar o distribuir dividendos si se encuentra en incumplimiento con alguno de los términos y condiciones estipulados en el presente **Contrato Marco de Préstamo**, o si un Evento de Incumplimiento ocurre o continúa como resultado de tal distribución o pago de dividendos;

**b)** Rembolsar cualquier partida patrimonial a sus accionistas en forma diferente al reparto de dividendos si se encuentra en incumplimiento con alguno de los términos y condiciones estipulados en el presente **Contrato Marco de Préstamo** y en los Documentos de Préstamo, o si un Evento de Incumplimiento ocurre, es posible de ocurrir o continúa como resultado de tal reembolso;

**c)** Realizar algún cambio significativo en el giro principal y la naturaleza del negocio de la DEUDORA;

**d)** Enajenar o arrendar más del 20% de los activos fijos de la DEUDORA y/o de la FIADORA SOLIDARIA; sin consentimiento del ACREEDOR, y en caso de negativa deberá contar con el debido soporte.

**e)** Reducir el capital social de la DEUDORA y/o de la FIADORA SOLIDARIA, salvo por las reducciones necesarias u obligatorias según la ley aplicable;
**f)** Realizar préstamos, garantizar y constituirse como fiadora y/o avalista respecto de deuda de terceros, incluyendo a sus accionistas, directores y empleados, excepto por los préstamos otorgados y/o las garantías constituidas dentro del curso normal de sus negocios;

**g)** Celebrar contratos, acuerdos, negocios o transacciones con terceros, que no sean en condiciones de mercado en lo referente a precios, formas de pago, documentación, intereses sobre el monto de las obligaciones pagaderas a plazo, los plazos de entrega de mercaderías, productos o servicios, tasas de descuento, u otras semejantes;

**h)** Celebrar acuerdos en virtud de los cuales los ingresos o utilidades de la DEUDORA se compartan con terceros (excepto por sus empleados), o en virtud de los cuales los asuntos de la DEUDORA sean gestionados por terceros;

**i)** Otorgar préstamos a los accionistas, directores y empleados de la DEUDORA y/o de la FIADORA SOLIDARIA, fuera del curso habitual de sus negocios;

**j)** Pagar a los directores y empleados de la DEUDORA y/o de la FIADORA SOLIDARIA, dietas y remuneraciones u otras prestaciones que no sean conformes con las disposiciones legales vigentes, y que no sean conformes a las prácticas y montos aceptados en el mercado local para cargos y funciones similares.

**k)** Respecto de la DEUDORA y/o de la FIADORA SOLIDARIA, fusionarse, escindirse y, en general reorganizarse, o adquirir empresas o subsidiarias, cualquiera sea su actividad, sin el previo consentimiento del ACREEDOR y en caso de negativa, deberá contar con el debido soporte.

**CLAUSULA SEPTIMA: RESPONSABILIDAD SOBRE EL CREDITO CEDIDO - FORMA DE CANCELACIÓN.-**

**7.1.**   La DEUDORA es responsable frente al  ACREEDOR,  tanto respecto del crédito cedido, como de  las FACTURAS en cuanto a:

- Su existencia y legitimidad;
- Que son y serán de libre disponibilidad y que no se encuentran ni se encontrarán afectados, por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza, a la fecha del presente **Contrato Marco de Préstamo** y durante toda su vigencia, y al momento en que se remitan los correspondientes Certificados de Desembolso;
- Que se encuentra y encontrará en su propiedad;
- Que no se encuentra ni encontrará inhibido para disponer de sus Bienes:
- Que no adeuda, ni adeudará durante la vigencia de este **Contrato Marco de Préstamo**, a los Clientes Cedidos suma alguna que pueda dar lugar a compensaciones de cualquier especie;
- Que no ha percibido suma alguna derivada de las FACTURAS, de los Créditos cedidos, ni que los mismos han sido cedidos total o parcialmente a persona natural o Jurídica alguna con anterioridad y que no serán cedidos en el futuro a favor de una persona que no sea el ACREEDOR;
- La autenticidad de las firmas de quienes efectuaron las cesiones de las FACTURAS, en el caso de existir dichas firmas; así  como también de todo instrumento proveniente del/ de los Deudor/es Cedido/s donde se acredite la recepción de las FACTURAS y/o del Inventario comprendido en ellas y la capacidad de los mismos para la realización de tales actos jurídicos;
- Que el crédito cedido y las FACTURAS no contienen ni contendrán defectos formales que pudieren motivar su rechazo.
- Que las FACTURAS no tendrán un plazo promedio de pago superior a sesenta (60) días, contados a partir de la fecha del embarque respectivo.

**7.2.**   La financiación que mediante este **Contrato Marco de Préstamo** se instrumenta, será considerada devuelta o pagada en forma total o parcial,  cuando el ACREEDOR reciba del Cliente Cedido el Pago de las FACTURAS; según instrucciones que previamente la DEUDORA hayan impartido a los Clientes Cedidos o, en caso extraordinario, cuando el ACREEDOR reciba el pago de manera directa por parte de LA DEUDORA. Dicho pago se deberá efectuar mediante depósito y/o acreditación bancaria en la cuenta del ACREEDOR, cuyos datos serán indicados por escrito por el ACREEDOR, mediante carta debidamente firmada por el representante del ACREEDOR.

A tal efecto,  en adición a las notificaciones previstas en la Cláusula Décimo Quinta del presente **Contrato Marco de Préstamo**, la DEUDORA se obliga a incluir en todas y cada una de las FACTURAS que sean remitidas al Cliente Cedido, una leyenda que indique expresamente que tal FACTURA deberá ser pagada al ACREEDOR mediante transferencia de los fondos correspondientes a la cuenta bancaria del ACREEDOR (Cuenta Recolectora) que se incluirá en el texto de la leyenda.

**7.3.**   La cesión del Crédito y de las FACTURAS se efectúa con responsabilidad por parte de la DEUDORA hacia el ACREEDOR. En consecuencia, si el importe de las FACTURAS no se encontrare abonado a la fecha de los respectivos vencimientos, como si dicho cumplimiento no se efectuare por rehusarse el Cliente Cedido por cualquier causa que fuere, o no se observare para el pago lo establecido en el punto 5.2. precedente, ello generará la obligación de la DEUDORA de abonar al ACREEDOR el importe total o el saldo adeudado correspondiente a dichos créditos, vencidos e impagos, dentro de las 48 horas

de ser requerido por este último, abonando a su vez, los intereses compensatorios que se devenguen desde el vencimiento de cada FACTURA Impaga a la tasa que se hubiera aplicado. La mora de la DEUDORA se producirá de pleno derecho por el solo vencimiento del plazo fijado, a partir del cual deberá abonar los Intereses Compensatorios antes mencionados, hasta la efectiva y total cancelación del monto adeudado. La Tasa de Interés aplicable en caso de mora o incumplimiento será la que resulte menor entre el 5% sobre la Tasa de Interés pactada en la subcláusula 2.2 de la cláusula Segunda y la máxima Tasa de Interés permitida en la legislación ecuatoriana. Con el pago que efectúe la DEUDORA con motivo del requerimiento mencionado en el presente punto 5.3., ésta quedará subrogada en los derechos del ACREEDOR frente al CLIENTE CEDIDO, debiendo el ACREEDOR entregar a la DEUDORA, la FACTURA y toda otra documentación que tenga en su poder y podrá realizar cualquier gestión que resulte necesaria para el cobro de la misma. Todo ello sin perjuicio de las acciones que podrá ejercer el ACREEDOR respecto del Cliente Cedido en virtud de su incumplimiento.

La suma de desembolsos adeudados y no cancelados, así como otros pagos o cargos que la DEUDORA deban pagar al ACREEDOR, estarán sujetos al cómputo de intereses y comisiones.

**CLÁUSULA OCTAVA: EVENTOS DE INCUMPLIMIENTO.-** Si uno o más de los hechos que se mencionan a continuación ocurre y continúa, el Acreedor tendrá derecho a tomar las acciones correspondientes establecidas en la Cláusula siguiente:

(a) Si un tercero pidiere la quiebra de cualquiera de la DEUDORA y/o de la FIADORA SOLIDARIA y no fuera rechazada dicha solicitud por el tribunal correspondiente; (b) Si cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos; (c) si se trabare alguna medida cautelar sobre los Bienes de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA; (d) si se comprobare la falta de veracidad, parcial o total, por parte de cualquiera de la DEUDORA y/o de la FIADORA SOLIDARIA, en las aplicaciones de la Línea de Crédito objeto del presente **Contrato Marco de Préstamo**; (e) si se incumpliere con las condiciones y obligaciones asumidas por parte de la DEUDORA en el **"FIDEICOMISO DE GARANTÍA IDEAL - IIG TOF B.V."** y/o en el contrato de encargo fiduciario suscrito para el efecto; (f) si se produjere cualquier alteración que a criterio del ACREEDOR, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para la Línea de Crédito objeto del presente **Contrato Marco de Préstamo**; (g) Falta de pago oportuno de capital y/o intereses y/o comisiones y/o gastos de la Línea de Crédito en cualquiera de las fechas establecidas para ello; (h) El reconocimiento por escrito por parte de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA de la imposibilidad de pago de deudas, o la cesión general o abandono de Bienes en beneficio de acreedores; o que: (1) cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA ingrese a un proceso concursal por solicitud propia; (2) una autoridad gubernamental u otro organismo que tenga jurisdicción sobre cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA o sus activos (2.1) comience un procedimiento concursal ordinario o preventivo con respecto a cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA o sus activos; o, (2.2) tome alguna acción bajo cualquier legislación en materia concursal, de reestructuración patrimonial, disolución, liquidación, quiebras, insolvencia, saneamiento patrimonial, suspensión de pagos u otra similar que regule la operación de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA que pueda imposibilitar a la DEUDORA y/o la FIADORA

SOLIDARIA para cumplir las obligaciones que ésta asumen de conformidad con los Documentos del Préstamo cuando se hagan exigibles, según corresponda; (3) un procedimiento concursal ordinario involuntario sea iniciado con respecto a cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA o sus activos por una persona distinta a una autoridad gubernamental u organismo que tenga jurisdicción sobre cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA o sus activos y dicho procedimiento concursal ordinario no sea dejado sin efecto dentro de los diez (10) días calendario de su inicio o presentación; y/o (4) cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA se encuentren en quiebra, concursada, en disolución, liquidación, o en insolvencia bajo los términos de cualquier legislación en materia de quiebras, concursos o insolvencia que le sea aplicable; y/o (5) la convocatoria a una junta general de accionistas de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA para tratar su respectiva disolución y/o liquidación; (i) Que, si ante la ocurrencia de cualquier hecho, evento o circunstancia el **Contrato Marco de Préstamo** o los otros Documentos de Préstamo se conviertan (o exista la amenaza fundada a criterio del ACREEDOR)en inexigibles o dejaren de tener vigencia y/o validez, parcial o total, y/o efecto, ocasionando que el ACREEDOR deje de tener los derechos, poderes o privilegios otorgados a su favor en virtud de dichos documentos, a solo criterio del ACREEDOR, exceptuándose cualquier hecho, evento o circunstancia imputable al ACREEDOR; (j) Que ocurra cualquier acto gubernamental o político o que alguna persona actúe bajo autorización del gobierno con el fin de tomar acciones que condenen, expropien, embarguen, nacionalicen, o asuman custodia o control de, todo o parte de los activos de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA o sus operaciones, o tomen alguna medida que desplace al directorio y/o gerencia de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA o limite su autoridad en la realización de sus negocios o generen un Efecto Sustancialmente Adverso; (k) La obligación de pago originada por (1) un mandato arbitral, judicial o acuerdo extrajudicial, emanado de un procedimiento terminado no sujeto a recurso impugnatorio alguno, o (2) una resolución administrativa o acto administrativo consentido, que genere la obligación de pago por parte de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA por un monto que el ACREEDOR considere materialmente adverso; (l) Que ocurran cambios sustanciales adversos en las leyes y/o eventos políticos adversos que generen un Efecto Sustancialmente Adverso; (m) Que cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA transfiera, permute, ceda en dominio fiduciario, enajene (mediante una negociación o una serie de negociaciones) o disponga de otra forma de sus activos en términos que superen el porcentaje establecido en el literal d) de la cláusula sexta, sin la autorización previa del ACREEDOR, y en caso de negativa deberá contar con el debido soporte. (n) Que cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA otorgue o constituya Garantías; (ñ) Que ocurran eventos que cambien las condiciones del mercado financiero nacional y/o internacional de manera tal que genere un Efecto Sustancialmente Adverso, a criterio del ACREEDOR; (o)  Que ocurran eventos extraordinarios tales como caso fortuito, guerra, vandalismo, terrorismo, huelga, *boycott*, insurrección, incendio, desastre natural que generen un Efecto Sustancialmente Adverso; (p) Que cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA pierda alguna de sus licencias, certificados, permisos, concesiones, derechos o autorizaciones, o que ocurra algún evento que genere esta pérdida y que genere un Efecto Sustancialmente Adverso, siempre que la DEUDORA y/o la FIADORA SOLIDARIA no obtenga nuevamente dicha licencia, certificado, permiso, concesión, derecho o autorización dentro de los quince (15) días calendario siguientes a su pérdida; (q) Que se inicien uno o más procesos judiciales, arbitrales,

administrativos o extrajudiciales (distintos de aquellos declarados por la DEUDORA y/o la FIADORA SOLIDARIA al momento de realizar el *due diligence* de ésta) que razonablemente le pueda generar a la DEUDORA una contingencia que pueda generar un Efecto Sustancialmente Adverso, a criterio del ACREEDOR; (r) Que las obligaciones de este **Contrato Marco de Préstamo** y del Pagaré dejen de tener preferencia y prioridad de pago respecto con cualquier otra obligación de la DEUDORA y/o la FIADORA SOLIDARIA (excluyendo aquellas cuyos reclamos sean preferidos por cualquier norma legal de aplicación general sobre procesos concursales, reestructuración patrimonial, quiebra, insolvencia, saneamiento patrimonial, liquidación o similares); (s) Que se emita un fallo o resolución de carácter no monetario en contra de cualquiera de la DEUDORA y/o la FIADORA SOLIDARIA emanada de un procedimiento terminado no sujeto a recurso impugnatorio alguno, que genere un Efecto Sustancialmente Adverso; y/o, (t) Que, se haya verificado la ocurrencia de un evento calificado como evento de incumplimiento en los Documentos del Préstamo distintos a este **Contrato Marco de Préstamo**.

**CLÁUSULA NOVENA: ACCIONES DERIVADAS DE EVENTOS DE INCUMPLIMIENTO.-** Sin perjuicio de las demás acciones y derechos que pueda ejercer el ACREEDOR conforme a los Documentos del Préstamo, ante la ocurrencia de un Evento de Incumplimiento, el ACREEDOR podrá, a su sola discreción, ejercer, simultánea o sucesivamente, una o más de las siguientes acciones:

(a) Declarar la deuda derivada de las FACTURAS cedidas, como de plazo vencido y solicitar el pago de todo lo adeudado; así como declarar de plazo vencido todos los montos que cualquiera de la DEUDORA, la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS deban pagar en virtud de este Contrato Marco de Préstamo o en virtud del Pagaré, mediante aviso escrito, que de otra forma sean exigibles con posterioridad a la fecha de dicho aviso, como inmediatamente exigibles y pagaderos, para lo cual las Partes en este acto convienen en que, a partir de ese momento, tales montos serán exigibles y pagaderos, sin que medie diligencia, exhortos, avisos, presentación para el pago, requerimiento judicial o extrajudicial, protesto o cualesquiera otra formalidad, a todas las cuales la Compañía renuncia en forma expresa. Para los efectos previstos en esta cláusula, la Compañía acepta que el efecto de la declaratoria de plazo vencido antes indicada, será el de permitir al ACREEDOR declarar de plazo vencido la totalidad de las obligaciones pendientes de pago y proceder al cobro inmediato de las sumas adeudadas, las cuales se considerarán, sin necesidad de notificación, protesto o requerimiento judicial de ninguna especie como líquidas, exigibles y pagaderas de inmediato;

(b) Ejecutar el Contrato de Fideicomiso Mercantil con la finalidad de realizar el cobro de la totalidad de las obligaciones pendientes de pago, sin perjuicio de requerir el pago de la totalidad de las obligaciones pendientes de pago y ejercer otros remedios que le otorgan las LEYES APLICABLES. Para efectos de lo indicado anteriormente, la liquidación del monto de las obligaciones pendientes de pago será realizada por el ACREEDOR y comunicada a la DEUDORA, FIADORA SOLIDARIA y FIADORES SOLIDARIOS para su pago; obligándose la Compañía a abonar el monto de la liquidación que le hubiere sido entregada por el ACREEDOR; y/o

(c) Iniciar las acciones legales para cautelar sus intereses, incluyendo la posibilidad de solicitar medidas cautelares sobre los Bienes y derechos de la Compañía.

En caso de ejecución del crédito concedido con cargo a la Línea de Crédito, el ACREEDOR podrá ejecutar el colateral entregado en garantía por parte de la FIADORA

SOLIDARIA y si éste no alcanzare para pagar la totalidad del crédito concedido, más los intereses generados, incluyendo el moratorio, más las comisiones generadas y demás gastos judiciales y extrajudiciales que se requieran cubrir, la ACREEDORA podrá, lo cual es autorizado expresamente por la DEUDORA y la FIADORA SOLIDARIA en este acto, cobrarse de los restantes activos que posea la FIADORA SOLIDARIA.

### CLAUSULA DÉCIMA: MONEDA DE PAGO.-

En los casos en que la DEUDORA y/o el Cliente Cedido, deban pagar al ACREEDOR o a quien este indique, el importe total o el saldo adeudado correspondiente a las FACTURAS conforme lo establece la Cláusula Séptima; la DEUDORA y la FIADORA SOLIDARIA declaran por  el presente instrumento, que dichos montos deberán ser necesariamente pagados en Dólares de los Estados Unidos de Norteamérica y no en otra moneda. En consecuencia, la DEUDORA y la FIADORA SOLIDARIA expresamente reconocen y aceptan que constituye condición esencial de este **Contrato Marco de Préstamo**, de que se realice el financiamiento, de la cesión del crédito cedido y de las FACTURAS; que el capital, los intereses compensatorios y moratorios, costos, costas y demás sumas de dinero, tendrán que ser abonadas al ACREEDOR en dólares estadounidenses.

### CLAUSULA DÉCIMO PRIMERA: OBLIGACIONES ADICIONALES DE LA DEUDORA.-

La DEUDORA se compromete a satisfacer, en la medida de sus posibilidades, toda la información razonable que el ACREEDOR pudiera requerirle relacionada con los créditos cedidos emanados de las FACTURAS; y asimismo se obligan a cumplir con todas aquellas obligaciones que pudieran corresponderles para que los créditos derivados de las FACTURAS cedidas sean abonados al ACREEDOR, obligándose a realizar todas las gestiones que resulten necesarias a efecto de que el ACREEDOR obtenga el reconocimiento pleno de los créditos derivados de las FACTURAS cedidas, asumiendo la DEUDORA todos los razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el ACREEDOR para obtener el cobro del crédito cedido derivado de las FACTURAS o la devolución de las sumas financiadas.

También se comprometen, ante la existencia de incumplimiento o falsedad a lo establecido en la Cláusula Séptima, ante el requerimiento que le efectúe el ACREEDOR, a abonar dentro de las 48 horas de ser notificado, la suma que corresponda a la porción o totalidad del monto financiado por este último, que no haya sido abonada por el Cliente Cedido, con más los pertinentes intereses compensatorios pactados, conforme la Cláusula Séptima.

Adicionalmente, la DEUDORA deberá entregar al ACREEDOR informes financieros trimestrales de la empresa, en un plazo máximo de 45 días contados a partir del cierre de cada trimestre y estados financieros anuales auditados y trimestrales.

### CLAUSULA DÉCIMO SEGUNDA: COMISIONES, GASTOS, IMPUESTOS Y TRIBUTOS.-

Toda comisión, impuesto, tributo y/o gastos que las operaciones detalladas en este **Contrato Marco de Préstamo** o que el mismo, pudiere generar, serán asumidos de manera íntegra por la DEUDORA, las mismas que autorizan al ACREEDOR para que proceda con el débito respectivo de dichos valores a favor del mismo, en caso de que dicho ACREEDOR deba pagarlos o sean valores generados a su favor.

### CLAUSULA DÉCIMO TERCERA: AUTORIZACION DE CESION.-

La DEUDORA, FIADORA SOLIDARIA y FIADORES SOLIDARIOS autorizan expresamente al ACREEDOR para que pueda proceder a la cesión del presente Contrato Marco de Préstamo y los correspondientes Certificados de Desembolso, y de los derechos y obligaciones contemplados en el mismo, a los Fondos manejados o administrados directamente por EL ACREEDOR; debiéndose dejar constancia en dichas cesiones, que los beneficiarios de la cesión de derechos que se haga de este Contrato Marco de Préstamo, no podrán, a su vez, cederlo a terceros que no sean Fondos manejados o administrados por EL ACREEDOR directamente. En el evento de que EL ACREEDOR deseare ceder los derechos derivados de este Contrato Marco de Préstamo a entidades nacionales o extranjeras que no fuesen subsidiarias, afiliadas o relacionadas con el mismo, LA DEUDORA, FIADORA SOLIDARIA y FIADORES SOLIDARIOS declaran que aceptan la cesión de este contrato a favor de terceras personas que elija EL ACREEDOR, y, además renuncian a ser notificadas de esta cesión en la forma que dispone el Código de Procedimiento Civil, de conformidad con lo dispuesto en el artículo once del Código Civil vigente, debiendo únicamente recibir del ACREEDOR una comunicación informativa sobre dicha cesión de derechos, la misma que será enviada a cada una de LA DEUDORA, FIADORA SOLIDARIA y FIADORES SOLIDARIOS, en un plazo máximo de 72 horas a contarse desde la fecha en que se hubiere realizado la referida cesión de derechos. En todos los casos de cesión de los derechos derivados de este Contrato Marco de Préstamo, tanto el cedente como el cesionario respetarán íntegramente los términos y condiciones del presente contrato.

**CLAUSULA DÉCIMO CUARTA: DECLARACIÓN DE CUMPLIMIENTO DE POLÍTICAS DE MEDIO AMBIENTE, SEGURIDAD, SALUD Y LABORALES.-**

La DEUDORA y la FIADORA SOLIDARIA hasta la presente fecha han ejercido y en el futuro ejercerán todas las acciones necesarias para mantener y cumplir todas las políticas, leyes, regulaciones, convenios y tratados internacionales sobre protección del medio ambiente, salud, seguridad y materia laboral que rigen en el Ecuador.

La DEUDORA y la FIADORA SOLIDARIA declaran además, que hasta la presente fecha, no tienen conocimiento de que se haya iniciado en su contra alguna acción o reclamo por daños ambientales que impliquen interposiciones de multas, penalidades, costos de limpieza, reembolso de gastos al gobierno, pagos por daños causados, orden de prisión dictada en contra de los representantes legales de la compañía, reducción del valor de garantías de daño o responsabilidad ambiental, etc. y cuyos efectos les impidan cumplir con todas las obligaciones asumidas en este **Contrato Marco de Préstamo**. De igual forma la DEUDORA y la FIADORA SOLIDARIA se comprometen a realizar todas las acciones y adoptar todas las medidas necesarias para prevenir que esto ocurra en el futuro.

La DEUDORA declara que los fondos provenientes de la línea de crédito aprobada a su favor por el ACRREEDOR no serán utilizados para financiar la producción, comercialización, procesamiento o utilización de Bienes prohibidos o realizar actividades ilícitas o prohibidas por el ACREEDOR en el Anexo A del documento que contiene las Políticas y Procedimientos de Protección Ambiental (Environmental Due Diligence Policy and Procedures) que ha sido previamente entregado a la DEUDORA y aceptado su contenido.

**CLAUSULA DÉCIMO QUINTA: NOTIFICACIONES.-**

**15.1** La DEUDORA se obliga a notificar en forma fehaciente a los Clientes Cedidos que deberán depositar el pago de las FACTURAS de compra, cuya cesión se perfeccionará en el momento en que se efectúe la operación de

financiamiento materia de este **Contrato Marco de Préstamo**, depósito que se realizará en la cuenta del ACREEDOR; para tal efecto, la DEUDORA deberá remitir a los Clientes Cedidos por medio fehaciente y con la firma de su representante legal debidamente certificada (autenticada), una notificación con el texto adjunto al presente como Anexo II.

**15.2** En caso de extinguirse totalmente las obligaciones contraídas por la DEUDORA, el ACREEDOR, de quedar pendientes derechos u obligaciones correspondientes a las FACTURAS cedidas, se compromete a notificar tal circunstancia a los Clientes Cedidos.

Una vez extinguidas las obligaciones de la DEUDORA con el ACREEDOR, el ACREEDOR, se obliga a depositar en la cuenta de la DEUDORA cualquier suma que hubiere recibido de los Clientes Cedidos con posterioridad a la referida extinción de obligaciones de la DEUDORA.

## CLAUSULA DÉCIMO SEXTA: RENDICIÓN DE CUENTAS.-

El ACREEDOR en forma semanal deberá rendir cuentas a la DEUDORA de las sumas recibidas de los Clientes Cedidos y su debida imputación al pago de las FACTURAS y demás derechos u obligaciones de la DEUDORA.

## CLAUSULA DÉCIMO SÉPTIMA: VIGENCIA.-

El presente Contrato Marco de Préstamo así como los términos emergentes de los Certificados de Desembolso derivados de los mismos, tendrá un plazo de vigencia de un año, contado a partir de la fecha de suscripción que haga el Acreedor, al término del cual se renovará automáticamente, sin perjuicio de que las Partes deban confirmar por escrito su aceptación a la renovación. En todo caso si al término del plazo antes fijado, la DEUDORA mantuviere pendientes obligaciones con el Acreedor, el presente **Contrato Marco de Préstamo** se mantendrá vigente hasta que se cumpla en su totalidad los derechos u obligaciones de las PARTES respecto de las FACTURAS cedidas.

Ninguna de las PARTES podrá terminar de manera anticipada el presente contrato, mientras una cualesquiera de la DEUDORA, la FIADORA SOLIDARIA y los FIADORES SOLIDARIOS mantuvieren pendientes obligaciones de crédito a favor del Acreedor, para lo cual, el presente **Contrato Marco de Préstamo** se mantendrá vigente hasta que se cumpla en su totalidad los derechos u obligaciones de las PARTES respecto de las FACTURAS cedidas, y en especial, respecto del pago de los créditos vigentes por parte de LA DEUDORA. Una vez que las obligaciones de crédito estuvieren canceladas cualquiera de las partes podrá terminar el presente contrato con la notificación previa de 30 días a la otra parte.

## CLAUSULA DÉCIMO OCTAVA: NOTIFICACIONES A LAS PARTES.-

Las comunicaciones dirigidas a todas las PARTES comparecientes, relacionadas con cualquier evento suscitado durante la vigencia del presente CONTRATO se realizarán por cualquier medio auténtico escrito, y serán dirigidas a las siguientes direcciones:

**IIG TOF B.V.**
<u>Contactos:</u> NEW YORK:          Carlos R Cano y/o Thomas LaVecchia.
<u>Dirección:</u>                      1500 BROADWAY AVENUE 17TH FLOOR
NEW YORK, N.Y. 10036
<u>Teléfono:</u> 1 212-806-5100

**REPRESENTACIONES SALDANA S.A.,**Contacto: Jorge Guzman Segura.
Dirección: Trump Ocean Club Office Tower 215, Ciudad de Panamá, República de Panamá.
Teléfono: 3054337183

**INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL"**
Contacto: Rodrigo del Jesús Agudo Valle, Gerente.
Dirección: kilómetro ocho y medio de la vía Manta – Montecristi, cantón Montecristi, provincia de Manabí -- Ecuador
Teléfono: 052310407

**ANGEL MOISES AGUDO VALLE**
Dirección: URBANIZACION MANTA 2000, cantón Manta - Provincia de Manabí - Ecuador
Teléfono: 593 992150508

**RODRIGO DEL JESUS AGUDO VALLE**
Dirección: Condominio Peñón del Mar vía Barbasquillo, cantón Manta, Provincia de Manabí - Ecuador
Teléfono: 593 999753249

**CLAUSULA DÉCIMO NOVENA: JURISDICCION Y LEY APLICABLE.-**

Este Contrato Marco de Préstamo ha sido redactado conforme a la legislación del Estado de Nueva York, Estados Unidos de América, siendo aplicable al mismo y a las PARTES firmantes la legislación vigente en dicho Estado.

Para todos los efectos Judiciales, las PARTES se someten a la Jurisdicción de los Tribunales de la Ciudad de Nueva York, Estados Unidos de América, renunciando expresamente a cualquier otro fuero o Jurisdicción que pudiera corresponder. No obstante lo expuesto EL ACREEDOR tendrá derecho para demandar a la DEUDORA en el domicilio judicial que escoja.

**CLAUSULA VIGÉSIMA: DOMICILIOS ESPECIALES.-**
Para cualesquiera notificaciones derivadas del presente, las PARTES constituyen los domicilios especiales contractuales en los indicados en el encabezamiento del presente Contrato Marco de Préstamo, donde tendrán eficacia todas las que se realicen, sean extrajudiciales o Judiciales.

**CLAUSULA VIGÉSIMO PRIMERA: FIRMAS Y RECEPCION DE INSTRUMENTOS.-**
Se firman 4 (cuatro) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 1 juego en poder del ACREEDOR, 1 Juego en poder de la DEUDORA, 1 Juego en poder de la FIADORA SOLIDARIA y 1 Juego en poder de los FIADORES SOLIDARIOS.
**CLAUSULA VIGÉSIMO SEGUNDA: CONFIDENCIALIDAD.-**

Las partes convienen de manera expresa mantener la confidencialidad relacionada con el objeto del presente **Contrato Marco de Préstamo**. Además ambas partes se comprometen a no divulgar cualquier "know how" o secretos comerciales o industriales que uno respecto del otro llegare a conocer. De igual forma las partes mantendrán confidencialidad respecto de los datos e información relativa a los "Clientes Cedidos", siendo extensiva esta obligación a los eventuales sucesores en el derecho del ACREEDOR.

CLAUSULA VIGÉSIMO TERCERA: LUGAR Y FECHA DE SUSCRIPCIÓN DEL PRESENTE CONTRATO MARCO DE PRÉSTAMO.-

Para constancia de lo acordado, la compañía **REPRESENTACIONES SALDANA S.A**, por intermedio de su APODERADO GENERAL, la compañía **INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL"**, por intermedio de su GERENTE y REPRESENTANTE LEGAL, y los señores **ANGEL MOISES AGUDO VALLE** y **RODRIGO DEL JESUS AGUDO VALLE**, suscriben el presente **Contrato Marco de Préstamo** en la ciudad de Manta, República del Ecuador, a los 19 días del mes de Junio del 2014; declarando que aceptan que el presente instrumento quede perfeccionado con la suscripción que del mismo hará en el cantón Guayaquil-Ecuador, la Abogada Cecilia Sierra Morán, Apoderada Especial de IIG TOF B.V..

**ACEPTACIÓN:** En señal de conformidad con todo lo pactado en este instrumento, la compañía IIG TOF B.V., por intermedio de su Apoderada Especial, la Abogada Cecilia Sierra Morán, suscribe este Contrato Marco de Préstamo en Guayaquil-Ecuador, a los 19 días del mes de Junio del 2014.

ACREEDOR
p. IIG TOF B.V.

AB. CECILIA SIERRA MORÁN
APODERADA ESPECIAL
PASAPORTE # 0915381644

LA DEUDORA
p. REPRESENTACIONES SALDANA S.A

SR. RODRIGO DEL JESÚS AGUDO VALLE
C.C. 1304422833

FIADORA SOLIDARIA
p. INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL"

RODRIGO DEL JESUS AGUDO VALLE
GERENTE
C.C. 1304422833

FIADORES SOLIDARIOS

ANGEL MOISES AGUDO VALLE
C.C. 1303174724

RODRIGO DEL JESUS AGUDO VALLE
C.C. 1304422833



Factura: 001-101-000045021



20180901014D01068

**DILIGENCIA DE RECONOCIMIENTO DE FIRMAS Nº 20180901014D01068**

Ante mí, NOTARIO(A) ANDREA STEPHANY CHAVEZ ABRIL de la NOTARÍA DÉCIMA CUARTA , comparece(n) CECILIA DEL CARMEN SIERRA MORAN portador(a) de CÉDULA 0915381644 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil SOLTERO(A), domiciliado(a) en GUAYAQUIL, REPRESENTANDO A LA COMPAÑÍA IIG TOF B.V., EN SU CALIDAD DE APODERADA ESPECIAL en calidad de ACREEDOR(A); CECILIA DEL CARMEN SIERRA MORAN portador(a) de CÉDULA 0915381644 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil SOLTERO(A), domiciliado(a) en GUAYAQUIL, REPRESENTANDO A EL FIDEICOMISO TRADE FINANCE TRUST; en calidad de APODERADO(A) ESPECIAL; JUAN DIEGO AGUDO OCHOA portador(a) de CÉDULA 1308660966 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil CASADO(A), domiciliado(a) en MANTA, POR SUS PROPIOS DERECHOS en calidad de FIADOR(A); INES OCHOA SANTOS portador(a) de CÉDULA 1303199572 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil VIUDO(A), domiciliado(a) en MANTA, POR SUS PROPIOS DERECHOS en calidad de FIADOR(A); RODRIGO DEL JESUS AGUDO VALLE portador(a) de CÉDULA 1304422833 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil CASADO(A), domiciliado(a) en MANTA, REPRESENTANDO A REPRESENTACIONES SALDANA S.A., EN CALIDAD DE APODERADO GENERAL; en calidad de DEUDOR(A) PRINCIPAL; RODRIGO DEL JESUS AGUDO VALLE portador(a) de CÉDULA 1304422833 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil CASADO(A), domiciliado(a) en MANTA, REPRESENTANDO A INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL", EN SU CALIDAD DE GERENTE en calidad de FIADOR(A); RODRIGO DEL JESUS AGUDO VALLE portador(a) de CÉDULA 1304422833 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil CASADO(A), domiciliado(a) en MANTA, POR SUS PROPIOS DERECHOS en calidad de FIADOR(A); MIGUEL ANGEL AGUDO OCHOA portador(a) de CÉDULA 1309846192 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil DIVORCIADO(A), domiciliado(a) en MANTA, POR SUS PROPIOS DERECHOS en calidad de FIADOR(A); JOSE DAVID AGUDO OCHOA portador(a) de CÉDULA 1307200848 de nacionalidad ECUATORIANA, mayor(es) de edad, estado civil SOLTERO(A), domiciliado(a) en MANTA, POR SUS PROPIOS DERECHOS en calidad de FIADOR(A); quien(es) declara(n) que la(s) firma(s) constante(s) en el documento que antecede ADENDA A UN CONTRATO MARCO DE PRÉSTAMO, es(son) suya(s), la(s) misma(s) que usa(n) en todos sus actos públicos y privados, siendo en consecuencia auténtica(s), para constancia firma(n) conmigo en unidad de acto, de todo lo cual doy fe. La presente diligencia se realiza en ejercicio de la atribución que me confiere el numeral noveno del artículo dieciocho de la Ley Notarial -. El presente reconocimiento no se refiere al contenido del documento que antecede, sobre cuyo texto esta Notaria, no asume responsabilidad alguna. – Se archiva un original. GUAYAQUIL, a 2 DE ABRIL DEL 2018, (15:24).

CECILIA DEL CARMEN SIERRA MORAN
CÉDULA: 0915381644

JUAN DIEGO AGUDO OCHOA
CÉDULA: 1308660966

INES OCHOA SANTOS
CÉDULA: 1303199572

RODRIGO DEL JESUS AGUDO VALLE
CÉDULA: 1304422833

MIGUEL ANGEL AGUDO OCHOA
CÉDULA: 1309846192

JOSE DAVID AGUDO OCHOA
CÉDULA: 1307200848

NOTARIO(A) ANDREA STEPHANY CHAVEZ ABRIL

NOTARÍA DÉCIMA CUARTA DEL CANTÓN GUAYAQUIL



ESPACIO EN BLANCO

ESPACIO EN BLANCO

### ADENDA A UN CONTRATO MARCO DE PRESTAMO

Conste por el presente documento una Adenda a un contrato de Marco de Préstamo, contenida al tenor de las siguientes cláusulas y declaraciones:

**CLAUSULA PRIMERA: OTORGANTES.-** Comparecen a la celebración y otorgamiento del presente contrato, las siguientes personas:

a) La compañía **IIG TOF B.V.,** institución financiera incorporada bajo las leyes de Amsterdan, Países Bajos, domiciliada en Telestone 8 – Teleport, Naritaweg 165, P.O.Box 7241, 1007 JE, Amsterdam, The Netherlands, debidamente representada por la Abogada Cecilia Sierra Morán, en calidad de Apoderada Especial, parte que para los efectos del presente contrato se denominará simplemente como" **EL ACREEDOR";**

b) La compañía **REPRESENTACIONES SALDANA S.A.,** con domicilio en Trump Ocean Club Office Tower 215 de la ciudad de Panamá, República de Panamá, debidamente representada por su Apoderado General, señor Rodrigo del Jesús Agudo Valle, parte que para los efectos del presente contrato se denominará simplemente como **"LA DEUDORA";**

c) La compañía **INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL",** con domicilio en el kilómetro ocho y medio de la vía Manta – Montecristi, cantón Montecristi, provincia de Manabí – Ecuador, representada en este acto por su Gerente y Representante Legal, señor Rodrigo del Jesús Agudo Valle, a quien se denominará como **"LA FIADORA SOLIDARIA";** y,

d) Finalmente, los señores **JOSE DAVID AGUDO OCHOA, JUAN DIEGO AGUDO OCHOA, MIGUEL ANGEL AGUDO OCHOA E INES OCHOA SANTOS,** por sus propios y personales derechos, en calidad de Herederos del señor **ANGEL MOISES AGUDO VALLE,** con domicilio en Ciudadela Manta 2000, cantón Manta, República del Ecuador, y el señor **RODRIGO DEL JESUS AGUDO VALLE,** por sus propios y personales derechos, con domicilio en Condominio Peñón del Mar vía Barbasquillo, cantón Manta, República del Ecuador, parte a la que en adelante se denominará simplemente como **"LOS FIADORES SOLIDARIOS".**

Tanto a INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL" como a los señores JOSE DAVID AGUDO OCHOA, JUAN DIEGO AGUDO OCHOA, MIGUEL ANGEL AGUDO OCHOA E INES OCHOA SANTOS en calidad de Herederos del señor ANGEL MOISES AGUDO VALLE, así como al señor RODRIGO DEL JESUS AGUDO VALLE, se les podrá denominar indistintamente como "LOS FIADORES SOLIDARIOS".

Además comparece el Fideicomiso **TRADE FINANCE TRUST**, entidad no financiera incorporada bajo las leyes del Estado de Delaware, de los Estados Unidos de América, domiciliada en 1011 Centre Road, Suite 200 Wilmington, Delaware 19805, debidamente representada por la Abogada Cecilia Sierra Morán, en calidad de Apoderada Especial, con el propósito de efectuar las declaraciones que más adelante se expresan.

LAS PARTES convienen en celebrar la presente adenda al contrato marco de préstamo, que en adelante se la denominara como **"ADENDA AL CONTRATO MARCO DE PRESTAMO"**.

**CLAUSULA SEGUNDA: ANTECEDENTES.-**

**2.1.)** Según consta del Contrato Marco de Préstamo, suscrito con fecha 19 de Junio del 2014, por las mismas personas detalladas en las letras a), b), c) y d) de la Cláusula Primera del presente instrumento, EL ACREEDOR aprobó una línea de crédito hasta por la suma de US$5'000.000,00 (CINCO MILLONES 00/100 DE DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA), con un interés que corresponde a la tasa LIBOR más un margen del 5% o la tasa mínima del 9% anual.

**2.2.)** De igual manera, con fecha 20 de Febrero del 2015, las mismas personas detalladas en las letras a), b), c) y d) de la Cláusula Primera del presente instrumento, suscribieron una Adenda a un Contrato Marco de Préstamo suscrito con fecha 19 de Junio del 2014, por las mismas personas detalladas en las letras a), b), c) y d) de la Cláusula Primera del presente instrumento, con el propósito de que EL ACREEDOR incremente la línea de crédito contratada hasta por la suma total de US$10'000.000,00 (DIEZ MILLONES 00/100 DE DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA), con un interés que corresponde a la tasa LIBOR más un margen del 5% o la tasa mínima del 9% anual.

**2.3.)** Las partes han resuelto reformar nuevamente el Contrato Marco de Préstamo mencionado en el numeral 2.1. de la presente cláusula, a través de la suscripción de la presente adenda, con ocasión de la subrogación convencional de acreencias que mantenía por cobrar IIG TOF B.V. a LA DEUDORA y a LOS FIADORES SOLIDARIOS realizada a favor de TRADE FINANCE TRUST, quedando subrogado convencionalmente el anterior acreedor, esto es, IIG TOF B.V., respecto del crédito principal y demás accesorios que mantenía respecto de LA DEUDORA y de LOS FIADORES SOLIDARIOS, por el nuevo acreedor, esto es, el Fideicomiso TRADE FINANCE TRUST.

**CLAUSULA TERCERA: OBJETO.-** Con los antecedentes expuestos, las partes que suscriben la presente adenda, a través de las interpuestas personas de sus Representantes Legales y Apoderados respectivamente, en forma libre

y voluntaria, convienen en reformar el Contrato Marco de Préstamo, a través de la suscripción de la presente adenda, con ocasión de la subrogación convencional de acreencias que mantenía por cobrar IIG TOF B.V. a LA DEUDORA y a LOS FIADORES SOLIDARIOS, realizada a favor de TRADE FINANCE TRUST, para lo cual las partes aceptan sustituir a IIG TOF B.V., anterior acreedor respecto del crédito principal y demás accesorios que mantenía respecto de LA DEUDORA y de LOS FIADORES SOLIDARIOS, por el nuevo acreedor, esto es, el Fideicomiso TRADE FINANCE TRUST, dentro del Contrato Marco de Préstamo suscrito con fecha 19 de Junio del 2014, referido en el numeral 2.1 de la Cláusula Segunda del presente contrato, declarando de manera formal y expresa, someterse en su calidad de nuevo Acreedor, a todos los términos y condiciones establecidas en dicho Contrato Marco de Préstamo.

La sustitución de la calidad de Acreedor, no implica de manera alguna ni terminación ni reforma a las instrucciones y condiciones del Contrato Marco de Préstamo suscrito con fecha 19 de Junio del 2014, referido en el numeral 2.1 de la Cláusula Segunda del presente contrato, pues se la realiza con sujeción a las estipulaciones contractuales y durante la vigencia del referido Contrato.

Así mismo, las partes acuerdan reemplazar el nombre de IIG TOF B.V., en calidad de Acreedor dentro del Contrato Marco de Préstamo suscrito con fecha 19 de Junio del 2014, referido en el numeral 2.1 de la Cláusula Segunda del presente contrato, por el del Fideicomiso TRADE FINANCE TRUST, el mismo que se sustituye en la misma calidad, como Acreedor, por lo que se modifican todas las referencias y cláusulas que aludan a IIG TOF B.V., referencias que, a partir de la suscripción del presente instrumento, se deberán reemplazar por el Fideicomiso TRADE FINANCE TRUST.

**CLÁUSULA CUARTA: DECLARACIONES.-** Las partes dejan expresa y señalada constancia que las predichas declaraciones que constan en el presente instrumento reproducen fielmente la voluntad de ellas y que consecuentemente, desconocen el valor de cualquier otro documento privado y/o público que de alguna manera modifique o altere lo convenido en el presente contrato, documentos estos que de existir no surtirán efecto alguno entre las partes ni respecto de terceros.

Para constancia de lo acordado, la compañía **REPRESENTACIONES SALDANA S.A.**, por intermedio de su Apoderado General, la compañía **INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL"**, por intermedio de su Gerente; así como los señores **JOSE DAVID AGUDO OCHOA, JUAN DIEGO AGUDO OCHOA, MIGUEL ANGEL AGUDO OCHOA E INES OCHOA SANTOS,** Herederos del señor **ANGEL MOISES AGUDO VALLE,** así como el señor **RODRIGO DEL JESUS AGUDO VALLE** suscriben la presente Adenda a un Contrato Marco de Préstamo en la ciudad de Guayaquil, a los 16 días

del mes de Enero del 2018; declarando que aceptan que el presente instrumento quede perfeccionado con la suscripción que del mismo hará en el cantón Guayaquil-Ecuador, la Abogada Cecilia Sierra Morán, Apoderada Especial de **IIG TOF B.V.** y del Fideicomiso **TRADE FINANCE TRUST** respectivamente.

**ACEPTACIÓN:** En señal de conformidad con todo lo pactado en este instrumento, **IIG TOF B.V.** y el Fideicomiso **TRADE FINANCE TRUST**, por intermedio de su Apoderada Especial, la Abogada Cecilia Sierra Morán respectivamente, suscriben esta Adenda a un Contrato Marco de Préstamo en Guayaquil-Ecuador, a los 16 días del mes de Enero del 2018.

**ACREEDOR**
**p. IIG TOF B.V.**

**AB. CECILIA SIERRA MORÁN**
**APODERADA ESPECIAL**
**Pasaporte # 0915381644**

**LA DEUDORA**
**p. REPRESENTACIONES SALDANA S.A.**

**RODRIGO DEL JESÚS AGUDO VALLE**
**APODERADO GENERAL**
**Pasaporte # 1304422833**

**LA FIADORA SOLIDARIA**
**p. INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL"**

**RODRIGO DEL JESÚS AGUDO VALLE**
**GERENTE**
**Pasaporte # 1304422833**

**LOS FIADORES SOLIDARIOS**

**JOSE DAVID AGUDO OCHOA**
**Pasaporte # 130720084-8**

**JUAN DIEGO AGUDO OCHOA**
**Pasaporte # 130866096-6**

**MIGUEL ANGEL AGUDO OCHOA**
**Pasaporte #130984619-2**

**RODRIGO DEL JESUS AGUDO VALLE**
**Pasaporte # 1304422833**

**INES OCHOA SANTOS**
**Pasaporte #130319957-2**

p. TRADE FINANCE TRUST

**AB. CECILIA SIERRA MORÁN**
**APODERADA ESPECIAL**
**Pasaporte # 0915381644**



PAGINA EN BLANCO

# *Apostille*

(Convention de La Haye du 5 Octobre 1961)

1.   Country:     United States of America

     This public document

2.   has been signed by **Milton Adair Tingling**

3.   acting in the capacity of **County Clerk**

4.   bears the seal/stamp of the **county of New York**

Certified

5.   at New York City, New York              6.   the 21st day of April 2017

7.   by Special Deputy Secretary of State, State of New York

8.   No. NYC-779586

9.   Seal/Stamp                              10.  Signature



*Whitney A. Clark*
_____
Whitney A. Clark
Special Deputy Secretary of State

Apostille (REV: 09/25/12)

## PODER ESPECIAL

Conste por el presente que **TRADE FINANCE TRUST, representado por su Administrador IIG TRADE FINANCE LLC., el mismo que a su vez se encuentra representado por el señor Michael Shore (en adelante "TRADE FINANCE TRUST"),** entidad no financiera incorporada bajo las leyes del Estado de Delaware, de los Estados Unidos de América, domiciliada en 1011 Centre Road, Suite 200 Wilmington, Delaware 19805, constituye y designa a Cecilia Sierra Morán, como su apoderada legal, en su nombre y en su representación, con poder amplio y autoridad suficiente para ejecutar únicamente lo siguiente:

1.      Para suscribir la ADENDA AL CONTRATO MARCO DE PRESTAMO suscrito con fecha 19 de Junio del 2014, en calidad de nuevo ACREEDOR, con las compañías REPRESENTACIONES SALDANA S.A., INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL" e IIG TOF B.V. y con los señores ANGEL MOISES AGUDO VALLE y RODRIGO DEL JESUS AGUDO VALLE, mediante el cual TRADE FINANCE TRUST sustituye a IIG TOF B.V., anterior acreedor respecto del crédito principal y demás accesorios que mantenía respecto de REPRESENTACIONES SALDANA S.A., INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL" y los señores ANGEL MOISES AGUDO VALLE y RODRIGO DEL JESUS AGUDO VALLE, dentro del Contrato Marco de Préstamo suscrito con fecha 19 de Junio del 2014, declarando de manera formal y expresa, someterse en su calidad de nuevo Acreedor, a todos los términos y condiciones establecidas en dicho Contrato Marco de Préstamo y sus correspondientes adendas.

2.      Para suscribir la escritura pública de Reforma del contrato de constitución del "FIDEICOMISO DE GARANTÍA IDEAL - IIG TOF B.V.", relacionada con el cambio de denominación y de Beneficiaria Principal del referido Contrato de Fideicomiso, por medio de la cual se constituyó una garantía irrevocable respecto de Inventarios consistentes en materia prima de pescado natural (atún) y/o los derechos derivados de dicho producto, producto en proceso y producto terminado del mismo, en sus diferentes presentaciones, lomos de atún, envasado, conservación de pescado mediante cocción en salsas, desecación, ahumado, saladura o enlatado , empacado en funda pouch como conserva así como conserva de sardina en salsas o al natural, denominado "FIDEICOMISO DE GARANTÍA IDEAL - IIG TOF B.V.", otorgada por INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL", en calidad de Constituyente, e IIG TOF B.V., en calidad de Beneficiaria Principal, con el propósito de aportar los BIENES ahí descritos en garantía de las obligaciones de crédito de REPRESENTACIONES SALDANA S.A. a favor de IIG TOF B.V., considerando que, en caso de incumplimiento de LA DEUDORA, el ACREEDOR tiene el derecho de solicitar la ejecución de la garantía, según los términos y condiciones aprobados por IIG TOF B.V.. Dicha reforma contendría principalmente la nueva denominación del Fideicomiso, que

sería "FIDEICOMISO DE GARANTÍA IDEAL - TRADE FINANCE TRUST" y la nueva benefiaria del referido Fideicomiso Mercantil que sería TRADE FINANCE TRUST en calidad de Acreedora y Beneficiaria Principal.

3. Para ejecutar y realizar todos los demás actos, contratos y requisitos necesarios en relación a las actuaciones señaladas en los numerales 1 y 2 arriba citados, incluyendo la suscripción de un contrato de reforma o constitución del encargo fiduciario denominado  ENCARGO FIDUCIARIO IDEAL – TRADE FINANCE TRUST cuya finalidad consistiría en que las MERCADERÍAS que sean restituidas por el FIDEICOMISO DE GARANTÍA IDEAL - TRADE FINANCE TRUST (antes "FIDEICOMISO DE GARANTÍA IDEAL - IIG TOF B.V.") a favor de INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL", se encuentren controladas hasta culminar con el proceso de exportación; de manera completa y suficiente en concordancia con los propósitos de TRADE FINANCE TRUST gozando de igual validez como si cada acto ejecutado hubiese estado específicamente detallado, expresado, y especialmente autorizado en este documento, y por la presente confirma y ratifica que Cecilia Sierra Morán deberá realizarlos o precautelar que se realicen en virtud de los poderes y autorizaciones aquí contenidas.

Sin perjuicio de lo anterior, TRADE FINANCE TRUST será quien determine, a su sola discreción, las decisiones de cualquier transacción en el Ecuador.

Para evitar dudas, este poder se limita de manera exclusiva a la transacción descrita en párrafos anteriores, por medio de la presente TRADE FINANCE TRUST ratifica y confirma como suyos, todos los actos y contratos que Cecilia Sierra Morán suscriba o autorice en virtud de este instrumento.

PARA CONSTANCIA DE LO CUAL, TRADE FINANCE TRUST suscribe este PODER, a los 21 días del mes de Abril de 2017.


TRADE FINANCE TRUST, entidad no financiera incorporada bajo las leyes del Estado de Delaware.

Por: IIG TRADE FINANCE LLC., como Administrador


Nombre: Michael Shore

Cargo: Firma autorizada

Form 1

State of New York } ss:
County of New York }

No. 318788

I, **Milton Adair Tingling**, Clerk of the County of New York, and Clerk of the Supreme Court in and for said county, the same being a court of record having a seal, **DO HEREBY CERTIFY THAT**

**RAFAELINA R. POLANCO**

whose name is subscribed to the annexed original instrument has been commissioned and qualified as a NOTARY PUBLIC ...........................................
and has filed his/her original signature in this office and that he/she was at the time of taking such proof or acknowledgment or oath duly authorized by the laws of the State of New York to take the same; that he/she is well acquainted with the handwriting of such public officer or has compared the signature on the certificate of proof or acknowledgment or oath with the original signature filed in his/her office by such public officer and he/she believes that the signature on the original instrument is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and my official seal this 21st day of April, 2017

_Milton Adair Tingling_
County Clerk, New York County

ly
ry
ed
he



**Acknowledgment**

State of New York    )

                     ) ss.:

County of New York   )


On this 21st day of April in the year 2017, before me, the undersigned notary public, personally appeared Michael Shore, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_Rafaelina R. Polanco_
NOTARY PUBLIC

RAFAELINA R. POLANCO
Notary Public, State of New York
NO: 01P04780913
Qualified in New York County
Commission Expires: June 30, 2019





**PODER ESPECIAL**



Conste por el presente que **IIG TOF B.V. representada por Trust International Management (T.I.M.) B.V. (en adelante "IIG TOF B.V."),** una sociedad incorporada bajo las leyes de Amsterdan, Países Bajos, domiciliada en Telestone 8 –Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands, debidamente representada por, Jasper van Rossum y Hinna Nasim, en su calidad de representantes autorizados, constituye y designa a Cecilia Sierra Morán, como su apoderada legal, en su nombre y en su representación, con poder amplio y autoridad suficiente para ejecutar únicamente lo siguiente:

1.      Para suscribir el CONTRATO MARCO DE PRESTAMO, en calidad de ACREEDOR, con la compañía REPRESENTACIONES SALDANA S.A., con domicilio en Trump Ocean Club Office Tower 215 de la ciudad de Panamá, República de Panamá, en calidad de "LA DEUDORA", mediante el cual IIG TOF B.V. ha aprobado una Línea de Crédito a favor de REPRESENTACIONES SALDANA S.A., hasta por la suma de US$5'000.000,00 (Cinco millones 00/100 Dólares de los Estados Unidos de América);

2.      Para suscribir la escritura pública de Contrato de Fideicomiso, por medio de la cual se constituye una garantía irrevocable respecto de Inventarios de materia prima ·de pescado natural (atún) y/o los derechos derivados de dicho producto, producto en proceso y producto terminado del mismo, en sus diferentes presentaciones, lomos de atún, envasado, conservación de pescado mediante cocción en salsas, desecación, ahumado, saladura o enlatado, empacado en funda pouch como conserva así como conserva de sardina en salsas o al natural, denominado "FIDEICOMISO DE GARANTÍA IDEAL - IIG TOF B.V.", otorgada por INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL", en calidad de Constituyente, y la compañía IIG TOF B.V., en calidad de Beneficiaria Principal, con el propósito de aportar los BIENES ahí descritos en garantía de las obligaciones de crédito de REPRESENTACIONES SALDANA S.A. a favor de IIG TOF B.V., considerando que, en caso de incumplimiento de LA DEUDORA, el ACREEDOR tiene el derecho de solicitar la ejecución de la garantía, según los términos y condiciones aprobados por IIG TOF B.V.; y,

3.      Para ejecutar y realizar todos los demás actos, contratos y requisitos necesarios en relación a las actuaciones señaladas en los numerales 1 y 2 arriba citados, incluyendo la suscripción de un contrato de encargo fiduciario a denominarse ENCARGO FIDUCIARIO IDEAL - IIG TOF B.V., cuya finalidad consiste en que las MERCADERÍAS que sean restituidas por el "FIDEICOMISO DE GARANTÍA IDEAL - IIG TOF B.V." a INDUSTRIA DE ENLATADOS ALIMENTICIOS CIA. LTDA. "IDEAL", se

encuentren controladas hasta culminar con el proceso de exportación; de manera completa y suficiente en concordancia con los propósitos de la compañía IIG TOF B.V., gozando de igual validez como si cada acto ejecutado hubiese estado específicamente detallado, expresado, y especialmente autorizado en este documento, y por la presente confirma y ratifica que Cecilia Sierra Morán deberá realizarlos o precautelar que se realicen en virtud de los poderes y autorizaciones aquí contenidas.

Sin perjuicio de lo anterior IIG TOF B.V., será quien determine, a su sola discreción, las decisiones de cualquier transacción en el Ecuador.

Para evitar dudas, este poder se limita de manera exclusiva a la transacción descrita en párrafos anteriores, por medio de la presente la compañía IIG TOF B.V. ratifica y confirma como suyos, todos los actos y contratos que Cecilia Sierra Morán suscriba o autorice en virtud de este instrumento.

PARA CONSTANCIA DE LO CUAL, la compañía IIG TOF B.V. suscribe este PODER, a los 17 días del mes de Junio de 2014.

Por: IIG TOF B.V. representada por Trust International Management (T.I.M.) B.V.

Nombre: Jasper van Rossum

Cargo: Attorney-in fact A

Nombre: Hinna Nasim

Cargo: Attorney – in- fact B

Visto por mi, Petrus Leopoldus Elisa Maurice de Meijer, notario de Amsterdam, para legalizar la firma de don Jasper Otto Johan VAN ROSSUM, nacido en Oss, Los Países Bajos, el 12 de diciembre 1972, y de doña Koumal Hinna NASIM, nacida en Daska, Pakistán, el 23 de febrero 1977, en su calidad de firmar ambos para Trust International Management (T.I.M.) B.V., con domicilio en Amsterdam, esta sociedad limitada actuando en su calidad de administrador de y autorizado a firmar por IIG TOF B.V., sociedad limitada con domicilio en Amsterdam, y con domicilio social en Naritaweg 165, código postal 1043 BW Amsterdam.

Amsterdam, 18 de Junio de 2014 .



**APOSTILLE**

Convention de La Haye du 5 octobre 1961

1. Country: THE NETHERLANDS
   This public document
2. Has been signed by: mr. P.L.E.M. de Meijer
3. Acting in the capacity of: civil law notary in
   Amsterdam
4. Bears the seal/stamp of:
   mr. P.L.E.M. de Meijer
   Certified
5. At Amsterdam
6. On 18 juni 2014
7. By the clerk of the Court of Amsterdam
8. No:
9. Seal/Stamp:  26131   10. Signature
   dhr J. Hoogeveen







# REPÚBLICA DE PANAMÁ

## NOTARIA OCTAVA DEL CIRCUITO

### PROVINCIA DE PANAMÁ

*Lic. Agustín Pitty Arosemena*

#### NOTARIO - PRIMER SUPLENTE

Edificio Plaza Obarrio
Oficina 108
Ave. Samuel Lewis
Urb. Obarrio
Apartado 0819-11164
El Dorado

Tels.: 264-6220
264-3670
213-8028
Fax: 264-3506

COPIA
ESCRITURA N° _____ 8,642 _____ DE 18 ____ DE ___ Junio ___ DE ____ 2013 ____

POR LA CUAL:   se protocoliza el documento que contiene Acta de
una Reunión de la Junta Directiva de la sociedad
**REPRESENTACIONES SALDANA S.A.**, celebrada
el 18 de junio de 2013, por la cual se otorga Poder
General a favor del Sr. **RODRIGO DEL JESUS
AGUDO VALLE.**

José Silva
MORGAN & MORGAN
Cédula 8-225-1020



AB. ANDREA CHÁVEZ ABRIL
NOTARIA 14 CANTÓN GUAYAQUIL

**REPUBLICA DE PANAMA**
PAPEL NOTARIAL





REPÚBLICA DE PANAMÁ
Timbre Nacional
Timbres que correspondan al presente
documento, son pagados por declaración
jurada según Resolución de la DGI N° 201-2340
de 27 octubre de 2004.
19/6/13    B/.8.00
0808542190613000001464737

NOTARIA OCTAVA DEL CIRCUITO DE PANAMA

ESCRITURA PUBLICA NUMERO OCHO MIL SEISCIENTOS CUARENTA Y DOS----------

----------------------------(8,642)------------------------------------ng--

Por la cual se protocoliza el documento que contiene Acta de una Reunión de la Junta

Directiva de la sociedad **REPRESENTACIONES SALDANA S.A.**, celebrada el 18 de junio

de 2013, por la cual se otorga Poder General a favor del **Sr. RODRIGO DEL JESUS**

**AGUDO VALLE.**------------------------------------------------------------------

----------------------Panamá, 18 de junio de 2013.--------------------------------

En la Ciudad de Panamá, Capital de la República y Cabecera del Circuito Notarial del

mismo nombre, a los dieciocho (18) días del mes de junio del año dos mil trece (2013),

ante mí, Licenciado AGUSTIN PITTY AROSEMENA, Notario Público Octavo Primer

Suplente del Circuito de Panamá, con cédula de identidad personal número cuatro-

ciento cuarenta y ocho -setecientos sesenta y ocho (4-148-768), compareció

personalmente, NESTOR JAVIER BROCE JAEN, varón, mayor de edad, abogado,

soltero, panameño, vecino de esta ciudad, con cédula de identidad personal número

ocho-setecientos dieciséis- doscientos veintiuno (8-716-221), persona a quien conozco y

que actuando en nombre de la firma forense MORGAN Y MORGAN, con domicilio en

Calle cincuenta y tres E (53E), Urbanización Marbella, MMG Tower, Piso dieciséis (16),

Panamá, República de Panamá, en su calidad de Agente Residente y debidamente

autorizado por la Junta Directiva de la sociedad **REPRESENTACIONES SALDANA S.A.**,

sociedad anónima debidamente inscrita en la Sección Mercantil del Registro Público a

la Ficha cuatro cinco siete ocho cinco cinco (457855), me presentó para su

protocolización y en efecto protocolizo Acta de la reunión de la Junta Directiva de la

sociedad **REPRESENTACIONES SALDANA S.A.**, celebrada el dieciocho (18) de junio de

dos mil trece (2013), por la cual se otorga un Poder General a favor del **Sr. RODRIGO**

**DEL JESUS AGUDO VALLE.**-------------------------------------------------------

Dicho documento consta de dos (2) hojas escritas a máquina y su contenido se

transcribe en la copia de esta Escritura.---------------------------------------------

Queda hecha la protocolización solicitada y se expedirán las copias que soliciten los

interesados.------------------------------------------------------------------------

Leído como le fue este instrumento al compareciente en presencia de los testigos

instrumentales SELIDETH DE LEON, mujer, con cédula de identidad personal número

seis-cincuenta y nueve-ciento cuarenta y siete (6-59-147), y JACINTO HIDALGO

FIGUEROA, varón, con cédula de identidad personal número dos-sesenta y cuatro-

seiscientos cincuenta y seis (2-64-656), ambos mayores de edad, panameños y vecinos

de esta ciudad, a quienes conozco y son hábiles para ejercer el cargo lo encontraron

conforme, le impartieron su aprobación y firman todos para constancia ante mí, el

Notario que doy fe.----------------------------------------------------------------

**ESTA ESCRITURA LLEVA EL NUMERO OCHO MIL SEISCIENTOS CUARENTA Y DOS-----**

---------------------------------**(8,642)**----------------------------------

(Fdo.) Néstor Broce------------Selideth De León---------Jacinto Hidalgo Figueroa------------

AGUSTIN PITTY AROSEMENA, Notario Público Octavo Primer Suplente del Circuito de

Panamá.-------------------------------------------------------------------------

-------------ACTA DE UNA REUNION DE LA JUNTA DIRECTIVA DE LA SOCIEDAD--------

-------------------------------**REPRESENTACIONES SALDANA S.A.**------------------

En-la Ciudad de Panamá, República de Panamá, el 18 de junio de 2013, se celebró una

reunión de la Junta Directiva de **REPRESENTACIONES SALDANA S.A.,** en las oficinas

principales de dicha sociedad, en la cual hubo en todo momento quórum presente y

activo, previo aviso de convocatoria.-------------------------------------------

Estuvieron presentes la mayoría de los Directores de la sociedad a saber: JOSE E.

SILVA y MARTA DE SAAVEDRA.---------------------------------------------------

El Sr. JOSE E. SILVA, Presidente de la sociedad, presidió la reunión y la Sra. MARTA

DE SAAVEDRA, actuó como Secretaria de la reunión, debido al fallecimiento de la

titular del cargo.----------------------------------------------------------------

El Presidente de la sociedad abrió la reunión y explicó que el objeto de la misma era

otorgar un Poder General a una persona escogida por la Junta Directiva para que actúe

en nombre de la sociedad, con las facultades que la Junta apruebe.------------------

Después de lo cual y tras un cruce de ideas a moción hecha y secundada, se aprobó por

unanimidad lo siguiente:----------------------**SE RESUELVE;**---------------------

Que por este medio sea y es otorgado un Poder General tan amplio como legalmente

fuera necesario a favor del **Sr. RODRIGO DEL JESUS AGUDO VALLE,** con pasaporte





**REPÚBLICA DE PANAMÁ**
PAPEL NOTARIAL



NOTARÍA OCTAVA DEL CIRCUITO DE PANAMÁ

No. 1304422833, para que pueda comprometer a la sociedad individualmente, con facultades generalísimas las cuales para propósitos meramente enunciativos y no limitativos de este Poder General se detallan como sigue: para comprar, enajenar, a título de venta, permuta u otro título, arrendar, dar en prenda, hipotecar y gravar en cualquier forma los bienes muebles o inmuebles, corpóreos o incorpóreos de la sociedad; para recibir, endosar, cobrar, depositar, transferir cheques, órdenes de pago y cualquier otro documento negociable a su favor; para la apertura y cierre de toda clase de cuentas bancarias; para girar contra la cuentas y depósitos bancarios de la sociedad, sean éstas corrientes o de ahorros, de sobregiro o de cualquier otra modalidad, tanto en la República de Panamá, como en el extranjero; firmar contratos de préstamos, otorgar pagarés, firmar letras de cambio como girador, aceptante, endosante o avalista; aceptar obligaciones, sean comerciales o civiles; para representar a la sociedad, tanto en los actos de disposición y administración como en todas las gestiones y actuaciones en que sea interesada y en sociedades regulares o accidentales; para comprar acciones o participaciones de sociedades de cualquier naturaleza; tomar parte en asambleas o juntas tomando cualesquiera clases de acuerdos, incluso los de constitución, transformación, ampliación de capital y disolución de sociedades; para que asuma la representación jurídica o procesal de la sociedad como demandante o demandada, tercerista, simple interesada o en cualquier otro carácter, ante cualesquiera autoridades de la República de Panamá o del extranjero, sean éstas judiciales, administrativas, laborales o de otra naturaleza; para suscribir documentos en que la sociedad sea parte como deudora o acreedora; y para transigir los conflictos en que la sociedad se vea envuelta; para celebrar compromisos arbitrales o de cualquier otra clase, y, en fin, para que lleve a cabo cualquier acto o celebre cualquier contrato que sea considerado conveniente a los intereses de la sociedad **REPRESENTACIONES SALDANA S.A.**, pues es la intención de este Poder General que sea ejercido sin limitaciones de ninguna clase, en cuanto a las facultades antes mencionadas.-- **Se prohíbe sustituir este Poder General total o parcialmente.**-

Se hace constar que este Poder General podrá ser ejercido dentro del territorio de la República de Panamá o en el extranjero.------------------------------------------------

Se resolvió además facultar a la firma forense MORGAN Y MORGAN

protocolice una copia del Acta de la presente Reunión de la Junta Directiva

Sin más que tratar, se dio por terminada la sesión.----------------------------

(Fdo.) José E. Silva, Presidente-------(Fdo.) Marta de Saavedra, Secretaria de la reunión -

**CERTIFICADO:** Yo, Marta de Saavedra, Secretaria de la reunión **REPRESENTACIONES**

**SALDANA S.A.,** certifico que lo anterior es copia auténtica de su original.----------------

(Fdo.) Marta de Saavedra, Secretaria de la reunión.--------------------------------------

Acta refrendada por la firma forense Morgan y Morgan.---------(Fdo.) Néstor Broce.--------

--MINUTES OF A MEETING OF THE BOARD OF DIRECTORS OF THE CORPORATION -

-------------------------**REPRESENTACIONES SALDANA S.A.**-------------------------------

In the City of Panama, Republic of Panama, on June 18, 2013, a Meeting of the Board

of Directors of **REPRESENTACIONES SALDANA S.A.**, was held in the principal offices

of said corporation, wherein a quorum was at all time present and active, prior notice of

the meeting ------------------------------------------------------------------------------

There were present the majority of the Directors of the corporation to wit: JOSE E.

SILVA and MARTA DE SAAVEDRA.-------------------------------------------------------

The President of the Corporation JOSE E. SILVA presided the Meeting, and MARTA DE

SAAVEDRA, acted as Secretary of the meeting, due to the death of the titleholder.------

The President then called the Meeting to order and explained its objects: to grant a

General Power of Attorney to a person chosen by the Board of Directors to act on behalf

of the corporation with such authority as the Board may approve.--------------------------

Thereupon, after an exchange of views on motion duly made and seconded, the

following resolutions, was unanimously approved:---------------**RESOLVED:**-------------

That be and hereby is granted a General Power of Attorney as full as it may be legally

necessary in favor of **Mr. RODRIGO DEL JESUS AGUDO VALLE**, with Passport of

Ecuador No. 1304422833, to act on behalf of the Corporation individually, with full

powers, which for purposes of enunciation and not in order to limit this General Power

of Attorney, are detailed as follows: to purchase, alienate, transfer, sell, lease, pledge,

mortgage, encumber, or dispose of in any way or manner, the movable or immovable,

corporeal or incorporeal, property of the corporation; to accept, endorse, collect, deposit





REPUBLICA DE PANAMA
PAPEL NOTARIAL

and transfer checks, notes and any other negotiable instruments in its name; to open and to close any kind of bank account; to draw from accounts and the bank deposits of the corporation, be they checking accounts, time deposits overdraft or any other kind of deposits, be they in the Republic of Panama or abroad; sign loan contracts, to issue notes, sign bills of exchange as drawer, acceptor, endorser or guarantor; to accept obligations, be they of a commercial or civil nature; to represent the corporation in matters of disposition and administration as well as in all affairs of management and situations in which the corporation has an interest, also in general partnerships or joint ventures; to buy stock or shares of any kind in other companies; to take part in assemblies or meetings in order to make any kind of agreements, including agreements of constitution, transformation, increase of capital and dissolution of companies; to become the legal representative of the company, as plaintiff, defendant, third party or in any other form, before any office of the Republic of Panama or abroad, be they judicial, administrative, concerning labor, or of any other nature; to subscribe documents wherein the corporation may be involved as debtor or creditor; to settle conflicts wherein the corporation may be involved, to make agreements using arbitrators or any other type of arrangement whatsoever and to complete any act or to enter into any contract that may be considered beneficial to the interests of the company **REPRESENTACIONES SALDANA S.A.**, because it is the intention of this General Power of Attorney that it be exercised without any limitations whatsoever, regarding the faculties mentioned above.----------------------------------------------------------------------------

**It is not permitted to substitute this General Power of attorney, totally or partially.**----------------------------------------------------------------------------------------

It is hereby expressed that this General Power of Attorney can be exercised in the territory of the Republic of Panama or in any other country.------------------------------

It was also resolved to give authority to the Law firm MORGAN Y MORGAN to protocolize a copy of the minutes of this meeting of the Board of Directors.-------------

Having nothing else to discuss, the meeting was adjourned.---------------------------

(Sgd.) José E. Silva, President.------(Sgd.) Marta de Saavedra, Secretary of the meeting--

**CERTIFICATE:** I, Marta de Saavedra, Secretary of the meeting **REPRESENTACIONES**



**SALDANA S.A.**, certify that the foregoing is a genuine copy of its original.------------

(Sgd.) Marta de Saavedra, Secretary of the meeting.-----------------------------------------

Concuerda con su original esta copia que expido, firmo y sello en la Ciudad de Panamá,

República de Panamá, a los dieciocho (18) días del mes de junio de dos mil trece (2013).





REPÚBLICA DEL ECUADOR
DIRECCIÓN GENERAL DE REGISTRO CIVIL,
IDENTIFICACIÓN Y CEDULACIÓN

CÉDULA DE **CIUDADANÍA**          No **091538164-4**

APELLIDOS Y NOMBRES
**SIERRA MORAN**
**CECILIA DEL CARMEN**
LUGAR DE NACIMIENTO
**GUAYAS**
**GUAYAQUIL**
**BOLIVAR /SAGRARIO/**
FECHA DE NACIMIENTO 1974-09-23
NACIONALIDAD **ECUATORIANA**
SEXO **F**
ESTADO CIVIL **SOLTERO**
FIRMA DEL CEDULADO

---

INSTRUCCIÓN          PROFESIÓN
**SUPERIOR**          **ABOGADO**
APELLIDOS Y NOMBRES DEL PADRE
**SIERRA L EDMUNDO ROBERTO**
APELLIDOS Y NOMBRES DE LA MADRE
**MORAN CORREA CECILIA DE JESUS**
LUGAR Y FECHA DE EXPEDICIÓN
**GUAYAQUIL**
**2010-12-01**
FECHA DE EXPIRACIÓN
**2022-12-01**
CORP. REG. CIVIL DE GUAYAQUIL

FIRMA DEL DIRECTOR          FIRMA DEL GOBIERNO
GENERAL                    SECCIONAL

IDECU0915381644<<<<<<<<<<<<<<<
740923F221201ECU<<<<<<<<<<<<<<
SIERRA<MORAN<<CECILIA<DEL<CARM



---



**CERTIFICADO DE VOTACIÓN**
ELECCIONES GENERALES 2017
2 DE ABRIL 2017

**029**          029 - 242          0915381644
JUNTA No          NUMERO          CEDULA

SIERRA MORAN CECILIA DEL CARMEN
APELLIDOS Y NOMBRES

**GUAYAS**
PROVINCIA          CIRCUNSCRIPCIÓN: 3
**GUAYAQUIL**
CANTON          ZONA: Ayacucho
**AYACUCHO**
PARROQUIA









 







 

















PAGINA
EN
BLANCO















PAGINA
EN
BLANCO

PAGINA
EN
BLANCO

# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD



**Número único de identificación:** 0915381644

**Nombres del ciudadano:** SIERRA MORAN CECILIA DEL CARMEN

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/GUAYAS/GUAYAQUIL/BOLIVAR /SAGRARIO/

**Fecha de nacimiento:** 23 DE SEPTIEMBRE DE 1974

**Nacionalidad:** ECUATORIANA

**Sexo:** MUJER

**Instrucción:** SUPERIOR

**Profesión:** ABOGADO

**Estado Civil:** SOLTERO

**Cónyuge:** No Registra

**Fecha de Matrimonio:** No Registra

**Nombres del padre:** EDMUNDO ROBERTO SIERRA L

**Nombres de la madre:** CECILIA DE JESUS MORAN CORREA

**Fecha de expedición:** 1 DE DICIEMBRE DE 2010

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS
GUAYAQUIL

N° de certificado: 183-115-76363



183-115-76363

Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**

La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**          0915381644

**Nombre:**       SIERRA MORAN CECILIA DEL CARMEN

## 1. Información referencial de discapacidad:

**Mensaje:**      LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 181-115-76415

181-115-76415



# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD



**Número único de identificación:** 1308660966

**Nombres del ciudadano:** AGUDO OCHOA JUAN DIEGO

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/MANABI/MANTA/MANTA

**Fecha de nacimiento:** 1 DE MAYO DE 1989

**Nacionalidad:** ECUATORIANA

**Sexo:** HOMBRE

**Instrucción:** BACHILLERATO

**Profesión:** EMPRESARIO

**Estado Civil:** CASADO

**Cónyuge:** ROIG VARGAS ANDREA GEACOMINA

**Fecha de Matrimonio:** 6 DE ABRIL DE 2016

**Nombres del padre:** AGUDO VALLE ANGEL MOISES

**Nombres de la madre:** OCHOA SANTOS INES

**Fecha de expedición:** 6 DE ABRIL DE 2016

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14A GUAYAS - GUAYAQUIL



Nº de certificado: 182-115-76108

182-115-76108

Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**



La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**

**REPÚBLICA DEL ECUADOR**
Dirección General de Registro Civil, Identificación y Cedulación

Dirección General de Registro Civil,
Identificación y Cedulación

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**          1308660966

**Nombre:**       AGUDO OCHOA JUAN DIEGO

## 1. Información referencial de discapacidad:

**Mensaje:**      LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL

N° de certificado: 184-115-76112



184-115-76112



Dirección General de Registro Civil, Identificación y Cedulación

# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD





**Número único de identificación:** 1307200848

**Nombres del ciudadano:** AGUDO OCHOA JOSE DAVID

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/MANABI/MANTA/MANTA

**Fecha de nacimiento:** 6 DE DICIEMBRE DE 1985

**Nacionalidad:** ECUATORIANA

**Sexo:** HOMBRE

**Instrucción:** BACHILLERATO

**Profesión:** ESTUDIANTE

**Estado Civil:** SOLTERO

**Cónyuge:** No Registra

**Fecha de Matrimonio:** No Registra

**Nombres del padre:** AGUDO VALLE ANGEL MOISES

**Nombres de la madre:** OCHOA SANTOS INES

**Fecha de expedición:** 25 DE SEPTIEMBRE DE 2015

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-N° 14 - GUAYAS - GUAYAQUIL



N° de certificado: 182-115-76127

182-115-76127



Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**



La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**          1307200848

**Nombre:**       AGUDO OCHOA JOSE DAVID

## 1. Información referencial de discapacidad:

**Mensaje:**      LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

Información certificada a la fecha: 24 DE ABRIL DE 2018

Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 186-115-76130

186-115-76130

**REPÚBLICA DEL ECUADOR**
Dirección General de Registro Civil, Identificación y Cedulación



Dirección General de Registro Civil,
Identificación y Cedulación

# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD



**Número único de identificación:** 1309846192

**Nombres del ciudadano:** AGUDO OCHOA MIGUEL ANGEL

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/MANABI/MANTA/MANTA

**Fecha de nacimiento:** 5 DE AGOSTO DE 1982

**Nacionalidad:** ECUATORIANA

**Sexo:** HOMBRE

**Instrucción:** BACHILLERATO

**Profesión:** ESTUDIANTE

**Estado Civil:** DIVORCIADO

**Cónyuge:** No Registra

**Nombres del padre:** AGUDO VALLE ANGEL MOISES

**Nombres de la madre:** OCHOA SANTOS INES

**Fecha de expedición:** 18 DE FEBRERO DE 2016

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-N°14 - GUAYAS - GUAYAQUIL

N° de certificado: 182-115-76146



182-115-76146



Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**

La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**            1309846192

**Nombre:**         AGUDO OCHOA MIGUEL ANGEL

## 1. Información referencial de discapacidad:

**Mensaje:**        LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

Información certificada a la fecha: 24 DE ABRIL DE 2018

Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 188-115-76153

188-115-76153



REPÚBLICA DEL ECUADOR Case 1:19-cv-00465-EAW-MJR Document 27 Filed 04/16/20 Page 70 of 73
Dirección General de Registro Civil, Identificación y Cedulación
Dirección General de Registro Civil, Identificación y Cedulación

# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD



**Número único de identificación:** 1303199572

**Nombres del ciudadano:** OCHOA SANTOS INES

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/ESMERALDAS/MUISNE/MUISNE

**Fecha de nacimiento:** 8 DE NOVIEMBRE DE 1958

**Nacionalidad:** ECUATORIANA

**Sexo:** MUJER

**Instrucción:** SUPERIOR

**Profesión:** INGENIERA

**Estado Civil:** VIUDO

**Cónyuge:** AGUDO VALLE ANGEL MOISES

**Nombres del padre:** OCHOA JOSE MIGUEL

**Nombres de la madre:** SANTOS RICARDINA

**Fecha de expedición:** 26 DE OCTUBRE DE 2015

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-MZ 14 - GUAYAS - GUAYAQUIL



N° de certificado: 189-115-76181



189-115-76181



Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**  1303199572

**Nombre:**  OCHOA SANTOS INES

## 1. Información referencial de discapacidad:

**Mensaje:**  LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 183-115-76184



183-115-76184



# CERTIFICADO DIGITAL DE DATOS DE IDENTIDAD



**Número único de identificación:** 1304422833

**Nombres del ciudadano:** AGUDO VALLE RODRIGO DEL JESUS

**Condición del cedulado:** CIUDADANO

**Lugar de nacimiento:** ECUADOR/MANABI/MANTA/MANTA

**Fecha de nacimiento:** 27 DE JUNIO DE 1964

**Nacionalidad:** ECUATORIANA

**Sexo:** HOMBRE

**Instrucción:** BACHILLERATO

**Profesión:** EMPRESARIO

**Estado Civil:** CASADO

**Cónyuge:** GONZALEZ DELGADO MARIA PIA

**Fecha de Matrimonio:** 3 DE SEPTIEMBRE DE 2001

**Nombres del padre:** AGUDO ALVAREZ JOSE

**Nombres de la madre:** VALLE CHAMORRO MARIA TERESA

**Fecha de expedición:** 3 DE ENERO DE 2017

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL





N° de certificado: 183-115-76198

183-115-76198



Ing. Jorge Troya Fuertes
Director General del Registro Civil, Identificación y Cedulación
**Documento firmado electrónicamente**

La institución o persona ante quien se presente este certificado deberá validarlo en:**https://virtual.registrocivil.gob.ec**, conforme a la LOGIDAC Art. 4, numeral 1 y a la LCE.
Vigencia del documento 1 validación o 1 mes desde el día de su emisión. En caso de presentar inconvenientes con este documento escriba a **enlinea@registrocivil.gob.ec**

# INFORMACIÓN ADICIONAL DEL CIUDADANO

**NUI:**      1304422833

**Nombre:**      AGUDO VALLE RODRIGO DEL JESUS

## 1. Información referencial de discapacidad:

**Mensaje:**      LA PERSONA NO REGISTRA DISCAPACIDAD

1.- La información del carné de discapacidad es consultada de manera directa al Ministerio de Salud Pública - CONADIS en caso de inconsistencias acudir a la fuente de información

Información certificada a la fecha: 24 DE ABRIL DE 2018
Emisor: LUIS GUSTAVO PILOZO VELASQUEZ - GUAYAS-GUAYAQUIL-NT 14 - GUAYAS - GUAYAQUIL



N° de certificado: 181-115-76203

181-115-76203

