EXHIBIT GG

# ANEXO

## CONTRATO DE LÍNEA DE CRÉDITO PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _A. Drumming   S.Sijten_ en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que el MUTUARIO está interesado en obtener financiamiento de mediano plazo para destinarlo a la pre-financiación de sus exportaciones

(b) Que la satisfacción de la necesidad de contar con financiamiento para prefinanciar las exportaciones que el MUTUARIO tiene en la actualidad, redundará en su beneficio, permitiéndole continuar con el desarrollo y ampliación de sus mercados externos;

(c) Que por las razones indicadas en el Considerando (b) anterior, y además, para facilitar el otorgamiento de un préstamo desde el punto de vista del riesgo crédito, el MUTUARIO está dispuesto a afectar bienes para garantizar el repago del crédito para prefinanciar sus exportaciones;

(d) Que el MUTUANTE está dispuesto a otorgar una línea de crédito de hasta Dólares Estadounidenses veinticinco millones con 00/100 (US$ 25.000.000,00) para el MUTUARIO, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) el MUTUARIO se obligue a su repago y al cumplimiento de todas las obligaciones asumidas bajo el Contrato; (ii) que las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (iii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

1

En mérito a las consideraciones precedentemente establecidas, se celebra el presente contrato de línea de crédito, sujeto a las siguientes cláusulas y condiciones:

**PRIMERA:   DEFINICIONES.**

"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o del MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato Marco (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrá cumplir u observar normalmente sus obligaciones bajo el presente Contrato Marco; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Condiciones Precedentes" significan las condiciones precedentes para la entrada en vigencia del Contrato Marco, previstas en la Cláusula SEGUNDA.

"Contrato Marco" significa el presente contrato de línea de crédito suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los créditos y derechos que le correspondan al MUTUARIO en virtud de la venta de mercadería que el MUTUARIO realice al Deudor Cedido derivada del contrato denominado "EXCLUSIVE PURCHASE AGREEMENT" cuya fotocopia se adjunta al presente Contrato como **Anexo I** (y las enmiendas, contratos complementarios y/o reemplazantes de dicho contrato adjunto como Anexo I, así como los conocimientos de embarque, facturas y/o remitos emitidos en virtud del mismo). Se adjunta asimismo como **Anexo II** una Declaración Jurada del MUTUARIO con el Pronóstico de Ventas mínimas que el MUTUARIO estima realizar al Deudor Cedido durante los primeros 18 (dieciocho) meses de la vigencia del presente Contrato Marco.

2

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

BANK:            Satet Street Corp f/k/a Investors Bank & Trust Company
ABA#:            011-001-438
SWIFT:           INVBUS33
Credit:          Client Funds
Account#:        569-530-395
Further Credit:  IIG TOF – Sancor CUL
Account#:        02030-8420148

"Cuenta del Mutuario" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación o la que EL MUTUARIO indique al MUTUANTE en forma fehaciente:

BANCO:           Citibank N.A.
DIRECCIÓN:       New York, U.S.A.
ABA:             021000089
SWIFT:           CITIUS33
Cuenta Nro.:     36976697
A NOMBRE DE:     Banco Comafi S.A., Buenos Aires, Argentina
SWIFT:           QUILARBA
CHIPS:           UID 320011
A FAVOR DE:      SanCor Cooperativas Unidas Limitada
CUENTA N°:       000-0-129785
REFERENCIA:      Prefinanciación de Exportación

"Deudor Cedido" significa **FONTERRA LIMITED** una firma organizada bajo las leyes de Nueva Zelanda, con domicilio en Fonterra Centre, 9 Princess Street, Auckland, New Zealand.

"Documentos de la Operación" significa el presente Contrato Marco, las Solicitudes de Desembolso derivadas del mismo, los Pagarés y el contrato adjunto como Anexo I que causa los Créditos Cedidos.

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.




3

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula OCTAVA, Sección 8.2 del Contrato Marco; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato Marco.

"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán indefectiblemente ser anteriores al 31 de Mayo de 2009.

"Garantías" significa los Pagarés y la cesión de los Créditos Cedidos.

"Línea de Crédito" significa la única línea de crédito que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses veinticinco millones con 00/100 (US$ 25.000.000,00).

"Línea de Crédito Adeudada" significa la sumatoria de todas las Sumas Adeudadas por el MUTUARIO bajo la Línea de Crédito incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula OCTAVA del presente Contrato Marco.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Pagaré/s" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE, de conformidad con el formato adjunto al Contrato Marco como ANEXO III, por un monto equivalente a la Suma Adeudada en cada Solicitud de Desembolso, conforme lo establecido en la Cláusula TERCERA del Contrato Marco.

"Pesos" moneda de curso legal en la República Argentina.

"Plazo de Acreditación" significa el plazo de tres (3) Días Hábiles contados desde la fecha de recepción efectiva de la Solicitud de Desembolso.

4

"Plazo de Confirmación" significa el plazo de cinco (5) días hábiles contados a partir de la fecha de acreditación de los fondos requeridos en la Cuenta del Mutuario, conforme una Solicitud de Desembolso.

"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Mayo de 2009, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

"Solicitud de Desembolso" significa el formulario sustancialmente idéntico al que se adjunta al presente en **ANEXO IV**, completo con todos los datos debidamente consignados, que el MUTUARIO deberá suscribir, con la firma de sus apoderados o representantes legales certificada ante escribano público.

"Suma/s Adeudada/s" significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Tasa de Descuento" significa la tasa de interés anual de descuento a ser pactada por las Partes en cada Solicitud de Desembolso, que el MUTUANTE aplicará a cada desembolso de fondos que el MUTUARIO le solicite para calcular el monto de las Sumas Adeudadas.

## CLAUSULA SEGUNDA: LA LINEA DE CREDITO.

### 2.1.   Disponibilidad de la Línea de Crédito.

**(a) Disponibilidad Condicionada.** Sujeto al cumplimiento específico de cada una y todas las Condiciones Precedentes, o a que el MUTUANTE dispense expresamente y por escrito el cumplimiento de una o todas las Condiciones Precedentes, sin estar obligado a ello bajo ninguna circunstancia, el MUTUANTE se compromete durante el Plazo de Disponibilidad, a mantener disponible la Línea de Crédito a favor del MUTUARIO, la que podrá ser utilizada exclusivamente para la prefinanciación de exportaciones del MUTUARIO, en la medida de las respectivas Solicitudes de Desembolso, conforme las condiciones y el procedimiento que se establece en este Contrato Marco.

**(b) Vigencia.** Una vez expirado el Plazo de Disponibilidad, cesará automática e irrevocablemente –sin necesidad de notificación judicial o extrajudicial alguna- el derecho del MUTUARIO de remitir cualquier Solicitud de Desembolso al MUTUANTE, salvo que el Plazo de Disponibilidad sea prorrogado expresamente y por escrito por el MUTUANTE, a su exclusiva satisfacción, y tal decisión sea fehacientemente notificada al MUTUARIO en tiempo hábil.

5

(c) *Monto de los Desembolsos.* El MUTUARIO podrá requerir los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la sumatoria total de los montos consignados en las respectivas Solicitudes de Desembolso alcancen el monto de la Línea de Crédito; en consecuencia, en ningún caso y bajo ningún supuesto, el MUTUANTE estará obligado, ni se podrá interpretar que esté obligado, a desembolsar una suma mayor a o por encima de la Línea de Crédito.

2.2.    Condiciones Precedentes al otorgamiento de la Línea de Crédito.

La validez y vigencia de la Línea de Crédito otorgada por el MUTUANTE bajo el presente Contrato Marco está condicionada a que, a criterio razonable del MUTUANTE, (i) se cumplan y mantengan plenamente vigentes a la firma del presente Contrato Marco, todas y cada una de las siguientes Condiciones Precedentes, estipuladas en beneficio exclusivo del MUTUANTE y/o (ii) el MUTUANTE dispense en forma expresa y por escrito, una, algunas o todas las Condiciones Precedentes:

(a) Aprobaciones Societarias. (i) copia certificada por escribano público del poder general del MUTUARIO del cual surja que el/ los firmantes apoderados para la suscripción de los Documentos de la Operación se encuentran suficientemente facultados para dicho acto; y

(b) Vigencia de las Manifestaciones y Declaraciones del MUTUARIO. Que se encuentren en plena vigencia y continúen siendo ciertas, correctas y verdaderas, todas y cada una de la manifestaciones y declaraciones efectuadas por el MUTUARIO en la Cláusula SEPTIMA del Contrato Marco, y

(c) Inexistencia de Cambios Materiales Adversos, Efectos Materiales Adversos o Supuestos de Incumplimiento. Que no hubiere ocurrido y/o no se encontrare vigente, ni hubiere elementos fundados para prever el acaecimiento de uno o más Cambios Materiales Adversos, Efectos Materiales Adversos y/o de los Eventos de Incumplimiento (hubiere o no sido declarada la caducidad y aceleración de plazos), y que no hubiere ocurrido en conocimiento del MUTUARIO  ninguna circunstancia que de cualquier forma hiciere peligrar, menoscabare o debilitare la plena vigencia, validez, plenitud, alcance, ejecutabilidad y/u oponibilidad frente a terceros de los Documentos de la Operación y de las Garantías, y

(d) Notificación al Deudor Cedido. Que el MUTUARIO haya notificado al Deudor Cedido la cesión del Crédito Cedido en los términos establecidos en la Sección 4.6 del presente Contrato Marco; a cuyo efecto el MUTUARIO deberá entregar al MUTUANTE el original de tal notificación recibida y aceptada por el Deudor Cedido.

CLAUSULA TERCERA: CONDICIONES PRECEDENTES PARA EL DESEMBOLSO.

**3.1. Solicitud de Desembolso.** A fin de solicitar al MUTUANTE un desembolso bajo la Línea de Crédito, el MUTUARIO deberá enviar por medio fehaciente y a satisfacción del MUTUANTE:

(i) el original de la Solicitud de Desembolso debidamente completada y firmada por el representante legal del MUTUARIO o apoderados con facultades suficientes, con su firma certificada por escribano público argentino; cada Solicitud de Desembolso deberá indefectiblemente contener el monto del desembolso requerido, la/s Fecha/s de Vencimiento del mismo y las Sumas Adeudadas que deberá pagar al MUTUANTE en tal/es Fecha/s de Vencimiento; y

(ii) un Pagaré por un monto equivalente a las Sumas Adeudadas, debidamente suscripto por el representante legal del MUTUARIO o apoderados con facultades suficientes, a plena satisfacción del MUTUANTE, con la firma debidamente certificada por un escribano público argentino.

**3.2. Falta de Responsabilidad por Desembolsar o No Desembolsar.** Sin perjuicio de lo dispuesto en la presente Cláusula, el MUTUANTE no tendrá responsabilidad de ningún tipo frente al MUTUARIO, por aceptar o rechazar cualquier Solicitud de Desembolso efectivamente recibida del MUTUARIO, -siempre que el rechazo sea con causa- y por consiguiente, el MUTUARIO renuncia expresa e irrevocable a promover algún reclamo contra el MUTUANTE fundado en tal circunstancia o causa.

**3.3. Trámite posterior. Desembolso.** Una vez recibidos los documentos de la Solicitud de Desembolso por el MUTUANTE, el MUTUANTE procederá, a verificar, a su exclusiva discreción, que toda la información y documentación en ellos contenida sea correcta y conforme al Contrato Marco. Ello no obstante, el MUTUANTE no está obligado a realizar una auditoría legal o *due diligence* de los documentos de la Solicitud de Desembolso, y por consiguiente, no será responsable por la falsedad, inexactitud, omisión y/o falta de genuinidad de la misma. Sin perjuicio de ello, de estar éste de acuerdo, a su satisfacción, con los documentos de la Solicitud de Desembolso, el MUTUANTE procederá, a su exclusiva discreción y satisfacción y aún sin estar obligado a ello bajo los Documentos de la Operación, a desembolsar y depositar los fondos solicitados en la Cuenta del Mutuario dentro del Plazo de Acreditación. La aceptación por el MUTUANTE de una Solicitud de Desembolso no lo obliga a aceptar cualquier otra Solicitud de Desembolso –siempre que el rechazo sea con causa- que al MUTUARIO le pueda presentar en forma simultánea o ulteriormente a aquella.

**3.4. Confirmación.** Dentro del Plazo de Confirmación, el MUTUARIO deberá indefectiblemente remitir por medio fehaciente al MUTUANTE una nota confirmando la recepción de tales fondos. Sin perjuicio de ello, aun en el supuesto de que el MUTUARIO no remitiese la nota de confirmación antes referida, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de cinco (5) días corridos contados desde la finalización del

7

Plazo de Acreditación implicará la conformidad del MUTUARIO con el desembolso depositado en la Cuenta del Mutuario.

3.5 **Facultad Exclusiva del MUTUANTE.** En el caso en que, a exclusivo criterio del MUTUANTE, durante el Plazo de Disponibilidad ocurriera cualquier Cambio Material Adverso o Efecto Material Adverso, el MUTUANTE podrá suspender inmediatamente la tramitación de cualquier Solicitud de Desembolso cursada de conformidad con el Contrato Marco, que esté siendo verificada y evaluada por aquél, así como cualquier desembolso de fondos correspondiente a una Solicitud de Desembolso aprobada por el MUTUANTE pero cuyos fondos no hayan sido efectivamente acreditados en la Cuenta del Mutuario, sin que tal decisión genere responsabilidad alguna al MUTUANTE, renunciando en consecuencia el MUTUARIO a promover cualquier acción por responsabilidad fundada en tal causa. Ello, sin perjuicio de la facultad del MUTUANTE de dar por terminado el Contrato en tal supuesto, de conformidad con lo establecido en la cláusula OCTAVA del presente Contrato.

3.6 **Devolución al Mutuario de los Créditos Cedidos, Notificación al Deudor Cedido.** En cualquiera de los supuestos enumerados en la presente cláusula TERCERA y una vez cancelada en su totalidad la Línea de Crédito Adeudada por el MUTUARIO y dentro de las 48 hs. de sucedido ello, el MUTUANTE se obliga a notificar al Deudor Cedido que ha quedado sin efecto la Cesión del Crédito Cedido por lo que a partir de la recepcion de dicha notificación, el Deudor Cedido deberá abonar al MUTUANTE el monto de los Créditos Cedidos.

## CLÁUSULA CUARTA: CESIÓN DE CRÉDITOS.

4.1    En garantía de pago de la Línea de Crédito Adeudada y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO bajo los Documentos de la Operación, y como medio de pago de las Sumas Adeudadas -conforme lo establecido en la Cláusula 5.2 del Contrato Marco- el MUTUARIO cede al MUTUANTE los Créditos Cedidos. La referida cesión comprende todos los derechos y acciones que posee el MUTUARIO y le corresponden respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de las obligaciones contractuales con el Deudor Cedido de las cuales surjan los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

4.2    El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE,

8

dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que el MUTUARIO emita como consecuencia de los Créditos Cedidos.

4.3     El MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante. A tal efecto, en adición a las notificaciones previstas en la Sección 4.6 de la presente Cláusula CUARTA, el MUTUARIO se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tales facturas deberán ser pagadas al MUTUANTE mediante transferencia de los fondos correspondientes a la Cuenta del Mutuante. En cada una de las facturas cedidas el MUTUARIO se compromete a incluir la siguiente leyenda (y su correspondiente traducción al idioma inglés):

*"El crédito representado y contenido en la presente factura, fue cedido en garantía a IIG TOF B.V., por contrato de Cesión de Créditos de fecha __/__/2007. Deberán Uds. abonar el mismo a su vencimiento mediante depósito en el Banco: _____, ABA _____, Beneficiario: IIG TOF B.V., Cuenta N°: _____"*

4.4     Los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas de acuerdo a lo dispuesto en la Sección 5.2 del Contrato Marco.

4.5     La cesión de los Créditos Cedidos se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula CUARTA y/o no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

4.6     Como condición indispensable para la entrada en vigencia del presente Contrato Marco, el MUTUARIO se obliga a notificar en forma fehaciente esta cesión al Deudor Cedido y a obtener la aprobación expresa de este último respecto de la presente cesión mediante la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como **ANEXO V**. A tales fines dentro de las 48 hs. de suscripto el presente Contrato Marco, y como una de las Condiciones Precedentes, el MUTUARIO comunicará al Deudor Cedido, con intervención notarial, que los Créditos Cedidos han sido transmitidos al MUTUANTE, y que el depósito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante, debiendo el Deudor Cedido —mediante su apoderado o representante legal- firmar al pie de dicha notificación con constancia de aceptación de la misma. El MUTUARIO deberá entregar dicha notificación al MUTUANTE, con la aceptación del Deudor Cedido en la forma antes

9

indicada, conforme lo establecido en la condición previa a entrada en vigencia del presente Contrato Marco.

Asimismo el MUTUARIO remitirá conjuntamente vía fax una comunicación al Deudor Cedido, notificándole la cesión de los Créditos Cedidos, indicándole que el pago de los Créditos Cedidos deberá realizarse en la Cuenta del Mutuante, consignándose que se remite por correo el original de la comunicación.

Cumplido ello, el MUTUARIO requerirá a un escribano público la certificación del texto de la misma, su destinatario, domicilio y su despacho mediante correo internacional por un servicio que brinde constancia de su entrega y recepción.

**4.7** El presente Contrato no implica de forma alguna la transferencia por el MUTUARIO al MUTUANTE de las obligaciones emergentes de los contratos que causen los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la Mora del MUTUARIO. De igual manera se producirá la Mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que causen los Créditos Cedidos, o de cualquier forma discontinúen o terminen su relación comercial con el MUTUARIO, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

**4.8** El MUTUARIO declara y garantiza al MUTUANTE:

(a) el cobro de los Créditos Cedidos.

(b) la forma instrumental de los mismos.

(c) la legitimidad de los Créditos Cedidos y que los mismos son de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

(d) que no se encuentra inhibido para disponer de sus bienes;

(e) que no adeuda suma alguna al Deudor Cedido que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;

(f) que no ha percibido suma alguna derivada de los Créditos Cedidos, y que los mismos no han sido cedidos total ni parcialmente a persona física o jurídica alguna con anterioridad;

10

(g)    la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.

(h)    que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.

(i)    que el monto de los Créditos Cedidos depositado en la Cuenta del Mutuante durante el Plazo de Disponibilidad será equivalente como mínimo al 110,00% del monto de la Línea de Crédito.

(j)    que todos los Créditos Cedidos serán facturados por el MUTUARIO directa y exclusivamente al Deudor Cedido, debiéndose abstener de vender o facturar los productos comprendidos en el contrato adjunto como Anexo I a terceros distintos del Deudor Cedido, aún cuando contase con el consentimiento de este último.

## CLAUSULA QUINTA: CANCELACIÓN DE LAS SUMAS ADEUDADAS. APLICACIÓN DE LOS CREDITOS CEDIDOS AL PAGO DE LAS SUMAS ADEUDADAS. RECURSO DEL MUTUARIO.

5.1    El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, mediante depósito de las mismas en la Cuenta del Mutuante.

5.2    A los efectos mencionados en la Sección 5.1 antes referida, los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas del siguiente modo:

(a)    Durante los meses en que NO exista Fecha de Vencimiento (entendiéndose por tales aquellos meses transcurridos entre la efectivización del desembolso requerido en cada Solicitud de Desembolso hasta el mes calendario inmediato anterior al de la Fecha de Vencimiento), el MUTUANTE transferirá los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario.



(b)    Durante los meses correspondientes a las Fechas de Vencimiento (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante a cancelar la Suma Adeudada a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados durante tales meses excedan el monto de la Suma Adeudada, el

11

excedente será transferido al MUTUARIO de la forma indicada en el acápite (a) de la presente Sección 5.2. En el caso de que los fondos del Crédito Cedido depositados durante tales meses no fuesen suficientes para cubrir el importe de la Suma Adeudada, el MUTUARIO será responsable de aportar la diferencia, y abonar así el importe total de la Suma Adeudada, bajo apercibimiento de Mora.

(c)   Todos los fondos correspondientes al Crédito Cedido que sean depositados en la Cuenta del Mutuante con posterioridad a la cancelación total de la Línea de Crédito Adeudada y en exceso de la misma, serán reintegrados al MUTUARIO en la forma indicada en el acápite (a) de la presente Sección 5.2.

5.3     En caso de Mora, la totalidad de los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante se aplicarán a cancelar toda la Línea de Crédito Adeudada y cualquier otra suma adeudada por el MUTUARIO bajo los Documentos de la Operación.

5.4     Habida cuenta del recurso del MUTUARIO en la cesión de los Créditos Cedidos al MUTUANTE, en caso de que -por cualquier causa- el importe de los Créditos Cedidos depositados en la Cuenta del Mutuante no fuesen suficientes para cubrir el pago de la Suma Adeudada en las Fecha de Vencimiento correspondiente a un mes determinado, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

## CLAUSULA SEXTA: MONEDA DE PAGO.

6.1     El MUTUARIO asume que el pago del importe total o el saldo que eventualmente adeude en virtud de los Documentos de la Operación –incluyendo el pago de la Línea de Crédito Adeudada- deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de l a Línea de Crédito Adeudada así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviviente en el pago. Asimismo el MUTUANTE asume que la transferencia que debe realizar a favor del MUTUARIO de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUANTE expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c), así como los intereses punitorios y demás sumas a ser transferidas al MUTUARIO en virtud del presente, se

12

cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviviente en el pago.

6.2      En atención a lo dispuesto en la Cláusula 6.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO y en su caso el MUTUANTE deberán igualmente abonar las sumas comprometidas (la Línea de Crédito Adeudada y cualquier otra suma pagaderas en virtud de los Documentos de la Operación en Dólares para el caso del MUTUARIO y la transferencia de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) para el caso del MUTUANTE, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE o MUTUARIO, según el caso:

6.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo los Documentos de la Operación; o bien

6.2.(b). Mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de cualquier título en Dólares, a satisfacción expresa del MUTUANTE (o del MUTUARIO en su caso) y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE (o el MUTUARIO en su caso) en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo los Documentos de la Operación; o bien

6.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO (o al MUTUANTE en su caso) llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO (o el MUTUANTE en su caso) bajo los Documentos de la Operación, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

13

**6.2.(d).** Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en las Fechas de Vencimiento bajo el Contrato Marco, para la adquisición de Dólares.

**6.3**   Queda expresamente establecido que en cualquiera de las alternativas detalladas en 6.2.(a). a 6.2.(d)., las sumas adeudadas por el MUTUARIO (o el MUTUANTE en su caso) sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante (o en la Cuenta del Mutuario en su caso), la cantidad de Dólares adeudada bajo los Documentos de la Operación.

**6.4**   Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 6.2.(a). a 6.2.(d) precedentes serán pagados por el MUTUARIO (o por el MUTUANTE en su caso).

**6.5.** Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE (o el MUTUARIO en su caso) pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO (o el MUTUANTE en su caso) en una moneda distinta de Dólares, la obligación de pago del MUTUARIO (o del MUTUANTE en su caso) de cualquier suma adeudada bajo los Documentos de la Operación sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTANTE (o el MUTUARIO en su caso) haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE (o el MUTUARIO en su caso) pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo los Documentos de la Operación, el MUTUARIO (o el MUTUANTE en su caso) acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE (o al MUTUARIO en su caso) de esa pérdida.

**CLAUSULA SEPTIMA:   MANIFESTACIONES,   DECLARACIONES   Y COMPROMISOS DEL MUTUARIO.**

**7.1.**   Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato Marco y otorgarle la  Línea de Crédito, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato Marco y hasta que el mismo se extinga, lo siguiente:

**7.1.1.**   Que el MUTUARIO  es una cooperativa de primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades

14

necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad; y

**7.1.2.** Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato Marco y/o de las Garantías; y

**7.1.3.** Que el Contrato Marco y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

**7.1.4.** Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualesquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

**7.1.5.** Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en el Contrato Marco, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

**7.1.6.** Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido el MUTUARIO y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, Contrato Marco u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

**7.1.7.** Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad

15

de la documentación de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

**7.1.8.** Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

**7.1.9.** Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato marco, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato Marco y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

**7.1.10.** Que el balance del MUTUARIO al 30 de Junio de 2007, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2007 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

**7.1.11.** Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda, o mejor derecho alguno; y

**7.1.12.** Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, y para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

**7.1.13** Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registra con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

**7.1.14** Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tiene y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

16

**7.1.15.** Los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

**7.1.16.** Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

**7.1.17.** Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

**7.1.18** Que cumplen y realizan todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulten aplicables.

**7.2**     **Compromisos y Obligaciones del MUTUARIO.**

Desde la firma del presente Contrato Marco y durante todo el tiempo en que cualquier suma debida bajo el Contrato Marco se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

**7.2.1.** A pagar debida y puntualmente las Sumas Adeudadas, así como los gastos referidos en la Cláusula NOVENA, de conformidad con los términos y condiciones que se establecen en el presente Contrato Marco, y

**7.2.2.** A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que el MUTUARIO, según el caso, los disputase por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

**7.2.3.** A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contrato marcos, seguros, poderes,

17

prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato Marco y las Garantías, y

**7.2.4.** A no realizar actos que constituyan o impliquen (i) una fusión, absorción o cualquier otro acto al que, conforme a cualquier ley o norma, pudieran oponerse los acreedores del MUTUARIO, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

**7.2.5.** A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato Marco y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

**7.2.6.** A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente al MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoria de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos semestres; los estados contables (iii) deberán ser presentados dentro del los sesenta (60) días corridos de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

**7.2.7.** A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato Marco y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato Marco, y

18

**7.2.13.** A no reducir su capital, y

**7.2.14.** A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

**7.2.15.** A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato Marco, y

19

**7.2.16.** A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

**7.2.17.** A no a adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

**7.2.18.** A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta del Mutuario desembolsados bajo el presente Contrato Marco, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato Marco suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

**7.2.19.** A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dicha cesión, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

**7.2.20.** A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del Mutuante en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

**7.2.21.** A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

**7.2.22** A remitir mensualmente al MUTUANTE, antes del 5° día hábil de cada mes de vigencia del presente Contrato Marco, un informe con el pronóstico escrito de venta de sus productos al Deudor Cedido durante los dieciocho (18) meses subsiguientes a la fecha de entrega del informe antes referido.

20

**7.2.23** A remitir al MUTUANTE –además del señalado en la Sección 7.2.22 precedente- copia de todo informe, documento, reporte, orden de compra, factura, y/o pronóstico de ventas que remita al Deudor Cedido y/o que reciba del Deudor Cedido.

## OCTAVA:   MORA.

**8.1**    La Mora del MUTUARIO en el cumplimiento de las obligaciones pactadas en el presente Contrato Marco –incluyendo sin limitación, el pago en tiempo y forma cualquier Suma Adeudada- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna, por el acaecimiento de cualquiera de los Eventos de Incumplimiento. Ocasionada la Mora, se producirá la caducidad de todos los plazos y el MUTUANTE tendrá derecho a considerar la totalidad de la Línea de Crédito Adeudada como una deuda de plazo vencido y exigir y demandar judicialmente el pago íntegro de la Línea de Crédito Adeudada, los intereses devengados y demás accesorios. Durante el tiempo que dure la Mora,  el MUTUANTE tendrá derecho a percibir intereses compensatorios acumulativos pactados a una tasa de interés equivalente a la tasa implícita de cada Solicitud de fondos con más un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

**8.2**    El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, considerar la Línea de Crédito Adeudada como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todas las sumas adeudadas en los siguientes Eventos de Incumplimiento:

(a)    si el MUTUARIO incumpliese con el pago en tiempo y forma de la Línea de Crédito Adeudada;

(b)    si un tercero pidiere la quiebra del MUTUARIO, del Deudor Cedido y/o y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)    si el MUTUARIO, el Deudor Cedido y/o pidiesen su propia quiebra, promoviese su concurso de acreedores o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial o una reestructuración de sus pasivos;

(d)    si el MUTUARIO y/o sus incurrieren en cesación de pagos, aún sin efectuarse los trámites antedichos;

(e)    Si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO y/o sus, o se decretare la inhibición general de bienes de cualquiera de el MUTUARIO, por un monto en exceso de Dólares Estadounidenses DOS MILLONES (US$



21

2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato Marco, y dichos embargos y/o medidas cautelares no fuesen levantados, por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible, o

(f)  si en cualquier momento durante la vigencia del presente Contrato Marco se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO, en las declaraciones contenidas en la Cláusula SEPTIMA del presente y/o el incumplimiento de los compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del presente Contrato Marco;

(g)  si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el presente Contrato Marco;

(h)  si el MUTUARIO y/o sus modificasen de cualquier forma su composición accionaria;

(i)  si el MUTUARIO incumpliere cualquiera de las obligaciones a su cargo establecidas en el presente Contrato Marco y/o en los Documentos de la Operación;

(j)  si el MUTUARIO incumpliere con cualquiera de sus obligaciones contractuales con el Deudor Cedido;

(k)  si –con prescindencia de que hubiese o no incumplimiento por parte de el MUTUARIO en el pago de las Sumas Adeudadas- el MUTUARIO y/o el Deudor Cedido terminan el contrato que causa los Créditos Cedidos ;

(l)  si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato Marco fueren abonadas en una moneda distinta del Dólar;

(m)  Si se dictaren una o más sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaran medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes de el MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad de el MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato Marco, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

22

(n)     Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso

8.3     En adición a lo dispuesto en la Sección 8.1 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato Marco -en los términos establecidos en la Sección 8.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de las Sumas Adeudadas por parte del MUTUARIO o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las Sumas Adeudadas bajo este Contrato Marco los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE.

## NOVENA: GASTOS.

9.1     Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario), tributos y/o gastos que las operaciones derivadas directa y/o indirectamente de este Contrato Marco pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

9.2     Todos los pagos bajo el Contrato Marco deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato Marco como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago.

23

**9.3**     El MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo– con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del presente Contrato Marco y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**9.4**     El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de las operaciones relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

## DÉCIMA: CESIÓN DEL CONTRATO MARCO.

El MUTUANTE podrá ceder el presente Contrato Marco en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

## DÉCIMO PRIMERA:     VIGENCIA. INDEMNIDAD.

**11.1**     El presente Contrato Marco así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato Marco. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato Marco, las Cláusulas NOVENA, DECIMO PRIMERA y DECIMO TERCERA sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**11.2**     El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato Marco y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstos en ellos; (ii) el Crédito Cedido adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial,

24

relacionado con cualquiera de las circunstancias previstas en esta Cláusula 11.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

## DÉCIMO SEGUNDA: AUTORIZACION

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato Marco y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO.

En tal sentido, el MUTUARIO autoriza al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato Marco.

## DÉCIMO TERCERA: JURISDICCIÓN Y LEY APLICABLE.

13.1    El presente Contrato Marco es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

13.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato Marco. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

13.3    Nada de lo dispuesto precedentemente en el presente Contrato Marco afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada, incluyendo la facultad del MUTUANTE de iniciar la ejecución judicial y/o extrajudicial de los Pagarés en la República Argentina.

13.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, NY, USA, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

25

**13.5**   Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, NY, USA no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en la Sección 13.8 de la presente Cláusula.

**13.6**   Las notificaciones efectuadas de la manera establecida en la Sección 13.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

**13.7**   El MUTUARIO irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total y/o parcial comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al Contrato Marco en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

**13.8**   Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato Marco deberán ser remitidas a los domicilios indicados a continuación:

MUTUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE:   Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

**DECIMO CUARTA: FIRMAS Y RECEPCION DE INSTRUMENTOS.**
Se firman 2 (dos) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 1 (un) juego en poder del MUTUANTE y 1 (un) juego en poder del MUTUARIO.

**DECIMO QUINTA: LUGAR Y FECHA.**

26

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en Amsterdam, a los 30 días del mes de Noviembre de 2007.

Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
Nº
Bs. As.

Por: **IIG TOF B.V.**
Nombre: _____ Trust International Management (T.I.M.) B.V.
Carácter _____ Managing Director

27



**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404

F 003850242

1   Buenos Aires,   30 de   Noviembre de   2007 . En mi carácter de Escribano

2   Titular del Registro Notarial Nº 841

3   **CERTIFICO:** Que la/s   firma/s                                     que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5   firma/s que se formaliza simultáneamente por ACTA número   42   del

6   **LIBRO** número   86   , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8   cuyo conocimiento doy fe.   Mario César MAGDALENA L.E. 8.106.144.- Mani-

9   fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13
14
15
16
17
18
19
20
21
22
23
24
25





ANEXO I:
COPIA "Exclusive Purchase Agreement"

28

## CONTRATO DE MUTUO CON CESION DE CREDITOS

Entre:

**SANCOR COOPERATIVAS UNIDAS LTDA.**, una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, una sociedad constituida bajo las leyes de Holanda, representada por los Sres. S. Strubos n y F. Kuipers, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:

I.    Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

II.   Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

III.  Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de prefinanciar las exportaciones de producción de sus productos ("Pre-financiacion").

IV.   Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se lo define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

**PRIMERA:    DEFINICIONES.**
"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrá cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

1

ARANA (h)
AÑO
1370

**BANK:**           STATE STREET CORP.
**ABA#:**           011-001-438
**SWIFT:**          INVBUS33
**Credit:**         Client Funds
**Account#:**       569-530-395
**Further Credit:** IIG TOF B.V– Sancor CUL
**Account#:**       02030-8420148

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

**BANCO:**        Wachovia Bank N.A.
**DIRECCIÓN:**    New York, U.S.A.
**SWIFT:**        PNBPUS3NNYC
**A NOMBRE DE:**  Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
**SWIFT CODE:**   ITAUARBA
**Cuenta Nro.:**  2000192261739
**ROUTING N°:**   FW026005092
**A FAVOR DE:**   SanCor Cooperativas Unidas Limitada
**CUENTA Nro.:**  01185361001
**REFERENCIA:**   Prefinanciación de Exportación

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidas en el **ANEXO III** del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudor/es Cedido/s" significa ***ARTHUR SCHUMAN, INC.***, domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fecha/s de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el **ANEXO III** del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el Pagaré.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Pagaré/s" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como **ANEXO IV**, por la suma total de US$ 1.071.000,00 (Dólares Estadouniden-





ses UN MILLON SETENTA Y UN MIL CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Préstamo" significa el préstamo de US$ 1.001.186,67 (Dólares Estadounidenses UN MILLON UN MIL CIENTO OCHENTA Y SEIS CON 67/100) que el MUTUANTE otorga al MUTUARIO y que será abonado de acuerdo a lo establecido en el presente Contrato.

"Pesos" Moneda de Curso legal de la República Argentina

"Warrant/s" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

**SEGUNDA:    PRÉSTAMO.**
**2.1**    El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

**2.2**    El MUTUANTE procederá a abonar el Préstamo al MUTUARIO en un solo desembolso, mediante acreditación y/o depósito bancario del Préstamo en la Cuenta del Mutuario dentro de los cinco (5) días corridos contados desde la firma del presente.

**2.3**    Dentro del plazo de cinco (5) días hábiles contados desde la recepción de tales fondos en la Cuenta del Mutuario, el MUTUARIO deberán remitir al MUTUANTE un recibo confirmando la recepción de dichos fondos firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de diez (10) días corridos contados desde la fecha pactada para el desembolso implicará la conformidad del MUTUARIO con el desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

**TERCERA:    DEVOLUCIÓN DEL PRÉSTAMO.**
**3.1**    El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 3 (TRES) Cuotas mensuales y consecutivas en la Cuenta del Mutuante.

**3.2**    Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegraran los intereses proporcionales correspondientes.

**CUARTA: MONEDA DE PAGO.**
**4.1**    El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

**4.2**    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:



**4.2.(a).** Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

**4.2.(b).** Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en el exterior, en una cantidad tal que, liquidados por el MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien



3

RANA (h)
NO
70

**4.2.(c).** En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

**4.2.(d).** Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

**4.3**     Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a una tasa de descuento del 11% anual.

**4.4**     Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el MUTUARIO.

**4.5.** Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUARIO haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

**QUINTA:     PAGARÉ.**
**5.1**     Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 3 (TRES) Pagarés, por la suma total de US$ 1.071.000,00 (Dólares Estadounidenses UN MILLON SETENTA Y UN MIL CON 00/100) – monto equivalente a la suma total del monto de cada Cuo-ta- pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MUTUANTE.

**5.2**     Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

**SEXTA: WARRANTS**
**6.1**     Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumpli-miento, el MUTUARIO endosa en este acto a favor del MUTUANTE los Warrants que más debajo se detallan por la suma de US$ 1.516.400,00 (Dólares Estadounidenses UN MILLON QUINIENTOS DIECISEIS MIL CUATROCIENTOS CON 00/100), cuyas copias se adjuntan al presente como **ANEXO I:**

**DETALLE DE LOS WARRANTS**

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE |
|---|---|---|---|---|---|---|
| 6335 A | QUESO | SanCor – Balnearia | 113.334 | KG | 28-09-2008 | 505.469,64 |
| 6336 A | QUESO | SanCor- Balnearia | 113.333 | KG | 28-09-2008 | 505.465,18 |
| 6337 A | QUESO | SanCor- Balnearia | 113.333 | KG | 28-09-2008 | 505.465,18 |
| | | | **340.000** | **KG** | | **1.516.400,00** |

**6.2**     Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumpli-miento el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE se constituyo en titular de todos 

RANA (los derechos y créditos derivados de los contratos de préstamo celebrados entre el MUTUARIO y IIG CAPITAL LLC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005; contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de Marzo de 2005; contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005; contrato de préstamo de fecha 29 de Marzo de 2005, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 12 de Septiembre de 2005, modificado por Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 27 de Septiembre de 2005, contrato de préstamo de fecha 22 de marzo de 2006, modificado mediante Enmienda de fecha 31 de Mayo de 2007; contrato de préstamo de fecha 20 de Julio de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 8 de Septiembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 20 de Octubre de 2006, modificado mediante Enmienda de fecha 29 de Junio de 2007; contrato de préstamo de fecha 27 de Diciembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 14 de Febrero de 2007; contrato de préstamo de fecha 27 de Septiembre de 2007, 14 de Diciembre de 2007, contrato de fecha 8 de Febrero de 2008 y 19 de Febrero de 2008, todos ellos adjuntos al presente como **ANEXO II.**

De tal manera, entre los Warrants que tenga en su poder el MUTUANTE con motivo de todos los contratos adjuntos al presente como **ANEXO II** mas los que se entregan con la firma del presente, el MUTUANTE deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 33,45% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22 de Marzo de 2006, 20 de Julio de 2006, 8 de Septiembre de 2006, 20 de Octubre de 2006, 27 de Diciembre de 2006, 14 de Febrero de 2007, 27 de Septiembre de 2007, 14 de Diciembre de 2007, 8 de Febrero de 2008, 19 de Febrero de 2008, 14 de Marzo de 2008 y el presente, menos las cuotas canceladas en los mismos dieciocho (18) contratos de mutuo.

**6.3** El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del MUTUARIO, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

**6.4** En caso de mora del MUTUARIO por cualquier causa que fuere – incluido pero no limitado a la falta de pago de cualquiera de las Cuotas del presente Contrato y/o de cualquier otro contrato suscripto entre las mismas Partes (con mas los intereses y gastos que eventualmente pudieran corresponder)- el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

**SEPTIMA: CESIÓN DE CRÉDITOS.**

**7.1** En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien los Créditos Cedidos garantizan todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como **ANEXO II**, el MUTUARIO estima –por tratarse de créditos futuros y eventuales- que el monto de dichos Créditos Cedidos resultan suficientes para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, los Créditos Cedidos quedarán afectados como garantía de cumplimiento de los quince contratos.

**7.2** La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le corresponden o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en los Créditos Cedidos, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia de los Créditos Cedidos. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

**7.3** El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asi- 9 of 9

mismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia de los Créditos Cedidos.

**7.4 (h)** Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el MUTUANTE se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tal factura deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

**7.5** Los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Cuotas.

    (i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales meses aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el **ANEXO III** del presente Contrato), y siempre que el MUTUARIO no registre en ese momento ninguna deuda vencida impaga contra el MUTUANTE, que tenga origen en este u otro contrato suscripto entre las mismas Partes, el MUTUANTE transferirá los fondos de los Créditos Cedidos que el Deudor Cedido deposite en su cuenta, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario indicada en la Cláusula PRIMERA.

    (ii)    Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en el **ANEXO III** del presente Contrato), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes.

    (iii)    En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses excedan el monto de la Cuota, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

**7.6** La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula NOVENA del presente Contrato.

**7.7** Las Partes acuerdan que, en virtud de la notificación de Cesión de derechos crediticios efectuada oportunamente por el MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18 de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte integrante del **ANEXO II** del presente Contrato y la notificación efectuada con motivo del ASSIGNMENT OF CREDITS– por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE- y la ratificación efectuada el 27 de Septiembre de 2007, el MUTUARIO no deberá notificar al Deudor Cedido la Cesión de derechos crediticios pactada por las partes en el presente Contrato.

**7.8** El presente Contrato no implica de forma alguna la transferencia por el MUTARIO al MUTUANTE de las obligaciones de los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que integren los Créditos Cedidos, o de cualquier forma discontinúe o termine su relación comercial con el Deudor Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.



**7.9**      El MUTUARIO garantiza al MUTUANTE:

(a)      el cobro de los Créditos Cedidos, en Dólares y mediante transferencia de los mismos a la Cuenta del Mutuante en cada Fecha de Vencimiento para satisfacer el  monto de cada Cuota.

(b)      la forma instrumental del mismo.

(c)      la legitimidad de los Créditos Cedidos y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

(d)      que no se encuentra inhibido para disponer de sus bienes;

(e)      que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;

(f)      que no ha percibido suma alguna derivada de los Créditos Cedidos, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el Acreedor Cedente de acuerdo al ASSIGNMENT OF CREDITS.

(g)      la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.

(h)      Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.

(i)      que el monto de los Warrants será equivalente como mínimo al 33,45% de la sumatoria de la totalidad de los Préstamos otorgados.

**7.10**      Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 66,55 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.9, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.

**OCTAVA:**      **MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO**
**8.1.**      **Manifestaciones y Declaraciones del MUTUARIO.**

A fin de inducir al MUTUANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

**8.1.1.**      Que el MUTUARIO es una Cooperativa en primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los  que participa en la actualidad;

**8.1.2.**      Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías;

**8.1.3.**      Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

**8.1.4**      Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

**8.1.5.**      Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y



**8.1.6.** Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido  y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

**8.1.7.** Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación (principal y accesoria) que resulte necesaria para el otorgamiento y perfeccionamiento de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

**8.1.8.** Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

**8.1.9.** Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

**8.1.10.** Que el balance del MUTUARIO al 30 de Junio de 2007, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2007 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

**8.1.11.** Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

**8.1.12.** Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

**8.1.13** Que conforme al conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

**8.1.14** Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

**8.1.15.** Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

**8.1.16.** Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

**8.1.17.** Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8

**8.1.18**   Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

**8.1.19** que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 33,45% de la sumatoria de la totalidad de las cuotas adeudadas.

**8.2**   **Compromisos y Obligaciones del MUTUARIO.**

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

**8.2.1.**   A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

**8.2.2.**   A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputasen por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

**8.2.3.**   A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

**8.2.4.**   A no realizar actos que constituyan o impliquen (i) una fusión, transformación, absorción, escisión o cualquier otro modo de reorganización societaria, transferencia de fondo de comercio o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

**8.2.5.**   A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

**8.2.6.**   A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoria de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

**8.2.7.**   A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

**8.2.8.**   A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o



peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

(h)

**8.2.9.** A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

**8.2.10.** A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

**8.2.11.** A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

**8.2.12.** A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses DOS MILLONES  con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

**8.2.13.** A no recomprar, rescatar ni amortizar sus propias acciones y a no reducir su capital, y

**8.2.14.** A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

**8.2.15.** A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato, y

**8.2.16.** A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales;  y

**8.2.17.** A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

**8.2.18.** A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

**8.2.19.** A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina  y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

**8.2.20.** A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MU-TUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

**8.2.21.** A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MU-TUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos; 

**NOVENA: MORA.**

**9.1** La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Présta-mo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas y del interés que dichas sumas devenguen hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las Partes acuerdan a razón de una tasa de interés anual equivalente a la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

**9.2** El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, consi-derar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

(a)   si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas,

(b)   si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)   si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o ini-ciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

(d)   si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedi-chos;

(e)   si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretare la inhibición general de bienes del MUTUARIO por un monto en exceso de Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f)   si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo ob-jeto del presente Contrato;

(g)   si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h)   si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i)   si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan los Créditos Cedidos;

(j)   si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fue-ren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dis-puesto en las alternativas detalladas en 4.2(a) a 4.2(d);

(k)   si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MU-TUARIO o se tomaren medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l)   Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.

**9.3** En adición a lo dispuesto en la Sección 9.1 precedente, la Mora del MUTUARIO por el incumplimien-to de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la



11

mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato -en los términos establecidos en la Sección 9.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de cualquiera de las Cuotas o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las sumas adeudadas bajo este Contrato los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE, incluidos, pero no limitados a los fondos que tengan origen en cesiones de derechos crediticios que le correspondan al MUTUARIO, por las transacciones abonadas o que se devengaren, derivadas del Contrato denominado "Exclusive Purchase Agreement" (y sus eventuales enmiendas, modificaciones y renovaciones) suscripto entre el MUTUARIO y FONTERRA LIMITED, con domicilio en Fonterra Centre, 9 Princes Street, Auckland, New Zealand, con fecha 01 de Octubre de 2007.

## DECIMA: COMISIONES Y GASTOS.

**10.1**      Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

**10.2**      Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

**10.3**      Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**10.4**      El MUTUARIO se comprometen a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

## DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.

El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también las nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

## DÉCIMO SEGUNDA: VIGENCIA – INDEMNIDAD

**12.1**      El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**12.2**      El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o





de la celebración de las operaciones previstos en ellos; (ii) los Créditos Cedidos adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 12.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

## DECIMO TERCERA: AUTORIZACIÓN

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO. En tal sentido, el MUTUARIO autorizan al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato.

## DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.

**14.1**    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

**14.2**    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

**14.3**    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada. En particular, en caso de Mora, el MUTUANTE tendrá la facultad de iniciar la ejecución de los Pagarés y/o los Warrants contra el MUTUARIO ante los Tribunales de la Ciudad de Buenos Aires, Republica Argentina.

**14.4**    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

**14.5**    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en el último párrafo de la presente Cláusula.

**14.6**    Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

**14.7**    El MUTUARIO irrevocablemente renuncian, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

**14.8**    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

MUTUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands 

ANA (h)

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del MUTUARIO y un ejemplar en poder del MUTUANTE.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 01 días del mes de Abril de 2008.-

Por: **SANCOR COOPERATIVAS UNIDAS LIMITADA**
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N°
Bs. As.

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: **JUSTOF B.V.**
representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**
Nombre: S. Strijbosch y F. Kuipers
Carácter: Apoderados

Trust International Management (T.I.M.) B.V.
Managing Director

14



ACTA DE CERTIFICACIÓN DE FIRMAS
LEY 404



## ANEXO                                    F 000972129

1   **Buenos Aires,**  1 **de**      **Abril**      **de**  2008  . **En mi carácter de Escribano**

2   Titular del Registro Notarial Nº 841

3   **CERTIFICO: Que la/s**   firma/s                      **que obra/n en el**

4   **documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s**

5   **firma/s que se formaliza simultáneamente por ACTA número**      59      **del**

6   **LIBRO número**      92      **, es/son puesta/s en mi presencia por la/s persona/s**

7   **cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de**

8   **cuyo conocimiento doy fe.**   Mario César MAGDALENA L.E. 8.106.144.- Mani-

9   fiesta actuar en su carácter de apoderado de la sociedad "SANCOR CO-

10  OPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales, Provincia

11  de Santa Fe, e inscripta en la Matrícula 772 del Registro Nacional de Co-

12  operativas, de la Provincia de Santa Fe, Departamento Castellanos, con-

13  forme lo acredita con el poder de fecha 23 de junio de 1993, pasado al folio

14  638 del Registro 200 de la ciudad de Sunchales, Provincia de Santa Fe, a

15  cargo del escribano Horacio Remondino, la documentación relacionada

16  tengo a la vista y le confiere facultades suficientes para suscribir el docu-

17  mento adjunto.-

18

19

20

21

22          MARTIN R. ARANA (h)
                ESCRIBANO
                MAT. 4370

23

24

25



F 000972129

26

27

28

29

30

31

32

33

34

35

36

37

38

39

40

41

42

43

44

45

46

47

48

49

50

**ANEXO I**
**FOTOCOPIAS DE LOS WARRANTS**

**ANEXO III**
**(Detalle de las cuotas)**

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 01-Octubre-2008 | U$S | 357.000,00 |
| SANCOR COOP. UNIDAS LTD. | 03-Noviembre-2008 | U$S | 357.000,00 |
| SANCOR COOP. UNIDAS LTD. | 01-Diciembre-2008 | U$S | 357.000,00 |
| | | **U$S** | **1.071.000,00** |



16

**ANEXO IV**
**PAGARÉ (sin protesto)**

Buenos Aires, _____ de _____ de 2008.                                                                                    0/0

**US$ _____**

El _____ de _____ de 2008 (en adelante la "<u>Fecha de Vencimiento</u>"), por igual valor recibido, _____., una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en_____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a **IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____. Argentina, la suma neta de Dólares Estadounidenses _____ (US$ _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en concepto de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demandare su cobro (judiciales y/o extrajudiciales), incluyendo honorarios razonables de abogados. Si el presente Pagaré no fuera íntegramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagares que el deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor –además del capital adeudado– los intereses correspondientes calculados a razón de una tasa del _____% anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra pari passu a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en éste Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los *Tribunales Ordinarios de la Ciudad de Buenos Aires*. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor: _____

Acreedor: _____

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, recibidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento; y en general a oponer cualquier defensa que no sea la de pago documentado.

**Deudor**

_____
Firma
Nombres: _____
Carácter: _____

17

**ANEXO**

## CONTRATO DE MUTUO CON CESION DE CREDITOS

Entre:

**SANCOR COOPERATIVAS UNIDAS LTDA.,** una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

**IIG TOF B.V.,** representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.,** una sociedad constituida bajo las leyes de Holanda, representada por los Sres. Sijth Strijbosch y Fokko Kuipers en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:

I.   Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

II.  Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

III. Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de prefinanciar las exportaciones de producción de sus productos ("Pre-financiacion").

IV.  Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

**PRIMERA:     DEFINICIONES.**
"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

I

| | |
|---|---|
| BANK: | STATE STREET CORP. |
| ABA#: | 011-001-438 |
| SWIFT: | INVBUS33 |
| Credit: | Client Funds |
| Account#: | 569-530-395 |
| Further Credit: | IIG TOF B.V– Sancor CUL |
| Account#: | 02030-8420148 |

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

| | |
|---|---|
| BANCO: | Wachovia Bank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| SWIFT: | PNBPUS3NNYC |
| A NOMBRE DE: | Banco Itau Buen Ayre S.A., Buenos Aires, Argentina |
| SWIFT CODE: | ITAUARBA |
| Cuenta Nro.: | 2000192261739 |
| ROUTING Nº: | FW026005092 |
| A FAVOR DE: | SanCor Cooperativas Unidas Limitada |
| CUENTA Nro.: | 01185361001 |
| REFERENCIA: | Prefinanciación de Exportación |

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidas en el ANEXO II del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudor/es Cedido/s" significa **ARTHUR SCHUMAN, INC.**, domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fecha/s de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el ANEXO II del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el Pagaré.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Pagaré/s" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 1.200.000,00 (Dólares Estadouniden-



2

ses UN MILLON DOSCIENTOS MIL CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Préstamo" significa el préstamo de US$ 1.106.744,44 (Dólares Estadounidenses UN MILLON CIENTO SEIS MIL SETECIENTOS CUARENTA Y CUATRO CON 44/100) que el MUTUANTE otorga al MUTUARIO y que será abonado de acuerdo a lo establecido en el presente Contrato.

"Pesos" Moneda de Curso legal de la República Argentina

"Warrant/s" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

## SEGUNDA:   PRÉSTAMO.
2.1     El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

2.2     El MUTUANTE procederá a abonar el Préstamo al MUTUARIO en un solo desembolso, mediante acreditación y/o depósito bancario del Préstamo en la Cuenta del Mutuario dentro de los cinco (5) días corridos contados desde la firma del presente.

2.3     Dentro del plazo de cinco (5) días hábiles contados desde la recepción de tales fondos en la Cuenta del Mutuario, el MUTUARIO deberán remitir al MUTUANTE un recibo confirmando la recepción de dichos fondos firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de diez (10) días corridos contados desde la fecha pactada para el desembolso implicará la conformidad del MUTUARIO con el desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

## TERCERA:   DEVOLUCIÓN DEL PRÉSTAMO.
3.1     El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 3 (TRES) Cuotas mensuales y consecutivas en la Cuenta del Mutuante.

3.2     Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegraran los intereses proporcionales correspondientes.

## CUARTA: MONEDA DE PAGO.
4.1     El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2     En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

4.2.(b). Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el



3

MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

**4.3**    Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a una tasa de descuento del 11% anual.

**4.4**    Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el MUTUARIO.

**4.5.** Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

**QUINTA:    PAGARÉ.**
**5.1**    Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 3 (TRES) Pagarés, por la suma total de US$ 1.200.000,00 (Dólares Estadounidenses UN MILLÓN DOSCIENTOS MIL CON 00/100) – monto equivalente a la suma total del monto de cada Cuota-pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MUTUANTE.

**5.2**    Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

**SEXTA: WARRANTS**
**6.1**    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE se constituyo en titular de todos los derechos y créditos derivados de los contratos de préstamo celebrados entre el MUTUARIO y IIG CAPITAL LLC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005; contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de Marzo de 2005; contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005; contrato de préstamo de fecha 29 de Marzo de 2005, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 12 de Septiembre de 2005, modificado por Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 27 de Septiembre de 2005, contrato de préstamo de fecha 22 de marzo de 2006, modificado mediante Enmienda de fecha 31 de Mayo de 2007; contrato de préstamo de fecha 20 de Julio de 2006, modificado mediante Enmienda de fecha 30 de



4

Julio de 2007; contrato de préstamo de fecha 8 de Septiembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 20 de Octubre de 2006, modificado mediante Enmienda de fecha 29 de Junio de 2007; contrato de préstamo de fecha 27 de Diciembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 14 de Febrero de 2007; contrato de préstamo de fecha 27 de Septiembre de 2007, 14 de Diciembre de 2007 y contrato de fecha 8 de Febrero de 2008 todos ellos adjuntos al presente como **ANEXO I.**

De tal manera, entre los Warrants que tenga en su poder el MUTUANTE con motivo de todos los contratos adjuntos al presente como **ANEXO I**, el MUTUANTE deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 33,45% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22 de Marzo de 2006, 20 de Julio de 2006, 8 de Septiembre de 2006, 20 de Octubre de 2006, 27 de Diciembre de 2006, 14 de Febrero de 2007, 27 de Septiembre de 2007, 14 de Diciembre de 2007, 8 de Febrero de 2008 y el presente, menos las cuotas canceladas en los mismos quince (15) contratos de mutuo **(el presente contrato y los catorce contratos cedidos por el ASSIGNMENT OF CREDITS adjunto como ANEXO I)**

6.2     El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática (en la cláusula NOVENA, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

6.3     En caso de mora del MUTUARIO por cualquier causa que fuere – incluido pero no limitado a la falta de pago de cualquiera de las Cuotas del presente Contrato y/o de cualquier otro contrato suscripto entre las mismas Partes (con mas los intereses y gastos que eventualmente pudieran corresponder)- el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

**SÉPTIMA:     CESIÓN DE CRÉDITOS.**
7.1     En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien los Créditos Cedidos garantizan todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como **ANEXO I**, el MUTUARIO estima –por tratarse de créditos futuros y eventuales- que el monto de dichos Créditos Cedidos resultan suficientes para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, los Créditos Cedidos quedarán afectados como garantía de cumplimiento de los quince contratos.

7.2     La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le correspondan o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en los Créditos Cedidos, como así también los remitos/facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia de los Créditos Cedidos. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

7.3     El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia de los Créditos Cedidos.

7.4     Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el MUTUANTE se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tal factu-



ra deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5   Los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Cuotas.

(i)   Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el **ANEXO II** del presente Contrato), y siempre que el MUTUARIO no registre en ese momento ninguna deuda vencida impaga contra el MUTUANTE, que tenga origen en este u otro contrato suscripto entre las mismas Partes, el MUTUANTE transferirá los fondos de los Créditos Cedidos que el Deudor Cedido deposite en su cuenta, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario indicada en la Cláusula PRIMERA.

(ii)   Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en el **ANEXO II** del presente Contrato), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes.

(iii)   En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses excedan el monto de la Cuota, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6   La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula NOVENA del presente Contrato.

7.7   Las Partes acuerdan que, en virtud de la notificación de Cesión de derechos crediticios efectuada oportunamente por el MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18 de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte integrante del **ANEXO I** del presente Contrato y la notificación efectuada con motivo del ASSIGNMENT OF CREDITS– por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE– y la ratificación efectuada el 27 de Septiembre de 2007, el MUTUARIO no deberá notificar al Deudor Cedido la Cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8   El presente Contrato no implica de forma alguna la transferencia por el MUTARIO al MUTUANTE de las obligaciones de los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO– el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que integren los Créditos Cedidos, o de cualquier forma discontinúe o termine su relación comercial con el Deudor Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

7.9   El MUTUARIO garantiza al MUTUANTE:
(a)   el cobro de los Créditos Cedidos, en Dólares y mediante transferencia de los mismos a la Cuenta del Mutuante en cada Fecha de Vencimiento para satisfacer el monto de cada Cuota.
(b)   la forma instrumental del mismo.
(c)   la legitimidad de los Créditos Cedidos y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

6



(d)    que no se encuentra inhibido para disponer de sus bienes;

(e)    que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;

(f)    que no ha percibido suma alguna derivada de los Créditos Cedidos, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el Acreedor Cedente de acuerdo al ASSIGNMENT OF CREDITS.

(g)    la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.

(h)    Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.

(i)    que el monto de los Warrants será equivalente como mínimo al 33,45% de la sumatoria de la totalidad de los Préstamos otorgados.

7.10    Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 66,55 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.9, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.


**OCTAVA: MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO**
8.1.    Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

8.1.1.    Que el MUTURARIO es una Cooperativa en primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad;

8.1.2.    Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías; y

8.1.3.    Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

8.1.4    Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

8.1.5.    Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

8.1.6.    Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido y/o disposición alguna emanada de los estatutos



7

vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

8.1.7. Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o límite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación (principal y accesoria) que resulte necesaria para el otorgamiento y perfeccionamiento de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

8.1.8. Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

8.1.9. Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

8.1.10. Que el balance del MUTUARIO al 30 de Junio de 2007, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan una forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2007 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

8.1.11. Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

8.1.12. Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

8.1.13 Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

8.1.14 Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

8.1.15. Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

8.1.16. Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

8.1.17. Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8.1.18 Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

8.1.19 que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las cuotas adeudadas.




**8.2     Compromisos y Obligaciones del MUTUARIO.**

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

8.2.1.    A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

8.2.2.    A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputasen por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

8.2.3.    A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

8.2.4.    A no realizar actos que constituyan o impliquen (i) una fusión, transformación, absorción, escisión o cualquier otro modo de reorganización societaria, transferencia de fondo de comercio o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

8.2.5.    A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

8.2.6.    A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

8.2.7.    A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

8.2.8.    A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarias bajo las Normas Aplicables, y

8.2.9.    A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y



8.2.10.   A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

8.2.11.   A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

8.2.12.   A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses DOS MILLONES  con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

8.2.13.   A no recomprar, rescatar ni amortizar sus propias acciones y a no reducir su capital, y

8.2.14.   A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

8.2.15.   A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato, y

8.2.16.   A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

8.2.17.   A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

8.2.18.   A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

8.2.19.   A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento ante el MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

8.2.20.   A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

8.2.21.   A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MUTUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

NOVENA: MORA.

9.1      La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Préstamo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas y del interés



que dichas sumas devenguen hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las Partes acuerdan a razón de una tasa de interés anual equivalente a la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

9.2    El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, considerar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

(a)    si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas,

(b)    si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)    si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

(d)    si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos;

(e)    si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretare la inhibición general de bienes del MUTUARIO por un monto en exceso de Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f)    si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo objeto del presente Contrato;

(g)    si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h)    si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i)    si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan los Créditos Cedidos;

(j)    si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fueren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dispuesto en las alternativas detalladas en 4.2(a) a 4.2(d);

(k)    si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaren medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l)    Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.

9.3    En adición a lo dispuesto en la Sección 9.1 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato -en los términos establecidos en la Sección 9.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de cualquiera de las Cuotas o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el



11

MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las sumas adeudadas bajo este Contrato los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE, incluidos, pero no limitados a los fondos que tengan origen en cesiones de derechos crediticios que le correspondan al MUTUARIO, por las transacciones abonadas o que se devengaren, derivadas del Contrato denominado "Agency Marketing Sales Agreement" (y sus eventuales enmiendas, modificaciones y renovaciones) suscripto entre el MUTUARIO y FONTERRA CO-OPERATIVE GROUP LIMITED, con domicilio en Fonterra Centre, 9 Princes Street, Auckland, New Zealand, con fecha 7 de Diciembre de 2004.

### DÉCIMA: COMISIONES Y GASTOS.

**10.1**     Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

**10.2**     Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

**10.3**     Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**10.4**     El MUTUARIO se compromenten a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

### DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.

El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también las nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

### DÉCIMO SEGUNDA: VIGENCIA – INDEMNIDAD

**12.1**     El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**12.2**     El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstos en ellos; (ii)  los Créditos Cedidos adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o



procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 12.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

## DECIMO TERCERA: AUTORIZACIÓN
El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO. En tal sentido, el MUTUARIO autorizan al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato.

## DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.
14.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

14.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

14.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada. En particular, en caso de Mora, el MUTUANTE tendrá la facultad de iniciar la ejecución de los Pagarés y/o los Warrants contra el MUTUARIO ante los Tribunales de la Ciudad de Buenos Aires, Republica Argentina.

14.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

14.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en el último párrafo de la presente Cláusula.

14.6    Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

14.7    El MUTUARIO irrevocablemente renuncian, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal unipersonal o colegiado que intervieniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

14.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

MUTUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands



13

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 19 días del mes de Febrero de 2008.-

_____
Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
Nº. F00405166 J
Bs. As. 19 /Febrero /2008

CLAUDINA ETCHEPARE
ESCRIBANA
MAT. 4878

_____
Por: IIG TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: S. Strjbosch / F. Kuipers
Carácter: Attorney A / B

Trust International Management (T.I.M.) B.V.
Managing Director

14

## ANEXO II
(Detalle de las cuotas)

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 01-Octubre-2008 | U$S | 400.000,00 |
| SANCOR COOP. UNIDAS LTD. | 03-Noviembre-2008 | U$S | 400.000,00 |
| SANCOR COOP. UNIDAS LTD. | 01-Diciembre-2008 | U$S | 400.000,00 |
| | | U$S | 1.200.000,00 |



**ANEXO III**
**PAGARÉ (sin protesto)**

0/0

Buenos Aires, _____ de _____ de 2008.

US$ _____

El _____ de _____ de 2008 (en adelante la "Fecha de Vencimiento"), por igual valor recibido, _____, una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en _____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____, Argentina, la suma neta de Dólares Estadounidenses _____ (US$ _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en concepto de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demandare su cobro (judiciales y/o extrajudiciales), incluyendo honorarios razonables de abogados. Si el presente Pagaré no fuera íntegramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagarés que el deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor –además del capital adeudado- los intereses correspondientes calculados a razón de una tasa del _____% anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra pari passu a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en éste Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor: _____

Acreedor: _____

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, recibidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor, y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento; y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor

_____
Firma
Nombres: _____
Carácter: _____

16

  **ACTA DE CERTIFICACION DE FIRMAS**
**LEY 404**  

F 004051665

1  Buenos Aires, 19 de   Febrero    de   2008 . En mi carácter de Escribano

2  Interinamente a cargo del Registro Notarial Nº 841

3  CERTIFICO: Que la/s   firma/s                    que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número        125        del

6  LIBRO número         90         , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe.   Mario César MAGDALENA L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13

14

15

16

17

18

19

20

21

22

23

24




# ASSIGNMENT OF CREDITS

THIS AGREEMENT is dated as of the 25th day of April of 2006 by and among:

1.  IIG Capital LLC AS AGENT, a company incorporated under the laws of the State of New York, United States of America, with statutory seat in New York and registered office at 1500 Broadway, 17th Floor, New York, New York, 10036, USA (the "Assignor").

2.  Mauritio TOF B.V., a company incorporated under the laws of The Netherlands, with statutory seat in Amsterdam and registered office at Naritaweg 165, 1043 BW Amsterdam, the Netherlands (the "Assignee"), and

3.  Sancor Cooperativas Unidas Ltda., a cooperative incorporated under the laws of the Republic of Argentina, with statutory seat in Sunchales, Provincia de Santa Fe, and place of business at Tacuari 202 - 3° Piso – Ciudad Autónoma de Buenos Aires, Republic of Argentina (the "Company").

WHEREAS:

—   pursuant to .the agreements signed in the following dates: 18/Aug/2004, 22/Nov/2004, 26/Nov/2004, 29/Mar/2005, 12/Sept/2005, 27/Sept/2005 and 22-Mar/2006 between the Company and the Assignor (the "Agreements") attached hereto as Exhibit I and forming part of this agreement, the Assignor has a credit against the Company for an amount of US$ 14.591.875,03 (Dollars forteen millions five hundred and ninety one thousand eight hundred and seventy five with 03/100);

—   the Assignor wishes to transfer to the Assignee all its rights and interests arising and/or deriving from the Agreements and the Assignee accepts such transfer subject to the terms and conditions set out in this agreement;

NOW IT IS HEREBY AGREED as follows:

1.  The Assignor hereby assigns and transfers to Assignee all rights and interests arising and/or deriving from the Agreements.

2.  The assignment of all rights and interests of the Agreements shall be effective as of the date hereof. All rights and interests pursuant to the Agreements shall accrue for the benefit of the Assignee as from the date hereof. The Assignor hereby delivers to the Assignee all the invoices and other documents previously transferred by the Company to the Assignor in connection with Section Seven to the Agreements (the "Invoices"). Likewise, the Assignor hereby delivers and transfers, dully endorsed, to the Assignee the Promissory Notes (as defined in the

1

Agreements and issued by the Company as provided in Section Fifth to such agreements) and the Warrants (as defined in the Agreements and transferred by the Company as set forth in Section Sixth to such agreements).

3. In consideration of the transfer the Assignee pays to the Assignor the amount of US$ 13.630.579,43, receipt of which is hereby acknowledged by the Assignor.

4. The Assignor represents and warrants that:

4.1    no payment has yet been made by the Company to, or for the benefit of the Assignor;

4.2    no agreement has been made under which the Company may claim any deduction on interest and principal except as otherwise stated in Exhibit I;

4.3    all rights and interests in the Agreements have not been previously assigned, transferred or pledged in favor of any other third party; and that, other than the Assignor, no person, firm or entity has any claim whatsover to said Agreements or any amounts due under the Refinancing Agreement;

4.4    if at any time any of the amounts due under the Agreements, described in Exhibit I, shall come into the possession or control of the Assignor, the latter shall immediately transfer any such amounts to the Assignee.

4.5    no party under the Agreements is in default of any of its terms or conditions. Without limiting the generality of the foregoing, the Assignor has duly performed all obligations required to be performed prior to the date hereof.

4.6    no Invoice, Promissory Note and/or Warrants transferred by the Company to the Assignor as provided in the Agreements remains in the Assignor's possession upon their delivery to the Assignee as set forth in paragraph 2 to this agreement.

5. The Assignee agrees to indemnify and hold the Assignor harmless from and against any obligations arising under the Agreements which by terms of the Agreements are required to be performed by the Assignor as from and after the date of this agreement.

6. By executing this agreement the Company formally acknowledges this assignment and agrees as from the date hereof it will not be discharged in the fulfillment of its obligations under the Agreements if it makes any future payments in favor of Assignor.

7. All parties acknowledge that all payments to be made by the Company under this agreement and/or under the Agreements shall be to made to the following account of the Assignee:

2

BANCO:                  Societe Generale, New York
ABA#:                   026-004-226
Credit:                 Societe Generale, Amsterdam, The Netherlands
SWIFT:                  SOGENLZA
Account:                00150134
Further Credit:         Mauritio TOF BV
Account#:               0270209042

8.   This agreement shall be governed by the laws of The Netherlands. Disputes arising under, out of or connected with this agreement shall be subject to the exclusive jurisdiction of the Courts of The Netherlands to which the parties hereby submit.

IN WITNESS THEREOF, the parties hereto have executed this Agreement in three countercopies as of the date first written above.

IIG Capital LLC AS AGENT
Name:
Title:

Mauritio TOF B.V.
Name: Trust International Management (T.I.M.) B.V.
Title:            Managing Director

Sancor Cooperativas Unidas Ltda.
Name: Mario Magdalena
Title: Apoderado

A los efectos de su certificación suscribe nuevamente en Buenos Aires a 19 de mayo de 2006

Firma/s certificada/s en foj
N° P000760957
Bs. As. 19-5-2006



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

3



F 000580957

## ANEXO

Buenos Aires, 19 de Mayo de 2006 . En mi carácter de Escribano

Titular del Registro Notarial Nº 841

CERTIFICO: Que la/s firma que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 130 del

LIBRO número 63 , es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

exhibe y le confiere facultades suficientes para suscribir el documento ad-

junto.- El documento se encuentra escrito en idioma extranjero.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Entre SANCOR COOPERATIVAS UNIDAS LTDA. representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado, domiciliado en Tacuarí 202 - 1° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y BG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderado, domiciliado en 1500 Broadway, 17th Floor, New York, NY ?, 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente contrato de mutuo, suje... a las siguientes cláusulas y condiciones:

PRIMERA: PRÉSTAMO.
El Deudor solicita al Acreedor en calidad de préstamo, y el Acreedor entrega al Deudor, la suma de US$ 3,486,541.00 (Dólares estadounidenses TRES MILLONES CUATROCIENTOS OCHENTA Y SEIS MIL QUINIENTOS CUARENTA Y UNO CON 00/100) (en adelante el "Préstamo") El Acreedor procederá a abonar al Deudor dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

BANCO:            Wachovia Bank, N.A.
DIRECCIÓN:        New York, U.S.A.
SWIFT:            PNBPUS3NNYC
A NOMBRE DE: Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE:   ITAUARBA
Cuenta Nro.:      2000192261739
ROUTING N°:   FW026005092
A FAVOR DE:   SanCor Cooperativas Unidas Limitada
CUENTA Nro.:  0118536I001
REFERENCIA:   Prefinanciación de Exportación

Dicha suma  será aplicada por el Deudor a financiar prefinanciación de exportaciones.

SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1      El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en ocho (8) cuotas iguales, trimestrales y consecutivas de US$ 500,030.50 (Dólares estadounidenses QUINIENTOS MIL TREINTA Y SEIS CON 50/100) cada una (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s  de Vencimiento") hasta completar, mediante el pago en término de las ocho Cuotas, el pago de la suma total de US$ 4,004,292.00 (Dólares estadounidenses CUATRO MILLONES CUATRO MIL DOSCIENTOS NOVENTA Y DOS CON 00/100), comprensivo del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

        Primera Cuota:       20 de Febrero de 2005
        Segunda Cuota:       20 de Mayo de 2005
        Tercera Cuota:       20 de Agosto de 2005
        Cuarta Cuota:        20 de Noviembre de 2005
        Quinta Cuota:        20 de Febrero de 2006
        Sexta Cuota:         20 de Mayo de 2006
        Séptima Cuota:       20 de Agosto de 2006
        Octava Cuota:        20 de Noviembre de 2006

Los pagares de ello, transcurridos como máximo (.) días contados a partir de la suma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo -con fondos propios o mediante pagos de activar deudores, de .... caso se le acreditarán los intereses proporcionales correspondientes antes mencionados.

2.2      El Deudor realizará el pago de las Cuotas y de una otra suma debida al Acreedor en virtud del presente Contrato al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

BANCO:            CITIBANK, NY
ABA #:            021-000-089
CREDIT:           SANCOR C.U.L – ESCROW ACCOUNT
ACCOUNT #:        05000639

TERCERA: MORA.
3.1      La mora del Deudor en el cumplimiento de las obligaciones pactadas en el presente Contrato – incluyendo sin limitación, el pago en tiempo y forma de las Cuotas se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el Acreedor tendrá derecho a considerar la deuda como de plazo vencido y exigir y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el acreedor



tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

3.2   Si Acreedor también tendrá la facultad de considerar la deuda como de plazo vencido y solicit... el pago de todo lo adeudado en los siguientes casos: (a) si un tercero pidiere la quiebra del Deudor y no ... rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondier... (b) si el Deudor solicitara su propio concurso preventivo de Acreedores, la homologación de un Acuerdo ... Extrajudicial o cualquier otra forma de reestructuración de su deuda; (c) si se trabare alguna m...comprometer su solvencia patrimonial; (d) Si se comprobare ...sobre sus bienes que por su magnitud comprometer su solvencia patrimonial; (e) si hay ...falta de veracidad, parcial o total, por parte del Deudor, en las aplicaciones de este préstamo; (e) si hay ...ción sustancial, en desmedro de la situación patrimonial del Deudor y (f) si se produjere cualquier alteración societaria o en la situación financiera del Deudor que, a criterio razonable del Acreedor, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del presente Contrato.

CUARTA: MONEDA DE PAGO.
4.1   El Deudor asume que el pago del importe total o el saldo que eventualmente adeude en virtud del Préstamo deberá ser necesariamente abonado en dólares estadounidenses billete o transferencia y no en otra moneda. En consecuencia, el Deudor expresament... reconoce y acepta que constituye condición esen... cial de este contrato que la devolución del Préstamo ... como los intereses, compensatorios y punitorios, costes, costas y demás sumas a ser abonadas al Acreedor en virtud del presente, se cancelen en dólares estadounidenses en los términos del artículo 619 del Código Civil, renunciando expresamente a invocar la teoría de la imprevisión contemplada en el segundo párrafo del artículo 1198 del Código Civil.

4.2   El Acreedor, ante la existencia de normas legales o reglamentarias que impidieran que los importes que deba percibir sean abonados por el Deudor, en dólares estadounidenses billete o transferencia, podrá aceptar en forma expresa que los pagos, se efectúen mediante la entrega de la cantidad de moneda argentina necesaria para poder adquirir en el Mercado de Valores de Buenos Aires o en el mercado abierto, Bonos Externos de la República Argentina de cualquier serie, o para el caso en que éstos hayan sido totalmente rescatados, títulos de deuda pública argentina, nacional o provincial, o títulos de deuda privada argentina, con o sin cotización, a elección del Acreedor, que negociados en el mercado de Montevideo, República Oriental del Uruguay, o de Nueva York, N.Y., Estados Unidos de Norteamérica, produzcan, neto de comisiones gastos e impuestos, la cantidad de dólares estadounidenses billetes o transferencia que correspondan ser abonados en virtud del presente. La determinación de la cantidad de títulos de deuda pública o privada necesaria será efectuada por el Acreedor basándose en la cotización en el Mercado de Valores de Buenos Aires o cualquier otro mercado nacional o internacional del día anterior a la fecha del pago. De no poder efectuarse el p...to en la forma precedentemente detallada, por inexistencia o imposibilidad de obtener títulos de deuda púb...o privada argentina que puedan ser objeto de transacción en los mercados aludidos, el Deudor deberá en...egar Bonos de otros países que suplan la imposibilidad mencionada, estando sujetos los mismos a idénticos re... quisitos que los previstos para los Bonos Externos de la República Argentina.

QUINTA: PROMISSORY NOTES.
Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor ocho (8) pagarés por la suma de US$ 109.036,50 (Dólares estadounidenses QUINIENTOS OCHO MIL TREINTA Y SEIS CON 50/100) cada uno –suma equivalente al monto de cada Cuota–, pagaderos en las Fechas de Vencimiento (en adelante ellos "Promissory Notes"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Promissory Notes y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acre... or. El Acreedor se compromete a devolver los Promissory Notes al Deudor a medida que vayan siendo pa... das las Cuotas, debiendo reintegrar cada Promissory Note en un plazo no mayor a diez (10) días desd... que haya sido abonada la Cuota correspondiente a dicho Promissory Note.

SEXTA: WARRANTS.
6.1   Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento, el Deudor endosa en este acto a favor del Acreedor los warrants que más debajo se detallan por la suma de US$ 2.440.000,00 (Dólares estadounidenses DOS MILLONES CUATROCIENTOS CUARENTA Y CINCO ... L con 00/100), suma que comprende como mínimo el 50% del monto total de las Cuotas con más un 10,00% de aforo (en adelante ellos "Warrants"), cuyas copias se adjuntan al presente como Anexo I.

DETALLE DE LOS WARRANTS

| N° WA-RRANT | PRODUCTO | DEPOSITO | CANTIDAD | IMPORTE |
|---|---|---|---|---|
| 20103 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 | KG | 180.000,00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 28104 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28105 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28106 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28107 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28108 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28109 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28110 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28111 | QUESO REGGIANITO (DURO) | | BRICKMANN | 50.000,00 | KG | 100.000,00 |
| 28112 | QUESO PATEGRAS (SEMI DURO) | | BALNEARIA | 100.000,00 | KG | 250.000,00 |
| 28113 | QUESO PATEGRAS (SEMI DURO) | | BALNEARIA | 100.000,00 | KG | 250.000,00 |
| 28114 | QUESO EN BARRILES (DURO) | | LA CARLOTA | 100.000,00 | KG | 325.000,00 |
| | TOTAL | | | | | 2.445.000,00 |

6.2    El Acreedor irá reintegrando los Warrants al Deudor a medida que éste último abone las Cuotas, teniendo en cuenta como premisa fundamental al efecto, que el Acreedor en todo momento durante la vigencia del presente Contrato deberá contar con Warrants (endosados a su favor por el Deudor) por un monto equivalente a la mitad del saldo impago del Préstamo –es decir, 50% del monto total de las Cuotas impagas con más un 10,00% de dicho monto en concepto de aforo. A modo de ejemplo, cuando el Deudor le resten pagar cuatro Cuotas (US$ 2.032.140), el Acreedor deberá contar con Warrants endosados a su favor por el Deudor por un monto no inferior a US$ 1.128.970,00.

6.3    Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art. 26 de la Ley 9643, el Deudor se obliga a reemplazar periódicamente los Warrants antes de los 180 días contados desde la fecha de emisión de los mismos, debiendo entregar al Acreedor nuevos Warrants por un monto igual al de los Warrants originales, sin perjuicio de lo establecido en la Sección 6.2 de la presente Cláusula. A fin de determinar la cantidad de mercadería que el Deudor deberá depositar para la emisión de los certificados de depósito correspondientes a los Warrants antedichos, se tomará en cuenta el precio de mercado de dicha mercadería, vigente al momento de dicho depósito. El mantenimiento de la garantía constituida por los Warrants, por los montos y en la forma precedentemente establecida, constituye una condición esencial para el otorgamiento del Préstamo al Deudor. Consecuentemente, la falta de acuerdo –por cualquier motivo que fuere- en la calidad y/o cantidad de mercadería a ser depositada antes del plazo de 180 días desde la emisión de los Warrants a ser reemplazados, producirá la mora automática del Deudor sin necesidad de interpelación alguna, provocando la caducidad de todos los plazos con los efectos estipulados en la Cláusula TERCERA del presente Contrato.

6.4    El Deudor declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería deberá comunicar dicha circunstancia al Acreedor dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del Deudor, con los efectos pactados en la cláusula TERCERA. En todos los casos, el Deudor deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al Acreedor.

6.5    En caso de mora del Deudor por cualquier causa que fuere, el Acreedor quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el Acreedor se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA: CESIÓN DE CRÉDITOS.

7.1    En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el Deudor cede al Acreedor, todos los derechos creditorios que le correspondan sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido").

7.2    La presente cesión implica también la cesión y transferencia a favor del Acreedor de todos los derechos y acciones que le correspondan o puedan corresponderle al Deudor sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también las remisiones/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen a Arthur Schuman en virtud o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido", tal como se define en este Contrato, comprende todos los remitos, facturas y demás documentos que se emitan en virtud de las transacciones comerciales que celebre con Arthur Schuman y le correspondan respecto del Crédito

Cedido y de las consecuencias precedentemente citadas, subsanando además en todos los derec... o ac-
de privilegio con toda la extensión y amplitud pertinente, subrogándolo además existieran con respecto a di... ... cr...
los, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del
Deudor.

7.3    El Deudor se compromete a entregar al Acreedor, dentro de los 5 (cinco) días de su despacho, los
conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se
obliga a entregar al Acreedor, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, los remitos y
facturas que emita como consecuencia del Crédito Cedido

        Asimismo, el Deudor garantiza que todas las sumas correspondientes al Crédito Cedido serán depo-
sitadas por Arthur Schuman en la cuenta bancaria del Acreedor indicada en la Sección 2.2 del presente Con-
trato. A tal efecto, el Deudor se obliga, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTI-
MA, el Deudor se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido
que sean remitidas a Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser
pagada al Acreedor mediante transferencia de los fondos correspondientes a la cuenta bancaria antes seña-
lada.

7.5    Los fondos del Crédito Cedido depositados en la cuenta bancaria del Acreedor serán aplicados al
pago de las Cuotas.

        (i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (en-
               tendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de
               Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor transferirá los
               fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de las 48 hs.
               de recibidos, a la cuenta bancaria del Deudor indicada en la Cláusula PRIMERA.

        (ii)   Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendién-
               dose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondien-
               tes a las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el
               Acreedor aplicará los fondos del Crédito Cedido depositados en su cuenta a pre...
               monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho ... ...  En el
               caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales
               meses excedan el monto de la Cuota, el excedente será transferido al Deudor de la forma
               indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito
               Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para
               cubrir el importe de la Cuota, el Deudor será responsable de aportar la diferencia, hasta
               completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimien-
               to, bajo apercibimiento de mora.

7.6    La presente cesión se efectúa con responsabilidad por parte del Deudor hacia el Acreedor. En con-
secuencia, si por cualquier causa el importe del Crédito Cedido no fuere abonado al Acreedor conforme los
términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de
Vencimiento, el Deudor deberá abonar al Acreedor el importe total o el saldo adeudado correspondiente a
cada Cuota, antes de cada Fecha de Vencimiento, ... apercibimiento de incurrir en mora automática, en los
términos de la Cláusula TERCERA del presente Co...  ...o.

7.7    El Deudor se obliga a notificar ... forma fehaciente esta cesión a Arthur Schuman y a obtener la
aprobación expresa de este último respecto de la presente cesión. A tales fines dentro de las 48 hs. del pre-
sente Contrato, y previo al desembolso del Préstamo, el Deudor comunicará a Arthur Schuman, con interven-
ción notarial, que el Crédito Cedido ha sido transferido al Acreedor, y que el depósito de las sumas corres-
pondientes al Crédito Cedido deberá efectuarse en la cuenta del Acreedor detallada en la cláusula SEGUN-
DA ...artado 2.2, debiendo Arthur Schuman ...mediante su aprobación o representante legal- firmar al pie de
dic...  utilización como constancia de aceptación de la misma. El Deudor deberá entregar dicha notificación
al Acreedor, con la aceptación de Arthur Schuman en la forma antes indicada, como condición previa a la
transferencia del Préstamo establecida en la Cláusula PRIMERA. Cuando todas las Cuotas y demás sumas
que pudieren corresponder en virtud del presente Contrato hayan sido abonadas al Acreedor, este último
comunicará a Arthur Schuman que, a partir de dicha fecha, el Créd... Cedido deberá ser pagado nuevamente
al Deudor.

7.8    El presente Contrato no implica de forma alguna la transferencia por el Deudor al Acree... ... las
obligaciones del Crédito Cedido, las que permanecerán en cabeza del Deudor. El Deudor se c...  ...mente
irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de l...  ...ntos
que causen el Crédito Cedido, de modo que no se vea afectado el derecho del Acreedor al cobro ... Crédito
Cedido. Asimismo, el Deudor se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de
una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al Acreedor los detalles



(volumen, precio, etc.) de la mercadería recibida en los términos indicados en la Sección 7.10 de la presente Cláusula SEPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del Deudor- Arthur Schuman rescinda o resuelva los contratos de compraventa de mercadería que integren el Crédito Cedido, o de cualquier forma discontinúe o termine su relación comercial con Arthur Schuman, ya sea en forma unilateral o de común acuerdo entre el Deudor y Arthur Schuman.

El Deudor garantiza al Acreedor:

(a) el cobro del Crédito Cedido;
(b) la forma instrumental del mismo;
(c) la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d) que no se encuentra inhibido para disponer de sus bienes;
(e) que no se adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido;
(f) que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad;
(g) la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.
(h) Que cumplirá con todas y cada una de las obligaciones a su cargo     emergentes del Crédito Cedido, incluyendo –pero no limitado a- la entrega en tiempo y forma a Arthur Schuman de la mercadería objeto del Crédito Cedido.

7.10    Durante la vigencia del presente Contrato, el Deudor se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al Acreedor, el estado de deuda de Arthur Schuman con el Deudor, remitiendo a tal efecto un informe firmado por un contador público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur Schuman y recibidas por el Deudor a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalada estarán por exclusiva cuenta del Deudor. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA.

OCTAVA: GASTOS.
Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA –sección 2.2- y SEPTIMA –Sección 7.5), tributos y/o gastos (impuesto de sellos, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del Deudor. El Deudor se compromete a abonar al Acreedor en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Asimismo, el Deudor se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa o indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, deslindando al Acreedor de cualquier obligación al respecto.

NOVENA: CESIÓN DEL CONTRATO.
El Acreedor podrá ceder el presente contrato en su totalidad, por cualquiera de los medios previstos en la Ley, adquiriendo el Acreedor por los mismos beneficios y/o derechos que es, titular el Acreedor en virtud de este contrato. En ese caso, el Acreedor deberá comunicar en forma fehaciente la cesión al Deudor, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el Deudor oponer al Acreedor del contrato cualquier defensa que hubiera podido oponer al Acreedor cedente.

DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.
10.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2    El Deudor irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de Nueva York para cualquier acción, juicio o procedimiento que



pueda ser iniciado por el Acreedor en relación con el presente contrato, en sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.2   Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otro tipo- la facultad exclusiva del Acreedor de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4   El Deudor por el presente designa y autoriza ... forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, corresponda ... y/o notificaciones dirigidas al Deudor en cualquier acción, juicio o procedimiento que el Acreedor pudiera iniciar en el Estado de New York, debiendo asimismo el Deudor informar al Acreedor sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5   Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003 no estuviere presente, el Deudor acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Est. ... Unidos de América, en el domicilio del Deudor indicado en el último párrafo de la presente Cláusula.

10.6   Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7   El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer ... cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales ... cionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el Ac... y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o inconveniant forum, respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el Deudor renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniere en la contienda. EL Deudor sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del Acreedor que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

10.8   Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

Deudor:   1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003

2) Tacuarí 202 - 3° Piso - Capital F... ..al, República Argentina

Acreedor: 1500 Broadway, 17th Floor, New Yo... ...ew York, 10036, USA

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del Deudor y un ejemplar en poder del Acreedor.

Suscripto por el "Cedente" en la Ciudad de Buenos Aires, República Argentina y por el "Cesionario" en la Ciudad de New York, USA, a los 18 días de Agosto de 2004.

Por SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

MARTIN H. ARANA ...

Por IIG CAPITAL LLC AS AGENT

Nombre: Thomas LaVecchia
Carácter: Senior Director





ANEXO

F 000279451

Buenos Aires, 18 de Agosto de 2004. En mi carácter de Escribano

Interino del Registro Notarial Nº 841

CERTIFICO: Que la firma que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 132 del

LIBRO número 44 están puesta/s en mi presencia por la/s persona/s

cuya/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe: Mario César MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que

tengo a la vista y le confiere  cultades suficientes para suscribir el docu-

mento adjunto.-

Buenos Aires, August 18, 2004

Messrs.:
ARTHUR SCHUMAN INC.
40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA
Tel.: + 1 973 227 0030 – Fax: + 1 973 227 1525
Att.: MICHAEL FLYNN

Dear Sirs:

We address to you in order to give you notice of the Assignment Agreement dated August 18, 2004, executed between SANCOR COOPERATIVAS UNIDAS LTDA. and IIG CAPITAL LLC AS AGENT, whereby SANCOR COOPERATIVAS UNIDAS LTDA. has assigned and transferred to IIG CAPITAL LLC AS AGENT, and IIG CAPITAL LLC AS AGENT has accepted and received all the rights and credits (both credits existing at present or credits that may exist in the future) derived from all and any commercial transactions and business operations that SANCOR COOPERATIVAS UNIDAS LTDA. execute and/or may execute with Arthur Schuman, Inc. between August 1st, 2004 and June 1st, 2007.

Therefore, SANCOR COOPERATIVAS UNIDAS LTDA. and IIG CAPITAL LLC AS AGENT hereby confirm that pursuant to the terms and conditions of the aforementioned Assignment Agreement all the sums and credits hereinabove referred –including, without limitation, the credits derived from the Invoices and other documentation that SANCOR COOPERATIVAS UNIDAS LTDA. submit to you as a consequence of said commercial transactions, as well as the letters of credit that you may open in order to pay those Invoices- are to be fully paid to IIG CAPITAL LLC AS AGENT by wire transfer of the corresponding funds to the following bank account:

BANCO:          CITIBANK, NY
ABA #:          021-000-089
CREDIT:         SANCOR C.U.L. – ESCROW ACCOUNT
ACCOUNT #:      05006639

Furthermore, the letters of credit that your firm may open to pay the aforementioned Invoices shall indicate the bank account hereinabove referred as the payment account.

The aforementioned Assignment Agreement shall not transfer and/or modify the liability of SANCOR COOPERATIVAS UNIDAS-LTDA. derived from the referred commercial transactions and business operations. Thus, SANCOR COOPERATIVAS UNIDAS LTDA. remains being fully and exclusively responsible for any and all the obligations derived thereof.

Sincerely yours,

Por SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Caracter: Apoderado

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4070

Por IIG CAPITAL LLC AS AGENT
Nombre: Thomas LaVecchia
Caracter: Senior Director

Acknowledged and accepted:

ARTHUR SCHUMANN, INC.
Name:
Capacity:

ANEXO

F 000279459

Buenos Aires, 18 de Agosto de 2004 - En mi carácter de Escribano

Interino del Registro Notarial Nº 841

que obra/n en el

CERTIFICO: Que la/s firma

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 134 del

LIBRO número 44 es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. -Mario César MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que

tengo a la vista y le confiere facultades suficientes para suscribir el docu-

mento adjunto.- El documento se encuentra escrito en idioma inglés.-

## ENMIENDA AL CC  RATO DE MUTUO

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magullana, en su carácter de apoderados, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en su carácter "el Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderados, domiciliado en 1500 Broadway, 17th Floor, New York, New York, 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente contrato de mutuo, sujeto a las siguientes cláusulas y condiciones:

i. Que con fecha 18 de Agosto de 2004 las Partes suscribieron el contrato de Mutuo que se adjunta al presente como Anexo A (el "Contrato") cuyos términos, condiciones y definiciones resultan aplicables a la presente Enmienda.

ii. Que el Deudor ha solicitado al Acreedor que se modifique las Secciones 6.1 y 6.2, reemplazando la ecuación utilizada para identificar el valor de los warrants endosados en garantía.

iii. Que el Acreedor ha manifestado su intención de aceptar la modificación solicitada por el Deudor.

En virtud de las consideraciones precedentemente expresadas, las Partes acuerdan celebrar la presente enmienda al Contrato (en adelante la "Enmienda") sujeta a los términos y condiciones contenidos en las siguientes Cláusulas:

PRIMERA
Modifícase la Sección 6.1 del Contrato, la cual queda redactada de la siguiente forma:

6.1    Sin perjuicio de las obligaciones asum   en el presente Contrato, en garantía de su total cumplimiento, el Deudor endosa en este acto     vor del Acreedor los warrants que más debajo se detallan por la suma de US$ 2,445,0    0  (Dólares estadounidenses DOS MILLONES CUATROCIENTOS CUARENTA Y CINCO MIL con 00/100), suma que comprende como mínimo el 50% del monto total del Préstamo con más un 10,00 % de aforo (en adelante el/los "Warrant/s"), cuyas copias se adjuntan al presente como Anexo I:

### DETALLE DE LOS WARRANTS

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | IMPORTE |
|---|---|---|---|---|
| 23103 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23104 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23105 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23106 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23107 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23108 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23109 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23110 | QUESO REGGIANITO (DURO) | BRICKMANN | 50.000,00 KG | 180.000,00 |
| 23111 | QUESO PATEGRAS (SEMI DURO) | BALNEARIA | 100.000,00 KG | 250.000,00 |
| 23112 | QUESO PATEGRAS (SEMI DURO) | BALNEARIA | 100.000,00 KG | 250.000,00 |
| 23113 | QUESO PATEGRAS (SEMI DURO) | LA CARLOTA | 100.000,00 KG | 275.000,00 |
| 23114 | QUESO EN BARRILES (DURO) | | TOTAL | 2.445.000,00 |

SEGUNDA
Modifícase la Sección 6.2 del Contrato, la cual queda redactada de la siguiente forma:

6.2.    El Acreedor irá reintegrando los Warr    al Deudor a medida que éste último abone las Cuotas, teniendo en cuenta como premisa fundamental  : el efecto, que el Acreedor en todo momento durante la vigencia del presente Contrato deberá contar con los Warrants (endosados a su favor por el Deudor) por un monto equivalente al 50% del monto resultante del Préstamo menos las cuotas canceladas con más un 10,00 % de aforo.



25

**TERCERA**

Con excepción de aquellos términos expresamente modificados por la presente Enmienda, el Contrato permanecerá inalterable, manteniendo el mismo plena vigencia.

Suscripto por el Deudor en la Ciudad de Buenos Aires, República Argentina, y por el Acreedor e... .l Ciudad de New York, USA, a los 29 días de Marzo de 2005.

Firma/s certificada/s en Foja
N°: . . 2 266 567
Fo. N° . . 2 9 1 3 4 7 9 4 5

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG CAPITAL LLC AS AGENT
Nombre: Thomas LaVecchia
Carácter: Senior Director

251

# ANEXO

F 00036656

Buenos Aires, 29 de  Ma ...  de 2005 . En mi carácter de Escribano

Titular del Registro Notarial N- 341

CERTIFICO: Que la/s  firma                                    que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de sus

firma/s que se formaliza simultáneamente por ACTA número          180          de

LIBRO número        50.         es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Manifiesta ac

tuar en su carácter de apoderado de la sociedad SANCOR COOPERATIVAS UNIDAS

LIMITADAS, de acuerdo a la documentación que me exhibe y le confiere facultades

suficientes para suscribir el documento adjunto.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado, domiciliada en Tacuarí 202 – 3° Piso – Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderado, domiciliado en 1500 Broadway, 17th Floor, New York, New York 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente contrato de mutuo, sujeto a las siguientes cláusulas y condiciones:

PRIMERA: PRESTAMO.
El Deudor solicita al Acreedor en calidad de préstamo, y el Acreedor entrega al Deudor, la suma de US$ 2.960.979,98 (Dólares estadounidenses DOS MILLONES NOVECIENTOS SESENTA MIL NOVECIENTOS SETENTA Y NUEVE CON 98/100) (en adelante el "Préstamo"). El Acreedor procederá a abonar al Deudor dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

BANCO: Wachovia Bank N.A.
DIRECCIÓN: New York, U.S.A.
SWIFT: PNBPUS3NNYC
A NOMBRE DE: Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE: ITAUARBA
Cuenta Nro.: 2000192261739
ROUTING N°: FW026005092
A FAVOR DE: SanCor Cooperativas Unidas Limitada
CUENTA Nro.: 01165361001
REFERENCIA: Prefinanciación de Exportación

Dicha suma será aplicada por el Deudor a financiar prefinanciación de exportaciones.

SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1   El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en ocho (8) cuotas iguales, trimestrales y consecutivas de US$ 426.620,03 (Dólares estadounidenses CUATROCIENTOS VEINTISEIS MIL SEISCIENTOS VEINTE CON 03/100) cada una (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar -mediante el pago de las ocho Cuotas- el pago de la suma total de US$ 3.412.960,20 (Dólares estadounidenses TRES MILLONES CUATROCIENTOS DOCE MIL NOVECIENTOS SESENTA CON 20/100 ), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

Primera Cuota:     30 de Abril de 2005
Segunda Cuota:     30 de Julio de 2005
Tercera Cuota:     30 de Octubre de 2005
Cuarta Cuota:      30 de Enero de 2006
Quinta Cuota:      30 de Abril de 2006
Sexta Cuota:       30 de Julio de 2006
Séptima Cuota:     30 de Octubre de 2006
Octava Cuota:      30 de Enero de 2007

Sin perjuicio de esto, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo -con fondos propios o mediante pagos de Arthur Schuman, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2   El Deudor realizará el pago de las Cuotas -y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

BANCO: CITIBANK, NY
ABA #: 021-000-089
CREDIT: SANCOR C.U.L. – ESCROW ACCOUNT
ACCOUNT #: 05005839

TERCERA: MORA.
3.1   La mora del Deudor en el cumplimiento de las obligaciones pactadas en el presente Contrato -incluyendo sin limitación, el pago en tiempo y forma de las Cuotas- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el Acreedor tendrá derecho a, sin necesidad de interpelación y exigir y demandar judicialmente el pago íntegro del capital considerar la deuda como de plazo vencido y exigir y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el Acreedor

RECIBI CONFORME
ORIGINAL

tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente
al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

3.2        El Acreedor también tendrá la facultad de considerar la deuda como de plazo vencido y solicitar el
pago de todo lo adeudado en los siguientes casos: (a) si un tercero pidiere la quiebra del Deudor y no fuera
rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;
el el Deudor solicitase su propio concurso preventivo de Acreedores, la homologación de un Acuerdo Pre-
tivo Extrajudicial o cualquier otra forma de reestructuración de su deuda; (c), si se trabare alguna medida
cautelar sobre sus bienes que por su magnitud comprometiese su solvencia patrimonial; (d) Si se comprobare
la falta de veracidad, parcial o total, por parte del Deudor en las aplicaciones de este préstamo; (e) si hay
alteración societaria, en desmedro de la situación patrimonial del Deudor y (f) si se produjere cualquier
un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del
presente Contrato.

CUARTA: MONEDA DE PAGO.
4.1        El Deudor asume que el pago del importe total o el saldo que eventualmente adeudó en virtud del
Préstamo deberá ser necesariamente abonado en dólares estadounidenses billete o transferencia y no en
otra moneda. En consecuencia, el Deudor expresamente reconoce y acepta que constituye condición esen-
cial de este contrato que la devolución del Préstamo así como los intereses compensatorios y punitorios,
costos, costas y demás sumas a ser abonadas al Acreedor en virtud del presente, se cancelen en dólares
estadounidenses, en los términos del artículo 619 del Código Civil, renunciando expresamente a invocar la
teoría de la imprevisión contemplada en el segundo párrafo del artículo 1198 del Código Civil.

4.2        El Acreedor, ante la existencia de normas legales o reglamentarias que impidieran que las importes
que deba percibir sean abonados por el Deudor, en dólares estadounidenses billete o transferencia, podrá
aceptar en forma expresa con los pagos se efectúen mediante la entrega de la cantidad de moneda argenti-
na necesaria para poder adquirir en el Mercado de Valores de Buenos Aires o en el mercado abierto, Bonos
Externos de la República Argentina de cualquier serie, o para el caso en que éstos hayan sido totalmente
rescatados, títulos de deuda pública argentina, nacional o provincial, o títulos de deuda privada argentina, con
o sin cotización, a elección del Acreedor, que negociados en el mercado de Montevideo, República Oriental
del Uruguay, o de Nueva York, N.Y., Estados Unidos de Norteamérica, produzcan, neto de comisiones gastos
e impuestos, la cantidad de dólares estadounidenses billetes que correspondan ser abonados
en virtud del presente. La determinación de la cantidad de títulos de deuda pública o privada necesaria será
efectuada por el Acreedor basándose en la cotización en el Mercado de Valores de Buenos Aires o cualquier
otro mercado nacional o internacional del día anterior a la fecha del pago. De no poder efectuarse el pago en
la forma precedentemente detallada, por inexistencia o imposibilidad de obtener títulos de la deuda pública o
privada argentina que puedan ser objeto de transacción en los mercados aludidos, el Deudor deberá entregar
Bonos de otros países que suplan la imposibilidad mencionada, estando sujetos los mismos a idénticos requi-
sitos que los previstos para los Bonos Externos de la República Argentina.

QUINTA: PROMISSORY NOTES.
Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma
de las Cuotas, y en que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del
Acreedor ocho (8) pagarés por la suma de US$ 4266,00 (Dólares estadounidenses CUATROCIENTOS
VEINTISEIS MIL SEISCIENTOS VEINTE CON 00/100) cada uno —suma equivalente al monto de cada Cuota-
, pagaderos en las Fechas de Vencimiento, (en adelante ellos "Promissory Note/s"). En caso de falta de
cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el
Acreedor quedará facultado para iniciar contra el Acreedor, indistintamente, la ejecución de los Promissory
Notes y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se
compromete a devolver los Promissory Notes al Deudor a medida que vayan siendo pagadas las Cuotas,
debiendo reintegrar cada Promissory Note en un plazo no mayor a diez (10) días desde que haya sido abo-
nada la Cuota correspondiente a dicho Promissory Note.

SEXTA: WARRANTS.
6.1        Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumpli-
miento, el Deudor endosa en este acto a favor del Acreedor los warrants que más abajo se detallan por la
suma de US$ 1.774.500,00 (Dólares estadounidenses UN MILLON SETECIENTOS SETENTA Y CUATRO
MIL QUINIENTOS con 00/00), suma que comprende como mínimo el 50 % del monto total de las Cuotas
con más un 10,00% de aforo (en adelante ellos "Warrant/s"), cuyas copias se adjuntan al presente como
Anexo I:

DETALLE DE LOS WARRANTS

| WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | VTO. | IMPORTE |
|---------|----------|----------|----------|------|---------|
| 25,155 | LECHE EN POLVO | SUNCHALES | 140,00 TON | 20/08/2005 | 794.000,00 |

RECIBI CONFORME
ORIGINAL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28.184 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/07/2006 | 294.000,00 |
| 28.183 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/07/2006 | 294.000,00 |
| 28.182 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/07/2006 | 294.000,00 |
| 28.181 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/07/2006 | 294.000,00 |
| 28.180 | LECHE EN POLVO | MONTEROS | 145,00 | TON | | 304.500,00 |
| | | | 845,00 | TON | | 1.774.500,00 |

6.2    El Acreedor irá reintegrando los Warrants al Deudor a medida que éste último abone las Cuotas, teniendo en cuenta como premisa fundamental al efecto, que el Acreedor en todo momento durante la vigencia del presente Contrato deberá contar con Warrants (endosados a su favor por el Deudor) por un monto equivalente al 50% del saldo impago del Préstamo —es decir, 50% del monto total de las Cuotas impagas— con más un 10,00% de dicho monto en concepto de aforo. A tal efecto, habida cuenta de que los Warrants antes mencionados resultan insuficientes para cubrir dicho porcentaje, el Deudor afectará también como garantía del presente los warrants ya endosados a favor del Acreedor en virtud del contrato de préstamo Anexo II. De tal manera, entre los Warrants que tenga en su poder el Acreedor en virtud del contrato motivo del presente Contrato, y los warrants que tenga también en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo II, el Acreedor deberá contar en todo momento con warrants endosados a su favor por el Deudor por un monto total equivalente o superior al 50% del saldo total adeudado en virtud de ambos contratos de mutuo (el presente Contrato y el contrato adjunto como Anexo II) con más un 10,00% de dicho monto en concepto de aforo. La presente modifican lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como  Anexo II.

6.3    Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art. 29 de la Ley 9643, el Deudor se obliga a reemplazar periódicamente los Warrants antes de los 180 días contados desde la fecha de emisión de los mismos, debiendo entregar al Acreedor nuevos Warrants por un monto igual al de los Warrants originales, sin perjuicio de lo establecido en la Sección 6.2 de la presente Cláusula. A fin de determinar la cantidad de mercadería que el Deudor deberá depositar para la emisión de los certificados de depósito correspondientes a los Warrants antedichos, se tomará en cuenta el precio de mercado de dicha mercadería, vigente al momento de dicho depósito. El mantenimiento de la garantía constituida por los Warrants, por las montos y en la forma precedentemente establecida, constituye una condición esencial para el otorgamiento del Préstamo adjunto al Deudor. Consecuentemente, la falta de acuerdo —por cualquier motivo que fuere— en la calidad y/o cantidad de mercadería a ser depositada antes del plazo de 180 días desde la emisión de los Warrants a ser reemplazados, producirá la mora automática del Deudor sin necesidad de interpelación alguna, provocando la caducidad de todos los plazos con los efectos estipulados en la Cláusula TERCERA del presente Contrato.

6.4    El Deudor declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no.reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el Deudor se compromete a comunicar dicha circunstancia al Acreedor dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del Deudor, con los efectos pactados en la cláusula TERCERA. En todos los casos, el Deudor deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al Acreedor.

6.5    En caso de mora del Deudor por cualquier causa que fuere, el Acreedor quedará automáticamente facultado para iniciar la ejecución de los Warrant en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el Acreedor se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA: CESIÓN DE CRÉDITOS.

7.1    En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el Deudor cede al Acreedor, todos los derechos creditorios que le correspondan sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido"). El Crédito Cedido ya ha sido cedido por el Deudor al Acreedor en garantía de las obligaciones futuras y eventuales que el monto de dicho Crédito Cedido resulta Deudor estima —por tratarse de créditos pactados— en el contrato de Mutuo adjunto como Anexo II, al suficiente para garantizar el pago de las sumas adeudadas al Acreedor en virtud del contrato de mutuo adjunto como Anexo II y por el presente Contrato. Consecuentemente, el Crédito Cedido quedará afectado como garantía del cumplimiento de ambos contratos.

La presente cesión implica también la cesión y transferencia a favor del Acreedor de todos los derechos y acciones que le correspondan o puedan corresponder al Deudor sobre los conocimientos de embar-

RECIBÍ CONFORME
ORIGINAL

que que acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entregan a Arthur Schuman en virtud a o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido", tal como se define en este Contrato, comprende todos los remitos, facturas y demás documentos emitidos en virtud de las transacciones comerciales que comprenden el Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el Deudor y le correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al Acreedor en todos los derechos o acto privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos con respecto a dichos créditos de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del Deudor.

7.3    El Deudor se compromete a entregar al Acreedor, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al Acreedor, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4    Asimismo, el Deudor garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por Arthur Schuman en la cuenta bancaria del Acreedor indicada en la Sección 2.2 del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el Deudor se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que sean remitidas al Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser pagada al Acreedor mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la cuenta bancaria del Acreedor serán aplicados al pago de las Cuotas.

    (i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor transferirá los fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de las 48 hs. de recibidos, a la cuenta bancaria del Deudor indicada en la Cláusula PRIMERA.

    (ii)   Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicado en la Sección 2.1 del presente Contrato), el Acreedor aplicará los fondos del Crédito Cedido depositados en su cuenta a procancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses excedan el monto de la Cuota, el excedente será transferido al Deudor de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el Deudor será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6    La presente cesión se efectúa con responsabilidad por parte del Deudor hacia el Acreedor. En consecuencia, si por cualquier causa el importe del Crédito Cedido no fuera abonado al Acreedor conforme los términos establecidos en la presente Cláusula SÉPTIMA, para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el Deudor deberá abonar al Acreedor el importe total o el saldo adeudado correspondiente a cada Cuota, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula TERCERA del presente Contrato.

7.7    Las partes acuerdan que, en virtud de la notificación de cesión de derechos crediticios efectuada oportunamente por el Deudor a Arthur Schuman con motivo del contrato de mutuo obrante en el Anexo II del presente Contrato –por el cual el Deudor cedió en garantía a favor del Acreedor los mismos derechos crediticios que por el presente se ceden–, el Deudor no deberá notificar a Arthur Schuman la cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8    El presente Contrato no implica de forma alguna la transferencia por el Deudor al Acreedor de las obligaciones del Crédito Cedido, las que permanecerán en cabeza del Deudor. El Deudor se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causan el Crédito Cedido, de modo que no se vea afectado el derecho del Acreedor al cobro del Crédito Cedido. Asimismo, el Deudor se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al Acreedor los detalles (cantidad, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente.

RECIBI CONFORME ORIGINAL

Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que —con prescindencia de que hubiese o no incumplimiento por parte del Deudor- Arthur Schuman resolviera o resuelva los contratos de compraventa de mercadería que integran el Crédito Cedido, o de cualquier forma discontinúe o termine su relación comercial con Arthur Schuman, ya sea en forma unilateral o de común acuerdo entre el Deudor y Arthur Schuman.

7.9    El Deudor garantiza al Acreedor:
(a)    el cobro del Crédito Cedido;
(b)    la forma instrumental del mismo.
(b)    la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d)    que no se encuentra inhibido para disponer de sus bienes;
(e)    que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido;
(f)    que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad;
(g)    la autenticidad de las firmas de todo documento que acredita la causa del Crédito Cedido.
(h)    Que cumplirá con todas y cada una de las obligaciones a su cargo    emergentes del Crédito Cedido, incluyendo —pero no limitado a- la entrega en tiempo y forma a Arthur Schuman de la mercadería objeto del Crédito Cedido.

7.10    Durante la vigencia del presente Contrato, el Deudor se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al Acreedor, el estado de deuda de Arthur Schuman con el Deudor, remitiendo a tal efecto, un informe firmado por un contador público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur Schuman y recibidas por el Deudor a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del Deudor. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA.

OCTAVA: GASTOS.
Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA —sección 2.2- y SÉPTIMA —Sección 7.5), tributos y/o gastos (impuesto de sellos, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieran generar, serán a cargo del Deudor. El Deudor se compromete a abonar al Acreedor en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Asimismo, el Deudor se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa o indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al Acreedor de cualquier obligación al respecto.

NOVENA: CESIÓN DEL CONTRATO.
El Acreedor podrá ceder el presente contrato en su totalidad, por cualquiera de los medios previstos en la Ley, adquiriendo el Acreedor los mismos beneficios y/o derechos y/o acciones de que es titular el Acreedor en virtud de este contrato. En tal caso, el Acreedor deberá comunicar en forma fehaciente la cesión al Deudor, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en tal caso el Deudor oponer al Acreedor del contrato cualquier defensa que hubiera podido oponer al Acreedor cedente.

DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.
10.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2    El Deudor irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el Acreedor en relación con el presente Contrato. La sentencia que se dicte contra el

RECIBÍ CONFORME
ORIGINAL

Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.3    Nada de lo dispuesto precedentemente ... el presente Contrato afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otr ... ... ... demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada, incluyendo ... ... que ello implique limitación de ningún tipo· la facultad exclusiva del Acreedor de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4    El Deudor por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 60 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al Deudor en cualquier acción, juicio o procedimiento que el Acreedor pudiera iniciar en el Estado de New York, debiendo asimismo el Deudor informar al Acreedor sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 60 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 no estuviera presente, el Deudor acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del Deudor indicado en el último párrafo de la presente Cláusula

10.6    Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7    El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o "inconvenient forum" respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el Deudor que intervenga en la contienda. El Deudor sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del Acreedor que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

10.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

    Deudor:    1) 60 SW 8th Street , Suite 2000 - Miami, FL 33130-3003

                2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

    Acreedor: 1500 Broadway, 17th Floor, New York, New York, 10036, USA

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del Deudor y un ejemplar en poder del Acreedor.

Suscripto por el "Cedente" en la Ciudad de Buenos Aires, República Argentina y por el "Cesionario" ... ... Ciudad de New York, USA, a los 22 días de Noviembre de 2004.

Por SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N° ... 000 ...
Bs. As. ...

Por IIG CAPITAL LLC AS AGENT
Nombre: Thomas LaVecchia
Carácter: Senior Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. #370

RECIBI CONFORME
ORIGINAL



# ANEXO

F 00032786

Buenos Aires, 22 de Noviembre de 2004 . En mi carácter de Escribano

Interino a cargo del Registro Notarial N°841

CERTIFICO: Que la/s firma que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 37 del

LIBRO número 47 . es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.100.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

exhibe y le confiere facultades suficientes para suscribir el documento ad-

junto.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

RECIBI CONFORME
ORIGINAL

[illegible]

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderado, domiciliado en 1500 Broadway, 17th Floor, New York, New York, 10036, USA; por la otra parte, en adelante el "Acreedor", se celebra el presente contrato de mutuo, sujeto a las siguientes cláusulas y condiciones:

I. Que con fecha 22 de Noviembre de 2004 las Partes suscribieron el contrato de Mutuo que se adjunta al presente como Anexo A (el "Contrato") cuyos términos, condiciones y definiciones resultan aplicables a la presente Enmienda.

II. Que el Deudor ha solicitado al Acreedor que se modifique las Secciones 6.1 y 6.2, reemplazando la ecuación utilizada para identificar el valor de los warrants endosados en garantía.

III. Que el Acreedor ha manifestado su intención de aceptar la modificación solicitada por el Deudor.

En virtud de las consideraciones precedentemente expresadas, las Partes acuerdan celebrar la presente enmienda al Contrato (en adelante la "Enmienda"), sujeta a los términos y condiciones contenidos en las siguientes Cláusulas:

PRIMERA
Modificase la Sección 6.1 del Contrato, la cual queda redactada de la siguiente forma:

*6.1 Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento, el Deudor endosa en este acto a favor del Acreedor los warrants que más debajo se detallan por la suma de US$ 1.774.500,00 (Dólares estadounidenses UN MILLON SETECIENTOS SETENTA Y CUATRO MIL QUINIENTOS con 00/100), suma que comprende como mínimo el 50 % del monto total del Préstamo con más un 10,00 % de aforo (en adelante el/los "Warrant/s"), cuyas copias se adjuntan al presente como Anexo I:*

DETALLE DE LOS WARRANTS

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE |
|---|---|---|---|---|---|---|
| 28.105 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/05/2005 | 204.000,00 |
| 28.104 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/05/2005 | 204.000,00 |
| 28.103 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/05/2005 | 204.000,00 |
| 28.102 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/05/2005 | 204.000,00 |
| 28.101 | LECHE EN POLVO | SUNCHALES | 140,00 | TON | 20/05/2005 | 204.000,00 |
| 28.100 | LECHE EN POLVO | MORTEROS | 145,00 | TON | 20/05/2005 | 304.500,00 |
| | | | 845,00 | TON | | 1.774.500,00 |

SEGUNDA
Modificase la Sección 6.2 del Contrato, la cual queda redactada de la siguiente forma:

*6.2 El Acreedor irá reintegrando los Warrant[illegible] Deudor a medida que éste último abone las Cuotas, teniendo en cuenta como premisa fundamental [illegible] efecto, que el Acreedor en todo momento durante la vigencia del presente Contrato deberá contar con Warrants (endosados a su favor por el Deudor) por un monto equivalente al 50% del monto resultante del Préstamo menos las cuotas canceladas con más un 10,00 % de aforo. A tal efecto, habida cuenta de que los Warrants antes mencionad[illegible] resultan insuficientes para cubrir dicho porcentaje, el Deudor afectará también como garantía del presente los warrants ya endosados a favor del Acreedor en virtud del contrato de préstamo celebrado entre estas mismas partes con fecha 18 de Agosto de 2004, que se adjunta al presente como Anexo II. De tal manera, entre los Warrants que tenga en su poder el Acreedor endosados por el Deudor con motivo del presente Contrato, y los warrants que tenga también en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo II, el Acreedor deberá contar en todo momento con warrants (endosados a su favor por el Deudor) por un monto total equivalente o superior al 50% del monto resultante de la suma del Préstamo otorgado en cada uno de los dos contratos menos las cuotas canceladas en los mismos dos contratos (el presente Contrato y el contrato adjunto como Anexo II) con más un 10,00 % de aforo. La presente modifica en lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como Anexo II.*

TERCERA

Con excepción de aquellos términos expresamente modificados por la presente Enmienda, el Contrato permanecerá inalterable, manteniendo el mismo plena vigencia.

Suscripto por el Deudor en la Ciudad de Buenos Aires, República Argentina, y por el Acreedor en la Ciudad de New York, USA, a los 29 días de Marzo de 2005.

Firma/s certificada/s en Foja
N° C.200 ...............
Bs. As ....................

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

Por: IIG CAPITAL LLC AS AGENT
Nombre: Thomas LaVecchia
Carácter: Senior Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



## ANEXO

F 000366

Buenos Aires, 29 de Marzo de 2005 . En mi carácter de Escrib

Titular del Registro Notarial N° 841

CERTIFICO: Que la/s firma que obra/o c

documento que adjunto a esta foja, cuyo requerimiento de certificación de

firma/s que se formaliza simultáneamente por ACTA número 181

LIBRO número 50 , es/son puesta/s en mi presencia por la/s perso

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación ;

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.100.144.- Manifiesta

tuar en su carácter de apoderado de la sociedad SANCOR COOPERATIVAS UNI

LIMITADAS, de acuerdo a la documentación que me exhibe y le confiere facult:

suficientes para suscribir el documento adjunto.-

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderados, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderados, domiciliado en 1500 Broadway; 17th Floor, New York, New York, 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente contrato de mutuo, sujeto a las siguientes cláusulas y condiciones:

PRIMERA: PRÉSTAMO.
El Deudor solicita al Acreedor en calidad de préstamo, y el Acreedor entrega al Deudor, la suma de US$ 1.597,947.24 (Dólares estadounidenses UN MILLÓN QUINIENTOS NOVENTA Y SIETE MIL NOVECIENTOS CUARENTA Y SIETE CON 24/100) (en adelante el "Préstamo"). El Acreedor procederá a abonar al Deudor dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

BANCO:           Wachovia Bank N.A.
DIRECCIÓN:       New York, U.S.A.
SWIFT:           PNBPUS3NNYC
A NOMBRE DE:     Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE:      ITAUARIBA
Cuenta Nro.:     2000192261739
ROUTING Nr.:     FW026005092
A FAVOR DE:      SanCor Cooperativas Unidas Limitada
CUENTA Nro.:     0115551901
REFERENCIA:      Prefinanciación de Exportación

Dicha suma  será aplicada por el Deudor a financiar prefinanciación de exportaciones.
SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1     El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en ocho (8) cuotas iguales, trimestrales y consecutivas de US$ 229,718.46 (Dólares estadounidenses DOS-CIENTOS VEINTINUEVE MIL SETECIENTOS DIECIOCHO CON 48/100) cada una (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar —mediante el pago de las ocho Cuotas— el pago de la suma total de US$ 1,837.747.80 (Dólares estadounidenses UN MILLÓN OCHOCIENTOS TREINTA Y SIETE MIL SETECIEN-TOS CUARENTA Y SIETE CON 80/100 ), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

Primera Cuota:      30 de Abril de 2005
Segunda Cuota:      30 de Julio de 2005
Tercera Cuota:      30 de Octubre de 2005
Cuarta Cuota:       30 de Enero de 2006
Quinta Cuota:       30 de Abril de 2006
Sexta Cuota:        30 de Julio de 2006
Séptima Cuota:      30 de Octubre de 2006
Octava Cuota:       30 de Enero de 2007

Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo —con fondos propios o mediante pagos  de Arthur Schuman—, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2     El Deudor realizará el pago de las Cuotas —y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

BANCO:           CITIBANK, NY
ABA #:           021-000-089
CREDIT:          SANCOR C.U.L. – ESCROW ACCOUNT
ACCOUNT #:       05006639

TERCERA: MORA.
3.1     La mora del Deudor en el cumplimiento de las obligaciones pactadas en el presente Contrato – incluyendo sin limitación, el pago en tiempo y forma de las Cuotas- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el Acreedor tendrá derecho a considerar la deuda como de plazo vencido y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el Acreedor tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

RECIBÍ CONFORME
ORIGINAL

3.2    El Acreedor también tendrá la facultad de considerar la deuda como de plazo vencido y solicitar el pago de todo lo adeudado en los siguientes casos: (a) si un tercer pidiere la quiebra del Deudor y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente; (b) si el Deudor solicitase su propio concurso preventivo de Acreedores, la homologación de un Acuerdo Preventivo Extrajudicial o cualquier otra forma de reestructuración de su deuda; (c) si se trabare alguna medida cautelar sobre sus bienes que por su magnitud comprometiera su solvencia patrimonial; (d) Si se comprobare la falta de veracidad, parcial o total, por parte del Deudor, en las aplicaciones de esta préstamo; (e) si hay modificación sustancial, en desmedro de la situación patrimonial del Deudor y (f) si se produjere cualquier alteración societaria o en la situación financiera del Deudor que, a criterio razonable del Acreedor, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del presente Contrato.

CUARTA: MONEDA DE PAGO.

4.1    El Deudor asume, que el pago del importe total o el saldo que eventualmente adeude en virtud del Préstamo deberá ser necesariamente abonado en dólares estadounidenses billete o transferencia y no en otra moneda. En consecuencia, el Deudor expresamente reconoce y acepta que constituye condición esencial de este contrato que la devolución del Préstamo así como los intereses compensatorios y punitorios, costas, costas y demás sumas a ser abonadas al Acreedor en virtud del presente, se cancelan en dólares estadounidenses, en los términos del artículo 619 del Código Civil, renunciando expresamente a invocar la teoría de la Imprevisión contemplada en el segundo párrafo del artículo 1198 del Código Civil.

4.2    El Acreedor, ante la existencia de normas legales o reglamentarias que impidieran que los importes que deba percibir sean abonados por el Deudor, en dólares estadounidenses billete o transferencia, podrá aceptar en forma expresa que los pagos se efectúen mediante la entrega de la cantidad de moneda argentina necesaria para poder adquirir en el Mercado de Valores de Buenos Aires o en el mercado abierto, Bonos Externos de la República Argentina de cualquier serie, o para el caso en que éstos hayan sido totalmente rescatados, títulos de deuda pública argentina, nacional o provincial, o títulos de deuda privada argentina, con o sin cotización, a elección del Acreedor, que negociados en el mercado de Montevideo, República Oriental del Uruguay, o de Nueva York, N.Y., Estados Unidos de Norteamérica, produzcan, neto de comisiones gastos e impuestos, la cantidad de dólares estadounidenses billetes o transferencia que correspondan ser abonados en virtud del presente. La determinación de la cantidad de Títulos de Valores de Buenos Aires o cualquier otro mercado nacional o internacional del día anterior a la fecha del pago. De no poder efectuarse el pago en la forma precedentemente detallada, por inexistencia o imposibilidad de obtener títulos de la deuda pública o privada argentina que puedan ser objeto de transacción en los mercados aludidos, el Deudor deberá entregar Bonos de otros países que suplan la imposibilidad mencionada, estando sujetos los mismos a idénticos requisitos que los previstos para los Bonos Externos de la República Argentina.

QUINTA: PROMISSORY NOTES.

Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor ocho (8) pagarés por la suma de US$ 229,718.40 (Dólares estadounidenses DOSCIENTOS VEINTINUEVE MIL SETECIENTOS DIECIOCHO CON 40/100) cada uno —suma equivalente al monto de cada Cuota—, pagaderos en las Fechas de Vencimiento  (en adelante ellos "Promissory Notes"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Promissory Notes y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Promissory Notes al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Promissory Note en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Promissory Note.

SEXTA: WARRANTS.

6.1    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento, el Deudor endosa en este acto a favor del Acreedor los warrants que más debajo se detallan por la suma de US$ 955.500,00 (Dólares estadounidenses NOVECIENTOS CINCUENTA Y CINCO MIL QUINIENTOS con 00/100), suma que comprende como mínimo el 50 % del monto total de las Cuotas con más un 10,00% de aforo (en adelante ellos "Warrants"), cuyas copias se adjuntan al presente como Anexo I.

DETALLE DE LOS WARRANTS

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE |
|---|---|---|---|---|---|---|
| 28.196 | LECHE EN POLVO | MORTEROS | 150 | TON. | 26/05/2005 | 315.000,00 |
| 28.197 | LECHE EN POLVO | MORTEROS | 150 | TON. | 26/05/2005 | 315.000,00 |
| 28.198 | LECHE EN POLVO | MORTEROS | 155 | TON. | 26/05/2005 | 325.500,00 |
| | | | 455 | TON | | 955.500,00 |



RECIBÍ CONFORME
ORIGINAL

6.2     El Acreedor irá reintegrando los Warrants al Deudor a medida que éste último abone las Cuotas, teniendo en cuenta como premisa fundamental al efecto, que el Acreedor en todo momento durante la vigencia del presente Contrato deberá contar con Warrants (endosados a su favor por el Deudor) por un monto equivalente al 50% del saldo impago del Préstamo —es decir, 50% del monto total de las Cuotas impagas con más un 10,00% de dicho monto en concepto de aforo. A tal efecto, habida cuenta de que los Warrants antes mencionados resultan insuficientes para cubrir dicho porcentaje, el Deudor efectuará también como garantía del presente los warrants ya endosados en fecha 10 de Agosto de 2004, que se adjunta al presente como celebrado entre estas mismas partes con fecha 10 de Agosto de 2004, que se adjunta al presente como Anexo II. De tal manera, entre los Warrants que tenga en su poder el Acreedor endosados por el Deudor con motivo del presente Contrato, y los Warrants que tenga en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo II, el Acreedor deberá contar en todo momento con warrants (endosados a su favor por el Deudor) un monto total equivalente a superior al 50% del saldo total adeudado en más un 10,00% de dichos contratos de mutuo (el presente Contrato y el contrato adjunto como Anexo II) con más un 10,00% de dicho monto en concepto de aforo. La presente modifica de lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como Anexo II.

6.3     Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art. 26 de la Ley 9643, el Deudor se obliga a reemplazar periódicamente los Warrants antes de los 180 días contados desde la fecha de emisión de los mismos, debiendo entregar al Acreedor nuevos Warrants por un monto igual al de los Warrants originales, sin perjuicio de lo establecido en la Sección 6.2 de la presente Cláusula. A fin de determinar la cantidad de mercadería que el Deudor deberá depositar para la emisión de los certificados de depósito correspondientes a los Warrants antedichos, se tomará en cuenta el precio de mercado de dicha mercadería. Vigencia al momento de dicho depósito. El mantenimiento de la garantía constituida por los Warrants, por las montos y en la forma precedentemente establecida, constituye una condición esencial para el otorgamiento del Préstamo al Deudor. Consecuentemente, la falta de acuerdo —por cualquier motivo que fuere- en la calidad y/o cantidad de mercadería a ser depositada antes del plazo de 180 días desde la emisión de los Warrants a ser reemplazados, producirá la mora automática del Deudor sin necesidad de interpelación alguna, provocando la caducidad de todos los plazos con los efectos estipulados en la Cláusula TERCERA del presente Contrato.

6.4     El Deudor declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el Deudor se compromete a comunicar dicha circunstancia al Acreedor dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del Deudor, con los efectos pactados en la Cláusula TERCERA. En todos los casos, el Deudor deberá responder por los daños y perjuicios que su incumplimiento pudiera ocasionar al Acreedor.

6.5     En caso de mora del Deudor por cualquier causa que fuere, el Acreedor quedará automáticamente facultado para iniciar la ejecución de los Warrant en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el Acreedor se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA: CESIÓN DE CRÉDITOS.

7.1     En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el Deudor cede al Acreedor, todos los derechos crediticios que le correspondan sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido"). Si bien el Crédito Cedido ya ha sido cedido por el Deudor al Acreedor en garantía de las obligaciones pactadas en el contrato de Mutuo adjunto como Anexo II, el Deudor estima —por tratarse de créditos futuros y eventuales- que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de las sumas adeudadas al Acreedor en virtud del contrato de mutuo adjunto como Anexo II y del presente Contrato. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de ambos contratos.

7.2     La presente cesión implica también la cesión y transferencia a favor del Acreedor de todos las derechos y acciones que le correspondan o puedan corresponder al Deudor sobre los conocimientos de embarque que acrediten el respecto de la mercadería comprendida en el Crédito Cedido, como así también los que se contracturan y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen a Arthur Schuman en virtud o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido" tal como se define en esta cláusula, comprende todos los remitos, facturas y demás documentos similares en virtud de las transacciones comerciales que compongan el Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posea el Deudor y le correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al Acreedor en su mismo lugar y grado



RECIBÍ CONFORME
ORIGINAL

de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc, que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del Deudor.

7.3    El Deudor se compromete a entregar al Acreedor, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al Acreedor, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4    Asimismo, el Deudor garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por Arthur Schuman en la cuenta bancaria del Acreedor indicada en la Sección 2.2 del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el Deudor se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que sean remitidas al Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser pagada al Acreedor mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la cuenta bancaria del Acreedor serán aplicados al pago de las Cuotas.

    (i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor transferirá los fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de las 48 hs. de recibidos, a la cuenta bancaria del Deudor indicada en la Cláusula PRIMERA.

    (ii)    Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor aplicará los fondos del Crédito Cedido depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses excedan el monto de la Cuota, el excedente será transferido al Deudor de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el Deudor será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6    La presente cesión se efectúa con responsabilidad por parte del Deudor hacia el Acreedor. En consecuencia, si por cualquier causa el importe del Crédito Cedido no fuera suficiente al Acreedor conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el Deudor deberá abonar al Acreedor el importe total o el saldo adeudado correspondiente a cada Cuota, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula TERCERA del presente Contrato.

7.7    Las partes acuerdan que, en virtud de la notificación de cesión de derechos crediticios efectuada oportunamente por el Deudor a Arthur Schuman con motivo del contrato de mutuo durante el cual el presente Contrato –por el cual el Deudor cedió en garantía a favor del Acreedor los mismos derechos crediticios que por el presente se ceden-, el Deudor no deberá notificar a Arthur Schuman la cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8    El presente Contrato no implica de forma alguna la transferencia por el Deudor al Acreedor de las obligaciones del Crédito Cedido, las que permanecerán en cabeza del Deudor. El Deudor se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de las cuentas que causen el Crédito Cedido, de modo que no se vea afectado el derecho del Acreedor al cobro del Crédito Cedido. Asimismo, el Deudor se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al Acreedor los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que —con prescindencia de que hubiese o no incumplimiento por parte del Deudor- Arthur Schuman rescinda o resuelva los contratos de compraventa de mercadería que integran el Crédito Cedido, o de cualquier forma discontinúe o termine su relación comercial con Arthur Schuman, ya sea en forma unilateral o de común acuerdo entre el Deudor y Arthur Schuman

7.7    El Deudor garantiza al Acreedor:

(a)    el cobro del Crédito Cedido;
(b)    la forma instrumental del mismo,
(c)    la legitimidad del Crédito Cedido, y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d)    que no se encuentra inhibido para disponer de sus bienes;
(e)    que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido;
(f)    que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad.
(g)    la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.
(h)    Que cumplirá con todas y cada una de las obligaciones a su cargo    emergentes del Crédito Cedido, incluyendo –pero no limitado a– la entrega en tiempo y forma a Arthur Schuman de la mercadería objeto del Crédito Cedido.

7.10    Durante la vigencia del presente Contrato, el Deudor se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al Acreedor, el estado de deuda de Arthur Schuman con el Deudor, remitiendo a tal efecto un informe firmado por un contador público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur Schuman y recibidas por el Deudor a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del Deudor. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA.

OCTAVA: GASTOS.
Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA –sección 2.2– y SÉPTIMA –Sección 7.5), tributos y/o gastos (impuesto de sellos, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del Deudor. El Deudor se compromete a abonar al Acreedor en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Asimismo, el Deudor se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo– con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa o indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al Acreedor de cualquier obligación al respecto.

NOVENA: CESIÓN DEL CONTRATO.
El Acreedor podrá ceder el presente contrato en su totalidad, por cualquiera de los medios previstos en la Ley, adquiriendo el Acreedor los mismos beneficios y/o derechos y/o acciones de que es titular el Acreedor en virtud de este contrato. En ese caso, el Acreedor deberá comunicar en forma fehaciente la cesión al Deudor, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el Deudor oponer al Acreedor del contrato cualquier defensa que hubiera podido oponer al Acreedor cedente.

DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.
10.1 .    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2    El Deudor irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el Acreedor en relación con el presente Contrato. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada, incluyendo –sin que ello implique limitación de ningún tipo– la facultad ex-

RECIBÍ CONFORME ORIGINAL

clusiva del Acreedor de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4 El Deudor por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 60 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondiente y/o notificaciones dirigidas al Deudor en cualquier acción, juicio o procedimiento que el Acreedor pudiera iniciar en el Estado de New York, debiendo asimismo el Deudor informar al Acreedor sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5 Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 60 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 no estuviere presente, el Deudor acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del Deudor indicado en el último párrafo de la presente Cláusula 10.

10.6 Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7 El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor, y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o "inconvenient forum" respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el Deudor renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El Deudor sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del Acreedor que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

10.8 Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

        Deudor:    1) 60 SW 8th Street , Suite 2000 - Miami, FL 33130-3003

                2) Tacuarí 202 - 3° Piso – Capital Federal, República Argentina

        Acreedor: 1500 Broadway, 17th Floor, New York, New York, 10036, USA

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del Deudor y un ejemplar en poder del Acreedor.

Suscripto por el "Cedente" en la Ciudad de Buenos Aires, República Argentina y por el "Cesionario" en la Ciudad de New York, USA, a los 26 días de Noviembre de M.

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nom.: María Magdalena
Carácter: Apoderado

firma/s certificada/s en Foja
N°. _____
Ds. As _____

PRAKIG CAPITAL LLC AS AGENT
Nombre: Thomás LaVecchia
Carácter: Senior Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4970

RECIBI CONFORME
ORIGINAL

8 fof
8 foj



F 001395198

1  Buenos Aires, 26 de  Noviembre  de 2004   - En mi carácter de Escribano

2  Interino a cargo del Registro Notarial N°841

3  CERTIFICO: Que la/s  firma                    que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número     78      del

6  LIBRO número     47       , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe. Mario César MAGDALENA, L.E. 8.100.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y lo confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13

RECIBI CONFORME
ORIGINAL

## ENMIENDA AL CONTRATO DE MUTUO

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderado, domiciliado en 1500 Broadway, 57th Floor, New York, New York, 10036; USA, por la otra parte, en adelante el "Acreedor", se celebra el presente contrato de mutuo, sujeto a las siguientes cláusulas y condiciones:

    I.      Que con fecha 26 de Noviembre de 2004 las Partes suscribieron el contrato de Mutuo que se adjunta al presente como Anexo A (el "Contrato") cuyos términos, condiciones y definiciones resultan aplicables a la presente Enmienda.

    II.    Que el Deudor ha solicitado al Acreedor que se modifique las Secciones 6.1 y 6.2, reemplazando la ecuación utilizada para identificar el valor de los warrants endosados en garantía.

    III.    Que el Acreedor ha manifestado su intención de aceptar la modificación solicitada por el Deudor.

En virtud de las consideraciones precedentemente expresadas, las Partes acuerdan celebrar la presente enmienda al Contrato (en adelante la "Enmienda"), sujeta a los términos y condiciones contenidos en las siguientes Cláusulas:

PRIMERA
Modifícase la Sección 6.1 del Contrato, la cual queda redactada de la siguiente forma:

6.1    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento, el Deudor endosa en este acto a favor del Acreedor los warrants que más debajo se detallan por la suma de US$ 955.500,00 (Dólares estadounidenses NOVECIENTOS CINCUENTA Y CINCO MIL QUINIENTOS con 00/100), suma que comprende como mínimo el 50 % del monto total del Préstamo con más un 10,00 % de aforo (en adelante ellos "Warrants"), cuyas copias se adjuntan al presente como Anexo I:

DETALLE DE LOS WARRANTS

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE |
|---|---|---|---|---|---|---|
| 28.196 | LECHE EN POLVO | MORTEROS | 150 | TON. | 26/05/2005 | 315.000,00 |
| 28.197 | LECHE EN POLVO | MORTEROS | 150 | TON. | 26/05/2005 | 315.000,00 |
| 28.198 | LECHE EN POLVO | MORTEROS | 155 | TON. | 26/05/2005 | 325.500,00 |
| | | | 455 | TON | | 955.500,00 |

SEGUNDA
Modifícase la Sección 6.2 del Contrato, la cual queda redactada de la siguiente forma:

6.2    El Acreedor irá reintegrando los Warrants al Deudor a medida que éste último abone las Cuotas, teniendo en cuenta como premisa fundamental al efecto, que el Acreedor en todo momento durante la vigencia del presente Contrato deberá contar con Warrants (endosados a su favor por el Deudor) por un monto equivalente al 50% del monto resultante del Préstamo menos las cuotas canceladas, con más un 10,00 % de aforo. A tal efecto, habida cuenta de que los Warrants antes mencionados resultan insuficientes para cubrir dicho porcentaje, el Deudor afectará también como garantía del presente los warrants ya endosados a favor del Acreedor en virtud del contrato de préstamo celebrado entre estas mismas partes con fecha 18 de Agosto de 2004, que se adjunta al presente como Anexo II, los cuales ya habían sido afectados también como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 22 de Noviembre de 2004, que se adjunta como Anexo III. De tal manera, entre los Warrants que tenga en su poder el Acreedor endosados por el Deudor con motivo del presente Contrato, los warrants que tenga también en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo II, y los warrants que tenga también en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo III, el Acreedor deberá contar en todo momento con warrants (endosados a su favor por el Deudor) por un monto total equivalente o superior al 50% del monto resultante de la suma del Préstamo otorgado en cada uno de los tres contratos adjuntos como Anexo II y Anexo III) con más un 10,00 % de aforo. La presente Contrato y los contratos adjuntos como Anexo II y Anexo III) con más un 10,00 % de aforo. La presente modifica en lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como Anexo II y en la Sección 6.2 del contrato adjunto como Anexo III.



TERCERA

Con excepción de aquellos términos expresamente modificados por la presente Enmienda, el Contrato permanecerá inalterable, manteniendo el mismo plena vigencia.

Suscripto por el Deudor en la Ciudad de Buenos Aires, República Argentina, y por el Acreedor en la Ciudad de New York, USA, a los 29 días de Marzo de 2005.

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en foja
N°. F.00.16.09.0.9.2
Bs. As. 29 / 3 / 2005

MARTIN R. ARANA (H)
ESCRIBANO
MAT. 4070

Por: IIG CAPITAL LLC AS AGENT
Nombre: Thomas LaVecchia
Carácter: Senior Director



F 00160909

Buenos Aires, 29 de    Marzo    de 2005 . En mi carácter de Escribano

Titular del Registro Notarial Nº 841

CERTIFICO: Que la/s   firma                                    que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número    182    del

LIBRO número    50    , es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Manifiesta ac-

tuar en su carácter de apoderado de la sociedad SANCOR COOPERATIVAS UNIDAS

LIMITADAS, de acuerdo a la documentación que me exhibe y le confiere facultades

suficientes para suscribir el documento adjunto.-

MARTIN D. ARAMA (h)
ESCRIBANO
MAT. 4370

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderado, domiciliada en 1500 Broadway, 17th Floor, New York, New York, 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente Contrato de Mutuo, sujeto a las siguientes cláusulas y condiciones:

**PRIMERA: PRÉSTAMO.**
El Deudor solicita al Acreedor en calidad de préstamo, y el Acreedor entrega al Deudor, la suma de US$ 2.012.237,50 (Dólares estadounidenses DOS MILLONES DOCE MIL DOSCIENTOS TREINTA Y SIETE CON 50/100) (en adelante el "Préstamo"). El Acreedor procederá a abonar al Deudor dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

| | |
|---|---|
| BANCO: | Wachovia Bank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| SWIFT: | PNBPUS3NNYC |
| A NOMBRE DE: | Banco Itau Buen Ayre S.A., Buenos Aires, Argentina |
| SWIFT CODE: | ITAUARBA |
| Cuenta Nro.: | 2000192261739 |
| ROUTING N°: | FW026005092 |
| A FAVOR DE: | SanCor Cooperativas Unidas Ltda |
| CUENTA Nro.: | 01185361001 |
| REFERENCIA: | Prefinanciación de Exportación |

Dicha suma será aplicada por el Deudor a financiar prefinanciación de exportaciones.

**SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.**
2.1    El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en ocho (8) cuotas iguales, trimestrales y consecutivas de US$ 292.500,00 (Dólares estadounidenses DOSCIENTOS NOVENTA Y DOS MIL QUINIENTOS CON 00/100) cada una (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar —mediante el pago en término de las ocho Cuotas- el pago de la suma total de US$ 2.340.000,00 (Dólares estadounidenses DOS MILLONES TRESCIENTOS CUARENTA MIL CON 00/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

| | |
|---|---|
| Primera Cuota: | 30 de Septiembre de 2005 |
| Segunda Cuota: | 29 de Diciembre de 2005 |
| Tercera Cuota: | 31 de Marzo de 2006 |
| Cuarta Cuota: | 30 de Junio de 2006 |
| Quinta Cuota: | 29 de Septiembre de 2006 |
| Sexta Cuota: | 28 de Diciembre de 2006 |
| Séptima Cuota: | 30 de Marzo de 2007 |
| Octava Cuota: | 29 de Junio de 2007 |

Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo –con fondos propios o mediante pagos de Arthur Schuman-, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2    El Deudor realizará el pago de las Cuotas -y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

| | |
|---|---|
| BANCO: | CITIBANK, NY |
| ABA #: | 021-000-089 |
| CREDIT: | SANCOR C.U.L. – ESCROW ACCOUNT |
| ACCOUNT #: | 05006639 |

**TERCERA: MORA.**
3.1    La mora del Deudor en el cumplimiento de las obligaciones pactadas en el presente Contrato – incluyendo sin limitación, el pago en tiempo y forma de las Cuotas- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el Acreedor tendrá derecho a considerar la deuda como de plazo vencido y exigir y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el Acreedor tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

3.2     El Acreedor también tendrá la facultad de considerar la deuda como de plazo vencido y solicitar el pago de todo lo adeudado en los siguientes casos: (a) si un tercero pidiera la quiebra del Deudor y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente; (b) si el Deudor solicitase su propio concurso preventivo de Acreedores, la homologación de un Acuerdo Preventivo Extrajudicial o cualquier otra forma de reestructuración de su deuda; (c) si se trabare alguna medida cautelar sobre sus bienes que por su magnitud comprometiere su solvencia patrimonial; (d) Si se comprobare la falta de veracidad, total o parcial, por parte del Deudor, en las aplicaciones de este préstamo; (e) si hay modificación sustancial, en desmedro de la situación patrimonial del Deudor y (f) si se produjere cualquier alteración societaria o en la situación financiera del Deudor que, a criterio razonable del Acreedor, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del presente Contrato.

CUARTA: MONEDA DE PAGO.
4.1     El Deudor asume que el pago del importe total o el saldo que eventualmente adeude en virtud del Préstamo deberá ser necesariamente abonado en dólares estadounidenses billete o transferencia y no en otra moneda. En consecuencia, el Deudor expresamente reconoce y acepta que constituye condición esencial de este contrato que la devolución del Préstamo así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al Acreedor en virtud del presente, se cancelen en dólares estadounidenses, en los términos del artículo 619 del Código Civil, renunciando expresamente a invocar la teoría de la imprevisión contemplada en el segundo párrafo del artículo 1198 del Código Civil.

4.2     El Acreedor, ante la existencia de normas legales o reglamentarias que impidieran que los importes que deba percibir sean abonados por el Deudor, en dólares estadounidenses billete o transferencia, podrá aceptar en forma expresa que los pagos se efectúen mediante la entrega de la cantidad de moneda argentina necesaria para poder adquirir en el Mercado de Valores de Buenos Aires o en el mercado abierto, Bonos Externos de la República Argentina de cualquier se... para el caso en que éstos hayan sido totalmente rescatados, títulos de deuda pública argentina, nacio... provincial, o títulos de deuda privada argentina, con o sin cotización, a elección del Acreedor, que negoci... ... en el mercado de Montevideo, República Oriental del Uruguay, o de Nueva York, N.Y., Estados Unidos d... Norteamérica, produzcan, neto de comisiones gastos e impuestos, la cantidad de dólares estadounidenses billetes o transferencia que correspondan ser abonados en virtud del presente. La determinación de la cantidad de títulos de deuda pública o privada necesaria será efectuada por el Acreedor basándose en la cotización en el Mercado de Valores de Buenos Aires o cualquier otro mercado nacional o internacional del día anterior a la fecha del pago. De no poder efectuarse el pago en la forma precedentemente detallada, por inexistencia o imposibilidad de obtener títulos de la deuda pública o privada argentina que puedan ser objeto de transacción en los mercados aludidos, el Deudor deberá entregar Bonos de otros países que suplan la imposibilidad mencionada, estando sujetos los mismos a idénticos requisitos que los previstos para los Bonos Externos de la República Argentina.

QUINTA: PROMISSORY NOTES.
Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de ... Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor ocho (8) pagarés por la suma de US$ 292.500,00 (Dólares estadounidenses DOSCIENTOS NOVENTA Y DOS MIL QUINIENTOS CON 00/100) cada uno –suma equivalente al monto de cada Cuota–, pagaderos en las Fechas de Vencimiento (en adelante ellos "Promissory Notes"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en virtud del presente Contrato, el Acreedor se compromete a quedar facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Promissory Notes y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor, debiendo reintegrar cada Promissory Note a medida que vayan siendo pagadas las Cuotas, devolver los Promissory Notes al Deudor en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Promissory Note.

SEXTA: WARRANTS.
6.1     Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el Deudor afecta los warrants ya endosados a favor del Acreedor en virtud del contrato de préstamo celebrado entre estas mismas partes con fecha 18 de Agosto de 2004, que se adjunta al presente como Anexo I, los cuales ya habían sido afectados también como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 22 de Novie... ... de 2004, que se adjunta como Anexo II y también afectados como garantía del contrato de préstamo c... ...brado entre las mismas partes con fecha 26 de Noviembre de 2004, que se adjunta como Anexo III. Asimismo, en garantía del total cumplimiento de las obligaciones asumidas en el presente Contrato, el Deudor también afecta los warrants ya endosados a favor del Acreedor en virtud de los contratos de préstamo celebrados entre estas mismas partes con fecha 22 de noviembre de 2004 y 26 de noviembre de 2004, que se adjuntan al presente como Anexo II y Anexo III, respectivamente. De tal manera, entre los Warrants que tenga en su poder el Acreedor endosados por el Deudor con motivo del contrato de mutuo adjunto como Anexo I, los warrants que tenga también en su poder el Acreedor en virtud del contrato de préstamo adjunto como Anexo II, y los warrants que tenga en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo III el Acreedor deberá contar en todo momento con warrants

2

restitución a su favor por el Deudor) por un monto total equivalente o superior al 50% del monto resultante de la suma del Préstamo otorgado en cada una de los cuatro contratos menos las cuotas canceladas en los mismos cuatro contratos de mutuo (el presente Contrato y los contratos adjuntos como Anexo I, Anexo II y Anexo III). La presente modifica en lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como Anexo I, en la Sección 6.2 del contrato adjunto como Anexo III.

6.2 Tal como consta en el contrato que se adjunta como Anexo I, el Deudor declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el Deudor se compromete a comunicar dicha circunstancia al Acreedor dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del Deudor, con los efectos pactados en la cláusula TERCERA. En todos los casos, el Deudor deberá responder por los daños y perjuicios que su incumplimiento pudiera ocasionar al Acreedor.

6.3 En caso de mora del Deudor por cualquier causa que fuere, el Acreedor quedará automáticamente facultado para iniciar la ejecución de los Warrant en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el Acreedor se reserva expresamente la facultad de designar martillero al efecto.

**SÉPTIMA: CESIÓN DE CRÉDITOS.**

7.1 En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el Deudor cede al Acreedor, todos los derechos crediticios que le correspondan sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ,07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido"). Si bien el Crédito Cedido ya ha sido cedido por el Deudor al Acreedor en garantía de las obligaciones pactadas en los contratos de Mutuo adjuntos como Anexo I, Anexo II y Anexo III, el Deudor estima —por tratarse de créditos futuros y eventuales— que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de las sumas adeudadas al Acreedor en virtud de los contratos de mutuo adjuntos como Anexo I, Anexo II, Anexo III y del presente Contrato. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los cuatro contratos.

7.2 La presente cesión implica también la cesión y transferencia a favor del Acreedor de todos los derechos y acciones que le correspondan o puedan corresponder al Deudor sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen a Arthur Schuman en virtud o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido", tal como se define en este Contrato, comprende todos los remitos, facturas y demás documentos emitidos en virtud de las transacciones comerciales que compongan el Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones, que posee el Deudor y le correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al Acreedor en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del Deudor.

7.3 El Deudor se compromete a entregar al Acreedor, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al Acreedor, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, las remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4 Asimismo, el Deudor garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por Arthur Schuman en la cuenta bancaria del Acreedor indicada en la Sección 2.2 del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el Deudor se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que sean remitidas al Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser pagada al Acreedor mediante transferencia de los fondos correspondientes a la cuenta bancaria antes referida.

7.5 Los fondos del Crédito Cedido depositados en la cuenta bancaria del Acreedor serán aplicados al pago de las Cuotas.

(i) Durante los meses en que no exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor transferirá los



fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de b... ...
de recibidos, a la cuenta bancaria del Deudor indicada en la Cláusula PRIMERA.

(ii) Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendién-
dose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondien-
tes a las Fechas de Vencimiento ... ...cadas en la Sección 2.1 del presente Contrato), el
Acreedor aplicará los fondos del C... ... Cedido depositados en su cuenta a prorrogar el ...
monto de la Cuota a pagar en la I... ... de Vencimiento correspondiente a dicho mes. En el
caso de que los fondos del Crédit... ...edido depositados por Arthur Schuman durante los ...
meses excedan el monto de la Cuo..., el excedente será transferido al Deudor de la forma
indicada en el acápite (I) de la presente Sección. En el caso de que los fondos del Crédito
Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para
cubrir el importe de la Cuota, el Deudor será responsable de aportar la diferencia, bien
completar la diferencia y abonar el importe total de la Cuota en la Fecha de Vencimien-
to, bajo apercibimiento de mora.

7.6 La presente cesión se efectúa con responsabilidad por parte del Deudor hacia el Acreedor. En con-
secuencia, si por cualquier causa el importe del Crédito Cedido no fuere abonado al Acreedor conforme los
términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de
Ver... ...miento, el Deudor deberá abonar al Acreedor el importe total o el saldo adeudado correspondiente ...
ca... ...uota, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en lo ...
té... ...nos de la Cláusula TERCERA del presente Contrato.

7.7 Las Partes acuerdan que, en virtud de la notificación de cesión de derechos crediticios efectuada
oportunamente por el Deudor a Arthur Schuman con motivo del contrato de mutuo obrante en el Anexo I del
presente Contrato –por el cual el Deudor cedió en garantía a favor del Acreedor los mismos derechos credi-
ciales que por el presente se ceden–, el Deudor no deberá notificar a Arthur Schuman la cesión de derechos
crediticios pactada por las partes en el presente Contrato.

7.8 El presente Contrato no implica de forma alguna la transferencia por el Deudor al Acreedor de las
obligaciones del Crédito Cedido, las que permanecerán en cabeza del Deudor. El Deudor se ... ...prometo
irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes del cobro del Crédito
que causen el Crédito Cedido, de modo que no se vea afectado el derecho del Acreedor al cobro del Crédito
Cedido. Asimismo, el Deudor se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de
una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al Acreedor los detalles
(volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente
Cláusula SÉPTIMA. La falta de cumplimiento en ...ebido tiempo y forma de las obligaciones antedichas, pro-
ducirá automáticamente de pleno derecho la r... ...n del Deudor, con los efectos estipulados en la Cláusula
TERCERA. De igual manera se producirá la m... ...lo pleno derecho con los efectos antes citados en el caso
de que –con prescindencia de que hubiese o n... ...ncumplimiento por parte del Deudor– Arthur Schuman res-
cinda o resuelva los contratos de compraventa/ded/mercadería que integran el Crédito Cedido, o de cualquier
forma discontinúe o termine su relación comercial/con Arthur Schuman, ya sea en forma unilateral o de co-
mún acuerdo entre el Deudor y Arthur Schuman.

7.9 El Deudor garantiza al Acreedor:
(a) el cobro del Crédito Cedido.
(b) la forma instrumental del mismo, y que el mismo es de su libre disponibilidad, no encontrándose
(c) la legitimidad del Crédito Cedido y que el mismo no se encuentre... ... ...
afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de
la presente;
(...) que no se encuentra inhibido para disponer de sus bienes;
(...) que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier naturaleza
sobre el Crédito Cedido;
(f) que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido
total ni parcialmente a persona física o jurídica alguna con anterioridad;
(g) la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido;
(h) Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes del Crédito Cedido,
incluyendo –pero no limitado a– la entrega en tiempo y forma a Arthur Schuman de la mercadería ob-
jeto del Crédito Cedido.

7.10 Durante la vigencia del presente Contrato, el Deudor se compromete a notificar mensualmente (entre
el 1 y el 5 de cada mes) y por medio fehaciente al Acreedor, el estado de deuda de Arth... ...human con el
Deudor, remitiendo a tal efecto un informe firmado por un contador público matriculado en ... República Ar-
gentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fech... ...
dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fec... ...
recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur
Schuman y recibidas por el Deudor a la fecha de dicho informe. Asimismo se compromete a remitir dicho ...

4.



...la vigencia del presente préstamo facturas, BL, ordenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalada correrán por exclusiva cuenta del Deudor. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.?? realizará automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA.

**OCTAVA: GASTOS.**
Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivados de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA –sección 2.?– y SÉPTIMA –Sección 7.5), tributos y/o gastos (impuesto de sello??, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieran generar, será?? a cargo del Deudor. El Deudor se compromete a abonar al Acreedor en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo n?, mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Asimismo, el Deudor se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo– con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa o indirectamente del Préstamo objeto del presente Contrato, y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, deslindando al Acreedor de cualquier obligación al respecto.

**NOVENA: CESIÓN DEL CONTRATO.**
El Acreedor podrá ceder el presente contrato en su totalidad, por cualquiera de los medios provistos en la Ley, adquiriendo el Acreedor los mismos beneficios y/o derechos y/o acciones de que es titular el Acreedor en virtud de este contrato. En ese caso, el Acreedor deberá comunicar en forma fehaciente la cesión al Deudor, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el Deudor oponer al Acreedor del contrato cualquier defensa que hubiere podido oponer al Acreedor cedente.

**DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.**
10.1   El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2   El Deudor irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el Acreedor en relación con el presente Contrato. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.3   Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del Acreedor de iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada, incluyendo –sin que ello implique limitación de ningún tipo- la facultad exclusiva del Acreedor de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4   El Deudor por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al Deudor en cualquier acción, juicio o procedimiento que el Acreedor pudiera iniciar en el Estado de New York, debiendo notificar el Deudor informar al Acreedor sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5   Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003 no estuviere presente, el Deudor acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo certificado en los Estados Unidos de América, en el domicilio del Deudor indicado en el último párrafo de la presente Cláusula

10.6   Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7   El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor, y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o "inconvenient forum" respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el Deudor

5



... nada expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado
... interviniere en la contienda. EL Deudor solo podrá o... ...ier excepción de pago total comprobado por medio
...  documento emanado del Acreedor que haga re... ...cia directa al contrato en ejecución o a la obliga-
...con demanda, renunciando expresamente a las otras e... ...sas de cualquier índole

10.8   Cualquiera de las notificaciones, precedentemente aludidas que deban ser efectuadas referidas al
presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

Deudor:   1) 00 SW 8th Street , Suite 2000 - Miami, FL 33130-3003

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

Acreedor: 1500 Broadway, 17th Floor, New York, New York, 10036, USA

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del
Deudor y un ejemplar en poder del Acreedor.

Suscripto por el "Cedente" en la Ciudad de Buenos Aires, República Argentina y por el "Cesionario" en la
Ciudad de New York, USA, a los 29 días de Marzo de 2005.

Firma/s certificada/s en Nota
... ...  ...  ... ...
De: A... ...  ... ...

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

Por: IIG CAPITAL LLC AS AGENT
Nombre: Thomas LaVecchia
Carácter: Senior Director

6



ANEXO

r 000366570

Buenos Aires, 29 de    Marzo    de 2005    En mi carácter de Escribano

Titular del Registro Notarial Nº 841

que obraba en el

CERTIFICO: Que la/s    firma

documento que adjunto a esta foja, cuyo requerimiento de certificación de esta

firma/s que se formaliza simultáneamente por ACTA número         184

LIBRO número        50                    fueron puestas en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se mencionan a continuación

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Manifiesta ac-

tuar en su carácter de apoderado de la sociedad SANCOR COOPERATIVAS UNIDAS

LIMITADAS, de acuerdo a la documentación que me exhibe y le confiere facultades

suficientes para suscribir el documento adjunto.-

## PRIMERA ENMIENDA AL CONTRATO DE MUTUO
### DE FECHA 29 /MARZO/2005

Entre:
IIG TOF B.V., REPRESENTADO POR TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada por H Braunshamp y F Kuyfer , en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (en adelante el "ACREEDOR"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por la otra parte, (en adelante el "DEUDOR") ambos conjuntamente denominados las "Partes", y

CONSIDERANDO:

I.    Que con fecha 29 de Marzo de 2005, el DEUDOR suscribió con IIG CAPITAL LLC AS AGENT (en adelante "IIG"), un contrato de mutuo, modificado mediante Cartas de Recambio de Warrants de fecha 14 de Febrero, 19 de Mayo, 10 de Agosto y 19 de Noviembre del año 2005; 10 de Febrero, 25 de Mayo, 7 de Agosto y 16 de Noviembre del año 2006; 20 de Febrero, 23 de Marzo, 31 de Mayo y 4 de Julio del año 2007 (en adelante el "Contrato"), copia de todo lo cual se adjunta al presente como ANEXO A,

II.   Que posteriormente, con fecha 25 de Abril de 2006, IIG en carácter de cedente, el ACREEDOR en carácter de cesionario conjuntamente con el DEUDOR, suscribieron el ASSIGNMENT OF CREDITS, mediante el cual IIG cedió al MUTUANTE todos los derechos y créditos derivados de una serie de contratos dentro del cual se encontraba el Contrato, todo lo cual se adjunta al presente como ANEXO B y cuyos términos y condiciones resultan aplicables a esta Primera Enmienda,

III.  Que al momento de la presente Enmienda, el DEUDOR declara haber recibido de conformidad el monto total del préstamo solicitado en el Contrato,

IV.   Que es intención del DEUDOR solicitar al ACREEDOR prórroga en el vencimiento que operó con fecha 29 de Junio de 2007,

V.    Que a la fecha de la presente, el DEUDOR reconoce que la deuda por el vencimiento impago asciende a la suma total de US$ 294.967,86 (Dólares Estadounidenses DOSCIENTOS NOVENTA Y CUATRO MIL NOVECIENTOS SESENTA Y SIETE CON 86/100),

VI.   Que de conformidad con la Cláusula Quinta del Contrato, el DEUDOR adjuntará un Pagaré por cada nueva Cuota, a favor del ACREEDOR, por la suma total adeudada con mas intereses aplicables hasta las Nuevas Fechas de Vencimiento;

VII.  Que el ACREEDOR estaría dispuesto a aceptar la solicitud del DEUDOR de postergar la Fecha de Vencimiento, realizando las modificaciones que sean necesarias en el Contrato,

VIII. Que las Partes reconocen que las modificaciones introducidas mediante la presente Enmienda en ningún caso podrá ser interpretada como novación de las obligaciones asumidas en el Contrato.

En mérito a las consideraciones precedentemente expuestas, las Partes celebran la presente Primera Enmienda (en adelante la "Primera Enmienda"), sujeta a las declaraciones y estipulaciones siguientes:

1-    Modifícase la Cláusula SEGUNDA del Contrato, la cual quedará redactada del siguiente modo:
SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1    El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en nueve (9) cuotas consecutivas (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fechas de Vencimiento") hasta completar –mediante el pago en término de las nueve (9) Cuotas- el pago de la suma total de US$ 2.359.681.18 (Dólares Estadounidenses DOS MILLONES TRESCIENTOS CINCUENTA Y NUEVE MIL SEISCIENTOS OCHENTA Y UNO CON 18/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

Primera Cuota:      30 de Septiembre de 2005
Segunda Cuota:      29 de Diciembre de 2005
Tercera Cuota:      31 de Marzo de 2006
Cuarta Cuota:       30 de Junio de 2006
Quinta Cuota:       29 de Septiembre de 2006



| | |
|---|---|
| Sexta Cuota: | 28 de Diciembre de 2006 |
| Séptima Cuota: | 30 de Marzo de 2007 |
| Octava Cuota: | 30 de Enero de 2008 |
| Novena Cuota: | 28 de Febrero de 2008 |

*Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo –con fondos propios o mediante pagos de Arthur Schuman-, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.*

2.2    *El Deudor realizará el pago de las Cuotas –y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:*

| | |
|---|---|
| BANK: | State Street Corp. f/k/a Investors Bank & Trust Company |
| ABA#: | 011-001-438 |
| SWIFT: | INVBUS33 |
| Credit: | Client Funds |
| Account#: | 569-530-395 |
| Further Credit: | IIG TOF – Sancor CUL |
| Account#: | 02030-8420148 |

2-    Modifícase la Cláusula QUINTA del Contrato, la cual quedará redactada del siguiente modo:
*QUINTA: PAGARES.*
*Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor nueve (9) pagarés por la suma total de US$ 2.359.681.18 (Dólares Estadounidenses DOS MILLONES TRESCIENTOS CINCUENTA Y NUEVE MIL SEISCIENTOS OCHENTA Y UNO CON 18/100), –monto equivalente a la sumatoria de la totalidad de las Cuotas-, pagaderos en las Fechas de Vencimiento (en adelante los "Pagarés"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Pagarés y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Pagarés al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Pagaré.*

3-    En atención a la modificación mencionada en el punto precedente el ACREEDOR endosará a favor del DEUDOR y entregará a este último, dentro de los 10 días de firmada la presente, un (1) Pagaré de US$ 292.500,00; que fuera entregado por el DEUDOR conjuntamente con la firma del Contrato. A su vez, en garantía de pago de las nuevas Cuotas –según la modificación efectuada por la presente Primera Enmienda- el DEUDOR libra a favor del ACREEDOR y entrega en este acto a este último los Pagarés detallados a continuación:

| | | |
|---|---|---|
| 1/2 | 30 de Enero de 2008 | US$ 156.090,59 |
| 2/2 | 28 de Febrero de 2008 | US$ 156.090,59 |

4-    Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y cláusulas del Contrato, así como los actos ya cumplidos por las Partes en virtud del mismo, permanecen inalterables, manteniendo los mismos plena vigencia.

5-    Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el DEUDOR en la Ciudad de Buenos Aires, República Argentina y por el ACREEDOR en la Ciudad de Amsterdam, The Netherlands, a los 30 días del mes de Julio de 2007.-

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Por: IIG TOF B.V.,
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:
Carácter:



ACTA DE CERTIFICACION DE FIRMAS
LEY 404

# ANEXO

F 000827268

1    Buenos Aires,   30 de    Julio    de   2007 . En mi carácter de Escribano

2    Titular del Registro Notarial N° 841

3    CERTIFICO: Que la/s   firma/s             que obra/n en el

4    documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5    firma/s que se formaliza simultáneamente por ACTA número    16    del

6    LIBRO número    80    , es/son puesta/s en mi presencia por la/s persona/s

7    cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

8    cuyo conocimiento doy fe.   Mario César MAGDALENA L.E. 8.106.144.- Mani-

9    fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10   PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11   exhibe y le confiere facultades suficientes para suscribir el documento ad-

12   junto.-

13

14

15

16

17

18

19

20                           MARTIN R. ARANA (h)
                               ESCRIBANO
                               MAT. 4370

21

22

23

24

25



# ANEXO V

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magdaleno, en su carácter de apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderado, domiciliado en 1500 Broadway, 17th Floor, New York, New York, 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente Contrato de Mutuo, sujeto a las siguientes cláusulas y condiciones:

PRIMERA: PRÉSTAMO.
El Deudor solicita al Acreedor en calidad de préstamo, y el Acreedor entrega al Deudor, la suma de US$ 3.000.437,36 (Dólares estadounidenses TRES MILLONES CUATROCIENTOS TREINTA Y SIETE CON 36/100) (en adelante el "Préstamo"). El Acreedor procederá a abonar al Deudor dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

BANCO:             Wachovia Bank N.A.
DIRECCIÓN:         New York, U.S.A.
SWIFT:             PNBPUS3NNYC
A NOMBRE DE:       Banco Itaú Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE:        ITAUARBA
Cuenta Nro.:       2000192261739
ROUTING N°:        FW026005092
A FAVOR DE:        SanCor Cooperativas Unidas Limitada
CUENTA Nro.:       0115301001
REFERENCIA:        Prefinanciación de Exportación

Dicha suma  será aplicada por el Deudor a financiar prefinanciación de exportaciones.

SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1    El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en seis (6) cuotas iguales, trimestrales y consecutivas de US$ 567.250,00 (Dólares estadounidenses QUINIENTOS SESENTA Y SIETE MIL DOSCIENTOS CINCUENTA CON 00/100) cada una (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar —mediante el pago en término de las seis Cuotas- el pago de la suma total de US$ 3.403.500,00 (Dólares estadounidenses TRES MILLONES CUATROCIENTOS TRES MIL QUINIENTOS CON 00/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

          Primera Cuota:      31 de Marzo de 2006
          Segunda Cuota:      20 de Junio de 2006
          Tercera Cuota:      20 de Septiembre de 2006
          Cuarta Cuota:       20 de Diciembre de 2006
          Quinta Cuota:       30 de Marzo de 2007
          Sexta Cuota:        20 de Junio de 2007

Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo —con fondos propios o mediante pagos de Arthur Schuman, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2    El Deudor realizará el pago de las Cuotas -y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

BANCO:       CITIBANK, NY
ABA:         021-000-089
CREDIT:      • SANCOR C.U.L – ESCROW ACCOUNT
ACCOUNT #:   • 05006839

TERCERA: MORA.
3.1    La mora del Deudor en el cumplimiento de las obligaciones pactadas en el presente Contrato – incluyendo sin limitación, el pago en tiempo y forma de las Cuotas- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el Acreedor tendrá derecho a considerar la deuda como de plazo vencido y exigir y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el Acreedor tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios.



El Acreedor también tendrá la facultad de considerar la deuda como de plazo vencido y solicitar el pago de todo lo adeudado en los siguientes casos: (a) si un tercero pidiera la quiebra del Deudor y no fuera promovida dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente; (b) si el Deudor solicitase su propio concurso preventivo de Acreedores, la homologación de un Acuerdo Preventivo Extrajudicial o cualquier otra forma de reestructuración de su deuda; (c) si se trabare alguna medida cautelar sobre sus bienes que por su magnitud comprometiese su solvencia patrimonial; (d) Si se comprueban modificación sustancial, en desmedro de la situación patrimonial del Deudor y (f) si se produjere cualquier la falta de veracidad, parcial o total, por parte del Deudor, en las aplicaciones de este préstamo; (e) si hay un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del presente Contrato.

## CUARTA: MONEDA DE PAGO.

4.1    El Deudor asume que el pago del importe total o el saldo que eventualmente adeude en virtud del Préstamo deberá ser necesariamente abonado en dólares estadounidenses billete o transferencia y no en otra moneda. En consecuencia, el Deudor expresamente reconoce y acepta que constituye condición esencial de este contrato que la devolución del Préstamo así como los intereses compensatorios y punitorios, costas, costas y demás sumas a ser abonadas al Acreedor en virtud del presente, se cancelen en dólares estadounidenses, en los términos del artículo 619 del Código Civil, renunciando expresamente a invocar la teoría de la imprevisión contemplada en el segundo párrafo del artículo 1198 del Código Civil.

4.2    El Acreedor, ante la existencia de normas legales o reglamentarias que impidieran que los importes que deba percibir sean abonados por el Deudor, en dólares estadounidenses billete o transferencia, podrá aceptar en forma expresa que los pagos se efectúen mediante la entrega de la cantidad de moneda argentina necesaria para poder adquirir en el Mercado de Valores de Buenos Aires o en el mercado abierto, Bonos Externos de la República Argentina de cualquier serie, o para el caso en que éstos hayan sido totalmente rescatados, títulos de deuda pública argentina, nacional o provincial, o títulos de deuda privada argentina, con o sin cotización, a elección del Acreedor, que negociados en el mercado de Montevideo, República Oriental del Uruguay, o de Nueva York, N.Y., Estados Unidos de Norteamérica, produzcan, neto de comisiones gastos, e impuestos, la cantidad de dólares estadounidenses billete o transferencia que correspondan ser abonados en virtud del presente. La determinación de la cantidad de títulos de deuda pública o privada necesaria será efectuada por el Acreedor basándose en la cotización en el Mercado de Valores de Buenos Aires o cualquier otro mercado nacional e internacional del día anterior a la fecha del pago. De no poder efectuarse el pago en la forma precedentemente detallada, por inexistencia o imposibilidad de obtener títulos de la deuda pública o privada argentina que puedan ser objeto de transacción en los mercados aludidos, el Deudor deberá entregar Bonos de otros países que suplan la imposibilidad mencionada, estando sujetos los mismos a idénticos requisitos que los previstos para los Bonos Externos de la República Argentina.

## QUINTA: PROMISSORY NOTES.

Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en, tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor seis (6) pagarés por la suma de US$ 567.250,00 (Dólares estadounidenses QUINIENTOS SESENTA Y SIETE MIL DOSCIENTOS CINCUENTA CON 00/100) cada uno –suma equivalente al monto de cada Cuota, pagaderos en las Fechas de Vencimiento (en adelante ellos "Promissory Note/s"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Promissory Notes y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Promissory Notes al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo relotorgar cada Promissory Note en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Promissory Note.

## SEXTA: WARRANTS.

6.1    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el Deudor afecta los warrants y endosarlos a favor del Acreedor en virtud del contrato de préstamo celebrado entre estas mismas partes con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 20 de Marzo de 2005, que se adjuntan al presente como Anexo I, los cuales ya habían sido afectados también como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 22 de Noviembre de 2004, que se adjunta como Anexo II, también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 22 de Noviembre de 2004, que se adjunta como Anexo III y también brindo entre las mismas partes con fecha 20 de Noviembre de 2004, que se adjunta como Anexo III y también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 20 de Marzo de 2005, que se adjunta como Anexo IV.

Asimismo, en garantía del total cumplimiento de las obligaciones asumidas en el presente Contrato, el Deudor también afecta los warrants y endosarlos a favor del Acreedor en virtud de los contratos de préstamo celebrados entre estas mismas partes con fecha 22 de noviembre de 2004 y 20 de noviembre de 2004, ambos modificados mediante Enmiendas de fecha 20 de Marzo de 2005, que se adjuntan al presente como Anexo II y Anexo III, respectivamente.

tal menor, entre los Warrants que tenga en su poder el Acreedor endosados por el Deudor con motivo del contrato de mutuo adjunto como Anexo I, los warrants que tenga también en su poder el Acreedor en virtud del contrato de préstamo adjunto como Anexo II, y los warrants que tenga en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo III el Acreedor deberá contar en todo momento con warrants (endosados a su favor por el Deudor) por un monto total equivalente o superior al 45,00% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004 y 20 de Marzo de 2005 y el presente, menos las cuotas consignadas en los mismos cinco contratos de mutuo (el presente Contrato y los contratos adjuntos como Anexo I, Anexo II, Anexo III y Anexo IV).

La presente modifica en lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como Anexo I, en la Sección 6.2 del contrato adjunto como Anexo II, en la Sección 6.2 del contrato adjunto como Anexo III y en la Sección 6.2 del contrato adjunto como Anexo IV.

6.2     Tal como consta en los contratos que se adjuntan como Anexo I, Anexo II y Anexo III el Deudor declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el Deudor se compromete a comunicar dicha circunstancia al Acreedor dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del Deudor, con los efectos pactados en la cláusula TERCERA, a partir de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido"). Si bien el Crédito Cedido ya ha sido cedido por el Deudor al Acreedor en garantía de las obligaciones pactadas en los contratos de Mutuo adjuntos como Anexo I, Anexo II, Anexo III y Anexo IV, el Deudor estima –por tratarse de créditos futuros y eventuales– que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de las sumas adeudadas al Acreedor en virtud de los contratos de mutuo adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV y del presente Contrato. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los cinco contratos.

6.3     En caso de mora del Deudor por cualquier causa que fuere, el Acreedor quedará automáticamente facultado para iniciar la ejecución de los Warrant en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el Acreedor se reserva expresamente la facultad de designar martillero al efecto.

## SÉPTIMA: CESIÓN DE CRÉDITOS.

7.1     En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el Deudor cede al Acreedor todos los derechos crediticios que le correspondan sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido"). Si bien el Crédito Cedido ya ha sido cedido por el Deudor al Acreedor en garantía de las obligaciones pactadas en los contratos de Mutuo adjuntos como Anexo I, Anexo II, Anexo III y Anexo IV, el Deudor estima –por tratarse de créditos futuros y eventuales– que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de las sumas adeudadas al Acreedor en virtud de los contratos de mutuo adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV y del presente Contrato. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los cinco contratos.

7.2     La presente cesión implica también la cesión y transferencia a favor del Acreedor de todos los derechos y acciones que le correspondan o puedan corresponder al Deudor sobre los conocimientos de embarque que acreditan el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen a Arthur Schuman en virtud o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido", tal como se define en esta Contrato, comprende todos los remitos, facturas y demás documentos emitidos en virtud de las transacciones comerciales que compongan el Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el Deudor y le correspondan respecto del Crédito Cedido y las consecuencias precedentemente citadas, colocando al Acreedor en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del Deudor.

7.3     El Deudor se compromete a entregar al Acreedor, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al Acreedor, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4     Asimismo, el Deudor garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por Arthur Schuman en la cuenta bancaria del Acreedor indicada en la Sección 2.2 del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el Deudor se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido

3

... remitidas al Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser ... al Acreedor mediante transferencia de los fondos correspondientes a la cuenta bancaria antes seña...

Los fondos del Crédito Cedido depositados en la cuenta bancaria del Acreedor serán aplicados al ... las Cuotas.

(i) Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor transferirá los fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de las 48 hs. de recibidos, a la cuenta bancaria del Deudor indicada en la Cláusula PRIMERA.

(ii) Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor aplicará los fondos del Crédito Cedido depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses excedan el monto de la Cuota, el excedente será transferido al Deudor de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el Deudor será responsable de aportar la diferencia, hasta completar la diferencia y abon... tal el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mor...

... La presente cesión se efectúa con responsabilidad por parte del Deudor hacia el Acreedor. En consecuencia, si por cualquier causa el importe del Crédito Cedido no fuera abonado al Acreedor conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el Deudor deberá abonar al Acreedor el importe total o el saldo adeudado correspondiente a cada Cuota, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula TERCERA del presente Contrato.

7.7 Las Partes acuerdan que, en virtud de la notificación de cesión de derechos crediticios efectuada oportunamente por el Deudor a Arthur Schuman con motivo del contrato de mutuo obrante en el Anexo I del presente Contrato —por el cual el Deudor cedió en garantía a favor del Acreedor los mismos derechos crediticios que por el presente se ceden—, el Deudor no deberá notificar a Arthur Schuman la cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8 El presente Contrato no implica de forma alguna la transferencia por el Deudor al Acreedor de las obligaciones del Crédito Cedido, las que permanecerán en cabeza del Deudor. El Deudor se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causan el Crédito Cedido, de modo que no se vea afectado el derecho del Acreedor al cobro del Crédito Cedido. Asimismo, el Deudor se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al Acreedor los datos (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá extrajudicialmente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que —con prescindencia de que hubiese o no incumplimiento por parte del Deudor- Arthur Schuman rescinda o resuelva los contratos de compraventa de mercadería que integran el Crédito Cedido, o de cualquier forma discontinúe o termine su relación comercial con Arthur Schuman, ya sea en forma unilateral o de común acuerdo entre el Deudor y Arthur Schuman

7.9 El Deudor garantiza al Acreedor:
(a) el cobro del Crédito Cedido.
(b) la forma instrumental del mismo.
(c) la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d) que no se encuentra inhibido para disponer de sus bienes;
(e) que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido;
(f) que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad;
(g) la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.



(h)   Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes del Crédito Cedido, incluyendo –pero no limitado a- la entrega en tiempo y forma a Arthur Schuman de la mercadería objeto del Crédito Cedido.

7.10   Durante la vigencia del presente Contrato, el Deudor se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al Acreedor, el estado de deuda de Arthur Schuman con el Deudor, remitiendo a tal efecto un informe firmado por un contador público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur Schuman y recibidas por el Deudor a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 54,50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del Deudor. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA.

OCTAVA: GASTOS.
Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA –sección 2.2- y SEPTIMA -Sección 7.5), tributos y/o gastos (impuesto de sellos, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del Deudor. El Deudor se compromete a abonar al Acreedor en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Asimismo, el Deudor se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, designando al Acreedor de cualquier obligación al respecto.

NOVENA: CESIÓN DEL CONTRATO.
El Acreedor podrá ceder el presente contrato en su totalidad, por cualquiera de los medios previstos en la Ley, adquiriendo el Acreedor los mismos beneficios y/o derechos y/o acciones de que es titular el Acreedor en virtud de este contrato. En ese caso, el Acreedor deberá comunicar en forma fehaciente la cesión al Deudor, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el Deudor oponer al Acreedor del contrato cualquier defensa que hubiera podido oponer al Acreedor cedente.

DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.
10.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2    El Deudor irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el Acreedor en relación con el presente Contrato. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada, incluyendo –sin que ello implique limitación de ningún tipo- la facultad exclusiva del Acreedor de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4    El Deudor por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al Deudor en cualquier acción, juicio o procedimiento que el Acreedor pudiera iniciar en el Estado de New York, debiendo asimismo el Deudor informar al Acreedor sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 no estuviere presente, el Deudor acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de

los Estados Unidos de América, en el domicilio del Deudor indicado en el último párrafo de la presente Cláusula.

10.6    Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7    El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer como defensa o alegación de incompetencia, o inconveniente forum' respecto del tribunal que intervenga en la acción, juicio o procedimiento. Asimismo el Deudor renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal Unipersonal o colegiado que intervenga en la contienda. El Deudor sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del Acreedor que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

10.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación: .

Deudor:    1) 60 SW 8th Street, Suite 2000 - Miami, FL 33130-3003

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

Acreedor: 1500 Broadway, 17th Floor, New York, New York, 10036, USA

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del Deudor y un ejemplar en poder del Acreedor.

Suscripto por el "Cedente" en la Ciudad de Buenos Aires, República Argentina y por el "Cesionario" en la Ciudad de New York, USA, a los 12 días de Septiembre de 2006.

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N° _____
Rs. As. _____

Por: IIG CAPITAL LLC AS AGENT
Nombre: Thomas LaVecchia
Carácter: Senior Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



F 001953929

Buenos Aires, 12 de Septiembre de 2005 . En mi carácter de Escribano

Titular del Registro Notarial Nº 841

CERTIFICO: Que la/s firma que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 159 del

LIBRO número 55 es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se mencionan a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Manifiesta ac-

tuar en su carácter de apoderado de la sociedad SANCOR COOPERATIVAS UNIDAS

LIMITADAS, de acuerdo a la documentación que me exhibe y le confiere facultades

suficientes para suscribir el documento adjunto.-

## PRIMERA ENMIENDA AL CONTRATO DE MUTUO
### DE FECHA 12 /SEPTIEMBRE/2005

Entre:
IIG TOF B.V., REPRESENTADO POR TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada por H Branchemp y F Kuiper, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (en adelante el "ACREEDOR"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, por la otra parte, (en adelante el "DEUDOR") ambos conjuntamente denominadas las "Partes", y

CONSIDERANDO:

I.  Que con fecha 12 de Septiembre de 2005, el DEUDOR suscribió con IIG CAPITAL LLC AS AGENT (en adelante "IIG"), un contrato de mutuo modificado mediante Cartas de Recambio de Warrants de fecha 14 de Febrero, 19 de Mayo, 10 de Agosto y 19 de Noviembre del año 2005; 10 de Febrero, 25 de Mayo, 7 de Agosto y 16 de Noviembre del año 2006; 20 de Febrero, 23 de Marzo, 31 de Mayo y 4 de Julio del año 2007 (en adelante el "Contrato"), copia de todo lo cual se adjunta al presente como ANEXO A,

II.  Que posteriormente, con fecha 25 de Abril de 2006, IIG en carácter de cedente, el ACREEDOR en carácter de cesionario conjuntamente con el DEUDOR, suscribieron el ASSIGNMENT OF CREDITS, mediante el cual IIG cedió al MUTUANTE todos los derechos y créditos derivados de una serie de contratos dentro del cual se encontraba el Contrato, todo lo cual se adjunta al presente como ANEXO B y cuyos términos y condiciones resultan aplicables a esta Primera Enmienda,

III.  Que al momento de la presente Enmienda, el DEUDOR declara haber recibido de conformidad el monto total del préstamo solicitado en el Contrato,

IV.  Que es intención del DEUDOR solicitar al ACREEDOR prórroga en el vencimiento que operó con fecha 29 de Junio de 2007,

V.  Que a la fecha de la presente, el DEUDOR reconoce que la deuda por el vencimiento impago asciende a la suma total de US$ 572.134,65 (Dólares Estadounidenses QUINIENTOS SETENTA Y DOS MIL CIENTO TREINTA Y CUATRO CON 65/100),

VI.  Que de conformidad con la Cláusula Quinta del Contrato, el DEUDOR adjuntará un Pagaré por cada nueva Cuota, a favor del ACREEDOR, por la suma total adeudada con mas intereses aplicables hasta las Nuevas Fechas de Vencimiento;

VII.  Que el ACREEDOR estaría dispuesto a aceptar la solicitud del DEUDOR de postergar la Fecha de Vencimiento, realizando las modificaciones que sean necesarias en el Contrato,

VIII.  Que las Partes reconocen que las modificaciones introducidas mediante la presente Enmienda en ningún caso podrá ser interpretada como novación de las obligaciones asumidas en el Contrato.

En mérito a las consideraciones precedentemente expuestas, las Partes celebran la presente Primera Enmienda (en adelante la "Primera Enmienda"), sujeta a las declaraciones y estipulaciones siguientes:

1-  Modifícase la Cláusula SEGUNDA del Contrato, la cual quedará redactada del siguiente modo:
*SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.*
*2.1  El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en siete (7) cuotas consecutivas (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar –mediante el pago en término de las siete (7) Cuotas- el pago de la suma total de US$ 3.441.772,49 (Dólares Estadounidenses TRES MILLONES CUATROCIENTOS CUARENTA Y UN MIL SETECIENTOS SETENTA Y DOS CON 49/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.*

Primera Cuota:        31 de Marzo de 2006
Segunda Cuota:      30 de Junio de 2006
Tercera Cuota:        29 de Septiembre de 2006
Cuarta Cuota:         28 de Diciembre de 2006
Quinta Cuota:         30 de Marzo de 2007

A (h)

| | |
|---|---|
| *Sexta Cuota:* | 30 de Enero de 2008 |
| *Séptima Cuota:* | 28 de Febrero de 2008 |

*Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo –con fondos propios o mediante pagos de Arthur Schuman-, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.*

2.2    *El Deudor realizará el pago de las Cuotas –y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:*

| | |
|---|---|
| *BANK:* | **State Street Corp. f/k/a Investors Bank & Trust Company** |
| *ABA#:* | **011-001-438** |
| *SWIFT:* | **INVBUS33** |
| *Credit:* | **Client Funds** |
| *Account#:* | **569-530-395** |
| *Further Credit:* | **IIG TOF – Sancor CUL** |
| *Account#:* | **02030-8420148** |

2-    Modifique la **Cláusula QUINTA** del Contrato, la cual quedará redactada del siguiente modo:
QUINTA: PAGARES.
*Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor siete (7) pagarés por la suma total de US$ 3.441.772,49 (Dólares Estadounidenses TRES MILLONES CUATROCIENTOS CUARENTA Y UN MIL SETECIENTOS SETENTA Y DOS CON 49/100), –monto equivalente a la sumatoria de la totalidad de las Cuotas-, pagaderos en las Fechas de Vencimiento (en adelante los "Pagarés"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Pagarès y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Pagarés al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Pagaré.*

3-    En atención a la modificación mencionada en el punto precedente el ACREEDOR endosará a favor del DEUDOR y entregará a este último, dentro de los 10 días de firmada la presente, un (1) Pagaré de US$ 567.250,00; que fuera entregado por el DEUDOR conjuntamente con la firma del Contrato. A su vez, en garantía de pago de las nuevas Cuotas –según la modificación efectuada por la presente Primera Enmienda- el DEUDOR libra a favor del ACREEDOR y entrega en este acto a este último los Pagarés detallados a continuación:

| | | |
|---|---|---|
| 1/2 | 30 de Enero de 2008 | US$ 302.761,24 |
| 2/2 | 28 de Febrero de 2008 | US$ 302.761,25 |

4-    Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y cláusulas del Contrato, así como los actos ya cumplidos por las Partes en virtud del mismo, permanecen inalterables, manteniendo los mismos plena vigencia.

5-    Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el DEUDOR en la Ciudad de Buenos Aires, República Argentina y por el ACREEDOR en la Ciudad de Amsterdam, The Netherlands, a los 30 días del mes de Julio de 2007.-

Firma/s certificada/s en Foja
N° F00877770
Bs. As. 30-7-2007

_____
Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

_____
Por: IIG TOF B.V.,
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: H. Braunshaus          F. Kuiper
Carácter: Attorney A          Attorney B

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

  

ACTA DE CERTIFICACION DE FIRMAS

(h)

## ANEXO

F 000827270

1  Buenos Aires,  30 de  Julio  de 2007 . En mi carácter de Escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  firma/s                    que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número  18  del

6  LIBRO número  80  , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe.  Mario César MAGDALENA L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13



14

15

16

17

18

19     MARTIN R. ARANA (h)
       ESCRIBANO
       MAT. 4370

20

21

22                                          

23

24

25

ANEXO V

Entre SANCOR COOPERATIVAS UNIDAS LTDA., representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, representada por el Sr. Thomas LaVecchia, en su carácter de apoderado, domiciliado en 1500 Broadway, 17th Floor, New York, New York, 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente Contrato de Mutuo, sujeto a las siguientes cláusulas y condiciones:

PRIMERA: PRÉSTAMO.
El Deudor solicita al Acreedor en calidad de préstamo, y el Acreedor entrega al Deudor, la suma de US$ 3.003.933,33 (Dólares estadounidenses TRES MILLONES TRES MIL NOVECIENTOS TREINTA Y TRES CON 33/100) (en adelante el "Préstamo"). El Acreedor procederá a abonar al Deudor dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

BANCO:              Wachovia Bank N.A.
DIRECCIÓN:          New York, U.S.A.
SWIFT:              PNBPUS3NNYC
A NOMBRE DE:        Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE:         ITAUARBA
Cuenta Nro.:        2000192281739
ROUTING N°:         FW026005092
A FAVOR DE:         SanCor Cooperativas Unidas Limitada
CUENTA Nro.:        0118SJ61001
REFERENCIA:         Prefinanciación de Exportación

Dicha suma  será aplicada por el Deudor a financiar prefinanciación de exportaciones.

SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1     El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en seis (6) cuotas iguales, trimestrales y consecutivas de US$ 560.000,00 (Dólares estadounidenses QUINIENTOS SESENTA MIL CON 00/100) cada una (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fechas de Vencimiento") hasta completar —mediante el pago en término de las seis Cuotas- el pago de la suma total de US$ 3.360.000,00 (Dólares estadounidenses TRES MILLONES TRESCIENTOS SESENTA MIL CON 00/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

Primera Cuota:      28 de Febrero de 2006
Segunda Cuota:      30 de Mayo de 2006
Tercera Cuota:      30 de Agosto de 2006
Cuarta Cuota:       30 de Noviembre de 2006
Quinta Cuota:       28 de Febrero de 2007
Sexta Cuota:        31 de Mayo de 2007

Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo —con fondos propios o mediante pagos de Arthur Schuman, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2     El Deudor realizará el pago de las Cuotas -y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

BANCO:              CITIBANK, NY
ABA #:              021-000-089
CREDIT:             SANCOR C.U.L – ESCROW ACCOUNT
ACCOUNT #:          05006639

TERCERA: MORA.
3.1     La mora del Deudor en el cumplimiento de las obligaciones pactadas en el presente Contrato – incluyendo sin limitación, el pago en tiempo y forma de las Cuotas- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el Acreedor tendrá derecho a considerar la deuda como de plazo vencido y exigir y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el Acreedor tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

3.2     El Acreedor también tendrá la facultad de considerar la deuda como de plazo vencido y solicitar el pago de todo lo adeudado en los siguientes casos: (a) si un tercero pidiera la quiebra del Deudor y no fuera



rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente; (b) si el Deudor solicitase su propio concurso preventivo de Acreedores, la homologación de un Acuerdo Preventivo Extrajudicial o cualquier otra forma de reestructuración de su deuda; (c) si se trabara alguna medida cautelar sobre sus bienes que por su magnitud comprometieran su solvencia patrimonial; (d) si se comprobare la falta de veracidad, parcial o total, por parte del Deudor, en las aplicaciones de este préstamo; (e) si hay modificación sustancial, en desmedro de la situación patrimonial del Deudor y (f) si se produjere cualquier alteración societaria o en la situación financiera del Deudor que, a criterio razonable del Acreedor, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del presente Contrato.

**CUARTA: MONEDA DE PAGO.**
4.1     El Deudor asume que el pago del importe total o el saldo que eventualmente adeudó en virtud del Préstamo deberá ser necesariamente abonado en dólares estadounidenses billete o transferencia y no en otra moneda. En consecuencia, el Deudor expresamente reconoce y acepta que constituye condición esencial de este contrato que la devolución del Préstamo así como los intereses compensatorios y punitorios, costas, costas y demás sumas a ser abonadas al Acreedor en virtud del presente, se cancelen en dólares estadounidenses, en los términos del artículo 619 del Código Civil, renunciando expresamente a invocar la teoría de la imprevisión contemplada en el segundo párrafo del artículo 1198 del Código Civil.

4.2     El Acreedor, ante la existencia de normas legales o reglamentarias que impidieran que los importes que deba percibir sean abonados por el Deudor, en dólares estadounidenses billete o transferencia, podrá aceptar en forma expresa que los pagos se efectúen mediante la entrega de la cantidad de moneda argentina necesaria para poder adquirir en el Mercado de Valores de Buenos Aires o en el mercado abierto, Bonos Externos de la República Argentina de cualquier serie, o para el caso en que éstos hayan sido totalmente rescatados, títulos de deuda pública argentina, nacional o provincial, o títulos de deuda privada argentina, con o sin cotización, a elección del Acreedor, que negociados en el mercado de Montevideo, República Oriental del Uruguay, o de Nueva York, N.Y., Estados Unidos de Norteamérica, produzcan, neto de comisiones gastos e impuestos, la cantidad de dólares estadounidenses billetes o transferencia que correspondan ser abonados en virtud del presente. La determinación de la cantidad de títulos de deuda pública o privada necesaria será efectuada por el Acreedor basándose en la cotización en el Mercado de Valores de Buenos Aires o cualquier otro mercado efectuar basándose en la cotización del día anterior a la fecha del pago. De no poder efectuarse el pago en la forma precedentemente detallada, por inexistencia o imposibilidad de obtener títulos de la deuda pública o privada argentina que puedan ser objeto de transacción en los mercados aludidos, el Deudor deberá entregar Bonos de otros países que suplan la imposibilidad mencionada, estando sujetos los mismos a idénticos requisitos que los previstos para los Bonos Externos de la República Argentina.

**QUINTA: PROMISORY NOTES.**
Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor seis (6) pagarés por la suma de US$ 560.000,00 (Dólares estadounidenses QUINIENTOS SESENTA MIL CON 00/100) cada uno –suma equivalente al monto de cada Cuota-, pagaderos en las Fechas de Vencimiento  (en adelante el/los "Promissory Notes"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Promissory Notes y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Promissory Notes al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Promissory Note en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Promissory Note.

**SEXTA: WARRANTS.**
6.1     Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el Deudor afecta los warrants ya endosados a favor del Acreedor en virtud del contrato de préstamo celebrado entre estas mismas partes con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005, que se adjuntan al presente como Anexo I, los cuales ya habían sido afectados también como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 22 de Noviembre de 2004, que se adjunta como Anexo II, también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 26 de Noviembre de 2004, que se adjunta como Anexo III, también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 29 de Marzo de 2005, que se adjunta como Anexo IV y también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 12 de Septiembre de 2005, que se adjunta como Anexo V.

Asimismo, en garantía del total cumplimiento de las obligaciones asumidas en el presente Contrato, el Deudor también afecta los warrants ya endosados a favor del Acreedor en virtud de los contratos de préstamo celebrados entre estas mismas partes con fecha 22 de noviembre y 26 de noviembre de 2004, ambos modificados mediante Enmiendas de fecha 29 de Marzo de 2005, que se adjuntan al presente como Anexo II y Anexo III, respectivamente.



De tal manera, entre los Warrants que tenga en su poder el Acreedor endosados por el Deudor con motivo del contrato de mutuo adjunto como Anexo I, los warrants que tenga también en su poder el Acreedor en virtud del contrato de préstamo adjunto como Anexo II, y los warrants que tenga en su poder el Acreedor en virtud del contrato de mutuo adjunto como Anexo III, el Acreedor deberá contar en todo momento con warrants (endosados a su favor por el Deudor) por un monto total equivalente o superior al 35,50% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 29 de Noviembre de 2004, 29 de Marzo de 2005, 12 de septiembre de 2005 y el presente, menos las cuotas canceladas en los mismos seis contratos de mutuo (el presente Contrato y los contratos adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV y Anexo V).

La presente modifica en lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como Anexo I, en la Sección 6.2 del contrato adjunto como Anexo II, en la Sección 6.2 del contrato adjunto como Anexo III y en la Sección 6.2 del contrato adjunto como Anexo IV.

6.2    Tal como consta en los contratos que se adjuntan como Anexo I, Anexo II y Anexo III el Deudor declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el Deudor se compromete a comunicar dicha circunstancia al Acreedor dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del Deudor, con los efectos pactados en la cláusula TERCERA. En todos los casos, el Deudor deberá responder por los daños y perjuicios que su incumplimiento pudiera ocasionar al Acreedor.

6.3    En caso de mora del Deudor por cualquier causa que fuere, el Acreedor quedará automáticamente facultado para iniciar la ejecución de los Warrant en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el Acreedor se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA: CESIÓN DE CRÉDITOS.
7.1    En garantía de pago de las Cuotas y del cumplimiento de todas las obligaciones asumidas por el Deudor en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el Deudor cede al Acreedor, todos los derechos crediticios que le correspondan sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido"). Si bien el Crédito Cedido ya ha sido cedido por el Deudor al Acreedor en garantía de las obligaciones pactadas en los contratos de Mutuo adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV y Anexo V, el Deudor estima –por tratarse de créditos futuros y eventuales- que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de las sumas adeudadas al Acreedor en virtud de los contratos de mutuo adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV, Anexo V y del presente Contrato. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los seis contratos.

7.2    La presente cesión implica también la cesión y transferencia a favor del Acreedor de todos los derechos y acciones que le corresponden o puedan corresponder al Deudor sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas que el mismo emita en un futuro respecto a los productos que se entreguen a Arthur Schuman en virtud o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido", tal como se define en este Contrato, comprende todos los remitos, facturas y demás documentos emitidos en virtud de las transacciones comerciales que compongan el Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el Deudor y lo correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al Acreedor en su mismo lugar y grado de privilegio con toda la extensión y amplitud posibles, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del Deudor.

7.3    El Deudor se compromete a entregar al Acreedor, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al Acreedor, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4    Asimismo, el Deudor garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por Arthur Schuman en la cuenta bancaria del Acreedor indicada en la Sección 2.2 del presente Contrato. A tal efecto, en adición a las notificaciones previstas en la Sección 7.7 de la presente Cláusula SÉPTIMA, el Deudor se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que oportunamente emitidas al Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser



pagada al Acreedor mediante transferencia de los fondos correspondientes a la cuenta bancaria antes seña-
lada.

7.5     Los fondos del Crédito Cedido depositados en la cuenta bancaria del Acreedor serán aplicados al
pago de las Cuotas.

(i)      Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (en-
tendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de
Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor transferirá los
fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de las 48 hs.
de recibidos, a la cuenta bancaria del Deudor indicada en la Cláusula PRIMERA.

(ii)     Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendién-
dose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondien-
tes a las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el
Acreedor aplicará los fondos del Crédito Cedido depositados en su cuenta a precancelar el
monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el
caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales
meses excedan del monto de la Cuota, el excedente será transferido al Deudor de la forma
indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito
Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para
cubrir el importe de la Cuota, el Deudor será responsable de aportar la diferencia, hasta
completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimien-
to, bajo apercibimiento de mora.

7.6     La presente cesión se efectúa con responsabilidad por parte del Deudor hacia el Acreedor. En con-
secuencia, si por cualquier causa el importe del Crédito Cedido no fuera abonado al Acreedor conforme los
términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de
Vencimiento, el Deudor deberá abonar al Acreedor el importe total o el saldo adeudado correspondiente a
cada Cuota, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los
términos de la Cláusula TERCERA del presente Contrato.

7.7     Las Partes acuerdan que, en virtud de la notificación de cesión de derechos crediticios efectuada
oportunamente por el Deudor a Arthur Schuman con motivo del contrato de mutuo obrante en el Anexo I del
presente Contrato —por el cual el Deudor cedió en garantía a favor del Acreedor los mismos derechos crediti-
cios que por el presente se ceden—, el Deudor no deberá notificar a Arthur Schuman la cesión de derechos
crediticios pactada por las partes en el presente Contrato.

7.8     El presente Contrato no implica de forma alguna la transferencia por el Deudor al Acreedor de las
obligaciones del Crédito Cedido, las que permanecerán en cabeza del Deudor. El Deudor se compromete
irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos
que causan el Crédito Cedido, de modo que no se vea afectado el derecho del Acreedor al cobro del Crédito
Cedido. Asimismo, el Deudor se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de
una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al Acreedor los detalles
(volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente
Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, pro-
ducirá automáticamente la mora de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula
TERCERA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso
de que —con prescindencia de que hubiere o no incumplimiento por parte del Deudor- Arthur Schuman res-
cinda o resuelva los contratos de compraventa de mercadería que integran el Crédito Cedido, o de cualquier
forma discontinúe o termine su relación comercial con Arthur Schuman, ya sea en forma unilateral o de co-
mún acuerdo entre el Deudor y Arthur Schuman

7.9     El Deudor garantiza al Acreedor:
(a)      el cobro del Crédito Cedido.
(b)      la forma instrumental del mismo.
(c)      la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose
afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de
la presente;
(d)      que no se encuentra inhibido para disponer de sus bienes;
(e)      que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie
sobre el Crédito Cedido;
(f)      que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido
total ni parcialmente a persona física o jurídica con anterioridad;
(g)      la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.

(b)   Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes del Crédito Cedido, incluyendo –pero no limitado a- la entrega en tiempo y forma a Arthur Schuman de la mercadería objeto del Crédito Cedido.

7.10   Durante la vigencia del presente Contrato, el Deudor se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al Acreedor, el estado de deuda de Arthur Schuman con el Deudor, remitiendo a tal efecto un informe firmado por un contador público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur Schuman y recibidas por el Deudor a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 64,50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del Deudor. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA.

OCTAVA: GASTOS.
Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA –sección 2.2- y SÉPTIMA –Sección 7.5), tributos y/o gastos (impuesto de sellos, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del Deudor. El Deudor se compromete a abonar al Acreedor en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Asimismo, el Deudor se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa o indirectamente del Préstamo objeto del presente Contrato, y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al Acreedor de cualquier obligación al respecto.

NOVENA: CESIÓN DEL CONTRATO.
El Acreedor podrá ceder el presente contrato en su totalidad, por cualquiera de los medios previstos en la Ley, adquiriendo el Acreedor los mismos beneficios y/o derechos y/o acciones de que es titular el Acreedor en virtud de este contrato. En ese caso, el Acreedor deberá comunicar en forma fehaciente la cesión al Deudor, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el Deudor oponer al Acreedor del contrato cualquier defensa que hubiera podido oponer al Acreedor cedente.

DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.
10.1   El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2   El Deudor irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el Acreedor en relación con el presente Contrato. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.3   Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada, incluyendo –sin que ello implique limitación de ningún tipo- la facultad exclusiva del Acreedor de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4   El Deudor por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al Deudor en cualquier acción, juicio o procedimiento que el Acreedor pudiera iniciar en el Estado de New York, debiendo asimismo el Deudor informar al Acreedor sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5   Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 no estuviere presente, el Deudor acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de

los Estados Unidos de América, en el domicilio del Deudor indicado en el último párrafo de la presente Cláusula

10.6    Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7    El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor, y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el Deudor renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. EL Deudor sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del Acreedor que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

10.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

Deudor:    1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

Acreedor: 1500 Broadway, 17th Floor, New York, New York, 10036, USA

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del Deudor y un ejemplar en poder del Acreedor.

Suscripto por el "Cedente" en la Ciudad de Buenos Aires, República Argentina a los 27 días del mes de Septiembre de 2005 y por el "Cesionario" en la Ciudad de New York, USA, a los 29 días de Septiembre de 2005.

Por SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N° F009407257
Bs. As. 27/9/2005

MARTIN R. ARANA (h)
ESCRIBANO
MAT 4370

Por RG CAPITAL LLC AS AGENT
Nombre: Thomás LaVecchia
Carácter: Senior Director



**ANEXO**

F 000464241

Buenos Aires, 27 de Septiembre de 2005 . En mi carácter de Escribano

Titular del Registro Notarial Nº 841

CERTIFICO: Que la/s firma que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 23 del

LIBRO número 56 , es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Manifiesta actuar

en su carácter de apoderado de la sociedad SANCOR COOPERATIVAS UNIDAS LIMI-

TADAS, de acuerdo a la documentación que me exhibe y le confiere facultades suficien-

tes para suscribir el documento adjunto.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT 4370