entre SANCOR COOPERATIVAS UNIDAS LTDA., una sociedad constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "Deudor", y IIG CAPITAL LLC AS AGENT, una sociedad constituida bajo las leyes de Estados Unidos de América, representada por el Sr. Thomas LaVecchia, en su carácter de Señor Director, domiciliado en 1900 Broadway, 17th Floor, New York, New York, 10036, USA, por la otra parte, en adelante el "Acreedor", se celebra el presente Contrato de Mutuo, sujeto a las siguientes cláusulas y condiciones:

PRIMERA: PRESTAMO.
El Deudor solicita al Acreedor en calidad de préstamo, y el Acreedor entrega al Deudor, la suma de US$ 3.534.444,44 (Dólares estadounidenses TRES MILLONES QUINIENTOS TREINTA Y CUATRO MIL CUATROCIENTOS CUARENTA Y CUATRO CON 44/100 (en adelante el "Préstamo"). El Acreedor procederá a abonar al Deudor dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

BANCO:            Wachovia Bank N.A.
DIRECCIÓN:        New York, U.S.A.
SWIFT:            PNBPUS3NNYC
A NOMBRE DE:      Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE:       ITAUARBA
Cuenta Nro.:      2000192261739
ROUTING N°:       FW026005092
A FAVOR DE:       SanCor Cooperativas Unidas Limitada
CUENTA Nro.:      01185361001
REFERENCIA:       Prefinanciación de Exportación

Dicha suma  será aplicada por el Deudor a  prefinanciación de exportaciones.

SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1      El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en dos (2) Cuotas iguales, mensuales y consecutivas de US$ 2.000.000,00 (Dólares estadounidenses DOS MILLONES CON 00/100) cada una (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar —mediante el pago en término de las dos (2) Cuotas- el pago de la suma total de US$ 4.000.000,00 (Dólares estadounidenses CUATRO MILLONES CON 00/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

        Primera Cuota:          30 de Abril de 2007
        Segunda Cuota:          30 de Mayo de 2007

Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo —con fondos propios o mediante pagos de Arthur Schuman- en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2      El Deudor realizará el pago de las Cuotas —y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

BANCO:            CITIBANK, NY
ABA #:            021-000-089
CREDIT:           SANCOR C.U.L. – ESCROW ACCOUNT
ACCOUNT #:        05006639

TERCERA: MORA.
3.1      La mora del Deudor en el cumplimiento de las obligaciones pactadas en el presente Contrato – incluyendo sin limitación, el pago en tiempo y forma de las Cuotas- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el Acreedor tendrá derecho a considerar la deuda cómo de plazo vencido y exigir y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el Acreedor tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios.

3.2      El Acreedor también tendrá la facultad de considerar la deuda como de plazo vencido y solicitar el inmediato pago de todo lo adeudado en los siguientes Supuestos de Incumplimiento: (a) si el Deudor incumpliese con el pago en tiempo y forma de las cuotas; (b) si un tercero pidiere la quiebra del Deudor y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad



procesal correspondiente; (c) si el Deudor solicitara su propio concurso preventivo de Acreedores, la homologación de un Acuerdo Preventivo Extrajudicial o cualquier otra forma de reestructuración de su deuda; (d) si se trabara embargo o se dicte cualquier otra medida cautelar sobre sus bienes que por su magnitud comprometiera su solvencia patrimonial; (e) si se comprobara la falta de veracidad, parcial o total, por parte del Deudor, en las aplicaciones del préstamo objeto del presente contrato (f) si hay modificación sustancial, en desmedro de la situación patrimonial del Deudor y (g) si se produjere cualquier alteración societaria o en la situación financiera del Deudor que, a criterio razonable del Acreedor, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del presente Contrato.

**CUARTA: MONEDA DE PAGO.**

4.1    El DEUDOR asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el DEUDOR expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago del Repago así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al ACREEDOR en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el DEUDOR deberá igualmente abonar el Repago y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del ACREEDOR:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

4.2.(b). Mediante la entrega al ACREEDOR de cualquier título en Dólares, a satisfacción expresa del ACREEDOR y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el ACREEDOR en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al DEUDOR llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al ACREEDOR de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el DEUDOR bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3    Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el DEUDOR sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Acreedor, la cantidad de Dólares adeudada bajo el Contrato.

4.4    Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el DEUDOR.

4.5    Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a usar será aquél al cual, de acuerdo con procedimientos bancarios normales, el ACREEDOR pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra cualquiera de el DEUDOR en una moneda distinta de Dólares, la obligación de pago de el DEUDOR de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el ACREEDOR haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el ACREEDOR pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares

2

adeudada bajo el Contrato, el DEUDOR acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al ACREEDOR de esa pérdida.

**QUINTA: PAGARE.**
Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor dos (2) pagarés por la suma de US$ 2.000.000,00 (Dólares estadounidenses DOS MILLONES CON 00/100) cada uno –suma equivalente al monto de cada Cuota-, pagaderos en las Fechas de Vencimiento (en adelante los "Pagarés"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Pagarés y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Pagarés al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré-en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Pagaré.

**SEXTA: WARRANTS.**
6.1     Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el Deudor afecta los warrants ya endosados a favor del Acreedor en virtud del contrato de préstamo celebrado entre estas mismas partes con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005, que se adjuntan al presente como Anexo I, los cuales ya habían sido afectados también como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 22 de Noviembre de 2004, que se adjunta como Anexo II, también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 26 de Noviembre de 2004, que se adjunta como Anexo III, también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 29 de Marzo de 2005, que se adjunta como Anexo IV, también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 12 de Septiembre de 2005, que se adjunta como Anexo V y también afectados como garantía del contrato de préstamo celebrado entre las mismas partes con fecha 27 de Septiembre de 2005, que se adjunta como Anexo VI.

Asimismo, en garantía del total cumplimiento de las obligaciones asumidas en el presente Contrato, el Deudor también afecta los warrants ya endosados a favor del Acreedor en virtud de los contratos de préstamo celebrados entre estas mismas partes con fecha 22 de noviembre de 2004 y 26 de noviembre de 2004, ambos modificados mediante Enmiendas de fecha 29 de Marzo de 2005, que se adjuntan al presente como Anexo II y Anexo III, respectivamente.

De tal manera, entre los Warrants que tenga en su poder el Acreedor endosados por el Deudor con motivo del contrato de mutuo adjunto como Anexo I, los warrants que tenga también en su poder el Acreedor en virtud del contrato de préstamo adjunto como Anexo II, y los warrants que tenga en su poder el Acreedor con virtud del contrato de préstamo adjunto como Anexo III, el Acreedor deberá contar en todo momento con warrants (endosados a su favor por el Deudor) por un monto total equivalente o superior al 35,50% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005 y el presente, menos las cuotas canceladas en los mismos siete (7) contratos de mutuo (el presente contrato y los contratos adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV, Anexo V y Anexo VI).

La presente modifica en lo pertinente lo dispuesto en la Sección 6.2 del contrato adjunto como Anexo I, en la Sección 6.2 del contrato adjunto como Anexo II y en la Sección 6.2 del contrato adjunto como Anexo III.

6.2     Tal como consta en los contratos que se adjuntan como Anexo I, Anexo II y Anexo III el Deudor declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el Deudor se compromete a comunicar dicha circunstancia al Acreedor dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del Deudor, con los efectos pactados en la cláusula TERCERA. En todos los casos, el Deudor deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al Acreedor.

6.3     En caso de mora del Deudor por cualquier causa que fuere, el Acreedor quedará automáticamente facultado para iniciar la ejecución de los Warrant en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el Acreedor se reserva expresamente la facultad de designar martillero al efecto.

**SEPTIMA: CESIÓN DE CRÉDITOS.**
7.1     En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el Deudor cede al Acreedor, todos los derechos crediticios que le correspondan sobre las

3

transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el Deudor al Acreedor en virtud del presente Contrato (en adelante el "Crédito Cedido"). Si bien el Crédito Cedido ya ha sido cedido por el Deudor al Acreedor en garantía de las obligaciones pactadas en los contratos de Mutuo adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV y Anexo V, Anexo VI el Deudor estima –por tratarse de créditos futuros y eventuales– que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de las sumas adeudadas al Acreedor en virtud de los contratos de mutuo adjuntos como Anexo I, Anexo II, Anexo III, Anexo IV, Anexo V, Anexo VI y del presente Contrato. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los siete contratos.

7.2    La presente cesión implica también la cesión y transferencia a favor del Acreedor de todos los derechos y acciones que le corresponden o puedan corresponder al Deudor sobre los conocimientos de embarque que se acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen a Arthur Schuman en virtud o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido", tal como se define en este Contrato, comprende todos los remitos, facturas y demás documentos emitidos en virtud de las transacciones comerciales que compongan el Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el Deudor y lo correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al Acreedor en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del Deudor.

7.3    El Deudor se compromete a entregar al Acreedor, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al Acreedor, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4    Asimismo, el Deudor garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por Arthur Schuman en la cuenta bancaria del Acreedor indicada en la Sección 2.2 del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el Deudor se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que sean remitidas al Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser pagada al Acreedor mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la cuenta bancaria del Acreedor serán aplicados al pago de las Cuotas.

(i)     Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentran mencionados en las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor transferirá los fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de las 48 hs. de recibidas, a la cuenta bancaria del Deudor indicada en la Cláusula PRIMERA.

(ii)    Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el Acreedor aplicará los fondos del Crédito Cedido depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses excedan el monto de la Cuota, el excedente será transferido al Deudor de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el Deudor será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6    La presente cesión se efectúa con responsabilidad por parte del Deudor hacia el Acreedor. En consecuencia, si por cualquier causa el importe del Crédito Cedido no fuere abonado al Acreedor conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el Deudor deberá abonar al Acreedor el importe total o el saldo adeudado correspondiente a cada Cuota, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula TERCERA del presente Contrato.

7.7    Las Partes acuerdan que, en virtud de la notificación de cesión de derechos crediticios efectuada oportunamente por el Deudor a Arthur Schuman con motivo del contrato de mutuo obrante en el Anexo I del presente Contrato –por el cual el Deudor cedió en garantía a favor del Acreedor los mismos derechos crediticios que por el presente se ceden–, el Deudor no deberá notificar a Arthur Schuman la cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8    El presente Contrato no implica de forma alguna la transferencia por el Deudor al  Acreedor de las obligaciones del Crédito Cedido, las que permanecerán en cabeza del Deudor. El Deudor se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen el Crédito Cedido, de modo que no se vea afectado el derecho del Acreedor al cobro del Crédito Cedido. Asimismo, el Deudor se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al Acreedor los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente. Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del Crédito Cedido, o de cualquier rescinda o resuelva los contratos de compraventa de mercadería que integren el Crédito Cedido, o Arthur Schuman res-forma discontinúe o termine su relación comercial con Arthur Schuman, ya sea en forma unilateral o de co-mún acuerdo entre el Deudor y Arthur Schuman

7.9    El Deudor garantiza al Acreedor:
(a)    el cobro del Crédito Cedido.
(b)    la forma instrumental del mismo.
(c)    la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d)    que no se encuentra inhibido para disponer de sus bienes;
(e)    que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido;
(f)    que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad;
(g)    la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.
(h)    Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes del Crédito Cedido, incluyendo –pero no limitado a- la entrega en tiempo y forma a Arthur Schuman de la mercadería ob-jeto del Crédito Cedido.

7.10    Durante la vigencia del presente Contrato, el Deudor se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al Acreedor, el estado de deuda de Arthur Schuman con el Deudor, remitiendo a tal efecto un informe firmado por un contador público matriculado en la República Ar-gentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur Schuman y recibidas por el Deudor a la fecha de dicho informe. Asimismo se compromete a mantener duran-te la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 64,50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalada correrán por exclusiva cuenta del Deudor. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del Deudor, con los efectos estipulados en la Cláusula TERCERA.

OCTAVA: COMISIONES Y GASTOS.
Toda comisión, aranceles y comisiones bancarias deriva-das de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA –sección 2.2- y SÉP-TIMA –Sección 7.5), tributos y/o gastos (impuesto de sellos, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieran generar, serán a cargo del Deudor. El Deudor se compromete a abonar al Acreedor en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Todos los pagos bajo el Contrato deberán ser hechos por el DEUDOR libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el DEUDOR sea requerido por ley o por cualquier autoridad compe-tente a realizar cualquier deducción, retención o cargo, el DEUDOR deberá realizar tantos pagos adicionales al ACREEDOR como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el ACREEDOR reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubieran sido realizadas. El DEUDOR deberá pagar en legal tiempo y

5

forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al ACREEDOR copia certificada de los comprobantes que correspondan respecto de dicho pago

Asimismo, el Deudor se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo– con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, deslindando al Acreedor de cualquier obligación al respecto.

El DEUDOR se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al ACREEDOR, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de CREEDOR, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

NOVENA: CESIÓN DEL CONTRATO.
El Acreedor podrá ceder el presente contrato en su totalidad, por cualquiera de los medios previstos en la Ley, adquiriendo el Acreedor los mismos beneficios y/o derechos y/o acciones de que es titular el Acreedor en virtud de este contrato. En ese caso, el Acreedor deberá comunicar en forma fehaciente la cesión al Deudor, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el Deudor oponer al Acreedor del contrato cualquier defensa que hubiera podido oponer al Acreedor cedente.

DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.

10.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2    El Deudor irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el Acreedor en relación con el presente Contrato. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada, incluyendo –sin que ello implique limitación de ningún tipo– la facultad exclusiva del Acreedor de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4    El Deudor por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al Deudor en cualquier acción, juicio o procedimiento que el Acreedor pudiera iniciar en el Estado de New York, debiendo asimismo el Deudor informar al Acreedor sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 no estuviere presente, el Deudor acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del Deudor indicado en el último párrafo de la presente Cláusula

10.6    Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7    El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o "inconveniente forum" respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el Deudor renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que intervinera en la contienda. EL DEUDOR sólo podrá oponer excepción de pago total comprobado por escrito, o en documento emanado del Acreedor que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

10.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

6

Deudor:    1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003

2) Tacuari 202 - 3° Piso - Capital Federal, República Argentina

Acreedor: 1500 Broadway, 17th Floor, New York, New York, 10036, USA

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del Deudor y un ejemplar en poder del Acreedor.

Suscripto por el "Deudor" en la Ciudad de Buenos Aires, República Argentina a los 22 días del mes de Marzo de 2006 y por el "Acreedor" en la Ciudad de New York, USA, a los 24 días del mes de Marzo de 2006.

Firma/s certificada/s en Foja
N° E 020255 x887
Bs. As. 23/03/2006

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Carácter: Apoderado

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG CAPITAL LLC AS AGENT
Nombre: Thomás LaVecchia
Carácter: Senior Director



COLEGIO DE ESCRIBANOS

ACTA DE CERTIFICACION DE FIRMAS

F 000557881

## ANEXO

1  Buenos Aires, 22 de Marzo de 2006 . En mi carácter de Escribano

2  Titular del Registro Notarial N° 841 de Capital Federal

3  CERTIFICO: Que la/s firma                                    que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número        152        del

6  LIBRO número       G1      , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- En

9  carácter de apoderado de la sociedad SANCOR COOPERATIVAS UNIDAS

10 LIMITADAS, de acuerdo a la documentación que me exhibe y le confiere

11 facultades suficientes para suscribir el documento adjunto.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

ANEXO I
CONTRATO DE PRESTAMO 18 DE AGOSTO DE 2004

ANEXO II
CONTRATO DE PRESTAMO 22 DE NOVIEMBRE DE 2004

ANEXO III
CONTRATO DE PRESTAMO 26 DE NOVIEMBRE DE 2004

ANEXO IV
CONTRATO DE PRESTAMO 29 DE MARZO DE 2005

ANEXO V
CONTRATO DE PRESTAMO 12 DE SEPTIEMBRE DE 2005

ANEXO VI
CONTRATO DE PRESTAMO 27 DE SEPTIEMBRE DE 2005

## PRIMERA ENMIENDA AL CONTRATO DE MUTUO
## DE FECHA 22/MARZO/2006

Entre:

MAURITIO TOF B.V., REPRESENTADO POR TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada por H. M. Inversion v. Hinman en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (en adelante el "ACREEDOR"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por la otra parte, (en adelante el "DEUDOR") ambos conjuntamente denominados las "Partes", y

CONSIDERANDO:

I.      Que con fecha 22 de Marzo de 2006, el DEUDOR suscribió con IIG CAPITAL LLC AS AGENT (en adelante "IIG"), un contrato de mutuo (en adelante el "Contrato"), copia del cual se adjunta al presente como ANEXO A,

II.     Que posteriormente, con fecha 25 de Abril de 2006, IIG en carácter de cedente, el ACREEDOR en carácter de cesionario conjuntamente con el DEUDOR, suscribieron el ASSIGNMENT OF CREDITS, mediante el cual IIG cedió al MUTUANTE todos los derechos y créditos derivados de una serie de contratos dentro del cual se encontraba el Contrato, todo lo cual se adjunta al presente como ANEXO B y cuyos términos y condiciones resultan aplicables a esta Primera Enmienda,

III.    Que al momento de la presente Enmienda, el DEUDOR declara haber recibido de conformidad el monto total del préstamo solicitado en el Contrato,

IV.     Que es intención del DEUDOR solicitar al ACREEDOR prórroga de las Fechas de Vencimiento pactadas en el Contrato, para lo cual el DEUDOR propone al ACREEDOR una reestructuración de la deuda impaga asumida en el Contrato,

V.      Que a la fecha de la presente, el DEUDOR reconoce que la deuda derivada de las obligaciones asumidas en el Contrato asciende a la suma total de US$ 4.016.652,74 (Dólares Estadounidenses CUATRO MILLONES DIECISEIS MIL SEISCIENTOS CINCUENTA Y DOS CON 74/100),

VI.     Que de conformidad con la Cláusula Quinta del Contrato, el DEUDOR adjuntará un Pagaré por cada nueva Cuota, a favor del ACREEDOR, por la suma total adeudada con mas intereses aplicables hasta cada Nueva Fecha de Vencimiento;

VII.    Que el ACREEDOR estaría dispuesto a aceptar la solicitud del DEUDOR de reprogramar las Fechas de Vencimiento en un nuevo cronograma de pagos, realizando las modificaciones que sean necesarias en el Contrato,

VIII.   Que las Partes reconocen que las modificaciones introducidas mediante la presente Enmienda en ningún caso podrá ser interpretada como novación de las obligaciones asumidas en el Contrato.

En mérito a las consideraciones precedentemente expuestas, las Partes celebran la presente Primera Enmienda (en adelante la "Primera Enmienda"), sujeta a las declaraciones y estipulaciones siguientes:

1-      Modifícase la Cláusula SEGUNDA del Contrato, la cual quedará redactada del siguiente modo:

SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1     El Deudor se obliga a devolver al Acreedor el monto del Préstamo con más los intereses aplicables, en nueve (9) Cuotas mensuales y consecutivas (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar — mediante el pago en término de las nueve (9) Cuotas- el pago de la suma total de US$ 4.318.868,00

(h)
(Dólares Estadounidenses CUATRO MILLONES TRESCIENTOS DIECIOCHO MIL OCHOCIENTOS SESENTA Y OCHO CON 00/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10 % anual.

| | | |
|---|---|---|
| Primera Cuota: | 28 de Septiembre de 2007 | US$ 240.380,00 |
| Segunda Cuota: | 30 de Octubre de 2007 | US$ 509.811,00 |
| Tercera Cuota: | 30 de Noviembre de 2007 | US$ 509.811,00 |
| Cuarta Cuota: | 28 de Diciembre de 2007 | US$ 509.811,00 |
| Quinta Cuota: | 30 de Enero de 2008 | US$ 509.811,00 |
| Sexta Cuota: | 28 de Febrero de 2008 | US$ 509.811,00 |
| Séptima Cuota: | 31 de Marzo de 2008 | US$ 509.811,00 |
| Octava Cuota: | 30 de Abril de 2008 | US$ 509.811,00 |
| Novena Cuota: | 31 de Mayo de 2008 | US$ 509.811,00 |

Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo –con fondos propios o mediante pagos de Arthur Schuman-, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2    El Deudor realizará el pago de las Cuotas –y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

BANK:            Investors Bank & Trust Company
ABA#:            011-001-438
SWIFT:           INVBUS33
Credit:          Client Funds
Account#:        569-530-395
Further Credit:  Mauritio TOF – Sancor CUL
Account#:        02030-8420148

2-    Modifícase la Cláusula QUINTA del Contrato, la cual quedará redactada del siguiente modo:

QUINTA: PAGARE.
Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor nueve (9) pagarés por la suma total de US$ 4.318.868,00 (Dólares Estadounidenses CUATRO MILLONES TRESCIENTOS DIECIOCHO MIL OCHOCIENTOS SESENTA Y OCHO CON 00/100) –monto equivalente a la sumatoria de la totalidad de las Cuotas-, pagaderos en las Fechas de Vencimiento  (en adelante los "Pagarés"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Pagarés y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Pagarés al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Pagaré.

3-    En atención a la modificación mencionada en el punto precedente el ACREEDOR endosará a favor del DEUDOR y entregará a este último, dentro de los 10 días de firmada la presente, los dos (2) Pagarés de US$ 2.000.000,00 cada uno, que fueran entregados por el DEUDOR conjuntamente con la firma del Contrato. A su vez, en garantía de pago de las nuevas Cuotas –según la modificación efectuada por la presente Primera Enmienda- el DEUDOR libra a favor del ACREEDOR y entrega en este acto a este último los Pagarés detallados a continuación:

| | | |
|---|---|---|
| 1/9 | 28 de Septiembre de 2007 | US$ 240.380,00 |
| 2/9 | 30 de Octubre de 2007 | US$ 509.811,00 |
| 3/9 | 30 de Noviembre de 2007 | US$ 509.811,00 |
| 4/9 | 28 de Diciembre de 2007 | US$ 509.811,00 |
| 5/9 | 30 de Enero de 2008 | US$ 509.811,00 |
| 6/9 | 28 de Febrero de 2008 | US$ 509.811,00 |
| 7/9 | 31 de Marzo de 2008 | US$ 509.811,00 |
| 8/9 | 30 de Abril de 2008 | US$ 509.811,00 |
| 9/9 | 31 de Mayo de 2008 | US$ 509.811,00 |

4-    Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y




cláusulas del Contrato, así como los actos ya cumplidos por las Partes en virtud del mismo, permanecen inalterables, manteniendo los mismos plena vigencia.

5-      Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el DEUDOR en la Ciudad de Buenos Aires, República Argentina y por el ACREEDOR en la Ciudad de Amsterdam, The Netherlands, a los 31 días del mes de Mayo de 2007.-

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N° _____
Bs. As. 31-5-2007

Por: MAURITIO TOF B.V.,
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: H.C.M. Boersen / J. Harmers
Carácter: Attorney-in-fact A/B

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404

## ANEXO

F 000795405

1  Buenos Aires, 31 de    Mayo    de 2007    . En mi carácter de Escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                                          que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número    106    del

6  LIBRO número    77    , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10 PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11 exhibe y le confiere facultades suficientes para suscribir el documento ad-

12 junto.-

13

14

15

16

17

18

19



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

20

21

22

23

24

25



ANEXO 1

Entre SANCOR COOPERATIVAS UNIDAS LTDA., una sociedad constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "DEUDOR", y MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., una sociedad constituida bajo las leyes de Holanda, representada por los Sres. .............................................., en su carácter de Apoderados, domiciliado en Telestone 8 — Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "ACREEDOR", se celebra el presente Contrato de Mutuo, sujeto a las siguientes cláusulas y condiciones:

PRIMERA: PRESTAMO.
El DEUDOR solicita al ACREEDOR en calidad de préstamo, y el ACREEDOR entrega al DEUDOR, la suma de US$ 3.026.222,22 (Dólares Estadounidenses TRES MILLONES VEINTISEIS MIL DOSCIENTOS VEINTIDOS CON 22/100 (en adelante el "Préstamo"). El ACREEDOR procederá a abonar al DEUDOR dicho importe mediante acreditación y/o depósito bancario conforme las instrucciones que seguidamente se detallan:

BANCO:              Wachovia Bank N.A.
DIRECCIÓN:          New York, U.S.A.
SWIFT:              PNBPUS3NNYC
A NOMBRE DE:        Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE:         ITAUARBA
Cuenta Nro.:        2000192261739
ROUTING N°:         FW026005092
A FAVOR DE:         SanCor Cooperativas Unidas Limitada
CUENTA Nro.:        01185361001
REFERENCIA:         Prefinanciación de Exportación

Dicha suma será aplicada por el DEUDOR a prefinanciación de exportaciones.

SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.
2.1    El DEUDOR se obliga a devolver al ACREEDOR el monto del Préstamo con más los intereses aplicables, en 13 (TRECE) Cuotas, mensuales y consecutivas (en adelante la/s "Cuota/s"), pagaderas en las fechas que se indican a continuación (en adelante la/s "Fecha/s de Vencimiento") hasta completar –mediante el pago en término de las 13 (TRECE) Cuotas- el pago de la suma total de US$ 3.500.000,00 (Dólares estadounidenses TRES MILLONES QUINIENTOS MIL CON 00/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10,00 % anual.

| | | |
|---|---|---|
| Primera Cuota: | uSs 100.000,00 | 29 de Septiembre de 2006 |
| Segunda Cuota: | uSs 100.000,00 | 30 de Noviembre de 2006 |
| Tercera Cuota | uSs 100.000,00 | 30 de Enero de 2007 |
| Cuarta Cuota | uSs 100.000,00 | 30 de Marzo de 2007 |
| Quinta Cuota | uSs 200.000,00 | 30 de Julio de 2007 |
| Sexta Cuota | uSs 200.000,00 | 30 de Agosto de 2007 |
| Séptima Cuota | uSs 250.000,00 | 28 de Septiembre de 2007 |
| Octava Cuota | uSs 250.000,00 | 30 de Octubre de 2007 |
| Novena Cuota | uSs 300.000,00 | 30 de Noviembre de 2007 |
| Décima Cuota | uSs 300.000,00 | 28 de Diciembre de 2007 |
| Décima Primera Cuota | uSs 400.000,00 | 30 de Enero de 2008 |
| Décima Segunda Cuota | uSs 500.000,00 | 28 de Febrero de 2008 |
| Décima Tercera Cuota | uSs 700.000,00 | 31 de Marzo de 2008 |

Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el DEUDOR se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo –con fondos propios o mediante pagos de Arthur Schuman-, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.

2.2    El DEUDOR realizará el pago de las Cuotas –y de toda otra suma debida al ACREEDOR en virtud del presente Contrato- al ACREEDOR mediante transferencia bancaria según las siguientes instrucciones:

BANK:      Societe Generale, New York
ABA#:      026-004-226
Credit:    Societe Generale, Amsterdam, The Netherlands
SWIFT:     SOGENL2A
Account:   00150134

Further Credit:   Mauritio TOF BV
Account#:   0270209042

**TERCERA: MORA.**

3.1    La mora del DEUDOR en el cumplimiento de las obligaciones pactadas en el presente Contrato – incluyendo sin limitación, el pago en tiempo y forma de las Cuotas- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Producida la mora, el ACREEDOR tendrá derecho a considerar la deuda como de plazo vencido y exigir y demandar judicialmente el pago íntegro del capital adeudado, los intereses devengados y demás accesorios. Durante el tiempo que dure la mora el ACREEDOR tendrá derecho a percibir, además de los intereses compensatorios pactados, un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

3.2    El ACREEDOR también tendrá la facultad de considerar la deuda como de plazo vencido y solicitar el inmediato pago de todo lo adeudado en los siguientes Supuestos de Incumplimiento: (a) si el DEUDOR incumpliese con el pago en tiempo y forma de las cuotas; (b) si un tercero pidiere la quiebra del DEUDOR y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente; (c) si el DEUDOR solicitase su propio concurso preventivo de acreedores, la homologación de un Acuerdo Preventivo Extrajudicial o cualquier otra medida cautelar sobre tructuración de su deuda; (d) si se trabare embargo o se dicte cualquier otra medida cautelar sobre sus bienes que por su magnitud comprometiere su solvencia patrimonial; (e) si se comprobare la falta de veracidad, parcial o total, por parte del DEUDOR, en las aplicaciones del préstamo objeto del presente contrato (f) si hay modificación sustancial, en desmedro de la situación patrimonial del DEUDOR y (g) si se produjere cualquier alteración societaria o en la situación financiera del DEUDOR que, a criterio razonable del ACREEDOR, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el Préstamo objeto del presente Contrato.

**CUARTA: MONEDA DE PAGO.**

4.1    El DEUDOR asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el DEUDOR expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago del Repago así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al ACREEDOR en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier Fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el DEUDOR deberá igualmente abonar el Repago y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del ACREEDOR:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados con el mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

4.2.(b). Mediante la entrega al ACREEDOR de cualquier título en Dólares, a satisfacción expresa del ACREEDOR y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el ACREEDOR en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al DEUDOR llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al ACREEDOR de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el DEUDOR bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3    Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el DEUDOR sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios

2

únicamente, una vez que se acredite efectivamente en la Cuenta del ACREEDOR, la cantidad de Dólares adeudada bajo el Contrato.

4.4   Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el DEUDOR.

4.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el ACREEDOR pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra cualquiera de suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el ACREEDOR haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el ACREEDOR pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el DEUDOR acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al ACREEDOR de esa pérdida.

QUINTA: PAGARE.
Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del DEUDOR, éste suscribe a favor del ACREEDOR 13 (TRECE) pagarés por la suma total de US$ 3.500.000,00 (Dólares Estadounidenses TRES MILLONES QUINIENTOS MIL CON 00/100)—suma equivalente al monto de cada Cuota-, pagaderos en las Fechas de Vencimiento (en adelante los "Pagarés"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el DEUDOR en el presente Contrato, el ACREEDOR quedará facultado para iniciar contra el DEUDOR, indistintamente, la ejecución de los Pagarés y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del ACREEDOR. El ACREEDOR se compromete a devolver los Pagarés al DEUDOR a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Pagaré.

SEXTA: WARRANTS.
6.1   Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el DEUDOR afecta los warrants endosados a favor del ACREEDOR en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2005 adjunto al presente como Anexo I, por el cual el ACREEDOR se constituyo en titular de todos los derechos y créditos derivados de los contratos de préstamo celebrados entre el DEUDOR y IIG CAPITAL LCC AS AGENTsuscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005, que se adjuntan al presente como Anexo II, contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de Marzo de 2005 que se adjunta como Anexo III, contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005 que se adjunta como Anexo IV, contrato de préstamo de fecha 12 de Septiembre de 2005, que se adjunta como Anexo V, contrato de préstamo de fecha 27 de Septiembre de 2005, que se adjunta como Anexo VI, contrato de préstamo de fecha 27 de Septiembre de 2005, que se adjunta como Anexo VII, y contrato de préstamo de fecha 22 de marzo de 2006, adjunto al presente como Anexo VIII.

De tal manera, entre los Warrants que tenga en su poder el ACREEDOR con motivo del ASSIGNMENT OF CREDITS adjunto al presente como ANEXO I, el ACREEDOR deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 35,50% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22 de Marzo de 2006 y el presente, menos las cuotas canceladas en los mismos ocho (8) contratos de mutuo (el presente contrato y los siete contratos cedidos por el ASSIGNMENT OF CREDITS adjunto como Anexo I)

6.2   El DEUDOR declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el DEUDOR se compromete a comunicar dicha circunstancia al ACREEDOR dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del DEUDOR, con los efectos pactados en la cláusula TERCERA. En todos los casos, el DEUDOR deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al ACREEDOR.

6.3   En caso de mora del DEUDOR por cualquier causa que fuere, el ACREEDOR quedará automáticamente facultado para iniciar la ejecución de los Warrant en los términos de la Ley 9643, sin perjuicio de los otros remedios y/oacciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el ACREEDOR se reserva expresamente la facultad de designar martillero al efecto.

3

AT. 437^

## SÉPTIMA: CESIÓN DE CRÉDITOS.

7.1    En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el DEUDOR en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el DEUDOR cede al ACREEDOR, todos los derechos crediticios que le correspondan sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con ARTHUR SCHUMAN, INC., con domicilio en 40 NEW DUTCH LANE, FAIRFIELD, NJ 07004, USA, (en adelante "Arthur Schuman") a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el DEUDOR al ACREEDOR en virtud del presente Contrato (en adelante el "Crédito Cedido"). Si bien el Crédito Cedido garantiza todas las obligaciones pactadas en los contratos de Mutuo cedidos al ACREEDOR en virtud del ASSIGNMENT OF CREDITS adjunto como Anexo I, el DEUDOR estima –por tratarse de créditos futuros y eventuales- que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de todas las sumas adeudadas al ACREEDOR. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los ocho contratos.

7.2    La presente cesión implica también la cesión y transferencia a favor del ACREEDOR de todos los derechos y acciones que le corresponden o puedan corresponder al DEUDOR sobre el Crédito Cedido, como así también embarque que acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen a Arthur Schuman en virtud o a consecuencia del Crédito Cedido. Consecuentemente, el término "Crédito Cedido", tal como se define en este Contrato, comprende todos los remitos, facturas y demás documentos emitidos en virtud de las transacciones comerciales que compongan el Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el DEUDOR y le correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al ACREEDOR en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del DEUDOR.

7.3    El DEUDOR se compromete a entregar al ACREEDOR, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al ACREEDOR, dentro de los 5 (cinco) días de recibidas por Arthur Schuman, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4    Asimismo, el DEUDOR garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por Arthur Schuman en la cuenta bancaria del ACREEDOR indicada en la Sección 2.2 del presente Contrato. A tal efecto, en adición a las notificaciones previstas en la Sección 7.7 de la presente Cláusula SÉPTIMA, el DEUDOR se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que sean remitidas a Arthur Schuman, una leyenda que indique expresamente que tal factura deberá ser pagada al ACREEDOR mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la cuenta bancaria del ACREEDOR serán aplicados al pago de las Cuotas.

    (i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentran mencionados en las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el ACREEDOR transferirá los fondos del Crédito Cedido que Arthur Schuman deposite en su cuenta, dentro de las 48 hs. de recibidos, a la cuenta bancaria del DEUDOR indicada en la Cláusula PRIMERA.

    (ii)    Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en la Sección 2.1 del presente Contrato), el ACREEDOR aplicará los fondos del Crédito Cedido depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses excedan el monto de la Cuota, el excedente será transferido al DEUDOR de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito Cedido depositados por Arthur Schuman durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el DEUDOR será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6    La presente cesión se efectúa con responsabilidad por parte del DEUDOR hacia el ACREEDOR. En consecuencia, si por cualquier causa el importe del Crédito Cedido no fuere abonado al ACREEDOR conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el DEUDOR deberá abonar al ACREEDOR el importe total o el saldo adeudado

4





correspondiente a cada Cuota, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula TERCERA del presente Contrato.

7.7     Las Partes acuerdan que, en virtud de la notificación de cesión de derechos crediticios efectuada oportunamente por el DEUDOR a Arthur Schuman con motivo del contrato de mutuo obrante en el Anexo II del presente Contrato y, la notificación efectuada con motivo del ASSIGNMENT OF CREDITS–por la cual el DEUDOR notifica las nuevas instrucciones de pago a favor del ACREEDOR –, el DEUDOR no deberá notificar a Arthur Schuman la cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8     El presente Contrato no implica de forma alguna la transferencia por el DEUDOR al ACREEDOR de las obligaciones del Crédito Cedido, las que permanecerán en cabeza del DEUDOR. El DEUDOR se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen el Crédito Cedido, de modo que no se vea afectado el derecho del ACREEDOR al cobro del Crédito Cedido. Asimismo, el DEUDOR se obliga a remitir mercadería a Arthur Schuman con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al ACREEDOR los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del DEUDOR, con los efectos estipulados en la Cláusula TERCERA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del DEUDOR- Arthur Schuman rescinda o resuelva los contratos de compraventa de mercadería que integren el Crédito Cedido, o de cualquier forma discontinúe o termine su relación comercial con Arthur Schuman, ya sea en forma unilateral o de común acuerdo entre el DEUDOR y Arthur Schuman

7.9     El DEUDOR garantiza al ACREEDOR:
(a)     el cobro del Crédito Cedido.
(b)     la forma instrumental del mismo.
(c)     la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente:
(d)     que no se encuentra inhibido para disponer de sus bienes:
(e)     que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido:
(f)     que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el ACREEDOR Cedente de acuerdo al ASSIGNMENT OF CREDITS.
(g)     la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.
(h)     Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes del Crédito Cedido, incluyendo –pero no limitado a- la entrega en tiempo y forma a Arthur Schuman de la mercadería objeto del Crédito Cedido.

7.10    Durante la vigencia del presente Contrato, el DEUDOR se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al ACREEDOR, el estado de deuda de Arthur Schuman con el DEUDOR, remitiendo a tal efecto un informe firmado por un contador público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por Arthur Schuman a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por Arthur Schuman y recibidas por el DEUDOR a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales de Arthur Schuman por el 64,50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del DEUDOR. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del DEUDOR, con los efectos estipulados en la Cláusula TERCERA.

OCTAVA: COMISIONES Y GASTOS.
Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias indicados en las Cláusulas PRIMERA, SEGUNDA –sección 2.2- y SÉPTIMA –Sección 7.5), tributos y/o gastos (impuesto de sellos, etc.) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del DEUDOR. El DEUDOR se compromete a abonar al ACREEDOR en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

Todos los pagos bajo el Contrato deberán ser hechos por el DEUDOR libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el DEUDOR sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el DEUDOR deberá realizar tantos pagos adicionales al

ACREEDOR como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el ACREEDOR reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El DEUDOR deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al A-CREEDOR copia certificada de los comprobantes que correspondan respecto de dicho pago

Asimismo, el DEUDOR se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al ACREEDOR de cualquier obligación al respecto.

El DEUDOR se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al A-CREEDOR, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

NOVENA: CESIÓN DEL CONTRATO.
El ACREEDOR podrá ceder el presente contrato en su totalidad, por cualquiera de los medios previstos en la Ley, adquiriendo el ACREEDOR los mismos beneficios y/o derechos y/o acciones de que es titular el A-CREEDOR en virtud de este contrato. En ese caso, el ACREEDOR deberá comunicar en forma fehaciente la cesión al DEUDOR, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el DEUDOR oponer al ACREEDOR del contrato cualquier defensa que hubiera podido oponer al ACREEDOR cedente.

DÉCIMA: JURISDICCIÓN Y LEY APLICABLE.
10.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

10.2    El DEUDOR irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el ACREEDOR en relación con el presente Contrato. La sentencia que se dicte contra el DEUDOR en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

10.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del ACREEDOR a iniciar procedimientos legales o de cualquier otra forma demandar al DEUDOR en cualquier otra jurisdicción que el ACREEDOR considere apropiada, incluyendo –sin que ello implique limitación de ningún tipo- la facultad exclusiva del ACREEDOR de iniciar la ejecución judicial y/o extrajudicial de los Warrants de acuerdo al procedimiento ejecutivo previsto al efecto en la República Argentina.

10.4    El DEUDOR por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al sólo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al DEUDOR en cualquier acción, juicio o procedimiento que el ACREEDOR pudiera iniciar en el Estado de New York, debiendo asimismo el DEUDOR informar al ACREEDOR sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

10.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 3th Street , Suite 2000 - Miami, FL 33130-3003 no estuviere presente, el DEUDOR acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del DEUDOR indicado en el último párrafo de la presente Cláusula

10.6    Las notificaciones efectuadas de la manera establecida en la Sección 10.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el Cedente.

10.7    El DEUDOR irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el A-CREEDOR; y en el especial, el DEUDOR renuncia a oponer cualquier defensa o alegación de incompetencia, o "inconvenient forum" respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el DEUDOR renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. EL DEUDOR sólo podrá oponer excepción de pago total comprobado que estuviere por escrito, en documento emanado del ACREEDOR que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

6

10.8     Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

DEUDOR:     1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003

            2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

ACREEDOR: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el "DEUDOR" en la Ciudad de Buenos Aires, República Argentina y por el "ACREEDOR" en la Ciudad de Amsterdam, The Netherlands, a los 20 días del mes de Julio de 2006

_____
Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N° _____
Bs. As. _____

_____
Por: MAURITIO TOP B.V.,
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:
Carácter:

MARTIN P. ARANA
ESCRIBANO
MAT. 4370



ACTA DE CERTIFICACION DE FIRMAS

F 002647021

Buenos Aires, 20 de  Julio  de 2006 . En mi carácter de Escribano

Titular del Registro Notarial Nº 841                      que obra/n en el

CERTIFICO: Que la/s  firma

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número  131  del

LIBRO número  65  , es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

exhibe y le confiere facultades suficientes para suscribir el documento ad-

junto.-

MARTIN B. ARANA (h)
ESCRIBANO
MAT. 4370



<u>PRIMERA ENMIENDA AL CONTRATO DE MUTUO</u>
<u>DE FECHA 20 /JULIO/2006</u>

Entre:
IIG TOF B.V., REPRESENTADO POR TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada por H. Braunshing y F. Kuyper, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (en adelante el "<u>ACREEDOR</u>"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, por la otra parte, (en adelante el "<u>DEUDOR</u>") ambos conjuntamente denominadas las "<u>Partes</u>", y

CONSIDERANDO:

I.      Que con fecha 20 de Julio de 2006, las Partes suscribieron un contrato de mutuo modificado mediante Cartas de Recambio de Warrants de fecha 14 de Febrero, 19 de Mayo, 10 de Agosto y 19 de Noviembre del año 2005; 10 de Febrero, 25 de Mayo, 7 de Agosto y 16 de Noviembre del año 2006; 20 de Febrero, 23 de Marzo, 31 de Mayo y 4 de Julio del año 2007 (en adelante el "<u>Contrato</u>"), cuyos términos y condiciones resultan aplicables a esta Primera Enmienda, copia de todo lo cual se adjunta al presente como <u>ANEXO A,</u>

II.     Que al momento de la presente Enmienda, el DEUDOR declara haber recibido de conformidad el monto total del préstamo solicitado en el Contrato,

III.    Que es intención del DEUDOR solicitar al ACREEDOR prórroga en el vencimiento que opera con fecha 30 de Julio de 2007,

IV.     Que a la fecha de la presente, el DEUDOR reconoce que el monto de la Cuota cuyo vencimiento se pretende prorrogar asciende a la suma de US$ 200.000,00 (Dólares Estadounidenses DOSCIENTOS MIL CON 00/100),

V.      Que de conformidad con la Cláusula Quinta del Contrato, el DEUDOR adjuntará un Pagaré por cada nueva Cuota, a favor del ACREEDOR, por la suma total adeudada con mas intereses aplicables hasta las Nuevas Fechas de Vencimiento;

VI.     Que el ACREEDOR estaría dispuesto a aceptar la solicitud del DEUDOR de postergar la Fecha de Vencimiento, realizando las modificaciones que sean necesarias en el Contrato,

VII.    Que las Partes reconocen que las modificaciones introducidas mediante la presente Enmienda en ningún caso podrá ser interpretada como novación de las obligaciones asumidas en el Contrato.

En mérito a las consideraciones precedentemente expuestas, las Partes celebran la presente Primera Enmienda (en adelante la "Primera Enmienda"), sujeta a las declaraciones y estipulaciones siguientes:

1-      Modifícase la Cláusula SEGUNDA del Contrato, la cual quedará redactada del siguiente modo:
*SEGUNDA: DEVOLUCIÓN DEL PRÉSTAMO.*
*2.1     El DEUDOR se obliga a devolver al ACREEDOR el monto del Préstamo con más los intereses aplicables, en 14 (CATORCE) Cuotas (en adelante la/s "<u>Cuota/s</u>"), pagaderas en las fechas que se indican a continuación (en adelante la/s "<u>Fecha/s de Vencimiento</u>") hasta completar –mediante el pago en término de las 14 (CATORCE) Cuotas- el pago de la suma total de US$ 3.511.671,32 (Dólares estadounidenses TRES MILLONES QUINIENTOS ONCE MIL SEISCIENTOS SETENTA Y UNO CON 32/100), comprensiva del capital del Préstamo adeudado con más los intereses aplicables, calculados a una tasa de descuento del 10,00 % anual.*

| | | |
|---|---|---|
| *Primera Cuota:* | *u$s 100.000,00* | 29 de Septiembre de 2006 |
| *Segunda Cuota:* | *u$s 100.000,00* | 30 de Noviembre de 2006 |
| *Tercera Cuota* | *u$s 100.000,00* | 30 de Enero de 2007 |
| *Cuarta Cuota* | *u$s 100.000,00* | 30 de Marzo de 2007 |
| *Quinta Cuota* | *u$s 200.000,00* | 30 de Agosto de 2007 |
| *Sexta Cuota* | *u$s 250.000,00* | 28 de Septiembre de 2007 |
| *Séptima Cuota* | *u$s 250.000,00* | 30 de Octubre de 2007 |
| *Octava Cuota* | *u$s 300.000,00* | 30 de Noviembre de 2007 |
| *Novena Cuota* | *u$s 300.000,00* | 28 de Diciembre de 2007 |
| *Décima Cuota* | *u$s 400.000,00* | 30 de Enero de 2008 |
| *Décima Primera Cuota* | *u$s 105.835,66* | 30 de Enero de 2008 |
| *Décima Segunda Cuota* | *u$s 500.000,00* | 28 de Febrero de 2008 |

| | | |
|---|---|---|
| Décima Tercera Cuota | u$s 105.835,66 | 28 de Febrero de 2008 |
| Décimo Cuarta Cuota | u$s 700.000,00 | 31 de Marzo de 2008 |

*Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el Deudor se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo –con fondos propios o mediante pagos de Arthur Schuman-, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes antes mencionados.*

2.2    El Deudor realizará el pago de las Cuotas –y de toda otra suma debida al Acreedor en virtud del presente Contrato- al Acreedor mediante transferencia bancaria según las siguientes instrucciones:

| | |
|---|---|
| BANK: | State Street Corp. f/k/a Investors Bank & Trust Company |
| ABA#: | 011-001-438 |
| SWIFT: | INVBUS33 |
| Credit: | Client Funds |
| Account#: | 569-530-395 |
| Further Credit: | IIG TOF – Sancor CUL |
| Account#: | 02030-8420148 |

2-    Modificase la Cláusula QUINTA del Contrato, la cual quedará redactada del siguiente modo:
QUINTA: PAGARES:
*Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del Deudor, éste suscribe a favor del Acreedor catorce (14) pagarés por la suma total de de US$ 3.511.671,32 (Dólares estadounidenses TRES MILLONES QUINIENTOS ONCE MIL SEISCIENTOS SETENTA Y UNO CON 32/100), –monto equivalente a la sumatoria de la totalidad de las Cuotas-, pagaderos en las Fechas de Vencimiento  (en adelante los "Pagarés"). En caso de falta de cumplimiento de todas y cada una de las obligaciones asumidas por el Deudor en el presente Contrato, el Acreedor quedará facultado para iniciar contra el Deudor, indistintamente, la ejecución de los Pagarés y/o de los Warrants referidos en la Cláusula SEXTA, a exclusivo criterio del Acreedor. El Acreedor se compromete a devolver los Pagarés al Deudor a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada la Cuota correspondiente a dicho Pagaré.*

3-    En atención a la modificación mencionada en el punto precedente el ACREEDOR endosará a favor del DEUDOR y entregará a este último, dentro de los 10 días de firmada la presente, un (1) Pagaré de US$ 200.000,00; que fuera entregado por el DEUDOR conjuntamente con la firma del Contrato. A su vez, en garantía de pago de las nuevas Cuotas –según la modificación efectuada por la presente Primera Enmienda- el DEUDOR libra a favor del ACREEDOR y entrega en este acto a este último los Pagarés detallados a continuación:

| | | |
|---|---|---|
| 1/2 | 30 de Enero de 2008 | US$ 105.835,66 |
| 2/2 | 28 de Febrero de 2008 | US$ 105.835,66 |

4-    Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y cláusulas del Contrato, así como los actos ya cumplidos por las Partes en virtud del mismo, permanecen inalterables, manteniendo los mismos plena vigencia.

5-    Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el DEUDOR en la Ciudad de Buenos Aires, República Argentina y por el ACREEDOR en la Ciudad de Amsterdam, The Netherlands, a los 30 días del mes de Julio de 2007.-

Firma/s certificada/s en Foja
Nº F0330u0740
Bs. As. 30. 7. 2007

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena.
Carácter: Apoderado

Por: IIG TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:  H. Breumshunp      F. Knijpe
Carácter:  Attorney  A       Attorney B

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370





**ACTA DE CERTIFICACION DE FIRMAS**
**LEY 404**

F 003540760

1 Buenos Aires,  30 de      Julio      de  2007 . En mi carácter de Escribano

2  Titular del Registro Notarial Nº 841

3 CERTIFICO: Que la/s    firma/s                                    que obra/n en el

4 documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5 firma/s que se formaliza simultáneamente por ACTA número            20        del

6 LIBRO número           80        , es/son puesta/s en mi presencia por la/s persona/s

7 cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8 cuyo conocimiento doy fe.   Mario César MAGDALENA L.E. 8.106.144.- Mani-

9 fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10 PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11 exhibe y le confiere facultades suficientes para suscribir el documento ad-

12 junto.-

13

14

15

16

17

18

19

20

21

22

23

24

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



CONTRATO DE MUTUO CON CESION DE CREDITOS

ENTRE:
SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliado en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., una sociedad constituida bajo las leyes de Holanda, representada por los Sres. _J. A. DEVEN V R.L. V ECHTEN_, en su carácter de Apoderados, domiciliado en Telestone 3 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:



I.   Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

II.  Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

III. Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de profinanciar las exportaciones de producción de sus productos ("Pre-financiación").

IV.  Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

PRIMERA:   DEFINICIONES.
"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el MUTUANTE, o de sus proyecciones, consideradas en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:



BANK:            Societe Generale, New York
ABA#:            026-004-226
Credit:          Societe Generale, Amsterdam, The Netherlands
SWIFT:           SOGENL2A
Account:         00150134
Further Credit:  Mauritio TOF BV
Account#:        0270209042

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

BANCO:           Wachovia Bank N.A.
DIRECCIÓN:       New York, U.S.A.
SWIFT:           PNBPUS3NNYC
A NOMBRE DE:     Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE:      ITAUARBA
Cuenta Nro.:     2000192261739
ROUTING N°:      FW026005092
A FAVOR DE:      SanCor Cooperativas Unidas Limitada
CUENTA Nro.:     01185361001
REFERENCIA:      Prefinanciación de Exportación

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidas en el ANEXO II del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudor/es Cedido/s" significa ARTHUR SCHUMAN, INC., domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fecha/s de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el ANEXO II del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el Pagaré.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad a los negocios del MUTUARIO.

"Pagaré/s" significa los pagaré librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 2.200.000,00 (Dólares Estadounidenses DOS MILLONES DOSCIENTOS MIL CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

2

"**Partes**" significa conjuntamente el MUTUARIO y el MUTUANTE.

"**Préstamo**" significa el préstamo de US$ 1.913.277,78 (Dólares Estadounidenses UN MILLÓN NOVECIENTOS TRECE MIL DOSCIENTOS SETENTA Y SIETE CON 78/100) que el MUTUANTE otorga al MUTUARIO y que será desembolsado de acuerdo a lo establecido en el presente Contrato.

"**Pesos**" Moneda de Curso legal de la República Argentina

"**Warrants**" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

SEGUNDA.    PRÉSTAMO.
2.1    El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

2.2    El MUTUANTE otorgará el Préstamo al MUTUARIO en un solo desembolso, mediante acreditación y/o depósito bancario del Préstamo en la Cuenta del Mutuario dentro de los cinco (5) días corridos contados desde la firma del presente.

2.3    Dentro del plazo de cinco (5) días hábiles contados desde la recepción del Préstamo desembolsado en la Cuenta del Mutuario, el MUTUARIO deberá remitir al MUTUANTE un recibo de dicho Préstamo firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos, confirmando la recepción de tales fondos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de diez (10) días corridos contados desde la firma del presente implicará la conformidad del MUTUARIO con el desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

TERCERA:    DEVOLUCIÓN DEL PRÉSTAMO.

3.1    El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 10 (DIEZ) Cuotas mensuales y consecutivas en Cuenta del Mutuante.

3.2    Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegrarán los intereses proporcionales correspondientes.

CUARTA: MONEDA DE PAGO.

4.1    El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, costas, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier Fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

4.2.(b). Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien



3

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUANTE llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina y en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3    Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a), a 4.2.(d), las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato, y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a la tasa del diez por ciento (10,00 %) anual.

4.4    Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a), a 4.2.(d) precedentes serán pagados por el MUTUARIO.

4.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las PARTES acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

QUINTA:    PAGARÉ.
5.1    Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 10 (DIEZ) Pagarés, por la suma total de US$ 2.200.000,00 (Dólares Estadounidenses DOS MILLONES DOSCIENTOS MIL CON 00/100) – monto equivalente a la suma del monto de cada Cuota, pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MUTUANTE.

5.2    Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

SEXTA: WARRANTS

6.1    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento y sin que ello importe duplicación de las obligaciones del MUTUARIO, el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE se constituyo en titular de todos los derechos y créditos derivados de los contratos de préstamo celebrados entre el MUTUARIO y IIG CAPITAL LCC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005, contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005, contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005, contrato de préstamo de fecha 29 de Marzo de 2005, contrato de préstamo de fecha 12 de Septiembre de 2005, contrato de préstamo de fecha 27 de Septiembre de 2005, contrato de préstamo de fecha 22 de marzo de 2006 y contrato de préstamo de fecha 20 de Julio de 2006, todos ellos adjuntos al presente como Anexo I.

De tal manera, entre los Warrants que tenga en su poder el MUTUANTE con motivo del ASSIGNMENT OF CREDITS adjunto al presente como ANEXO I, el MUTUANTE deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 35,50% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22

4

de Marzo de 2006, 20 de Julio de 2006 y el presente, menos las cuotas canceladas en los mismos nueve (9) contratos de mutuo (el presente contrato y los ocho contratos cedidos por el ASSIGNMENT OF CREDITS adjunto como Anexo I)

6.2    El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del MUTUARIO, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

6.3    En caso de mora del MUTUARIO por cualquier causa que fuere, el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA:    CESIÓN DE CRÉDITOS.

7.1    En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien el Crédito Cedido garantiza todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como Anexo I, el MUTUARIO estima –por tratarse de créditos futuros y eventuales– que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los nueve contratos.

7.2    La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le corresponden o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia del Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones que cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del MUTUARIO.

7.3    El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4    Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el MUTUARIO se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tal factura deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la Cuenta bancaria del MUTUANTE serán aplicados al pago de las Cuotas.

(i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), el MUTUANTE transferirá los fondos del Crédito Cedido que el Deudor Cedido deposite en su cuenta, dentro de las 48 hs. de recibidos, a la Cuenta bancaria del MUTUARIO indicada en la Cláusula PRIMERA.

(ii)   Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), el MUTUANTE aplicará los fondos del Crédito Cedido depositados en su cuenta a precancelar el



5

monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados por el Deudor Cedido durante tales meses excedan el monto de la Cuota, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito Cedido depositados por el Deudor Cedido durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6     La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe del Crédito Cedido no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula NOVENA del presente Contrato.

7.7     Las Partes acuerdan que, en virtud de la notificación de Cesión de derechos crediticios efectuada oportunamente al MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18 de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte integrante del presente Contrato y la notificación efectuada con motivo del ASSIGNMENT OF CREDITS— por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE-, el MUTUARIO no deberá notificar al Deudor Cedido la Cesión de derechos crediticios pactada por las PARTES en el presente Contrato.

7.8     El presente Contrato no implica de forma alguna la transferencia por el MUTUARIO al MUTUANTE de las obligaciones del Crédito Cedido, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causan el Crédito Cedido, de modo que no se vea afectado el derecho del MUTUANTE al cobro del Crédito Cedido. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que —con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que integren el Crédito Cedido, o de cualquier forma discontinúe o termine su relación comercial con el Deudor Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

7.9     El MUTUARIO garantiza al MUTUANTE:
(a)     el cobro del Crédito Cedido, en Dólares y mediante transferencia de los mismos a la Cuenta del Mutuante en cada Fecha de Vencimiento para satisfacer el monto de cada Cuota.
(b)     la forma instrumental del mismo.
(c)     la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d)     que no se encuentra inhibido para disponer de sus bienes;
(e)     que no adeuda suma alguna al Deudor Cedido que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido;
(f)     que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad, excepto el Acreedor Cedente de acuerdo al ASSIGNMENT OF CREDITS.
(g)     la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.
(h)     Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes del Crédito Cedido, incluyendo —pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto del Crédito Cedido.
(i)     que el monto de los Warrants será equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las Cuotas adeudadas.

7.10    Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se comprome-

6

te a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 64,50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.10, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.

OCTAVA: MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO

8.1.    Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

8.1.1.    Que el MUTUARIO es una Cooperativa de primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo las respectivas operaciones y negocios en los que participa en la actualidad;

8.1.2.    Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías; y

8.1.3.    Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

8.1.4    Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

8.1.5.    Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

8.1.6.    Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido  y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

8.1.7.    Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohiba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación (principal y accesoria) que resulte necesaria para el otorgamiento y perfeccionamiento de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

8.1.8.    Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

8.1.9.    Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

8.1.10.   Que el balance del MUTUARIO al 30 de Junio de 2005, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2005 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

8.1.11.   Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

8.1.12.   Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

8.1.13.   Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

8.1.14.   Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

8.1.15.   Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

8.1.16.   Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

8.1.17.   Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIOS que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8.1.18.   Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

8.1.19.   que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las cuotas adeudadas.

8.2   Compromisos y Obligaciones del MUTUARIO.

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

8.2.1.   A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

8.2.2.   A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputasen por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

8.2.3.   A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el

8

cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

8.2.4.   A no realizar actos que constituyan o impliquen (i) una fusión, absorción, escisión o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

8.2.5.   A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

8.2.6.   A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

8.2.7.   A no subrogar de cualquier manera a cualquier tercer acreedor con, y a no permitir que de cualquier manera cualquier tercer acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

8.2.8.   A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarias bajo las Normas Aplicables, y

8.2.9.   A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

8.2.10.   A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

8.2.11.   A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

8.2.12.   A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares DOS MILLONES con 00/100 ( US$ 2.000.000) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a DOLARES DOS MILLONES con 00/100 ( US$ 2.000.000) en forma individual o acumulada durante cada ejercicio anual, y

8.2.13.   A no reducir su capital, y

8.2.14.   A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.





8.2.15. A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato; y

8.2.16. A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerida, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

8.2.17. A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

8.2.18. A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

8.2.19. A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

8.2.20. A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionado con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MU-TUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

8.2.21. A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MU-TUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

NOVENA: MORA.

9.1    La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Présta-mo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas por el MUTUARIO que dichas sumas devenguen hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las PARTES acuerdan a razón de una tasa de interés anual equivalente a la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

9.2    El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, consi-derar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

(a)    si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas.

(b)    si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)    si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o ini-ciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

(d)    si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedi-chos;

(e)    si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretare la inhibición general de bienes



10



del MUTUARIO por un monto en exceso de Dólares Estadounidenses  DOS MILLONES con 00/100 (US$ 2.000.000) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f)   si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo objeto del presente Contrato;

(g)   si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h)   si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i)   si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan  los Créditos Cedidos;

(j)   si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fueren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dispuesto en las alternativas detalladas en 4.2(a) a 4.2(d);

(k)   si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaren medidas para la ejecución  de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l)   Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.

9.3   Producida la Mora del MUTUARIO, el MUTUANTE podrá proceder sin más a la ejecución de las Garantías.

DÉCIMA: COMISIONES Y GASTOS.

10.1   Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

10.2   Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

10.3   Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

10.4   El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la operación al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y

 

11



toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.

El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también las nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

DÉCIMO SEGUNDA: VIGENCIA – INDEMNIDAD

12.1    El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

12.2    El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ~ jecución o entrega del Contrato y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstos en ellos; (ii) los Créditos Cedidos adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 12.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

DÉCIMO TERCERA: AUTORIZACIÓN

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones de los MUTUARIOS. En tal sentido, el MUTUARIO autorizan al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a todos los bienes de los MUTUARIOS como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato.

DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.

14.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

14.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

14.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada. En particular, en caso de Mora el MUTUANTE tendrá la facultad de iniciar la ejecución de los Pagarés y/o los Warrants contra el MUTUARIO ante los Tribunales de la Ciudad de Buenos Aires, República Argentina.

14.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street . Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

12

14.5 Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en el último párrafo de la presente Cláusula.

14.6 Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

14.7 El MUTUARIO irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MU-TUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total com-probado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

14.8 Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

MUTUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del MUTUARIO y un ejemplar en poder del MUTUANTE.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 8 días del mes de Septiembre de 2006

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Por: MAURITIO TOF B.V..
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: J.G. BOVEN Y E.L. van ECHTEN
Carácter: ATTORNEY - IN - FACT AIB

ACTA DE CERTIFICACION DE FIRMAS

F 002783376

1 Buenos Aires, 8 de Septiembre de 2006 . En mi carácter de Escribano

2 Titular del Registro Notarial Nº 841

3 CERTIFICO: Que la/s firma                                    que obran en el

4 documento que adjunta a esta foja, cuyo requerimiento de certificación de su/s

5 firma/s que se formaliza simultáneamente por ACTA número        16        del

6 LIBRO número       68       , es/son puesta/s en mi presencia por la/s persona/s

7 cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

8 cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 6.106.144.- Mani-

9 fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10 PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11 exhibe y le confiere facultades suficientes para suscribir el documento ad-

12 junto.-





ANEXO II
(Detalle de las cuotas)



| ENDOSANTE. | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2006 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-marzo-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 29-junio-2007 | U$S | 150.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-agosto-2007 | U$S | 150.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-octubre-2007 | U$S | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2007 | U$S | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | U$S | 300.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | U$S | 400.000,00 |
| SANCOR COOP. UNIDAS LTO. | 31-mayo-2008 | U$S | 500.000,00 |
| | | U$S | 2.700.000,00 |



<u>ANEXO III</u>
<u>PAGARE (sin protesto)</u>

0/0

Buenos Aires, _____ de _____ de 2006.

US$ _____

El _____ de _____ de 2006 (en adelante la "Fecha de Vencimiento"), por igual valor recibido, _____, una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en _____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____, Argentina, la suma neta de Dólares Estadounidenses _____ (US$ _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en concepto de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demande su cobro (judiciales y/o extrajudiciales), incluyendo honorarios razonables de abogados. Si el presente Pagaré no fuera íntegramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagares que el deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor –además del capital adeudado– los intereses correspondientes calculados a razón de una tasa del _____% anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra pari passu a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en éste Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor: _____

Acreedor: _____

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, recibidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento; y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor: _____

Firma:
Nombres:
Carácter:

16

<u>PRIMERA ENMIENDA AL CONTRATO DE MUTUO</u>
<u>DE FECHA 08 /SEPTIEMBRE/2006</u>

Entre:
IIG TOF B.V., REPRESENTADO POR TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada por _Run Echter y J. Homozes_, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (en adelante el "<u>MUTUANTE</u>"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por la otra parte, (en adelante el "<u>MUTUARIO o SANCOR</u>") ambos conjuntamente denominados las "<u>Partes</u>", y

CONSIDERANDO:

I.   Que con fecha 08 de Septiembre de 2006, las Partes suscribieron un contrato de mutuo, modificado mediante Cartas de Recambio de Warrants de fecha 14 de Febrero, 19 de Mayo, 10 de Agosto y 19 de Noviembre del año 2005; 10 de Febrero, 25 de Mayo, 7 de Agosto y 16 de Noviembre del año 2006; 20 de Febrero, 23 de Marzo, 31 de Mayo y 4 de Julio del año 2007 (en adelante el "<u>Contrato</u>"), copia de todo lo cual se adjunta al presente como <u>ANEXO A</u>, cuyos términos y condiciones resultan aplicables a esta Primera Enmienda.

II.  Que al momento de la presente Enmienda, el MUTUARIO declara haber recibido de conformidad el monto total del Préstamo solicitado en el Contrato,

III. Que es intención del MUTUARIO solicitar al MUTUANTE prórroga de la Fecha de Vencimiento que operó el día 29 de Junio de 2007, de acuerdo al Anexo II detallado en el Contrato,

IV.  Que a la fecha de la presente, el MUTUARIO reconoce que el monto de Cuota vencida impaga cuyo vencimiento se pretende prorrogar asciende a la suma total de US$ 151.291,67 (Dólares Estadounidenses CIENTO CINCUENTA Y UN MIL DOSCIENTOS NOVENTA Y UNO CON 67/100),

V.   Que de conformidad con la Cláusula Quinta del Contrato, el MUTUARIO entregará al MUTUANTE un Pagaré por cada nueva Cuota, por la suma total adeudada con mas intereses aplicables hasta la Nueva Fecha de Vencimiento;

VI.  Que el MUTUANTE estaría dispuesto a aceptar la solicitud del MUTUARIO de reprogramar la Fecha de Vencimiento, realizando las modificaciones que sean necesarias en el Contrato,

VII. Que las Partes reconocen que las modificaciones introducidas mediante la presente Enmienda en ningún caso podrá ser interpretada como novación de las obligaciones asumidas en el Contrato.

En mérito a las consideraciones precedentemente expuestas, las Partes celebran la presente Primera Enmienda (en adelante la "Primera Enmienda"), sujeta a las declaraciones y estipulaciones siguientes:

1-   Modifícase el ANEXO II del Contrato, el cual quedará confeccionado del siguiente modo:

*NUEVO ANEXO II*
*(Detalle de las cuotas)*

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2006 | US$ | 100.000,00 cancelada |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2007 | US$ | 100.000,00 cancelada |
| SANCOR COOP. UNIDAS LTD. | 30-marzo-2007 | US$ | 100.000,00 cancelada |
| SANCOR COOP. UNIDAS LTD. | 30-agosto-2007 | US$ | 150.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-octubre-2007 | US$ | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2007 | US$ | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | US$ | 80.060,27 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | US$ | 80.060,27 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | US$ | 300.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | US$ | 400.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-mayo-2008 | US$ | 500.000,00 |
| | | US$ | 2.210.120,54 |



2- Modificase el Clausula PRIMERA del Contrato, en su parte pertinente, la cual quedará redactada del siguiente modo:

ARANA (h)
ANO
1370

PRIMERA:   DEFINICIONES.

"Pagaré/s" significa los pagaré librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 2.210.120,54 (Dólares Estadounidenses DOS MILLONES DOSCIENTOS DIEZ MIL CIENTO VEINTE CON 54/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

3-   En atención a la modificación mencionada en el punto precedente el MUTUANTE endosará a favor del MUTUARIO y entregará a este último, dentro de los 10 días de firmada la presente, el Pagaré de US$ 150.000,00 que fuera entregado por el MUTUARIO conjuntamente con la firma del Contrato. A su vez, en garantía de pago de las nuevas Cuotas –según la modificación efectuada por la presente Primera Enmienda- el MUTUARIO libra a favor del MUTANTE y entrega en este acto a este último dos Pagarés con el siguiente detalle:

| | | |
|---|---|---|
| 1/2 | 30 de Enero de 2008 | US$ 80.060,27 |
| 2/2 | 28 de Febrero de 2008 | US$ 80.060,27 |

4-   Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y cláusulas del Contrato, así como los actos ya cumplidos por las Partes en virtud del mismo, permanecen inalterables, manteniendo los mismos plena vigencia.

5-   Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del MUTUARIO y un ejemplar en poder del MUTUANTE.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 30 días del mes de Julio de 2007.-

Firma/s certificada/s en Foja
Nº F002877774
Bs. As. 30-7-2007

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: R. von Echten y J. Hamers
Carácter: Attorney-in-fact A/B

 **ACTA DE CERTIFICACION DE FIRMAS**
LEY 404





F 000827274

# ANEXO

1   Buenos Aires,  30 de   Julio   de  2007 . En mi carácter de Escribano

2   Titular del Registro Notarial Nº 841

3   CERTIFICO: Que la/s   firma/s                                que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5   firma/s que se formaliza simultáneamente por ACTA número        22        del

6   LIBRO número        80        , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8   cuyo conocimiento doy fe.  Mario César MAGDALENA L.E. 8.106.144.- Mani-

9   fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13

14

15

16

17

18

19

20

21

22

23

24





MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

# ANEXO

## CONTRATO DE MUTUO CON CESION DE CREDITOS

ENTRE:

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., una sociedad constituida bajo las leyes de Holanda, representada por los Sres. _____ y _____, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:

I.     Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

II.    Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

III.   Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de prefinanciar las exportaciones de producción de sus productos ("Pre-financiación").

IV.    Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

PRIMERA:     DEFINICIONES.

"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el taría de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

| | | |
|---|---|---|
| ARANA (?) | BANK: | Investors Bank & Trust Company |
| BANCO | ABA#: | 011-001-438 |
| 4570 | SWIFT: | INVBUS33 |
| | Credit: | Client Funds |
| | Account#: | 569-530-395 |
| | Further Credit: | Mauritio TOF – Sancor CUL |
| | Account#: | 02030-8420148 |

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

| | |
|---|---|
| BANCO: | Wachovia Bank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| SWIFT: | PNBPUS3NNYC |
| A NOMBRE DE: | Banco Itau Buen Ayre S.A., Buenos Aires, Argentina |
| SWIFT CODE: | ITAUARBA |
| Cuenta Nro.: | 2000192261739 |
| ROUTING N°: | FW026005092 |
| A FAVOR DE: | SanCor Cooperativas Unidas Limitada |
| CUENTA Nro.: | 01185361001 |
| REFERENCIA: | Prefinanciación de Exportación |

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidas en el ANEXO II del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudor/es Cedido/s" significa ARTHUR SCHUMAN, INC., domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación. ción.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fecha/s de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el ANEXO II del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el Pagaré.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Pagaré/s" significa los pagaré librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 1.850.000,00 (Dólares Estadounidenses UN MILLON OCHOCIENTOS CINCUENTA MIL CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

2

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Préstamo" significa el préstamo de US$ 1.606.833,33 (Dólares Estadounidenses UN MILLON SEISCIENTOS SEIS MIL,OCHOCIENTOS TREINTA Y TRES CON 33/100) que el MUTUANTE otorga al MUTUARIO y que será desembolsado de acuerdo a lo establecido en el presente Contrato.

"Pesos" Moneda de Curso legal de la República Argentina

"Warrants" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

SEGUNDA:    PRÉSTAMO.
2.1    El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

2.2    El MUTUANTE procederá a abonar el Préstamo al MUTUARIO en un solo desembolso, mediante acreditación y/o depósito bancario del Préstamo en la Cuenta del Mutuario dentro de los cinco (5) días corridos contados desde la firma del presente.

2.3    Dentro del plazo de cinco (5) días hábiles contados desde la recepción del Préstamo desembolsado en la Cuenta del Mutuario, el MUTUARIO deberán remitir al MUTUANTE un recibo de dicho Préstamo firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos, confirmando la recepción de tales fondos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUANTE dentro del plazo de diez (10) días corridos contados desde la firma del presente implicará la conformidad del MUTUARIO con el desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

TERCERA:    DEVOLUCIÓN DEL PRÉSTAMO.
3.1    El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 13 (TRECE) Cuotas mensuales y consecutivas en Cuenta del Mutuante.

3.2    Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegraran los intereses proporcionales correspondientes.

CUARTA: MONEDA DE PAGO.
4.1    El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, se cancelen en Dólares, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

4.2.(b). Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la

3



entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos, los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3      Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato, y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a la tasa de interés anual equivalente a la tasa implícita del Contrato.

4.4      Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el MUTUARIO.

4.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

QUINTA:      PAGARÉ.
5.1      Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 13 (TRECE) Pagarés, por la suma total de US$ 1.850.000,00 (Dólares Estadouniden- ses UN MILLON OCHOCIENTOS CINCUENTA MIL CON 00/100) – monto equivalente a la suma del monto de cada Cuota- pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MU- TUARIO.

5.2      Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

SEXTA: WARRANTS
6.1      Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumpli- miento el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE se constituyo en titular de todos los derechos y créditos derivados de los contratos de préstamo celebrados entre el MUTUARIO y IIG CAPI- TAL LCC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2004, contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de Marzo de 2005, contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005, contrato de préstamo de fecha 29 de Marzo de 2005, contrato de préstamo de fecha 12 de Septiembre de 2005, contrato de préstamo de fecha 27 de Septiembre de 2005, contrato de préstamo de fecha 22 de marzo de 2006, contrato de préstamo de fecha 20 de Julio de 2006 y contrato de préstamo de 8 de Septiembre de 2006, todos ellos adjuntos al presente como Anexo I.

De tal manera, entre los Warrants que tenga en su poder el MUTUANTE con motivo del ASSIGNMENT OF CREDITS adjunto al presente como ANEXO I, el MUTUARIO deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 35,50% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22 de Marzo de 2006, 20 de Julio de 2006, 8 de Septiembre de 2006 y el presente, menos las cuotas canceladas

en los mismos diez (10) contratos de mutuo (el presente contrato y los nueve contratos cedidos por el ASSIGNMENT OF CREDITS adjunto como Anexo I)

6.2     El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del MUTUARIO, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

6.3     En caso de mora del MUTUARIO por cualquier causa que fuere – incluido pero no limitado a la falta de pago de cualquiera de las Cuotas del presente Contrato y/o de cualquier otro contrato suscripto entre las mismas Partes (con mas los intereses y gastos que eventualmente pudieran corresponder)- el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

SEPTIMA:     CESIÓN DE CRÉDITOS.
7.1     En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien el Crédito Cedido garantiza todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como Anexo I, el MUTUARIO estima –por tratarse de créditos futuros y eventuales- que el monto de dicho Crédito Cedido resulta suficiente para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, el Crédito Cedido quedará afectado como garantía de cumplimiento de los diez contratos.

7.2     La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le corresponden o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en el Crédito Cedido, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia del Crédito Cedido. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto del Crédito Cedido y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes del Crédito Cedido, que quedarán a cargo exclusivo del MUTUARIO.

7.3     El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en el Crédito Cedido. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia del Crédito Cedido.

7.4     Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes al Crédito Cedido serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SEPTIMA, el MUTUANTE se obliga a incluir en todas y cada una de las facturas emitidas en virtud del Crédito Cedido que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tal factura deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5     Los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Cuotas.

(i)     Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), y siempre que el MUTUARIO no registre en ese momento ninguna deuda vencida impaga contra el MUTUANTE, que tenga origen en este u otro contrato suscripto entre las mismas Partes, el MUTUANTE transferirá los fondos del Crédito Cedido que el Deudor Cedido deposite en su cuenta, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario indicada en la Cláusula PRIMERA.

(ii)     Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondien-

5

tes a las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), el MUTUANTE aplicará los fondos del Crédito Cedido depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes.

(iii)   En el caso de que los fondos del Crédito Cedido depositados por el Deudor Cedido durante tales meses excedan el monto de la Cuota, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos del Crédito Cedido depositados por el Deudor Cedido durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6   La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe del Crédito Cedido no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula NOVENA del presente Contrato.

7.7   Las Partes acuerdan que, en virtud de la notificación de Cesión de derechos crediticios efectuada oportunamente por el MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18 de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte integrante del Anexo I del presente Contrato y la notificación efectuada con motivo del ASSIGNMENT OF CREDITS- por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE-, el MUTUARIO no deberá notificar al Deudor Cedido la Cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8   El presente Contrato no implica de forma alguna la transferencia por el MUTARIO al MUTUANTE de las obligaciones del Crédito Cedido, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen el Crédito Cedido, de modo que no se vea afectado el derecho del MUTUANTE al cobro del Crédito Cedido. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que —con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que integren el Crédito Cedido, o de cualquier forma discontinúe o termine su relación comercial con el Deudor Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

7.9   El MUTUARIO garantiza al MUTUANTE:
(a)   el cobro del Crédito Cedido, en Dólares y mediante transferencia de los mismos a la Cuenta del Mutuante en cada Fecha de Vencimiento para satisfacer el monto de cada Cuota.
(b)   la forma instrumental del mismo.
(c)   la legitimidad del Crédito Cedido y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d)   que no se encuentra inhibido para disponer de sus bienes;
(e)   que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre el Crédito Cedido;
(f)   que no ha percibido suma alguna derivada del Crédito Cedido, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el Acreedor Cedente de acuerdo al ASSIGNMENT OF CREDITS.
(g)   la autenticidad de las firmas de todo documento que acredite la causa del Crédito Cedido.
(h)   Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes del Crédito Cedido, incluyendo —pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto del Crédito Cedido.
(i)   que el monto de los Warrants será equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las Cuotas adeudadas.

7.10   Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la

6



República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 64,50 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.9, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.

OCTAVA: MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO
8.1.    Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

8.1.1.    Que el MUTURARIO es una Cooperativa en primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad;

8.1.2.    Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías; y

8.1.3.    Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

8.1.4    Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

8.1.5.    Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

8.1.6.    Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido  y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

8.1.7.    Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación (principal y accesoria) que resulte necesaria para el otorgamiento y perfeccionamiento de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

8.1.8.    Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

8.1.9.    Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al

7



MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

8.1.10.  Que el balance del MUTUARIO al 30 de Junio de 2006, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivas autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2006 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

8.1.11.  Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

8.1.12.  Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

8.1.13  Que conforme al conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

8.1.14  Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

8.1.15.  Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

8.1.16.  Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación o, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

8.1.17.  Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8.1.18   Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

8.1.19 que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las cuotas adeudadas.

8.2     Compromisos y Obligaciones del MUTUARIO.

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

8.2.1.   A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

8.2.2.   A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputasen por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

8



8.2.3.  A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

8.2.4.  A no realizar actos que constituyan o impliquen (i) una fusión, transformación, absorción, escisión o cualquier otro modo de reorganización societaria, transferencia de fondo de comercio o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

8.2.5.  A mantener pleno y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

8.2.6.  A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

8.2.7.  A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

8.2.8.  A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

8.2.9.  A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

8.2.10.  A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

8.2.11.  A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

8.2.12.  A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (USS 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses DOS MILLONES con 00/100 (USS 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

9

8.2.13. A no recomprar, rescatar ni amortizar sus propias acciones y a no reducir su capital, y

8.2.14. A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

8.2.15. A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato, y

8.2.16. A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

8.2.17. A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

8.2.18. A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

8.2.19. A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina  y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

8.2.20. A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUARIO para obtener el cobro de los Crédito Cedidos;

8.2.21. A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MUTUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

NOVENA: MORA.

9.1     La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Préstamo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas y del interés que dichas sumas devengaren hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las Partes acuerdan a razón de una tasa de interés anual equivalente a la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

9.2     El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, considerar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

(a)     si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas.

(b)     si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)     si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

10

(d)   si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos;

(e)   si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretare la inhibición general de bienes del MUTUARIO por un monto en exceso de Dólares Estadounidenses DOS MILLONES con 00/100 (U$S 2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los quince (15) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f)   si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo objeto del presente Contrato;

(g)   si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h)   si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i)   si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan los Créditos Cedidos;

(j)   si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fueren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dispuesto en las alternativas detalladas en 4.2(a) a 4.2(e);

(k)   si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaren medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l)   Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.

9.3   En adición a lo dispuesto en la Sección 9.1 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato -en los términos establecidos en la Sección 9.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de cualquiera de las Cuotas o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las sumas adeudadas bajo este Contrato los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE, incluidos, pero no limitados a los fondos que tengan origen en cesiones de derechos crediticios que le correspondan al MUTUARIO, por las transacciones abonadas o que se devengaren, derivadas del Contrato denominado "Agency Marketing Sales Agreement" (y sus eventuales enmiendas, modificaciones y renovaciones) suscripto entre el MUTUARIO y FONTERRA CO-OPERATIVE GROUP LIMITED, con domicilio en Fonterra Centre, 9 Princes Street, Auckland, New Zealand, con fecha 7 de Diciembre de 2004.

DECIMA: COMISIONES Y GASTOS.

10.1   Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

11

10.2    Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, reten-ciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El monto retenido, y deberán obte-pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obte-ner y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

10.3    Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo– con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente por el Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, deslindando al MUTUANTE de cualquier obligación al respecto.

10.4    El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se oca-sione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la opera-ción de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.
El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propie-dad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también sus nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

DÉCIMO SEGUNDA: VIGENCIA – INDEMNIDAD
12.1    El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimen-ten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

12.2    El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funciona-rios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, res-ponsabilidad y todos gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato y las Garantías y/o del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstas en ellos; (ii)  los Créditos Cedidos adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula
12.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

DÉCIMO TERCERA: AUTORIZACIÓN
El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones de los MUTUARIOS. En tal sentido, el MUTUARIO autorizan al MU-TUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commer-cial Code, incluyendo a todos los bienes de los MUTUARIOS como garantía del cumplimiento de las obliga-ciones asumidas en el presente Contrato.

DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.
14.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

14.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

12

14.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada. En particular, en caso de Mora el MUTUANTE tendrá la facultad de iniciar la ejecución de los Pagarés y/o los Warrants contra los MUTUARIOS ante los Tribunales de la Ciudad de Buenos Aires, República Argentina.

14.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

14.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en el último párrafo de la presente Cláusula.

14.6    Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

14.7    Los MUTUARIOS irrevocablemente renuncian, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

14.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

MURUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuari 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 20 días del mes de Octubre de 2006

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Firma/s certificada/s en foja
N° F.0.0.2.8.5.8.41.7
Bs. As. 20/10/2006

Por: MAURITIO TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:  S.R. Hack y  J. Harres
Carácter:  Attorney-in-fact A/B

MARTIN R. ARANA (h)
ESCRIBANO
MAT 4370

8 FO9
14 8

13



**ACTA DE CERTIFICACION DE FIRMAS**

F 002858417

Buenos Aires, 20 de Octubre de 2006. En mi carácter de Escribano

Titular del Registro Notarial Nº 841

CERTIFICO: Que la/s firma que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 117 del

LIBRO número 69 , es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

exhibe y le confiere facultades suficientes para suscribir el documento ad-

junto.-

ANEXO II
(Detalle de las cuotas)

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-mayo-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-julio-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-agosto-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-septiembre-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-octubre-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-noviembre-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | U$S | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-marzo-2008 | U$S | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | U$S | 300.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-mayo-2008 | U$S | 400.000,00 |
| | | U$S | 1.850.000,00 |





14

## ANEXO III
## PAGARE (sin protesto)

Buenos Aires, _____ de _____ de 2006. ·                                                   0/0

USS _____

El _____ de _____ de 2006 (en adelante la "Fecha de Vencimiento"), por igual valor recibido, _____, una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en _____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____, Argentina, la suma neta de Dólares Estadounidenses _____ (USS _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en concepto de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demandare su cobro (judiciales y/o extrajudiciales), incluyendo honorarios razonables de abogados. Si el presente Pagaré no fuera íntegramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagares que el deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor –además del capital adeudado– los intereses correspondientes calculados a razón de una tasa del _____% anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra pari passu a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en éste Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor: _____

Acreedor: _____

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, recibidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento; y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor

_____
Firma: _____
Nombre: _____
Carácter: _____

15

<u>PRIMERA ENMIENDA AL CONTRATO DE MUTUO</u>
<u>DE FECHA 20/OCTUBRE/2006</u>

Entre:
MAURITIO TOF B.V., REPRESENTADO POR TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada por _____, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (en adelante el "<u>MUTUANTE</u>"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, por la otra parte, (en adelante el "<u>MUTUARIO o SANCOR</u>") ambos conjuntamente denominados las "<u>Partes</u>", y

CONSIDERANDO:

I.  Que con fecha 20 de Octubre de 2006, las Partes suscribieron un contrato de mutuo (en adelante el "<u>Contrato</u>"), copia del cual se adjunta al presente como <u>**ANEXO A**</u>, cuyos términos y condiciones resultan aplicables a esta Primera Enmienda.

II.  Que al momento de la presente Enmienda, el MUTUARIO declara haber recibido de conformidad el monto total del Préstamo solicitado en el Contrato,

III.  Que al día de la fecha el MUTUARIO ha cancelado en tiempo y forma la suma de US$ 50.000,00 (Dólares Estadounidenses CINCUENTA MIL CON 00/100) correspondiente al vencimiento de fecha 28 de Febrero de 2007,

IV.  Que es intención del MUTUARIO solicitar al MUTUANTE prórroga de la Fecha de Vencimiento que operaba el día 31 de Mayo de 2007, de acuerdo al Anexo II detallado en el Contrato,

V.  Que a la fecha de la presente, el MUTUARIO reconoce que la Cuota vencida impaga cuyo vencimiento se pretende prorrogar asciende a la suma total de US$ 50.402,78 (Dólares Estadounidenses CINCUENTA MIL CUATROCIENTOS DOS CON 78/100),

VI.  Que de conformidad con la Cláusula Quinta del Contrato, el MUTUARIO entregará al MUTUANTE un Pagaré por la nueva Cuota, por la suma total adeudada con mas intereses aplicables hasta la Nueva Fecha de Vencimiento;

VII.  Que el MUTUANTE estaría dispuesto a aceptar la solicitud del MUTUARIO de reprogramar la Fecha de Vencimiento, realizando las modificaciones que sean necesarias en el Contrato,

VIII.  Que las Partes reconocen que las modificaciones introducidas mediante la presente Enmienda en ningún caso podrá ser interpretada como novación de las obligaciones asumidas en el Contrato.

En mérito a las consideraciones precedentemente expuestas, las Partes celebran la presente Primera Enmienda (en adelante la "Primera Enmienda"), sujeta a las declaraciones y estipulaciones siguientes:

1-  Modificase el ANEXO II del Contrato, el cual quedará confeccionado del siguiente modo:

*NUEVO ANEXO II*
*(Detalle de las cuotas)*

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE | |
|---|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2007 | US$ | 50.000,00 | CANCELADA |
| SANCOR COOP. UNIDAS LTD. | 30-julio-2007 | US$ | 50.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 30-agosto-2007 | US$ | 100.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 28-septiembre-2007 | US$ | 100.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 30-octubre-2007 | US$ | 100.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 30-noviembre-2007 | US$ | 100.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2007 | US$ | 100.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | US$ | 200.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | US$ | 200.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 31-marzo-2008 | US$ | 55.085,00 | |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | US$ | 300.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | US$ | 400.000,00 | |
| SANCOR COOP. UNIDAS LTD. | 31-mayo-2008 | US$ | | |



ARANA (h)
IBANO
4370

2- En atención a la modificación mencionada en el punto precedente el MUTUANTE endosará a favor del MUTUARIO y entregará a este último, dentro de los 10 días de firmada la presente, el Pagaré de US$ 50.000,00, que fuera entregado por el MUTUARIO conjuntamente con la firma del Contrato. A su vez, en garantía de pago de la nueva Cuota –según la modificación efectuada por la presente Primera Enmienda- el MUTUARIO libra a favor del MUTUANTE y entrega en este acto a este último un Pagarés con el siguiente detalle:

1/1          30 de Abril de 2008                    US$ 55.085,00

3- Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y cláusulas del Contrato, así como los actos ya cumplidos por las Partes en virtud del mismo, permanecen inalterables, manteniendo los mismos plena vigencia.

4- Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del MUTUARIO y un ejemplar en poder del MUTUANTE.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 29 días del mes de Junio de 2007.-

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
Nº EOO3465 757
Bs. As. 29-6-2007
Pagaré 29-6-2007, Ar.

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: MAURITIO TOF B.V.,
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: H. Bolecto / M. Roenink
Carácter:



ACTA DE CERTIFICACION DE FIRMAS
LEY 404

F 003468752

1  Buenos Aires, 29 de       Junio       de 2007   . En mi carácter de Escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  firma/s                                          que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número       152        del

6  LIBRO número       78        , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13

14

15

16

17

18

19

20  MARTIN R. ARANA (h)
    ESCRIBANO
    MAT. 4370

21

22

23

24

25

ANEXO

## CONTRATO DE MUTUO CON CESION DE CREDITOS

ENTRE:

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., una sociedad constituida bajo las leyes de Holanda, representada por los Sres. _____, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:

I.   Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

II.   Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

III.   Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de prefinanciar las exportaciones de producción de sus productos ("Pre-financiación").

IV.   Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

PRIMERA:   DEFINICIONES.
"Afiliada" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:





| | |
|---|---|
| BANK: | Investors Bank & Trust Company |
| ABA#: | 011-001-438 |
| SWIFT: | INVBUS33 |
| Credit: | Client Funds |
| Account#: | 569-530-395 |
| Further Credit: | Mauritio TOF – Sancor CUL |
| Account#: | 02030-8420148 |

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

| | |
|---|---|
| BANCO: | Wachovia Bank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| SWIFT: | PNBPUS3NNYC |
| A NOMBRE DE: | Banco Itau Buen Ayre S.A., Buenos Aires, Argentina |
| SWIFT CODE: | ITAUARBA |
| Cuenta Nro.: | 2000192261739 |
| ROUTING N°: | FW026005092 |
| A FAVOR DE: | SanCor Cooperativas Unidas Limitada |
| CUENTA Nro.: | 01185361001 |
| REFERENCIA: | Prefinanciación de Exportación |

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidos en el ANEXO II del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudor/es Cedido/s" significa ARTHUR SCHUMAN, INC., domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fechas de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el ANEXO II del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el Pagaré.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Pagaré/s" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 3,466,200.00 (Dólares Estadounidenses TRES MILLONES CUATROCIENTOS SESENTA Y SEIS MIL DOSCIENTOS CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Préstamo" significa el préstamo de US$ 3.001.847,23 (Dólares Estadounidenses TRES MILLONES UN MIL OCHOCIENTOS CUARENTA Y SIETE CON 23/100) que el MUTUANTE otorga al MUTUARIO y que será abonado de acuerdo a lo establecido en el presente Contrato.

"Pesos" Moneda de Curso legal de la República Argentina.

"Warrant/s" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

SEGUNDA:   PRÉSTAMO.
2.1   El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

2.2   El MUTUANTE procederá a abonar el Préstamo al MUTUARIO en dos desembolsos, mediante acreditación y/o depósito bancario de cada desembolso en la Cuenta del Mutuario.  El primer desembolso de US$ 1.000.185,56 (Dólares Estadounidenses UN MILLON CIENTO OCHENTA Y CINCO CON 56/100) será abonado con fecha 27 de Diciembre de 2006 y el saldo restante de US$ 2.001.661,67 (Dólares Estadounidenses DOS MILLONES UN MIL SEISCIENTOS SESENTA Y UNO CON 67/100) será abonado con fecha 03 de Enero de 2007.

2.3   Dentro del plazo de cinco (5) días hábiles contados desde la recepción de tales fondos en la Cuenta del Mutuario, el MUTUARIO deberán remitir al MUTUANTE un recibo confirmando la recepción de dichos fondos firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de diez (10) días corridos contados desde la fecha pactada para cada desembolso implicará la conformidad del MUTUARIO con cada desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

TERCERA:   DEVOLUCIÓN DEL PRÉSTAMO.
3.1   El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 11 (ONCE) Cuotas mensuales y consecutivas en la Cuenta del Mutuante.

3.2   Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegraran los intereses proporcionales correspondientes.

CUARTA: MONEDA DE PAGO.
4.1   El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2   En adición a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:

4.2.(a).  Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

4.2.(b).  Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

3



4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3    Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a una tasa de descuento del 10% anual.

4.4    Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el MUTUARIO.

4.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

QUINTA:    PAGARÉ.
5.1    Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 11 (ONCE) Pagarés, por la suma total de US$ 3.466.200,00 (Dólares Estadounidenses TRES MILLONES CUATROCIENTOS SESENTA Y SEIS MIL DOSCIENTOS CON 00/100) – monto equivalente a la suma total del monto de cada Cuota- pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MUTUANTE.

5.2    Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

SEXTA: WARRANTS
6.1    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE se constituyo en titular de todos los derechos y créditos derivados de los contratos de préstamo celebrados entre el MUTUARIO y IIC CAPITAL LCC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005, contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de Marzo de 2005, contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005, contrato de préstamo de fecha 29 de Marzo de 2005, contrato de préstamo de fecha 12 de Septiembre de 2005, contrato de préstamo de fecha 27 de Septiembre de 2005, contrato de préstamo de fecha 22 de marzo de 2006, contrato de préstamo de fecha 20 de Julio de 2006 y contrato de préstamo de 8 de Septiembre de 2006, 20 de Octubre de 2006, todos ellos adjuntos al presente como Anexo I.

De tal manera, entre los Warrants que tenga en su poder el MUTUANTE con motivo del ASSIGNMENT OF CREDITS adjunto al presente como ANEXO I, el MUTUANTE deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 33,45% del monto resultante de la suma

de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22 de Marzo de 2006, 20 de Julio de 2006, 8 de Septiembre de 2006, 20 de Octubre de 2006 y el presente, menos las cuotas canceladas en los mismos once (11) contratos de mutuo (el presente contrato y los diez contratos cedidos por el ASSIGNMENT OF CREDITS adjunto como Anexo I)

6.2    El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del MUTUARIO, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

6.3    En caso de mora del MUTUARIO por cualquier causa que fuere – incluido pero no limitado a la falta de pago de cualquiera de las Cuotas del presente Contrato y/o de cualquier otro contrato suscripto entre las mismas Partes (con mas los intereses y gastos que eventualmente pudieran corresponder)- el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA:    CESIÓN DE CRÉDITOS.
7.1    En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien los Créditos Cedidos garantizan todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como Anexo I, el MUTUARIO estima –por tratarse de créditos futuros y eventuales- que el monto de dichos Créditos Cedidos resultan suficientes para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, los Créditos Cedidos quedarán afectados como garantía de cumplimiento de los once contratos.

7.2    La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le correspondan o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en los Créditos Cedidos, como así también los remitos/facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia de los Créditos Cedidos. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

7.3    El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia de los Créditos Cedidos.

7.4    Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el MUTUARIO se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tal factura deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Cuotas.

(i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), y siempre que el MUTUARIO no registre en ese momento ninguna deuda vencida impaga contra el MUTUANTE, que tenga origen en este u otro contrato suscripto entre las mismas Partes, el MUTUANTE transferirá los fondos de los Créditos Cedidos que el Deudor Cedido deposite en su cuenta.

dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario indicada en la Cláusula PRIME-
RA.

(ii) Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendién-
dose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondien-
tes a las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), el MU-
TUANTE aplicará los fondos de los Créditos Cedidos depositados en su cuenta a precance-
lar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes.

(iii) En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido
durante tales meses excedan el monto de la Cuota, el excedente será transferido al MU-
TUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los
fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses no
fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de
aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota
en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6    La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE.
En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE
conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en
las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado
correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora auto-
mática, en los términos de la Cláusula NOVENA del presente Contrato.

7.7    Las Partes acuerdan que, en virtud de la notificación de Cesión de derechos crediticios efectuada
oportunamente por el MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18
de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte inte-
grante del Anexo I del presente Contrato y la notificación efectuada con motivo del ASSIGNMENT OF CRE-
DITS– por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE-, el MU-
TUARIO no deberá notificar al Deudor Cedido la Cesión de derechos crediticios pactada por las partes en el
presente Contrato.

7.8    El presente Contrato no implica de forma alguna la transferencia por el MUTARIO al  MUTUANTE de
las obligaciones de los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO
se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de
los contratos que causan los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE
al cobro de los Créditos Cedidos. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido
con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo
informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indica-
dos en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma
de las obligaciones antedichas, producirá automáticamente la mora de pleno derecho la mora del MUTUARIO, con
los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con
los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte
del MUTUARIO– el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que
integran los Créditos Cedidos, o de cualquier forma discontinúe o termine su relación comercial con el Deudor
Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido,

7.9    El MUTUARIO garantiza al MUTUANTE:
(a)    el cobro de los Créditos Cedidos, en Dólares y mediante transferencia de los mismos a la Cuenta del
Mutuante en cada Fecha de Vencimiento para satisfacer el  monto de cada Cuota.
(b)    la forma instrumental del mismo.
(c)    la legitimidad de los Créditos Cedidos y que el mismo es de su libre disponibilidad, no encontrándose
afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de
la presente;
(d)    que no se encuentra inhibido para disponer de sus bienes;
(e)    que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie
sobre los Créditos Cedidos;
(f)    que no ha percibido suma alguna derivada de los Créditos Cedidos, y que el mismo no ha sido cedi-
do total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el Acreedor Ce-
dente de acuerdo al ASSIGNMENT OF CREDITS.
(g)    la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.
(h)    Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedi-
dos, incluyendo –pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercade-
ría objeto de los Créditos Cedidos.
(i)    que el monto de los Warrants será equivalente como mínimo al 33,45% de la sumatoria de la totali-
dad de los Préstamos otorgados.



6

7.10    Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 66,55 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.9, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.

OCTAVA: MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO
8.1.    Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

8.1.1.    Que el MUTUARIO es una Cooperativa en primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad;

8.1.2.    Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías; y

8.1.3.    Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

8.1.4.    Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

8.1.5.    Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

8.1.6.    Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativa competente a que se hallare sometido  y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

8.1.7.    Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación (principal y accesoria) que resulte necesaria para el otorgamiento y perfeccionamiento de los Documentos de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

8.1.8.    Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y



**ARAÑA (h)**

8.1.9. Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUANTE que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

8.1.10. Que el balance del MUTUARIO al 30 de Junio de 2006, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2006 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

8.1.11. Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

8.1.12. Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

8.1.13. Que conforme al conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

8.1.14. Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

8.1.15. Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

8.1.16. Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

8.1.17. Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8.1.18. Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

8.1.19 que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las cuotas adeudadas.

8.2.    Compromisos y Obligaciones del MUTUARIO.

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

8.2.1.    A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

8.2.2.    A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputaren por las vías legales correspondientes, de manera



fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

8.2.3.   A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

8.2.4.   A no realizar actos que constituyan o impliquen (i) una fusión, transformación, absorción, escisión o cualquier otro modo de reorganización societaria, transferencia de fondo de comercio o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

8.2.5.   A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

8.2.6.   A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

8.2.7.   A no subrogar de cualquier manera a cualquier tercero acreedor en, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

8.2.8.   A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

8.2.9.   A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

8.2.10.   A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

8.2.11.   A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

8.2.12.   A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares



(estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

8.2.13.  A no recomprar, rescatar ni amortizar sus propias acciones y a no reducir su capital, y

8.2.14.  A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades;

8.2.15.  A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato, y

8.2.16.  A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

8.2.17.  A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

8.2.18.  A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

8.2.19.  A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina  y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

8.2.20.  A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MU-TUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

8.2.21.  A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MU-TUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

NOVENA: MORA.
9.1     La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Présta-mo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas y del interés que dichas sumas devenguen hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las Partes acuerdan a razón de una tasa de interés anual equivalente a la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

9.2     El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, consi-derar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

        (a)     si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas,

        (b)     si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;



10



(c) si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

(d) si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos;

(e) si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretare la inhibición general de bienes del MUTUARIO por un monto en exceso de Dólares Estadounidenses DOS MILLONES con 00/100 (U$S 2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f) si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo objeto del presente Contrato;

(g) si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h) si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i) si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan los Créditos Cedidos;

(j) si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fueren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dispuesto en las alternativas detalladas en 4.2(a) a 4.2(d);

(k) si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaren medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l) Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.

9.3    En adición a lo dispuesto en la Sección 9.1 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato -en los términos establecidos en la Sección 9.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de cualquiera de las Cuotas o ante el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las sumas adeudadas bajo este Contrato los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE, incluidos, pero no limitados a, los fondos que tengan origen en cesiones de derechos crediticios que le correspondan al MUTUARIO, por las transacciones abonadas o que se devengaren, derivadas del Contrato denominado "Agency Marketing Sales Agreement" (y sus eventuales enmiendas, modificaciones y renovaciones) suscripto entre el MUTUARIO y FONTERRA CO-OPERATIVE GROUP LIMITED, con domicilio en Fonterra Centre, 9 Princes Street, Auckland, New Zealand, con fecha 7 de Diciembre de 2004.

DECIMA: COMISIONES Y GASTOS.
10.1    Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUAN-

11

ARANA (h)
VIANO
4279

TE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

10.2    Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago.

10.3    Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

10.4    El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.
El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también las nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

DÉCIMO SEGUNDA: VIGENCIA – INDEMNIDAD
12.1    El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

12.2    El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstas en ellos; (ii)  los Créditos Cedidos adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

DÉCIMO TERCERA: AUTORIZACIÓN
El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones de los MUTUARIOS. En tal sentido, el MUTUARIO autoriza an al MUTUANTE a presentar todo tipo de "financing statements" en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a todos los bienes de los MUTUARIOS como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato.

DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.
14.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

14.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento



que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

14.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada. En particular, en caso de Mora, el MUTUANTE tendrá la facultad de iniciar la ejecución de los Pagarés y/o los Warrants contra el MUTUARIO ante los Tribunales de la Ciudad de Buenos Aires, República Argentina.

14.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

14.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en el último párrafo de la presente Cláusula.

14.6    Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

14.7    Los MUTUARIOS irrevocablemente renuncian, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

14.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

MURUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuari 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 - Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 27 días del mes de Diciembre de 2006

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Por: MAURITIO TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:
Carácter:



ANEXO
= 000702725

Buenos Aires. 27 de Diciembre de 2006 . En mi carácter de Escribano

Titular del Registro Notarial Nº 841

CERTIFICO: Que la/s firma/s                                que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número      55      del

LIBRO número      72      . es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

exhibe y le confiere facultades suficientes para suscribir el documento ad-

junto.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4076

ANEXO II
(Detalle de las cuotas)

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 30-julio-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-agosto-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-septiembre-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-octubre-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-noviembre-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2007 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | U$S | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | U$S | 115.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-marzo-2008 | U$S | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | U$S | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-mayo-2008 | U$S | 2.500.000,00 |
| | | U$S | 3.466.200,00 |



ANEXO III
PAGARE (sin protesto)

0/0

Buenos Aires, _____ de ____ de 2006.

US$ _____

El ____ de _____ de 2006 (en adelante la "Fecha de Vencimiento"), por igual valor recibido, _____, una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en _____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____, Argentina, la suma neta de Dólares Estadounidenses _____ (US$ _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en concepto de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demande su cobro (judiciales y/o extrajudiciales), incluyendo honorarios razonables de abogados. Si el presente Pagaré no fuera integramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagares que el deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor –además del capital adeudado- los intereses correspondientes calculados a razón de una tasa del _____% anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra pari passu a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en éste Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier jurisdicción que el Acreedor considere apropiada.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor: _____

Acreedor: _____

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, recibidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento; y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor

_____
Firma:
Nombres: _____
Carácter: _____

15

### PRIMERA ENMIENDA AL CONTRATO DE MUTUO
### DE FECHA 27 /DICIEMBRE/2006

Entre:
IIG TOF B.V., REPRESENTADO POR TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada por H Rennonskoop y F. Kuiper, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (en adelante el "MUTUANTE"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por la otra parte, (en adelante el "MUTUARIO o SANCOR") ambos conjuntamente denominados las "Partes", y

CONSIDERANDO:

I.      Que con fecha 27 de Diciembre de 2006, las Partes suscribieron un contrato de mutuo modificado mediante Cartas de Recambio de Warrants de fecha 14 de Febrero, 19 de Mayo, 10 de Agosto y 19 de Noviembre del año 2005; 10 de Febrero, 25 de Mayo, 7 de Agosto y 16 de Noviembre del año 2006; 20 de Febrero, 23 de Marzo, 31 de Mayo y 4 de Julio del año 2007 (en adelante el "Contrato"), copia del cual se adjunta al presente como ANEXO A, cuyos términos y condiciones resultan aplicables a esta Primera Enmienda.

II.     Que al momento de la presente Enmienda, el MUTUARIO declara haber recibido de conformidad el monto total del Préstamo solicitado en el Contrato,

III.    Que es intención del MUTUARIO solicitar al MUTUANTE prórroga de la Fecha de Vencimiento que opera el día 30 de Julio de 2007, de acuerdo al Anexo II detallado en el Contrato,

IV.     Que a la fecha de la presente, el MUTUARIO reconoce que el monto de Cuota cuyo vencimiento se pretende prorrogar asciende a la suma de US$ 50.000,00 (Dólares Estadounidenses CINCUENTA MIL CON /100),

V.      Que de conformidad con la Cláusula Quinta del Contrato, el MUTUARIO entregará al MUTUANTE un Pagaré por cada nueva Cuota, por la suma total adeudada con mas intereses aplicables hasta la Nueva Fecha de Vencimiento;

VI.     Que el MUTUANTE estaría dispuesto a aceptar la solicitud del MUTUARIO de reprogramar la Fecha de Vencimiento, realizando las modificaciones que sean necesarias en el Contrato,

VII.    Que las Partes reconocen que las modificaciones introducidas mediante la presente Enmienda en ningún caso podrá ser interpretada como novación de las obligaciones asumidas en el Contrato.

En mérito a las consideraciones precedentemente expuestas, las Partes celebran la presente Primera Enmienda (en adelante la "Primera Enmienda"), sujeta a las declaraciones y estipulaciones siguientes:

1-      Modifícase el ANEXO II del Contrato, el cual quedará confeccionado del siguiente modo:

*NUEVO ANEXO II*
*(Detalle de las cuotas)*

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 30-agosto-2007 | US$ | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-septiembre-2007 | US$ | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-octubre-2007 | US$ | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-noviembre-2007 | US$ | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-diciembre-2007 | US$ | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | US$ | 26.458,92 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | US$ | 100.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | US$ | 26.458,92 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | US$ | 115.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-marzo-2008 | US$ | 200.600,00 |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | US$ | 200.600,00 |
| SANCOR COOP. UNIDAS LTD. | 31-mayo-2008 | US$ | 2.500.000,00 |
| SANCOR COOP. UNIDAS LTD. | | US$ | 3.469.117,84 |



2- Modifícase el Cláusula PRIMERA del Contrato, en su parte pertinente, la cual quedará redactada del siguiente modo:

PRIMERA:   DEFINICIONES.

"Pagaré/s" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 3.469.117,84 (Dólares Estadounidenses TRES MILLONES CUATROCIENTOS SESENTA Y NUEVE MIL CIENTO DIECISIETE CON 84/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

3- En atención a la modificación mencionada en el punto precedente el MUTUANTE endosará a favor del MUTUARIO y entregará a este último, dentro de los 10 días de firmada la presente, el Pagaré de US$ 50.000,00 que fuera entregado por el MUTUARIO conjuntamente con la firma del Contrato. A su vez, en garantía de pago de las nuevas Cuotas –según la modificación efectuada por la presente Primera Enmienda- el MUTUARIO libra a favor del MUTUANTE y entrega en este acto a este último dos Pagarés con el siguiente detalle:

1/2       30 de Enero de 2008        US$ 26.458,92
2/2       28 de Febrero de 2008      US$ 26.458,92

4- Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y cláusulas del Contrato, así como los actos ya cumplidos por las Partes en virtud del mismo, permanecen inalterables, manteniendo los mismos plena vigencia.

5- Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del MUTUARIO y un ejemplar en poder del MUTUANTE.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 30 días del mes de Julio de 2007.-

Firma/s certificada/s en Foja
N° F00087777?
Bs. As. 30 - 7 - 2007

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG TOF B.V.,
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: H. Braunshary        J. kuiper
Carácter: Attorney A          Attorney B



**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404

## ANEXO

F 000827278

1  Buenos Aires, 30 de Julio de 2007 . En mi carácter de Escribano

2  Titular del Registro Notarial N° 841

3  CERTIFICO: Que la/s firma/s que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número 26 del

6  LIBRO número 80 , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

## CONTRATO DE MUTUO CON CESION DE CREDITOS

ENTRE:
SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., una sociedad constituida bajo las leyes de Holanda, representada por los Sres. _____, en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:

    I.    Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

    II.    Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

    III.    Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de prefinanciar las exportaciones de producción de sus productos ("Pre-financiación").

    IV.    Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

PRIMERA:    DEFINICIONES.
"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económica financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:



1

ARANA (h)
BANK: Investors Bank & Trust Company
ABA#: 011-001-438
SWIFT: INVBUS33
Credit: Client Funds
Account#: 569-530-395
Further Credit: Mauritio TOF – Sancor CUL
Account#: 02030-8420148

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

BANCO: Wachovia Bank N.A.
DIRECCIÓN: New York, U.S.A.
SWIFT: PNBPUS3NNYC
A NOMBRE DE: Banco Itau Buen Ayre S.A., Buenos Aires, Argentina
SWIFT CODE: ITAUARBA
Cuenta Nro.: 2000192261739
ROUTING N°: FW026005092
A FAVOR DE: SanCor Cooperativas Unidas Limitada
CUENTA Nro.: 01185361001
REFERENCIA: Prefinanciación de Exportación

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidas en el ANEXO II del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudores Cedido/s" significa ARTHUR SCHUMAN, INC., domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA.

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants.

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fecha/s de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el ANEXO II del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el Pagaré.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Pagaré/s" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 970.000,00 (Dólares Estadounidenses NOVECIENTOS SETENTA MIL CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

2

"Préstamo" significa el préstamo de USS 856.313,89 (Dólares Estadounidenses OCHOCIENTOS CINCUENTA Y SEIS MIL TRESCIENTOS TRECE CON 89/100) que el MUTUANTE otorga al MUTUARIO y que será abonado de acuerdo a lo establecido en el presente Contrato.

"Pesos" Moneda de Curso legal de la República Argentina

"Warrants" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

SEGUNDA: PRÉSTAMO.
2.1    El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

2.2    El MUTUANTE procederá a abonar el Préstamo al MUTUARIO en un solo desembolso, mediante acreditación y/o depósito bancario del Préstamo en la Cuenta del Mutuario dentro de los cinco (5) días corridos contados desde la firma del presente.

2.3    Dentro del plazo de cinco (5) días hábiles contados desde la recepción de tales fondos en la Cuenta del Mutuario, el MUTUARIO deberán remitir al MUTUANTE un recibo confirmando la recepción de dichos fondos firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de diez (10) días corridos contados desde la fecha pactada para el desembolso implicará la conformidad del MUTUARIO con el desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

TERCERA: DEVOLUCIÓN DEL PRÉSTAMO.
3.1    El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 8 (OCHO) Cuotas mensuales y consecutivas en la Cuenta del Mutuante.

3.2    Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegraran los intereses proporcionales correspondientes.

CUARTA: MONEDA DE PAGO.
4.1    El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, costes, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien

4.2.(b). Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República



3

Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3    Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a una tasa de descuento del 10% anual.

4.4    Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el MUTUARIO.

4.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

QUINTA:    PAGARÉ.
5.1    Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 8 (OCHO) Pagarés, por la suma total de US$ 970.000,00 (Dólares Estadounidenses NOVECIENTOS SETENTA MIL CON 00/100) – monto equivalente a la suma total del monto de cada Cuota– pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MUTUANTE.

5.2    Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

SEXTA: WARRANTS
6.1    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE se constituyo en titular de todos los derechos y créditos derivados de los contratos de préstamo celebrados entre el MUTUARIO y IIG CAPITAL LCC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005, contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de Marzo de 2005, contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005, contrato de préstamo de fecha 29 de Marzo de 2005, contrato de préstamo de fecha 12 de Septiembre de 2005, contrato de préstamo de fecha 27 de Septiembre de 2005, contrato de préstamo de fecha 22 de marzo de 2006, contrato de préstamo de fecha 20 de Julio de 2006, contrato de préstamo de fecha 8 de Septiembre de 2006, contrato de préstamo de fecha 20 de Octubre de 2006 contrato de préstamo de fecha 27 de Diciembre de 2006, todos ellos adjuntos al presente como Anexo I.

De tal manera, entre los Warrants que tenga en su poder el MUTUANTE con motivo de todos los contratos adjuntos al presente como ANEXO I, el MUTUANTE deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 33,45% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2006, 27 de Septiembre de 2005, 22 de Marzo de 2006, 20 de Julio de 2006, 8 de Septiembre de 2006, 20 de Octubre de 2006, 27 de Diciembre de 2006 y el presente, menos las cuotas canceladas en los mismos doce (12) contratos de mutuo (el presente contrato y los once contratos cedidos por el ASSIGNMENT OF CREDITS adjunto como Anexo I)

4

6.2    El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del MUTUARIO, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

6.3    En caso de mora del MUTUARIO por cualquier causa que fuere – incluido pero no limitado a la falta de pago de cualquiera de las Cuotas del presente Contrato y/o de cualquier otro contrato suscripto entre las mismas Partes (con mas los intereses y gastos que eventualmente pudieran corresponder)- el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA:    CESIÓN DE CRÉDITOS.

7.1    En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien los Créditos Cedidos garantizan todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como Anexo I, el MUTUARIO estima –por tratarse de créditos futuros y eventuales- que el monto de dichos Créditos Cedidos resultan suficientes para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, los Créditos Cedidos quedarán afectados como garantía de cumplimiento de los once contratos.

7.2    La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le corresponden o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en los Créditos Cedidos, como así también los remitos/facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia de los Créditos Cedidos. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

7.3    El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia de los Créditos Cedidos.

7.4    Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el MUTUANTE se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que la factura deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Cuotas.

(i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), y siempre que el MUTUARIO no registre en ese momento ninguna deuda vencida impaga contra el MUTUANTE, que tenga origen en este u otro contrato suscripto entre las mismas Partes, el MUTUANTE transferirá los fondos de los Créditos Cedidos que el Deudor Cedido deposite en su cuenta, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario indicada en la Cláusula PRIMERA.

(ii)    Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en el Anexo II del presente Contrato), el MU-





5

TUANTE aplicará los fondos de los Créditos Cedidos depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes.

(iii)   En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses excedan el monto de la Cuota, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6   La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula NOVENA del presente Contrato.

7.7   Las Partes acuerdan que, en virtud de la notificación de Cesión de derechos crediticios efectuada oportunamente por el MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18 de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte integrante del Anexo I del presente Contrato y la notificación efectuada con motivo del ASSIGNMENT OF CREDITS– por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE–, el MUTUARIO no deberá notificar al Deudor Cedido la Cesión de derechos crediticios pactada por las partes en el presente Contrato.

7.8   El presente Contrato no implica de forma alguna la transferencia por el MUTUARIO al MUTUANTE de las obligaciones de los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO– el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que integran los Créditos Cedidos, o de cualquier forma discontinúe o termine su relación comercial con el Deudor Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

7.9   El MUTUARIO garantiza al MUTANTE:
(a)   el cobro de los Créditos Cedidos, en Dólares y mediante transferencia de los mismos a la Cuenta del Mutuante en cada Fecha de Vencimiento para satisfacer el monto de cada Cuota.
(b)   la forma instrumental del mismo.
(c)   la legitimidad de los Créditos Cedidos y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d)   que no se encuentra inhibido para disponer de sus bienes;
(e)   que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;
(f)   que no ha percibido suma alguna derivada de los Créditos Cedidos, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el Acreedor Cedente de acuerdo al ASSIGNMENT OF CREDITS.
(g)   la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.
(h)   Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a– la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.
(i)   que el monto de los Warrants será equivalente como mínimo al 33,45% de la sumatoria de la totalidad de los Préstamos otorgados.

7.10   Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido

6

ARANA (h)
BANO
370

a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 66,55 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.9, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.

OCTAVA: MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO
8.1.    Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

8.1.1.    Que el MUTUARIO es una Cooperativa en primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad;

8.1.2.    Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías; y

8.1.3.    Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

8.1.4    Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

8.1.5.    Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

8.1.6.    Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

8.1.7.    Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o límite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

8.1.8.    Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

8.1.9.    Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es

7



R. ARANA (h)
.IHUANO.
.T. 4370

correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

8.1.10.   Que el balance del MUTUARIO al 30 de Junio de 2006, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2006 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

8.1.11.   Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

8.1.12.   Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

8.1.13   Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

8.1.14   Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

8.1.15.   Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

8.1.16.   Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

8.1.17.   Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8.1.18.   Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

8.1.19 que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 35.50% de la sumatoria de la totalidad de las cuotas adeudadas.

8.2      Compromisos y Obligaciones del MUTUARIO.

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

8.2.1.   A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

8.2.2.   A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputasen por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

8.2.3.   A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y

8



similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

8.2.4. A no realizar actos que constituyan o impliquen (i) una fusión, transformación, absorción, escisión o cualquier otro modo de reorganización societaria, transferencia de fondo de comercio o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

8.2.5. A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

8.2.6. A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

8.2.7. A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

8.2.8. A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

8.2.9. A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

8.2.10. A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte ó cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

8.2.11. A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

8.2.12. A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

8.2.13. A no recomprar, rescatar ni amortizar sus propias acciones y a no reducir su capital, y

9

8.2.14.   A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

8.2.15.   A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato, y

8.2.16.   A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

8.2.17.   A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

8.2.18.   A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

8.2.19.   A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

8.2.20.   A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUARIO para obtener el cobro de los Crédito Cedidos;

8.2.21.   A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MUTUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

NOVENA: MORA.

9.1      La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Préstamo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas y del interés que dichas sumas devenguen hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las Partes acuerdan a razón de una tasa de interés anual equivalente **a** la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

9.2      El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, considerar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

    (a)    si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas,

    (b)    si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

    (c)    si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

    (d)    si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos;



10



(e) si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretare la inhibición general de bienes del MUTUARIO por un monto en exceso de Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f) si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo objeto del presente Contrato;

(g) si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h) si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i) si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan los Créditos Cedidos;

(j) si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fueren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dispuesto en las alternativas detalladas en 4.2(a) a 4.2(d);

(k) si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaren medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l) Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.

9.3    En adición a lo dispuesto en la Sección 9.1 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato -en los términos establecidos en la Sección 9.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de cualquiera de las Cuotas o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las sumas adeudadas bajo este Contrato los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE, incluidos, pero no limitados a los fondos que tengan origen en cesiones de derechos crediticios que le correspondan al MUTUARIO, por las transacciones abonadas o que se devengaren, derivadas del Contrato denominado "Agency Marketing Sales Agreement" (y sus eventuales enmiendas, modificaciones y renovaciones) suscripto entre el MUTUARIO y FONTERRA CO-OPERATIVE GROUP LIMITED, con domicilio en Fonterra Centre, 9 Princes Street, Auckland, New Zealand, con fecha 7 de Diciembre de 2004.

DECIMA: COMISIONES Y GASTOS.
10.1    Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieran generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.



11

10.2    Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago.

10.3    Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo– con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

10.4    El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.
El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

DÉCIMO SEGUNDA: VIGENCIA – INDEMNIDAD
12.1    El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

12.2    El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato y las Garantías y/del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstas en ellos; (ii) los Créditos Cedidos adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 12.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

DECIMO TERCERA: AUTORIZACIÓN
El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones de los MUTUARIOS. En tal sentido, el MUTUARIO autorizan al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a todos los bienes de los MUTUARIOS como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato.

DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.
14.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

14.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

12

RANA (h)
NO
270

14.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada. En particular, en caso de Mora, el MUTUANTE tendrá la facultad de iniciar la ejecución de los Pagarés y/o los Warrants contra el MUTUARIO ante los Tribunales de la Ciudad de Buenos Aires, República Argentina.

14.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

14.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en el último párrafo de la presente Cláusula.

14.6    Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

14.7    Los MUTUARIOS irrevocablemente renuncian, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contrato en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

14.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

MURUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

            2) Tacuari 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 14 días del mes de Febrero de 2007

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Por: MAURITIO TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:
Carácter:

Firma/s certificada/s en Foja
Nº F 0021 0511 44
Bs. As. 1 4 - 2 - 2 0 0 7

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

13

ANEXO II
(Detalle de las cuotas)

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 30-octubre-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-noviembre-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 26-diciembre-2007 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-marzo-2008 | U$S | 50.000,00 |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | U$S | 200.000,00 |
| SANCOR COOP. UNIDAS LTD. | 31-mayo-2008 | U$S | 470.000,00 |
| | | U$S | 970.000,00 |



ANEXO III
PAGARE (sin protesto)

0/0

Buenos Aires, _____ de _____ de 2006.

US$

El _____ de _____ de 2006 (en adelante la "Fecha de Vencimiento"), por igual valor recibido, _____, una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en _____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a MAURITIO TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____, Argentina, la suma neta de Dólares Estadounidenses _____ (US$ _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en concepto de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demandare su cobro (judiciales y/o extrajudiciales), incluyendo honorarios razonables de abogados. Si el presente Pagaré no fuera íntegramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagares que el deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor –además del capital adeudado- los intereses correspondientes calculados a razón de una tasa del _____% anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra pari passu a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en éste Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor: _____

Acreedor: _____

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, recibidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento; y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor

Firma
Nombres: _____
Carácter: _____

15





## ACTA DE CERTIFICACION DE FIRMAS
LEY 404

F 003159149

1  Buenos Aires, 14 de   Febrero   de 2007 . En mi carácter de Escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                                     que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número     09        del

6  LIBRO número     74      , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe. Mario César MAGDALENA L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13

14

15

16

17

18

19      MARTIN R. ARANA (h)
            ESCRIBANO
            MAT. 4370

20

21

22

23

24

25

## CONTRATO DE MUTUO CON CESION DE CREDITOS

ENTRE:

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., una sociedad constituida bajo las leyes de Holanda, representada por los Sres. S. Strasbosch y J. Planers en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:

I.   Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

II.  Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

III. Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de prefinanciar las exportaciones de producción de sus productos ("Pre-financiación").

IV.  Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

PRIMERA:   DEFINICIONES.

"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina ó de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Créditos Cedidos" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.

1

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

| | |
|---|---|
| BANK: | STATE STREET CORP. F/K/A INVESTORS BANK & TRUST CO. |
| ABA#: | 011-001-438 |
| SWIFT: | INVBUS33 |
| Credit: | Client Funds |
| Account#: | 569-530-395 |
| Further Credit: | IIG TOF – Sancor CUL |
| Account#: | 02030-8420148 |

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

| | |
|---|---|
| BANCO: | Wachovia Bank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| SWIFT: | PNBPUS3NNYC |
| A NOMBRE DE: | Banco Itau Buen Ayre S.A., Buenos Aires, Argentina |
| SWIFT CODE: | ITAUARBA |
| Cuenta Nro.: | 2000192261739 |
| ROUTING N°: | FW026005092 |
| A FAVOR DE: | SanCor Cooperativas Unidas Limitada |
| CUENTA Nro.: | 01185361001 |
| REFERENCIA: | Prefinanciación de Exportación |

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidas en el ANEXO II del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudor/es Cedido/s" significa *ARTHUR SCHUMAN, INC.*, domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fecha/s de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el ANEXO II del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el Pagaré.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.



2

"Pagarés" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 2.110.000,00 (Dólares Estadounidenses DOS MILLONES CIENTO DIEZ MIL CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Préstamo" significa el préstamo de US$ 2.000.880,76 (Dólares Estadounidenses DOS MILLONES OCHOCIENTOS OCHENTA CON 76/100) que el MUTUANTE otorga al MUTUARIO y que será abonado de acuerdo a lo establecido en el presente Contrato.

"Pesos" Moneda de Curso legal de la República Argentina

"Warrant/s" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

**SEGUNDA: PRÉSTAMO.**
2.1    El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

2.2    El MUTUANTE procederá a abonar el Préstamo al MUTUARIO en un solo desembolso, mediante acreditación y/o depósito bancario del Préstamo en la Cuenta del Mutuario dentro de los cinco (5) días corridos contados desde la firma del presente.

2.3    Dentro del plazo de cinco (5) días hábiles contados desde la recepción de tales fondos en la Cuenta del Mutuario, el MUTUARIO deberán remitir al MUTUANTE un recibo confirmando la recepción de dichos fondos firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de diez (10) días corridos contados desde la fecha pactada para el desembolso implicará la conformidad del MUTUARIO con el desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

**TERCERA: DEVOLUCIÓN DEL PRÉSTAMO.**
3.1    El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 4 (CUATRO) Cuotas mensuales y consecutivas en la Cuenta del Mutuante.

3.2    Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegraran los intereses proporcionales correspondientes.

**CUARTA: MONEDA DE PAGO.**
4.1    El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien



3

R. ARANA (h)
CRIMANO
AT. 4379

4.2.(b). Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3     Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a una tasa de descuento del 11% anual.

4.4     Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el MUTUARIO.

4.5.    Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

QUINTA:     PAGARÉ.
5.1     Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin por ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 4 (CUATRO) Pagarés, por la suma total de US$ 2.110.000,00 (Dólares Estadounidenses DOS MILLONES CIENTO DIEZ MIL CON 00/100) – monto equivalente a la suma total del monto de cada Cuota- pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MUTUANTE.

5.2     Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

SEXTA: WARRANTS
6.1     Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE y IIG CAPITAL LLC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005; contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de de Marzo de 2005; contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005; contrato de préstamo de fecha 29 de Marzo de 2005, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 12 de Septiembre de 2005, modificado por Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 27 de Septiembre de 2005, con-



4



ARANA (h)
mano
4370

...trato de préstamo de fecha 22 de marzo de 2006, modificado mediante Enmienda de fecha 31 de Mayo de 2007; contrato de préstamo de fecha 20 de Julio de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 8 de Septiembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 20 de Octubre de 2006, modificado mediante Enmienda de fecha 29 de Junio de 2007; contrato de préstamo de fecha 27 de Diciembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 14 de Febrero de 2007, todos ellos adjuntos al presente como **Anexo I**.

De tal manera, entre los Warrants que tenga en su poder el MUTUANTE con motivo de todos los contratos adjuntos al presente como ANEXO I, el MUTUANTE deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 33,45% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22 de Marzo de 2006, 20 de Julio de 2006, 8 de Septiembre de 2006, 20 de Octubre de 2006, 27 de Diciembre de 2006, 14 de Febrero de 2007 y el presente, <u>menos las cuotas canceladas en los mismos trece (13)</u> contratos de mutuo (el presente contrato y los doce contratos cedidos por el ASSIGNMENT OF CREDITS adjunto como Anexo I)

6.2     El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del MUTUARIO, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

6.3     En caso de mora del MUTUARIO por cualquier causa que fuere – incluido pero no limitado a la falta de pago de cualquiera de las Cuotas del presente Contrato y/o de cualquier otro contrato suscripto entre las mismas Partes (con mas los intereses y gastos que eventualmente pudieran corresponder)- el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

SÉPTIMA:     CESIÓN DE CRÉDITOS.
7.1     En garantía de pago de las Cuotas y del cumplimiento de todas las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien los Créditos Cedidos garantizan todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como Anexo I, el MUTUARIO estima –por tratarse de créditos futuros y eventuales- que el monto de dichos Créditos Cedidos resultan suficientes para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, los Créditos Cedidos quedarán afectados como garantía de cumplimiento de los trece contratos.

7.2     La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le corresponden o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en los Créditos Cedidos, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia de los Créditos Cedidos. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

7.3     El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia de los Créditos Cedidos.

7.4     Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el MUTUANTE se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tal factu-

5

(h) ra deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5   Los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Cuotas.

(i)   Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el **Anexo II** del presente Contrato), y siempre que el MUTUARIO no registre en ese momento ninguna deuda vencida impaga contra el MUTUANTE, que tenga origen en este u otro contrato suscripto entre las mismas Partes, el MUTUARIO transferirá los fondos de los Créditos Cedidos que el Deudor Cedido deposite en su cuenta, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario indicada en la Cláusula PRIMERA.

(ii)   Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en el **Anexo II** del presente Contrato), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes.

(iii)   En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses excedan el monto de la Cuota, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6   La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula NOVENA del presente Contrato.

7.7   El MUTUARIO se obliga a notificar en forma fehaciente y por acto público esta cesión al Deudor Cedido y ratificar la notificación de Cesión de derechos crediticios efectuada oportunamente por el MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18 de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte integrante del **Anexo I** del presente Contrato y la notificación efectuada con motivo del ASSIGNMENT OF CREDITS– por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE–. A tales fines dentro de las 48 hs. desde la suscripción del presente Contrato y bajo apercibimiento de incurrir en Mora automática en caso de incumplimiento, el MUTUARIO comunicará al Deudor Cedido, con intervención notarial que los Créditos Cedidos han sido transmitidos al MUTUANTE y que el depósito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante, mediante de la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como **ANEXO IV**.

7.8   El presente Contrato no implica de forma alguna la transferencia por el MUTARIO al MUTUANTE de las obligaciones de los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que integran los Créditos Cedidos, o de cualquier forma discontinúe o termine su relación comercial con el Deudor Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

7.9   El MUTUARIO garantiza al MUTUANTE:

(a)   el cobro de los Créditos Cedidos, en Dólares y mediante transferencia de los mismos a la Cuenta del Mutuante en cada Fecha de Vencimiento para satisfacer el monto de cada Cuota.

6







(b) la forma instrumental del mismo.
(c) la legitimidad de los Créditos Cedidos y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;
(d) que no se encuentra inhibido para disponer de sus bienes;
(e) que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;
(f) que no ha percibido suma alguna derivada de los Créditos Cedidos, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el Acreedor Cedente de acuerdo al ASSIGNMENT OF CREDITS.
(g) la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.
(h) Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.
(i) que el monto de los Warrants será equivalente como mínimo al 33,45% de la sumatoria de la totalidad de los Préstamos otorgados.

7.10    Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 66,55 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.9, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.

OCTAVA: MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO
8.1.    Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

8.1.1.    Que el MUTUARIO es una Cooperativa en primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad;

8.1.2.    Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías; y

8.1.3.    Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

8.1.4.    Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

8.1.5.    Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

7



8.1.6.   Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido  y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

8.1.7.   Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohiba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación (principal y accesoria) que resulte necesaria para el otorgamiento y perfeccionamiento de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

8.1.8.   Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

8.1.9.   Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

8.1.10.   Que el balance del MUTUARIO al 30 de Junio de 2007, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2007 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

8.1.11.   Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

8.1.12.   Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

8.1.13   Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

8.1.14   Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

8.1.15.   Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

8.1.16.   Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación al el cumplimiento de las operaciones previstas en los Documentos de la Operación;

8.1.17.   Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8.1.18   Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

8



8.1.19 que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las cuotas adeudadas.

8.2    Compromisos y Obligaciones del MUTUARIO.

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

8.2.1.    A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

8.2.2.    A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputasen por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

8.2.3.    A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; ó (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

8.2.4.    A no realizar actos que constituyan o impliquen (i) una fusión, transformación, absorción, escisión o cualquier otro modo de reorganización societaria, transferencia de fondo de comercio o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

8.2.5.    A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

8.2.6.    A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

8.2.7.    A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

8.2.8.    A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y



9

8.2.9. A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

8.2.10. A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

8.2.11. A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

8.2.12. A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

8.2.13. A no recomprar, rescatar ni amortizar sus propias acciones y a no reducir su capital, y

8.2.14. A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

8.2.15. A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato, y

8.2.16. A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

8.2.17. A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

8.2.18. A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

8.2.19. A cumplir con todos los requisitos y exigencias que imponga establecido el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

8.2.20. A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

8.2.21. A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MUTUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

NOVENA: MORA.

9.1   La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Préstamo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas y del interés que dichas sumas devenguen hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las Partes acuerdan a razón de una tasa de interés anual equivalente a la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

9.2   El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, considerar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

(a)   si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas,

(b)   si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)   si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

(d)   si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedichos;

(e)   si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretare la inhibición general de bienes del MUTUARIO por un monto en exceso de Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f)   si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo objeto del presente Contrato;

(g)   si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h)   si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i)   si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan los Créditos Cedidos;

(j)   si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fueren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dispuesto en las alternativas detalladas en 4.2(a) a 4.2(d);

(k)   si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaren medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l)   Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.

9.3   En adición a lo dispuesto en la Sección 9.1 precedente, la Mora automática del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la



11

ARANA (h)
19ANO
4370

mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato -en los términos establecidos en la Sección 9.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de cualquiera de las Cuotas o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las sumas adeudadas bajo este contrato los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE, incluidos, pero no limitados a los fondos que tengan origen en cesiones de derechos crediticios que le correspondan al MUTUARIO, por las transacciones abonadas o que se devengaren, derivadas del Contrato denominado "Agency Marketing Sales Agreement" (y sus eventuales enmiendas, modificaciones y renovaciones) suscripto entre el MUTUARIO y FONTERRA CO-OPERATIVE GROUP LIMITED, con domicilio en Fonterra Centre, 9 Princes Street, Auckland, New Zealand, con fecha 7 de Diciembre de 2004.

## DÉCIMA: COMISIONES Y GASTOS.

10.1     Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Contrato pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

10.2     Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

10.3     Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

10.4     El MUTUARIO se comprometen a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la operación de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

## DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.

El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias y/o a cualquiera de controladas de o controladas por el MUTUANTE o sea propiedad común de éste último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también las nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

:

## DÉCIMO SEGUNDA: VIGENCIA –INDEMNIDAD

12.1     El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

12.2     El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores),



.RANA (h)
ANO
1370

incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstos en ellos; (ii) los Créditos Cedidos adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 12.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

## DÉCIMO TERCERA: AUTORIZACIÓN

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones de los MUTUARIOS. En tal sentido, el MUTUARIO autorizan al MU-TUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commer-cial Code. incluyendo a todos los bienes de los MUTUARIOS como garantía del cumplimiento de las obliga-ciones asumidas en el presente Contrato.

## DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.

14.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

14.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

14.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdic-ción que el MUTUANTE considere apropiada. En particular, en caso de Mora, el MUTUANTE tendrá la facul-tad de iniciar la ejecución de los Pagarés y/o los Warrants contra el MUTUARIO ante los Tribunales de la Ciudad de Buenos Aires, República Argentina.

14.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

14.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en el último párrafo de la presente Cláusula.

14.6    Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

14.7    Los MUTUARIOS irrevocablemente renuncian, en la máxima medida permitida por las leyes, a opo-ner cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribuna-les mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompe-tencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Así mismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contra-to en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

14.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato deberán ser remitidas a los domicilios indicados a continuación:

MUTUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA



2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 27 días del mes de Septiembre de 2007

---

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario César Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N° ......................
Bs. As. ......................

Por: IIG TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:  b. Strybosch  y  J. Hanzes
Carácter:  Attorney A  y B

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

14



F 003689395

1  Buenos Aires, 27 de   Septiembre de   2007 . En mi carácter de Escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s   firma/s                                que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número        145        del

6  LIBRO número        82        , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe.   Mario César MAGDALENA L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13

14

15

16

17

18

19

20

21

22

23

24

25





MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

ANEXO II
(Detalle de las cuotas)

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| | | U$S | 527.500,00 |
| SANCOR COOP. UNIDAS LTD. | 30-enero-2008 | U$S | 527.500,00 |
| SANCOR COOP. UNIDAS LTD. | 28-febrero-2008 | U$S | 527.500,00 |
| SANCOR COOP. UNIDAS LTD. | 31-marzo-2008 | U$S | 527.500,00 |
| SANCOR COOP. UNIDAS LTD. | 30-abril-2008 | U$S | 2.110.000,00 |





## CONTRATO DE MUTUO CON CESION DE CREDITOS

ENTRE:

SANCOR COOPERATIVAS UNIDAS LTDA., una cooperativa constituida bajo las leyes de la República Argentina, representada en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado, domiciliada en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, por una parte, en adelante el "MUTUARIO o SANCOR", y

IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., una sociedad constituida bajo las leyes de Holanda, representada por los Sres. *Sebastian Urda y E. Hendriks* en su carácter de Apoderados, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte, en adelante el "MUTUANTE", ambos denominados conjuntamente las PARTES y

CONSIDERANDO:

I.      Que SANCOR es una cooperativa argentina dedicada a la producción y exportación de derivados de productos lácteos.

II.     Que el MUTUANTE es una compañía dedicada a la financiación de actividades de empresas de primera línea de diversos países.

III.    Que es intención del MUTUARIO obtener un préstamo del MUTUANTE a fin de prefinanciar las exportaciones de producción de sus productos ("Pre-financiacion").

IV.     Que el MUTUANTE está dispuesto a otorgar el préstamo solicitado, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (ii) se otorgue y perfeccione la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de este Contrato, se celebra el presente contrato de mutuo con cesión de créditos, sujeto a las siguientes cláusulas y condiciones:

PRIMERA:     DEFINICIONES.
"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o sus Afiliadas y/o el MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Contrato" significa el presente contrato de mutuo suscripto entre las Partes.

"Crédito/s Cedido/s" significa todos los derechos crediticios que le correspondan al MUTUARIO sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con el Deudor Cedido, a partir del día de la fecha y hasta la cancelación total de todas las sumas adeudadas por el MUTUARIO al MUTUANTE en virtud del presente Contrato, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con el Deudor Cedido.



1

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

| | |
|---|---|
| BANK: | STATE STREET CORP. F/K/A INVESTORS BANK & TRUST CO. |
| ABA#: | 011-001-438 |
| SWIFT: | INVBUS33 |
| Credit: | Client Funds |
| Account#: | 569-530-395 |
| Further Credit: | IIG TOF – Sancor CUL |
| Account#: | 02030-8420148 |

"Cuenta del MUTUARIO" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación:

| | |
|---|---|
| BANCO: | Wachovia Bank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| SWIFT: | PNBPUS3NNYC |
| A NOMBRE DE: | Banco Itau Buen Ayre S.A., Buenos Aires, Argentina |
| SWIFT CODE: | ITAUARBA |
| Cuenta Nro.: | 2000192261739 |
| ROUTING N°: | FW026005092 |
| A FAVOR DE: | SanCor Cooperativas Unidas Limitada |
| CUENTA Nro.: | 01185361001 |
| REFERENCIA: | Prefinanciación de Exportación |

"Cuota/s" significa las Cuotas que el MUTUARIO se obliga a pagar al MUTUANTE en devolución del Préstamo, comprensivas de capital e intereses, pagaderas de acuerdo a los montos en US$ y Fechas de Vencimiento establecidas en el ANEXO II del presente Contrato.

"Deuda Financiera" significa, respecto del MUTUARIO, la deuda no consolidada contraída con las entidades financieras (tanto a corto como a largo plazo) que el MUTUARIO informe trimestralmente al MUTUANTE y que será ajustada en forma trimestral de acuerdo con lo expuesto en los correspondientes estados contables.

"Deudor/es Cedido/s" significa *ARTHUR SCHUMAN, INC.*, domiciliado en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"Documentos de la Operación" significa el presente Contrato, los Créditos Cedidos, el Pagaré y los Warrants

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula NOVENA, Sección 9.2 del Contrato; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato.

"Fecha/s de Vencimiento" significa las Fechas de Vencimiento para el pago de las Cuotas indicadas en el ANEXO II del presente Contrato.

"Garantías" significa la cesión de los Créditos Cedidos, los Warrants y el *Pagaré*.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula NOVENA del presente Contrato.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato.

"MUTUARIO" tiene el significado indicado en el *encabezamiento* del presente Contrato.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.



"Pagaré/s" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE de conformidad con el formato adjunto al Contrato como ANEXO III, por la suma total de US$ 2.300.000,00 (Dólares Estadounidenses DOS MILLONES TRESCIENTOS MIL CON 00/100), conforme lo establecido en la Cláusula QUINTA del Contrato.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Préstamo" significa el préstamo de US$ 2.140.937,96 (Dólares Estadounidenses DOS MILLONES CIENTO CUARENTA MIL NOVECIENTOS TREINTA Y SIETE CON 96/100) que el MUTUANTE otorga al MUTUARIO y que será abonado de acuerdo a lo establecido en el presente Contrato.

"Pesos" Moneda de Curso legal de la República Argentina

"Warrant/s" significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEXTA del presente Contrato en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato.

SEGUNDA:   PRÉSTAMO.
2.1    El MUTUARIO solicita el Préstamo al MUTUANTE; y el MUTUANTE se compromete a otorgar el Préstamo al MUTUARIO en los términos y condiciones establecidos en el presente Contrato.

2.2    El MUTUANTE procederá a abonar el Préstamo al MUTUARIO en un solo desembolso, mediante acreditación y/o depósito bancario del Préstamo en la Cuenta del Mutuario dentro de los cinco (5) días corridos contados desde la firma del presente.

2.3    Dentro del plazo de cinco (5) días hábiles contados desde la recepción de tales fondos en la Cuenta del Mutuario, el MUTUARIO deberán remitir al MUTUANTE un recibo confirmando la recepción de dichos fondos firmado por un representante legal o apoderado con facultades suficientes de cada uno de ellos. En el supuesto de que el MUTUARIO no remitiese el recibo de confirmación antes referido, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de diez (10) días corridos contados desde la fecha pactada para el desembolso implicará la conformidad del MUTUARIO con el desembolso del Préstamo depositado por el MUTUANTE en la Cuenta del Mutuario.

TERCERA:   DEVOLUCIÓN DEL PRÉSTAMO.
3.1    El MUTUARIO se obliga a devolver al MUTUANTE el monto del Préstamo con más los intereses aplicables en las Fechas de Vencimiento, mediante el depósito de cada una de las 3 (TRES) Cuotas mensuales y consecutivas en la Cuenta del Mutuante.

3.2    Sin perjuicio de ello, transcurridos ciento ochenta (180) días contados a partir de la firma del presente Contrato, el MUTUARIO se reserva la facultad de cancelar anticipadamente la totalidad del Préstamo – con fondos propios o mediante pagos del Deudor Cedido-, en cuyo caso se le reintegraran los intereses proporcionales correspondientes.

CUARTA: MONEDA DE PAGO.
4.1    El MUTUARIO asume que el pago de las Cuotas o el saldo que eventualmente adeude en virtud del Contrato deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato que la devolución del Préstamo, incluyendo el pago de las Cuotas así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

4.2    En atención a lo dispuesto en la Cláusula 4.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO deberá igualmente abonar las Cuotas y cualquier otra suma pagadera en virtud del Contrato en Dólares, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE:

4.2.(a). Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo el Contrato; o bien



3

4.2.(b). Mediante la entrega al MUTUANTE de cualquier título en Dólares, a satisfacción expresa del MUTUANTE y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo el Contrato; o bien

4.2.(c). En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO bajo el Contrato, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

4.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en cualquier Fecha de Vencimiento bajo el Contrato, para la adquisición de Dólares.

4.3    Queda expresamente establecido que en cualquiera de las alternativas detalladas en 4.2.(a). a 4.2.(d)., las sumas adeudadas por el MUTUARIO sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante, la cantidad de Dólares adeudada bajo el Contrato y, en su caso, más los intereses compensatorios que se devenguen desde el vencimiento del crédito impago a una tasa de descuento del 11% anual.

4.4    Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 4.2.(a). a 4.2.(d) precedentes serán pagados por el MUTUARIO.

4.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO en una moneda distinta de Dólares, la obligación de pago del MUTUARIO de cualquier suma adeudada bajo el Contrato sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo el Contrato, el MUTUARIO acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE de esa pérdida.

QUINTA:    PAGARÉ.
5.1    Como garantía de pago de las obligaciones contraídas en el presente Contrato y del pago en tiempo y forma de las Cuotas, y sin que ello importe duplicación de las obligaciones del MUTUARIO, éste suscribe a favor del MUTUANTE 3 (TRES) Pagarés, por la suma total de US$ 2.300.000,00 (Dólares Estadounidenses DOS MILLONES TRESCIENTOS MIL CON 00/100) – monto equivalente a la suma total del monto de cada Cuota- pagaderos en las Fechas de Vencimiento, los cuales son entregados en este acto al MUTUANTE.

5.2    Ante el primer incumplimiento de cualquiera de las obligaciones asumidas por el MUTUARIO en el Contrato, el MUTUANTE quedará facultado para iniciar contra el MUTUARIO la ejecución de los Pagarés, a exclusivo criterio del MUTUANTE. El MUTUANTE se compromete a devolver los Pagarés al MUTUARIO a medida que vayan siendo pagadas las Cuotas, debiendo reintegrar cada Pagaré en un plazo no mayor a diez (10) días desde que haya sido abonada en tiempo y forma la Cuota correspondiente a dicho pagaré.

SEXTA: WARRANTS
6.1    Sin perjuicio de las obligaciones asumidas en el presente Contrato, en garantía de su total cumplimiento el MUTUARIO afecta los warrants endosados a favor del MUTUANTE en virtud del ASSIGNMENT OF CREDITS suscripto con fecha 25 de Abril de 2006, por el cual el MUTUANTE se constituyo en titular de todos los derechos y créditos derivados de los contratos de préstamo celebrados entre el MUTUARIO y IIG CAPITAL LLC AS AGENT suscriptos con fecha 18 de Agosto de 2004, modificado mediante Enmienda de fecha 29 de Marzo de 2005; contrato mutuo de fecha 22 de Noviembre de 2004, modificado por Enmienda de fecha 29 de Marzo de 2005; contrato de préstamo de fecha 26 de Noviembre de 2004, modificado por Enmienda de fecha 29 de marzo de 2005; contrato de préstamo de fecha 29 de Marzo de 2005, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 12 de Septiembre de 2005, modificado por Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 27 de Septiembre de 2005, con-

4

trato de préstamo de fecha 22 de marzo de 2006, modificado mediante Enmienda de fecha 31 de Mayo de 2007; contrato de préstamo de fecha 20 de Julio de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 8 de Septiembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 20 de Octubre de 2006, modificado mediante Enmienda de fecha 29 de Junio de 2007; contrato de préstamo de fecha 27 de Diciembre de 2006, modificado mediante Enmienda de fecha 30 de Julio de 2007; contrato de préstamo de fecha 14 de Febrero de 2007; contrato de préstamo de fecha 27 de Septiembre de 2007, todos ellos adjuntos al presente como Anexo I.

De tal manera, entre las Warrants que tenga en su poder el MUTUANTE con motivo de todos los contratos adjuntos al presente como ANEXO I, el MUTUANTE deberá contar en todo momento con warrants (endosados a su favor) por un monto total equivalente o superior al 33,45% del monto resultante de la suma de los Préstamos otorgados mediante contratos de fecha 18 de Agosto de 2004, 22 de Noviembre de 2004, 26 de Noviembre de 2004, 29 de Marzo de 2005, 12 de Septiembre de 2005, 27 de Septiembre de 2005, 22 de Marzo de 2006, 20 de Julio de 2006, 8 de Septiembre de 2006, 20 de Octubre de 2006, 27 de Diciembre de 2006, 14 de Febrero de 2007, 27 de Septiembre de 2007 y el presente, menos las cuotas canceladas en los mismos trece (13) contratos de mutuo (el presente contrato y los doce contratos cedidos por el AS-SIGNMENT OF CREDITS adjunto como Anexo I)

6.2     El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. El incumplimiento de dicha comunicación provocará la mora automática del MUTUARIO, con los efectos pactados en la cláusula NOVENA. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

6.3     En caso de mora del MUTUARIO por cualquier causa que fuere – incluido pero no limitado a la falta de pago de cualquiera de las Cuotas del presente Contrato y/o de cualquier otro contrato suscripto entre las mismas Partes (con mas los intereses y gastos que eventualmente pudieran corresponder)- el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de designar martillero al efecto.

SEPTIMA:     CESIÓN DE CRÉDITOS.
7.1     En garantía de pago de las Cuotas y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO en el presente Contrato, y en adición a las garantías establecidas en las Cláusulas QUINTA y SEXTA, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. Si bien los Créditos Cedidos garantizan todas las obligaciones pactadas en los contratos de Mutuo cedidos al MUTUANTE en virtud del ASSIGNMENT OF CREDITS adjunto como Anexo I, el MUTUARIO estima –por tratarse de créditos futuros y eventuales- que el monto de dichos Créditos Cedidos resultan suficientes para garantizar el pago de todas las sumas adeudadas al MUTUANTE. Consecuentemente, los Créditos Cedidos quedarán afectados como garantía de cumplimiento de los trece contratos.

7.2     La presente cesión implica también la cesión y transferencia a favor del MUTUANTE de todos los derechos y acciones que le correspondan o puedan corresponder al MUTUARIO sobre los conocimientos de embarque que acrediten el despacho de la mercadería comprendida en los Créditos Cedidos, como así también los remitos/facturas y/o facturas que el mismo emita en un futuro respecto a los productos que se entreguen al Deudor Cedido en virtud o a consecuencia de los Créditos Cedidos. La referida cesión o cesiones comprenden todos los derechos y acciones que posee el MUTUARIO y le correspondan respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro, etc. que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

7.3     El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que emita como consecuencia de los Créditos Cedidos.

7.4     Asimismo, el MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante indicada en la Cláusula PRIMERA del presente Contrato. A tal efecto, en adición a las notificaciones prevista en la Sección 7.7 de la presente Cláusula SÉPTIMA, el MUTUANTE se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tal factu-



5

ra deberá ser pagada al MUTUANTE mediante transferencia de los fondos correspondientes a la cuenta bancaria antes señalada.

7.5    Los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Cuotas.

(i)    Durante los meses en que NO exista Fecha de Vencimiento de alguna de las Cuotas (entendiéndose por tales aquellos meses que no se encuentren mencionados en las Fechas de Vencimiento indicadas en el **Anexo II** del presente Contrato), y siempre que el MUTUARIO no registre en ese momento ninguna deuda vencida impaga contra el MUTUANTE, que tenga origen en este u otro contrato suscripto entre las mismas Partes, el MUTUANTE transferirá los fondos de los Créditos Cedidos que el Deudor Cedido deposite en su cuenta, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario indicada en la Cláusula PRIMERA.

(ii)    Durante los meses en que exista una Fecha de Vencimiento de alguna Cuota (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento indicadas en el **Anexo II** del presente Contrato), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en su cuenta a precancelar el monto de la Cuota a pagar en la Fecha de Vencimiento correspondiente a dicho mes.

(iii)    En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses excedan el monto de la Cuota, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (i) de la presente Sección. En el caso de que los fondos de los Créditos Cedidos depositados por el Deudor Cedido durante tales meses no fuesen suficientes para cubrir el importe de la Cuota, el MUTUARIO será responsable de aportar la diferencia, hasta completar la diferencia y abonar así el importe total de la Cuota en la Fecha de Vencimiento, bajo apercibimiento de mora.

7.6    La presente cesión se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula SÉPTIMA para cubrir el pago de las Cuotas en las Fechas de Vencimiento, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Cuota, en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en mora automática, en los términos de la Cláusula NOVENA del presente Contrato.

7.7    El MUTUARIO se obliga a notificar en forma fehaciente y por acto público esta cesión al Deudor Cedidos y ratificar la notificación de Cesión de derechos crediticios efectuada oportunamente por el MUTUARIO al Deudor Cedido con motivo del Contrato de Mutuo suscripto con fecha 18 de Agosto de 2004 y modificado mediante Enmienda de fecha 29 de Marzo de 2005 adjunto como parte integrante del Anexo I del presente Contrato, la notificación efectuada con motivo del ASSIGNMENT OF CREDITS– por la cual el MUTUARIO notifica las nuevas instrucciones de pago a favor del MUTUANTE y la notificación efectuada el 27 de Septiembre de 2007-. A tales fines  dentro de las 48 hs. desde la suscripción del presente Contrato y bajo apercibimiento de incurrir en Mora automática en caso de incumplimiento el MUTUARIO comunicará al Deudor Cedido, con intervención notarial que los Créditos Cedidos han sido transmitidos al MUTUANTE y que el deposito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante, mediante la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como ANEXO IV.

7.8    El presente Contrato no implica de forma alguna la transferencia por el MUTARIO al  MUTUANTE de las obligaciones de los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete irrevocablemente a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. Asimismo, el MUTUARIO se obliga a remitir mercadería al Deudor Cedido con una frecuencia mínima de una vez por mes, durante toda la vigencia del presente Contrato, debiendo informar al MUTUANTE los detalles (volumen, precio, etc.) de la mercadería remitida en los términos indicados en la Sección 7.10 de la presente Cláusula SÉPTIMA. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA. De igual manera se producirá la mora de pleno derecho con los efectos antes citados en el caso de que –con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que integren los Créditos Cedidos, o de cualquier forma discontinúe o termine su relación comercial con el Deudor Cedido, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

7.9    El MUTUARIO garantiza al MUTUANTE:

6





(a)  el cobro de los Créditos Cedidos, en Dólares y mediante transferencia de los mismos a la Cuenta del Mutuante en cada Fecha de Vencimiento para satisfacer el monto de cada Cuota.

(b)  la forma instrumental del mismo.

(c)  la legitimidad de los Créditos Cedidos y que el mismo es de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

(d)  que no se encuentra inhibido para disponer de sus bienes;

(e)  que no adeuda suma alguna que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;

(f)  que no ha percibido suma alguna derivada de los Créditos Cedidos, y que el mismo no ha sido cedido total ni parcialmente a persona física o jurídica alguna con anterioridad; excepto el Acreedor Cedente de acuerdo al ASSIGNMENT OF CREDITS.

(g)  la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.

(h)  Que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.

(i)  que el monto de los Warrants será equivalente como mínimo al 33,45% de la sumatoria de la totalidad de los Préstamos otorgados.

7.10   Durante la vigencia del presente Contrato, el MUTUARIO se compromete a notificar mensualmente (entre el 1 y el 5 de cada mes) y por medio fehaciente al MUTUANTE, el estado de deuda del Deudor Cedido con el MUTUARIO, remitiendo a tal efecto un informe firmado por un Contador Público matriculado en la República Argentina, en el que se indiquen las sumas facturadas y las sumas impagas por el Deudor Cedido a la fecha de dicho informe (incluyendo un detalle de cada una de las facturas, con su número, fecha de emisión, fecha de recepción y monto de cada una de ellas), así como un detalle de las órdenes de compra emitidas por el Deudor Cedido y recibidas por el MUTUARIO a la fecha de dicho informe. Asimismo se compromete a mantener durante la vigencia del presente préstamo facturas, BL, órdenes de compra y/o notas de pedidos y órdenes de compra y/o notas de pedidos futuras y/o eventuales del Deudor Cedido por el 66,55 % del saldo de dicho préstamo. Todos los gastos del informe antes señalado correrán por exclusiva cuenta del MUTUARIO. La falta de remisión en debido tiempo y forma de la información y documentación prevista en la presente Sección 7.9, producirá automáticamente de pleno derecho la mora del MUTUARIO, con los efectos estipulados en la Cláusula NOVENA.

## OCTAVA: MANIFESTACIONES, DECLARACIONES y COMPROMISOS DEL MUTUARIO

8.1.   Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato y hasta que el mismo se extinga, lo siguiente:

8.1.1.   Que el MUTURARIO es una Cooperativa en primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad;

8.1.2.   Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato y/o de las Garantías; y

8.1.3.   Que el Contrato y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

8.1.4   Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

8.1.5.   Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en los Documentos de la Operación, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los

7



Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y



8.1.6.   Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO, ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido  y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, contrato u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

8.1.7.   Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación (principal y accesoria) que resulte necesaria para el otorgamiento y perfeccionamiento de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

8.1.8.   Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

8.1.9.   Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

8.1.10.   Que el balance del MUTUARIO al 30 de Junio de 2007, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2007 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

8.1.11.   Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda hipoteca, o mejor derecho alguno; y

8.1.12.   Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

8.1.13   Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registran con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

8.1.14   Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tienen y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

8.1.15.   Que los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

8.1.16.   Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

8.1.17.   Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

8



8.1.18   Que cumple y realiza todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulte aplicables.

8.1.19 que el monto de los Warrants endosados a favor del MUTUANTE será en todo momento equivalente como mínimo al 35,50% de la sumatoria de la totalidad de las cuotas adeudadas.

8.2   Compromisos y Obligaciones del MUTUARIO.

Desde la firma del presente Contrato y durante todo el tiempo en que cualquier suma debida bajo el Contrato se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

8.2.1.   A pagar debida y puntualmente las Cuotas en caso de falta de pago del Deudor Cedido, y los intereses aplicables, en su caso correspondientes, así como los gastos referidos en la Cláusula Décima, de conformidad con los términos y condiciones que se establecen en el presente Contrato, y

8.2.2.   A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que, según el caso, los disputasen por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

8.2.3.   A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contratos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato y las Garantías, y

8.2.4.   A no realizar actos que constituyan o impliquen (i) una fusión, transformación, absorción, escisión o cualquier otro modo de reorganización societaria, transferencia de fondo de comercio o cualquier otro acto de efectos similares o al que, conforme a cualquier ley o norma, pudieran oponerse sus acreedores, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

8.2.5.   A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

8.2.6.   A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente del MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos semestres; los estados contables referidos en (iii) deberán ser presentados dentro de los sesenta (60) días corridos del cierre de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

8.2.7.   A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato, y

8.2.8.   A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o

9



peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

8.2.9. A cumplir en tiempo y forma con todas y cada de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

8.2.10. A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO incurriere en relación con cualquier acuerdo o contrato del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

8.2.11. A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

8.2.12. A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes del MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

8.2.13. A no recomprar, rescatar ni amortizar sus propias acciones y a no reducir su capital, y

8.2.14. A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

8.2.15. A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato, y

8.2.16. A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

8.2.17. A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

8.2.18. A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

8.2.19. A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta Bancaria del MUTUARIO desembolsados bajo el presente Contrato, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

8.2.20. A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dichas cesiones, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

8.2.21. A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del MU-TUANTE en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

10




**NOVENA: MORA.**

9.1    La falta de cumplimiento de cualquiera de las obligaciones asumidas en virtud del presente Présta-mo (incluyendo sin limitación, la falta de pago de las Cuotas en las Fechas de Vencimiento correspondientes) por cualquier causa que fuere, producirá la mora automática del MUTUARIO y la caducidad de todos los plazos, sin necesidad de interpelación previa. En tal supuesto, además de las sumas adeudadas y del interés que dichas sumas devenguen hasta el efectivo pago de acuerdo a la tasa calculada para la determinación del valor de las Cuotas, el MUTUARIO deberá abonar al MUTUANTE intereses compensatorios acumulativos que las Partes acuerdan a razón de una tasa de interés anual equivalente a la tasa implícita del presente contrato con mas un interés punitorio equivalente al 50% (cincuenta por ciento) de la tasa de los intereses compensatorios. Todo ello sin perjuicio de las acciones que podrá ejercer el MUTUANTE respecto del Deudor Cedido en virtud de su incumplimiento.

9.2    El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, consi-derar el Préstamo como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todo lo adeudado en cualquiera de los siguientes Eventos de Incumplimiento:

(a)    si el MUTUARIO incumpliese con el pago en tiempo y forma de cualquiera de las Cuotas,

(b)    si un tercero pidiere la quiebra del MUTUARIO y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)    si el MUTUARIO pidiera su propia quiebra, promoviese su concurso de acreedores, o ini-ciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial;

(d)    si el MUTUARIO incurriere en cesación de pagos, aún sin efectuarse los trámites antedi-chos;

(e)    si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO o se decretara la inhibición general de bienes del MUTUARIO por un monto en exceso de Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato, y dichos embargos y/o medidas cautelares no fuesen levantados por cualquier causa que fuere, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible;

(f)    si en cualquier momento durante la vigencia del presente Contrato se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO en las declaraciones contenidas en la Cláusula OCTAVA del presente y/o el incumplimiento de los Compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del préstamo obje-to del presente Contrato;

(g)    si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el otorgamiento del préstamo objeto del presente Contrato;

(h)    si el MUTUARIO incumpliere cualquiera de las demás obligaciones a su cargo establecidas en el presente Contrato;

(i)    si el MUTUARIO incumpliere con cualquiera de sus obligaciones asumidas en los contratos que causan los Créditos Cedidos;

(j)    si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato fue-ren abonadas en una moneda distinta del Dólar Estadounidense; con excepción a lo dis-puesto en las alternativas detalladas en 4.2(a) a 4.2(d);

(k)    si se dictaren una o mas sentencias judiciales o laudos arbitrales firmes en contra del MU-TUARIO o se tomaren medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes del MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad del MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l)    Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso.





11

9.3     En adición a lo dispuesto en la Sección 9.1 precedente, la Mora del MUTUARIO por el incumplimien-
to de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la
mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la
mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato -en los términos
establecidos en la Sección 9.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el
MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de cualquiera de las
Cuotas o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el
MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras ga-
rantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal su-
puesto el MUTUANTE quedará facultado a aplicar a la cancelación de las sumas adeudadas bajo este Con-
trato los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la
Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE, in-
cluidos, pero no limitados a los fondos que tengan origen en cesiones de derechos crediticios que le corres-
pondan al MUTUARIO, por las transacciones abonadas o que se devengaren, derivadas del Contrato denomina-
do "Agency Marketing Sales Agreement" (y sus eventuales enmiendas, modificaciones y renovaciones) sus-
cripto entre el MUTUARIO y FONTERRA CO-OPERATIVE GROUP LIMITED, con domicilio en Fonterra Cen-
tre, 9 Princes Street, Auckland, New Zealand, con fecha 7 de Diciembre de 2004.


DECIMA: COMISIONES Y GASTOS.
10.1     Toda comisión y/o aranceles bancarios, tributos, tasas y/o gastos (incluyendo sin limitación los aran-
celes y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta
del Mutuante y/o Cuenta del Mutuario) que las operaciones derivadas directa y/o indirectamente de este Con-
trato pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUAN-
TE en forma inmediata y a su solo requerimiento todas las comisiones, tributos y/o gastos, a su cargo, cir-
cunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el
cual deberá ser debidamente documentado.

10.2     Todos los pagos bajo el Contrato deberán ser hechos por el MUTUARIO libres de deducciones, reten-
ciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier
autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos
pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones,
retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este
Contrato como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá
pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y deberán obte-
ner y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

10.3     Asimismo, el MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la
liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del
Préstamo objeto del presente Contrato, de conformidad con la normativa dictada al respecto por el Banco
Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

10.4     El MUTUARIO se comprometen a mantener indemne, defender y evitar que perjuicio alguno se oca-
sione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de la opera-
ción de exportación de mercaderías relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y
toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese
surgir.


DÉCIMO PRIMERA: CESIÓN DEL CONTRATO.
El MUTUANTE podrá ceder el presente Contrato en su totalidad a cualquiera de sus afiliadas y/o subsidiarias
(entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propie-
dad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los
mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este contrato. En
ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también las
nuevas instrucciones de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en
ese caso el MUTUARIO oponer al MUTUANTE del contrato cualquier defensa que hubiera podido oponer al
MUTUANTE cedente.


DÉCIMO SEGUNDA: VIGENCIA – INDEMNIDAD
12.1     El presente Contrato así como todas las Garantías mantendrán su vigencia hasta que se cumplimen-
ten en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato. Asimismo, aún
después de cumplidas con las obligaciones emergentes del Contrato, las Cláusulas Décima y Décimo Cuarta
sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten
aplicables según el caso.



.NA (h)

12.2    El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funciona-
rios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, res-
ponsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores),
incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la
ejecución o entrega del Contrato y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o
de la celebración de las operaciones previstos en ellos; (ii)  los Créditos Cedidos adeudado con más que
intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o
procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula
12.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable;
en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la
culpa grave o dolo de la Parte Indemnizada.

## DECIMO TERCERA: AUTORIZACIÓN

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato y todos los
documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes
a efectos de afianzar las obligaciones de los MUTUARIOS. En tal sentido, el MUTUARIO autorizan al MU-
TUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de
los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commer-
cial Code, incluyendo a todos los bienes de los MUTUARIOS como garantía del cumplimiento de las obliga-
ciones asumidas en el presente Contrato.

## DÉCIMO CUARTA: JURISDICCIÓN Y LEY APLICABLE.

14.1    El presente Contrato es gobernado por y debe ser interpretado de acuerdo con la legislación del
Estado de Nueva York, Estados Unidos de América.

14.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los
Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento
que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato. La sentencia que se dicte
contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y
podrá ser ejecutada en cualquier otra jurisdicción.

14.3    Nada de lo dispuesto precedentemente en el presente Contrato afectará el derecho del MUTUANTE
a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdic-
ción que el MUTUANTE considere apropiada. En particular, en caso de Mora, el MUTUANTE tendrá la facul-
tad de iniciar la ejecución de los Pagarés y/o los Warrants contra el MUTUARIO ante los Tribunales de la
Ciudad de Buenos Aires, Republica Argentina.

14.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation,
con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, como su agente autorizado al solo
efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO
en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York,
debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo
agente que designe a tales efectos.

14.5    Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en Sancor Dairy
Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, no estuviere presente, el
MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento
le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO
indicado en el último párrafo de la presente Cláusula.

14.6    Las notificaciones efectuadas de la manera establecida en la Sección 14.4 de la presente Cláusula
serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

14.7    Los MUTUARIOS irrevocablemente renuncian, en la máxima medida permitida por las leyes, a opo-
ner cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribuna-
les mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el
MUTUANTE; y en el especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompe-
tencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asi-
mismo el MUTUARIO renuncia expresamente a su derecho de recusar sin expresión de causa al Tribunal
unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago
total comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al contra-
to en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier
índole.

14.8    Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al
presente Contrato deberán ser remitidas a los domicilios indicados a continuación:





MURUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE: Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

Se firman 2 ejemplares iguales de un mismo tenor y a un solo efecto, quedando un ejemplar en poder del DEUDOR y un ejemplar en poder del ACREEDOR.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en la Ciudad de Amsterdam, The Netherlands, a los 14 días del mes de Diciembre de 2007

Por: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Por: IIG TOF B.V.
representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre: S. vielen  y  E. Hendriks
Carácter:  Apoderados

Firma/s certificada/s en Foja
N° F 00780 3913
Bs. As.  14-12-2005

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

14



F 003887212

1  Buenos Aires,   14 de   Diciembre  de   2007 . En mi carácter de Escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s   firma/s                                    que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

5  firma/s que se formaliza simultáneamente por ACTA número        152        del

6  LIBRO número        86       , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación y de

8  cuyo conocimiento doy fe.   Mario César MAGDALENÁ L.E. 8.106.144.- Mani-

9  fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

10  PERATIVAS UNIDAS LIMITADAS, de acuerdo a la documentación que me

11  exhibe y le confiere facultades suficientes para suscribir el documento ad-

12  junto.-

13



14

15

16

17

18        
MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

19

20

21

22

23

24

25

ANEXO II
(Detalle de las cuotas)

| ENDOSANTE | FECHA DE VENCIMIENTO | MONEDA | IMPORTE |
|---|---|---|---|
| SANCOR COOP. UNIDAS LTD. | 30-junio-2008 | U$S | 766.666,67 |
| SANCOR COOP. UNIDAS LTD. | 31-julio-2008 | U$S | 766.666,67 |
| SANCOR COOP. UNIDAS LTD. | 29-agosto-2008 | U$S | 766.666,66 |
| | | U$S | 2.300.000,00 |



**ANEXO III**
**PAGARE (sin protesto)**

0/0

Buenos Aires, _____ de _____ de 2007.

US$ _____

El _____ de _____ de 2006 (en adelante la "Fecha de Vencimiento"), por igual valor recibido, _____, una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en_____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____, Argentina, la suma neta de Dólares Estadounidenses _____ (US$ _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en concepto de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demandare su cobro (judiciales y/o extrajudiciales), incluyendo honorarios razonables de abogados. Si el presente Pagaré no fuera integramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagares que el deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor –además del capital adeudado– los intereses correspondientes calculados a razón de una tasa del _____% anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra pari passu a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en éste Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere apropiada.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor: _____

Acreedor: _____

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, recibidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier juicio, acción o procedimiento iniciado por el Acreedor; y en el especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento; y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor

_____
Firma
Nombres: _____
Carácter: _____

16

