| ANEXO III | ANNEX III: |
|---|---|
| MODELO DE SOLICITUD DE DESEMBOLSO | REQUEST FOR DISBURSEMENT |

Buenos Aires, _____ de _____ de 200_

Buenos Aires, _____, 200__.-

Sres.
**IIG TOF B.V.**
_____

Sirs
**IIG TOF B.V.**
_____

De nuestra consideración:

Dear Sirs:

Nos dirigimos a Uds. con relación al Contrato Marco de Línea de Crédito suscripto entre Uds. y _____ con fecha ____ de _____ de 2009 (el "Contrato Marco"), cuyas definiciones, términos y condiciones resultan aplicables a la presente Solicitud de Desembolso. De conformidad con lo establecido en la Cláusula TERCERA del Contrato Marco, solicitamos a Uds. un desembolso de acuerdo a los siguientes términos:

Reference is hereby made to the Credit Facility Agreement executed with you, dated _____, 2009 (the "Master Agreement"), whose definitions, terms and conditions are applicable to this Request for Disbursement. Pursuant to Section Third of the Master Agreement we hereby request to you a disbursement pursuant to the following conditions:

(i) El monto del desembolso solicitado mediante la presente es de US$ _____ (Dólares Estadounidenses _____).

(i) The amount requested to be disbursed herein is the aggregate principal amount of USD _____ (United States Dollars _____).

(ii) La/s Fecha/s de Vencimiento del desembolso antes requerido será/n la/s siguiente/s:

(ii) The Due Date/s for the repayment of the requested disbursement shall be the following:

| Fecha Vto. | Moneda e Importe |
|---|---|
| ___/___/___ | US$ _____ |
| ___/___/___ | US$ _____ |

| Due Dates | Amount and Currency |
|---|---|
| ___/___/___ | USD |
| ___/___/___ | USD |

(ii) La Suma Adeudada por dicho desembolso asciende a un total de US$ _____ (Dólares Estadounidenses _____), comprensivo del monto del desembolso con más los intereses aplicables hasta la/s Fecha/s de Vencimiento antedichas.

(iii) The Sums Due as a consequence of the mentioned disbursement amounts to the total aggregate amount of USD _____ (United States Dollars _____), which comprehends the disbursed amount plus the interests applicable as of the aforementioned Due Dates.

(iii) Adjuntamos a la presente un Pagaré a vuestro favor, pagadero a la vista, por la suma total de US$ _____ (Dólares Estadounidenses _____).

(iv) We enclosed herein a Promissory Note at your favor, payable on demand for the total aggregate amount of USD _____ (United States Dollars _____).

| Fecha Emisión | Fecha Vto. | Moneda e Importe |
|---|---|---|
| ___/___/___ | A la vista | US$_____ |

| Issue Date | Due Date | Amount and Currency |
|---|---|---|
| ___/___/___ | On Demand | USD |

(iv) Adjuntamos a la presente los Warrants Nº _____, por la suma total de US$ ____ (Dólares Estadounidenses _____), debidamente endosados a vuestro favor de acuerdo al siguiente detalle:

(v) We enclosed herein the Warrants Nº _____, for the total aggregate amount of USD ____ (United States Dollars _____), duly endorsed in your favor according to the following detail:

En caso de que la presente Solicitud de Desembolso sea aceptada por Uds., les solicitamos que, dentro del Plazo de Acreditación, transfieran los fondos del desembolso requerido a la Cuenta del Mutuario indicada en el Contrato Marco.

Provided this Request for Disbursement is accepted by you, we request that within the Crediting Term, you transfer the requested amount to the Borrower's Account identified at the Master Agreement.

Sin otro particular, saludamos a Uds. atentamente.

Yours sincerely,

Nombre: _____
Carácter: _____

By: _____
Name: _____



ANEXO IV / ANNEX IV
MODELO DE NOTIFICACION AL DEUDOR CEDIDO / MODEL OF NOTIFICATION TO THE
ASSIGNED DEBTOR

Buenos Aires, _____ __, 200_

Messrs.:
At.:
Tel:
Fax:

Dear Sirs:
We address to you in order to give you notice of the Assignments Agreements dated November 30th 2007
and_____, executed between **SANCOR COOPERATIVAS UNIDAS LTDA. ("SANCOR"),
SANCOR DO BRASIL Produtos Alimenticios Ltda. ("SANCOR DO BRASIL") and IIG TOF B.V.,
represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V. ("IIG TOF BV"),** and
whereby SANCOR has assigned and transferred to IIG TOF BV, and IIG TOF BV has accepted and
received all credits, rights, and interests arising and/or deriving from all and any commercial transactions
that SANCOR execute and/or may execute with _____until _____ (the "Assigned Credits").

As a consequence thereof, we inform you that all the sums and credits hereinabove referred –including,
without limitation, the credits derived from the invoices and other documentation that SANCOR submit
to you as a consequence of said commercial transactions, as well as the letters of credit that you may open
in order to pay those invoices are to be fully paid to IIG TOF BV by wire transfer to the following account:

BANK:
ABA#:
SWIFT:
Credit:
Account#:
Further Credit:
Account#:

The aforementioned Assignment Agreements shall not transfer and/or modify the liability of SANCOR
derived from the referred commercial transactions and business operations (the "Agreements"). Thus,
SANCOR remains being fully and exclusively responsible for any and all the obligations derived thereof.
Sincerely yours,

_____
SANCOR COOPERATIVAS UNIDAS LTDA.
Name:
Capacity:


_____
IIG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V
Name:
Capacity:


Acknowledged and accepted:
_____

_____
Name: _____
Capacity: _____



## ANEXO II
### *(Listado de Deudores Cedidos)*

| Razon Social | CUIT | IIBB | Dirección | Ubicación | Código Postal |
|---|---|---|---|---|---|
| Ron Marcos David | 20250063122 | 20250063122 | ENTRE RIOS 2735 | Quilmes | 1879 |
| Bagnato Hnos Suc Haedo S H | 30708374993 | 30708374993 | ATAHUALPA 1876 | Haedo | 1706 |
| Depetris Graciela | 27139299219 | 881811-08 | CARACAS 2087 | Capital | 1416 |
| Candia Y Freda S H | 30707977341 | 901-058789-5 | SAN JOSE 445 | Capital | 1076 |
| Giujusa Gustavo Adrián | 20225086452 | BRM 225086450 | MORENO N° 35 | Pilar | 1629 |
| R O Berra Y E A Morlacchi S H | 30621514381 | 513423-04 | GANDARA 3319 | Capital | 1431 |
| Etchebehere Raul Angel | 20102091982 | 20102091982 | AVDA 2 NRO. 3454 | Mercedes | 6600 |
| Ron Miguel Ángel | 23140035629 | 23140035629 | BAIZAN 631 | Claypole | 1849 |
| Silva Armando Ricardo | 20177528529 | 901-193405-1 | B.DE IRIGOYEN 518 | Boulogne | 1609 |
| Vignatti Oscar F Y Carlos Hug | 30645770389 | 902-112458-9 | PARAGUAY 852 | Avellaneda | 1870 |
| Pena Jorge Néstor | 20149221434 | 20149221434 | VERACRUZ 1679 | Lanus Oeste | 1824 |
| Caldara O Y Amaya C S De H | 30710165579 | 30710165579 | LUJAN 415 | Paso del Rey | 1742 |
| Gatto Alberto Antonio | 20074713441 | 424005-07 | C.DE LOS POZOS 946 | Capital | 1222 |
| Ribaudo Natalio Omar | 20110045140 | 20-11004514-0 | LAS LOMAS 920 | Escobar | 1625 |
| Figueroa Norberto Ceferino | 20251086924 | 20251086924 | SICILIANO 1736 | Luis Guillon | 1838 |
| Roso Fernando | 20082969811 | 20-08296981-1 | VENEZUELA 613 | Gral. Pacheco | 1617 |
| Bueno Guillermo Ariel | 20214413788 | 2021441388 | BLAS PARERA 2212 | Quilmes | 1878 |
| Gagino Gladys Emilce | 27134363903 | 27134363903 | RESISTENCIA 1446 | Lanus | 1824 |
| Ochoa Víctor Hugo | 20169845310 | 20BPP16984531 | CALLE 13 BIS ESQ 529 | La Plata | 1900 |
| Lopez Gustavo Adrian | 23144296869 | 745652-02 | YRIGOYEN Y GUIDO SPANO | Benvidez | 1621 |
| Barragan Horacio Fabio | 20174673706 | BRM-174673708 | ISAAC BELSKY 636 | Merlo | 1722 |
| Padilla Adrián Miguel | 20229945174 | 20-22994517-4 | CERETTI 3117 | Capital | 1421 |
| Iparraguirre Mariano Cesar | 20228454681 | 902-094761-1 | QUINTANA 13 | San Martin | 1650 |
| Bergero Saul Y Bergero Carlos | 30686021382 | 902-142099-0 | GAONA 2425 | Ramos Mejia | 1704 |
| Volpe Gabriel Antonio | 20281703847 | 20281703847 | CONDARCO 1738 | Quilmes | 1878 |
| Vignatti C Suc Y Di Marco A | 30644968568 | 902-112457-1 | PARAGUAY 852 | Avellaneda | 1870 |
| Marsico Rosses S A | 30707792635 | 901-055111-6 | JOSE MOLDES 2598 | Capital | 1428 |
| Wilhelm Gustavo Daniel | 20227027275 | 20227027275 | PIZARRO 416 | Merlo | 1722 |
| Guerra Gaston Y Guerra Mario | 30708746327 | 30708746327 | TIERRA DEL FUEGO 546 | Gral. Pacheco | 1617 |
| Peña Tomás Valentín | 20122422012 | 20100850738 | MAGNOLIA 730 | Villa Tesei | 1708 |
| Saraceno Guillermo Adrián | 20140972984 | 20140972984 | LAS HERAS 974 | Lujan | 6700 |

**ANEXO III**

**(_Modelo de Notificación a los Deudores Cedidos del Fideicomiso  adecuado al formato de notificación notarial_)**

Buenos Aires, __ de _____ de 200_.

Folio [__]. Primer Copia, Escritura Número [___]-
En la Ciudad de _____, Capital de la República Argentina, a los [__] días del mes de _____ del año dos mil nueve, ante mi, Escribano Autorizante, comparece/n el/los señor/es _____, titular/es del Documento Nacional de Identidad _____ y _____respectivamente, con domicilio en _____, Cuidad de _____ y los señores _____ y _____, titular/es del Documento Nacional de Identidad _____ y _____respectivamente, con domicilio en _____ de la Ciudad de Buenos Aires, todos ellos mayores de edad, hábiles y de mi conocimiento, doy fe, como que concurren en este acto en nombre y representación y en su carácter de apoderados de la cooperativa que gira en esta plaza bajo la denominación de SANCOR COOPERATIVAS UNIDAS LTDA. inscripta en [____], acreditando el carácter invocado y las facultades suficientes para este acto con el Poder [____] otorgado con fecha [___] ante [____] al folio [___] del Registro Notarial [___] a cargo de [___], cuya primera copia tengo a la vista y en fotocopia debidamente autenticada se encuentra agregada al folio [__] de este mismo Registro Notarial Protocolo del año [___], manifestando los comparecientes su plena vigencia. Los comparecientes, en nombre de SANCOR COOPERATIVAS UNIDAS LTDA. dicen: que solicitan de mi, el autorizante, que en el plazo de cinco días hábiles contados a partir del día de la fecha notifique a [NOMBRE CONCESIONARIO] con domicilio en_____ Ciudad de _____, la cesión fiduciaria en garantía operada en el contrato de fideicomiso instrumentado conforme a la propuesta de fecha ___ de _____ de 2009 formulada por SANCOR COOPERATIVAS UNIDAS LTDA ("SanCor") en carácter de potencial fiduciante y aceptada por IIG TOF B.V. ("IIG") en carácter de beneficiario y por Banco de Servicios y Transacciones S.A. ("BST") en carácter fiduciario; mediante el cual SanCor ha transmitido a BST la propiedad fiduciaria del 100% de todos los créditos y derechos de cobro, cualquiera fuere su naturaleza, que le correspondan a SanCor en forma directa o indirectamente a través de terceros que facturen a nombre propio pero por cuenta y orden de Sancor sobre las transacciones comerciales de cualquier tipo que pudiera celebrar con [NOMBRE CONCESIONARIO] a partir del día del perfeccionamiento del Contrato de Fideicomiso (los "Creditos Cedidos").
Consecuentemente, a partir de la fecha de la presente notificación y salvo instrucción fehaciente en contrario de BST y de IIG TOF BV, se instruye a Uds a proceder al pago de los Créditos Cedidos conforme las siguientes instrucciones de pago:

      BANCO:
      CTA.CTE RECAUDADORA.:   NRO.
      CBU:

Atentamente

(CONCLUIR NOTARIALMENTE LA NOTIFICACIÓN)

Recibimos de conformidad vuestra notificación y nos comprometemos a cumplir con las instrucciones de pago arriba mencionadas o las que en el futuro nos indique en forma fehaciente el Banco de Servicios y Transacciones S.A. y IIG TOF B.V. de conformidad a los derechos y obligaciones establecidos y/o consecuencia de los Créditos Cedidos. Por otra parte, confirmamos a Uds. que no tenemos conocimiento de ningún gravamen ni restricción de ningún tipo sobre la propiedad de los Créditos Cedidos antes señalados y que afecten a los mismos.

[NOMBRE CONCESIONARIO]
(Nombre del firmante)
(Carácter del firmante)



**ANEXO IV**

*Modelo de nota de notificación declarando la aceleración y caducidad de plazos del Contrato de Préstamo*

[Ciudad], __de _____ de 200__.

Sres.:
**BANCO DE SERVICIOS Y TRANSACCIONES S.A.**
**Corrientes 1174, 3° Piso**
**Buenos Aires, Argentina**
**At.: Sr. Juan Manuel Lladó**

Ref: Fideicomiso de Garantía Sancor – IIG TOF BV

Nos dirigimos a Uds. con relación al Contrato de Cesión Fiduciaria y Fideicomiso de Garantía relativo al Fideicomiso de referencia [_____] de 2009, cuyas definiciones, términos y condiciones resultan aplicables a la presente. En tal sentido, informamos a Uds. que SANCOR COOPERATIVAS UNIDAS LTDA ha incumplido con sus Obligaciones Garantizadas –específicamente _____(INDICAR), Habiendo acaecido un Evento de Incumplimiento y habiendo incurrido en Mora, produciéndose la aceleración y caducidad de todos los plazos bajo el Contrato de Préstamo, conforme lo dispuesto en los Artículos 3.06. a 3.08 y 8 del Contrato de Fideicomiso y Cláusula_____ del Contrato de Préstamo. Consecuentemente, al día de la fecha nos adeuda la suma de [_____] Dólares (US$ [_____] ), conforme la siguiente liquidación:

(EL BENEFICIARIO PRACTICARÁ LIQUIDACIÓN SEGÚN MONTOS ADEUDADOS EN EL MARCO DEL CONTRATO DE PRESTAMO)

Consecuentemente, conforme lo establecido en los Artículos del Contrato de Fideicomiso antes referidos, solicitamos a Uds. que:

(EL BENEFICIARIO INDICARÁ AL FIDUCIARIO: INSTRUCCIONES PARA APLICAR LOS FONDOS DEPOSITADOS EN LA CUENTA FIDUCIARIA AL PAGO DE LAS OBLIGACIONES GARANTIZADAS INCUMPLIDAS.

Sin otro particular, saludamos a Uds. atentamente,

_____
**IIG TOF B.V**
(nombre)
(cargo)



**ANEXO V**

*Modelo de nota de notificación informando que se dan por satisfechas la totalidad de las*
*acreencias contra el Fiduciante e instruyendo la liquidación del fideicomiso*

[Ciudad], __de _____ de 200__.

Sres.:
**BANCO DE SERVICIOS Y TRANSACCIONES S.A.**
**Corrientes 1174, 3° Piso**
**Buenos Aires, Argentina**
**At.: Sr. Juan Manuel Lladó**

Ref: Fideicomiso de Garantía Sancor – IIG TOF BV

Nos dirigimos a Uds. con relación al Contrato de Cesión Fiduciaria y Fideicomiso de Garantía
relativo al Fideicomiso de referencia[_____] de 2009, cuyas definiciones, términos y condiciones
resultan aplicables a la presente. Mediante la presente informamos a Uds. que SANCOR
COOPERATIVAS UNIDAS LTDA ha cancelado todas y cada una de las Obligaciones Garantizadas,
no adeudándonos suma alguna bajo el Contrato de Préstamo. Consecuentemente, a partir de la
efectiva recepción de la presente podrán Uds. proceder a la liquidación del Fideicomiso y a disponer
de los Créditos Cedidos de acuerdo con las instrucciones que reciban Uds. del Fiduciante, previa
cancelación de la totalidad de gastos e impuestos a cargo del Fideicomiso.

Sin otro particular, saludamos a Uds. atentamente,



_____
**IIG TOF B.V**
(nombre)
(cargo)



**ANEXO VI**

*Modelo de nota de notificación a remitir por el Fiduciario al Beneficiario*

[Ciudad], __ de _____ de 200__.

Sres.
**IIG TOF B.V.**
**representada por Trust Management Corp. B.V**
**Telestone 8 – Teleport, Naritaweg 165,**
**P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands**

**Ref. :** Propuesta de Cesión Fiduciaria y Fideicomiso
con Fines de Garantía. Sancor-IIG TOF BV
(Propuesta N° 1101)

Por medio de la presente le informamos fehacientemente que con fecha _____ se ha emitido y hecho entrega el pasado _____ a SANCOR COOPERATIVAS UNIDAS LTDA. de la Factura N° _____ (que en copia se adjunta) en concepto de la comisión inicial por incorporación señalada en el Artículo 11.01 (a) de la Propuesta de la referencia.

Sin otro particular, saludamos a Uds. atentamente,

_____
**BANCO DE SERVICIOS Y TRANSACCIONES SA**
(nombre)
(cargo)



**ANEXO VII**

*Modelo de nota de notificación a remitir por el Beneficiario con destino al Fiduciante y al Fiduciario*

[Ciudad], __de _____ de 200__.

Sres.
**SANCOR COOPERATIVAS UNIDAS LTDA**
**Tacuari 212, 3° Piso,**
**Buenos Aires, Argentina**
**At.: Mario Cesar Magdalena**

Sres.
**BANCO DE SERVICIOS Y TRANSACCIONES S.A.**
**Corrientes 1174, 3° Piso**
**Buenos Aires, Argentina**
**At.: Sr. Juan Manuel Lladó**

**Ref. :** Propuesta de Cesión Fiduciaria y Fideicomiso
con Fines de Garantía. Sancor-IIG TOF BV
(Propuesta N° 1101)

Por medio de la presente le informamos fehacientemente que nuestro domicilio legal es el de Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherland y ratificamos el domicilio de Av. Leandro N. Alem 1050, Piso 13, Ciudad A de Buenos Aires, Republica Argentina, indicado en la Propuesta de la referencia a los fines de recibir notificaciones.

Sin otro particular, saludamos a Uds. atentamente,

_____
**IIG TOF B.V**
(nombre)
(cargo)



| SOLICITUD DE DESEMBOLSO | DISBURSEMENT REQUEST |
|---|---|
| Buenos Aires, 24 de Febrero de 2010 | Buenos Aires, February 24th, 2010 |

| | |
|---|---|
| **IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.** Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands | **IIG TOF B.V.**, represented by **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.** Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands |
| De nuestra consideración: | Dear Sirs: |
| Nos dirigimos a Uds. con relación al Contrato Marco de Línea de Crédito suscripto entre Uds. y **SANCOR COOPERATIVAS UNIDAS LIMITADA** con fecha 30 de Noviembre de 2007, modificado mediante Primer Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercer, Cuarta Enmiendas de fecha 28 de Noviembre de 2008, Quinta Enmienda de fecha 30 de Abril de 2009, Sexta Enmienda de fecha 24 de Agosto de 2009, Séptima Enmienda de fecha 17 de Septiembre de 2009 y Octava Enmienda de fecha 21 de Diciembre de 2009 (el "Contrato Marco"), cuyas definiciones, términos y condiciones resultan aplicables a la presente Solicitud de Desembolso. De conformidad con lo establecido en la Cláusula TERCERA del Contrato Marco, solicitamos a Uds. un desembolso de acuerdo a los siguientes términos: | Reference is hereby made to the Master Credit Line Agreement between you and **SANCOR COOPERATIVAS UNIDAS LIMITADA** dated November 30, 2007, as amended by the First Amendment dated June 11, 2008, the Second Amendment dated September 24, 2008, the Third and Fourth Amendments dated November 28, 2008, the Fifth Amendment dated April 30, 2009, the Sixth Amendment dated August 24, 2009, the Seventh Amendment dated September 17, 2009 and the Eighth Amendment dated December 21, 2009 (The "Master Agreement"), whose definitions, terms and conditions are applicable to this Disbursement Request. Pursuant to Section Third of the Master Agreement we hereby request to you a disbursement subject to the following conditions: |
| (i)    El monto del desembolso solicitado mediante la presente es de US$ 4.379.627,80 (Dólares Estadounidenses CUATRO MILLONES TRESCIENTOS SETENTA Y NUEVE MIL SEISCIENTOS VEINTISIETE CON 80/100). | (i)    The amount requested to be disbursed herein is the aggregate principal amount of USD 4.379.627,80 (United States Dollars FOUR MILLON THREE HUNDRED AND SEVENTY NINE THOUSAND, SIX HUNDRED AND TWENTY SEVEN WITH 80/100). |
| (ii)    La Fecha de Vencimiento del desembolso antes requerido será la siguiente: | (ii)    The Due Date of the requested disbursement shall be the following: |

| VTO. | MONEDA | IMPORTE |
|---|---|---|
| 01/Julio/2010 | US$ | 4.588.400,00 |

| Due Dates | Currency | Amount |
|---|---|---|
| July  1st, 2010 | USD | 4.588.400,00 |

| | |
|---|---|
| (iii)    La Suma Adeudada por dicho desembolso asciende a un total de US$ **4.588.400,00** (Dólares Estadounidenses CUATRO MILLONES QUINIENTOS OCHENTA Y OCHO MIL CUATROCIENTOS CON 00/100), comprensivo del monto del desembolso con más los intereses aplicables hasta la Fecha de Vencimiento antedichas. | (iii)    The Sums Due corresponding to such disbursement amounts to the total aggregate amount of USD **4.588.400,00** (United States Dollars FOUR MILLON FIVE HUNDRED AND EIGHTY EIGHT THOUSAND, FOUR HUNDRED WITH 00/100), that comprehends the amount of the disbursement plus the interests accrued as of the aforementioned Due Date. |
| (iv)    Adjuntamos a la presente un Pagare a vuestro favor, pagadero a la vista, por la suma total de US$ **4.588.400,00** (Dólares Estadounidenses CUATRO MILLONES QUINIENTOS OCHENTA Y OCHO MIL CUATROCIENTOS CON 00/100). | (iv)    We enclosed herein a Promissory Note at your favor, payable on demand for the total aggregate amount of USD **4.588.400,00** (United States Dollars FOUR MILLON FIVE HUNDRED AND EIGHTY EIGHT THOUSAND, FOUR HUNDRED WITH 00/100) |

| Fecha Emisión | Fecha Vto. | Moneda e Importe |
|---|---|---|
| 24/Feb/2010 | A la vista | US$ 4.588.400,00 |

| Issue Date | Due Date | Currency and Amount |
|---|---|---|
| Feb 24th, 2010 | On demand | USD  4.588.400,00 |

| | |
|---|---|
| En caso de que la presente Solicitud de Desembolso sea aceptada por Uds., les solicitamos que, dentro del Plazo de Acreditación, transfieran los fondos del desembolso requerido a la cuenta del mutuario que a continuación se indica: | Provided this Disbursement Request is accepted by you, we request that within the Crediting Term, you transfer the disbursement amount to the Borrower's Account detailed below: |

| TRANSFERIR A : | SOCIETE GENERALE NEW YORK - U.S.A. | TRANSFERIR A : | SOCIETE GENERALE NEW YORK - U.S.A. |
|---|---|---|---|
| SWIFT: | SOGEUS33 | SWIFT: | SOGEUS33 |
| ABA: | 026004226 | ABA: | 026004226 |
| PARA EL CREDITO DE LA CUENTA NRO. | 150436 | PARA EL CREDITO DE LA CUENTA NRO. | 150436 |
| A NOMBRE DE: | BANCO SUPERVIELLE BUENOS AIRES, ARGENTINA. | A NOMBRE DE: | BANCO SUPERVIELLE BUENOS AIRES, ARGENTINA. |
| DIRECCIÓN SWIFT: | BSUPARBA | DIRECCIÓN SWIFT: | BSUPARBA |
| PARA EL CRÉDITO ULTIMO BENEFICIARIO | | PARA EL CRÉDITO ULTIMO BENEFICIARIO | |

NRO. DE CUENTA :       49095-001
TITULAR DE LA CUENTA: SANCOR COOPERATIVAS UNIDAS LIMITADA
CONCEPTO: PREFINANCIACIÓN DE EXPORTACIÓN

A los efectos de la presente Solicitud de Desembolso la versión en inglés prevalecerá sobre la versión en español.

Sin otro particular, saludamos a Uds. atentamente.

NRO. DE CUENTA :       49095-001
TITULAR DE LA CUENTA: SANCOR COOPERATIVAS UNIDAS LIMITADA
CONCEPTO: PREFINANCIACIÓN DE EXPORTACIÓN

To the purposes set forth in this Disbursement Request the English version shall prevail over the Spanish version.

Yours sincerely,

Firma/s certificada/s en Foja
Nº _____
Bs. As. _____

_____
By SANCOR COOPERATIVAS UNIDAS LTDA.
Name: Mario Magdalena
Title: Attorney-in-fact

_____
By SANCOR DO BRASIL Produtos Alimenticios Ltda.
Name: Mario Magdalena  - Daniel Jorge Valicente
Title: Attorneys-in-fact

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Receipt by:

_____
IIG TOF B.V represented by
TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Name:
Title:

MARTIN R.
ESCRI
MAT.



ARANA (h)

## ANEXO

F 001350971

1  Buenos Aires, 24 de Febrero de 2010 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                         que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 47             del LIBRO

6  número 131                 , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista

 

F 001350971

y les confieren facultades suficientes para suscribir el documento adjunto, 26

doy fe.- El documento se encuentra parcialmente escrito en idioma extran- 27

jero.- 28

29

30

31

32

33



34

35

36

37

38

39

40

41

42

43

44

45

46

47

48

49

50

**PRIMERA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA,** una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.,** una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.,** representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.,** representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominadas las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Primera Enmienda.

(b) Que sobre la base del Contrato Marco, es intención del MUTUARIO requerir al MUTUANTE una línea de crédito tipo 'revolving' a fin de poder requerirle –en los términos y condiciones establecidos en el Contrato Marco- los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la Línea de Crédito Adeudada alcance el monto máximo de la Línea de Crédito, de modo que la Línea de Crédito en todo momento resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(c) Que el mecanismo antes descripto permitiría al MUTUARIO requerir periódicamente el flujo de fondos requeridos para financiar sus exportaciones, pudiendo cancelar las Sumas Adeudadas, solicitar nuevos desembolsos y así sucesivamente, siempre que el monto acumulado de toda la Línea de Crédito resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(d) Que es intención de las Partes modificar el Contrato Marco al solo efecto de extender el Plazo de Disponibilidad y el plazo máximo del cual no podrán extenderse las Fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente primera enmienda al Contrato Marco (la "Primera Enmienda"), de conformidad con las presentes Cláusulas:

1.  Modificase de la **Cláusula PRIMERA** del Contrato Marco las siguientes definiciones:

    _"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán ser anteriores a los 24 (veinticuatro) meses calculadas desde la fecha de cada Solicitud de Desembolso e indefectiblemente anteriores al 31 de Diciembre de 2012._

    _"Línea de Crédito" significa la única línea de crédito, modalidad "revolving" que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00)_

    _"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2012, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO"_

**2.**      Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 15 días del mes de Marzo de 2010.

_____
Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: Mario Magdalena
Carácter: Apoderado

_____
Por: **SANCOR DO BRASIL Produtos Alimenticios Ltda.**
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderado - Administrador

_____
Por: **IIG TOF B.V.**
Nombre:
Carácter:      Trust International Management (T.I.M.) B.V.
                      Managing Director

Y. Hamen / W. Riergolen
apoderados

Firma/s certificada/s en Foja
Nº. FQ1362 069
Bs. As. 15.3.2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370







# ANEXO

F 001362069

1  Buenos Aires, 15 de   Marzo   de 2010 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  firma/s                        que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 48              del LIBRO

6  número 132              , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del articulo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista




F 001362069

y les confieren facultades suficientes para suscribir el documento adjunto,

doy fe.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50

## NOVENA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "<u>MUTUANTE</u>"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "<u>MUTUARIO</u>"), por otra parte; y

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, ambos en carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, (el "<u>FIADOR</u>")

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "<u>Partes</u>"; y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, Quinta Enmienda del 30 de Abril de 2009, Sexta Enmienda del 24 de Agosto de 2009, Séptima Enmienda del 17 de Septiembre de 2009 y Octava Enmienda del 21 Diciembre de 2009, cuyas copias se adjuntan a la presente como **Anexo A** (el "<u>Contrato Marco</u>"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Novena Enmienda.

(b) Que en cumplimiento de la Cláusula Sexta Bis, introducida al Contrato Marco por la Tercer Enmienda suscripta entre las Partes con fecha 28 de Noviembre de 2008, el MUTUARIO se obligó a entregar y mantener Warrants endosados a favor del MUTUANTE por un monto equivalente al veinticinco por ciento (25 %) como mínimo, de la Línea de Crédito Adeudada.

(c) Que es intención del MUTUARIO disponer de la mercadería representada por algunos –no todos- de los Warrants antes mencionados, por lo cual solicita al MUTUANTE el reemplazo de los mismos por otros warrants.

(d) A su vez, y no obstante lo mencionado en el Considerando (b) anterior, el MUTUARIO solicita al MUTUANTE la liberación parcial de la garantía constituida por Warrants.

(e) Que el MUTUANTE estaría dispuesto a aceptar el reemplazo de parte de los mencionados Warrants, siempre y cuando los "Nuevos Warrants" entregados por el MUTUARIO, sean por igual valor y mercadería de similares características a los que se reemplazan y que los mismos sean entregados a los mismos fines y efectos que los anteriores,

(f) Asimismo el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello- ha aceptado disminuir el monto de Warrants que el MUTUARIO debe mantener vigente por el plazo del Contrato Marco.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente novena enmienda al Contrato Marco (la "Novena Enmienda"), de conformidad con las presentes Cláusulas:

1. El MUTUANTE devolverá al MUTUARIO, dentro de los 10 días de firmada la presente, el Warrant indicado a continuación – que había sido entregado por el MUTUARIO en los términos detallados en el Considerando b)- por un valor de US$ 1.312.500,00 (Dólares Estadounidenses UN MILLON TRESCIENTOS DOCE MIL QUINIENTOS CON 00/100):

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2680 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 03-JUN-2010 | 1.312.500,00 |
| Total | | | | | | 1.312.500,00 |

2.   En reemplazo del Warrant reintegrado al MUTUARIO, conforme lo indicado en la Cláusula 1 precedente, y a los mismos fines y efectos que tal Warrant reintegrado, el MUTUARIO, en este acto entrega y endosa a favor del MUTUANTE los Warrants indicados a continuación por un valor total de US$ 1.312.503,90 (Dólares Estadounidenses UN MILLON TRESCIENTOS DOCE MIL QUINIENTOS TRES CON 90/100) los cuales son recibidos de conformidad por el MUTUANTE:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 5033 P | QUESO SEMIDURO EN PROC. | BALNEARIA | 148.937 | Kgs | 03-JUN-2010 | 700.003,90 |
| 5034 P | QUESO PASTA DURA | LA CARLOTA | 87.500 | Kgs | 03-JUN-2010 | 612.500,00 |
| Total | | | | | | 1.312.503,90 |

3.   Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Novena Enmienda:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2684 V | LECHE EN POLVO | Sunchales | 148.800,00 | Kgs. | 3-jun-10 | 520.800,00 |
| 2686 V | LECHE EN POLVO | Sunchales | 149.400,00 | Kgs. | 3-jun-10 | 522.900,00 |
| Total | | | | | | 1.043.700,00 |

4.   Conforme lo anteriormente detallado, como consecuencia del reemplazo y liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO | IMPORTE U$S |
|---|---|---|---|---|---|---|
| 5033 P | QUESO SEMIDURO EN PROC. | Balnearia | 148.937,00 | Kgs | 3-jun10 | 700.003,90 |
| 5034 P | QUESO PASTA DURA | La Carlota | 87.500,00 | Kgs | 3-jun-10 | 612.500,00 |
| 2681 V | QUESO PASTA DURA | La Carlota | 187.500,00 | Kgs. | 3-jun-10 | 1.312.500,00 |
| 2683 V | QUESO PASTA DURA | La Carlota | 87.500,00 | Kgs. | 3-jun-10 | 612.500,00 |
| 2687 V | U.A.T. | Sunchales | 515.750,00 | Lts. | 3-jun-10 | 866.460,00 |
| 2688 V | U.A.T. | Sunchales | 515.750,00 | Lts. | 3-jun-10 | 866.460,00 |
| 2689 V | U.A.T. | Sunchales | 169.643,00 | Lts. | 3-jun-10 | 285.000,24 |
| 2690 V | QUESO SEMIDURO EN PROC. | Brikmann | 73.300,00 | Kgs. | 3-jun-10 | 344.510,00 |
| 2691 V | QUESO PASTA DURA | Brikmann | 46.250,00 | Kgs. | 3-jun-10 | 289.525,00 |
| 2692 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| 2693 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| 2694 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| Total | | | | | | 7.790.934,14 |

5.   Con excepción de aquellos términos expresamente modificados por la presente Novena Enmienda al Contrato Marco, todos los demás términos, condiciones y cláusulas del Contrato Marco y de las Solicitudes de Desembolso remitidas y aceptadas permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 13 días del mes de Abril de 2010.

Por: SANCOR Cooperativas Unidas Ltda
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda
Nombre: Mario Magdalena – Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre: S. Stuybosch / D. Hulle.
Carácter: apoderados

Firma/s certificada/s en Foja
Nº F00296??01
Bs. As. 13.4.2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370





F   005962331

1   Buenos Aires, **13** de      **Abril**      de **2010**  . En mi carácter de escribano

2   Titular del Registro Notarial N° 841

3   CERTIFICO: Que la/s firma/s                              que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número**191**                  del LIBRO

6   número **133**                  , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9   Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista




F 005962331

y les confieren facultades suficientes para suscribir el documento adjunto,

doy fe.-



26

27

28

29

30

31

32

33

34

35

36

37

38

39

40

41

42

43

44

45

46

47

48

49

50

## OCTAVA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3º Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Gabriel Gustavo Martinuzzi, en su carácter de Apoderado Gerencia Financiera y Administrador (Artículo 11º) respectivamente, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, (el "FIADOR")

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, Quinta Enmienda del 30 de Abril de 2009, Sexta Enmienda del 24 de Agosto de 2009 y Séptima del 19 de Septiembre de 2009 cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Octava Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de reducir el Plazo de Disponibilidad previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente sexta enmienda al Contrato Marco (la "Octava Enmienda"), de conformidad con las presentes Cláusulas:

1. Modificase de la **Cláusula PRIMERA** del Contrato Marco la siguiente definición:



*"Plazo de Disponibilidad"* significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 28 de Febrero de 2010, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

.2.    Queda expresamente establecido que a partir de la suscripción de la presente Octava Enmienda, el MUTUARIO sólo podrá solicitar Solicitudes de Desembolso bajo el Contrato Marco hasta el 28 de Febrero de 2010

3.    Con excepción de aquellos términos expresamente modificados por la presente Octava Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 21 días del mes de Diciembre de 2009.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
Nº F001322561
Bs. As. 21/12/09

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena – Gabriel Gustavo Martinuzzi
Carácter: Apoderado - Administrador

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIC TOF B.V.
Nombre:
Carácter:        Trust International Management (T.I.M.) B.V.
                 Managing Director



**ANEXO**

F 001322861

. ARANA (h;
RIBANO
. 4370

1  Buenos Aires, 21 de Diciembre de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 23 del LIBRO

6  número 128 , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Gabriel Gustavo MARTINUZZI, DNI 18.264.987, quienes justifican sus i-

10 dentidades de acuerdo al inciso a del artículo 1002 del Código Civil y ac-

11 túan: el señor Magdalena en su carácter de apoderado de la sociedad

12 "SANCOR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sun-

13 chales, Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro

14 Nacional de Cooperativas, de la Provincia de Santa Fe, Departamento

15 Castellanos, conforme lo acredita con el poder de fecha 15 de diciembre

16 de 2009, pasado al folio 1400 del Registro 640 de la ciudad de Suncha-

17 les, Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimis-

18 mo actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19 nanciera y el señor Martinuzzi en su carácter de Administrador de la so-

20 ciedad "SANCOR DO BRASIL Productos Alimenticios LTDA." lo que acre-

21 ditan con el Contrato Social de fecha 4 de agosto de 2008 debidamente

22 Legalizado y Apostillado, la documentación relacionada tengo a la vista y

23 les confieren facultades suficientes para suscribir el documento adjunto,

24 doy fe.-

25



MARTIN R. ARANA (h);
ESCRIBANO
MAT. 4370

## SEPTIMA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, Quinta Enmienda del 30 de Abril de 2009 y Sexta Enmienda del 24 de Agosto de 2009, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Séptima Enmienda.

(b) Que en cumplimiento de la Cláusula Sexta Bis, introducida al Contrato Marco por la Tercer Enmienda suscripta entre las Partes con fecha 28 de Noviembre de 2008, el MUTUARIO entregó al MUTUANTE Warrants endosados a favor de este último por un monto equivalente al veinticinco por ciento (25 %) como mínimo, de la Línea de Crédito Adeudada.

(c) Que es intención del MUTUARIO disponer de la mercadería representada por algunos –no todos- de los warrants antes mencionados, por lo cual solicita al MUTUANTE el reemplazo de los mismos por otros warrants.

(d) Que el MUTUANTE estaría dispuesto a aceptar el reemplazo de parte de los mencionados warrants, siempre y cuando los "Nuevos Warrants" entregados por el MUTUARIO, sean por igual valor y mercadería de similares características a los que se reemplazan y que los mismos sean entregados a los mismos fines y efectos que los anteriores.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente séptima enmienda al Contrato Marco (la "Séptima Enmienda"), de conformidad con las presentes Cláusulas:

**1.** El MUTUANTE devolverá al MUTUARIO, dentro de los 10 días de firmada la presente, el Warrant indicado a continuación – que había sido entregado por el MUTUARIO en los términos detallados en el Considerando b)- por un valor de US$ 633.825,00 (Dólares Estadounidenses SEISCIENTOS TREINTA Y TRES MIL OCHOCIENTOS VEINTICINCO CON 00/100):

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2021 | QUESO PASTA DURA | BRICKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| Total | | | | | | 633.825,00 |

**2.** En reemplazo del Warrant reintegrado al MUTUARIO, conforme lo indicado en la Cláusula 1 precedente, y a los mismos fines y efectos que tal Warrant reintegrado, el MUTUARIO, en este acto entrega y endosa a favor del MUTUANTE los Warrants indicados a continuación por un valor total de US$ 634.035,00 (Dólares Estadounidenses SEISCIENTOS TREINTA Y CUATRO MIL TREINTA Y CINCO CON 00/100) los cuales son recibidos de conformidad por el MUTUARIO:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 961 - EX | QUESO PASTA DURA | BRICKMANN | 46.250 | Kgs | 05-OCT-2009 | 289.525,00 |
| 962 - EX | QUESO SEMIDURO EN PROC. | BRICKMANN | 73.300 | Kgs | 05-OCT-2009 | 344.510,00 |
| Total | | | | | | 634.035,00 |

**3.** Como consecuencia del reemplazo de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:




| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2015 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2016 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2017 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2018 | QUESO PASTA DURA | LA CARLOTA | 87.500 | Kgs | 05-OCT-2009 | 612.500,00 |
| 2019 | QUESO SEMI DURO | BALNEARIA | 148.937 | Kgs | 05-OCT-2009 | 700.003,90 |
| 2020 | QUESO SEMI DURO | BALNEARIA | 102.412 | Kgs | 05-OCT-2009 | 481.336,40 |
| 2022 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2023 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2024 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2028 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2029 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2030 | LECHE UAT | SUNCHALES | 169.643 | Lt | 05-OCT-2009 | 285.000,24 |
| 2031 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2032 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2033 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 4019 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 149.400 | Kgs | 05-OCT-2009 | 522.900,00 |
| 4020 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| 4021 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| 961 | QUESO PASTA DURA | BRIKMANN | 46.250 | Kgs | 05-OCT-2009 | 289.525,00 |
| 962 | QUESO SEMIDURO EN PROC. | BRIKMANN | 73.300 | Kgs | 05-OCT-2009 | 344.510,00 |
| Total | | | | | | 12.704.270,54 |

4.   Con excepción de aquellos términos expresamente modificados por la presente Séptima Enmienda al Contrato Marco, todos los demás términos, condiciones y cláusulas del Contrato Marco y de las Solicitudes de Desembolso remitidas y aceptadas permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 17 días del mes de Septiembre de 2009.

Firma/s certificada/s en Foja
Nº E2172-64123
Bs. As. 12-9-2009

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG TOF B.V.
Nombre: J. Kumiss / S. Heymans
Carácter: apoderados.



## ANEXO

F 001258403

1  Buenos Aires, 17 de Septiembre de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                                que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 193                del LIBRO

6  número 121                    , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144.-

9  quien justifica su identidad de acuerdo al inciso a del artículo 1002 del

10  Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

12  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

13  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

14  tellanos, conforme lo acredita con el poder de fecha 23 de junio de 1993,

15  pasado al folio 638 del Registro 200 de la ciudad de Sunchales, Provincia

16  de Santa Fe, a cargo del escribano Horacio Remondino, la documenta-

17  ción relacionada tengo a la vista y le confiere facultades suficientes para

18  suscribir el documento adjunto, doy fe.-

19

20

21

22

23

24

25



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

**ANEXO**

## SEXTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

**Entre**

**IIG TOF B.V.**, representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

    (a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008 y Quinta Enmienda del 30 de Abril de 2009 cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Sexta Enmienda.

    (b) Que en cumplimiento de la Cláusula Sexta Bis, introducida al Contrato Marco por la Tercer Enmienda suscripta entre las Partes con fecha 28 de Noviembre de 2008, el MUTUARIO entregó al MUTUANTE Warrants endosados a favor de este último por un monto equivalente al veinticinco por ciento (25 %) como mínimo, de la Línea de Crédito Adeudada.

    (c) Que es intención del MUTUARIO disponer de la mercadería representada por algunos –no todos- de los warrants antes mencionados, por lo cual solicita al MUTUANTE el reemplazo de los mismos por otros Warrants.

    (d) Que el MUTUANTE estaría dispuesto a aceptar el reemplazo de parte de los mencionados warrants, siempre y cuando los "Nuevos Warrants" entregados por el MUTUARIO, sean por igual valor y mercadería de iguales características a los que se reemplazan y que los mismos sean entregados a los mismos fines y efectos que los anteriores.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente sexta enmienda al Contrato Marco (la "Sexta Enmienda"), de conformidad con las presentes Cláusulas:

    **1.** El MUTUANTE devolverá al MUTUARIO, dentro de los 10 días de firmada la presente, los Warrants indicados a continuación – que habían sido entregados por el MUTUARIO en los términos detallados en el Considerando b)- por un valor de US$ 1.564.500,00 (Dólares Estadounidenses UN MILLON QUINIENTOS SESENTA Y CUATRO MIL QUINIENTOS CON 00/100).

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2025 | LECHE EN POLVO | SUNCHALES | 249 | Tons | 05-OCT-2009 | 522.900,00 |
| 2026 | LECHE EN POLVO | SUNCHALES | 248 | Tons | 05-OCT-2009 | 520.800,00 |
| 2027 | LECHE EN POLVO | SUNCHALES | 248 | Tons | 05-OCT-2009 | 520.800,00 |
| Total | | | | | | 1.564.500,00 |

    **2.** En reemplazo de los Warrants reintegrados al MUTUARIO, conforme lo indicado en la Cláusula 1 precedente, y a los mismos fines y efectos que tales Warrants reintegrados, el MUTUARIO, en este acto entrega y endosa a favor del MUTUANTE los Warrants indicados a continuación por un valor total de US$ 1.564.500,00 (Dólares Estadounidenses UN MILLON QUINIENTOS SESENTA Y CUATRO MIL QUINIENTOS CON 00/100) los cuales son recibidos de conformidad por el MUTUANTE:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 4019 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 149.400 | Kgs | 05-OCT-2009 | 522.900,00 |
| 4020 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| 4021 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| Total | | | | | | 1.564.500,00 |



3. Como consecuencia del reemplazo de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2015 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2016 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2017 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2018 | QUESO PASTA DURA | LA CARLOTA | 87.500 | Kgs | 05-OCT-2009 | 612.500,00 |
| 2019 | QUESO SEMI DURO | BALNEARIA | 148.937 | Kgs | 05-OCT-2009 | 700.003,90 |
| 2020 | QUESO SEMI DURO | BALNEARIA | 102.412 | Kgs | 05-OCT-2009 | 481.336,40 |
| 2021 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2022 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2023 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2024 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2028 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2029 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2030 | LECHE UAT | SUNCHALES | 169.643 | Lt | 05-OCT-2009 | 285.000,24 |
| 2031 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2032 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2033 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 4019 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 149.400 | Kgs | 05-OCT-2009 | 522.900,00 |
| 4020 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| 4021 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| Total | | | | | | 12.704.060,54 |

4. Con excepción de aquellos términos expresamente modificados por la presente Sexta Enmienda al Contrato Marco, todos los demás términos, condiciones y cláusulas del Contrato Marco y de las Solicitudes de Desembolso remitidas y aceptadas permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 24 días del mes de Agosto de 2009.



Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena – Gabriel Gustavo Martinuzzi
Carácter: Apoderado - Administrador

Por: IIG TOF B.V.
Nombre: _____
Carácter: _____

A los efectos de su certificación suscribe/n nuevamente en Bs. As. a _____

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370





ACTA DE CERTIFICACION DE FIRMAS
LEY 404

F 005376323

1 Buenos Aires, 24 de Agosto de 2009. En mi carácter de escribano

2 Titular del Registro Notarial N° 841

3 CERTIFICO: Que la/s firma/s que obra/n en el

4 documento que adjunto a esta foja, cuyo requerimiento de certificación se

5 formaliza simultáneamente por ACTA número 13 del LIBRO

6 número 120 es/son puesta/s en mi presencia por la/s persona/s

7 cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8 la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144.-

9 quien justifica su identidad de acuerdo al inciso a del artículo 1002 del

10 Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11 COR COOPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales,

12 Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

13 cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

14 tellanos, conforme lo acredita con el poder de fecha 23 de junio de 1993,

15 pasado al folio 638 del Registro 200 de la ciudad de Sunchales, Provincia

16 de Santa Fe, a cargo del escribano Horacio Remondino, y en su carácter

17 de Apoderado Gerencia Financiera de la sociedad "SANCOR DO BRASIL

18 Productos Alimenticios LTDA." lo que acredita con el Contrato Social de

19 fecha 4 de agosto de 2008, con facultades suficientes siempre que actúe

20 en forma conjunta con el Sr. Gabriel Gustavo MARTINUZZI la documen-

21 tación relacionada tengo a la vista y le confiere facultades suficientes pa-

22 ra suscribir el documento adjunto, doy fe.-

23

24

25

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

  

**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404

F 005400850

1. Buenos Aires, 1 de Septiembre de 2009 . En mi carácter de escribano

2. Titular del Registro Notarial Nº 841

3. CERTIFICO: Que la/s firma/s                          que obra/n en el

4. documento que adjunto a esta foja, cuyo requerimiento de certificación se

5. formaliza simultáneamente por ACTA número 140                del LIBRO

6. número 120                . es/son puesta/s en mi presencia por la/s persona/s

7. cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8. la justificación de su identidad. Gabriel    Gustavo    MARTINUZZI,    DNI

9. 18.264.987, quien justifica su identidad de acuerdo al inciso a del artículo

10. 1002 del Código Civil y actúa en su carácter de Administrador de la so-

11. ciedad "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acre-

12. dita con el Contrato Social de fecha 4 de agosto de 2008 debidamente

13. Legalizado y Apostillado, la documentación relacionada tengo a la vista y

14. le confiere facultades suficientes para suscribir el documento adjunto,

15. doy fe.-





MARTIN D. ARANA (h)
ESCRIBANO
MAT. 4670

ANEXO

## QUINTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes"; y

CONSIDERANDO:

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008 y Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Quinta Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de extender el Plazo de Disponibilidad y el plazo máximo del cual no podrán extenderse las Fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente segunda enmienda al Contrato Marco (la "Segunda Enmienda"), de conformidad con las presentes Cláusulas:

1. Modifícase de la Cláusula PRIMERA del Contrato Marco las siguientes definiciones:

"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán indefectiblemente ser anteriores al 31 de Diciembre de 2010.

"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2010, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

2. Oportunamente, el Mutuario se compromete a notificar en el marco de la presente Quinta Enmienda, a los Deudores Cedidos, la ampliación de plazo según la Cláusula 1 y de conformidad con la Cláusula 4.8 del Contrato Marco.

3. Con excepción de aquellos términos expresamente modificados por la presente Quinta Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 30 días del mes de Abril de 2009.

A los efectos de su certificación suscribe/n _____, a _13_, P. 24,009

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Productos Alimenticios Ltda.
Nombre: Mario Magdalena – Gabriel Gustavo Martinuzzi
Carácter: Apoderado - Administrador

Firma/s certificada/s en Foja
N°. _02-0973.67.__
Bs. As. _2014/09_

Firma/s certificada/s en Foja
N°. _L_96E_287.04G___
Bs. As. 13. 7. 2009

Por: IIG TOF B.V.
Nombre:
Carácter:

MARTIN R. ARANA (h)
ESCRI...
MAT... 370

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

MARTIN R. ARANA (h)
...
MAT 4370

24
25



F 005093562

1  Buenos Aires, 30 de Abril de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 152 del LIBRO

6  número 113 , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144.-

9  quien justifica su identidad de acuerdo al inciso a del artículo 1002 del

10 Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11 COR COOPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales,

12 Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

13 cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

14 tellanos, conforme lo acredita con el poder de fecha 23 de junio de 1993,

15 pasado al folio 638 del Registro 200 de la ciudad de Sunchales, Provincia

16 de Santa Fe, a cargo del escribano Horacio Remondino, y en su carácter

17 de Apoderado Gerencia Financiera de la sociedad "SANCOR DO BRASIL

18 Productos Alimenticios LTDA." lo que acredita con el Contrato Social de

19 fecha 4 de agosto de 2008, con facultades suficientes siempre que actúe

20 en forma conjunta con el Sr. Gabriel Gustavo MARTINUZZI la documen-

21 tación relacionada tengo a la vista y le confiere facultades suficientes pa-

22 ra suscribir el documento ad junto, doy fe.-

23

24

25

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 1078



F  005265046

1  Buenos Aires, 13 de · Julio de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número156       · del LIBRO

6  número117        , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8  la justificación de su identidad.Gabriel   Gustavo   MARTINUZZI,   DNI

9  18.264.987, quien justifica su identidad de acuerdo al inciso a del artículo

10  1002 del Código Civil y actúa en su carácter de Administrador de la so-

11  ciedad "SANCOR DO BRASIL Productos Alimenticios LTDA." lo que a-

12  credita con el Contrato Social de fecha 4 de agosto de 2008 debidamente

13  Legalizado y Apostillado, la documentación relacionada tengo a la vista y

14  le confiere facultades suficientes para suscribir el documento ad junto.

15  doy fe.-

16

17

18

19

20

21                MARTIN R. ARANA (h)
                        ESCRIBANO
22                      MAT. 4370

23

24

25

## CUARTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. *S. Sleijpen et G. Herman*, en su carácter de *Attorney - in - fact, A or B* domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes"; y

CONSIDERANDO:

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 13 de Junio de 2008, Segunda Enmienda de fecha 24 de Septiembre de 2008 y Tercera Enmienda de fecha 28 de noviembre de 2008, que en copia se adjunta como Anexo A, cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Cuarta Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de incorporar la cláusula de Fianza.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Cuarta enmienda al Contrato Marco (la "Cuarta Enmienda"), de conformidad con las presentes Cláusulas:

1. Incorpórase la Cláusula SEXTA BIS del Contrato, la cual quedará redactada del siguiente modo:

**SEXTA BIS: FIADOR.**
Por este acto, SANCOR DO BRASIL Produtos Alimenticios Ltda., una compañia organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Gabriel Gustavo Martinuzzi, en su carácter de Gerencia Financiera y Administrador (Art.11) respectivamente, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, (el "FIADOR"); se constituye en fiador solidario, codeudor solidario, liso llano y principal pagador de las obligaciones y deudas asumidas por el MUTUARIO en el presente Contrato Marco, en los mismos términos y condiciones establecidas en el presente Contrato Marco para el MUTUARIO afianzado con renuncia expresa a; (1) los beneficios de división y excusión y demás normas comerciales y civiles concordantes aplicables. (2) a exigir la previa ejecución judicial o extrajudicial del MUTUARIO o ejercer cualquier defensa que pudiera hacer valer el MUTUARIO y en general a oponer toda excepción que no sea la de pago. La responsabilidad solidaria asumida por el FIADOR se extiende, asimismo, al reajuste legal o convencional y accesorios, tales como la actualización monetaria, intereses compensatorios y moratorios, debidos por el MUTUARIO. Esta fianza permanecerá vigente hasta la total cancelación por parte del MUTUARIO de todas las deudas que mantiene el MUTUARIO afianzado y cubiertas por esta garantía. Se considerará incumplimiento de las disposiciones de la presente el caso en que el FIADOR comience negociaciones con cualquier acreedor con miras a un arreglo general de pagos o quebradas, o les sea decretada la quiebra o se presente en concurso preventivo de acreedores o Acuerdo Preventivo Extrajudicial, y los mismos no sean levantados dentro de los 15 días de haber sido decretados. En dicho supuesto, en un plazo de treinta (30) días, el MUTUARIO deberá designar un nuevo garante a satisfacción del MUTUANTE. Vencido el plazo de treinta (30) días sin que el MUTUARIO haya designado un nuevo garante, el MUTUANTE puede mediante notificación al FIADOR declarar las obligaciones del MUTUARIO vencidas, y exigir el pago de todos los montos debidos por el MUTUARIO como vencidos, más todos los gastos en que hubiera incurrido el MUTUANTE. El FIADOR efectúa las siguientes declaraciones y garantías, todas las

cuales deberán mantenerse durante la vigencia del presente Contrato Marco: (a) Esta garantía constituye una obligación válida y vinculante para mí, ejecutable de acuerdo con sus respectivos términos; (b) No existe estatuto, regla, regulación u obligación contractual vinculante para mí que pudiera ser violada por la celebración, entrega o ejecución de esta garantía. A los efectos del presente el FIADOR constituye domicilio especial en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, United States of America y acepta como válidas las notificaciones que se practiquen por telegrama colacionado u otro medio auténtico. A todos los efectos legales de la presente fianza el FIADOR se somete irrevocablemente a la jurisdicción y ley aplicable establecidos en la Cláusula DECIMO TERCERA del presente, renunciando expresamente a cualquier otro fuero o jurisdicción.

2.      El FIADOR declara que el presente afianzamiento (i) constituye un acto o negocio jurídico que está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebra contando con todas las aprobaciones internas necesarias, sin violación de disposición legal, estatutaria, asamblea ni ni contractual alguna, no siendo necesaria ninguna autorización adicional. En prueba de conformidad firma al pie de la presente.

3.      Con excepción de aquellos términos expresamente modificados por la presente Cuarta Enmienda, los cuales tendrán efecto a partir del día de la fecha, todos los demás términos, condiciones y cláusulas del Contrato Marco, así como los actos ya cumplidos por las Partes en virtud de los mismos, permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de San Pablo, República del Brasil, y por el MUTUANTE en la Ciudad de Amsterdam, The Netherland, a los 28 días del mes de Noviembre de 2008.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
Nº F 0419 8373
Bs. As. 28-1-2008

Por: SANCOR DO BRASIL Produtos Alimenticios LTDA.
Nombre: Mario Magdalena y Gabriel Gustavo Martinuzzi
Carácter: Apoderado Gerencia Financiera y Administrador (Art.11)

Por: IIG Trust International Management (T.I.M.) B.V.
Nombre:
Carácter:               Managing Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

 

**ACTA DE CERTIFICACION DE FIRMAS**

F 004754828

1   Buenos Aires, 28 de  Noviembre  de 2008 . En mi carácter de escribano

2   Titular del Registro Notarial Nº 841

3   CERTIFICO: Que la/s firma/s                          que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número 138              del LIBRO

6   número 106              , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario  César  MAGDALENA,  L.E.

9   8.106.144.- quien justifica su identidad de acuerdo al inci-

10  so a del articulo 1002 del Código Civil y actúa en su ca-

11  rácter de apoderado de la sociedad "SANCOR COOPE-

12  RATIVAS UNIDAS LIMITADAS" con domicilio en Suncha-

13  les, Provincia de Santa Fe, e inscripta en la Matrícula 772

14  del Registro Nacional de Cooperativas, de la Provincia de

15  Santa Fe, Departamento Castellanos, conforme lo acredita

16  con el poder de fecha 23 de junio de 1993, pasado al folio

17  638 del Registro 200 de la ciudad de Sunchales, Provincia

18  de Santa Fe, a cargo del escribano Horacio Remondino, y

19  manifiesta actuar en su carácter de Apoderado Gerencia

20  Financiera de la sociedad "SANCOR DO BRASIL Produc-

21  tos Alimenticios LTDA." lo que acredita con el Contrato

22  Social de fecha 4 de agosto de 2008, con facultades sufi-

23  cientes siempre que actue en forma conjunta con el Sr.

24  Gabriel Gustavo MARTINUZZI la documentación relacio-

25  nada tengo a la vista y le confiere facultades suficientes



 

F 004754828

para suscribir el documento adjunto, doy fe.-



26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50

# ANEXO

**TERCERA ENMIENDA AL CONTRATO DE LINEA DE CREDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre

ING TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. _____, en su caracter de _____, domiciliado en Telestone 8 - Teleport, Naritaweg 165  P O Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "**MUTUANTE**"), por una parte y

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la Republica Argentina, con domicilio en Tacuari 202 - 3° Piso - Capital Federal, Republica Argentina, representado en este acto por el Sr. Mario Maggianna, en su caracter de apoderado (en adelante el "**MUTUARIO**"), por otra parte, y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "**Partes**", y

**CONSIDERANDO**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de linea de credito para pre-financiacion de exportaciones, enmendado con fecha 11 de Junio de 2008 y 24 de Septiembre de 2008, que en copia se adjunta como Anexo A (el "**Contrato Marco**") cuyas definiciones, terminos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Tercera Enmienda.

(b) Que sobre la base del Contrato Marco, es intencion del MUTUARIO requerir al MUTUANTE una linea de credito tipo "revolving" a fin de poder requerir, en los terminos y condiciones establecidos en el Contrato Marco, los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la Linea de Credito Adeudada alcance el monto máximo de la Linea de Credito, de modo que la Linea de Credito en todo momento resulte inferior a Dolares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(c) Que el mecanismo antes descripto permitiria al MUTUARIO requerir periodicamente el flujo de fondos requeridos para financiar sus exportaciones, pudiendo cancelar las Sumas Adeudadas, solicitar nuevos desembolsos y asi sucesivamente, siempre que el monto acumulado de toda la Linea de Credito –incluyendo la recibida con la ultima Solicitud de Desembolso remitida al MUTUANTE– resulte inferior a Dolares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00)

(d) Que en atencion a que gran parte de los Creditos Cedidos han sido aplicados al pago de las Sumas Adeudadas a la fecha, y a efectos de poder tener nuevas Solicitudes de Desembolso al MUTUANTE y garantizar debidamente las futuras Sumas Adeudadas en virtud de las mismas, es intencion del MUTUARIO ceder al MUTUANTE nuevos creditos, los cuales seran eventualmente aplicados al pago de tales Sumas Adeudadas en los terminos de la Cláusula QUINTA del Contrato Marco.

En merito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de la presente, las Partes acuerdan suscribir la presente Tercera Enmienda al Contrato Marco (la "**Tercera Enmienda**"), de conformidad con los terminos y condiciones inclusos en las siguientes clausulas.

1. Modificanse las definiciones de "Creditos Cedidos" y "Linea de Credito" de la Cláusula PRIMERA del Contrato Marco, las cuales quedaran redactadas del siguiente modo:

"Creditos Cedidos" significa los siguientes creditos del MUTUARIO contra los Deudores Cedidos

(i) todos sus creditos y derechos que le correspondan al MUTUARIO en virtud de la venta de mercaderia que el MUTUARIO realice a Fonterra derivada del contrato denominado "EXCLUSIVE PURCHASE AGREEMENT" cuya totalidad se adjunta al presente Contrato como Anexo I y las _____ complementarias y/o reemplazantes de dicho contrato adjunto como Anexo ___ con como los conocimientos de embarque, facturas y/o remitos emitidos en virtud del mismo. Se tendra asimismo como Anexo II una Declaración Jurada del MUTUARIO con el Pronóstico de Ventas minimas que el MUTUARIO estima realizar a Fonterra durante los primeros 18 (dieciocho) meses de la vigencia del presente Contrato Marco

(ii) todos los creditos y derechos que le correspondan al MUTUARIO en virtud de la venta de mercaderia que el MUTUARIO realice a BARIVEN S.A. con PDVSA derivada de la Orden de Compra (Purchase Order) N° 5100002784 de fecha 24 de Marzo de 2008 emitida por BARIVEN c/o PDVSA y aceptada por el MUTUARIO, cuya totalidad se adjunta al presente Contrato como Anexo B y sus enmiendas, cartas complementarias y/o reemplazantes de dicha orden de compra adjunta como Anexo B, asi como los conocimientos de embarque, facturas y/o remitos emitidos en virtud del mismo)

(iii) todos los creditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercaderia que el MUTUARIO realicen a Arthur Schuman y/o sus filiales y/o subsidiarias, entre el 31 de Mayo de 2008 y hasta la cancelacion total de la Linea de Credito Adeudada, incluyendo

**"CLAUSULA SEXTA BIS - WARRANTS**

**6BIS.1** Antes del 2 de Diciembre de 2008, el MUTUARIO se obliga a entregar al MUTUANTE Warrants inmobiliarios a favor de este ultimo por un monto equivalente al veintiuno por ciento (25 %) de la Linea del Credito Adeudada a la fecha respectiva y mantener los mismos, amortizandolos de ser necesario, en su las siguientes Secciones que, a por dicho monto durante toda la vigencia del presente Contrato Marco.

**6BIS.2** El MUTUARIO se obliga a que durante toda la vigencia del Contrato Marco el MUTUANTE cuente con las suma con Warrants por un monto no inferior a una suma equivalente al veintiuno por ciento (25 %) de la Linea de Credito Adeudada. Tratandose en cuenta el plazo maximo de vigencia de los warrants establecido en el art. 29 de la Ley 4643 el MUTUARIO se obliga a reemplazar periodicamente los Warrants antes del vencimiento de los 180 (ciento le hasta) dias contados desde la fecha de emision de los mismos. debiendo entregar al MUTUANTE nuevos Warrants por un monto igual o superior, en tal caso, a el de los Warrants reemplazados.

**6BIS.3** A los efectos de determinar la cantidad de mercaderia que el MUTUARIO debera depositar para la emision de los Warrants correspondientes a los Warrants se tomara en cuenta el precio de mercado a la fecha respectiva, y en el mismo procedimiento establecido considerara una condicion mas alta para el mantenimiento de la mercaderia. La mercaderia considerara sera la cantidad pri sial al mantenimiento de la mercaderia. Como condicion mas alta para el mantenimiento de la inclusa en la calidad y/o cantidad de mercaderia a ser depositada producira sin mas la Mora automatica del MUTUARIO sin necesidad de interpelacion alguna provocando la caducidad de todos los plazos con los efectos estipulados en la Clausula NOVENA del presente Contrato.

**6BIS 4** El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria (Warranteral) de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs de declarada la misma. El incumplimiento de dicha comunicación provocará la Mora automática del MUTUARIO. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

**6BIS 5** En Caso de Mora del MUTUARIO por cualquier causa que fuere, el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los demás remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de desanticular mandatos al efecto.

**6BIS 6** Será responsabilidad exclusiva y excluyente del MUTUARIO la inscripción del endoso de los Warrants en los libros de la empresa depositaria (Warranteral) de la mercadería indicada en por los mismos como así también el pago de todos los gastos y honorarios que correspondan a dicha empresa almacenadora.

5. Modifícase la Sección 7.1.22 de la Cláusula SEPTIMA del Contrato Marco las cuales quedarán redactadas del siguiente modo:

"7.1.22 Que a partir del 2 de Diciembre de 2008 y en todo momento durante la vigencia del presente Contrato el MUTUANTE contará con Warrants por una suma equivalente al veinticinco por ciento (25 %) de la Linea de Crédito Acordada."

6. Con excepción de aquellos términos expresamente modificados por la presente Tercera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, a los 28 días del mes de Noviembre de 2008 y por el MUTUANTE en la Ciudad de Amsterdam, a los 25 días del mes de Noviembre de 2008

Por SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre María Magdalena
Carácter Apoderado

Por BG TOF B.V.
Nombre ........................
Carácter
Managing Director

Firma/s certificada/s en Foja
N° F00475627
Bs. As. 28/11/08

MARTIN R. ARANA (h)
ESCRIBANO
MAT 4370



F 004754827

1. Buenos Aires, 28 de Noviembre de 2008 . En mi carácter de escribano

2. Titular del Registro Notarial N° 841

3. CERTIFICO: Que la/s firma/s, que obra/n en el

4. documento que adjunto a esta foja, cuyo requerimiento de certificación se

5. formaliza simultáneamente por ACTA número 137 del LIBRO

6. número 106 , es/son puesta/s en mi presencia por la/s persona/s

7. cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8. la justificación de su identidad. Mario   César   MAGDALENA,

9. L.E.  8.106.144.- quien justifica su i-

10. dentidad de acuerdo al inciso a del ar-

11. ticulo 1002 del Código Civil y actúa en

12. su carácter de apoderado de la sociedad

13. "SANCOR  COOPERATIVAS  UNIDAS  LIMITADAS"

14. con domicilio en Sunchales, Provincia de

15. Santa Fe, e inscripta en la Matricula 772

16. del Registro Nacional de Cooperativas, de

17. la Provincia de Santa Fe, Departamento

18. Castellanos, conforme lo acredita con el

19. poder de fecha 23 de junio de 1993, pa-

20. sado al folio 638 del Registro 200 de la

21. ciudad de Sunchales, Provincia de Santa

22. Fe, a cargo del escribano Horacio Remon-

23. dino, la documentación relacionada tengo

24. a la vista y le confiere facultades sufi-

25. cientes para suscribir el documento ad-

 

F 004754827

junto, doy fe.-

 

## SEGUNDA ENMIENDA AL CONTRATO DE LINEA DE CRÉDITO
## PARA LA PREFINANCIACION DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. [...] [...] en su carácter de [...] domiciliado en Telestone 8 - Teleport "Naritaweg" 165, 1º - 1043 BW, 1007 JB Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte, y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí Nro. 202 - Piso - Capital Federal, República Argentina, representada en este acto por la Sra. M.M. Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El **MUTUANTE** y el **MUTUARIO** conjuntamente denominados las *Partes*, y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007 las Partes suscribieron un Contrato Marco de línea de crédito para prefinanciación de exportaciones (en adelante el Contrato Marco) en virtud de la cual [...] de Junio de 2008 que en cumplimiento con el Anexo A se la adición Marco [...] ciertas definiciones, términos y condiciones de las cláusulas [...] por las [...] se [...] a la presente y se tienen por reproducidas en la presente a los fines de las operaciones que se modificaban por la presente Segunda Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco a los efectos de extender el Plazo de Disponibilidad y el plazo [...] [...] por lo cual es preciso extender las Fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentes, que constituyen y forman parte integrante de la presente, las Partes suscriben la presente Segunda Enmienda al Contrato Marco (la "Segunda Enmienda"), de conformidad con las presentes Cláusulas.

**1.** Modifícase la Cláusula **PRIMERA** del Contrato Marco, en los siguientes términos:

"Fechas de Vencimiento: significa la fecha de [...] acordada para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán en los [...] de vencimiento el 31 de Diciembre de 2009.

"Plazo de Disponibilidad: significa el plazo acordado en beneficio del MUTUARIO, que transcurre desde la fecha del presente y hasta el 31 de Diciembre de 2009, durante el cual el MUTUARIO se compromete a su otorgar el préstamo a través de Crédito a favor del MUTUARIO.

**2.** Con excepción de aquellos términos expresamente modificados por la presente Segunda Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas tendrán el debido de fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el **MUTUARIO** en la Ciudad de Buenos Aires, República Argentina, y por el **MUTUANTE** en la Ciudad de Amsterdam, a los 24 días del mes de Septiembre de 2008.

Por **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: M.M. Magdalena
Caracter: Apoderado

Por **IIG TOF B.V.**
Nombre: Trust International Management (T.I.M.) B.V.
Caracter: Managing Director

Firma certificada [...]
F 0070984?(
14-9-2008

 ACTA DE CERTIFICACION DE FIRMAS



## ANEXO

F 001088971

Buenos Aires, 24 de Septiembre de 2008  En mi carácter de escribano

Titular del Registro Notarial Nº 844

CERTIFICO, Que las firma/s                que obra/n en el

documento que adjunto a esta hoja, cuyo requerimiento de certificación se

formaliza simultáneamente por ACTA número            133 del LIBRO

número          102      , es son puestas en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

la justificación de su identidad. Mario  César  MAGDALENA.  L E   8.106.144.-

Manifiesta actuar en su carácter de apoderado de la sociedad "SANCOR

COOPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales, Pro-

vincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Nacional de

Cooperativas, de la Provincia de Santa Fe, Departamento Castellanos,

conforme lo acredita con el poder de fecha 23 de junio de 1993, pasado al

folio 638 del Registro 200 de la ciudad de Sunchales, Provincia de Santa

Fe, a cargo del escribano Horacio Remondino, la documentación relacio-

nada tengo a la vista y le confiere facultades suficientes para suscribir el

documento adjunto doy fe -





dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que el MUTUARIO emita como consecuencia de los Créditos Cedidos.

**4.3**   El MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante. A tal efecto, en adición a las notificaciones previstas en la Sección 4 de la presente Cláusula CUARTA, el MUTUARIO se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tales facturas deberán ser pagadas al MUTUANTE mediante transferencia de los fondos correspondientes a la Cuenta del Mutuante. En cada una de las facturas cedidas el MUTUARIO se compromete a incluir la siguiente leyenda (y su correspondiente traducción al idioma inglés)

"El crédito representado y contenido en la presente factura, fue cedido en garantía a HG TOF B.V., por contrato de Cesión de Créditos de fecha [.] 1280" Deberán Uds. abonar el mismo a su vencimiento mediante depósito en el Banco _____ ABA _____. Beneficiario HG TOF B.V., Cuenta N°. _____

**4.4**   Los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas de acuerdo a lo dispuesto en la Sección 5.2 del Contrato Marco.

**4.5**   La cesión de los Créditos Cedidos se efectúa sin responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos así fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula CUARTA y no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las fechas de Vencimiento correspondientes, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de cada fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

**4.6**   Como condición indispensable para la entrada en vigencia del presente Contrato Marco, el MUTUARIO se obliga a notificar en forma fehaciente esta cesión al Deudor Cedido y a obtener la aprobación expresa de este último respecto de la presente cesión mediante la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como ANEXO V. A tales fines dentro de las 48 hs. de suscripto el presente Contrato Marco, y como una de las Condiciones Precedentes, el MUTUARIO comunicará al Deudor Cedido, con intervención notarial, que los Créditos Cedidos han sido transmitidos al MUTUANTE, y que el depósito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante, debiendo el Deudor Cedido mediante su apoderado o representante legal firmar al pie de dicha notificación con constancia de aceptación de la misma. El MUTUARIO deberá entregar dicha notificación al MUTUANTE, con la aceptación del Deudor Cedido en la forma antes

9

indicada, conforme lo establecido en la condición previa a entrada en vigencia del presente Contrato Marco.

Asimismo el MUTUARIO remitirá conjuntamente vía fax una comunicación al Deudor Cedido, notificándole la cesión de los Créditos Cedidos, indicándole que el pago de los Créditos Cedidos deberá realizarse en la Cuenta del Mutuante, consignándose que se remite por correo el original de la comunicación.

Cumplido ello, el MUTUARIO a querirá a un escribano público la certificación del texto de la misma, su destinatario domicilio y su despacho mediante correo internacional por un servicio que brinde constancia de su entrega y recepción.

4.7     El presente Contrato no implica de forma alguna la transferencia por el MUTUARIO al MUTUANTE de las obligaciones emergentes de los contratos que causen los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. La falta de cumplimiento en debido tiempo y forma de las obligaciones anteriores, producirá automáticamente de pleno derecho la Mora del MUTUARIO. De igual manera se producirá la Mora de pleno derecho con los efectos antes citados en el caso de que, con prescindencia de qué hubiese o no incumplimiento por parte del MUTUARIO, el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería, que causen los Créditos Cedidos, o de cualquier forma discontinúen o terminen su relación comercial con el MUTUARIO, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

4.8     El MUTUARIO declara y garantiza al MUTUANTE:
(a)     el cobro de los Créditos Cedidos.

(b)     la forma instrumental de los mismos.

(c)     la legitimidad de los Créditos Cedidos y que los mismos son de su libre disponibilidad, sin encontrarse afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

(d)     que no se encuentra inhibido para disponer de sus bienes;

(e)     que no adeuda suma alguna al Deudor Cedido que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;

(f)     que no ha percibido suma alguna derivada de los Créditos Cedidos, y que los mismos no han sido cedidos, total ni parcialmente a persona física o jurídica alguna con anterioridad.

10

(g)     la autenticidad de todo documento que acredite la causa de los Créditos Cedidos.

(h)     que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo pero no limitado a la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.

(i)     que el monto de los Créditos Cedidos depositado en la Cuenta del Mutuante durante el Plazo de Disponibilidad será equivalente como mínimo al 110,00% del monto de la Línea de Crédito.

(j)     que todos los Créditos Cedidos serán facturados por el MUTUARIO directa y exclusivamente al Deudor Cedido, debiéndose abstener de vender o facturar los productos comprendidos en el contrato adjunto como Anexo I a terceros distintos del Deudor Cedido, aun cuando contase con el asentimiento de este último.

## CLAUSULA QUINTA: CANCELACIÓN DE LAS SUMAS ADEUDADAS. APLICACIÓN DE LOS CRÉDITOS CEDIDOS AL PAGO DE LAS SUMAS ADEUDADAS, RECURSO DEL MUTUARIO.

5.1     El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, mediante depósito de las mismas en la Cuenta del Mutuante.

5.2     A los efectos mencionados en la Sección 5.1 antes referida, los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas del siguiente modo:

(a)     Durante los meses en que NO exista Fecha de Vencimiento (entendiéndose por tales aquellos meses transcurridos entre la efectivización del desembolso requerido en cada Solicitud de Desembolso hasta el mes calendario inmediato anterior al de la Fecha de Vencimiento), el MUTUANTE transferirá los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante, dentro de las 48 hs. de acreditos, a la Cuenta del Mutuario.

(b)     Durante los meses correspondientes a las Fechas de Vencimiento (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante a cancelar la Suma Adeudada a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados durante tales meses excedan el monto de la Suma Adeudada, el

excedente será transferido al MUTUARIO de la forma indicada en el acápite (a) de la presente Sección 5.2. En el caso de que los fondos del Crédito Cedido depositados durante tales meses no fueran suficientes para cubrir el importe de la Suma Adeudada, el MUTUARIO será responsable de aportar la diferencia, y abonar así el importe total de la Suma Adeudada, bajo apercibimiento de Mora.

(c) Todos los fondos correspondientes al Crédito Cedido que sean depositados en la Cuenta del Mutuante con posterioridad a la cancelación total de la Línea de Crédito Adeudada y en exceso de la misma, serán reintegrados al MUTUARIO con la forma indicada en el acápite (a) de la presente Sección 5.2.

**5.3** En caso de Mora, la totalidad de los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante se aplicarán a cancelar toda la Línea de Crédito Adeudada y cualquier otra suma adeudada por el MUTUARIO bajo los Documentos de la Operación.

**5.4** Habida cuenta del recurso del MUTUARIO en la cesión de los Créditos Cedidos al MUTUANTE, en caso de que -por cualquier causa- el importe de los Créditos Cedidos depositados en la Cuenta del Mutuante no fuesen suficientes para cubrir el pago de la Suma Adeudada en las Fechas de Vencimiento correspondiente a un mes determinado, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

## CLÁUSULA SEXTA: MONEDA DE PAGO.

**6.1** El MUTUARIO asume que el pago total o el saldo que eventualmente adeude en virtud de los Documentos de la Operación -incluyendo el pago de la Línea de Crédito Adeudada- deberá ser necesariamente abonado con Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de la Línea de Crédito Adeudada así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago. Asimismo el MUTUANTE asume que la transferencia que debe realizar a favor del MUTUARIO de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2 a) y c) deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia el MUTUANTE expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2 a) y c), así como los intereses punitorios y demás sumas a ser transferidos al MUTUARIO en virtud del presente, se

12

cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviviente en el pago.

**6.2**   En atención a lo dispuesto en la Cláusula 6.1, en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO y en su caso el MUTUANTE deberán igualmente abonar las sumas comprometidas (la Línea de Crédito Adeudada y cualquier otra suma pagaderas en virtud de los Documentos de la Operación en Dólares para el caso del MUTUARIO y la transferencia de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) para el caso del MUTUANTE, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE o MUTUARIO, según el caso:

**6.2.(a).** Mediante la compra con Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo los Documentos de la Operación, o bien

**6.2.(b).** Mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de cualquier título en Dólares, a satisfacción expresa del MUTUANTE (o del MUTUARIO en su caso) y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE (o el MUTUARIO) en su caso en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo los Documentos de la Operación, o bien

**6.2.(c).** En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO (o al MUTUANTE en su caso) llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren para adquirir la totalidad de los Dólares adeudados por el MUTUARIO (o el MUTUANTE en su caso) bajo los Documentos de la Operación, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

13

6.2.(d). Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en las fechas de Vencimiento bajo el Contrato Marco, para la adquisición de Dólares.

6.3 Queda expresamente establecido que en cualquiera de las alternativas detalladas en 6.2.(a) a 6.2.(d), las sumas adeudadas por el MUTUARIO (o el MUTUANTE en su caso) sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante (o en la Cuenta del Mutuario en su caso), la cantidad de Dólares adeudada bajo los Documentos de la Operación.

6.4 Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 6.2.(a). a 6.2.(d) precedentes serán pagados por el MUTUARIO (o por el MUTUANTE en su caso).

6.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquel al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE (o el MUTUARIO en su caso) pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO (o el MUTUANTE en su caso) en una moneda distinta de Dólares, la obligación de pago del MUTUARIO (o del MUTUANTE en su caso) de cualquier suma adeudada bajo los Documentos de la Operación sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE (o el MUTUARIO en su caso) haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE (o el MUTUARIO en su caso) pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo los Documentos de la Operación, el MUTUARIO (o el MUTUANTE en su caso) acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE (o al MUTUARIO en su caso) de esa pérdida.

**CLAUSULA SEPTIMA; MANIFESTACIONES DECLARACIONES Y COMPROMISOS DEL MUTUARIO.**

**7.1.** Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato Marco y otorgarle la Línea de Crédito, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato Marco y hasta que el mismo se extinga, lo siguiente:

7.1.1. Que el MUTUARIO es una cooperativa de primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades

14

necesarias para llevar a cabo sus respectivas operaciones o negocios en los que participa en la actualidad; y

7.1.2.   Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a accionistas, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato Marco y/o de las Garantías; y

7.1.3.   Que el Contrato Marco y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

7.1.4.   Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

7.1.5.   Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere ni afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en el Contrato Marco, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

7.1.6.   Que la celebración, operación y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativa competente a que se hallare sometido el MUTUARIO y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, Contrato Marco u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

7.1.7.   Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad

15

de la documentación de las Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación, y

7.1.8.   Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud publica, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

7.1.9.   Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato marco, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar directa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato Marco y las Garantías, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

7.1.10.   Que el balance del MUTUARIO al 30 de Junio de 2007, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2007 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

7.1.11.   Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda, o mejor derecho alguno; y

7.1.12.   Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la Republica Argentina, y para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

7.1.13.   Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registra con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

7.1.14.   Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tiene y tendrán en todo momento el rango mas preferencial del endeudamiento del MUTUARIO.

16

7.1.15. Los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

7.1.16. Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

7.1.17. Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

7.1.18 Que cumplen y realizan todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulten aplicables

**7.2    Compromisos y Obligaciones del MUTUARIO.**

Desde la firma del presente Contrato Marco y durante todo el tiempo en que cualquier suma debida bajo el Contrato Marco se encuentre pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

7.2.1. A pagar debida y puntualmente las Sumas Adeudadas, así como los gastos referidos en la Cláusula NOVENA, de conformidad con los términos y condiciones que se establecen en el presente Contrato Marco, y

7.2.2. A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que el MUTUARIO según el caso, los disputase por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

7.2.3. A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contrato marcos, seguros, poderes,

17

prerrogativas, franquicias, interrupciones, licencias y similares necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato Marco y las Garantías; y

**7.2.4.** A no realizar actos que constituyan, o impliquen (i) una fusión, absorción o cualquier otro acto al que, conforme a cualquier ley o norma, pudieran oponerse los acreedores del MUTUARIO, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, o (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios; y

**7.2.5.** A mantener plena y oportunamente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato Marco y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo; y

**7.2.6.** A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente al MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales, (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos semestres; los estados contables (iii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE; y

**7.2.7.** A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato Marco y las Garantías, lo que implicará, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato Marco; y

18

7.2.13. A no reducir su capital, y

7.2.14. A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

7.2.15. A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato Marco, y

7.2.16. A informar al MUTUARIO, semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

7.2.17. A no a adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del **MUTUARIO**.

7.2.18. A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: **(i)** a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta del Mutuario desembolsados bajo el presente Contrato Marco, **mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas** causadas en el presente Contrato Marco suscripto con un **MUTUANTE del** exterior y **(ii)** a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3619 del BCRA y/o sus complementarias y modificatorias.

7.2.19. A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, a a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al **MUTUANTE**, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el **MUTUANTE** obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el **MUTUARIO** todos los gastos y costos que resulten en consecuencia o inherentes a dicha cesión, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

7.2.20. A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del Mutuante en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

7.2.21. A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

7.2.22. A remitir mensualmente al MUTUANTE, antes del 5° día hábil de cada mes de vigencia del presente Contrato Marco un informe con el pronóstico escrito de venta de sus productos al Deudor Cedido durante los dieciocho (18) meses subsiguientes a la fecha de entrega del informe antes referido.

20

7.2.23  A remitir al MUTUANTE- además de lo señalado en la Sección 7.2.22 precedente- copia de todo informe, documento, reporte, orden de compra, factura, y/o pronóstico de ventas que remita al Deudor Cedido y/o que reciba del Deudor Cedido.

## OCTAVA:  MORA.

**8.1**   La Mora del MUTUARIO en el cumplimiento de las obligaciones pactadas en el presente Contrato Marco -incluyendo sin limitación, el pago en tiempo y forma cualquier Suma Adeudada- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna, por el acaecimiento de cualquiera de los Eventos de Incumplimiento. Ocasionada la Mora, se producirá la caducidad de todos los plazos y el **MUTUANTE** tendrá derecho a considerar la totalidad de la Línea de Crédito Adeudada como una deuda de plazo vencido y exigir y demandar judicialmente el pago íntegro de la Línea de Crédito Adeudada, los intereses devengados y demás accesorios. Durante el tiempo que dure la Mora, el MUTUANTE tendrá derecho a percibir intereses compensatorios acumulativos pactados a una tasa de interés equivalente a la tasa implícita de cada Solicitud de fondos con más un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

**8.2**   El MUTUANTE también tendrá la facultad de considerar la Mora automática del **MUTUARIO**, considerar la Línea de Crédito Adeudada como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todas las sumas adeudadas en los siguientes **Eventos de Incumplimiento:**

(a)    si el MUTUARIO incumpliese con el pago en tiempo y forma de la Línea de Crédito Adeudada,

(b)    si un tercero pidiere la quiebra del MUTUARIO, del Deudor Cedido y/o y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)    si el MUTUARIO, el Deudor Cedido y/o pidiesen su propia quiebra, promoviese su concurso de acreedores o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial o una reestructuración de sus pasivos;

(d)    si el MUTUARIO y/o sus incurrieren en cesación de pagos, aún sin efectuarse los trámites antedichos;

(e)    Si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO y/o sus, o se decretare la inhibición general de bienes de cualquiera de el MUTUARIO, por un monto en exceso de Dólares Estadounidenses DOS MILLONES (US$

21

2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato Marco, y dichos embargos y/o medidas cautelares no fuesen levantadas, por cualquier causa que fuer, dentro de los treinta (30) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible; o

(f) si en cualquier momento durante la vigencia del presente **Contrato Marco** se comprobare la falta de veracidad parcial o total, por parte del MUTUARIO, en las declaraciones contenida en la Cláusula **SEPTIMA** del presente y/o el incumplimiento de los compromisos asumidos en dicha Cláusula y/o la tabla de veracidad en cualquiera de las aplicaciones del presente Contrato Marco;

(g) si se produjere cualquier alteración que, a criterio del **MUTUANTE**, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el presente Contrato Marco;

(h) si el MUTUARIO y/o sus modificasen de cualquier forma su **composición accionaria**;

(i) si el MUTUARIO incumpliere cualquiera de las obligaciones a su cargo establecidas en el presente Contrato Marco y/o en los **Documentos de la Operación**.

(j) si el MUTUARIO incumpliere con cualquiera de sus **obligaciones** contractuales con el Deudor Cedido;

(k) si, con prescindencia de que hubiese o no incumplimiento por parte de el MUTUARIO en el pago de las Sumas Adeudadas, el MUTUARIO y/o el Deudor Cedido terminan el contrato que causa los Créditos Cedidos;

(l) si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato Marco fueren abonadas en una moneda distinta del Dólar;

(m) Si se dictaren una o más sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se trataran medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes de el MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad de el MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato Marco, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

22

(n)     Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso

**8.3**     En adición a lo dispuesto en la Sección 8.1 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato Marco -en los términos establecidos en la Sección 8.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de las Sumas Adeudadas por parte del MUTUARIO o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las Sumas Adeudadas bajo este Contrato Marco los fondos del MUTUARIO depositados o que momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE.

## NOVENA: GASTOS.

**9.1**     Toda comisión, aranceles bancarios incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario), tributo y/o gastos que las operaciones derivadas directa y/o indirectamente de este Contrato Marco pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

**9.2**     Todos los pagos bajo el Contrato Marco deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato Marco como si tales deducciones, retenciones, o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que correspondan el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago.

23

**9.3** El MUTUARIO se obliga a cumplir en tiempo y forma -a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del presente Contrato Marco y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**9.4** El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de las operaciones relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiera surgir.

## DÉCIMA: CESIÓN DEL CONTRATO MARCO.

El MUTUANTE podrá ceder el presente Contrato Marco en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE, o sea propiedad común de este último), por cualquiera de los medios previstos en la ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

## DÉCIMO PRIMERA: VIGENCIA. INDEMNIDAD.

**11.1** El presente Contrato Marco así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/o obligaciones de las Partes bajo el presente Contrato Marco. Asimismo, aun después de cumplidas con las obligaciones emergentes del Contrato Marco, las Cláusulas NOVENA, DÉCIMO PRIMERA y DÉCIMO TERCERA sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**11.2** El MUTUARIO mantendrá indemne al MUTUANTE, y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato Marco y las Garantías y del cumplimiento de las obligaciones previstas en ellos o de la celebración de las operaciones previstos en ellos; (ii) el Crédito Cedido adeudado con más de intereses u otro de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario o procedimiento, real o potencial,

24

relacionado con cualquiera de las circunstancias previstas en esta Cláusula 11.2, **fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable, en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada**

## DÉCIMO SEGUNDA: AUTORIZACIÓN

El **MUTUARIO** autoriza expresamente al MUTUANTE a inscribir y registrar el presente **Contrato Marco y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO.**

En tal sentido, el **MUTUARIO** autoriza al MUTUANTE a presentar todo tipo de "financing statements" en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 6 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato Marco.

## DÉCIMO TERCERA: JURISDICCIÓN Y LEY APLICABLE.

13.1    El presente Contrato Marco es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

13.2    El **MUTUARIO** irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el **MUTUANTE** en relación con el presente Contrato Marco. La sentencia que se dicte contra el **MUTUARIO** en cualquiera de dichos juicios, acciones o procedimientos será considerada **definitiva y podrá ser ejecutada en cualquier otra jurisdicción**

13.3    Nada de lo dispuesto precedentemente en el presente Contrato Marco afectará el derecho del **MUTUANTE** a iniciar procedimientos legales o de cualquier otra forma demandar al **MUTUARIO** en cualquier otra jurisdicción que el **MUTUANTE** considere apropiada, incluyendo la facultad del MUTUANTE de iniciar la ejecución judicial y/o extrajudicial de los Pagarés en la República Argentina.

13.4    El **MUTUARIO** por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

25

13.5   Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, NY, USA no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en la Sección 13.8 de la presente Cláusula.

13.6   Las notificaciones efectuadas de la manera establecida en la Sección 13.4 de la presente Cláusula serán consideradas, personales, válidas, recibidas y obligatorias para el MUTUARIO.

13.7   El MUTUARIO irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE, y en especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total y/o parcial comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al Contrato Marco en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

13.8   Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato Marco deberán ser remitidas a los domicilios indicados a continuación.

MUTUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003 - USA

2) Tacuari 202 - 3º Piso - Capital Federal, República Argentina

MUTUANTE:   Telestone  8     Teleport, Naritaweg, 165, P.O. Box 7241, 1007 JE
             Amsterdam, The Netherlands

## DECIMO CUARTA: FIRMAS Y RECEPCION DE INSTRUMENTOS.
Se firman 2 (dos) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 1 (un) juego en poder del MUTUANTE y 1 (un) juego en poder del MUTUARIO.

## DECIMO QUINTA: LUGAR Y FECHA.

26

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el
MUTUANTE en Amsterdam, a los 30 días del mes de Noviembre de 2007.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
Nº
Bs. As.

Por: IIC TOF B.V.
Nombre: _____
Carácter: _____



27



ACTA DE CERTIFICACION DE FIRMAS

F 003850242

Buenos Aires, 30 de    Noviembre   de   2007 . En mi carácter de Escribano

Titular del Registro Notarial Nº 541 .

CERTIFICO, Que la/s   firma/s                               que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que o ha realiza simultáneamente por ACTA número        42          del

LIBRO numero        86 .     , m/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s  de identidad se mencionan/n a continuación y de

cuya constancia doy fe :  Mario Cesar MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS  de acuerdo a la documentación que me

exhibe y tiene factultades suficientes para suscribir el documento ad-

junto

ANEXO I:
COPIA "Exclusive Purchase Agreement"

28

ANEXO II
Declaración Jurada con Pronóstico de ventas Mínimas del MUTUARIO

ANEXO III

Modelo de Pagaré (en pesos)

Buenos Aires, __ de _____ de 200_

US$ _____

A la vista, por igual valor recibido, ____ ____ una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en _____ República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a _____ (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____ República Argentina, la suma neta de Dólares Estadounidenses _____ /100 (US$ _____ ), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en razón de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses (y NO en otra moneda) contra la sola presentación del mismo. Si las montos detallados en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demandara su cobro (judiciales y/o extrajudiciales), incluyendo honorarios, razonables de abogados. Si el presente Pagaré no fuera íntegramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otros pagarés que el Deudor tuviere pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor – además del capital adeudado, los intereses correspondientes a calularse a razón de una tasa del __ % anual, calculados desde la Fecha de Vencimiento hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra en paridad de altura de todas las demás obligaciones asumidas por el Deudor. La retención documentada en este Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere competente.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación.

Deudor:
Acreedor:

d) Las notificaciones efectuadas de la manera establecida en la acápite "c" del presente pagaré serán consideradas personales, válidas, remitidas y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro frente a la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier pleito, acción o procedimiento iniciado por el Acreedor, por especial, el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia o inconveniente forum respecto del tribunal que intervenga en tal acción, juicio o procedimiento y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor

30

Por: _____
Nombre: _____
Carácter: _____

**ANEXO IV**

MODELO DE SOLICITUD DE DESEMBOLSO

Buenos Aires, ___ de _____ de 2007

Sres.
IIG TOF B.V.

De nuestra consideración:

Nos dirigimos a Uds. con relación al Contrato Marco de Línea de Crédito suscripto entre Uds. y _____ con fecha ___ de 2007 (el "Contrato Marco"), cuyas definiciones, términos y condiciones resultan aplicables a la presente Solicitud de Desembolso. De conformidad con lo establecido en la Cláusula _____ del Contrato Marco, solicitamos a Uds. un desembolso de acuerdo a los siguientes términos:

(i)     El monto del desembolso solicitado mediante la presente es de US$ _____ (Dólares Estadounidenses _____ )

(ii)    La/s Fecha/s de Vencimiento del desembolso antes requerido será/n la/s siguiente/s:
        **Fecha Vto        Moneda e Importe**
        ___/___/___        US$ _____
        ___/___/___        US$ _____

(iii)   La Suma Adeudada por dicho desembolso asciende a un total de US$ _____ (Dólares Estadounidenses _____ ), compuesto del monto del desembolso con más los intereses aplicables hasta la/s Fecha/s de Vencimiento antedichas.

(iv)    Adjuntamos a la presente un Pagaré a vuestro favor pagadero a la vista, por la suma total de US$ _____ (Dólares Estadounidenses _____ )

        **Fecha Emisión      Fecha Vto        Moneda e Importe**
        ___/___/___    A la vista    US$ _____

En caso de que la presente Solicitud de Desembolso sea aprobada por Uds. les solicitamos que, dentro del Plazo de Acreditación, transfieran los fondos del desembolso requerido a la Cuenta del Mutuario indicada en el Contrato Marco.

Sin otro particular, saludamos a Uds. atentamente.

Nombre: _____
Carácter: _____

31

**ANEXO V**
**MODELO DE NOTIFICACION AL DEUDOR CEDIDO**

Buenos Aires, _____, 2007

Messrs.:
**FONTERRA CO-OPERATIVE GROUP LIMITED ("FONTERRA")**

Dear Sirs:

We address to you in order to give you notice of the Loan and Assignment Agreement dated _____ ____, 200_, executed between SANCOR COOPERATIVAS UNIDAS LTDA. ("SANCOR") and IIG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V. ("IIG TOF BV"), whereby SANCOR has assigned and transferred to IIG TOF BV, and IIG TOF BV has accepted and received all the rights and credits (both credits existing at present or credits that may exist in the future) derived from all the proceeds derived from the EXCLUSIVE PURCHASE AGREEMENT executed between FONTERRA and SANCOR on October 01st, 2007, the amendments and renewals thereof. Save for the assignment of proceeds hereinbefore mentioned, IIG TOF BV shall have no right or lien over the Products referred to in said EXCLUSIVE PURCHASE AGREEMENT, which shall remain the property of SANCOR or FONTERRA.

Therefore, SANCOR and IIG TOF BV hereby confirm that pursuant to the terms and conditions of the aforementioned Loan and Assignment Agreement all the sums that result hereinabove referred -including, without limitation, the credits derived from the invoices and other documentation that SANCOR submit to you as a consequence of said commercial transactions-, are to be fully paid to IIG TOF BV by wire transfer of the corresponding funds to the following bank account _____.

The aforementioned Assignment Agreement shall not transfer and/or modify the liability of SANCOR derived from the referred commercial transactions and business operations. Thus, SANCOR remains being fully and exclusively responsible for any and all the obligations derived thereof.

Sincerely yours,

By: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Caracter: Apoderado

By: IIG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:
Caracter:

Acknowledged and accepted

FONTERRA CO-OPERATIVE GROUP LIMITED
Name:
Capacity:

32



Fonterra Co-operative Group Limited

## Solicitor's Certificate – Internal

TO:     Emma Parsons

RE:     Purchase Agreement – Fonterra Limited and SanCor Cooperativas Unidas Limitada ("the Document")

I confirm that I have reviewed the Document from a legal perspective and that:

(a)     The Document reflects the instructions of Emma Parsons on the commercial content of the Document;

(b)     No legal risks of an important or unusual nature have been identified;

(c)     I am not aware of any legal enquiry in the circumstances of this transaction which should have been made, which has not been made;

(d)     The transaction that relates to the Document is authorised by the exercise of a delegation under Fonterra's Delegated Authorities by Mark Robins and Brian Willis is entitled to execute the Document.

(e)     To the best of my knowledge the Document does not breach any legal obligations of Fonterra Limited and complies with all relevant New Zealand laws.

The Document is therefore acceptable for execution by Fonterra Limited

Jason Sandford
Corporate Counsel
Fonterra Co-operative Group Limited

Date: 28 September 2007







FONTERRA LIMITED

SANCOR COOPERATIVAS UNIDAS LIMITADA

EXCLUSIVE PURCHASE AGREEMENT

**PRIMERA ENMIENDA AL CONTRATO DE LINEA DE CREDITO
PARA LA PRE-FINANCIACION DE EXPORTACIONES**

Entre

**ING TOP B.V.**, representada por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representada en este acto por los Sres. _____ y _____ en su carácter de _____, domiciliado en Teléstone _____, Herengracht 105, P.O. Box 1243, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE") por una parte, y

**SANCOR COOPERATIVAS UNIDAS LIMITADA** una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tarquini 202 - 3° Piso - Capital Federal, República Argentina representada en este acto por el Sr. Marcn Marquialena, en su carácter de apoderado (en adelante el "MUTUARIO") por otra parte, y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes", y

**CONSIDERANDO**

(a) Que con fecha 30 de Noviembre de 2011, las Partes suscribieron un Contrato Marco de línea de crédito para la pre-financiación de exportaciones, que en copia se adjunta como Anexo A, cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Primera Enmienda.

(b) Que el MUTUARIO ha solicitado al MUTUANTE, a través de Dolares Estadounidenses Veinticinco Millones con 00/100 US$ _____ la extensión de una nueva Linea de Crédito.

(c) Que el MUTUANTE está dispuesto a aceptar el aumento de la Linea de Crédito requerido siempre que el MUTUARIO otorgue garantias adicionales de pago, a través de si el MUTUARIO está dispuesto a ceder nuevos créditos a favor del MUTUANTE, y constituir y endosar warrants a favor del MUTUANTE.

En mérito a las consideraciones precedentes esta voluntad de las Partes acuerdan suscribir la presente Primera Enmienda al Contrato, bajo la "Primera Enmienda" de conformidad con los términos y condiciones incluidos en las siguientes clausulas:

1. Incorpórase a la Cláusula PRIMERA del Contrato Marco las siguientes definiciones

"Arthur Schuman" significa **ARTHUR SCHUMAN, INC.**, una firma organizada bajo las leyes del Estado de New Jersey, Estados Unidos de Norteamérica, con domicilio en 40 New Dutch Lane, Fairfield, NJ 07004 U.S.A.

"Fonterra" significa **FONTERRA LIMITED**, una firma registrada bajo las leyes de Nueva Zelanda, con domicilio en Private Bag 93125, Auckland, New Zealand.

"HANOVER con PDVSA" significa Hanver S.A. con PDVSA Servicios, Inc., una firma organizada bajo las leyes del Estado de Jersey, Estados Unidos de Norteamérica, con domicilio en 1293 Eldridge Parkway, Houston, Texas 77077, Estados Unidos de Norteamérica.

"Warrants" significa los Warrants emitidos conforme a la Ley 9643 de la República Argentina, correspondientes a certificados de depósito en mercaderias de propiedad del MUTUARIO y otra mercaderia a satisfacción del MUTUANTE endosados por el MUTUARIO a favor del MUTUARIO por los cuales y en las condiciones establecidas en la Cláusula SEXTA bis del presente Contrato, para garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato Marco.

2. Modifícanse las definiciones de "Créditos Cedidos" y "Deudores Cedidos" de la Cláusula PRIMERA del Contrato Marco las cuales quedarán redactadas del siguiente modo:

"Creditos Cedidos" significa a los siguientes créditos del MUTUANTE contra sus Deudores Cedidos:

(a) todas las cuentas por cobrar que se generen como al MUTUANTE en virtud de la venta de mercadería que realice el MUTUARIO conforme a exportaciones del contrato denominado "LA-FISHER" que celebra a arte MUTUANTE haya adquirido al presente Contrato como Anexo A de las mercadería contratos complementarios y/o

YA (h)

reemplazantes de dichos créditos según consta como Anexo I, así como los conocimientos de embarque (si fuere) sin restricción emitidos (in virtud del mismo). Se adjunta asimismo como Anexo H una Declaración Jurada del MUTUARIO con el Pronóstico de Ventas mínimas que el MUTUARIO estima realizar a terceros durante los primeros 18 (dieciocho) meses del la vigencia del presente Contrato Marco

(ii) todas las créditos y derechos que se transmitieron al MUTUARIO en virtud de la venta de mercadería que el MUTUARIO realiza a DANAFIN S.A c/o POVSA derivada de la Orden de Compra /Purchase Order) N° 5100067264 de fecha 26 de Marzo de 2008, emitida por BARIVEN C.A /PDVSA y enajenada por el MUTUARIO, cuya fotocopia se adjunta al presente Contrato como Anexo B y / o los contratos derivados (emergentes) de dicha orden de compra adjunta como Anexo B, así como los conocimientos de embarque, facturas y/o remitos emitidos en virtud del mismo)

(iii) todos los créditos actuales y futuros que el MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realiza a Arthur Schuman y/o sus Afiliadas por hasta el plazo inferior 31 de Mayo de 2009 y hasta la cancelación total de la Línea de Crédito Adeudada, emergentes todos los derechos créditos derivados de los ofrecimientos de embarque, remitos, facturas y demás documentales emitidas en virtud de las operaciones de venta que el MUTUARIO celebra con Arthur Schuman.

"Deudores Cedidos": Son el Arthur Schuman c/o Bariven c/o BARIVEN c/o PDVSA.

"Línea de Crédito": Significa la suma de dinero de contado uno, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00)

3. Las modificaciones antes referidas implican la recuperación por parte del MUTUANTE de los créditos del MUTUARIO contra Arthur Schuman y BARIVEN c/o PDVSA precedentemente descriptos, en los términos de la Cláusula CUARTA del Contrato Marco. Consiguientemente, dentro de las 48 hs de suscripto el presente y como condición para cualquier modificación del tipo al Contrato Marco, el MUTUARIO se obliga a notificar dicha cesión a Arthur Schuman y Bariven S.A c/o PDVSA Services, Inc en los términos establecidos en la Cláusula CUARTA del contrato Marco.

4. Antes del 31 de Agosto de 2008 el MUTUARIO se compromete a entregar y endosar a favor del MUTUANTE Warrants por una suma equivalente al quince por ciento (15%) de la Línea de Crédito Adeudada Transmitida sin que dicha de la fecha antes referida, dicha garantía deberá haber aumentado al quince por ciento (15%) de modo tal que antes del 30 de Septiembre de 2008 el MUTUARIO deberá haber entregado y endosado a favor del MUTUANTE Warrants por un monto no inferior a una suma equivalente a quince por ciento (15%) de la Línea de Crédito Adeudada Consiguientemente con este incremento se incorpora como Cláusula SEXTA BIS del Contrato Marco la siguiente:

"CLAUSULA SEXTA BIS WARRANTS

6BIS.1 Antes del 31 de Septiembre de 2008, el MUTUARIO se obliga a entregar al MUTUANTE Warrants endosados a la favor 50 está suma por una monto equivalente al quince por cuanto (15%) de la Línea de Crédito Adeudada a esta fecha integrándose a mantener los mismos — incrementados en — y valores se mantienen en la siguiente Sección 6.2 por dicho monto durante la — suscrito el presente Contrato Marco

6BIS.2 El MUTUARIO se obliga a que antes del 31 de Agosto de 2008 el MUTUANTE cuente en su poder con Warrants por una monto no inferior al diez por ciento (10%) de la Línea de Crédito Adeudada y que a partir del 31 de Septiembre de 2008 y durante toda la vigencia del Contrato Marco el MUTUARIO de cuente con suficientes Warrants por un monto no inferior a una suma equivalente — un — Warrants (15%) de la Línea de Crédito Adeudada. Teniendo en cuenta el plazo máximo de vigencia de los Warrants establecido, en el art. 26 de la Ley 9642, el MUTUARIO se obliga a reemplazar periódicamente los Warrants antes del vencimiento de los 180 (ciento ochenta) días corridos desde la fecha de emisión de los mismos, debiendo entregar al MUTUANTE nuevos Warrants con su nuevo plazo de vigencia, en su caso, si en los Warrants vigentes.

6BIS.3 A fin de determinar la modalidad e integración que el MUTUARIO deberá depositar para la emisión de los certificados de depósito correspondientes a los Warrants, se tomará en cuenta el precio de mercado de dicha mercadería, vigente al momento de dicho depósito. El

2

mantenimiento de la garantía constituida por los Warrants, por los medios y en la forma precedentemente establecidas constituye una condición esencial para el mantenimiento de la presente operación Constituyendo en falta de acuerdo, que cualquier motivo que fuere, en la calidad y/o cantidad de mercadería a ser entregada produzca en sí más la Mora automática del MUTUARIO sin necesidad de interpelación alguna provocando la caducidad de todos los plazos con los efectos establecidos en la Cláusula NOVENA del presente Contrato.

**6BIS.4** El MUTUARIO declara y garantiza la titularidad de todos los datos consignados en los Warrants, y que la mercadería descrita en los mismos no se encuentra reconocerá gravamen ni restricción alguna. En caso de ejecución de la empresa depositaria (Warrantera) de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs de la misma, la misma. El incumplimiento de dicha comunicación en cuanto a la Mora automática del MUTUARIO y a todos los casos, el MUTUARIO deberá resarcir por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

**6BIS.5** En caso de falta de MUTUARIO por cualquier razón que fuere, el MUTUANTE quedará automáticamente facultado para hacer la ejecución de los Warrants en los términos de la Ley 9543 sin perjuicio de los demás remedios y acciones legales que le corresponden. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de conservación mínima al efecto.

**6BIS.6** Será responsabilidad exclusiva y única a riesgo del MUTUARIO la inscripción del endoso de los Warrants en los libros de la empresa depositaria (Warrantera) de la mercadería indicada en por los mismos como así también el pago del (2%) los gastos y honorarios que correspondan a dicha empresa depositaria.

**5** Incorpórase a la Cláusula SÉPTIMA, Sub-item 7.1, las siguientes declaraciones y garantías del MUTUARIO:

**7.1.19** Que el cliente cuenta con un Patrimonio equivalente a la suma de US$ 46.408.615,36 (Dólares estadounidenses CUARENTA Y SEIS MILLONES CUATROCIENTOS OCHO MIL SEISCIENTOS QUINCE CON 55/100)

**7.1.20** Que el Cliente cuente cuatro Fondeos operativos como mínimo a una suma equivalente al cincuenta por ciento (50%) de la Línea de Crédito.

**7.1.21** Que el Cliente cita su Valor Activos Totales invariables como mínimo a una suma equivalente al treinta por ciento (30%) de la Línea de Crédito.

**7.1.22** Que a partir del 10 de Septiembre de 2008 y en todo momento durante la vigencia del presente Contrato el MUTUANTE contará con Warrants por una suma equivalente al quince por ciento (15%) de los montos desembolsados.

**6.** Con excepción de aquellas términos expresamente introducidos por la presente Primera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco permanecen inalterados manteniendo su vigencia plena original.

Suscripto por el MUTUARIO en la ciudad de Buenos Aires, República Argentina, a los 11 días del mes de Junio de 2008, y por el MUTUANTE en la ciudad de Ámsterdam, a los 15 días del mes de Junio de 2008.

Firma/s certificada/s en Folio
N.F. 22111919 44 G.C.F.
Dr. As. El C. _____

Por SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre Mirta Magdalena
Carácter Apoderada

MARTIN R AHANA (h)
ESCRIBANO
MAT. 4924

Por _____ B.V.
Nombre _____
Carácter _____
```TI M B.V.
```

𝒮



F 004319444

Buenos Aires, 11 de Junio de 2008 . En mi carácter de Escribano

Titular del Registro Notarial Nº 961

CERTIFICO: Que la/s firma/s que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA numero 144 del

LIBRO numero 96, es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Mario Cosin MAGDALENA L E 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad "SANCOR CO-

OPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales, Provincia

de Santa Fe, e inscripta en la Matrícula 772 del Registro Nacional de Coo-

perativas de la Provincia de Santa Fe, Departamento Castellanos, con-

forme lo acredita con el poder de fecha 23 de junio de 1993, pasado al folio

638 del Registro 200 de la ciudad de Sunchales, Provincia de Santa Fe, a

cargo del escribano Horacio Remondino, la documentación relacionada

tengo a la vista y le confiere facultades suficientes para suscribir el docu-

mento adjunto .

MARTIN R AMANA (h)
ESCRIBANO
MAT. 4770

MODELO NOTIFICACION A BARIVEN

Buenos Aires, June __th 2008

Messrs
Bariven S.A., c/o PDVSA Services, Inc
Purchasing Agent (PLUG)
1293 Eldridge Parkway
Houston, Texas 77077, USA
At: _ _ _ _ _
Phone _ _ _ _
E-mail _ _ _

Dear Sirs

We address to you in order to give you notice of the Assignment Agreement June __th 2008, executed between SANCOR COOPERATIVAS UNIDAS LTDA ("SANCOR") and ING TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T I M ) B V , ("ING"), whereby SANCOR has assigned and transferred to ING and ING has accepted and received of the rights and credits derived from the PURCHASE ORDER N° S1000623194 dated March 26th 2008 corresponding to the merchandise that you have requested to SANCOR which is attached hereto as Annex I

Therefore, SANCOR and ING hereby confirm that pursuant to the terms and conditions of the aforementioned Assignment Agreement all the rights and credits derived from the purchase order hereinabove referred including the credits derived from the invoices and other documentation in the SANCOR scheme to you as a consequence of said commercial transactions, are to be fully paid to ING, and transfer of the corresponding funds to the following bank account.

BANK.                    STATE STREET (bank and trust)
ABA#                     011000028
SWIFT:                   SHSUS3311
Credit:                  WACHOVIA, CUA
Account#.                17539543
Further Credit.          ING TOF B V  Sancor CUA.
Account#                 WCN NR3,149

The aforementioned Assignment Agreement and payment instructions are irrevocable and could only be modified through a new notice signed by the same parties identified as authorized in the correspondent certifications

The aforementioned Assignment Agreement is shall not be able affect direct or in any way the validity of SANCOR derived from the relative commercial transactions and business operations. This SANCOR remains being fully and exclusively responsible for any and all the obligations derived therein

Sincerely yours,

For SANCOR COOPERATIVAS UNITAS LTDA
Nombre: Maria Magdalena
Carácter: Apoderado

Por: ING TOF B V
Nombre: _ _ _ _
Carácter: _ _ _

Acknowledged and accepted

BARIVEN S.A., C/O PDVSA SERVICES, INC.
Name: _ _ _
Capacity: _ _ _



# ANEXO

### CONTRATO DE LINEA DE CREDITO PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIC TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. ... ... ... ... ... en su carácter de _____ ., domiciliado en Telestone 8 - Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "**MUTUANTE**"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuari 202 - 3° Piso - Capital Federal, República Argentina representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "**MUTUARIO**"), por otra parte; y

EL **MUTUANTE** y el **MUTUARIO** conjuntamente denominados las "**Partes**"; y

**CONSIDERANDO:**

(a) Que el MUTUARIO esta interesado en obtener financiamiento de mediano plazo para destinarlo a la prefinanciacion de sus exportaciones.

(b) Que la satisfaccion de la necesidad de contar con financiamiento para prefinanciar las exportaciones que el MUTUARIO tiene en la actualidad, redundará en su beneficio, permitiéndole continuar con el desarrollo y ampliación de sus mercados externos;

(c) Que por las razones indicadas en el Considerando (b) anterior, y ademas, para facilitar el otorgamiento de un prestamo desde el punto de vista del riesgo crédito, el MUTUARIO esta dispuesto a afectar bienes para garantizar el repago del crédito para prefinanciar sus exportaciones.

(d) Que el MUTUANTE está dispuesto a otorgar una linea de credito de hasta Dólares Estadounidenses veinticinco millones con 00/00 (US$ 25.000.000,00) para el MUTUARIO, sujeto a los terminos y condiciones del presente Contrato, en la medida que y siempre y cuando (i) el MUTUARIO se obligue a su repago y al cumplimiento de todas las obligaciones asumidas bajo el Contrato, (ii) que las Garantias (conforme se las define mas adelante) se mantengan plenamente vigentes y exigibles hasta la expiracion del Contrato, (iii) se otorgue y perfeccione la cesion de los Créditos Cedidos (tal como se los define mas adelante)

En mérito a las consideraciones precedentemente establecidas, se celebra el presente contrato de línea de crédito, sujeto a las siguientes cláusulas y condiciones:

## PRIMERA: DEFINICIONES.

"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUANTE y/o sus Afiliadas o las del MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económica, financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato Marco (incluyendo sin limitación cualquier suspensión, condición o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina), o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrá cumplir u observar normalmente sus obligaciones bajo el presente Contrato Marco; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Condiciones Precedentes" significan las condiciones precedentes para la entrada en vigencia del Contrato Marco previstas en la Cláusula SEGUNDA.

"Contrato Marco" significa el presente contrato de línea de crédito suscripto entre las Partes.

"Créditos Cedidos" significa todos los créditos y derechos que le correspondan al MUTUARIO en virtud de la venta de mercadería que el MUTUARIO realice al Deudor Cedido derivada del contrato denominado "EXCLUSIVE PURCHASE AGREEMENT" cuya fotocopia se adjunta al presente Contrato como Anexo I (y las enmiendas, contratos complementarios y/o reemplazantes de dicho contrato adjunto como Anexo I, así como los conocimientos de embarque, facturas y/o remitos emitidos en virtud del mismo). Se adjunta asimismo como Anexo II una Declaración Jurada del MUTUARIO con el Pronóstico de Ventas mínimas que el MUTUARIO estima realizar al Deudor Cedido durante los primeros 18 (dieciocho) meses de la vigencia del presente Contrato Marco.

2

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

BANK:               Safet Street Corp f/k/a Investors Bank & Trust Company
ABA#:               011-001-438
SWIFT:              INVBUS33
Credit:             Client Funds
Account#:           509-536-305
Further Credit:     HG TOE = Sancor CUL
Account#:           07030-8420148

"Cuenta del Mutuario" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación o a la que el MUTUARIO indique al MUTUANTE en forma fehaciente:

BANCO:              Citibank N.A.
DIRECCIÓN:          New York, U.S.A
ABA:                021000089
SWIFT:              CITIUS33
Cuenta Nro.:        36976697
A NOMBRE DE:        Banco Comafi S.A. Buenos Aires Argentina
SWIFT:              QUILARRA
CHIPS:              UID 320033
A FAVOR DE:         SanCor Cooperativas Unidas Limitada
CUENTA N°:          000-0-129785
REFERENCIA:         Prefinanciación de Exportación

"Deudor Cedido" significa FONTERRA LIMITED una firma organizada bajo las leyes de Nueva Zelanda, con domicilio en Fonterra Centre, 9 Princess Street, Auckland, New Zealand.

"Documentos de la Operación" significa el presente Contrato Marco, las Solicitudes de Desembolso derivadas del mismo, los Pagarés y el contrato adjunto como Anexo I que causa los Créditos Cedidos.

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula OCTAVA, Sección #2 del Contrato Marco; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato Marco.

"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán indefectiblemente ser anteriores al 31 de Mayo de 2009.

"Garantías" significa los Pagarés y la cesión de los Créditos Cedidos.

"Línea de Crédito" significa la única línea de crédito que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses veinticinco millones con 00/100 (U$S 25.000.000,00).

"Línea de Crédito Adeudada" significa la sumatoria de todas las Sumas Adeudadas por el MUTUARIO bajo la Línea de Crédito incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula OCTAVA del presente Contrato Marco.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras aplicables a la actividad o los negocios del MUTUARIO.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Pagarés" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE, de conformidad con el formato adjunto al Contrato Marco como ANEXO III, por un monto equivalente a la Suma Adeudada en cada Solicitud de Desembolso, conforme lo establecido en la Cláusula TERCERA del Contrato Marco.

"Pesos" moneda de curso legal en la República Argentina.

"Plazo de Acreditación" significa el plazo de tres (3) Días Hábiles contados desde la fecha de recepción efectiva de la Solicitud de Desembolso.

"Plazo de Confirmacion" significa el plazo de cinco (5) días hábiles contados a partir de la fecha de acreditación de los fondos requeridos en la Cuenta del Mutuario, conforme una Solicitud de Desembolso.

"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Mayo de 2009, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

"Solicitud de Desembolso" significa el formulario sustancialmente idéntico al que se adjunta al presente en ANEXO IV, completo con todos los datos debidamente consignados, que el MUTUARIO deberá suscribir, con la firma de sus apoderados o representantes legales certificada ante escribano público.

"Sumas Adeudadas" significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Tasa de Descuento" significa la tasa de interés anual de descuento a ser pactada por las Partes en cada Solicitud de Desembolso que el MUTUANTE aplicará a cada desembolso de fondos que el MUTUARIO le solicite para calcular el monto de las Sumas Adeudadas.

## CLÁUSULA SEGUNDA: LA LÍNEA DE CRÉDITO.

### 2.1. Disponibilidad de la Línea de Crédito.

(a) Disponibilidad Condicionada. Sujeto al cumplimiento específico de cada una y todas las Condiciones Precedentes, o a que el MUTUANTE dispense expresamente y por escrito el cumplimiento de una o todas las Condiciones Precedentes, sin estar obligado a ello bajo ninguna circunstancia, el MUTUANTE se compromete durante el Plazo de Disponibilidad, a mantener disponible la Línea de Crédito a favor del MUTUARIO, la que podrá ser utilizada exclusivamente para la prefinanciación de exportaciones del MUTUARIO, en la medida de las respectivas Solicitudes de Desembolso, conforme las condiciones y el procedimiento que se establece en este Contrato Marco.

(b) Vigencia. Una vez expirado el Plazo de Disponibilidad, cesará automática e irrevocablemente -sin necesidad de notificación judicial o extrajudicial alguna- el derecho del MUTUARIO de remitir cualquier Solicitud de Desembolso al MUTUANTE, salvo que el Plazo de Disponibilidad sea prorrogado expresamente y por escrito por el MUTUANTE, a su exclusiva satisfacción, y tal decisión sea fehacientemente notificada al MUTUARIO en tiempo hábil.

(c) **Monto de los Desembolsos.** El MUTUARIO podrá requerir los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la sumatoria total de los montos consignados en las respectivas Solicitudes de Desembolso alcancen el monto de la Línea de Crédito; en consecuencia, en ningún caso y bajo ningún supuesto, el MUTUANTE estará obligado, ni se podrá interpretar que esté obligado, a desembolsar una suma mayor a o por encima de la Línea de Crédito.

2.2.    **Condiciones Precedentes al otorgamiento de la Línea de Crédito.**

La validez y vigencia de la Línea de Crédito otorgada por el MUTUANTE bajo el presente Contrato Marco está condicionada a que, a criterio razonable del MUTUANTE, (i) se cumplan y mantengan plenamente vigentes a la firma del presente Contrato Marco, todas y cada una de las siguientes Condiciones Precedentes estipuladas en beneficio exclusivo del MUTUANTE y/o (ii) el MUTUANTE deje sin efecto en forma expresa y por escrito, una, algunas o todas las Condiciones Precedentes.

(a) **Aprobaciones Societarias.** Que una certificada por escritura pública del poder general del MUTUARIO del cual surja que él los funcionarios apoderados para la suscripción de los Documentos de la Operación se encuentran suficientemente facultados para dicho acto, y

(b) **Vigencia de las Manifestaciones y Declaraciones del MUTUARIO.** Que se encuentren en plena vigencia y continúen siendo ciertas, correctas y verdaderas, todas y cada una de la manifestaciones y declaraciones efectuadas por el MUTUARIO en la Cláusula SÉPTIMA del Contrato Marco, y

(c) **Inexistencia de Cambios Materiales Adversos, Efectos Materiales Adversos o Supuestos de Incumplimiento.** Que no hubiere ocurrido ni se encontrare vigente, ni hubiere elementos fundados para prever el acaecimiento de uno o más Cambios Materiales Adversos, Efectos Materiales Adversos y/o de los Eventos de Incumplimiento (hubiere o no sido declarada la caducidad o aceleración de plazos) y que no hubiere ocurrido en conocimiento del MUTUARIO ninguna circunstancia que de cualquier forma hiciere peligrar, menoscabare o debilitare la plena vigencia, validez, plenitud, alcance, ejecutabilidad y/u oponibilidad frente a terceros de los Documentos de la Operación y de las Garantías, y

(d) **Notificación al Deudor Cedido.** Que el MUTUARIO haya notificado al Deudor Cedido la cesión del Crédito Cedido en los términos establecidos en la Sección 4.6 del presente Contrato Marco, a cuyo efecto el MUTUARIO deberá entregar al MUTUANTE el original de tal notificación recibida y aceptada por el Deudor Cedido.

**CLÁUSULA TERCERA: CONDICIONES PRECEDENTES PARA EL DESEMBOLSO.**

**3.1.** <u>Solicitud de Desembolso.</u> A fin de solicitar al MUTUANTE un desembolso bajo la Línea de Crédito, el MUTUARIO deberá enviar por medio fehaciente y a satisfacción del MUTUANTE:

(i) el original de la Solicitud de Desembolso debidamente completada y firmada por el representante legal del MUTUARIO o apoderados con facultades suficientes, con su firma certificada por escribano público argentino; cada Solicitud de Desembolso deberá indefectiblemente contener el monto del desembolso requerido, la/s Fecha/s de Vencimiento del mismo y las Sumas Adeudadas que deberá pagar al MUTUANTE en tal/es Fecha/s de Vencimiento; y

(ii) un Pagaré por un monto equivalente a las Sumas Adeudadas, debidamente suscripto por el representante legal del MUTUARIO o apoderados con facultades suficientes, a plena satisfacción del MUTUANTE, con la firma debidamente certificada por un escribano público argentino.

**3.2.** <u>Falta de Responsabilidad por Desembolsar o No Desembolsar.</u> Sin perjuicio de lo dispuesto en la presente Cláusula, el MUTUANTE no tendrá responsabilidad de ningún tipo frente al MUTUARIO, por aceptar o rechazar cualquier Solicitud de Desembolso efectivamente recibida del MUTUARIO, siempre que el rechazo sea con causa- y por consiguiente, el MUTUARIO renuncia expresa e irrevocable a promover algún reclamo contra el MUTUANTE fundado en tal circunstancia o causa.

**3.3.** <u>Trámite posterior. Desembolso.</u> Una vez recibidos los documentos de la Solicitud de Desembolso por el MUTUANTE, el MUTUANTE procederá, a verificar, a su exclusiva discreción, que toda la información y documentación en ellos contenida sea correcta y conforme al Contrato Marco. Ello no obstante, el MUTUANTE no está obligado a realizar una auditoría legal o *due diligence* de los documentos de la Solicitud de Desembolso, y por consiguiente, no será responsable por la falsedad, inexactitud, omisión y/o falta de genuinidad de la misma. Sin perjuicio de ello, de estar este de acuerdo, a su satisfacción, con los documentos de la Solicitud de Desembolso, el MUTUANTE procederá, a su exclusiva discreción y satisfacción y aun sin estar obligado a ello bajo los Documentos de la Operación, a desembolsar y depositar los fondos solicitados en la Cuenta del Mutuario dentro del Plazo de Acreditación. La aceptación por el MUTUANTE de una Solicitud de Desembolso no lo obliga a aceptar cualquier otra Solicitud de Desembolso -siempre que el rechazo sea con causa- que el MUTUARIO le pueda presentar en forma simultánea o ulteriormente a aquella.

**3.4.** <u>Confirmación.</u> Dentro del Plazo de Confirmación, el MUTUARIO deberá indefectiblemente remitir por medio fehaciente al MUTUANTE una nota confirmando la recepción de tales fondos. Sin perjuicio de ello, aun en el supuesto de que el MUTUARIO no remitiese la nota de confirmación antes referida, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de cinco (5) días corridos contados desde la finalización del

Plazo de Acreditación implicará la conformidad del MUTUARIO con el desembolso depositado en la Cuenta del Mutuario.

3.5 **Facultad Exclusiva del MUTUANTE.** En el caso en que, a exclusivo criterio del MUTUANTE, durante el Plazo de Disponibilidad ocurriera cualquier Cambio Material Adverso o Efecto Material Adverso, el MUTUANTE podrá suspender inmediatamente la tramitación de cualquier Solicitud de Desembolso cursada de conformidad con el Contrato Marco, que esté siendo verificada y evaluada por aquel, así como cualquier desembolso de fondos correspondiente a una Solicitud de Desembolso aprobada por el MUTUANTE pero cuyos fondos no hayan sido efectivamente acreditados en la Cuenta del Mutuario, sin que tal decisión genere responsabilidad alguna al MUTUANTE, renunciando en consecuencia el MUTUARIO a promover cualquier acción por responsabilidad fundada en tal causa. Ello, sin perjuicio de la facultad del MUTUANTE de dar por terminado el Contrato en tal supuesto, de conformidad con lo establecido en la cláusula OCTAVA del presente Contrato.

3.6 **Devolución al Mutuario de los Créditos Cedidos. Notificación al Deudor Cedido.** En cualquiera de los supuestos enumerados en la presente cláusula TERCERA y una vez cancelada en su totalidad la Línea de Crédito Adeudada por el MUTUARIO y dentro de las 48 hs. de sucedido ello, el MUTUANTE se obliga a notificar al Deudor Cedido que ha quedado sin efecto la Cesión del Crédito Cedido por lo que a partir de la recepción de dicha notificación, el Deudor Cedido deberá abonar al MUTUARIO el monto de los Créditos Cedidos.

## CLÁUSULA CUARTA: CESIÓN DE CRÉDITOS.

4.1    En garantía de pago de la Línea de Crédito Adeudada y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO bajo los Documentos de la Operación, y como medio de pago de las Sumas Adeudadas conforme lo establecido en la Cláusula 5.2 del Contrato Marco, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. La referida cesión comprende todos los derechos y acciones que posee el MUTUARIO y le corresponden respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de las obligaciones contractuales con el Deudor Cedido de las cuales surjan los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

4.2    El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE,

8

**PARTIES:**

(1)   FONTERRA LIMITED of Fonterra Centre, 9 Princes Street, Auckland, New Zealand ("Fonterra"); and

(2)   SANCOR COOPERATIVAS UNIDAS LIMITADA of Tte. Gral. Richieri 15, 52322FYA, Sunchales, Santa Fe, Argentina ("SanCor")

**BACKGROUND**

1.   Fonterra manufactures dairy products and has an international marketing network and experience in the sale of dairy products.

2.   SanCor wishes to utilise the experience and services of Fonterra for sale in the international market of certain dairy products produced by SanCor.

3.   SanCor has agreed to sell to Fonterra on an exclusive basis and Fonterra has agreed to purchase the Products for on-sale by Fonterra to Customers in the Territory

**THE PARTIES AGREE as follows:**

1   **Interpretation**

In this Agreement, unless the context otherwise requires, the following words and expressions shall have the following meanings:

"**Agreement**" means this agreement including all schedules and appendices hereto.

"**Associate**" means any person that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control of, the other person.   For this purpose, a person is deemed to control another person if the first such person possesses, directly or indirectly, the power to appoint a majority of the directors of the second person, or to otherwise direct or cause the direction of the management or policies of the second person, whether through the ownership of voting securities, by contract or otherwise;

"**Base Price**" means the weekly prices set by SEOP in New Zealand for Commodity Groups;

"**Business Day**" means, for the purpose of clause 16.7 (Notices) any day other than a Saturday, Sunday or Public Holiday in the country in which the notice is being served, and in all other cases means any day other than a Saturday, Sunday or Public Holiday in New Zealand or Argentina;

"Commission" means a commission of 1% of the FOB value of an Order, to a maximum value of USD40 per metric tonne and a minimum value of USD25 per metric tonne for payment terms of 30 days or less, payable by SanCor to Fonterra on all Products sold by Fonterra to Customers under this Agreement;

"Customer" means the customer to whom Fonterra sells the Products in response to an Order;

"Forecast" has the meaning set out in Schedule 1;

"Grading" means, in respect of Product, the time at which SanCor, acting in good faith, issues a "Certificate of Analysis" through SanCor's Quality Laboratory attesting to the Product meeting Specification (such SanCor Quality Laboratory being registered to issue these Certificates by the Argentina Ministry of Agriculture);

"Graded" has a corresponding meaning;

"Order" means a purchase order placed by Fonterra with SanCor for the supply of Products in accordance with clause 3;

"Products" means the products described in Schedule 1 manufactured by SanCor at its manufacturing facility and meeting a Specification acceptable to Fonterra (acting reasonably);

"Purchase Price" means the price agreed between SanCor and Fonterra in respect of a sale of the Products pursuant to an Order;

"Relationship Managers" means a relationship manager described in Schedule 1, or such other relationship managers as notified to the other party from time to time;

"Specification(s)" means the manufacturing and packaging specifications for each of the Products set out in Schedule 1 or such other specifications acceptable to Fonterra (acting reasonably), to be supplied by SanCor and as may be amended by agreement in writing from time to time;

"Term" shall have the meaning referred to in clause 2.4;

"Territory" means the Territory described in more detail in Schedule 1; and

"WACC" means weighted average cost of capital.

1.1   In this Agreement:

a.   references to clauses are to clauses of this Agreement;



b.   references to statutes shall include any statutory modification or re-enactment of the statute concerned;

c.   words and expressions in the singular shall include the plural and vice versa;

d.   the headings are for convenience only and shall be ignored in construing this Agreement;

e.   references in this Agreement to Fonterra shall include reference to its successors and permitted assigns; and

f.   all references to EXW, FOB, CFR, CIF and other delivery terms are references to those terms as defined in Incoterms 2000.

## 2   Appointment and Term

2.1   **Appointment:** SanCor hereby agrees to sell the Products to Fonterra exclusively in the Territory on the terms and subject to the conditions of this Agreement, and Fonterra agrees to purchase the Products on the terms and subject to the conditions of this Agreement.

2.2   **Effect of Territory:** The effect of the appointment of Fonterra as the exclusive purchaser of the Products in the Territory is that:

a.   Fonterra is entitled to sell or facilitate the sale and may engage any other person to sell or facilitate the sale of the Products in the Territory to any channel;

b.   SanCor shall not itself sell or facilitate the sale and shall not engage any other person to directly or indirectly sell or facilitate the sale of the Products to Customers in the Territory unless this has first been agreed with Fonterra in writing on a case by case basis; and

c.   SanCor shall not sell the Products to any person outside of the Territory if SanCor knows, or should have known by reasonable enquiry, or had reasonable cause to believe, that the Products would be subsequently imported or distributed or sold in the Territory.

2.3   **Enquiries from Territory:** SanCor may not sell or otherwise dispose of the Products in the Territory other than as provided in clause 2.2.b. If SanCor receives any enquiries from any potential customers in the Territory relating to the Products, SanCor shall promptly inform Fonterra of such enquiries and shall not seek to deal directly or indirectly with those potential customers with respect to the Products.

2.4   **Term:** Fonterra's appointment shall commence on 1 September 2007 and shall continue for an initial term of three years ('Term') unless earlier terminated in accordance with the terms of this Agreement. This Agreement shall thereafter continue in full force and effect until a party gives to the other not less than six months' written notice of termination.

2.5   **Simple Termination:** After the first year of the Agreement, one party ('Terminating Party') may give to the other ('Other Party') a minimum of six months written notice of termination of the Agreement, without the Other Party having any claim, right, title, property or other interest of any kind or nature. Before the Terminating Party can give notice of termination, the Terminating Party must offer, no later than six months prior to the date of termination, the right to discuss with the Other Party the reasons for the proposed non-renewal to give both parties the opportunity to discuss the

possibility of continuing this Agreement on agreed terms.

2.6 **Fonterra may sell competing products:** Nothing in this Agreement prevents or limits the right of Fonterra to be concerned or interested either directly or indirectly in the supply to Customers or any third party of any goods in the Territory which are the same as, similar to or competitive with the Products.

2.7 **Exception to Agreement:** The terms of this Agreement shall not apply to the sale or distribution of Products to LA CORPORACION DE ABASTECIMIENTO Y SERVICIOS AGRICOLAS SOCIEDAD ANONIMA ("LA CASA S.A") or any another Venezuelan entity to be supplied by SanCor under the Financial Agreement signed between SanCor and BANCO DE DESARROLLO ECONOMICO Y SOCIAL DE VENEZUELA (BANDES) in February 2007 or any other Agreement subscribed by SanCor with the Government of Venezuela through any of its entities.

3 **Forecasting, Orders and Sales**

3.1 **Forecasting procedure:** The forecasting regime set out in Schedule 1 shall apply.

3.2 **Sales:** In accepting orders from Customers, Fonterra shall take into account the Forecast of volume of Products provided by SanCor under this Agreement.

3.3 **Quantity:** Fonterra agrees to sell the entire Manufactured Volumes of Product that is available for export to the extent that such Manufactured Volumes of Product meets the Specifications for such Product.

3.4 **Delivery:** SanCor agrees to deliver the Products subject of an Order within the timeframes and by the delivery method agreed between Fonterra and the Customer, subject to SanCor reasonably being able to comply with the requirements of an Order. Where Fonterra requires delivery dates or shipping arrangements that vary from the normal practice adopted between SanCor and Fonterra, Fonterra agrees to provide sufficient advance notice to SanCor to enable SanCor to meet the requirements of the relevant Order.

3.5 **Currency:** All sales of Products under this Agreement and all payments made under this Agreement are to be made in United States Dollars unless otherwise agreed.

3.6 **Terms and conditions of sale:** SanCor acknowledges that Fonterra is not making or providing to the Customer any representation or warranty, express or implied, that the Product meets the Specification, is fit for the intended purpose or is otherwise of merchantable quality. SanCor accepts full responsibility and liability for, and agrees to fully indemnify Fonterra in respect of, any claim by a Customer or any third party that the Products sold by

Fonterra to the Customer are in breach of any statutory or contractual warranty, provided that such indemnity shall not apply to the extent that Fonterra's own negligence or breach in performing its obligations under this agreement is the direct cause of such claim, loss or damage.

3.7 **Fonterra to sell at market price:** Fonterra shall endeavour to achieve the best market price for the Products at the time of sale to the Customer having regard to, amongst other factors, Specification, quality, volume, delivery date, delivery terms, international market price ranges and other market factors in so far as the availability of the Product is advised to Fonterra with sufficient lead time. Fonterra shall keep SanCor informed of any non-standard terms of sale or unusual conditions, pricing or volumes.

3.8 **Costs:** SanCor shall be responsible for (i) liability for any additional taxes imposed by the Argentinean Government over and above those considered by this Agreement and (ii) payment of all freight, financing costs, customs and other charges, costs and expenses related to supply and delivery of the Products to a Customer pursuant to the Incoterms of an Order.

4 **Commission**

4.1 **Commission Amount** SanCor agrees that Fonterra is entitled to the Commission on all Products sold by Fonterra to a Customer. The Commission will be calculated depending on the payment terms with the end customer. For payment terms of 30 days or less, Commission will be 1% of the FOB value of the Order, up to a maximum of USD40 per metric tonne, and a minimum of USD25 per metric tonne.

4.2 Notwithstanding clause 4.1, for each subsequent 30 days of payment terms on the Order, SanCor will pay Fonterra an additional 0.5% monthly on the Purchase Price

Example – in the case of an order with a purchase price of USD3000 / MT CFR with 90 day payment terms, the total commission due to Fonterra would be:

- base commission of 1% plus

- variable commission for two 30-day periods at 0.5% per 30 days

In this example, the total commission amount would be equal to USD60 / MT ((USD3000 x (1% base + 1% variable)).

4.3 In the case that the average transit time from grading date to bill of lading date is less than 30 days, Fonterra and SanCor will share the capital saving generated on a 50:50 basis. The capital saving will be calculated using SanCor's weighted average capital cost, and will be calculated on the average number of days from grading date to BOL date for all the orders

shipped within a calendar month.

Example – if a total of 2500 MT was shipped within a given calendar month, within an average of 15 days from grading date to BOL date, with a weighted average price of USD3000 / MT CFR and a SanCor WACC rate of 12%, the total additional payment due would be:

= ((15/365)*0.12*3000)/2

= USD7.39 / MT additional payment due per MT

4.4 **Payment of Commission:** On receipt by Fonterra of the Purchase Price paid by a Customer, Fonterra is entitled to deduct from that Purchase Price the Commission prior to Fonterra remitting the balance of the Purchase Price to SanCor.

5 **Payment to SanCor**

5.1 **Standard Payment Terms.** Payment will be made by Fonterra to SanCor for the Products Fonterra has purchased from SanCor pursuant to this Agreement within 30 days from bill of lading date.

5.2 **Pre-payment:** Notwithstanding the payment provisions under clause 5.1, the Parties have agreed that, as an alternative, SanCor may request a Pre-payment for the Products as soon as the Products have been Graded (the "Grading Date"), in accordance with the following provisions:

5.3 The amount of any Pre-payment shall be an amount equal to the amount of an Order or a group of Orders.

5.4 The amount of all Pre-payments made by Fonterra shall not at any one time exceed an aggregate value as agreed between both parties, or in the absence of such an agreed value, a total of USD10,000,000.00

5.5 Interest of Fonterra WACC + 2% will be charged on each Pre-payment from the date of the Pre-payment until the due date of the relevant order in accordance with the standard payment terms.

5.6 SanCor must give Fonterra not less than fourteen days notice that a Pre-payment is requested. Pre-payment requests may only be made in respect of Product which has already been manufactured at the time notice is given and that is allocated to an existing Order.

5.7 The purpose of the pre payment provision of clause 5.2 is to provide cash-flow security to SanCor in the event that, due to market conditions, stock is not rotating at the same speed of manufacturing. It would be expected that this clause would not be exercised unless a Product was held in stock for one reason or another for a period of more than 15 days from grading date.

**6   Invoicing and Documentation:**

6.1   The issuing of invoices to Customers shall be the responsibility of Fonterra.

6.2   SanCor will have responsibility to ensure that all export documentation, in compliance with the Country of Destination and Customer requirements as advised on each and every Order, is supplied to Fonterra within 15 days of the date of the relevant bill of lading.

6.3   SanCor has the right, at all times during the term of this Agreement, to request details of all final customer invoices from Fonterra

6.4   **SanCor Default:** If SanCor, without the prior written consent of Fonterra, sells or otherwise disposes of Products in the Territory other than via the direct sale of those Products to Fonterra under this Agreement then, without prejudice to Fonterra's other rights and remedies, SanCor must immediately pay to Fonterra an amount equal to the Commission that would otherwise be payable if the Products had been sold or disposed of in accordance with the terms of the Agreement.

6.5   **Storage and Insurance:** In accordance with Schedule 1, Clause 2, "Supply and Forecasting Regime", last paragraph, SanCor will be responsible for attending to all storage, and handling of the Products to be sold under this Agreement up to and including delivery to the Customer regardless of whether or not any payment has been paid to SanCor, following the Incoterms agreed on an Order. Risk of loss, damage or deterioration of the Products will be with SanCor until delivery to a Customer on the terms of the relevant Order

**7   Fonterra's Obligations**

7.1   Fonterra will:

a.   at all times during this Agreement work diligently to promote the sale of the Products.

b.   not describe itself as agent or representative of SanCor except to the extent authorised by this Agreement.

c.   not sell or facilitate the sale of any Product without SanCor's consent if Fonterra knows, or should have known by reasonable enquiry, or had reasonable cause to believe, that the Product would be subsequently distributed or sold in countries that are outside of the Territory allocated to Fonterra under this Agreement. Where Fonterra receives any enquiries from any Customers or potential Customers for the purchase of the Product outside of the Territory, Fonterra shall promptly inform SanCor of such enquiries. If a commission is to be paid on any business resulting from the

enquiry, this must be negotiated on a case by case basis.

d. conduct the business of selling the Products to Customers in an orderly and businesslike manner and in accordance with all applicable laws, regulations and requirements of any governmental or regulatory authority,

e. sell the Products in the Territory only under the brand names and trademarks of SanCor and/or any of its Associates, and

f. be responsible for and will pay for all of its own administrative costs and expenses associated with its marketing of the Products as sales agent in accordance with this Agreement;

g. provide to SanCor together with the Order the following information:

(i) terms and conditions of sale of Products,

(ii) quantity and specification of Products;

(iii) term and condition of delivery and shipment of Products, including country of destination; and

(iv) SanCor shall inform Fonterra within 4 (four) working days as from reception of the Order whether SanCor is precluded by the laws of Argentine from selling to that country of destination and/or any other legal impediment that may arise.

7.2 Fonterra will provide reasonable advice and technical assistance required to manufacture and supply the Products in accordance with the Specification. All such assistance will be at a cost to SanCor at an agreed rate on a case by case basis.

8 SanCor's Obligations

8.1 Information to facilitate sales: SanCor shall provide Fonterra with all necessary written information relevant to the sale of the Products including details of Specification, health, legal and regulatory information and approvals and such other information as Fonterra may reasonably require to carry out its obligations under this Agreement. SanCor shall ensure that all information provided to Fonterra is accurate, current and kept up to date.

8.2 No Agency: SanCor shall not describe itself as Fonterra's agent or representative for the sale of the Products in the Territory, notwithstanding that if SanCor initiates a sourcing opportunity in the Territory on behalf of Fonterra, SanCor will be entitled to a commission on such Products equivalent to the Commission.

10

8.3 **Compliance:** It shall be the sole responsibility of SanCor to ensure that:

a. the Products comply with the Specifications, and with all the Product descriptions and information provided by SanCor to Fonterra or to a Customer;

b. all documentation, labelling and other requirements to ensure the Products are properly and promptly delivered to Customers are completed;

c. the Products comply with all relevant health, agricultural, legal and regulatory requirements in the country of manufacture and in the Territory;

d. the Products comply with the requirements of a Customer's country of import where specified (including without limitation any product registrations with relevant authorities that may be required but excluding any obligations such as customs clearance where customs clearance is the responsibility of the Customer under the terms of sale);

e. all Products are fit for their intended purpose (which, unless otherwise expressly agreed by both parties, shall be fit for human consumption), and

f. all Products can be traced as to source and batch in the event of any recall issues arising and adequate Product samples (to the reasonable satisfaction of Fonterra) are kept and properly stored.

8.4 **Access to Facilities:** SanCor will allow Fonterra access to the SanCor manufacturing facilities as necessary, during the Term of the agreement to inspect those facilities to ensure that the Products are being produced in accordance with the Specifications

8.5 **Recovery of Customer Payments:** If SanCor receives all or part payment from a Customer in respect of an invoice issued by Fonterra in accordance with clause 3.2, SanCor shall immediately notify Fonterra and remit such payment to Fonterra provided however that SanCor will be able to set-off such payment with any amount owed by Fonterra to SanCor in relation to the same transaction. Failure of SanCor to comply with these obligations shall entitle Fonterra to recover any amount paid by Fonterra to SanCor in respect of such sale.

8.6 **Freight:** As required SanCor will act on behalf of Fonterra in negotiating freight for product exported from Brasil, Argentina and Uruguay.

9 **Reporting, communication**

9.1 **Reporting and communication procedure:** The parties shall agree on reasonable reports, meeting and other communication processes for the purpose of discussing sales activities, obtaining market feedback and generally reviewing performance of both parties. Each party shall participate in good faith in all such meetings.

9.2 **Quarterly meetings:** Without limiting clause 7.1, the parties will meet on a quarterly basis to discuss general performance and other such issues as may arise.

9.3 **Reports:** Fonterra will provide to SanCor quarterly reports containing such marketing and sales information as may be appropriate. These reports shall include pricing information for shipments of comparable dairy products from New Zealand.

## 10  Intellectual Property

10.1 **SanCor Trademarks:** Where the Products bear the name, logo and/or other proprietary marks of SanCor and/or any of its Associates or parent companies ("SanCor Trademarks"), Fonterra is authorised to promote and sell the Products in the SanCor packaging and by reference to the SanCor Trademarks. Fonterra will use or refer to the SanCor Trademarks only for the purpose of sale of the Products in accordance with this Agreement and acknowledges that the SanCor Trademarks remain the property of SanCor and that Fonterra's use of the SanCor Trademarks does not create any separate rights of Fonterra in the SanCor Trademarks. Fonterra will not contest the ownership of the SanCor Trademarks and not use or attempt to register the SanCor Trademarks in any country.

10.2 **Indemnity:** SanCor will indemnify Fonterra and keep Fonterra indemnified from and against any and all claims, demands, actions and proceedings ("Claims") which are made or brought against Fonterra by any third party, that the use of the SanCor Trademarks or the sale, promotion or use of the Products bearing the SanCor Trademarks infringes upon the rights of that or any other third party, provided that such indemnity shall not apply to the extent that Fonterra's own negligence or breach in performing its obligations under this Agreement is the direct cause of such claim, loss or damage.

10.3 Fonterra will indemnify SanCor and keep SanCor indemnified from and against any and all Claims which are made or brought against SanCor by any third party that the use of the Fonterra Trademarks or the sale, promotion or use of the Products bearing the Fonterra Trademarks infringes upon the rights of that or any other third party, provided that such indemnity shall not apply to the extent that SanCor's own negligence or breach in performing its obligations under this Agreement is the direct cause of such

claim, loss or damage.

10.4 **Fonterra Trademarks**: Use by Fonterra of its sales network for the purposes of this Agreement does not give SanCor any rights whatsoever in Fonterra's sales network or in any of the names, logos and/or other proprietary marks of Fonterra or its Associates ('Fonterra Trademarks'). SanCor is not authorised to use the Fonterra Trademarks in relation to any sale or promotion of the Products or any other products except with the express written agreement of Fonterra on a case by case basis. SanCor will not contest the ownership of any Fonterra Trademarks and not use or attempt to register the Fonterra Trademarks in any country.

## 11 Liability

11.1 **General Indemnity**: Each party (the 'indemnifying party') will indemnify and keep indemnified the other party from and against any direct loss, damage or liability (including legal fees and costs on a solicitor/client basis) suffered or incurred by that other party resulting from breach of this Agreement by the indemnifying party including any act, neglect or default of the indemnifying party's agents and employees.

11.2 **Excluded**: Neither party shall be liable to the other for any loss of profits or loss of income or savings or for any indirect or consequential loss or damage.

11.3 **SanCor Indemnity**: SanCor shall indemnify and hold Fonterra harmless against all claims, liabilities, damages and expenses (including legal expenses incurred in defending and/or resisting any such claim) howsoever suffered or incurred by Fonterra arising from claims from third parties relating to delivery or non delivery of the Products, the quality of the Products (including without limitation whether the Product meets or does not meet the Specification, has latent defects or is fit for purpose), the storage, handling, packaging or shipment of the Products by or on behalf of SanCor, the intended use of the Products, and any compliance with or failure to comply with the terms and conditions of the contract of sale or this Agreement, whether such claims are made during or after termination of this Agreement. Such indemnity shall not apply to the extent that Fonterra's own negligence or breach in performing its obligations under this Agreement is the direct cause of such claim, loss or damage.

11.4 **Fonterra Indemnity**: Fonterra shall indemnify and hold SanCor harmless against all claims, liabilities, damages and expenses (including legal expenses incurred in defending and/or resisting any such claim) howsoever suffered or incurred by SanCor arising from claims from third parties relating to delivery or non delivery of the Products, the quality of the

13

Products (including without limitation whether the Product meets or does not meet the Specification, has latent defects or is fit for purpose), the storage, handling, packaging or shipment of the Products by or on behalf of Fonterra, the intended use of the Products, and any compliance with or failure to comply with the terms and conditions of the contract of sale or this Agreement, whether such claims are made during or after termination of this Agreement. Such indemnity shall not apply to the extent that SanCor's own negligence or breach in performing its obligations under this Agreement is the direct cause of such claim, loss or damage.

## 12 Confidentiality

**12.1 Hold confidential:** The parties acknowledge and agree that:

a. the provision or disclosure by one party ("Disclosing party") to the other party ("Receiving party") intentionally or otherwise of marketing plans, manufacturing and technical information, pricing information and other matters arising from or relating to the supply of the Products or the business affairs of a party for the purposes or in connection with this Agreement in whatever form (the "Confidential Information") is confidential and of substantial value to and the property of the Disclosing party;

b. the Receiving party does not have any claim, right, title, property or other interest of any kind or nature in the Confidential Information, and

c. the Receiving party shall hold and maintain the Confidential Information in strictest confidence and in trust for the sole and exclusive benefit of the Disclosing party

**12.2 Specific Information:** Fonterra has been engaged by SanCor due to Fonterra's international marketing network and experience in the sale of dairy products. Fonterra will be using that experience and its customer lists and contacts in marketing the Products to its existing and new customers. It is acknowledged by SanCor that all such customer lists are Fonterra's Confidential Information

**12.3 Excluded:** For the purposes of this Agreement "Confidential Information" shall not include any information which:

a. is published or otherwise becomes generally available to the public other than as a result of disclosure by the Receiving party; and

b. becomes available to the Receiving party on a non-confidential basis from a source other than the Disclosing party provided that such source is not itself in breach of any obligation of confidentiality.

**12.4 Survival:** The obligations created under this Agreement to preserve the confidentiality of information disclosed by each party to the other shall not be

extinguished by and shall expressly survive termination of this Agreement during the period of three (3) years after the Date of Termination.

## 13  Force Majeure

13.1  **Force majeure:** Neither party shall be liable to the other for any failure to fulfil or perform any of its obligations under this Agreement, other than an obligation to pay money, if fulfilment has been delayed, hindered or interfered with, curtailed or prevented by any circumstance whatsoever which is beyond that party's reasonable control including without limitation where such failure is caused by war, civil commotion, hostility, Act of God, outbreak of disease, or governmental regulation or direction

13.2  **Notice:** A party seeking relief from its obligations under this Agreement shall forthwith give notice to the other party of such impediment and its effects on the party's ability to perform. Notice shall also be given when the ground of relief ceases. Failure to give notice makes the failing party liable in damages for loss which otherwise could have been avoided

13.3  **May terminate:** No curtailment or cessation of delivery of the Products pursuant to this clause 13 shall operate to extend this Agreement. If the curtailment or cassation of the delivery of the Products continues for more than 60 days either party may terminate this Agreement by written notice.

## 14  Dispute Resolution

14.1  Before commencing any legal or administrative proceedings in respect of any dispute arising in respect of, or in connection with, this Agreement (including the validity, breach or termination of it) ("Dispute"), a party must give the other party notice of the Dispute.

14.2  Following receipt of a notice under clause 14.1, each of the parties' Relationship Managers must meet to discuss the Dispute within ten Business Days of receipt of notice of the Dispute, with a view to achieving a resolution of the Dispute within 20 Business Days of receipt of that notice  or such longer period as the Relationship Managers agree in writing

14.3  If the Relationship Managers fail to resolve the Dispute within 20 Business Days of notice of the Dispute, either party may take such legal action, including the commencement of legal proceedings, as is deemed appropriate or necessary by it to resolve or determine the Dispute in accordance with this Agreement or at law

14.4  A party is not bound by clause 14.2 if the other party does not comply with that clause.

14.5  Nothing in clause 14.1 limits the rights of either party to seek interlocutory relief in respect of this Agreement or the other party's obligations under it.

15

## 15  Termination

15.1 **Acts of default.** Either party may terminate this Agreement immediately; if the other party:

   a.  breaches a provision of this Agreement and fails to remedy that breach within 30 days of written notice being given;

   b.  is, becomes, continues to be, or is deemed to be, insolvent or bankrupt; in spite of this, neither party does not have any other claim, right, title, property or other interest of any kind or nature;

   c.  makes an assignment for the benefit of, or enters into or makes any arrangement or composition with, its creditors; in spite of this, neither party has any other claim, right, title, property or other interest of any kind or nature;

   d.  goes into receivership or has a receiver, trustee and/or manager (including a statutory manager) appointed in respect of all or any of its property;

   e.  is the subject of any resolution passed, or any proceeding commenced, for its winding up or liquidation (other than for the purpose of a solvent reconstruction); in spite of this, neither party has any other claim, right, title, property or other interest of any kind or nature; or

   f.  assigns the benefits of this Agreement without consent of the other party except as otherwise provided herein.

## 16  Miscellaneous

16.1 **Interest:** Where any amount due from SanCor to Fonterra or its Associates is not paid by the due date, or where Fonterra is requested by SanCor to pay in advance against Product, then Fonterra may charge interest thereon from the due date of payment until payment in full or from the date of the prepayment to the date payment would ordinarily be due (as the case may be). The interest rate will be calculated according to weighted average cost of capital of Fonterra's ingredients business plus 2% at the time the payment is due or the prepayment is made.

16.2 Where any amount due from Fonterra to SanCor or its Associates is not paid by the due date, SanCor may charge interest thereon from the due date of payment until payment in full or from the date of the prepayment to the date payment would ordinarily be due (as the case may be). The interest rate will be calculated according to weighted average cost of capital of Fonterra's ingredients business plus 2% at the time the payment is due or the prepayment is made.

16.3 **Waiver:** No failure on the part of either party to exercise, and no delay by

16

either party in exercising, any right under this Agreement shall operate as a waiver thereof nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right.

**16.4 Compliance With Applicable Laws:** Each party shall comply with all applicable laws or regulations relating to the performance of its obligations under this Agreement and any transaction related to it, including without limitation, obtaining all necessary licences, permits, authorisations, and approvals required from any Governmental, provincial, or local department or agency applicable to the performance of its duties in this Agreement.

**16.5 Severable Agreement:** If any provision in this Agreement is held invalid or unenforceable in whole or in part then such invalidity or unenforceability shall affect only such provision or part thereof. To the extent legally permissible, an arrangement which reflects the original intent of the parties shall be substituted for such invalid or unenforceable provision.

**16.6 Counterparts:** This Agreement may be executed in two or more counterparts and may be executed on the basis of an exchange of facsimile copies.

**16.7 Amendments:** This Agreement may only be altered in writing signed by all the parties.

**16.8 Notices:** Any notice required to be given pursuant to this Agreement shall be in writing and shall be deemed duly given if given by personal service or sent by letter, email or facsimile addressed to the party to whom it is to be delivered at their address set out below or to such other address as that party shall have most recently notified in writing. Any notice served in accordance with this clause shall be deemed to have been duly served:

a. in the case of personal delivery, upon actual delivery to the correct address during the hours 8.30 am to 5.00 pm on a Business Day;

b. in the case of service by post 15 days after posting the same in a correctly addressed envelope;

c. in the case of transmission by fax or email on the next Business Day at the place of receipt of the fax or email.

Address for Fonterra:   Fonterra Limited
Fonterra Centre
9 Princes Street
Private Bag 92032
Auckland
New Zealand
Attn: General Counsel and Company Secretary



17



Phone: 64 9 374 9049
Fax: 54 9 379 #281

Address for SanCor: SanCor Cooperativas Unidas Limitada
Teniente Central Richieri 15
S/2322FY A Sunchales
Santa Fe
Argentine.)
Attn:
Phone:
Fax:

16.9 **Entire Agreement:** This Agreement constitutes the entire agreement between the Parties in relation to its subject matter and supersedes and cancels any previous agreements and arrangements in respect of the services. The Parties have signed an Exclusive Sales and Marketing Agreement in December 2004 ("2004 Agreement"), which they agree, is cancelled as of 1 August 2007. The parties acknowledge and agree that neither party has any claim, right or title emerging from the 2004 Agreement.

16.10 **Sub-Agency:** Fonterra may appoint a sub-agent with the prior written approval of SanCor but Fonterra shall remain fully responsible for meeting its obligations under this Agreement notwithstanding such appointment.

16.11 **Assignment:** Except as provided for in this clause, no party may assign this Agreement without the prior written consent of the other party.

16.12 **Relationship between the Parties:** Neither party shall have the authority to create or assume any obligations of any kind (whether express or implied) for or on behalf of the other party except as permitted by this Agreement. Nothing in this Agreement shall constitute or be deemed to constitute a partnership between the Parties for any purpose whatsoever.

16.13 **Governing Law:** The formation, validity, construction and performance of this Agreement shall be governed by and construed in accordance with the laws of New Zealand. The parties irrevocably agree that the Courts of New Zealand shall have the non-exclusive jurisdiction to hear and determine all disputes under or in connection with this Agreement. The parties irrevocably waive any objections to New Zealand as the forum for proceedings on the grounds of forum non-conveniens or any similar grounds.

18

SIGNED for and on behalf of

FONTERRA LIMITED

_____
Signature

KELVIN WICKHAM
Name

1st OCTOBER 2007
Date

SIGNED for and on behalf of

_____
SANCOR COOPERATIVAS UNIDAS LIMITADA
Signature

Claudio A. Giorgetti
Name

22 Octubre 2007
Date

## SCHEDULE 1

1. **PRODUCTS AND TERRITORIES**

   **Territory:**

   All countries of the world except Argentina and sales or distribution of Products to LA CORPORACION DE ABASTECIMIENTO Y SERVICIOS AGRICOLAS SOCIEDAD ANONIMA ("LA CASA S.A") or any another Venezuelan entity to be supplied by SanCor under the Financial Agreement signed between SanCor and BANCO DE DESARROLLO ECONOMICO Y SOCIAL DE VENEZUELA (BANDES) in February 2007 or any other Agreement subscribed by SanCor with the Government of Venezuela through any of its entities.

   **Products:**

   Whole Milk Powder in 25 Kgs. Bags
   Whole Milk blended with Maltodextrine or vegetable fat in 25 Kgs. Bags
   Skimmed Milk Powder in 25 Kgs. Bags
   Skimmed Milk Powder blended with Maltodextrine or vegetable fat in 25 Kgs. Bags
   Butter in 25 Kgs. Blocks
   Brine Salted cheese including Gouda by agreement
   Mozzarella
   Non gas flushed regular whole milk powder in 25kg bags

   SanCor agrees that no Product that has failed to meet the original Specification, or such other specification as may have been agreed in writing between the parties, shall be re-processed by SanCor as product to be sold to Fonterra pursuant to his Agreement.

   Products in consumer formats are specifically excluded from this Agreement, including 3.6kg loaves of gouda and mozzarella for sale via SanCor's existing distributors within Latin America.

2. **SUPPLY AND FORECASTING REGIME**

   On or before the 5th Business Day of the month, Fonterra shall provide SanCor with a rolling 18 month forecast of customer demand, by customer, by month. This forecast will include customer D1 (unconstrained demand), D1 contracted, previous AD (deducted availability) and previous AU (unconfirmed availability).

   Transparent customer payment term information will also be provided.

20

When this information is available from SAP APO Fonterra and SanCor will open the monthly process with a demand review meeting to capture variances from previous months and to set a baseline planning demand

Once baseline planning demand is agreed SanCor will have 5 Business Days to use this demand signal to make product mix decisions and will propose a customer level supply plan (availability plan)

SanCor and Fonterra will meet on 10th Business Day of the month to sign off this availability plan.

Key outcomes of SanCor-Fonterra S&OP meeting:
- Formal milk supply and market update include forecast base price information.
- KPI review and corrective actions.
- Sign off of availability plan for release to NZ S&OP and market.
- Sales plan
- Inventory targets
- Agreed base pricing for SanCor products
- Marginal pricing for unforecasted production

In the case that during the monthly meeting an agreement cannot be reached between the parties on optimal placement opportunities for Product, SanCor may, on an exceptional basis, put forward for discussion proposals of business from Third Parties. If no suitable alternative business can be found through the Fonterra network, Fonterra will provide written approval for SanCor to execute these sales directly. No such sales may proceed without prior written approval.

3. RELATIONSHIP MANAGERS

Fonterra:     Emma Parsons

SanCor:     Santiago Aon

4. PRODUCT SPECIFICATIONS

[To be completed]



**PDVSA**

BARIVEN, S.A.
c/o PDVSA Services, Inc.
Purchasing Agent (BLCO)
1293 Eldridge Parkway
Houston, Texas 77077
United States of America

**Purchase order**
5100062284

| | |
|---|---|
| DATE | :March, 26 2008 |
| CONTACT PERSON | :Jose Camacho |
| TELEPHONE USA | : (281)5886478 |
| E-MAIL ADDRESS:2815877511 |

SUPPLIER:
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km .5

DON TORCUATO
ARGENTINA
POSTAL CODE: 00000 PO BOX: 00000000        YOUR REF. AGREEMENT
SALESPERSON / PHONE: Santiago Angeli 54 4748
5300
FAX: 1147485390
PDVSA SUPPLIER CODE: J50014878

INSTRUCTIONS FOR SUPPLIERS :           DELIVERY DATE : December,30 2008
FOR SHIPPING INSTRUCTIONS CALL:

CFR -PUERTO CABELLO/LA GUAIRA, VENEZUELA
VENEZUELA

INSTRUCTIONS FOR FREIGHT FORWARDER:
PLEASE CONTACT SUPPLIER FOR INLAND SHIPPING DETAILS

TERMS OF DELIVERY : CFR PUERTO CABELLO/LA GUAINA, VE
PAYMENT TERMS.    : Payable immediately due net        CURRENCY : USD

P.O. General Comments

   PURPOSE OF CHANGE
   ****************
CHANGE ORDER NO. 01 IS ISSUED ON ZAMARCH BY JOSE CAMACHO
TO REPLACE THE P.O. 5100012347AGS000000000 AND CREATED A NEW P.O. IN SAP IN ORDER TO
PROCESS THIS PURCHASE ORDER AS SAP SYSTEM REQUIRE, IN THIS MANNER WE SOLVED THE
TECHNICAL PROBLEM WITH THE ORIGINAL PURCHASE ORDER FOR THIS SUPPLIER.

PO VALUE DOES NOT CHANGE.

   PURPOSE OF CHANGE
   ****************
CHANGE ORDER NO. 02 IS ISSUED ON 2CHANGE BY JOSE CAMACHO
TO MODIFY THE PAYMENT ACCORDING THE AGREEMENT BETWEEN SUPPLIER AND PSI FINANCE. THE
PAYMENT TERMS ARE:

15% ADVANCE PAYMENT
85% AGAINST SHIPPING DOCUMENTS OF EACH LOT SHIPPED

PO VALUE DOES NOT CHANGE

 **PDVSA**

Page: 2 of 1

Purchase Order
5100062284

SUPPLIER:
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 24
DON TORCUATO

PURPOSE OF CHANGE
****************
CHANGE ORDER NO. 01 IS ISSUED ON 12MAR08 BY JOSE CAMACHO
.* TO MODIFY THE DELIVERY TERMS FROM CFR - PUERTO CABELLO TO CFP - PUERTO CABELLO AND
LA GUAIRA PORT AT VENEZUELA.
.* TO MODIFY THE SHIPPING INSTRUCTIONS NOTE FOR THE SUPPLIER.

P.O. VALUE DOES NOT CHANGE
**************************************************

PRODUCT MUST BE PALLETIZED AND SECURELY HANDED FOR OCEAN TRANSPORT.
PRICES & TERMS PER AGREEMENT SIGNED 2.11.08 BETWEEN ARGENTINA & VENEZUELA.
DELIVERY: 10 MONTHS AND WITH THE FOLLOWING SCHEDULE
7,000 TM FROM MARCH TO JUNE 2008
11,000 TM FROM JULY TO DEC. 2008

**************************************************
.* "MANDATORY" MEANED THE TECHNICAL AND NUTRITIONAL SPECIFICATIONS,
COPY OF THE FITOSANITARY, CERTIFICATE OF ORIGIN FROM THESE PRODUCTS,
QUALITY CERTIFICATE FROM THE PRODUCTS PLANTS

.* "MANDATORY" SUPPLIER MUST SEND THE DELIVERY SCHEDULE AND PLANT LOCATIONS BY EMAIL
IN ORDER KNOW THE LOGISTICS AND COORDINATE THE INSPECTIONS BY PSI TO:
JUAN JOSE BASTARDO: EMAIL: BASTARDOJJ@PDVSA.COM
MARIA ROBLES, EMAIL: ROBLESM@PDVSA.COM
PABLO RODRIGUEZ, EMAIL: RODRIGUEZPRI@PDVSA.COM
**************************************************

**************************************************
IF SUPPLIER FAILS TO PROVIDE A P.O. ACKNOWLEDGEMENT WITHIN THE
SPECIFIED PERIOD (48 HOURS), THEN SUCH P.O. SHALL BE DEEMED
ACCEPTED BY SUPPLIER.
**************************************************

Shipping Marks
BARIVEN, S.A./PDVSA PUTPTOLA/HYM PUERTO
5100062284/XG64084713

VAL-VALENCIA
VIA :PUERTO CABELLO: VENEZUELA
PRIORITY LEVEL: 3
FIELD EXPEDITING: N
INSPECTION FLAG: Y

| ITEM | MATERIAL | QUANTITY UNIT | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|------|----------|---------------|-------------|------------|-------------|


**PDVSA**

Page: 1 of 1

SUPPLIER:
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 25
DON TORCUATO

Purchase order
5100062284

| | | | | | |
|---|---|---|---|---|---|
| 60001 | 18.000 | Metric Ton | ENRICHED POWDER | 5.000,00 | 90.000.000,00 |

Harmonized Tariff Code : 0402211900

**Material purchasing text**
ENRICHED POWDERED MILK WITH VITAMINS A AND D

IT IS THE PRODUCT OBTAINED BY ELIMINATING ALMOST ALL OF THE WATER THAT CONSTITUTES MILK.

1. REQUISITES:

* MUST BE FREE OF PRESERVATIVES, NEUTRALIZERS, TOXIC SUBSTANCES OR ANY STRANGE MATTER.

* MUST BE OF WHITE YELLOWISH COLORING AND HOMOGENEOUS THROUGHOUT, CHARACTERISTIC OF SIMILAR PRODUCTS.

* MUST BE EXEMPT OF STRANGE ODORS AND TASTE SIMILAR TO ITS NATURE.
* MUST BE A HOMOGENEOUS POWDER, NONCLUMPED, EXEMPT OF ANY
NON-INCLUSIVE MATTER, FREE OF ANY BURNED PARTICLES AND STRANGE MATTER.

2. PHYSIOCHEMICAL REQUIREMENTS.

CHARACTERISTICS LIMITS (%)
HUMIDITY MAX. 3,5
FAT MIN. 26,0  MAX. 27,0
PROTEINS MIN. 34,5
CHLORIDES MIN. 0,67  MAX. 1,11
ASH MAX. 5,9
ACIDITY (G AC.LACTIC/100G  MAX. 1,45
FAT FREE MAX. 2,0
LACTOSE MIN. 34,0
INSOLUBILITY INDEX (ML) MAX. 1,5
BURNED PARTICLES MAX. B-15N

VITAMIN A MIN. 960 (UI/100G)  MIN. 3206 (UI/100G)
VITAMIN D MIN. 8 (UI/100G)  MIN. 320 (UI/100G)

3. MICROBIOLOGIC REQUISITES:

CHARACTERISTICS (UFC/G) LIMITS

AEROBIOS MESOFILOS  MIN. 5,0 X 103  MAX. 5,0 X 104
MOLD  MIN. 1,0 X 102  MAX. 1,0 X 103
SALMONELLA IN/25G 0
COLIFORM (NMP/G) MIN. 3  MAX. 3

 **PDVSA**

SUPPLIER:
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 75
DON TORCUATO

Purchase Order
5100062284

| ITEM | MATERIAL | QUANTITY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|------|----------|----------|------|-------------|------------|-------------|

S.AUREUS MIN. 10 MAX. 1.0 X 10²
LISTERIA MONOCYTOGENES LM / 50 G
ESPORA TERMOFILE MIN. 1.0 X 10²   MAX. 1.0 X 10⁴

.................................................
LECHE EN POLVO ENTERA CON VITAMINAS A Y D.
NORMA CONSULTADA COVENIN 148:2001.

REQUISITOS:

* DEBE ESTAR LIBRE DE PRESERVATIVOS, NEUTRALIZANTES, SUSTANCIAS TOXICAS Y MATERIAS
EXTRAÑAS.

* DEBE SER DE COLOR BLANCO AMARILLENTO HOMOGENEO, CARACTERÍSTICO DEL PRODUCTO.

* DEBE ESTAR EXENTO DE OLORES Y SABORES EXTRAÑOS A LA NATURALEZA DEL MISMO.

* DEBE SER UN POLVO HOMOGENEO, AGLOMERADO, EXENTO DE GRUMOS COMPACTOS, LIBRE DE
PARTÍCULAS QUEMADAS Y DE MATERIA EXTRAÑA.
ENRICHED POWDERED MILK WITH VITAMINS A AND D

        Additional technical specs.

ENRICHED POWDERED MILK WITH VITAMINS A AND D
.................................................
..........
LECHE EN POLVO.

.................................................
LECHE EN POLVO MODIFICADA ENRIQUECIDA CON VITAMINAS & MINERALES
APTA PARA CONSUMO INFANTIL

ROTULADO: SEGUN ARTE GRAFICO SUMINISTRADO POR PDVSA.
PRESENTACION:  EN BOLSAS TRILAMINADAS DE 1 KG.

ENTREGAR: MARZO - ABRIL 2004

CARGA: APPROX. ... TM POR CONTENEDOR DE 40" DRY HIGH CUBE, PALETIZADO

## ✿ PDVSA

SUPPLIER:
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 95
DON TORCUATO

| | Purchase order |
|---|---|
| | 5100062284 |

| ITEM | MATERIAL | QUANTITY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|
| | | | | Gross Price | | 90,000,000.00 |
| | | | | Net value | | 90,000,000.00 |

**Purchase order total value**         **90,000,000.00** USD

P.O. General terms

**** DOC 80021, REV E (00 13 2007) ****

DELIVERY
10 MONTHS AMO WITH THE FOLLOWING SCHEDULE
7,000 TM FROM APRIL TO JULY 2008
11,000 TM FROM JULY TO DEC 2008

LINE ITEMS MUST SHIP COMPLETE
PARTIALS ARE ALLOWED PER SCHEDULE ABOVE

ESTIMATED WEIGHT, SELLER TO ADVISE

NEW MATERIAL

MATERIAL MUST BE IN NEW CONDITION FREE FROM DEFECTS AND SUITABLE FOR ANY SERVICE SPECIFIED, UNLESS OTHERWISE STATED

ORDER ACKNOWLEDGEMENT

SELLER MUST ACKNOWLEDGE RECEIPT OF THIS FAXED PURCHASE ORDER WITHIN 48 HOURS A R O VIA E-MAIL, AND ADVISE AND CONFIRM SHIPPING DATE, BY PROVIDING THE FOLLOWING INFORMATION

· OUR REFERENCE (PO) NUMBER
· CONFIRMED DELIVERY DATE
· YOUR REFERENCE NUMBER
· YOUR EXPEDITING CONTACT
· TELEPHONE NUMBER
· FACSIMILE NUMBER
· DRAWINGS SUBMITTAL DATE

ORDER ACKNOWLEDGEMENT MUST BE F MARKED WITH OUR P.O. NUMBER IN THE SUBJECT LINE, TO PDVSA SERVICES EXPEDITING DEPARTMENT AT DAMBOX@PCI PDV CCM



**PDVSA**

Page: 6 of 1

Purchase Order
5100062284

**SUPPLIER:**
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 2?
DON TORCUATO

**Terms of delivery**

GENERAL INSTRUCTIONS

AIR FREIGHT VIA MAIQUETIA
1. Consign Master AWB to Forwarder's office in Maiquetia
2. Consign House AWB to Firstline of shipping marks

Notify Party
Clover Internacional C.A

Address
Aduana Aerea de Maiquetia Detras del Almacen de Avensa y al lado de Aviana Carga Maiquetia, Estado Vargas
Venezuela / Fax. 01158(212)331-3780
Attn. (Operations Manager)
Telephone. 01158(212)331-7301
Email: amanda.galdona@clovergroup.com ve.ngand@pdvsa.com

Contacts
Yubelis Munoz - yubelis.munoz@clovergroup.com ve / 58(212)331-3103
Oneka Torres - oneka.torres@clovergroup.com ve / 58 212   331-3104
Liliana Cigana - Cigana@pdvsa.com / 0212 958-04 biv 8415- 958 99 04
Grama Freire  Grama@pdvsa.com / 0212-958-04 900  0414-209 98 37

OCEAN FREIGHT VIA LA GUAIRA
Consign B/L as shown on the first line of the purchase order shipping marks

Notify Party
Clover Internacional C.A

Address
Aduana Aerea de Maiquetia detras del Almacen de Avensa y al lado de Aviana Carga Maiquetia, Estado Vargas
Venezuela / Fax. 01158(212)331-3780
Attn. (Operations Manager)
Phone. 01158(212)331-3301
Email. amanda.galdona@clovergroup.com ve.vargand@pdvsa.com

Contacts
Yubelis Munoz - yubelis.munoz@clovergroup.com ve / 01158(212)331-3103
Oneka Torres oneka.torres@clovergroup.com ve / 01158(212)331-3104
Liliana Cigana Cigana@pdvsa.com / 0212 958-04 8424 15 958-99 04
Grama Freire Flores@pdvsa.com / 0212-958-04 92941=209 98 37

OCEAN FREIGHT VIA PUERTO CABELLO
Consign B/L as shown on the first line of the purchase order shipping marks

Notify Party
Clover Internacional C.A.

Address
Calle Manito con Calle Guevara,
Edificio Centro Profesional Cabia, Oficina 3
Puerto Cabello, Estado Carabobo
Venezuela / Fax. 01158(242)367-8210
Attn. Luis Vera (Customs Coordinator) cygand@pdvsa.com
Telephone  0115N(242)3367-50101281-4244

Contacts
Luis Vera - luis.vera@clovergroup.com ve / 0115NC42(L)02 50101281 4216
Ivana Vasquez - ivana.vasquez@clovergroup.com ve / 01158(242)I(e)31 157
Vanessa Diaz vanessa.diaz@clovergroup.com ve / 0115N(241)07811157
Marsha Costa Cotzanna@pdvsd.com / 0414-235 92 00
Liliana Cigana - Cigana@pdvsa.com / 0212 958-04 8424-209 98 04
Grama Freire - Grama@pdvsa.com / 0212-958-04 900 / 0414 209 98 37

EXPORT DOCUMENTS
The following shipment documents are required by the Venezuelan Government for customs clearance. All shipments must be sent on freight prepaid basis and should be contained in all shipping documents, AWB, B/L as follows.

1. B/L or AWB Consigned as shown on the first line of the purchase order shipping marks

**PDVSA**

**SUPPLIER:**
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 15
DON TORCUATO

**Purchase Order Number**
**5100062284**

**2 COMMERCIAL INVOICE**
a. Prepare one invoice per Shipment per Order
b. The invoice should be consigned as shown on the first   line of the purchase order shipment marks
c. All shipper's invoices must specify the following    information
   i. Invoice date and number
   ii. PDVSA SERVICES INC. Purchase Order Number and    Requisition Number
   iii. Delivery terms / Payment terms
   iv. Purchase Order Bank Numbers as shown in Purchase   Order
   v. Number and description of goods
   vi. Tariff Number and Spanish Description if given, for   Purchase order if more than one is given indicate   each one with the corresponding
item
   vii. Gross & Net weight of commodity
   viii.Value & Dimensions of commodity
   ix. Country of origin

**3 INSPECTION CERTIFICATES** Agriculture exporters are frequently required to provide a certificate attesting to the condition of the goods
shipped.
**4 PHYTOSANITARY CERTIFICATE** This certificate must be    issued by a certifying official (Federal, State or Local)
**5 CERTIFICATE OF ORIGIN** This certificate must be issued by a certifying official

Original Export documentation
Documents for all ocean shipments are required to be in possession of Aduanas seven (07) working days prior to the arrival of the freight
at the first Venezuela Port at Unloading Att  Llena Coperat Grana Teso

Send the required originals to
BAR-VEN - ADUANAS PDVSA AGRICOLA
CENTRO EMPRESARIAL EUROBUILDING
PISO 10 - OFIC 23
Phone 58212-958-00 90 - Fax 58212-958-00 70

Perishable Shipments
- All documents associated with perishable goods must specify  the temperature that the goods must be kept at in both Celsius and Fahrenheit
scales
- The documents should indicate directly whether the goods  should be REFRIGERATED or FROZEN (Preferred temperature should be clearly
marked on the cargo)
- Perishable and non perishable cargo must not be shipped  together on the same bill of lading as in the same consolidation. Each category of
material must be shipped and documented separately

**REQUIRED EXPORT DOCUMENTS AND DISTRIBUTION**

(OCEAN)
DOCUMENT    CUSTOMS BROKER  PSI
Original Bill of Lading     4/1
Copies of B/L      3/1
Commercial Invoice Original   4/1
Commercial Invoice copies  2/1
Export packing list 4/1
Certificates (if any)    2/1

(AIR)
DOCUMENT    CUSTOMS BROKER / PSI
Original Airway Bill   4/1
Copies of AWB 3/1
Commercial Invoice Original   4/1
Commercial Invoice copies  2/1
Export packing list 4/1
Certificates (if any)    2/1

Note  SHOW PURCHASE ORDER SHIPPING MARKS ON ALL DOCUMENTS

**PACKAGING AND LABELING**

AS OF APRIL 2006 WOODEN PACKING TO VENEZUELA MUST SHOW A MARKING THAT THE WOOD WAS EITHER TREATED WITH
METHYL BROMIDE OR HAS BEEN HEAT TREATED AND DOES NOT  PRESENT/DISPLAY EVIDENCE OF QUARANTINE PESTS  ALL WOOD
USED IN THE MANUFACTURING, PALLETIZING, CRATING, FOR BLOCKING AND BRACING OF THE MATERIAL ON THIS PURCHASE
ORDER MUST HAVE UNDERGONE SUFFICIENT PROCESSING OR TREATMENT IN COMPLIANCE WITH ISPM 15 OF THE
INTERNATIONAL PLANT PROTECTION CONVENTION (IPPC) ENTITLED "GUIDELINES FOR REGULATING WOOD PACKAGING MATERIAL
IN INTERNATIONAL TRADE"  ALL WOOD SUBJECT TO THIS REGULATION SHALL BE MARKED AS SPECIFIED IN ANNEX II OF THE
REGULATION  NON-CONFERENCE WILL RESULT IN CONFISCATION OF THE ENTIRE SHIPMENT BY VENEZUELAN PORT/IMPORT
AUTHORITIES  FOR SPECIFIC DETAILS, PLEASE REFER TO THE IPPC WEBSITE  WWW.IPPC.INT

 **PDVSA**

Page: P of 1

**SUPPLIER:**
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana Km 25
DON TORCUATO

Purchase Order
**5100062284**

ALL CARGO DESTINED TO VENEZUELA MUST BE SUFFICIENTLY PACKED TO WITHSTAND THE RIGORS OF INTERNATIONAL TRANSPORT. PACKAGING MUST RESIST THE ROUGH HANDLING DURING LOADING AND UNLOADING, COMPRESSION FROM THE OVERHEAD WEIGHT OF OTHER CONTAINERS, IMPACT AND VIBRATION DURING TRANSPORTATION, AND HIGH HUMIDITY DURING PRECOOLING, TRANSIT, AND STORAGE.

A. PACK MATERIALS IN ONE OF THE FOLLOWING WAYS:
- SHIPPING UNITS. EACH UNIT OF THE SHIP TENDERED TO A CARRIER AS NOTED AND DEFINED ON BILL OF LADING. DO NOT COMBINE DIFFERENT ORDERS IN ONE SHIPPING UNIT.
- INTERIOR PACKAGES. EACH PACKAGE COMBINED WITH OTHER PACKAGES TO MAKE UP A SHIPPING UNIT. THEY MUST CONSIST OF ONLY ONE ORDER ITEM (ANY QUANTITY)

B. PACKING LIST ATTACHED TO EXTERIOR OF AT LEAST ONE SHIPPING UNIT. ADDITIONAL PACKING LISTS MUST BE INSIDE OF ENCLOSED SHIPPING UNITS

MARKING (MUST BE PERMANENT/WATERPROOF):
A. INTERIOR PACKAGES. MARK ON TAG WITH ORDER NUMBER
- ITEM NUMBER
B. SHIPPING UNITS. MARK ON TWO ADJACENT SIDES ON TAG.
- "SHIPPING MARKS" AS SPECIFIED IN THE PURCHASE ORDER   ORDER AND ITEM NUMBER (IF A ONE-ITEM SHIPPING UNIT)
- OVERALL DIMENSIONS IN CENTIMETERS / GROSS WEIGHT IN KILOGRAMS
C. SHIPPING UNIT NUMBERS. NUMBER EACH SHIPPING UNIT BEGINNING WITH NUMBER 1 IN MULTIPLE SHIPMENTS, NUMBER UNITS CONSECUTIVELY INDICATING TOTAL UNITS IN THE LOT (I.E. 1 OF 4, 2 OF 4, ETC.) TAG PLACED ATTACH PACKING LIST TO SHIPPING UNIT NUMBER 1
D. PACKING LIST    SHOW FOR EACH ORDER ITEM LISTED
- PURCHASER'S STOCK NUMBER (IF GIVEN IN ORDER) / GOODS DESCRIPTION
E. NUMBER
- SHIPPING UNIT NUMBER (IF MORE THAN ONE) / SHIPPING   MARKS (AS SPECIFIED IN THE PURCHASE ORDER)

F. FOR PERISHABLE AND NON-PERISHABLE FOOD PRODUCTS

PLEASE INDICATE THE FOLLOWING

STORAGE TEMPERATURE_____    (INDICATE + F OR + C)

REFRIGERATED OR FROZEN ONLY (CHOOSE ONE)

PLEASE USE COLORED LABELS TO CATEGORIZE EACH CASE A THAT E

GREEN REFRIGERATED
BLUE FROZEN
RED DRY NON-PERISHABLE

PRE-SHIPMENT ADVICE
PRE-ALERT MUST SHOW DEPARTURE DATE AND PORT CITY, PORT OF DESTINATION AND ETA, VESSEL NAME AND VOYAGE NUMBER, BILL OF LADING NUMBER AND DATE, NAME OF SHIPPING LINE, PURCHASE ORDER NUMBER AND REQUISITION NUMBER (SECOND LINE OF P.O. SHIPPING MARKS)

THE FOLLOWING ATTACHMENTS MUST BE INCLUDED AS WELL
1. EXECUTED BILL OF LADING
2. EXPORT PACKING LIST AND COMMERCIAL INVOICE
3. PHYTOSANITARY CERTIFICATES
4. CERTIFICATE OF ORIGIN
5. OTHER CERTIFICATES REQUIRED

PRE-SHIPMENT ADVICE AND COPY OF EXPORT DOCUMENTS TO
PDVSA (TRAFFIC & CUSTOMS) - VENEZUELA
Nº NAME      EMAIL
1. LILIANA CHANA   CIGANAL@PDVSA.COM
2. FERNANDO VELASQUEZ  VELASQUEZFN@PDVSA.COM
3. MARIA ROBLES   ROBLESMSE@PDVSA.COM
4. JUAN CARLOS RIVAS  ELBOTIJA2@CANTV.NET
5. KARIN RODRIGUEZ  RODRIGUEZKR@PDVSA.COM
6. DONNATY DURAN   DURANDS@PDVSA.COM
7. ASDRUBAL DIAZ   DIAZASAL@PDVSA.COM
8. GRAZIA FIORE   FIOREG@PDVSA.COM
9. DUBRASKA RODRIGUEZ  DUBRASKAA1@GMAIL.COM
10. FRANCK ANDRADE   ANDRADEFJR@PDVSA.COM
11. JOSE ROMERO   JOSEROMEROBJ@ANTMEDIA.COM.VE
12. YOANNE SALAZAR  YOANNASALAZAR@ANDISMEDIA.COM.VE
13. ANGEL RODRIGUEZ  ANGEL.RODROSA@BANDHOMI.DA.COM.VE
14. OSMAR NIETO   OSMARYNIETO@GMAIL.COM



**PDVSA**

Page: 9 of 1

SUPPLIER:
SAMCOH COOPERATIVA INLINAS LIMITADA
Ruta Panamericana km 25
DON TORCUATO

15. JUAN CARLOS RIVAS ELBOTRAJC@CANTV.NET ONLY SHIPMENTS       VIA LA GUAIRA
16. MIROSKA GOITIA  GOITIAMS@PDVSA.COM ONLY SHIPMENTS VIA       PUERTO CABELLO
17 IRANOR ANDRADE  ANDRADEIR@PDVSA.COM

PSI LOGISTICS DEPARTMENT, HOUSTON
Nº NAME   EMAIL   PHONE
1 JUAN JOSE BASTARDO BASTARDOJJ@PSI.PDV.COM (713)1096474
2 PSI DATA BASE DOCUMENT@PSI.PDV.COM


Terms of payment

PROGRESS/ADVANCE PAYMENT INVOICES
═══════════════════════════════════
25% ADVANCE PAYMENT
65% AGAINST SHIPPING DOCUMENTS OF EACH LOT SHIPPED

PROGRESSIVE PAYMENTS SHALL BE BASED ON THE ORIGINAL PURCHASE ORDER VALUE. ANY ADDITIONS TO THE PURCHASE
ORDER VALUE SHALL BE INCLUDED IN THE SUPPLIERS FINAL INVOICE


Requir docs/Inspec/Field Exped

    FIELD INSPECTION, REQUIREMENT
    (DOC TR030, REV F, 05 Feb 08)
1 THIS PURCHASE ORDER FOR RFQ (WHEN APPLICABLE) HAS BEEN LOGGED FOR FIELD TECHNICAL INSPECTION PRIOR TO
SHIPMENT. THIS MEANS A QUALIFIED INSPECTOR WILL INSPECT THE EQUIPMENT FOR COMPLIANCE TO QUOTE, PURCHASE
ORDER, AND ANY OTHER APPLICABLE INDUSTRY STANDARD OR SPECIFICATION
2 PRODUCT, EQUIPMENT, OR MATERIAL INSPECTION MUST BE PERFORMED BEFORE PACKAGING FOR SHIPMENT. THE
PURCHASER'S INSPECTION DOES NOT RELIEVE THE MANUFACTURER OR THE SELLER FROM COMPLIANCE TO ALL PURCHASE
ORDER REQUIREMENTS
3 PRODUCT, EQUIPMENT OR MATERIAL MUST NOT LEAVE YOUR FACILITIES UNTIL THE ASSIGNED INSPECTOR OR DESIGNATED
INSPECTION AGENCY HAS ISSUED A RELEASE AUTHORIZING SHIPPING OF THE PRODUCT OR EQUIPMENT
4 THE VENDOR IS REQUIRED TO PROVIDE THE FOLLOWING INFORMATION
   4.1 LOCATION OF WHERE INSPECTION CAN BE PERFORMED
   4.2 CONTACT NAME, PHONE NUMBER & E-MAIL ADDRESS OF THE PROJECT MGR
5 DOCUMENTATION REQUIREMENTS
THIS NOTE APPLIES TO TECHNICAL DOCUMENTS NOT INCLUDING INVOICES OR SHIPPING DOCUMENTS)
5.1 ONE COPY OF ALL THE REQUIRED DOCUMENTS MUST SHIP WITH THE EQUIPMENT. THIS INCLUDES TECHNICAL DOCUMENTS
SUCH AS MATERIAL TEST REPORTS, NONDESTRUCTIVE TEST REPORTS, OR CERTIFICATES/CONFORMANCE, PRINTS, MECHANICAL
OR PERFORMANCE TEST RESULTS, AND OTHER APPLICABLE DOCUMENTS
5.2 TWO HARD COPIES (DATABOOKS) AND TWO ELECTRONIC COPIES (CD'S OR VIA EMAIL (AS APPLICABLE)) MUST BE SHIP TO
PDVSA SERVICES, INC. & CITGO BLDG
ATTN PETER BERNSTEIN N2001
1293 ELDRIDGE PKWY
HOUSTON, TX 77077
5.3 FOR DELIVERY OF DOCUMENTS ELECTRONICALLY, SEND THEM TO TECHDOCC@PSI.PDV.COM
5.4 THE PDVSA SERVICES PURCHASE ORDER NUMBER MUST BE LISTED ON THE SUBJECT LINE OF THE EMAIL. IF PARTIAL
DOCUMENTATION IS SUBMITTED, THE EMAIL MUST CLEARLY IDENTIFY TO WHICH LINE ITEM(S) THE DOCUMENTS BELONG TO
5.5 THE PO NUMBER AND THE PO ITEMS MUST BE CLEARLY PRINTED IN EACH DOCUMENT

5.6 FOR PURCHASE ORDERS PLACED IN EUROPE OR WHERE THE MATERIAL IS COMING FROM EUROPE, ELECTRONIC DOCUMENTS
CAN BE SUBMITTED TO INSPECTION@PDVSA.NL
5.7 Send hard copies to
PDVSA SERVICES BV
ATTN TECHNICAL SERVICES DEPARTMENT
PRESIDENT KENNEDYLAAN 19
2517 JK THE HAGUE
THE NETHERLANDS
═══════════════════════════════════
6 ANY QUESTIONS REGARDING THIS INSPECTION REQUIREMENT, FORWARD EMAIL TO prodrguen@psi.pdv.com or
bernsteinp@psi.pdv.com For questions @psi.pdv.com. For purchase orders placed in Europe, please contact inspection@pdvsa.nl

# ❋ PDVSA

**SUPPLIER:**
SANCOR COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 25
DON TORCUATO

**Purchase Order**
**5100062284**

**IMPORTANT INSTRUCTIONS TO SELLER**
(Doc. 2_ME_PO_GEN_BU00_rev.7, 11-16-2009)

If this Document is issued from BARIVEN, S.A. c/o PDVSA Services, Inc., follow instruction

**INSTRUCTION**

Unless covered by a Blanket Purchase Agreement this purchase order is subject to the present standard BARIVEN, S.A. c/o PDVSA Services, Inc. Terms and Conditions which are already in your possession. In the event that you do not have the above mentioned Terms and Conditions, please advise us. Otherwise, acceptance of this purchase order signifies your acknowledgement, understanding, and acceptance of said Terms and Conditions

If this order is covered by an Outline Agreement, the Terms and Conditions of the Outline Agreement number mentioned on the item(s) of this purchase order apply to this document

Seller must acknowledge receipt of the purchase order within five days of P.O. and must advise, to confirm, seller's shipping date. This acknowledgement is to be sent to PDVSA Services Inc. Expediting Department Attn: Mrs Gloria Robinson

**Assignment of Credit Facility**
This purchase order may be selected for financing through a credit facility. Seller may be required to provide additional information or documentation required by the Bank or institution that is the case, our Finance Department will send further instructions.

**Packing, Marking, Invoicing and Shipping Instructions**

As of April 2006 wooden packing to Venezuela must show a marking that the wood was either treated with methyl bromide or has been heat treated and does not essentially display evidence of quarantine pests. All wood used in the boxing/crating, palletizing, skidding, or blocking and bracing of the material on this Purchase Order must have undergone sufficient processing or treatment in compliance with ISPM 15 of the International Plant Protection Convention (IPPC) entitled "Guidelines for Regulating Wood Packaging Material in International Trade". All wood subject to this regulation shall be marked as specified in Area 2 of the stipulations. Non-conformance will result in confiscation of the entire shipment by Venezuelan port/airport authorities. For specific detail, please refer to our IPPC website www.ippc.int

Do not dispatch until you have read and understood our packing, marking, invoicing and shipping instructions for sellers, as follows:
1 For domestic deliveries FOB/FCA to our USA forwarders, FOB Seller's Plant, Ex works, from North America and Mexico, please use instructions on standard note B0010, attached to our purchase order.
2 For International Ocean Freight deliveries to Venezuela by the Seller, use instructions on the applicable standard notes B0030-B0041, B0056-B0059, attached to our purchase order.
3 For International Air and Ocean Freight deliveries to Curacao by the Seller, use instructions on note B0042 attached to our purchase order.
4 For International Air Freight deliveries by the seller to Venezuela via Maiquetia use instructions on the applicable standard notes B0043-B0055, attached to our purchase order

These terms, are integral part of this document, are already in your possession, as the copies available on request, from Juan Jose Bastardo at email bastardojj@pmi.pdv.com, or ph (281) 568-64.16

**General Invoicing Instructions**

Follow each of the applicable instructions attached to the respective purchase order, because they will change according to the agreed-to delivery terms.

Your Bank Account and Routing Information must be included on your invoice. All payments are processed via 'ACH' (Automatic Clearing House) electronic funds transfer.

Seller will send invoices to:

BARIVEN, S.A
c/o PDVSA Services, Inc
P.O. Box 4403
Houston, Texas 77210 USA
Attn: Accounts Payable
Contact Person: Tim Marchman
Phone: (281) 588-6233, Fax: (281) 582-7578

If using courier services, please use the street address

BARIVEN, S.A
c/o PDVSA Services, Inc
1293 Eldridge Parkway
Houston, Texas 77077 USA
Attn: Accounts Payable
Contact Person: Tim Marchman
Phone: (281) 588-6233, Fax: (281) 582-7578

We require one original invoice with attached copies of your packing list and all supporting documents when charges other than material costs



## PDVSA

Page: 11 of 11

**SUPPLIER:**
SANGUK COOPERATIVAS UNIDAS LIMITADA
Ruta Panamericana km 24
DON TORCUATO

**Purchase Order**
5100062284

have been required by the Buyer and quoted by the Seller, such as Inland Freights, Over Time, Export Packing, Special Handling, etc.

Please show our Purchase Order (PO) number and shipping marks on all invoices. Our standard invoice processing is, upon delivery in accordance with PO delivery terms, 100% net 30 days after receipt and approval of your invoice, unless otherwise specified in the Purchase Order.

**DESTINATION CONTROL STATEMENT**

According to U.S. Export Administration Regulations, Chapter 736.0, These commodities, technology or software will be exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited. "Ultimate destination as per shipping marks in the Purchase Order"

The DCS is required for all exports from the United States, of items on the Commerce Control List that are not classified as EAR99. The person responsible for preparation of the invoice and on the bill of lading (or waybill, or other export control document that accompanies the shipment from its point of origin in the United States to the ultimate consignee or end-user abroad) is responsible for entry of the DCS.

**NOTE TO SUPPLIERS**

Invoices will not be processed unless all export or quality documents are provided.

Nombre
Bariven S.A. C/O PDVSA Services, Inc.
Purchasing Agent

## DECIMA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, ambos en carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, (el "FIADOR")

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, Quinta Enmienda del 30 de Abril de 2009, Sexta Enmienda del 24 de Agosto de 2009, Séptima Enmienda del 17 de Septiembre de 2009, Octava Enmienda del 21 Diciembre de 2009 y Novena Enmienda del 13 de Abril de 2010, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Decima Enmienda.

(b) Que en cumplimiento de la Cláusula Sexta Bis, introducida al Contrato Marco por la Tercer Enmienda suscripta entre las Partes con fecha 28 de Noviembre de 2008, el MUTUARIO se obligó a entregar y mantener Warrants endosados a favor del MUTUANTE por un monto equivalente al veinticinco por ciento (25 %) como mínimo, de la Línea de Crédito Adeudada.

(c) Que es intención del MUTUARIO disponer de la mercadería representada por algunos –no todos– de los Warrants antes mencionados, por lo cual, el MUTUARIO solicita al MUTUANTE la liberación parcial de la garantía constituida por Warrants.

(d) Conforme el Considerando anterior, el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello– ha aceptado disminuir, excepcional y transitoriamente el monto de Warrants que el MUTUARIO debe mantener vigente por el plazo del Contrato Marco.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente decima enmienda al Contrato Marco (la "Decima Enmienda"), de conformidad con las presentes Cláusulas:

**1.** El MUTUANTE reintegrará al MUTUARIO, dentro de los 10 días de firmada la presente, el Warrant indicado a continuación – que había sido entregado por el MUTUARIO en los términos detallados en el Considerando b)- por un valor de US$ 612.500,00 (Dólares Estadounidenses SEISCIENTOS DOCE MIL QUINIENTOS CON 00/100):

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2683 | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 87.500 | Kgs | 03-JUN-2010 | 612.500,00 |
| Total | | | | | | 612.500,00 |

**2.** Conforme lo precedentemente detallado, como consecuencia de la liberación del Warrant indicado en el punto 1, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO | IMPORTE U$S |
|---|---|---|---|---|---|---|
| 5033 P | QUESO SEMIDURO EN PROC. | Balnearia | 148.937,00 | Kgs | 3-jun10 | 700.003,90 |
| 5034 P | QUESO PASTA DURA | La Carlota | 87.500,00 | Kgs | 3-jun-10 | 612.500,00 |



| 2681 V | QUESO PASTA DURA | La Carlota | 187.500,00 | Kgs. | 3-jun-10 | 1.312.500,00 |
|--------|------------------|------------|------------|------|----------|--------------|
| 2687 V | U.A.T. | Sunchales | 515.750,00 | Lts. | 3-jun-10 | 866.460,00 |
| 2688 V | U.A.T. | Sunchales | 515.750,00 | Lts. | 3-jun-10 | 866.460,00 |
| 2689 V | U.A.T. | Sunchales | 169.643,00 | Lts. | 3-jun-10 | 285.000,24 |
| 2690 V | QUESO SEMIDURO EN PROC. | Brikmann | 73.300,00 | Kgs. | 3-jun-10 | 344.510,00 |
| 2691 V | QUESO PASTA DURA | Brikmann | 46.250,00 | Kgs. | 3-jun-10 | 289.525,00 |
| 2692 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| 2693 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| 2694 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| **Total** | | | | | | **7.178.434,14** |

3.   Con excepción de aquellos términos expresamente modificados por la presente Decima Enmienda al Contrato Marco, todos los demás términos, condiciones y cláusulas del Contrato Marco y de las Solicitudes de Desembolso remitidas y aceptadas permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 07 días del mes de Mayo de 2010.

_____
**Por: SANCOR Cooperativas Unidas Ltda**
Nombre: Mario Magdalena
Carácter: Apoderado

_____
**Por: SANCOR DO BRASIL Produtos Alimenticios Ltda**
Nombre: Mario Magdalena – Daniel Jorge Valicente
Carácter: Apoderados

**Por: IIG TOF B.V.**
Nombre: S. Snybosch y Reijmans
Carácter: Apoderados.

Firma/s certificada/s en Foja
Nº F-00128473
Bs. As. 7-6-2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

MARTIN
ES(
MA







**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404

# ANEXO

F 001384729

1   Buenos Aires,   07 de          mayo de 2010   . En mi carácter de escribano

2   Titular del Registro Notarial N° 841

3   CERTIFICO: Que la/s firma/s                                que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número          52          del LIBRO

6   número          135          , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y Da-

9   niel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identidades de

10  acuerdo al inciso a) del articulo 1002 del Código Civil y actúan: el señor Magda-

11  lena en su carácter de apoderado de la sociedad "SANCOR COOPERATIVAS

12  UNIDAS LIMITADA" con domicilio en Sunchales, Provincia de Santa Fe, e ins-

13  cripta en la Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia

14  de Santa Fe, Departamento Castellanos, conforme lo acredita con el poder de

15  fecha 15 de diciembre de 2009, pasado al folio 1400 del Registro 640 de la ciu-

16  dad de Sunchales, Provincia de Santa Fe, a cargo de la escribana Analia Roch,

17  y el señor Valicente en su carácter de Apoderado de la sociedad "SANCOR DO

18  BRASIL Produtos Alimenticios LTDA." lo que acredita con el Poder Especial de

19  fecha 17 de diciembre de 2009, debidamente certificado con fecha 17 de di-

20  ciembre de 2009 y debidamente Autorizado por el Ministerio de Relaciones Ex-

21  teriores con fecha 7 de enro de 2010 y traducido con fecha 18 de enero de 2010

22  y legalizado bajo el número 948 de fecha 19 de enero de 2010, la documen-

23  tación relacionada tengo a la vista y les confieren facultades suficientes para

24  suscribir el documento adjunto, doy fe.-

25

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



F 001384729

26

27

28

29

30

31

32

33

34

35

36

37

38

39

40

41

42

43

44

45

46

47

48

49

50

### NOVENA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
### PARA LA PREFINANCIACIÓN DE EXPORTACIONES

**Entre**

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "**MUTUANTE**"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "**MUTUARIO**"), por otra parte; y

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, ambos en carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, (el "**FIADOR**")

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "**Partes**"; y

**CONSIDERANDO:**

    (a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, Quinta Enmienda del 30 de Abril de 2009, Sexta Enmienda del 24 de Agosto de 2009, Séptima Enmienda del 17 de Septiembre de 2009 y Octava Enmienda del 21 Diciembre de 2009, cuyas copias se adjuntan a la presente como Anexo A (el "**Contrato Marco**"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Novena Enmienda.

    (b) Que en cumplimiento de la Cláusula Sexta Bis, introducida al Contrato Marco por la Tercer Enmienda suscripta entre las Partes con fecha 28 de Noviembre de 2008, el MUTUARIO se obligó a entregar y mantener Warrants endosados a favor del MUTUANTE por un monto equivalente al veinticinco por ciento (25 %) como mínimo, de la Línea de Crédito Adeudada.

    (c) Que es intención del MUTUARIO disponer de la mercadería representada por algunos –no todos- de los Warrants antes mencionados, por lo cual solicita al MUTUANTE el reemplazo de los mismos por otros warrants.

    (d) A su vez, y no obstante lo mencionado en el Considerando (b) anterior, el MUTUARIO solicita al MUTUANTE la liberación parcial de la garantía constituida por Warrants.

    (e) Que el MUTUANTE estaría dispuesto a aceptar el reemplazo de parte de los mencionados Warrants, siempre y cuando los "Nuevos Warrants" entregados por el MUTUARIO, sean por igual valor y mercadería de similares características a los que se reemplazan y que los mismos sean entregados a los mismos fines y efectos que los anteriores.

    (f) Asimismo el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello- ha aceptado disminuir el monto de Warrants que el MUTUARIO debe mantener vigente por el plazo del Contrato Marco.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente novena enmienda al Contrato Marco (la "Novena Enmienda"), de conformidad con las presentes Cláusulas:

    **1.** El MUTUANTE devolverá al MUTUARIO, dentro de los 10 días de firmada la presente, el Warrant indicado a continuación – que había sido entregado por el MUTUARIO en los términos detallados en el Considerando b)- por un valor de US$ 1.312.500,00 (Dólares Estadounidenses UN MILLON TRESCIENTOS DOCE MIL QUINIENTOS CON 00/100):

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2680 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 03-JUN-2010 | 1.312.500,00 |
| Total | | | | | | 1.312.500,00 |

**2.** En reemplazo del Warrant reintegrado al MUTUARIO, conforme lo indicado en la Cláusula 1 precedente, y a los mismos fines, y efectos que tal Warrant reintegrado el MUTUARIO, en este acto entrega y endosa a favor del MUTUANTE los Warrants indicados a continuación por un valor total de US$ 1.312.503,90 (Dólares Estadounidenses UN MILLON TRESCIENTOS DOCE MIL QUINIENTOS TRES CON 90/100) los cuales son recibidos de conformidad por el MUTUANTE:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 5033 P | QUESO SEMIDURO EN PROC. | BALNEARIA | 148.937 | Kgs | 03-JUN-2010 | 700.003,90 |
| 5034 P | QUESO PASTA DURA | LA CARLOTA | 87.500 | Kgs | 03-JUN-2010 | 612.500,00 |
| Total | | | | | | 1.312.503,90 |

**3.** Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Novena Enmienda:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2684 V | LECHE EN POLVO | Sunchales | 148.800,00 | Kgs. | 3-jun-10 | 520.800,00 |
| 2686 V | LECHE EN POLVO | Sunchales | 149.400,00 | Kgs. | 3-jun-10 | 522.900,00 |
| Total | | | | | | 1.043.700,00 |

**4.** Conforme lo anteriormente detallado, como consecuencia del reemplazo y liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO | IMPORTE U$S |
|---|---|---|---|---|---|---|
| 5033 P | QUESO SEMIDURO EN PROC. | Balnearia | 148.937,00 | Kgs | 3-jun-10 | 700.003,90 |
| 5034 P | QUESO PASTA DURA | La Carlota | 87.500,00 | Kgs | 3-jun-10 | 612.500,00 |
| 2681 V | QUESO PASTA DURA | La Carlota | 187.500,00 | Kgs. | 3-jun-10 | 1.312.500,00 |
| 2683 V | QUESO PASTA DURA | La Carlota | 87.500,00 | Kgs. | 3-jun-10 | 612.500,00 |
| 2687 V | U.A.T. | Sunchales | 515.750,00 | Lts. | 3-jun-10 | 866.460,00 |
| 2688 V | U.A.T. | Sunchales | 515.750,00 | Lts. | 3-jun-10 | 866.460,00 |
| 2689 V | U.A.T. | Sunchales | 169.643,00 | Lts. | 3-jun-10 | 285.000,24 |
| 2690 V | QUESO SEMIDURO EN PROC. | Brikmann | 73.300,00 | Kgs. | 3-jun-10 | 344.510,00 |
| 2691 V | QUESO PASTA DURA | Brikmann | 46.250,00 | Kgs. | 3-jun-10 | 289.525,00 |
| 2692 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| 2693 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| 2694 V | QUESO PASTA DURA | Brikmann | 101.250,00 | Kgs. | 3-jun-10 | 633.825,00 |
| Total | | | | | | 7.790.934,14 |

**5.** Con excepción de aquellos términos expresamente modificados por la presente Novena Enmienda al Contrato Marco, todos los demás términos, condiciones y cláusulas del Contrato Marco y de las Solicitudes de Desembolso remitidas y aceptadas permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 13 días del mes de Abril de 2010.

Por: SANCOR Cooperativas Unidas Ltda
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda
Nombre: Mario Magdalena – Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre: S. sny basih / D. Kirlle
Trust International Management (T.I.M.) B.V.
Managing Director
apoderados

Firma certificada en Foja
Nº
Bs. As. 13-4-2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



F  005962331



1   Buenos Aires, 13   de      Abril      de 2010   . En mi carácter de escribano

2   Titular del Registro Notarial N° 841

3   CERTIFICO: Que la/s firma/s                            que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número 191           del LIBRO

6   número 133              , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9   Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista




005962331

F 005962331

y les confieren facultades suficientes para suscribir el documento adjunto,

doy fe.-

26

27

28

29

30

31

32

33



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

34

35

36

37

38

39

40

41

42

43

44

45

46

47

48

49

50



## OCTAVA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Gabriel Gustavo Martinuzzi, en su carácter de Apoderado Gerencia Financiera y Administrador (Articulo 11°) respectivamente, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, (el "FIADOR")

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, Quinta Enmienda del 30 de Abril de 2009, Sexta Enmienda del 24 de Agosto de 2009 y Séptima del 19 de Septiembre de 2009 cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Octava Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de reducir el Plazo de Disponibilidad previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente sexta enmienda al Contrato Marco (la "Octava Enmienda"), de conformidad con las presentes Cláusulas:

1. Modificase de la **Cláusula PRIMERA** del Contrato Marco la siguiente definición:





*"Plazo de Disponibilidad"* significa el plazo fijado exclusivamente en ·beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 28 de Febrero de 2010, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

.2.     Queda expresamente establecido que a partir de la suscripción de la presente Octava Enmienda, el MUTUARIO sólo podrá solicitar Solicitudes de Desembolso bajo el Contrato Marco hasta el 28 de Febrero de 2010

3.     Con excepción de aquellos términos expresamente modificados por la presente Octava Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 21 días del mes de Diciembre de 2009.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
Nº EPO13226 61
Bs. As. 21/12/09

Por: SANCOR DO BRASIL Produtos Alimentícios Ltda.
Nombre: Mario Magdalena – Gabriel Gustavo Martinuzzi
Carácter: Apoderado - Administrador

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG TOF B.V.
Nombre:
Carácter: Trust International Management (T.I.M.) B.V.
Managing Director



# ANEXO

F 001322861

1 Buenos Aires, 21 de Diciembre de 2009 . En mi carácter de escribano

2 Titular del Registro Notarial Nº 841

3 CERTIFICO: Que la/s firma/s que obra/n en el

4 documento que adjunto a esta foja, cuyo requerimiento de certificación se

5 formaliza simultáneamente por ACTA número 23 del LIBRO

6 número 128 , es/son puesta/s en mi presencia por la/s persona/s

7 cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8 la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9 Gabriel Gustavo MARTINUZZI, DNI 18.264.987, quienes justifican sus i-

10 dentidades de acuerdo al inciso a del artículo 1002 del Código Civil y ac-

11 túan: el señor Magdalena en su carácter de apoderado de la sociedad

12 "SANCOR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sun-

13 chales, Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro

14 Nacional de Cooperativas, de la Provincia de Santa Fe, Departamento

15 Castellanos, conforme lo acredita con el poder de fecha 15 de diciembre

16 de 2009, pasado al folio 1400 del Registro 640 de la ciudad de Suncha-

17 les, Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimis-

18 mo actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19 nanciera y el señor Martinuzzi en su carácter de Administrador de la so-

20 ciedad "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acre-

21 ditan con el Contrato Social de fecha 4 de agosto de 2008 debidamente

22 Legalizado y Apostillado, la documentación relacionada tengo a la vista y

23 les confieren facultades suficientes para suscribir el documento adjunto,

24 doy fe.-

25

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370






**SEPTIMA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, Quinta Enmienda del 30 de Abril de 2009 y Sexta Enmienda del 24 de Agosto de 2009, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Séptima Enmienda.

(b) Que en cumplimiento de la Cláusula Sexta Bis, introducida al Contrato Marco por la Tercer Enmienda suscripta entre las Partes con fecha 28 de Noviembre de 2008, el MUTUARIO entregó al MUTUANTE Warrants endosados a favor de este último por un monto equivalente al veinticinco por ciento (25 %) como mínimo, de la Línea de Crédito Adeudada.

(c) Que es intención del MUTUARIO disponer de la mercadería representada por algunos –no todos- de los warrants antes mencionados, por lo cual solicita al MUTUANTE el reemplazo de los mismos por otros warrants.

(d) Que el MUTUANTE estaría dispuesto a aceptar el reemplazo de parte de los mencionados warrants, siempre y cuando los "Nuevos Warrants" entregados por el MUTUARIO, sean por igual valor y mercadería de similares características a los que se reemplazan y que los mismos sean entregados a los mismos fines y efectos que los anteriores.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente séptima enmienda al Contrato Marco (la "Séptima Enmienda"), de conformidad con las presentes Cláusulas:

**1.** El MUTUANTE devolverá al MUTUARIO, dentro de los 10 días de firmada la presente, el Warrant indicado a continuación – que había sido entregado por el MUTUARIO en los términos detallados en el Considerando b)- por un valor de US$ 633.825,00 (Dólares Estadounidenses SEISCIENTOS TREINTA Y TRES MIL OCHOCIENTOS VEINTICINCO CON 00/100):

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2021 | QUESO PASTA DURA | BRICKMANN | 101.250 | Kgs | 05-OCT-2009 | 833.825,00 |
| Total | | | | | | 833.825,00 |

**2.** En reemplazo del Warrant reintegrado al MUTUARIO, conforme lo indicado en la Cláusula 1 precedente, y a los mismos fines y efectos que tal Warrant reintegrado, el MUTUARIO, en este acto entrega y endosa a favor del MUTUANTE los Warrants indicados a continuación por un valor total de US$ 634.035,00 (Dólares Estadounidenses SEISCIENTOS TREINTA Y CUATRO MIL TREINTA Y CINCO CON 00/100) los cuales son recibidos de conformidad por el MUTUANTE:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 961 - EX | QUESO PASTA DURA | BRICKMANN | 46.250 | Kgs | 05-OCT-2009 | 289.525,00 |
| 962 - EX | QUESO SEMIDURO EN PROC. | BRICKMANN | 73.300 | Kgs | 05-OCT-2009 | 344.510,00 |
| Total | | | | | | 634.035,00 |

**3.** Como consecuencia del reemplazo de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2015 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2016 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2017 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2018 | QUESO PASTA DURA | LA CARLOTA | 87.500 | Kgs | 05-OCT-2009 | 612.500,00 |
| 2019 | QUESO SEMI DURO | BALNEARIA | 148.937 | Kgs | 05-OCT-2009 | 700.003,90 |
| 2020 | QUESO SEMI DURO | BALNEARIA | 102.412 | Kgs | 05-OCT-2009 | 481.338,40 |
| 2022 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2023 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2024 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2028 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2029 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2030 | LECHE UAT | SUNCHALES | 169.643 | Lt | 05-OCT-2009 | 285.000,24 |
| 2031 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2032 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2033 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 4019 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 149.400 | Kgs | 05-OCT-2009 | 522.900,00 |
| 4020 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| 4021 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| 961 | QUESO PASTA DURA | BRIKMANN | 46.250 | Kgs | 05-OCT-2009 | 289.525,00 |
| 962 | QUESO SEMIDURO EN PROC | BRIKMANN | 73.300 | Kgs | 05-OCT-2009 | 344.510,00 |
| Total | | | | | | 12.704.270,54 |

4. Con excepción de aquellos términos expresamente modificados por la presente Séptima Enmienda al Contrato Marco, todos los demás términos, condiciones y cláusulas del Contrato Marco y de las Solicitudes de Desembolso remitidas y aceptadas permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 17 días del mes de Septiembre de 2009.

Firma/s certificada/s en Foja
Nº ___E91.030403___
Bs. As. __12-9-2009__

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: María Magdalena
Carácter: Apoderado

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG TOF B.V.
Nombre: ___Rummer / Heymans___
Carácter: apoderados.



## ANEXO

F 001258403

1 Buenos Aires, 17 de Septiembre de 2009. En mi carácter de escribano

2 Titular del Registro Notarial Nº 841

3 CERTIFICO: Que la/s firma/s que obra/n en el

4 documento que adjunto a esta foja, cuyo requerimiento de certificación se

5 formaliza simultáneamente por ACTA número 193 del LIBRO

6 número 121 , es/son puesta/s en mi presencia por la/s persona/s

7 cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8 la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144.-

9 quien justifica su identidad de acuerdo al inciso a del artículo 1002 del

10 Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11 COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

12 Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

13 cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

14 tellanos, conforme lo acredita con el poder de fecha 23 de junio de 1993,

15 pasado al folio 638 del Registro 200 de la ciudad de Sunchales, Provincia

16 de Santa Fe, a cargo del escribano Horacio Remondino, la documenta-

17 ción relacionada tengo a la vista y le confiere facultades suficientes para

18 suscribir el documento adjunto, doy fe.-

19

20

21

22

23

24

25

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



**ANEXO**

### SEXTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
### PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominadas las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008, Tercera y Cuarta Enmienda del 28 de Noviembre de 2008 y Quinta Enmienda del 30 de Abril de 2009 cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Sexta Enmienda.

(b) Que en cumplimiento de la Cláusula Sexta Bis, introducida al Contrato Marco por la Tercer Enmienda suscripta entre las Partes con fecha 28 de Noviembre de 2008, el MUTUARIO entregó al MUTUANTE Warrants endosados a favor de este último por un monto equivalente al veinticinco por ciento (25 %) como mínimo, de la Línea de Crédito Adeudada.

(c) Que es intención del MUTUARIO disponer de la mercadería representada por algunos –no todos- de los warrants antes mencionados, por lo cual solicita al MUTUANTE el reemplazo de los mismos por otros Warrants.

(d) Que el MUTUARIO estaría dispuesto a aceptar el reemplazo de parte de los mencionados warrants, siempre y cuando los "Nuevos Warrants" entregados por el MUTUARIO, sean por igual valor y mercadería de iguales características a los que se reemplazan y que los mismos sean entregados a los mismos fines y efectos que los anteriores.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente sexta enmienda al Contrato Marco (la "Sexta Enmienda"), de conformidad con las presentes Cláusulas:

1. El MUTUANTE devolverá al MUTUARIO, dentro de los 10 días de firmada la presente, los Warrants indicados a continuación -- que habían sido entregados por el MUTUARIO en los términos detallados en el Considerando b)- por un valor de US$ 1.564.500,00 (Dólares Estadounidenses UN MILLON QUINIENTOS SESENTA Y CUATRO MIL QUINIENTOS CON 00/100).

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2025 | LECHE EN POLVO | SUNCHALES | 249 | Tons | 05-OCT-2009 | 522.900,00 |
| 2026 | LECHE EN POLVO | SUNCHALES | 248 | Tons | 05-OCT-2009 | 520.800,00 |
| 2027 | LECHE EN POLVO | SUNCHALES | 248 | Tons | 05-OCT-2009 | 520.800,00 |
| | Total | | | | | 1.564.500,00 |

2. En reemplazo de los Warrants reintegrados al MUTUARIO, conforme lo indicado en la Cláusula 1 precedente, y a los mismos fines y efectos que tales Warrants reintegrados, el MUTUARIO, en este acto entrega y endosa a favor del MUTUANTE los Warrants indicados a continuación por un valor total de US$ 1.564.500,00 (Dólares Estadounidenses UN MILLON QUINIENTOS SESENTA Y CUATRO MIL QUINIENTOS CON 00/100) los cuales son recibidos de conformidad por el MUTUANTE.

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 4019 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 149.400 | Kgs | 05-OCT-2009 | 522.900,00 |
| 4020 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.900 | Kgs | 05-OCT-2009 | 520.800,00 |
| 4021 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| | Total | | | | | 1.564.500,00 |





3.  Como consecuencia del reemplazo de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2015 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2016 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2017 | QUESO PASTA DURA | LA CARLOTA | 187.500 | Kgs | 05-OCT-2009 | 1.312.500,00 |
| 2018 | QUESO PASTA DURA | LA CARLOTA | 87.500 | Kgs | 05-OCT-2009 | 612.500,00 |
| 2019 | QUESO SEMI DURO | BALNEARIA | 148.937 | Kgs | 05-OCT-2009 | 700.003,90 |
| 2020 | QUESO SEMI DURO | BALNEARIA | 102.412 | Kgs | 05-OCT-2009 | 481.336,40 |
| 2021 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2022 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2023 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2024 | QUESO PASTA DURA | BRIKMANN | 101.250 | Kgs | 05-OCT-2009 | 633.825,00 |
| 2028 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2029 | LECHE UAT | SUNCHALES | 515.750 | Lt | 05-OCT-2009 | 866.460,00 |
| 2030 | LECHE UAT | SUNCHALES | 169.643 | Lt | 05-OCT-2009 | 285.000,24 |
| 2031 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2032 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 2033 | LECHE UAT | CHIVILCOY | 500.000 | Lt | 05-OCT-2009 | 285.000,00 |
| 4019 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 149.400 | Kgs | 05-OCT-2009 | 522.900,00 |
| 4020 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| 4021 | LECHE EN POLVO FRACCIONADA | SUNCHALES | 148.800 | Kgs | 05-OCT-2009 | 520.800,00 |
| Total | | | | | | 12.704.060,54 |

4.  Con excepción de aquellos términos expresamente modificados por la presente Sexta Enmienda al Contrato Marco, todos los demás términos, condiciones y cláusulas del Contrato Marco y de las Solicitudes de Desembolso remitidas y aceptadas permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 24 días del mes de Agosto de 2009.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena – Gabriel Gustavo Martinuzzi
Carácter: Apoderado - Administrador

Por: IIG TCF B.V.
Nombre:
Carácter:

  

### ACTA DE CERTIFICACION DE FIRMAS
#### LEY 404

F 005376323

1. Buenos Aires, 24 de   Agosto   de  2009 . En mi carácter de escribano

2. Titular del Registro Notarial Nº 841

3. CERTIFICO: Que la/s  firma/s                                          que obra/n en el

4. documento que adjunto a esta foja, cuyo requerimiento de certificación se

5. formaliza simultáneamente por ACTA número 13                    del LIBRO

6. número 120                    , es/son puesta/s en mi presencia por la/s persona/s

7. cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8. la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144.-

9. quien justifica su identidad de acuerdo al inciso a del artículo 1002 del

10. Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11. COR COOPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales,

12. Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

13. cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

14. tellanos, conforme lo acredita con el poder de fecha 23 de junio de 1993,

15. pasado al folio 638 del Registro 200 de la ciudad de Sunchales, Provincia

16. de Santa Fe, a cargo del escribano Horacio Remondino, y en su carácter

17. de Apoderado Gerencia Financiera de la sociedad "SANCOR DO BRASIL

18. Productos Alimenticios LTDA." lo que acredita con el Contrato Social de

19. fecha 4 de agosto de 2008, con facultades suficientes siempre que actúe

20. en forma conjunta con el Sr. Gabriel Gustavo MARTINUZZI la documen-

21. tación relacionada tengo a la vista y le confiere facultades suficientes pa-

22. ra suscribir el documento adjunto, doy fe.-

23.

24.

25.

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



 



**ACTA DE CERTIFICACION DE FIRMAS**
(LEY 404)

F 005400850

1  Buenos Aires. 1 de Septiembre de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  **CERTIFICO:** Que la/s firma/s                              que obra/n en el

4  documento que adjunto a esta foja. cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 140                  del LIBRO

6  número 120                    . es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Gabriel   Gustavo   MARTINUZZI,   DNI

9  18.264.987, quien justifica su identidad de acuerdo al inciso a del artículo

10  1002 del Código Civil y actúa en su carácter de Administrador de la so-

11  ciedad "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acre-

12  dita con el Contrato Social de fecha 4 de agosto de 2008 debidamente

13  Legalizado y Apostillado, la documentación relacionada tengo a la vista y

14  le confiere facultades suficientes para suscribir el documento ad junto,

15  doy fe.-

 

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 5170

 

**ANEXO**

**QUINTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "**MUTUANTE**"), por una parte; y

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "**MUTUARIO**"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominadas las "**Partes**"; y

**CONSIDERANDO:**

    (a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 11 de Junio de 2008, Segunda Enmienda del 24 de Septiembre de 2008 y Tercera y Cuarta Enmienda del 28 de Noviembre de 2008, cuyas copias se adjuntan a la presente como Anexo A (el "**Contrato Marco**"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Quinta Enmienda.

    (b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de extender el Plazo de Disponibilidad y el plazo máximo del cual no podrán extenderse las Fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente segunda enmienda al Contrato Marco (la "**Segunda Enmienda**"), de conformidad con las presentes Cláusulas:

1.    Modifícase de la Cláusula PRIMERA del Contrato Marco las siguientes definiciones:

    "_Fecha/s de Vencimiento_" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán indefectiblemente ser anteriores al 31 de Diciembre de 2010.

    "_Plazo de Disponibilidad_" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2010, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

2.    Oportunamente, el Mutuario se compromete a notificar en el marco de la presente Quinta Enmienda, a los Deudores Cedidos, la ampliación de plazo según la Cláusula 1 y de conformidad con la Cláusula 4.6 del Contrato Marco.

A los efectos de su certificación suscribe/n

3.    Con excepción de aquellos términos expresamente modificados por la presente Quinta Enmienda, todas las demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 30 días del mes de Abril de 2009.

---

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Productos Alimenticios Ltda.
Nombre: Mario Magdalena – Gabriel Gustavo Martinuzzi
Carácter: Apoderado - Administrador

**Firma/s certificada/s en Foja**
N°. _____
Bs. As. _____

Por: IIG TOF B.V.
Nombre:
Carácter:

**Firma/s certificada/s en Foja**
N°. _____
Bs. As. _____

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

24
25





F 005093562

1  Buenos Aires, 30 de  Abril  de 2009 · En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  firma/s  que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 152  del LIBRO

6  número 113  , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144.-

9  quien justifica su identidad de acuerdo al inciso a del artículo 1002 del

10  Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11  COR COOPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales,

12  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

13  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

14  tellanos, conforme lo acredita con el poder de fecha 23 de junio de 1993,

15  pasado al folio 638 del Registro 200 de la ciudad de Sunchales, Provincia

16  de Santa Fe, a cargo del escribano Horacio Remondino, y en su carácter

17  de Apoderado Gerencia Financiera de la sociedad "SANCOR DO BRASIL

18  Productos Alimenticios LTDA." lo que acredita con el Contrato Social de

19  fecha 4 de agosto de 2008, con facultades suficientes siempre que actúe

20  en forma conjunta con el Sr. Gabriel Gustavo MARTINUZZI la documen-

21  tación relacionada tengo a la vista y le confiere facultades suficientes pa-

22  ra suscribir el documento adjunto, doy fe.-

23

24

25

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 1070



F 005265046

1  Buenos Aires, 13  de   Julio      de 2009  . En mi carácter de escribano

2  Titular del Registro Notarial N° 841

3  CERTIFICO: Que la/s firma/s                         que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número156          del LIBRO

6  número117                    , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad.Gabriel   Gustavo   MARTINUZZI,    DNI

9  18.264.987, quien justifica su identidad de acuerdo al inciso a del artículo

10  1002 del Código Civil y actúa en su carácter de Administrador de la so-

11  ciedad "SANCOR DO BRASIL Productos Alimenticios LTDA." lo que a-

12  credita con el Contrato Social de fecha 4 de agosto de 2008 debidamente

13  Legalizado y Apostillado, la documentación relacionada tengo a la vista y

14  le confiere facultades suficientes para suscribir el documento ad junto.

15  doy fe.-

16

17

18

19

20

21        MARTIN R. ARANA (h)
             ESCRIBANO
             MAT. 4370

22

23

24

25



## CUARTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. S. *Srebnik el Gehrman* _____, en su carácter de *Acceseg - in - fact A ar B*, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominadas las "Partes"; y

CONSIDERANDO:

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 13 de Junio de 2008, Segunda Enmienda de fecha 24 de Septiembre de 2008 y Tercera Enmienda de fecha 28 de noviembre de 2008, que en copia se adjunta como Anexo A, cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Cuarta Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de incorporar la cláusula de Fianza.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Cuarta enmienda al Contrato Marco (la "Cuarta Enmienda"), de conformidad con las presentes Cláusulas:

1. Incorpórase la Cláusula SEXTA BIS del Contrato, la cual quedará redactada del siguiente modo:

   **SEXTA BIS:   FIADOR.**
   Por este acto, SANCOR DO BRASIL Produtos Alimenticios Ltda., una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Gabriel Gustavo Martinuzzi, en su carácter de Apoderado Gerencia Financiera y Administrador (Art.11) respectivamente, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, (el "FIADOR"); se constituye en fiador solidario, codeudor solidario, liso llano y principal pagador de las obligaciones y deudas asumidas por el MUTUARIO en el presente Contrato Marco, en los mismos términos y condiciones establecidas en el presente Contrato Marco para el MUTUARIO afianzado con renuncia expresa a; (1) los beneficios de división y excusión y demás normas comerciales y civiles concordantes aplicables. (2) a exigir la previa ejecución judicial o extrajudicial del MUTUARIO o ejercer cualquier defensa que pudiera hacer valer el MUTUARIO y en general a oponer toda excepción que no sea la de pago. La responsabilidad solidaria asumida por el FIADOR se extiende, asimismo, al reajuste legal o convencional y accesorios, tales como la actualización monetaria, intereses compensatorios y moratorios, debidos por el MUTUARIO. Esta fianza permanecerá vigente hasta la total cancelación por parte del MUTUARIO de todas las deudas que mantiene el MUTUARIO afianzado y cubiertas por esta garantía. Se considerará incumplimiento de las disposiciones de la presente el caso en que el FIADOR comience negociaciones con cualquier acreedor con miras a un arreglo general de pagos o cambiar el cronograma de endeudamiento, o se transformen en insolventes o quebrados, o les sea decretada la quiebra o se presente en concurso preventivo de acreedores o Acuerdo Preventivo Extrajudicial, y los mismos no sean levantados dentro de los 15 días de haber sido decretados. En dicho supuesto, en un plazo de treinta (30) días, el MUTUARIO deberá designar un nuevo garante a satisfacción del MUTUANTE. Vencido el plazo de treinta (30) días sin que el MUTUARIO haya designado un nuevo garante, el MUTUANTE puede mediante notificación al FIADOR declarar las obligaciones del MUTUARIO vencidas, y exigir el pago de todos los montos debidos por el MUTUARIO como vencidos, más todos los gastos en que hubiera incurrido el MUTUANTE. El FIADOR efectúa las siguientes declaraciones y garantías, todas las



cuales deberán mantenerse durante la vigencia del presente Contrato Marco; (a) Esta garantía constituye una obligación válida y vinculante para mí, ejecutable de acuerdo con sus respectivos términos; (b) No existe estatuto, regla, regulación u obligación contractual vinculante para mí que pudiera ser violada por la celebración, entrega o ejecución de esta garantía. A los efectos del presente el FIADOR constituye domicilio especial en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, United States of América y acepta como válidas las notificaciones que se practiquen por telegrama colacionado u otro medio auténtico. A todos los efectos legales de la presente fianza el FIADOR se somete irrevocablemente a la jurisdicción y ley aplicable establecidos en la Cláusula DECIMO TERCERA del presente, renunciando expresamente a cualquier otro fuero o jurisdicción.

2.    El FIADOR declara que el presente afianzamiento (i) constituye un acto o negocio jurídico que está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebra contando con todas las aprobaciones internas necesarias, sin violación de disposición legal, estatutaria, asamblea ria ni contractual alguna, no siendo necesaria ninguna autorización adicional. En prueba de conformidad firma al pie de la presente.

3.    Con excepción de aquellos términos expresamente modificados por la presente Cuarta Enmienda, los cuales tendrán efecto a partir del día de la de la fecha, todos los demás términos, condiciones y cláusulas del Contrato Marco, así como los actos ya cumplidos por las Partes en virtud de los mismos, permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de San Pablo, República del Brasil, y por el MUTUANTE en la Ciudad de Amsterdam, The Netherland, a los 26 días del mes de Noviembre de 2008.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Firma/s certificada/s en Foja
N°
Bs. As.

Por: SANCOR DO BRASIL Productos Alimenticios LTDA.
Nombre: Mario Magdalena y Celmar Gustavo Martinuzzi
Carácter: Apoderado Gerencia Financiera y Administrador (Art.11)

Por: IIG XXX B.V.
Nombre: Trust International Management (T.I.M.) B.V.
Carácter:          Managing Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

1° Tabelião de Notas e Protesto
de Letras e Títulos de Barueri

Para produzir efeito no Brasil e valer contra terceiros este documento deverá ser vertido em vernáculo, registrando-se a tradução pública (artigos 224/CCB e 148 da Lei 6.015/73).

 

**ACTA DE CERTIFICACION DE FIRMAS**
Ley 404

F 004754828

1. Buenos Aires, 28 de Noviembre de 2008 . En mi carácter de escribano

2. Titular del Registro Notarial Nº 841

3. CERTIFICO: Que la/s firma/s que obra/n en el

4. documento que adjunto a esta foja, cuyo requerimiento de certificación se

5. formaliza simultáneamente por ACTA número 138 del LIBRO

6. número 106 . es/son puesta/s en mi presencia por la/s persona/s

7. cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8. la justificación de su identidad. Mario César MAGDALENA, L.E.

9. 8.106.144.- quien justifica su identidad de acuerdo al inci-

10. so a del articulo 1002 del Código Civil y actúa en su ca-

11. rácter de apoderado de la sociedad "SANCOR COOPE-

12. RATIVAS UNIDAS LIMITADAS" con domicilio en Suncha-

13. les, Provincia de Santa Fe, e inscripta en la Matrícula 772

14. del Registro Nacional de Cooperativas, de la Provincia de

15. Santa Fe, Departamento Castellanos, conforme lo acredita

16. con el poder de fecha 23 de junio de 1993, pasado al folio

17. 638 del Registro 200 de la ciudad de Sunchales, Provincia

18. de Santa Fe, a cargo del escribano Horacio Remondino, y

19. manifiesta actuar en su carácter de Apoderado Gerencia

20. Financiera de la sociedad "SANCOR DO BRASIL Produc-

21. tos Alimenticios LTDA." lo que acredita con el Contrato

22. Social de fecha 4 de agosto de 2008, con facultades sufi-

23. cientes siempre que actue en forma conjunta con el Sr.

24. Gabriel Gustavo MARTINUZZI la documentación relacio-

25. nada tengo a la vista y le confiere facultades suficientes

 

F 004754828

para suscribir el documento ad junto, doy fe.-

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50

# ANEXO

### TERCERA ENMIENDA AL CONTRATO DE LINEA DE CREDITO
### PARA LA PREFINANCIACION DE EXPORTACIONES

Entre

ING TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. _____ y _____ en su carácter de _____, domiciliado en Telestone 8 - Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte y

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuari 702 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte, y

El MUTUANTE y el MUTUARIO conjuntamente denominadas las "Partes", y

**CONSIDERANDO**

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de linea de credito para prefinanciacion de exportaciones, enmendado con fecha 11 de Junio de 2008 y 24 de Septiembre de 2008, que en copia se adjunta como Anexo A (el "Contrato Marco") cuyas definiciones, terminos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidos en la presente en la medida que no sean expresamente modificadas por la presente Tercera Enmienda.

(b) Que sobre la base del Contrato Marco, es intencion del MUTUARIO requerir al MUTUANTE una linea de credito tipo "revolving" a fin de poder requerirle en los terminos y condiciones establecidos en el Contrato Marco los desembolsos que estime convenientes de acuerdo a sus necesidades hasta que la Linea de Credito Adeudada alcance el monto maximo de la Linea de Credito, de modo que la Linea de Credito en todo momento resulte inferior a Dolares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00)

(c) Que el mecanismo antes descripto permitira el flujo de fondos requeridos para financiar sus exportaciones, pudiendo cancelar las Sumas Adeudadas, solicitar nuevos desembolsos y asi sucesivamente, siempre que el monto acumulado de toda la Linea de Credito -incluyendo la recurrencia de la ultima Solicitud de Desembolso remitida al MUTUANTE resulte inferior a Dolares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00)

(d) Que en atencion a que gran parte de las Creditos Cedidos han sido aplicados al pago de las Sumas Adeudadas a la fecha, y a efectos de poder remitir nuevas Solicitudes de Desembolso al MUTUANTE y garantizar debidamente las futuras Sumas Adeudadas en virtud de las mismas, es intencion del MUTUARIO ceder al MUTUANTE nuevos creditos, los cuales seran eventualmente aplicados al pago de tales Sumas Adeudadas en los terminos de la Clausula QUINTA del Contrato Marco

En merito a las consideraciones precedentemente establecidas, las cuales forman parte integrante de la presente, las Partes acuerdan suscribir la presente Tercera Enmienda al Contrato Marco (la "Tercera Enmienda"), de conformidad con los terminos y condiciones incluidos en las siguientes clausulas:

Modificanse las definiciones de "Creditos Cedidos" y "Linea de Credito" de la Clausula PRIMERA del Contrato Marco, las cuales quedaran redactadas del siguiente modo:

"Creditos Cedidos": significa los siguientes creditos del MUTUARIO contra los Deudores Cedidos

(i) todos los creditos y derechos que le correspondan al MUTUARIO en virtud de la venta de mercaderia que el MUTUARIO realiza a Fonterra derivada del contrato denominado "EXCLUSIVE PURCHASE AGREEMENT" cuya traduccion se adjunta al presente Contrato como Anexo I y las remesas/embarques complementarios y/o reemplazantes de dicho contrato adjunto como Anexo I en virtud del mismo. Se adjunta asimismo como Anexo II una Declaracion Jurada del MUTUARIO con el Pronostico de Ventas minimas que el MUTUARIO estima realizar a Fonterra durante los primeros 18 (dieciocho) meses de la vigencia del presente Contrato Marco

(ii) todos los creditos y derechos que le correspondan al MUTUARIO en virtud de la venta de mercaderia que el MUTUARIO realice a BARIVEN S.A. o/u PDVSA derivada de la venta de mercaderia que el MUTUARIO realice a BARIVEN S.A. o/u PDVSA derivada de la Orden de Compra (Purchase Order) N° 5100052784 de fecha 26 de Marzo de 2008 emitida por BARIVEN o/u PDVSA y aceptada por el MUTUARIO, cuya traduccion se adjunta al presente Contrato como Anexo III y las enmiendas, contratos complementarios y/o reemplazantes de dicha orden de compra/venta como Anexo III, asi como los conocimientos de embarque, facturas y/o ordenes emitidas en virtud del mismo

(iii) todos los creditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercaderia que el MUTUARIO realicen a Asmar Schuman y/o sus Afiliadas y/o subsidiarias, entre el 31 de Mayo de 2008 y hasta la cancelacion total de la Linea de Credito Adeudada, incluyendo

Línea de Crédito

"CLÁUSULA SEXTA BIS - WARRANTS

6BIS.1

6BIS.2   El MUTUARIO

6BIS.3



**6BIS 4** El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants y que la mercaderia indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria (Warrantera) de la mercaderia descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. ou decretada la misma. El incumplimiento de dicha comunicación provocará la Mora automática del MUTUARIO. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiera ocasionar al MUTUANTE

**6BIS 5** En caso de Mora del MUTUARIO por cualquier causa que fuere, el MUTUANTE quedara automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los demás remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercaderia descripta en los Warrants el MUTUANTE se reserva expresamente la facultad de desmancular mantillas al efecto

**6BIS 6** Será responsabilidad exclusiva y excluyente del MUTUARIO la inscripción del endoso de los Warrants en los libros de la empresa depositaria (Warrantera) de la mercaderia indicada en por los mismos como así tambien el pago de todos los gastos y honorarios que correspondan a dicha empresa almacenadora

**5.** Modifícase la Sección 7.1.22 de la Cláusula SÉPTIMA del Contrato Marco las cuales quedarán redactadas del siguiente modo:

**7.1.22** Que a partir del 2 de Diciembre de 2008 y un todo momento durante la vigencia del presente Contrato el MUTUANTE contará con Warrants por una suma equivalente al veinticinco por ciento (25 %) de la Linea de Crédito Adeudada

**6.** Con excepción de aquellos términos expresamente modificados por la presente Tercera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco permanecen inalterables, manteniendo los mismos plena vigencia

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, a los 28 días del mes de Noviembre de 2008 y por el MUTUANTE en la Ciudad de Ámsterdam, a los 25 días del mes de Noviembre de 2008

Por SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: María Magdalena
Carácter: Apoderado

Por: HG TOT B.V.
Nombre:
Carácter: Managing Director

Firma/s certificada/s en Foja
Nº F00 47 54 8 27
Bs. As. 28/11/08

MARTIN R. ARANA (h)
ESCRIBANO
MAT 4370



**ACTA DE CERTIFICACION DE FIRMAS**

F 004754827

1   Buenos Aires, 28 de  Noviembre  de 2008 . En mi carácter de escribano

2   Titular del Registro Notarial Nº 841

3   CERTIFICO: Que la/s  firma/s,                                que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número 137                del LIBRO

6   número 106                . es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario  César  MAGDALENA,

9   L.E.  8.106.144.- quien justifica su i-

10  dentidad de acuerdo al inciso a del ar-

11  tículo 1002 del Código Civil y actúa en

12  su carácter de apoderado de la sociedad

13  "SANCOR  COOPERATIVAS  UNIDAS  LIMITADAS"

14  con domicilio en Sunchales, Provincia de

15  Santa Fe, e inscripta en la Matrícula 772

16  del Registro Nacional de Cooperativas, de

17  la Provincia de Santa Fe, Departamento

18  Castellanos, conforme lo acredita con el

19  poder de fecha 23 de junio de 1993, pa-

20  sado al folio 638 del Registro 200 de la

21  ciudad de Sunchales, Provincia de Santa

22  Fe, a cargo del escribano Horacio Remon-

23  dino, la documentación relacionada tengo

24  a la vista y le confiere facultades sufi-

25  cientes para suscribir el documento ad-



F 004754827

junto, doy fe.-





## SEGUNDA ENMIENDA AL CONTRATO DE LINEA DE CRÉDITO
## PARA LA PREFINANCIACION DE EXPORTACIONES

Entre

IIG TOF B.V., representada por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. ............................................, en su carácter de ............................, domiciliado en Telestone 8 - Teleport Naritaweg 165 - 1er. Piso, 2241 1007 JF Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte y

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representada en este acto por el ................................... en su carácter de apoderado (en adelante el "MUTUARIO") ; por otra parte y

El MUTUANTE y el MUTUARIO conjuntamente denominados las Partes, y

CONSIDERANDO:

(a) Que con fecha 30 de Noviembre de 2007 las partes suscribieron un Cláusula Marco de línea de crédito para pre financiaciones de exportaciones, (cuyo texto fue desde ... al amparo de fecha 11 de Junio de 2008 que en adelante se podrá referir a Anexo A del Cláusula Marco), cuyas definiciones, términos y condiciones las mismas se consideran conforme aquí a la presente y se tienen por reproducidos en la presente en los términos que las se aceptan y se los modificados por la presente Segunda Enmienda.

(b) Que es intención de las Partes modificar ciertas cláusulas a los efectos de extender el Plazo de Disponibilidad y el plazo máximo del cual los plazos estuviesen las fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentes que expresadas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Segunda enmienda al Contrato Marco del "Segunda Enmienda" de conformidad con las presentes Cláusulas.

1.   Modifícase la Cláusula PRIMERA del Contrato Marco. Los siguientes definiciones:

      "Fechas de Vencimiento: significa las fechas de cada desde para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Disponibilidad. Las Fechas de Vencimiento deberán ser de hoy en un día con anteriores al 31 de Diciembre de 2009.

      "Plazo de Disponibilidad: ..... crédito, desde ... la, ... general en beneficio del MUTUANTE, que transcurre desde la fecha del Nota del 21 de Diciembre de 2009, durante el cual el MUTUANTE ... cumpla con la .... a través de puesto a Línea de Crédito a favor del MUTUARIO.

2.    Con excepción de aquellos términos expresamente modificados por la presente Segunda Enmienda, todos los demás términos condiciones y cláusulas del Contrato Marco y las Solicitudes de Disponibilidad requeridas y aceptadas según el tenor de todas las penas en sus aplicables, manteniendo los mismos plena vigencia.

Suscripta por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 26 días ... mes de Septiembre de 2008.

Por SANCOR COOPERATIVAS LTDA
Nombre Alicia Magdalena
Carácter Apoderado

Por: IIG TOF B.V.
Nombre  Trust International Management (T.I.M.) B.V.
Carácter  Managing Director

Paso ... certificado ... mi fe:
F 001048276
24-9-2008



 ACTA DE CERTIFICACION DE FIRMAS



## ANEXO

F 001088971

1  Buenos Aires, 24 de    Septiembre   de 2008   En mi caracter de escribano

2  Titular del Registro Notarial N° 844

3  CERTIFICO: Que la/s    firma/s                          que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultaneamente por ACTA numero       133 del LIBRO

6  numero       102    , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario Cesar MAGDALENA, L.E. 8.106.144.-

9  Manifiesta actuar en su caracter de apoderado de la sociedad "SANCOR

10  COOPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales, Pro-

11  vincia de Santa Fe, e inscripta en la Matricula 772 del Registro Nacional de

12  Cooperativas, de la Provincia de Santa Fe, Departamento Castellanos,

13  conforme lo acredita con el poder de fecha 23 de junio de 1993, pasado al

14  folio 638 del Registro 200 de la ciudad de Sunchales, Provincia de Santa

15  Fe, a cargo del escribano Horacio Remondino, la documentación relacio-

16  nada tengo a la vista y le confiere facultades suficientes para suscribir el

17  documento adjunto, doy fe.-



dentro de los 5 (cinco) días de recibidas por el Deudor Cedido, los remitos y facturas que el MUTUARIO emita como consecuencia de los Créditos Cedidos.

**4.3** El MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por el Deudor Cedido en la Cuenta del Mutuante. A tal efecto, en adición a las notificaciones previstas en la Sección 4.6 de la presente Cláusula CUARTA, el MUTUARIO se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos, que sean remitidas al Deudor Cedido, una leyenda que indique expresamente que tales facturas deberán ser pagadas al MUTUANTE mediante transferencia de los fondos correspondientes a la Cuenta del Mutuante. En cada una de las facturas cedidas el MUTUARIO se compromete a incluir la siguiente leyenda (y su correspondiente traducción al idioma inglés):

*"El crédito representado y contenido en la presente factura, fue cedido en garantía a HG TOF B.V., por contrato de Cesión de Créditos de fecha __ / __ /200 ' Deberán Uds. abonar el mismo a su vencimiento mediante depósito en el Banco _____ ABA _____ Beneficiario HG TOF B.V., Cuenta N ___*

**4.4** Los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas de acuerdo a lo dispuesto en la Sección 5.2 del Contrato Marco.

**4.5** La cesión de los Créditos Cedidos se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula CUARTA y/o no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las fechas de Vencimiento correspondientes, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de cada fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

**4.6** Como condición indispensable para la entrada en vigencia del presente Contrato Marco, el MUTUARIO se obliga a notificar en forma fehaciente esta cesión al Deudor Cedido y a obtener la aprobación expresa de este último respecto de la presente cesión mediante la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como ANEXO V, a tales fines dentro de las 48 hs. de suscripto el presente Contrato Marco, y como una de las Condiciones Precedentes, el MUTUARIO comunicará al Deudor Cedido, con intervención notarial, que los Créditos Cedidos han sido transmitidos al MUTUANTE, y que el depósito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante, debiendo el Deudor Cedido mediante su apoderado o representante legal, firmar al pie de dicha notificación con constancia de aceptación de la misma. El MUTUARIO deberá entregar dicha notificación al MUTUANTE, con la aceptación del Deudor Cedido en la forma antes

indicada, conforme lo establecido en la condición previa a entrada en vigencia del presente Contrato Marco.

Asimismo el MUTUARIO remitirá conjuntamente via una comunicación al Deudor Cedido, notificándole la cesión de los Créditos Cedidos, indicándole que el pago de los Créditos Cedidos deberá realizarse en la Cuenta del Mutuante, consignándose que se remite por correo el original de la comunicación.

Cumplido ello, el MUTUARIO requerirá a un escribano público la certificación del texto de la misma, su destinatario domicilio y su despacho mediante correo internacional por un servicio que brinde constancia de su entrega y recepción.

4.7    El presente Contrato no implica de forma alguna la transferencia por el MUTUARIO al MUTUANTE de las obligaciones emergentes de los contratos que causen los Créditos Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los créditos cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas producirá automáticamente de pleno derecho la Mora del MUTUARIO. De igual manera se producirá la Mora de pleno derecho con los efectos antes citados en el caso de que, con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO, el Deudor Cedido rescinda o resuelva los contratos de compraventa de mercadería que causen los Créditos Cedidos, o de cualquier forma discontinúen o terminen su relación comercial con el MUTUARIO, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y el Deudor Cedido.

4.8    El MUTUARIO declara y garantiza al MUTUANTE
(a)    el cobro de los Créditos Cedidos.

(b)    la forma instrumental de los mismos.

(c)    la legitimidad de los Créditos Cedidos y que los mismos son de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

(d)    que no se encuentra inhibido para disponer de sus bienes;

(e)    que no adeuda suma alguna al Deudor Cedido que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos;

(f)    que no ha percibido suma alguna derivada de los Créditos Cedidos, y que los mismos no han sido cedidos total ni parcialmente a persona física o jurídica alguna con anterioridad.

10

(g)     la autenticidad de los firmas de todo documento que acredite la causa de los Créditos Cedidos.

(h)     que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo - pero no limitado a- la entrega en tiempo y forma al Deudor Cedido de la mercadería objeto de los Créditos Cedidos.

(i)     que el monto de los Créditos Cedidos depositado en la Cuenta del Mutuante durante el Plazo de Disponibilidad será equivalente como mínimo al 110,00% del monto de la Línea de Crédito

(j)     que todos los Créditos Cedidos serán facturados por el MUTUARIO directa y exclusivamente al Deudor Cedido, debiéndose abstener de vender o facturar los productos comprendidos en el contrato adjunto como Anexo I a terceros distintos del Deudor Cedido, aun cuando cuente con el consentimiento de este último.

CLÁUSULA QUINTA. CANCELACIÓN DE LAS SUMAS ADEUDADAS, APLICACIÓN DE LOS CRÉDITOS CEDIDOS AL PAGO DE LAS SUMAS ADEUDADAS, RECURSO DEL MUTUARIO.

5.1     El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, -mediante depósito de las mismas en la Cuenta del Mutuante

5.2     A los efectos mencionados en la Sección 5.1 antes referida, los fondos del Crédito Cedido depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas del siguiente modo:

(a)     Durante los meses en que NO exista Fecha de Vencimiento (entendiéndose por tales aquellos meses transcurridos entre la efectivización del desembolso requerido en cada Solicitud de Desembolso hasta el mes calendario inmediato anterior al de la Fecha de Vencimiento), el MUTUANTE transferirá los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante, dentro de las 48 hs de acreditado a la Cuenta del Mutuario.

(b)     Durante los meses correspondientes a las Fechas de Vencimiento (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante a cancelar la Suma Adeudada a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso de que los fondos del Crédito Cedido depositados durante tales meses excedan el monto de la Suma Adeudada, el

excedente será transferido al MUTUARIO de la forma indicada en el acápite (a) de la presente Sección 5.2. En el caso de que los fondos del Crédito Cedido depositados durante tales meses no fuesen suficientes para cubrir el importe de la Suma Adeudada, el MUTUARIO será responsable de aportar la diferencia, y abonar así el importe total de la Suma Adeudada, bajo apercibimiento de Mora.

(c) Todos los fondos correspondientes al Crédito Cedido que sean depositados en la Cuenta del Mutuante con posterioridad a la cancelación total de la Línea de Crédito Adeudada y en exceso de la misma, serán reintegrados al MUTUARIO en la forma indicada en el acápite (a) de la presente Sección 5.2.

5.3    En caso de Mora, la totalidad de los fondos del Crédito Cedido depositados en la Cuenta del Mutuante se aplicarán a cancelar tanto la Línea de Crédito Adeudada y cualquier otra suma adeudada por el MUTUARIO bajo los Documentos de la Operación.

5.4    Habida cuenta del recurso del MUTUANTE en la cesión de los Créditos Cedidos al MUTUANTE, en caso de que por cualquier causa, el importe de los Créditos Cedidos depositados en la Cuenta del Mutuante no fuesen suficientes para cubrir el pago de la Suma Adeudada en las Fecha de Vencimiento correspondiente a un mes determinado, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

## CLÁUSULA SEXTA: MONEDA DE PAGO

6.1    El MUTUARIO asume que el pago del importe total o el saldo que eventualmente adeude en virtud de los Documentos de la Operación - incluyendo el pago de la Línea de Crédito Adeudada- deberá ser necesariamente abonado con Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de la Línea de Crédito Adeudada así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago. Asimismo el MUTUANTE asume que la transferencia que debe realizar a favor del MUTUARIO de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2 a) y c), así como los intereses punitorios y demás sumas a ser transferidas al MUTUARIO en virtud del presente, se

12

cancelen en Dolares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviviente en el pago.

**6.2** En atención a lo dispuesto en la Cláusula 6.1, en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO y en su caso el MUTUANTE deberán igualmente abonar las sumas en moneda de la Línea de Crédito Adeudada la y cualquier otra suma pagaderas en virtud de los Documentos de la Operación en Dolares para el caso del MUTUARIO y la transferencia de los fondos del Crédito Cedido que el Deudor Cedido deposite en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) para el caso del MUTUANTE, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUARIO o MUTUANTE, según el caso:

**6.2.(a).** Mediante la compra con Pesos de la moneda que sea en ese momento de curso legal en la República Argentina, de cualquier titulo en Dolares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dolares sea igual a la cantidad de dicha moneda adeudada bajo los Documentos de la Operación, o bien

**6.2.(b).** Mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de cualquier titulo en Dolares, a satisfacción expresa del MUTUANTE (o del MUTUARIO en su caso) y con cotización en Dolares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE (o el MUTUARIO) en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dolares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo los Documentos de la Operación, o bien

**6.2.(c).** En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO (o al MUTUANTE en su caso) llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren para adquirir la totalidad de los Dólares adeudados por el MUTUARIO (o el MUTUANTE en su caso) bajo los Documentos de la Operación, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

13

**6.2.(d).** Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en las Fechas de Vencimiento bajo el Contrato Marco, para la adquisición de Dólares.

**6.3**     Queda expresamente establecido que en cualquiera de las alternativas detalladas en 6.2.(a). a 6.2.(d)., las sumas adeudadas por el MUTUARIO (o el MUTUANTE en su caso) sólo se considerarán pagadas y dicho pago tendrá efecto liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante (o en la Cuenta del Mutuario en su caso), la cantidad de Dólares adeudada bajo los Documentos de la Operación.

**6.4**     Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 6.2.(a). a 6.2.(d) precedentes serán pagados por el MUTUARIO (o por el MUTUANTE en su caso).

**6.5.** Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquel al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE (o el MUTUARIO en su caso) pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO (o el MUTUANTE en su caso) en una moneda distinta de Dólares, la obligación de pago del MUTUARIO (o del MUTUANTE en su caso) de cualquier suma adeudada bajo los Documentos de la Operación sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTUANTE (o el MUTUARIO en su caso) haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE (o el MUTUARIO en su caso) pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo los Documentos de la Operación, el MUTUARIO (o el MUTUANTE en su caso) acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE (o al MUTUARIO en su caso) de esa pérdida.

## CLAUSULA SEPTIMA:     MANIFESTACIONES     DECLARACIONES     Y COMPROMISOS DEL MUTUARIO.

**7.1.**     Manifestaciones y Declaraciones del MUTUARIO.

A fin de inducir al MUTUANTE a celebrar el Contrato Marco y otorgarle la Línea de Crédito, el MUTUARIO manifiesta y declara, a la fecha del presente Contrato Marco y hasta que el mismo se extinga, lo siguiente:

**7.1.1.**     Que el MUTUARIO es una cooperativa de primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades

14

necesarias para llevar a cabo sus respectivas operaciones o negocios en los que participa en la actualidad; y

7.1.2.   Que el MUTUARIO no está obligado a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a sus socios, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato Marco y/o de las Garantías; y

7.1.3.   Que el Contrato Marco y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO está legalmente autorizado y capacitado para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asambleara ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

7.1.4.   Que el MUTUARIO y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial, arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

7.1.5.   Que el MUTUARIO no tiene pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en el Contrato Marco, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

7.1.6.   Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativa competente a que se hallare sometido el MUTUARIO y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, Contrato Marco u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

7.1.7.   Que no existe ningún derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza que impida y/o prohíba y/o límite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad

15

de la documentación de las Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

**7.1.8.** Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

**7.1.9.** Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato marco, acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el **Contrato Marco** y las **Garantías**, y que toda la información que ha proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

**7.1.10.** Que el balance del MUTUARIO al 30 de Junio de 2007, los correspondientes estados de resultados y situación patrimonial, así sus y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2007 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

**7.1.11.** Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda, o mejor derecho alguno; y

**7.1.12.** Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, y para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

**7.1.13.** Que conforme el conocimiento actual del MUTUARIO, el Deudor Cedido no se encuentra en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registra con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

**7.1.14.** Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tiene y tendrán en todo momento el rango más preferente y el endeudamiento del MUTUARIO.

16

7.1.15. Los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental han sido cumplidas;

7.1.16. Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el cumplimiento de las operaciones previstas en los Documentos de la Operación;

7.1.17. Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

7.1.18 Que cumplen y realizan todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulten aplicables.

**7.2    Compromisos y Obligaciones del MUTUARIO.**

Desde la firma del presente Contrato Marco y durante todo el tiempo en que cualquier suma debida bajo el Contrato Marco se encuentre pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO se compromete firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

7.2.1. A pagar debida y puntualmente las Sumas Adeudadas, así como los gastos referidos en la Cláusula NOVENA, de conformidad con los términos y condiciones que se establecen en el presente Contrato Marco; y

7.2.2. A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que el MUTUARIO, según el caso, los disputase por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad; y

7.2.3. A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contrato marcos, seguros, poderes,

17

prerrogativas, franquicias, inscripciones, licencias y similares necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato Marco y las Garantías; y

**7.2.4.** A no realizar actos que constituyan, o impliquen, o una fusión, absorción o cualquier otro acto al que, conforme a cualquier ley o norma, pudieran oponerse los acreedores del MUTUARIO, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, o (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

**7.2.5.** A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato Marco y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

**7.2.6.** A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente al MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional, (ii) estados contables semestrales (iii) estados contables trimestrales, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos semestres; los estados contables (iii) deberán ser presentados dentro del los sesenta (60) días corridos de los respectivos trimestres; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE; y

**7.2.7.** A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato Marco y las Garantías, lo que implica, entre otras cosas, la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato Marco, y

18

7.2.13. A no reducir su capital; y

7.2.14. A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

7.2.15. A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato Marco; y



7.2.16. A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiladas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiladas.

7.2.17. A no a adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

7.2.18. A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables, y a exhibir tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta del Mutuario desembolsados bajo el presente Contrato Marco, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato Marco suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3602 del BCRA y/o sus complementarias y modificatorias.

7.2.19. A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dicha cesión, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Créditos Cedidos;

7.2.20. A realizar sus mejores esfuerzos para causar que el Deudor Cedido deposite en la Cuenta del Mutuante en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

7.2.21. A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

7.2.22. A remitir mensualmente al MUTUANTE, antes del 5° día hábil de cada mes de vigencia del presente Contrato Marco, un informe con el pronóstico escrito de venta de sus productos al Deudor Cedido durante los dieciocho (18) meses subsiguientes a la fecha de entrega del informe antes referido.

20

7.2.23  A remitir al MUTUANTE  además del señalada en la Sección 7.2.22 precedente copia de todo informe, documento, reporte, orden de compra, factura, y/o pronóstico de ventas que remita al Deudor Cedido y/o que reciba del Deudor Cedido.

## OCTAVA:   MORA.

**8.1**    La Mora del MUTUARIO en el cumplimiento de las obligaciones pactadas en el presente Contrato Marco -incluyendo sin limitación, el pago en tiempo y forma cualquier Suma Adeudada- se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna, por el acaecimiento de cualquiera de los Eventos de Incumplimiento. Ocasionada la Mora, se producirá la caducidad de todos los plazos y el MUTUANTE tendrá derecho a considerar la totalidad de la Línea de Crédito Adeudada como una deuda de plazo vencido y exigir y demandar judicialmente el pago íntegro de la Línea de Crédito Adeudada, los intereses devengados y demás accesorios. Durante el tiempo que dure la Mora,  el MUTUANTE  tendrá  derecho a percibir  intereses compensatorios acumulativos pactados a una tasa de interés equivalente a la tasa implícita de cada Solicitud de fondos con más un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios.

**8.2**    El MUTUANTE también tendrá la facultad de considerar la Mora automática del MUTUARIO, considerar la Línea de Crédito Adeudada como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todas las sumas adeudadas en los siguientes Eventos de Incumplimiento:

(a)    si el MUTUARIO incumpliese con el pago en tiempo y forma de la Línea de Crédito Adeudada;

(b)    si un tercero pidiere la quiebra del MUTUARIO, del Deudor Cedido y/o y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(c)    si el MUTUARIO, el Deudor Cedido y/o pidiesen su propia quiebra, promoviese su concurso de acreedores o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial o una reestructuración de sus pasivos;

(d)    si el MUTUARIO y/o sus incurrieren en cesación de pagos, aún sin efectuarse los trámites antedichos;

(e)    Si se trabase embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO y/o sus, o se decretare la inhibición general de bienes de cualquiera de el MUTUARIO, por un monto en exceso de Dólares Estadounidenses DOS MILLONES (US$

21

2.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato Marco, y dichos embargos y/o medidas cautelares no fuesen levantadas, por cualquier causa que fuere, dentro de los treinta (30) días hábiles posteriores de solicitud el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible; o

(f) si en cualquier momento durante la vigencia del presente Contrato Marco se comprobare la falta de veracidad parcial o total, por parte del MUTUARIO, en las declaraciones contenidas en la Cláusula SEPTIMA del presente y/o el incumplimiento de los compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del presente Contrato Marco;

(g) si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el presente Contrato Marco;

(h) si el MUTUARIO y/o sus modificasen de cualquier forma su composición accionaria;

(i) si el MUTUARIO incumple cualquiera de las obligaciones a su cargo establecidas en el presente Contrato Marco y/o en los Documentos de la Operación,

(j) si el MUTUARIO incumpliere con cualquiera de sus obligaciones contractuales con el Deudor Cedido;

(k) si -con prescindencia de que hubiese o no incumplimiento por parte de el MUTUARIO en el pago de las Sumas Adeudadas- el MUTUARIO y/o el Deudor Cedido terminan el contrato que causa los Créditos Cedidos ;

(l) si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato Marco fueran abonadas en una moneda distinta del Dólar,

(m) Si se dictaren una o más sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaran medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes de el MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad de el MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato Marco, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

22

**(n)** Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso

**8.3** En adición a lo dispuesto en la Sección 8.1 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato Marco -en los términos establecidos en la Sección 8.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de las Sumas Adeudadas por parte del MUTUARIO o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las Sumas Adeudadas bajo este Contrato Marco los fondos del MUTUARIO depositados -o ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE.

<u>NOVENA: GASTOS.</u>

**9.1** Toda comisión, aranceles bancarios incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario), tributos y/o gastos que las operaciones derivadas directa y/o indirectamente de este Contrato Marco pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos, a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

**9.2** Todos los pagos bajo el Contrato Marco deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato Marco como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que correspondan el monto retenido, y deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago.

23

**9.3** El MUTUARIO se obliga a cumplir en tiempo y forma -a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del presente Contrato Marco y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**9.4** El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de las operaciones relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

## DÉCIMA: CESIÓN DEL CONTRATO MARCO.

El MUTUANTE podrá ceder el presente Contrato Marco en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE, o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

## DÉCIMO PRIMERA: VIGENCIA. INDEMNIDAD.

**11.1** El presente Contrato Marco así como todas las Garantías mantendrán su vigencia hasta que se cumplimenten en su totalidad los derechos y/o obligaciones de las Partes bajo el presente Contrato Marco. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato Marco, las Cláusulas NOVENA, DÉCIMO PRIMERA y DÉCIMO TERCERA subsistirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**11.2** El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato Marco y las Garantías y del cumplimiento de las obligaciones previstas en ellos, o de la celebración de las operaciones previstas en ellos; (ii) el Crédito Cedido adeudado con más los intereses según el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial,

24

relacionado con cualquiera de las circunstancias previstas en esta Cláusula 11.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable, en la medida que la indemnidad de tales perdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada

## DÉCIMO SEGUNDA: AUTORIZACIÓN

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato Marco y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO.

En tal sentido, el MUTUARIO autoriza al MUTUANTE a presentar todo tipo de "financing statements" en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 9 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato Marco.

## DÉCIMO TERCERA: JURISDICCIÓN Y LEY APLICABLE.

13.1   El presente Contrato Marco es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

13.2   El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato Marco. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

13.3   Nada de lo dispuesto precedentemente en el presente Contrato Marco afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada, incluyendo la facultad del MUTUANTE de iniciar la ejecución judicial y/o extrajudicial de los Pagarés en la República Argentina.

13.4   El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondiente a y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

25

13.5  Si por cualquier motivo su agente autorizado a los efectos de recibir **notificaciones** en 80 SW 8th Street , Suite 2000 - Miami, Fl, 33130-1003, NY, USA no estuviere **presente, el MUTUARIO** acepta y consiente que las notificaciones dispuestas en cualquier **acción,** juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en la Sección 13.8 de la presente Cláusula.

13.6  Las notificaciones efectuadas de la manera establecida en la Sección 13.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

13.7  El MUTUARIO irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE, y en especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total y/o parcial comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al Contrato Marco en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole.

13.8  Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato Marco deberán ser remitidas a los domicilios indicados a continuación.

MUTUARIO: 1) 80 SW 8th Street , Suite 2000 - Miami, Fl, 33130-1003 - USA

2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina

MUTUANTE:   Telestone  8   Teleport, Nantaweg; 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands

**DECIMO CUARTA: FIRMAS Y RECEPCIÓN DE INSTRUMENTOS.**
Se firman 2 (dos) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 1 (un) juego en poder del MUTUANTE  y 1 (un) juego en poder del MUTUARIO.

**DECIMO QUINTA: LUGAR Y FECHA.**

26



Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina y por el
MUTUANTE en Amsterdam, a los 30 días del mes de Noviembre de 2007.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: IIC TOF B.V.
Nombre:
Carácter:

27



ACTA DE CERTIFICACION DE FIRMAS

F 003850242

Buenos Aires, 30 de Noviembre de 2007. En mi carácter de Escribano

Titular del Registro Notarial N° 60

CERTIFICO, Que las firmas que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 42 del

LIBRO número 86 han sido puesta/s en mi presencia por la/s persona/s

cuyos nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe: Mario César MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad SANCOR COO-

PERATIVAS UNIDAS LIMITADAS de acuerdo a la documentación que me

exhibe y se considera facultades suficientes para suscribir el documento ad-

junto.



ANEXO I:
COPIA "Exclusive Purchase Agreement"



28

ANEXO II
Declaración Jurada con Pronóstico de ventas Mínimas del MUTUARIO

ANEXO III

Modelo de Pagaré (sin protesto)

Buenos Aires, ___ de _____ de 200_

US$ _____

A la vista, por igual valor recibido, _____ _____ una sociedad constituida de conformidad con las leyes de la República Argentina, con domicilio en _____ _____, República Argentina (en adelante el "Deudor") se obliga en forma irrevocable e incondicional a abonar a _____ _____ (en adelante el "Acreedor"), sus sucesores o cesionarios, en el domicilio sito en _____ _____, República Argentina, la suma neta de Dólares Estadounidenses _____ _____ _____ /100 (US$ _____ _____), en fondos de disponibilidad inmediata, libres de cualquier tipo de deducción que pudiera corresponder en razón de impuestos, tasas, contribuciones, cargos y/o aranceles de todo tipo, actuales o futuros, que pudieran efectuar las autoridades gubernamentales y/o impositivas de la República Argentina y/o de cualquier otra jurisdicción.

El presente pagaré es pagadero en Dólares Estadounidenses, (y NO en otra moneda) contra la sola presentación del mismo. Si los montos debidos en virtud del mismo no fueran abonados en tiempo y forma, el Deudor se obliga a abonar al Acreedor todos los costos y cargos que demande su cobro (judiciales y/o extrajudiciales), incluyendo honorarios, razonables de abogados. Si el presente Pagaré no fuera íntegramente abonado a la Fecha de Vencimiento, producirá la mora sin necesidad de interpelación alguna, hará exigible el saldo de otras obligaciones que el Deudor tuviera pendiente con el acreedor, operándose la caducidad de los plazos. El Deudor se obliga asimismo a pagar al Acreedor – además del capital adeudado- los intereses correspondientes al mismo a razón de una tasa del ___ % anual, calculados desde la Fecha de Vencimiento, hasta el día del efectivo pago total del presente Pagaré.

El Deudor declara y garantiza que la deuda asumida mediante el presente Pagaré constituye una obligación válida, legal y exigible de su parte, ejecutable contra el Deudor de conformidad con los términos aquí contenidos, y dicha obligación se encuentra tan pronta a la altura de todas las demás obligaciones asumidas por el Deudor. La obligación documentada en este Pagaré tiene carácter indivisible y se pacta la solidaridad en caso de pluralidad de deudores.

a) Todas las desavenencias que deriven de este Pagaré o que guarden relación con este serán resueltas definitivamente ante los Tribunales Ordinarios de la Ciudad de Buenos Aires. La sentencia que se dicte contra el Deudor en cualquiera de dichos juicios, acciones o procedimientos, será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

b) Nada de lo dispuesto precedentemente en el presente Pagaré afectará el derecho del Acreedor a iniciar procedimientos legales o de cualquier otra forma demandar al Deudor en cualquier otra jurisdicción que el Acreedor considere conveniente.

c) Todas las notificaciones judiciales y/o extrajudiciales relacionadas con el presente Pagaré deberán ser remitidas a los domicilios indicados a continuación:

Deudor:
Acreedor:

d) Las notificaciones efectuadas de la manera establecida en el acápite "c" del presente pagaré serán consideradas personales, válidas, renuncias y obligatorias para el Deudor.

e) El Deudor irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en este pagaré que intervenga en cualquier pleito, acción o procedimiento iniciado por el Acreedor, y muy especial el Deudor renuncia a oponer cualquier defensa o alegación de incompetencia, o inconveniente foral; respecto del tribunal que intervenga en tal acción, juicio o procedimiento, y en general a oponer cualquier defensa que no sea la de pago documentado.

Deudor

Por: _____
Nombre: _____
Carácter: _____

## ANEXO IV

### MODELO DE SOLICITUD DE DESEMBOLSO

Buenos Aires, ___ de _____ de 2007

Sres.
IIG TOF B.V.

De nuestra consideración:

Nos dirigimos a Uds. con relación al Contrato Marco de Línea de Crédito suscripto entre Uds. y _____ con fecha ___ de _____ de 2007 (el "Contrato Marco"), cuyas definiciones, términos y condiciones resultan aplicables a la presente Solicitud de Desembolso. En conformidad con lo establecido en la Cláusula _____ del Contrato Marco, solicitamos a Uds. un desembolso de acuerdo a los siguientes términos

(i) El monto del desembolso solicitado mediante la presente es de US$ _____ (Dólares Estadounidenses _____ )

(ii) La/s Fecha/s de Vencimiento del desembolso antes referido serán la/s siguiente/s:
Fecha Vto. _____ Moneda e Importe
___/___/___ US$ _____
___/___/___ US$ _____

(iii) La Suma Adeudada por dicho desembolso asciende a un total de US$ _____ (Dólares Estadounidenses _____ ), comprensiva del monto del desembolso con más los intereses aplicables hasta la/s Fecha/s de Vencimiento antedichas

(iv) Adjuntamos a la presente un Pagaré a vuestro favor pagadero a la vista, por la suma total de US$ _____ (Dólares Estadounidenses _____ )

Fecha Emisión _____ Fecha Vto. _____ Moneda e Importe
___/___/___ A la vista US$ _____

En caso de que la presente Solicitud de Desembolso sea acordada por Uds., les solicitamos que, dentro del Plazo de Acreditación, remitan los fondos del desembolso requerido a la Cuenta del Mutuario indicada en el Contrato Marco

Sin otro particular, saludamos a Uds. atentamente.

_____
_____
Nombre:
Carácter:

ANEXO V

MODELO DE NOTIFICACION AL DEUDOR CEDIDO

Messrs.:

Buenos Aires, _____ ___, 2007

FONTERRA CO-OPERATIVE GROUP LIMITED ("FONTERRA")

Dear Sirs:

We address to you in order to give you notice of the Loan and Assignment Agreement dated _____ __, 200_, executed between SANCOR COOPERATIVAS UNIDAS LTDA. ("SANCOR") and IIG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V. ("IIG TOF BV"), whereby SANCOR has assigned and transferred to IIG TOF BV, and IIG TOF BV has accepted and received all the rights and credits (both credits existing at present or credits that may exist in the future) derived from all the proceeds derived from the EXCLUSIVE PURCHASE AGREEMENT executed between FONTERRA and SANCOR on October 01st, 2007, the amendments and renewals thereof. Save for the assignment of proceeds hereinbefore mentioned, IIG TOF BV shall have no right or lien over the Products referred to in said EXCLUSIVE PURCHASE AGREEMENT, which shall remain the property of SANCOR or FONTERRA.

Therefore, SANCOR and IIG TOF BV hereby confirm that pursuant to the terms and conditions of the aforementioned Loan and Assignment Agreement all the sums and credits hereinabove referred -including, without limitation, the credits derived from the invoices and other documentation that SANCOR submit to you as a consequence of said commercial transactions- are to be fully paid to IIG TOF BV by wire transfer of the corresponding funds to the following bank account

_____

The aforementioned Assignment Agreement shall not transfer and/or modify the liability of SANCOR derived from the referred commercial transactions and business operations. Thus, SANCOR remains being fully and exclusively responsible for any and all the obligations derived thereof.

Sincerely yours,

_____
By: SANCOR COOPERATIVAS UNIDAS LIMITADA
Nombre: Mario Magdalena
Caracter: Apoderado

_____
By: IIG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.
Nombre:
Caracter:

Acknowledged and accepted.

_____
FONTERRA CO-OPERATIVE GROUP LIMITED
Name:
Capacity:

32





Fonterra Co-operative Group Limited

## Solicitor's Certificate – Internal

TO: Emma Parsons

RE: Purchase Agreement – Fonterra Limited and SanCor Cooperativas Unidas Limitada ("the Document")

I confirm that I have reviewed the Document from a legal perspective and that:

(a) The Document reflects the instructions of Emma Parsons on the commercial content of the Document.

(b) No legal risks of an important or unusual nature have been identified;

(c) I am not aware of any legal enquiry in the document areas of this transaction which should have been made, which has not been made;

(d) The transaction that relates to the Document is authorised by the exercise of a delegation under Fonterra's Delegated Authorities by Mark Robins and Brian Willis is entitled to execute the Document.

(e) To the best of my knowledge the Document does not breach any legal obligations of Fonterra Limited and complies with all relevant New Zealand laws.

The Document is therefore acceptable for execution by Fonterra Limited

Jason Sandford
Corporate Counsel
Fonterra Co-operative Group Limited

Date: 28 September 2007





FONTERRA LIMITED

SANCOR COOPERATIVAS UNIDAS LIMITADA

---

EXCLUSIVE PURCHASE AGREEMENT



PRIMERA ENMIENDA AL CONTRATO DE LINEA DE CREDITO
PARA LA PRE-FINANCIACION DE EXPORTACIONES

Entre

RG TOP B.V., representada por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representada en este acto por los Sres. Sr. Jaime Ibáñez y Mr. Ernesto ... en su carácter de ___Cancelesado___ domiciliado en Telestone ... Naritaweg 165, P.O. Box 1343, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE") de una parte, y

SANCOR COOPERATIVAS UNIDAS LIMITADA una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tucumán 202 - 3° Piso - Capital Federal, República Argentina representado en este acto por el Sr. Mario Marquardt, en su carácter de apoderado (en adelante el "MUTUARIO") de la otra parte, y

El MUTUANTE y el MUTUARIO (ciñen conjuntamente denominados los "Partes", y

CONSIDERANDO

(a) Que con fecha 30 de Noviembre de 2007, las Partes suscribieron un Contrato Marco de línea de crédito para la pre-financiación de exportaciones, que en copia se adjunta como Anexo A, cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en su medida que no sean expresamente modificadas por la presente Primera Enmienda

(b) Que el MUTUARIO ha solicitado al MUTUANTE, aumentar en Dólares Estadounidenses Veinticinco Millones con US$ ... (USD ...) el monto de la Línea de Crédito

(c) Que el MUTUANTE está dispuesto a aceptar el aumento de la Línea de Crédito requerido siempre que el MUTUARIO otorgue garantías adicionales del pago, a cuyo fin el MUTUARIO está dispuesto a ceder nuevos créditos a favor del MUTUANTE, y a aceptar y endosar warrants a favor del MUTUANTE.

En mérito a las consideraciones precedentes ante expresadas, las Partes acuerdan suscribir la presente Primera Enmienda al Contrato Marco (la "Primera Enmienda") de conformidad con los términos y excepciones incluidos en las siguientes cláusulas

1. Incorporase a la Cláusula PRIMERA del Contrato Marco las siguientes definiciones

"ABN AMRO SCHUMAN" significa ABN AMRO SCHUMAN, INC., una firma organizada bajo las leyes del Estado de New ... con domicilio ... 40 New Dutch Lane, Fairfield, NJ ...

"Fonterra" significa FONTERRA LIMITED, una firma registrada bajo las leyes de Nueva Zelanda, con domicilio en ... Nuevas Sitios, Auckland, New Zealand

"NAHVEN on POVSA" significa Refven S.A. con PDVSA Services, Inc., una firma organizada bajo las leyes de Estado ... Estados Unidos de Norteamérica, con domicilio en ... Estados Unidos de Norteamérica

Warrants significa los Warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a ... de explotación inmueble de propiedad del MUTUANTE u otra mercadería a satisfacción del MUTUANTE entregados por el MUTUARIO a favor del MUTUANTE por los ... establecidos en la Cláusula SEXTA BIS del presente Contrato Marco ... que le dan cumplimiento de los obligaciones asumidas por el MUTUARIO bajo el Contrato Marco

2. Modificanse las definiciones de "Créditos Cedidos", y "Deudores Cedidos" de la Cláusula PRIMERA del Contrato Marco las cuales quedan redactadas del siguiente modo

"Créditos Cedidos" significa los siguientes créditos del MUTUARIO contra los Deudores Cedidos

(i) todas las créditos ... de comercialización al MUTUARIO en virtud de la venta de mercadería ... por el MUTUARIO contra ... derivada del contrato denominado "TRANSFER PURCHASE & SALE AGREEMENT" cuya ... se adjunta al presente Contrato como Anexo ... a las condiciones generales complementarios y/u

reemplazantes de dichas cartas adjuntas como Anexo I, así como los conocimientos de embarque de todas sus cartas embarcados (en virtud del mismo). Se adjunta asimismo como Anexo II una Declaración Jurada del MUTUARIO con el Pronóstico de Ventas mensual que el MUTUARIO estima realizar a la venta durante los primeros 18 (dieciocho) meses de la vigencia del presente Contrato Marco

(ii)      todas las órdenes y condiciones que se respaldarían al MUTUARIO en virtud de la venta de mercadería que el MUTUARIO realizó a BARIVEN S.A c/o PDVSA derivada de la Orden de Compra Purchase Order Nº 5105892704 de fecha 26 de Marzo de 2008, emitida por BARIVEN c/o PDVSA a nombre 3er el MUTUARIO, cuya fotocopia se adjunta el presente contrato como Anexo B. En las órdenes, contraídas conjuntamente para ser derivadas de dicha orden de compra adjunta como Anexo B, así como los conocimientos de embarque, facturas y demás adjuntos en virtud del mismo)

(iii)     todas las órdenes y condiciones y facturas que se respaldarían al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realizó a Arthur Schuman y/o sus Afiliadas por todos y cada uno de ellos, es por las condiciones hasta la concesión total de la Línea de Crédito Adecuada, incluyendo todos los términos del crédito derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de mercadería que el MUTUARIO celebró con Arthur Schuman.

Deudores Cedidos: es cada uno de Arthur Schuman y/o Bariven c/o PDVSA.

"Línea de Crédito" significa a carta brote de crédito que, siendo a los términos y condiciones de los Documentos de la Operación, en virtud del a solicitud del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50 000 000/00)

3.        Las modificaciones antes referidas afectarán la relación a favor del MUTUANTE de los créditos del MUTUARIO contra Arthur Schuman y BARIVEN c/o PDVSA precedentemente descriptas, en los términos de la Cláusula CUARTA del Contrato Marco. Consiguientemente, dentro de las 48 hs de suscripto el presente y como condición para cualquier incremento derivado bajo el Contrato Marco, el MUTUARIO se obliga a entregar dicha cesión a Arthur Schuman y Bariven S.A. c/o PDVSA Services, Inc. en los términos establecidos en la Cláusula 4.6 de la misma fecha.

4.        Antes del 31 de Agosto de 2 08 el MUTUARIO se compromete a entregar y endosar a favor del MUTUANTE Warrants por una suma equivalente al diez por ciento (10%) de la Línea de Crédito Adecuada. Transcurrido un mes más de la fecha antes mencionada, dicho porcentaje deberá haber aumentado al quince por ciento (15%) de modo tal que antes del 30 de Septiembre de 2008 el MUTUARIO deberá haber entregado y endosado a favor del MUTUANTE Warrants por un monto no inferior a una suma equivalente a quince por ciento (15%) de la Línea de Crédito Adecuada. Consiguientemente con las previsiones como Cláusula SEXTA BIS de: Contrato Marco la siguiente

"CLÁUSULA SEXTA BIS WARRANTS

6BIS.1  Antes del día 5 de Septiembre de 2008 el MUTUARIO se obliga a entregar al MUTUANTE Warrants endosados a a favor de esta último por un monto equivalente al quince por ciento (15%) de la Línea de Crédito Adecuada a cuya fecha, obligándose a mantener los mismos reemplazándolos en caso de verses o vencimiento en existencia en la siguiente Sección 6.2, por dicho monto durante la total duración del presente Contrato Marco

6BIS.2  El MUTUARIO se obliga a que antes del 3° de Agosto de 2008 el MUTUARIO cuente en su poder con Warrants por un monto no inferior al diez por ciento (10%) de la Línea de Crédito Adecuada a cuya parte del 31 de Septiembre de 2008 y durante toda la vigencia del Contrato Marco el MUTUARIO cuente con Warrants por un monto no inferior a una suma equivalente a quince por ciento (15%) de la Línea de Crédito Adecuada. Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art 26 de la Ley 9642, el MUTUARIO se obliga a reemplazar periódicamente los Warrants antes del vencimiento de los 180 (ciento ochenta) días contados desde la fecha de emisión de los mismos, debiendo entregar al MUTUANTE nuevos Warrants en las mismos art el siguiente, en su caso, el os los Warrants originales.

6BIS.3  A fin de determinar la realización de monto de cada warrant del MUTUARIO deberá depositar para la emisión de los Certificados de Depósito correspondientes a los Warrants, se tomará en cuenta el precio de mercado de dicha mercadería, vigente al momento de dicho depósito. El

2



F 004319444

Buenos Aires, 11 de Junio de 2008. En mi carácter de Escribana

Titular del Registro Nacional N° 901

CERTIFICO: Que la/s firma/s que obra/n en el

documento que adjunto a esta hoja, cuyo requerimiento de certificación de su/s

firma/s que se formaliza simultáneamente por ACTA número 144 del

LIBRO número 90, es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación y de

cuyo conocimiento doy fe. Marco Cesar MAGDALENA L.E. 8.106.144.- Mani-

fiesta actuar en su carácter de apoderado de la sociedad "SANCOR CO-

OPERATIVAS UNIDAS LIMITADAS" con domicilio en Sunchales, Provincia

de Santa Fe, e inscripta en la Matrícula 772 del Registro Nacional de Coo-

perativas de la Provincia de Santa Fe, Departamento Castellanos, con-

forme lo acredita con el poder de fecha 25 de junio de 1993, pasado al folio

638 del Registro 200 de la ciudad de Sunchales, Provincia de Santa Fe, a

cargo del escribano Horacio Remondino, la documentación relacionada

tengo a la vista y se confiere facultades suficientes para suscribir el docu-

mento adjunto.

mantenimiento de la caución constituida por los Warrants, por los mismos y en la forma precedentemente estable... constituye una condición esencial para el mantenimiento de la presente operación... cualquier motivo que fuera, en la calidad y/o cantidad de mercadería a las depositada produzca así sea más la Mora automática del MUTUARIO sin necesidad de interpelación alguna, produciendo la caducidad de todos los plazos con los efectos establecidos en la Cláusula NOVENA del presente Contrato.

**6BIS.4** El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, e que la mercadería descripta en los mismos no reconoce ni reconocerá gravamen ni restricción alguna... declarada en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48 de hacerlo a haceria. El incumplimiento de dicha comunicación producirá la Mora automática del MUTUARIO y en todos los casos, el MUTUARIO deberá reintegrar por los daños y perjuicios que su incumplimiento pudiera ocasionar al MUTUANTE

**6BIS.5** En caso de cese del MUTUARIO por cualquier causa que fuera, el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643... En el supuesto de subasta de la mercadería radicada en los Warrants, el MUTUANTE se reserva expresamente la facultad de desinteresar a dichos acreedores.

**6BIS.6** Será responsabilidad exclusiva y única del MUTUARIO la inscripción del endoso de los Warrants en los libros de la empresa depositaria (Warrantera) de la mercadería indicada en los mismos, como así también el pago de todos los gastos y honorarios que correspondan a dicha empresa almacenadora.

Incorpórase a la Cláusula SÉPTIMA, Sección 7.1, las siguientes declaraciones y garantías del MUTUARIO

**7.1.19** Que el Estado tendrá ventas MENSuales equivalentes a la suma de US$ 46.408.615,56 (Dólares Estadounidenses CUARENTA Y SEIS MILLONES CUATROCIENTOS OCHO MIL SEISCIENTOS QUINCE CON 56/100)

**7.1.20** Que el Estado tendrá cuentas a cobrar como mínimo a una suma equivalente al cincuenta por ciento (50%) de la Línea de Crédito.

**7.1.21** Que el Estado tendrá Activo Sólido a mantenerá como mínimo a una suma equivalente a treinta por ciento (30%) de la Línea de Crédito.

**7.1.22** Que a partir del 10 de Septiembre de 2008 y en todo momento durante la vigencia del presente Contrato el MUTUANTE tendrá con Warrants por una suma equivalente al quince por ciento (15%) de la Línea de Crédito."

**6.** Con excepción de aquellas cláusulas expresamente modificadas por la presente Primera Enmienda, todas las demás cláusulas, condiciones y Cláusulas del Contrato Marco permanecen inalterables manteniéndose en su totalidad plena vigencia.

Suscripto por el MUTUARIO en la ciudad de Buenos Aires, República Argentina, a los 11 días del mes de Junio de 2008, y por el MUTUANTE en su sucursal en Ámsterdam, a los 13 días del mes de Junio de 2008.

Firma/s certificada/s en Folio
...
De As...

Por SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre Silvia Magdalena
Carácter Apoderada

MARTIN R AHANA (h)
( Escribano )
MAT 4371

Por ...B.V.
Nombre ...
Carácter ...



MODELO NOTIFICACION A BARIVEN

Buenos Aires, June __° 2008

Messrs.
Bariven S.A. c/o PDVSA Services, Inc
Purchasing Agent (PLUG)
1293 Eldridge Parkway
Houston, Texas 77077, USA
At: _____
Phone: _____
E-mail: _____

Dear Sirs

We address to you in order to give you notice of the Assignment Agreement June __° 2008, executed between SANCOR COOPERATIVAS UNIDAS LTDA ("SANCOR") and HG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., ("HG"), whereby SANCOR has assigned and transferred to HG and HG, has accepted and received all the rights and credits derived from the PURCHASE ORDER N° S100062284 dated March 26° 2008 corresponding to the merchandise that you have requested to SANCOR which is attached hereto as ANNEX I

Therefore, SANCOR and HG hereby inform that pursuant to the terms and conditions of the aforementioned Assignment Agreement all the sums and credits derived from the purchase order hereinabove referred, including the credits derived from the invoices and other documentation that SANCOR submit to you as a consequence of said commercial transactions, are to be fully paid in HG by way transfer of the corresponding funds to the following bank account:

BANK:                 STATE STREET BANK AND TRUST
                      BOSTON MA
ABA#:                 011000028
SWIFT:                SBOSUS33
Credit:               TRUST INT. B.V.
Account#:             17137954
Further Credit:       HG TOF b.v. Sancor Cta.
Account#:             WCM N12,149

This aforementioned Assignment Agreement, terms and payment instructions are irrevocable and could only be modified through a new notice signed by the same parties and by the corresponding certifications

The aforementioned Assignment Agreement does not translate under any the liability of SANCOR derived from the referred commercial transactions and business operations. Thus SANCOR remains being fully and exclusively responsible for any and all the obligations derived therein

Sincerely yours,

For SANCOR COOPERATIVAS UNITAS LTDA
Nombre: Mario Magdalena
Carácter: Apoderado

Por: HG TOF B.V
Nombre: _____
Carácter: _____

Acknowledged and accepted

BARIVEN S.A. C/O PDVSA SERVICES, INC.
Name: _____
Carácter: _____

# ANEXO

## CONTRATO DE LINEA DE CREDITO PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre

IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. ~~...~~ en su carácter de _____, domiciliado en Telestone 8 - Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por una parte; y

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, representada en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por otra parte; y

El MUTUANTE y el MUTUARIO conjuntamente denominados las "Partes"; y

CONSIDERANDO:

(a) Que el MUTUARIO está interesado en obtener financiamiento de mediano plazo para destinarlo a la prefinanciacion de sus exportaciones

(b) Que la satisfacción de la necesidad de contar con financiamiento para prefinanciar las exportaciones que el MUTUARIO tiene en la actualidad, redundará en su beneficio, permitiéndole continuar con el desarrollo y ampliación de sus mercados externos;

(c) Que por las razones indicadas en el Considerando (b) anterior, y además, para facilitar el otorgamiento de un prestamo desde el punto de vista del riesgo crédito, el MUTUARIO está dispuesto a afectar bienes para garantizar el repago del crédito para prefinanciar sus exportaciones;

(d) Que el MUTUANTE está dispuesto a otorgar una linea de crédito de hasta Dólares Estadounidenses veinticinco millones con 00/100 (US$ 25.000.000,00) para el MUTUARIO, sujeto a los terminos y condiciones del presente Contrato, en la medida que y siempre y cuando (i) el MUTUARIO se obligue a su repago y al cumplimiento de todas las obligaciones asumidas bajo el Contrato, (ii) que las Garantías (conforme se las define mas adelante) se mantengan plenamente vigentes y exigibles hasta la reparacion del Contrato, (iii) se otorgue y perfeccione la cesion de los Créditos Cedidos (tal como se los define mas adelante)

En merito a las consideraciones precedentemente establecidas, se celebra el presente contrato de linea de credito, sujeto a las siguientes clausulas y condiciones:

PRIMERA:   DEFINICIONES.

"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra indole del MUTUARIO y/o sus Afiliadas y/o del MUTUANTE, o de sus proyecciones, consideradas en conjunto, o en la política económica, monetaria y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato Marco (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina), o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO no podrá cumplir u observar normalmente sus obligaciones bajo el presente Contrato Marco; o cualquier variación en el tipo de cambio Peso Argentino/Dolar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Condiciones Precedentes" significan las condiciones precedentes para la entrada en vigencia del Contrato Marco previstas en la Cláusula SEGUNDA.

"Contrato Marco" significa el presente contrato de línea de crédito suscripto entre las Partes.

"Créditos Cedidos" significa todos los créditos y derechos que le correspondan al MUTUARIO en virtud de la venta de mercadería que el MUTUARIO realice al Deudor Cedido derivada del contrato denominado "EXCLUSIVE PURCHASE AGREEMENT" cuya fotocopia se adjunta al presente Contrato como Anexo I (y las enmiendas, contratos complementarios y/o reemplazantes de dicho contrato adjunto como Anexo I, así como los conocimientos de embarque, facturas y/o remitos emitidos en virtud del mismo). Se adjunta asimismo como Anexo II una Declaración Jurada del MUTUARIO con el Pronóstico de Ventas mínimas que el MUTUARIO estima realizar al Deudor Cedido durante los primeros 18 (dieciocho) meses de la vigencia del presente Contrato Marco.

2

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

**BANK:** Satet Street Corp f/k/a Investors Bank & Trust Company
**ABA:** 011-001-438
**SWIFT:** INVBUS33
**Credit:** Client Funds
**Account:** 549-536-365
**Further Credit:** IIG TOF – Sancor CUL
**Account:** 02030-0420148

"Cuenta del Mutuario" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación o la que el MUTUARIO indique al MUTUANTE en forma fehaciente:

**BANCO:** Citibank N.A.
**DIRECCION:** New York, U.S.A.
**ABA:** 021000089
**SWIFT:** CITIUS33
**Cuenta Nro.:** 36976697
**A NOMBRE DE:** Banco Comafi S.A. Buenos Aires Argentina
**SWIFT:** QUILARBA
**CHIPS:** UID 320031
**A FAVOR DE:** SanCor Cooperativas Unidas Limitada
**CUENTA N°:** 000-0 129785
**REFERENCIA:** Prefinanciación de Exportación

"Deudor Cedido" significa FONTERRA LIMITED una firma organizada bajo las leyes de Nueva Zelanda, con domicilio en Fonterra Centre, 9 Princess Street, Auckland, New Zealand.

"Documentos de la Operación" significa el presente Contrato Marco, las Solicitudes de Desembolso derivadas del mismo, los Pagarés, y el contrato adjunto como Anexo I que causa los Créditos Cedidos.

"Dólares" y "US$" significa Dólares, Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula OCTAVA, Sección 8.2 del Contrato Marco; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato Marco.

"Fechas de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán indefectiblemente ser anteriores al 31 de Mayo de 2009.

"Garantías" significa los Pagarés y la cesión de los Créditos Cedidos.

"Línea de Crédito" significa la única línea de crédito que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses veinticinco millones con 00/100 (US$ 25.000.000,00).

"Línea de Crédito Adeudada" significa la sumatoria de todas las Sumas Adeudadas por el MUTUARIO bajo la Línea de Crédito incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula OCTAVA del presente Contrato Marco.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad o los negocios del MUTUARIO.

"Partes" significa conjuntamente el MUTUARIO y el MUTUANTE.

"Pagarés" significa los pagarés librados por el MUTUARIO a favor del MUTUANTE, de conformidad con el formato adjunto al Contrato Marco como ANEXO III, por un monto equivalente a la Suma Adeudada en cada Solicitud de Desembolso, conforme lo establecido en la Cláusula TERCERA del Contrato Marco.

"Pesos" moneda de curso legal en la República Argentina.

"Plazo de Acreditación" significa el plazo de tres (3) Días Hábiles contados desde la fecha de recepción efectiva de la Solicitud de Desembolso.

"Plazo de Confirmación" significa el plazo de cinco (5) días hábiles contados a partir de la fecha de acreditación de los fondos requeridos en la Cuenta del Mutuario, conforme una Solicitud de Desembolso.

"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Mayo de 2009, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

"Solicitud de Desembolso" significa el formulario sustancialmente idéntico al que se adjunta al presente en ANEXO IV, completo con todos los datos debidamente consignados, que el MUTUARIO deberá suscribir, con la firma de sus apoderados o representantes legales certificada ante escribano público.

"Sumas Adeudadas" significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Tasa de Descuento" significa la tasa de interés anual de descuento a ser pactada por las Partes en cada Solicitud de Desembolso que el MUTUANTE aplicará a cada desembolso de fondos que el MUTUARIO le solicite para calcular el monto de las Sumas Adeudadas.

## CLÁUSULA SEGUNDA: LA LÍNEA DE CRÉDITO.

### 2.1.    Disponibilidad de la Línea de Crédito.

(a) Disponibilidad Condicionada. Sujeto al cumplimiento específico de cada una y todas las Condiciones Precedentes, o a que el MUTUANTE dispense expresamente y por escrito el cumplimiento de una o todas las Condiciones Precedentes, sin estar obligado a ello bajo ninguna circunstancia, el MUTUANTE se compromete durante el Plazo de Disponibilidad, a mantener disponible la Línea de Crédito a favor del MUTUARIO, la que podrá ser utilizada exclusivamente para la prefinanciación de exportaciones del MUTUARIO, en la medida de las respectivas Solicitudes de Desembolso, conforme las condiciones y el procedimiento que se establece en este Contrato Marco.

(b) Vigencia. Una vez expirado el Plazo de Disponibilidad, cesará automática e irrevocablemente -sin necesidad de notificación judicial o extrajudicial alguna- el derecho del MUTUARIO de remitir cualquier Solicitud de Desembolso al MUTUANTE, salvo que el Plazo de Disponibilidad sea prorrogado expresamente y por escrito por el MUTUANTE, a su exclusiva satisfacción, que tal decisión sea fehacientemente notificada al MUTUARIO en tiempo hábil.

(c) **Monto de los Desembolsos.** El MUTUARIO podrá requerir los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la sumatoria total de los montos consignados en las respectivas Solicitudes de Desembolso alcancen el monto de la Línea de Crédito; en consecuencia, en ningún caso y bajo ningún supuesto, el MUTUANTE estará obligado, ni se podrá interpretar que esté obligado, a desembolsar una suma mayor a o por encima de la Línea de Crédito.

2.2.    **Condiciones Precedentes al otorgamiento de la Línea de Crédito.**

La validez y vigencia de la Línea de Crédito otorgada por el MUTUANTE bajo el presente Contrato Marco está condicionada a que, a criterio razonable del MUTUANTE, (i) se cumplan y mantengan plenamente vigentes a la firma del presente Contrato Marco, todas y cada una de las siguientes Condiciones Precedentes estipuladas en beneficio exclusivo del MUTUANTE y/o (ii) el MUTUANTE dispense en forma expresa y por escrito, una, algunas o todas las Condiciones Precedentes.

(a) **Aprobaciones Societarias.** (i) que certificada por escritura pública del poder general del MUTUARIO del cual surja que él o los funcionarios apoderados para la suscripción de los Documentos de la Operación se encuentran suficientemente facultados para dicho acto, y

(b) **Vigencia de las Manifestaciones y Declaraciones del MUTUARIO.** Que se encuentren en plena vigencia y continúen siendo ciertas, correctas y verdaderas, todas y cada una de las manifestaciones y declaraciones efectuadas por el MUTUARIO en la Cláusula SÉPTIMA del Contrato Marco, y

(c) **Inexistencia de Cambios Materiales Adversos, Efecto Materiales Adversos o Supuestos de Incumplimiento.** Que no hubiere ocurrido, ni se encontrare vigente, ni hubiere elementos fundados para prever ella-ocurrencia de uno o más Cambios Materiales Adversos, Efectos Materiales Adversos y/o de los Eventos de Incumplimiento (hubiere o no sido declarada la caducidad y aceleración de plazos) y que no hubiere ocurrido en conocimiento del MUTUARIO ninguna circunstancia que de cualquier forma hiciere peligrar, menoscabare o debilitare la plena vigencia, validez, plenitud, alcance, ejecutabilidad y/u oponibilidad frente a terceros de los Documentos de la Operación y de las Garantías, y

(d) **Notificación al Deudor Cedido.** Que el MUTUARIO haya notificado al Deudor Cedido la cesión del Crédito Cedido en los términos establecidos en la Sección 4.6 del presente Contrato Marco a cuyo efecto el MUTUARIO deberá entregar al MUTUANTE el original de tal notificación recibida y aceptada por el Deudor Cedido.

**CLÁUSULA TERCERA. CONDICIONES PRECEDENTES PARA EL DESEMBOLSO.**

3.1. <u>Solicitud de Desembolso</u>. A fin de solicitar al MUTUANTE un desembolso bajo la Línea de Crédito, el MUTUARIO deberá enviar por medio fehaciente y a satisfacción del MUTUANTE:

(i) el original de la Solicitud de Desembolso debidamente completada y firmada por el representante legal del MUTUARIO o apoderados con facultades suficientes, con su firma certificada por escribano público argentino; cada Solicitud de Desembolso deberá indefectiblemente contener el monto del desembolso requerido, la/s Fecha/s de Vencimiento del mismo y las Sumas Adeudadas que deberá pagar al MUTUANTE en tal/es Fecha/s de Vencimiento; y

(ii) un Pagaré por un monto equivalente a las Sumas Adeudadas, debidamente suscripto por el representante legal del MUTUARIO o apoderados con facultades suficientes, a plena satisfacción del MUTUANTE, con la firma debidamente certificada por un escribano público argentino.

3.2. <u>Falta de Responsabilidad por Desembolsar o No Desembolsar</u>. Sin perjuicio de lo dispuesto en la presente Cláusula, el MUTUANTE no tendrá responsabilidad de ningún tipo frente al MUTUARIO, por aceptar o rechazar cualquier Solicitud de Desembolso efectivamente recibida del MUTUARIO, siempre que el rechazo sea con causa- y por consiguiente, el MUTUARIO renuncia expresa e irrevocable a promover algún reclamo contra el MUTUANTE fundado en tal circunstancia o causa.

3.3. <u>Trámite posterior. Desembolso</u>. Una vez recibidos los documentos de la Solicitud de Desembolso por el MUTUANTE, el MUTUANTE procederá, a verificar, a su exclusiva discreción, que toda la información y documentación en ellos contenida sea correcta y conforme al Contrato Marco. Ello no obstante, el MUTUANTE no está obligado a realizar una auditoría legal o *due diligence* de los documentos de la Solicitud de Desembolso, y por consiguiente, no será responsable por la falsedad, inexactitud, omisión y/o falta de genuinidad de la misma. Sin perjuicio de ello, de estar este de acuerdo, a su satisfacción, con los documentos de la Solicitud de Desembolso, el MUTUANTE procederá, a su exclusiva discreción y satisfacción y aun sin estar obligado a ello bajo los Documentos de la Operación, a desembolsar y depositar los fondos solicitados en la Cuenta del Mutuario dentro del Plazo de Acreditación. La aceptación por el MUTUANTE de una Solicitud de Desembolso no lo obliga a aceptar cualquier otra Solicitud de Desembolso -siempre que el rechazo sea con causa- que al MUTUARIO le pueda presentar en forma simultánea o ulteriormente a aquella.

3.4. <u>Confirmación</u>. Dentro del Plazo de Confirmación, el MUTUARIO deberá indefectiblemente remitir por medio fehaciente al MUTUANTE una nota confirmando la recepción de tales fondos. Sin perjuicio de ello, aun en el supuesto de que el MUTUANTE no remitiese la nota de confirmación antes referida, la falta de reclamo fehaciente del MUTUARIO dentro del Plazo de cinco (5) días corridos, contados desde la finalización del

Plazo de Acreditación implicará la conformidad del MUTUARIO con el desembolso depositado en la Cuenta del Mutuario.

**3.5 Facultad Exclusiva del MUTUANTE.** En el caso en que, a exclusivo criterio del MUTUANTE, durante el Plazo de Disponibilidad ocurriera cualquier Cambio Material Adverso o Efecto Material Adverso, el MUTUANTE podrá suspender inmediatamente la tramitación de cualquier Solicitud de Desembolso cursada de conformidad con el Contrato Marco, que esté siendo verificada y evaluada por aquel, así como cualquier desembolso de fondos correspondiente a una Solicitud de Desembolso aprobada por el MUTUANTE pero cuyos fondos no hayan sido efectivamente acreditados en la Cuenta del Mutuario, sin que tal decisión genere responsabilidad alguna al MUTUANTE, renunciando en consecuencia el MUTUARIO a promover cualquier acción por responsabilidad fundada en tal causa. Ello, sin perjuicio de la facultad del MUTUANTE de dar por terminado el Contrato en tal supuesto, de conformidad con lo establecido en la cláusula OCTAVA del presente Contrato.

**3.6 Devolución al Mutuario de los Créditos Cedidos. Notificación al Deudor Cedido.** En cualquiera de los supuestos enumerados en la presente cláusula TERCERA y una vez cancelada en su totalidad la Línea de Crédito Adeudada por el MUTUARIO y dentro de las 48 hs. de sucedido ello, el MUTUANTE se obliga a notificar al Deudor Cedido que ha quedado sin efecto la Cesión del Crédito Cedido por lo que a partir de la recepción de dicha notificación, el Deudor Cedido deberá abonar al MUTUARIO el monto de los Créditos Cedidos.

**CLÁUSULA CUARTA: CESIÓN DE CRÉDITOS.**

**4.1** En garantía de pago de la Línea de Crédito Adeudada y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO bajo los Documentos de la Operación, y como medio de pago de las Sumas Adeudadas conforme lo establecido en la Cláusula 5.2 del Contrato Marco, el MUTUARIO cede al MUTUANTE los Créditos Cedidos. La referida cesión comprende todos los derechos y acciones que posee el MUTUARIO y le corresponden respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de las obligaciones contractuales con el Deudor Cedido de las cuales surjan los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

**4.2** El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE,

8

**PARTIES:**

(1)  FONTERRA LIMITED of Fonterra Centre, 9 Princes Street, Auckland, New Zealand ("Fonterra"); and

(2)  SANCOR COOPERATIVAS UNIDAS LIMITADA of Te. Gral. Richieri 15, 52322FYA, Sunchales, Santa Fe, Argentina ("SanCor")

**BACKGROUND**

1.  Fonterra manufactures dairy products and has an international marketing network and experience in the sale of dairy products.

2.  SanCor wishes to utilise the experience and services of Fonterra for sale in the international market of certain dairy products produced by SanCor.

3.  SanCor has agreed to sell to Fonterra on an exclusive basis and Fonterra has agreed to purchase the Products for on-sale by Fonterra to Customers in the Territory.

**THE PARTIES AGREE** as follows:

1  **Interpretation**

In this Agreement, unless the context otherwise requires, the following words and expressions shall have the following meanings:

"Agreement" means this agreement including all schedules and appendices hereto.

"Associate" means any person that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control of, the other person. For this purpose, a person is deemed to control another person if the first such person possesses, directly or indirectly, the power to appoint a majority of the directors of the second person, or to otherwise direct or cause the direction of the management or policies of the second person, whether through the ownership of voting securities, by contract or otherwise;

"Base Price" means the weekly prices set by SBOP in New Zealand for Commodity Groups;

"Business Day" means, for the purpose of clause 16.7 (Notices) any day other than a Saturday, Sunday or Public Holiday in the country in which the notice is being served, and in all other cases means any day other than a Saturday, Sunday or Public Holiday in New Zealand or Argentina;

"Commission" means a commission of 1% of the FOB value of an Order, to a maximum value of USD40 per metric tonne and a minimum value of USD25 per metric tonne for payment terms of 30 days or less, payable by SanCor to Fonterra on all Products sold by Fonterra to Customers under this Agreement;

"Customer" means the customer to whom Fonterra sells the Products in response to an Order;

"Forecast" has the meaning set out in Schedule 1;

"Grading" means, in respect of Product, the time at which SanCor, acting in good faith, issues a "Certificate of Analysis" through SanCor's Quality Laboratory attesting to the Product meeting Specification (such SanCor Quality Laboratory being registered to issue these Certificates by the Argentine Ministry of Agriculture);

"Graded" has a corresponding meaning;

"Order" means a purchase order placed by Fonterra with SanCor for the supply of Products in accordance with clause 3;

"Products" means the products described in Schedule 1 manufactured by SanCor at its manufacturing facility and meeting a Specification acceptable to Fonterra (acting reasonably);

"Purchase Price" means the price agreed between SanCor and Fonterra in respect of a sale of the Products pursuant to an Order;

"Relationship Managers" means a relationship manager described in Schedule 1, or such other relationship managers as notified to the other party from time to time;

"Specification(s)" means the manufacturing and packaging specifications for each of the Products set out in Schedule 1 or such other specifications acceptable to Fonterra (acting reasonably), to be supplied by SanCor and as may be amended by agreement in writing from time to time;

"Term" shall have the meaning referred to in clause 2.4;

"Territory" means the Territory described in more detail in Schedule 1; and

"WACC" means weighted average cost of capital.

1.1    **In this Agreement:**

a        references to clauses are to clauses of this Agreement;

b.  references to statutes shall include any statutory modification or re-enactment of the statute concerned;

c.  words and expressions in the singular shall include the plural and vice versa;

d.  the headings are for convenience only and shall be ignored in construing this Agreement;

e.  references in this Agreement to Fonterra shall include reference to its successors and permitted assigns; and

f.  all references to EXW, FOB, CFR, CIF and other delivery terms are references to those terms as defined in Incoterms 2000.



## 2   Appointment and Term

**2.1   Appointment:** SanCor hereby agrees to sell the Products to Fonterra exclusively in the Territory on the terms and subject to the conditions of this Agreement, and Fonterra agrees to purchase the Products on the terms and subject to the conditions of this Agreement.

**2.2   Effect of Territory:** The effect of the appointment of Fonterra as the exclusive purchaser of the Products in the Territory is that:

a.   Fonterra is entitled to sell or facilitate the sale and may engage any other person to sell or facilitate the sale of the Products in the Territory to any channel;

b.   SanCor shall not itself sell or facilitate the sale and shall not engage any other person to directly or indirectly sell or facilitate the sale of the Products to Customers in the Territory unless this has first been agreed with Fonterra in writing on a case by case basis; and

c.   SanCor shall not sell the Products to any person outside of the Territory if SanCor knows, or should have known by reasonable enquiry, or had reasonable cause to believe, that the Products would be subsequently imported or distributed or sold in the Territory.

**2.3   Enquiries from Territory:** SanCor may not sell or otherwise dispose of the Products in the Territory other than as provided in clause 2.2.b. If SanCor receives any enquiries from any potential customers in the Territory relating to the Products, SanCor shall promptly inform Fonterra of such enquiries and shall not seek to deal directly or indirectly with those potential customers with respect to the Products.

**2.4   Term:** Fonterra's appointment shall commence on 1 September 2007 and shall continue for an initial term of three years ('Term') unless earlier terminated in accordance with the terms of this Agreement. This Agreement shall thereafter continue in full force and effect until a party gives to the other not less than six months' written notice of termination.

**2.5   Simple Termination:** After the first year of the Agreement, one party ('Terminating Party') may give to the other ('Other Party') a minimum of six months written notice of termination of the Agreement, without the Other Party having any claim, right, title, property or other interest of any kind or nature. Before the Terminating Party can give notice of termination, the Terminating Party must offer, no later than six months prior to the date of termination, the right to discuss with the Other Party the reasons for the proposed non-renewal to give both parties the opportunity to discuss the



possibility of continuing this Agreement on agreed terms.

2.6 **Fonterra may sell competing products:** Nothing in this Agreement prevents or limits the right of Fonterra to be concerned or interested either directly or indirectly in the supply to Customers or any third party of any goods in the Territory which are the same as, similar to or competitive with the Products.

2.7 **Exception to Agreement:** The terms of this Agreement shall not apply to the sale or distribution of Products to LA CORPORACION DE ABASTECIMIENTO Y SERVICIOS AGRICOLAS SOCIEDAD ANONIMA ("LA CASA S.A") or any another Venezuelan entity to be supplied by SanCor under the Financial Agreement signed between SanCor and BANCO DE DESARROLLO ECONÓMICO Y SOCIAL DE VENEZUELA (BANDES) in February 2007 or any other Agreement subscribed by SanCor with the Government of Venezuela through any of its entities..

3 **Forecasting, Orders and Sales**

3.1 **Forecasting procedure:** The forecasting regime set out in Schedule 1 shall apply.

3.2 **Sales:** In accepting orders from Customers, Fonterra shall take into account the Forecast of volume of Products provided by SanCor under this Agreement.

3.3 **Quantity:** Fonterra agrees to sell the entire Manufactured Volumes of Product that is available for export to the extent that such Manufactured Volumes of Product meets the Specifications for each Product.

3.4 **Delivery:** SanCor agrees to deliver the Products subject of an Order within the timeframes and by the delivery method agreed between Fonterra and the Customer, subject to SanCor reasonably being able to comply with the requirements of an Order. Where Fonterra requires delivery dates or shipping arrangements that vary from the normal practice adopted between SanCor and Fonterra, Fonterra agrees to provide sufficient advance notice to SanCor to enable SanCor to meet the requirements of the relevant Order.

3.5 **Currency:** All sales of Products under this Agreement and all payments made under this Agreement are to be made in United States Dollars unless otherwise agreed

3.6 **Terms and conditions of sale:** SanCor acknowledges that Fonterra is not making or providing to the Customer any representation or warranty, express or implied, that the Product meets the Specification, is fit for the intended purpose or is otherwise of merchantable quality. SanCor accepts full responsibility and liability for, and agrees to fully indemnify Fonterra in respect of, any claim by a Customer or any third party that the Products sold by,

Fonterra to the Customer are in breach of any statutory or contractual warranty, provided that such indemnity shall not apply to the extent that Fonterra's own negligence or breach in performing its obligations under this agreement is the direct cause of such claim, loss or damage.

3.7 **Fonterra to sell at market price:** Fonterra shall endeavour to achieve the best market price for the Products at the time of sale to the Customer having regard to, amongst other factors, Specification, quality, volume, delivery date, delivery terms, international market price ranges and other market factors in so far as the availability of the Product is advised to Fonterra with sufficient lead time. Fonterra shall keep SanCor informed of any non-standard terms of sale or unusual conditions, pricing or volumes.

3.8 **Costs:** SanCor shall be responsible for (i) liability for any additional taxes imposed by the Argentinean Government over and above those considered by this Agreement and (ii) payment of all freight, financing costs, customs and other charges, costs and expenses related to supply and delivery of the Products to a Customer pursuant to the Incoterms of an Order.

4   **Commission**

4.1 **Commission Amount** SanCor agrees that Fonterra is entitled to the Commission on all Products sold by Fonterra to a Customer. The Commission will be calculated depending on the payment terms with the end customer. For payment terms of 30 days or less, Commission will be 1% of the FOB value of the Order, up to a maximum of USD40 per metric tonne, and a minimum of USD25 per metric tonne.

4.2 Notwithstanding clause 4.1, for each subsequent 30 days of payment terms on the Order, SanCor will pay Fonterra an additional 0.5% monthly on the Purchase Price

Example – in the case of an order with a purchase price of USD3000 / MT CFR with 90 day payment terms, the total commission due to Fonterra would be:

- base commission of 1% plus

- variable commission for two 30-day periods at 0.5% per 30 days

In this example, the total commission amount would be equal to USD60 / MT ((USD3000 x (1% base +1% variable)).

4.3 In the case that the average elapsed time from grading date to bill of lading date is less than 30 days, Fonterra and SanCor will share the capital saving generated on a 50:50 basis. The capital saving will be calculated using SanCor's weighted average capital cost, and will be calculated on the average number of days from grading date to BOL date for all the orders

shipped within a calendar month.

*Example – if a total of 2500 MT was shipped within a given calendar month, within an average of 15 days from trading date to BOL date, with a weighted average price of USD3000 / MT CFR and a SanCor WACC rate of 12%, the total additional payment due would be:*

= [(15/365)*0.12*3000]*2

= USD7.39 / MT additional payment due per MT

4.4   **Payment of Commission:** On receipt by Fonterra of the Purchase Price paid by a Customer, Fonterra is entitled to deduct from that Purchase Price the Commission prior to Fonterra remitting the balance of the Purchase Price to SanCor.

5   **Payment to SanCor**

5.1   **Standard Payment Terms.** Payment will be made by Fonterra to SanCor for the Products Fonterra has purchased from SanCor pursuant to this Agreement within 30 days from bill of lading date.

5.2   **Pre-payment:** Notwithstanding the payment provisions under clause 5.1, the Parties have agreed that, as an alternative, SanCor may request a Pre-payment for the Products as soon as the Products have been Graded (the 'Grading Date'), in accordance with the following provisions:

5.3   The amount of any Pre-payment shall be an amount equal to the amount of an Order or a group of Orders.

5.4   The amount of all Pre-payments made by Fonterra shall not at any one time exceed an aggregate value as agreed between both parties, or in the absence of such an agreed value, a total of USD10,500,000.00

5.5   Interest of Fonterra WACC + 2% will be charged on each Pre-payment from the date of the Pre-payment until the due date of the relevant order in accordance with the standard payment terms.

5.6   SanCor must give Fonterra not less than fourteen days notice that a Pre-payment is requested. Pre-payment requests may only be made in respect of Product which has already been manufactured at the time notice is given and that is allocated to an existing Order.

5.7   The purpose of the pre-payment provision of clause 5.2 is to provide cash-flow security to SanCor in the event that, due to market conditions, stock is not rotating at the same speed of manufacturing. It would be expected that this clause would not be exercised unless a Product was held in stock for one reason or another for a period of more than 15 days from grading date.

6    Invoicing and Documentation:

6.1  The issuing of invoices to Customers shall be the responsibility of Fonterra.

6.2  SanCor will have responsibility to ensure that all export documentation, in compliance with the Country of Destination and Customer requirements as advised on each and every Order, is supplied to Fonterra within 15 days of the date of the relevant bill of lading.

6.3  SanCor has the right, at all times during the term of this Agreement, to request details of all final customer invoices from Fonterra.

6.4  **SanCor Default:** If SanCor, without the prior written consent of Fonterra, sells or otherwise disposes of Products in the Territory other than via the direct sale of those Products to Fonterra under this Agreement then, without prejudice to Fonterra's other rights and remedies, SanCor must immediately pay to Fonterra an amount equal to the Commission that would otherwise be payable if the Products had been sold or disposed of in accordance with the terms of this Agreement.

6.5  **Storage and Insurance:** In accordance with Schedule 1, Clause 2, "Supply and Forecasting Regime", last paragraph; SanCor will be responsible for attending to all storage, and handling of the Products to be sold under this Agreement up to and including delivery to the Customer regardless of whether or not any payment has been paid to SanCor, following the Incoterms agreed on an Order. Risk of loss, damage or deterioration of the Products will be with SanCor until delivery to a Customer on the terms of the relevant Order.

7    **Fonterra's Obligations**

7.1  Fonterra will:

a.    at all times during this Agreement work diligently to promote the sale of the Products;

b.    not describe itself as agent or representative of SanCor except to the extent authorised by this Agreement;

c.    not sell or facilitate the sale of any Product without SanCor's consent if Fonterra knows, or should have known by reasonable enquiry, or had reasonable cause to believe, that the Product would be subsequently distributed or sold in countries that are outside of the Territory allocated to Fonterra under this Agreement. Where Fonterra receives any enquiries from any Customers or potential Customers for the purchase of the Product outside of the Territory, Fonterra shall promptly inform SanCor of such enquiries. If a commission is to be paid on any business resulting from the