acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO y al FIADOR que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato Marco y las Garantías, y que toda la información que han proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

**9.1.10.** Que el balance del MUTUARIO al 30 de Junio de 2009, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2009 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

**9.1.11.** Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda, o mejor derecho alguno; y

**9.1.12.** Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, y para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

**9.1.13** Que conforme el conocimiento actual del MUTUARIO, los Deudores Cedidos no se encuentran en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registra con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

**9.1.14** Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tiene y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

**9.1.15.** Los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

**9.1.16.** Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el

master agreement, contract or transaction, fact and/or circumstance relating to the BORROWER and/or the SURETY that may in any way adversely and materially affect the capacity of any of them to comply with their payment obligations hereunder and under the Guarantees, and that all the information furnished to the LENDER relating to the preparation, negotiation and execution of the Transaction Documents is true and correct and does not contain any inaccurate information regarding any relevant fact, nor does it omit any relevant fact the mention of which might be necessary to prevent the stated facts from being inaccurate or misleading; and

**9.1.10** The annual balance sheet of the BORROWER as of June 30, 2009, the relevant statements of income and financial position, annexes and further information therein contained relating to the BORROWER, copies of which the BORROWER has delivered to the LENDER duly signed by their pertinent authorities, accurately represent the financial situation and result of operations of the BORROWER as of that date, and that from June 30, 2009 – no adverse change or event that may cause an adverse change in the business, operations, prospects or financial condition of the BORROWER has occurred; and

**9.1.11** That the Guaranties granted by the BORROWER are not subject to any pledge, or paramount title; and

**9.1.12** That the BORROWER has taken out and maintain duly in force all required insurance pursuant to the standards current in the Argentine Republic, and for the activities they develop with creditworthy insurance companies of national renown; and

**9.1.13** That pursuant to the BORROWER's present knowledge, the Assigned Debtors have not suspended payments, are not insolvent, are not subject to reorganization proceedings or bankrupt, and have not defaulted on any payment of its relevant debts.

**9.1.14.** That the Transaction Documents and the obligations included therein are and will be at all times direct and general obligations of the BORROWER and have and will have at all times the highest preferential rank of the BORROWER s' debt.

**9.1.15.** The Transaction Documents are, or when duly executed and delivered will be, in proper legal form and substance under the applicable law for purposes of performance thereof, pursuant to applicable law. All formalities required in Argentina for the validity and performance of the Transaction Documents (including any notice, registration, filing, payment of fees or taxes, notarization, or submittal to any Government Authority) have been complied with.

**9.1.16** That no Event of Default has occurred or will occur as a consequence of or in connection with the performance of the

cumplimiento de las operaciones previstas en los Documentos de la Operación;

**9.1.17.** Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO y/o del FIADOR que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

**9.1.18.** Que cumplen y realizan todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulten aplicables.

**9.1.19.** Que los Bienes Fideicomitidos no reconocen gravamen ni restricción alguna a la fecha;

**9.1.20.** Que el Crédito Cedido contra PDVSA ascenderá como mínimo a una suma equivalente al veinte por ciento (20%) de la Línea de Crédito.

**9.1.21.** Que el Crédito Cedido contra Fonterra ascenderá como mínimo a una suma equivalente al cincuenta por ciento (50%) de la Línea de Crédito.

**9.1.21** Que el Crédito Cedido contra Arthur Schuman ascenderá como mínimo a una suma equivalente al treinta por ciento (30%) de la Línea de Crédito.

**9.1.22.** Que en todo momento durante la vigencia del presente Contrato Marco el MUTUANTE contará con Warrants por una suma equivalente al quince por ciento (15%) de la Línea de Crédito Adeudada.

**9.2   Compromisos y Obligaciones del MUTUARIO y del FIADOR.**
Desde la firma del presente Contrato Marco y durante todo el tiempo en que cualquier suma debida bajo el Contrato Marco se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO y el FIADOR se comprometen firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

**9.2.1.** A pagar debida y puntualmente las Sumas Adeudadas, así como los gastos referidos en la Cláusula DECIMO PRIMERA, de conformidad con los términos y condiciones que se establecen en el presente Contrato Marco, y

**9.2.2.** A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que el MUTUARIO y/o el FIADOR, según el caso, los disputase por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la

transactions contemplated in the Transaction Documents;

**9.1.17.** That no Material Adverse Change has occurred or will occur as regards the BORROWER and/or the SURETY that may reasonably cause a Material Adverse Effect in their capacity to comply with their obligations under the Transaction Documents;

**9.1.18.** That the comply with and every reasonable action is being followed and taken by them in order to remain compliant with all international laws, regulations and conventions relating to environmental, labor, health and social security issues applicable thereto.

**9.1.19.** That the Trusted Assets to not recognize lien and or restriction of any kind as of the date hereof,

**9.1.20** That the Assigned Credit against PDVSA shall amount as a minimum to an amount equivalent to twenty per cent (20%) of the Credit Facility.

**9.1.21.** That the Assigned Credit against Fonterra shall amount as a minimum to an amount equivalent to fifty__ per cent (50%) of the Credit Facility.

**9.1.22.** That the Assigned Credit against Arthur Schuman shall amount as a minimum to an amount equivalent to thirty per cent (30%) of the Credit Facility.

**9.1.23.** That at all time during the validity period of this Master Agreement the LENDER shall be provided with Warrants for an amount equivalent to fifteen per cent (15%) of the Indebted Credit Facility.

**9.2 Commitments and Obligations of the BORROWER and of the SURETY.**
Following the execution hereof and to the extent any amount due hereunder remains outstanding, on any account and/or due to any reason whatsoever, the BORROWER and the SURETY firmly, expressly, irrevocably and unconditionally undertake to perform or abstain from performing, as applicable, all the acts and/or activities specified below:

**9.2.1** To pay as and when due the Sums Due, as well as the expenses of Section ELEVEN, pursuant to the terms and conditions set forth herein; and

**9.2.2** To keep all payments of taxes, liens, rates, and/or social security obligations and/or levies, whether national, provincial or municipal, both in the country or abroad, up to date, except in such cases where the BORROWER and the SURETY may, as applicable, object in good faith to such payments through the relevant legal resources for good reasons, as hastily as permitted by the applicable procedural legislation and based on their

base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

unconstitutionality, inapplicability and/or illegality; and

9.2.3. A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contrato marcos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato Marco y las Garantías, y

9.2.3 To (i) maintain their legal capacity in force as well as all registrations necessary to maintain the same; (ii) take any reasonable steps to maintain all the rights, permits, authorizations, agreements, insurance, powers of attorney, privileges, franchises, registrations, licenses and the like in force, as are necessary or advisable for the regular conduct of their activity, businesses or operations and the performance of their obligations; (iii) maintain all their property in good state and working conditions; and (iv) abstain from performing any act that may adversely affect the validity and/or effect of the Master Agreement and the Guaranties; and

9.2.4. A no realizar actos que constituyan o impliquen (i) una fusión, absorción o cualquier otro acto al que, conforme a cualquier ley o norma, pudieran oponerse los acreedores del MUTUARIO, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

9.2.4 To abstain from performing any acts implying (i) a consolidation, merger, demerger or any other act which, pursuant to any law or rule, may be opposed by the BORROWER's creditors; or (ii) the participation of the BORROWER in other companies or projects or businesses different to the ones currently performed by them, or (iii) the reduction, distribution or reimbursement of corporate capital of the BORROWER or its associates, and to conduct and make all acts necessary for the conservation, maintenance, renewal and effectiveness of their legal existence and rights, licenses, concessions, permits, privileges and franchise materials for the conduction and management of its respective businesses; and

9.2.5. A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato Marco y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

9.2.5 To maintain the LENDER fully and thoroughly informed of any Material Adverse Change and/or any other fact that may cause a Material Adverse Effect and/or otherwise adversely and significantly affect the payment capacity of the BORROWER of the obligations hereunder and under the Guaranties; and/or (ii) that may adversely affect the validity and/or effect of any of the Guaranties, as well as of the actions taken to remedy the same; and

9.2.6. A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente al MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoria de primer nivel y prestigio internacional, (ii) estados contables trimestrales, y (iii) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos trimestres; y la documentación referida en (iii) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

9.2.6 To make available to the LENDER, and further deliver forthwith - at the latter's request - the following accounting documentation corresponding to the BORROWER: (i) annual financial statements duly audited by a first-level auditing firm of international prestige; (ii) quarterly financial statements, (iii) any other information the LENDER might reasonable request at any time. The financial statements mentioned in (i) above must be submitted duly audited within one hundred and twenty (120) calendar days from the closing of the relevant fiscal year; the financial statements mentioned in (ii) shall be submitted within sixty (60) calendar days from the closing of the relevant quarters; the documentation mentioned in (iii) above must be submitted within five (5) calendar days following LENDER´s request; and

9.2.7. A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato Marco y las Garantías, lo que implicará, entre otras cosas,

9.2.7 Not to let in any manner whatsoever any third party creditor be subrogated to, and to preclude any third party creditor from becoming subrogated in any way to, any rights and/or actions granted to the LENDER hereunder and under the Guaranties, which will entail, inter alia, the obligation of the

la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato Marco, y

9.2.8. A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

9.2.9. A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

9.2.10. A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO y/o el FIADOR incurriere en relación con cualquier acuerdo o Contrato Marco del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

9.2.11. A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

9.2.12. A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes de el MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2..000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses TRES MILLONES con 00/100 (US$ 3.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

9.2.13. A no reducir su capital, y

9.2.14. A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

9.2.15. A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato Marco, y

BORROWER to demand the express waiver by any third party obligor of the power to become subrogated to such rights and/or actions to the extent any sum hereunder remains outstanding; and

9.2.8 To comply with the Applicable Rules (including, without limitation, any law, rule, regulation, order, instruction or resolution applicable to them as regards environmental protection, toxic or hazardous wastes, pollution and hygiene) and to maintain all authorizations, permits or licenses that are necessary under the Applicable Rules; and

9.2.9 To comply in due time and manner each and every of their obligations arising from the Transaction Documents; and

9.2.10 To forthwith immediately notify the LENDER (i) of the occurrence of any Event of Default; and (ii) of any default by the BORROWER and/or the SURETY in connection with any agreement or master agreement they might be a party to, or of any of their obligations thereunder (irrespective of whether or not the lapsing and acceleration of the terms has been declared); and (iii) of any actions taken to cure the defaults mentioned in (i) and (ii) above; and

9.2.11 To keep the accounting records and other records in proper form and allow LENDER's access to their offices, facilities, books, records and files, allowing the performance of any accounting, legal, and management audits, by themselves or by the ones appointed by the LENDER to the extent such action does not materially and adversely interfere with the regular activities of the BORROWER, and

9.2.12 To inform the LENDER within 5 (five) Business Days after occurrence thereof (i) of any loss or damage suffered by the BORROWER s' property in amounts higher than TWO MILLION United States Dollars and 00/100 (USD 2,000,000.00), individually or cumulatively during each fiscal year, and (ii) any action or claim where the amount claimed from the BORROWER is equal to or higher than THREE MILLION United States Dollars and 00/100 (USD 3,000,000.00) individually or cumulatively during each fiscal year, and

9.2.13 To abstain from reducing its capital stock; and

9.2.14 To abstain from transferring or otherwise reducing, for any cause or on any account, including by means of a shareholder s' agreement or voting trust with third parties, and from pledging, encumbering or granting, any kind of guaranty as regards the current shareholdings of the BORROWER in other companies, and

9.2.15 To maintain all amounts due hereunder as to guaranties and privileges in collection not below any other obligation of the BORROWER;

**9.2.16.** A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

**9.2.17.** A no a adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

**9.2.18.** A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta del Mutuario desembolsados bajo el presente Contrato Marco, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato Marco suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

**9.2.19.** A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dicha cesión, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

**9.2.20.** A realizar sus mejores esfuerzos para causar que los Deudores Cedidos depositen en la Cuenta del Mutuante en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

**9.2.21.** A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

**9.2.22.** A remitir al MUTUANTE copia de todo informe, documento, reporte, orden de compra, factura, y/o pronóstico de ventas que remita a cada Deudor Cedido y/o que reciba de cada Deudor Cedido.

**9.2.16** To inform the LENDER on a semiannual basis (i) the consolidated debt of the BORROWER's Affiliates, by each of the companies and per each of the financial entities as creditors, and (ii) the sales volume of each of the Affiliates,

**9.2.17** To abstain from making any decision that may affect the business and/or goodwill of the BORROWER;

**9.2.18** To comply with all the requirements and demands imposed by Banco Central de la República Argentina and other Applicable Rules, and evidence such compliance to the LENDER, to the latter's satisfaction, including without any restriction whatsoever: (i) to enter in the exchange market of the Republic of Argentina all the funds deposited in the BORROWER's Account disbursed hereunder, through the corresponding exchange closing and crediting of the resulting Pesos in a bank account opened in the Argentine financial system as conversion of currency caused under this Master Agreement executed with a foreign lender, and (ii) to periodically inform Banco Central de la República de Argentina about: (a) the existence of the Transactions Documents and (b) the balance of its foreign debt according to Comunicaciones "A". 3602 and 3609 of the Banco Central de la República Argentina and/or its complementary rules and amendments.

**9.2.19** To provide all the information the LENDER may request from them relating to the Assigned Credits, and to comply with every obligation applicable to them for the Assigned Credits to be paid to the LENDER, binding themselves to follow any necessary steps for the LENDER to achieve full recognition of the Assigned Credits; the BORROWER will bear all the expenses and costs resulting from or inherent in said assignments, including the reasonable attorney's fees or court costs the LENDER might eventually incur to collect the Assigned Credits;

**9.2.20** To make their best efforts to cause the Assigned Debtors to deposit in the LENDER's Account as and when due all the amounts corresponding to the Assigned Credits;

**9.2.21** To replace, to the LENDER's full satisfaction, within a term of five calendar days following request therefore, the relevant Promissory Notes with another eligible instruments allowing for the enforced collection proceeding if, due to any change in the legislation, the aforementioned instruments lose their effect as such; and

**9.2.22.** To send to the LENDER a copy of all reports, documents, purchase orders, invoices and/or sale forecasts that were send to each Assigned Debtor and/or were received from each Assigned Debtor.

| CLÁUSULA DECIMA:   MORA. | SECTION TEN: DEFAULT |
|---|---|

**10.1** La Mora del MUTUARIO en el cumplimiento de las obligaciones de pago en tiempo y forma de cualquier Suma Adeudada se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Ocasionada la Mora, se producirá la caducidad de todos los plazos y el MUTUANTE tendrá derecho a considerar la totalidad de la Línea de Crédito Adeudada como una deuda de plazo vencido y exigir y demandar judicialmente el pago íntegro de la Línea de Crédito Adeudada, los intereses devengados y demás accesorios. Durante el tiempo que dure la Mora, el MUTUANTE tendrá derecho a percibir intereses compensatorios acumulativos pactados a una tasa de interés equivalente a la tasa implícita de cada Solicitud de fondos con más un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios..

**10.1** The BORROWER's default to comply with the obligations agreed upon in this Master Agreement - including without limitation, payment in due time and manner of any Sum Due - shall occur automatically by law and without any judicial order. Upon the Default, the lapsing of all terms shall occur and the LENDER shall be entitled to consider the aggregate amount of the Indebted Credit Facility as past due debt and to request and legally demand full payment of the Indebted Credit Facility, interest accrued and other charges. During the time of the Default the LENDER shall be entitled to receive compensatory interest agreed equivalent to the interest rate implicit in each funds request, plus and interest for default equivalent to 50% (fifty per cent) of such interest rate.

**10.2** También se considerará la mora del MUTUARIO, si transcurridos quince (15) días contados a partir de que el MUTUANTE los haya intimado a subsanar los siguientes Eventos de Incumplimiento, los mismos no hubieran sido subsanados, en cuyo caso el MUTUANTE tendrá la facultad de considerar la Línea de Crédito Adeudada como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todas las Sumas Adeudadas en los siguientes Eventos de Incumplimiento:

**10.2** The LENDER shall also be entitled to consider the automatic Default of the BORROWER, if after fifteen (15) calendar days as of the date in which the LENDER request the mitigation of the Event of Default, the same were not resolved, in which event the LENDER shall be entitled to consider the Indebted Credit Facility as past due, and request from the BORROWER the prompt payment of all the Sums Due, being the Events of Default the following:

(a) si un tercero pidiere la quiebra del MUTUARIO, del FIADOR, del Deudor Cedido y/o y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(a) if a third party requests the BORROWER, the SURETY, and/or the Assigned Debtors to be declared bankrupt and such request is not rejected by the court intervening in the pertinent first procedural step;

(b) si el MUTUARIO, el FIADOR y/o cada Deudor Cedido pidiesen su propia quiebra, promoviese su concurso de acreedores o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial o una reestructuración de sus pasivos;

(b) if the BORROWER, the SURETY, and/or the Assigned Debtor file for their own bankruptcy proceedings, file for their own reorganization, or initiate procedures for an out-of-court reorganization plan or any debt restructuring;

(c) si el MUTUARIO y/o el FIADOR incurrieren en cesación de pagos, aún sin efectuarse los trámites antedichos;

(c) if the BORROWER, the SURETY incur suspension of payments, without such steps being taken;

(d) Si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO y/o sus, o se decretare la inhibición general de bienes de cualquiera de el MUTUARIO, por un monto en exceso de Dólares Estadounidenses TRES MILLONES (US$ 3.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato Marco, y dichos embargos y/o medidas cautelares no fuesen levantados, por cualquier causa que fuere, dentro de los sesenta (60) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible, o

(d) in the event any attachment or any provisional remedy were granted over the property, assets or rights of the BORROWER, or a legal disqualification from disposing of any of the BORROWERs' property were ordered in an amount exceeding THREE Million United States Dollars and 00/100 (USD 3,000,000.00), or its equivalent in Pesos, whether individually or jointly throughout the effect of the Master Agreement, and such attachments and/or provisional remedies were not released or cancelled due to any reason whatsoever within sixty (60) judicial days following the request to release the attachment and/or cancel the provisional remedy, which request must be made at the first procedural opportunity possible; or

(e) si en cualquier momento durante la vigencia del presente Contrato Marco se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO, en las declaraciones contenidas en la Cláusula NOVENA del presente y/o el incumplimiento de los compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del presente Contrato Marco;

(f) si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el presente Contrato Marco;

(g) si el MUTUARIO y/o el FIADOR modificasen de cualquier forma su composición accionaria;

(h) si el MUTUARIO y/o el FIADOR incumpliere cualquiera de las obligaciones a su cargo establecidas en el presente Contrato Marco y/o en los Documentos de la Operación;

(i) si el MUTUARIO incumpliere con cualquiera de sus obligaciones contractuales con cada Deudor Cedido;

(j) si —con prescindencia de que hubiese o no incumplimiento por parte de el MUTUARIO en el pago de las Sumas Adeudadas- el MUTUARIO y/o cada Deudor Cedido terminan el contrato que causa los Créditos Cedidos;

(k) si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato Marco fueren abonadas en una moneda distinta del Dólar;

(l) Si se dictaren una o más sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaran medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes de el MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad de el MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato Marco, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(m) Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso

(n) si el MUTUARIO incumpliere cualquiera de sus obligaciones establecidas en el Fideicomiso y/o realizare cualquier acto que afecte negativamente o implique una disminución en el valor de los Bienes Fideicomitidos;

10.3 El MUTUARIO asume el cumplimiento de todas y cada una de las obligaciones bajo los Documentos de la Operación, por lo cual en caso de incurrir en un Evento de Incumplimiento, se

(e) if at any time during the term hereof the lack of veracity, whether partial or total, by the BORROWER is proven in the statements included in Section NINE hereof and/or the failure to comply with the undertakings assumed in such Section and/or the lack of veracity in any of the applications of this Master Agreement;

(f) if there were any change that in the LENDER's opinion, would cause a material change in the basic conditions which have been considered for this Master Agreement.

(g) if in any manner whatsoever the BORROWER and/or the SURETY's shareholdings changes,

(h) if the BORROWER and/or the SURETY fails to comply with any of their obligations set forth herein and/or in the Transaction Documents.

(i) if the BORROWER fails to comply with any of their contractual obligations with the Assigned Debtors,

(j) if – irrespective of the BORROWER' compliance or noncompliance with the payment of the Sums Due –, the BORROWER and/or the Assigned Debtor terminate the agreements originating the Assigned Credits;

(k) if for any reason whatsoever the Sums Due hereunder are paid in other currency than the Dollar.

(l) if one or more final judicial judgments or arbitration awards were issued against the BORROWER or measures were adopted to foreclose any mortgage, attachment or other lien over the property of the BORROWER which, at LENDER's criterion, may (i) adversely and materially affect the capacity of the BORROWER to afford payment of their obligations hereunder; or (ii) adversely and materially affect any of the Guaranties;

(m) if there occurs a Material Adverse Change and/or a Material Adverse Effect.

(n) If the BORROWER does not comply with any of the obligations set forth in the Trust and/or perform any act that have a negative effect or implies a reduction in the value of the Trust Assets.

10.3 The BORROWER binds itself to the performance of each and every one of the obligations under the Transaction Documents, and, therefore, the occurrence of an Event of Default by it will

producirá la Mora del MUTUARIO. Producida la Mora del MUTUARIO, el MUTUANTE podrá proceder sin más a la ejecución de las Garantías (entendiéndose que en el caso del Fideicomiso podrá instruir al Fiduciario a tal efecto) e imputar la totalidad de los Créditos Cedidos al pago de la Línea de Crédito Adeudada.

**10.4** En adición a lo dispuesto en la Sección 10.3 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato Marco -en los términos establecidos en la Sección 10.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de las Sumas Adeudadas por parte del MUTUARIO o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las Sumas Adeudadas bajo este Contrato Marco los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE.

**CLÁUSULA DECIMO PRIMERA:** **GASTOS.**

**11.1** Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario), tributos y/o gastos que las operaciones derivadas directa y/o indirectamente de este Contrato Marco pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

**11.2** Todos los pagos bajo el Contrato Marco deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato Marco como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y

give rise to BORROWER 's Default. Upon the BORROWER's Default, the LENDER may forthwith proceed to enforce the Guarantees (being understood that in the case of the Trust it may instruct the trustee to proceed to that end) and allocate all the Assigned Credits to the payment of the Indebted Credit Facility.

10.4 In addition to the provisions set forth in 10.3 above, the BORROWER 's Default due to the non-fulfillment of any of the obligations agreed herein shall give place to the lapsing of all terms and the automatic default of all the agreements executed between the BORROWER and the LENDER. Likewise, the default in any of such agreements shall give place to the automatic Default hereof – as per the terms set forth in 10.1 above – and of any other contractual obligation between the BORROWER and the LENDER. In such sense, upon the BORROWER 's, either due to the lack of payment by the Assigned Debtors or due to the occurrence of any of the Events of Default detailed hereinabove, the LENDER, at its own discretion, shall proceed to the execution of the Guarantees and/or other guaranties granted in other agreements executed between the BORROWER and the LENDER. Likewise, in such event, the LENDER shall be entitled to apply to the payment of the Sums Due, the BORROWER's funds deposited at such time – or those to be deposited in the future – in the LENDER's Account for any reason and/or contractual relationship between the LENDER and the BORROWER.

**SECTION ELEVEN: EXPENSES.**

11.1 All commissions, bank fees (including, without any restriction whatsoever, the bank fees and commissions resulting from the deposits and transfers made from and to LENDER's Account and/or BORROWER's Account) taxes and/or charges resulting from the transactions directly and/or indirectly derived from this Master Agreement, shall be borne by the BORROWER. The BORROWER undertakes to pay all commissions and/or expenses to be borne by it to the LENDER promptly and upon the latter's sole request and not later than 48 hours following such request, which shall be duly evidenced.

11.2 All payments hereunder shall be made by the BORROWER free of any deduction, withholding and other charges of any nature whatsoever. If the BORROWER is requested by law or any other competent authority to make any deduction, withholding or charge, the BORROWER shall make such additional payments to the LENDER as necessary so that, after such deductions, withholdings or charges, the LENDER receives an amount equal to the amount due to it hereunder as if such deductions, withholdings or charges have not been made. The BORROWER shall pay in due time and manner to the pertinent tax authority, the amount withheld, and shall obtain and give to the LENDER a certified copy of the corresponding receipts in

deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

connection with such payment.

**11.3** El MUTUARIO se obliga a cumplir en tiempo y forma – a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del presente Contrato Marco y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**11.3** The BORROWER undertakes to comply in due time and manner, on its own account, with settlement of foreign currency and payment of all pertinent taxes directly or indirectly resulting from this Master Agreement and with other rules in accordance with the rules set forth by Banco Central de la República Argentina, releasing the LENDER from any obligation therefore.

**11.4** El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de las operaciones relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

**11.4** The BORROWER undertakes to hold the LENDER harmless, and to defend and prevent any damage to the LENDER, its shareholders and employees in connection with all obligations resulting from the transactions relating to the Assigned Credits, entry and liquidation of foreign exchange and any other taxable, exchange, banking, customs liability or of any other kind whatsoever resulting therefrom.

**CLÁUSULA DÉCIMO SEGUNDA:  CESIÓN  DEL CONTRATO MARCO.**

**SECTION TWELVE: MASTER AGREEMENT ASSIGNMENT.**

El MUTUANTE podrá ceder el presente Contrato Marco en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

The LENDER may assign the rights arising from the Master Agreement in full to any of its affiliates and/or subsidiaries (i.e. those holding or subsidiary corporations of the LENDER or property thereof), by any of the means provided by Law, the assignee acquiring the same benefits and/or rights and/or actions to which the LENDER is entitled under the above-mentioned Master Agreement. In such event, the LENDER shall give notice by true means of the assignment to the BORROWER, as well as of the new payment terms and conditions, using therefore any true means of notice. In such event, the BORROWER may file any defense against the assignee of the Master Agreement which it would have been entitled to file against the assigning LENDER.

**CLÁUSULA DÉCIMO TERCERA: VIGENCIA. INDEMNIDAD**

**SECTION THIRTEEN: EFFECT – INDEMNITY.**

**13.1** El presente Contrato Marco así como todas las Garantías mantendrán su vigencia hasta que se cumplan en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato Marco. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato Marco, las Cláusulas DECIMO PRIMERA, DECIMO TERCERA y DECIMO QUINTA sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**13.1** This Master Agreement as well as all the Guaranties resulting herefrom will remain in full force and effect until performance in full of the rights and/or obligations of the Parties hereunder. Furthermore, even after the obligations arising from the Master Agreement have been fulfilled, Sections ELEVEN, THIRTEEN and FIFTEEN will survive and will remain in full force and effect until the expiration of the limitations that might be applicable.

**13.2** El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de (i) la ejecución o entrega del Contrato Marco y las Garantías y del cumplimiento

**13.2** The BORROWER will hold the LENDER and its Affiliates, directors, managers, officers, employees and independent advisors (the "Indemnitee") harmless against any loss, claim, complaint, liability and every expense relating thereto (including reasonable attorney's and advisor's fees) incurred by the Indemnitee in connection with, relating to, arising from and as a consequence of: (i) the execution or delivery of the Master Agreement and the Guaranties and the performance of the

de las obligaciones previstas en ellos, o de la celebración de las operaciones previstos en ellos; (ii) el Crédito Cédido adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 13.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

obligations thereunder, or the performance of the transactions contemplated therein; (ii) the Assigned Credits due plus any interest thereon or the use of the disbursed funds; or (iii) any actual complaint, lawsuit, preliminary investigation proceeding or procedure, current or potential, relating to any of the circumstances contemplated in this Section 13.2, based on contractual or extra-contractual reasons, or as provided in the applicable law; to the extent the indemnity against such losses, complaints, liabilities or expenses is not due to the gross negligence or willful misconduct of the Indemnitee.

## CLÁUSULA DÉCIMO CUARTA: AUTORIZACION

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato Marco y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO.
En tal sentido, el MUTUARIO autoriza al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato Marco.

## SECTION FOURTEEN: AUTHORIZATION

The BORROWER expressly authorizes the LENDER to register this Master Agreement and all documents thereunder in all Registries deemed relevant by the LENDER in order to secure the BORROWER's obligations.
Therefore, the BORROWER authorizes the LENDER to submit any kind of financing statements in the registry offices of any jurisdiction of the United States of America, as per the provisions set forth in Section 5 Article 9 of the Uniform Commercial Code, including all the BORROWER's goods delivered as security for the compliance with the obligations undertaken hereunder.

## CLÁUSULA DÉCIMO QUINTA: JURISDICCIÓN Y LEY APLICABLE.

**15.1** El presente Contrato Marco es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

**15.2** El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato Marco. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

**15.3** Nada de lo dispuesto precedentemente en el presente Contrato Marco afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada, incluyendo la facultad del MUTUANTE de iniciar la ejecución judicial y/o extrajudicial de los Pagarés y/o de los Warrants y/o del Fideicomiso en la República Argentina.

**15.4** El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado

## SECTION FIFTEEN: JURISDICTION AND APPLICABLE LAW

**15.1** This Master Agreement is governed by and must be construed in accordance with the laws of the State of New York, United States of America.

**15.2** The BORROWER irrevocably accepts the non-exclusive jurisdiction of the United States Courts located at the South District of New York for any claim, trial or proceeding that might be initiated by the LENDER, and in connection with this Master Agreement. The ruling issued against the BORROWER at such trials, claims or proceeding, shall be considered final and may be executed in any other jurisdiction.

**15.3** Nothing of the aforesaid herein shall affect the LENDER's right to bring legal actions or to otherwise sue the BORROWER in any other jurisdiction deemed appropriate by the LENDER, including the LENDER's right to initiate the judicial and/or extrajudicial execution of the Promissory Notes and/or the Warrants and/or the Trust in the Argentine Republic.

**15.4** The BORROWER hereby irrevocably appoints and authorized Sancor Dairy Corporation, with domicile at 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA, as its authorized agent for the sole purpose of receiving, in its name and stead, letters and/or notices addressed to the BORROWER in any action, lawsuit or proceedings filed by the LENDER in the estate of New York, being the BORROWER obliged to inform the

de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

**15.5** Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en la Sección 15.8 de la presente Cláusula.

**15.6** Las notificaciones efectuadas de la manera establecida en la Sección 15.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

**15.7** El MUTUARIO irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total y/o parcial comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al Contrato Marco en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

**15.8** Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato Marco deberán ser remitidas a los domicilios indicados a continuación:
MUTUARIO:         1) 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003 - USA
                          2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina
MUTUANTE:        Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE        Amsterdam,        The Netherlands

## CLÁUSULA DECIMO SEXTA:   FIRMAS Y RECEPCION DE INSTRUMENTOS.

Se firman 3 (tres) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 1 (un) juego en poder del MUTUANTE, 1 (un) juego en poder del MUTUARIO y 1 (un) juego en poder del FIADOR.

LENDER as of the identity and address of any new agent appointed to that end.

**15.5** If, for any reason, its authorized agent to receive notices at 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA, fails to be present, the BORROWER agrees and consents to the notices to be served in any action, lawsuit or proceedings being served on it by US registered mail at the BORROWER's domicile stated in 15.8 hereof.

**15.6** Notices served as stated in 15.4 shall be considered personal, valid, received and mandatory for the BORROWER.

**15.7** The BORROWER irrevocably waives, to the maximum extent permitted by the laws, the right to file an objection now or in the future against the jurisdiction of any of the courts mentioned in this Section hearing in any lawsuit, action or proceedings filed by the LENDER, and, especially, the BORROWER waives the right to file any defense or to allege lack of jurisdiction, or inconvenient forum regarding the court hearing in such action, lawsuit or proceedings. The BORROWER also expressly waives its right to challenge the one-judge or more judges of the court hearing the case. The BORROWER may only file a defense for full and/or partial payment evidenced in writing, on a document sent by the LENDER directly related to the Master Agreement being executed or the guaranteed obligation, expressly waiving any other defenses of any kind whatsoever.

**15.8** Any of the aforementioned notices to be made in respect of this Master Agreement shall be sent to the domiciles stated below:
BORROWER:
1) 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA.
2) Tacuarí 202 – 3rd Floor – City of Buenos Aires, Argentine Republic
LENDER:
Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands.

## SECTION SIXTEEN: SIGNATURES AND RECEIPT OF DOCUMENTS.

The parties hereto sign 3 (three) equal counterparts of the same tenor and to one sole purpose, 1 (one) counterpart for the LENDER, and 1 (one) counterpart for the BORROWER, and one counterpart for the SURETY.

**CLÁUSULA DECIMO SEPTIMA: LUGAR Y FECHA.**

Suscripto por el MUTUARIO  y el FIADOR en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en Amsterdam, a los 21 días del mes de Diciembre de 2009.

**SECTION SEVENTEEN: PLACE AND DATE.**

Executed by the BORROWER and the SURETY in the City of Buenos Aires, Argentine Republic, and by the LENDER in Amsterdam, on December 21, 2009.

_____

By: SANCOR COOPERATIVAS UNIDAS LTDA.
Name: Mario Magdalena
Capacity: Attorney-in-fact

_____

By: SANCOR DO BRASIL Productos Alimenticios Ltda.
Name: Mario Magdalena – Gabriel Martinuzzi
Capacity: Attorney-in-fact

_____

By: IIG TOF B.V.
Name: J. Hamers Ig Huymans.
Capacity:

Firma/s certificada/s en Foja
Nº E20/322863
Bs. As. 21/12/09

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



**ACTA DE CERTIFICACION DE FIRMAS**

## ANEXO                                    F 001322863

> ARANA (h)
> BANO
> 4370

1  Buenos Aires, 21 de Diciembre de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  firma/s                          que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 24                del LIBRO

6  número 128                , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Gabriel Gustavo MARTINUZZI, DNI 18.264.987, quienes justifican sus i-

10 dentidades de acuerdo al inciso a del artículo 1002 del Código Civil y ac-

11 túan: el señor Magdalena en su carácter de apoderado de la sociedad

12 "SANCOR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sun-

13 chales, Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro

14 Nacional de Cooperativas, de la Provincia de Santa Fe, Departamento

15 Castellanos, conforme lo acredita con el poder de fecha 15 de diciembre

16 de 2009, pasado al folio 1400 del Registro 640 de la ciudad de Suncha-

17 les, Provincia de Santa Fe, a cargo de la escribana Analia Roch, asímis-

18 mo actúan: el señor Magdalena en su carácter de Apoderado Gerencia

19 Financiera y el señor Martinuzzi en su carácter de Administrador de la

20 sociedad "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que a-

21 creditan con el Contrato Social de fecha 4 de agosto de 2008 debidamen-

22 te Legalizado y Apostillado, la documentación relacionada tengo a la vista

23 y les confieren facultades suficientes para suscribir el documento adjunto,

24 doy fe.- El documento se encuentra parcialmente escrito en idioma ex-

25 tranjero.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

**PRIMERA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Primera Enmienda.

(b) Que sobre la base del Contrato Marco, es intención del MUTUARIO requerir al MUTUANTE una línea de crédito tipo 'revolving' a fin de poder requerirle –en los términos y condiciones establecidos en el Contrato Marco- los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la Línea de Crédito Adeudada alcance el monto máximo de la Línea de Crédito, de modo que la Línea de Crédito en todo momento resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(c) Que el mecanismo antes descripto permitiría al MUTUARIO requerir periódicamente el flujo de fondos requeridos para financiar sus exportaciones, pudiendo cancelar las Sumas Adeudadas, solicitar nuevos desembolsos y así sucesivamente, siempre que el monto acumulado de toda la Línea de Crédito resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(d) Que es intención de las Partes modificar el Contrato Marco al solo efecto de extender el Plazo de Disponibilidad y el plazo máximo del cual no podrán extenderse las Fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente primera enmienda al Contrato Marco (la "Primera Enmienda"), de conformidad con las presentes Cláusulas:

1.    Modifícase de la Cláusula PRIMERA del Contrato Marco las siguientes definiciones:

*"Fecha/s de Vencimiento"* significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán ser anteriores a los 24 (veinticuatro) meses calculadas desde la fecha de cada Solicitud de Desembolso e indefectiblemente anteriores al 31 de Diciembre de 2012 .

*"Línea de Crédito"* significa la única línea de crédito, modalidad *"revolving"* que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00)

*"Plazo de Disponibilidad"* significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2012, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO"

2.      Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 15 días del mes de Marzo de 2010.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderado - Administrador

Por: IIG TOF B.V.
Nombre:
Carácter:       Trust International Management (T.I.M.) B.V.
                        Managing Director

Y. Hamers / W fiergelen
apoderados

Firma/s certificada/s en Foja
Nº FO12022069
Bs. As. 15-3-2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

  

ACTA DE CERTIFICACION DE FIRMAS



## ANEXO

F 001362069

1   Buenos Aires, 15 de   Marzo   de 2010 . En mi carácter de escribano

2   Titular del Registro Notarial Nº 841

3   CERTIFICO: Que la/s firma/s                          que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número 48              del LIBRO

6   número 132              , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9   Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analía Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista




F 001362069

y les confieren facultades suficientes para suscribir el documento adjunto,
doy fe.-




MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

## SEGUNDA A ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Segunda  Enmienda.

(b) Que, en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO frente al MUTUANTE bajo el Contrato Marco, el MUTUARIO se obligó a mantener durante toda la vigencia del Contrato Marco y hasta que el mismo se extinga, Warrants endosados a favor del MUTUANTE por un monto no inferior a una suma equivalente al 15% (quince por ciento) de la Línea de Crédito Adeudada (Sección 7.2 de la Cláusula SEPTIMA).

(c) Al momento de la presente, el MUTUANTE declara de conformidad, que la Línea de Crédito Adeudada, asciende a un total de US$ 14.910.992,92 (Dólares Estadounidenses CATORCE MILLONES NOVECIENTOS DIEZ MIL NOVECIENTOS NOVENTA Y DOS CON 92/100)  y que el MUTUARIO entregó y endosó Warrants a su favor por la suma total de US$ 3.869.640,30 (Dólares Estadounidenses TRES MILLONES OCHOCIENTOS SESENTA Y NUEVE MIL SEISCIENTOS CUARENTA CON 30/100).

(d) Que el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello- ha aceptado liberar algunos – no todos- de los Warrants endosados a su favor, siempre que no se vea afectada la ratio exigida por la Sección 7.2 de la Cláusula SEPTIMA y sin que ello implique novación alguna de la deuda instrumentada en el Contrato Marco ni en las Solicitudes de Desembolso.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente segunda enmienda al Contrato Marco (la "Segunda Enmienda"), de conformidad con las presentes Cláusulas:

1. Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Segunda Enmienda:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2685 | Leche en Polvo | Sunchales | 148.800 | kgs | 03/Jun/2010 | 520.800.00 |

2. Conforme lo anteriormente detallado, como consecuencia de la liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2675 V | Queso Semi Duro | Balnearia | 148.937,00 | Kg | 03/Jun/2010 | 700.003,90 |
| 2676 V | Queso Semi Duro | Balnearia | 102.412,00 | Kg | 03/Jun/2010 | 481.336,40 |
| 2677 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |

| 2678 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |
|--------|-----------|-----------|------------|-----|-------------|------------|
| 2679 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |
| 2682 V | Queso Pasta Dura | La Carlota | 187.500,00 | Kg | 03/Jun/2010 | 1.312.500,00 |
| Total |  |  |  |  |  | 3.348.840,30 |

3.   Con excepción de aquellos términos expresamente modificados por la presente Segunda Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 13 días del mes de Abril de 2010.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre: 
Carácter: 

Firma/s certificada/s en Foja
Nº
Bs. As.

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

   



F  005962330

1  Buenos Aires, 13  de        Abril        de 2010   . En mi carácter de escribano

2  Titular del Registro Notarial N° 841

3  CERTIFICO: Que la/s firma/s                            que obra/n en el

4  documento  que  adjunto  a  esta  foja,  cuyo  requerimiento  de  certificación  se

5  formaliza simultáneamente por ACTA número190                        del LIBRO

6  número 133                    , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario  César  MAGDALENA, L.E. 8.106.144  y

9  Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del articulo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellános, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista

 

F 005962330

y les confieren facultades suficientes para suscribir el documento adjunto, doy fe.-

 

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50



## TERCERA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representado en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, y Segunda Enmienda del 13 de Abril de 2010, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Tercera Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de modificar la cláusula Décimo Segunda.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente tercera enmienda al Contrato Marco (la "Tercera Enmienda"), de conformidad con las presentes Cláusulas:

1. Modificase la Cláusula DECIMO SEGUNDA del Contrato Marco, la cual quedará redactada del siguiente modo:

**CLÁUSULA DÉCIMO SEGUNDA: CESIÓN DEL CONTRATO MARCO.**

El MUTUANTE podrá ceder o transferir los derechos derivados el presente Contrato Marco a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común o relacionadas a este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente. Asimismo, el MUTUANTE podrá suscribir con cualquiera de sus afiliadas y/o subsidiarias, convenios de participación relacionados a los créditos derivados de este Contrato Marco.

**SECTION TWELVE: MASTER AGREEMENT ASSIGNMENT.**

The LENDER may assign or otherwise transfer the rights arising from the Master Agreement to any of its affiliates and/or subsidiaries (i.e. those holding, subsidiary corporations of the LENDER or other corporations related to them or property thereof), by any of the means provided by Law, an assignee acquiring the assigned benefits and/or rights and/or actions to which the LENDER is entitled under the above-mentioned Master Agreement. In such event, the LENDER shall give notice by true means of any new payment terms and conditions, using therefore any true means of notice. In such event, the BORROWER may file any defense against an assignee of the Master Agreement which it would have been entitled to file against the assigning LENDER. In addition to the aforementioned assignment rights, the LENDER may execute with any of its affiliates and/or subsidiaries, participation agreements related to the credits and receivables derived from this Master Agreement.

**2.** Las Partes acuerdan otorgar a esta Tercera Enmienda efectos retroactivos al 21 de Diciembre de 2009. Con excepción de aquellos términos expresamente modificados por la presente Tercera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 29 días del mes de Noviembre de 2010.

Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: Mario Magdalena
Carácter: Apoderado

Por: **SANCOR DO BRASIL Produtos Alimenticios Ltda.**
Nombre: Mario Magdalena – Daniel Jorge Valicente
Carácter: Apoderados

Por: **IIG TOF B.V.**
Nombre: J. Haners / G Becher
Carácter: apoderados.

Firma/s certificada/s en Foja
N° F22.191.6966
Bs. As. 29.11.2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

   

## ANEXO                    F  001516965

1 Buenos Aires, 29 de Noviembre de 2010 . En mi carácter de escribano

2 Titular del Registro Notarial Nº 841

3 CERTIFICO: Que la/s firma/s                    que obra/n en el

4 documento que adjunto a esta foja, cuyo requerimiento de certificación se

5 formaliza simultáneamente por ACTA número 184                    del LIBRO

6 número 147                    , es/son puesta/s en mi presencia por la/s persona/s

7 cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8 la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9 Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10 dades de acuerdo al inciso a) del artículo 1002 del Código Civil y actúan:

11 el señor Magdalena en su carácter de Apoderado de la sociedad "SAN-

12 COR COOPERATIVAS UNIDAS LIMITADA", con domicilio en Sunchales,

13 Provincia de Santa Fe, inscripta en la Matrícula 772 del Registro Nacional

14 de Cooperativas, de la Provincia de Santa Fe, Departamento Castellanos,

15 conforme lo acredita con el poder de fecha 15 de diciembre de 2009, pa-

16 sado al folio 1400 del Registro 640 de la ciudad de Sunchales, Provincia

17 de Santa Fe, a cargo de la escribana Analia Roch, y el señor Valicente en

18 su carácter de Apoderado de la sociedad "SANCOR DO BRASIL Produtos

19 Alimenticios LTDA." lo que acredita con el Poder Especial de fecha 17 de

20 diciembre de 2009, debidamente certificado con fecha 17 de diciembre de

21 2009 y debidamente Autorizado por el Ministerio de Relaciones Exteriores

22 con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de 2010

23 y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

24 documentación relacionada tengo a la vista y les confiere facultades sufi-

25 cientes para suscribir el documento adjunto, doy fe.- El documento se




F 001516965

encuentra parcialmente escrito en idioma extranjero.-

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

## CUARTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Productos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de fecha 13 de Abril de 2010 y Tercera Enmienda de fecha 29 de Noviembre de 2010, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Cuarta Enmienda.

(b) Que, en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO frente al MUTUANTE bajo el Contrato Marco, el MUTUARIO se obligó a mantener durante toda la vigencia del Contrato Marco y hasta que el mismo se extinga, Warrants endosados a favor del MUTUANTE por un monto no inferior a una suma equivalente al 15% (quince por ciento) de la Línea de Crédito Adeudada (Sección 7.2 de la Cláusula SÉPTIMA).

(c) Al momento de la presente, el MUTUANTE declara de conformidad, que la Línea de Crédito Adeudada, asciende a un total de US$ 53.312.477,86 (Dólares Estadounidenses CINCUENTA Y TRES MILLONES TRESCIENTOS DOCE MIL CUATROCIENTOS SETENTA Y SIETE CON 86/100) y que el MUTUARIO entregó y endosó Warrants a su favor por la suma total de US$ 13.397.274,44 (Dólares Estadounidenses TRECE MILLONES TRESCIENTOS NOVENTA Y SIETE MIL DOSCIENTOS SETENTA Y CUATRO CON 44/100).

(d) Que el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello- ha aceptado liberar algunos – no todos- de los Warrants endosados a su favor, siempre que no se vea afectada la ratio exigida por la Sección 7.2 de la Cláusula SÉPTIMA y sin que ello implique novación alguna de la deuda instrumentada en el Contrato Marco ni en las Solicitudes de Desembolso.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Cuarta enmienda al Contrato Marco (la "Cuarta Enmienda"), de conformidad con las presentes Cláusulas:

1. Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Cuarta Enmienda:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 3106U | QUESO PASTA DURA EN MADURACION | POZO DEL MOLLE | 10.000,00 | Kg | 08/09/2011 | 70.000,00 |
| 3107U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 400.000,00 | Kg | 08/09/2011 | 2.800.000,00 |

2. Conforme lo anteriormente detallado, como consecuencia de la liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:



| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 3075U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3076U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3077U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3078U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 148.937,00 | Kg | 08/09/2011 | 700.003,90 |
| 3079U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 148.937,00 | Kg | 08/09/2011 | 700.003,90 |
| 3080U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 102.412,00 | Kg | 08/09/2011 | 481.336,40 |
| 3081U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 187.500,00 | Kg | 08/09/2011 | 1.312.500,00 |
| 3082U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 87.500,00 | Kg | 08/09/2011 | 612.500,00 |
| 3083U | QUESO PASTA DURA EN MADURACION | POZO DEL MOLLE | 187.500,00 | Kg | 08/09/2011 | 1.312.500,00 |
| 3084U | LECHE UAT | SUNCHALES | 515.750,00 | Kg | 08/09/2011 | 866.460,00 |
| 3085U | LECHE UAT | SUNCHALES | 515.750,00 | Kg | 08/09/2011 | 866.460,00 |
| 3086U | LECHE UAT | SUNCHALES | 169.643,00 | Kg | 08/09/2011 | 285.000,24 |
| 3087U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3088U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3089U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3090U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 46.250,00 | Kg | 08/09/2011 | 289.525,00 |
| 3091U | QUESOS SEMIDUROS EN PROCESO | BRIKMANN | 73.300,00 | Kg | 08/09/2011 | 344.510,00 |
| 3133U | LECHE EN POLVO | MORTEROS | 200.000,00 | Kg | 08/09/2011 | 720.000,00 |
| 3134U | LECHE EN POLVO | SUNCHALES | 398.000,00 | Kg | 08/09/2011 | 1.432.800,00 |
| 3135U | LECHE EN POLVO | DEVOTO | 200.000,00 | Kg | 08/09/2011 | 720.000,00 |
| Total | | | | | | 13.400.074.44 |

3. Con excepción de aquellos términos expresamente modificados por la presente Cuarta Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, el día 1 de Agosto de 2011.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Productos Alimenticios Ltda.
Nombre: Mario Magdalena – Daniel Jorge Valicente
Carácter: Apoderados

Firma/s certificada/s en Foja
Nº F 0 0 1 6 8 4 1 6 0
Bs. As. 1 - 8 - 2011

Por: IIG TOF B.V.
Nombre:
Carácter: Trust International Management (T.I.M.) B.V.
Managing Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

  

**ANEXO**                                                F 001684188

1  Buenos Aires, 01 de Agosto de 2011 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número154              del LIBRO

6  número164              , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad.Mario César MAGDALENA, L.E. 8.106.144 y Da-

9  niel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identidades de

10  acuerdo al inciso a) del artículo 1002 del Código Civil y actúan: el señor Magda-

11  lena en su carácter de Apoderado de la sociedad "SANCOR COOPERATIVAS

12  UNIDAS LIMITADA", con domicilio en Sunchales, Provincia de Santa Fe, ins-

13  cripta en la Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia

14  de Santa Fe, Departamento Castellanos, conforme lo acredita con el poder de

15  fecha 15 de diciembre de 2009, pasado al folio 1400 del Registro 640 de la ciu-

16  dad de Sunchales, Provincia de Santa Fe, a cargo de la escribana Analia Roch,

17  y el señor Valicente en su carácter de Apoderado de la sociedad "SANCOR DO

18  BRASIL Produtos Alimenticios LTDA." lo que acredita con el Poder Especial de

19  fecha 17 de diciembre de 2009, debidamente certificado con fecha 17 de di-

20  ciembre de 2009 y debidamente Autorizado por el Ministerio de Relaciones Ex-

21  teriores con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de

22  2010 y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

23  documentación relacionada tengo a la vista y les confiere facultades suficientes

24  para suscribir el documento adjunto, doy fe.-

25                                          MARTIN R. ARANA (h)
                                            ESCRIBANO
                                            MAT. 4370

**ANEXO B**

*Modelo de nota dirigida al Fiduciario*

Buenos Aires, ___ de Septiembre de 2011.

Sres.

**BANCO DE SERVICIOS Y TRANSACCIONES S.A**

**Av. Corrientes 1174, Piso 3°**

**Ciudad Autónoma de Buenos Aires**

**At.: Daniel Hoyos / Verónica Burgueño**

Presente

**Ref. :** Propuesta de Cesión Fiduciaria y Fideicomiso con Fines de Garantía Sancor- IIG TOF BV (Propuesta N° 1101)

De nuestra consideración:

Nos dirigimos a Ud. en su carácter de Fiduciario de la Propuesta N° 1101, a los efectos de comunicarle los términos de la enmienda de fecha ___ de septiembre de 2011 al Contrato de Línea de Crédito de fecha 21 de diciembre de 2009 suscripto entre el Fiduciante y el Beneficiario, definido en la Propuesta de la referencia como el "Contrato de Préstamo".

A tal efecto adjuntamos a la presente copia de la enmienda mencionada como **Anexo I.**

Atentamente,

Por **SANCOR COOPERATIVAS UNIDAS LTDA**

_____

Nombre:

Cargo:

Por **IIG TOF B.V.**

_____

Nombre:

Cargo:

**Recibida  la nota y su Anexo I y aceptado en conformidad.**

Por **BANCO DE SERVICIOS Y TRANSACCIONES S.A**

_____

Nombre:

Cargo:

5



**ANEXO V**
**MODELO NOTIFICACION DE PRORROGA DE FECHA DE AMORTIZACION DE CAPITAL**

_____, _____ de _____ de 20___

Señores
**IIG TOF B.V.**
Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam,
The Netherlands

Ref.: Notificación de prorroga de Fecha de vencimiento - Contrato de Línea de Crédito SANCOR

De nuestra consideración:

Nos dirigimos a Uds. con relación al Contrato de Línea de Crédito suscripto entre Uds., SANCOR DO BRASIL Productos Alimenticios Ltda. y SANCOR COOPERATIVAS UNIDAS LTDA. con fecha 21 de Diciembre de 2009 (el "Contrato Marco") modificado mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de fecha 13 de Abril de 2010, Tercera Enmienda de fecha 29 de Noviembre de 2010,  Cuarta Enmienda de fecha 1 de Agosto de 2011 y Quinta enmienda de fecha __ de _____ de 2011, cuyas definiciones, términos y condiciones resultan aplicables a la presente Carta. Las palabras utilizadas en la presente que comiencen con mayúsculas y estén definidas en el Contrato Marco, tendrán el significado conferido a ellas en él, salvo expresa disposición en sentido contrario en la presente.

En el marco del Contrato de Línea de Crédito, con fecha _____ hemos remitido a Uds. la Solicitud de Desembolso que en copia adjuntamos a la presente como Anexo I (la "Solicitud"), en virtud de la cual Uds. han depositado en las cuentas indicadas en la Solicitud y nosotros hemos recibido en conformidad la suma de US$ _____ (Dólares Estadounidenses _____ CON 00/100).

De conformidad con lo establecido en la Cláusula Quinta del Contrato Marco, venimos por la presente a comunicar a Uds. con la debida anticipación que -en ejercicio del derecho que nos asiste- optamos por prorrogar la última de las Fechas de Vencimiento de la Solicitud por un nuevo período de dieciocho (18) meses a ser contado desde _____  y con vencimiento el día _____. En tal sentido la Fecha de Vencimiento para el pago de las Sumas Adeudadas –comprensivas de los intereses convenidos con Uds. a los efectos de la presente prórroga- será la siguiente:

[CRONOGRAMA DE FECHAS Y MONTOS]

_Fecha Vto.          Moneda e Importe de la Suma Adeudada [DE ACUERDO A LA TASA DE DESCUENTO CONVENIDA Y LOS GASTOS ADMINISTRATIVOS]_

_____      _US$ _____

Adjuntamos a la presente un Pagaré a vuestro favor, pagadero a la vista, por la suma de US$ _____ (Dólares Estadounidenses _____ ).

Fecha Emisión          Fecha Vto.                    Moneda e Importe

Adjuntamos a la presente los Warrants Nº _____ por la suma total de _____  debidamente endosados a vuestro favor de acuerdo al siguiente detalle:

[COMPLETAR]

Asimismo, con la presente el FIADOR expresa su consentimiento respecto de la prórroga de la Fecha de Vencimiento que por la presente se comunica, asumiendo mantener la fianza otorgada en virtud del Contrato Marco en toda su extensión y por el plazo prorrogado.

Con excepción de aquellos términos modificados por la presente, todos los demás términos, condiciones y cláusulas de la Solicitud permanecen inalterables, manteniendo los mismos plena vigencia. Asimismo la presente no constituye ni puede ser interpretada como una novación de las obligaciones asumidas por el MUTUANTE y/o el FIADOR en virtud de la Solicitud y/o del Contrato de Línea de Crédito.

 Sin otro particular, saludamos a Uds. atentamente.

**Mutuario**                                          **Fiador**


_____              _____
Por:                                                     Por:
 Nombre:                                               Nombre:
Carácter:                                               Carácter:

Certificación de firmas: _____

Recibido:


_____
Por: IIG TOF B.V.
Nombre:
Carácter:

6

## SEXTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por el Sr. Daniel Jorge Valicente, en su carácter de Apoderado, y el Sr. Mario Cesar Magdalena, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes".

**CONSIDERANDO:**

(a)  Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de 13 de Abril de 2010, Tercera Enmienda de fecha 29 de Noviembre de 2010, Cuarta Enmienda de fecha 1 de Agosto de 2011 y Quinta Enmienda de fecha 21 de Septiembre de 2011, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Sexta Enmienda.

(b)  Que a la fecha de la presente enmienda, en garantía del cumplimiento de las obligaciones asumidas bajo el Contrato Marco, el MUTUARIO endosó a favor del MUTUANTE y el MUTUANTE recibió en conformidad, una cantidad de Warrants equivalentes al 25% del monto de la Línea de Crédito Adeudada, la cual a la fecha asciende a la suma de US$ 58.771.565,98 (Dólares Estadounidenses CINCUENTA Y OCHO MILLONES SETECIENTOS SETENTA Y UN MIL QUINIENTOS SESENTA Y CINCO CON 98/100).

(c)  Que atento a las constantes variaciones en el mercado de los precios de los productos lácteos -objeto de los Warrants-, el MUTUARIO ha ofrecido al MUTUANTE y éste acepta el mantener el porcentaje indicado en el apartado anterior y en tal sentido enmendar el Contrato Marco a fin de reflejar el aumento de los montos mínimos requeridos respecto de los Warrants. .

(d)  Que en virtud de lo expuesto en el considerando anterior, es intención de las Partes modificar el Contrato Marco a fin de incluir lo expuesto precedentemente.

En mérito a las consideraciones precedentemente expuestas, las Partes suscriben la presente Sexta Enmienda al Contrato Marco (la "Sexta Enmienda"), de conformidad con las presentes Cláusulas:

1.  Modifíquese las siguientes secciones de la **Cláusula SÉPTIMA** del Contrato Marco, las que quedarán redactadas conforme se indica a continuación:

*7.1 En adición a toda otra garantía, junto con cada Solicitud de Desembolso, el MUTUARIO deberá suscribir y entregar al MUTUANTE, como garantía adicional de pago, Warrants de productos lácteos o sus derivados – debidamente endosados a favor del MUTUANTE- por una suma equivalente como mínimo al 25% (veinticinco por ciento) de la Suma Adeudada expresada en dicha Solicitud de Desembolso, expresada en Dólares Estadounidenses, con exclusión de toda otra moneda.*

*7.2. El MUTUARIO se obliga a que durante toda la vigencia del Contrato Marco el MUTUANTE cuente en su poder con Warrants por un monto no inferior a una suma equivalente al 25% (veinticinco por ciento) de la Línea de Crédito Adeudada. Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art. 26 de la Ley 9643, el MUTUARIO se obliga a reemplazar periódicamente los Warrants antes del vencimiento de los 180 (ciento ochenta) días contados desde la fecha de emisión de los mismos, debiendo entregar al MUTUANTE nuevos Warrants por un monto igual o superior, en su caso, al de los Warrants originales.*

1



2.      Modifíquese la siguiente sección de la **Cláusula NOVENA** del Contrato Marco:

*9.1.22. Que en todo momento durante la vigencia del presente Contrato Marco el MUTUANTE contará con Warrants por una suma equivalente al 25% (veinticinco por ciento) de la Línea de Crédito Adeudada.*

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 20 días del mes de Abril de 2012.

Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Por: **SANCOR DO BRASIL Produtos Alimenticios Ltda.**
Nombre: Daniel Jorge Valicente-Mario César Magdalena
Carácter: Apoderado

Trust International Management (T.I.M.) B.V.
Managing Director

Por: IIG TOF B.V.
Nombre:
Carácter:

Firma/s certificada/s en Foja
Nº F 0018 43 718
Bs. As. 20.4.2012

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

2




**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404



# ANEXO                                           F 001843718

1   Buenos Aires, 20 de Abril de 2012 . En mi carácter de escribano

2   Titular del Registro Notarial Nº 841

3   CERTIFICO: Que la/s firma/s                                que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número 12                    del LIBRO

6   número 184                    , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144.-

9   quien justifica su identidad de acuerdo al inciso a) del artículo 1002 del

10  Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11  COR COOPERATIVAS UNIDAS LIMITADA", con domicilio en Súnchales,

12  Provincia de Santa Fe, inscripta en la Matrícula 772 del Registro Nacional

13  de Cooperativas, de la Provincia de Santa Fe, Departamento Castellanos,

14  conforme lo acredita con el poder de fecha 15 de diciembre de 2009, pa-

15  sado al folio 1400 del Registro 640 a cargo de la escribana Analía Roch

16  de la ciudad de Súnchales, Provincia de Santa Fe, la documentación re-

17  lacionada tengo a la vista y le confiere facultades suficientes para suscri-

18  bir el documento adjunto, doy fe.- El documento se encuentra escrito en

19  idioma extranjero.-

20

21

22

23

24

25



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

# ANEXO

**CONTRATO DE LÍNEA DE CRÉDITO PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

**PRE EXPORT FINANCE CREDIT FACILITY AGREEMENT**

Entre

SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "**MUTUARIO**"), por una parte;

SANCOR DO BRASIL Produtos Alimenticios Ltda., una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Gabriel Gustavo Martinuzzi, en su carácter de Apoderado Gerencia Financiera y Administrador (Artículo 11°) respectivamente, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "**FIADOR**"), y

IIG TOF B.V., representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "**MUTUANTE**"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "**Partes**"; y

**CONSIDERANDO:**

(a) Que el MUTUARIO está interesado en obtener financiamiento de mediano plazo para destinarlo a la pre-financiación de sus exportaciones

(b) Que la satisfacción de la necesidad de contar con financiamiento para prefinanciar las exportaciones que el MUTUARIO tiene en la actualidad, redundará en su beneficio, permitiéndole continuar con el desarrollo y ampliación de sus mercados externos;

(c) Que el FIADOR mantiene fuertes relaciones comerciales con el MUTUARIO por lo cual está interesado en afianzar las obligaciones de éste último a fin de que pueda obtener la financiación antes referida,

(d) Que por las razones indicadas en el Considerando (b), y además, para facilitar el otorgamiento de un préstamo desde el punto de vista del riesgo crédito, el MUTUARIO está dispuesto a afectar bienes para garantizar el repago del crédito para prefinanciar sus exportaciones;

(e) Que el MUTUANTE está dispuesto a otorgar una línea de

---

Entered into by and between:

SANCOR COOPERATIVAS UNIDAS LIMITADA, a company store of first degree, constituted and registered under the laws of the Argentine Republic, with domicile at Tacuarí 202, 3° floor, Capital Federal, República Argentina, represented herein by Mr. Mario Magdalena, as representative (hereinafter referred to as the "**BORROWER**"), and

SANCOR DO BRASIL Produtos Alimenticios Ltda., a corporation registered under the laws of the Brazilian Republic, represented herein by Mr. Mario Magdalena and Gabriel Gustavo Martinuzzi, as Attorney-in-Fact, Financial Manager and Administrator (section 11°) respectively, with domicile at Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República de Brasil, (hereinafter referred to as the "**SURETY**"), and

IIG TOF B.V., respresented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V. respresented herein by Mr. _____ and _____, as _____, with domicile at Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (hereinafter referred to as the "**LENDER**"), and

The BORROWER, the LENDER and the SURETY jointly named as the "**Parties**"; and

**WHEREAS:**

(a) That the BORROWER is interested in obtaining mid term financing in order to appoint it to pre-finance its exportations.

(b) That the satisfaction and the need to obtain a financing to pre-finance the export that the BORROWER currently has, will benefit him, granting him to continue with the development and extension of its external markets;

(c) That the SURETY maintains strong commercial relationships with the BORROWER, reason why is interested to guarantee the obligations of the last mentioned in order for it to obtain the financing previously referred to;

(d) That for the reasons indicated in (b) above, and algo, to facilitate the granting of the loan from the perspective of the credit risk, the BORROWER is willing to affect some assets/goods to warranty the repayment of the credit to pre-finance its exports;

(e) That The LENDER is willing to grant a credit facility






crédito de hasta Dólares Estadounidenses cincuenta millones con 00/100 (US$ 50.000.000,00) para el MUTUARIO, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) el MUTUARIO y el FIADOR se obliguen solidariamente a su repago y al cumplimiento de todas las obligaciones asumidas bajo el Contrato Marco; (ii) que las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (iii) se otorgue y perfeccione el Fideicomiso y la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, se celebra el presente contrato de línea de crédito, sujeto a las siguientes cláusulas y condiciones:

## PRIMERA:   DEFINICIONES.

"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO y/o del FIADOR.

"Arthur Schuman": significa ARTHUR SCHUMAN, INC., una firma organizada bajo las leyes del Estado de New Jersey, Estados Unidos de Norteamérica, con domicilio en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"BARIVEN c/o PDVSA": significa Bariven S.A., c/o PDVSA Services, Inc., una firma organizada bajo las leyes del Estado de Texas, Estados Unidos de Norteamérica, con domicilio en 1293 Eldrige Park, Houston, Texas (77077), Estados Unidos de Norteamérica.

"Bien/es Fideicomitido/s" significa los "Créditos Cedidos" conforme este término está definido en el Fideicomiso.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o del FIADOR y/o sus Afiliadas y/o del MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato Marco (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO y/o el

of up to  Fifty Million United States Dollars and 00/100 (US$ 50,000,000.00) to the BORROWER, subject to the terms and provided that: (i) the BORROWER and the SURETY become jointly and severally bound to repay the same and to comply with all the obligations undertaken under the Agreement; (ii) that the Guarantees (as defined hereinbelow) are maintained in full force and effect and enforceable up to the termination of the Agreement; and (iii) the Parties grant and perfect the assignment of the Assigned Credits (as they are defined hereinafter).

By virtue of the aforesaid considerations, this credit facility agreement is executed pursuant to the following terms and conditions:

## SECTION ONE: DEFINITIONS.

"Affiliates" means the subsidiary corporations and/or holding corporations and/or companies commonly owned by the BORROWER and/or the SURETY.

"Artur Schuman" means ARTHUR SCHUMAN, INC., a corporation organized and registered under the laws of the Estate of New Jersey, United States, with domicile at 40 New Dutch Lane, Fairfield, NJ 07004 USA.

"BARIVEN c/o PDVSA" means Bariven S.A., c/o PDVSA Services Inc., a corporation organized and registered under the laws of the Estate of Texas, United States of America, with domicile at 1293 Eldrige Parkway, Huston, Texas (77077), United States of America.

"Trusted Asset/s" means the "Assigned Credits" as the term is defied in the Trust.

"Material Adverse Change" means any material unfavorable change in the economic, commercial, financial or operating situation or financial position or of any other kind of BORROWER and/or the SURETY and/or their Affiliates and/or the LENDER, or their projections, taken as a whole, or in the economic, financial and tax policy of the Republic of Argentina or the United States of America, or the occurrence of any event that, at the LENDER's reasonable criterion, materially changes the prevailing market conditions as of the date of execution hereof (including, without limitation, any suspension, release or limitation to the compliance with monetary obligations under financial facilities and/or foreign trade and/or of any other kind, any payment suspension declaration in the Republic of Argentina or in any other financial or exchange market, the commencement of war, armed assaults, or any other type of national or international crisis directly or indirectly related to the Argentine Republic); or the occurrence of any event which in the LENDER's opinion gives reasonable grounds to presume that the BORROWER and/or the SURETY will not be able to regularly fulfill or comply with their obligations hereunder; or



FIADOR no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato Marco; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Condiciones Precedentes" significan las condiciones precedentes para la entrada en vigencia del Contrato Marco, previstas en la Cláusula SEGUNDA.

"Contrato Marco" significa el presente contrato de linea de crédito suscripto entre las Partes.

"Crédito/s Cedido/s" significa los siguientes créditos del MUTUARIO contra los Deudores Cedidos:

(i)     todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Fonterra y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con Fonterra.

(ii)    todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a BARIVEN c/o PDVSA y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con BARIVEN c/o PDVSA.

(iii)   todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Arthur Schuman y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con Arthur Schuman.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

| | |
|---|---|
| Bank: | State Street bank & Trust Boston, MA |
| ABA#: | 011-000-028 |
| SWIFT: | SBOSUS33 |
| Credit: | WMS Cash DDA |
| Account #: | 17039843 |
| Further Credit: | IIG TOF B.V – Sancor CUL |
| Account #: | 02030-8420148 |

any significant variation in the Peso Argentino/United States Dollar exchange rate, or any suspension in the foreign exchange markets of the Republic of Argentina and/or the United States of America that produce a Material Adverse Effect.

"Conditions Precedent" means the conditions precedent for the effectiveness of the Master Agreement, set forth in Section TWO.

"Master Agreement" means this credit facility agreement executed between the Parties.

"Assigned Credit/s" means the following credits of the BORROWER against the Assigned Debtors:

(i)     means all the actual and future credit rights corresponding to the BORROWER over the commercial transactions of sales of goods that the BORROWER executes to Fonterra and/or its Affiliates and/or subsidiaries, in between December 21, 2009 and until the total cancellation of the Credit Line owed, including all credit rights resulting from the bills of lading, delivery notices, invoices and other documents issued under the sales transactions the BORROWER executes with Fonterra.

(ii)    means all the actual and future credits rights corresponding to the BORROWER over the commercial transactions of sales god that the BORROWER executes to BARIVEN c/o PDVSA and/or its Affiliates and/or subsidiaries, in between December 21, 2009 and until the total cancellation of the Credit Line owed, including all credit rights resulting from the bills of lading, delivery notices, invoices and other documents issued under the sales transactions the BORROWER executes with BARIVEN c/o PDVSA.

(iii)   means all the actual and future credits rights corresponding to the BORROWER over the commercial transactions of sales god that the BORROWER executes to Arthur Schuman and/or its Affiliates and/or subsidiaries, in between December 21, 2009 and until the total cancellation of the Credit Line owed, including all credit rights resulting from the bills of lading, delivery notices, invoices and other documents issued under the sales transactions the BORROWER executes with Arthur Schuman.

"Lender's Account" means the LENDER's bank account, the data of which is detailed hereinafter:

| | |
|---|---|
| Bank: | State Street bank & Trust Boston, MA |
| ABA#: | 011-000-028 |
| SWIFT: | SBOSUS33 |
| Credit: | WMS Cash DDA |
| Account #: | 17039843 |
| Further Credit: | IIG TOF B.V – Sancor CUL |
| Account #: | 02030-8420148 |



"Cuenta del Mutuario" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación o la que el MUTUARIO indique al MUTUANTE en forma fehaciente:

"Borrower's Account" means the BORROWER's bank account, the data of which is detailed below or that that may be informed by the BORROWER in an evidencing way:

| | |
|---|---|
| BANCO: | Citibank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| ABA: | 021000089 |
| SWIFT: | CITIUS33 |
| Cuenta Nro.: | 36976697 |
| A NOMBRE DE: | Banco Comafi S.A., Buenos Aires, Argentina |
| SWIFT: | QUILARBA |
| CHIPS: | UID 320011 |
| A FAVOR DE: | SanCor Cooperativas Unidas Limitada |
| CUENTA N°: | 000-0-129785 |
| REFERENCIA: | Prefinanciación de Exportación |

| | |
|---|---|
| BANK: | Citibank N.A. |
| ADDRESS: | New York, U.S.A. |
| ABA: | 021000089 |
| SWIFT: | CITIUS33 |
| Account #: | 36976697 |
| ON BEHALF OF: | Banco Comafi S.A., Buenos Aires, Argentina |
| SWIFT: | QUILARBA |
| CHIPS: | UID 320011 |
| IN FAVOR OF: | SanCor Cooperativas Unidas Limitada |
| ACCOUNT #.: | 000-0-129785 |
| REFERENCE: | Prefinanciación de Exportación |

"Deudor/es Cedido/s" significa Arthur Schuman y/o Fonterra y/o BARIVEN c/o PDVSA.

"Assigned Debtors" means Arthur Schuman and/or Fonterra and/or BARIVEN c/o PDVSA.

"Documentos de la Operación" significa el presente Contrato Marco, las Solicitudes de Desembolso derivadas del mismo, los Pagarés, el Fideicomiso, los Warrants y los contratos u órdenes de compra que causan los Créditos Cedidos.

"Transaction Documents", means this Master Agreement, the Requests for Disbursement resulting therefrom, the Promissory Notes; the Trust, the Warrants and the agreements or purchase orders that cause the Assigned Credits.

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Dollars" and "USD" means United States Dollars, in cash or through a bank transfer.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o del FIADOR y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o el cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Material Adverse Effect" means a material adverse effect in (i) the business, assets, transactions or condition (financial or of any other nature) of the BORROWER and/or the SURETY and/or its Affiliates or the other parties of the Transaction Documents (including the LENDER), or (ii) the validity or performance of the Transaction Documents, or (iii) the rights and benefits granted to the LENDER in the Transaction Documents.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula DECIMA, Sección 10.1 y 10.2 del Contrato Marco; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato Marco; y/o cualquier Evento de Incumplimiento conforme se define en el Fideicomiso.

"Event of Default" means any event, condition or circumstance mentioned in, Section Ten, 10.1 and 10.2 of the Master Agreement; and/or any non-compliance of the obligations set forth in the Master Agreement; and/or any Event of Default in agreement with what is foreseen in the Trust.

"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán indefectiblemente ser anteriores a los 24 (veinticuatro) meses calculadas desde la fecha de cada Solicitud de Desembolso.

"Due Date/s" means the due date for the payment of the Due Sums indicated in each of the Requests for Disbursement. The Due Dates shall be previous to 24 (twenty four) months of the date of each Disbursement Request.

"FIADOR" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"SURETY" has the meaning indicated in the introduction of this Master Agreement.



"Fideicomiso" es la propuesta de cesión fiduciaria y fideicomiso con fines de garantía suscripta en el día de la fecha por el MUTUARIO en carácter de potencial fiduciante, a efectos de ser remitida al Banco de Servicios y Transacciones S.A. como potencial fiduciario y al MUTUANTE como potencial beneficiario, en virtud de la cual, el MUTUARIO -a efectos de garantizar el cumplimiento de las obligaciones del presente Contrato Marco- transfiere los Bienes Fideicomitidos para que el potencial fiduciario, una vez aceptada la propuesta, los administre de conformidad con lo allí dispuesto, cuyo modelo se adjunta como Anexo I al presente Contrato Marco.

"Fonterra": significa FONTERRA LIMITED, una firma organizada bajo las leyes de Nueva Zelanda, con domicilio en Fonterra Centre, 9 Princess Street, Auckland, New Zealand.

"Garantías" significa los Pagarés, el Fideicomiso, los Warrants y la cesión de los Créditos Cedidos.

"Línea de Crédito" significa la única línea de crédito, que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA millones con 00/100 (US$ 50.000.000,00).

"Línea de Crédito Adeudada" significa la sumatoria de todos las Sumas Adeudadas por el MUTUARIO bajo la Línea de Crédito incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula DECIMA del presente Contrato Marco.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Partes" significa conjuntamente el MUTUARIO, el FIADOR y el MUTUANTE.

"Pagaré/s" significa los pagarés librados por el MUTUARIO y avalados por el FIADOR, a favor del MUTUANTE, de conformidad con el formato adjunto al Contrato Marco como Anexo II, por un monto equivalente a la Suma Adeudada en cada Solicitud de Desembolso, conforme lo establecido en la Cláusula TERCERA del Contrato Marco.

"Pesos" moneda de curso legal en la República Argentina.

"Plazo de Acreditación" significa el plazo de tres (3) Días

"Trust" is the proposal for the fiduciary assignment and trust with a guaranty purpose executed on the date hereof by the BORROWER in its capacity of potential Trustor, so as to be sent to the Banco de Servicio y Transacciones S.A. as potential Trustee, and the LENDER as potential beneficiary, by virtue of which, the BORROWER – in order to grant the compliance with the obligations of this Master Agreement – shall transfer the Trust Assets so that the potential Trustee once the proposal is accepted can administer them in agreement with what is therein established, which model is attached herein as Annex I to this Master Agreement.

"Fonterra" means FONTERRA LIMITED, a company existing under the laws of New Zealand, with domicile at Fonterra Centre, 9 Princess Street, Auckland, New Zealand.

"Guarantees" means the Promissory Notes, the Trust, the Warrants and the assignment of the Assigned Credits.

"Credit Facility" means the unique Credit Facility, that, subject to the terms and conditions of the Transaction Documents, the LENDER shall make its best efforts so as to grant it to the BORROWER, for up to the total maximum amount of Fifty Million United States Dollars and 00/100 (US$ 50,000,000.00).

"Indebted Credit Facility" means the sum up of all the Sums Due by the BORROWER under the Credit Facility including all interests applicable in accordance with this Master Agreement.

"Default" means the any event or condition that constitute an Event of Default, causing the effects set forth in Section TEN hereof.

"LENDER" has the meaning given in the first paragraph hereof.

"BORROWER" has the meaning given in the first paragraph hereof.

"Applicable Rules" means all present and/or future, national, provincial or municipal rules applicable to the activities and the business of the BORROWER.

"Parties" means jointly the BORROWER, the SURETY and the LENDER.

"Promissory Note/s" means the promissory notes delivered by the BORROWER and guaranteed by the SURETY, in favor od the LENDER, in agreement with the format attached to this Master Agreement as Annex II, for an amount equivalent to the Due Amount in each Disbursement Request, in agreement with what is established in Section THIRD of the Master Agreement.

"Pesos" means the legal currency in the Argentine Republic.

"Crediting Term" means the term of three (3) Business Days as



Hábiles contados desde la fecha de recepción efectiva de la Solicitud de Desembolso.

"Plazo de Confirmación" significa el plazo de cinco (5) días hábiles contados a partir de la fecha de acreditación de los fondos requeridos en la Cuenta del Mutuario, conforme una Solicitud de Desembolso.

"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2010, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

"Solicitud de Desembolso" significa el formulario sustancialmente idéntico al que se adjunta al presente en Anexo III, completo con todos los datos debidamente consignados, que el MUTUARIO deberá suscribir, con la firma de sus apoderados o representantes legales certificada ante escribano público.

"Suma/s Adeudada/s" significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Tasa de Descuento" significa la tasa de interés anual de descuento a ser pactada por las Partes en cada Solicitud de Desembolso, que el MUTUANTE aplicará a cada desembolso de fondos que el MUTUARIO le solicite para calcular el monto de las Sumas Adeudadas.

Warrants: significa los warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO u otra mercadería a satisfacción del MUTUANTE, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEPTIMA del presente Contrato Marco en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato Marco.

## CLAUSULA SEGUNDA: LA LINEA DE CREDITO.

### 2.1.     Disponibilidad de la Línea de Crédito.

(a) **Disponibilidad Condicionada.** Sujeto al cumplimiento específico de cada una y todas las Condiciones Precedentes, o a que el MUTUANTE dispense expresamente y por escrito el cumplimiento de una o todas las Condiciones Precedentes, sin estar obligado a ello bajo ninguna circunstancia, el MUTUANTE se compromete durante el Plazo de Disponibilidad, a mantener disponible la Línea de Crédito a favor del MUTUARIO, la que podrá ser utilizada exclusivamente para la prefinanciación de exportaciones del MUTUARIO, en la medida de las respectivas Solicitudes de Desembolso, conforme las condiciones y el procedimiento que se establece en este Contrato Marco.

from the effective date of receipt of the Request for Disbursement.

"Confirmation Term" means the term of five (5) Business Days as from the date the required funds are credited in BORROWER's Account, pursuant to a Request for Disbursement.

"Availability Term" is the term fixed exclusively to the benefit of the LENDER, as from the date of the Master Agreement until December 31, 2010, during which period the LENDER undertakes to make their best efforts to maintain the Credit Facility available in favor of the BORROWER.

"Request for Disbursement /Disbursement Request" is the form substantially identical to the one attached hereto as Annex III, complete with all data duly stated, to be executed by the BORROWER with the signature of its attorneys-in-fact or legal representatives certified by a notary public.

"Sum/s Due" means the funds to be given by the BORROWER as payment to the LENDER under each Request for Disbursement including any applicable interest until the capital repayment, as per this Master Agreement.

"Discount Interest Rate" means the annual discount interest rate to be agreed between the Parties under each Request for Disbursement, that the LENDER will apply to each funds disbursement that the BORROWER requires to calculate the amount of the Sums Due.

"Warrants" means the warrants issued in agreement with Section 9643 of the Argentine Republic, corresponding to the certificates of the deposit of merchandise property of the BORROWER or other merchandise at LENDER's satisfaction, endorsed by the BORROWER in favor of the LENDER for the amounts and in the conditions established n Section SEVEN of this Master Agreement in warranty of the fulfillment of obligations undertaken by the BORROWER under this Master Agreement.

## SECTION TWO: THE CREDIT FACILITY.

### 2.1 Availability of the Credit Facility.

(a) **Conditional Availability.** Subject to the punctual fulfillment of each and every of the Precedent Conditions, or to the fact that the LENDER expressly releases in writing the compliance with all and each of the Conditions Precedent, without being required to do so under no circumstance, the LENDER undertakes to make the Credit Facility available to the BORROWER during the Availability Term, which may be used to finance the BORROWER's exports, pursuant to the conditions and procedure set forth in this Master Agreement.

**(b) Vigencia.** Una vez expirado el Plazo de Disponibilidad, cesará automática e irrevocablemente –sin necesidad de notificación judicial o extrajudicial alguna– el derecho del MUTUARIO de remitir cualquier Solicitud de Desembolso al MUTUANTE, salvo que el Plazo de Disponibilidad sea prorrogado expresamente y por escrito por el MUTUANTE, a su exclusiva satisfacción, y tal decisión sea fehacientemente notificada al MUTUARIO en tiempo hábil.

**(c) Monto de los Desembolsos.** El MUTUARIO podrá requerir los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la sumatoria total de los montos consignados en las respectivas Solicitudes de Desembolso alcancen el monto de la Línea de Crédito; en consecuencia, en ningún caso y bajo ningún supuesto, el MUTUANTE estará obligado, ni se podrá interpretar que esté obligado, a desembolsar una suma mayor a o por encima de la Línea de Crédito.

**2.2. Condiciones Precedentes al otorgamiento de la Línea de Crédito.**

La validez y vigencia de la Línea de Crédito otorgada por el MUTUANTE bajo el presente Contrato Marco está condicionada a que, a criterio razonable del MUTUANTE, (i) se cumplan y mantengan plenamente vigentes a la firma del presente Contrato Marco, todas y cada una de las siguientes Condiciones Precedentes, estipuladas en beneficio exclusivo del MUTUANTE y/o (ii) el MUTUANTE dispense en forma expresa y por escrito, una, algunas o todas las Condiciones Precedentes:

**(a) Aprobaciones Societarias.** copia certificada por escribano público del poder general del MUTUARIO del cual surja que el/ los firmantes apoderados para la suscripción de los Documentos de la Operación se encuentran suficientemente facultados para dicho acto; y

**(b) Vigencia de las Manifestaciones y Declaraciones del MUTUARIO.** Que se encuentren en plena vigencia y continúen siendo ciertas, correctas y verdaderas, todas y cada una de las manifestaciones y declaraciones efectuadas por el MUTUARIO en la Cláusula NOVENA del Contrato Marco, y

**(c) Inexistencia de Cambios Materiales Adversos, Efectos Materiales Adversos o Supuestos de Incumplimiento.** Que no hubiere ocurrido y/o no se encontrare vigente, ni hubiere elementos fundados para prever el acaecimiento de uno o más Cambios Materiales Adversos, Efectos Materiales Adversos y/o de los Eventos de Incumplimiento (hubiere o no sido declarada la caducidad y aceleración de plazos), y que no hubiere ocurrido en conocimiento del MUTUARIO ninguna circunstancia que de cualquier forma hiciere peligrar, menoscabare o debilitare la plena vigencia, validez, plenitud, alcance, ejecutabilidad y/u oponibilidad frente a terceros de los Documentos de la Operación y de las Garantías, y

**(d) Notificación a los Deudores Cedidos.** Que el MUTUARIO

**(b) Effectiveness.** Once the Availability Term has expired, the BORROWER's right to send to the LENDER any Request for Disbursement will automatically and irrevocably cease – unless the Availability Term is expressly extended in writing by the LENDER, to its sole satisfaction, and such decision is sufficiently notified to the BORROWER in due time.

**(c) Amount of Disbursements.** The BORROWER may require the disbursements it deems appropriate according to its needs until the aggregate of the amounts stated in the relevant Requests for Disbursement reach the amount of the Credit Facility; consequently, in no case and event will the LENDER be bound, or may be interpreted to be bound, to disburse an amount higher than or exceeding the Credit Facility.

**2.2 Conditions Precedent to the Granting of the Credit Facility.**

The validity and effectiveness of the Credit Facility granted by the LENDER under the Master Agreement is subject to the fact that, at the LENDER'S reasonable discretion, (i) all and each of the following Conditions Precedent, set forth for LENDER'S exclusive benefit, take place and remain fully effective as of the execution of this Master Agreement and until its termination, and/or (ii) the LENDER expressly excludes in writing one, any or all the Conditions Precedent:

**(a) Corporate Approvals.** a copy certified by a notary public of the general power of attorney of the BORROWER , evidencing that the persons authorized to sign the Transaction Documents are fully empowered therefore.

**(b) Effectiveness of the Representations and Statements by the BORROWER and the SURETY.** That all and each of the representations and statements made by the BORROWER and/or the SURETY in Section NINE of the Master Agreement are fully effective, remain being accurate, correct and true;

**(c) Non-existence of Material Adverse Changes, Material Adverse Effects or Events of Default.** That no grounded elements have neither occurred and/or continue, or exist to foresee the occurrence of one or more Material Adverse Changes, Material Adverse Effects and/or Events of Default (should the lapse and acceleration of terms have been declared or not), and no circumstance known by the BORROWER has occurred that in any way may endanger, undermine or weaken the full effectiveness, validity, full force and effect, scope, enforcement and/or opposition against third parties of the Transaction Documents and Guarantees,

**(d) Notification to the Assigned Debtors:** That the BORROWER



haya notificado a los Deudores Cedidos las cesiones de los Créditos Cedidos en los términos establecidos en la Sección 4.6 del presente Contrato Marco; a cuyo efecto el MUTUARIO deberá entregar al MUTUANTE el original de tales notificaciones recibidas y aceptadas por los Deudores Cedidos.

(e) **Constitución del Fideicomiso.** Como condición previa e ineludible al otorgamiento de la Línea de Crédito, el MUTUARIO deberá haber constituido en legal forma el Fideicomiso de cesión de cobranzas, conforme lo establecido en el Fideicomiso, a favor del MUTUANTE.

## CLÁUSULA TERCERA: CONDICIONES PRECEDENTES PARA EL DESEMBOLSO.

**3.1. Solicitud de Desembolso.** A fin de solicitar al MUTUANTE un desembolso bajo la Línea de Crédito, el MUTUARIO deberá enviar por medio fehaciente y a satisfacción del MUTUANTE:

(i) el original de la Solicitud de Desembolso debidamente completada y firmada por el representante legal del MUTUARIO y del FIADOR o apoderados con facultades suficientes, con su firma certificada por escribano público argentino; cada Solicitud de Desembolso deberá indefectiblemente contener el monto del desembolso requerido, la/s Fecha/s de Vencimiento del mismo y las Sumas Adeudadas que deberá pagar al MUTUANTE en tal/es Fecha/s de Vencimiento;

(ii) un Pagaré por un monto equivalente a las Sumas Adeudadas, debidamente suscripto por el representante legal del MUTUARIO o apoderados con facultades suficientes y avalado por el FIADOR, a plena satisfacción del MUTUANTE, con las firmas debidamente certificadas por un escribano público argentino; y

(iii) los Warrants debidamente endosados por el MUTUARIO, de conformidad con lo establecido en la Cláusula SEPTIMA del presente Contrato Marco, con fecha de vencimiento anterior a la última Fecha de Vencimiento de las consignadas en la Solicitud de Desembolso, con firma certificada por escribano público argentino, a satisfacción del MUTUANTE, representativos de mercaderías a satisfacción del MUTUANTE y por un valor también a satisfacción del MUTUANTE;

**3.2. Falta de Responsabilidad por Desembolsar o No Desembolsar.** Sin perjuicio de lo dispuesto en la presente Cláusula, el MUTUANTE no tendrá responsabilidad de ningún tipo frente al MUTUARIO, por aceptar o rechazar cualquier Solicitud de Desembolso efectivamente recibida del MUTUARIO, siempre que el rechazo sea con causa- y por consiguiente, el MUTUARIO renuncia expresa e irrevocable a promover algún reclamo contra el MUTUANTE fundado en tal

has notified to the Assigned Debtors all the assignments of the Assigned Credits in the terms established in section 4.6 of this Master Agreement, to which effect the BORROWER shall deliver to the LENDER the original of such received and accepted notifications by the Assigned Debtors.

(e) **Trust Constitution:** As a previous and unavoidable condition for the granting of the Credit Line, the BORROWER must have constituted in legal war the Trust of assigns recover, in agreement with what is established in the Trust, in favor of the LENDER.

## SECTION THREE: CONDITIONS PRECEDENT FOR DISBURSEMENTS.

**3.1 Request for Disbursement.** In order to request the LENDER a disbursement under the Credit Facility, the BORROWER must send by self-probatory means and to LENDER'S satisfaction:

(i) the original of the Request for Disbursement duly filled out and signed by the legal representatives or attorney's in fact of the BORROWER and the SURETY duly empowered therefore, with their signatures certified by an Argentine notary public; each Request for Disbursement shall invariable contain the requested disbursement amount, the Due Dates, and the Sums Due that the it will have to pay to the LENDER in such Due Dates;

(ii) a Promissory Note for the Sums Due, duly signed by the legal representatives or attorney-in-fact of the BORROWER and or representatives duly empowered therefore and by the SURETY, at LENDER's entire satisfaction, with the signatures duly certified by an Argentine notary public;

(iii) the Warrants duly endorsed by the BORROWER, in agreement with what is established in Section SEVEN of this Master Agreement, with due date previous to the last Due Date of the ones established in the Request for Disbursement, with their signatures certified by an Argentine notary public, at satisfaction of the LENDER, representative of merchandise at satisfaction of the LENDER and also for an amount at satisfaction of the LENDER.

**3.2 Lack of Liability for Making a Disbursement or Not.** Notwithstanding the provisions of this Section, the LENDER shall not have any liability whatsoever to the BORROWER for accepting or rejecting any Request for Disbursement effectively received from the BORROWER – always that the rejection in with cause and, therefore, the BORROWER expressly and irrevocably waives to file any claim against the LENDER based upon such circumstance or cause.



circunstancia o causa.

**3.3.** <u>Trámite posterior. Desembolso</u>. Una vez recibidos los documentos de la Solicitud de Desembolso por el MUTUANTE, el MUTUANTE procederá a verificar, a su exclusiva discreción, que toda la información y documentación en ellos contenida sea correcta y conforme al Contrato Marco. Ello no obstante, el MUTUANTE no está obligado a realizar una auditoría legal o *due diligence* de los documentos de la Solicitud de Desembolso y, por consiguiente, no será responsable por la falsedad, inexactitud, omisión y/o falta de genuinidad de la misma. Sin perjuicio de ello, de estar éste de acuerdo, a su satisfacción, con los documentos de la Solicitud de Desembolso, el MUTUANTE procederá, a su exclusiva discreción y satisfacción y aún sin estar obligado a ello bajo los Documentos de la Operación, a desembolsar y depositar los fondos solicitados en la Cuenta del Mutuario dentro del Plazo de Acreditación. La aceptación por el MUTUANTE de una Solicitud de Desembolso no lo obliga a aceptar cualquier otra Solicitud de Desembolso –siempre que el rechazo sea con causa- que el MUTUARIO le pueda presentar en forma simultánea o ulteriormente a aquélla.

**3.4.** <u>Confirmación</u>. Dentro del Plazo de Confirmación, el MUTUARIO deberá indefectiblemente remitir por medio fehaciente al MUTUANTE una nota confirmando la recepción de tales fondos. Sin perjuicio de ello, aun en el supuesto de que el MUTUARIO no remitiese la nota de confirmación antes referida, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de cinco (5) días corridos contados desde la finalización del Plazo de Acreditación implicará la conformidad del MUTUARIO con el desembolso depositado en la Cuenta del Mutuario.

**3.5.** <u>Facultad Exclusiva del MUTUANTE</u>. En el caso en que, a exclusivo criterio del MUTUANTE, durante el Plazo de Disponibilidad ocurriera cualquier Cambio Material Adverso o Efecto Material Adverso, el MUTUANTE podrá suspender inmediatamente la tramitación de cualquier Solicitud de Desembolso cursada de conformidad con el Contrato Marco, que esté siendo verificada y evaluada por aquél, así como cualquier desembolso de fondos correspondiente a una Solicitud de Desembolso aprobada por el MUTUANTE pero cuyos fondos no hayan sido efectivamente acreditados en la Cuenta del Mutuario, sin que tal decisión genere responsabilidad alguna al MUTUANTE, renunciando en consecuencia el MUTUARIO a promover cualquier acción por responsabilidad fundada en tal causa. Ello, sin perjuicio de la facultad del MUTUANTE de dar por terminado el Contrato en tal supuesto, de conformidad con lo establecido en la cláusula DECIMA del presente Contrato. .

**3.6.** <u>Devolución al MUTUARIO de los Créditos Cedidos. Notificación a los Deudores Cedidos</u>. Una vez cancelada en su totalidad la Línea de Crédito Adeudada por el MUTUARIO y dentro de las 48 hs. de sucedido ello, el MUTUANTE se obliga a notificar a cada Deudor Cedido que ha quedado sin efecto la cesión del Crédito Cedido por lo que a partir de la recepción de

**3.3** <u>Subsequent Proceeding. Disbursement.</u> Once the documents of the Request for Disbursement have been received by the LENDER, it will proceed to verify, that all the information and documents contained therein are, at its own criterion, accurate and in accordance with the Master Agreement. Notwithstanding that, the LENDER is not obliged to perform a legal audit or due diligence of the Documents of the Request for Disbursement and, therefore, it will be not responsible for any misrepresentation, inaccuracy, omission and/or lack of genuineness thereof. Notwithstanding the aforesaid, if the LENDER agrees, to its satisfaction, with the Documents of the LENDER agrees, to its satisfaction, with the Documents of the Request for Disbursement, the LENDER shall, at its own discretion and to its own satisfaction, and even without being bound thereto under the Transaction Documents, to disburse the requested funds in the BORROWER's Account within the Crediting Term. The LENDER'S acceptance of a Request for Disbursement does not bind it to accept any other Request for Disbursement that the BORROWER may submit to it simultaneously or thereafter – always that the rejection is with cause.

**3.4** <u>Confirmation.</u> Within the Confirmation Term, the BORROWER must necessarily send to the LENDER a note confirming the receipt of such funds by self-probatory means. Notwithstanding the aforesaid, even in the event that the BORROWER fails to send the confirmation note mentioned above, the lack of claim by the BORROWER by self-probatory means within a term of five (5) calendar days as from the completion of the Crediting Term shall imply the conformity of the BORROWER to the disbursement deposited in the BORROWER's Account.

**3.5** <u>LENDER'S Exclusive Power.</u> Should, at the LENDER'S exclusive discretion, during the Availability Term any Material Adverse Change or Material Adverse Effect occur, the LENDER may immediately interrupt the proceedings of any Request for Disbursement filed according to the Master Agreement, which is being reviewed and evaluated by such LENDER, as well as any disbursement of funds corresponding to a Request for Disbursement approved by the LENDER but which funds have not been actually credited in BORROWER's Account, without giving rise to any responsibility for the LENDER. Consequently, the BORROWER waives to file any action for responsibility grounded on such reason. The aforesaid notwithstanding the authority of the LENDER to render the Master Agreement terminated, pursuant to the provisions of section TEN hereof.

**3.6** <u>Refund to the BORROWER of the Assigned Credits. Notification to the Assigned Debtors:</u> Once the Credit Line Facility owed is completely canceled by the BORROWER and in within the 48 hs. From its occurrence, the LENDER compels to notify to each of the Assigned Debtors that the assignment of the Assigned Credit has no effect, reason why from the reception of



dicha notificación, cada Deudor Cedido deberá abonar al MUTUARIO el monto de los respectivos Créditos Cedidos.

## CLÁUSULA CUARTA:   CESIÓN DE CRÉDITOS.

**4.1.** En garantía de pago de la Línea de Crédito Adeudada y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO bajo los Documentos de la Operación, y como medio de pago de las Sumas Adeudadas - conforme lo establecido en la Cláusula 5.2 del Contrato Marco- el MUTUARIO cede al MUTUANTE los Créditos Cedidos. La referida cesión comprende todos los derechos y acciones que posee el MUTUARIO y le corresponden respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de las obligaciones contractuales con los Deudores Cedidos de las cuales surjan los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

**4.2.** El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por los Deudores Cedidos, copias o fotocopias de los remitos y facturas que el MUTUARIO emita como consecuencia de los Créditos Cedidos.

**4.3.** El MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por los Deudores Cedidos en la Cuenta del Mutuante. A tal efecto, en adición a las notificaciones previstas en la Sección 4.6 de la presente Cláusula CUARTA, el MUTUARIO se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas a los Deudores Cedidos, una leyenda que indique expresamente que tales facturas deberán ser pagadas al MUTUANTE mediante transferencia de los fondos correspondientes a la Cuenta del Mutuante. En cada una de las facturas cedidas el MUTUARIO se compromete a incluir la siguiente leyenda (y su correspondiente traducción al idioma inglés):

*"El crédito representado y contenido en la presente factura, fue cedido en garantía a IIG TOF B.V., por contrato de Cesión de Créditos de fecha __/__/200__. Deberán Uds. abonar el mismo a su vencimiento mediante depósito en el Banco: _____. ABA Beneficiario: IIG TOF B.V., Cuenta N°: ____."*

**4.4.** Los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas de acuerdo a lo dispuesto en la Sección 5.2 del Contrato Marco.

---

such notification, each Assigned Debtor shall pay to the BORROWER the amount of the respective Assigned Credits.

## SECTION FOUR: CREDIT ASSIGNMENT.

**4.1** As security for the payment of all the obligaitons and the compliance of all the obligations assumed by the BORROWER under the Transaction Documents, and as means of payment of the Sums Due, - in agreement with what is established in Section 5.2 of the Master Agreement – the BORROWER assign to the LENDER the Assigned Credits. The assignment or assignments undertaken comprises all the rights and actions that the BORROWER has with regard to the Assigned Credits and of the consequences previously stated, placing the LENDER pari passu in priorities with the pertinent scope and to the relevant extent, the latter being also subrogated to all rights or agreement performance and/or collection actions likely to exist in the future in connection with such credits, notwithstanding the obligations deriving from the contractual obligations with the Assigned Debtor originating from the Assigned Credits, which shall be exclusively borne by the BORROWER.

**4.2** The BORROWER undertakes to deliver to the LENDER, within 5 (FIVE) days from dispatch thereof, certified copies of the bills of lading regarding the merchandise included in the Assigned Credits. In such sense, it undertakes to deliber to the LENDER, in within 5 (FIVE) days from the reception by the Assigned Debtors, the delivery notices and the invoices issued by the BORROWER as a consequence of the Assigned Credits.

**4.3** The BORROWER guarantees that all sums corresponding to the Assigned Credits shall be deposited by the Assigned Debtor in the LENDER's Account. For such purpose, in addition to the notices indicated in 4.6, the BORROWER and/or the SURETY undertakes to include in all and each of the invoices issued under the Assigned Credits to be sent to the Assigned Debtor, a legend expressly stating that such invoices shall be paid to the LENDER through a transfer of the pertinent funds to the LENDER's Account. In each of the assigned invoices assigned to the BORROWER and/or the SURETY, undertake to include the following legend:

*"The credit represented and included in this invoice, was assigned as security to IIG TOF B.V., through the Credit Assignment Agreement dated __/200__. You should pay the same on the due date through a deposit in the Bank: __ ABA___; Beneficiary: IIG TOF B.V.; Account No. __.)"*

**4.4** The funds of the Assigned Credits deposited in the LENDER's Account shall be applied to the payment of the Sums Due as per Section FIVE, 5.2 of the Master Agreement.

**4.5.** La cesión de los Créditos Cedidos se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula CUARTA y/o no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, el MUTUARIO deberá abonar al MUTUANTE el importe total saldo adeudado correspondiente a cada Suma Adeudada, antes de o en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

**4.6.** Como condición indispensable para la entrada en vigencia del presente Contrato Marco, el MUTUARIO se obliga a notificar en forma fehaciente esta cesión a los Deudores Cedidos mediante la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como Anexo IV con lo cual la misma quedará perfeccionada frente a terceros, sin necesidad de aceptación alguna del Deudor Cedido para tales efectos. A tales fines dentro de las 48 hs. de suscripto el presente Contrato Marco, y como una de las Condiciones Precedentes, el MUTUARIO comunicará a todos los Deudores Cedidos, con intervención notarial, que los Créditos Cedidos han sido transmitidos al MUTUANTE, y que el depósito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante. Asimismo, y sin perjuicio del perfeccionamiento de la cesión del modo antes indicado, el MUTUARIO se obliga a obtener la aprobación expresa de los Deudores Cedidos respecto de la presente cesión, debiendo los Deudores Cedidos –mediante su apoderado o representante legal- firmar al pie de dicha notificación con constancia de aceptación de la misma. El MUTUARIO deberá entregar dicha notificación al MUTUANTE, con la aceptación de los Deudores Cedidos en la forma antes indicada, como una de las Condiciones Precedentes.

El MUTUARIO deberá entregar dichas notificaciones al MUTUANTE, con la aceptación de los Deudores Cedidos en la forma antes indicada, conforme lo establecido en la condición previa a entrada en vigencia del presente Contrato Marco.

Asimismo el MUTUARIO remitirá conjuntamente vía fax una comunicación a cada Deudor Cedido, notificándole la cesión de los Créditos Cedidos, indicándole que el pago de los Créditos Cedidos deberá realizarse en la Cuenta del Mutuante, consignándose que se remite por correo el original de la comunicación.

Cumplido ello, el MUTUARIO requerirá a un escribano público la certificación del texto de la misma, su destinatario, domicilio y su despacho mediante correo internacional por un servicio que brinde constancia de su entrega y recepción.

**4.7.** El presente Contrato no implica de forma alguna la transferencia por el MUTUARIO al MUTUANTE de las obligaciones emergentes de los contratos que causen los Créditos

**4.5** This assignment of the Assigned Credits is made under the BORROWER's liability to the LENDER. Therefore, if for any reason whatsoever the amount of the Assigned Credits is not paid to the LENDER as per the terms stated in this Section and/or are not enough to cover the payment of the Due Amounts in the correspondent Due Dates, the BORROWER shall pay the LENDER the total amount or the balance due corresponding to each Sum Due, previously of or in each Due Date, under penalty of incurring in automatic Default.

**4.6** As an essential condition for the validity of this Master Agreement, the BORROWER and the SURETY binds themselves to give notice of this assignment by a self-probatory means to the Assigned Debtors, through the remittance of a notice substantially identical to the form attached hereto as Annex IV with which it must be understood as effective towards third parties, without the need of any acceptance of the Assigned Debtor to such effects. For purposes thereof, within 48 hours after the execution of this Master Agreement, as as one of the Precedent Condition, the BORROWER shall notify the Assigned Debtor in writing and through self-probatory means with the intervention of a notary, that the credits have been assigned to the LENDER and that the deposit of the sums pertinent to the Assigned Credits shall be made to the LENDER's Account. In such sense, and without prejudice of the assignment perfection in the means previously mentioned, the BORROWER compels to obtain the express approval of the Assigned Debtors regarding this assignment, and the Assigned Debtors will have to sig – by means of a representative or a person empowered to – at the bottom of each notification with acceptance proof of it. The BORROWER shall deliver such notices to the LENDER, with the acceptance of the Assigned Debtors is the way previously outlined, as a Condition Precedent.

The BORROWER shall deliver such notifications to de LENDER, with the acceptance of the Assigned Debtors in the way that was previously indicated, in agreement with what is established in the previous condition to the starting date of this Master Agreement.

In such sense, the BORROWER will remit vía fax a communication to each of the Assigned Debtors, notifying the assignment of the Assigned Credits, indicating that the payment of the Assigned Credtis must be done in th LENDER's Account, establishing that the original of the communication is remitted by postage mail.

Fulfilled that, the LENDER will require to a notary public the certification of the text of it, its addressee, domicile and it deliver by means of international postage mail by a service that gives prove of its deliver and reception.

**4.7** This Agreement does not imply in any manner whatsoever a transfer by the BORROWER to the LENDER of the obligations arising from the agreements originating the Assigned Credits,



Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la Mora del MUTUARIO. De igual manera se producirá la Mora de pleno derecho con los efectos antes citados en el caso de que – con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- los Deudores Cedidos rescindan o resuelvan los contratos de compraventa de mercadería que causen los Créditos Cedidos, o de cualquier forma discontinúen o terminen su relación comercial con el MUTUARIO, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y los Deudores Cedidos.

**4.8.**  El MUTUARIO declara y garantiza al MUTUANTE:

(a)  el cobro de los Créditos Cedidos.

(b)  la forma instrumental de los mismos.

(c)  la legitimidad de los Créditos Cedidos y que los mismos son de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

(d)  que no se encuentra inhibido para disponer de sus bienes;

(e)  que no adeuda suma alguna a ningún Deudor Cedido que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos, y que de darse tal supuesto abonará la diferencia conforme lo estipulado en la cláusula 5.4;

(f)  que no ha percibido suma alguna derivada de los Créditos Cedidos, y que los mismos no han sido cedidos total ni parcialmente a persona física o jurídica alguna con anterioridad;

(g)  la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.

(h)  que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a- la entrega en tiempo y forma a los Deudores Cedidos de la mercadería objeto de los Créditos Cedidos.

(i)  que el monto de los Créditos Cedidos depositado en la Cuenta del Mutuante durante el Plazo de Disponibilidad será equivalente como mínimo al 110,00% del monto de la Línea de Crédito.

(j)  que todos los Créditos Cedidos serán facturados por el MUTUARIO directa y exclusivamente a cada Deudor Cedido.

**CLAUSULA QUINTA: CANCELACIÓN DE LAS SUMAS ADEUDADAS. APLICACIÓN DE LOS CREDITOS CEDIDOS AL PAGO DE LAS SUMAS ADEUDADAS. RECURSO DEL MUTUARIO.**

which shall be borne by the BORROWER. The BORROWER undertakes to comply with any and all of its obligations deriving from the agreements of the Assigned Credits so that the LENDER's right to collect the Assigned Credits shall not be affected. Non-compliance in due time and manner of the obligations mentioned above shall automatically give place by operation of law to the BORROWER's Default. The Default by operation of law shall occur all the same with the consequences already mentioned in the event that, irrespective of the BORROWER's default, the Assigned Debtor rescinds or terminates the merchandise purchase agreements originating the Assigned Credits, or ceases or ends its business relationship with the BORROWER, whether unilaterally or as agreed between the BORROWER and the Assigned Debtor.

4.8 ¹ The BORROWER states and guarantees the LENDER as follows:

(a)  the collection of the Assigned Credits;

(b)  the instrumental form thereof;

(c)  the legitimacy of the Assigned Credits and that the Assigned Credits are freely available to it, and that they are not subject to any attachment, assignment prohibition, or any lien whatsoever as of the date hereof;

(d)  that it is not subject to restraining orders to dispose of its property;

(e)  that it does not owe any sum of money which may give place to set off or discharges of debts of any kind whatsoever on the Assigned Credits; and that if such events take place it will pay the difference in agreement with what is established in section 5.4;

(f)  that it has not received any sum resulting from the Assigned Credits and that the same have not been assigned, either partially or totally, to any natural or artificial person before;

(g)  the authenticity of the signatures of any document evidencing the reason for the Assigned Credits;

(h)  that it shall comply with any and all of the obligations under its charge deriving from the Assigned Credits, including, but not limited to, delivery in due time and manner to the Assigned Debtors of the goods stated in the Assigned Credits.

(i)  that the amount of the Assigned Credits to be deposited at the LENDER's Account during the Availability Term shall be at least equal at a minimum to 110,00% of the amount of the Credit Facility.

(j)  that all the Assigned Credits will be invoices by the BORROWER directly and exclusively to each Assigned Debtor.

**SECTION FIVE: PAYMENT OF SUMS DUE. APPLICATION OF ASSIGNED CREDITS TO PAYMENT OF SUMS DUE. BORROWER'S REMEDY.**

**5.1.** El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, mediante depósito de las mismas en la Cuenta del Mutuante.

**5.2.** A los efectos mencionados en la Sección 5.1 antes referida, los fondos de los Créditos Cedidos depositados en la Cuenta del Mutante serán aplicados al pago de las Sumas Adeudadas del siguiente modo:

(a) Durante los meses en que NO exista Fecha de Vencimiento (entendiéndose por tales aquellos meses transcurridos entre la efectivización del desembolso requerido en cada Solicitud de Desembolso hasta el mes calendario inmediato anterior al de la Fecha de Vencimiento), el MUTUANTE transferirá los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario.

(b) Durante los meses correspondientes a las Fechas de Vencimiento (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante a cancelar las Sumas Adeudadas a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses excedan el monto de las Sumas Adeudadas, el excedente será transferido al MUTUARIO en la forma indicada en el acápite (a) de la presente Sección 5.2. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses no fuesen suficientes para cubrir el importe de las Sumas Adeudadas, el MUTUARIO será responsable de aportar la diferencia, y abonar así el importe total de las Sumas Adeudadas, bajo apercibimiento de Mora.

(c) Todos los fondos correspondientes a los Créditos Cedidos que sean depositados en la Cuenta del Mutuante con posterioridad a la cancelación total de la Línea de Crédito Adeudada y en exceso de la misma, serán reintegrados al MUTUARIO en la forma indicada en el acápite (a) de la presente Sección 5.2.

**5.3.** En caso de Mora, la totalidad de los fondos de los Créditos Cedidos depositados en la Cuenta del Mutante se aplicarán a cancelar toda la Línea de Crédito Adeudada y cualquier otra suma adeudada por el MUTUARIO bajo los Documentos de la Operación.

**5.1.** The BORROWER irrevocably and unconditionally undertakes to pay the LENDER the Sums Due and the Performance Fee on the Due Dates corresponding to each of them through a deposit thereof in the LENDER's Account.

**5.2.** For purposes mentioned in Section 5.1 above, the funds of the Assigned Credits deposited at the LENDER's Account shall be applied to payment of the Sums Due as follows:

(a) During the months in which there are NO Due Dates (being understand by such the months between the effective disbursement after a Disbursement Request and the following calendar month before the Due Date), the LENDER shall transfer the funds corresponding to the Assigned Credit that the Assigned Debtors deposit at the Lender's Account, during the 48 hours period since its reception, to the Borrower's Account.

(b) During the months corresponding to the Due Dates (being understand by such the period between the 1st and the 30th of each month corresponding to the Due Dates), the LENDER shall apply the amounts of the Assigned Credits deposited at the Lender's Account to cancel the Sums Due to be paid in the Due Dates corresponding to each month. In the event that the amount of the Assigned Credits deposited during said month exceeds the amount of the Sums Due, the exceeding amount shall be transfer, to the Borrower's Account as stated in Section 5.2 (a). If the sums deposited during said months were not enough to fulfill the amounts of the Sums Due, the BORROWER shall deposit the amount needed in order to comply with the total amounts of the Sums Due, under penalty of incurring in automatic Default.

(c) All the funds corresponding to the Assigned Credits that were deposited at the Lender's Account, after the total cancellation of the Credit Facility, and in excess of it, shall be re-delivered to the BORROWER and/or the SURETY as set forth in (a) herein of this Section 5.2.

**5.3** Upon Default, all the funds of the Assigned Credits deposited in the LENDER's Account shall be applied to pay the entire Credit Facility and any other amount due under the Transaction Documents.

5.4.    Habida cuenta del recurso del MUTUARIO en la cesión de los Créditos Cedidos al MUTUANTE, en caso que -por cualquier causa- el importe de los Créditos Cedidos depositados en la Cuenta del Mutuante no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las Fecha de Vencimiento correspondiente a un mes determinado, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de o en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

5.4    Taking into account the resource of the BORROWER in the assignment of the Assigned Credits to the LENDER, in case that – for any reason whatsoever - the amount of the Assigned Credits deposited in the LENDER's Account are not sufficient to pay the Sums Due in the correspondent Due Date in a determined month, the BORROWER shall pat the LENDER the total amount or the adequate balance correspondent to each Sum Due, before of or in each Due Date, under penalty of incurring in automatic Default.

## CLÁUSULA SEXTA:    MONEDA DE PAGO.

### SECTION SIX: PAYMENT CURRENCY.

6.1.    El MUTUARIO asume que el pago del importe total o el saldo que eventualmente adeude en virtud de los Documentos de la Operación –incluyendo el pago de la Línea de Crédito Adeudada- deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de la Línea de Crédito Adeudada así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago. Asimismo el MUTUANTE asume que la transferencia que debe realizar a favor del MUTUARIO de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) deberán ser necesariamente abonados en Dólares y no en otra moneda. En consecuencia, el MUTUANTE expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c), así como los intereses punitorios y demás sumas a ser transferidas al MUTUARIO en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviviente en el pago.

6.1    The BORROWER undertakes that payment of the full amount or the balance eventually due under the Transaction Documents- including payment of the Indebted Credit Facility - shall be paid in Dollars and not in another currency. Consequently, the BORROWER expressly acknowledges and states that it is a material condition to this Master Agreement, that the payment of the Indebted Credit Facility, as well as compensatory and penalty interest, costs, court fees and further sums payable to the LENDER hereunder, be canceled in Dollars, expressly waiving the doctrine of unforeseeability or any other similar law to allege a major consideration in payment. In addition to this the LENDER understands that the transfer to be made in favor of the BORROWER of the funds of the Assigned Credits that the Assigned Debtors deposit at the LENDER's Account as set forth in Section FIVE 5.2. a) and c) shall be payable in Dollars and not in any other currency. As a consequence of the foregoing the LENDER acknowledges that it is an essential condition of this Master Agreement that the devolution of the funds corresponding to the Assigned Credits that the Assign Debtors deposit at the LENDER's Account as set forth in Section FIVE 5.2. a) and c), as well as punitive interests and other sums to be transferred tó the BORROWER under this Agreement, are cancelled in Dollars,  expressly waiving a doctrine of unforeseeability or any other similar law to allege a major consideration in payment.

6.2.    En atención a lo dispuesto en la Cláusula 6.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios. en la República Argentina, el MUTUARIO y en su caso el MUTUANTE deberán igualmente abonar las sumas comprometidas (la Línea de Crédito Adeudada y cualquier otra suma pagaderas en virtud de los Documentos de la Operación en Dólares para el caso del MUTUARIO y la transferencia de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) para el caso del MUTUANTE, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE o MUTUARIO según el caso:

6.2    In accordance with the provisions set forth in Section 6.1., if on any Maturity Date there is any restriction or prohibition to access the exchange market in the Argentine Republic, the BORROWER and the LENDER shall nevertheless pay the indebted amounts (the Indebted Credit Facility and any other amount payable under the Transaction Documents) in Dollars, in the case of. the BORROWER, and transfer of the sums corresponding to the Assigned Credits that the Assigned Debtors deposit at the LENDER's Account as set forth in Section FIVE 5.2. a) and c), obtaining the same though any of the following mechanisms, to the LENDER's or  BORROWER s' option depending on the case:

6.2.(a) Mediante la compra con Pesos (o la moneda que sea

6.2(a) Through the purchase with Pesos (or the then legal tender




en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo los Documentos de la Operación; o bien

**6.2.(b).** Mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de cualquier título en Dólares, a satisfacción expresa del MUTUANTE (o del MUTUARIO en su caso) y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE (o el MUTUARIO en su caso) en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total en dicha moneda adeudada bajo los Documentos de la Operación; o bien

**6.2.(c).** En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO (o al MUTUANTE en su caso) llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO (o el MUTUANTE en su caso) bajo los Documentos de la Operación, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

**6.2.(d).** Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en las Fechas de Vencimiento bajo el Contrato Marco, para la adquisición de Dólares.

**6.3.**   Queda expresamente establecido que en cualquiera de las alternativas detalladas en 6.2.(a). a 6.2.(d), las sumas adeudadas por el MUTUARIO (o el MUTUANTE en su caso) sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante (o en la Cuenta del Mutuario en su caso), la cantidad de Dólares adeudada bajo los Documentos de la Operación.

**6.4.**   Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 6.2.(a). a 6.2.(d) precedentes serán pagados por el MUTUARIO

in the Argentine Republic), of any security in Dollars and the transfer and sale of said instruments outside the Argentine Republic for Dollars in an amount which, sold in a foreign market, and once applicable taxes, costs, commissions and expenses are deducted, the proceeds thereof in Dollars are equal to the amount of said currency due under the Transaction Documents; or

**6.2(b)** Through delivery to the LENDER (or the BORROWER as the case may be) of any security in Dollars, to the LENDER's express satisfaction (or the BORROWER's as the case may be) and with Dollar quotation abroad, in an amount which, once sold by the LENDER (or the BORROWER) in a foreign market, at market prices and conditions, and once applicable taxes, costs, commissions and expenses are deducted, the proceeds thereof in Dollars are equal to the aggregate amount in such currency due under the Transaction Documents; or

**6.2(c)** If there is any express legal prohibition in the Argentine Republic, which would impede the BORROWER (or the LENDER) from making the transactions stated in the two foregoing paragraphs, through the delivery to the LENDER (or BORROWER) of Pesos (or the then legal tender in the Argentine Republic), in an amount which, on the payment date, such Pesos are enough, once applicable taxes, costs, commissions and expenses are deducted, to acquire the aggregate amount of Dollars due by the BORROWER (or the LENDER) under the Transaction Documents, as per the exchange rate informed by Citibank N.A., New York, United States of America, to make Dollar acquisitions with Pesos in the City of New York, at 12 (twelve) hours (New York City time) on the payment date; or

**6.2(d)** Through any other procedure existing in the Argentine Republic or abroad, on any Maturity Date under the Master Agreement, for the purchase of Dollars.

**6.3** It is hereby expressly stated that in any of the alternatives detailed in 6.2. (a) through 6.2.(d), the Sums Due by the BORROWER (or the LENDER) shall only be deemed paid and such payment shall have discharging effects only, once the amount of Dollars due under the Transaction Documents and this Master Agreement is actually credited at the Lender's Account (or at the Borrowers' Account as the case may be).

**6.4** All charges, costs, commissions, fees and taxes payable in connection with the procedures set forth in 6.2.(a) through 6.2.(d) above shall be paid by the BORROWER (or the LENDER as the




(o por el MUTUANTE en su caso).

6.5. Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE (o el MUTUARIO en su caso) pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO (o el MUTUANTE en su caso) en una moneda distinta de Dólares, la obligación de pago del MUTUARIO (o del MUTUANTE en su caso) de cualquier suma adeudada bajo los Documentos de la Operación sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTANTE (o el MUTUARIO en su caso) haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUARIO (o el MUTUARIO en su caso) pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo los Documentos de la Operación, el MUTUARIO (o el MUTUANTE en su caso) acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE (o al MUTUARIO en su caso) de esa pérdida.

case may be).

6.5 If in order to obtain a judicial judgment it would be necessary to change the amounts in Dollars due hereunder to another currency, the Parties agree that the exchange rate to be used shall be such which, in accordance with normal banking procedures, the LENDER (or the BORROWER) shall be able to purchase with such other currency Dollars in New York City, United States of America, on the Business Day prior to that day in which final judgment is pronounced. Likewise, if a judgment is pronounced against the BORROWER (or the LENDER) in a currency other than Dollars, the BORROWER's payment obligation (or the LENDER's) of any amount due under the Transaction Documents shall only be deemed paid if on the Business Day following the date in which the LENDER (or BORROWER) has received any amount judged as due hereunder in such other currency, the LENDER (or the BORROWER) shall, under normal banking procedures, in the City of New York, United States of America, purchase Dollars with such other currency. If such amount of Dollars thus purchased is less than the amount due under the Transaction Documents, the BORROWER (or LENDER) agrees, as a different obligation and independently from such judgment, to compensate the LENDER (or BORROWER) for such loss.

## CLÁUSULA SÉPTIMA: WARRANTS

7.1 En adición a toda otra garantía, junto con cada Solicitud de Desembolso, el MUTUARIO deberá suscribir y entregar al MUTUANTE, como garantía adicional de pago, Warrants de productos lácteos o sus derivados –debidamente endosados a favor del MUTUANTE– por una suma equivalente como mínimo al 15% (quince por ciento) de la Suma Adeudada correspondiente, expresada en Dólares Estadounidenses, con exclusión de toda otra moneda.

7.2. El MUTUARIO se obliga a que durante toda la vigencia del Contrato Marco el MUTUANTE cuente en su poder con Warrants por un monto no inferior a una suma equivalente al quince por ciento (15%) de la Línea de Crédito Adeudada. Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art. 26 de la Ley 9643, el MUTUARIO se obliga a reemplazar periódicamente los Warrants antes del vencimiento de los 180 (ciento ochenta) días contados desde la fecha de emisión de los mismos, debiendo entregar al MUTUANTE nuevos Warrants por un monto igual o superior, en su caso, al de los Warrants originales.

7.3. A fin de determinar la cantidad de mercadería que el MUTUARIO deberá depositar para la emisión de los certificados de depósito correspondientes a los Warrants, se tomará en cuenta el precio de mercado de dicha mercadería, vigente al momento de dicho depósito. El mantenimiento de la garantía constituida por los Warrants, por los montos y en la forma precedentemente establecida, constituye una condición esencial

## SECTION SEVEN: WARRANTS

7.1. In addition to any other warranty, together with each Request for Disbursement, the BORROWER shall subscribe and deliver to the LENDER, as an additional warranty of payment, Warrants of milk products or its derivates – dully endorsed in favor of the LENDER – for an amount equivalent as minimum to 15% (fifteen per cent) of the correspondent Amount Due, determined in American Dollars, with exclusion of all other currency.

7.2. The BORROWER compels that during the term of the Master Agreement the LENDER has in its power the Warrants for an amount not inferior to the amount equivalent to 15% (fifteen per cent) of the Credit Line Due. Taking into account the maximum in force term of the warrants as established in section 26 on Section 9643, the BORROWER undertakes to periodically replace the Warrants before the expiration of 180 (one hundred and eighty) days counted from the date in which they were issued, and must deliver to the LENDER new Warrants for an amount equal or superior, in its case, to that of the original Warrants.

7.3. In order to determine the quantity of the merchandise that the BORROWER shall deposit for the issuance of the correspondent deposit certificates to the Warrants, it will be taken into account the market price of such merchandise, in force at the moment of such deposit. The maintenance of the warranties constituted for the Warrants, for the amounts and in the way that was previously mentioned, constitutes an essential





para el mantenimiento del presente Contrato Marco. Consecuentemente, la falta de acuerdo –por cualquier motivo que fuere- en la calidad y/o cantidad de mercadería a ser depositada, que no fuere subsanada dentro de los 5 (cinco) días contados de la intimación que al efecto curse el MUTUANTE, producirá sin más la Mora automática del MUTUARIO sin necesidad de interpelación alguna, provocando la caducidad de todos los plazos con los efectos estipulados en la Cláusula DECIMA del presente Contrato.

7.4.    El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria (Warrantera) de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. . El MUTUANTE dentro de las 48hs. de decretada la misma. . El incumplimiento de dicha comunicación provocará la Mora automática del MUTUARIO. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

7.5.    En caso de Mora del MUTUARIO por cualquier causa que fuere, el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de desinsacular martillero al efecto.

7.6.    Será responsabilidad exclusiva y excluyente del MUTUARIO la inscripción del endoso de los Warrants en los libros de la empresa depositaria de la mercadería indicada en por los mismos, como así también el pago de todos los gastos y honorarios que correspondan a dicha empresa almacenadora.

## CLÁUSULA OCTAVA:  FIADOR.

Por este acto el FIADOR se constituye en fiador solidario, codeudor solidario, liso llano y principal pagador de las obligaciones y deudas asumidas por el MUTUARIO en el presente Contrato Marco, en los mismos términos y condiciones establecidas en el presente Contrato Marco para el MUTUARIO afianzado con renuncia expresa a: (1) los beneficios de división y excusión y demás normas comerciales y civiles concordantes aplicables. (2) a exigir la previa ejecución judicial o extrajudicial del MUTUARIO o ejercer cualquier defensa que pudiera hacer valer el MUTUARIO y en general a oponer toda excepción que no sea la de pago. La responsabilidad solidaria asumida por el FIADOR se extiende, asimismo, al reajuste legal o convencional y accesorios, tales como la actualización monetaria, intereses compensatorios y moratorios, debidos por el MUTUARIO. Esta fianza permanecerá vigente hasta la total cancelación por parte del MUTUARIO de todas las deudas que mantiene el MUTUARIO afianzado y cubiertas por esta garantía. Se considerará incumplimiento de las disposiciones de la presente el caso en que el FIADOR comience negociaciones con cualquier

condition for the maintenance of this Master Agreement. Consequently, the lack of agreement – for any reason whatsoever – in the quality and/or quantity of merchandise to be deposited, that is not heeled in within the 5 (five) days from the notification that to such effect delivers the LENDER, will produce the automatic Default of the BORROWER without the need to interpretation, causing the expiration of all the terms with the effects stipulated in· Section TEN of this Master Agreement.

7.4. The BORROWER declares and warrants the truth of all the data contained in the Warrants, and that the merchandise indicated in them does not recognize nor will recognize any encumbrance nor restriction.  In case of bankruptcy of the depositing company (Warrantera) of the merchandise described in the Warrants, the BORROWER compels to communicate such circumstance to the LENDER in within the 48 hs. from its order. The un-fulfillment of such communication will cause the automatic Default of the BORROWER.  In all the cases, the BORROWER must answer for the damages and harms that it un-fulfillment could cause to the LENDER.

7.5.  In case of Default of the BORROWER for any cause whatsoever, the LENDER will be automatically entitled with the faculty to initiate the execution of the Warrants in the terms of Lay 9643, without prejudice of all the other remedies and/or legal actions that correspond.   In case of auction of the merchandise described in the Warrants, the LENDER expressly reserves the faculty to designate the auctioneer to such effect.

7.6. It will be exclusive and excluding responsibility of the BORROWER the inscription of the endorsement of the Warrants in the books of the depositing company of the merchandise indicated in them, as well as the payment of all the expenses and fees that correspond to such storage company.

## SECTION EIGHT: SURETY.

The SURETY hereat becomes the joint and several surety, main payor and co-debtor of the debts and liabilities undertaken by the BORROWER in this Master Agreement, under the same terms and conditions set forth herein for the BORROWER, and expressly waiving the right to: (1) the benefits of division and excussion and other applicable related commercial and civil rules, (2) demand the previous judicial or extra judicial foreclosure of the BORROWER or exercise any defense to be enforced by the BORROWER and in general to file any defense other than that of payment. The joint and several liability assumed by the SURETY comprises, additionally, the legal or conventional readjustment and accessory costs, such as currency updating, compensatory and penalty interest, due by the BORROWER. This surety shall be effective until full payment by the BORROWER of all liabilities of the BORROWER, covered by this guarantee. It will be considered as a non compliance with the rules of the present the case in which the SURETY starts negotiations with any· creditor for a general payment arrangement or changes the its indebtedness schedule, becomes



acreedor con miras a un arreglo general de pagos o cambiar el cronograma de endeudamiento, o se transformen en insolventes o quebrados, o les sea decretada la quiebra o se presente en concurso preventivo de acreedores o Acuerdo Preventivo Extrajudicial, y los mismos no sean levantados dentro de los (60) días hábiles de haber sido decretados. En dicho supuesto, en un plazo de treinta (60) días hábiles, el MUTUARIO deberá designar un nuevo garante a satisfacción del MUTUANTE. Vencido el plazo de treinta (30) días sin que el MUTUARIO haya designado un nuevo garante, el MUTUANTE puede mediante notificación al FIADOR declarar las obligaciones del MUTUARIO vencidas, y exigir el pago de todos los montos debidos por el MUTUARIO como vencidos, más todos los gastos en que hubiera incurrido el MUTUANTE. El FIADOR efectúa las siguientes declaraciones y garantías, todas las cuales deberán mantenerse durante la vigencia del presente Contrato Marco: (a) Esta garantía constituye una obligación válida y vinculante para mí, ejecutable de acuerdo con sus respectivos términos; (b) No existe estatuto, regla, regulación u obligación contractual vinculante para mí que pudiera ser violada por la celebración, entrega o ejecución de esta garantía. A los efectos del presente el FIADOR constituye domicilio especial en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3303, United States of America y acepta como válidas las notificaciones que se practiquen por telegrama colacionado u otro medio auténtico. A todos los efectos legales de la presente fianza el FIADOR se somete irrevocablemente a la jurisdicción y ley aplicable establecidos en la Cláusula DECIMO QUINTA del presente, renunciando expresamente a cualquier otro fuero o jurisdicción.

## CLAUSULA NOVENA:  MANIFESTACIONES, DECLARACIONES Y COMPROMISOS DEL MUTUARIO Y DEL FIADOR.

**9.1.    Manifestaciones y Declaraciones del MUTUARIO.**
A fin de inducir al MUTUANTE a celebrar el Contrato Marco y otorgarle la Línea de Crédito, el MUTUARIO y el FIADOR manifiestan y declaran, a la fecha del presente Contrato Marco y hasta que el mismo se extinga, lo siguiente:

**9.1.1.**    Que el MUTUARIO es una cooperativa de primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad; y

**9.1.2.**    Que el MUTUARIO y el FIADOR no están obligados a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato Marco y/o de las Garantías; y

**9.1.3.**    Que el Contrato Marco y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO y el FIADOR están

insolvent, or bankrupt, or bankruptcy proceedings are instituted, or petitions for a composition with creditors, or an Out of Court Reorganization Plan, and the same are not withdrawn within 60 days from initiation thereof. In such event, the LENDER shall designate a new surety at satisfaction of the LENDER. At the expiration of the terms of thirty (30) days in the case that the BORROWER has not designated a new surety, the LENDER may, declare that the BORROWER's obligations are due and demand payment of all amounts due by the BORROWER as payable, plus all expenses incurred by the LENDER. The SURETY declares and warrants all the following, which will be maintaing during the term of this Master Agreement: (a) This warranty constitutes a valid and bonding obligation for me, executable in agreement with its respective terms; (b) There is not existence of statute, rule, regulation or contractual obligation that is bonding to me and that could be violated by the celebration, delivery or execution of this warranty. For purposes hereof, the SURETY establishes special domicile at 80 SW 8th hereof, Suite 2000 – Miami, FL 33130-3303, United States of Street, America, and accepts that notices served through a certified telegram or other authentic means are valid. For all legal purposes hereof, the SURETY irrevocably submits to the jurisdiction and applicable law set forth in section FIFTEEN hereof, expressly waiving any other forum or jurisdiction.

## SECTION NINE: REPRESENTATIONS, WARRANTIES AND COMMITMENTS OF THE BORROWER AND OF THE SURETY

**9.1 Representations and Warranties of the BORROWER.**
In order to persuade the LENDER to enter into the Master Agreement and grant the Credit Facility, the BORROWER and the SURETY represent and warrant the following as of the date hereof and until this Master Agreement is terminated the following:

**9.1.1** That the BORROWER is a cooperative association of first degree duly organized, registered and validly existing pursuant to the laws of the Argentine Republic, with all the necessary powers and authority to carry out the relevant operations and businesses currently developed; and

**9.1.2** That the BORROWER and the SURETY are not bound to apply for authorizations or approvals from any judicial or governmental authority or from any other public or private entity (including, without limitation, lessors, lenders, creditors, insurance companies and financial institutions) as a result from this Master Agreement and/or the Guaranties.

**9.1.3** That the Master Agreement and the Guaranties (i) are legal acts or businesses that the BORROWER and/or the SURETY are





legalmente autorizados y capacitados para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

legally authorized and qualified to perform pursuant to the relevant legal and statutory provisions governing their activity; and (ii) that they are executed pursuant to all the required internal approvals of the BORROWER, without infringing any legal, statutory, stockholders' meeting or contractual provision, and that no further authorization is necessary; and

**9.1.4.** Que el MUTUARIO y/o el FIADOR y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualesquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y .

**9.1.4** That the BORROWER and/or the SURETY and/or their Affiliates have not materially and significantly defaulted on: (i) any order, ruling, mandatory injunction, demand, decree or request from any court of justice or arbitral tribunal, or any government agency, whether national, provincial or municipal, of the country or foreign, and/or (ii) the payment of taxes, rates, liens, social security debts and/or levies, whether national, provincial or municipal, both within the country or abroad; and

**9.1.5.** Que el MUTUARIO y el FIADOR no tienen pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en el Contrato Marco, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en sus negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

**9.1.5** That the BORROWER and/or the SURETY have no pending lawsuit, investigation or judicial, administrative or arbitral proceeding before any court of justice, arbitral tribunal or administrative authority, whether national, provincial or municipal, in the country or abroad; or any arbitration proceeding, that may (i) adversely and materially affect their capacity to fulfill their payment obligations under the Master Agreement; (ii) affect the validity, legality or enforceability of any of the Transaction Documents; and/or (iii) have a material adverse effect on the business, financial or any other condition, or the result of their operations; and

**9.1.6.** Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativa competente a que se hallare sometido el MUTUARIO y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, Contrato Marco u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

**9.1.6** That the execution and delivery of, and/or compliance with the Transaction Documents do not infringe any provisions under the Applicable Rules and/or any law and/or decree and/or regulation and/or resolution applicable to the BORROWER and do not infringe any order issued by any court or relevant judicial, arbitral or administrative authority the BORROWER might be subject to, and/or any provision under the current by-laws of the BORROWER and/or under any mortgage, pledge, debt instrument, master agreement or other undertaking in which the BORROWER might be a party or be bound to; and

**9.1.7.** Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

**9.1.7** That there is no paramount title and/or lien and/or restriction and/or limitation and/or hindrance whatsoever that precludes and/or prohibits and/or limits and/or in any way restricts the powers and rights of the BORROWER to execute all the documentation of the Transaction Documents, as well as any other commitment assumed by the BORROWER to the LENDER under any of the Transaction Documents; and

**9.1.8.** Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

**9.1.8** That they are in compliance with the rules and regulations in force applicable to them in environmental, industrial safety and public health matters, and that they have secured all authorizations, permits and licenses required under such legislation; and

**9.1.9.** Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato marco,

**9.1.9** That they have given and provided the LENDER with all the information relating to or in connection with any other



acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO y al FIADOR que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de pago bajo el Contrato Marco y las Garantías, y que toda la información que han proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

master agreement, contract or transaction, fact and/or circumstance relating to the BORROWER and/or the SURETY that may in any way adversely and materially affect the capacity of any of them to comply with their payment obligations hereunder and under the Guarantees, and that all the information furnished to the LENDER relating to the preparation, negotiation and execution of the Transaction Documents is true and correct and does not contain any inaccurate information regarding any relevant fact, nor does it omit any relevant fact the mention of which might be necessary to prevent the stated facts from being inaccurate or misleading; and

**9.1.10.** Que el balance del MUTUARIO al 30 de Junio de 2009, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2009 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

9.1.10 The annual balance sheet of the BORROWER as of June 30, 2009, the relevant statements of income and financial position, annexes and further information therein contained relating to the BORROWER, copies of which the BORROWER has delivered to the LENDER duly signed by their pertinent authorities, accurately represent the financial situation and result of operations of the BORROWER as of that date, and that from June 30, 2009 – no adverse change or event that may cause an adverse change in the business, operations, prospects or financial condition of the BORROWER has occurred; and

**9.1.11.** Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda, o mejor derecho alguno; y

9.1.11 That the Guaranties granted by the BORROWER are not subject to any pledge, or paramount title; and

**9.1.12.** Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, y para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

9.1.12 That the BORROWER has taken out and maintain duly in force all required insurance pursuant to the standards current in the Argentine Republic, and for the activities they develop with creditworthy insurance companies of national renown; and

**9.1.13** Que conforme el conocimiento actual del MUTUARIO, los Deudores Cedidos no se encuentran en cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registra con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

9.1.13 That pursuant to the BORROWER's present knowledge, the Assigned Debtors have not suspended payments, are not insolvent, are not subject to reorganization proceedings or bankrupt, and have not defaulted on any payment of its relevant debts.

**9.1.14** Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tiene y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

9.1.14. That the Transaction Documents and the obligations included therein are and will be at all times direct and general obligations of the BORROWER and have and will have at all times the highest preferential rank of the BORROWER s' debt.

**9.1.15.** Los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas e tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

9.1.15. The Transaction Documents are, or when duly executed and delivered will be, in proper legal form and substance under the applicable law for purposes of performance thereof, pursuant to applicable law. All formalities required in Argentina for the validity and performance of the Transaction Documents (including any notice, registration, filing, payment of fees or taxes, notarization, or submittal to any Government Authority) have been complied with.

**9.1.16.** Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el

9.1.16 That no Event of Default has occurred or will occur as a consequence of or in connection with the performance of the




cumplimiento de las operaciones previstas en los Documentos de la Operación;

**9.1.17.** Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO y/o del FIADOR que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

**9.1.18.** Que cumplen y realizan todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulten aplicables.

**9.1.19.** Que los Bienes Fideicomitidos no reconocen gravamen ni restricción alguna a la fecha;

**9.1.20.** Que el Crédito Cedido contra PDVSA ascenderá como mínimo a una suma equivalente al veinte por ciento (20%) de la Línea de Crédito.

**9.1.21.** Que el Crédito Cedido contra Fonterra ascenderá como mínimo a una suma equivalente al cincuenta por ciento (50%) de la Línea de Crédito.

**9.1.21** Que el Crédito Cedido contra Arthur Schuman ascenderá como mínimo a una suma equivalente al treinta por ciento (30%) de la Línea de Crédito.

**9.1.22.** Que en todo momento durante la vigencia del presente Contrato Marco el MUTUANTE contará con Warrants por una suma equivalente al quince por ciento (15%) de la Línea de Crédito Adeudada.

**9.2** Compromisos y Obligaciones del MUTUARIO y del FIADOR.
Desde la firma del presente Contrato Marco y durante todo el tiempo en que cualquier suma debida bajo el Contrato Marco se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO y el FIADOR se comprometen firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

**9.2.1.** A pagar debida y puntualmente las Sumas Adeudadas, así como los gastos referidos en la Cláusula DECIMO PRIMERA, de conformidad con los términos y condiciones que se establecen en el presente Contrato Marco, y

**9.2.2.** A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que el MUTUARIO y/o el FIADOR, según el caso, los disputase por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la

transactions contemplated in the Transaction Documents;

**9.1.17.** That no Material Adverse Change has occurred or will occur as regards the BORROWER and/or the SURETY that may reasonably cause a Material Adverse Effect in their capacity to comply with their obligations under the Transaction Documents;

**9.1.18.** That the comply with and every reasonable action is being followed and taken by them in order to remain compliant with all international laws, regulations and conventions relating to environmental, labor, health and social security issues applicable thereto.

**9.1.19.** That the Trusted Assets to not recognize lien and or restriction of any kind as of the date hereof,

**9.1.20** That the Assigned Credit against PDVSA shall amount as a minimum to an amount equivalent to twenty per cent (20%) of the Credit Facility.

**9.1.21.** That the Assigned Credit against Fonterra shall amount as a minimum to an amount equivalent to fifty__ per cent (50%) of the Credit Facility.

**9.1.22.** That the Assigned Credit against Arthur Schuman shall amount as a minimum to an amount equivalent to thirty per cent (30%) of the Credit Facility.

**9.1.23.** That at all time during the validity period of this Master Agreement the LENDER shall be provided with Warrants for an amount equivalent to fifteen per cent (15%) of the Indebted Credit Facility.

**9.2** Commitments and Obligations of the BORROWER and of the SURETY.
Following the execution hereof and to the extent any amount due hereunder remains outstanding, on any account and/or due to any reason whatsoever, the BORROWER and the SURETY firmly, expressly, irrevocably and unconditionally undertake to perform or abstain from performing, as applicable, all the acts and/or activities specified below:

**9.2.1** To pay as and when due the Sums Due, as well as the expenses of Section ELEVEN, pursuant to the terms and conditions set forth herein; and

**9.2.2** To keep all payments of taxes, liens, rates, and/or social security obligations and/or levies, whether national, provincial or municipal, both in the country or abroad, up to date, except in such cases where the BORROWER and the SURETY may, as applicable, object in good faith to such payments through the relevant legal resources for good reasons, as hastily as permitted by the applicable procedural legislation and based on their



base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

**9.2.3.** A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contrato marcos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato Marco y las Garantías, y

**9.2.4.** A no realizar actos que constituyan o impliquen (i) una fusión, absorción o cualquier otro acto al que, conforme a cualquier ley o norma, pudieran oponerse los acreedores del MUTUARIO, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

**9.2.5.** A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato Marco y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

**9.2.6.** A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente al MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoria de primer nivel y prestigio internacional, (ii) estados contables trimestrales, y (iii) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos trimestres; y la documentación referida en (iii) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

**9.2.7.** A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato Marco y las Garantías, lo que implicará, entre otras cosas,

unconstitutionality, inapplicability and/or illegality; and

**9.2.3** To (i) maintain their legal capacity in force as well as all registrations necessary to maintain the same; (ii) take any reasonable steps to maintain all the rights, permits, authorizations, agreements, insurance, powers of attorney, privileges, franchises, registrations, licenses and the like in force, as are necessary or advisable for the regular conduct of their activity, businesses or operations and the performance of their obligations; (iii) maintain all their property in good state and working conditions; and (iv) abstain from performing any act that may adversely affect the validity and/or effect of the Master Agreement and the Guaranties; and

**9.2.4** To abstain from performing any acts implying (i) a consolidation, merger, demerger or any other act which, pursuant to any law or rule, may be opposed by the BORROWER's creditors; or (ii) the participation of the BORROWER in other companies or projects or businesses different to the ones currently performed by them, or (iii) the reduction, distribution or reimbursement of corporate capital of the BORROWER or its associates, and to conduct and make all acts necessary for the conservation, maintenance, renewal and effectiveness of their legal existence and rights, licenses, concessions, permits, privileges and franchise materials for the conduction and management of its respective businesses; and

**9.2.5** To maintain the LENDER fully and thoroughly informed of any Material Adverse Change and/or any other fact that may cause a Material Adverse Effect and/or otherwise adversely and significantly affect the payment capacity of the BORROWER of the obligations hereunder and/or under the Guaranties; and/or (ii) that may adversely affect the validity and/or effect of any of the Guaranties, as well as of the actions taken to remedy the same; and

**9.2.6** To make available to the LENDER, and further deliver forthwith - at the latter's request - the following accounting documentation corresponding to the BORROWER: (i) annual financial statements duly audited by a first-level auditing firm of international prestige; (ii) quarterly financial statements, (iii) any other information the LENDER might reasonable request at any time. The financial statements mentioned in (i) above must be submitted duly audited within one hundred and twenty (120) calendar days from the closing of the relevant fiscal year; the financial statements mentioned in (ii) shall be submitted within sixty (60) calendar days from the closing of the relevant quarters; the documentation mentioned in (iii) above must be submitted within five (5) calendar days following LENDER´s request; and

**9.2.7** Not to let in any manner whatsoever any third party creditor be subrogated to, and to preclude any third party creditor from becoming subrogated in any way to, any rights and/or actions granted to the LENDER hereunder and under the Guaranties, which will entail, inter alia, the obligation of the

la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato Marco, y

**9.2.8.** A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

**9.2.9.** A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

**9.2.10.** A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO y/o el FIADOR incurriere en relación con cualquier acuerdo o Contrato Marco del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

**9.2.11.** A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

**9.2.12.** A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes de el MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses TRES MILLONES con 00/100 (US$ 3.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

**9.2.13.** A no reducir su capital, y

**9.2.14.** A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

**9.2.15.** A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato Marco, y

BORROWER to demand the express waiver by any third party obligor of the power to become subrogated to such rights and/or actions to the extent any sum hereunder remains outstanding; and

**9.2.8** To comply with the Applicable Rules (including, without limitation, any law, rule, regulation, order, instruction or resolution applicable to them as regards environmental protection, toxic or hazardous wastes, pollution and hygiene) and to maintain all authorizations, permits or licenses that are necessary under the Applicable Rules; and

**9.2.9** To comply in due time and manner each and every of their obligations arising from the Transaction Documents; and

**9.2.10** To forthwith immediately notify the LENDER (i) of the occurrence of any Event of Default; and (ii) of any default by the BORROWER and/or the SURETY in connection with any agreement or master agreement they might be a party to, or of any of their obligations thereunder (irrespective of whether or not the lapsing and acceleration of the terms has been declared); and (iii) of any actions taken to cure the defaults mentioned in (i) and (ii) above; and

**9.2.11** To keep the accounting records and other records in proper form and allow LENDER's access to their offices, facilities, books, records and files, allowing the performance of any accounting, legal, and management audits, by themselves or by the ones appointed by the LENDER to the extent such action does not materially and adversely interfere with the regular activities of the BORROWER, and

**9.2.12** To inform the LENDER within 5 (five) Business Days after occurrence thereof (i) of any loss or damage suffered by the BORROWER s' property in amounts higher than TWO MILLION United States Dollars and 00/100 (USD 2,000,000.00), individually or cumulatively during each fiscal year, and (ii) any action or claim where the amount claimed from the BORROWER is equal to or higher than THREE MILLION United States Dollars and 00/100 (USD 3,000,000.00) individually or cumulatively during each fiscal year, and

**9.2.13** To abstain from reducing its capital stock; and

**9.2.14** To abstain from transferring or otherwise reducing, for any cause or on any account, including by means of a shareholder s' agreement or voting trust with third parties, and from pledging, encumbering or granting, any kind of guaranty as regards the current shareholdings of the BORROWER in other companies, and

**9.2.15** To maintain all amounts due hereunder as to guaranties and privileges in collection not below any other obligation of the BORROWER;

**9.2.16.** A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

**9.2.17.** A no adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

**9.2.18.** A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta del Mutuario desembolsados bajo el presente Contrato Marco, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato Marco suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

**9.2.19.** A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dicha cesión, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

**9.2.20.** A realizar sus mejores esfuerzos para causar que los Deudores Cedidos depositen en la Cuenta del Mutuante en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

**9.2.21.** A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

**9.2.22.** A remitir al MUTUANTE copia de todo informe, documento, reporte, orden de compra, factura, y/o pronóstico de ventas que remita a cada Deudor Cedido y/o que reciba de cada Deudor Cedido.

**9.2.16** To inform the LENDER on a semiannual basis (i) the consolidated debt of the BORROWER's Affiliates, by each of the companies and per each of the financial entities as creditors, and (ii) the sales volume of each of the Affiliates,

**9.2.17** To abstain from making any decision that may affect the business and/or goodwill of the BORROWER;

**9.2.18** To comply with all the requirements and demands imposed by Banco Central de la República Argentina and other Applicable Rules, and evidence such compliance to the LENDER, to the latter's satisfaction, including without any restriction whatsoever: (i) to enter in the exchange market of the Republic of Argentina all the funds deposited in the BORROWER's Account disbursed hereunder, through the corresponding exchange closing and crediting of the resulting Pesos in a bank account opened in the Argentine financial system as conversion of currency caused under this Master Agreement executed with a foreign lender, and (ii) to periodically inform Banco Central de la República de Argentina about: (a) the existence of the Transactions Documents and (b) the balance of its foreign debt according to Comunicaciones "A". 3602 and 3609 of the Banco Central de la República Argentina and/or its complementary rules and amendments.

**9.2.19** To provide all the information the LENDER may request from them relating to the Assigned Credits, and to comply with every obligation applicable to them for the Assigned Credits to be paid to the LENDER, binding themselves to follow any necessary steps for the LENDER to achieve full recognition of the Assigned Credits; the BORROWER will bear all the expenses and costs resulting from or inherent in said assignments, including the reasonable attorney's fees or court costs the LENDER might eventually incur to collect the Assigned Credits;

**9.2.20** To make their best efforts to cause the Assigned Debtors to deposit in the LENDER's Account as and when due all the amounts corresponding to the Assigned Credits;

**9.2.21** To replace, to the LENDER's full satisfaction, within a term of five calendar days following request therefore, the relevant Promissory Notes with another eligible instruments allowing for the enforced collection proceeding if, due to any change in the legislation, the aforementioned instruments lose their effect as such; and

**9.2.22.** To send to the LENDER a copy of all reports, documents, purchase orders, invoices and/or sale forecasts that were send to each Assigned Debtor and/or were received from each Assigned Debtor.

**CLÁUSULA DECIMA:   MORA.**

**10.1**     La Mora del MUTUARIO en el cumplimiento de las obligaciones de pago en tiempo y forma de cualquier Suma Adeudada se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Ocasionada la Mora, se producirá la caducidad de todos los plazos y el MUTUANTE tendrá derecho a considerar la totalidad de la Línea de Crédito Adeudada como una deuda de plazo vencido y exigir y demandar judicialmente el pago íntegro de la Línea de Crédito Adeudada, los intereses devengados y demás accesorios. Durante el tiempo que dure la Mora, el MUTUANTE tendrá derecho a percibir intereses compensatorios acumulativos pactados a una tasa de interés equivalente a la tasa implícita de cada Solicitud de fondos con más un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios..

**10.2**     También se considerará la mora del MUTUARIO, si transcurridos quince (15) días contados a partir de que el MUTUANTE los haya intimado a subsanar los siguientes Eventos de Incumplimiento, los mismos no hubieren sido subsanados, en cuyo caso el MUTUANTE tendrá la facultad de considerar la Línea de Crédito Adeudada como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todas las Sumas Adeudadas en los siguientes Eventos de Incumplimiento:

(a)     si un tercero pidiere la quiebra del MUTUARIO, del FIADOR, del Deudor Cedido y/o y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(b)     si el MUTUARIO, el FIADOR y/o  cada Deudor Cedido pidiesen su propia quiebra, promoviese su concurso de acreedores o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial o una reestructuración de sus pasivos;

(c)     si el MUTUARIO y/o el FIADOR incurrieren en cesación de pagos, aún sin efectuarse los trámites antedichos;

(d)     Si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO y/o sus, o se decretare la inhibición general de bienes de cualquiera de el MUTUARIO, por un monto en exceso de Dólares Estadounidenses TRES MILLONES (US$ 3.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato Marco, y dichos embargos y/o medidas cautelares no fuesen levantados, por cualquier causa que fuere, dentro de los sesenta (60) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible, o

**SECTION TEN: DEFAULT**

**10.1** The BORROWER's default to comply with the obligations agreed upon in this Master Agreement - including without limitation, payment in due time and manner of any Sum Due - shall occur automatically by law and without any judicial order. Upon the Default, the lapsing of all terms shall occur and the LENDER shall be entitled to consider the aggregate amount of the Indebted Credit Facility as past due debt and to request and legally demand full payment of the Indebted Credit Facility, interest accrued and other charges. During the time of the Default the LENDER shall be entitled to receive compensatory interest agreed equivalent to the interest rate implicit in each funds request, plus and interest for default equivalent to 50% (fifty per cent) of such interest rate.

**10.2** The LENDER shall also be entitled to consider the automatic Default of the BORROWER, if after fifteen (15) calendar days as of the date in which the LENDER request the mitigation of the Event of Default, the same were not resolved, in which event the LENDER shall be entitled to consider the Indebted Credit Facility as past due, and request from the BORROWER the prompt payment of all the Sums Due, being the Events of Default the following:

(a)     if a third party requests the BORROWER, the SURETY, and/or the Assigned Debtors to be declared bankrupt and such request is not rejected by the court intervening in the pertinent first procedural step;

(b)     if the BORROWER, the SURETY, and/or the Assigned Debtor file for their own bankruptcy proceedings, file for their own reorganization, or initiate procedures for an out-of-court reorganization plan or any debt restructuring;

(c)     if the BORROWER, the SURETY incur suspension of payments, without such steps being taken;

(d)     in the event any attachment or any provisional remedy were granted over the property, assets or rights of the BORROWER, or a legal disqualification from disposing of any of the BORROWERs' property were ordered in an amount exceeding THREE Million United States Dollars and 00/100 (USD 3,000,000.00), or its equivalent in Pesos, whether individually or jointly throughout the effect of the Master Agreement, and such attachments and/or provisional remedies were not released or cancelled due to any reason whatsoever within sixty (60) judicial days following the request to release the attachment and/or cancel the provisional remedy, which request must be made at the first procedural opportunity possible; or





(e) si en cualquier momento durante la vigencia del presente Contrato Marco se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO, en las declaraciones contenidas en la Cláusula NOVENA del presente y/o el incumplimiento de los compromisos asumidos en dicha Cláusula y/o la falta de veracidad, en cualquiera de las aplicaciones del presente Contrato Marco;

(f) si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el presente Contrato Marco;

(g) si el MUTUARIO y/o el FIADOR modificasen de cualquier forma su composición accionaria;

(h) si el MUTUARIO y/o el FIADOR incumpliere cualquiera de las obligaciones a su cargo establecidas en el presente Contrato Marco y/o en los Documentos de la Operación;

(i) si el MUTUARIO incumpliere con cualquiera de sus obligaciones contractuales con cada Deudor Cedido;

(j) si —con prescindencia de que hubiese o no incumplimiento por parte de el MUTUARIO en el pago de las Sumas Adeudadas- el MUTUARIO y/o cada Deudor Cedido terminan el contrato que causa los Créditos Cedidos ;

(k) si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato Marco fueren abonadas en una moneda distinta del Dólar;

(l) Si se dictaran una o más sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaran medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes de el MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad de el MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato Marco, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(m) Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso

(n) si el MUTUARIO incumpliere cualquiera de sus obligaciones establecidas en el Fideicomiso y/o realizare cualquier acto que afecte negativamente o implique una disminución en el valor de los Bienes Fideicomitidos;

**10.3** El MUTUARIO asume el cumplimiento de todas y cada una de las obligaciones bajo los Documentos de la Operación, por lo cual en caso de incurrir en un Evento de Incumplimiento, se

(e) if at any time during the term hereof the lack of veracity, whether partial or total, by the BORROWER is proven in the statements included in Section NINE hereof and/or the failure to comply with the undertakings assumed in such Section and/or the lack of veracity in any of the applications of this Master Agreement;

(f) if there were any change that in the LENDER's opinion, would cause a material change in the basic conditions which have been considered for this Master Agreement.

(g) if in any manner whatsoever the BORROWER and/or the SURETY's shareholdings changes,

(h) if the BORROWER and/or the SURETY fails to comply with any of their obligations set forth herein and/or in the Transaction Documents.

(i) if the BORROWER fails to comply with any of their contractual obligations with the Assigned Debtors,

(j) if – irrespective of the BORROWER' compliance or noncompliance with the payment of the Sums Due –, the BORROWER and/or the Assigned Debtor terminate the agreements originating the Assigned Credits;

(k) if for any reason whatsoever the Sums Due hereunder are paid in other currency than the Dollar.

(l) if one or more final judicial judgments or arbitration awards were issued against the BORROWER or measures were adopted to foreclose any mortgage, attachment or other lien over the property of the BORROWER which, at LENDER's criterion, may (i) adversely and materially affect the capacity of the BORROWER to afford payment of their obligations hereunder; or (ii) adversely and materially affect any of the Guaranties.

(m) If there occurs a Material Adverse Change and/or a Material Adverse Effect.

(n). If the BORROWER does not comply with any of the obligations set forth in the Trust and/or perform any act that have a negative effect or implies a reduction in the value of the Trust Assets.

10.3 The BORROWER binds itself to the performance of each and every one of the obligations under the Transaction Documents, and, therefore, the occurrence of an Event of Default by it will

producirá la Mora del MUTUARIO. Producida la Mora del MUTUARIO, el MUTUANTE podrá proceder sin más a la ejecución de las Garantías (entendiéndose que en el caso del Fideicomiso podrá instruir al Fiduciario a tal efecto) e imputar la totalidad de los Créditos Cedidos al pago de la Línea de Crédito Adeudada.

**10.4** En adición a lo dispuesto en la Sección 10.3 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato Marco -en los términos establecidos en la Sección 10.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de las Sumas Adeudadas por parte del MUTUARIO o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las Sumas Adeudadas bajo este Contrato Marco los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE.

## CLÁUSULA DECIMO PRIMERA:        GASTOS.

**11.1** Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario), tributos y/o gastos que las operaciones derivadas directa y/o indirectamente de este Contrato Marco pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

**11.2** Todos los pagos bajo el Contrato Marco deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o pago, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato Marco como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y

give rise to BORROWER 's Default. Upon the BORROWER's Default, the LENDER may forthwith proceed to enforce the Guarantees (being understood that in the case of the Trust it may instruct the trustee to proceed to that end) and allocate all the Assigned Credits to the payment of the Indebted Credit Facility.

10.4 In addition to the provisions set forth in 10.3 above, the BORROWER 's Default due to the non-fulfillment of any of the obligations agreed herein shall give place to the lapsing of all terms and the automatic default of all the agreements executed between the BORROWER and the LENDER. Likewise, the default in any of such agreements shall give place to the automatic Default hereof – as per the terms set forth in 10.1 above – and of any other contractual obligation between the BORROWER and the LENDER. In such sense, upon the BORROWER 's, either due to the lack of payment by the Assigned Debtors or due to the occurrence of any of the Events of Default detailed hereinabove, the LENDER, at its own discretion, shall proceed to the execution of the Guarantees and/or other guaranties granted in other agreements executed between the BORROWER and the LENDER. Likewise, in such event, the LENDER shall be entitled to apply to the payment of the Sums Due, the BORROWER's funds deposited at such time – or those to be deposited in the future – in the LENDER's Account for any reason and/or contractual relationship between the LENDER and the BORROWER.

## SECTION ELEVEN: EXPENSES.

11.1 All commissions, bank fees (including, without any restriction whatsoever, the bank fees and commissions resulting from the deposits and transfers made from and to LENDER's Account and/or BORROWER's Account) taxes and/or charges resulting from the transactions directly and/or indirectly derived from this Master Agreement, shall be borne by the BORROWER. The BORROWER undertakes to pay all commissions and/or expenses to be borne by it to the LENDER promptly and upon the latter's sole request and not later than 48 hours following such request, which shall be duly evidenced.

11.2 All payments hereunder shall be made by the BORROWER free of any deduction, withholding and other charges of any nature whatsoever. If the BORROWER is requested by law or any other competent authority to make any deduction, withholding or charge, the BORROWER shall make such additional payments to the LENDER as necessary so that, after such deductions, withholdings or charges, the LENDER receives an amount equal to the amount due to it hereunder as if such deductions, withholdings or charges have not been made. The BORROWER shall pay in due time and manner to the pertinent tax authority, the amount withheld, and shall obtain and give to the LENDER a certified copy of the corresponding receipts in



deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

**11.3** El MUTUARIO se obliga a cumplir en tiempo y forma – a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del presente Contrato Marco y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**11.4** El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de las operaciones relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

## CLÁUSULA DÉCIMO SEGUNDA:   CESIÓN   DEL CONTRATO MARCO.

El MUTUANTE podrá ceder el presente Contrato Marco en su totalidad a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común de este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente.

## CLÁUSULA DÉCIMO TERCERA: VIGENCIA. INDEMNIDAD

**13.1** El presente Contrato Marco así como todas las Garantías mantendrán su vigencia hasta que se cumplan en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato Marco. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato Marco, las Cláusulas DECIMO PRIMERA, DECIMO TERCERA y DECIMO QUINTA sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**13.2** El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato Marco y las Garantías y del cumplimiento

connection with such payment.

**11.3** The BORROWER undertakes to comply in due time and manner, on its own account, with settlement of foreign currency and payment of all pertinent taxes directly or indirectly resulting from this Master Agreement and with other rules in accordance with the rules set forth by Banco Central de la República Argentina, releasing the LENDER from any obligation therefore.

**11.4** The BORROWER undertakes to hold the LENDER harmless, and to defend and prevent any damage to the LENDER, its shareholders and employees in connection with all obligations resulting from the transactions relating to the Assigned Credits, entry and liquidation of foreign exchange and any other taxable, exchange, banking, customs liability or of any other kind whatsoever resulting therefrom.

## SECTION TWELVE: MASTER AGREEMENT ASSIGNMENT.

The LENDER may assign the rights arising from the Master Agreement in full to any of its affiliates and/or subsidiaries (i.e. those holding or subsidiary corporations of the LENDER or property thereof), by any of the means provided by Law, the assignee acquiring the same benefits and/or rights and/or actions to which the LENDER is entitled under the above-mentioned Master Agreement. In such event, the LENDER shall give notice by true means of the assignment to the BORROWER, as well as of the new payment terms and conditions, using therefore any true means of notice. In such event, the BORROWER may file any defense against the assignee of the Master Agreement which it would have been entitled to file against the assigning LENDER.

## SECTION THIRTEEN: EFFECT – INDEMNITY.

**13.1** This Master Agreement as well as all the Guaranties resulting herefrom will remain in full force and effect until performance in full of the rights and/or obligations of the Parties hereunder. Furthermore, even after the obligations arising from the Master Agreement have been fulfilled, Sections ELEVEN, THIRTEEN and FIFTEEN will survive and will remain in full force and effect until the expiration of the limitations that might be applicable.

**13.2** The BORROWER will hold the LENDER and its Affiliates, directors, managers, officers, employees and independent advisors (the "Indemnitee") harmless against any loss, claim, complaint, liability and every expense relating thereto (including reasonable attorney's and advisor's fees) incurred by the Indemnitee in connection with, relating to, arising from and as a consequence of: (i) the execution or delivery of the Master Agreement and the Guaranties and the performance of the




de las obligaciones previstas en ellos, o de la celebración de las operaciones previstos en ellos; (ii) el Crédito Cedido adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 13.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

## CLÁUSULA DÉCIMO CUARTA: AUTORIZACION

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato Marco y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO.
En tal sentido, el MUTUARIO autoriza al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato Marco.

## CLÁUSULA DÉCIMO QUINTA: JURISDICCIÓN Y LEY APLICABLE.

15.1    El presente Contrato Marco es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

15.2    El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato Marco. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

15.3    Nada de lo dispuesto precedentemente en el presente Contrato Marco afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada, incluyendo la facultad del MUTUANTE de iniciar la ejecución judicial y/o extrajudicial de los Pagarés y/o de los Warrants y/o del Fideicomiso en la República Argentina.

15.4    El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado

obligations thereunder, or the performance of the transactions contemplated therein; (ii) the Assigned Credits due plus any interest thereon or the use of the disbursed funds; or (iii) any actual complaint, lawsuit, preliminary investigation proceeding or procedure, current or potential, relating to any of the circumstances contemplated in this Section 13.2, based on contractual or extra-contractual reasons, or as provided in the applicable law; to the extent the indemnity against such losses, complaints, liabilities or expenses is not due to the gross negligence or willful misconduct of the Indemnitee.

## SECTION FOURTEEN: AUTHORIZATION

The BORROWER expressly authorizes the LENDER to register this Master Agreement and all documents thereunder in all Registries deemed relevant by the LENDER in order to secure the BORROWER's obligations.
Therefore, the BORROWER authorizes the LENDER to submit any kind of financing statements in the registry offices of any jurisdiction of the United States of America, as per the provisions set forth in Section 5 Article 9 of the Uniform Commercial Code, including all the BORROWER's goods delivered as security for the compliance with the obligations undertaken hereunder.

## SECTION FIFTEEN: JURISDICTION AND APPLICABLE LAW

15.1 This Master Agreement is governed by and must be construed in accordance with the laws of the State of New York, United States of America.

15.2 The BORROWER irrevocably accepts the non-exclusive jurisdiction of the United States Courts located at the South District of New York for any claim, trial or proceeding that might be initiated by the LENDER, and in connection with this Master Agreement. The ruling issued against the BORROWER at such trials, claims or proceeding, shall be considered final and may be executed in any other jurisdiction.

15.3 Nothing of the aforesaid herein shall affect the LENDER's right to bring legal actions or to otherwise sue the BORROWER in any other jurisdiction deemed appropriate by the LENDER, including the LENDER's right to initiate the judicial and/or extrajudicial execution of the Promissory Notes and/or the Warrants and/or the Trust in the Argentine Republic.

15.4 The BORROWER hereby irrevocably appoints and authorized Sancor Dairy Corporation, with domicile at 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA, as its authorized agent for the sole purpose of receiving, in its name and stead, letters and/or notices addressed to the BORROWER in any action, lawsuit or proceedings filed by the LENDER in the estate of New York, being the BORROWER obliged to inform the



de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

**15.5** Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en la Sección 15.8 de la presente Cláusula.

**15.6** Las notificaciones efectuadas de la manera establecida en la Sección 15.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

**15.7** El MUTUARIO irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total y/o parcial comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al Contrato Marco en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

**15.8** Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato Marco deberán ser remitidas a los domicilios indicados a continuación:
MUTUARIO:        1) 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003 - USA
                2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina
MUTUANTE:        Telestone 8 - Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE        Amsterdam,        The Netherlands

**CLÁUSULA DECIMO SEXTA:    FIRMAS Y RECEPCION DE INSTRUMENTOS.**

Se firman 3 (tres) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 1 (un) juego en poder del MUTUANTE, 1 (un) juego en poder del MUTUARIO y 1 (un) juego en poder del FIADOR.

LENDER as of the identity and address of any new agent appointed to that end.

**15.5** If, for any reason, its authorized agent to receive notices at 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA, fails to be present, the BORROWER agrees and consents to the notices to be served in any action, lawsuit or proceedings being served on it by US registered mail at the BORROWER's domicile stated in 15.8 hereof.

**15.6** Notices served as stated in 15.4 shall be considered personal, valid, received and mandatory for the BORROWER.

**15.7** The BORROWER irrevocably waives, to the maximum extent permitted by the laws, the right to file an objection now or in the future against the jurisdiction of any of the courts mentioned in this Section hearing in any lawsuit, action or proceedings filed by the LENDER, and, especially, the BORROWER waives the right to file any defense or to allege lack of jurisdiction, or inconvenient forum regarding the court hearing in such action, lawsuit or proceedings. The BORROWER also expressly waives its right to challenge the one-judge or more judges of the court hearing the case. The BORROWER may only file a defense for full and/or partial payment evidenced in writing, on a document sent by the LENDER directly related to the Master Agreement being executed or the guaranteed obligation, expressly waiving any other defenses of any kind whatsoever.

**15.8** Any of the aforementioned notices to be made in respect of this Master Agreement shall be sent to the domiciles stated below:
BORROWER:
1) 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA.
2) Tacuarí 202 – 3rd Floor – City of Buenos Aires, Argentine Republic
LENDER:
Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands.

**SECTION SIXTEEN: SIGNATURES AND RECEIPT OF DOCUMENTS.**

The parties hereto sign 3 (three) equal counterparts of the same tenor and to one sole purpose, 1 (one) counterpart for the LENDER, and 1 (one) counterpart for the BORROWER, and one counterpart for the SURETY.





**CLÁUSULA DECIMO SEPTIMA: LUGAR Y FECHA.**

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en Amsterdam, a los 21 días del mes de Diciembre de 2009.

**SECTION SEVENTEEN: PLACE AND DATE.**

Executed by the BORROWER and the SURETY in the City of Buenos Aires, Argentine Republic, and by the LENDER in Amsterdam, on December 21; 2009.

By: SANCOR COOPERATIVAS UNIDAS LTDA.
Name: Mario Magdalena
Capacity: Attorney-in-fact

By: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Name: Mario Magdalena – Gabriel Martinuzzi
Capacity: Attorney-in-fact

Firma/s certificada/s en Foja
N° F 001322 863
Bs. As. 21/12/09

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

By: IIG TOF B.V.
Name: J. Hamers y Heymans
Capacity:



  

## ANEXO

F 001322863

ARANA (h)
BANO
4370

1  Buenos Aires, 21 de Diciembre de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 24 del LIBRO

6  número 128 , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Gabriel Gustavo MARTINUZZI, DNI 18.264.987, quienes justifican sus i-

10 dentidades de acuerdo al inciso a del artículo 1002 del Código Civil y ac-

11 túan: el señor Magdalena en su carácter de apoderado de la sociedad

12 "SANCOR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sun-

13 chales, Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro

14 Nacional de Cooperativas, de la Provincia de Santa Fe, Departamento

15 Castellanos, conforme lo acredita con el poder de fecha 15 de diciembre

16 de 2009, pasado al folio 1400 del Registro 640 de la ciudad de Suncha-

17 les, Provincia de Santa Fe, a cargo de la escribana Analía Roch, asimis-

18 mo actúan: el señor Magdalena en su carácter de Apoderado Gerencia

19 Financiera y el señor Martinuzzi en su carácter de Administrador de la

20 sociedad "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que a-

21 creditan con el Contrato Social de fecha 4 de agosto de 2008 debidamen-

22 te Legalizado y Apostillado, la documentación relacionada tengo a la vista

23 y les confieren facultades suficientes para suscribir el documento adjunto,

24 doy fe. El documento se encuentra parcialmente escrito en idioma ex-

25 tranjero.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

**PRIMERA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO**
**PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3ª Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL** Produtos Alimenticios Ltda., una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominadas las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Primera Enmienda.

(b) Que sobre la base del Contrato Marco, es intención del MUTUARIO requerir al MUTUANTE una línea de crédito tipo 'revolving' a fin de poder requerirle –en los términos y condiciones establecidos en el Contrato Marco- los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la Línea de Crédito Adeudada alcance el monto máximo de la Línea de Crédito, de modo que la Línea de Crédito en todo momento resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(c) Que el mecanismo antes descripto permitiría al MUTUARIO requerir periódicamente el flujo de fondos requeridos para financiar sus exportaciones, pudiendo cancelar las Sumas Adeudadas, solicitar nuevos desembolsos y así sucesivamente, siempre que el monto acumulado de toda la Línea de Crédito resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(d) Que es intención de las Partes modificar el Contrato Marco al solo efecto de extender el Plazo de Disponibilidad y el plazo máximo del cual no podrán extenderse las Fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente primera enmienda al Contrato Marco (la "Primera Enmienda"), de conformidad con las presentes Cláusulas:

1.     Modifícase de la Cláusula PRIMERA del Contrato Marco las siguientes definiciones:

*"Fecha/s de Vencimiento"* significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán ser anteriores a los 24 (veinticuatro) meses calculados desde la fecha de cada Solicitud de Desembolso e indefectiblemente anteriores al 31 de Diciembre de 2012.

*"Línea de Crédito"* significa la única línea de crédito, modalidad "revolving" que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

*"Plazo de Disponibilidad"* significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2012, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO



2.      Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 15 días del mes de Marzo de 2010.


Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderado - Administrador


Por: IIG TOF B.V.
Nombre:      Trust International Management (T.I.M.) B.V.
Carácter:           Managing Director

Y. Hames / W. Fiergolen
apoderados

Firma/s certificada/s en Foja
N°. _____
Bs. As. 15-3-2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370




  



## ANEXO

F 001362069

1  Buenos Aires, 15 de   Marzo   de  2010 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  firma/s                                    que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 48          del LIBRO

6  número 132            , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS ÚNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista

F 001362069

y les confieren facultades suficientes para suscribir el documento adjunto

doy fe.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

**SEGUNDA A ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Segunda Enmienda.

(b) Que, en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO frente al MUTUANTE bajo el Contrato Marco, el MUTUARIO se obligó a mantener durante toda la vigencia del Contrato Marco y hasta que el mismo se extinga, Warrants endosados a favor del MUTUANTE por un monto no inferior a una suma equivalente al 15% (quince por ciento) de la Línea de Crédito Adeudada (Sección 7.2 de la Cláusula SEPTIMA).

(c) Al momento de la presente, el MUTUANTE declara de conformidad, que la Línea de Crédito Adeudada, asciende a un total de US$ 14.910.992,92 (Dólares Estadounidenses CATORCE MILLONES NOVECIENTOS DIEZ MIL NOVECIENTOS NOVENTA Y DOS CON 92/100) y que el MUTUARIO entregó y endosó Warrants a su favor por la suma total de US$ 3.869.640,30 (Dólares Estadounidenses TRES MILLONES OCHOCIENTOS SESENTA Y NUEVE MIL SEISCIENTOS CUARENTA CON 30/100).

(d) Que el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello– ha aceptado liberar algunos – no todos– de los Warrants endosados a su favor, siempre que no se vea afectada la ratio exigida por la Sección 7.2 de la Cláusula SEPTIMA y sin que ello implique novación alguna de la deuda instrumentada en el Contrato Marco ni en las Solicitudes de Desembolso.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente segunda enmienda al Contrato Marco (la "Segunda Enmienda"), de conformidad con las presentes Cláusulas:

**1.** Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Segunda Enmienda:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2685 | Leche en Polvo | Sunchales | 148.800 | kgs | 03/Jun/2010 | 520.800,00 |

**2.** Conforme lo anteriormente detallado, como consecuencia de la liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2675 V | Queso Semi Duro | Balnearia | 146.937,00 | Kg | 03/Jun/2010 | 700.003,90 |
| 2676 V | Queso Semi Duro | Balnearia | 102.412,00 | Kg | 03/Jun/2010 | 481.336,40 |
| 2677 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |





| 2678 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |
|--------|-----------|-----------|------------|-----|-------------|------------|
| 2679 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |
| 2682 V | Queso Pasta Dura | La Carlota | 187.500,00 | Kg | 03/Jun/2010 | 1.312.500,00 |
| Total | | | | | | 3.348.840,30 |

3.   Con excepción de aquellos términos expresamente modificados por la presente Segunda Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 13 días del mes de Abril de 2010.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena – Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre: Smybosch / y olegmans
Carácter: Apoderados

Firma/s certificada/s en Foja
Nº F0029007350
Bs. As. 13-4-2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

  



F 005962330

1  Buenos Aires, 13 de Abril de 2010 . En mi carácter de escribano

2  Titular del Registro Notarial N° 841

3  CERTIFICO: Que la/s firma/s          que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número190      del LIBRO

6  número 133      , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Anahía Roch, asímismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista

 

F 005962330

y les confieren facultades suficientes para suscribir el documento adjunto,

doy fe.-



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50

 



**TERCERA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Productos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominadas las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, y Segunda Enmienda del 13 de Abril de 2010, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Tercera Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de modificar la cláusula Décimo Segunda.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente tercera enmienda al Contrato Marco (la "Tercera Enmienda"), de conformidad con las presentes Cláusulas:

1.   Modifícase la Cláusula DECIMO SEGUNDA del Contrato Marco, la cual quedará redactada del siguiente modo:

| CLÁUSULA DÉCIMO SEGUNDA: CESIÓN DEL CONTRATO MARCO. | SECTION TWELVE: MASTER AGREEMENT ASSIGNMENT. |
|---|---|
| El MUTUANTE podrá ceder o transferir los derechos derivados el presente Contrato Marco a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común o relacionadas a este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente. Asimismo, el MUTUANTE podrá suscribir con cualquiera de sus afiliadas y/o subsidiarias, convenios de participación relacionados a los créditos derivados de este Contrato Marco. | The LENDER may assign or otherwise transfer the rights arising from the Master Agreement to any of its affiliates and/or subsidiaries (i.e. those holding, subsidiary corporations of the LENDER or other corporations related to them or property thereof), by any of the means provided by Law, an assignee acquiring the assigned benefits and/or rights and/or actions to which the LENDER is entitled under the above-mentioned Master Agreement. In such event, the LENDER shall give notice by true means of any new payment terms and conditions, using therefore any true means of notice. In such event, the BORROWER may file any defense against an assignee of the Master Agreement which it would have been entitled to file against the assigning LENDER. In addition to the aforementioned assignment rights, the LENDER may execute with any of its affiliates and/or subsidiaries, participation agreements related to the credits and receivables derived from this Master Agreement. |

2.   Las Partes acuerdan otorgar a esta Tercera Enmienda efectos retroactivos al 21 de Diciembre de 2009. Con excepción de aquellos términos expresamente modificados por la presente Tercera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 29 días del mes de Noviembre de 2010.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre: J. Haners / G. Becher
Carácter: apoderados.

Firma/s certificada/s en Foja
N° F2015162960
Bs. As. 29.11.2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370








## ANEXO

F 001516965

1  Buenos Aires, 29 de Noviembre de 2010 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 184 del LIBRO

6  número 147 , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a) del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de Apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA", con domicilio en Sunchales,

13  Provincia de Santa Fe, inscripta en la Matrícula 772 del Registro Nacional

14  de Cooperativas, de la Provincia de Santa Fe, Departamento Castellanos,

15  conforme lo acredita con el poder de fecha 15 de diciembre de 2009, pa-

16  sado al folio 1400 del Registro 640 de la ciudad de Sunchales, Provincia

17  de Santa Fe, a cargo de la escribana Analía Roch, y el señor Valicente en

18  su carácter de Apoderado de la sociedad "SANCOR DO BRASIL Produtos

19  Alimenticios LTDA." lo que acredita con el Poder Especial de fecha 17 de

20  diciembre de 2009, debidamente certificado con fecha 17 de diciembre de

21  2009 y debidamente Autorizado por el Ministerio de Relaciones Exteriores

22  con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de 2010

23  y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

24  documentación relacionada tengo a la vista y les confiere facultades sufi-

25  cientes para suscribir el documento adjunto, doy fe.- El documento se

F 001516965

encuentra parcialmente escrito en idioma extranjero.-

26
27
28
29
30
31
32
33

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50



## CUARTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte; y

**SANCOR DO BRASIL Productos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominadas las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de fecha 13 de Abril de 2010 y Tercera Enmienda de fecha 29 de Noviembre de 2010, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Cuarta Enmienda.

(b) Que, en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO frente al MUTUANTE bajo el Contrato Marco, el MUTUARIO se obligó a mantener durante toda la vigencia del Contrato Marco y hasta que el mismo se extinga, Warrants endosados a favor del MUTUANTE por un monto no inferior a una suma equivalente al 15% (quince por ciento) de la Línea de Crédito Adeudada (Sección 7.2 de la Cláusula SEPTIMA).

(c) Al momento de la presente, el MUTUANTE declara de conformidad, que la Línea de Crédito Adeudada, asciende a un total de US$ 53.312.477,86 (Dólares Estadounidenses CINCUENTA Y TRES MILLONES TRESCIENTOS DOCE MIL CUATROCIENTOS SETENTA Y SIETE CON 86/100) y que el MUTUARIO entregó y endosó Warrants a su favor por la suma total de US$ 13.397.274,44 (Dólares Estadounidenses TRECE MILLONES TRESCIENTOS NOVENTA Y SIETE MIL DOSCIENTOS SETENTA Y CUATRO CON 44/100).

(d) Que el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello- ha aceptado liberar algunos – no todos- de los Warrants endosados a su favor, siempre que no se vea afectada la ratio exigida por la Sección 7.2 de la Cláusula SEPTIMA y sin que ello implique novación alguna de la deuda instrumentada en el Contrato Marco ni en las Solicitudes de Desembolso.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Cuarta enmienda al Contrato Marco (la "Cuarta Enmienda"), de conformidad con las presentes Cláusulas:

1. Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Cuarta Enmienda:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 3166U | QUESO PASTA DURA EN MADURACION | POZO DEL MOLLE | 10.000,00 | Kg | 08/09/2011 | 70.000,00 |
| 3107U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 400.000,00 | Kg | 08/09/2011 | 2.800.000,00 |

2. Conforme lo anteriormente detallado, como consecuencia de la liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

 



| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 3075U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3076U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3077U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3078U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 148.937,00 | Kg | 08/09/2011 | 700.003,90 |
| 3079U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 148.937,00 | Kg | 08/09/2011 | 700.003,90 |
| 3080U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 102.412,00 | Kg | 08/09/2011 | 481.336,40 |
| 3081U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 187.500,00 | Kg | 08/09/2011 | 1.312.500,00 |
| 3082U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 87.500,00 | Kg | 08/09/2011 | 612.500,00 |
| 3083U | QUESO PASTA DURA EN MADURACION | POZO DEL MOLLE | 187.500,00 | Kg | 08/09/2011 | 1.312.500,00 |
| 3084U | LECHE UAT | SUNCHALES | 515.750,00 | Kg | 08/09/2011 | 868.460,00 |
| 3085U | LECHE UAT | SUNCHALES | 515.750,00 | Kg | 08/09/2011 | 868.460,00 |
| 3086U | LECHE UAT | SUNCHALES | 169.643,00 | Kg | 08/09/2011 | 285.000,24 |
| 3087U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3088U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3089U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3090U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 46.250,00 | Kg | 08/09/2011 | 289.525,00 |
| 3091U | QUESOS SEMIDUROS EN PROCESO | BRIKMANN | 73.300,00 | Kg | 08/09/2011 | 344.510,00 |
| 3133U | LECHE EN POLVO | MORTEROS | 200.000,00 | Kg | 08/09/2011 | 720.000,00 |
| 3134U | LECHE EN POLVO | SUNCHALES | 398.000,00 | Kg | 08/09/2011 | 1.432.800,00 |
| 3135U | LECHE EN POLVO | DEVOTO | 200.000,00 | Kg | 08/09/2011 | 720.000,00 |
| Total | | | | | | 13.400.074.44 |

3. Con excepción de aquellos términos expresamente modificados por la presente Cuarta Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, el día 1 de Agosto de 2011.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Productos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

Firma/s certificada/s en Foja
Nº F 0016 9 9 160
Bs. As. 1 8 2011

Por: IIG TOF B.V.
Nombre:
Carácter: Trust International Management (T.I.M.) B.V.
Managing Director

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



NA (h)

## ANEXO                                    F 001684188

1   Buenos Aires, 01  de    Agosto     de 2011  . En mi carácter de escribano

2   Titular del Registro Notarial Nº 841

3   CERTIFICO: Que la/s firma/s                          que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número 154               del LIBRO

6   número 164                  , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y Da-

9   niel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identidades de

10  acuerdo al inciso a) del artículo 1002 del Código Civil y actúan: el señor Magda-

11  lena en su carácter de Apoderado de la sociedad "SANCOR COOPERATIVAS

12  UNIDAS LIMITADA", con domicilio en Sunchales, Provincia de Santa Fe, ins-

13  cripta en la Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia

14  de Santa Fe, Departamento Castellanos, conforme lo acredita con el poder de

15  fecha 15 de diciembre de 2009, pasado al folio 1400 del Registro 640 de la ciu-

16  dad de Sunchales, Provincia de Santa Fe, a cargo de la escribana Analía Roch,

17  y el señor Valicente en su carácter de Apoderado de la sociedad "SANCOR DO

18  BRASIL Produtos Alimenticios LTDA." lo que acredita con el Poder Especial de

19  fecha 17 de diciembre de 2009, debidamente certificado con fecha 17 de di-

20  ciembre de 2009 y debidamente Autorizado por el Ministerio de Relaciones Ex-

21  teriores con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de

22  2010 y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

23  documentación relacionada tengo a la vista y les confiere facultades suficientes

24  para suscribir el documento adjunto, doy fe.-

25

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

<div align="center">

**QUINTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

</div>

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

    (a)    Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de 13 de Abril de 2010, Tercera Enmienda de fecha 29 de Noviembre de 2010 y Cuarta Enmienda de fecha 1 de Agosto de 2011, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Quinta Enmienda.

    (b)    Que el MUTUARIO solicita al MUTUANTE una ampliación en el Plazo de Disponibilidad y de las Fechas de Vencimiento, así como la posibilidad a futuro de prorrogar las mismas.

    (c)    Que el MUTUANTE está dispuesto a aceptar la extensión del Plazo de Disponibilidad y de las Fechas de Vencimiento, sin que ello implique novación de las obligaciones asumidas por el MUTUARIO bajo el Contrato Marco y/o las Solicitudes de Desembolso derivadas del mismo y siempre que se mantengan plenamente vigentes todas y cada una de las Garantías. Asimismo, el MUTUANTE acepta la solicitud del MUTUARIO de contar con la posibilidad de prorrogar las Fechas de Vencimiento.

    (d)    Que es intención de las Partes modificar el Contrato Marco a fin de incluir lo expuesto precedentemente.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Quinta Enmienda al Contrato Marco (la "Quinta Enmienda"), de conformidad con las presentes Cláusulas:

    1.    Modifícase de la **cláusula PRIMERA** del Contrato Marco las siguientes definiciones:

*"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán ser anteriores a los 18 (dieciocho) meses calculadas desde la fecha de cada Solicitud de Desembolso e indefectiblemente anteriores al 30 de Agosto de 2016.*

*"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 27 de Febrero de 2015, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO"*

*"Sumas Adeudadas" significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses y gastos administrativos que resulten aplicables, conforme el presente Contrato Marco.*



<div align="center">1</div>






2.    Modifícase la cláusula **QUINTA** del Contrato Marco por la siguiente:

**_CLAUSULA QUINTA: CANCELACIÓN DE LAS SUMAS ADEUDADAS. APLICACIÓN DE LOS CREDITOS CEDIDOS AL PAGO DE LAS SUMAS ADEUDADAS. RECURSO DEL MUTUARIO._**

*5.1.    El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, mediante depósito de las mismas en la Cuenta del Mutuante.*

*5.2 El MUTUARIO podrá optar por prorrogar la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por un nuevo período de 18 (dieciocho) meses. Vencido este nuevo período podrá, nuevamente y por última vez, optar por una nueva prórroga de la última de las Fechas de Vencimiento de cada Solicitud de Desembolso_por un nuevo período de 18 meses. A los efectos de ejercer su derecho a prorrogar la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por hasta un máximo de dos períodos consecutivos de 18 meses, el MUTUARIO deberá cumplir con los siguientes recaudos: (i) estar en cumplimiento de todas sus obligaciones bajo el presente Contrato Marco y que no haya acaecido un Evento de Incumplimiento, (ii) abonar la totalidad de las Sumas Adeudadas distintas a aquellas cuya Fecha de Vencimiento se pretende prorrogar, en relación a la Solicitud de Desembolso de que se trate (iii) notificar su decisión de prorrogar la última de las Fechas de Vencimiento conforme lo establecido en esta cláusula en forma fehaciente y por escrito al MUTUANTE y al FIADOR con una anticipación de al menos 45 días a la Fecha de Vencimiento, conforme modelo adjunto en ANEXO V, (iv) obtener del FIADOR su expreso consentimiento respecto de la prórroga de las Fechas de Vencimiento por medio del cuál el FIADOR asuma mantener la fianza aquí otorgada en toda su extensión y por el plazo prorrogado y entregar ese documento con las firmas debidamente certificadas por escribano al MUTUANTE, conforme modelo adjunto en ANEXO V, (v) deberá acordar con el MUTUANTE la Tasa de Descuento que será aplicable al nuevo período y los montos correspondientes a los gastos administrativos correspondientes a la misma, y (vi) deberá entregar al MUTUANTE nuevos Pagarés por las Sumas Adeudadas que incluyan el capital y todos los intereses más los gastos administrativos que resultarán aplicables durante período prorrogado, a satisfacción del MUTUANTE. Todos los recaudos antes previstos deberán estar cumplidos con anterioridad a la última Fecha de Vencimiento de cada Solicitud de Desembolso. La falta de cumplimiento de algunos de los recaudos mencionados y/o la falta de acuerdo entre el MUTUARIO y el MUTUANTE en alguna de las cuestiones que así lo requieran, incluido pero no limitado a la fijación de la Tasa de Descuento y/o los gastos administrativos o los efectos de la prórroga, no generará responsabilidad del MUTUANTE ni derecho de reclamo alguno por parte del MUTUARIO y se mantendrán los términos de las Solicitudes de Desembolso, incluido pero no limitado a las Fechas de Vencimiento originariamente previstas.*

*5.3    A los efectos mencionados en la Sección 5.1 antes referida, los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas del siguiente modo:*

*(a)    Durante los meses en que NO exista Fecha de Vencimiento (entendiéndose por tales aquellos meses transcurridos entre la efectivización del desembolso requerido en cada Solicitud de Desembolso hasta el mes calendario inmediato anterior al de la Fecha de Vencimiento), el MUTUANTE transferirá los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario.*

*(b)    Durante los meses correspondientes a las Fechas de Vencimiento (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante a cancelar las Sumas Adeudadas a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses excedan el monto de las Sumas Adeudadas, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (a) de la presente Sección. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses no fuesen suficientes para cubrir el importe de las Sumas Adeudadas, el MUTUARIO será responsable de aportar la diferencia, y abonar así el importe total de las Sumas Adeudadas, bajo apercibimiento de Mora.*

*(c)    Todos los fondos correspondientes a los Créditos Cedidos que sean depositados en la Cuenta del Mutuante con posterioridad a la cancelación total de la Línea de Crédito Adeudada y en exceso de la misma, serán reintegrados al MUTUARIO en la forma indicada en el acápite (a) de la presente Sección.*

*5.4    En caso de Mora, la totalidad de los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante se aplicarán a cancelar toda la Línea de Crédito Adeudada y cualquier otra suma adeudada por el MUTUARIO bajo los Documentos de la Operación.*

2

**5.5** *Habida cuenta del recurso del MUTUARIO en la cesión de los Créditos Cedidos al MUTUANTE, en caso que -por cualquier causa- el importe de los Créditos Cedidos depositados en la Cuenta del Mutuante no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las Fecha de Vencimiento correspondiente a un mes determinado, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de o en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.*

3.   En virtud de lo expuesto en la cláusula 2 precedente, las Partes acuerdan incorporar al Contrato Marco el **Anexo V**.

4.   Modifícase el apartado 9.1.10 de la **cláusula NOVENA** del Contrato Marco el cual quedará redactado de la siguiente forma:

**_CLAUSULA NOVENA:   MANIFESTACIONES, DECLARACIONES Y COMPROMISOS DEL MUTUARIO Y DEL FIADOR._**

*9.1.10. Que el balance del MUTUARIO al 30 de Junio de 2011, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivas autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2009 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y*

5.   Las Partes acuerdan notificar la presente Quinta Enmienda al Banco de Servicios y Transacciones S.A. en su carácter de fiduciario del Fideicomiso –conforme se define en el Contrato Marco-, mediante el envío de una nota conforme el modelo que se adjunta a la presente como **Anexo B**. Dicha nota será enviada por el MUTUARIO dentro de las 48 hs de suscripta la presente y –como condición de validez de la presente Quinta Enmienda- deberá remitir al MUTUANTE una copia de dicha nota con la constancia de recepción por parte del fiduciario.

6.   En contraprestación por los costos irrogados al MUTUANTE por la aceptación de las modificaciones requeridas por el MUTUARIO y efectivamente introducidas al Contrato Marco mediante la presente enmienda, las Partes acuerdan que a partir de la presente, en cada Solicitud de Desembolso o prórroga de la última de las Fechas de Vencimiento de cada Solicitud de desembolso, se fijará un monto en concepto de gastos administrativos de 0,15% (quince centésimas por ciento) sobre el monto desembolsado o prorrogado.

7.   Con excepción de aquellos términos expresamente modificados por la presente Quinta Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 21 días del mes de Septiembre de 2011.

Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: Mario Magdalena
Carácter: Apoderado

Por: **SANCOR DO BRASIL Produtos Alimenticios Ltda.**
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

**Firma/s certificada/s en Foja**
Nº ....F.Q.Q.7.Q.R.1.A.3.2....
Bs. As. ...21.-.9.-.2.11...

Por: **IIG TOF B.V.**
Nombre: Gawein Heijmans; Ed Hoogeloom
Carácter: Attorneys-in-Fact

3

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370





**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404

F 007561933

1   **Buenos Aires,** 21   de   Septiembre    de 2011  . **En mi carácter de escribano**

2   **Titular del Registro Notarial Nº 841**

3   **CERTIFICO: Que la/s** firma/s                **que obra/n en el**

4   **documento que adjunto a esta foja, cuyo requerimiento de certificación se**

5   **formaliza simultáneamente por ACTA número** 43            **del LIBRO**

6   **número** 168          **, es/son puesta/s en mi presencia por la/s persona/s**

7   **cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como**

8   **la justificación de su identidad.** Mario César MAGDALENA, L.E. 8.106.144 y Da-

9   niel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identidades de

10   acuerdo al inciso a) del articulo 1002 del Código Civil y actúan: el señor Magda-

11   lena en su carácter de Apoderado de la sociedad "SANCOR COOPERATIVAS

12   UNIDAS LIMITADA", con domicilio en Sunchales, Provincia de Santa Fe, ins-

13   cripta en la Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia

14   de Santa Fe, Departamento Castellanos, conforme lo acredita con el poder de

15   fecha 15 de diciembre de 2009, pasado al folio 1400 del Registro 640 de la ciu-

16   dad de Sunchales, Provincia de Santa Fe, a cargo de la escribana Analia Roch,

17   y el señor Valicente en su carácter de Apoderado de la sociedad "SANCOR DO

18   BRASIL Produtos Alimenticios LTDA." lo que acredita con el Poder Especial de

19   fecha 17 de diciembre de 2009, debidamente certificado con fecha 17 de di-

20   ciembre de 2009 y debidamente Autorizado por el Ministerio de Relaciones Ex-

21   teriores con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de

22   2010 y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

23   documentación relacionada tengo a la vista y les confiere facultades suficientes

24   para suscribir el documento adjunto, doy fe.-

25                                        MARTIN R. ARANA (h)
                                                 ESCRIBANO
                                                 MAT. 4370.

**SEPTIMA ENMIENDA AL CONTRATO DE LINEA DE CREDITO PARA LA PREFINANCIACION DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LTDA.**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 P. 3 de la Ciudad Autónoma de Buenos Aires, Argentina, representada en este acto por el Sr. Eduardo Angel Zago en su carácter de Apoderado (el "MUTUARIO");

**SANCOR DO BRASIL – PRODUTOS ALIMENTICIOS LTDA.**, una compañía organizada bajo las leyes de la República del Brasil, con domicilio en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República de Brasil, representada en este acto por Miriam Rita Paita y Daniel Jorge Valicente, en su carácter de Apoderados (el "FIADOR" y conjuntamente con el MUTUARIO, los "DEUDORES"); y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, con domicilio en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, representado por el Sr. _____, en su carácter de _____ (el "MUTUANTE" y conjuntamente con los DEUDORES, las "Partes"); y

**CONSIDERANDO:**

I.  Que en fecha 21 de diciembre de 2009 las Partes suscribieron un Contrato de Línea de Crédito, modificado mediante Primera Enmienda de fecha 15 de marzo de 2010, Segunda Enmienda de fecha 13 de abril de 2010, Tercera Enmienda de fecha 29 de noviembre de 2010, Cuarta Enmienda de fecha 1 de agosto de 2011, Quinta Enmienda de fecha 21 de septiembre de 2011 y Sexta Enmienda de fecha 20 de abril de 2012 (el "Contrato Marco"), cuya copia se adjunta como **Anexo A** y cuyas definiciones, términos y condiciones resultan aplicables a la presente Séptima Enmienda.

II. Que en virtud de la Quinta Enmienda, las Partes acordaron modificar la Cláusula 5.2. del Contrato Marco a fin de prever la facultad del MUTUARIO de optar por prorrogar la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por 2 (dos) períodos consecutivos de 18 (dieciocho) meses; ello, sujeto a determinados recaudos allí estipulados (la "Opción de Prórroga").

III. Que en el marco de la Quinta Enmienda, el MUTUARIO ejerció la Opción de Prórroga respecto de todas las Sumas Adeudadas.

IV. Que a la fecha, las Sumas Adeudadas ascienden a USD 39.645.790,70 (Dólares Estadounidenses TREINTA Y NUEVE MILLONES SEISCIENTOS CUARENTA Y CINCO MIL SETECIENTOS NOVENTA con 70/100), y se integran de la siguiente forma:

(a) Sumas Adeudadas Vencidas: USD 21.133.663,51 (Dólares Estadounidenses VEINTIUN MILLONES CIENTO TREINTA Y UN MIL SEISCIENTOS SESENTA Y TRES con 51/100) se encuentran vencidas a la fecha de suscripción de la presente; conforme se detalla en el **Anexo B**, USD 21.000.000,00 (Dólares Estadounidenses VEINTIUN MILLONES con 00/100) corresponden a capital (el "Capital de las Sumas Adeudadas Vencidas") y USD 133.663,51 (Dólares Estadounidenses CIENTO TREINTA Y TRES MIL SEISCIENTOS SESENTA Y TRES con 51/100) corresponden a intereses previamente pactados (los "Intereses de las Sumas Adeudadas Vencidas").

(b) Sumas Adeudadas No Vencidas: USD 18.512.127,19 (Dólares Estadounidenses DIECIOCHO MILLONES QUINIENTOS DOCE MIL CIENTO VEINTISIETE con 19/100), conforme se detalla en el **Anexo B Bis**, USD 17.702.139,00 (Dólares Estadounidenses DIECISIETE MILLONES SETECIENTOS DOS MIL

CIENTO TREINTA Y NUEVE con 00/100) corresponden a capital que aún no ha vencido a la fecha de suscripción de la presente (el "Capital de las Sumas Adeudadas No Vencidas") y USD 809.988,19 (Dólares Estadounidenses OCHOCIENTOS NUEVE MIL NOVECIENTOS OCHENTA Y OCHO con 19/100) corresponden a intereses previamente pactados (los "Intereses de las Sumas Adeudadas No Vencidas").

V.    Que es intención de las Partes modificar la Cláusula 5.2. del Contrato Marco a fin de establecer en qué condiciones el MUTUARIO podrá ejercer la Opción de Prórroga respecto del Capital de las Sumas Adeudadas Vencidas desde la fecha de suscripción de la presente.

En virtud de las consideraciones precedentemente mencionadas, las cuales forman parte integrante de la presente, las Partes convienen celebrar la presente Séptima Enmienda al Contrato Marco (la "Séptima Enmienda") de conformidad con los términos y condiciones establecidos en las siguientes cláusulas:

**PRIMERA:    EJERCICIO DE OPCION DE PRORROGA**

1.1.    Que a partir de la fecha de suscripción de la presente Séptima Enmienda, el ejercicio de la Opción de Prórroga por parte del MUTUARIO y respecto del Capital de las Sumas Adeudadas Vencidas quedará sujeto a las siguientes condiciones:

(a) La Opción de Prorroga por el Capital de cada Suma Adeudada Vencida identificado en el **Anexo B** podrá ser ejercida en 3 (tres) períodos conforme el siguiente cronograma:

| Opciones de Prórroga | Plazo de Prórroga Disponible |
|---|---|
| Primer Ejercicio de Opción de Prórroga | Desde la Fecha de Vencimiento hasta la Última Fecha de Prórroga Disponible para el Primer Ejercicio de Opción de Prórroga, según el detalle indicado en el **Anexo B**. |
| Segundo Ejercicio de Opción de Prórroga | 12 (doce) meses desde la última Fecha de Vencimiento prorrogada mediante el Primer Ejercicio de Opción de Prórroga.<br><br>*Ejemplo: si la última Fecha de Vencimiento de la Suma Adeudada Vencida – luego del Primer Ejercicio de Opción de Prórroga – es el 31 de enero de 2015 y la Opción de Prórroga respecto del Capital de dicha Suma Adeudada Vencida se ejerce el 31 de marzo de 2015, la última Fecha de Vencimiento será prorrogada hasta el 31 de enero de 2016 (10 meses).* |
| Tercer Ejercicio de Opción de Prórroga | 6 (seis) meses desde la última Fecha de Vencimiento prorrogada mediante el Segundo Ejercicio de Opción de Prórroga.<br><br>*Ejemplo: si la última Fecha de Vencimiento de la Suma Adeudada Vencida – luego del Segundo Ejercicio de la Opción de Prórroga – es el 31 de enero de 2016 y la Opción de Prórroga respecto del Capital de dicha Suma Adeudada Vencida se ejerce el 28 de febrero de 2016, la última Fecha de Vencimiento será prorrogada hasta el 30 de julio de 2016 (5 meses).* |

(b) El MUTUARIO puede prorrogar el Capital de las Sumas Adeudadas Vencidas en forma total o parcial. En este último caso, las sumas integrantes del Capital de una

Suma Adeudada Vencida que no hayan sido prorrogadas en los términos de esta Cláusula 1.1. (las "Sumas Remanentes") podrán ser prorrogados en forma posterior. No obstante, en tal supuesto los plazos de prórroga disponibles para esas Sumas Remanentes se reducirán de acuerdo a la fecha en la que sea ejercida la Opción de Prórroga de que se trate, y conforme se lo ejemplifica en el punto (a) precedente.

(c) Serán condiciones esenciales para el ejercicio de cualquier Opción de Prórroga del Capital de las Sumas Adeudadas Vencidas las siguientes:

    (i) que el MUTUARIO esté en cumplimiento de todas sus obligaciones bajo el Contrato Marco;

    (ii) que no haya acaecido ningún Evento de Incumplimiento;

    (iii) que el MUTUARIO abone la totalidad de los Intereses de las Sumas Adeudadas Vencidas en sus Fechas de Vencimiento;

    (iv) que el FIADOR preste su expreso consentimiento respecto de la Opción de Prórroga en los términos de la Cláusula 1.2.; y

    (v) que el MUTUARIO acuerde con el MUTUANTE la Tasa de Descuento que será aplicable al nuevo plazo de prórroga a solicitar.

1.2. A efectos de ejercer la Opción de Prórroga respecto de cualquier Capital de Suma Adeudada Vencida, el MUTUARIO deberá notificar su decisión en tal sentido en forma fehaciente y por escrito al MUTUANTE y al FIADOR, con una anticipación de al menos 5 (cinco) días a la Fecha de Vencimiento propuesta, conforme el modelo adjunto como **Anexo C** (la "Solicitud de Prórroga"). En la Solicitud de Prórroga se acordará con el MUTUANTE la Tasa de Descuento que será aplicable al nuevo período prorrogado – con sus consiguientes sumas en concepto de intereses – (los "Intereses"). La Solicitud de Prórroga deberá ser suscripta también por el FIADOR, quien prestará su expreso consentimiento respecto de la Opción de Prórroga, asumiendo mantener la fianza otorgada en el Contrato Marco en toda su extensión y por el nuevo período prorrogado.

1.3. Conjuntamente con cada Solicitud de Prórroga el MUTUARIO deberá entregar al MUTUANTE nuevos Pagarés por las Sumas Adeudadas Vencidas que sean objeto de la Opción de Prórroga y que incluyan el capital y todos los Intereses que resultarán aplicables durante el nuevo período prorrogado, a satisfacción del MUTUANTE.

1.4. La Solicitud de Prórroga deberá ser entregada al MUTUANTE, con las firmas debidamente certificadas por escribano público. La falta de cumplimiento de alguno de los requisitos previstos en esta Cláusula Primera y/o la falta de acuerdo entre el MUTUARIO y el MUTUANTE en alguna de las cuestiones que así lo requieran, incluido pero no limitado a la fijación de la Tasa de Descuento a los efectos de la Solicitud de Prórroga, no generará responsabilidad del MUTUANTE ni derecho de reclamo alguno por parte del MUTUARIO y se mantendrán los términos de las Solicitudes de Desembolso tal como fueron emitidas, incluido pero no limitado a las Fechas de Vencimiento originariamente previstas y consignadas en el **Anexo B**.

**SEGUNDA:   FORMA DE PAGO**

Las Sumas Adeudadas – incluyendo los Intereses resultantes de la aplicación de la Tasa de Descuento, de ejercerse las respectivas Opciones de Prórroga sobre las Sumas Adeudadas Vencidas – deberán ser pagadas por los DEUDORES a IIG TOF mediante depósito en Dólares en la Cuenta del Mutuante, de conformidad con los términos y condiciones de pago establecidos al respecto en el Contrato Marco y en las Solicitudes de Desembolso respectivas.

**TERCERA:   MORA**

La falta de pago en tiempo y forma de la Línea de Crédito Adeudada y/o de los Intereses conforme lo antes descripto constituirá un Evento de Incumplimiento y generará la Mora automática de los DEUDORES sin necesidad de interpelación previa, con las consecuencias para ello previstas en la Cláusula Décima del Contrato Marco, incluyendo la ejecución de las Garantías.

**CUARTA:    INEXISTENCIA DE NOVACIÓN**

Lo acordado en la presente Séptima Enmienda no constituye ni debe interpretarse que constituye una novación de la Línea de Crédito Adeudada.

**QUINTA:    NOTIFICACION AL FIDUCIARIO DEL FIDEICOMISO**

Las Partes acuerdan notificar la presente Séptima Enmienda al Banco de Servicios y Transacciones S.A. en su carácter de fiduciario del Fideicomiso – como es definido en el Contrato Marco – mediante el envío de una nota conforme el modelo que se adjunta como **Anexo D**. Dicha nota será enviada por el MUTUARIO dentro de las 72 hs. de suscripta la presente y deberá remitir al MUTUANTE una copia de dicha nota con la constancia de recepción por parte del fiduciario.

**SEXTA:    MISCELÁNEA**

Con excepción de aquellos términos expresamente modificados por la presente Séptima Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco permanecen inalterables, manteniendo los mismos plena vigencia. En caso de contradicción entre los términos del Contrato Marco y los de la presente Séptima Enmienda, los de esta Séptima Enmienda prevalecerán.

Suscripto por el MUTUARIO y por el FIADOR en la Ciudad de Buenos Aires, República Argentina y por IIG TOF en la Ciudad de Ámsterdam, a los 28 días del mes de Agosto de 2014.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Eduardo Angel Zago
Carácter: Apoderado

Por: SANCOR DO BRASIL – PRODUTOS ALIMENTICIOS LTDA.
Nombre: Miriam Rita Paita - Daniel Jorge Valicente
Carácter: Apoderados

Firma/s certificada/s en Foja
Nº EO100 24 745
Bs. As. 28 - 8 - 14

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

Por: IIG TOF B.V.
Nombre:
Carácter:    Trust International Management (T.I.M.) B.V.
            Managing Director





ACTA DE CERTIFICACION DE FIRMAS
LEY 404

V. R. ARANA (h)
ESCRIBANO
MAT. 4370

F 010834745

1  **Buenos Aires,** 28 de        Agosto        de     2014 **. En mi carácter de escribano**

2  **Titular del Registro Notarial N° 841**

3  **CERTIFICO: Que la/s**    Firma/s                        **que obra/n en el**

4  **documento que adjunto a esta foja, cuyo requerimiento de certificación se**

5  **formaliza simultáneamente por ACTA número** 85             **del LIBRO**

6  **número** 248            **, es/son puesta/s en mi presencia por la/s persona/s**

7  **cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como**

8  **la justificación de su identidad.** Eduardo Angel ZAGO, DNI 14.343.056; Mi-

9  riam Rita PAITA, DNI 14.563.027 y Daniel Jorge VALICENTE, DNI

10 21.050.725, quienes justifican sus identidades de acuerdo al inciso a) del

11 artículo 1002 del Código Civil y actúan: El primero en su carácter de A-

12 poderado de la sociedad "SANCOR COOPERATIVAS UNIDAS LIMITA-

13 DA", con domicilio en Súnchales, Provincia de Santa Fe, inscripta en la

14 Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia de

15 Santa Fe, Departamento Castellanos, conforme lo acredita con el Poder

16 Especial de fecha 5 de Marzo de 2014, pasado al folio 117 del Registro

17 640 a cargo de la escribana Analía Roch de la ciudad de Súnchales,

18 Provincia de Santa Fe, y los dos últimos en su carácter de Apoderados

19 de la sociedad extranjera "SANCOR DO BRASIL Produtos Alimenticios

20 LTDA." lo que acredita con el Poder Especial de fecha 17 de diciembre de

21 2009, debidamente certificado con fecha 17 de diciembre de 2009 y de-

22 bidamente Autorizado por el Ministerio de Relaciones Exteriores con fe-

23 cha 7 de enero de 2010 y traducido con fecha 18 de enero de 2010 y le-

24 galizado bajo el número 948 de fecha 19 de enero de 2010, toda la do-

25 cumentación relacionada tengo a la vista y les confiere facultades sufi




F 010834745

cientes para suscribir el documento adjunto, doy fe.-Asimismo el ultimo lo

hace en su caracter de apoderado de la sociedad "SANCOR COOPERA-

TIVAS UNIDAS LIMITADA", con el Poder Especial de fecha 15 de diciem-

bre de 2010, pasado al folio 1103 del Registro 640 de la ciudad de Sun-

chales, Provincia de Santa Fe, a cargo de la escribana Analia Roch de la

ciudad de Súnchales, Provincia de Santa Fe, doy fe.-

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50

| | |
|---|---|
| **CONTRATO DE LÍNEA DE CRÉDITO PARA LA PREFINANCIACIÓN DE EXPORTACIONES** | **PRE EXPORT FINANCE CREDIT FACILITY AGREEMENT** |

Entre

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Gabriel Gustavo Martinuzzi, en su carácter de Apoderado Gerencia Financiera y Administrador (Artículo 11°) respectivamente, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que el MUTUARIO está interesado en obtener financiamiento de mediano plazo para destinarlo a la pre-financiación de sus exportaciones

(b) Que la satisfacción de la necesidad de contar con financiamiento para prefinanciar las exportaciones que el MUTUARIO tiene en la actualidad, redundará en su beneficio, permitiéndole continuar con el desarrollo y ampliación de sus mercados externos;

(c) Que el FIADOR mantiene fuertes relaciones comerciales con el MUTUARIO por lo cual está interesado en afianzar las obligaciones de éste último a fin de que pueda obtener la financiación antes referida,

(d) Que por las razones indicadas en el Considerando (b), y además, para facilitar el otorgamiento de un préstamo desde el punto de vista del riesgo crédito, el MUTUARIO está dispuesto a afectar bienes para garantizar el repago del crédito para prefinanciar sus exportaciones;

(e) Que el MUTUANTE está dispuesto a otorgar una línea de

---

Entered into by and between:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, a company store of first degree, constituted and registered under the laws of the Argentine Republic, with domicile at Tacuarí 202, 3° floor, Capital Federal, República Argentina, represented herein by Mr. Mario Magdalena, as representative (hereinafter referred to as the "BORROWER"), and

**SANCOR DO BRASIL Productos Alimenticios Ltda.**, a corporation registered under the laws of the Brazilian Republic, represented herein by Mr. Mario Magdalena and Gabriel Gustavo Martinuzzi, as Attorney-in-Fact, Financial Manager and Administrator (section 11°) respectively, with domicile at Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República de Brasil, (hereinafter referred to as the "SURETY"), and

**IIG TOF B.V.**, respresented by **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, respresented herein by Mr. _____ and _____, as _____, with domicile at Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (hereinafter referred to as the "LENDER"), and

The BORROWER, the LENDER and the SURETY jointly named as the "Parties"; and

**WHEREAS:**

(a) That the BORROWER is interested in obtaining mid term financing in order to appoint it to pre-finance its exportations.

(b) That the satisfaction and the need to obtain a financing to pre-finance the export that the BORROWER currently has, will benefit him, granting him to continue with the development and extension of its external markets;

(c) That the SURETY maintains strong commercial relationships with the BORROWER, reason why is interested to guarantee the obligations of the last mentioned in order for it to obtain the financing previously referred to;

(d) That for the reasons indicated in (b) above, and algo, to facilitate the granting of the loan from the perspective of the credit risk, the BORROWER is willing to affect some assets/goods to warranty the repayment of the credit to pre-finance its exports;

(e) That The LENDER is willing to grant a credit facility

 

crédito de hasta Dólares Estadounidenses cincuenta millones con 00/100 (US$ 50.000.000,00) para el MUTUARIO, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando: (i) el MUTUARIO y el FIADOR se obliguen solidariamente a su repago y al cumplimiento de todas las obligaciones asumidas bajo el Contrato Marco; (ii) que las Garantías (conforme se la define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato, y (iii) se otorgue y perfeccione el Fideicomiso y la cesión de los Créditos Cedidos (tal como se los define más adelante).

En mérito a las consideraciones precedentemente establecidas, se celebra el presente contrato de línea de crédito, sujeto a las siguientes cláusulas y condiciones:

PRIMERA:    DEFINICIONES.

"Afiliadas" significa las compañías controladas por y/o controlantes de y/o de propiedad común del MUTUARIO y/o del FIADOR.

"Arthur Schuman": significa ARTHUR SCHUMAN, INC., una firma organizada bajo las leyes del Estado de New Jersey, Estados Unidos de Norteamérica, con domicilio en 40 New Dutch Lane, Fairfield, NJ 07004 USA

"BARIVEN c/o PDVSA": significa Bariven S.A., c/o PDVSA Services, Inc., una firma organizada bajo las leyes del Estado de Texas, Estados Unidos de Norteamérica, con domicilio en 1293 Eldrige Parkway, Houston, Texas (77077), Estados Unidos de Norteamérica.

"Bien/es Fideicomitido/s" significa los "Créditos Cedidos" conforme este término está definido en el Fideicomiso.

"Cambio Material Adverso" significa cualquier cambio sustancial desfavorable en la situación económica, comercial, financiera, operativa, patrimonial o de cualquier otra índole del MUTUARIO y/o del FIADOR y/o sus Afiliadas y/o del MUTUANTE, o de sus proyecciones, considerados en conjunto, o en la política económico financiera y tributaria de la República Argentina o de los Estados Unidos de América, o que ocurriera cualquier hecho que, a criterio razonable del MUTUANTE, hiciera variar sustancialmente las condiciones de mercado imperantes a la fecha de celebración del presente Contrato Marco (incluyendo sin limitación cualquier suspensión, condonación o limitación al cumplimiento de las obligaciones dinerarias bajo facilidades financieras y/o de comercio exterior y/o de otro tipo, cualquier declaración de cesación de pagos en la República Argentina o en cualquier otro mercado financiero y de valores, el inicio de una guerra, de agresiones armadas, o de cualquier otro tipo de crisis/nacional o internacional directa o indirectamente relacionada con la República Argentina); o que ocurriera un acontecimiento que en opinión del MUTUANTE diera motivo razonable para suponer que el MUTUARIO y/o el

of up to  Fifty Million United States Dollars and 00/100 (US$ 50,000,000.00) to the BORROWER, subject to the terms and conditions of this Master Agreement, to the extent and provided that: (i) the BORROWER and the SURETY become jointly and severally bound to repay the same and to comply with all the obligations undertaken under the Agreement; (ii) the Guarantees (as defined hereinbelow) are maintained in full force and effect and enforceable up to the termination of the Agreement; and (iii) the Parties grant and perfect the assignment of the Assigned Credits (as they are defined hereinafter).

By virtue of the aforesaid considerations, this credit facility agreement is executed pursuant to the following terms and conditions:

SECTION ONE: DEFINITIONS.

"Affiliates" means the subsidiary corporations and/or holding corporations and/or companies commonly owned by the BORROWER and/or the SURETY.

"Artur Schuman" means ARTHUR SCHUMAN, INC., a corporation organized and registered under the laws of the Estate of New Jersey, United States, with domicile at 40 New Dutch Lane, Fairfield, NJ 07004 USA.

"BARIVEN c/o PDVSA" means Bariven S.A., c/o PDVSA Services Inc., a corporation organized and registered under the laws of the Estate of Texas, United States of America, with domicile at 1293 Eldrige Parkway, Huston, Texas (77077), United States of America.

"Trusted Asset/s" means the "Assigned Credits" as the term is defied in the Trust.

"Material Adverse Change" means any material unfavorable change in the economic, commercial, financial or operating situation or financial position or of any other kind of the BORROWER and/or the SURETY and/or their Affiliates and/or the LENDER, or their projections, taken as a whole, or in the economic, financial and tax policy of the Republic of Argentina or the United States of America, or the occurrence of any event that, at the LENDER 's reasonable criterion, materially changes the prevailing market conditions as of the date of execution hereof (including, without limitation, any suspension, release or limitation to the compliance with monetary obligations under financial facilities and/or foreign trade and/or of any other kind, any payment suspension declaration in the Republic of Argentina or in any other financial or exchange market, the commencement of war, armed assaults, or any other type of national or international crisis directly or indirectly related to the Argentine Republic); or the occurrence of any event which in the LENDER 's opinion gives reasonable grounds to presume that the BORROWER and/or the SURETY will not be able to regularly fulfill or comply with their obligations hereunder; or

FIADOR no podrán cumplir u observar normalmente sus obligaciones bajo el presente Contrato Marco; o cualquier variación en el tipo de cambio Peso Argentino/Dólar Estadounidense o cualquier suspensión en los mercados de cambio de la República Argentina y/o Estados Unidos de América.

"Condiciones Precedentes" significan las condiciones precedentes para la entrada en vigencia del Contrato Marco, previstas en la Cláusula SEGUNDA.

"Contrato Marco" significa el presente contrato de línea de crédito suscripto entre las Partes.

"Crédito/s Cedido/s" significa los siguientes créditos del MUTUARIO contra los Deudores Cedidos:

(i) todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Fonterra y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con Fonterra.

(ii) todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a BARIVEN c/o PDVSA y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con BARIVEN c/o PDVSA.

(iii) todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Arthur Schuman y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con Arthur Schuman.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallan a continuación:

| | |
|---|---|
| Bank: | State Street bank & Trust Boston, MA |
| ABA#: | 011-000-028 |
| SWIFT: | SBOSUS33 |
| Credit: | WMS Cash DDA |
| Account #: | 17039843 |
| Further Credit: | IIG TOF B.V – Sancor CUL |
| Account #: | 02030-8420148 |

any significant variation in the Peso Argentino/United States Dollar exchange rate, or any suspension in the foreign exchange markets of the Republic of Argentina and/or the United States of America that produce a Material Adverse Effect.

"Conditions Precedent" means the conditions precedent for the effectiveness of the Master Agreement, set forth in Section TWO.

"Master Agreement" means this credit facility agreement executed between the Parties.

"Assigned Credit/s" means the following credits of the BORROWER against the Assigned Debtors:

(i) means all the actual and future credit rights corresponding to the BORROWER over the commercial transactions of sales of goods that the BORROWER executes to Fonterra and/or their Affiliates and/or subsidiaries, in between December 21, 2009 and until the total cancellation of the Credit Line owed, including all credit rights resulting from the bills of lading, delivery notices, invoices and other documents issued under the sales transactions the BORROWER executes with Fonterra.

(ii) means all the actual and future credits rights corresponding to the BORROWER over the commercial transactions of sales god that the BORROWER executes to BARIVEN c/o PDVSA and/or its Affiliates and/or subsidiaries, in between December 21, 2009 and until the total cancellation of the Credit Line owed, including all credit rights resulting from the bills of lading, delivery notices, invoices and other documents issued under the sales transactions the BORROWER executes with BARIVEN c/o PDVSA.

(iii) means all the actual and future credits rights corresponding to the BORROWER over the commercial transactions of sales god that the BORROWER executes to Arthur Schuman and/or its Affiliates and/or subsidiaries, in between December 21, 2009 and until the total cancellation of the Credit Line owed, including all credit rights resulting from the bills of lading, delivery notices, invoices and other documents issued under the sales transactions the BORROWER executes with Arthur Schuman.

"Lender´s Account" means the LENDER's bank account, the data of which is detailed hereinafter:

| | |
|---|---|
| Bank: | State Street bank & Trust Boston, MA |
| ABA#: | 011-000-028 |
| SWIFT: | SBOSUS33 |
| Credit: | WMS Cash DDA |
| Account #: | 17039843 |
| Further Credit: | IIG TOF B.V – Sancor CUL |
| Account #: | 02030-8420148 |

"Cuenta del Mutuario" significa la cuenta bancaria de titularidad del MUTUARIO cuyos datos se detallan a continuación o la que el MUTUARIO indique al MUTUANTE en forma fehaciente:

| BANCO: | Citibank N.A. |
| DIRECCIÓN: | New York, U.S.A. |
| ABA: | 021000089 |
| SWIFT: | CITIUS33 |
| Cuenta Nro.: | 36976697 |
| A NOMBRE DE: | Banco Comafi S.A., Buenos Aires, Argentina |
| SWIFT: | QUILARBA |
| CHIPS: | UID 320011 |
| A FAVOR DE: | SanCor Cooperativas Unidas Limitada |
| CUENTA N°: | 000-0-129785 |
| REFERENCIA: | Prefinanciación de Exportación |

"Deudor/es Cedido/s" significa Arthur Schuman y/o Fonterra y/o BARIVEN c/o PDVSA.

"Documentos de la Operación" significa el presente Contrato Marco, las Solicitudes de Desembolso derivadas del mismo, los Pagarés, el Fideicomiso, los Warrants y los contratos u órdenes de compra que causan los Créditos Cedidos.

"Dólares" y "US$" significa Dólares Estadounidenses billete o transferencia.

"Efecto Material Adverso" significa un efecto material adverso en (i) el negocio, los activos, operaciones o condición (financiera o de cualquier otro tipo) del MUTUARIO y/o del FIADOR y/o sus Afiliadas o de las otras partes de los Documentos de la Operación (incluyendo el MUTUANTE), o (ii) la validez o cumplimiento de los Documentos de la Operación, o (iii) los derechos y beneficios conferidos al MUTUANTE en los Documentos de la Operación.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula DECIMA, Sección 10.1 y 10.2 del Contrato Marco; y/o cualquier incumplimiento de las obligaciones establecidas en el Contrato Marco; y/o cualquier Evento de Incumplimiento conforme se define en el Fideicomiso.

"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán indefectiblemente ser anteriores a los 24 (veinticuatro) meses calculadas desde la fecha de cada Solicitud de Desembolso.

"FIADOR" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

---

"Borrower's Account" means the BORROWER's bank account, the data of which is detailed below or that that may be informed by the BORROWER in an evidencing way:

| BANK: | Citibank N.A. |
| ADDRESS: | New York, U.S.A. |
| ABA: | 021000089 |
| SWIFT: | CITIUS33 |
| Account #: | 36976697 |
| ON BEHALF OF: | Banco Comafi S.A., Buenos Aires, Argentina |
| SWIFT: | QUILARBA |
| CHIPS: | UID 320011 |
| IN FAVOR OF: | SanCor Cooperativas Unidas Limitada |
| ACCOUNT #.: | 000-0-129785 |
| REFERENCE: | Prefinanciación de Exportación |

"Assigned Debtors" means Arthur Schuman and/or Fonterra and/or BARIVEN c/o PDVSA.

"Transaction Documents" means this Master Agreement, the Requests for Disbursement resulting therefrom, the Promissory Notes; the Trust, the Warrants and the agreements or purchase orders that cause the Assigned Credits.

"Dollars" and "USD" means United States Dollars, in cash or through a bank transfer.

"Material Adverse Effect" means a material adverse effect in (i) the business, assets, transactions or condition (financial or of any other nature) of the BORROWER and/or the SURETY and/or its Affiliates or the other parties of the Transaction Documents (including the LENDER), or (ii) the validity or performance of the Transaction Documents, or (iii) the rights and benefits granted to the LENDER in the Transaction Documents.

"Event of Default" means any event, condition or circumstance mentioned in, Section Ten, 10.1 and 10.2 of the Master Agreement; and/or any non-compliance of the obligations set forth in the Master Agreement; and/or any Event of Default in agreement with what is foreseen in the Trust.

"Due Date/s" means the due date for the payment of the Due Sums indicated in each of the Requests for Disbursement. The Due Dates shall be previous to 24 (twenty four) months of the date of each Disbursement Request.

"SURETY" has the meaning indicated in the introduction of this Master Agreement.



"Fideicomiso" es la propuesta de cesión fiduciaria y fideicomiso con fines de garantía suscripta en el día de la fecha por el MUTUARIO en carácter de potencial fiduciante, a efectos de ser remitida al Banco de Servicios y Transacciones S.A. como potencial fiduciario y al MUTUANTE como potencial beneficiario, en virtud de la cual, el MUTUARIO –a efectos de garantizar el cumplimiento de las obligaciones del presente Contrato Marco– transfiere los Bienes Fideicomitidos para que el potencial fiduciario, una vez aceptada la propuesta, los administre de conformidad con lo allí dispuesto, cuyo modelo se adjunta como **Anexo I** al presente Contrato Marco.

"Fonterra": significa **FONTERRA LIMITED**, una firma organizada bajo las leyes de Nueva Zelanda, con domicilio en Fonterra Centre, 9 Princess Street, Auckland, New Zealand.

"Garantías" significa los Pagarés, el Fideicomiso, los Warrants y la cesión de los Créditos Cedidos.

"Línea de Crédito" significa la única línea de crédito, que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA millones con 00/100 (US$ 50.000.000,00).

"Línea de Crédito Adeudada" significa la sumatoria de todos las Sumas Adeudadas por el MUTUARIO bajo la Línea de Crédito incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Mora" significa cualquier evento o condición que constituya un Evento de Incumplimiento, ocasionando los efectos establecidos en la cláusula DECIMA del presente Contrato Marco.

"MUTUANTE" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"MUTUARIO" tiene el significado indicado en el encabezamiento del presente Contrato Marco.

"Normas Aplicables" son todas las normas nacionales, provinciales o municipales, presentes y/o futuras, aplicables a la actividad y los negocios del MUTUARIO.

"Partes" significa conjuntamente el MUTUARIO, el FIADOR y el MUTUANTE.

"Pagaré/s" significa los pagarés librados por el MUTUARIO y avalados por el FIADOR, a favor del MUTUANTE, de conformidad con el formato adjunto al Contrato Marco como **Anexo II**, por un monto equivalente a la Suma Adeudada en cada Solicitud de Desembolso, conforme lo establecido en la Cláusula TERCERA del Contrato Marco.

"Pesos" moneda de curso legal en la República Argentina.

"Plazo de Acreditación" significa el plazo de tres (3) Días

---

"Trust" is the proposal for the fiduciary assignment and trust with a guaranty purpose executed on the date hereof by the BORROWER in its capacity of potential Trustor, so as to be sent to the Banco de Servicio y Transacciones S.A. as potential Trustee, and the LENDER as potential beneficiary, by virtue of which, the BORROWER – in order to grant the compliance with the obligations of this Master Agreement – shall transfer the Trust Assets so that the potential Trustee once the proposal is accepted can administer them in agreement with what is therein established, which model is attached herein as Annex I to this Master Agreement.

"Fonterra" means **FONTERRA LIMITED**, a company existing under the laws of New Zealand, with domicile at Fonterra Centre, 9 Princess Street, Auckland, New Zealand.

"Guarantees" means the Promissory Notes, the Trust, the Warrants and the assignment of the Assigned Credits.

"Credit Facility" means the unique Credit Facility, that, subject to the terms and conditions of the Transaction Documents, the LENDER shall make its best efforts so as to grant it to the BORROWER, for up to the total maximum amount of Fifty Million United States Dollars and 00/100 (U$S 50,000,000.00).

"Indebted Credit Facility" means the sum up of all the Sums Due by the BORROWER under the Credit Facility including all interests applicable in accordance with this Master Agreement.

"Default" means the any event or condition that constitute an Event of Default, causing the effects set forth in Section TEN hereof.

"LENDER" has the meaning given in the first paragraph hereof.

"BORROWER" has the meaning given in the first paragraph hereof.

"Applicable Rules" means all present and/or future, national, provincial or municipal rules applicable to the activities and the business of the BORROWER.

"Parties" means jointly the BORROWER, the SURETY and the LENDER.

"Promissory Note/s" means the promissory notes delivered by the BORROWER and guaranteed by the SURETY, in favor od the LENDER, in agreement with the format attached to this Master Agreement as **Annex II**, for an amount equivalent to the Due Amount in each Disbursement Request, in agreement with what is established in Section THIRD of the Master Agreement.

"Pesos" means the legal currency in the Argentine Republic.

"Crediting Term" means the term of three (3) Business Days as

Hábiles contados desde la fecha de recepción efectiva de la Solicitud de Desembolso.

"Plazo de Confirmación" significa el plazo de cinco (5) días hábiles contados a partir de la fecha de acreditación de los fondos requeridos en la Cuenta del Mutuario, conforme una Solicitud de Desembolso.

"Plazo de Disponibilidad" significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2010, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

"Solicitud de Desembolso" significa el formulario sustancialmente idéntico al que se adjunta al presente en **Anexo III**, completo con todos los datos debidamente consignados, que el MUTUARIO deberá suscribir, con la firma de sus apoderados o representantes legales certificada ante escribano público.

"Suma/s Adeudada/s" significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

"Tasa de Descuento" significa la tasa de interés anual de descuento a ser pactada por las Partes en cada Solicitud de Desembolso, que el MUTUANTE aplicará a cada desembolso de fondos que el MUTUARIO le solicite para calcular el monto de las Sumas Adeudadas.

Warrants: significa los warrants emitidos conforme la Ley 9643 de la República Argentina, correspondientes a certificados de depósito de mercadería de propiedad del MUTUARIO u otra mercadería a satisfacción del MUTUANTE, endosados por el MUTUARIO a favor del MUTUANTE por los montos y en las condiciones establecidos en la Cláusula SEPTIMA del presente Contrato Marco en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO bajo el Contrato Marco.

## CLAUSULA SEGUNDA: LA LINEA DE CREDITO.

### 2.1. Disponibilidad de la Línea de Crédito.

**(a) Disponibilidad Condicionada.** Sujeto al cumplimiento específico de cada una y todas las Condiciones Precedentes, o a que el MUTUANTE dispense expresamente y por escrito el cumplimiento de una o todas las Condiciones Precedentes, sin estar obligado a ello bajo ninguna circunstancia, el MUTUANTE se compromete durante el Plazo de Disponibilidad, a mantener disponible la Línea de Crédito a favor del MUTUARIO, la que podrá ser utilizada exclusivamente para la prefinanciación de exportaciones del MUTUARIO, en la medida de las respectivas Solicitudes de Desembolso, conforme las condiciones y el procedimiento que se establece en este Contrato Marco.

from the effective date of receipt of the Request for Disbursement.

"Confirmation Term" means the term of five (5) Business Days as from the date the required funds are credited in BORROWER's Account, pursuant to a Request for Disbursement.

"Availability Term" is the term fixed exclusively to the benefit of the LENDER, as from the date of the Master Agreement until December 31, 2010, during which period the LENDER undertakes to make their best efforts to maintain the Credit Facility available in favor of the BORROWER.

"Request for Disbursement /Disbursement Request" is the form substantially identical to the one attached hereto as **Annex III**, complete with all data duly stated, to be executed by the BORROWER with the signature of its attorneys-in-fact or legal representatives certified by a notary public.

"Sum/s Due" means the funds to be given by the BORROWER as payment to the LENDER under each Request for Disbursement including any applicable interest until the capital repayment, as per this Master Agreement.

"Discount Interest Rate" means the annual discount interest rate to be agreed between the Parties under each Request for Disbursement, that the LENDER will apply to each funds disbursement that the BORROWER requires to calculate the amount of the Sums Due.

"Warrants" means the warrants issued in agreement with Section 9643 of the Argentine Republic, corresponding to certificates of the deposit of merchandise property of the BORROWER or other merchandise at LENDER's satisfaction, endorsed by the BORROWER in favor of the LENDER for the amounts and in the conditions established n Section SEVEN of this Master Agreement in warranty of the fulfillment of obligations undertaken by the BORROWER under this Master Agreement.

## SECTION TWO: THE CREDIT FACILITY.

### 2.1 Availability of the Credit Facility.

**(a) Conditional Availability.** Subject to the punctual fulfillment of each and every of the Precedent Conditions, or to the fact that the LENDER expressly releases in writing the compliance with all and each of the Conditions Precedent, without being required to do so under no circumstance, the LENDER undertakes to make the Credit Facility available to the BORROWER during the Availability Term, which may be used to finance the BORROWER's exports, pursuant to the conditions and procedure set forth in this Master Agreement.

 

**(b) Vigencia.** Una vez expirado el Plazo de Disponibilidad, cesará automática e irrevocablemente –sin necesidad de notificación judicial o extrajudicial alguna- el derecho del MUTUARIO de remitir cualquier Solicitud de Desembolso al MUTUANTE, salvo que el Plazo de Disponibilidad sea prorrogado expresamente y por escrito por el MUTUANTE, a su exclusiva satisfacción, y tal decisión sea fehacientemente notificada al MUTUARIO en tiempo hábil.

**(c) Monto de los Desembolsos.** El MUTUARIO podrá requerir los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la sumatoria total de los montos consignados en las respectivas Solicitudes de Desembolso alcancen el monto de la Línea de Crédito; en consecuencia, en ningún caso y bajo ningún supuesto, el MUTUANTE estará obligado, ni se podrá interpretar que esté obligado, a desembolsar una suma mayor a o por encima de la Línea de Crédito.

**2.2.** <u>**Condiciones Precedentes al otorgamiento de la Línea de Crédito.**</u>

La validez y vigencia de la Línea de Crédito otorgada por el MUTUANTE bajo el presente Contrato Marco está condicionada a que, a criterio razonable del MUTUANTE, (i) se cumplan y mantengan plenamente vigentes a la firma del presente Contrato Marco, todas y cada una de las siguientes Condiciones Precedentes, estipuladas en beneficio exclusivo del MUTUANTE y/o (ii) el MUTUANTE dispense en forma expresa y por escrito, una, algunas o todas las Condiciones Precedentes:

**(a)** <u>**Aprobaciones Societarias.**</u> copia certificada por escribano público del poder general del MUTUARIO del cual surja que el/ los firmantes apoderados para la suscripción de los Documentos de la Operación se encuentran suficientemente facultados para dicho acto; y

**(b)** <u>**Vigencia de las Manifestaciones y Declaraciones del MUTUARIO.**</u> Que se encuentren en plena vigencia y continúen siendo ciertas, correctas y verdaderas, todas y cada una de la manifestaciones y declaraciones efectuadas por el MUTUARIO en la Cláusula NOVENA del Contrato Marco, y

**(c)** <u>**Inexistencia de Cambios Materiales Adversos, Efectos Materiales Adversos o Supuestos de Incumplimiento.**</u> Que no hubiere ocurrido y/o no se encontrare vigente, ni hubiere elementos fundados para prever el acaecimiento de uno o más Cambios Materiales Adversos, Efectos Materiales Adversos y/o de los Eventos de Incumplimiento (hubiere o no sido declarada la caducidad y aceleración de plazos), y que no hubiere ocurrido en conocimiento del MUTUARIO ninguna circunstancia que de cualquier forma hiciere peligrar, menoscabare o debilitare la plena vigencia, validez, plenitud, alcance, ejecutabilidad y/u oponibilidad frente a terceros de los Documentos de la Operación y de las Garantías, y

**(d)** <u>**Notificación a los Deudores Cedidos.**</u> Que el MUTUARIO

**(b) Effectiveness.** Once the Availability Term has expired, the BORROWER's right to send to the LENDER any Request for Disbursement will automatically and irrevocably cease – without any prior judicial or extrajudicial notice - unless the Availability Term is expressly extended in writing by the LENDER, to its sole satisfaction, and such decision is sufficiently notified to the BORROWER in due time.

**(c) Amount of Disbursements.** The BORROWER may require the disbursements it deems appropriate according to its needs until the aggregate of the amounts stated in the relevant Requests for Disbursement reach the amount of the Credit Facility; consequently, in no case and event will the LENDER be bound, or may be interpreted to be bound, to disburse an amount higher than or exceeding the Credit Facility.

**2.2** <u>Conditions Precedent to the Granting of the Credit Facility.</u>

The validity and effectiveness of the Credit Facility granted by the LENDER under the Master Agreement is subject to the fact that, at the LENDER'S reasonable discretion, (i) all and each of the following Conditions Precedent, set forth for LENDER'S exclusive benefit, take place and remain fully effective as of the execution of this Master Agreement and until its termination, and/or (ii) the LENDER expressly excludes in writing one, any or all the Conditions Precedent:

**(a)** <u>Corporate Approvals.</u> a copy certified by a notary public of the general power of attorney of the BORROWER , evidencing that the persons authorized to sign the Transaction Documents are fully empowered therefore.

**(b)** <u>Effectiveness of the Representations and Statements by the BORROWER and the SURETY.</u> That all and each of the representations and statements made by the BORROWER and/or the SURETY in Section NINE of the Master Agreement are fully effective, remain being accurate, correct and true;

**(c)** <u>Non-existence of Material Adverse Changes, Material Adverse Effects or Events of Default.</u> That no grounded elements have neither occurred and/or continue, or exist to foresee the occurrence of one or more Material Adverse Changes, Material Adverse Effects and/or Events of Default (should the lapse and acceleration of terms have been declared or not), and no circumstance known by the BORROWER has occurred that in any way may endanger, undermine or weaken the full effectiveness, validity, full force and effect, scope, enforcement and/or opposition against third parties of the Transaction Documents and Guarantees,

**(d)** <u>Notification to the Assigned Debtors:</u> That the BORROWER

 

haya notificado a los Deudores Cedidos las cesiones de los Créditos Cedidos en los términos establecidos en la Sección 4.6 del presente Contrato Marco; a cuyo efecto el MUTUARIO deberá entregar al MUTUANTE el original de tales notificaciones recibidas y aceptadas por los Deudores Cedidos.

**(e) Constitución del Fideicomiso.** Como condición previa e ineludible al otorgamiento de la Línea de Crédito, el MUTUARIO deberá haber constituido en legal forma el Fideicomiso de cesión de cobranzas, conforme lo establecido en el Fideicomiso, a favor del MUTUANTE.

## CLAUSULA TERCERA: CONDICIONES PRECEDENTES PARA EL DESEMBOLSO.

**3.1. Solicitud de Desembolso.** A fin de solicitar al MUTUANTE un desembolso bajo la Línea de Crédito, el MUTUARIO deberá enviar por medio fehaciente y a satisfacción del MUTUANTE:

(i) el original de la Solicitud de Desembolso debidamente completada y firmada por el representante legal del MUTUARIO y del FIADOR o apoderados con facultades suficientes, con su firma certificada por escribano público argentino; cada Solicitud de Desembolso deberá indefectiblemente contener el monto del desembolso requerido, la/s Fecha/s de Vencimiento del mismo y las Sumas Adeudadas que deberá pagar al MUTUANTE en tal/es Fecha/s de Vencimiento;

(ii) un Pagaré por un monto equivalente a las Sumas Adeudadas, debidamente suscripto por el representante legal del MUTUARIO o apoderados con facultades suficientes y avalado por el FIADOR, a plena satisfacción del MUTUANTE, con las firmas debidamente certificadas por un escribano público argentino; y

(iii) los Warrants debidamente endosados por el MUTUARIO, de conformidad con lo establecido en la Cláusula SEPTIMA del presente Contrato Marco, con fecha de vencimiento anterior a la última Fecha de Vencimiento de las consignadas en la Solicitud de Desembolso, con firma certificada por escribano público argentino, a satisfacción del MUTUANTE, representativos de mercaderías a satisfacción del MUTUANTE y por un valor también a satisfacción del MUTUANTE;

**3.2. Falta de Responsabilidad por Desembolsar o No Desembolsar.** Sin perjuicio de lo dispuesto en la presente Cláusula, el MUTUANTE no tendrá responsabilidad de ningún tipo frente al MUTUARIO, por aceptar o rechazar cualquier Solicitud de Desembolso efectivamente recibida del MUTUARIO, -siempre que el rechazo sea con causa- y por consiguiente, el MUTUARIO renuncia expresa e irrevocable a promover algún reclamo contra el MUTUANTE fundado en tal

has notified to the Assigned Debtors all the assignments of the Assigned Credits in the terms established in section 4.6 of this Master Agreement, to which effect the BORROWER shall deliver to the LENDER the original of such received and accepted notifications by the Assigned Debtors.

**(e) Trust Constitution**: As a previous and unavoidable condition for the granting of the Credit Line, the BORROWER must have constituted in legal war the Trust of assigns recover, in agreement with what is established in the Trust, in favor of the LENDER.

## SECTION THREE: CONDITIONS PRECEDENT FOR DISBURSEMENTS.

**3.1 Request for Disbursement.** In order to request the LENDER a disbursement under the Credit Facility, the BORROWER must send by self-probatory means and to LENDER'S satisfaction:

(i) the original of the Request for Disbursement duly filled out and signed by the legal representatives or attorney's in fact of the BORROWER and the SURETY duly empowered therefore, with their signatures certified by an Argentine notary public; each Request for Disbursement shall invariable contain the requested disbursement amount, the Due Dates, and the Sums Due that the it will have to pay to the LENDER in such Due Dates;

(ii) a Promissory Note for the Sums Due, duly signed by the legal representatives or attorney-in-fact of the BORROWER and or representatives duly empowered therefore and by the SURETY, at LENDER's entire satisfaction, with the signatures duly certified by an Argentine notary public;

(iii) the Warrants duly endorsed by the BORROWER, in agreement with what is established in Section SEVEN of this Master Agreement, with due date previous to the last Due Date of the ones established in the Request for Disbursement, with their signatures certified by an Argentine notary public, at satisfaction of the LENDER, representative of merchandise at satisfaction of the LENDER and also for an amount at satisfaction of the LENDER.

**3.2 Lack of Liability for Making a Disbursement or Not.** Notwithstanding the provisions of this Section, the LENDER shall not have any liability whatsoever to the BORROWER for accepting or rejecting any Request for Disbursement effectively received from the BORROWER – always that the rejection in with cause- and, therefore, the BORROWER expressly and irrevocably waives to file any claim against the LENDER based upon such circumstance or cause.

circunstancia o causa.

**3.3. Trámite posterior. Desembolso.** Una vez recibidos los documentos de la Solicitud de Desembolso por el MUTUANTE, el MUTUANTE procederá a verificar, a su exclusiva discreción, que toda la información y documentación en ellos contenida sea correcta y conforme al Contrato Marco. Ello no obstante, el MUTUANTE no está obligado a realizar una auditoría legal o *due diligence* de los documentos de la Solicitud de Desembolso y por consiguiente, no será responsable por la falsedad, inexactitud, omisión y/o falta de genuinidad de la misma. Sin perjuicio de ello, de estar éste de acuerdo, a su satisfacción, con los documentos de la Solicitud de Desembolso, el MUTUANTE procederá, a su exclusiva discreción y satisfacción y aún sin estar obligado a ello bajo los Documentos de la Operación, a desembolsar y depositar los fondos solicitados en la Cuenta del Mutuario dentro del Plazo de Acreditación. La aceptación por el MUTUANTE de una Solicitud de Desembolso no lo obliga a aceptar cualquier otra Solicitud de Desembolso –siempre que el rechazo sea con causa- que el MUTUARIO le pueda presentar en forma simultánea o ulteriormente a aquélla.

**3.4. Confirmación.** Dentro del Plazo de Confirmación, el MUTUARIO deberá indefectiblemente remitir por medio fehaciente al MUTUANTE una nota confirmando la recepción de tales fondos. Sin perjuicio de ello, aun en el supuesto de que el MUTUARIO no remitiese la nota de confirmación antes referida, la falta de reclamo fehaciente del MUTUARIO dentro del plazo de cinco (5) días corridos contados desde la finalización del Plazo de Acreditación implicará la conformidad del MUTUARIO con el desembolso depositado en la Cuenta del Mutuario.

**3.5. Facultad Exclusiva del MUTUANTE.** En el caso en que, a exclusivo criterio del MUTUANTE, durante el Plazo de Disponibilidad ocurriera cualquier Cambio Material Adverso o Efecto Material Adverso, el MUTUANTE podrá suspender inmediatamente la tramitación de cualquier Solicitud de Desembolso cursada de conformidad con el Contrato Marco, que esté siendo verificada y evaluada por aquél, así como cualquier desembolso de fondos correspondiente a una Solicitud de Desembolso aprobada por el MUTUANTE pero cuyos fondos no hayan sido efectivamente acreditados en la Cuenta del Mutuario, sin que tal decisión genere responsabilidad alguna al MUTUANTE, renunciando en consecuencia el MUTUARIO a promover cualquier acción por responsabilidad fundada en tal causa. Ello, sin perjuicio de la facultad del MUTUANTE de dar por terminado el Contrato en tal supuesto, de conformidad con lo establecido en la cláusula DECIMA del presente Contrato.

**3.6. Devolución al MUTUARIO de los Créditos Cedidos. Notificación a los Deudores Cedidos.** Una vez cancelada en su totalidad la línea de Crédito Adeudada por el MUTUARIO y dentro de las 48 hs. de sucedido ello, el MUTUANTE se obliga a notificar a cada Deudor Cedido que ha quedado sin efecto la cesión del Crédito Cedido por lo que a partir de la recepción de

**3.3 Subsequent Proceeding. Disbursement.** Once the documents of the Request for Disbursement have been received by the LENDER, it will proceed to verify, that all the information and documents contained therein are, at its own criterion, accurate and in accordance with the Master Agreement. Notwithstanding that, the LENDER is not obliged to perform a legal audit or due diligence of the Documents of the Request for Disbursement and, therefore, it will be not responsible for any misrepresentation, inaccuracy, omission and/or lack of genuineness thereof. Notwithstanding the aforesaid, if the LENDER agrees, to its satisfaction, with the Documents of the Request for Disbursement, the LENDER shall, at its own discretion and to its own satisfaction, and even without being bound thereto under the Transaction Documents, to disburse the requested funds in the BORROWER's Account within the Crediting Term. The LENDER'S acceptance of a Request for Disbursement does not bind it to accept any other Request for Disbursement that the BORROWER may submit to it simultaneously or thereafter – always that the rejection is with cause.

**3.4 Confirmation.** Within the Confirmation Term, the BORROWER must necessarily send to the LENDER a note confirming the receipt of such funds by self-probatory means. Notwithstanding the aforesaid, even in the event that the BORROWER fails to send the confirmation note mentioned above, the lack of claim by the BORROWER by self-probatory means within a term of five (5) calendar days as from the completion of the Crediting Term shall imply the conformity of the BORROWER to the disbursement deposited in the BORROWER's Account.

**3.5 LENDER'S Exclusive Power.** Should, at the LENDER'S exclusive discretion, during the Availability Term any Material Adverse Change or Material Adverse Effect occur, the LENDER may immediately interrupt the proceedings of any Request for Disbursement filed according to the Master Agreement, which is being reviewed and evaluated by such LENDER, as well as any disbursement of funds corresponding to a Request for Disbursement approved by the LENDER but which funds have not been actually credited in BORROWER's Account, without giving rise to any responsibility for the LENDER. Consequently, the BORROWER waives to file any action for responsibility grounded on such reason. The aforesaid notwithstanding the authority of the LENDER to render the Master Agreement terminated, pursuant to the provisions of section TEN hereof.

**3.6 Refund to the BORROWER of the Assigned Credits. Notification to the Assigned Debtors:** Once the Credit Line Facility owed is completely canceled by the BORROWER and in within the 48 hs. From its occurrence, the LENDER compels to notify to each of the Assigned Debtors that the assignment of the Assigned Credit has no effect, reason why from the reception of

dicha notificación, cada Deudor Cedido deberá abonar al MUTUARIO el monto de los respectivos Créditos Cedidos.

## CLÁUSULA CUARTA:   CESIÓN DE CRÉDITOS.

**4.1.**  En garantía de pago de la Línea de Crédito Adeudada y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO bajo los Documentos de la Operación, y como medio de pago de las Sumas Adeudadas - conforme lo establecido en la Cláusula 5.2 del Contrato Marco- el MUTUARIO cede al MUTUANTE los Créditos Cedidos. La referida cesión comprende todos los derechos y acciones que posee el MUTUARIO y le corresponden respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de las obligaciones contractuales con los Deudores Cedidos de las cuales surjan los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO.

**4.2.**  El MUTUARIO se compromete a entregar al MUTUANTE, dentro de los 5 (cinco) días de su despacho, los conocimientos de embarque respecto de la mercadería comprendida en los Créditos Cedidos. Asimismo, se obliga a entregar al MUTUANTE, dentro de los 5 (cinco) días de recibidas por los Deudores Cedidos, copias o fotocopias de los remitos y facturas que el MUTUARIO emita como consecuencia de los Créditos Cedidos.

**4.3.**  El MUTUARIO garantiza que todas las sumas correspondientes a los Créditos Cedidos serán depositadas por los Deudores Cedidos en la Cuenta del Mutuante. A tal efecto, en adición a las notificaciones previstas en la Sección 4.6 de la presente Cláusula CUARTA, el MUTUARIO se obliga a incluir en todas y cada una de las facturas emitidas en virtud de los Créditos Cedidos que sean remitidas a los Deudores Cedidos, una leyenda que indique expresamente que tales facturas deberán ser pagadas al MUTUANTE mediante transferencia de los fondos correspondientes a la Cuenta del Mutuante. En cada una de las facturas cedidas el MUTUARIO se compromete a incluir la siguiente leyenda (y su correspondiente traducción al idioma inglés):

*"El crédito representado y contenido en la presente factura, fue cedido en garantía a IIG TOF B.V., por contrato de Cesión de Créditos de fecha __/__/200_. Deberán Uds. abonar el mismo a su vencimiento mediante depósito en el Banco: _____, ABA _____, Beneficiario: IIG TOF B.V., Cuenta N°: _____"*

**4.4.**  Los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas de acuerdo a lo dispuesto en la Sección 5.2 del Contrato Marco.

such notification, each Assigned Debtor shall pay to the BORROWER the amount of the respective Assigned Credits.

## SECTION FOUR: CREDIT ASSIGNMENT.

**4.1**  As security for the payment of all the obligaitons and the compliance of all the obligations assumed by the BORROWER under the Transaction Documents, and as means of payment of the Sums Due, - in agreement with what is established in Section 5.2 of the Master Agreement – the BORROWER assign to the LENDER the Assigned Credits. The assignment or assignments undertaken comprises all the rights and actions that the BORROWER has with regard to the Assigend Credits and of the consequences previously stated, placing the LENDER pari passu in priorities with the pertinent scope and to the relevant extent, the latter being also subrogated to all rights or agreement performance and/or collection actions likely to exist in the future in connection with such credits, notwithstanding the obligations deriving from the contractual obligations with the Assigned Debtor originating from the Assigned Credits, which shall be exclusively borne by the BORROWER.

**4.2**  The BORROWER undertakes to deliver to the LENDER, within 5 (FIVE) days from dispatch thereof, certified copies of the bills of lading regarding the merchandise included in the Assigned Credits. In such sense, it undertakes to deliber to the LENDER, within 5 (FIVE) days from the reception by the Assigned Debtors, the delivery notices and the invoices issued by the BORROWER as a consecuence of the Assigned Credits.

**4.3**  The BORROWER guarantees that all sums corresponding to the Assigned Credits shall be deposited by the Assigned Debtor in the LENDER's Account. For such purpose, in addition to the notices indicated in 4.6, the BORROWER and/or the SURETY undertakes to include in all and each of the invoices issued under the Assigned Credits to be sent to the Assigned Debtor, a legend expressly stating that such invoices shall be paid to the LENDER through a transfer of the pertinent funds to the LENDER's Account. In each of the assigned invoices assigned to the BORROWER and/or the SURETY, undertake to include the following legend:

*"The credit represented and included in this invoice, was assigned as security to IIG TOF B.V., through the Credit Assignment Agreement dated __/200_. You should pay the same on the due date through a deposit in the Bank: __ ABA___; Beneficiary: IIG TOF B.V.; Account No. ___)"*

**4.4**  The funds of the Assigned Credits deposited in the LENDER's Account shall be applied to the payment of the Sums Due as per Section FIVE, 5.2 of the Master Agreement.

4.5. La cesión de los Créditos Cedidos se efectúa con responsabilidad por parte del MUTUARIO hacia el MUTUANTE. En consecuencia, si por cualquier causa el importe de los Créditos Cedidos no fuere abonado al MUTUANTE conforme los términos establecidos en la presente Cláusula CUARTA y/o no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, el MUTUARIO deberá abonar al MUTUANTE el importe total saldo adeudado correspondiente a cada Suma Adeudada, antes de o en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

4.6. Como condición indispensable para la entrada en vigencia del presente Contrato Marco, el MUTUARIO se obliga a notificar en forma fehaciente esta cesión a los Deudores Cedidos mediante la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como **Anexo IV** con lo cual la misma quedará perfeccionada frente a terceros, sin necesidad de aceptación alguna del Deudor Cedido para tales efectos. A tales fines dentro de las 48 hs. de suscripto el presente Contrato Marco, y como una de las Condiciones Precedentes, el MUTUARIO comunicará a todos los Deudores Cedidos, con intervención notarial, que los Créditos Cedidos han sido transmitidos al MUTUANTE, y que el depósito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante. Asimismo, y sin perjuicio del perfeccionamiento de la cesión del modo antes indicado, el MUTUARIO se obliga a obtener la aprobación expresa de los Deudores Cedidos respecto de la presente cesión, debiendo los Deudores Cedidos –mediante su apoderado o representante legal- firmar al pie de dicha notificación con constancia de aceptación de la misma. El MUTUARIO deberá entregar dicha notificación al MUTUANTE, con la aceptación de los Deudores Cedidos en la forma antes indicada, como una de las Condiciones Precedentes.

El MUTUARIO deberá entregar dichas notificaciones al MUTUANTE, con la aceptación de los Deudores Cedidos en la forma antes indicada, conforme lo establecido en la condición previa a entrada en vigencia del presente Contrato Marco.

Asimismo el MUTUARIO remitirá conjuntamente vía fax una comunicación a cada Deudor Cedido, notificándole la cesión de los Créditos Cedidos, indicándole que el pago de los Créditos Cedidos deberá realizarse en la Cuenta del Mutuante, consignándose que se remite por correo el original de la comunicación.

Cumplido ello, el MUTUARIO requerirá a un escribano público la certificación del texto de la misma, su destinatario, domicilio y su despacho mediante correo internacional por un servicio que brinde constancia de su entrega y recepción.

4.7. El presente Contrato no implica de forma alguna la transferencia por el MUTUARIO al MUTUANTE de las obligaciones emergentes de los contratos que causen los Créditos

4.5 This assignment of the Assigned Credits is made under the BORROWER's liability to the LENDER. Therefore, if for any reason whatsoever the amount of the Assigned Credits is not paid to the LENDER as per the terms stated in this Section and/or are not enough to cover the payment of the Due Amounts in the correspondent Due Dates, the BORROWER shall pay the LENDER the total amount or the balance due corresponding to each Sum Due, previously of or in each Due Date, under penalty of incurring in automatic Default.

4.6 As an essential condition for the validity of this Master Agreement, the BORROWER and the SURETY binds themselves to give notice of this assignment by a self-probatory means to the Assigned Debtors, through the remittance of a notice substantially identical to the form attached hereto as **Annex IV** with which it must be understood as effective towards third parties, without the need of any acceptance of the Assigned Debtor to such effects. For purposes thereof, within 48 hours after the execution of this Master Agreement, as as one of the Precedent Condition, the BORROWER shall notify the Assigned Debtor in writing and through self-probatory means with the intervention of a notary, that the credits have been assigned to the LENDER and that the deposit of the sums pertinent to the Assigned Credits shall be made to the LENDER's Account. In such sense, and without prejudice of the assignment perfection in the means previously mentioned, the BORROWER compels to obtain the express approval of the Assigned Debtors regarding this assignment, and the Assigned Debtors will have to sig – by means of a representative or a person empowered to – at the bottom of each notification with acceptance proof of it. The BORROWER shall deliver such notices to the LENDER, with the acceptance of the Assigned Debtors is the way previously outlined, as a Condition Precedent.

The BORROWER shall deliver such notifications to de LENDER, with the acceptance of the Assigned Debtors in the way that was previously indicated, in agreement with what is established in the previous condition to the starting date of this Master Agreement.

In such sense, the BORROWER will remit vía fax a communication to each of the Assigned Debtors, notifying the assignment of the Assigned Credits, indicating that the payment of the Assigned Credtis must be done in th LENDER's Account, establishing that the original of the communication is remitted by postage mail.

Fulfilled that, the LENDER will require to a notary public the certification of the text of it, its addressee, domicile and it deliver by means of international postage mail by a service that gives prove of its deliver and reception.

4.7 This Agreement does not imply in any manner whatsoever a transfer by the BORROWER to the LENDER of the obligations arising from the agreements originating the Assigned Credits,



Cedidos, las que permanecerán en cabeza del MUTUARIO. El MUTUARIO se compromete a cumplir con todas y cada una las obligaciones a su cargo emergentes de los contratos que causen los Créditos Cedidos, de modo que no se vea afectado el derecho del MUTUANTE al cobro de los Créditos Cedidos. La falta de cumplimiento en debido tiempo y forma de las obligaciones antedichas, producirá automáticamente de pleno derecho la Mora del MUTUARIO. De igual manera se producirá la Mora de pleno derecho con los efectos antes citados en el caso de que – con prescindencia de que hubiese o no incumplimiento por parte del MUTUARIO- los Deudores Cedidos rescindan o resuelvan los contratos de compraventa de mercadería que causen los Créditos Cedidos, o de cualquier forma discontinúen o terminen su relación comercial con el MUTUARIO, ya sea en forma unilateral o de común acuerdo entre el MUTUARIO y los Deudores Cedidos.

which shall be borne by the BORROWER. The BORROWER undertakes to comply with any and all of its obligations deriving from the agreements of the Assigned Credits so that the LENDER's right to collect the Assigned Credits shall not be affected. Non-compliance in due time and manner of the obligations mentioned above shall automatically give place by operation of law to the BORROWER's Default. The Default by operation of law shall occur all the same with the consequences already mentioned in the event that, irrespective of the BORROWER's default, the Assigned Debtor rescinds or terminates the merchandise purchase agreements originating the Assigned Credits, or ceases or ends its business relationship with the BORROWER, whether unilaterally or as agreed between the BORROWER and the Assigned Debtor.

**4.8.**   El MUTUARIO declara y garantiza al MUTUANTE:

(a)   el cobro de los Créditos Cedidos.

(b)   la forma instrumental de los mismos.

(c)   la legitimidad de los Créditos Cedidos y que los mismos son de su libre disponibilidad, no encontrándose afectado por embargos, ni prohibiciones de cesión, o gravámenes de otra naturaleza al momento de la presente;

(d)   que no se encuentra inhibido para disponer de sus bienes;

(e)   que no adeuda suma alguna a ningún Deudor Cedido que pueda dar lugar a compensaciones o quitas de cualquier especie sobre los Créditos Cedidos, y que de darse tal supuesto abonará la diferencia conforme lo estipulado en la cláusula 5.4;

(f)   que no ha percibido suma alguna derivada de los Créditos Cedidos, y que los mismos no han sido cedidos total ni parcialmente a persona física o jurídica alguna con anterioridad;

(g)   la autenticidad de las firmas de todo documento que acredite la causa de los Créditos Cedidos.

(h)   que cumplirá con todas y cada una de las obligaciones a su cargo emergentes de los Créditos Cedidos, incluyendo –pero no limitado a- la entrega en tiempo y forma a los Deudores Cedidos de la mercadería objeto de los Créditos Cedidos.

(i)   que el monto de los Créditos Cedidos depositado en la Cuenta del Mutuante durante el Plazo de Disponibilidad será equivalente como mínimo al 110,00% del monto de la Línea de Crédito.

(j)   que todos los Créditos Cedidos serán facturados por el MUTUARIO directa y exclusivamente a cada Deudor Cedido.

**4.8**   The BORROWER states and guarantees the LENDER as follows:

(a)   the collection of the Assigned Credits;

(b)   the instrumental form thereof;

(c)   the legitimacy of the Assigned Credits and that the Assigned Credits are freely available to it, and that they are not subject to any attachment, assignment prohibition, or any lien whatsoever as of the date hereof;

(d)   that it is not subject to restraining orders to dispose of its property;

(e)   that it does not owe any sum of money which may give place to set off or discharges of debts of any kind whatsoever on the Assigned Credits; and that if such events take place it will pay the difference in agreement with what is established in section 5.4;

(f)   that it has not received any sum resulting from the Assigned Credits and that the same have not been assigned, either partially or totally, to any natural or artificial person before;

(g)   the authenticity of the signatures of any document evidencing the reason for the Assigned Credits;

(h)   that it shall comply with any and all of the obligations under its charge deriving from the Assigned Credits, including, but not limited to, delivery in due time and manner to the Assigned Debtors of the goods stated in the Assigned Credits.

(i)   that the amount of the Assigned Credits to be deposited at the LENDER's Account during the Availability Term shall be at least equal at a minimum to 110,00% of the amount of the Credit Facility.

(j)   that all the Assigned Credits will be invoices by the BORROWER directly and exclusively to each Assigned Debtor.

**CLAUSULA QUINTA: CANCELACIÓN DE LAS SUMAS ADEUDADAS, APLICACIÓN DE LOS CREDITOS CEDIDOS AL PAGO DE LAS SUMAS ADEUDADAS, RECURSO DEL MUTUARIO.**

**SECTION FIVE: PAYMENT OF SUMS DUE, APPLICATION OF ASSIGNED CREDITS TO PAYMENT OF SUMS DUE, BORROWER'S REMEDY.**

5.1. El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, mediante depósito de las mismas en la Cuenta del Mutuante.

5.2. A los efectos mencionados en la Sección 5.1 antes referida, los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas del siguiente modo:

(a) Durante los meses en que NO exista Fecha de Vencimiento (entendiéndose por tales aquellos meses transcurridos entre la efectivización del desembolso requerido en cada Solicitud de Desembolso hasta el mes calendario inmediato anterior al de la Fecha de Vencimiento), el MUTUANTE transferirá los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario.

(b) Durante los meses correspondientes a las Fechas de Vencimiento (entendiéndose por tal el período comprendido entre el día 1 y el día 30 de los meses correspondientes a las Fechas de Vencimiento), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante a cancelar las Sumas Adeudadas a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses excedan el monto de las Sumas Adeudadas, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (a) de la presente Sección 5.2. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses no fuesen suficientes para cubrir el importe de las Sumas Adeudadas, el MUTUARIO será responsable de aportar la diferencia, y abonar así el importe total de las Sumas Adeudadas, bajo apercibimiento de Mora.

(c) Todos los fondos correspondientes a los Créditos Cedidos que sean depositados en la Cuenta del Mutuante con posterioridad a la cancelación total de la Línea de Crédito Adeudada y en exceso de la misma, serán reintegrados al MUTUARIO en la forma indicada en el acápite (a) de la presente Sección 5.2.

5.3. En caso de Mora, la totalidad de los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante se aplicarán a cancelar toda la Línea de Crédito Adeudada y cualquier otra suma adeudada por el MUTUARIO bajo los Documentos de la Operación.

5.1. The BORROWER irrevocably and unconditionally undertakes to pay the LENDER the Sums Due and the Performance Fee on the Due Dates corresponding to each of them through a deposit thereof in the LENDER's Account.

5.2. For purposes mentioned in Section 5.1 above, the funds of the Assigned Credits deposited at the LENDER's Account shall be applied to payment of the Sums Due as follows:

(a) During the months in which there are NO Due Dates (being understand by such the months between the effective disbursement after a Disbursement Request and the following calendar month before the Due Date), the LENDER shall transfer the funds corresponding to the Assigned Credit that the Assigned Debtors deposit at the Lender's Account, during the 48 hours period since its reception, to the Borrower's Account.

(b) During the months corresponding to the Due Dates (being understand by such the period between the 1st and the 30th of each month corresponding to the Due Dates), the LENDER shall apply the amounts of the Assigned Credits deposited at the Lender's Account to cancel the Sums Due to be paid in the Due Dates corresponding to each month. In the event that the amount of the Assigned Credits deposited during said month exceeds the amount of the Sums Due, the exceeding amount shall be transfer, to the Borrower's Account as stated in Section 5.2 (a) If the sums deposited during said months were not enough to fulfill the amounts of the Sums Due, the BORROWER shall deposit the amount needed in order to comply with the total amounts of the Sums Due, under penalty of incurring in automatic Default.

(c) All the funds corresponding to the Assigned Credits that were deposited at the Lender's Account, after the total cancellation of the Credit Facility, and in excess of it, shall be re-delivered to the BORROWER and/or the SURETY as set forth in (a) herein of this Section 5.2.

5.3 Upon Default, all the funds of the Assigned Credits deposited in the LENDER's Account shall be applied to pay the entire Credit Facility and any other amount due under the Transaction Documents.

5.4.     Habida cuenta del recurso del MUTUARIO en la cesión de los Créditos Cedidos al MUTUANTE, en caso que -por cualquier causa- el importe de los Créditos Cedidos depositados en la Cuenta del Mutuante no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las Fecha de Vencimiento correspondiente a un mes determinado, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de o en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

5.4    Taking into account the resource of the BORROWER in the assignment of the Assigned Credits to the LENDER, in case that – for any reason whatsoever - the amount of the Assigned Credits deposited in the LENDER´s Account are not sufficient to pay the Sums Due in the correspondent Due Date in a determined month, the BORROWER shall pat the LENDER the total amount or the adequate balance correspondent to each Sum Due, before of or in each Due Date, under penalty of incurring in automatic Default.

## CLAUSULA SEXTA:     MONEDA DE PAGO.

## SECTION SIX: PAYMENT CURRENCY.

6.1.     El MUTUARIO asume que el pago del importe total o el saldo que eventualmente adeude en virtud de la Operación –incluyendo el pago de la Línea de Crédito Adeudada- deberá ser necesariamente abonado en Dólares y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de la Línea de Crédito Adeudada así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago. Asimismo el MUTUANTE asume que la transferencia que debe realizar a favor del MUTUARIO de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) deberán ser necesariamente abonados en Dólares y no en otra moneda. En consecuencia, el MUTUANTE expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c), así como los intereses punitorios y demás sumas a ser transferidas al MUTUARIO en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviniente en el pago.

6.1    The BORROWER undertakes that payment of the full amount or the balance eventually due under the Transaction Documents- including payment of the Indebted Credit Facility - shall be paid in Dollars and not in another currency. Consequently, the BORROWER expressly acknowledges and states that it is a material condition to this Master Agreement, that the payment of the Indebted Credit Facility, as well as compensatory and penalty interest, costs, court fees and further sums payable to the LENDER hereunder, be canceled in Dollars, expressly waiving the doctrine of unforeseeability or any other similar law to allege a major consideration in payment. In addition to this the LENDER understands that the transfer to be made in favor of the BORROWER of the funds of the Assigned Credits that the Assigned Debtors deposit at the LENDER´s Account as set forth in Section FIVE 5.2. a) and c) shall be payable in Dollars and not in any other currency. As a consequence of the foregoing the LENDER acknowledges that it is an essential condition of this Master Agreement that the devolution of the funds corresponding to the Assigned Credits that the Assign Debtors deposit at the LENDER´s Account as set forth in Section FIVE 5.2. a) and c), as well as punitive interests and other sums to be transferred to the BORROWER under this Agreement, are cancelled in Dollars,  expressly waiving the doctrine of unforeseeability or any other similar law to allege a major consideration in payment.

6.2.     En atención a lo dispuesto en la Cláusula 6.1., en caso que en cualquier fecha de Vencimiento existiere cualquier restricción o prohibición para acceder al mercado libre de cambios en la República Argentina, el MUTUARIO y en su caso el MUTUANTE deberán igualmente abonar las sumas comprometidas (la Línea de Crédito Adeudada y cualquier otra suma pagaderas en virtud de los Documentos de la Operación en Dólares para el caso del MUTUARIO y la transferencia de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.2. a) y c) para el caso del MUTUANTE, obteniendo los mismos a través de cualquiera de los siguientes mecanismos, a opción del MUTUANTE o MUTUARIO según el caso:

6.2    In accordance with the provisions set forth in Section 6.1., if on any Maturity Date there is any restriction or prohibition to access the exchange market in the Argentine Republic, the BORROWER and the LENDER shall nevertheless pay the indebted amounts (the Indebted Credit Facility and any other amount payable under the Transaction Documents) in Dollars, in the case of the BORROWER, and transfer of the sums corresponding to the Assigned Credits that the Assigned Debtors deposit at the LENDER´s Account as set forth in Section FIVE 5.2. a) and c), obtaining the same though any of the following mechanisms, to the LENDER's or  BORROWER s' option depending on the case:

6.2.(a)  Mediante la compra con Pesos (o la moneda que sea

6.2(a) Through the purchase with Pesos (or the then legal tender

en ese momento de curso legal en la República Argentina), de cualquier título en Dólares y la transferencia y venta de dichos instrumentos fuera de la República Argentina por Dólares Estadounidenses en una cantidad tal que, liquidados en un mercado del exterior, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares sea igual a la cantidad de dicha moneda adeudada bajo los Documentos de la Operación; o bien

in the Argentine Republic), of any security in Dollars and the transfer and sale of said instruments outside the Argentine Republic for Dollars in an amount which, sold in a foreign market, and once applicable taxes, costs, commissions and expenses are deducted, the proceeds thereof in Dollars are equal to the amount of said currency due under the Transaction Documents; or

**6.2.(b).** Mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de cualquier título en Dólares, a satisfacción expresa del MUTUANTE (o del MUTUARIO en su caso) y con cotización en Dólares en el exterior, en una cantidad tal que, liquidados por el MUTUANTE (o el MUTUARIO en su caso) en un mercado del exterior, en precios y condiciones de plaza, y una vez deducidos los impuestos, costos, comisiones y gastos correspondientes, su producido en Dólares Estadounidenses sea igual a la cantidad total adeudada bajo los Documentos de la Operación; o bien

**6.2.(b)** Through delivery to the LENDER (or the BORROWER as the case may be) of any security in Dollars, to the LENDER's express satisfaction (or the BORROWER's as the case may be) and with Dollar quotation abroad, in an amount which, once sold by the LENDER (or the BORROWER) in a foreign market, at market prices and conditions, and once applicable taxes, costs, commissions and expenses are deducted, the proceeds thereof in Dollars are equal to the aggregate amount in such currency due under the Transaction Documents; or

**6.2.(c).** En el caso que existiera cualquier prohibición legal expresa en la República Argentina que impidiera al MUTUARIO (o al MUTUANTE en su caso) llevar a cabo las operaciones indicadas en los dos puntos anteriores, mediante la entrega al MUTUANTE (o al MUTUARIO en su caso) de Pesos (o la moneda que sea en ese momento de curso legal en la República Argentina), en una cantidad tal que, en la fecha de pago de que se trate dichos Pesos sean suficientes, una vez deducidos los impuestos, costos, comisiones y gastos que correspondieren, para adquirir la totalidad de los Dólares adeudados por el MUTUARIO (o el MUTUANTE en su caso) bajo los Documentos de la Operación, según el tipo de cambio informado por Citibank, N.A., Nueva York, Estados Unidos de Norteamérica, para efectuar adquisiciones de Dólares con Pesos en la Ciudad de Nueva York, a las 12 (doce) horas (hora de la Ciudad de Nueva York) de la fecha de pago; o bien

**6.2.(c)** If there is any express legal prohibition in the Argentine Republic, which would impede the BORROWER (or the LENDER) from making the transactions stated in the two foregoing paragraphs, through the delivery to the LENDER (or BORROWER) of Pesos (or the then legal tender in the Argentine Republic), in an amount which, on the payment date, such Pesos are enough, once applicable taxes, costs, commissions and expenses are deducted, to acquire the aggregate amount of Dollars due by the BORROWER (or the LENDER) under the Transaction Documents, as per the exchange rate informed by Citibank N.A., New York, United States of America, to make Dollar acquisitions with Pesos in the City of New York, at 12 (twelve) hours (New York City time) on the payment date; or

**6.2.(d).** Mediante cualquier otro procedimiento existente en la República Argentina o en el exterior, en las Fechas de Vencimiento bajo el Contrato Marco, para la adquisición de Dólares.

**6.2.(d)** Through any other procedure existing in the Argentine Republic or abroad, on any Maturity Date under the Master Agreement, for the purchase of Dollars.

**6.3.** Queda expresamente establecido que en cualquiera de las alternativas detalladas en 6.2.(a). a 6.2.(d)., las sumas adeudadas por el MUTUARIO (o el MUTUANTE en su caso) sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante (o en la Cuenta del Mutuario en su caso), la cantidad de Dólares adeudada bajo los Documentos de la Operación.

**6.3** It is hereby expressly stated that in any of the alternatives detailed in 6.2. (a) through 6.2.(d), the Sums Due by the BORROWER (or the LENDER) shall only be deemed paid and such payment shall have discharging effects only, once the amount of Dollars due under the Transaction Documents and this Master Agreement is actually credited at the Lender's Account (or at the Borrowers' Account as the case may be).

**6.4.** Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 6.2.(a). a 6.2.(d) precedentes serán pagados por el MUTUARIO

**6.4** All charges, costs, commissions, fees and taxes payable in connection with the procedures set forth in 6.2.(a) through 6.2.(d) above shall be paid by the BORROWER (or the LENDER as the



(o por el MUTUANTE en su caso).

**6.5.** Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquél al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE (o el MUTUANTE en su caso) pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquél en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO (o el MUTUANTE en su caso) en una moneda distinta de Dólares, la obligación de pago del MUTUARIO (o del MUTUANTE en su caso) de cualquier suma adeudada bajo los Documentos de la Operación sólo se considerará cancelada si en el Día Hábil siguiente a aquél en que el MUTANTE (o el MUTUARIO en su caso) haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUARIO (o el MUTUANTE en su caso) pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo los Documentos de la Operación, el MUTUARIO (o el MUTUANTE en su caso) acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE (o al MUTUARIO en su caso) de esa pérdida.

## CLÁUSULA SEPTIMA:  WARRANTS

**7.1** En adición a toda otra garantía, junto con cada Solicitud de Desembolso, el MUTUARIO deberá suscribir y entregar al MUTUANTE, como garantía adicional de pago, Warrants de productos lácteos o sus derivados –debidamente endosados a favor del MUTUANTE- por una suma equivalente como mínimo al 15% (quince por ciento) de la Suma Adeudada correspondiente, expresada en Dólares Estadounidenses, con exclusión de toda otra moneda.

**7.2.** El MUTUARIO se obliga a que durante toda la vigencia del Contrato Marco el MUTUANTE cuente en su poder con Warrants por un monto no inferior a una suma equivalente al quince por ciento (15%) de la Línea de Crédito Adeudada. Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art. 26 de la Ley 9643, el MUTUARIO se obliga a reemplazar periódicamente los Warrants antes del vencimiento de los 180 (ciento ochenta) días contados desde la fecha de emisión de los mismos, debiendo entregar al MUTUANTE nuevos Warrants por un monto igual o superior, en su caso, al de los Warrants originales.

**7.3.** A fin de determinar la cantidad de mercadería que el MUTUARIO deberá depositar para la emisión de los certificados de depósito correspondientes a los Warrants, se tomará en cuenta el precio de mercado de dicha mercadería, vigente al momento de dicho depósito. El mantenimiento de la garantía constituida por los Warrants, por los montos y en la forma precedentemente establecida, constituye una condición esencial

case may be).

**6.5** If in order to obtain a judicial judgment it would be necessary to change the amounts in Dollars due hereunder to another currency, the Parties agree that the exchange rate to be used shall be such which, in accordance with normal banking procedures, the LENDER (or the BORROWER) shall be able to purchase with such other currency Dollars in New York City, United States of America, on the Business Day prior to that day in which final judgment is pronounced. Likewise, if a judgment is pronounced against the BORROWER (or the LENDER) in a currency other than Dollars, the BORROWER´s payment obligation (or the LENDER´s) of any amount due under the Transaction Documents shall only be deemed paid if on the Business Day following the date in which the LENDER (or BORROWER) has received any amount judged as due hereunder in such other currency, the LENDER (or the BORROWER) shall, under normal banking procedures, in the City of New York, United States of America, purchase Dollars with such other currency. If such amount of Dollars thus purchased is less than the amount due under the Transaction Documents, the BORROWER (or LENDER) agrees, as a different obligation and independently from such judgment, to compensate the LENDER (or BORROWER) for such loss.

## SECTION SEVEN: WARRANTS

**7.1.** In addition to any other warranty, together with each Request for Disbursement, the BORROWER shall subscribe and deliver to the LENDER, as an additional warranty of payment, Warrants of milk products or its derivates – dully endorsed in favor of the LENDER – for an amount equivalent as minimum to 15% (fifteen per cent) of the correspondent Amount Due, determined in American Dollars, with exclusion of all other currency.

**7.2.** The BORROWER compels that during the term of the Master Agreement the LENDER has in its power the Warrants for an amount not inferior to the amount equivalent to 15% (fifteen per cent) of the Credit Line Due. Taking into account the maximum in force term of the warrants as established in section 26 on Section 9643, the BORROWER undertakes to periodically replace the Warrants before the expiration of 180 (one hundred and eighty) days counted from the date in which they were issued, and must deliver to the LENDER new Warrants for an amount equal or superior, in its case, to that of the original Warrants.

**7.3.** In order to determine the quantity of the merchandise that the BORROWER shall deposit for the issuance of the correspondent deposit certificates to the Warrants, it will be taken into account the market price of such merchandise, in force at the moment of such deposit.  The maintenance of the warranties constituted for the Warrants, for the amounts and in the way that was previously mentioned, constitutes an essential

para el mantenimiento del presente Contrato Marco. Consecuentemente, la falta de acuerdo –por cualquier motivo que fuere- en la calidad y/o cantidad de mercadería a ser depositada, que no fuere subsanada dentro de los 5 (cinco) días contados de la intimación que al efecto curse el MUTUANTE, producirá sin más la Mora automática del MUTUARIO sin necesidad de interpelación alguna, provocando la caducidad de todos los plazos con los efectos estipulados en la Cláusula DECIMA del presente Contrato.

7.4.    El MUTUARIO declara y garantiza la veracidad de todos los datos consignados en los Warrants, y que la mercadería indicada en los mismos no reconoce ni reconocerá gravamen ni restricción alguna. En caso de quiebra de la empresa depositaria (Warrantera) de la mercadería descripta en los Warrants, el MUTUARIO se compromete a comunicar dicha circunstancia al MUTUANTE dentro de las 48hs. de decretada la misma. . El incumplimiento de dicha comunicación provocará la Mora automática del MUTUARIO. En todos los casos, el MUTUARIO deberá responder por los daños y perjuicios que su incumplimiento pudiere ocasionar al MUTUANTE.

7.5.    En caso de Mora del MUTUARIO por cualquier causa que fuere, el MUTUANTE quedará automáticamente facultado para iniciar la ejecución de los Warrants en los términos de la Ley 9643, sin perjuicio de los otros remedios y/o acciones legales que le correspondan. En el supuesto de subasta de la mercadería descripta en los Warrants, el MUTUANTE se reserva expresamente la facultad de desinsacular martillero al efecto.

7.6.    Será responsabilidad exclusiva y excluyente del MUTUARIO la inscripción del endoso de los Warrants en los libros de la empresa depositaria de la mercadería indicada en por los mismos, como así también el pago de todos los gastos y honorarios que correspondan a dicha empresa almacenadora.

## CLÁUSULA OCTAVA:  FIADOR.

Por este acto el FIADOR se constituye en fiador solidario, codeudor solidario, liso llano y principal pagador de las obligaciones y deudas asumidas por el MUTUARIO en el presente Contrato Marco, en los mismos términos y condiciones establecidas en el presente Contrato Marco para el MUTUARIO afianzado con renuncia expresa a: (1) los beneficios de división y excusión y demás normas comerciales y civiles concordantes aplicables. (2) a exigir la previa ejecución judicial o extrajudicial del MUTUARIO o ejercer cualquier defensa que pudiera hacer valer el MUTUARIO y en general a oponer toda excepción que no sea la de pago. La responsabilidad solidaria asumida por el FIADOR se extiende, asimismo, al reajuste legal o convencional y accesorios, tales como la actualización monetaria, intereses compensatorios y moratorios, debidos por el MUTUARIO. Esta fianza permanecerá vigente hasta la total cancelación por parte del MUTUARIO de todas las deudas que mantiene el MUTUARIO afianzado y cubiertas por esta garantía. Se considerarán incumplimiento de las disposiciones de la presente el caso en que el FIADOR comience negociaciones con cualquier

condition for the maintenance of this Master Agreement. Consequently, the lack of agreement – for any reason whatsoever – in the quality and/or quantity of merchandise to be deposited, that is not heeled in within the 5 (five) days from the notification that to such effect delivers the LENDER, will produce the automatic Default of the BORROWER without the need to interpretation, causing the expiration of all the terms with the effects stipulated in Section TEN of this Master Agreement.

7.4. The BORROWER declares and warrants the truth of all the data contained in the Warrants, and that the merchandise indicated in them does not recognize nor will recognize any encumbrance nor restriction.  In case of bankruptcy of the depositing company (Warrantera) of the merchandise described in the Warrants, the BORROWER compels to communicate such circumstance to the LENDER in within the 48 hs. from its order. The un-fulfillment of such communication will cause the automatic Default of the BORROWER.  In all the cases, the BORROWER must answer for the damages and harms that it un-fulfillment could cause to the LENDER.

7.5. In case of Default of the BORROWER for any cause whatsoever, the LENDER will be automatically entitled with the faculty to initiate the execution of the Warrants in the terms of Lay 9643, without prejudice of all the other remedies and/or legal actions that correspond.  In case of auction of the merchandise described in the Warrants, the LENDER expressly reserves the faculty to designate the auctioneer to such effect.

7.6. It will be exclusive and excluding responsibility of the BORROWER the inscription of the endorsement of the Warrants in the books of the depositing company of the merchandise indicated in them, as well as the payment of all the expenses and fees that correspond to such storage company.

## SECTION EIGHT: SURETY.

The SURETY hereat becomes the joint and several surety, main payor and co-debtor of the debts and liabilities undertaken by the BORROWER in this Master Agreement, under the same terms and conditions set forth herein for the BORROWER, expressly waiving the right to: (1) the benefits of division and excussion and other applicable related commercial and civil rules, (2) demand the previous judicial or extra judicial foreclosure of the BORROWER or exercise any defense to be enforced by the BORROWER and in general to file any defense other than that of payment. The joint and several liability assumed by the SURETY comprises, additionally, the legal or conventional readjustment and accessory costs, such as currency updating, compensatory and penalty interest, due by the BORROWER. This surety shall be effective until full payment by the BORROWER of all liabilities of the BORROWER, covered by this guarantee. It will be considered as a non compliance with the rules of the present the case in which the SURETY starts negotiations with any creditor for a general payment arrangement or changes the its indebtedness schedule, becomes

acreedor con miras a un arreglo general de pagos o cambiar el cronograma de endeudamiento, o se transformen en insolventes o quebrados, o les sea decretada la quiebra o se presente en concurso preventivo de acreedores o Acuerdo Preventivo Extrajudicial, y los mismos no sean levantados dentro de los (60) días hábiles de haber sido decretados. En dicho supuesto, en un plazo de treinta (60) días hábiles, el MUTUARIO deberá designar un nuevo garante a satisfacción del MUTUANTE. Vencido el plazo de treinta (30) días sin que el MUTUANTE haya designado un nuevo garante, el MUTUANTE puede mediante notificación al FIADOR declarar las obligaciones del MUTUARIO vencidas, y exigir el pago de todos los montos debidos por el MUTUARIO como vencidos, más todos los gastos en que hubiera incurrido el MUTUANTE. El FIADOR efectúa las siguientes declaraciones y garantías, todas las cuales deberán mantenerse durante la vigencia del presente Contrato Marco: (a) Esta garantía constituye una obligación válida y vinculante para mí, ejecutable de acuerdo con sus respectivos términos; (b) No existe estatuto, regla, regulación u obligación contractual vinculante para mí que pudiera ser violada por la celebración, entrega o ejecución de esta garantía. A los efectos del presente el FIADOR constituye domicilio especial en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, United States of America y acepta como válidas las notificaciones que se practiquen por telegrama colacionado u otro medio auténtico. A todos los efectos legales de la presente fianza el FIADOR se somete irrevocablemente a la jurisdicción y ley aplicable establecidos en la Cláusula DECIMO QUINTA del presente, renunciando expresamente a cualquier otro fuero o jurisdicción.

## CLAUSULA NOVENA: MANIFESTACIONES, DECLARACIONES Y COMPROMISOS DEL MUTUARIO Y DEL FIADOR.

### 9.1.   Manifestaciones y Declaraciones del MUTUARIO.
A fin de inducir al MUTUANTE a celebrar el Contrato Marco y otorgarle la Línea de Crédito, el MUTUARIO y el FIADOR manifiestan y declaran, a la fecha del presente Contrato Marco y hasta que el mismo se extinga, lo siguiente:

**9.1.1.**   Que el MUTUARIO es una cooperativa de primer grado debidamente constituida, inscripta y existente conforme las leyes de la República Argentina, con todas las facultades necesarias para llevar a cabo sus respectivas operaciones y negocios en los que participa en la actualidad; y

**9.1.2.**   Que el MUTUARIO y el FIADOR no están obligados a solicitar autorizaciones o aprobaciones de cualquier autoridad judicial, gubernamental o de cualquier otra persona tanto de derecho público como privado (incluyendo, pero no limitado a locadores, prestamistas, acreedores, compañías aseguradoras e instituciones financieras) como resultado del presente Contrato Marco y/o de las Garantías; y

**9.1.3.**   Que el Contrato Marco y las Garantías (i) constituyen actos o negocios jurídicos que el MUTUARIO y el FIADOR están

insolvent, or bankrupt, or bankruptcy proceedings are instituted, or petitions for a composition with creditors, or an Out of Court Reorganization Plan, and the same are not withdrawn within 60 days from initiation thereof. In such event, the LENDER shall designate a new surety at satisfaction of the LENDER. At the expiration of the terms of thirty (30) days in the case that the BORROWER has not designated a new surety, the LENDER may, declare that the BORROWER's obligations are due and demand payment of all amounts due by the BORROWER as payable, plus all expenses incurred by the LENDER. The SURETY declares and warrants all the following, which will be maintaing during the term of this Master Agreement: (a) This warranty constitutes a valid and bonding obligation for me, executable in agreement with its respective terms; (b) There is not existence of statute, rule, regulation or contractual obligation that is bonding to me and that could be violated by the celebration, delivery or execution of this warranty. For purposes hereof, the SURETY establishes special domicile at  80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, United States of America, and accepts that notices served through a certified telegram or other authentic means are valid. For all legal purposes hereof, the SURETY irrevocably submits to the jurisdiction and applicable law set forth in section FIFTEEN hereof, expressly waiving any other forum or jurisdiction.

## SECTION NINE: REPRESENTATIONS, WARRANTIES AND COMMITMENTS OF THE BORROWER AND OF THE SURETY

### 9.1 Representations and Warranties of the BORROWER.
In order to persuade the LENDER to enter into the Master Agreement and grant the Credit Facility, the BORROWER and the SURETY represent and warrant the following as of the date hereof and until this Master Agreement is terminated the following:

**9.1.1** That the BORROWER is a cooperative association of first degree duly organized, registered and validly existing pursuant to the laws of the Argentine Republic, with all the necessary powers and authority to carry out the relevant operations and businesses currently developed; and

**9.1.2** That the BORROWER and the SURETY are not bound to apply for authorizations or approvals from any judicial or governmental authority or from any other public or private entity (including, without limitation, lessors, lenders, creditors, insurance companies and financial institutions) as a result from this Master Agreement and/or the Guaranties.

**9.1.3** That the Master Agreement and the Guaranties (i) are legal acts or businesses that the BORROWER and/or the SURETY are



 

legalmente autorizados y capacitados para realizar en mérito a las respectivas disposiciones legales y estatutarias que rigen su actividad, y (ii) se celebran contando con todas las aprobaciones internas necesarias del MUTUARIO, sin violación de disposición legal, estatutaria, asamblearia ni contractual alguna, no siendo necesaria ninguna autorización adicional; y

**9.1.4.** Que el MUTUARIO y/o el FIADOR y/o sus Afiliadas no se hallan en situación de incumplimiento sustancial y relevante de (i) cualesquier orden, auto, requerimiento judicial, intimación, decreto o demanda de ninguna corte, tribunal judicial o arbitral u organismo gubernamental nacional, provincial o municipal del país o del extranjero, y/o (ii) el pago de impuestos, tasas, gravámenes, deudas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero; y

**9.1.5.** Que el MUTUARIO y el FIADOR no tienen pendiente litigio, investigación o procedimiento judicial o administrativo o arbitral alguno ante ningún tribunal judicial, arbitral o autoridad administrativa nacional, provincial o municipal, del país o del extranjero, ni tampoco proceso arbitral alguno, que pudiere (i) afectar adversa y sustancialmente sus posibilidades de cumplir con sus obligaciones de pago según lo previsto en el Contrato Marco, (ii) afectar la validez, legalidad o ejecutabilidad de cualquiera de los Documentos de la Operación, y/o (iii) tener un efecto adverso substancial en los negocios, condición financiera o de otro tipo o resultado en sus operaciones; y

**9.1.6.** Que la celebración, ejecución y/o cumplimiento de los Documentos de la Operación no viola disposición alguna emanada de las Normas Aplicables y/o cualquier ley y/o decreto y/o reglamento y/o resolución aplicable al MUTUARIO ni tampoco viola ninguna orden de tribunal o autoridad judicial, arbitral o administrativo competente a que se hallare sometido el MUTUARIO y/o disposición alguna emanada de los estatutos vigentes del MUTUARIO y/o de ninguna hipoteca, prenda, instrumento de deuda, Contrato Marco u otro compromiso en que el MUTUARIO fuere parte o se encontrare obligado; y

**9.1.7.** Que no existe mejor derecho y/o gravamen y/o restricción y/o limitación y/o impedimento de cualquier naturaleza, que impida y/o prohíba y/o limite y/o de cualquier manera restrinja las facultades y derechos del MUTUARIO de suscribir y firmar la totalidad de la documentación de los Documento de la Operación, así como también de cualquier otro compromiso asumido por el MUTUARIO frente al MUTUANTE a consecuencia de cualquiera de los Documentos de la Operación; y

**9.1.8.** Que el MUTUARIO cumple con la normativa y regulación vigente que les resulta aplicable en materia ambiental, de seguridad industrial y de salud pública, y que ha obtenido todas las autorizaciones, permisos y licencias, que fueren necesarios bajo dicha normativa; y

**9.1.9.** Que ha dado y facilitado al MUTUANTE toda la información relativa o relacionada con todo otro contrato marco,

legally authorized and qualified to perform pursuant to the relevant legal and statutory provisions governing their activity; and (ii) that they are executed pursuant to all the required internal approvals of the BORROWER, without infringing any legal, statutory, stockholders' meeting or contractual provision, and that no further authorization is necessary; and

**9.1.4** That the BORROWER and/or the SURETY and/or their Affiliates have not materially and significantly defaulted on: (i) any order, ruling, mandatory injunction, demand, decree or request from any court of justice or arbitral tribunal, or any government agency, whether national, provincial or municipal, of the country or foreign, and/or (ii) the payment of taxes, rates, liens, social security debts and/or levies, whether national, provincial or municipal, both within the country or abroad; and

**9.1.5** That the BORROWER and/or the SURETY have no pending lawsuit, investigation or judicial, administrative or arbitral proceeding before any court of justice, arbitral tribunal or administrative authority, whether national, provincial or municipal, in the country or abroad; or any arbitration proceeding, that may (i) adversely and materially affect their capacity to fulfill their payment obligations under the Master Agreement; (ii) affect the validity, legality or enforceability of any of the Transaction Documents; and/or (iii) have a material adverse effect on the business, financial or any other condition, or the result of their operations; and

**9.1.6** That the execution and delivery of, and/or compliance with the Transaction Documents do not infringe any provisions under the Applicable Rules and/or any law and/or decree and/or regulation and/or resolution applicable to the BORROWER and do not infringe any order issued by any court or relevant judicial, arbitral or administrative authority the BORROWER might be subject to, and/or any provision under the current by-laws of the BORROWER and/or under any mortgage, pledge, debt instrument, master agreement or other undertaking in which the BORROWER might be a party or be bound to; and

**9.1.7** That there is no paramount title and/or lien and/or restriction and/or limitation and/or hindrance whatsoever that precludes and/or prohibits and/or limits and/or in any way restricts the powers and rights of the BORROWER to execute all the documentation of the Transaction Documents, as well as any other commitment assumed by the BORROWER to the LENDER under any of the Transaction Documents; and

**9.1.8** That they are in compliance with the rules and regulations in force applicable to them in environmental, industrial safety and public health matters, and that they have secured all authorizations, permits and licenses required under such legislation; and

**9.1.9** That they have given and provided the LENDER with all the information relating to or in connection with any other




acuerdo u operación, hecho y/o circunstancia vinculada al MUTUARIO y al FIADOR que de cualquier forma pudiere afectar adversa y sustancialmente la capacidad de cualquiera de ellos para hacer frente a sus obligaciones de pago bajo el Contrato Marco y las Garantías, y que toda la información que han proporcionado al MUTUANTE en relación con la preparación, negociación y ejecución de los Documentos de la Operación es correcta y verdadera y no contiene ninguna información errónea acerca de un hecho relevante, ni omite ningún hecho relevante que resulte necesario destacar para que los hechos consignados no resulten erróneos ni ambiguos; y

**9.1.10.** Que el balance del MUTUARIO al 30 de Junio de 2009, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivos autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2009 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

**9.1.11.** Que las Garantías otorgadas por el MUTUARIO no se encuentran sujetas a prenda, o mejor derecho alguno; y

**9.1.12.** Que el MUTUARIO ha contratado y mantiene vigentes todos los seguros necesarios conforme con los estándares en la República Argentina, y para las actividades que desarrolla, los cuales han sido contratados con aseguradoras de solvencia y reconocido prestigio a nivel nacional; y

**9.1.13** Que conforme el conocimiento actual del MUTUARIO, los Deudores Cedidos no se encuentran en situación de cesación de pagos, insolvencia, en concurso preventivo o en quiebra, ni registra con el MUTUARIO, según el caso, mora alguna en el pago de sus respectivas deudas.

**9.1.14** Que los Documentos de la Operación y las obligaciones allí contenidas son y serán en todo momento obligaciones directas y generales del MUTUARIO y tiene y tendrán en todo momento el rango más preferencial del endeudamiento del MUTUARIO.

**9.1.15.** Los Documentos de la Operación están, o cuando sean debidamente ejecutados y entregados estarán, en la forma y sustancia legal apropiada bajo el derecho que resulte aplicable a los efectos de su cumplimiento y ejecución bajo el derecho que resulte aplicable. Todas las formalidades exigidas en Argentina para la validez y el cumplimiento de los Documentos de la Operación (incluyendo cualquier notificación, registración, inscripción, pago de tasas o tributos, protocolización, o presentación ante cualquier Autoridad Gubernamental) han sido cumplidas.

**9.1.16.** Que no ha ocurrido ni ocurrirá ningún Evento de Incumplimiento como consecuencia de o en relación a, el

master agreement, contract or transaction, fact and/or circumstance relating to the BORROWER and/or the SURETY that may in any way adversely and materially affect the capacity of any of them to comply with their payment obligations hereunder and under the Guarantees, and that all the information furnished to the LENDER relating to the preparation, negotiation and execution of the Transaction Documents is true and correct and does not contain any inaccurate information regarding any relevant fact, nor does it omit any relevant fact the mention of which might be necessary to prevent the stated facts from being inaccurate or misleading; and

**9.1.10** The annual balance sheet of the BORROWER as of June 30, 2009, the relevant statements of income and financial position, annexes and further information therein contained relating to the BORROWER, copies of which the BORROWER has delivered to the LENDER duly signed by their pertinent authorities, accurately represent the financial situation and result of operations of the BORROWER as of that date, and that from June 30, 2009 – no adverse change or event that may cause an adverse change in the business, operations, prospects or financial condition of the BORROWER has occurred; and

**9.1.11** That the Guaranties granted by the BORROWER are not subject to any pledge, or paramount title; and

**9.1.12** That the BORROWER has taken out and maintain duly in force all required insurance pursuant to the standards current in the Argentine Republic, and for the activities they develop with creditworthy insurance companies of national renown; and

**9.1.13** That pursuant to the BORROWER's present knowledge, the Assigned Debtors have not suspended payments, are not insolvent, are not subject to reorganization proceedings or bankrupt, and have not defaulted on any payment of its relevant debts.

**9.1.14.** That the Transaction Documents and the obligations included therein are and will be at all times direct and general obligations of the BORROWER and have and will have at all times the highest preferential rank of the BORROWER s' debt.

**9.1.15.** The Transaction Documents are, or when duly executed and delivered will be, in proper legal form and substance under the applicable law for purposes of performance thereof, pursuant to applicable law. All formalities required in Argentina for the validity and performance of the Transaction Documents (including any notice, registration, filing, payment of fees or taxes, notarization, or submittal to any Government Authority) have been complied with.

**9.1.16** That no Event of Default has occurred or will occur as a consequence of or in connection with the performance of the



cumplimiento de las operaciones previstas en los Documentos de la Operación;

**9.1.17.** Que no ha ocurrido ni ocurrirá ningún Cambio Material Adverso respecto del MUTUARIO y/o del FIADOR que razonablemente pudiera causar un Efecto Material Adverso en su capacidad para cumplir con sus obligaciones bajo los Documentos de la Operación.

**9.1.18.** Que cumplen y realizan todas las acciones razonables para mantener el cumplimiento de todas las leyes, regulaciones y convenciones internacionales correspondientes a los aspectos ambientales, laborales, de salubridad y seguridad social que le resulten aplicables.

**9.1.19.** Que los Bienes Fideicomitidos no reconocen gravamen ni restricción alguna a la fecha;

**9.1.20.** Que el Crédito Cedido contra PDVSA ascenderá como mínimo a una suma equivalente al veinte por ciento (20%) de la Línea de Crédito.

**9.1.21.** Que el Crédito Cedido contra Fonterra ascenderá como mínimo a una suma equivalente al cincuenta por ciento (50%) de la Línea de Crédito.

**9.1.21** Que el Crédito Cedido contra Arthur Schuman ascenderá como mínimo a una suma equivalente al treinta por ciento (30%) de la Línea de Crédito.

**9.1.22.** Que en todo momento durante la vigencia del presente Contrato Marco el MUTUANTE contará con Warrants por una suma equivalente al quince por ciento (15%) de la Línea de Crédito Adeudada.

**9.2** **Compromisos y Obligaciones del MUTUARIO y del FIADOR.**
Desde la firma del presente Contrato Marco y durante todo el tiempo en que cualquier suma debida bajo el Contrato Marco se encontrare pendiente de pago, por cualquier concepto y/o causa que fuere, el MUTUARIO y el FIADOR se comprometen firme, expresa, irrevocable e incondicionalmente, a realizar o no realizar, según el caso, la totalidad de los actos y/o actividades que a continuación se especifican:

**9.2.1.** A pagar debida y puntualmente las Sumas Adeudadas, así como los gastos referidos en la Cláusula DECIMO PRIMERA, de conformidad con los términos y condiciones que se establecen en el presente Contrato Marco, y

**9.2.2.** A mantener al día el pago de sus impuestos, gravámenes, tasas, y/o cargas previsionales y/o contribuciones de carácter nacional, provincial o municipal, tanto en el país como en el extranjero, salvo para aquellos casos en que el MUTUARIO y/o el FIADOR, según el caso, los disputase por las vías legales correspondientes, de manera fundada y de buena fe, con la mayor celeridad permitida por la legislación procesal aplicable, y sobre la

transactions contemplated in the Transaction Documents;

**9.1.17.** That no Material Adverse Change has occurred or will occur as regards the BORROWER and/or the SURETY that may reasonably cause a Material Adverse Effect in their capacity to comply with their obligations under the Transaction Documents;

**9.1.18.** That the comply with and every reasonable action is being followed and taken by them in order to remain compliant with all international laws, regulations and conventions relating to environmental, labor, health and social security issues applicable thereto.

**9.1.19.** That the Trusted Assets to not recognize lien and or restriction of any kind as of the date hereof,

**9.1.20** That the Assigned Credit against PDVSA shall amount as a minimum to an amount equivalent to twenty per cent (20%) of the Credit Facility.

**9.1.21.** That the Assigned Credit against Fonterra shall amount as a minimum to an amount equivalent to fifty__ per cent (50%) of the Credit Facility.

**9.1.22.** That the Assigned Credit against Arthur Schuman shall amount as a minimum to an amount equivalent to thirty per cent (30%) of the Credit Facility.

**9.1.23.** That at all time during the validity period of this Master Agreement the LENDER shall be provided with Warrants for an amount equivalent to fifteen per cent (15%) of the Indebted Credit Facility.

**9.2 Commitments and Obligations of the BORROWER and of the SURETY.**
Following the execution hereof and to the extent any amount due hereunder remains outstanding, on any account and/or due to any reason whatsoever, the BORROWER and the SURETY firmly, expressly, irrevocably and unconditionally undertake to perform or abstain from performing, as applicable, all the acts and/or activities specified below:

**9.2.1** To pay as and when due the Sums Due, as well as the expenses of Section ELEVEN, pursuant to the terms and conditions set forth herein; and

**9.2.2** To keep all payments of taxes, liens, rates, and/or social security obligations and/or levies, whether national, provincial or municipal, both in the country or abroad, up to date, except in such cases where the BORROWER and the SURETY may, as applicable, object in good faith to such payments through the relevant legal resources for good reasons, as hastily as permitted by the applicable procedural legislation and based on their





base de su inconstitucionalidad, inaplicabilidad y/o ilegalidad, y

**9.2.3.** A (i) mantener en vigencia sus personerías jurídicas y todas las inscripciones necesarias para mantener dichas personerías; (ii) realizar todo acto razonable para mantener vigentes todos los derechos, permisos, autorizaciones, contrato marcos, seguros, poderes, prerrogativas, franquicias, inscripciones, licencias y similares, necesarios o convenientes para la conducción normal de su actividad, negocios u operaciones y el cumplimiento de sus obligaciones; (iii) mantener todos sus bienes en buen estado y condiciones de funcionamiento, y (iv) no realizar acto alguno que pudiese afectar adversamente la validez y/o eficacia del Contrato Marco y las Garantías, y

**9.2.4.** A no realizar actos que constituyan o impliquen (i) una fusión, absorción o cualquier otro acto al que, conforme a cualquier ley o norma, pudieran oponerse los acreedores del MUTUARIO, ó (ii) la participación del MUTUARIO en otras sociedades o en otros proyectos o negocios distintos de los que desarrolla actualmente, ó (iii) la reducción, distribución o reintegro del capital social del MUTUARIO a sus cooperativistas, y a conducir y hacer todo lo necesario para que se conserven, preserven, renueven y mantengan plenamente en vigencia, su existencia legal y derechos, sus licencias, concesiones, permisos, privilegios y materiales de franquicia para la conducción y manejo de sus respectivos negocios, y

**9.2.5.** A mantener plena y diligentemente informado al MUTUANTE sobre cualquier Cambio Material Adverso y/o cualquier otro hecho que pudiera causar un Efecto Material Adverso y/o de cualquier forma afectar adversa y sustancialmente la capacidad de pago del MUTUARIO de las obligaciones asumidas bajo el presente Contrato Marco y/o las Garantías, y/o (ii) pudiere afectar adversamente la validez y/o eficacia de cualquiera de las Garantías, así como las acciones tomadas para subsanar el mismo, y

**9.2.6.** A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente al MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional,  (ii) estados contables trimestrales, y (iii) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos trimestres; y la documentación referida en (iii) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE, y

**9.2.7.** A no subrogar de cualquier manera a cualquier tercero acreedor con, y a no permitir que de cualquier manera cualquier tercero acreedor se subrogue en, cualquiera de los derechos y/o acciones consagrados a favor del MUTUANTE bajo el presente Contrato Marco y las Garantías, lo que implicará, entre otras cosas,

unconstitutionality, inapplicability and/or illegality; and

**9.2.3** To (i) maintain their legal capacity in force as well as all registrations necessary to maintain the same; (ii) take any reasonable steps to maintain all the rights, permits, authorizations, agreements, insurance, powers of attorney, privileges, franchises, registrations, licenses and the like in force, as are necessary or advisable for the regular conduct of their activity, businesses or operations and the performance of their obligations; (iii) maintain all their property in good state and working conditions; and (iv) abstain from performing any act that may adversely affect the validity and/or effect of the Master Agreement and the Guaranties; and

**9.2.4** To abstain from performing any acts implying (i) a consolidation, merger, demerger or any other act  which, pursuant to any law or rule, may be opposed by the BORROWER's creditors; or (ii) the participation of the BORROWER in other companies or projects or businesses different to the ones currently performed by them, or (iii) the reduction, distribution or reimbursement of corporate capital of the BORROWER or its associates, and to conduct and make all acts necessary for the conservation, maintenance, renewal and effectiveness of their legal existence and rights, licenses, concessions, permits, privileges and franchise materials for the conduction and management of its respective businesses; and

**9.2.5** To maintain the LENDER fully and thoroughly informed of any Material Adverse Change and/or any other fact that may cause a Material Adverse Effect and/or otherwise adversely and significantly affect the payment capacity of the BORROWER of the obligations hereunder and/or under the Guaranties; and/or (ii) that may adversely affect the validity and/or effect of any of the Guaranties, as well as of the actions taken to remedy the same; and

**9.2.6** To make available to the LENDER, and further deliver forthwith - at the latter's request - the following accounting documentation corresponding to the BORROWER: (i) annual financial statements duly audited by a first-level auditing firm of international prestige; (ii) quarterly financial statements, (iii) any other information the LENDER might reasonable request at any time. The financial statements mentioned in (i) above must be submitted duly audited within one hundred and twenty (120) calendar days from the closing of the relevant fiscal year; the financial statements mentioned in (ii) shall be submitted within sixty (60) calendar days from the closing of the relevant quarters; the documentation mentioned in (iii) above must be submitted within five (5) calendar days following LENDER´s request; and

**9.2.7** Not to let in any manner whatsoever any third party creditor be subrogated to, and to preclude any third party creditor from becoming subrogated in any way to, any rights and/or actions granted to the LENDER hereunder and under the Guaranties, which will entail, inter alia, the obligation of the



la obligación del MUTUARIO de exigir la renuncia expresa de cualquier tercer pagador a la facultad de subrogarse en tales derechos y/o acciones mientras permanezca impaga cualquier suma bajo el Contrato Marco, y

**9.2.8.** A cumplir con las Normas Aplicables (incluyendo, sin limitación, toda ley, norma, reglamento, orden, directiva o resolución que le fuere aplicable en materia de protección del medio ambiente, residuos tóxicos o peligrosos, contaminación e higiene), y a mantener todas las autorizaciones, permisos o licencias que fueren necesarios bajo las Normas Aplicables, y

**9.2.9.** A cumplir en tiempo y forma con todas y cada una de las obligaciones a su cargo emergentes de los Documentos de la Operación, y

**9.2.10.** A notificar al MUTUANTE, en forma inmediata, (i) el acaecimiento de cualquier Evento de Incumplimiento, y (ii) cualquier incumplimiento en que el MUTUARIO y/o el FIADOR incurriere en relación con cualquier acuerdo o Contrato Marco del que sea parte o cualquier obligación a su cargo emergente de los mismos (hubiere o no sido declarada la caducidad y aceleración de plazos), y (iii) las acciones tomadas para subsanar los incumplimientos referidos en (i) y (ii) precedentes, y

**9.2.11.** A mantener los registros contables y demás registros en debida forma y a permitir el acceso del MUTUANTE a sus oficinas, instalaciones, libros, registros y archivos, permitiéndole la realización de auditorías contables, legales y de gestión, por sí mismo o por quien el MUTUANTE designe a tal efecto, en la medida que no interfiera sustancial y adversamente con las actividades habituales del MUTUARIO, y

**9.2.12.** A informar al MUTUANTE dentro de los 5 (cinco) Días Hábiles de producido, (i) cualquier pérdida o daño sufrido en los bienes de el MUTUARIO por montos superiores a Dólares Estadounidenses DOS MILLONES con 00/100 (US$ 2..000.000,00) en forma individual o acumulada durante cada ejercicio anual, y (ii) cualquier litigio, o reclamo en el cual el monto reclamado al MUTUARIO fuere igual o superior a Dólares Estadounidenses TRES MILLONES con 00/100 (US$ 3.000.000,00) en forma individual o acumulada durante cada ejercicio anual, y

**9.2.13.** A no reducir su capital, y

**9.2.14.** A no transferir ni de cualquier otra forma reducir, por cualquier causa o concepto, incluyendo mediante acuerdo de accionistas o acuerdo de sindicación de acciones con terceros, y a no prendar, gravar ni otorgar cualquier clase de garantía respecto de las tenencias accionarias actuales del MUTUARIO en otras sociedades.

**9.2.15.** A mantener en una situación no inferior, en cuanto a garantías y privilegios de cobro, respecto de cualquier otra obligación del MUTUARIO, todos los importes adeudados bajo el presente Contrato Marco, y

BORROWER to demand the express waiver by any third party obligor of the power to become subrogated to such rights and/or actions to the extent any sum hereunder remains outstanding; and

**9.2.8** To comply with the Applicable Rules (including, without limitation, any law, rule, regulation, order, instruction or resolution applicable to them as regards environmental protection, toxic or hazardous wastes, pollution and hygiene) and to maintain all authorizations, permits or licenses that are necessary under the Applicable Rules; and

**9.2.9** To comply in due time and manner each and every of their obligations arising from the Transaction Documents; and

**9.2.10** To forthwith immediately notify the LENDER (i) of the occurrence of any Event of Default; and (ii) of any default by the BORROWER and/or the SURETY in connection with any agreement or master agreement they might be a party to, or of any of their obligations thereunder (irrespective of whether or not the lapsing and acceleration of the terms has been declared); and (iii) of any actions taken to cure the defaults mentioned in (i) and (ii) above; and

**9.2.11** To keep the accounting records and other records in proper form and allow LENDER's access to their offices, facilities, books, records and files, allowing the performance of any accounting, legal, and management audits, by themselves or by the ones appointed by the LENDER to the extent such action does not materially and adversely interfere with the regular activities of the BORROWER, and

**9.2.12** To inform the LENDER within 5 (five) Business Days after occurrence thereof (i) of any loss or damage suffered by the BORROWER s' property in amounts higher than TWO MILLION United States Dollars and 00/100 (USD 2,000,000.00), individually or cumulatively during each fiscal year, and (ii) any action or claim where the amount claimed from the BORROWER is equal to or higher than THREE MILLION United States Dollars and 00/100 (USD 3,000,000.00) individually or cumulatively during each fiscal year, and

**9.2.13** To abstain from reducing its capital stock; and

**9.2.14** To abstain from transferring or otherwise reducing, for any cause or on any account, including by means of a shareholder s' agreement or voting trust with third parties, and from pledging, encumbering or granting, any kind of guaranty as regards the current shareholdings of the BORROWER in other companies, and

**9.2.15** To maintain all amounts due hereunder as to guaranties and privileges in collection not below any other obligation of the BORROWER;





**9.2.16.** A informar al MUTUANTE semestralmente (i) la deuda consolidada de todas las Afiliadas del MUTUARIO, abierta por cada una de dichas sociedades y por cada entidad financiera acreedora, y (ii) el volumen de ventas de cada una de las Afiliadas.

**9.2.17.** A no a adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

**9.2.18.** A cumplir con todos los requisitos y exigencias que imponga el Banco Central de la República Argentina y demás Normas Aplicables y acreditar tal cumplimiento en forma inmediata al MUTUANTE, a satisfacción de éste, incluyendo sin limitación: (i) a ingresar al mercado libre de cambios de la República Argentina todos los fondos depositados en la Cuenta del Mutuario desembolsados bajo el presente Contrato Marco, mediante el correspondiente cierre de cambio y acreditación de los Pesos Argentinos resultantes en una cuenta bancaria abierta en el sistema financiero argentino en concepto de conversión de divisas causadas en el presente Contrato Marco suscripto con un MUTUANTE del exterior y (ii) a informar al BCRA en forma periódica sobre (a) la existencia de los Documentos de la Operación y (b) su saldo de deuda con el exterior de conformidad con las Comunicaciones "A" 3602 y 3609 del BCRA y/o sus complementarias y modificatorias.

**9.2.19.** A satisfacer toda la información que el MUTUANTE pudiera requerirle relacionada con los Créditos Cedidos, y a cumplir con todas aquellas obligaciones que pudieran corresponderle para que los Créditos Cedidos sean abonados al MUTUANTE, obligándose a realizar todas las gestiones que resulten necesarias a efectos de que el MUTUANTE obtenga el reconocimiento pleno de los Créditos Cedidos, asumiendo el MUTUARIO todos los gastos y costos que resulten en consecuencia o inherentes a dicha cesión, incluyendo razonables gastos por honorarios o costos judiciales en que deba incurrir eventualmente el MUTUANTE para obtener el cobro de los Crédito Cedidos;

**9.2.20.** A realizar sus mejores esfuerzos para causar que los Deudores Cedidos depositen en la Cuenta del Mutuante en tiempo y forma todos los montos correspondientes a los Créditos Cedidos;

**9.2.21.** A reemplazar, a entera satisfacción del MUTUANTE, dentro de un plazo de cinco días corridos de requerido, el respectivo Pagaré por otro instrumento idóneo para otorgar a los mismos el acceso a la vía ejecutiva en caso que, como consecuencia de un cambio en la legislación, los mencionados instrumentos perdieran su eficacia como tales; y

**9.2.22.** A remitir al MUTUANTE copia de todo informe, documento, reporte, orden de compra, factura, y/o pronóstico de ventas que remita a cada Deudor Cedido y/o que reciba de cada Deudor Cedido.

**9.2.16** To inform the LENDER on a semiannual basis (i) the consolidated debt of the BORROWER's Affiliates, by each of the companies and per each of the financial entities as creditors, and (ii) the sales volume of each of the Affiliates,

**9.2.17** To abstain from making any decision that may affect the business and/or goodwill of the BORROWER;

**9.2.18** To comply with all the requirements and demands imposed by Banco Central de la República Argentina and other Applicable Rules, and evidence such compliance to the LENDER, to the latter's satisfaction, including without any restriction whatsoever: (i) to enter in the exchange market of the Republic of Argentina all the funds deposited in the BORROWER's Account disbursed hereunder, through the corresponding exchange closing and crediting of the resulting Pesos in a bank account opened in the Argentine financial system as conversion of currency caused under this Master Agreement executed with a foreign lender, and (ii) to periodically inform Banco Central de la República de Argentina about: (a) the existence of the Transactions Documents and (b) the balance of its foreign debt according to Comunicaciones "A". 3602 and 3609 of the Banco Central de la República Argentina and/or its complementary rules and amendments.

**9.2.19** To provide all the information the LENDER may request from them relating to the Assigned Credits, and to comply with every obligation applicable to them for the Assigned Credits to be paid to the LENDER, binding themselves to follow any necessary steps for the LENDER to achieve full recognition of the Assigned Credits; the BORROWER will bear all the expenses and costs resulting from or inherent in said assignments, including the reasonable attorney's fees or court costs the LENDER might eventually incur to collect the Assigned Credits;

**9.2.20** To make their best efforts to cause the Assigned Debtors to deposit in the LENDER's Account as and when due all the amounts corresponding to the Assigned Credits;

**9.2.21** To replace, to the LENDER's full satisfaction, within a term of five calendar days following request therefore, the relevant Promissory Notes with another eligible instruments allowing for the enforced collection proceeding if, due to any change in the legislation, the aforementioned instruments lose their effect as such; and

**9.2.22** To send to the LENDER a copy of all reports, documents, purchase orders, invoices and/or sale forecasts that were send to each Assigned Debtor and/or were received from each Assigned Debtor.



## CLÁUSULA DECIMA:   MORA.

10.1    La Mora del MUTUARIO en el cumplimiento de las obligaciones de pago en tiempo y forma de cualquier Suma Adeudada se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Ocasionada la Mora, se producirá la caducidad de todos los plazos y el MUTUANTE tendrá derecho a considerar la totalidad de la Línea de Crédito Adeudada como una deuda de plazo vencido y exigir y demandar judicialmente el pago íntegro de la Línea de Crédito Adeudada, los intereses devengados y demás accesorios. Durante el tiempo que dure la Mora,  el MUTUANTE tendrá derecho a percibir intereses compensatorios acumulativos pactados a una tasa de interés equivalente a la tasa implícita de cada Solicitud de fondos con más un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios..

10.2    También se considerará la mora del MUTUARIO, si transcurridos quince (15) días contados a partir de que el MUTUANTE los haya intimado a subsanar los siguientes Eventos de Incumplimiento, los mismos no hubieran sido subsanados, en cuyo caso el MUTUANTE tendrá la facultad de considerar la Línea de Crédito Adeudada como de plazo vencido y solicitar al MUTUARIO el inmediato pago de todas las Sumas Adeudadas en los siguientes Eventos de Incumplimiento:

(a)    si un tercero pidiere la quiebra del MUTUARIO, del FIADOR, del Deudor Cedido y/o y no fuera rechazada dicha solicitud por el tribunal interviniente en la primera oportunidad procesal correspondiente;

(b)    si el MUTUARIO, el FIADOR y/o cada Deudor Cedido pidiesen su propia quiebra, promoviese su concurso de acreedores o iniciase los procedimientos tendientes a lograr un Acuerdo Preventivo Extrajudicial o una reestructuración de sus pasivos;

(c)    si el MUTUARIO y/o el FIADOR incurrieren en cesación de pagos, aún sin efectuarse los trámites antedichos;

(d)    Si se trabare embargo o se dictare cualquier otra medida cautelar sobre cualquiera de los bienes, activos o derechos del MUTUARIO y/o sus, o se decretare la inhibición general de bienes de cualquiera de el MUTUARIO, por un monto en exceso de Dólares Estadounidenses TRES MILLONES (US$ 3.000.000,00) o su equivalente en Pesos, sea en forma individual o conjunta durante toda la vigencia del Contrato Marco, y dichos embargos y/o medidas cautelares no fuesen levantados, por cualquier causa que fuere, dentro de los sesenta (60) días hábiles judiciales de solicitado el levantamiento del embargo y/o la medida cautelar, solicitud que deberá ser efectuada en la primera oportunidad procesal posible, o

## SECTION TEN: DEFAULT

10.1 The BORROWER's default to comply with the obligations agreed upon in this Master Agreement - including without limitation, payment in due time and manner of any Sum Due - shall occur automatically by law and without any judicial order. Upon the Default, the lapsing of all terms shall occur and the LENDER shall be entitled to consider the aggregate amount of the Indebted Credit Facility as past due debt and to request and legally demand full payment of the Indebted Credit Facility, interest accrued and other charges. During the time of the Default the LENDER shall be entitled to receive compensatory interest agreed equivalent to the interest rate implicit in each funds request, plus and interest for default equivalent to 50% (fifty per cent) of such interest rate.

10.2    The LENDER shall also be entitled to consider the automatic Default of the BORROWER, if after fifteen (15) calendar days as of the date in which the LENDER request the mitigation of the Event of Default, the same were not resolved, in which event the LENDER shall be entitled to consider the Indebted Credit Facility as past due, and request from the BORROWER the prompt payment of all the Sums Due, being the Events of Default the following:

(a)    if a third party requests the BORROWER, the SURETY, and/or the Assigned Debtors to be declared bankrupt and such request is not rejected by the court intervening in the pertinent first procedural step;

(b)    if the BORROWER, the SURETY, and/or the Assigned Debtor file for their own bankruptcy proceedings, file for their own reorganization, or initiate procedures for an out-of-court reorganization plan or any debt restructuring;

(c)    if the BORROWER, the SURETY incur suspension of payments, without such steps being taken;

(d)    in the event any attachment or any provisional remedy were granted over the property, assets or rights of the BORROWER, or a legal disqualification from disposing of any of the BORROWERs' property were ordered in an amount exceeding THREE Million United States Dollars and 00/100 (USD 3,000,000.00), or its equivalent in Pesos, whether individually or jointly throughout the effect of the Master Agreement, and such attachments and/or provisional remedies were not released or cancelled due to any reason whatsoever within sixty (60) judicial days following the request to release the attachment and/or cancel the provisional remedy, which request must be made at the first procedural opportunity possible; or

(e) si en cualquier momento durante la vigencia del presente Contrato Marco se comprobare la falta de veracidad, parcial o total, por parte del MUTUARIO, en las declaraciones contenidas en la Cláusula NOVENA del presente y/o el incumplimiento de los compromisos asumidos en dicha Cláusula y/o la falta de veracidad en cualquiera de las aplicaciones del presente Contrato Marco;

(e) if at any time during the term hereof the lack of veracity, whether partial or total, by the BORROWER is proven in the statements included in Section NINE hereof and/or the failure to comply with the undertakings assumed in such Section and/or the lack of veracity in any of the applications of this Master Agreement;

(f) si se produjere cualquier alteración que, a criterio del MUTUANTE, ocasione un cambio fundamental en las condiciones básicas que se han tenido en cuenta para el presente Contrato Marco;

(f) if there were any change that in the LENDER's opinion, would cause a material change in the basic conditions which have been considered for this Master Agreement.

(g) si el MUTUARIO y/o el FIADOR modificasen de cualquier forma su composición accionaria;

(g) if in any manner whatsoever the BORROWER and/or the SURETY's shareholdings changes,

(h) si el MUTUARIO y/o el FIADOR incumpliere cualquiera de las obligaciones a su cargo establecidas en el presente Contrato Marco y/o en los Documentos de la Operación;

(h) if the BORROWER and/or the SURETY fails to comply with any of their obligations set forth herein and/or in the Transaction Documents.

(i) si el MUTUARIO incumpliere con cualquiera de sus obligaciones contractuales con cada Deudor Cedido;

(i) if the BORROWER fails to comply with any of their contractual obligations with the Assigned Debtors,

(j) si –con prescindencia de que hubiese o no incumplimiento por parte de el MUTUARIO en el pago de las Sumas Adeudadas- el MUTUARIO y/o cada Deudor Cedido terminan el contrato que causa los Créditos Cedidos ;

(j) if – irrespective of the BORROWER' compliance or noncompliance with the payment of the Sums Due –, the BORROWER and/or the Assigned Debtor terminate the agreements originating the Assigned Credits;

(k) si por cualquier causa que fuere las sumas adeudadas en virtud del presente Contrato Marco fueren abonadas en una moneda distinta del Dólar;

(k) if for any reason whatsoever the Sums Due hereunder are paid in other currency than the Dollar.

(l) Si se dictaren una o más sentencias judiciales o laudos arbitrales firmes en contra del MUTUARIO o se tomaran medidas para la ejecución de cualquier hipoteca, embargo u otro gravamen sobre los bienes de el MUTUARIO que, a criterio del MUTUANTE, pudieran (i) afectar adversa y sustancialmente la capacidad de el MUTUARIO para hacer frente al pago de sus obligaciones bajo el Contrato Marco, ó (ii) afectar adversa y sustancialmente cualquiera de las Garantías;

(l) if one or more final judicial judgments or arbitration awards were issued against the BORROWER or measures were adopted to foreclose any mortgage, attachment or other lien over the property of the BORROWER which, at LENDER's criterion, may (i) adversely and materially affect the capacity of the BORROWER to afford payment of their obligations hereunder; or (ii) adversely and materially affect any of the Guaranties;

(m) Si ocurriere un Cambio Material Adverso y/o un Efecto Material Adverso

(m) if there occurs a Material Adverse Change and/or a Material Adverse Effect.

(n) si el MUTUARIO incumpliere cualquiera de sus obligaciones establecidas en el Fideicomiso y/o realizare cualquier acto que afecte negativamente o implique una disminución en el valor de los Bienes Fideicomitidos;

(n) If the BORROWER does not comply with any of the obligations set forth in the Trust and/or perform any act that have a negative effect or implies a reduction in the value of the Trust Assets.

10.3 El MUTUARIO asume el cumplimiento de todas y cada una de las obligaciones bajo los Documentos de la Operación, por lo cual en caso de incurrir en un Evento de Incumplimiento, se

10.3 The BORROWER binds itself to the performance of each and every one of the obligations under the Transaction Documents, and, therefore, the occurrence of an Event of Default by it will

producirá la Mora del MUTUARIO. Producida la Mora del MUTUARIO, el MUTUANTE podrá proceder sin más a la ejecución de las Garantías (entendiéndose que en el caso del Fideicomiso podrá instruir al Fiduciario a tal efecto) e imputar la totalidad de los Créditos Cedidos al pago de la Línea de Crédito Adeudada.

give rise to BORROWER 's Default. Upon the BORROWER's Default, the LENDER may forthwith proceed to enforce the Guarantees (being understood that in the case of the Trust it may instruct the trustee to proceed to that end) and allocate all the Assigned Credits to the payment of the Indebted Credit Facility.

**10.4** En adición a lo dispuesto en la Sección 10.3 precedente, la Mora del MUTUARIO por el incumplimiento de cualquiera de las obligaciones pactadas en el presente producirá la caducidad de todos los plazos y la mora automática en todos los contratos suscriptos entre el MUTUARIO y el MUTUANTE. Del mismo modo, la mora en cualquiera de tales contratos provocará la Mora automática del presente Contrato Marco -en los términos establecidos en la Sección 10.1 precedente- y de cualquier otra obligación contractual entre el MUTUARIO y el MUTUANTE. En tal sentido, producida la Mora del MUTUARIO, ya sea por falta de pago de las Sumas Adeudadas por parte del MUTUARIO o por el acaecimiento de cualquiera de los Eventos de Incumplimiento detallados con anterioridad, el MUTUANTE a su exclusivo criterio, podrá proceder sin más a la ejecución de las Garantías y/o de otras garantías otorgadas en otros contratos suscriptos entre el MUTUARIO y el MUTUANTE. Asimismo, en tal supuesto el MUTUANTE quedará facultado a aplicar a la cancelación de las Sumas Adeudadas bajo este Contrato Marco los fondos del MUTUARIO depositados a ese momento -o los que se depositaren en el futuro- en la Cuenta del Mutuante por cualquier causa y/o relación contractual entre el MUTUARIO y el MUTUANTE.

**10.4** In addition to the provisions set forth in 10.3 above, the BORROWER 's Default due to the non-fulfillment of any of the obligations agreed herein shall give place to the lapsing of all terms and the automatic default of all the agreements executed between the BORROWER and the LENDER. Likewise, the default in any of such agreements shall give place to the automatic Default hereof – as per the terms set forth in 10.1 above – and of any other contractual obligation between the BORROWER and the LENDER. In such sense, upon the BORROWER 's, either due to the lack of payment by the Assigned Debtors or due to the occurrence of any of the Events of Default detailed hereinabove, the LENDER, at its own discretion, shall proceed to the execution of the Guarantees and/or other guaranties granted in other agreements executed between the BORROWER and the LENDER. Likewise, in such event, the LENDER shall be entitled to apply to the payment of the Sums Due, the BORROWER's funds deposited at such time – or those to be deposited in the future – in the LENDER's Account for any reason and/or contractual relationship between the LENDER and the BORROWER.

## CLÁUSULA DECIMO PRIMERA: GASTOS.

## SECTION ELEVEN: EXPENSES.

**11.1** Toda comisión, aranceles bancarios (incluyendo, sin limitación, los aranceles y comisiones bancarias derivadas de los depósitos y transferencias efectuados desde y hacia la Cuenta del Mutuante y/o Cuenta del Mutuario), tributos y/o gastos que las operaciones derivadas directa y/o indirectamente de este Contrato Marco pudieren generar, serán a cargo del MUTUARIO. El MUTUARIO se compromete a abonar al MUTUANTE en forma inmediata y a su solo requerimiento todas las comisiones y/o gastos a su cargo, circunstancia que deberá hacerse efectiva en un plazo no mayor a 48 horas de recibido tal requerimiento, el cual deberá ser debidamente documentado.

**11.1** All commissions, bank fees (including, without any restriction whatsoever, the bank fees and commissions resulting from the deposits and transfers made from and to LENDER's Account and/or BORROWER's Account) taxes and/or charges resulting from the transactions directly and/or indirectly derived from this Master Agreement, shall be borne by the BORROWER. The BORROWER undertakes to pay all commissions and/or expenses to be borne by it to the LENDER promptly and upon the latter's sole request and not later than 48 hours following such request, which shall be duly evidenced.

**11.2** Todos los pagos bajo el Contrato Marco deberán ser hechos por el MUTUARIO libres de deducciones, retenciones u otros cargos de cualquier naturaleza. En caso que el MUTUARIO sea requerido por ley o por cualquier autoridad competente a realizar cualquier deducción, retención o cargo, el MUTUARIO deberá realizar tantos pagos adicionales al MUTUANTE como sean necesarios para que, después de realizadas tales deducciones, retenciones o cargos, el MUTUANTE reciba un monto igual al monto debido al mismo bajo los términos de este Contrato Marco como si tales deducciones, retenciones o cargos no hubiesen sido realizados. El MUTUARIO deberá pagar en legal tiempo y forma a las autoridades impositivas que corresponda, el monto retenido, y

**11.2** All payments hereunder shall be made by the BORROWER free of any deduction, withholding and other charges of any nature whatsoever. If the BORROWER is requested by law or any other competent authority to make any deduction, withholding or charge, the BORROWER shall make such additional payments to the LENDER as necessary so that, after such deductions, withholdings or charges, the LENDER receives an amount equal to the amount due to it hereunder as if such deductions, withholdings or charges have not been made. The BORROWER shall pay in due time and manner to the pertinent tax authority, the amount withheld, and shall obtain and give to the LENDER a certified copy of the corresponding receipts in



deberán obtener y suministrar al MUTUANTE copia certificada de los comprobantes que correspondan respecto de dicho pago

**11.3** El MUTUARIO se obliga a cumplir en tiempo y forma –a su exclusivo costo y cargo- con la liquidación de divisas y el pago de todos los tributos correspondientes derivados directa e indirectamente del presente Contrato Marco y con las demás reglamentaciones de conformidad con la normativa dictada al respecto por el Banco Central de la República Argentina, desligando al MUTUANTE de cualquier obligación al respecto.

**11.4** El MUTUARIO se compromete a mantener indemne, defender y evitar que perjuicio alguno se ocasione al MUTUANTE, sus socios y empleados con relación a todas las obligaciones emergentes de las operaciones relacionadas con los Créditos Cedidos, ingreso y liquidación de divisas y toda otra obligación impositiva, cambiaria, bancaria, aduanera o de cualquier otra índole que de ella pudiese surgir.

**CLÁUSULA DÉCIMO SEGUNDA:        CESIÓN        DEL CONTRATO MARCO.**
Las Partes no podrán ceder o transferir el presente Contrato Marco ni parcial ni totalmente, ni transferir los derechos, créditos, beneficios u obligaciones derivados del mismo, bajo forma jurídica alguna a cualquier persona (sea ésta física y/o jurídica), sin la previa y expresa autorización por escrito de la otra Parte. A los fines de la presente Cláusula, se entiende que queda comprendida la imposibilidad por parte del MUTUARIO de ceder total o parcialmente sus derechos, créditos, beneficios u obligaciones derivados de los Documentos de la Operación. El incumplimiento de la presente Cláusula por parte del MUTUARIO será considerado un Evento de Incumplimiento, por lo que producirá automáticamente la Mora del MUTUARIO en los términos previstos en la Cláusula DECIMA del presente Contrato Marco. En tal sentido, MUTUANTE podrá exigir los montos establecidos en el apartado 10.1 de la Cláusula DECIMA del presente Contrato Marco, con más los daños y perjuicios que pudieren corresponder por dicho incumplimiento.

**CLÁUSULA DÉCIMO TERCERA: VIGENCIA. INDEMNIDAD**
**13.1** El presente Contrato Marco así como todas las Garantías mantendrán su vigencia hasta que se cumplan en su totalidad los derechos y/u obligaciones de las Partes bajo el presente Contrato Marco. Asimismo, aún después de cumplidas con las obligaciones emergentes del Contrato Marco, las Cláusulas DECIMO PRIMERA, DECIMO TERCERA y DECIMO QUINTA sobrevivirán y se mantendrán plenamente vigentes hasta la expiración de las prescripciones que resulten aplicables según el caso.

**13.2** El MUTUARIO mantendrá indemne al MUTUANTE y a sus Afiliadas, directores, gerentes, funcionarios, empleados y asesores externos (la "Parte Indemnizada") de cualquier, pérdida, reclamo, demanda, responsabilidad y todos sus gastos relacionados (incluyendo honorarios razonables de abogados y asesores), incurridos por la Parte Indemnizada relacionado con, relativo a, derivado de y como consecuencia de: (i) la ejecución o entrega del Contrato Marco y las Garantías y del cumplimiento

connection with such payment.

**11.3** The BORROWER undertakes to comply in due time and manner, on its own account, with settlement of foreign currency and payment of all pertinent taxes directly or indirectly resulting from this Master Agreement and with other rules in accordance with the rules set forth by Banco Central de la República Argentina, releasing the LENDER from any obligation therefore.

**11.4** The BORROWER undertakes to hold the LENDER harmless, and to defend and prevent any damage to the LENDER, its shareholders and employees in connection with all obligations resulting from the transactions relating to the Assigned Credits, entry and liquidation of foreign exchange and any other taxable, exchange, banking, customs liability or of any other kind whatsoever resulting therefrom.

**SECTION TWELVE: MASTER AGREEMENT ASSIGNMENT.**

The Parties shall not assign nor transfer either partially or totally this Master Agreement, neither the rights, credits, benefits and/or obligations, arising from the Master Agreement, to any person or company by any of the means provided by law, without prior written approval from the other Party. For the purpose of this Section, it is understood that BORROWER shall not assign all or part of its rights, credits, benefits and/or obligations arising from the Transaction Documents. Default by the BORROWER in the fulfillment of the obligations agreed in the present section shall be considered an Event of Default and thus BORROWER's Default shall automatically occur as provided in Section TEN of this Master Agreement. In consequence, the LENDER shall require any sums due under the provisions stated in Section 10.1 of this Master Agreement and for any damages arising from such failure.

**SECTION THIRTEEN: EFFECT – INDEMNITY.**
**13.1** This Master Agreement as well as all the Guaranties resulting herefrom will remain in full force and effect until performance in full of the rights and/or obligations of the Parties hereunder. Furthermore, even after the obligations arising from the Master Agreement have been fulfilled, Sections ELEVEN, THIRTEEN and FIFTEEN will survive and will remain in full force and effect until the expiration of the limitations that might be applicable.

**13.2** The BORROWER will hold the LENDER and its Affiliates, directors, managers, officers, employees and independent advisors (the "Indemnitee") harmless against any loss, claim, complaint, liability and every expense relating thereto (including reasonable attorney's and advisor's fees) incurred by the Indemnitee in connection with, relating to, arising from and as a consequence of: (i) the execution or delivery of the Master Agreement and the Guaranties and the performance of the

de las obligaciones previstas en ellos, o de la celebración de las operaciones previstos en ellos; (ii) el Crédito Cedido adeudado con más sus intereses o el uso de los fondos desembolsados o (iii) cualquier demanda, litigio, investigación, sumario, o procedimiento, real o potencial, relacionado con cualquiera de las circunstancias previstas en esta Cláusula 13.2, fundada en razones contractuales, extra-contractuales o previstas en el derecho que resulte aplicable; en la medida que la indemnidad de tales pérdidas, demandas, responsabilidades o gastos no resulten de la culpa grave o dolo de la Parte Indemnizada.

## CLÁUSULA DÉCIMO CUARTA: AUTORIZACION

El MUTUARIO autoriza expresamente al MUTUANTE a inscribir y registrar el presente Contrato Marco y todos los documentos emanados en virtud del mismo en todos los Registros que el MUTUANTE considere pertinentes a efectos de afianzar las obligaciones del MUTUARIO.

En tal sentido, el MUTUARIO autoriza al MUTUANTE a presentar todo tipo de 'financing statements' en las oficinas de registro de cualquier jurisdicción de los Estados Unidos de América, de acuerdo a lo previsto en la Sección 5 del Artículo 9 del Uniform Commercial Code, incluyendo a los bienes del MUTUARIO entregados como garantía del cumplimiento de las obligaciones asumidas en el presente Contrato Marco.

## CLÁUSULA DÉCIMO QUINTA: JURISDICCIÓN Y LEY APLICABLE.

**15.1**  El presente Contrato Marco es gobernado por y debe ser interpretado de acuerdo con la legislación del Estado de Nueva York, Estados Unidos de América.

**15.2**  El MUTUARIO irrevocablemente se somete a la jurisdicción no exclusiva de los tribunales de los Estados Unidos de América sitos en el Distrito Sur de New York para cualquier acción, juicio o procedimiento que pueda ser iniciado por el MUTUANTE en relación con el presente Contrato Marco. La sentencia que se dicte contra el MUTUARIO en cualquiera de dichos juicios, acciones o procedimientos será considerada definitiva y podrá ser ejecutada en cualquier otra jurisdicción.

**15.3**  Nada de lo dispuesto precedentemente en el presente Contrato Marco afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada, incluyendo la facultad del MUTUANTE de iniciar la ejecución judicial y/o extrajudicial de los Pagarés y/o de los Warrants y/o del Fideicomiso en la República Argentina.

**15.4**  El MUTUARIO por el presente designa y autoriza en forma irrevocable a Sancor Dairy Corporation, con domicilio en 80 SW 8th Street , Suite 2000 - Miami, FL 33130-3003, NY, USA, como su agente autorizado al solo efecto de recibir, en su nombre y representación, correspondencia y/o notificaciones dirigidas al MUTUARIO en cualquier acción, juicio o procedimiento que el MUTUANTE pudiera iniciar en el Estado

obligations thereunder, or the performance of the transactions contemplated therein; (ii) the Assigned Credits due plus any interest thereon or the use of the disbursed funds; or (iii) any actual complaint, lawsuit, preliminary investigation proceeding or procedure, current or potential, relating to any of the circumstances contemplated in this Section 13.2, based on contractual or extra-contractual reasons, or as provided in the applicable law; to the extent the indemnity against such losses, complaints, liabilities or expenses is not due to the gross negligence or willful misconduct of the Indemnitee.

## SECTION FOURTEEN: AUTHORIZATION

The BORROWER expressly authorizes the LENDER to register this Master Agreement and all documents thereunder in all Registries deemed relevant by the LENDER in order to secure the BORROWER´s obligations.

Therefore, the BORROWER authorizes the LENDER to submit any kind of financing statements in the registry offices of any jurisdiction of the United States of America, as per the provisions set forth in Section 5 Article 9 of the Uniform Commercial Code, including all the BORROWER´s goods delivered as security for the compliance with the obligations undertaken hereunder.

## SECTION FIFTEEN: JURISDICTION AND APPLICABLE LAW

**15.1** This Master Agreement is governed by and must be construed in accordance with the laws of the State of New York, United States of America.

**15.2** The BORROWER irrevocably accepts the non-exclusive jurisdiction of the United States Courts located at the South District of New York for any claim, trial or proceeding that might be initiated by the LENDER, and in connection with this Master Agreement. The ruling issued against the BORROWER at such trials, claims or proceeding, shall be considered final and may be executed in any other jurisdiction.

**15.3** Nothing of the aforesaid herein shall affect the LENDER's right to bring legal actions or to otherwise sue the BORROWER in any other jurisdiction deemed appropriate by the LENDER, including the LENDER's right to initiate the judicial and/or extrajudicial execution of the Promissory Notes and/or Warrants and/or the Trust in the Argentine Republic.

**15.4** The BORROWER hereby irrevocably appoints and authorized Sancor Dairy Corporation, with domicile at 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA, as its authorized agent for the sole purpose of receiving, in its name and stead, letters and/or notices addressed to the BORROWER in any action, lawsuit or proceedings filed by the LENDER in the estate of New York, being the BORROWER obliged to inform the



de New York, debiendo asimismo el MUTUARIO informar al MUTUANTE sobre la identidad y domicilio de cualquier nuevo agente que designe a tales efectos.

**15.5** Si por cualquier motivo su agente autorizado a los efectos de recibir notificaciones en 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003, NY, USA no estuviere presente, el MUTUARIO acepta y consiente que las notificaciones dispuestas en cualquier acción, juicio o procedimiento le sean efectuadas por correo registrado de los Estados Unidos de América, en el domicilio del MUTUARIO indicado en la Sección 15.8 de la presente Cláusula.

**15.6** Las notificaciones efectuadas de la manera establecida en la Sección 15.4 de la presente Cláusula serán consideradas personales, válidas, recibidas y obligatorias para el MUTUARIO.

**15.7** El MUTUARIO irrevocablemente renuncia, en la máxima medida permitida por las leyes, a oponer cualquier objeción que pueda tener ahora o en el futuro contra la jurisdicción de cualquiera de los tribunales mencionados en esta Cláusula que intervenga en cualquier juicio, acción o procedimiento iniciado por el MUTUANTE; y en especial, el MUTUARIO renuncia a oponer cualquier defensa o alegación de incompetencia, o 'inconvenient forum' respecto del tribunal que intervenga en tal acción, juicio o procedimiento. Asimismo el MUTUARIO renuncia expresamente a su derecho a recusar sin expresión de causa al Tribunal unipersonal o colegiado que interviniera en la contienda. El MUTUARIO sólo podrá oponer excepción de pago total y/o parcial comprobado por escrito, en documento emanado del MUTUANTE que haga referencia directa al Contrato Marco en ejecución o a la obligación afianzada, renunciando expresamente a las otras defensas de cualquier índole

**15.8** Cualquiera de las notificaciones precedentemente aludidas que deban ser efectuadas referidas al presente Contrato Marco deberán ser remitidas a los domicilios indicados a continuación:
MUTUARIO:    1) 80 SW 8th Street, Suite 2000 - Miami, FL 33130-3003 - USA
2) Tacuarí 202 - 3° Piso - Capital Federal, República Argentina
MUTUANTE:    Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE    Amsterdam,    The Netherlands

## CLÁUSULA DECIMO SEXTA:    FIRMAS Y RECEPCION DE INSTRUMENTOS.

Se firman 3 (tres) juegos de ejemplares iguales, de un mismo tenor y a un solo efecto, quedando 1 (un) juego en poder del MUTUANTE, 1 (un) juego en poder del MUTUARIO y 1 (un) juego en poder del FIADOR.

LENDER as of the identity and address of any new agent appointed to that end.

**15.5** If, for any reason, its authorized agent to receive notices at 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA, fails to be present, the BORROWER agrees and consents to the notices to be served in any action, lawsuit or proceedings being served on it by US registered mail at the BORROWER's domicile stated in 15.8 hereof.

**15.6** Notices served as stated in 15.4 shall be considered personal, valid, received and mandatory for the BORROWER.

**15.7** The BORROWER irrevocably waives, to the maximum extent permitted by the laws, the right to file an objection now or in the future against the jurisdiction of any of the courts mentioned in this Section hearing in any lawsuit, action or proceedings filed by the LENDER, and, especially, the BORROWER waives the right to file any defense or to allege lack of jurisdiction, or inconvenient forum regarding the court hearing in such action, lawsuit or proceedings. The BORROWER also expressly waives its right to challenge the one-judge or more judges of the court hearing the case. The BORROWER may only file a defense for full and/or partial payment evidenced in writing, on a document sent by the LENDER directly related to the Master Agreement being executed or the guaranteed obligation, expressly waiving any other defenses of any kind whatsoever.

**15.8** Any of the aforementioned notices to be made in respect of this Master Agreement shall be sent to the domiciles stated below:
BORROWER:
1) 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, NY, USA.
2) Tacuarí 202 – 3rd Floor – City of Buenos Aires, Argentine Republic
LENDER:
Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands.

## SECTION SIXTEEN: SIGNATURES AND RECEIPT OF DOCUMENTS.

The parties hereto sign 3 (three) equal counterparts of the same tenor and to one sole purpose, 1 (one) counterpart for the LENDER, and 1 (one) counterpart for the BORROWER, and one counterpart for the SURETY.



**CLÁUSULA DECIMO SEPTIMA: LUGAR Y FECHA.**

Suscripto por el MUTUARIO  y el FIADOR en la Ciudad de Buenos Aires, República Argentina y por el MUTUANTE en Amsterdam, a los 21 días del mes de Diciembre de 2009.

**SECTION SEVENTEEN: PLACE AND DATE.**

Executed by the BORROWER and the SURETY in the City of Buenos Aires, Argentine Republic, and by the LENDER in Amsterdam, on December 21, 2009.

By: SANCOR COOPERATIVAS UNIDAS LTDA.
Name: Mario Magdalena
Capacity: Attorney-in-fact

By: SANCOR DO BRASIL Productos Alimenticios Ltda.
Name: Mario Magdalena – Gabriel Martinuzzi
Capacity: Attorney-in-fact

By: IIG TOF B.V.
Name: J. Heumos ly Huymans.
Capacity:

Firma/s certificada/s en Foja
N° E 00 / 3 2 2 8 6 3
Bs. As. 21 / 12 / 09

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



**ANEXO**                                                              F 001322863

1  Buenos Aires, 21 de  Diciembre  de 2009 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  firma/s                          que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 24                  del LIBRO

6  número 128                  , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Gabriel Gustavo MARTINUZZI, DNI 18.264.987, quienes justifican sus i-

10 dentidades de acuerdo al inciso a del articulo 1002 del Código Civil y ac-

11 túan: el señor Magdalena en su carácter de apoderado de la sociedad

12 "SANCOR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sun-

13 chales, Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro

14 Nacional de Cooperativas, de la Provincia de Santa Fe, Departamento

15 Castellanos, conforme lo acredita con el poder de fecha 15 de diciembre

16 de 2009, pasado al folio 1400 del Registro 640 de la ciudad de Suncha-

17 les, Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimis-

18 mo actúan: el señor Magdalena en su carácter de Apoderado Gerencia

19 Financiera y el señor Martinuzzi en su carácter de Administrador de la

20 sociedad "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que a-

21 creditan con el Contrato Social de fecha 4 de agosto de 2008 debidamen-

22 te Legalizado y Apostillado, la documentación relacionada tengo a la vista

23 y les confieren facultades suficientes para suscribir el documento adjunto,

24 doy fe.- El documento se encuentra parcialmente escrito en idioma ex-

25 tranjero.-

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

ARANA (h)
BANO
4370

## PRIMERA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
## PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominadas las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Primera Enmienda.

(b) Que sobre la base del Contrato Marco, es intención del MUTUARIO requerir al MUTUANTE una línea de crédito tipo 'revolving' a fin de poder requerirle –en los términos y condiciones establecidos en el Contrato Marco- los desembolsos que estime conveniente de acuerdo a sus necesidades hasta que la Línea de Crédito Adeudada alcance el monto máximo de la Línea de Crédito, de modo que la Línea de Crédito en todo momento resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(c) Que el mecanismo antes descripto permitiría al MUTUARIO requerir periódicamente el flujo de fondos requeridos para financiar sus exportaciones, pudiendo cancelar las Sumas Adeudadas, solicitar nuevos desembolsos y así sucesivamente, siempre que el monto acumulado de toda la Línea de Crédito resulte inferior a Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00).

(d) Que es intención de las Partes modificar el Contrato Marco al solo efecto de extender el Plazo de Disponibilidad y el plazo máximo del cual no podrán extenderse las Fechas de Vencimiento previsto en la Cláusula PRIMERA.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente primera enmienda al Contrato Marco (la "Primera Enmienda"), de conformidad con las presentes Cláusulas:

1.    Modifícase de la Cláusula PRIMERA del Contrato Marco las siguientes definiciones:

*"Fecha/s de Vencimiento"* significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán ser anteriores a los 24 (veinticuatro) meses calculadas desde la fecha de cada Solicitud de Desembolso e indefectiblemente anteriores al 31 de Diciembre de 2012 .

*"Línea de Crédito"* significa la única línea de crédito, modalidad "revolving" que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses CINCUENTA MILLONES con 00/100 (US$ 50.000.000,00)

*"Plazo de Disponibilidad"* significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 31 de Diciembre de 2012, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO"

2.      Con excepción de aquellos términos expresamente modificados por la presente Primera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 15 días del mes de Marzo de 2010.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderado - Administrador

Por: IIG TOF B.V.
Nombre:
Carácter:     Trust International Management (T.I.M.) B.V.
              Managing Director

Y. Hamen / W. Rijngolen
apoderados

Firma/s certificada/s en Foja
Nº F-0012060.069
Bs. As. 15.3.2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



ACTA DE CERTIFICACION DE FIRMAS
LEY 404



# ANEXO                                          F 001362069

1   Buenos Aires, 15 de    Marzo      de 2010 . En mi carácter de escribano

2   Titular del Registro Notarial Nº 841

3   CERTIFICO: Que la/s  firma/s                              que obra/n en el

4   documento que adjunto a esta foja, cuyo requerimiento de certificación se

5   formaliza simultáneamente por ACTA número 48                  del LIBRO

6   número 132                   , es/son puesta/s en mi presencia por la/s persona/s

7   cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8   la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9   Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista




F 001362069

y les confieren facultades suficientes para suscribir el documento adjunto, doy fe.-



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

**SEGUNDA A ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Segunda Enmienda.

(b) Que, en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO frente al MUTUANTE bajo el Contrato Marco, el MUTUARIO se obligó a mantener durante toda la vigencia del Contrato Marco y hasta que el mismo se extinga, Warrants endosados a favor del MUTUANTE por un monto no inferior a una suma equivalente al 15% (quince por ciento) de la Línea de Crédito Adeudada (Sección 7.2 de la Cláusula SEPTIMA).

(c) Al momento de la presente, el MUTUANTE declara de conformidad, que la Línea de Crédito Adeudada, asciende a un total de US$ 14.910.992,92 (Dólares Estadounidenses CATORCE MILLONES NOVECIENTOS DIEZ MIL NOVECIENTOS NOVENTA Y DOS CON 92/100)  y que el MUTUARIO entregó y endosó Warrants a su favor por la suma total de US$ 3.869.640,30 (Dólares Estadounidenses TRES MILLONES OCHOCIENTOS SESENTA Y NUEVE MIL SEISCIENTOS CUARENTA CON 30/100).

(d) Que el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello- ha aceptado liberar algunos – no todos- de los Warrants endosados a su favor, siempre que no se vea afectada la ratio exigida por la Sección 7.2 de la Cláusula SEPTIMA y sin que ello implique novación alguna de la deuda instrumentada en el Contrato Marco ni en las Solicitudes de Desembolso.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente segunda enmienda al Contrato Marco (la "Segunda Enmienda"), de conformidad con las presentes Cláusulas:

1. Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Segunda Enmienda:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2685 | Leche en Polvo | Suncheles | 148.800 | kgs | 03/Jun/2010 | 520.800,00 |

2. Conforme lo anteriormente detallado, como consecuencia de la liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 2675 V | Queso Semi Duro | Balnearia | 148.937,00 | Kg | 03/Jun/2010 | 700.003,90 |
| 2676 V | Queso Semi Duro | Balnearia | 102.412,00 | Kg | 03/Jun/2010 | 481.336,40 |
| 2677 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |





| 2678 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |
| 2679 V | Leche UAT | Chivilcoy | 500.000,00 | Lt | 03/Jun/2010 | 285.000,00 |
| 2682 V | Queso Pasta Dura | La Carlota | 187.500,00 | Kg | 03/Jun/2010 | 1.312.500,00 |
| Total | | | | | | 3.348.840,30 |

3. Con excepción de aquellos términos expresamente modificados por la presente Segunda Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 13 días del mes de Abril de 2010.

Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: Mario Magdalena
Carácter: Apoderado

Por: **SANCOR DO BRASIL** Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

Por: **IIG TOF B.V.**
Nombre: Smybosch / y Ileymans
Carácter: Apoderados

Firma/s certificada/s en Foja
Nº FA0740?350
Bs. As. 13-4-2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

 



F  005962330

1  Buenos Aires, 13  de        Abril        de 2010   . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                           que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 190              del LIBRO

6  número 133                    , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9  Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10  dades de acuerdo al inciso a del artículo 1002 del Código Civil y actúan:

11  el señor Magdalena en su carácter de apoderado de la sociedad "SAN-

12  COR COOPERATIVAS UNIDAS LIMITADA" con domicilio en Sunchales,

13  Provincia de Santa Fe, e inscripta en la Matrícula 772 del Registro Na-

14  cional de Cooperativas, de la Provincia de Santa Fe, Departamento Cas-

15  tellanos, conforme lo acredita con el poder de fecha 15 de diciembre de

16  2009, pasado al folio 1400 del Registro 640 de la ciudad de Sunchales,

17  Provincia de Santa Fe, a cargo de la escribana Analia Roch, asimismo

18  actúan: el señor Magdalena en su carácter de Apoderado Gerencia Fi-

19  nanciera y el señor Valicente en su carácter de Apoderado de la sociedad

20  "SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acreditan con

21  el Poder Especial de fecha 17 de diciembre de 2009, debidamente certi-

22  ficado con fecha 17 de diciembre de 2009 y debidamente Autorizado por

23  el Ministerio de Relaciones Exteriores con fecha 7 de enro de 2010 y tra-

24  ducido con fecha 18 de enero de 2010 y legalizado bajo el número 948 de

25  fecha 19 de enero de 2010, la documentación relacionada tengo a la vista




F 005962330

y les confieren facultades suficientes para suscribir el documento adjunto,

doy fe.-



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50



## TERCERA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominadas las "Partes"; y

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, y Segunda Enmienda del 13 de Abril de 2010, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Tercera Enmienda.

(b) Que es intención de las Partes modificar el Contrato Marco al solo efecto de modificar la cláusula Décimo Segunda.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente tercera enmienda al Contrato Marco (la "Tercera Enmienda"), de conformidad con las presentes Cláusulas:

1. Modificase la Cláusula DECIMO SEGUNDA del Contrato Marco, la cual quedará redactada del siguiente modo:

**CLÁUSULA DÉCIMO SEGUNDA: CESIÓN DEL CONTRATO MARCO.**

El MUTUANTE podrá ceder o transferir los derechos derivados del presente Contrato Marco a cualquiera de sus afiliadas y/o subsidiarias (entendiéndose por tales aquellas sociedades controlantes de o controladas por el MUTUANTE o sea propiedad común o relacionadas a este último), por cualquiera de los medios previstos en la Ley, adquiriendo el cesionario los mismos beneficios y/o derechos y/o acciones de que es titular el MUTUANTE en virtud de este Contrato Marco. En ese caso, el MUTUANTE deberá comunicar en forma fehaciente la cesión al MUTUARIO, como también la nueva forma de pago, utilizando para ello cualquier medio fehaciente de notificación, pudiendo en ese caso el MUTUARIO oponer al cesionario del Contrato Marco cualquier defensa que hubiera podido oponer al MUTUANTE cedente. Asimismo, el MUTUANTE podrá suscribir con cualquiera de sus afiliadas y/o subsidiarias, convenios de participación relacionados a los créditos derivados de este Contrato Marco.

**SECTION TWELVE: MASTER AGREEMENT ASSIGNMENT.**

The LENDER may assign or otherwise transfer the rights arising from the Master Agreement to any of its affiliates and/or subsidiaries (i.e. those holding, subsidiary corporations of the LENDER or other corporations related to them or property thereof), by any of the means provided by Law, an assignee acquiring the assigned benefits and/or rights and/or actions to which the LENDER is entitled under the above-mentioned Master Agreement. In such event, the LENDER shall give notice by true means of any new payment terms and conditions, using therefore any true means of notice. In such event, the BORROWER may file any defense against an assignee of the Master Agreement which it would have been entitled to file against the assigning LENDER. In addition to the aforementioned assignment rights, the LENDER may execute with any of its affiliates and/or subsidiaries, participation agreements related to the credits and receivables derived from this Master Agreement.

2.   Las Partes acuerdan otorgar a esta Tercera Enmienda efectos retroactivos al 21 de Diciembre de 2009. Con excepción de aquellos términos expresamente modificados por la presente Tercera Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los  29 días del mes de Noviembre de 2010.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre: J. Haners / G Becher
Carácter: apoderados.

Firma/s certificada/s en Faja
N° F22.12.12.990
Bs. As. 29.11.2010

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



ACTA DE CERTIFICACION DE FIRMAS
LEY 404



## ANEXO                                    F  001516965

1    Buenos Aires, 29  de  Noviembre  de 2010  . En mi carácter de escribano

2    Titular del Registro Notarial N° 841

3    CERTIFICO: Que la/s firma/s                      que obra/n en el

4    documento que adjunto a esta foja, cuyo requerimiento de certificación se

5    formaliza simultáneamente por ACTA número 184                del LIBRO

6    número 147                , es/son puesta/s en mi presencia por la/s persona/s

7    cuyo/s nombre/s y documento/s  de identidad se menciona/n a continuación así como

8    la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y

9    Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identi-

10    dades de acuerdo al inciso a) del artículo 1002 del Código Civil y actúan:

11    el señor Magdalena en su carácter de Apoderado de la sociedad "SAN-

12    COR COOPERATIVAS UNIDAS LIMITADA", con domicilio en Sunchales,

13    Provincia de Santa Fe, inscripta en la Matrícula 772 del Registro Nacional

14    de Cooperativas, de la Provincia de Santa Fe, Departamento Castellanos,

15    conforme lo acredita con el poder de fecha 15 de diciembre de 2009, pa-

16    sado al folio 1400 del Registro 640 de la ciudad de Sunchales, Provincia

17    de Santa Fe, a cargo de la escribana Analía Roch, y el señor Valicente en

18    su carácter de Apoderado de la sociedad "SANCOR DO BRASIL Produtos

19    Alimenticios LTDA." lo que acredita con el Poder Especial de fecha 17 de

20    diciembre de 2009, debidamente certificado con fecha 17 de diciembre de

21    2009 y debidamente Autorizado por el Ministerio de Relaciones Exteriores

22    con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de 2010

23    y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

24    documentación relacionada tengo a la vista y les confiere facultades sufi-

25    cientes para suscribir el documento adjunto, doy fe.- El documento se

 

F 001516965

encuentra parcialmente escrito en idioma extranjero.-

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

**CUARTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuari 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Productos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a)  Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificada mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de fecha 13 de Abril de 2010 y Tercera Enmienda de fecha 29 de Noviembre de 2010, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Cuarta Enmienda.

(b)  Que, en garantía del cumplimiento de las obligaciones asumidas por el MUTUARIO frente al MUTUANTE bajo el Contrato Marco, el MUTUARIO se obligó a mantener durante toda la vigencia del Contrato Marco y hasta que el mismo se extinga, Warrants endosados a favor del MUTUANTE por un monto no inferior a una suma equivalente al 15% (quince por ciento) de la Línea de Crédito Adeudada (Sección 7.2 de la Cláusula SEPTIMA).

(c)  Al momento de la presente, el MUTUANTE declara de conformidad, que la Línea de Crédito Adeudada, asciende a un total de US$ 53.312.477,86 (Dólares Estadounidenses CINCUENTA Y TRES MILLONES TRESCIENTOS DOCE MIL CUATROCIENTOS SETENTA Y SIETE CON 86/100)  y que el MUTUARIO entregó y endosó Warrants a su favor por la suma total de US$  13.397.274,44 (Dólares Estadounidenses TRECE MILLONES TRESCIENTOS NOVENTA Y SIETE MIL DOSCIENTOS SETENTA Y CUATRO CON 44/100).

(d)  Que el MUTUARIO ha requerido al MUTUANTE y el MUTUANTE –pese a no tener obligación alguna a ello- ha aceptado liberar algunos – no todos-  de los Warrants endosados a su favor, siempre que no se vea afectada la ratio exigida por la Sección 7.2 de la Cláusula SEPTIMA y sin que ello implique novación alguna de la deuda instrumentada en el Contrato Marco ni en las Solicitudes de Desembolso.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Cuarta enmienda al Contrato Marco (la "Cuarta Enmienda"), de conformidad con las presentes Cláusulas:

1.  Reintégrense al MUTUARIO los Warrants que se detallan a continuación dentro de las 48 hs de que el MUTUARIO haya suscripto la presente Cuarta Enmienda:

| N° WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 3106U | QUESO PASTA DURA EN MADURACION | POZO DEL MOLLE | 10.000,00 | Kg | 08/09/2011 | 70.000,00 |
| 3107U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 400.000,00 | Kg | 08/09/2011 | 2.800.000,00 |

2.  Conforme lo anteriormente detallado, como consecuencia de la liberación de los Warrants, a partir del día de la fecha, la garantía de Warrants del Contrato Marco queda conformada de la siguiente forma:



| Nº WARRANT | PRODUCTO | DEPOSITO | CANTIDAD | | VTO. | IMPORTE u$s |
|---|---|---|---|---|---|---|
| 3075U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3076U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3077U | LECHE UAT | CHIVILCOY | 500.000,00 | Kg | 08/09/2011 | 285.000,00 |
| 3078U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 148.937,00 | Kg | 08/09/2011 | 700.003,90 |
| 3079U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 148.937,00 | Kg | 08/09/2011 | 700.003,90 |
| 3080U | QUESOS SEMIDUROS EN PROCESO | BALNEARIA | 102.412,00 | Kg | 08/09/2011 | 481.336,40 |
| 3081U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 187.500,00 | Kg | 08/09/2011 | 1.312.500,00 |
| 3082U | QUESO PASTA DURA EN MADURACION | LA CARLOTA | 87.500,00 | Kg | 08/09/2011 | 612.500,00 |
| 3083U | QUESO PASTA DURA EN MADURACION | POZO DEL MOLLE | 187.500,00 | Kg | 08/09/2011 | 1.312.500,00 |
| 3084U | LECHE UAT | SUNCHALES | 515.750,00 | Kg | 08/09/2011 | 866.460,00 |
| 3085U | LECHE UAT | SUNCHALES | 515.750,00 | Kg | 08/09/2011 | 866.460,00 |
| 3086U | LECHE UAT | SUNCHALES | 169.643,00 | Kg | 08/09/2011 | 285.000,24 |
| 3087U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3088U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3089U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 101.250,00 | Kg | 08/09/2011 | 633.825,00 |
| 3090U | QUESO PASTA DURA EN MADURACION | BRIKMANN | 46.250,00 | Kg | 08/09/2011 | 289.525,00 |
| 3091U | QUESOS SEMIDUROS EN PROCESO | BRIKMANN | 73.300,00 | Kg | 08/09/2011 | 344.510,00 |
| 3133U | LECHE EN POLVO | MORTEROS | 200.000,00 | Kg | 08/09/2011 | 720.000,00 |
| 3134U | LECHE EN POLVO | SUNCHALES | 398.000,00 | Kg | 08/09/2011 | 1.432.800,00 |
| 3135U | LECHE EN POLVO | DEVOTO | 200.000,00 | Kg | 08/09/2011 | 720.000,00 |
| Total | | | | | | 13.400.074.44 |

3.   Con excepción de aquellos términos expresamente modificados por la presente Cuarta Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO y el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, el día 1 de Agosto de 2011.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Productos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre:
Carácter:   Trust International Management (T.I.M.) B.V.
Managing Director

Firma/s certificada/s en Foja
Nº F 00 1 0 8 4 1 6 0
Bs. As. 1 8 2011

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



# ANEXO                                F 001684188

1  Buenos Aires, 01 de   Agosto   de 2011  . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s firma/s                              que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número154            del LIBRO

6  número 164                  , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y Da-

9  niel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identidades de

10  acuerdo al inciso a) del artículo 1002 del Código Civil y actúan: el señor Magda-

11  lena en su carácter de Apoderado de la sociedad "SANCOR COOPERATIVAS

12  UNIDAS LIMITADA", con domicilio en Sunchales, Provincia de Santa Fe, ins-

13  cripta en la Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia

14  de Santa Fe, Departamento Castellanos, conforme lo acredita con el poder de

15  fecha 15 de diciembre de 2009, pasado al folio 1400 del Registro 640 de la ciu-

16  dad de Sunchales, Provincia de Santa Fe, a cargo de la escribana Analia Roch,

17  y el señor Valicente en su carácter de Apoderado de la sociedad "SANCOR DO

18  BRASIL Produtos Alimenticios LTDA." lo que acredita con el Poder Especial de

19  fecha 17 de diciembre de 2009, debidamente certificado con fecha 17 de di-

20  ciembre de 2009 y debidamente Autorizado por el Ministerio de Relaciones Ex-

21  teriores con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de

22  2010 y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

23  documentación relacionada tengo a la vista y les confiere facultades suficientes

24  para suscribir el documento adjunto, doy fe.-

25                                    MARTIN R. ARANA (h)
                                       ESCRIBANO
                                       MAT. 4370

**QUINTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO**
**PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Magdalena, en su carácter de apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Produtos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por los Sres. Mario Magdalena y Daniel Jorge Valicente, en su carácter de Apoderados, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes"; y

**CONSIDERANDO:**

(a)   Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de 13 de Abril de 2010, Tercera Enmienda de fecha 29 de Noviembre de 2010 y Cuarta Enmienda de fecha 1 de Agosto de 2011, cuyas copias se adjuntan a la presente como **Anexo A** (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Quinta Enmienda.

(b)   Que el MUTUARIO solicita al MUTUANTE una ampliación en el Plazo de Disponibilidad y de las Fechas de Vencimiento, así como la posibilidad a futuro de prorrogar las mismas.

(c)   Que el MUTUANTE está dispuesto a aceptar la extensión del Plazo de Disponibilidad y de las Fechas de Vencimiento, sin que ello implique novación de las obligaciones asumidas por el MUTUARIO bajo el Contrato Marco y/o las Solicitudes de Desembolso derivadas del mismo y siempre que se mantengan plenamente vigentes todas y cada una de las Garantías. Asimismo, el MUTUANTE acepta la solicitud del MUTUARIO de contar con la posibilidad de prorrogar las Fechas de Vencimiento.

(d)   Que es intención de las Partes modificar el Contrato Marco a fin de incluir lo expuesto precedentemente.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Quinta Enmienda al Contrato Marco (la "Quinta Enmienda"), de conformidad con las presentes Cláusulas:

1.   Modificase de la cláusula PRIMERA del Contrato Marco las siguientes definiciones:

*"Fecha/s de Vencimiento"* significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán ser anteriores a los 18 (dieciocho) meses calculadas desde la fecha de cada Solicitud de Desembolso e indefectiblemente anteriores al 30 de Agosto de 2016.

*"Plazo de Disponibilidad"* significa el plazo fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha del Contrato Marco hasta el 27 de Febrero de 2015, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO"

*"Sumas Adeudadas":* significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses y gastos administrativos que resulten aplicables, conforme el presente Contrato Marco.



1

2.   Modifícase la **cláusula QUINTA** del Contrato Marco por la siguiente:

**CLAUSULA QUINTA: CANCELACIÓN DE LAS SUMAS ADEUDADAS, APLICACIÓN DE LOS CREDITOS CEDIDOS AL PAGO DE LAS SUMAS ADEUDADAS. RECURSO DEL MUTUARIO.**

**5.1.**   El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas en las Fechas de Vencimiento correspondientes, mediante depósito de las mismas en la Cuenta del Mutuante.

**5.2** El MUTUARIO podrá optar por prorrogar la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por un nuevo período de 18 (dieciocho) meses. Vencido este nuevo período podrá, nuevamente y por última vez, optar por una nueva prórroga de la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por un nuevo período de 18 meses. A los efectos de ejercer su derecho a prorrogar la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por hasta un máximo de dos períodos consecutivos de 18 meses, el MUTUARIO deberá cumplir con los siguientes recaudos: (i) estar en cumplimiento de todas sus obligaciones bajo el presente Contrato Marco y que no haya acaecido un Evento de Incumplimiento, (ii) abonar la totalidad de las Sumas Adeudadas distintas a aquellas cuya Fecha de Vencimiento se pretende prorrogar, en relación a la Solicitud de Desembolso de que se trate (iii) notificar su decisión de prorrogar la última de las Fechas de Vencimiento conforme lo establecido en esta cláusula en forma fehaciente y por escrito al MUTUANTE y al FIADOR con una anticipación de al menos 45 días a la Fecha de Vencimiento, conforme modelo adjunto en **ANEXO V**, (iv) obtener del FIADOR su expreso consentimiento respecto de la prórroga de las Fechas de Vencimiento por medio del cuál el FIADOR asuma mantener la fianza aquí otorgada en toda su extensión y por el plazo prorrogado y entregar ese documento con las firmas debidamente certificadas por escribano al MUTUANTE, conforme modelo adjunto en **ANEXO V**, (v) deberá acordar con el MUTUANTE la Tasa de Descuento que será aplicable al nuevo período y los montos correspondientes a los gastos administrativos correspondientes a la misma, y (vi) deberá entregar al MUTUANTE nuevos Pagarés por las Sumas Adeudadas que incluyan el capital y todos los intereses más los gastos administrativos que resultarán aplicables durante período prorrogado, a satisfacción del MUTUANTE. Todos los recaudos antes previstos deberán estar cumplidos con anterioridad a la última Fecha de Vencimiento de cada Solicitud de Desembolso. La falta de cumplimiento de algunos de los recaudos mencionados y/o la falta de acuerdo entre el MUTUARIO y el MUTUANTE en alguna de las cuestiones que así lo requieran, incluido pero no limitado a la fijación de la Tasa de Descuento y/o los gastos administrativos a los efectos de la prórroga, no generará responsabilidad del MUTUANTE ni derecho de reclamo alguno por parte del MUTUARIO y se mantendrán los términos de las Solicitudes de Desembolso, incluido pero no limitado a las Fechas de Vencimiento originariamente previstas.

**5.3**   A los efectos mencionados en la Sección 5.1 antes referida, los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante serán aplicados al pago de las Sumas Adeudadas del siguiente modo:

(a)   Durante los meses en que NO exista Fecha de Vencimiento (entendiéndose por tales aquellos meses transcurridos entre la efectivización del desembolso requerido en cada Solicitud de Desembolso hasta el mes calendario inmediato anterior al de la Fecha de Vencimiento), el MUTUANTE transferirá los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante, dentro de las 48 hs. de recibidos, a la Cuenta del Mutuario.

(b)   Durante los meses correspondientes a las Fechas de Vencimiento (entendiéndose por tal el período comprendido entre el día 1 y día 30 de los meses correspondientes a las Fechas de Vencimiento), el MUTUANTE aplicará los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante a cancelar las Sumas Adeudadas a pagar en la Fecha de Vencimiento correspondiente a dicho mes. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses excedan el monto de las Sumas Adeudadas, el excedente será transferido al MUTUARIO de la forma indicada en el acápite (a) de la presente Sección. En el caso que los fondos de los Créditos Cedidos depositados durante tales meses no fuesen suficientes para cubrir el importe de las Sumas Adeudadas, el MUTUARIO será responsable de aportar la diferencia, y abonar así el importe total de las Sumas Adeudadas, bajo apercibimiento de Mora.

(c)   Todos los fondos correspondientes a los Créditos Cedidos que sean depositados en la Cuenta del Mutuante con posterioridad a la cancelación total de la Línea de Crédito Adeudada y en exceso de la misma, serán reintegrados al MUTUARIO en la forma indicada en el acápite (a) de la presente Sección.

**5.4**   En caso de Mora, la totalidad de los fondos de los Créditos Cedidos depositados en la Cuenta del Mutuante se aplicarán a cancelar toda la Línea de Crédito Adeudada y cualquier otra suma adeudada por el MUTUARIO bajo los Documentos de la Operación.

2



**5.5** Habida cuenta del recurso del MUTUARIO en la cesión de los Créditos Cedidos al MUTUANTE, en caso que -por cualquier causa- el importe de los Créditos Cedidos depositados en la Cuenta del Mutuante no fuesen suficientes para cubrir el pago de las Sumas Adeudadas en las Fecha de Vencimiento correspondiente a un mes determinado, el MUTUARIO deberá abonar al MUTUANTE el importe total o el saldo adeudado correspondiente a cada Suma Adeudada, antes de o en cada Fecha de Vencimiento, bajo apercibimiento de incurrir en Mora automática.

3.   En virtud de lo expuesto en la cláusula 2 precedente, las Partes acuerdan incorporar al Contrato Marco el **Anexo V.**

4.   Modifícase el apartado   9.1.10 de la **cláusula NOVENA** del Contrato Marco el cual quedará redactado de la siguiente forma:

**_CLAUSULA NOVENA:_**   **_MANIFESTACIONES, DECLARACIONES Y COMPROMISOS DEL MUTUARIO Y DEL FIADOR._**

**9.1.10.** Que el balance del MUTUARIO al 30 de Junio de 2011, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivas autoridades, representan en forma correcta la situación financiera y el resultado de las operaciones del MUTUARIO a dicha fecha, y que desde el 30 de Junio de 2009 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y

5.   Las Partes acuerdan notificar la presente Quinta Enmienda al Banco de Servicios y Transacciones S.A. en su carácter de fiduciario del Fideicomiso –conforme se define en el Contrato Marco-, mediante el envío de una nota conforme el modelo que se adjunta a la presente como **Anexo B.** Dicha nota será enviada por el MUTUARIO dentro de las 48 hs de suscripta la presente y –como condición de validez de la presente Quinta Enmienda- deberá remitir al MUTUANTE una copia de dicha nota con la constancia de recepción por parte del fiduciario.

6.   En contraprestación por los costos irrogados al MUTUANTE por la aceptación de las modificaciones requeridas por el MUTUARIO y efectivamente introducidas al Contrato Marco mediante la presente enmienda, las Partes acuerdan que a partir de la presente, en cada Solicitud de Desembolso o prórroga de la última de las Fechas de Vencimiento de cada Solicitud de desembolso, se fijará un monto en concepto de gastos administrativos de 0,15% (quince centésimas por ciento) sobre el monto desembolsado o prorrogado.

7.   Con excepción de aquellos términos expresamente modificados por la presente Quinta Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta el día de la fecha permanecen inalterables, manteniendo los mismos plena vigencia.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 21 días del mes de Septiembre de 2011.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Mario Magdalena –Daniel Jorge Valicente
Carácter: Apoderados

Por: IIG TOF B.V.
Nombre: Gawein Heijmans; Ed Hoogeboom
Carácter: Attorneys-in-Fact

Firma/s certificada/s en Foja
N°. F00 728.1.43.7.
Bs. As. 21-9-2011

3

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370



 

ACTA DE CERTIFICACION DE FIRMAS
LEY 404

F   007561933

1  Buenos Aires, 21  de  Septiembre  de 2011  . En mi carácter de escribano

2  Titular del Registro Notarial N° 841

3  CERTIFICO: Que la/s firma/s                                que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 43              del LIBRO

6  número 168                , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8  la justificación de su identidad. Mario César MAGDALENA, L.E. 8.106.144 y Da-

9  niel Jorge VALICENTE, DNI 21.050.725, quienes justifican sus identidades de

10  acuerdo al inciso a) del artículo 1002 del Código Civil y actúan: el señor Magda-

11  lena en su carácter de Apoderado de la sociedad "SANCOR COOPERATIVAS

12  UNIDAS LIMITADA", con domicilio en Sunchales, Provincia de Santa Fe, ins-

13  cripta en la Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia

14  de Santa Fe, Departamento Castellanos, conforme lo acredita con el poder de

15  fecha 15 de diciembre de 2009, pasado al folio 1400 del Registro 640 de la ciu-

16  dad de Sunchales, Provincia de Santa Fe, a cargo de la escribana Analía Roch,

17  y el señor Valicente en su carácter de Apoderado de la sociedad "SANCOR DO

18  BRASIL Produtos Alimenticios LTDA." lo que acredita con el Poder Especial de

19  fecha 17 de diciembre de 2009, debidamente certificado con fecha 17 de di-

20  ciembre de 2009 y debidamente Autorizado por el Ministerio de Relaciones Ex-

21  teriores con fecha 7 de enero de 2010 y traducido con fecha 18 de enero de

22  2010 y legalizado bajo el número 948 de fecha 19 de enero de 2010, toda la

23  documentación relacionada tengo a la vista y les confiere facultades suficientes

24  para suscribir el documento adjunto, doy fe.-

25                                    MARTIN R. ARANA (h)
                                      ESCRIBANO
                                      MAT. 4370.

**SEXTA ENMIENDA AL CONTRATO DE LÍNEA DE CRÉDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

**SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202 - 3° Piso - Capital Federal, República Argentina, representado en este acto por el Sr. Mario Cesar Magdalena, en su carácter de Apoderado (en adelante el "MUTUARIO"), por una parte;

**SANCOR DO BRASIL Productos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República del Brasil, representada en este acto por el Sr. Daniel Jorge Valicente, en su carácter de Apoderado, y el Sr. Mario Cesar Magdalena, domiciliada en Barueri, Estado de Sao Paulo, na Alameda Araguaia, Nro. 933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte, (en adelante el "FIADOR"), y

**IIG TOF B.V.**, representado por **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _____, en su carácter de _____, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, (en adelante el "MUTUANTE"), por la otra parte; y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados las "Partes".

**CONSIDERANDO:**

(a) Que con fecha 21 de Diciembre de 2009, las Partes suscribieron un Contrato Marco de línea de crédito para pre-financiación de exportaciones, modificado mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de 13 de Abril de 2010, Tercera Enmienda de fecha 29 de Noviembre de 2010, Cuarta Enmienda de fecha 1 de Agosto de 2011 y Quinta Enmienda de fecha 21 de Septiembre de 2011, cuyas copias se adjuntan a la presente como Anexo A (el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Sexta Enmienda.

(b) Que a la fecha de la presente enmienda, en garantía del cumplimiento de las obligaciones asumidas bajo el Contrato Marco, el MUTUARIO endosó a favor del MUTUANTE y el MUTUANTE recibió en conformidad, una cantidad de Warrants equivalentes al 25% del monto de la Línea de Crédito Adeudada, la cual a la fecha asciende a la suma de US$ 58.771.565,98 (Dólares Estadounidenses CINCUENTA Y OCHO MILLONES SETECIENTOS SETENTA Y UN MIL QUINIENTOS SESENTA Y CINCO CON 98/100).

(c) Que atento a las constantes variaciones en el mercado de los precios de los productos lácteos -objeto de los Warrants-, el MUTUARIO ha ofrecido al MUTUANTE y éste acepta el mantener el porcentaje indicado en el apartado anterior y en tal sentido enmendar el Contrato Marco a fin de reflejar el aumento de los montos mínimos requeridos respecto de los Warrants. .

(d) Que en virtud de lo expuesto en el considerando anterior, es intención de las Partes modificar el Contrato Marco a fin de incluir lo expuesto precedentemente.

En mérito a las consideraciones precedentemente expuestas, las Partes suscriben la presente Sexta Enmienda al Contrato Marco (la "Sexta Enmienda"), de conformidad con las presentes Cláusulas:

1. Modifíquese las siguientes secciones de la Cláusula **SÉPTIMA** del Contrato Marco, las que quedarán redactadas conforme se indica a continuación:

*7.1     En adición a toda otra garantía, junto con cada Solicitud de Desembolso, el MUTUARIO deberá suscribir y entregar al MUTUANTE, como garantía adicional de pago, Warrants de productos lácteos ˜o sus derivados – debidamente endosados a favor del MUTUANTE- por una suma equivalente como mínimo al 25% (veinticinco por ciento) de la Suma Adeudada expresada en dicha Solicitud de Desembolso, expresada en Dólares Estadounidenses, con exclusión de toda otra moneda.*

*7.2.     El MUTUARIO se obliga a que durante toda la vigencia del Contrato Marco el MUTUANTE cuente en su poder con Warrants por un monto no inferior a una suma equivalente al 25% (veinticinco por ciento) de la Línea de Crédito Adeudada. Teniendo en cuenta el plazo máximo de vigencia de los warrants establecido en el art. 26 de la Ley 9643, el MUTUARIO se obliga a reemplazar periódicamente los Warrants antes del vencimiento de los 180 (ciento ochenta) días contados desde la fecha de emisión de los mismos, debiendo entregar al MUTUANTE nuevos Warrants por un monto igual o superior, en su caso, al de los Warrants originales.*

1




2.       Modifíquese la siguiente sección de la Cláusula NOVENA del Contrato Marco:

**9.1.22.**   *Que en todo momento durante la vigencia del presente Contrato Marco el MUTUANTE contará con Warrants por una suma equivalente al  25% (veinticinco por ciento) de la Línea de Crédito Adeudada.*

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el MUTUANTE en la Ciudad de Amsterdam, a los 20 días del mes de Abril  de 2012.

Por: SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Mario Cesar Magdalena
Carácter: Apoderado

Por: SANCOR DO BRASIL Produtos Alimenticios Ltda.
Nombre: Daniel Jorge Valicente-Mario Cesar Magdalena
Carácter: Apoderado

Trust International Management (T.I.M.) B.V.
Managing Director

Por: IIG TOF B.V.
Nombre:
Carácter:

Firma/s certificada/s en Foja
Nº F 0018 43 718
Bs. As. 20.4.292

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

2





## ANEXO

F 001843718

1 **Buenos Aires,** 20   de   Abril   de 2012   . En mi carácter de escribano

2 Titular del Registro Notarial Nº 841

3 CERTIFICO: Que la/s firma/s                                    que obra/n en el

4 documento que adjunto a esta foja, cuyo requerimiento de certificación se

5 formaliza simultáneamente por ACTA número12              del LIBRO

6 número184              , es/son puesta/s en mi presencia por la/s persona/s

7 cuyo/s nombre/s y documento/s de identidad se menciona/n a continuación así como

8 la justificación de su identidad.Mario César MAGDALENA, L.E. 8.106.144.-

9 quien justifica su identidad de acuerdo al inciso a) del artículo 1002 del

10 Código Civil y actúa en su carácter de apoderado de la sociedad "SAN-

11 COR COOPERATIVAS UNIDAS LIMITADA", con domicilio en Súnchales,

12 Provincia de Santa Fe, inscripta en la Matrícula 772 del Registro Nacional

13 de Cooperativas, de la Provincia de Santa Fe, Departamento Castellanos,

14 conforme lo acredita con el poder de fecha 15 de diciembre de 2009, pa-

15 sado al folio 1400 del Registro 640 a cargo de la escribana Analía Roch

16 de la ciudad de Súnchales, Provincia de Santa Fe, la documentación re-

17 lacionada tengo a la vista y le confiere facultades suficientes para suscri-

18 bir el documento adjunto, doy fe.- El documento se encuentra escrito en

19 idioma extranjero.-

20

21

22

23                              MARTIN R. ARANA (h)
                              ESCRIBANO
                              MAT. 4370

24

25

**Anexo B**
*Detalle de Sumas Adeudadas Vencidas*

| Suma Adeudada Vencida en USD | Capital / Intereses de la Suma Adeudada Vencida en USD | Fecha de Vencimiento | Última Fecha de Prórroga Disponible para el Primer Ejercicio de Opción de Prórroga |
|---|---|---|---|
| 3.000.000,00 | Capital: 3.000.000,00 | 24/07/2014 | 26/01/2015 |
| | | | |
| | | | |
| 3.000.000,00 | Capital: 3.000.000,00 | 25/07/2014 | 26/01/2015 |
| | | | |
| | | | |
| 3.000.000,00 | Capital: 3.000.000,00 | 28/07/2014 | 28/01/2015 |
| | | | |
| | | | |
| 3.031.607,98 | Capital: 3.000.000,00 | 01/08/2014 | 02/02/2015 |
| | Cuota de Intereses de la Suma Adeudada Vencida: 31.607,98 | 01/08/2014 | No prorrogable |
| | | | |
| 3.034.450,98 | Capital: 3.000.000,00 | 01/08/2014 | 02/02/2015 |
| | Cuota de Intereses de la Suma Adeudada Vencida: 34.450,98 | 01/08/2014 | No prorrogable |
| | | | |
| 3.034.018,14 | Capital: 3.000.000,00 | 01/08/2014 | 02/02/2015 |
| | Cuota de Intereses de la Suma Adeudada Vencida: 34.018,14 | 01/08/2014 | No prorrogable |
| | | | |
| 3.033.586,41 | Capital: 3.000.000,00 | 01/08/2014 | 02/02/2015 |
| | Cuota de Intereses de la Suma Adeudada Vencida: 33.586,41 | 01/08/2014 | No prorrogable |
| | | | |

**Anexo B bis**
*Detalle de Sumas Adeudadas No Vencidas*

| Suma Adeudada No Vencida en USD | Capital / Intereses de la Suma Adeudada No Vencida en USD | Fecha de Vencimiento | Cuotas de interés vencidas |
|---|---|---|---|
| 1.227.030,02 | Capital: 1.174.200,00 | 03/11/2014 | |
| | Cuota de Intereses: 14.060,00 | 04/08/2014 | 04/08/2014 |
| | Cuota de Intereses: 14.060,00 | 03/09/2014 | |
| | Cuota de Intereses: 14.060,00 | 03/10/2014 | |
| | Cuota de Intereses: 10.650,02 | 03/11/2014 | |
| 958.458,79 | Capital: 919.745,00 | 03/11/2014 | |
| | Cuota de Intereses: 11.013,95 | 04/08/2014 | 04/08/2014 |
| | Cuota de Intereses: 11.013,95 | 03/09/2014 | |
| | Cuota de Intereses: 11.013,95 | 03/10/2014 | |
| | Cuota de Intereses: 5.671,94 | 03/11/2014 | |
| 7.040.941,68 | Capital: 6.756.550,00 | 03/11/2014 | |
| | Cuota de Intereses: 80.910,00 | 04/08/2014 | 04/08/2014 |
| | Cuota de Intereses: 80.910,00 | 03/09/2014 | |
| | Cuota de Intereses: 80.910,00 | 03/10/2014 | |
| | Cuota de Intereses: 41.661,68 | 03/11/2014 | |
| 3.125.578,46 | Capital: 3.000.000,00 | 07/11/2014 | |
| | Cuota de Intereses: 31.394,60 | 04/08/2014 | 04/08/2014 |
| | Cuota de Intereses: 31.394,60 | 03/09/2014 | |
| | Cuota de Intereses: 31.394,60 | 03/10/2014 | |
| | Cuota de Intereses: 31.394,66 | 07/11/2014 | |
| 2.631.796,55 | Capital: 2.500.000,00 | 21/11/2014 | |
| | Cuota de Intereses: 26.359,31 | 01/08/2014 | 01/08/2014 |
| | Cuota de Intereses: 26.359,31 | 03/09/2014 | |
| | Cuota de Intereses: 26.359,31 | 03/10/2014 | |
| | Cuota de Intereses: 26.359,31 | 07/11/2014 | |
| | Cuota de Intereses: 26.359,31 | 21/11/2014 | |
| 3.528.321,70 | Capital: 3.351.644,00 | 01/12/2014 | |
| | Cuota de Intereses: 35.335,54 | 01/08/2014 | 01/08/2014 |
| | Cuota de Intereses: 35.335,54 | 03/09/2014 | |
| | Cuota de Intereses: 35.335,54 | 03/10/2014 | |
| | Cuota de Intereses: 35.335,54 | 07/11/2014 | |
| | Cuota de Intereses: 35.335,54 | 01/12/2014 | |



**Anexo C**
*Solicitud de Prorroga*

Ciudad Autónoma de Buenos Aires, [____] de [____] de [____].

Sres.
**IIG TOF B.V.**
*Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam*
*The Netherlands*
Presente

<div align="right">

**Ref.: Solicitud de Prórroga de Fecha de
Vencimiento (Contrato de Línea de
Crédito SANCOR)**

</div>

De nuestra consideración:

1. Nos dirigimos a Uds. con relación al Contrato de Línea de Crédito suscripto entre Uds., SANCOR DO BRASIL – PRODUTOS ALIMENTICIOS LTDA. y SANCOR COOPERATIVAS UNIDAS LTDA. con fecha 21 de diciembre de 2009, modificado mediante Primera Enmienda de fecha 15 de marzo de 2010, Segunda Enmienda de fecha 13 de abril de 2010, Tercera Enmienda de fecha 29 de noviembre de 2010, Cuarta Enmienda de fecha 1 de agosto de 2011, Quinta Enmienda de fecha 21 de septiembre de 2011, Sexta Enmienda de fecha 20 de abril de 2012 y Séptima Enmienda de fecha [____] de [____] de [____] (el "Contrato Marco"), cuyas definiciones, términos y condiciones resultan aplicables a la presente Solicitud de Prórroga. Los términos utilizados en la presente que comiencen con mayúsculas y estén definidos en el Contrato Marco tendrán el significado conferido en él, salvo expresa disposición en sentido contrario en la presente.

2. En virtud del Contrato Marco y la Cláusula 1.2. de la Séptima Enmienda, remitimos a Uds. la presente Solicitud de Prórroga y optamos por prorrogar [completar detalle de sumas] correspondiente a la Fecha de Vencimiento [completar] por un período de [completar]. En tal sentido, las Fechas de Vencimiento para el pago del Capital de las Sumas Adeudadas Vencidas referidas en la presente Solicitud de Prórroga serán las siguientes:

| Fecha de Vencimiento | Moneda e Importe |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

3. Habida cuenta de la opción de prórroga ejercida, las Sumas Adeudadas Vencidas aquí referidas ascienden a un total de: USD [_____] (Dólares Estadounidenses [_____]).

4. En los términos de la Cláusula 1.6. de la Séptima Enmienda, adjuntamos a la presente un Pagaré a vuestro favor, pagadero a la vista, por la suma de USD [_____] (Dólares Estadounidenses [_____]).

5.  Atento al período de prórroga solicitado, hacemos constar que nos asiste la facultad de prorrogar las Sumas Adeudadas Vencidas referidas en la presente Solicitud de Prórroga por [completar plazos disponibles para prórroga].

6.  Finalmente, y en virtud de lo dispuesto en la Cláusula 1.5. de la Séptima Enmienda, el FIADOR presta su consentimiento expreso respecto de la presente Solicitud de Prórroga y asume mantener la fianza otorgada en virtud del Contrato Marco en toda su extensión y por el plazo y Sumas Adeudadas Vencidas prorrogadas.

Sin otro particular, saludamos a Uds. atentamente,

_____

Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: [completar]
Carácter: [completar]

_____

Por: **SANCOR DO BRASIL – PRODUTOS ALIMENTICIOS LTDA.**
Nombre: [completar]
Carácter: [completar]

Recibido por:

_____

Por: **IIG TOF B.V.**
Nombre: [completar]
Carácter: [completar]

**Anexo D**

*Nota al Fiduciario*

Ciudad Autónoma de Buenos Aires, [____] de [____] de [____].

Sres.
**Banco de Servicios y Transacciones S.A.**
*Av. Corrientes 1174, Piso 3°*
*Ciudad Autónoma de Buenos Aires*
Atte.: Martín Culeddu
<u>Presente</u>

<div align="right">

**<u>Ref.:</u> Contrato de Fideicomiso en
Garantía SANCOR – IIG TOF B.V.**

</div>

Por la presente en nuestro carácter de Fiduciante y Beneficiario del Contrato de Fideicomiso en Garantía [_____] – IIG TOF B.V. de fecha [_____], notificamos a Uds. que con fecha [_____] se ha celebrado la Séptima Enmienda al Contrato de Línea de Crédito de fecha 21 de diciembre de 2009, garantizado bajo el fideicomiso mencionado. Se adjunta a la presente copia certificada de dicha documentación.

Sin otro particular, saludamos a Uds. atte.

_____
Por: **IIG TOF B.V.**
Nombre: [completar]
Carácter: [completar]

_____
Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: [completar]
Carácter: [completar]

A los [____] de [____] de [____], [_____] y [_____] en su calidad de apoderados de Banco de Servicios y Transacciones S.A., actuando en su calidad de Fiduciario del Fideicomiso de Garantía [_____] – IIG TOF B.V. de fecha [_____], reciben la presente notificación.

_____
Por: **BANCO DE SERVICIOS Y TRANSACCIONES S.A.**
Nombre: [completar]
Carácter: [completar]

ACUERDO DE PAGO DE OBLIGACIONES DE CAPITAL EMERGENTES DE LÍNEA DE CRÉDITO, Y DISPENSA ESPECÍFICA DE CIERTA RESTRICCIÓN DE DISPOSICIÓN DE ACTIVOS PREVISTA BAJO ESA LÍNEA DE CRÉDITO

Este acuerdo (el "Acuerdo") se celebra entre:

(i) SANCOR COOPERATIVAS UNIDAS LIMITADA, una cooperativa de primer grado constituida y registrada bajo las leyes de la República Argentina, con domicilio constituido a los efectos del presente en Tacuarí 202, Piso 3, Ciudad de Buenos Aires, República Argentina, representada en este acto por el Sr. Eduardo Angel Zago (DNI 14,343,050), en su carácter de apoderado, por una parte (en adelante, el "Deudor"); y

(ii) A3 TDF B.V. una sociedad organizada y vigente de acuerdo a las leyes del Reino de los Países Bajos, con domicilio en Teleport 5 – Telepoort Noorweg 10b, 1° C, Box 7241, 1007 JE Amsterdam, The Netherlands, representada en este acto por el Sr. Herman Verly (DNI ...), en su carácter de apoderado, por otra parte (en adelante, el "Acreedor"; y cuando esté que refiere conjuntamente con el Deudor, ambos conjuntamente denominados las "Partes").

CONSIDERANDO:

(i) Que, con fecha 11 de diciembre de 2009, las Partes firmaron un contrato marco de línea de crédito para financiación de exportaciones, que fuera luego modificado con enmiendas consecutivamente otorgadas con fechas 15 de marzo de 2010, 13 de abril de 2010, 29 de noviembre de 2010, 1° de agosto de 2011, 21 de septiembre de 2011, 19 de abril de 2012, 28 de agosto de 2014, 25 de mayo de 2015 y 2 de junio de 2016, el cual fuera transcripto de forma reordenada y unificada con fecha 2 de junio de 2016 (este contrato, el "Contrato Marco");

(ii) Que mediante instrumento firmado con fecha 2 de junio de 2016, las Partes extendieron el Plazo de Disponibilidad de la línea de crédito conferida bajo el Contrato Marco único y exclusivamente por u hasta la suma de dólares estadounidenses siete millones setecientos veintitrés mil doscientos setenta y ocho con 00/100 (US$ 7,723,278/00) hasta el 20 de julio de 2016;

(iii) Que mediante instrumento firmado con fecha 19 de junio de 2016, las Partes extendieron con garantía real prendaria el Plazo de Disponibilidad de la línea de crédito conferida bajo el Contrato Marco único y exclusivamente por y hasta la suma de dólares estadounidenses diecisiete millones setecientos mil ciento sesenta y cinco con 00/100 (US$ 17,813,165/00) hasta el 20 de julio de 2016;

(iv) Que mediante instrumento firmado con fecha 13 de septiembre de 2016, el Deudor contrajo el aumento una garantía real prendaria de las obligaciones del Deudor que resultan emergentes de la línea de crédito conferida bajo el Contrato Marco, por la suma de dólares estadounidenses dieciocho millones setenta y cinco mil doscientos noventa con 00/100 (US$ 18,075,290/00);

(v) Que el conjunto de saldos de las obligaciones de capital que constituyen la Línea de Crédito adeudada (conforme ese término se define en el Contrato Marco) por el Deudor al Acreedor bajo el Contrato Marco asciende a la fecha del presente a veinte millones tres y ocho millones quinientos dos mil ciento noventa y seis con 00/100 (US$ 20,702,196/00).

(i) Que el Deudor realizó performará la venta de acciones representativas del 90% accionarial y votos de Alimentos Refrigerados S.A. ("ARSA") a Algodonera Avellaneda S.A., dedicada por la Venta a ARSA de los activos de la división de negocios de productos frescos de SanCor, incluyendo taxativamente dentro de tales activos las plantas industriales de productos frescos sitas en Morteros, Provincia de Córdoba ("Planta Córdoba"), o Arenaza, Provincia de Buenos Aires ("Planta Arenaza"), las marcas de propiedad de SanCor vinculadas al negocio de frescos como Yogs, Shimmy, Sublime, Flan Casero y Primeros Sabores, entre otras que se listan más abajo en el Anexo I, los canales de distribución, comercialización y venta por cuenta y orden, de suministro de materia prima leche, y de servicios administrativos, todo ello de acuerdo al inventario de activos que se consigna con mas detalle en el Anexo F del presente (la operación arriba descripta la "Compraventa de ARSA", y los activos objeto de la Compraventa de ARSA que se consignan en el Anexo F, los "Activos Transferidos");

(ii) Que el Deudor ha informado al Acreedor que el precio a ser pagado por Algodonera Avellaneda S.A. por la Compraventa de ARSA es de Dólares Estadounidenses cien Millones (U\$S 100.000.000) (el "Precio de Compraventa"), pagaderos del siguiente modo: (i) Dólares Estadounidenses Cincuenta Millones (U\$S 50.000.000) pagaderos en efectivo en fondos de libre e inmediata disponibilidad (los "Fondos en Efectivo"), de los cuales ya han sido cobrados Dólares Estadounidenses Veinte Millones (U\$S 20.000.000), cuando pague Dólares Estadounidenses Treinta Millones (U\$S 30.000.000) que serán abonados por Algodonera Avellaneda S.A. al Deudor en la siguiente forma: (i) simultáneamente con el perfeccionamiento de la Compraventa de ARSA, formando tal pago parte del precio de cierre de esta transacción la suma de Dólares Estadounidenses veintidós Millones (U\$S 22.000.000) (la m suma de Dólares Estadounidenses Tres Millones Quinientos Mil (U\$S 3.500.000) será abonada al Deudor dentro de las cuarenta y ocho (48) horas subsiguientes a la fecha en que el Deudor haya acreditado ante Algodonera Avellaneda S.A. el certificado de libre deuda hipotecaria expedido por el Banco de Desarrollo Económico y Social de Venezuela (BANDES), y (iii) la suma de Dólares Estadounidenses Tres Millones Quinientos Mil (U\$S 3.500.000) será abonada cuando sea presentado un informe ambiental sobre las Plantas de Córdoba y de Arenaza a transferirse, y hayan sido eliminadas y/o garantizadas las contingencias que se hubieren acordado en el contrato de Compraventa de ARSA; y (ii) Dólares Estadounidenses Cincuenta Millones (U\$S 50.000.000) pagaderos mediante delegación por parte del Deudor a ARSA, y asumiendo esta misma, de las deudas del Deudor cuyo detalle de importes de capital e intereses, acreedores, tasas de interés y fechas de vencimiento se detallan en el Anexo D del presente bajo el título, el "Detalle de Deudas Asumidas");

(iii) Que el Deudor ha informado al Acreedor que el Deudor utilizará los Fondos en Efectivo íntegramente para cancelar las obligaciones que se detallan en el Anexo B del presente (el uso de los Fondos en Efectivo, el "Destino de los Fondos");

(iv) Que el Deudor ha informado al Acreedor que la Compraventa de ARSA que el Deudor brindará servicios, en tanto, en oportunidad del perfeccionamiento de la Compraventa de ARSA, Algodonera Avellaneda S.A. suscribirá con el Deudor un compromiso del Deudor por 5 años la operación (gerenciamiento) de las Transferidas a cambio de honorarios de gerenciamiento equivalente a 1% de las ventas Netas de ARSA;

(v) Que, de acuerdo a lo contemplado en la cláusula 12.1° del Contrato Marco, en el supuesto que el Deudor perfeccionara la Compraventa de ARSA sin contar con la autorización previa, expresa y escrita del acreedor, ello constituiría un incumplimiento de las obligaciones del Deudor bajo el Contrato Marco que encuentra en vigor y exigibilidad de término;

F) Que, conforme a lo previsto en la Sección 9.2.15. del Contrato Marco, el Deudor [illegible] mantener en todo momento frente al Acreedor el principio "pari passu" en lo que [illegible] al cumplimiento de sus obligaciones con el resto de sus acreedores financieros;

G) Que el Deudor desea obtener la autorización expresa y escrita del Acreedor para perfeccionar la Compraventa de ARSA, y a cambio de ello, y como condición previa de tal autorización, ofrece cumplir todos y cada uno de los siguientes actos: (i) causar que Algodonera Avellaneda S.A., pague al Acreedor mediante depósito en la Cuenta del Mutuante antes del perfeccionamiento de la Compraventa de ARSA o simultáneamente con tal perfeccionamiento, la suma de Dólares Estadounidenses Un Millón Quinientos Mil (US$ 1.500.000) que se imputará a cancelación de obligaciones de capital del Deudor que resultan emergentes del Contrato Marco (el "Pago al Cierre"), (ii) en el día de hoy y a través de este Acuerdo, ceder a favor del Acreedor y con recurso contra el Deudor (quien responderá por la obligación de pago del deudor cedido) créditos contra Olam International Limited (una sociedad organizada y vigente de acuerdo a las leyes de Singapur, con domicilio en Temasek Blvd., NBR 11-02, Singapur) por la suma de Dólares Estadounidenses Un Millón Cuatrocientos Ochenta y Seis Mil Ochocientos (US$ 1.486.800) que surgen de la posición del embarque del mes de Noviembre del 2016 del contrato Nro. 16/PY16747 y que resultan pagaderos íntegramente por Olam International Limited con fecha máxima al 28 de diciembre de 2016 (el pago de tal crédito, que el deudor cedido efectúe al Acreedor se imputará a cancelación de obligaciones de capital del Deudor que resultan emergentes del Contrato Marco, y será en adelante referido como el "Pago de Olam"), y (iii) causar que simultáneamente con el perfeccionamiento de la Compraventa de ARSA, Algodonera Avellaneda S.A. retenga del Precio de Compraventa la suma de Dólares Estadounidenses Tres Millones Quinientos Mil (US$ 3.500.000) hasta que el Deudor evidencie frente a Algodonera Avellaneda S.A. que el Deudor ha obtenido un certificado de libre deuda hipotecaria emitido por BANDES, y causar que contra tal [illegible], Algodonera Avellaneda S.A. pague inmediatamente al Acreedor [illegible] depósito en la Cuenta del Mutuante la suma de Dólares Estadounidenses Tres [illegible] (US$ 3.500.000) que se imputará a cancelación de obligaciones de capital del Deudor que resultan emergentes del Contrato Marco (la "Retención al Cierre y el Pago Posterior").

EN MÉRITO A LOS HECHOS ANTERIORMENTE EXPUESTOS, las Partes acuerdan:

1.- El Deudor declara y garantiza bajo su exclusiva responsabilidad que toda la información consignada en los Considerandos [illegible] es verdadera, correcta y precisa en todos sus aspectos sustanciales, y no omite detallar ningún hecho que hubiera sido necesario informar para brindar al Acreedor un panorama completo de la Compraventa de ARSA, el Detalle de Deuda Asumida, y el Destino de los Fondos, y en la medida que antes del perfeccionamiento de la Compraventa de ARSA o simultáneamente con tal perfeccionamiento, Algodonera Avellaneda S.A. efectúe el Pago al Cierre mediante depósito en la Cuenta del Mutuante y Algodonera Avellaneda S.A. efectúe la Retención al Cierre y Pago Posterior, se interpretará por una parte que el perfeccionamiento de la Compraventa de ARSA no constituye una infracción del Deudor a lo previsto en la sección 9.2.17. del Contrato Marco, y por otra parte que el Destino de los Fondos y la delegación de deuda correspondiente al detalle de Detalle de Deuda Asumida no constituyen una infracción del Deudor a lo previsto en la sección 9.2.12. del Contrato Marco.

En este acto y a través de este Acuerdo, el Deudor cede y transfiere a favor del Acreedor y con recurso contra el Deudor (quien responderá por la obligación de pago del deudor cedido), créditos contra Olam International Limited (una sociedad organizada y vigente de acuerdo a las leyes de Singapur, con domicilio en Temasek Blvd., NBR 11-02, Singapur) por la suma de Dólares Estadounidenses Un Millón Cuatrocientos Ochenta y Seis Mil Ochocientos (US$ 1.486.800) que surgen de la posición de embarque del mes de Noviembre del 2016 del contrato Nro. 16/PY16747 y que resultan pagaderos íntegramente por Olam International Limited con fecha máxima al 28 de diciembre de 2016. El Deudor se obliga a notificar tal cesión por acto público al deudor cedido antes referido dentro de los 15 días corridos computados desde la firma de este Acuerdo

[illegible] los datos de la Cuenta del Mutuante para el [illegible] del Pago de Olam. [illegible], el Deudor declara y garantiza al Acreedor que [illegible] en forma [illegible] y [illegible] la cesión pactada en este párrafo [illegible] en la sección 12.6. de las condiciones generales del [illegible].

2.- En el supuesto que cualquiera de las condiciones y/ o perfeccionamiento de cesión y/ o [illegible] en el [illegible] no se cumplan en tiempo y forma, se reputará que el [illegible] ha denegado al Deudor la autorización para que este último perfeccione la Compraventa de ARSA. Lo mismo será de aplicación para el supuesto que luego de perfeccionada la Compraventa de ARSA el Deudor incumpla en dar a los Fondos en Efectivo el Destino de los Fondos.

A [illegible] a la Retención al Cierre y Pago Posterior, si el pago por parte de [illegible] Avellaneda [illegible] de la suma de Dólares Estadounidenses Tres Millones (U$S 3.000.000) mediante depósito en la Cuenta del Mutuante no se produjera antes del 31 de [illegible] 2017, se reputará que el Acreedor ha denegado al Deudor la autorización para que este último perfeccione la Compraventa de ARSA.

Asimismo, si el Pago de Olam no se produjera íntegramente mediante depósito en la Cuenta del Mutuante antes del 31 de diciembre de 2016, se reputará que el Acreedor ha denegado al Deudor la autorización para que este último perfeccione la Compraventa de ARSA. Sin perjuicio [illegible], el Acreedor quedará habilitado para perseguir el Pago de Olam contra el Deudor, quien responderá por [illegible].

En cualquiera de los casos en que conforme a este artículo 2 deba reputarse que el Acreedor ha denegado al Deudor la autorización para que este último perfeccione la Compraventa de ARSA, ello constituirá un Evento de Incumplimiento, con las consecuencias que el Contrato Marco [illegible] para ese tipo de eventos.

3.- La dispensa conferida en los términos de los artículos 1 y 2 precedentes deberá ser interpretada en términos literales y con carácter restrictivo. El hecho de que el Acreedor [illegible] la dispensa en los términos de este Acuerdo de ningún modo constituye un [illegible] o una obligación del Acreedor de conferir otras dispensas futuras aun cuando el Deudor [illegible] condiciones similares a las previstas en este Acuerdo.

4.- [illegible] por la dispensa [illegible] en los términos de los artículos 1 y 2 precedentes, [illegible] contemplado en este Acuerdo podrá reputarse como dispensa, quita, espera, remisión o [illegible] de derechos y acciones que tenga el Acreedor bajo el Contrato Marco. El hecho de que el Acreedor en cualquier momento no ejercitare alguno o algunos de esos derechos y acciones (incluyendo, pero no limitándose a, sus derechos y acciones en todo lo que concierne a la ejecución judicial [illegible] de Sumas Adeudadas vencidas y otros conceptos) no [illegible] al [illegible] en el futuro.

5.- El Deudor [illegible] conocer y aceptar que los pagos de parte de Algodonera Avellaneda S.A. al Acreedor y el Pago de Olam que se contemplan en este Acuerdo se imputarán a cancelación de obligaciones de [illegible] del Deudor que resultan emergentes del Contrato Marco.

6.- Este Acuerdo no modifica en modo alguno el Contrato Marco, cuyos términos y condiciones se mantienen válidos, vigentes y [illegible].

7.- Todos los términos de este Acuerdo que se caracterizan por llevar su letra inicial en mayúsculas y que no están definidos [illegible] en el mismo, ni sean la palabra inicial de una oración o un nombre propio, tendrán el significado que les hubiera sido asignado en el Contrato Marco.

En prueba de conformidad y aceptación, se suscriben 3 ejemplares de un mismo tenor en la Ciudad de Buenos Aires, República Argentina, a los 5 días de octubre de 2016.

Firma/s certificada/s en folio de
Actuación Notarial N° F002783315
Bs. As. ..05.. /..10.. /..2016

Firma/s certificada/s en Folio
N° .....5....0028605151......
.....05 – 10 – 2016......



ACTA DE CERTIFICACIÓN DE FIRMAS

## ANEXO

F 002806451

Buenos Aires, 05 de    Octubre    de  2018  . En mi carácter de escribano

Subrogante del Registro Notarial Nº 641

CERTIFICO Que la/s  firma/s                                                que obra/n en el

documento que adjunto a esta foja, cuyo reconocimiento y certificación se

formaliza simultáneamente por ACTA número 181                    del LIBRO

número  297                              . es/son puesta/s en mi presencia por las persona/s

cuyos nombres, intervenciones de identidad y justificación de identidad se indican:

Eduardo Angel ZAGO, DNI 14.343.056, quien justifica su identidad de a-

cuerdo al inciso b) del artículo 306 del Código Civil y Comercial, manifes-

tando conocer los términos del artículo 20 de la Ley 25.246 de la Unidad

de Información Financiera (UIF) y su Resolución 11/2011 y declara bajo

juramento no estar comprendido en ninguno de los supuestos de dicho

artículo y Resolución y actúa en su carácter de Apoderado de la sociedad

"SANCOR COOPERATIVAS UNIDAS LIMITADA", con domicilio legal en

la calle Tte. Gral. Richieri 15, 2322 Sunchales, Provincia de Santa Fe,

inscripta en la Matrícula 772 del Registro Nacional de Cooperativas, de la

Provincia de Santa Fe, Departamento Castellanos, conforme lo acredita

con el Poder Especial de fecha 5 de marzo de 2014, pasado al folio 117

del Registro 640 a cargo de la escribana Analia Roch de la ciudad de

Sunchales, Provincia de Santa Fe, la documentación relacionada tengo a

la vista y le confiere facultades suficientes para suscribir el documento

adjunto, doy fe.-



ACTA DE CERTIFICACIÓN DE FIRMAS
LEY 404

## ANEXO

F 002787345

1  Buenos Aires, 05 de   octubre   de 2016  / En mi carácter de escribano/
2  Titular del Registro de Contratos Públicos 625 de Capital Federal - - - - -
3  CERTIFICO Que la/s       -Firma-       que obra/n en el
4  documento que adjunto a esta foja cuyo requerimiento de certificación se
5  formaliza simultáneamente por ACTA número       -186-       del LIBRO
6  número       - 11 -       es/son puesta/s en mi presencia por la/s personas
   cuya/s nombre/s, cuyo/s firma/s, documento/s de identidad y justificación de identidad - indican:
7  Hernan VERLY, D.N.I. 20.016.276, persona de mi conocimiento, doy fe.
8  Quien manifiesta conocer los términos del artículo 20 de la Ley 25.246 de
9  la Unidad de Información Financiera (UIF) y su Resolución 11/2011 y
10  declara bajo juramento no estar comprendido en ninguno de los
11  supuestos de dicho artículo y Resolución. ACTÚA en nombre y
12  representación y como apoderado de "HG TOF B.V.", con domicilio legal
13  en 1043 BW Amsterdam, Naritaweg 165, Reino de los Países Bajos, lo que
14  acredita con el Poder Especial conferido el 07/06/2016, por ante la
15  escribana adjunta Merge Elisabje Catharina Waanders, quien actúa en
16  sustitución del escribano de derecho civil Petrus Leopoldus Elisa Maurice
17  de Meijer, ambos de la Ciudad de Amsterdam, Reino de los Países Bajos,
18  cuyo original debidamente traducido, legalizado y apostillado, con
19  facultades suficientes tengo a la vista, doy fe, firma certificada en fojas
20  F012854346, F002787344 y F002787345.
21

<u>Anexo F</u>
<u>Inventario de Activos Transferidos</u>

1. Las fracciones de terreno sitas en la localidad de Arenaza, Partido de Lincoln, Provincia de Buenos Aires (y los bienes a ellos adheridos).
2. Las fracciones de terreno sitas en la calle Barrientos s/n de Camino a Montecristo, Departamento Capital, Provincia de Córdoba (y los bienes a ellos adheridos).
3. Las marcas detalladas a continuación:



6





Anexo G
Detalle de Deuda Asumida
Acreedor: BAF Latam Trade Finance Fund BV.
Deuda: capital.
Tasa de interés: 11% anual.

| Fecha de Contrato | Fecha de Sol. | Fecha de prórroga | Fecha de Vto. | Capital |
|---|---|---|---|---|
| 02/11/2015 | | | 02/05/2016 | 3.437.570,45 |
| 28/08/2015 | | 29/01/2016 | 27/07/2016 | |
| 26/08/2015 | | 29/01/2016 | 28/09/2016 | 4.467.355,50 |
| 11/11/2015 | | 29/01/2016 | 27/07/2016 | |
| 11/11/2015 | | 29/01/2016 | 11/11/2016 | 5.131.693,07 |
| 20/11/2014 | 19/11/2015 | | 09/05/2016 | 3.335.156,00 |
| 20/11/2014 | 23/04/2015 | 29/01/2016 | 22/04/2016 | 58.691,52 |
| 20/11/2014 | 07/05/2015 | 19/01/2016 | 08/05/2016 | 526.470,93 |
| 20/11/2014 | 30/05/2015 | 29/01/2016 | 30/05/2016 | 709.059,67 |
| 20/11/2014 | 26/05/2015 | 29/01/2016 | 26/05/2016 | 527.247,17 |
| 20/11/2014 | 09/05/2015 | 29/01/2016 | 10/05/2016 | 958.401,94 |
| 20/11/2014 | 01/08/2015 | 29/01/2016 | 01/08/2016 | 529.485,14 |
| 20/11/2014 | 18/06/2015 | 29/01/2016 | 18/06/2016 | 1.213.853,41 |
| 20/11/2014 | 14/05/2015 | 29/01/2016 | 13/05/2016 | 301.359,20 |
| 20/11/2014 | 15/05/2015 | 29/01/2016 | 17/05/2016 | 11.907.728,11 |
| 20/11/2014 | 10/06/2015 | 10/03/2016 | 08/06/2016 | 682.670,73 |
| 20/11/2014 | 11/06/2015 | 10/03/2016 | 10/06/2016 | 7.304.534,85 |
| 20/11/2014 | 11/05/2015 | 10/03/2016 | 10/08/2016 | 9.132.834,05 |
| 04/07/2016 | 19/03/2016 | | 22/08/2016 | 3.036.440,15 |
| | | | | 50.000.000,00 |



Anexo H
Destino de los Fondos

1. Dólares estadounidenses séis millones con 00/100 (US$ 6.000.000,00) aproximadamente a la Cancelación de Deuda a IIG conforme al presente acuerdo.
2. 50% a Inversión en reestructuración de la Cooperativa.
3. 50% a Capital de Trabajo.



### OCTAVA ENMIENDA AL CONTRATO DE LINEA DE CREDITO
### PARA LA PREFINANCIACIÓN DE EXPORTACIONES

Entre.

(i) **SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202, Piso 3, Ciudad de Buenos Aires, República Argentina, representada en este acto por el Sr. Eduardo Angel Zago, en su carácter de apoderado, por una parte (en adelante, el "MUTUARIO");

(ii) **SANCOR DO BRASIL, Productos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República de Brasil, representada en este acto por los Sres. Daniel Jorge Valicente y Miriam Rita Paita, en su carácter de apoderados, domiciliada en Barueri, Estado de Sao Paulo, en Alameda Araguaia N°933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte (en adelante, el "FIADOR"); y

(iii) **IIG TOF B.V.**, a través de su representante **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por los Sres. _J. Van Rossum i J. Bloks_, en su carácter de _apoderados_, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte (en adelante, el "MUTUANTE"); y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados, las "Partes"; y

**CONSIDERANDO:**

(a) Que, con fecha 21 de diciembre de 2009, las Partes firmaron un Contrato Marco de línea de crédito para prefinanciación de exportaciones, que fuera luego modificado por enmiendas respectivamente otorgadas con fechas 15 de marzo de 2010, 13 de abril de 2010, 29 de noviembre de 2010, 1° de agosto de 2011, 21 de septiembre de 2011, 20 de abril de 2012 y 28 de agosto de 2014 (todos esos instrumentos cuyas copias se adjuntan el presente como **Anexo A**, en adelante conjuntamente referidos como el "Contrato Marco");

(b) Que es intención del MUTUARIO solicitar al MUTUANTE un nuevo préstamo bajo el Contrato Marco, que revista el carácter de prefinanciación de exportaciones por la suma de dólares estadounidenses un millón (US$ 1.000.000) en concepto de capital, pagadera el 29 de julio de 2016, y con amortización mensual de intereses, desde la fecha de desembolso de ese préstamo hasta la fecha de pago de capital; y

(c) Que el MUTUANTE está dispuesto a otorgar al MUTUARIO el préstamo mencionado en el Considerando (b) de este instrumento.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de este instrumento, las Partes suscriben la presente Octava Enmienda al Contrato Marco (la "Octava Enmienda"), de conformidad con las presentes cláusulas:

1.- En este acto el MUTUARIO solicita al MUTUANTE, y éste último acuerda conferir a favor del primero, un préstamo al amparo del Contrato Marco por la suma de dólares estadounidenses un millón (US$ 1.000.000) en concepto de capital, que deberá ser restituida y pagada por el MUTUARIO al MUTUANTE el 29 de julio de 2016, con intereses a una tasa del once con 85/100 por ciento (11,85%) anual (considerando un año de 360 días), los que deberán ser pagados por el MUTUARIO al MUTUANTE en seis cuotas iguales, mensuales y consecutivas, con vencimiento la primera de ellas el 29 de febrero de 2016, y venciendo la última de ellas junto con el vencimiento de la obligación de pago de capital del préstamo, de acuerdo al siguiente detalle de obligaciones de pago de capital e intereses a cargo del MUTUARIO:

| Moneda | Fecha de vencimiento de obligaciones del MUTUARIO bajo el Préstamo a ser otorgado al MUTUARIO al amparo del Contrato Marco. | Capital del Préstamo por US$ 1.000.000 a ser otorgado al MUTUARIO al amparo del Contrato Marco | Intereses a una tasa de 11,85% anual considerando un año de 360 días |
|---|---|---|---|
| US$ | 29 de febrero de 2016 | -------------------- | US$ 10.745,25 |
| US$ | 29 de marzo de 2016 | -------------------- | US$ 10.745,25 |
| US$ | 29 de abril de 2016 | -------------------- | US$ 10.745,25 |
| US$ | 29 de mayo de 2016 | -------------------- | US$ 10.745,25 |
| US$ | 29 de junio de 2016 | -------------------- | US$ 10.745,25 |
| US$ | 29 de julio de 2016 | US$1.000.000 | US$ 10.745,25 |

El MUTUARIO se obliga irrevocable e incondicionalmente a pagar al MUTUANTE las Sumas Adeudadas identificadas en la tabla precedente de esta cláusula 1, en las Fechas de Vencimiento correspondientes allí identificadas, mediante depósito en la Cuenta del Mutuante.

2.- En línea con lo contemplado en el punto 1.- precedente, en este acto el MUTUARIO entrega al MUTUANTE la Solicitud de Desembolso y el Pagaré cuyas copias se adjuntan a esta Octava enmienda como **Anexo B**.

3.- El MUTUANTE en este acto se obliga a desembolsar mediante transferencia a ser acreditada en la Cuenta del Mutuario dentro del Plazo de Acreditación el Préstamo al amparo del Contrato Marco, por la suma de dólares estadounidenses un millón (US$ 1.000.000) que se contempla en el apartado 1 de esta Octava Enmienda. El MUTUANTE podrá acreditar ese desembolso por cualquier medio de prueba.

4.- Modifícase el apartado 9.1.10 de la cláusula NOVENA del Contrato Marco, el cual quedará redactado del siguiente modo:

*"CLAUSULA NOVENA: MANIFESTACIONES, DECLARACIONES Y COMPROMISOS DEL MUTUARIO Y DEL FIADOR*

*9.1.10 Que el balance del MUTUARIO al 30 de junio de 2015, los correspondientes estados de resultados y situación patrimonial, anexos y demás información allí contenida referente al MUTUARIO, de los cuales el MUTUARIO ha entregado copias al MUTUANTE debidamente firmadas por sus respectivas autoridades, representan en forma correcta la situación financiera y resultado de operaciones del MUTUARIO a dicha fechas, y que desde el 30 de junio de 2015 no ha ocurrido ningún cambio adverso, ni ningún hecho que pudiera generar un cambio adverso en los negocios, operaciones, perspectivas o condición financiera del MUTUARIO; y"*

5.- Las Partes acuerdan notificar la presente Octava Enmienda a Banco de Servicios y Transacciones S.A. en su carácter de fiduciario del Fideicomiso –conforme se define en el Contrato Marco-- mediante el envío de una nota conforme el modelo que se adjunta a la presente como **Anexo C**. Dicha nota será enviada por el MUTUARIO dentro de las 48 horas de suscripta esta Octava Enmienda y –como condición de validez de esta Octava Enmienda-- deberá entregar dentro de ese plazo al MUTUANTE una copia de aquella nota con la constancia de recepción por parte del fiduciario.

6.- Nada de lo previsto en esta Octava Enmienda implica novación de obligaciones del MUTUARIO, y permanecen vigentes todas las Garantías.

7.- Con excepción de aquellos términos expresamente modificados bajo esta Octava Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las Solicitudes de Desembolso remitidas y aceptadas hasta la fecha, así como otros acuerdos e instrumentos otorgados entre las Partes, permanecen válidos, vigentes e inalterados, con plena vigencia.

8.- Todos los términos de esta Octava Enmienda que se caractericen por llevar su letra inicial en mayúsculas y que no estén definidos expresamente en la misma, ni sean la palabra inicial de una oración ni un nombre propio, tendrán el significado que les hubiera sido asignado en el Contrato Marco.

9.- Se deja constancia que en un todo de acuerdo con la Quinta Enmienda al Contrato Marco que se suscribiera el 21 de septiembre de 2011, el MUTUARIO pagará al MUTUANTE en concepto de gastos administrativos un cero coma quince por ciento (0,15%) de dólares estadounidenses un millón (US$ 1.000.000), es decir la suma de dólares estadounidenses mil quinientos (US$ 1.500), que deberá ser solventada por el MUTUARIO, dentro de los diez (10) días de la fecha del presente.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el por el MUTUANTE en _____, _____, a los 28 días de enero de 2016.


Por SANCOR COOPERATIVAS UNIDAS LTDA.
Nombre: Eduardo Angel Zago
Carácter: Apoderado


Por: **SANCOR DO BRASIL Produtos Alimenticios Ltda.**
Nombre: Daniel J. Valicente – Miriam R. Paita
Carácter: Apoderados

Firma/s certificada/s en Folio
N°....FO226SS924......
Bs. As....28 - 1 - 2016....

Por. IIG TOF B.V.
Nombre: International Management ... B.V.
Carácter: Managing ...

MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

 

## ANEXO                                          F 002655924

1  Buenos Aires,  28 de      Enero      de    2016 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s   Firma/s                    que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número  132           del LIBRO

6  número  282              , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s, documento/s de  identidad y justificación de identidad se indican:

8  Eduardo Angel ZAGO, DNI 14.343.056; Miriam Rita PAITA, DNI

9  14.563.027 y Daniel Jorge VALICENTE, DNI 21.050.725, quienes justifi-

10 can sus identidades de acuerdo al inciso a) del artículo 1002 del Código

11 Civil, y manifiestan conocer los términos del artículo 20 de la Ley 25.246

12 de la Unidad de Información Financiera (UIF) y su Resolución 11/2011 y

13 declaran bajo juramento no estar comprendidos en ninguno de los su-

14 puestos de dicho artículo y Resolución y actúan: El primero en su carácter

15 de Apoderado de la sociedad "SANCOR COOPERATIVAS UNIDAS LI-

16 MITADA", con domicilio en Súnchales, Provincia de Santa Fe, inscripta en

17 la Matrícula 772 del Registro Nacional de Cooperativas, de la Provincia

18 de Santa Fe, Departamento Castellanos, conforme lo acredita con el Po-

19 der Especial de fecha 5 de marzo de 2014, pasado al folio 117 del Re-

20 gistro 640 a cargo de la escribana Analía Roch de la ciudad de Súncha-

21 les, Provincia de Santa Fe, asimismo lo hace el último en su carácter de

22 apoderado de la sociedad "SANCOR COOPERATIVAS UNIDAS LIMI-

23 TADA", con el Poder Especial de fecha 15 de diciembre de 2010, pasado

24 al folio 1103 del Registro 640 de la ciudad de Sunchales, Provincia de

25 Santa Fe, a cargo de la escribana Analia Roch y los dos últimos en su




F 002655924

carácter de Apoderads de la so ciedad extranjera "SANCOR DO BRASIL

Produtos Alimenticios LTDA." lo que acredita con el Poder Especial de

fecha 17 de diciembre de 2009, debidamente certificado con fecha 17 de

diciembre de 2009 y debidamente Autorizado por el Ministerio de Relacio-

nes Exteriores con fecha 7 de enero de 2010 y traducido con fecha 18 de

enero de 2010 y legalizado bajo el número 948 de fecha 19 de enero de

2010, toda la documentación relacionada tengo a la vista y les confiere fa

cultades suficientes para suscribir el documento adjunto, doy fe.-



MARTIN R. ARANA (h)
ESCRIBANO
MAT. 4370

26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50

**ANEXO A**
**Contrato Marco de Línea de Crédito y sus Enmiendas**



**ANEXO B**
**Pagaré y Solicitud de Desembolso firmadas en el día de la fecha**



**ANEXO C**

*Nota al Fiduciario*

Ciudad Autónoma de buenos Aires, [__] de [__] de [__].

Sres.
**Banco de Servicios y Transacciones S.A.**
Av. Corrientes 1174, Piso 3°
Ciudad Autónoma de Buenos Aires
Atte.: Martín Culeddu
Presente

**Ref.:** **Contrato de Fideicomiso en**
**Garantía SANCOR – IIG TOF B.V.**

Por la presente en nuestro carácter de Fiduciante y Beneficiario del Contrato de Fideicomiso en Garantía [_____] – IIG TOF B.V. de fecha [_____], notificamos a Uds. que con fecha [_____] se ha celebrado la Octava Enmienda al Contrato de Línea de Crédito de fecha 21 de diciembre de 2009, garantizado bajo el fideicomiso mencionado. Se adjunta a la presente copia certificada de dicha documentación.

Sin otro particular, saludamos a Uds. atte.

_____
Por: **IIG TOF B.V.**
Nombre:
Carácter:


_____
Por: **SANCOR COOPERATIVAS UNIDAS LTDA.**
Nombre: [completar]
Carácter: [completar]

A los [__] de [__] de [__], [_____] y [_____] en su calidad de apoderados de Banco de Servicios y Transacciones S.A., actuando en su calidad de Fiduciario del Fideicomiso de Garantía [_____] – IIG TOF B.V. de fecha [_____], reciben la presente notificación.

_____
Por: **BANCO DE SERVICIOS Y TRANSACCIONES S.A.**
Nombre: [completar]
Carácter: [completar]

**NOVENA ENMIENDA AL CONTRATO DE LINEA DE CREDITO
PARA LA PREFINANCIACIÓN DE EXPORTACIONES**

Entre:

(i) **SANCOR COOPERATIVAS UNIDAS LIMITADA**, una cooperativa de primer grado, constituida y registrada bajo las leyes de la República Argentina, con domicilio en Tacuarí 202, Piso 3, Ciudad de Buenos Aires, República Argentina, representada en este acto por el Sr. Eduardo Angel Zago (DNI 14.343.056), en su carácter de apoderado, por una parte (en adelante, el "MUTUARIO");

(ii) **SANCOR DO BRASIL, Productos Alimenticios Ltda.**, una compañía organizada bajo las leyes de la República de Brasil, representada en este acto por los Sres. Daniel Jorge Valicente (DNI 21.050.725 y Mario Guillermo Mustoni Marquestau, DNI 16.062.288, en su carácter de apoderados, domiciliada en Barueri, Estado de Sao Paulo, en Alameda Araguaia N°933, Sala 91/92, Alphaville – CEP 06455-000, República del Brasil, por otra parte (en adelante, el "FIADOR"); y

(iii) **IIG TOF B.V.**, a través de su representante **TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V.**, representado en este acto por el Sr. Hernán Verly (DNI 20.010.276), en su carácter de apoderado, domiciliado en Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands, por la otra parte (en adelante, el "MUTUANTE"); y

El MUTUANTE, el MUTUARIO y el FIADOR conjuntamente denominados, las "Partes", y

**CONSIDERANDO:**

(a) Que, con fecha 21 de diciembre de 2009, las Partes firmaron un Contrato Marco de línea de crédito para prefinanciación de exportaciones, que fuera luego modificado por enmiendas respectivamente otorgadas con fechas 15 de marzo de 2010, 13 de abril de 2010, 29 de noviembre de 2010, 1° de agosto de 2011, 21 de septiembre de 2011, 20 de abril de 2012, 28 de agosto de 2014 y 28 de enero de 2016 (todos esos instrumentos cuyas copias se adjuntan el presente como **Anexo A**, en adelante conjuntamente referidos como el "Contrato Marco"), cuyas definiciones, términos y condiciones se mantienen vigentes, resultan aplicables a la presente, y se tienen por reproducidas en la presente en la medida que no sean expresamente modificadas por la presente Novena Enmienda al Contrato Marco;

(b) Que es intención de las Partes dejar sin efecto el fideicomiso suscripto el 21 de diciembre de 2009 al cual fueran transferidos los Bienes Fideicomitidos por el MUTUARIO en su carácter de Fiduciante al Banco de Servicios y Transacciones S.A. en su carácter de fiduciario, a efectos de garantizar el cumplimiento de las obligaciones del Contrato Marco;

(c) Que es intención de las Partes incorporar a los Creditos Cedidos bajo el Contrato Marco todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Hoogwegst International B.V., Olam International Limited, Duntower Corporation Limited y Rumi International Dairy Products, entre el 2 de junio de 2016 y hasta la cancelación total de la Línea de Crédito;

(d) Que es intención de las Partes que el MUTUANTE se comprometa a entregar al MUTUANTE copias certificadas de cada uno de los comprobantes de pago de impuesto de retención que el MUTUARIO deba tributar a la Administración Federal de Ingresos Públicos con motivo de cada pago de Sumas Adeudadas que el MUTUARIO haga al MUTUANTE, dentro de los quince (15) días computados desde la fecha de cada pago de impuesto de retención;

(e) Que es intención de las Partes modificar la Cláusula 6 del Contrato Marco en lo relativo a la eventual imposibilidad de obtención de dólares estadounidenses o de la realización del pago en esa moneda y reemplazarla por otra más ajustada a los tiempos actuales; y



1





Que es intención de las Partes que el MUTUARIO otorgue más garantías de sus obligaciones bajo el Contrato Marco, incluyendo pero no limitándose a prendas, y en particular que el MUTUARIO se obligue a constituir antes del 29 de julio de 2016, hipoteca o hipotecas sobre bienes inmuebles a satisfacción del MUTUANTE por un monto total de Dólares Estadounidenses Veinticuatro Millones Seiscientos Cuarenta y Cuatro Mil Cuarenta y Seis (US$ 24.644.046);

(g) Que es intención de las partes que el MUTUARIO y el FIADOR se obliguen a no constituir garantías reales de ninguna naturaleza sobre ninguno de sus bienes, tanto materiales como inmateriales, sin el previo consentimiento expreso por escrito del MUTUANTE.

(h) Que es intención de las Partes que la Línea de Crédito puesta a disposición por el MUTUANTE pase a ser de Dólares Estadounidenses treinta y ocho millones setecientos dos mil ciento treinta y siete con 00/100 (US$ 38.702.137,00).

(i) Que es intención de las Partes que la Fecha de Vencimiento de cada Solicitud de Desembolso tenga un máximo de doce (12) meses, contemplándose hasta dos prórrogas por igual término (siempre sujeto a la aprobación del MUTUANTE), pero debiendo vencer indefectiblemente antes del 29 de julio de 2019.

(j) Que es intención de las Partes que la Tasa de Descuento a ser acordada en cada Solicitud de Desembolso sea reemplazada por una Tasa de Interés del 11,85% anual, pagadera trimestralmente, que se aplicará a cada desembolso de fondos que el MUTUANTE efectúe o haya efectuado a favor del MUTUARIO para calcular el monto de las Sumas Adeudadas.

(k) Que es intención de las Partes que los Warrants que el MUTUARIO debe suscribir y entregar al MUTUANTE como garantía adicional del pago conforme el Contrato Marco, deban ser equivalentes a una suma equivalente en todo momento como mínimo al 25% de la Línea de Crédito expresada en Dólares Estadounidenses.

(l) Que es intención de las Partes que el MUTUARIO provea un listado de todas las garantías que haya otorgado hasta el día 5 de junio de 2016, y que el MUTUARIO se obligue a informar al MUTUANTE sobre todas las nuevas deudas contraídas y garantías otorgadas en forma mensual, sin excepciones. Asimismo es intención de las Partes que el MUTUARIO se obligue a notificar al MUTUANTE y obtener su consentimiento previo de manera expresa y por escrito, antes de adoptar cualquier decisión que pudiera afectar el negocio y/o el valor llave del MUTUARIO.

(m) Que es intención de las Partes que la aprobación en una reunión de socios del Fiador de las obligaciones asumidas por el mismo en relación al Contrato Marco, por el voto de los socios que representen la mayoría de su capital social, sea una condición precedente para el mantenimiento de la validez y la vigencia de la Línea de Crédito.

En mérito a las consideraciones precedentemente expuestas, las cuales forman parte integrante de la presente, las Partes suscriben la presente Novena Enmienda al Contrato Marco (la "Novena Enmienda"), de conformidad con las presentes cláusulas:

1.- Déjase sin efecto el fideicomiso suscripto el 21 de diciembre de 2009 al cual fueran transferidos los Bienes Fideicomitidos por el MUTUARIO en su carácter de Fiduciante al Banco de Servicios y Transacciones S.A. en su carácter de fiduciario, a efectos de garantizar el cumplimiento de las obligaciones del Contrato Marco;

2.- En garantía de pago de la Línea de Crédito Adeudada y del cumplimiento de todas y cada una de las obligaciones asumidas por el MUTUARIO bajo los Documentos de la Operación, y como medio de pago de las Sumas Adeudadas - conforme lo establecido en la Cláusula 5.3 del Contrato Marco- el MUTUARIO cede al MUTUANTE todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO haya realizado o realice a Hoogwegst International B.V., Olam International Limited, Duntower

2

Corporation Limited y Rumi International Dairy Products, entre el 2 de junio de 2016 y hasta la cancelación total de la Línea de Crédito, conforme lo estipulado bajo la Cláusula 4 del Contrato Marco. La referida cesión comprende todos los derechos y acciones que posee el MUTUANTE y le corresponden respecto de los Créditos Cedidos y de las consecuencias precedentemente citadas, colocando al MUTUANTE en su mismo lugar y grado de privilegio con toda la extensión y amplitud pertinente, subrogándolo además en todos los derechos o acciones de cumplimiento de contrato y/o cobro que eventualmente existieran con respecto a dichos créditos, sin perjuicio de las obligaciones emergentes de las obligaciones contractuales con los Deudores Cedidos de las cuales surjan los Créditos Cedidos, que quedarán a cargo exclusivo del MUTUARIO. El MUTUARIO se compromete además a ejecutar todo documento o contrato necesario que sea necesario para la notificación e implementación de estas cesiones.

3.- Modifícase el considerando (e) del Contrato Marco el cual quedará redactado de la siguiente manera:

"(e)    Que el MUTUANTE está dispuesto a otorgar una línea de crédito de hasta Dólares Estadounidenses Treinta y Ocho Millones Setecientos Dos Mil Ciento Treinta y Siete con 00/100 (US$ 38.702.137,00) para el MUTUARIO, sujeto a los términos y condiciones del presente Contrato, en la medida que y siempre y cuando, (i) el MUTUARIO y el FIADOR se obliguen solidariamente a su repago y al cumplimiento de todas las obligaciones asumidas bajo el Contrato Marco; y (ii) que las Garantías (conforme se las define más adelante) se mantengan plenamente vigentes y exigibles hasta la expiración del Contrato Marco."

4.- Modifícase las siguientes definiciones contempladas en la Cláusula 1 del Contrato Marco:

"Crédito/s Cedido/s" significa los siguientes créditos del MUTUARIO contra Deudores Cedidos:

(i)    todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Fonterra y/o sus Afiliadas y/o subsidiarias, entre 21 de Diciembre de 2009 y hasta la fecha de cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de venta que el MUTUARIO celebre con Fonterra.

(ii)    todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a BARIVEN c/o PDVSA y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la fecha de cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimiento de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de ventas el MUTUARIO celebre con BARIVEN c/o PDVSA.

(iii)    todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Arthur Schuman y/o sus Afiliadas y/o subsidiarias, entre el 21 de Diciembre de 2009 y hasta la fecha de cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de ventas que el MUTUARIO celebre con Arthur Schuman.

(iv)    todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Hoogwest International B.V. y/o sus Afiliadas y/o subsidiarias, entre el 2 de junio de 2016 y hasta la fecha de cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de ventas que el MUTUARIO celebre con Hoogwest International B.V.

(v)    todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Olam International Limited y/o sus Afiliadas y/o subsidiarias, entre el 2 de junio de 2016 y hasta la fecha de cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de

3

embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de ventas que el MUTUARIO celebre con Olam International Limited.

(vi)   todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Duntower Corporation Limited y/o sus Afiliadas y/o subsidiarias, entre el 2 de junio de 2016 y hasta la fecha de cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de ventas que el MUTUARIO celebre con Duntower Corporation Limited.

(vii)   todos los créditos actuales y futuros que le correspondan al MUTUARIO en virtud de las ventas de mercadería que el MUTUARIO realice a Rumi International Dairy Products y/o sus Afiliadas y/o subsidiarias, entre el 2 de junio de 2016 y hasta la fecha de cancelación total de la Línea de Crédito Adeudada, incluyendo todos los derechos crediticios derivados de los conocimientos de embarque, remitos, facturas y demás documentos emitidos en virtud de las operaciones de ventas que el MUTUARIO celebre con Rumi International Dairy Products.

"Cuenta del Mutuante" significa la cuenta bancaria de titularidad del MUTUANTE cuyos datos se detallas a continuación:

| | |
|---|---|
| Bank: | Deutsche Bank Trust Company Americas<br>60 Wall Street, New York. NY 10005 |
| ABA#: | 021-001-033 |
| SWIFT: | BKTRUS33 |
| Account Name: | I/G TOF B V  fbo SANCOR LTDA. |
| Account Number: | 04-886-275 |

"Deudores Cedido/s": significa Arthur Schuman y/o Fonterra y/o NARIVEN c/o PDVSA y/o Hoogwegst International B.V. y/o Olam International Limited y/o Duntower Corporation Limited y/o Rumi International Dairy Products.

"Documentos de la Operación": significa el presente Contrato Marco, las Solicitudes de Desembolsa derivadas del mismo, los Pagarés, los Warrants y los contratos u órdenes de compra que causan los Créditos Cedidos.

"Evento de Incumplimiento" significa cualquiera de los eventos, condiciones o circunstancias enumeradas en la cláusula DECIMA Sección 10.1 y 10.2 del Contrato Márco, u/o cualquier incumplimiento de las obligaciones establecidas en el Contrato Marco.

"Fecha/s de Vencimiento" significa las fechas de vencimiento para el pago de las Sumas Adeudadas indicadas en cada una de las Solicitudes de Desembolso. Las Fechas de Vencimiento deberán ser anteriores a los 12 (doce) meses calculados desde la fecha de cada Solicitud de Desembolso e indefectiblemente anteriores al 29 de julio de 2019.

"Fideicomiso" es la propuesta de cesión fiduciaria y fideicomiso con fines de garantía suscripta el día 21 de diciembre de 2009 por el MUTUARIO en carácter fiduciante, remitida al Banco de Servicios y Transacciones S.A como fiduciario y al MUTUANTE como potencial beneficiario, en virtud de la cual, el MUTUARIO –a efectos de garantizar el cumplimiento de las obligaciones del presente Contrato Marco– transfirió los Bienes Fideicomitidos para que el fiduciario los administre de conformidad con lo allí dispuesto. Dicho fideicomiso es dejado sin efecto por las Partes a través de la Novena Enmienda al Contrato Marco perfeccionada el 2 de junio de 2016.

"Garantías": significa los Pagarés, los Warrants, la cesión de los Créditos Cedidos, las hipotecas, las prendas y cualquier otro tipo de garantías que el MUTUARIO pudiere otorgar a satisfacción del MUTUANTE.

"Línea de Crédito" significa la única línea de crédito que, sujeto a los términos y condiciones de los Documentos de la Operación, el MUTUANTE pondrá a disposición del MUTUARIO, por hasta el monto total y máximo de Dólares Estadounidenses TREINTA Y OCHO MILLONES SETECIENTOS DOS MIL CIENTO TREINTA Y SIETE con 00/100 (US$ 38.702.137).





4

"*Plazo de Disponibilidad*" significa el plazo de doce meses fijado exclusivamente en beneficio del MUTUANTE, que transcurre desde la fecha de la firma de la presente transcripción reordenada del Contrato Marco, durante el cual el MUTUANTE se compromete a mantener disponible la Línea de Crédito a favor del MUTUARIO.

"*Suma/s Adeudada/s*" significa los fondos que el MUTUARIO debe restituir en pago al MUTUANTE bajo cada Solicitud de Desembolso incluyendo todos los intereses que resulten aplicables, conforme el presente Contrato Marco.

5.- Elimínase la definición de "*Bienes Fideicomitidos*" de la Cláusula 1 del Contrato Marco.

6.- Incorporase las siguientes definiciones a la Cláusula 1 del Contrato Marco:

"*Duntower Corporation Limited*" significa Duntower Corporation Limited, con domicilio en Universal House 88-94 Wentworth Street, London - U.K.

"*Hoogwegst International B.V.*" significa Hoogwegst International B.V., con domicilio en Groningensingel 1 H 6835 EA, Holanda.

"*Olam International Limited*" significa Olam International Limited, con domicilio en Temasek Blvd. NBR. 11-02 / Singapour.

"*Opción/es de Prórroga*" tiene el significado indicado en la Cláusula quinta del presente Contrato Marco.

"*Rumi International Dairy Products*" significa Rumi International Dairy Products, con domicilio en 1 Rue de la Corderie Centra 312 - 94586 Rungis – France.

7.- Reemplácese la definición de Tasa de Descuento incluida en la Cláusula 1 del Contrato Marco por la siguiente definición de Tasa de Interés:

"*Tasa de Interés*" significa la tasa de interés del once con 85/100 por ciento (11,85%) anual, pagadera trimestralmente, que el MUTUANTE aplicará a cada desembolso de fondos que el MUTUARIO le solicite o le haya solicitado, para calcular el monto de las Sumas Adeudadas.

8.- Modifícase los incisos (d) y (e) de la Cláusula 2.2 del Contrato Marco, los cuales quedarán redactados de la siguiente manera:

"*(d) Notificación a los Deudores Cedidos*. Que en caso de existieren Créditos Cedidos, el MUTUARIO haya notificado a los Deudores Cedidos las cesiones de los Créditos Cedidos en los términos establecidos en la Sección 4.6 del presente Contrato Marco; a cuyo efecto el MUTUARIO deberá entregar al MUTUANTE el original de tales notificaciones recibidas y aceptadas por los Deudores Cedidos.

*(e) Aprobaciones Societarias del Fiador.* Que las obligaciones que contrae el Fiador de conformidad a la Cláusula Octava del presente Contrato Marco, y todas aquellas que contraiga en el futuro con relación al mismo, hayan sido aprobadas en una reunión de socios del Fiador, por el voto de los socios que representen la mayoría de su capital social."

9.- Modifícase la Cláusula 3.1 del Contrato Marco la cual quedará redactada de la siguiente manera:

*3.1 Solicitud de Desembolso.* A fin de solicitar al MUTUANTE un desembolso bajo la Línea de Crédito, el MUTUARIO deberá:

(a) enviar por medio fehaciente y a satisfacción del MUTUANTE:

   (i) el original de la Solicitud de Desembolso debidamente completada y firmada por representante legal del MUTUARIO y del FIADOR o apoderados con facultades suficientes, con su firma certificada por escribano público argentino; cada Solicitud de Desembolso deberá indefectiblemente contener el monto del desembolso





5

requiendo, la/s Fecha/s de Vencimiento del mismo y las Sumas Adeudadas que deberá pagar al MUTUANTE en tal/es Fecha/s de Vencimiento.

(ii) Un Pagaré por un monto equivalente a las Sumas Adeudadas, debidamente suscripto por el representante legal del MUTUARIO o apoderados con facultades suficientes y avalado por el FIADOR. A plena satisfacción del MUTUANTE, con las firmas debidamente certificadas por un escribano público argentino; y

(b) Otorgar las garantías reales (hipotecas o prendas) o suscribir y entregar los Warrants que requiera el MUTUANTE, a satisfacción de este último.

EL MUTUANTE podrá rechazar las Solicitudes de Desembolso en caso que el MUTUARIO no constituya las garantías reales (hipotecas o prendas) o no suscriba ni entregue los Warrants a su entera satisfacción, de conformidad con lo establecido en la Cláusula SEPTIMA del presente Contrato Marco, con fecha de vencimiento anterior a la última Fecha de Vencimiento de las consignadas en la Solicitud de Desembolso, con firma certificada por escribano público argentino, a satisfacción del MUTUANTE, representativos de mercaderías a satisfacción del MUTUANTE y por un valor también a satisfacción del MUTUANTE."

10.- Modifícase la Cláusula 3.6 del Contrato Marco, la cual quedará redactada de la siguiente manera:

"3.6 Devolución al MUTUARIO de los Créditos Cedidos. Notificación a los Deudores Cedidos. Una vez cancelada en su totalidad la Línea de Crédito Adeudada por el MUTUARIO y dentro de las 48 hs. de sucedido ello, el MUTUANTE, en su caso, se obliga a notificar a cada Deudor Cedido que ha quedado sin efecto la cesión del Crédito Cedido por lo que a partir de la recepción de dicha notificación, cada Deudor Cedido deberá abonar al MUTUARIO el monto de los respectivos Créditos Cedidos."

11.- Modifícase la Cláusula 4.6 del Contrato Marco, la cual quedará redactada de la siguiente manera:

"4.6 El MUTUARIO se obliga a notificar en forma fehaciente esta cesión a los Deudores Cedidos mediante la remisión de una notificación sustancialmente idéntica al modelo adjunto al presente como Anexo IV con la cual la misma quedará perfeccionada frente a terceros, sin necesidad de aceptación alguna del Deudor Cedido para tales efectos, el MUTUARIO comunicará a todos los Deudores Cedidos, con intervención notarial, que los Créditos Cedidos han sido transmitidos al MUTUANTE, y que el depósito de las sumas correspondientes a los Créditos Cedidos deberá efectuarse en la Cuenta del Mutuante. Asimismo, y sin perjuicio del perfeccionamiento de la cesión del modo antes indicado, el MUTUARIO se obliga a obtener la aprobación expresa de los Deudores Cedidos respecto de la presente cesión, debiendo los Deudores Cedidos -mediante su apoderado o representante legal- firmar al pie de dicha notificación con constancia de aceptación de la misma.

El MUTUARIO deberá entregar dichas notificaciones al MUTUANTE, con la aceptación de los Deudores Cedidos en la forma antes indicada.

Asimismo el MUTUARIO remitirá conjuntamente vía fax una comunicación a cada Deudor Cedido, notificándole la cesión de los Créditos Cedidos, indicándole que el pago de los Créditos Cedidos deberá realizarse en la Cuenta del Mutuante, consignándose que se remite por correo el original de la comunicación.

Cumplido ello, el MUTUARIO requerirá a un escribano público la certificación del texto de la misma, su destinatario, domicilio y su despacho mediante correo internacional por un servicio que brinde constancia de su entrega y recepción."

12.- Modifícase la Cláusula 5.2 del Contrato Marco la cual quedará redactada de la siguiente manera:



"5.2 El MUTUARIO podrá optar por prorrogar la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por un nuevo período de 12 (doce) meses. Vencido este nuevo período, podrá nuevamente y por última vez, optar por una nueva prórroga de la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por un nuevo período de 12 (doce) meses, pero no pudiendo ser la nueva Fecha de Vencimiento prorrogada a una fecha más allá del día 29 de julio de 2018. A los efectos de ejercer su derecho a prorrogar la última de las Fechas de Vencimiento de cada Solicitud de Desembolso por hasta un máximo de dos períodos consecutivos de 12 (doce) meses, lo que estará sujeto a la aprobación del MUTUANTE, el MUTUARIO deberá cumplir con las siguientes recaudos: (i) estar en cumplimiento de todas sus obligaciones bajo el presente Contrato Marco y que no haya acaecido un Evento de Incumplimiento, (ii) abonar la totalidad de las Sumas Adeudadas distintas a aquellas cuya Fecha de Vencimiento se pretende prorrogar, en relación a la Solicitud de Desembolso de que se trata, (iii) notificar su decisión de prorrogar la última de las Fechas de Vencimiento conforme lo establecido en esta cláusula en forma fehaciente y por escrito al MUTUANTE y al FIADOR con una anticipación de al menos 45 días a la Fecha de Vencimiento, conforme modelo adjunto en Anexo V, (iv) obtener del FIADOR su expreso consentimiento respecto de la prórroga de las Fechas de Vencimiento por medio del cual el FIADOR asuma mantener la fianza aquí otorgada en toda su extensión y por el plazo prorrogado y entregar ese documento con las firmas debidamente certificadas por escribano al MUTUANTE, conforme modelo adjunto en Anexo V, y (v) deberá entregar al MUTUANTE nuevos Pagarés por las Sumas Adeudadas que incluyan el capital y todos los intereses que resultarán aplicables durante el período prorrogado, a satisfacción del MUTUANTE. Todos los recaudos antes previstos deberán estar cumplidos con anterioridad a la última Fecha de Vencimiento de cada Solicitud de Desembolso. La falta de cumplimiento de algunos de los recaudos mencionados y/o la falta de acuerdo entre el MUTUARIO y el MUTUANTE en alguna de las cuestiones que así lo requieran, a los efectos de la prórroga, no generará responsabilidad del MUTUANTE ni derecho de reclamo alguno por parte del MUTUARIO y se mantendrán los términos de las Solicitudes de Desembolso, incluido pero no limitado a las Fechas de Vencimiento originariamente previstas.

El cronograma de lo previsto en el párrafo precedente para el caso de ejercicio de las Opciones de Prórroga sería:

| Opciones de Prórroga | Plazo de Prórroga Disponible |
|---|---|
| Primer Ejercicio de Opción de Prórroga | 12 (doce) meses desde la Fecha de Vencimiento. |
| Segundo Ejercicio de Opción de Prórroga | 12 (doce) meses desde la última Fecha de Vencimiento prorrogada mediante el Primer Ejercicio de Opción de Prórroga. |

El MUTUARIO puede prorrogar el Capital de las Sumas Adeudadas en forma total o parcial. En este último caso, las sumas integrantes del Capital de una Suma Adeudada que no hayan sido prorrogadas en los términos de esta Cláusula podrán ser prorrogadas en forma posterior.

Las Sumas Adeudadas – incluyendo los intereses resultantes de la aplicación de la Tasa de Interés, de ejercerse las respectivas Opciones de Prórroga sobre las Sumas Adeudadas Vencidas – deberán ser pagadas por el MUTUARIO al MUTUANTE mediante depósito en Dólares en la Cuenta del MUTUANTE, de conformidad con los términos y condiciones de pago establecidos al respecto en el presente Contrato Marco y en las Solicitudes de Desembolso respectivas.

La falta de pago en tiempo y forma de la Línea de Crédito Adeudada y/o de los intereses conforme lo antes descripto constituirá un Evento de Incumplimiento y generará la Mora automática del MUTUARIO y el FIADOR sin necesidad de interpelación previa, con las

consecuencias para ello previstas en la Cláusula Décima del Contrato Marco, incluyendo la ejecución de las Garantías.

Las Opciones de Prórroga no constituirán ni deberá interpretarse que constituyen una novación de la Línea de Crédito Adeudada."

13.- En virtud del punto 12 precedente, déjanse sin efecto los términos y condiciones de toda otra prórroga otorgada con anterioridad a la fecha de esta Novena Enmienda, debiendo estas ser conformes a lo dispuesto en la nueva Cláusula 5.2.

14.- Modifícase la Cláusula 6 del Contrato Marco la que quedará redactada de la siguiente manera:

"CLÁUSULA SEXTA:     MONEDA DE PAGO.

6.1 El MUTUARIO asume que el pago del importe total o el saldo que eventualmente adeude en virtud de los Documentos de la Operación -incluyendo el pago de la Línea de Crédito Adeudada- deberá ser necesariamente abonado en Dólares Estadounidenses de libre e inmediata disponibilidad y no en otra moneda. En consecuencia, el MUTUARIO expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de la Línea de Crédito Adeudada así como los intereses compensatorios y punitorios, costos, costas y demás sumas a ser abonadas al MUTUANTE en virtud del presente, se cancelen en Dólares, renunciando expresamente a invocar la teoría de la imprevisión o cualquier otra similar para alegar una mayor onerosidad sobreviviente en el pago. Asimismo el MUTUANTE asume que la transferencia que debe realizar a favor del MUTUARIO de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.3 a) y c) deberán ser necesariamente abonados en Dólares y no en otra moneda. En consecuencia, el MUTUANTE expresamente reconoce y acepta que constituye condición esencial de este Contrato Marco que la devolución de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la cláusula QUINTA acápite 5.3 a) y c), así como los intereses punitorios y demás sumas a ser transferidas al MUTUARIO en virtud del presente, se cancelen en Dólares.

6.2 En atención a lo dispuesto en la Cláusula 6.1., en caso que por cualquier causa fuera legal o fácticamente imposible la obtención de Dólares Estadounidenses o la realización del pago en esa moneda, el MUTUARIO y en su caso el MUTUANTE deberán igualmente abonar las sumas comprometidas (la Línea de Crédito Adeudada y cualquier otra suma pagaderas en virtud de los Documentos de la Operación en Dólares para el caso del MUTUARIO y la transferencia de los fondos de los Créditos Cedidos que los Deudores Cedidos depositen en la Cuenta del Mutuante conforme a lo previsto en la Cláusula QUINTA acápite 5.3 a) y c) para el caso del MUTUANTE) pagando la suma de moneda argentina de curso vigente que resulte necesaria para adquirir la suma de Dólares Estadounidenses billetes que se adeude al MUTUANTE en cada caso, según las siguientes alternativas:

6.2 (a) según cotización de la moneda argentina de curso vigente en el mercado de Nueva York, Estados Unidos de América; o bien



6.2 (b) según cotización de la moneda argentina de curso vigente en el mercado de Montevideo, República Oriental del Uruguay; o bien

6.2 (c) en la cantidad de la moneda argentina de curso vigente que resulte necesaria para adquirir en el mercado bursátil de la Ciudad de Buenos Aires títulos de deuda argentina denominados en Dólares Estadounidenses de la serie y título que en ese momento tengan mayor circulación en los mercados de Buenos Aires, Argentina y Nueva York, Estados Unidos de América, en una cantidad tal que enajenados en la plaza de Nueva York arrojen un producido (libre de todo gasto y comisión) equivalente a la cantidad de Dólares Estadounidenses que en esa ocasión deba ser pagada al MUTUANTE;

6.3 Todas las cotizaciones se tomarán al cierre de las operaciones del día hábil anterior al del efectivo pago. Las distintas alternativas son opciones en favor del MUTUANTE, así como será

8

Case 1:19-cv-10796-DLC   Document 114-40   Filed 04/16/20   Page 182 of 195

de su elección, la publicación de la que surjan las cotizaciones (diarias "Ámbito Financiero", "Cronista Comercial" y otro medio de noticias financieras). Tanto el capital como los accesorios que el MUTUARIO y el FIADOR adeucen al MUTUANTE seran abonados en Dólares Estadounidenses billetes por haber sido condición esencial para el otorgamiento del Contrato Marco, y en virtud de que, si así no lo hubieran asegurado el MUTUARIO y el FIADOR al MUTUANTE, el Contrato Marco no se hubiera otorgado.

6.4 El MUTUARIO y el FIADOR renuncian expresa e irrevocablemente a invocar en el futuro la norma de los artículos 765, 1077 a 1079 del Código Civil y Comercial de la Nación, teoría de la imprevisión, caso fortuito, fuerza mayor, acto del Príncipe o cualquier otra similar que en base a presuntas e imprevisibles alteraciones en los mercados (o de cualquier otro tipo) persiga el propósito de alterar la equivalencia patrimonial de las prestaciones comprometidas.

6.5 Queda expresamente establecido que en cualquiera de las alternativas detalladas en 6.2 (a) a 6.2 (c), las sumas adeudadas por el MUTUARIO (o el MUTUANTE en su caso) sólo se considerarán pagadas y dicho pago tendrá efectos liberatorios únicamente, una vez que se acredite efectivamente en la Cuenta del Mutuante (o en la Cuenta del Mutuario en su caso), la cantidad de Dólares adeudados bajo los Documento de la Operación.

6.6 Todos los gastos, costos, comisiones, honorarios e impuestos pagaderos con relación a los procedimientos referidos en 6.2 (a) a 6.2 (c) precedentes serán pagados por el MUTUARIO (o por el MUTUANTE en su caso).

6.7 Si con el fin de obtener una sentencia judicial fuera necesario convertir los montos en Dólares adeudados bajo el presente a otra moneda, las Partes acuerdan que el tipo de cambio a ser usado será aquel al cual, de acuerdo con procedimientos bancarios normales, el MUTUANTE (o el MUTUARIO en su caso) pueda comprar con esa otra moneda Dólares en la ciudad de Nueva York, Estados Unidos de América, en el Día Hábil anterior a aquel en el cual la sentencia final es dictada. Asimismo, si alguna sentencia fuera dictada contra el MUTUARIO (o el MUTUANTE en su caso) en una moneda distinta de Dólares, la obligación de pago del MUTUARIO (o del MUTUANTE en su caso) de cualquier suma adeudada bajo los Documentos de la Operación sólo se considerará cancelada si en el Día Hábil siguiente a aquel en que el MUTUANTE (o el MUTUARIO en su caso) haya recibido algún monto juzgado como adeudado bajo el presente en esa otra moneda, el MUTUANTE (o el MUTUARIO en su caso) pueda, de acuerdo con procedimientos bancarios normales, en la ciudad de Nueva York, Estados Unidos de América, comprar Dólares con esa otra moneda. Si dichos Dólares Estadounidenses así comprados fueran menos que la suma de Dólares adeudada bajo los Documentos de la Operación, el MUTUARIO (o el MUTUANTE en su caso) acuerda, como una obligación diferente e independientemente de tal sentencia, indemnizar al MUTUANTE (o al MUTUARIO en su caso) de esa pérdida."

15.- Modifícase las Cláusulas 7.1 y 7.2 del Contrato Marco, las cuales quedaran redactadas de la siguiente manera:

"7.1 En adición a toda otra garantía, el MUTUARIO deberá suscribir y entregar al MUTUANTE, como garantía adicional de pago, Warrants de productos lácteos o sus derivados -debidamente endosados a favor del MUTUANTE y a satisfacción de este- por una suma equivalente en todo momento como mínimo al 25% (veinticinco por ciento) de la Linea de Crédito, expresada en Dólares Estadounidenses, con exclusión de toda otra moneda.

7.2 El MUTUARIO se obliga a que durante toda la vigencia del Contrato Marco el MUTUANTE cuente en su poder con Warrants por un monto no inferior a una suma equivalente al 25% (veinticinco por ciento) de la Linea de Crédito. Teniendo en cuenta el plazo máximo de vigencia de los warrants establecidos en el art. 26 de la Ley 9643, el MUTUARIO se obliga a reemplazar periódicamente los Warrants antes del vencimiento de los 180 (ciento ochenta) días contados desde la fecha de emisión de los mismos, debiendo entregar al MUTUANTE nuevos warrants por un monto igual o superior, en su caso, al de los Warrants originales."

16.- Modifícase la Cláusula 8 del Contrato Marco, la cual quedará redactada dela siguiente manera:



"*CLAUSULA OCTAVA. FIADOR.*

*Por este acto el FIADOR se constituye en fiador solidario, codeudor solidario, liso llano y principal pagador de las obligaciones y deudas asumidas por el MUTUARIO en el presente Contrato Marco, en los mismos términos y condiciones establecidas en el presente Contrato Marco para el MUTUARIO afianzado con renuncia expresa a: (1) los beneficios de división y excusión y demás normas comerciales y civiles concordantes aplicables: (2) a exigir la previa ejecución judicial o extrajudicial del MUTUARIO o ejercer cualquier defensa que pudiera hacer valer el MUTUARIO y en general a oponer toda excepción que no sea la de pago. La responsabilidad solidaria asumida por el FIADOR se extiende, asimismo, al reajuste legal o convencional y accesorios, tales como la actualización monetaria, intereses compensatorios y moratorios, debidos por el MUTUARIO. Esta fianza permanecerá vigente hasta la total cancelación por parte del MUTUARIO de todas las deudas que mantiene el MUTUARIO afianzado y cubiertas por esta garantía. Se considerará incumplimiento de las disposiciones de la presente el caso en que el FIADOR comience negociaciones con cualquier acreedor con miras a un arreglo general de pagos o cambiar el cronograma de endeudamiento, o se transformen en insolventes o quebrados, o les sea decretada la quiebra o se presente en concurso preventivo de acreedores o Acuerdo Preventivo Extrajudicial, y los mismos no sean levantados dentro de los (60) días hábiles de haber sido decretados. En dicho supuesto, en un plazo de sesenta (60) días hábiles el MUTUARIO deberá designar un nuevo garante a satisfacción del MUTUANTE. Vencido el plazo de sesenta (60) días sin que el MUTUARIO haya designado un nuevo garante, el MUTUANTE puede mediante notificación al FIADOR declarar las obligaciones del MUTUARIO vencidas, y exigir el pago de todos los montos debidos por el MUTUARIO como vencidos, más todos los gastos en que hubiera incurrido el MUTUANTE. El FIADOR efectúa las siguientes declaraciones y garantías, todas las cuales deberán mantenerse durante la vigencia del presente Contrato Marco: (a) Esta garantía constituye una obligación válida y vinculante para mí, ejecutable de acuerdo con sus respectivos términos; (b) No existe estatuto, regla, regulación u obligación contractual vinculante para mí que pudiera ser violada por la celebración, entrega o ejecución de esta garantía. A los efectos del presente el FIADOR constituye domicilio especial en 80 SW 8th Street, Suite 2000 – Miami, FL 33130-3003, United States of America y acepta como válidas las notificaciones que se practiquen por telegrama colacionado u otro medio auténtico. A todos los efectos legales de la presente fianza el FIADOR se somete irrevocablemente a la jurisdicción y ley aplicable establecidos en la Cláusula DECIMO QUINTA del presente, renunciando expresamente a cualquier otro fuero o jurisdicción."*

17.- Elimínase las Cláusulas 9.1.19, 9.1.20, 9.1.21 y 9.1.22 del Contrato Marco, con la correspondiente re enumeración de las Cláusulas siguientes.

18.- Modifícase la Cláusula 9.1.23 (la cual, a tenor de lo acordado en el punto precedente ha pasado a ser 9.1.19) del Contrato Marco, la cual quedará redactada de la siguiente manera:

*"9.1.19. Que en todo momento durante la vigencia del presente Contrato Marco el Mutuante contará con Warrants por una por una suma equivalente al 25% (veinticinco por ciento) de la Línea de Crédito."*

19.- Modifícase la Cláusula 9.2.6 del Contrato Marco, la cual quedará redactada de la siguiente manera:

*"9.2.6. A poner a disposición del MUTUANTE, y además entregar inmediatamente cuando éste lo solicite, la siguiente documentación contable correspondiente al MUTUARIO: (i) estados contables anuales debidamente auditados por una firma de auditoría de primer nivel y prestigio internacional; (ii) estados contables trimestrales; (iii) informar nuevas deudas contraídas y nuevas garantías otorgadas y brindar cualquier otra información que el MUTUANTE le requiera al respecto, y (iv) cualquier otra información que el MUTUANTE razonablemente le requiera en cualquier momento. Los estados contables referidos en (i) precedente deberán presentarse debidamente auditados dentro de los ciento veinte (120) días corridos del cierre del respectivo ejercicio; los estados contables referidos en (ii) deberán ser presentados dentro de los sesenta (60) días corridos de los respectivos trimestres; la información y documentación referida en (iii) deberá ser remitida en forma mensual, sin excepción; y la documentación referida en (iv) deberá presentarse dentro de los cinco (5) días corridos de requerida por el MUTUANTE. A los*



fines de discernir qué garantías deberán reputarse nuevas garantías otorgadas por el MUTUARIO, antes del 5 de junio de 2016 el mismo deberá entregar al MUTUANTE un detalle firmado con certificación notarial de firma y representación, del que surja fecha de otorgamiento, beneficiario de la garantía, naturaleza de la garantía, estado actual de la misma (en cumplimiento / en incumplimiento / bajo ejecución) con respecto a todas las garantías vigentes que ha otorgado hasta el día de emisión de ese detalle firmado, , por lo que toda garantía otorgada posteriormente deberá ser informada conforme lo dispuesto precedentemente, y"

20.- Modifícase la Cláusula 9.2.17 del Contrato Marco, la cual quedará redactada de la siguiente manera

"9.2.17. A no adoptar cualquier decisión que implique transferencias de activos, transferencia de fondo de comercio, transferencia de marcas, o cualquier otra transferencia que pudiera afectar o disminuir el negocio del MUTUARIO o su valor llave o implicar un menoscabo patrimonial, debiendo previamente notificar al MUTUANTE y obtener su previo consentimiento, de manera expresa y por escrito. En particular, el MUTUARIO deberá notificar al MUTUANTE y obtener su previo consentimiento, de manera expresa y por escrito, en cualquier decisión que implique la enajenación de activos que no sean bienes de cambio por un monto superior a quinientos mil Dólares Estadounidenses (US$ 500.000), o que implicaren enajenaciones separadas que en conjunto superaren dicho monto en el término de un mes, como así también para cualquier decisión que incrementare la deuda financiera del MUTUARIO en quinientos mil Dólares Estadounidenses o en un monto superior en el término de un mes, o decisiones separadas que en conjunto incrementaren la deuda financiera del MUTUARIO por encima de dicho monto en el término de un mes.

21.- Incorpórase la Cláusula 9.2.23, la cual quedará redactada de la siguiente manera:

"9.2.23. A no constituir garantías reales de ninguna naturaleza sobre ninguno de sus bienes, tanto materiales como inmateriales, sin el previo consentimiento expreso por escrito del MUTUANTE."

22.- Modifícase la Cláusula 10.1 del Contrato Marco, la cual quedará redactada de la siguiente manera:

"10.1 La Mora del MUTUARIO en el cumplimiento de las obligaciones de pago en tiempo y forma de cualquier Suma Adeudada se producirá en forma automática de pleno derecho y sin necesidad de interpelación alguna. Ocasionada la Mora  se producirá la caducidad de todos los plazos y el MUTUANTE tendrá derecho a considerar la totalidad de la Línea de Crédito Adeudada como una deuda de plazo vencido y exigir y demandar judicialmente el pago íntegro de la Línea de Crédito Adeudada, los intereses devengados y demás accesorios. Durante el tiempo que dure la Mora el MUTUANTE tendrá derecho a percibir intereses compensatorios acumulativos pactados a una tasa de interés equivalente a la Tasa de Interés con más un interés punitorio equivalente al 50 % (cincuenta por ciento) de la tasa de los intereses compensatorios."

23 - Remplácese el inciso (n) de la Cláusula 10.2 del Contrato Marco, según el cual será un Evento de Incumplimiento:

"(n)      Si el MUTUARIO no constituyese las garantías comprometidas a favor del MUTUANTE incluyendo pero no limitándose a las garantías hipotecarias previstas en la cláusula décimo novena del Contrato Marco."

24 - Modifícase la Cláusula 10.3 del Contrato Marco la cual quedará redactada de la siguiente manera:

"10.3 El MUTUARIO asume el cumplimiento de todas y cada una de las obligaciones bajo los Documentos de la Operación, por lo cual en caso de incurrir en un Evento de Incumplimiento, se producirá la Mora del MUTUARIO. Producida la Mora del MUTUARIO, el MUTUANTE podrá proceder sin más a la ejecución de las Garantías e imputar la totalidad de los Créditos Cedidos al pago de la Línea de Crédito Adeudada."



25.- Modifícase la Cláusula 15.3 la cual quedará redactada de la siguiente manera:

*"15.3. Nada de lo dispuesto precedentemente en el presente Contrato Marco afectará el derecho del MUTUANTE a iniciar procedimientos legales o de cualquier otra forma demandar al MUTUARIO en cualquier otra jurisdicción que el MUTUANTE considere apropiada, incluyendo la facultad del MUTUANTE de iniciar la ejecución judicial y/o extrajudicial de los Pagarés y/o de los Warrants y/o de cualquier otra garantía que hubiera sido otorgada por el MUTUARIO en la República Argentina."*

26.- Incorpórase la siguiente Cláusula Décimo Octava al Contrato Marco:

*CLÁUSULA DECIMO OCTAVA: COMPROBANTES DE PAGO DE IMPUESTO DE RETENCION.*

*En línea con lo dispuesto precedentemente en la Cláusula 11.2 del Contrato Marco. El MUTUARIO tendrá la obligación de entregar al MUTUANTE copias certificadas de cada uno de los comprobantes de pago de impuesto de retención que el MUTUARIO debe tributar a la Administración Federal de Ingresos Públicos con motivo de cada pago de Sumas Adeudadas que el MUTUARIO haga al MUTUANTE, dentro de los quince (15) días computados desde la fecha de cada pago de impuesto de retención."*

27.- El MUTUARIO se obliga a constituir antes del 29 de julio de 2016, hipoteca o hipotecas en primer grado de privilegio sobre bienes inmuebles a satisfacción del MUTUANTE por el importe que sea necesario para que la totalidad de la Línea de Crédito Adeudada a la fecha de la constitución de hipoteca o hipotecas quede protegida bajo esa o esas garantías. En virtud de ello, incorporase como Cláusulas Décimo Novena y Vigésima del Contrato Marco las siguientes:

*CLÁUSULA DÉCIMO NOVENA: OBLIGACION DE CONSTITUIR HIPOTECAS*

*El MUTUARIO se obliga a constituir antes del 29 de julio de 2016, hipoteca o hipotecas sobre bienes inmuebles a satisfacción del MUTUANTE por un monto total de Dólares Estadounidenses Veinticuatro Millones Seiscientos Cuarenta y Cuatro Mil Cuarenta y Seis (US$ 24.644.046). En caso que el MUTUANTE así lo requiera, se segregará la garantía hipotecaria de las Sumas Adeudadas no vencidas de aquella correspondiente a las Sumas Adeudadas vencidas -si las hubiera-, para ser instrumentada en una hipoteca independiente."*

*CLÁUSULA VIGESIMA: INEXISTENCIA DE DISPENSAS PREVIAS*

*Ni lo previsto en la Cláusula precedente ni nada de lo contemplado en este Contrato Marco podrá reputarse como dispensa, quita, espera, remisión o renuncia de derechos y acciones que tenga el MUTUANTE bajo el Contrato Marco. El hecho de que el MUTUANTE en cualquier momento no ejercitare alguno o algunos de esos derechos y acciones (incluyendo, pero no limitándose a, sus derechos y acciones en todo lo que concierne a la ejecución judicial tendiente al cobro de Sumas Adeudadas vencidas y otros conceptos) no hace precluir su posibilidad de hacerlo en el futuro."*

28.- Elimínase el Anexo I del Contrato Marco.

29.- Modifícase los Anexos III, IV y V, los cuales quedarán redactados de conformidad con las versiones adjuntas a la presente Novena Enmienda.

30.- Déjase sin efecto el requisito de fijar un monto en concepto de gastos administrativos del 0,15% (quince centésimas por ciento) del monto desembolsado, en cada Solicitud de Desembolso u Opción de Prórroga.

31.- La presente Novena Enmienda no implica una refinanciación de la Línea de Crédito Adeudada.

32.- Con excepción de aquellos términos expresamente modificados bajo esta Novena Enmienda, todos los demás términos, condiciones y cláusulas del Contrato Marco y las solicitudes de Desembolso remitidas y aceptadas hasta la fecha, así como otros acuerdos e





12

instrumentos otorgados entre las Partes, permanecen válidos, vigentes e inalterados, con plena vigencia.

33.- Todos los términos de esta Novena Enmienda que se caractericen por llevar su letra inicial en mayúsculas y que no estén definidos expresamente en la misma, ni sean la palabra inicial de una oración ni un nombre propio, tendrán el significado que les hubiera sido asignado en el Contrato Marco.

Suscripto por el MUTUARIO en la Ciudad de Buenos Aires, República Argentina, por el FIADOR en la Ciudad de Buenos Aires, República Argentina, y por el por el MUTUANTE en la Ciudad de Buenos Aires, República Argentina, a los 2 días de junio de 2016



Firma/s certificada/s en foja N° F 0126925 96.
Bs. As. 02 06 2016

MARTIN/QARANA (h)

Firma/s certificada/s en foja de Actuación Notarial N° F 0126740 2 ?
Bs. As. 02 / 06 / 2016

**ANEXO III**
**MODELO DE SOLICITUD DE DESEMBOLSO**

13



**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404

F 012692596

1  Buenos Aires,  02 de    Junio   de   2016 . En mi carácter de escribano

2  Titular del Registro Notarial Nº 841

3  CERTIFICO: Que la/s  Firma/s           que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número 166      del LIBRO

6  número 289       , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s, documento/s de identidad y justificación de identidad se indican

8  Eduardo Angel ZAGO, DNI 14.343.056; Mario Guillermo MUSTONI

9  MARQUESTAU, DNI 16.062.288 y Daniel Jorge VALICENTE, DNI

10  21.050.725, quienes justifican sus identidades de acuerdo al inciso b) del

11  artículo 306 del Código Civil, y manifiestan conocer los términos del artí-

12  culo 20 de la Ley 25.246 de la Unidad de Información Financiera (UIF) y

13  su Resolución 11/2011 y declaran bajo juramento no estar comprendidos

14  en ninguno de los supuestos de dicho artículo y Resolución y actúan: El

15  primero en su carácter de Apoderado de la sociedad "SANCOR COO-

16  PERATIVAS UNIDAS LIMITADA", con domicilio en Súnchales, Provincia

17  de Santa Fe, inscripta en la Matrícula 772 del Registro Nacional de Coo-

18  perativas, de la Provincia de Santa Fe, Departamento Castellanos, con-

19  forme lo acredita con el Poder Especial de fecha 5 de marzo de 2014,

20  pasado al folio 117 del Registro 640 a cargo de la escribana Analía Roch

21  de la ciudad de Súnchales, Provincia de Santa Fe, asimismo lo hace el

22  último en su carácter de apoderado de la sociedad "SANCOR COOPE-

23  RATIVAS UNIDAS LIMITADA", con el Poder Especial de fecha 15 de di-

24  ciembre de 2010, pasado al folio 1103 del Registro 640 de la ciudad de

25  Sunchales, Provincia de Santa Fe, a cargo de la escribana Analia Roch y

F 012692596

los dos últimos en su carácter de Apoderados de la sociedad extranjera

"SANCOR DO BRASIL Produtos Alimenticios LTDA." lo que acredita con el

Poder Especial de fecha 17 de diciembre de 2009, debidamente certificado

con fecha 17 de diciembre de 2009 y debidamente Autorizado por el Minis-

terio de Relaciones Exteriores con fecha 7 de enero de 2010 y traducido

con fecha 18 de enero de 2010 y legalizado bajo el número 948 de fecha 19

de enero de 2010, toda la documentación relacionada tengo a la vista y les

confiere facultades suficientes para suscribir el documento adjunto, doy fe.-



26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50




**ACTA DE CERTIFICACION DE FIRMAS**
LEY 404



F 012674028

1  Buenos Aires,  02 de  junio  de  2016 . En mi carácter de escribano

2  Titular del Registro de Contratos Públicos 625 de Capital Federal.- - - - - - -

3  CERTIFICO: Que la/s  -Firma-  que obra/n en el

4  documento que adjunto a esta foja, cuyo requerimiento de certificación se

5  formaliza simultáneamente por ACTA número  -008-  del LIBRO

6  número  -11-  , es/son puesta/s en mi presencia por la/s persona/s

7  cuyo/s nombre/s, documento/s de identidad y justificación de identidad se indican:

8  Hernán VERLY, D.N.I. 20.010.276, persona de mi conocimiento, doy fe

9  Quien manifiesta conocer los términos del artículo 20 de la Ley 25.246 de

10  la Unidad de Información Financiera (UIF) y su Resolución 11/2011 y

11  declara bajo juramento no estar comprendido en ninguno de los supuestos

12  de dicho artículo y Resolución. MANIFIESTA ACTUAR en nombre y

13  representación y como apoderado de IIG TOF B.V., con domicilio en

14  Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE

15  Amsterdam, Reino de los Paises Bajos, a tenor de un poder conferido por

16  TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V., sociedad holandesa

17  que resulta representante de la primera, todo ello, sin acreditar personería

18  lo que acreditará oportunamente. Firma certificada en fojas F012674028 y

19  F002683228.-



<table>
<tr><td>

**SOLICITUD DE DESEMBOLSO**

Sres.

IIG TOF B.V.

_____

De nuestra consideración:

Nos dirigimos a Uds. con relación al Contrato Marco de Línea de Crédito suscripto entre Uds. y _____ con fecha 21 de Diciembre de 2009 (el "Contrato Marco") modificado mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de fecha 13 de Abril de 2010, Tercera Enmienda de fecha 29 de Noviembre de 2010, Cuarta Enmienda de fecha 1 de Agosto de 2011, Quinta Enmienda de fecha 21 de septiembre de 2011, Sexta Enmienda de fecha 20 de abril de 2012, Séptima Enmienda de fecha 28 de agosto de 2014, Octava Enmienda de fecha 28 de enero de 2016, y Novena Enmienda de fecha 2 de junio de 2016, cuyas definiciones, términos y condiciones resultan aplicables a la presente Solicitud de Desembolso. De conformidad con lo establecido en la Cláusula Tercera del Contrato Marco, solicitamos a Uds. un desembolso de acuerdo a los siguientes términos:

I.   El monto del desembolso solicitado mediante la presente es de US$ _____ (Dólares Estadounidenses _____).

II.  La/s Fecha/s de Vencimiento del desembolso antes requerido será/n la/s siguiente:

Fecha Vto. _____ | Moneda e importe
_/_/_ | US$ _____
_/_/_ | US$ _____

III. La Suma Adeudada por dicho desembolso asciende a un total de US$ _____ (Dólares Estadounidenses _____), comprensiva del monto del desembolso con más los intereses aplicables hasta la/s Fecha/s de Vencimientos antedichas.

IV.  Adjuntamos a la presente un Pagaré a vuestro favor, pagadero a la vista, por la suma total US$ _____ (Dólares Estadounidenses _____).

Fecha Emisión Fecha Vto. | Moneda e Importe
_/_/_  A la vista | US$ _____

</td><td>

**REQUEST FOR DISBURSEMENT**

Sirs

IIG TOF B.V

_____

Dear Sirs:

Reference is hereby made to the Credit Facility Agreement executed with you, dated December 21, 2009 (The "Master Agreement"), as amended by the First Amendment on March 15, 2010, the Second Amendment on April 13, 2010, the Third Amendment on November 29, 2010, the Fourth Amendment on August 1, 2011, the Fifth Amendment on September 21, 2011, the Sixth Amendment on April 20, 2012, the Seventh Amendment on August 28, 2014, the eighth Amendment on January 28, 2016 and the Ninth Amendment on June 2, 2016, whose definitions, terms and conditions are applicable to this Disbursement Request. Pursuant to Section Third of the Master Agreement, we hereby request to you a disbursement pursuant to the following conditions:

I.   The amount requested to be disbursed herein is the aggregate principal amount of USD _____ (United States Dollars _____)

II.  The Due Date/s for the repayment of the requested disbursement shall be the following:

Due Date | Currency and Amount
_/_/_ | USD
_/_/_ | USD

III. The Sums Due as a consequence of the mentioned disbursement amounts to the total aggregate amount of USD _____ (United States Dollars _____), which comprehends the disbursed amount plus the applicable interests applicable as of the aforementioned Due Dates

IV.  We enclosed herein a Promissory Note at your favor, payable on demand for the total aggregate amount of USD _____ (United States Dollars _____)

Issue Date | Due Date Currency and Amount
_/_/_  On demand | USD _____

</td></tr>
</table>

14

En caso de que la presente Solicitud de Desembolso sea aceptada por Uds., les solicitamos que, dentro del Plazo de Acreditación, transfieran los fondos del desembolso a la Cuenta del Mutuario indicada en el Contrato Marco.

Provided this Request for Disbursement is accepted by you, we request that within the Crediting Term, you transfer the disbursement amount to the Borrower's Account identified at the Master Agreement.

A los efectos de la presente Solicitud de Desembolso la versión en inglés prevalecerá sobre la versión en español.

To the purposes set forth in this Disbursement Request the English version shall prevail over the Spanish version.

Sin otro particular, saludamos a Uds. atentamente.

Yours sincerely,

_____

_____

Nombre: _____

Name: _____

Carácter: _____

Capacity: _____

15

## ANEXO IV

## MODELO DE NOTIFICACION AL DEUDOR CEDIDO / MODEL OF NOTIFICATION TO THE ASSIGNED DEBTOR

Buenos Aires, _____, 20__

Messrs.:

At.:

Tel.:

Fax:

Dear Sirs:

We address to you in order to give you notice of the Assignments Agreements dated _____, executed between SANCOR COOPERATIVAS UNIDAS LTDA. ("SANCOR"), SACOR DO BRASIL Productos Alimenticios Ltda. ("SANCOR DO BRASIL") and IIG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.) B.V. ("IIG TOF BV"), and whereby SANCOR has assigned and transferred to IIG TOF BV, and IIG TOF BV has accepted and received all credits, rights, and interests arising and/or deriving from all and any commercial transactions that SANCOR execute and/or may execute with _____ until _____ (the "Assigned Credits").

As a consequence thereof, we inform you that all the sums and credits hereinabove referred –including, without limitation, the credits derived from the invoices and other documentation that SANCOR submit to you as a consequence of said commercial transactions, as well as the letters of credit that you may open in order to pay those invoices are to be fully paid to IIG TOF BV by wire transfer to the following account:

BANK:

ABA#:

SWIFT:

Credit:

Account#:

The aforementioned Assignment Agreements shall not transfer and/or modify the liability of SANCOR derived from the referred commercial transactions and business operations (the "Agreements"). Thus, SANCOR remains being fully and exclusively responsible for any and all the obligations derived thereof.

Sincerely yours,

_____

SANCOR COOPERATIVAS UNIDAS LTDA.



16

Name:
Capacity:

_____

IIG TOF B.V., represented by TRUST INTERNATIONAL MANAGEMENT (T.I.M.)
B.V.
Name:
Capacity:

Acknowledged and accepted:

_____

Name:_____
Capacity:_____

**ANEXO V**
**MODELO NOTIFICACION DE PRÓRROGA DE FECHA DE**
**AMORTIZACION DE CAPITAL**

17

_____, ___ de ___ de 20___

Señores
IIG TOF B.V.
Telestone 8 – Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE Amsterdam,
The Netherlands

Ref.: Notificación de prórroga de Fecha de Vencimiento – Contrato de Línea de Crédito
SANCOR

De nuestra consideración:

Nos dirigimos a Uds. con relación al Contrato de Línea de Crédito suscripto entre Uds.,
SANCOR COOPERATIVAS UNIDAS LTDA y SANCOR DO BRASIL Productos
Alimenticios Ltda., con fecha 21 de Diciembre de 2009 (el "Contrato Marco") modificado
mediante Primera Enmienda de fecha 15 de Marzo de 2010, Segunda Enmienda de fecha
13 de Abril de 2010, Tercera Enmienda de fecha 29 de Noviembre de 2010, Cuarta
Enmienda de fecha 1 de Agosto de 2011, Quinta Enmienda de fecha 21 de septiembre de
2011, Secta Enmienda de fecha 20 de abril de 2012, Séptima Enmienda de fecha 28 de
agosto de 2014, Octava Enmienda de fecha 28 de enero de 2016, y Novena Enmienda de
fecha 2 de junio de 2016, cuyas definiciones, términos y condiciones resultan aplicables
a la presente Carta. Las palabras utilizadas en la presente que comiencen con mayúsculas
y estén definidas en el Contrato Marco, tendrán el significado conferido a ellas en él,
salvo expresa disposición en sentido contrario en la presente.

En el marco del Contrato de Línea de Crédito, con fecha ____ hemos remitido a Uds. la
Solicitud de Desembolso que en copia adjuntamos a la presente como Anexo I (la
"Solicitud"), en virtud de la cual Uds. han depositado en las cuentas indicadas en la
Solicitud y nosotros hemos recibido en conformidad la suma de US$ ____ (Dólares
Estadounidenses _____ con 00/100).

De conformidad con lo establecido en la Cláusula Quinta del Contrato Marco, venimos
por la presente a comunicar a Uds. con la debida anticipación que –en ejercicio del
derecho que nos asiste- optamos por prorrogar la última de las Fechas de Vencimiento de
la Solicitud por un nuevo período de doce (12) meses a ser contado desde ____ y con
vencimiento el día ____. En tal sentido la Fecha de Vencimiento para el pago de las
Sumas Adeudadas – comprensivas de los intereses convenidos con Uds. a los efectos de
la presente prórroga- será la siguiente:

[CRONOGRAMA DE FECHAS Y MONTOS]

Fecha Vto.      Moneda e Importe de la Suma Adeudada [DE ACUERDO A LA TASA
DE INTERES]
_____        US$ _____

18

Adjuntamos a la presente un Pagaré a vuestro favor, pagadero a la vista, por la suma de US$ _____ (Dólares Estadounidenses _____).

Fecha Emisión       Fecha Vto.       Moneda e Importe

Adjuntamos a la presente los Warrants N° __ por la suma total de __ debidamente endosados a vuestro favor de acuerdo al siguiente detalle:

[COMPLETAR]

Asimismo, con la presente el FIADOR expresa su consentimiento respecto de la prórroga de la Fecha de Vencimiento que por la presente se comunica, asumiendo mantener la fianza otorgada en virtud del Contrato Marco en toda su extensión y por el plazo prorrogado.

Con excepción de aquellos términos modificados por la presente, todos los demás términos, condiciones y cláusulas de la Solicitud permanecen inalterables, manteniendo los mismos plena vigencia. Asimismo la presente no constituye ni puede ser interpretada como una novación de las obligaciones asumidas por el MUTUANTE y/o el FIADOR en virtud de la Solicitud y/o del Contrato de Línea de Crédito.

Sin otro particular, saludamos a Uds. atentamente.

**Mutuario**                                    **Fiador**

_____              _____

Por:                                                  Por:
Nombre:                                            Nombre:
Carácter:                                          Carácter:

Certificación de firmas: _____
Recibido:

_____
Por: IIG TOF B.V.
Nombre:
Carácter:

19