UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE COMMISSION, :

                           :

          Plaintiff,   :

                           :   Case No.: 19-CV-10796) (DLC)

     -against-       :

                           :   **DECLARATION OF**

INTERNATIONAL INVESTMENT GROUP LLC, :   <u>**CHRISTOPHER KENNEDY**</u>

                           :

         Defendant.    :

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHRISTOPHER KENNEDY** declares as follows:

    1.     I am a Managing Director of Alvarez and Marsal Cayman Islands Limited. I am personally familiar with the facts set forth herein.  The purpose of this declaration is to provide information in support of the request of IIG Structured Trade Finance Fund Ltd. ("<u>STFF</u>") and IIG Global Trade Finance Fund Ltd. ("<u>GTFF</u>") for an order directing the distribution of certain funds held in the Collection Account for Forestal Rio Calle Calle to STFF and GTFF (the "<u>FRCC Letter</u>") [ECF #110].   Capitalized terms used herein, if not separately defined, shall have the meanings assigned to such terms in the FRCC Letter.

    2.     GTFF and STFF are funds in liquidation in the Cayman Islands pursuant to winding-up orders dated October 23, 2019 and January 31, 2020 entered by the Grand Court of the Cayman Islands. Those orders appointed me and Alex Lawson as Joint Official Liquidators (the "<u>JOLs</u>"). Copies of the orders appointing the JOLs were filed with this Court as <u>Exhibits A and B</u> to the declaration of Stephen B. Selbst (the "<u>Selbst Dec.</u>") that was filed contemporaneously with the FRCC Letter [ECF #111].

    3.     <u>Exhibit G</u> to the Selbst Dec. contained  copies of bank statements for GTFF's account at Bank Leumi for July and August 2019, which showed aggregate transfers of $400,000 to Bank Leumi account XXXXXX100 maintained by Trade Finance Trust. <u>Exhibit H</u> to the Selbst Dec. contained copies of bank statements for STFF's account at Bank Leumi for June, August and September 2019, which showed aggregate transfers of $1,900,000 to Bank Leumi account XXXXXX100.

    4.     <u>Exhibit 1</u> annexed hereto is an organizational chart of IIG and its subsidiaries and affiliates produced to the JOLs in connection with the administration of the winding-up of GTFF and STFF. While I have not been able to independently verify all of the relationships set forth on <u>Exhibit 1</u>, based on the review of the books and

records of IIG, GTFF and STFF which I have conducted with the assistance of my staff, <u>Exhibit 1</u> appears to be true and correct. No facts have come to my attention that would make me question its accuracy.

5.      <u>Exhibit 2-5</u> annexed hereto consists of Bank Leumi statements for account XXXXXX100 for the months of June, August, September and October 2019. These statements show aggregate transfers in the amount of $2,300,000 to FRCC. They also show aggregate transfers from the GTFF and STFF accounts identified in <u>Exhibit G</u> and <u>Exhibit H</u> of the Selbst Dec. of $400,000 from GTFF and $1,900,000 from STFF. Further details regarding those transfers are set forth below.

6.      Under the heading of "Debits", the June 2019 statement annexed as <u>Exhibit 2</u> highlights transfers aggregating $750,000 to FRCC. Under the heading "Credits", the June 2019 statement shows transfers aggregating $590,000 from Bank Leumi account XXXXXX7401 and transfers aggregating $160,000 from Bank Leumi account XXXXXX7900.

7.      Under the heading of "Debits", the August 2019 statement annexed as <u>Exhibit 3</u> shows transfers aggregating $900,000 to FRCC. Under the heading "Credits", the August 2019 statement shows transfers aggregating $660,000 from Bank Leumi account XXXXXX7401 and transfers aggregating $240,000 from Bank Leumi account XXXXXX7900.

8.      Under the heading of "Debits", the September 2019 statement annexed as <u>Exhibit 4</u> shows a single transfer of $350,000 to FRCC. Under the heading "Credits", the September 2019 statement shows a single transfer from Bank Leumi account XXXXXX7401 in the amount of $350,000.

9.      Under the heading of "Debits", the October 2019 statement annexed as <u>Exhibit 5</u> shows a single transfer of $300,000 to FRCC. Under the heading "Credits", the September 2019 statement shows a single transfer from Bank Leumi account XXXXXX7401 in the amount of $300,000.

10.      <u>Exhibit 6</u> annexed hereto is a copy of that certain Master Participation Agreement (the "GTFF Participation Agreement") dated as of May 31, 2017 among Trade Finance Trust, as Seller, IIG Trade Finance LLC, as Administrator, and GTFF. Section 4(c) of the GTFF Participation Agreement provides in relevant part:

> (c) All monies collected within a relevant collection account from or on behalf of an Obligor in respect of a Facility in which Participant holds a Participation Interest(s) shall be held within segregated collection accounts for such Facility, and to the extent allocable to a Participation Interest of Participant, be held in such collection account in trust for Participant…Promptly following such time as monies received in a relevant collection account constitute good collected funds, with respect to a Participation Interest, Administrator shall remit to Participant the portion of such monies to which Participant is

> entitled in accordance with the terms hereof and the relevant
> Participation Certificate, by wire transfer of immediately available
> funds…

GTFF Participation Agreement at 7.

     11.    <u>Exhibit 7</u>annexed hereto is a copy of that certain Master Participation Agreement (the "<u>STFF Participation Agreement</u>") dated as of June 30, 2017 among Trade Finance Trust, as Seller, IIG Trade Finance LLC, as Administrator, and GTFF. Section 4(c) of the STFF Participation Agreement contains a substantially identical provision. See <u>Exhibit 7</u> at 7.

     I declare under penalties of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed as of this 23rd day of April 2020.

_____
Christopher Kennedy

2

# **EXHIBIT 1**

**IIG Group Companies** and Proprietary Fund Clients and Affiliates          **04/30/2019**



- – – – Denotes Investment Advisory Agreement
- — · · Denotes Sub-Advisory Agreement
- ········· Serves as Administrator

1   Per regulation, the Bank's CEO also holds one B Class Share that is non-voting, non-participating.

2   IIG has been engaged by TriLinc Advisors International, Ltd., the Advisor to the Fund, to act as Sub-Advisor.

3   Entity will be shuttered following full repayment of the IDB/OFID credit line.

4   TOF owns 100% of the Preference Shares. The Ordinary Shares are held by MaplesFS (Cayman).

**Inactive Companies**
Horizon Asset Management, LLC (New York)
The IIG Companies LLC (Delaware)

**EXHIBIT 2**



**TRADE FINANCE TRUST - SETTLEMENT ACCOUNT**
**417 5TH AVE 8TH FL**
**NEW YORK NY 10016**

Page 1

████4100
( 19)

Direct inquiries to:
800-892-5430

---

## Business Analysis Checking

| | | | |
|---|---|---|---|
| Account number | ██████100 | Beginning balance | $125,184.67 |
| Enclosures | 19 | Total additions | 3,672,000.00 |
| Low balance | $125,184.67 | Total subtractions | 3,672,000.00 |
| Average balance | $125,184.67 | Ending balance | $125,184.67 |
| Avg collected balance | $125,184 | | |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 06-05 | Wire Out Intl | 250,000.00 |
| | 201906050004469 SOC. FORESTAL RIO CALLE CALLE S.A. | |
| 06-11 | Wire Out Intl | 250,000.00 |
| | 201906110001239 SOC. FORESTAL RIO CALLE CALLE S.A. | |



TRADE FINANCE TRUST - SETTLEMENT ACCOUNT
June 30, 2019

Page 2
█████4100

| Date | Description | Subtractions |
|------|-------------|--------------|



| 06-18 | Wire Out Intl | 250,000.00 |
| | 201906180002865 SOC. FORESTAL RIO CALLE CALLE S.A. | |

**CREDITS**

| Date | Description | Additions |
|------|-------------|-----------|



| 06-05 | ' Cash Mgmt Trsfr Cr | 250,000.00 |
| | REF 1561412L FUNDS TRANSFER FRMDEP 8949917401 FROM | |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT                          Page 3
June 30, 2019                                                     ███████4100

| Date | Description | Additions |
|------|-------------|-----------|
| | | |
| 06-11 | ' Cash Mgmt Trsfr Cr | 75,000.00 |
| | REF 1620807L FUNDS TRANSFER FRMDEP 6955279700 FROM | |
| 06-11 | ' Cash Mgmt Trsfr Cr | 175,000.00 |
| | REF 1620807L FUNDS TRANSFER FRMDEP 8949917401 FROM | |
| 06-18 | ' Cash Mgmt Trsfr Cr | 85,000.00 |
| | REF 1691308L FUNDS TRANSFER FRMDEP 6955279700 FROM | |
| 06-18 | ' Cash Mgmt Trsfr Cr | 165,000.00 |
| | REF 1691308L FUNDS TRANSFER FRMDEP 8949917401 FROM | |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT
June 30, 2019

Page 4

4100

| Date | Description | | Additions |
|------|-------------|---|-----------|



## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 05-31 | 125,184.67 | 06-11 | 125,184.67 | 06-19 | 125,184.67 |
| 06-03 | 125,184.67 | 06-12 | 125,184.67 | 06-26 | 125,184.67 |
| 06-04 | 125,184.67 | 06-13 | 125,184.67 | 06-28 | 125,184.67 |
| 06-05 | 125,184.67 | 06-14 | 125,184.67 | | |
| 06-07 | 125,184.67 | 06-18 | 125,184.67 | | |

*Thank you for banking with Bank Leumi USA*

**EXHIBIT 3**

HF 13251644v.2 #19915/0001



Last statement: July 31, 2019
This statement: August 31, 2019
Total days in statement period: 31

```
TRADE FINANCE TRUST - SETTLEMENT ACCOUNT
417 5TH AVE 8TH FL
NEW YORK NY 10016
```

Page 1

████████4100

( 8 )

Direct inquiries to:
800-892-5430

## Business Analysis Checking

| | | | |
|---|---|---|---|
| Account number | ██████100 | Beginning balance | $110,991.02 |
| Enclosures | 8 | Total additions | 2,225,474.77 |
| Low balance | $110,991.02 | Total subtractions | 2,221,873.04 |
| Average balance | $114,128.01 | Ending balance | $114,592.75 |
| Avg collected balance | $114,128 | | |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 08-07 | Wire Out Intl | 200,000.00 |
| | 201908070004317 SOC. FORESTAL RIO CALLE CALLE S.A. 2035690 | |
| 08-13 | Wire Out Intl | 250,000.00 |
| | 201908130002892 SOC. FORESTAL RIO CALLE CALLE S.A. | |
| 08-21 | Wire Out Intl | 250,000.00 |
| | 201908210002944 SOC. FORESTAL RIO CALLE CALLE S.A. T | |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT
August 31, 2019

ge 2
▮▮▮▮4100

| Date | Description | Subtractions |
|------|-------------|--------------|
| | ▮▮▮▮▮▮▮▮▮▮▮ | |
| 08-28 | Wire Out Intl | 200,000.00 |
| | 201908280003586 SOC. FORESTAL RIO CALLE CALLE S.A. LC S001 2035690 | |

**CREDITS**

| Date | Description | Additions |
|------|-------------|-----------|
| | ▮▮▮▮▮▮▮▮▮▮▮ | |
| 08-07 | ' Cash Mgmt Trsfr Cr | 69,000.00 |
| | REF 2191443L FUNDS TRANSFER FRMDEP 6955279700 FROM 4TH FUNDING REQUEST FRCC | |
| 08-07 | ' Cash Mgmt Trsfr Cr | 131,000.00 |
| | REF 2191443L FUNDS TRANSFER FRMDEP 8949917401 FROM 4TH ADVANCE UN LC FRCC | |
| | ▮▮▮▮▮▮▮▮▮▮▮ | |
| 08-13 | ' Cash Mgmt Trsfr Cr | 86,000.00 |
| | REF 2251132L FUNDS TRANSFER FRMDEP 6955279700 FROM FRCC 5TH ADVANCE LC | |
| 08-13 | ' Cash Mgmt Trsfr Cr | 164,000.00 |
| | REF 2251132L FUNDS TRANSFER FRMDEP 8949917401 FROM FRCC 5TH ADVANCE UNDER LC | |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT

August 31, 2019

Page 3

██████████4100



| Date | Description | Additions |
|------|-------------|-----------|
| 08-21 | ' Cash Mgmt Trsfr Cr | 85,000.00 |
| | REF 2331250L FUNDS TRANSFER FRMDEP 6955279700 FROM FRCC 6TH ADVANCE | |
| 08-21 | ' Cash Mgmt Trsfr Cr | 165,000.00 |
| | REF 2331250L FUNDS TRANSFER FRMDEP 8949917401 FROM FRCC 6TH ADVANCE | |
| 08-28 | ' Cash Mgmt Trsfr Cr | 200,000.00 |
| | REF 2401322L FUNDS TRANSFER FRMDEP 8949917401 FROM FORESTAL RIO CALLE CALLE 7TH ADVANC | |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 07-31 | 110,991.02 | 08-08 | 114,592.75 | 08-21 | 114,592.75 |
| 08-05 | 114,592.75 | 08-12 | 114,592.75 | 08-22 | 114,592.75 |
| 08-07 | 114,592.75 | 08-13 | 114,592.75 | 08-28 | 114,592.75 |

***Thank you for banking with Bank Leumi USA***

**EXHIBIT 4**

HF 13251644v.2 #19915/0001



Last statement: August 31, 2019
This statement: September 30, 2019
Total days in statement period: 30

**TRADE FINANCE TRUST - SETTLEMENT ACCOUNT**
**417 5TH AVE 8TH FL**
**NEW YORK NY 10016**

Page 1

4100
( 7 )

Direct inquiries to:
800-892-5430

---

**\*\* NOTICE TO BANK LEUMI USA CLIENTS\*\* WE MADE CERTAIN CHANGES TO YOUR ACCOUNT TERMS ON SEPTEMBER 27, 2019. A SUMMARY OF THOSE CHANGES AND THE AMENDED AGREEMENTSARE AVAILABLE FOR YOU TO VIEW ON OUR WEBSITEAT WWW.LEUMIUSA.COM.**

---

# Business Analysis Checking

| | | | |
|---|---|---|---|
| Account number | 4100 | Beginning balance | $114,592.75 |
| Enclosures | 7 | Total additions | 2,195,723.96 |
| Low balance | $114,592.75 | Total subtractions | 2,163,000.00 |
| Average balance | $130,096.40 | Ending balance | $147,316.71 |
| Avg collected balance | $130,096 | | |

**DEBITS**



| Date | Description | Subtractions |
|---|---|---|
| 09-24 | Wire Out Intl | 350,000.00 |
| | 201909240004055 SOC. FORESTAL RIO CALLE CALLE S.A. 12036252 | |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT
September 30, 2019

Page 2
████ 4100

| Date | Description | Subtractions |
|------|-------------|--------------|



## CREDITS

| Date | Description | Additions |
|------|-------------|-----------|



| 09-24 | Cash Mgmt Trsfr Cr | 350,000.00 |
| | REF 2671407L FUNDS TRANSFER FRMDEP 8949917401 FROM FRCC NEW ADVANCE | |



## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 08-31 | 114,592.75 | 09-11 | 131,222.96 | 09-25 | 131,222.96 |
| 09-04 | 131,222.96 | 09-23 | 131,222.96 | 09-26 | 131,222.96 |
| 09-09 | 131,222.96 | 09-24 | 131,222.96 | 09-30 | 147,316.71 |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT
September 30, 2019

Page 3
4100

**OVERDRAFT/RETURN ITEM FEES**

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Bank Leumi USA*

**EXHIBIT 5**



**TRADE FINANCE TRUST - SETTLEMENT ACCOUNT**
**417 5TH AVE 8TH FL**
**NEW YORK NY 10016**

Page 1

4100
( 6)

Direct inquiries to:
800-892-5430

---

## Business Analysis Checking

| | | | |
|---|---|---|---|
| Account number | ▮▮▮4100 | Beginning balance | $147,316.71 |
| Enclosures | 6 | Total additions | 596,032.83 |
| Low balance | $113,953.29 | Total subtractions | 629,396.25 |
| Average balance | $136,072.22 | Ending balance | $113,953.29 |
| Avg collected balance | $136,072 | | |

**DEBITS**



| Date | Description | Subtractions |
|---|---|---|
| 10-22 | Wire Out Intl | 300,000.00 |
| | 201910220002432 SOC. FORESTAL RIO CALLE CALLE S.A. | |
| | 12036252 | |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT
October 31, 2019

Page 2
████ 4100

| Date | Description | Subtractions |
|---|---|---|



## CREDITS

| Date | Description | Additions |
|---|---|---|



| 10-22 | ' Cash Mgmt Trsfr Cr | 300,000.00 |

REF 2951155L FUNDS TRANSFER FRMDEP 8949917401
FROM 2ND FUNDING LC 0012036252



## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 09-30 | 147,316.71 | 10-08 | 217,216.71 | 10-22 | 130,586.50 |
| 10-01 | 147,266.71 | 10-09 | 147,216.71 | 10-24 | 113,953.29 |
| 10-07 | 147,216.71 | 10-15 | 130,586.50 | | |

TRADE FINANCE TRUST - SETTLEMENT ACCOUNT                                    Page 3
October 31, 2019                                          4100

**OVERDRAFT/RETURN ITEM FEES**

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Bank Leumi USA*

**EXHIBIT 6**

MASTER PARTICIPATION AGREEMENT

by and among

TRADE FINANCE TRUST,
as Seller

and

IIG GLOBAL TRADE FINANCE FUND LTD.,
as Participant,

and

IIG TRADE FINANCE LLC,
as Administrator

Dated as of May 31, 2017

## MASTER PARTICIPATION AGREEMENT

This MASTER PARTICIPATION AGREEMENT, dated as of this 31st day of May 2017, by and among TRADE FINANCE TRUST, a Delaware statutory trust formed under the laws of the State of Delaware ("Seller"), and IIG GLOBAL TRADE FINANCE FUND LTD., an exempted company incorporated with limited liability under the laws of the Cayman Islands ("Participant"), and IIG TRADE FINANCE LLC, a limited liability company organized under the laws of the State of Delaware ("Administrator" and together with Seller and Participant sometimes referred to individually as a "Party" and collectively as "Parties").

## RECITALS

A.      Seller is engaged in the business of, among other things, originating or acquiring trade and trade-related financing transactions (each, a "Facility" and collectively, "Facilities"), and may, from time to time, desire to sell, reacquire and/or resell Participation Interests (as hereinafter defined) in all or a portion of one or more Facilities to and/or from Participant;

B.      Among other things, Participant, may, from time to time, desire to purchase, sell, reacquire and/or resell Participation Interests in all or a portion of one or more Facilities from and/or to Seller;

C.      Administrator is engaged in the business of, among other things, identifying, structuring, effecting and servicing Facilities for itself and other owners of Facilities, such as Seller, and other Persons; and

D.      The Parties desire to establish herein certain master terms and conditions and a framework for additional terms and conditions that will apply to sales, purchases, resales or repurchases, between Seller and Participant of Participation Interests in Facilities.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, Seller, Participant and Administrator hereby agree as follows:

1.      Definitions; Rules of Construction.  (a)  As used in this Agreement, the following terms shall have the following meanings respectively assigned thereto:

"Administrator" has the meaning assigned thereto in the introductory paragraph hereof.

"Agreement" means this Master Participation Agreement, as supplemented, amended, restated, or otherwise modified from time to time in accordance with the terms hereof.

"Collateral" means, in the case of a Facility that is fully or partially secured, the respective property of the Obligors which secures all or any of the Loans made under such Facility, as and to the extent provided in the Financing Documents relating to such Facility.

"Facility" has the meaning assigned thereto in the recitals to this Agreement. Seller may be the sole originator of, and lender under, the respective Facility and Financing Documents related thereto, or may be one of several co-lenders thereunder or may have acquired the Facility from an originator or other lender; and Seller may enter into such Financing Documents directly or through an agent duly authorized (in an agency involving a fully disclosed principal, an unidentified principal or an undisclosed principal). Any such particular Financing Documents also may involve an identified and designated administrative agent and/or collateral agent acting on behalf of all lenders from time to time thereunder.

"Financing Document" means, as to any Facility, any and all credit, finance, loan or other agreements establishing or evidencing such Facility, and any and all promissory notes, guarantees, security agreements, mortgages, deeds of trust, and other collateral documents and other instruments and agreements entered into by any one or more of the Obligors in connection with or relating to such Facility.

"Loan" means, as to any Facility, any secured or unsecured loan, advance or other financial accommodation made or to be made by Seller under the applicable Financing Documents.

"Majority in Interest" means, as to any Facility and as of a particular date of determination, the party(ies) with an aggregate Proportionate Share therein in excess of 50%, and means, as to any particular Loan and as of a particular date of determination, the party(ies) with an aggregate Proportionate Share therein in excess of 50%. For the avoidance of doubt, if a Participation Interest in respect of a Loan under a Facility represents more than a 50% Proportionate Share of such Loan, then the holder(s) of such Participation Interest would be deemed to be the Majority in Interest with respect to such Loan.

"Obligors" means, as to any Facility, the borrower(s) or others to whom or to which credit is established or advanced thereunder and any and all guarantors, endorsers, acceptors, collateral grantors, sureties and other Persons liable on, or with respect to, or who otherwise provide any credit support for, all or any part of the obligations under such Facility.

"Participant" has the meaning assigned thereto in the introductory paragraph hereof.

"Participated Transaction" means a transaction(s) under which a Participation Interest is sold to Participant, to Seller, or to any other Person, in accordance with the terms of this Agreement. For the avoidance of doubt, subject to all of the terms and conditions of this Agreement, a Participated Transaction may involve a sale by Seller to Participant, a sale by Participant to Seller, or, with the prior written consent of Seller and Administrator, a sale involving any other Person.

- 2 –

"Participation Certificate" means an advance/participation certificate, substantially in the form of Exhibit A annexed hereto, which shall evidence, in the case of a Participated Transaction, the sale of, and title to, a Participation Interest.

"Participation Interest" means a participation interest, as detailed in an applicable Participation Certificate, in a particular Facility or Loan and includes, without limitation, all corresponding rights in payments thereunder and in all Collateral and proceeds thereof. However, whenever Seller acquires a Participation Interest, such Participation Interest shall, upon conveyance thereof to Seller, revert automatically from being a Participation Interest hereunder to being (a part of, if applicable) Seller's retained interest in such particular Facility or Loan. A Participation Interest may be a divided or undivided interest and may be an interest in one specific Loan or in several specific Loans made under a Facility or may be an interest in the entire Facility.

"Person" means an individual, firm, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"Proportionate Share(s)" means the respective percentage interests, aggregating 100%, whether held by Seller, Participant and/or any other Person(s) in a particular Facility or in one or more particular Loans under a Facility.

"Purchaser" means, with respect to any Participation Interest, the Party which purchases such Participation Interest; provided, however, that immediately upon the purchase of any Participation Interest by Seller, Seller shall no longer be referred to as a Purchaser with respect to such Participation Interest, since such Participation Interest shall revert automatically from being a Participation Interest hereunder to being a part of Seller's retained interest in the relevant Facility.

"Seller" has the meaning assigned thereto in the introductory paragraph hereof.

(b)      Defined terms apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun includes the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" are deemed to be followed by the phrase "without limitation". Unless the context requires otherwise:  (i) any definition of or reference to any agreement, instrument or other document is construed as referring to such agreement, instrument or other document as from time to time supplemented or otherwise modified, amended or restated (subject to any restrictions set forth herein), (ii) any reference to any Person is construed to include such Person's successors and assigns, (iii) the use of the word "discretion" means the sole and absolute discretion of the party referred to (unless "reasonable discretion" is specified), (iv) the words "herein," "hereof" and "hereunder" shall refer to this Agreement as a whole and not to any particular section or subsection hereof, and (v) the words "asset" and "property" are synonymous, and refer to any and all property, whether realty, personalty or mixed, whether tangible or intangible, of such Person.

2.      Conveyance of Participation Interest.

(a)      Upon the terms and subject to the conditions set forth in this Agreement, Seller shall have the right (but not the obligation), in its discretion, from time to time, to offer to sell to Participant one or more Participation Interests in a particular Facility or Loan, and Participant shall have the right (but not the obligation), in its discretion, to accept any such offer so made and to purchase such Participation Interest(s) from Seller.  Correspondingly, upon the terms and subject to the conditions set forth in this Agreement, Participant shall have the right (but not the obligation), in its discretion, from time to time, to offer to purchase from Seller one or more Participation Interests in a particular Facility or Loan, and Seller shall have the right (but not the obligation), in its discretion, to accept any such offer so made and to sell such Participation Interest(s) to Participant.

(b)      Upon the terms and subject to the conditions set forth in this Agreement, Participant shall have the right (but not the obligation), in its discretion, from time to time, to offer to sell to Seller, one or more Participation Interests, and Seller shall have the right (but not the obligation), in its discretion, to accept such offer and to purchase such Participation Interest(s) from Participant. Correspondingly, upon the terms and subject to the conditions set forth in this Agreement, Seller shall have the right (but not the obligation), in its discretion, from time to time, to offer to purchase from Participant one or more Participation Interests, and Participant shall have the right (but not the obligation), in its discretion, to accept any such offer so made and to sell such Participation Interest(s) to Seller. Further, if Participant has made an offer to sell all or a portion of a Participation Interest to Seller and Seller declines to accept to purchase such Participation Interest (or portion thereof) from Participant, then, with the prior written consent of Seller and Administrator, which consents shall not be unreasonably withheld or delayed, Participant shall have the right (but not the obligation), to offer to sell to any other third party Person such Participation Interest (or portion thereof). In connection with a request to offer to sell all or a portion of a Participation Interest to a third party, Participant shall disclose the identity of the proposed offeree to Seller and Administrator. If Seller and Administrator consent to such a request, such consent shall be conditioned upon:  (1) their receipt of a confidentiality and non-disclosure agreement duly executed by the proposed offeree upon terms and conditions satisfactory to Seller and Administrator in their reasonable discretion, and (2) Seller and Administrator conducting a satisfactory compliance review including without limitation, Know Your Customer (KYC) and Anti-Money Laundering (AML) compliance on the proposed offeree.

(c)      In connection with a prospective Participated Transaction, the applicable seller (be it Seller or Participant) shall, upon oral or written request by the prospective Purchaser (be it Seller or Participant), make available to such prospective Purchaser (or its designee) for review, inspection and photocopying, the originals, or true, correct and complete copies, of all Financing Documents and other material documents and information relating to the particular Facility to which such Participated Transaction relates (to the extent available to such seller).

(d)      A Participated Transaction shall only be effected by the due completion, execution and delivery of a Participation Certificate.  Upon payment of the purchase price indicated in a Participation Certificate, such Participation Certificate shall constitute the

– 4 –

grant, sale and assignment by the seller therein, and the purchase by the purchaser therein, of the Participation Interest(s) indicated therein with respect to the Facility or Loan indicated therein.

(e)     The sale of a Participation Interest shall be made on terms and conditions as agreed between Participant and Seller and set forth on the applicable Participation Certificate.  It is understood that such agreed terms and conditions may differ than those stated in the Financing Documents.

(f)     The sale of a Participation Interest shall be made without recourse to, or representation or warranty by, the applicable seller thereof or Administrator, except as otherwise expressly set forth in this Agreement.

(g)     It is understood and agreed that, in connection with any sale of a Participation Interest, there is no agreement, arrangement or understanding whereby the seller thereof would be required to repurchase all or any part of such Participation Interest (or any other participation interest).

3.     <u>Payment for Participation Interest</u>.  The purchase price to be paid by a Purchaser for a Participation Interest shall be specified in the applicable Participation Certificate. Unless otherwise specified in such Participation Certificate, such purchase price shall be paid in U.S. Dollars, in immediately available funds, by wire transfer to such account(s) as the seller of the Participation Interest may specify for such purpose, or shall be paid in such other manner as shall be mutually agreeable to Purchaser and seller thereof.  In the case of the purchase of a Participation Interest with respect to a Loan or Facility, or portion thereof, which has yet to be funded to the Obligor, promptly upon the timely receipt by the seller, in immediately available funds, of the purchase price for the Participation Interest, the seller shall fund such Loan, or portion thereof, to the applicable Obligor in accordance with the relevant Financing Documents. If for any reason the seller does not fund such Loan, or portion thereof, within two (2) business days after such timely receipt of the purchase price (<u>provided</u>, <u>however</u>, that the seller agrees to make reasonable efforts to fund such Loan, or portion thereof, upon the same business day as receipt of the purchase price, or upon the next succeeding business day if the purchase price is received too late in the day for the seller to fund the Loan, or portion thereof, upon the same business day), unless agreed otherwise between the seller and Purchaser, the seller shall promptly return the purchase price to Purchaser and the intended Participation Interest shall be null and void.  Seller and Purchaser (including Participant) acknowledge and agree that Seller is acting in an administrative capacity and it is not acting as a borrower with respect to any payments, or portions thereof, made by Purchaser for a Participation Interest.  Purchaser (including Participant) acknowledges that in the event that Obligor fails to make any payment when due with respect to a Facility or Loan, Purchaser (including Participant) has no recourse to any seller of the Participation Interest, including Seller.

4.     <u>Management Services</u>.

(a)     Administrator shall monitor and administer each Obligor's performance under the Financing Documents, and otherwise manage the Facilities, including monitoring the observance by Obligors of terms and conditions under the Financing Documents, in the same manner and with the same degree of care as it would for loan facilities of a similar

nature held solely for Seller's or any other Person's own account, and in any event Administrator shall perform its services with a reasonable degree of care that a reasonably prudent loan administrator in a like capacity might exercise under similar circumstances.

(b)     The Parties have established certain procedures and responsibilities as set forth in Exhibit C annexed hereto. Without limiting the foregoing, subject to the provisions of this Agreement (including without limitation Sections 4(d) and 4(e) below), it is the intent and purpose of the Parties that Administrator, on behalf of Seller and Participant with respect to a Facility in which Participant holds a Participation Interest(s), shall bill for, collect within relevant collection accounts and account for the periodic installments of principal and interest and other sums payable under the relevant Financing Documents and shall exercise all rights, powers and privileges of the lender or other provider of credit thereunder, and generally shall be responsible for the administration of such Financing Documents.  Administrator shall, from time to time, upon request by Seller or Participant, provide or make available to such Party with respect to such a Facility a copy of: (i) all default and waiver notices sent to Obligors under the applicable Financing Documents, (ii) all other material notices which Administrator is required to and/or does provide to an Obligor with respect to such Facility, (iii) any material notices received by Administrator from any Person relating to such Facility, (iv) all financial statements and financial information furnished to Administrator by Obligors or third parties with respect to such Facility, (v) all collateral reporting, valuation and verification information furnished to Administrator by Obligors and or by other third parties relating to Participation Interests, (vi) all cash reconciliations performed by Administrator relating to Participation Interests, (vii) for any Facility in which Participant holds a Participation Interest, the percentage interest in that Facility of each Person (which may be identified by pseudonyms such as "Holder #2", etc.) for whom Administrator acts as loan administrator in connection with that Facility, and (viii) subject to Section 4(g), any other information reasonably requested by Participant that is available to Seller or Administrator.

(c)     All monies collected within a relevant collection account from or on behalf of an Obligor in respect of a Facility in which Participant holds a Participation Interest(s) shall be held within segregated collection accounts for such Facility, and to the extent allocable to a Participation Interest of Participant, be held in such collection account in trust for Participant for the purpose for which they were paid, but need not be segregated in any manner from any other monies therein allocable to the interests of Seller or any other Person.  Promptly following such time as monies received in a relevant collection account constitute good collected funds, with respect to a Participation Interest, Administrator shall remit to Participant the portion of such monies to which Participant is entitled in accordance with the terms hereof and the relevant Participation Certificate, by wire transfer of immediately available funds or such other means as is mutually agreed between Participant and Administrator (and, shall, correspondingly, remit to Seller the net portion of such monies in respect of its interests, e.g., net of participation interests of Participant or any other Person).

(d)     Without the consent of Participant in respect of each Facility in which Participant holds a Participation Interest(s), and subject to the other terms of this Agreement, neither Seller nor Administrator shall: (i) consent to a reduction, currency change or other modification of any payment obligations of any Obligor under the applicable Financing Documents to which such Participation Interest(s) pertains, (ii) postpone or modify any date

fixed for any payment of principal or interest or other sums under the applicable Financing Documents to which such Participation Interest(s) pertains or agree to any extension of the term thereof, (iii) release, subordinate or substitute any Collateral securing the relevant Facility to which Participation Interest(s) pertains, except as required pursuant to the terms of the applicable Financing Documents, (iv) otherwise amend or waive any other term of the applicable Financing Documents that would have a material adverse effect on the Participation Interest(s), or (v) exercise any rights or remedies against an Obligor or the Collateral under the applicable Financing Documents which would have a material adverse effect on the Participation Interest(s); provided, however, that any such action(s) may be taken by Administrator where, in its reasonable judgment, it is not practicable to obtain Participant's consent before taking action and that action is necessary or desirable to protect the interests of Participant, or the interests of Participant and all other Persons for whom Administrator acts as loan administrator in connection with that Facility taken as a whole.  If Administrator takes any such action without first seeking consent it shall as soon as practicable inform Participant and all other Persons for whom Administrator acts as loan administrator, of the action taken.  In each case where the consent of Participant is requested pursuant to this Section 4(d), Participant shall give or refuse to give its consent promptly and in any event within five business days after the date of such request.  If Participant fails to respond with such five-business-day period, then Participant shall be deemed for all purposes to have refused to give its consent.  Notwithstanding the foregoing, if in the reasonable judgment of Administrator an action(s) is necessary or desirable to protect the interests of Participant and all other Persons for whom Administrator acts as loan administrator in connection with that Facility taken as a whole, and Participant has been requested to and has refused to give its consent, the action(s) shall nevertheless be permitted to be taken by Administrator if the Majority in Interest has given its consent, and Participant acknowledges that it shall be bound by any such decision of the Majority in Interest.

        (e)      In respect of each Facility or Loan in which Participant holds a Participation Interest(s), if Administrator, Seller or Participant has or acquires actual knowledge of an event of default (believed by it to be unknown by the other Parties, as the case may be) under any relevant Financing Documents, or if any such Party has or acquires actual knowledge of any other occurrence (believed by it to be unknown by the other Parties, as the case may be) that materially adversely effects or impairs the ability of an Obligor to perform in relation to a Participated Transaction, such Party shall promptly notify the other Parties, as the case may be.  As used in this Agreement, "actual knowledge" means the actual knowledge of any officer, director or manager of such Party who is directly involved in the administration of the relevant Facility or any Participation Interest therein, as the case may be.  Thereupon, Administrator, Seller and Participant shall consult in good faith as to the action to be taken by Administrator or Seller as a result of the occurrence of such event of default or such other occurrence.  Subject to subsection (d) of this Section and any limitations contained in the applicable Financing Documents, the applicable Majority in Interest shall have the right to determine the action(s) to be taken by Administrator or Seller in respect of such event of default or other occurrence; provided, however, that if Seller is not part of the Majority in Interest, then, upon request by Administrator or Seller, such Majority in Interest shall defer the taking of such action for a period of at least ten (10) days, during which time Administrator, Seller and Participant shall discuss and consider alternative courses of action recommended by Administrator or Seller.

(f)     Administrator undertakes to perform as loan administrator, on behalf of Participant in a Facility such duties (but only such duties) as are specifically set forth herein and no implied covenants or obligations shall be read into this Agreement against Administrator. Except as otherwise specifically provided in this Agreement, Administrator is entitled to use its reasonable discretion in respect to exercising or refraining from exercising any rights, or taking or refraining from taking any action, which may be vested in Administrator in connection with any Financing Documents or which Administrator may be entitled to take or assert in connection with any Financing Documents or other agreements or instruments, and Administrator shall not be liable to Participant for any action taken or omitted to be taken by it hereunder or pursuant hereto, except for: (i) the failure to make available promptly (after receipt and final collection) to Participant such sums as are required to be remitted to Participant pursuant to Subsection (c) of this Section, or (ii) the gross negligence or willful misconduct of Administrator or its agents, attorneys, representatives, employees, officers or directors; provided, however, that in the case of Administrator's good faith reliance on the advice of outside counsel, any liability to Participant resulting from the gross negligence or willful misconduct of such counsel shall be limited to the extent of any recovery therefor made from such counsel. In acting as loan administrator hereunder, Administrator may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order or other paper or document reasonably believed by Administrator (or its representatives) to be genuine and to have been signed or presented by the proper party or parties; and Administrator shall not be bound to make any investigation into the facts or matters stated in any such resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order or other paper or document unless such resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order or other paper or document appears on its face to be invalid or altered. Administrator may exercise its powers and perform its duties by or through such attorneys, agents, representatives, employees, officers and directors as it shall appoint, and it shall be entitled to the advice of counsel in anything done or omitted to be done in accordance with such advice and, in such event, Administrator shall not be required to take any action nor shall any provision herein set forth be deemed to impose a duty on Administrator to take any action, if Administrator shall have been advised by counsel that such action is contrary to the terms of any Financing Document or is otherwise contrary to law.

(g)     In connection with its fiscal agency under this Section, aside from the fee pursuant to Section 8 below or any fee specified in a Participation Certificate, Administrator shall bear its normal overhead costs incurred in the ordinary course of its business in billing Obligors for and collecting payments due under or otherwise in administering any Financing Documents and acting as loan administrator hereunder (collectively, "Overhead Costs"); but except therefor, Administrator need not expend or risk its own funds or otherwise incur any financial or other liability in the performance of any its duties as loan administrator for Participant hereunder. Any such other expenses reasonably incurred by Administrator in connection with the collection of unpaid principal or interest or other sums due under any Financing Documents, or otherwise in the performance of any of its duties as loan administrator hereunder, shall be borne by Participant, to the extent of its respective Proportionate Shares in the relevant Facility as of the date of incurrence of the particular expense. Participant shall also reimburse Administrator on demand for Participant's respective Proportionate Shares of any such other costs and expenses (including court costs and attorneys' fees) reasonably incurred by

– 8 –

Administrator in connection with the Participated Transaction. However, except as set forth in the following sentence, the Administrator hereby agrees that the Participant shall not be required to reimburse any single or group of related expenses hereunder in excess of US$25,000 in connection with any Participated Transaction in any 12-month period without the prior written approval of the Participant. However, if a consent of Participant is requested pursuant to this Section 4(g), and if in the reasonable judgment of Administrator the incurrence of the relevant expense is necessary or desirable to protect the interests of Participant and all other Persons for whom Administrator acts as loan administrator in connection with a Facility taken as a whole, and if Participant has refused to give its consent, Administrator shall nevertheless be permitted to incur such expense if the Majority in Interest has given its consent. Participant acknowledges and agrees that it shall be bound by any such decision of the Majority in Interest.

(h)     Participant, or its representatives, in relation to any Participation Interest held by Participant in a Facility, at Participant's expense, at any reasonable time and from time to time during the normal business hours of Administrator, and upon reasonable prior written notice to Administrator, shall have the right to examine and copy any and all books, records and documents maintained by Administrator relating to Participants' interest in any such Facility, provided, however, that Participant agrees that any and all information obtained by Participant and its representatives in the course of such examination shall be kept confidential and used by Participant solely for purposes relating to Participant's Participation Interest or this Agreement.

(i)     Seller and Participant each acknowledges that Administrator has also been appointed by Seller as its agent to render the loan administrator services set forth herein with respect to each Facility and otherwise to use its reasonable discretion in respect to exercising or refraining from exercising any rights, or taking or refraining from taking any action, which may be vested in Seller in connection with any Financing Documents or other agreements or instruments with respect to each Facility. Moreover, nothing herein shall be construed as a limitation or restriction on the right of Administrator, or any affiliate of Administrator, to engage in any other business endeavor or to devote time and attention to any such other endeavor, whether of a similar or dissimilar nature or in any way related to the subject matter of this Agreement, or to render services of any nature to any other Person.

(j)     Each of Seller and Participant, jointly and severally, agrees to reimburse and indemnify Administrator for any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including reasonable attorneys' fees), or disbursements of any kind and nature whatsoever that may be imposed on, incurred by or asserted against Administrator (including by Seller or Participant) in any way relating to or arising out of this Agreement or any Facility in which Participant holds a Participation Interest(s) or any action taken or omitted to be taken by Administrator hereunder or with respect to any such Facility; provided, however, that neither Seller nor Participant shall be liable for any of the foregoing to the extent such liabilities arise from the gross negligence or willful misconduct of Administrator.

(k)     Administrator will have the right to resign as loan administrator for Seller and Participant by giving at least ninety (90) days prior written notice thereof to Seller and Participant. Administrator may also be removed by a vote of the Majority in Interest in the case

of its gross negligence or willful misconduct in respect of its obligations hereunder, or any material breach of its obligations hereunder not cured within thirty (30) days after written notice thereof. Upon any such resignation or removal, but subject to any express terms to the contrary with respect to the relevant Financing Documents, the relevant Majority in Interest will have the right to appoint a successor loan administrator, which shall serve as loan administrator for Seller and Participant, as applicable. Effective with such a resignation or removal, Administrator agrees to assign (at Seller's and Participant's cost and expense in respect of their Proportionate Shares) all security interests and liens in any collateral, security documents and related filings relating to such Facility, if any, in the name of Administrator, and to do all other things reasonably necessary so as to assign and transfer security interests in any such collateral (including, all documents effectuating or evidencing such security interests) to any successor loan administrator. If no successor loan administrator shall have been so appointed by the Majority in Interest and shall have accepted such appointment within ninety (90) days after Administrator's giving of notice of resignation, then Administrator may, on behalf of such relevant Majority in Interest, appoint a successor loan administrator which may (but need not) be any commercial bank or, if not a bank, any other reputable financial institution organized under the laws of the United States of America or any state thereof. Upon the acceptance of an appointment as loan administrator by a successor, such successor shall thereupon agree to, and succeed and become vested to, all the rights, powers, discretion, privileges, and duties of Administrator hereunder and Administrator shall be fully discharged thereof. Upon Administrator's resignation or removal as loan administrator, the provisions under the relevant Financing Documents, this Agreement and any Participation Certificate shall continue in effect in respect of any actions taken or omitted to be taken by Administrator while Administrator was acting as loan administrator thereto.

5.    Application of Payments and Realization on Collateral.

(a)    Subject to the requirements of the relevant Facility and the applicable Financing Documents, in respect of Facilities in which Participant holds a Participation Interest, payments made by an Obligor on account of a particular Loan shall be applied against such Loan and, to the extent of any Participation Interest(s) therein, shall be directed by Administrator to Participant and Seller, as applicable, as provided in Section 4 hereof.

(b)    In the case of any Participation Interest which relates to a Loan made under a Facility, the Parties hereby acknowledge that notwithstanding the fact that such Loan may be "cross collateralized", such Loan may relate to, and be made with respect to, a particular invoice issued by an Obligor or other particular assets of an Obligor and the particular items of Collateral in connection therewith ("Specific Loan Collateral") (rather than relate to, and be made with respect to, any other invoices issued by the Obligor or other particular assets of the Obligor and the particular items of Collateral in connection therewith). With respect to any such Loans, proceeds realized from Specific Loan Collateral shall be applied, first, against the obligations under the Loan to which the Specific Loan Collateral relates, and then to the other obligations under the relevant Financing Documents.

(c)    A payment made by an Obligor or proceeds realized on Collateral, if received in relation to a Facility in which Participant holds one or more undivided

- 10 –

Participation Interests therein, or if received in relation to a Facility in which Participant holds one or more Participation Interests in a particular Loan(s) made thereunder and which payment or proceeds cannot be traced to Specific Loan Collateral, shall, subject to the requirements of the relevant Facility, be applied by Administrator, on a pro rata or other reasonable basis, to each outstanding Loan under the relevant Financing Documents, and, so paid to Participant and/or Seller, to the extent of their relevant Proportionate Shares.

6.      Refunds to Collection Accounts.  If Administrator shall direct any amount to Participant or Seller pursuant hereto under the belief or expectation that a related payment has been or will be received or collected in connection with the relevant Financing Documents or Collateral and such related payment is not received or collected in good funds, then Participant or Seller, as applicable, will promptly (and in any event on the next business day) after demand by Administrator return such amount to the relevant collection account.  If Administrator reasonably determines at any time that any amount received, or collected, or realized on any Collateral, in respect of a Facility must be returned to an Obligor, or paid to any other Person pursuant to any applicable insolvency law, then, notwithstanding any other provision of this Agreement, Administrator shall not be required to distribute any portion thereof to Participant or Seller, and Participant and Seller will promptly (but in any event on the next business day) after demand by Administrator, repay to the relevant collection account the portion thereof that Administrator shall have distributed to Participant or Seller.

7.      Status of Parties.  In the case of any sale of a Participation Interest, (i) the seller thereof assigns to Purchaser, without recourse, such seller's entire right, title and interest in and to the respective Participation Interest (and does not retain or hold any right, title or interest therein).  Administrator shall continue to hold and retain, directly or indirectly through third party custodians, the relevant Financing Documents and Collateral, which will be available for review and inspection by Seller, resulting Participant and any other participating Person, and will collect and direct, as provided herein, payment of principal, interest and other sums due under such Financing Documents by Obligors and any other third parties liable therefor, provided, however, that such payments shall only be received into relevant collection accounts maintained in the name of the relevant Obligors.  Except as may be necessary or appropriate pursuant to applicable law or banking regulations, and in such cases as reasonably coordinated in advance with Administrator, Participant shall have no right to directly or indirectly contact the Obligors in any manner in connection with any Participation Interest or in any Facility.  In all cases, the relationship between the seller of a Participation Interest and Purchaser thereof (be it Participant or Seller), is and shall be that of a purchaser and seller of a property interest and not a creditor-debtor relationship; and the seller of a Participation Interest does not assume and shall not have any liability to any Purchaser thereof.  Participant acknowledges that, upon its execution of a Participation Certificate with respect to a Participation Interest, it will be deemed to have been provided the opportunity to make, and shall be deemed to have made, an independent, informed judgment with respect to the creditworthiness of the Obligor(s), the value and extent of the Collateral, and the perfection, validity and priority of any security interest therein, the terms and provisions of the relevant Financing Documents and the adequacy of the remedies contained therein, and the desirability of purchasing the relevant Participation Interest, and will assume all risk with respect thereto.  Neither the execution nor delivery of this Agreement, the sharing in any Financing Documents or Collateral, nor any agreement to share in profits or losses resulting from any Facility or Loan, is intended to be, nor shall it be construed to

- 11 –

be, the formation of a partnership or joint venture between Seller, Participant and/or Administrator.

8.     <u>Administrator Fee; Costs</u>.     Administrator shall be entitled to the fee set forth in <u>Exhibit B</u> annexed hereto (or such other fee arrangement as may be mutually agreed in writing from time to time).   In addition, Administrator shall be entitled to payment or reimbursement of all expenses and costs as provided in Section 4(g) above.

9.     <u>Certain Representations, Warranties and Agreements</u>.

(a)     Each Purchaser accepts the full risk of nonpayment under any Financing Documents and on account of any Collateral, and agrees that neither Seller nor any other seller of Participation Interest nor Administrator shall be responsible in any way for the performance or observance by Obligors of any of the terms, covenants or conditions under any Financing Documents. Each Purchaser acknowledges that neither Administrator, nor Seller, nor Participant (in the case of a sale of a Participation Interest by Participant to Seller), has made or makes any representation or warranty (except as hereinafter specifically provided) with respect to Obligors, Collateral, Financing Documents or any other documents or agreements relating thereto, or with respect to the creditworthiness of Obligors, the value of any Collateral, or the validity, enforceability or correctness of any instruments, documents, agreements, statements or certificates signed, executed or made by any Obligors.

(b)     Effective as of the date of its execution of this Agreement, each Party hereby represents and warrants to each other Party as follows:

(i)     Such Party is duly organized, validly existing and in good standing (if applicable) under the laws of its jurisdiction of organization, and has full power and authority to enter into this Agreement and perform its obligations hereunder.

(ii)     Such Party's execution and delivery of this Agreement, and such Party's performance of its obligations hereunder do not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to such Party; or (B) result in a breach of, or constitute a default under, such Party's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which such Party is a party or by which such Party or its property may be bound or affected, and which would have a material adverse effect on such Party's business or financial condition.

(iii)     This Agreement constitutes the legal, valid and binding obligation of such Party and is enforceable against such Party in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

(iv)     There are no actions, suits or proceedings pending or, to the knowledge of such Party, threatened against or affecting such Party or its property before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to such Party, would have a material adverse effect on such Party's ability to perform its obligations under this Agreement.

- 12 –

(v)     To such Party's knowledge, no approval of, or consent from, any governmental authority is required in connection with such Party's execution, delivery or performance of this Agreement, except for any such approval or consent as has been obtained.

(vi)    Each of Seller and Participant hereby further represents and warrants for itself to each other such Party, and to Administrator, that it has all requisite knowledge and experience to purchase and sell loan participations of the nature, values and amounts that are contemplated to be purchased and sold pursuant to this Agreement and that it does so in the ordinary course of its business.

10.    Additional Representations and Warranties of Seller of a Participation Interest. Effective as of the effective date of any Participated Transaction, the seller thereof (be it Seller or Participant), hereby represents and warrants to Purchaser thereof (be it Seller or Participant), as follows:

(a)     Such seller is duly organized, validly existing and in good standing (if applicable) under the laws of its jurisdiction of organization, and has full power and authority to enter into the Participation Certificate to which such Participated Transaction relates, and to perform its respective obligations thereunder.

(b)     Such seller's execution and delivery of the Participation Certificate to which such Participated Transaction relates, and such seller's performance of its obligations thereunder and hereunder, do not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to such seller; or (B) result in a breach of, or constitute a default under, such seller's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which such seller is a party or by which such seller or its property may be bound or affected, and which would have a material adverse effect on such seller's business or financial condition.

(c)     The Participation Certificate applicable to such Participated Transaction and this Agreement constitute the legal, valid and binding obligation of such seller and is enforceable against such seller in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

(d)     There are no actions, suits or proceedings pending or, to the knowledge of such seller, threatened against or affecting such seller or its property before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to such seller, would have a material adverse effect on such seller's ability to perform its obligations under the Participation Certificate applicable to such Participated Transaction.

(e)     To such seller's knowledge, no approval of, or consent from, any governmental authority is required in connection with such seller's execution, delivery or performance of the Participation Certificate applicable to such Participated Transaction, except for any such approval or consent as has been obtained.

- 13 –

(f)     Such seller has no actual knowledge that the Financing Documents to which the Participation Certificate applicable to such Participated Transaction relates are not in full force and effect, or that any default or event of default thereunder has occurred and is then continuing.

(g)     Such seller owns the Participation Interest purporting to be sold under the Participated Transaction, and has the right to convey such Participation Interest to Purchaser free and clear of all security interests and other liens and encumbrances.

(h)     Upon payment of the purchase price for the applicable Participation Interest, the Participation Certificate applicable to such Participated Transaction will convey unto Purchaser the entire right, title and interest of such seller in and to such Participation Interest, which conveyance will be free and clear of all security interests and other liens and encumbrances.

(i)     Seller has such knowledge and experience in business and financial matters necessary to evaluate the merits and risks with respect to the sale of its Participation Interest; and Seller is experienced in making, and participating in, trade receivable (and other trade-related) financing transactions similar to the transaction contemplated in the Participation Certificate, is financially able to undertake the risks involved in such transaction, and does so in the ordinary course of its business.

11.     Additional Representations and Warranties of Purchaser of a Participation Interest. Effective as of the effective date of any Participated Transaction, Purchaser thereof hereby represents and warrants to the seller thereof (be it Seller or Participant) as follows:

(a)     Purchaser is duly organized, validly existing and in good standing (if applicable) under the laws of its jurisdiction of organization, and has full power and authority to enter into the Participation Certificate to which such Participated Transaction relates, and to perform its respective obligations thereunder.

(b)     Purchaser's execution and delivery of the Participation Certificate to which such Participated Transaction relates, and Purchaser's performance of its obligations thereunder, do not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Purchaser; or (B) result in a breach of, or constitute a default under, Purchaser's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which Purchaser is a party or by which Purchaser or its property may be bound or affected, and which would have a material adverse effect on Purchaser's business or financial condition.

(c)     The Participation Certificate applicable to such Participated Transaction constitutes the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

(d)     There are no actions, suits or proceedings pending or, to the knowledge of Purchaser, threatened against or affecting Purchaser or its property before any

- 14 –

court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Purchaser, would have a material adverse effect on Purchaser's ability to perform its obligations under the Participation Certificate applicable to such Participated Transaction.

(e)     To Purchaser's knowledge, no approval of, or consent from, any governmental authority is required in connection with Purchaser's execution, delivery or performance of the Participation Certificate applicable to such Participated Transaction, except for any such approval or consent as has been obtained.

(f)     Purchaser understands that the conveyance of the Participation Interest, if and to the extent that it may involve the sale of a security, is being offered and sold without registration or qualification under the securities laws of any jurisdiction; and, in certain cases, such non-registration or non-qualification may be based (in whole or part) upon an exemption afforded under applicable securities laws.

(g)     Purchaser understands that the conveyance of the Participation Interest, if and to the extent that it may involve the sale of a security, may be subject to restrictions on transferability and resale except as permitted under the securities laws of any applicable jurisdiction; and Purchaser is acquiring the Participation Interest solely for its own account, for investment purposes only, and not with a view to the resale in a manner not permitted under such applicable securities laws.

(h)     Purchaser (or its authorized representatives acting on its behalf) has such knowledge and experience in business and financial matters necessary to evaluate the merits and risks of the Participation Interest; and Purchaser is experienced in making, and participating in, trade receivable (and other trade-related) financing transactions similar to the transaction contemplated in the Participation Certificate and is financially able to undertake the risks involved in such transaction. Purchaser agrees that is solely responsible for the assessment of the risks associated with the Participated Transaction and has not and shall not rely on any due diligence provided by Seller or Administrator or any representation or warranty of Seller or Administrator except as specifically provided for herein.

(i)     Purchaser does not own any equity interest in, and is not a creditor of, Seller.

12.     <u>Additional Representations and Warranties of Seller</u>.  Effective as of the effective date of any Participated Transaction in which Seller is the seller of the Participation Interest,

(a)     Seller hereby represents and warrants to Purchaser thereof as follows:

(i)     Seller was duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, and had full power and authority to perform its respective obligations thereunder, as of the date(s) of execution of the Financing Documents to which such Participated Transaction relates.

- 15 –

(ii)     Seller's execution and delivery of any Financing Documents to which such Participated Transaction relates did not, as of the date of such execution and delivery, and Seller's performance of its obligations with respect thereto, does not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Seller; or (B) result in a breach of, or constitute a default under, Seller's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which Seller is a party or by which Seller or its property may be bound or affected, and which would have a material adverse effect on Seller's business or financial condition.

(iii)     The Financing Documents applicable to such Participated Transaction constitute the legal, valid and binding obligation of Seller and are enforceable against Seller in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

(iv)     There are no actions, suits or proceedings pending or, to the knowledge of Seller, threatened against or affecting Seller or its property before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Seller, would have a material adverse effect on Seller's ability to perform its obligations under the Financing Documents applicable to such Participated Transaction.

(v)     To Seller's knowledge, no approval of, or consent from, any governmental authority was required in connection with Seller's execution, delivery or performance of the Financing Documents applicable to such Participated Transaction, except for any such approval or consent as had been timely obtained.

13.     <u>Additional Representations and Warranties of Administrator.</u>

(a)     Effective as of the effective date of any Participated Transaction, Administrator has no actual knowledge that the Financing Documents to which the Participation Certificate applicable to such Participated Transaction relates are not in full force and effect, or that any default or event of default thereunder has occurred and is then continuing.

(b)     Administrator will perform its services hereunder with a reasonable degree of care that a reasonably prudent person in a like capacity might exercise under similar circumstances.   At Participant's or Seller's written request, Administrator will promptly correct any errors or omissions in the provision of its services hereunder.

(c)     Administrator has such knowledge and experience in business and financial matters necessary to perform its services hereunder; and Administrator is experienced in performing services relating to trade receivable (and other trade-related) financing transactions similar to the Participated Transaction, is financially able to undertake the risks involved in such transaction, and does so in the ordinary course of its business.

14.     <u>Certain Procedures and Responsibilities; Further Assurances.</u>   <u>Exhibit C</u> annexed hereto contains certain further mutually understood procedures and responsibilities

- 16 –

relating to this Agreement.  The Parties also agree from time to time to execute and deliver such notices, directions and other instruments as may be reasonably necessary or appropriate to carry out the provisions of this Agreement, including, without limitation to cause all monies, credits or other property to be paid, distributed or delivered in accordance with this Agreement, or as may be desirable in obtaining for each Party entitled thereto, the full benefits of this Agreement and the rights and powers herein granted.

       15.   <u>Notices</u>.  All notices required to be provided under this Agreement shall be deemed to have been given if delivered by Federal Express or another internationally recognized overnight delivery service for delivery on the first available business day and addressed as follows:

If to Seller:

> Trade Finance Trust
> 1500 Broadway, 26th Floor
> New York, New York 10036
> Attention: Legal Compliance

If to Participant:

> IIG Global Trade Finance Fund Ltd.
> Maples Corporate Services Limited
> P.O. Box 309
> Ugland House
> Grand Cayman, KY1-1104
> Cayman Islands

If to Administrator:

> IIG Trade Finance LLC
> 1500 Broadway, 26th Floor
> New York, New York 10036
> Attention: Trade Services

or at such other address as a Party may from time to time designate in writing to the other by notice hereunder, and shall be effective when received on a business day (or, if received on a day that is not a business day, on the next succeeding business day).

       16.   <u>Miscellaneous</u>.

       (a)   This Agreement and each Participation Certificate, and the rights and obligations of the Parties hereunder and thereunder, shall in all respects be governed by, and construed in accordance with, the laws of the State of New York (without regard to any conflicts of laws principles other than Section 5-1401 of the New York General Obligations Law).

(b)     Any controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration by the International Court of Arbitration of the International Chamber of Commerce (the "ICC") in accordance with the ICC Rules of Arbitration in effect at the time of the arbitration. The arbitration proceedings shall be conducted in New York, New York and in the English language. There shall be three (3) arbitrators, one of whom shall be selected by the Party(ies) seeking to initiate the arbitration, one by the other Party(ies) and the third by the arbitrators so previously selected. The arbitration award shall be given in writing and shall be final and binding on the Parties with respect to the subject matter in controversy. The Parties shall keep confidential the arbitration proceedings and terms of any arbitration award, except as may otherwise be required by applicable law. Each Party shall bear its own legal fees and other costs related to an arbitration, except that the arbitrators shall determine who shall bear the fees and costs of the arbitrators. The arbitrators may determine arbitrability but may not award punitive damages or limit, expand or otherwise modify the terms of this Agreement. The Parties acknowledge that any arbitration award so rendered shall be governed by the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

(c)     This Agreement and each Participation Certificate constitute the entire agreement between the Parties with respect to the subject matter hereof and thereof; and this Agreement and each Participation Certificate shall not be supplemented, amended, restated or otherwise modified, except by a document in writing executed by the parties hereof or thereof, as applicable.

(d)     Each Party hereto agrees to execute and deliver, and to use its commercially reasonable efforts to cause its successors and assigns to execute and deliver, all such further instruments and agreements, and to do, or cause to be done, all such other further acts, as may be necessary or desirable to give further effect to the purposes and intents of this Agreement, as the other Parties hereto reasonably shall request from time to time.

(e)     EACH PARTY TO THIS AGREEMENT HEREBY UNCONDITIONALLY WAIVES SUCH PARTY'S RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY PARTICIPATION CERTIFICATE, ANY OF THE FINANCING DOCUMENTS, ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN THE PARTIES PURSUANT TO THIS AGREEMENT.

(f)     This Agreement and each Participation Certificate shall be binding on, and shall inure to the benefit of, the parties hereto and thereto and their respective successors and assigns.

(g)     Seller may, at any time, without the consent of Participant, encumber, sell or grant participation interests to third parties in any Facility to the extent that such participation interests are not owned by Participant, which encumbrance, sale or grant shall not be subject to this Agreement. It is understood that the terms and conditions of such encumbrance, sale or grant may differ than those of the Participation Interests owned by Participant relating to such Facility.

- 18 –

(h)     Participant may not, without the prior written consent of Seller and Administrator, encumber, sell or grant sub Participation Interests in all or any part of its Participation Interest in any Facility, except as provided in this Agreement.

(i)     Nothing herein, whether express or implied, shall be construed to give any Person, other than Seller, Participant, Administrator and their respective successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any Participation Interest conveyed hereby; but this Agreement shall be held to be for the sole and exclusive benefit of Seller, Participant, and their respective successors and permitted assigns.

(j)     No delay on the part of any party in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof; and no single or partial exercise of any right, power or remedy by any party hereunder shall preclude any further exercise thereof.

(k)     This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original hereof, and such counterparts shall together constitute but one and the same agreement.

(l)     Participant hereby acknowledges that Financing Documents or applicable law, or both, may impose confidentiality obligations upon Seller or Administrator in respect of Facilities, Financing Documents, Collateral or Obligors thereof, and hereby agrees to maintain such confidentiality to the extent known to Participant, whether through its review of any Financing Documents, having been made aware in writing by Seller or Administrator, or otherwise, as though directly obligated thereon.

(m)     The titles and section headings of this Agreement have been inserted for reference purposes only and shall not be deemed to have any substantive effect.

(n)     Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof, but any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

(o)     Each of Seller and Participant may terminate this Agreement upon 30 days prior written notice to the other Parties.  Notwithstanding any such termination, (i) this Agreement shall continue to govern any Participated Transaction and Participation Certificate concluded before such termination, including, without limitation, but subject to Section 4(k) above, the services of Administrator in relation thereto, (ii) Section 4(j) shall survive any such termination, (iii) such termination will be without prejudice to any rights or obligations accrued prior to the date that such termination takes effect and (iv) any rights and duties that survive such termination in accordance with the express terms of this Agreement shall so survive.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

- 19 –

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed on its behalf by its respective authorized signatory as of the day and year first above written.

Seller:                                              Participant:

TRADE FINANCE TRUST                   IIG GLOBAL TRADE FINANCE FUND LTD.
By: IIG Trade Finance LLC,
     as Administrator

By: _____          By: _____

Name: _____          Name: _____
        MICHAEL SHORE
        AUTHORIZED SIGNATORY
Title: _____          Title: _____


Administrator:

IIG TRADE FINANCE LLC

By: _____

Name: _____
        MICHAEL SHORE
        AUTHORIZED SIGNATORY
Title: _____

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed on its behalf by its respective authorized signatory as of the day and year first above written.

Seller:

TRADE FINANCE TRUST
By: IIG Trade Finance LLC,
    as Administrator

By: _____

Name: __MICHAEL SHORE__
      __AUTHORIZED SIGNATORY__

Title: _____

Participant:

IIG GLOBAL TRADE FINANCE FUND LTD.

By: _____

Name: __ANDRES CARNS__

Title: __DIRECTOR__

Administrator:

IIG TRADE FINANCE LLC

By: _____

Name: __MICHAEL SHORE__
      __AUTHORIZED SIGNATORY__

Title: _____

EXHIBIT A

Form of Participation Certificate

(See Attached)

## EXHIBIT B

### Administrator Fee

Unless otherwise agreed among the Parties in respect of a Participation Interest, Administrator shall be entitled to a monthly service fee from Participant (prorated for any partial month) computed at an annual rate of one percent (1.0%) of the average principal outstanding in respect of all Participation Interests each month, in the aggregate.   Administrator may (i) request payment of the fee from Participant (and Participant shall promptly pay such fee), (ii) deduct the fee from any monies due to Participant in respect of Participation Interests or (iii) opt to waive all or a portion of the fee.

<u>EXHIBIT C</u>

<u>Certain Procedures and Responsibilities</u>

The purpose of this addendum is to outline various steps taken by the Parties in the process of the sale and acquisition of Participation Interests pursuant to the Agreement, the ongoing responsibilities of the Parties and the settlement process.

Four process stages have been identified:

A.    Credit evaluation process of new clients by Participant.
B.    Soliciting/Acceptance of Participation Interests.
C.    Ongoing monitoring and control.
D.    Repayment process.

It is noted that business is typically introduced to Seller/ Administrator, through a network of marketing agents, representatives and consultants operating in various countries.

**A.    Credit evaluation process of new clients by Participant.** (Soliciting/offering a New Participated Transaction).

From time to time, 1) Seller, through Administrator will offer to Participant or 2) Participant will solicit from Seller, through Administrator, new Participated Transactions to evaluate and allocate credit lines of Participant for acceptance of future Participation Interests. Should Participant be interested in evaluating a proposed transaction, Seller shall provide or make available through Administrator, all relevant documentation and material in order to allow Participant to conduct its own independent credit evaluation.

**Customary Documentation/Information Provided to Participant, includes but is not limited to the following (as applicable):**

    a)  Company Presentation (if applicable)
    b)  OFAC check results
    c)  Financials (audited where available)
    d)  Report on Obligor provided by third party business credit information provider, such as Creditsafe
    e)  Report on Offtaker(s) provided by third party business credit information provider, such as Creditsafe
    f)  Last 12 months' account history of escrow (collection account)
    g)  Due diligence summary report
    h)  Financing Documents
    i)  Third Party Document Custody Information

    (all items provided via email or other document sharing software such as ShareFile)

**1. Participant loan application process:**

Participant shall review all information made available to it and may raise questions or solicit further explanation and may also use other external information (web-based sources) to fill in gaps, and possibly enhance its due diligence on the Obligor through such third party sources.

**B.    Soliciting/Acceptance of deal participations, under approved client/borrower limits (Deal Purchases).**

1. From time to time, Participant may transmit an email to Seller/ Administrator, noting an amount available for participation and soliciting a suitable offer. (Note: Participant will update Administrator regularly with Participant's cash position report so that Seller is made aware of the availability under approved lines.)

2. Administrator will send a response via email to Participant noting specific Facilities or Loans of Seller that are available for sale of Participation Interests, if any.  Administrator will also provide disbursement instructions to Participant should Participant determine to accept a Participation Interest.

3. Participant, after due consideration, may accept or decline, but once it confirms its acceptance via email, this will serve as a notice of its binding commitment to consummate the purchase of the offered Participation Interest.

4. The purchase is formally documented in the form of a signed Participation Certificate for each specific deal (scanned, signed and emailed, followed by exchange of originals at a later stage – as per schedule referred-to in the Master Participation Agreement).

**C.    Obligor ongoing monitoring and servicing.**

**1. Post drawdown documents/process**

From time to time Participant requests/extracts/reconciles its Participation Interests through documentary evidence as follows:

a) May make periodic requests through Administrator for confirmation of the aggregate outstanding loan balance signed by the Obligor, to be provided as practicable on a reasonable efforts basis. Requests may also be made by Participant's auditors, as part of the auditors' year-end debtor verification process.

b) Participation Certificates are reconciled periodically with the outstanding loan portfolio.

**2. Annual review:**

Participant may conduct annual reviews of the Obligors (but shall not be permitted to contact an Obligor except as expressly provided in Section 7 of the Agreement), and

Administrator will facilitate the process by providing updated documentation/information as listed in Section A.1 above. *(Note: Administrator performs its own periodic credit reviews of Obligors.)*

### 3. Auditor's loan balances confirmations:

Participant may ask Administrator to help coordinate obtaining Obligor audit confirmations for outstanding balances annually (process to be determined on an annual basis)

### D.     Repayment process.

When repayments are received from Obligors, Administrator allocates the payments in accordance with the Master Participation Agreement and informs Participant by email providing a detailed breakdown, identifying the Participated Transaction, principal and interest settled and confirming when Participant account is credited with the proceeds. Participant acknowledges receipt and posts the entries to the respective Obligor accounts.

**EXHIBIT 7**

# MASTER PARTICIPATION AGREEMENT

by and among

## TRADE FINANCE TRUST,
as Seller

and

## IIG STRUCTURED TRADE FINANCE FUND LTD.,
as Participant,

and

## IIG TRADE FINANCE LLC,
as Administrator

Dated as of June 30, 2017

## MASTER PARTICIPATION AGREEMENT

This MASTER PARTICIPATION AGREEMENT, dated as of this 30th day of June 2017, by and among TRADE FINANCE TRUST, a Delaware statutory trust formed under the laws of the State of Delaware ("Seller"), and IIG STRUCTURED TRADE FINANCE FUND LTD., an exempted company incorporated with limited liability under the laws of the Cayman Islands ("Participant"), and IIG TRADE FINANCE LLC, a limited liability company organized under the laws of the State of Delaware ("Administrator" and together with Seller and Participant sometimes referred to individually as a "Party" and collectively as "Parties").

## RECITALS

A.      Seller is engaged in the business of, among other things, originating or acquiring trade and trade-related financing transactions (each, a "Facility" and collectively, "Facilities"), and may, from time to time, desire to sell, reacquire and/or resell Participation Interests (as hereinafter defined) in all or a portion of one or more Facilities to and/or from Participant;

B.      Among other things, Participant, may, from time to time, desire to purchase, sell, reacquire and/or resell Participation Interests in all or a portion of one or more Facilities from and/or to Seller;

C.      Administrator is engaged in the business of, among other things, identifying, structuring, effecting and servicing Facilities for itself and other owners of Facilities, such as Seller, and other Persons; and

D.      The Parties desire to establish herein certain master terms and conditions and a framework for additional terms and conditions that will apply to sales, purchases, resales or repurchases, between Seller and Participant of Participation Interests in Facilities.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, Seller, Participant and Administrator hereby agree as follows:

1.      Definitions; Rules of Construction.   (a)  As used in this Agreement, the following terms shall have the following meanings respectively assigned thereto:

"Administrator" has the meaning assigned thereto in the introductory paragraph hereof.

"<u>Agreement</u>" means this Master Participation Agreement, as supplemented, amended, restated, or otherwise modified from time to time in accordance with the terms hereof.

"<u>Collateral</u>" means, in the case of a Facility that is fully or partially secured, the respective property of the Obligors which secures all or any of the Loans made under such Facility, as and to the extent provided in the Financing Documents relating to such Facility.

"<u>Facility</u>" has the meaning assigned thereto in the recitals to this Agreement. Seller may be the sole originator of, and lender under, the respective Facility and Financing Documents related thereto, or may be one of several co-lenders thereunder or may have acquired the Facility from an originator or other lender; and Seller may enter into such Financing Documents directly or through an agent duly authorized (in an agency involving a fully disclosed principal, an unidentified principal or an undisclosed principal). Any such particular Financing Documents also may involve an identified and designated administrative agent and/or collateral agent acting on behalf of all lenders from time to time thereunder.

"<u>Financing Document</u>" means, as to any Facility, any and all credit, finance, loan or other agreements establishing or evidencing such Facility, and any and all promissory notes, guarantees, security agreements, mortgages, deeds of trust, and other collateral documents and other instruments and agreements entered into by any one or more of the Obligors in connection with or relating to such Facility.

"<u>Loan</u>" means, as to any Facility, any secured or unsecured loan, advance or other financial accommodation made or to be made by Seller under the applicable Financing Documents.

"<u>Majority in Interest</u>" means, as to any Facility and as of a particular date of determination, the party(ies) with an aggregate Proportionate Share therein in excess of 50%, and means, as to any particular Loan and as of a particular date of determination, the party(ies) with an aggregate Proportionate Share therein in excess of 50%. For the avoidance of doubt, if a Participation Interest in respect of a Loan under a Facility represents more than a 50% Proportionate Share of such Loan, then the holder(s) of such Participation Interest would be deemed to be the Majority in Interest with respect to such Loan.

"<u>Obligors</u>" means, as to any Facility, the borrower(s) or others to whom or to which credit is established or advanced thereunder and any and all guarantors, endorsers, acceptors, collateral grantors, sureties and other Persons liable on, or with respect to, or who otherwise provide any credit support for, all or any part of the obligations under such Facility.

"<u>Participant</u>" has the meaning assigned thereto in the introductory paragraph hereof.

"<u>Participated Transaction</u>" means a transaction(s) under which a Participation Interest is sold to Participant, to Seller, or to any other Person, in accordance with the terms of this Agreement. For the avoidance of doubt, subject to all of the terms and conditions of this Agreement, a Participated Transaction may involve a sale by Seller to Participant, a sale by Participant to Seller, or, with the prior written consent of Seller and Administrator, a sale involving any other Person.

"<u>Participation Certificate</u>" means an advance/participation certificate, substantially in the form of <u>Exhibit A</u> annexed hereto, which shall evidence, in the case of a Participated Transaction, the sale of, and title to, a Participation Interest.

"<u>Participation Interest</u>" means a participation interest, as detailed in an applicable Participation Certificate, in a particular Facility or Loan and includes, without limitation, all corresponding rights in payments thereunder and in all Collateral and proceeds thereof. However, whenever Seller acquires a Participation Interest, such Participation Interest shall, upon conveyance thereof to Seller, revert automatically from being a Participation Interest hereunder to being (a part of, if applicable) Seller's retained interest in such particular Facility or Loan. A Participation Interest may be a divided or undivided interest and may be an interest in one specific Loan or in several specific Loans made under a Facility or may be an interest in the entire Facility.

"<u>Person</u>" means an individual, firm, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"<u>Proportionate Share(s)</u>" means the respective percentage interests, aggregating 100%, whether held by Seller, Participant and/or any other Person(s) in a particular Facility or in one or more particular Loans under a Facility.

"<u>Purchaser</u>" means, with respect to any Participation Interest, the Party which purchases such Participation Interest; <u>provided</u>, <u>however</u>, that immediately upon the purchase of any Participation Interest by Seller, Seller shall no longer be referred to as a Purchaser with respect to such Participation Interest, since such Participation Interest shall revert automatically from being a Participation Interest hereunder to being a part of Seller's retained interest in the relevant Facility.

"<u>Seller</u>" has the meaning assigned thereto in the introductory paragraph hereof.

(b)     Defined terms apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun includes the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" are deemed to be followed by the phrase "without limitation". Unless the context requires otherwise: (i) any definition of or reference to any agreement, instrument or other document is construed as referring to such agreement, instrument or other document as from time to time supplemented or otherwise modified, amended or restated (subject to any restrictions set forth herein), (ii) any reference to any Person is construed to include such Person's successors and assigns, (iii) the use of the word "discretion" means the sole and absolute discretion of the party referred to (unless "reasonable discretion" is specified), (iv) the words "herein," "hereof" and "hereunder" shall refer to this Agreement as a whole and not to any particular section or subsection hereof, and (v) the words "asset" and "property" are synonymous, and refer to any and all property, whether realty, personalty or mixed, whether tangible or intangible, of such Person.

2.    Conveyance of Participation Interest.

(a)    Upon the terms and subject to the conditions set forth in this Agreement, Seller shall have the right (but not the obligation), in its discretion, from time to time, to offer to sell to Participant one or more Participation Interests in a particular Facility or Loan, and Participant shall have the right (but not the obligation), in its discretion, to accept any such offer so made and to purchase such Participation Interest(s) from Seller. Correspondingly, upon the terms and subject to the conditions set forth in this Agreement, Participant shall have the right (but not the obligation), in its discretion, from time to time, to offer to purchase from Seller one or more Participation Interests in a particular Facility or Loan, and Seller shall have the right (but not the obligation), in its discretion, to accept any such offer so made and to sell such Participation Interest(s) to Participant.

(b)    Upon the terms and subject to the conditions set forth in this Agreement, Participant shall have the right (but not the obligation), in its discretion, from time to time, to offer to sell to Seller, one or more Participation Interests, and Seller shall have the right (but not the obligation), in its discretion, to accept such offer and to purchase such Participation Interest(s) from Participant. Correspondingly, upon the terms and subject to the conditions set forth in this Agreement, Seller shall have the right (but not the obligation), in its discretion, from time to time, to offer to purchase from Participant one or more Participation Interests, and Participant shall have the right (but not the obligation), in its discretion, to accept any such offer so made and to sell such Participation Interest(s) to Seller. Further, if Participant has made an offer to sell all or a portion of a Participation Interest to Seller and Seller declines to accept to purchase such Participation Interest (or portion thereof) from Participant, then, with the prior written consent of Seller and Administrator, which consents shall not be unreasonably withheld or delayed, Participant shall have the right (but not the obligation), to offer to sell to any other third party Person such Participation Interest (or portion thereof). In connection with a request to offer to sell all or a portion of a Participation Interest to a third party, Participant shall disclose the identity of the proposed offeree to Seller and Administrator. If Seller and Administrator consent to such a request, such consent shall be conditioned upon:  (1) their receipt of a confidentiality and non-disclosure agreement duly executed by the proposed offeree upon terms and conditions satisfactory to Seller and Administrator in their reasonable discretion, and (2) Seller and Administrator conducting a satisfactory compliance review including without limitation, Know Your Customer (KYC) and Anti-Money Laundering (AML) compliance on the proposed offeree.

(c)    In connection with a prospective Participated Transaction, the applicable seller (be it Seller or Participant) shall, upon oral or written request by the prospective Purchaser (be it Seller or Participant), make available to such prospective Purchaser (or its designee) for review, inspection and photocopying, the originals, or true, correct and complete copies, of all Financing Documents and other material documents and information relating to the particular Facility to which such Participated Transaction relates (to the extent available to such seller).

(d)    A Participated Transaction shall only be effected by the due completion, execution and delivery of a Participation Certificate.  Upon payment of the purchase price indicated in a Participation Certificate, such Participation Certificate shall constitute the

grant, sale and assignment by the seller therein, and the purchase by the purchaser therein, of the Participation Interest(s) indicated therein with respect to the Facility or Loan indicated therein.

(e)     The sale of a Participation Interest shall be made on terms and conditions as agreed between Participant and Seller and set forth on the applicable Participation Certificate.  It is understood that such agreed terms and conditions may differ than those stated in the Financing Documents.

(f)     The sale of a Participation Interest shall be made without recourse to, or representation or warranty by, the applicable seller thereof or Administrator, except as otherwise expressly set forth in this Agreement.

(g)     It is understood and agreed that, in connection with any sale of a Participation Interest, there is no agreement, arrangement or understanding whereby the seller thereof would be required to repurchase all or any part of such Participation Interest (or any other participation interest).

3.     <u>Payment for Participation Interest</u>.  The purchase price to be paid by a Purchaser for a Participation Interest shall be specified in the applicable Participation Certificate. Unless otherwise specified in such Participation Certificate, such purchase price shall be paid in U.S. Dollars, in immediately available funds, by wire transfer to such account(s) as the seller of the Participation Interest may specify for such purpose, or shall be paid in such other manner as shall be mutually agreeable to Purchaser and seller thereof.  In the case of the purchase of a Participation Interest with respect to a Loan or Facility, or portion thereof, which has yet to be funded to the Obligor, promptly upon the timely receipt by the seller, in immediately available funds, of the purchase price for the Participation Interest, the seller shall fund such Loan, or portion thereof, to the applicable Obligor in accordance with the relevant Financing Documents. If for any reason the seller does not fund such Loan, or portion thereof, within two (2) business days after such timely receipt of the purchase price (<u>provided</u>, <u>however</u>, that the seller agrees to make reasonable efforts to fund such Loan, or portion thereof, upon the same business day as receipt of the purchase price, or upon the next succeeding business day if the purchase price is received too late in the day for the seller to fund the Loan, or portion thereof, upon the same business day), unless agreed otherwise between the seller and Purchaser, the seller shall promptly return the purchase price to Purchaser and the intended Participation Interest shall be null and void.  Seller and Purchaser (including Participant) acknowledge and agree that Seller is acting in an administrative capacity and it is not acting as a borrower with respect to any payments, or portions thereof, made by Purchaser for a Participation Interest.  Purchaser (including Participant) acknowledges that in the event that Obligor fails to make any payment when due with respect to a Facility or Loan, Purchaser (including Participant) has no recourse to any seller of the Participation Interest, including Seller.

4.     <u>Management Services</u>.

(a)     Administrator shall monitor and administer each Obligor's performance under the Financing Documents, and otherwise manage the Facilities, including monitoring the observance by Obligors of terms and conditions under the Financing Documents, in the same manner and with the same degree of care as it would for loan facilities of a similar

nature held solely for Seller's or any other Person's own account, and in any event Administrator shall perform its services with a reasonable degree of care that a reasonably prudent loan administrator in a like capacity might exercise under similar circumstances.

(b)     The Parties have established certain procedures and responsibilities as set forth in Exhibit C annexed hereto. Without limiting the foregoing, subject to the provisions of this Agreement (including without limitation Sections 4(d) and 4(e) below), it is the intent and purpose of the Parties that Administrator, on behalf of Seller and Participant with respect to a Facility in which Participant holds a Participation Interest(s), shall bill for, collect within relevant collection accounts and account for the periodic installments of principal and interest and other sums payable under the relevant Financing Documents and shall exercise all rights, powers and privileges of the lender or other provider of credit thereunder, and generally shall be responsible for the administration of such Financing Documents.  Administrator shall, from time to time, upon request by Seller or Participant, provide or make available to such Party with respect to such a Facility a copy of: (i) all default and waiver notices sent to Obligors under the applicable Financing Documents, (ii) all other material notices which Administrator is required to and/or does provide to an Obligor with respect to such Facility, (iii) any material notices received by Administrator from any Person relating to such Facility, (iv) all financial statements and financial information furnished to Administrator by Obligors or third parties with respect to such Facility, (v) all collateral reporting, valuation and verification information furnished to Administrator by Obligors and or by other third parties relating to Participation Interests, (vi) all cash reconciliations performed by Administrator relating to Participation Interests, (vii) for any Facility in which Participant holds a Participation Interest, the percentage interest in that Facility of each Person (which may be identified by pseudonyms such as "Holder #2", etc.) for whom Administrator acts as loan administrator in connection with that Facility, and (viii) subject to Section 4(g), any other information reasonably requested by Participant that is available to Seller or Administrator.

(c)     All monies collected within a relevant collection account from or on behalf of an Obligor in respect of a Facility in which Participant holds a Participation Interest(s) shall be held within segregated collection accounts for such Facility, and to the extent allocable to a Participation Interest of Participant, be held in such collection account in trust for Participant for the purpose for which they were paid, but need not be segregated in any manner from any other monies therein allocable to the interests of Seller or any other Person.  Promptly following such time as monies received in a relevant collection account constitute good collected funds, with respect to a Participation Interest, Administrator shall remit to Participant the portion of such monies to which Participant is entitled in accordance with the terms hereof and the relevant Participation Certificate, by wire transfer of immediately available funds or such other means as is mutually agreed between Participant and Administrator (and, shall, correspondingly, remit to Seller the net portion of such monies in respect of its interests, e.g., net of participation interests of Participant or any other Person).

(d)     Without the consent of Participant in respect of each Facility in which Participant holds a Participation Interest(s), and subject to the other terms of this Agreement, neither Seller nor Administrator shall: (i) consent to a reduction, currency change or other modification of any payment obligations of any Obligor under the applicable Financing Documents to which such Participation Interest(s) pertains, (ii) postpone or modify any date

– 6 –

fixed for any payment of principal or interest or other sums under the applicable Financing Documents to which such Participation Interest(s) pertains or agree to any extension of the term thereof, (iii) release, subordinate or substitute any Collateral securing the relevant Facility to which Participation Interest(s) pertains, except as required pursuant to the terms of the applicable Financing Documents, (iv) otherwise amend or waive any other term of the applicable Financing Documents that would have a material adverse effect on the Participation Interest(s), or (v) exercise any rights or remedies against an Obligor or the Collateral under the applicable Financing Documents which would have a material adverse effect on the Participation Interest(s); provided, however, that any such action(s) may be taken by Administrator where, in its reasonable judgment, it is not practicable to obtain Participant's consent before taking action and that action is necessary or desirable to protect the interests of Participant, or the interests of Participant and all other Persons for whom Administrator acts as loan administrator in connection with that Facility taken as a whole.  If Administrator takes any such action without first seeking consent it shall as soon as practicable inform Participant and all other Persons for whom Administrator acts as loan administrator, of the action taken.  In each case where the consent of Participant is requested pursuant to this Section 4(d), Participant shall give or refuse to give its consent promptly and in any event within five business days after the date of such request.  If Participant fails to respond with such five-business-day period, then Participant shall be deemed for all purposes to have refused to give its consent.  Notwithstanding the foregoing, if in the reasonable judgment of Administrator an action(s) is necessary or desirable to protect the interests of Participant and all other Persons for whom Administrator acts as loan administrator in connection with that Facility taken as a whole, and Participant has been requested to and has refused to give its consent, the action(s) shall nevertheless be permitted to be taken by Administrator if the Majority in Interest has given its consent, and Participant acknowledges that it shall be bound by any such decision of the Majority in Interest.

(e)     In respect of each Facility or Loan in which Participant holds a Participation Interest(s), if Administrator, Seller or Participant has or acquires actual knowledge of an event of default (believed by it to be unknown by the other Parties, as the case may be) under any relevant Financing Documents, or if any such Party has or acquires actual knowledge of any other occurrence (believed by it to be unknown by the other Parties, as the case may be) that materially adversely effects or impairs the ability of an Obligor to perform in relation to a Participated Transaction, such Party shall promptly notify the other Parties, as the case may be.  As used in this Agreement, "actual knowledge" means the actual knowledge of any officer, director or manager of such Party who is directly involved in the administration of the relevant Facility or any Participation Interest therein, as the case may be.  Thereupon, Administrator, Seller and Participant shall consult in good faith as to the action to be taken by Administrator or Seller as a result of the occurrence of such event of default or such other occurrence.  Subject to subsection (d) of this Section and any limitations contained in the applicable Financing Documents, the applicable Majority in Interest shall have the right to determine the action(s) to be taken by Administrator or Seller in respect of such event of default or other occurrence; provided, however, that if Seller is not part of the Majority in Interest, then, upon request by Administrator or Seller, such Majority in Interest shall defer the taking of such action for a period of at least ten (10) days, during which time Administrator, Seller and Participant shall discuss and consider alternative courses of action recommended by Administrator or Seller.

(f)      Administrator undertakes to perform as loan administrator, on behalf of Participant in a Facility such duties (but only such duties) as are specifically set forth herein and no implied covenants or obligations shall be read into this Agreement against Administrator. Except as otherwise specifically provided in this Agreement, Administrator is entitled to use its reasonable discretion in respect to exercising or refraining from exercising any rights, or taking or refraining from taking any action, which may be vested in Administrator in connection with any Financing Documents or which Administrator may be entitled to take or assert in connection with any Financing Documents or other agreements or instruments, and Administrator shall not be liable to Participant for any action taken or omitted to be taken by it hereunder or pursuant hereto, except for: (i) the failure to make available promptly (after receipt and final collection) to Participant such sums as are required to be remitted to Participant pursuant to Subsection (c) of this Section, or (ii) the gross negligence or willful misconduct of Administrator or its agents, attorneys, representatives, employees, officers or directors; provided, however, that in the case of Administrator's good faith reliance on the advice of outside counsel, any liability to Participant resulting from the gross negligence or willful misconduct of such counsel shall be limited to the extent of any recovery therefor made from such counsel.  In acting as loan administrator hereunder, Administrator may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order or other paper or document reasonably believed by Administrator (or its representatives) to be genuine and to have been signed or presented by the proper party or parties; and Administrator shall not be bound to make any investigation into the facts or matters stated in any such resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order or other paper or document unless such resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order or other paper or document appears on its face to be invalid or altered.  Administrator may exercise its powers and perform its duties by or through such attorneys, agents, representatives, employees, officers and directors as it shall appoint, and it shall be entitled to the advice of counsel in anything done or omitted to be done in accordance with such advice and, in such event, Administrator shall not be required to take any action nor shall any provision herein set forth be deemed to impose a duty on Administrator to take any action, if Administrator shall have been advised by counsel that such action is contrary to the terms of any Financing Document or is otherwise contrary to law.

(g)      In connection with its fiscal agency under this Section, aside from the fee pursuant to Section 8 below or any fee specified in a Participation Certificate, Administrator shall bear its normal overhead costs incurred in the ordinary course of its business in billing Obligors for and collecting payments due under or otherwise in administering any Financing Documents and acting as loan administrator hereunder (collectively, "Overhead Costs"); but except therefor, Administrator need not expend or risk its own funds or otherwise incur any financial or other liability in the performance of any its duties as loan administrator for Participant hereunder.   Any such other expenses reasonably incurred by Administrator in connection with the collection of unpaid principal or interest or other sums due under any Financing Documents, or otherwise in the performance of any of its duties as loan administrator hereunder, shall be borne by Participant, to the extent of its respective Proportionate Shares in the relevant Facility as of the date of incurrence of the particular expense.  Participant shall also reimburse Administrator on demand for Participant's respective Proportionate Shares of any such other costs and expenses (including court costs and attorneys' fees) reasonably incurred by

Administrator in connection with the Participated Transaction. However, except as set forth in the following sentence, the Administrator hereby agrees that the Participant shall not be required to reimburse any single or group of related expenses hereunder in excess of US$25,000 in connection with any Participated Transaction in any 12-month period without the prior written approval of the Participant. However, if a consent of Participant is requested pursuant to this Section 4(g), and if in the reasonable judgment of Administrator the incurrence of the relevant expense is necessary or desirable to protect the interests of Participant and all other Persons for whom Administrator acts as loan administrator in connection with a Facility taken as a whole, and if Participant has refused to give its consent, Administrator shall nevertheless be permitted to incur such expense if the Majority in Interest has given its consent. Participant acknowledges and agrees that it shall be bound by any such decision of the Majority in Interest.

(h)     Participant, or its representatives, in relation to any Participation Interest held by Participant in a Facility, at Participant's expense, at any reasonable time and from time to time during the normal business hours of Administrator, and upon reasonable prior written notice to Administrator, shall have the right to examine and copy any and all books, records and documents maintained by Administrator relating to Participants' interest in any such Facility, provided, however, that Participant agrees that any and all information obtained by Participant and its representatives in the course of such examination shall be kept confidential and used by Participant solely for purposes relating to Participant's Participation Interest or this Agreement.

(i)     Seller and Participant each acknowledges that Administrator has also been appointed by Seller as its agent to render the loan administrator services set forth herein with respect to each Facility and otherwise to use its reasonable discretion in respect to exercising or refraining from exercising any rights, or taking or refraining from taking any action, which may be vested in Seller in connection with any Financing Documents or other agreements or instruments with respect to each Facility. Moreover, nothing herein shall be construed as a limitation or restriction on the right of Administrator, or any affiliate of Administrator, to engage in any other business endeavor or to devote time and attention to any such other endeavor, whether of a similar or dissimilar nature or in any way related to the subject matter of this Agreement, or to render services of any nature to any other Person.

(j)     Each of Seller and Participant, jointly and severally, agrees to reimburse and indemnify Administrator for any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including reasonable attorneys' fees), or disbursements of any kind and nature whatsoever that may be imposed on, incurred by or asserted against Administrator (including by Seller or Participant) in any way relating to or arising out of this Agreement or any Facility in which Participant holds a Participation Interest(s) or any action taken or omitted to be taken by Administrator hereunder or with respect to any such Facility; provided, however, that neither Seller nor Participant shall be liable for any of the foregoing to the extent such liabilities arise from the gross negligence or willful misconduct of Administrator.

(k)     Administrator will have the right to resign as loan administrator for Seller and Participant by giving at least ninety (90) days prior written notice thereof to Seller and Participant. Administrator may also be removed by a vote of the Majority in Interest in the case

of its gross negligence or willful misconduct in respect of its obligations hereunder, or any material breach of its obligations hereunder not cured within thirty (30) days after written notice thereof. Upon any such resignation or removal, but subject to any express terms to the contrary with respect to the relevant Financing Documents, the relevant Majority in Interest will have the right to appoint a successor loan administrator, which shall serve as loan administrator for Seller and Participant, as applicable. Effective with such a resignation or removal, Administrator agrees to assign (at Seller's and Participant's cost and expense in respect of their Proportionate Shares) all security interests and liens in any collateral, security documents and related filings relating to such Facility, if any, in the name of Administrator, and to do all other things reasonably necessary so as to assign and transfer security interests in any such collateral (including, all documents effectuating or evidencing such security interests) to any successor loan administrator. If no successor loan administrator shall have been so appointed by the Majority in Interest and shall have accepted such appointment within ninety (90) days after Administrator's giving of notice of resignation, then Administrator may, on behalf of such relevant Majority in Interest, appoint a successor loan administrator which may (but need not) be any commercial bank or, if not a bank, any other reputable financial institution organized under the laws of the United States of America or any state thereof. Upon the acceptance of an appointment as loan administrator by a successor, such successor shall thereupon agree to, and succeed and become vested to, all the rights, powers, discretion, privileges, and duties of Administrator hereunder and Administrator shall be fully discharged thereof. Upon Administrator's resignation or removal as loan administrator, the provisions under the relevant Financing Documents, this Agreement and any Participation Certificate shall continue in effect in respect of any actions taken or omitted to be taken by Administrator while Administrator was acting as loan administrator thereto.

### 5. Application of Payments and Realization on Collateral.

(a) Subject to the requirements of the relevant Facility and the applicable Financing Documents, in respect of Facilities in which Participant holds a Participation Interest, payments made by an Obligor on account of a particular Loan shall be applied against such Loan and, to the extent of any Participation Interest(s) therein, shall be directed by Administrator to Participant and Seller, as applicable, as provided in Section 4 hereof.

(b) In the case of any Participation Interest which relates to a Loan made under a Facility, the Parties hereby acknowledge that notwithstanding the fact that such Loan may be "cross collateralized", such Loan may relate to, and be made with respect to, a particular invoice issued by an Obligor or other particular assets of an Obligor and the particular items of Collateral in connection therewith ("Specific Loan Collateral") (rather than relate to, and be made with respect to, any other invoices issued by the Obligor or other particular assets of the Obligor and the particular items of Collateral in connection therewith). With respect to any such Loans, proceeds realized from Specific Loan Collateral shall be applied, first, against the obligations under the Loan to which the Specific Loan Collateral relates, and then to the other obligations under the relevant Financing Documents.

(c) A payment made by an Obligor or proceeds realized on Collateral, if received in relation to a Facility in which Participant holds one or more undivided

– 10 –

Participation Interests therein, or if received in relation to a Facility in which Participant holds one or more Participation Interests in a particular Loan(s) made thereunder and which payment or proceeds cannot be traced to Specific Loan Collateral, shall, subject to the requirements of the relevant Facility, be applied by Administrator, on a pro rata or other reasonable basis, to each outstanding Loan under the relevant Financing Documents and, so paid to Participant and/or Seller, to the extent of their relevant Proportionate Shares.

6.    <u>Refunds to Collection Accounts</u>.  If Administrator shall direct any amount to Participant or Seller pursuant hereto under the belief or expectation that a related payment has been or will be received or collected in connection with the relevant Financing Documents or Collateral and such related payment is not received or collected in good funds, then Participant or Seller, as applicable, will promptly (and in any event on the next business day) after demand by Administrator return such amount to the relevant collection account.  If Administrator reasonably determines at any time that any amount received, or collected, or realized on any Collateral, in respect of a Facility must be returned to an Obligor, or paid to any other Person pursuant to any applicable insolvency law, then, notwithstanding any other provision of this Agreement, Administrator shall not be required to distribute any portion thereof to Participant or Seller, and Participant and Seller will promptly (but in any event on the next business day) after demand by Administrator, repay to the relevant collection account the portion thereof that Administrator shall have distributed to Participant or Seller.

7.    <u>Status of Parties</u>.  In the case of any sale of a Participation Interest, (i) the seller thereof assigns to Purchaser, without recourse, such seller's entire right, title and interest in and to the respective Participation Interest (and does not retain or hold any right, title or interest therein).  Administrator shall continue to hold and retain, directly or indirectly through third party custodians, the relevant Financing Documents and Collateral, which will be available for review and inspection by Seller, resulting Participant and any other participating Person, and will collect and direct, as provided herein, payment of principal, interest and other sums due under such Financing Documents by Obligors and any other third parties liable therefor, <u>provided</u>, <u>however</u>, that such payments shall only be received into relevant collection accounts maintained in the name of the relevant Obligors.  Except as may be necessary or appropriate pursuant to applicable law or banking regulations, and in such cases as reasonably coordinated in advance with Administrator, Participant shall have no right to directly or indirectly contact the Obligors in any manner in connection with any Participation Interest or in any Facility.  In all cases, the relationship between the seller of a Participation Interest and Purchaser thereof (be it Participant or Seller), is and shall be that of a purchaser and seller of a property interest and not a creditor-debtor relationship; and the seller of a Participation Interest does not assume and shall not have any liability to any Purchaser thereof.  Participant acknowledges that, upon its execution of a Participation Certificate with respect to a Participation Interest, it will be deemed to have been provided the opportunity to make, and shall be deemed to have made, an independent, informed judgment with respect to the creditworthiness of the Obligor(s), the value and extent of the Collateral, and the perfection, validity and priority of any security interest therein, the terms and provisions of the relevant Financing Documents and the adequacy of the remedies contained therein, and the desirability of purchasing the relevant Participation Interest, and will assume all risk with respect thereto.  Neither the execution nor delivery of this Agreement, the sharing in any Financing Documents or Collateral, nor any agreement to share in profits or losses resulting from any Facility or Loan, is intended to be, nor shall it be construed to

- 11 –

be, the formation of a partnership or joint venture between Seller, Participant and/or Administrator.

        8.    <u>Administrator Fee; Costs</u>.    Administrator shall be entitled to the fee set forth in <u>Exhibit B</u> annexed hereto (or such other fee arrangement as may be mutually agreed in writing from time to time).  In addition, Administrator shall be entitled to payment or reimbursement of all expenses and costs as provided in Section 4(g) above.

        9.    <u>Certain Representations, Warranties and Agreements</u>.

        (a)    Each Purchaser accepts the full risk of nonpayment under any Financing Documents and on account of any Collateral, and agrees that neither Seller nor any other seller of Participation Interest nor Administrator shall be responsible in any way for the performance or observance by Obligors of any of the terms, covenants or conditions under any Financing Documents.  Each Purchaser acknowledges that neither Administrator, nor Seller, nor Participant (in the case of a sale of a Participation Interest by Participant to Seller), has made or makes any representation or warranty (except as hereinafter specifically provided) with respect to Obligors, Collateral, Financing Documents or any other documents or agreements relating thereto, or with respect to the creditworthiness of Obligors, the value of any Collateral, or the validity, enforceability or correctness of any instruments, documents, agreements, statements or certificates signed, executed or made by any Obligors.

        (b)    Effective as of the date of its execution of this Agreement, each Party hereby represents and warrants to each other Party as follows:

        (i)    Such Party is duly organized, validly existing and in good standing (if applicable) under the laws of its jurisdiction of organization, and has full power and authority to enter into this Agreement and perform its obligations hereunder.

        (ii)    Such Party's execution and delivery of this Agreement, and such Party's performance of its obligations hereunder do not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to such Party; or (B) result in a breach of, or constitute a default under, such Party's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which such Party is a party or by which such Party or its property may be bound or affected, and which would have a material adverse effect on such Party's business or financial condition.

        (iii)    This Agreement constitutes the legal, valid and binding obligation of such Party and is enforceable against such Party in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

        (iv)    There are no actions, suits or proceedings pending or, to the knowledge of such Party, threatened against or affecting such Party or its property before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to such Party, would have a material adverse effect on such Party's ability to perform its obligations under this Agreement.

(v)    To such Party's knowledge, no approval of, or consent from, any governmental authority is required in connection with such Party's execution, delivery or performance of this Agreement, except for any such approval or consent as has been obtained.

(vi)    Each of Seller and Participant hereby further represents and warrants for itself to each other such Party, and to Administrator, that it has all requisite knowledge and experience to purchase and sell loan participations of the nature, values and amounts that are contemplated to be purchased and sold pursuant to this Agreement and that it does so in the ordinary course of its business.

10.    <u>Additional Representations and Warranties of Seller of a Participation Interest</u>.  Effective as of the effective date of any Participated Transaction, the seller thereof (be it Seller or Participant), hereby represents and warrants to Purchaser thereof (be it Seller or Participant), as follows:

(a)    Such seller is duly organized, validly existing and in good standing (if applicable) under the laws of its jurisdiction of organization, and has full power and authority to enter into the Participation Certificate to which such Participated Transaction relates, and to perform its respective obligations thereunder.

(b)    Such seller's execution and delivery of the Participation Certificate to which such Participated Transaction relates, and such seller's performance of its obligations thereunder and hereunder, do not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to such seller; or (B) result in a breach of, or constitute a default under, such seller's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which such seller is a party or by which such seller or its property may be bound or affected, and which would have a material adverse effect on such seller's business or financial condition.

(c)    The Participation Certificate applicable to such Participated Transaction and this Agreement constitute the legal, valid and binding obligation of such seller and is enforceable against such seller in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

(d)    There are no actions, suits or proceedings pending or, to the knowledge of such seller, threatened against or affecting such seller or its property before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to such seller, would have a material adverse effect on such seller's ability to perform its obligations under the Participation Certificate applicable to such Participated Transaction.

(e)    To such seller's knowledge, no approval of, or consent from, any governmental authority is required in connection with such seller's execution, delivery or performance of the Participation Certificate applicable to such Participated Transaction, except for any such approval or consent as has been obtained.

- 13 –

(f)     Such seller has no actual knowledge that the Financing Documents to which the Participation Certificate applicable to such Participated Transaction relates are not in full force and effect, or that any default or event of default thereunder has occurred and is then continuing.

(g)     Such seller owns the Participation Interest purporting to be sold under the Participated Transaction, and has the right to convey such Participation Interest to Purchaser free and clear of all security interests and other liens and encumbrances.

(h)     Upon payment of the purchase price for the applicable Participation Interest, the Participation Certificate applicable to such Participated Transaction will convey unto Purchaser the entire right, title and interest of such seller in and to such Participation Interest, which conveyance will be free and clear of all security interests and other liens and encumbrances.

(i)     Seller has such knowledge and experience in business and financial matters necessary to evaluate the merits and risks with respect to the sale of its Participation Interest; and Seller is experienced in making, and participating in, trade receivable (and other trade-related) financing transactions similar to the transaction contemplated in the Participation Certificate, is financially able to undertake the risks involved in such transaction, and does so in the ordinary course of its business.

11.     <u>Additional Representations and Warranties of Purchaser of a Participation Interest</u>.   Effective as of the effective date of any Participated Transaction, Purchaser thereof hereby represents and warrants to the seller thereof (be it Seller or Participant) as follows:

(a)     Purchaser is duly organized, validly existing and in good standing (if applicable) under the laws of its jurisdiction of organization, and has full power and authority to enter into the Participation Certificate to which such Participated Transaction relates, and to perform its respective obligations thereunder.

(b)     Purchaser's execution and delivery of the Participation Certificate to which such Participated Transaction relates, and Purchaser's performance of its obligations thereunder, do not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Purchaser; or (B) result in a breach of, or constitute a default under, Purchaser's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which Purchaser is a party or by which Purchaser or its property may be bound or affected, and which would have a material adverse effect on Purchaser's business or financial condition.

(c)     The Participation Certificate applicable to such Participated Transaction constitutes the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

(d)     There are no actions, suits or proceedings pending or, to the knowledge of Purchaser, threatened against or affecting Purchaser or its property before any

- 14 –

court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Purchaser, would have a material adverse effect on Purchaser's ability to perform its obligations under the Participation Certificate applicable to such Participated Transaction.

(e)     To Purchaser's knowledge, no approval of, or consent from, any governmental authority is required in connection with Purchaser's execution, delivery or performance of the Participation Certificate applicable to such Participated Transaction, except for any such approval or consent as has been obtained.

(f)     Purchaser understands that the conveyance of the Participation Interest, if and to the extent that it may involve the sale of a security, is being offered and sold without registration or qualification under the securities laws of any jurisdiction; and, in certain cases, such non-registration or non-qualification may be based (in whole or part) upon an exemption afforded under applicable securities laws.

(g)     Purchaser understands that the conveyance of the Participation Interest, if and to the extent that it may involve the sale of a security, may be subject to restrictions on transferability and resale except as permitted under the securities laws of any applicable jurisdiction; and Purchaser is acquiring the Participation Interest solely for its own account, for investment purposes only, and not with a view to the resale in a manner not permitted under such applicable securities laws.

(h)     Purchaser (or its authorized representatives acting on its behalf) has such knowledge and experience in business and financial matters necessary to evaluate the merits and risks of the Participation Interest; and Purchaser is experienced in making, and participating in, trade receivable (and other trade-related) financing transactions similar to the transaction contemplated in the Participation Certificate and is financially able to undertake the risks involved in such transaction.  Purchaser agrees that is solely responsible for the assessment of the risks associated with the Participated Transaction and has not and shall not rely on any due diligence provided by Seller or Administrator or any representation or warranty of Seller or Administrator except as specifically provided for herein.

(i)     Purchaser does not own any equity interest in, and is not a creditor of, Seller.

12.    <u>Additional Representations and Warranties of Seller</u>.  Effective as of the effective date of any Participated Transaction in which Seller is the seller of the Participation Interest,

(a)     Seller hereby represents and warrants to Purchaser thereof as follows:

(i)     Seller was duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, and had full power and authority to perform its respective obligations thereunder, as of the date(s) of execution of the Financing Documents to which such Participated Transaction relates.

- 15 –

(ii)    Seller's execution and delivery of any Financing Documents to which such Participated Transaction relates did not, as of the date of such execution and delivery, and Seller's performance of its obligations with respect thereto, does not: (A) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Seller; or (B) result in a breach of, or constitute a default under, Seller's organizational documents or under any indenture or loan or credit agreement or any other agreement, lease or instrument to which Seller is a party or by which Seller or its property may be bound or affected, and which would have a material adverse effect on Seller's business or financial condition.

(iii)    The Financing Documents applicable to such Participated Transaction constitute the legal, valid and binding obligation of Seller and are enforceable against Seller in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally.

(iv)    There are no actions, suits or proceedings pending or, to the knowledge of Seller, threatened against or affecting Seller or its property before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Seller, would have a material adverse effect on Seller's ability to perform its obligations under the Financing Documents applicable to such Participated Transaction.

(v)    To Seller's knowledge, no approval of, or consent from, any governmental authority was required in connection with Seller's execution, delivery or performance of the Financing Documents applicable to such Participated Transaction, except for any such approval or consent as had been timely obtained.

13.    <u>Additional Representations and Warranties of Administrator.</u>

(a)    Effective as of the effective date of any Participated Transaction, Administrator has no actual knowledge that the Financing Documents to which the Participation Certificate applicable to such Participated Transaction relates are not in full force and effect, or that any default or event of default thereunder has occurred and is then continuing.

(b)    Administrator will perform its services hereunder with a reasonable degree of care that a reasonably prudent person in a like capacity might exercise under similar circumstances.  At Participant's or Seller's written request, Administrator will promptly correct any errors or omissions in the provision of its services hereunder.

(c)    Administrator has such knowledge and experience in business and financial matters necessary to perform its services hereunder; and Administrator is experienced in performing services relating to trade receivable (and other trade-related) financing transactions similar to the Participated Transaction, is financially able to undertake the risks involved in such transaction, and does so in the ordinary course of its business.

14.    <u>Certain Procedures and Responsibilities; Further Assurances.</u>  <u>Exhibit C</u> annexed hereto contains certain further mutually understood procedures and responsibilities

- 16 –

relating to this Agreement. The Parties also agree from time to time to execute and deliver such notices, directions and other instruments as may be reasonably necessary or appropriate to carry out the provisions of this Agreement, including, without limitation to cause all monies, credits or other property to be paid, distributed or delivered in accordance with this Agreement, or as may be desirable in obtaining for each Party entitled thereto, the full benefits of this Agreement and the rights and powers herein granted.

15.    <u>Notices</u>.  All notices required to be provided under this Agreement shall be deemed to have been given if delivered by Federal Express or another internationally recognized overnight delivery service for delivery on the first available business day and addressed as follows:

If to Seller:

> Trade Finance Trust
> 1500 Broadway, 26th Floor
> New York, New York 10036
> Attention: Legal Compliance

If to Participant:

> IIG Structured Trade Finance Fund Ltd.
> Maples Corporate Services Limited
> P.O. Box 309
> Ugland House
> Grand Cayman, KY1-1104
> Cayman Islands

If to Administrator:

> IIG Trade Finance LLC
> 1500 Broadway, 26th Floor
> New York, New York 10036
> Attention: Trade Services

or at such other address as a Party may from time to time designate in writing to the other by notice hereunder, and shall be effective when received on a business day (or, if received on a day that is not a business day, on the next succeeding business day).

16.    <u>Miscellaneous</u>.

(a)    This Agreement and each Participation Certificate, and the rights and obligations of the Parties hereunder and thereunder, shall in all respects be governed by, and construed in accordance with, the laws of the State of New York (without regard to any conflicts of laws principles other than Section 5-1401 of the New York General Obligations Law).

(b)     Any controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration by the International Court of Arbitration of the International Chamber of Commerce (the "ICC") in accordance with the ICC Rules of Arbitration in effect at the time of the arbitration. The arbitration proceedings shall be conducted in New York, New York and in the English language. There shall be three (3) arbitrators, one of whom shall be selected by the Party(ies) seeking to initiate the arbitration, one by the other Party(ies) and the third by the arbitrators so previously selected. The arbitration award shall be given in writing and shall be final and binding on the Parties with respect to the subject matter in controversy. The Parties shall keep confidential the arbitration proceedings and terms of any arbitration award, except as may otherwise be required by applicable law. Each Party shall bear its own legal fees and other costs related to an arbitration, except that the arbitrators shall determine who shall bear the fees and costs of the arbitrators. The arbitrators may determine arbitrability but may not award punitive damages or limit, expand or otherwise modify the terms of this Agreement. The Parties acknowledge that any arbitration award so rendered shall be governed by the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

(c)     This Agreement and each Participation Certificate constitute the entire agreement between the Parties with respect to the subject matter hereof and thereof; and this Agreement and each Participation Certificate shall not be supplemented, amended, restated or otherwise modified, except by a document in writing executed by the parties hereof or thereof, as applicable.

(d)     Each Party hereto agrees to execute and deliver, and to use its commercially reasonable efforts to cause its successors and assigns to execute and deliver, all such further instruments and agreements, and to do, or cause to be done, all such other further acts, as may be necessary or desirable to give further effect to the purposes and intents of this Agreement, as the other Parties hereto reasonably shall request from time to time.

(e)     EACH PARTY TO THIS AGREEMENT HEREBY UNCONDITIONALLY WAIVES SUCH PARTY'S RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY PARTICIPATION CERTIFICATE, ANY OF THE FINANCING DOCUMENTS, ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN THE PARTIES PURSUANT TO THIS AGREEMENT.

(f)     This Agreement and each Participation Certificate shall be binding on, and shall inure to the benefit of, the parties hereto and thereto and their respective successors and assigns.

(g)     Seller may, at any time, without the consent of Participant, encumber, sell or grant participation interests to third parties in any Facility to the extent that such participation interests are not owned by Participant, which encumbrance, sale or grant shall not be subject to this Agreement. It is understood that the terms and conditions of such encumbrance, sale or grant may differ than those of the Participation Interests owned by Participant relating to such Facility.

(h)     Participant may not, without the prior written consent of Seller and Administrator, encumber, sell or grant sub Participation Interests in all or any part of its Participation Interest in any Facility, except as provided in this Agreement.

(i)     Nothing herein, whether express or implied, shall be construed to give any Person, other than Seller, Participant, Administrator and their respective successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any Participation Interest conveyed hereby; but this Agreement shall be held to be for the sole and exclusive benefit of Seller, Participant, and their respective successors and permitted assigns.

(j)     No delay on the part of any party in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof; and no single or partial exercise of any right, power or remedy by any party hereunder shall preclude any further exercise thereof.

(k)     This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original hereof, and such counterparts shall together constitute but one and the same agreement.

(l)     Participant hereby acknowledges that Financing Documents or applicable law, or both, may impose confidentiality obligations upon Seller or Administrator in respect of Facilities, Financing Documents, Collateral or Obligors thereof, and hereby agrees to maintain such confidentiality to the extent known to Participant, whether through its review of any Financing Documents, having been made aware in writing by Seller or Administrator, or otherwise, as though directly obligated thereon.

(m)     The titles and section headings of this Agreement have been inserted for reference purposes only and shall not be deemed to have any substantive effect.

(n)     Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof, but any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

(o)     Each of Seller and Participant may terminate this Agreement upon 30 days prior written notice to the other Parties.  Notwithstanding any such termination, (i) this Agreement shall continue to govern any Participated Transaction and Participation Certificate concluded before such termination, including, without limitation, but subject to Section 4(k) above, the services of Administrator in relation thereto, (ii) Section 4(j) shall survive any such termination, (iii) such termination will be without prejudice to any rights or obligations accrued prior to the date that such termination takes effect and (iv) any rights and duties that survive such termination in accordance with the express terms of this Agreement shall so survive.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

- 19 –

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed on its behalf by its respective authorized signatory as of the day and year first above written.

Seller:

TRADE FINANCE TRUST
By: IIG Trade Finance LLC,
    as Administrator

By: _____

Name: _____
    MICHAEL SHORE

Title: _____
    AUTHORIZED SIGNATORY


Administrator:

IIG TRADE FINANCE LLC

By: _____

Name: _____
    MICHAEL SHORE

Title: _____
    AUTHORIZED SIGNATORY


Participant:

IIG STRUCTURED TRADE FINANCE FUND
LTD.

By: _____

Name: _____M Wm Laidlaw_____

Title: _____Director_____

- 20 –

EXHIBIT A

Form of Participation Certificate

(See Attached)

EXHIBIT B

Administrator Fee

Unless otherwise agreed among the Parties in respect of a Participation Interest, Administrator shall be entitled to a monthly service fee from Participant (prorated for any partial month) computed at an annual rate of one percent (1.0%) of the average principal outstanding in respect of all Participation Interests each month, in the aggregate.   Administrator may (i) request payment of the fee from Participant (and Participant shall promptly pay such fee), (ii) deduct the fee from any monies due to Participant in respect of Participation Interests or (iii) opt to waive all or a portion of the fee.

EXHIBIT C

Certain Procedures and Responsibilities

The purpose of this addendum is to outline various steps taken by the Parties in the process of the sale and acquisition of Participation Interests pursuant to the Agreement, the ongoing responsibilities of the Parties and the settlement process.

Four process stages have been identified:

A.     Credit evaluation process of new clients by Participant.
B.     Soliciting/Acceptance of Participation Interests.
C.     Ongoing monitoring and control.
D.     Repayment process.

It is noted that business is typically introduced to Seller/ Administrator, through a network of marketing agents, representatives and consultants operating in various countries.

**A.     Credit evaluation process of new clients by Participant.** (Soliciting/offering a New Participated Transaction).

From time to time, 1) Seller, through Administrator will offer to Participant or 2) Participant will solicit from Seller, through Administrator, new Participated Transactions to evaluate and allocate credit lines of Participant for acceptance of future Participation Interests. Should Participant be interested in evaluating a proposed transaction, Seller shall provide or make available through Administrator, all relevant documentation and material in order to allow Participant to conduct its own independent credit evaluation.

**Customary Documentation/Information Provided to Participant, includes but is not limited to the following (as applicable):**

a)   Company Presentation (if applicable)
b)   OFAC check results
c)   Financials (audited where available)
d)   Report on Obligor provided by third party business credit information provider, such as Creditsafe
e)   Report on Offtaker(s) provided by third party business credit information provider, such as Creditsafe
f)   Last 12 months' account history of escrow (collection account)
g)   Due diligence summary report
h)   Financing Documents
i)   Third Party Document Custody Information

(all items provided via email or other document sharing software such as ShareFile)

1.  **Participant loan application process:**

Participant shall review all information made available to it and may raise questions or solicit further explanation and may also use other external information (web-based sources) to fill in gaps, and possibly enhance its due diligence on the Obligor through such third party sources.

**B.    Soliciting/Acceptance of deal participations, under approved client/borrower limits (Deal Purchases).**

1.  From time to time, Participant may transmit an email to Seller/ Administrator, noting an amount available for participation and soliciting a suitable offer. (Note: Participant will update Administrator regularly with Participant's cash position report so that Seller is made aware of the availability under approved lines.)

2.  Administrator will send a response via email to Participant noting specific Facilities or Loans of Seller that are available for sale of Participation Interests, if any.  Administrator will also provide disbursement instructions to Participant should Participant determine to accept a Participation Interest.

3.  Participant, after due consideration, may accept or decline, but once it confirms its acceptance via email, this will serve as a notice of its binding commitment to consummate the purchase of the offered Participation Interest.

4.  The purchase is formally documented in the form of a signed Participation Certificate for each specific deal (scanned, signed and emailed, followed by exchange of originals at a later stage – as per schedule referred-to in the Master Participation Agreement).

**C.    Obligor ongoing monitoring and servicing.**

1.  **Post drawdown documents/process**

    From time to time Participant requests/extracts/reconciles its Participation Interests through documentary evidence as follows:

    a)  May make periodic requests through Administrator for confirmation of the aggregate outstanding loan balance signed by the Obligor, to be provided as practicable on a reasonable efforts basis. Requests may also be made by Participant's auditors, as part of the auditors' year-end debtor verification process.

    b)  Participation Certificates are reconciled periodically with the outstanding loan portfolio.

2.  **Annual review:**

    Participant may conduct annual reviews of the Obligors (but shall not be permitted to contact an Obligor except as expressly provided in Section 7 of the Agreement), and

Administrator will facilitate the process by providing updated documentation/information as listed in Section A.1 above. *(Note: Administrator performs its own periodic credit reviews of Obligors.)*

**3. Auditor's loan balances confirmations:**

Participant may ask Administrator to help coordinate obtaining Obligor audit confirmations for outstanding balances annually (process to be determined on an annual basis)

**D.     Repayment process.**

When repayments are received from Obligors, Administrator allocates the payments in accordance with the Master Participation Agreement and informs Participant by email providing a detailed breakdown, identifying the Participated Transaction, principal and interest settled and confirming when Participant account is credited with the proceeds. Participant acknowledges receipt and posts the entries to the respective Obligor accounts.