```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
 SECURITIES AND EXCHANGE COMMISSION,   :
                                       :
                         Plaintiff,    :    19cv10796 (DLC)
                                       :
                -v-                    :    OPINION AND ORDER
                                       :
 INTERNATIONAL INVESTMENT GROUP, LLC,  :
                                       :
                         Defendant.    :
                                       :
-------------------------------------- X
```

APPEARANCES

For IIG Structured Trade Finance Fund, Ltd. and IIG Global Trade Finance Fund, Ltd.:
Stephen B. Selbst
Arthur Glenn Jakoby
Herrick, Feinstein LLP
2 Park Ave.
New York, NY 10016
(212) 592-1405

For TriLinc Global Impact Fund – Trade Finance, Ltd.:
Joel Charles Haims
Morrison & Foerster LLP
250 West 55th St.
New York, NY 10019
(212) 468-8000

For Girobank, N.V. and Girobank International, N.V.:
Constance Mary Boland
Nixon Peabody LLP
55 West 46th St.
New York, NY 10036
(212) 940-3122

Brian Keahi Steinwascher
Thompson Hine LLP
335 Madison Ave., Fl. 12
New York, NY 10017
(212) 344-5680

For Bank Leumi USA:
Jordan Derek Weinreich
Sherman Wells Sylvester & Stamelman LLP
1185 Avenue of the Americas, 3rd Fl.
New York, NY 10036
(212) 763-6464

DENISE COTE, District Judge:

    This Opinion addresses applications filed by nonparties IIG Structured Trade Finance Fund, Ltd. ("STFF"), IIG Global Trade Finance Fund, Ltd. ("GTFF"), and TriLinc Global Impact Fund – Trade Finance, Ltd. ("TriLinc") (collectively, the "Applicants") requesting that this Court, pursuant to its ancillary jurisdiction, order the distribution of roughly $4.2 million held at collection accounts maintained by subsidiaries of defendant International Investment Group, LLC ("IIG") at Bank Leumi USA ("Bank Leumi") (the "Applications").  Non-parties Girobank N.V. and Girobank International, N.V. (together, "Girobank") oppose the Applications, on the ground that there is no ancillary jurisdiction over the Applications, as well as on the merits.  The Applicants and Girobank allege that they are victims of IIG's fraudulent conduct, as described in the Securities and Exchange Commission's ("SEC") complaint in the primary litigation in this case (the "Primary Litigation"). Because there is no ancillary jurisdiction over the Applications and for the reasons that follow, the Applications are denied.

**Background**

I. **The Primary Litigation**

The Primary Litigation consists of an action brought by the SEC against IIG on November 21, 2019. On March 30, 2020, the Primary Litigation was resolved with the entry of a final judgment against IIG (the "Final Judgment"), pursuant to which IIG paid over $35 million dollars to the SEC.

The SEC complaint asserts that IIG, an investment adviser specializing in trade finance lending,[1] engaged in frauds intended to conceal millions of dollars in losses on defaulted loans. As alleged by the SEC, in 1998, IIG launched a private investment fund called the Trade Opportunities Fund ("TOF"), to which IIG served as the investment advisor. In 2007, as TOF experienced losses from defaulting loans and non-performing assets, IIG began overvaluing the TOF portfolio and replacing non-performing assets with fictitious loans. By 2013, TOF had developed liquidity problems that IIG sought to remedy by obtaining bank financing of approximately $220 million to capitalize a collateralized loan obligation trust (the "CLO"), which was used to acquire trade finance loans from TOF.

---

[1] As explained in the complaint, trade finance loans are high-risk loans made to small- and medium-sized businesses, usually commodities exporters in emerging markets.

In 2017, as TOF's liquidity problems persisted, IIG launched a new private fund, GTFF.  IIG used assets from investments in GTFF to purchase loan assets from TOF, including approximately $44 million in fake loans, namely loans made to Panamanian shell companies.  IIG also caused GTFF to purchase loan assets from the CLO, including $28 million in disputed loans made to an Argentine borrower.

Later in 2017, IIG launched another private fund, STFF.  As with GTFF, IIG used assets from investments in STFF to purchase loan assets from TOF, including approximately $10 million in fake loans, namely loans made to Panamanian shell companies.  At IIG's direction, STFF also purchased loan assets from the CLO, including approximately $25 million in disputed loans made to the Argentine borrower.[2]

## II. Procedural History of the Primary Litigation

As noted, the SEC initiated the Primary Litigation against IIG on November 21, 2019.  On November 26, a Judgment and Preliminary Asset Freeze Order (the "Partial Judgment") against IIG was entered on consent.  Among other things, the Partial Judgment froze IIG funds and assets except (1) amounts that the Court authorized to pay legal fees, and (2) amounts that were held for the benefit of IIG-managed private investment funds and

---

[2] The complaint alleges additional fraudulent conduct by IIG that does not concern STFF or GTFF.

4

not subject to the freeze, pursuant to a determination by a duly appointed liquidator. The Partial Judgment also prohibited any litigation, except pending bankruptcy proceedings, during the pendency of the SEC action.

While the Partial Judgment remained in effect, non-parties applied to this Court for exemption from the Partial Judgment. These included applications to initiate foreign bankruptcy proceedings, permit payment of certain legal expenses, and reimburse defense costs under certain insurance policies.[3] Where the SEC consented and non-parties did not make meritorious objections, the applications were granted.[4]

---

[3] Girobank, whose suit against IIG over Girobank's purchase of $93 million in loans from TOF was pending in New York Supreme Court, New York County ("New York Supreme Court") prior to the Primary Litigation, opposed certain applications to permit defense counsel to be paid from IIG insurance policies. This Court authorized Girobank to apply to New York Supreme Court to determine whether a stipulation entered in that action prohibited defense counsel from receiving payments from insurance proceeds and to request that IIG produce certain insurance policies.

[4] The Court also granted an application for release from the Partial Judgment made by Tuper SA, a business that had received trade finance loans from IIG-managed private investment funds. Because Tuper SA had made deposits to IIG-controlled accounts that exceeded the amount necessary to repay these loans, the release of such excess funds to Tuper SA was authorized. In connection with this application, STFF and IIG Malta Bank Ltd., another IIG-controlled entity, sought payment of certain debt services. Because the SEC did not object to the proposed payment and explained that it was not aware of any competing claims on these funds, this request was also granted.

Upon consent of the parties, the Final Judgment was entered against IIG on March 30.  The Final Judgment enjoined IIG from violating securities laws, held IIG liable for $35,230,779.42 in disgorgement and prejudgment interest, and required IIG to satisfy its obligation by paying that amount to the SEC within 30 days after entry of the Final Judgment.  Pursuant to the Final Judgment, Citibank, N.A. and Bank Leumi were ordered to transfer the entire balance of specified IIG accounts to the SEC.

On May 5, 2020, more than 30 days after the Final Judgment was entered, the SEC and IIG provided a joint status letter to the Court.  It stated that there are "no disputes" between the SEC and IIG "or other issues arising from the [F]inal [J]udgment that require the Court's attention."

### III. The Applications

On April 2, STFF and GTFF moved for this Court to retain jurisdiction over the case for ancillary matters related to the judgment imposed on IIG.  After Girobank opposed this motion, an Order was issued stating that all parties would be given an opportunity to be heard on jurisdiction in the context of a specific request for relief.

On April 8, STFF and GTFF moved for the Court, pursuant to its ancillary jurisdiction, to order Bank Leumi and IIG Capital, LLC, a subsidiary of IIG, to distribute certain funds to bank

6

accounts held at EFC Bank Cayman Islands by STFF and GTFF from a collection account maintained at Bank Leumi by IIG for a borrower of trade finance loans that allegedly had been funded by STFF and GTFF (the "April 8 Application").  In support of the April 8 Application, STFF and GTFF filed eleven exhibits.  These included a 2016 credit agreement between IIG Capital and other entities controlled by or connected to IIG (the "Credit Agreement"), and numerous amendments thereto, the most recent of which was provided solely in Spanish; several participation certificates to the Credit Agreement demonstrating that STFF and IIG Malta Bank Ltd., another IIG-controlled entity, purchased participation interests in loans made from an IIG-controlled entity that was party to the Credit Agreement; and bank statements from the collection account at issue.  According to STFF and GTFF, these documents demonstrate their entitlement to the funds.

On April 17, Girobank opposed the April 8 Application on the ground that ancillary jurisdiction does not exist over this matter, as well as on the merits.  Bank Leumi notified the Court that STFF and GTFF sought funds that exceeded the amount held at the Bank Leumi collection account, but otherwise took no position on the April 8 Application.  The April 8 Application became fully submitted on April 24.

7

On April 16, STFF and GTFF requested that the Court, pursuant to its ancillary jurisdiction, order Bank Leumi and IIG to distribute additional funds to bank accounts held at EFC Bank Cayman Islands by STFF and GTFF from collection accounts maintained at Bank Leumi by Trade Finance Trust, another subsidiary of IIG, for eleven additional borrowers of trade finance loans that allegedly had been funded by STFF and GTFF (the "April 16 Application").  In support of the April 16 Application, STFF and GTFF filed thirty-five exhibits, one of which has eight parts, as well as thirteen additional exhibits with its reply brief.  The exhibits consist of credit agreements, participation certificates, and bank statements that purportedly demonstrate STFF and GTFF's entitlement to the funds requested in the April 16 Application.

On April 20, TriLinc, a subsidiary of an investment fund that had retained IIG as a sub-advisor, also requested that the Court exercise its ancillary jurisdiction to order Bank Leumi to distribute funds to TriLinc from collection accounts maintained at Bank Leumi by IIG for two borrowers of trade finance loans that allegedly had been funded by TriLinc (the "April 20 Application").  In support of the April 20 Application, TriLinc submitted two participation certificates that purportedly demonstrate TriLinc's entitlement to the requested funds.

On April 24, Girobank and Bank Leumi opposed the April 16 and April 20 Applications.  Bank Leumi opposed the April 16 and April 20 Applications to the extent they requested funds in excess of what was held in the Bank Leumi accounts.  The April 16 and April 20 Applications became fully submitted on May 8.

## Discussion

The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994); see also Kaplan v. Reed Smith, LLP, 919 F.3d 154, 157 (2d Cir. 2019).  As noted by the Second Circuit, "the boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity."  Stein v. KPMG, LLC, 486 F.3d 753, 760 (2d Cir. 2007) (citation omitted).  Nonetheless, "because ancillary jurisdiction cannot be limitless and still be ancillary, boundaries there must be."  Id.

"The basis of the doctrine of ancillary jurisdiction is the practical need to protect legal rights or effectively to resolve an entire, logically entwined lawsuit."  Peacock v. Thomas, 516 U.S. 349, 355 (1996) (citation omitted).  "[A]t its heart, ancillary jurisdiction is aimed at enabling a court to administer justice within the scope of its jurisdiction."

Levitt v. Brooks, 669 F.3d 100, 103 (2d Cir. 2012) (citation omitted).  In Kokkonen, the Supreme Court explained that ancillary jurisdiction is properly asserted

> for two separate, though sometimes related purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

Kokkonen, 511 U.S. at 379-80 (citation omitted).  The Supreme Court has "cautioned against the exercise of jurisdiction over proceedings . . . where the relief sought is of a different kind or on a different principle than that of the prior decree." Peacock, 516 U.S. at 358 (citation omitted).  The party asserting jurisdiction bears the burden of demonstrating that its suit falls within one of the categories set forth in Kokkonen.  Peacock, 516 U.S. at 355-56.

Even when ancillary jurisdiction is available, a district court must determine, at its discretion, whether the circumstances merit the exercise of ancillary jurisdiction. Levitt, 669 F.3d at 103-04.  In determining whether to exercise its discretion, a court may consider judicial economy, as well as the convenience to the parties.  Id.  When, as here, a dispute involves nonparties to the primary litigation, the "requisite compelling circumstances" that warrant the exercise of ancillary jurisdiction "will be rare, as the need for such a

10

proceeding generally will be far less pressing than in cases involving parties already before the court." Stein, 486 F.3d at 761.

The Applicants have failed to carry their burden of demonstrating that there is ancillary jurisdiction over the Applications under either category articulated in Kokkonen. Of course, the Applicants are not parties to the Primary Litigation. Moreover, the Applications are not "factually interdependent" with the Primary Litigation. Kokkonen, 511 U.S. at 379. They are "founded not only upon different facts than the [Primary Litigation], but also upon entirely new theories of liability." Peacock, 516 U.S. at 358. Although the Applications do not clearly articulate a theory of liability, they appear to be based on breach of contract; the Primary Litigation involved violations of the securities laws. And while the Applicants allege that they are victims of IIG's securities fraud, whether IIG committed securities fraud does not provide the Applicants' theory of liability here -- that the Applicants are entitled to be repaid on loans that they made. None of the factual allegations that underlay the SEC's case against IIG touch on whether the Applicants are entitled to the funds they now request. The borrowers for whom IIG maintains the collection accounts at issue in the Applications are not mentioned in the SEC's complaint, and TriLinc is not even

referenced in the complaint at all.  The Applicants' entitlement to the requested funds thus depends on resolution of entirely new and complicated factual issues, as evidenced by the voluminous exhibits submitted by the Applicants in support of their Applications.  In short, the securities violations for which IIG was held liable in the Primary Litigation and the funds requested in the Applications "have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together."  Kokkonen, 511 U.S. at 380.

Exercising ancillary jurisdiction over the Applications also would not enable the Court to "manage its proceedings, vindicate its authority, and effectuate its decrees."  Id.  The funds requested in the Applications are not subject to the Final Judgment entered against IIG.  The Final Judgment required IIG to pay the SEC $35,230,779.42 within 30 days of entry of the Final Judgment.  That obligation was satisfied and there is no outstanding dispute between the parties to the Primary Litigation.  The Applicants do not claim any entitlement to the funds paid to the SEC in satisfaction of the Final Judgment and they acknowledge that their claims "do not directly impact the enforceability of the judgment against IIG."  Asserting ancillary jurisdiction over the Applications would do nothing to further the disposition of the Primary Litigation.

Even if ancillary jurisdiction were available here, the relief requested in the Applications would not merit its exercise.  Actions over IIG-related assets are pending before other courts that may provide more appropriate fora for litigating entitlement to the funds sought in the Applications.  These actions include, (1) liquidation proceedings of STFF in the Cayman Islands, (2) liquidation proceedings of GTFF in the Cayman Islands, as well as its related Chapter 15 proceeding in the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), (3) the Curacao insolvency of TOF, as well as its related Chapter 15 proceeding in Bankruptcy Court, and (4) actions brought by Girobank against IIG and related entities in New York Supreme Court, County of New York.  Thus, duplicative litigation would not be avoided simply because STFF, GTFF, TriLinc, and Girobank have all appeared in this action.

The Applicants' argument that ancillary jurisdiction should be exercised because certain exceptions to the Partial Judgment were granted during its pendency also fails.  Those matters were properly presented because IIG's assets were frozen pursuant to the Partial Judgment and could not be accessed absent approval by this Court.  Since the Final Judgment was entered against IIG on March 30, however, the Partial Judgment is no longer in

13

effect.[5] As the assets sought by the Applicants are no longer subject to the Partial Judgment and are not subject to the Final Judgment, ancillary jurisdiction should not be asserted to determine whether the Applicants are entitled to such assets.[6]

## Conclusion

The April 8, 2020 and April 16, 2020 Applications of STFF and GTFF, as well as the April 20, 2020 Application of TriLinc, are dismissed for lack of jurisdiction.

Dated:   New York, New York
         June 5, 2020

_____
DENISE COTE
United States District Judge

---

[5] In their April 8 Application, STFF and GTFF assert that they require "partial relief from the Order" to access the funds at issue in that application. STFF and GTFF do not specify to which "Order" they refer. As the Partial Judgment is no longer in effect and as the funds at issue are not subject to the Final Judgment, this Court is aware of no such Order that it has issued which would preclude STFF and GTFF from accessing the funds.

[6] The Applicants also argue that Girobank lacks standing to oppose the Applications. Because there is no jurisdiction over this matter, the Court need not decide this question.

14